UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 12 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

ALEJANDRO RODRIGUEZ,

               Petitioner - Appellant,

   v.

JAMES HAYES, Immigration and
Customs Enforcement Los Angles
District Field Officer Director; et al.,

           Respondents - Appellees.

No. 08-56156

D.C. No. 2:07-CV-03239-TJH-RNB
U.S. District Court for Central
California, Los Angeles

**MANDATE**

RECEIVED
CLERK, U.S. DISTRICT COURT

JAN 1 2 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

---

The judgment of this Court, entered August 20, 2009, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

                              FOR THE COURT:

                              Molly C. Dwyer
                              Clerk of Court
                              /s/
                              Theresa Benitez
                              Deputy Clerk

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALEJANDRO RODRIGUEZ,
            *Petitioner-Appellant,*

                    v.

JAMES HAYES, Immigration and
Customs Enforcement Los Angeles
District Field Officer Director;
GEORGE MOLINAR, Chief of
Detention and Removal
Operations, San Pedro Detention
Facility; JANET NAPOLITANO,*
Secretary, Department of
Homeland Security; ERIC H.
HOLDER Jr., Attorney General;
PAUL WALTERS; LEE BACA, Sheriff
of Los Angeles County; SAMMY
JONES, Chief of the Custody
Operations Division of the Los
Angeles County Sheriff's
Department,
            *Respondents-Appellees.*

No. 08-56156

D.C. No.
2:07-CV-03239-
TJH-RNB

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, District Judge, Presiding

Argued and Submitted
May 5, 2009—Pasadena, California

*Janet Napolitano is substituted for her predecessor, Michael Chertoff, as Secretary of the Department of Homeland Security, pursuant to Fed. R. App. P.43(c)(2).

11383

11384          RODRIGUEZ v. HAYES

Filed August 20, 2009

Before: Betty B. Fletcher, Raymond C. Fisher and
Ronald M. Gould, Circuit Judges.

Opinion by Judge B. Fletcher

RODRIGUEZ v. HAYES                11387

## COUNSEL

Peter J. Eliasberg and Ahilan T. Arulanantham (argued),
American Civil Liberties Union Foundation of Southern Cali-
fornia, Los Angeles, California; Judy Rabinowitz and Cecillia
D. Wang, American Civil Liberties Foundation Immigrants'

Rights Project, New York, New York, and San Francisco,
California; Jayashri Srikantiah, Stanford Law School Immi-
grants' Rights Clinic, Stanford, California; and Steven A.
Ellis, William Tran, and Brian K. Washington, Sidley Austin
LLP, Los Angeles, California, for the petitioner-appellant.

Gregory G. Katsas, Assistant Attorney General, Civil Divi-
sion; David J. Kline, Director, District Court Section; Gjon
Juncaj (argued), Senior Litigation Counsel; and Nancy N.
Safavi, Trial Attorney, Office of Immigration Litigation,
United States Department of Justice, Washington, DC, for the
respondents-appellees.

---

## OPINION

B. FLETCHER, Senior Circuit Judge:

Petitioner Alejandro Rodriguez ("Petitioner") seeks a writ
of habeas corpus on behalf of himself and a class of aliens
detained in the Central District of California for more than six
months without a bond hearing while engaged in immigration
proceedings. Petitioner requests injunctive and declaratory
relief providing individual bond hearings to all members of
the class. Petitioner appeals the district court denial without
explanation of Petitioner's request to certify the proposed
class. Respondents, seeking to fill the gap left by the district
court's conclusory order, assert that the district court's denial
was justified on any of the following grounds: 1) the proposed
class is undefined; 2) the claim of Petitioner is moot; 3) the
claims of the proposed class are unripe; 4) class relief is
barred by 8 U.S.C. § 1252(f); 5) the court lacks jurisdiction
over the claims of the proposed class in light of the holding
in *Rumsfeld v. Padilla*; and 6) the proposed class does not
meet the requirements of Federal Rule of Civil Procedure 23.
We have jurisdiction over this interlocutory appeal pursuant
to 28 U.S.C. § 1292. We conclude that none of the grounds

offered by Respondents justify denial of class certification
and that the class meets the requirements of Rule 23; accord-
ingly, we reverse.

## I.    Background

Petitioner is a citizen of Mexico who came to the United
States at the age of one in 1979. He became a lawful perma-
nent resident eight years later. Petitioner was arrested in April
2004, charged with being removable based on past drug and
theft convictions, and detained thereafter by the Department
of Homeland Security. Petitioner contested his removability
before an immigration judge ("IJ"), who determined he was
subject to mandatory removal based on either of his past
offenses. The Board of Immigration Appeals ("BIA")
reversed the IJ's finding that Petitioner was removable on the
basis of his drug offense, but upheld the IJ's finding that his
theft conviction was an aggravated felony requiring removal.
Petitioner appealed the BIA's finding that his theft offense
constituted an aggravated felony and we stayed his removal
pending our decision. The appeal has been held in abeyance
pending determination of a separate appeal to the United
States Supreme Court. During his detention Petitioner
received three custody reviews from Immigration and Cus-
toms Enforcement that determined to continue his detention,
the latest occurring in September 2006. In conjunction with
these reviews, Petitioner received no hearing or notice
explaining ICE's decision beyond mention that his Ninth Cir-
cuit appeal was pending.[1]

On May 16, 2007, Petitioner filed the current Petition for
Writ of Habeas Corpus against the secretaries of the Depart-
ments of Homeland Security and Justice, the field office
director in the Central District of California for Immigration

---

[1]Petitioner also was at one point deemed eligible for release on a bond
of $15,000, which Petitioner could not pay. This bond order was later
revoked after the BIA determined his appeal.

and Customs Enforcement ("ICE"), and the head officials of various alien detention facilities in the district ("Respondents"). Petitioner seeks relief on behalf of himself and a class of aliens in the Central District of California "who 1) are or will be detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, and 2) have not been afforded a hearing to determine whether their prolonged detention is justified." (Pet. for Writ of Habeas Corpus ¶ 39.) Petitioner asserts that the detention of the members of the proposed class is not authorized by statute, and, in the alternative, that if their detention is authorized it violates the Fifth Amendment's guarantee of due process. Petitioner's requested relief includes the certification of the proposed class, appointment of Petitioner's counsel as class counsel, and injunctive and declaratory relief providing all members of the class "constitutionally-adequate individual hearings before an immigration judge . . . , at which Respondents will bear the burden to prove by clear and convincing evidence that Petitioner and each class member is a sufficient danger or risk of flight to justify his detention in light of how long he has been detained already and the likelihood of his case being finally resolved in favor of the government in the reasonably foreseeable future." (Pet. for Writ of Habeas Corpus 21.)

On June 25, 2007 Petitioner filed a Motion for Class Certification, which was opposed by Respondents on the same grounds now raised in this appeal. ICE released Petitioner from detention under an order of supervision approximately a month later pursuant to 8 C.F.R. § 241.4. Respondents subsequently filed a motion to dismiss Petitioner's action on mootness grounds in light of his release.

The district court denied Petitioner's Motion for Class Certification and the Respondents' Motion to Dismiss on March 19, 2008 in a two-sentence order. Petitioner filed the current appeal of the denial of class certification on July 17, 2008.

## II.  Standard of Review

We review a district court's decision to deny class certifica-
tion for abuse of discretion. *Zinser v. Accufix Research Inst.*,
253 F.3d 1180, 1186 (9th Cir. 2001), *amended,* 273 F.3d 1266
(9th Cir. 2001). However, a district court's decision as to
class certification is not afforded the " 'traditional defer-
ence' " when it is not "supported by sufficient findings." *Mol-
ski v. Gleich,* 318 F.3d 937, 946 (9th Cir. 2003) (quoting
*Local Joint Executive Bd. of Culinary/Bartender Trust Fund
v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1161 (9th Cir.
2001)). Here, where the district court made no findings what-
soever in support of its denial of class certification, but the
record before us is sufficiently developed, "we may evaluate
for ourselves" whether the class should be certified. *Las
Vegas Sands,* 244 F.3d at 1161.[2] Respondents contend that we
should afford the full deference normally accorded the district
court's order on the basis that its findings and reasoning can
be derived implicitly from Respondents' opposition to class
certification filed below. Respondents, however, offered mul-
tiple reasons for denying class certification. We would be
engaging in mere guesswork were we to assume the district
court relied on any particular reason or reasons. We, there-
fore, follow *Las Vegas Sands* in reviewing the district court's
determination.

## III.  Definition of Proposed Class

**[1]** Petitioner seeks to certify a class of detainees who are
held pursuant to what Petitioner labels the "general immigra-
tion statutes." Respondents assert that Petitioner's use of the
phrase "general immigration statutes" creates an undefined
class. While not a model of clarity, Petitioner's habeas corpus
petition and request for class certification together indicate

---

[2]We do not opine on the appropriate course for the reviewing court
when a district court makes some, but insufficient, findings, justifying its
class certification determination, as that is not the posture we face here.

that "general immigration statutes" refers narrowly to 8 U.S.C. § 1226, 8 U.S.C. § 1225(b), and 8 U.S.C. § 1231(a). Whether 8 U.S.C. § 1182(d)(5)(A) is also included in the definition is ambiguous, as it is only referenced in Petitioner's subsequent filings. This is of no practical importance, however, as Section 1182(d)(5)(A) merely provides for discretionary parole of detainees, which, upon revocation, returns the detainees to the form of legal detention they were in prior to parole. 8 U.S.C. § 1182(d)(5); *see Clark v. Martinez*, 543 U.S. 371, 385-86 (2005) (discussing effect of Section 1182(d)(5) on detention status). Hence, we conclude Petitioner's proposed class is adequately defined for certification.

## IV.   Immigration Detention Statutes

The three immigration detention statutes implicated by the proposed class govern detention of aliens at different stages of the admission and removal process. 8 U.S.C. § 1225(b) provides for discretionary detention of aliens pending a determination of admissibility.[3] 8 U.S.C. § 1226 provides for both discretionary detention generally and mandatory detention for certain narrow categories of aliens pending a determination of their removability.[4] 8 U.S.C. § 1231(a) provides for manda-

---

[3] 8 U.S.C. § 1225(b)(1)(B)(ii) provides:

If the [asylum] officer determines at the time of the interview [upon arrival in the United States] that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum.

8 U.S.C. § 1225(b)(2)(A) provides:

[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

[4] 8 U.S.C. § 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

tory detention of aliens ordered removed during the 90 day
removal period and discretionary detention after the end of
the removal period.[5] Petitioner's request for relief raises the

---

8 U.S.C. § 1226(c) provides:

The Attorney General shall take into custody any alien who . . .
is inadmissible by reason of having committed any offense cov-
ered in section 1182(a)(2) of this title, . . . is deportable by reason
of having committed any offense covered in section
1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title, . . . is
deportable under section 1227(a)(2)(A)(i) of this title on the basis
of an offense for which the alien has been sentence [sic] to a term
of imprisonment of at least 1 year, or . . . is inadmissible under
section 1182(a)(3)(B) of this title or deportable under section
1227(a)(4)(B) of this title, when the alien is released, without
regard to whether the alien is released on parole, supervised
release, or probation, and without regard to whether the alien may
be arrested or imprisoned again for the same offense.

[5]8 U.S.C. § 1231(a)(2) provides:

During the removal period, the Attorney General shall detain the
alien. Under no circumstance during the removal period shall the
Attorney General release an alien who has been found inadmissi-
ble under section 1182(a)(2) or 1182(a)(3)(B) of this title or
deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(6) provides:

An alien ordered removed who is inadmissible under section
1182 of this title, removable under section 1227(a)(1)(C),
1227(a)(2), or 1227(a)(4) of this title or who has been determined
by the Attorney General to be a risk to the community or unlikely
to comply with the order of removal, may be detained beyond the
removal period and, if released, shall be subject to the terms of
supervision in paragraph (3).

8 U.S.C. § 1231(a)(1)(C) provides:

The removal period shall be extended beyond a period of 90 days
and the alien may remain in detention during such extended
period if the alien fails or refuses to make timely application in
good faith for travel or other documents necessary to the alien's
departure or conspires or acts to prevent the alien's removal sub-
ject to an order of removal.

question of whether prolonged detention without a bond hearing is authorized under any of these statutes and, in the alternative, even if it is authorized, whether such detention is constitutional. These are not new questions for this court. In a series of decisions, the Supreme Court and this court have grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing. Each decision has undertaken interpretation of the immigration detention statutes against the backdrop of the serious constitutional issues raised by indefinite or prolonged detention. We review these decisions to provide the necessary context to aid in determining the appropriateness of class relief.

## A.  Discretionary Detention

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court first took up the question of whether an immigration discretionary detention statute authorized indefinite or prolonged detention. The alien there was detained pursuant to Section 1231(a)(6), authorizing discretionary detention of aliens after the removal period. The Court held that a "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. The Court found Section 1231(a)(6) ambiguous as to whether it authorized indefinite detention and, therefore, "interpreting the statute to avoid a serious constitutional threat, . . . conclude[d] that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court determined that for six months following the beginning of the removal period an alien's detention was presumptively authorized. *Id.* at 701. However, after that period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing" in order to continue to detain the alien. *Id.* Though *Zadvydas* dealt only with aliens detained pursuant

to Section 1231(a)(6) who were removable under Section
1227(a)(1)(C), 1227(a)(2) or 1227(a)(4), the Supreme Court
subsequently extended its holding to the other two categories
of aliens governed by the statute: aliens inadmissible under
Section 1182 and aliens determined by the Secretary of
Homeland Security to be a risk to the community or a flight
risk. *See Clark*, 543 U.S. at 378; *see also Xi v. INS*, 298 F.3d
832, 834 (9th Cir. 2002). We have further extended the *Zad-
vydas* framework to discretionary detention pursuant to Sec-
tion 1225(b) and 1226(a), finding that indefinite detention
under these statutes poses the same constitutional concerns
present in *Zadvydas*. *See Prieto-Romero v. Clark*, 534 F.3d
1053, 1062-63 (9th Cir. 2008); *Nadarajah v. Gonzales*, 443
F.3d 1069, 1078-80 (9th Cir. 2006).

Having applied the *Zadvydas* framework to determine
when prolonged discretionary detention is authorized, we
have also begun to determine what sort of bond hearing, if
any, is needed to justify prolonged discretionary detention for
individual petitioners. As we stated in *Prieto-Romero*, even
when detention is authorized by statute, "due process requires
'adequate procedural protections' to ensure that the govern-
ment's asserted justification for physical confinement 'out-
weighs the individual's constitutionally protected interest in
avoiding physical restraint.' " 534 F.3d at 1065 (quoting *Zad-
vydas*, 533 U.S. at 690-91). In *Casas-Castrillon v. Dep't of
Homeland Sec.*, 535 F.3d 942, 949-52 (9th Cir. 2008), we
determined that Section 1226(a) authorized detention of the
petitioner at issue and proceeded to discuss what bond hear-
ing, if any, he was entitled to. We concluded that Section
1226(a) provided authority for the Attorney General to release
an alien detained under the section on bond following a bond
hearing. *Id.* "Because the prolonged detention of an alien
without an individualized determination of his dangerousness
or flight risk would be 'constitutionally doubtful,' " we fur-
ther concluded "that § 1226(a) must be construed as requiring
the Attorney General to provide the alien with such a hear-
ing." *Id.* (emphasis omitted). Hence, we held that an alien

detained under Section 1226(a) "is entitled to release on bond unless the government establishes that he is a flight risk or will be a danger to the community." *Id.* at 951 (internal quotation marks omitted); *see also Flores-Torres v. Mukasey,* 548 F.3d 708, 709 n.2 (9th Cir. 2008); *Prieto-Romero,* 534 F.3d at 1065-66 (finding three bond hearings for Section 1226(a) detainee satisfied due process); *Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir. 2005) (finding alien detained for nearly three years could not be mandatorily detained under Section 1226(c) and ordering bond hearing, impliedly finding alien was detained under Section 1226(a)).

In *Diouf v. Mukasey,* 542 F.3d 1222 (9th Cir. 2008), by contrast, we refused to reach the issue of whether a bond hearing was required under Section 1231(a)(6). We held the detention of the petitioner at issue beyond the six month period was authorized under Section 1231(a)(6). *Id.* at 1233. We then turned to the issue of what bond hearing, if any, the petitioner was entitled to for determining the necessity of his detention. We concluded that while release on bond was clearly authorized by Section 1231(a)(6) and its implementing regulations, it was unclear whether a bond hearing was required under the statute for petitioner and what burden if any should be placed on the government at such a hearing. *Id.* at 1234-35. Because the district court had not had an opportunity to reach this question, we declined to reach it in the first instance and remanded. *Id.* at 1235. However, in doing so we noted that the issue was "somewhat similar" to that in *Casas-Castrillon,* strongly implying that the district court's determination should at least be informed by its reasoning. *Diouf,* 542 F.3d at 1234-35.

### B. Mandatory Detention

We have also dealt with indefinite or prolonged detention under immigration mandatory detention provisions, including Sections 1226(c), 1231(a)(2), and 1231(a)(1)(c). Section 1226(c) provides for mandatory detention of criminal aliens

for expedited removal. The Supreme Court has held that detention pursuant to Section 1226(c) does not raise any due process concerns. *Demore v. Kim*, 538 U.S. 510, 531 (2003). However, in upholding Section 1226(c), the Court interpreted it to authorize mandatory detention only for the "limited period of [the alien's] removal proceedings," which the Court estimated "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. *Id.* at 530-31. We have subsequently clarified that, in order to avoid the serious constitutional questions raised by indefinite mandatory detention, detention of an alien beyond an expedited period ceases to be mandatory under Section 1226(c) and instead becomes discretionary under Section 1226(a). *See Casas-Castrillon*, 535 F.3d at 951; *Tijani*, 430 F.3d at 1242.

We have additionally held that detention pursuant to Section 1231(a)(2) poses no due process issues, regardless of whether removal of the detained alien is foreseeable, because the statute authorizes detention for only the ninety-day removal period and therefore does not create any danger of unconstitutionally indefinite detention. *Khotesouvan v. Morones*, 386 F.3d 1298, 1299-1301 (9th Cir. 2004). We have taken the same view when an alien is detained pursuant to the related provision of 8 U.S.C. § 1231(a)(1)(C), which allows the removal period to be extended and detention to continue beyond ninety days if an alien conspires or acts to prevent his own removal. *Pelich v. INS*, 329 F.3d 1057, 1058-61 (9th Cir. 2003). The court, while "expressly declin[ing] to endorse or reject any inferred *Zadvydas*-inspired limitation to § 1231(a)(1)(C)" found that, in any case, "an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him." *Id.* at 1060-61; *see also Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003) ("We conclude that 8 U.S.C. § 1231(a)(1)(C) . . . authorizes the INS's continued detention of a removable alien so long as the alien fails to cooperate

fully and honestly with officials to obtain travel documents.")
Key to this determination was the court's view that "[t]he risk
of indefinite detention that motivated the Supreme Court's
statutory interpretation in *Zadvydas* does not exist when an
alien is the cause of his own detention." *Pelich*, 329 F.3d at
1060.

## V.   Alleged Bars to Class Relief

Petitioner seeks to end our piece-meal rulings in habeas
actions on the necessity of bond hearings to justify prolonged
detention in the immigration context and have the courts
address the issue on a class-wide basis across the various gen-
eral immigration detention statutes. While "ordinarily disfa-
vored," the Ninth Circuit has recognized that class actions
may be brought pursuant to habeas corpus. *Cox v. McCarthy*,
829 F.2d 800, 804 (9th Cir. 1987); *see also Mead v. Parker*,
464 F.2d 1108, 1112-13 (9th Cir. 1972) (finding habeas relief
to be appropriate in cases "where the relief sought can be of
immediate benefit to a large and amorphous group"). Respon-
dents assert, nonetheless, that various constitutional, statutory,
and procedural bars to class relief exist in this case.

### A.   Mootness

[2] Respondents initially challenge class certification on the
ground that Petitioner's individual claim has been rendered
moot by his release from detention. In fact, mootness of the
Petitioner's claim is not a basis for denial of class certifica-
tion, but rather is a basis for dismissal of Petitioner's action.
Because the district court did not dismiss Petitioner's action,
but only denied class certification, we see no reason to con-
clude it based its denial on a finding of mootness. If it had
made such a finding, it would have been in error. Petitioner
was released pursuant to 8 C.F.R. § 241.4, which provides
that "[t]he Executive Associate Commissioner shall have
authority, in the exercise of discretion, to revoke release and
return to Service custody an alien previously approved for

release under the procedures in this section." 8 C.F.R. § 241.4
(l)(2). While the regulation provides the detainee some oppor-
tunity to respond to the reasons for revocation, it provides no
other procedural and no meaningful substantive limit on this
exercise of discretion as it allows revocation "when, in the
opinion of the revoking official . . . [t]he purposes of release
have been served . . . [or] [t]he conduct of the alien, *or any
other circumstance*, indicates that release would no longer be
appropriate." *Id.* § 241.4(l)(2) (i), (iv) (emphasis added). This
places Petitioner in a position analogous to the petitioner chal-
lenging his prolonged detention in *Clark v. Martinez*, who
was released from detention pursuant to a discretionary parole
provision while his suit was ongoing. The Supreme Court
found his case was not mooted:

> If Benitez is correct, as his suit contends, that the
> Government lacks the authority to continue to detain
> him, he would have to be released, and could not be
> taken back into custody unless he violated the condi-
> tions of release . . . or his detention became neces-
> sary to effectuate his removal . . . . His current
> release, however, is not only limited to one year, *but
> subject to the Secretary's discretionary authority to
> terminate*. . . . Thus, Benitez continue[s] to have a
> personal stake in the outcome of his petition.

*Clark*, 543 U.S. at 376 n.3 (citations and internal quotation
marks omitted) (emphasis added). Petitioner asserts that the
government cannot detain him unless it can demonstrate by
clear and convincing evidence at a hearing before an immi-
gration judge that he is a sufficient danger or flight risk to jus-
tify his detention. If Petitioner is successful in his petition he
would be entitled to such a hearing where the government
would need to meet its burden or offer him a non-
discretionary release until such time as it can make the requi-
site showing or has an independent statutory basis to detain
him. This would place Petitioner in a far different situation
from his current one, released pursuant to the government's

independent determination but subject to revocation on the
government's discretion without hearing before a neutral
decision-maker and without burden of justification on the
government. Hence, like the petitioner in *Clark*, Petitioner
here retains a personal stake in the determination of his claim
such that it is not moot.

[3] We further note that Petitioner's current release is sub-
ject to a number of restrictions, including the requirements
that he remain within 50 feet of his home from 7:00 p.m. to
7:00 a.m. every night and wear an ankle monitoring device at
all times. Petitioner proposes that he receive a bond hearing
to determine not only whether he should be released, but also
under what conditions such release would take place. The
strict limitations on Petitioner's freedom, therefore, provide
an additional reason why his case presents a live controversy.
*Cf. Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (holding
that when habeas petitioner was released from custody, but
his felony conviction prevented him from engaging in certain
businesses, voting, and serving on juries, underlying habeas
case still presented live controversy).

### B.   Ripeness

[4] Respondents additionally argue that class certification
must be denied because the claims of the proposed class are
not all yet ripe.[6] "[A] claim is not ripe for adjudication if it
rests upon contingent future events that may not occur as

---

[6]Respondents assert that Petitioner waived any challenge to their ripe-
ness argument by not raising it in his opening brief. This argument is
groundless. We have previously held that the failure of a party in its open-
ing brief to challenge an alternate ground for a district court's ruling *given
by the district court* waives that challenge. *See United States v. Kama*, 394
F.3d 1236, 1238 (9th Cir. 2005); *MacKay v. Pfeil*, 827 F.2d 540, 542 n.2
(9th Cir. 1987). Here, the district court did not cite ripeness or any other
rationale for its denial of certification. Petitioner does not waive a chal-
lenge to any ground for denial of certification in its opening brief on
appeal that was not relied on in the district court's order.

anticipated, or indeed may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (internal quotation marks omitted). Respondents first argue that the claims of proposed class members detained pursuant to Section 1226(a) are unripe because there is no indication yet that the government is refusing to comply with *Casas-Castrillon*'s ruling. This argument rests on a misunderstanding of what constitutes membership in the proposed class. Members of the proposed class are by definition aliens who have been detained without a bond hearing. If an alien who would otherwise be a member of the class receives a bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be a member of the class. Hence, the government's full compliance with *Casas-Castrillon* could reduce the size of the class, but it could not render the claims of class members unripe. Respondents additionally argue that the proposed class suffers from ripeness issues because it references future class members. The inclusion of future class members in a class is not itself unusual or objectionable. *See, e.g., Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986); *LaDuke v. Nelson*, 762 F.2d 1318, 1321-26 (9th Cir. 1985). When the future persons referenced become members of the class, their claims will necessarily be ripe. Hence, we conclude that the requirement of ripeness raises no bar to certification of the class.

### C.    8 U.S.C. § 1252(f)

Respondents assert that 8 U.S.C. § 1252(f)(1), Section 306(a) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), bars class certification in this case. Section 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this sub-

chapter, as amended by [IIRIRA], other than with
respect to the application of such provisions to an
individual alien against whom proceedings under
such part have been initiated.

8 U.S.C. § 1252(f)(1). Part IV includes 8 U.S.C. §§ 1221-
1231. *See Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139,
1150 (9th Cir. 2000) (en banc). Respondents argue that Section 1252(f) bars the proposed class from receiving any injunctive relief, thereby requiring denial of class certification.

**[5]** Respondents are doubly mistaken. Section 1252(f) cannot bar certification of the class unless it bars the proposed class from receiving any class relief. Respondents do not argue, and it is not the case, that Section 1252(f) bars Petitioner from receiving declaratory relief on behalf of the class. The Supreme Court has recognized as much: "By its plain terms, and even by its title, [Section 1252(f)] is nothing more or less than a limit on injunctive relief. It prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231, but specifies that this ban does not extend to individual cases." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-482 (9th Cir. 1999). Hence, for this reason alone, Section 1252(f)(1) did not provide the district court with a basis to deny class certification.

**[6]** In addition, we conclude that Section 1252(f) does not bar injunctive relief for the proposed class. Section 1252(f) prohibits only injunction of "the operation of" the detention statutes, not injunction of a violation of the statutes. This is a distinction we have made before in a decision vacated on unrelated grounds. *See Ali v. Ashcroft*, 346 F.3d 873, 886 (9th Cir. 2003), *vacated on unrelated grounds sub nom. Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005). We held there:

"[Section] 1252(f)(1) limits the district court's authority to enjoin the INS from carrying out legiti-

> mate removal orders. Where, however, a petitioner
> seeks to enjoin conduct that allegedly is not even
> authorized by the statute, the court is not enjoining
> the operation of part IV of subchapter II, and §
> 1252(f)(1) therefore is not implicated."

*Id.* Analogously, Petitioner here does not seek to enjoin the
operation of the immigration detention statutes, but to enjoin
conduct it asserts is not authorized by the statutes. Petitioner
argues only that the immigration detention statutes, to the
extent they cannot be interpreted as requiring provision of a
bond hearing, must be enjoined as unconstitutional. However,
as this latter argument for relief may never be reached, it can-
not be a basis for denial of class certification.

[7] Respondents assert that we should not adopt the reason-
ing of the vacated opinion in *Ali*, but instead follow our deci-
sion in *Catholic Soc. Servs., Inc. v. INS*, 182 F.3d 1053 (9th
Cir. 1999), *aff'd in part and rev'd in part en banc*, 232 F.3d
1139 (9th Cir. 2000). There we found that injunctive relief for
a class asserting that the INS misinterpreted legalization pro-
visions of the Immigration Control and Reform Act was
barred by Section 1252(f). We stated:

> [R]egardless of the fact that the injunction provides
> relief for a harm ostensibly created by the INS' mis-
> interpretation of the legalization provisions of part
> V, insofar as it would interfere with the operation of
> part IV, the injunction here is contrary to the plain
> language of § 1252(f) and the district court lacked
> the jurisdiction to enter it.

*Id.* at 1062. We subsequently reversed this conclusion on en
banc review, however, on the basis that the ordered injunction
was issued under part V of the subchapter, rather than part IV
and, therefore, not within the terms of Section 1252(f). *Catho-
lic Soc. Servs.*, 232 F.3d at 1150. Were we nonetheless to
accept the panel's reasoning as persuasive, it would not con-

trol here. The requested injunction at issue does not seek to
enjoin the operation of Part IV provisions to relieve harm
caused by misinterpretation of other statutory provisions, but
to enjoin conduct alleged not to be authorized by the proper
operation of Part IV provisions. The sound reasoning of *Ali*
persuades that this is not barred by the plain terms of Section
1252(f).[7]

### D.    *Rumsfeld v. Padilla*

**[8]** Finally, Respondents claim that the Supreme Court's
holding in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), renders
class action relief inappropriate in this case. In *Padilla*, the
Supreme Court stated that "longstanding practice confirms
that in habeas challenges to present physical confine-
ment—'core challenges'—the default rule is that the proper
respondent is the warden of the facility where the prisoner is
being held, not the Attorney General or some other remote
supervisory official." *Id.* at 435. Respondents argue that this
statement mandates that the proper respondents for members
of the proposed class are the various wardens overseeing their
individual custody. Respondents assert that this renders class
relief impossible because, "at a jurisdictional minimum," all
proposed class members must be under the immediate super-
vision of the same custodian. (Resp'ts Answering Br. 16.)
Respondents fail to recognize that *Padilla* specifically
reserved the question of whether the proper respondent in
habeas challenges brought by "an alien detained pending
deportation" would be the immediate custodian of the alien.
*Padilla*, 542 U.S. at 436 n.8. We need not reach it because,
even were the Supreme Court's statement in *Padilla* applica-
ble here, Respondents' argument is baseless. Respondents cite

---

[7]Petitioner additionally argues that Section 1252(f) properly interpreted
does not apply to claims for habeas relief at all. We do not reach this argu-
ment at this time, as it is sufficient to find that the district court may in
some scenario grant the proposed class some of the relief sought to deter-
mine that the class may be certified.

no authority or rationale for the proposition that we do not
have jurisdiction to provide class relief in a habeas corpus
action that meets the requirements for certification merely
because class members are in the immediate custody of differ-
ent facilities. Such actions have been maintained previously
against single and multiple respondents. *See Schall v. Martin,*
467 U.S. 253 (1984) (class of juveniles sought habeas corpus
relief from pretrial detention under state law); *U.S. ex rel.
Sero v. Preiser,* 506 F.2d 1115 (2d. Cir. 1974) (class of young
adults sought habeas corpus relief from serving terms in state
reformatories). Regardless of who the proper respondents for
the class are, we conclude certification of the class will not
pose any jurisdictional concerns.

## VI.  Rule 23

**[9]** In addition to raising various bars to class relief,
Respondents assert that the proposed class fails to comply
with the requirements of Federal Rule of Civil Procedure 23,
governing class certification. Rule 23(a) provides that a class
may be certified only if:

> (1) the class is so numerous that joinder of all
> members is impracticable;

> (2) there are questions of law or fact common to
> the class;

> (3) the claims or defenses of the representative
> parties are typical of the claims or defenses of the
> class; and

> (4) the representative parties will fairly and ade-
> quately protect the interests of the class.

Fed. R. Civ. P. 23(a). The party seeking certification must
meet all of these requirements and Rule 23(b) further provides
that for certification the class must fall into one of three cate-

gories. *Zinser*, 253 F.3d at 1186 ("[T]he party seeking class certification . . . bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).") Petitioner seeks certification under the category provided for in Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Respondents challenge the proposed class's compliance with all aspects of Rule 23 except the numerosity requirement, which Respondents concede is met. We discuss the proposed class's compliance with the remaining requirements individually.

### A. Commonality

The commonality requirement "serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998). We have construed this requirement "permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). It is not necessary that "[a]ll questions of fact and law . . . be common to satisfy the rule." *Id.* We have found "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*; *see, e.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d. Cir. 1994) ("The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."). Nor does "common" as used in Rule 23(a)(1) mean "complete congruence." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006). We find the claims of the class share sufficiently com-

mon questions of law to meet the requirement of Rule
23(a)(1).

[10] Respondents challenge the commonality of class mem-
bers' claims on the ground that class members suffer deten-
tion for different reasons and under the authority of different
statutes. Respondents assert that, as a result, the question of
whether individual class members' detention may be contin-
ued without a bond hearing turns on divergent questions of
statutory interpretation and consideration of different factual
circumstances. Respondents are undoubtedly correct that
members of the proposed class do not share every fact in
common or completely identical legal issues. This is not
required by Rule 23(a)(1). Instead, the commonality require-
ments asks us to look only for some shared legal issue or a
common core of facts. This the proposed members of the
class certainly have. In each case in which we have inter-
preted the scope of various statutes providing for both discre-
tionary and mandatory detention in the immigration context,
our determinations have been guided, if not controlled, by the
question of whether indefinite or prolonged detention generat-
ing serious constitutional concerns is present. A form of that
question is posed here: may an individual be detained for over
six months without a bond hearing under a statute that does
not explicitly authorize detention for longer than that time
without generating serious constitutional concerns? This ques-
tion will be posed by the detention of every member of the
class and their entitlement to a bond hearing will largely be
determined by its answer. *See Casas-Castrillon*, 535 F.3d at
951 ("Because the prolonged detention of an alien without an
individualized determination of his dangerousness or flight
risk would be 'constitutionally doubtful,' we hold that
§ 1226(a) must be construed as requiring the Attorney Gen-
eral to provide the alien with such a hearing." (emphasis omit-
ted)); *Tijani*, 430 F.3d at 1242 (interpreting statutory
framework to provide bond hearing because "it is constitu-
tionally doubtful that Congress may authorize imprisonment
of this duration for lawfully admitted resident aliens who are

subject to removal."). The nature of the particular statute
authorizing the detention of individual class members will
play some role in determining whether class members are
entitled to relief, as well. Nonetheless, the constitutional issue
at the heart of each class member's claim for relief is com-
mon.

We also note that a finding of commonality here serves the
purposes of the requirement. Answering comprehensively in
a class setting the constitutional question that is at the center
of the proposed class's claims will facilitate development of
a uniform framework for analyzing detainee claims to a bond
hearing. This would render management of these claims more
efficient for the courts. It would also benefit many of the puta-
tive class members by obviating the severe practical concerns
that would likely attend them were they forced to proceed
alone. In many of the cases where we have adjudicated these
immigration detention claims, the petitioner had been
detained well beyond six months, the point at which counsel
contends that the putative class members should be entitled to
a bond hearing. *See, e.g., Tijani*, 430 F.3d at 1242 (9th Cir.
2005) (ordering a bond hearing after an alien was detained for
nearly three years). Without certification, therefore, many of
the putative class members likely would not be able to adjudi-
cate their claimed need of a bond hearing after six months of
detention—that claim would become moot before the district
court could come to a decision. Thus, for many of the putative
class members, class treatment in this case is likely necessary
to provide the remedy sought.

To the extent there may be any concern that the differing
statutes authorizing detention of the various class members
will render class adjudication of class members' claims
impractical or undermine effective representation of the class,
it may counsel the formation of subclasses. *See* Fed. R. Civ.
P. 23(c)(5); *Marisol A.*, 126 F.3d at 378-79 (finding sub-
classes appropriate where groups of class members each had
"separate and discrete legal claims pursuant to particular fed-

eral and state constitutional, statutory, and regulatory obligations of the defendants"). Because the possibility of subclasses was not raised below, we leave it to the district court to reach it in the first instance. The parties may submit proposals for formation of subclasses on remand and the district court shall exercise its discretion to determine whether adoption of any proposal would be appropriate. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 407-08 (1980) (holding that court of appeals may order district court to consider any proposals for subclasses made on remand). The district court, however, should not lose sight of the overarching issue: The circumstances, if any, that would warrant prolonged detention without hearing.

## B.   Typicality

[11] The typicality requirement looks to whether "the claims of the class representatives [are] typical of those of the class, and [is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.' " *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol A.*, 126 F.3d at 376). Like the commonality requirement, the typicality requirement is "permissive" and requires only that the representative's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. We conclude that Petitioner's claim for a bond hearing is reasonably co-extensive with the claims of the class. Though Petitioner and some of the other members of the proposed class are detained under different statutes and are at different points in the removal process and hence do not raise identical claims, they all, as already discussed, raise similar constitutionally-based arguments and are alleged victims of the same practice of prolonged detention while in immigration proceedings. *Cf. Armstrong*, 275 F.3d at 869 (finding typicality where class representatives suffered with rest of class "a refusal or failure to afford them accommodations as required

by statute, and [were] objects of discriminatory treatment on account of their disabilities" in parole and parole revocation proceedings).

Respondents argue that Petitioner's claims are not typical of the class because of his supervised release and because of his aggravated felon status, currently under appeal. Both are immaterial. The single relevance Petitioner's supervised release has to his claim is to whether it renders Petitioner's claim moot. Defenses unique to a class representative counsel against class certification only where they "threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). We have determined that Petitioner's supervised release does not moot his claim and, therefore, no mootness defense particular to him will interfere with the ongoing class litigation.

[12] Petitioner's aggravated felon status is similarly of no significance to the typicality analysis. The claims of Petitioner and the class on the whole are that they are entitled to a bond hearing in which dangerousness and risk of flight are evaluated. While Petitioner's criminal history is currently central to the question of whether Petitioner will ultimately be removed and will almost certainly be relevant to any bond hearing determination, the determination of whether Petitioner is *entitled* to a bond hearing will rest largely on interpretation of the statute authorizing his detention. The particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question and, therefore, cannot render Petitioner's claim atypical.

## C. Adequacy

[13] "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the

unlikelihood that the suit is collusive.' " *Walters*, 145 F.3d at
1046 (quoting *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir.
1994)). Petitioner alleged the qualifications of his counsel and
the lack of conflict or collusion in the court below. Respon-
dents do not question these allegations. Instead, they chal-
lenge Petitioner's adequacy only by re-asserting their
commonality and typicality arguments. *See Gen. Tel. Co. of
Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that
commonality and typicality concerns also relate to a represen-
tative's adequacy). As we do not find that these arguments
have merit, Respondents have provided no reason to conclude
that class certification is properly denied for the reason that
Petitioner is an inadequate class representative.

### D.   Rule 23(b)(2)

Respondents challenge certification under Rule 23(b)(2) on
grounds parallel to their challenge under Rule 23(a). Respon-
dents assert that as class members are potentially detained
pursuant to different statutes, Respondents have not refused to
act or acted on grounds generally applicable to the class. In
particular, Respondents note that some class members may
not ultimately be entitled to a bond hearing because they are
properly subject to mandatory detention and that the regula-
tions currently implementing the various discretionary deten-
tions statutes provide for a different burden of proof at bond
hearings than that found to be required by us in *Casas-
Castrillon* for aliens detained pursuant to Section 1226(a).

[14] Respondents' contentions miss the point of Rule
23(b)(2). "Class certification under Rule 23(b)(2)" requires
that "the primary relief sought is declaratory or injunctive."
*Zinser*, 253 F.3d at 1195. The rule does not require us to
examine the viability or bases of class members' claims for
declaratory and injunctive relief, but only to look at whether
class members seek uniform relief from a practice applicable
to all of them. As we have previously stated, "it is sufficient"
to meet the requirements of Rule 23(b)(2) that "class mem-

bers complain of a pattern or practice that is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047; *see Alliance to End Repression v. Rochford*, 565 F.2d 975, 979 (7th Cir. 1977) (finding Rule 23(b)(2) met despite "individual qualities of [the] suit" because of "pattern or practice characteristic of defendants' conduct that is generally applicable to the class" (internal quotation marks omitted)). The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2). *Walters*, 145 F.3d at 1047; *cf. Gibson v. Local 40, Supercargoes and Checkers*, 543 F.2d 1259, 1264 (9th Cir. 1976) ("A class action may be maintained under [Rule] 23(b)(2), alleging a general course of racial discrimination by an employer or union, though the discrimination may have . . . affect[ed] different members of the class in different ways . . . .") Furthermore, unlike actions brought under one of the other 23(b) prongs, "questions of manageability and judicial economy are . . . irrelevant to 23(b)(2) class actions." *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1105 (5th Cir. 1993); *see Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir.1977) ( "By its terms, Rule 23 makes manageability an issue important only in determining the propriety of certifying an action as a (b)(3), not a (b)(2), class action."), *aff'd in pertinent part and rev'd in part sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979). The proposed members of the class each challenge Respondents' practice of prolonged detention of detainees without providing a bond hearing and seek as relief a bond hearing with the burden placed on the government. The particular statutes controlling class members' detention may impact the viability of their individual claims for relief, but do not alter the fact that relief from a single practice is requested by all class members. Similarly, although the current regulations control what sort of process individual class members receive at this time, all class members seek the exact same relief as a matter of statutory or, in the alternative, constitutional right. Hence, we conclude that the proposed class meets the requirements

of Rule 23(b)(2). *Cf. Walters*, 145 F.3d at 1047 (certifying under Rule 23(b)(2) class of aliens seeking declaratory and injunctive relief on ground that they received constitutionally deficient notice of deportation procedures following charges of document fraud); *Marisol A.*, 126 F.3d at 378 (certifying under Rule 23(b)(2) class of children seeking declaratory and injunctive relief from systemic failures in child welfare system despite differing harms experienced by class members).

## VII.  Conclusion

Having found that none of the bars to class relief raised by Respondents prevent certification of the proposed class and that the class meets the requirements of Rule 23, we reverse the district court's denial of class certification and we remand for further proceedings. We leave to the district court's discretion the question of whether formation of subclasses would be appropriate.

**REVERSED AND REMANDED.**