No. 08-56156

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ALEJANDRO RODRIGUEZ,

*Petitioner-Appellant,*

v.

JAMES HAYES, Immigration and Customs Enforcement, Los Angeles District
Field Office Director; GEORGE MOLINAR, Chief of Detention and Removal
Operations, San Pedro Detention Facility; MICHAEL CHERTOFF, Secretary,
Department of Homeland Security; MICHAEL MUKASEY, United States
Attorney General; PAUL WALTERS, Chief of Police for the City of Santa Ana;
LEE BACA, Sheriff of Los Angeles County; SAMMY JONES, Chief of the
Custody Operations Division of the Los Angeles County Sheriff's Department,

*Respondents-Appellees.*

On Appeal From an Order Denying Appellant's Motion for Class Certification
by the United States District Court for the Central District of California,
Case No. CV 07-3239-TJH (RNB)

## APPELLANT'S OPENING BRIEF

PETER J. ELIASBERG
AHILAN T. ARULANANTHAM
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
1313 West Eighth Street
Los Angeles, California 90017
(213) 977-9500 Telephone
(213) 250-3919 Facsimile
peliasberg@aclu-sc.org
aarulanantham@aclu-sc.org

EXHIBIT A    000022

JUDY RABINOWITZ
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2618 Telephone
(212) 549-2654 Facsimile

CECILLIA D. WANG
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111
(415) 343-0775 Telephone
(415) 395-0950 Facsimile

JAYASHRI SRIKANTIAH
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-2442 Telephone
(650) 723-4426 Facsimile

STEVEN A. ELLIS
WILLIAM TRAN
BRIAN K. WASHINGTON
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
(213) 896-6000 Telephone
(213) 896-6600 Facsimile

Counsel for Petitioner-Appellant Alejandro Rodriguez,
on behalf of himself and all others similarly situated

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION ................................................................ 1

QUESTION PRESENTED ............................................................................ 1

STATEMENT OF THE CASE ..................................................................... 2

STATEMENT OF FACTS ............................................................................ 9

STANDARD OF REVIEW .......................................................................... 10

SUMMARY OF ARGUMENT .................................................................... 11

ARGUMENT ............................................................................................... 14

    I.    Introduction and Substantive Legal Background ........... 16

    II.    Courts May Certify A Class In Habeas Corpus
    Proceedings ....................................................................... 24

    III.    The District Court Erred In Its Apparent Holding
    That The Requirements For Class Certification
    Under Rule 23 Are Not Fully Satisfied Here ................. 26

    A.    The Requirements Of Rule 23(a) Are Satisfied ............ 27

        1.    The Government Does Not Dispute That The Class
        Is Sufficiently Numerous For Certification ........... 27

        2.    The Common Legal Claims And Factual
        Circumstances Of Class Members Plainly Satisfies
        The Commonality Requirement. ........................... 28

        3.    Mr. Rodriguez's Claims Are Typical Of The
        Claims Of Class Members, And His Release From
        Custody During The Class Certification Briefing
        Does Not Moot The Case Or Preclude A Finding
        Of Typicality. ........................................................ 31

            a.    The Government Did Not Provide Mr.
            Rodriguez With All Of The Relief He
            Seeks. ............................................................ 33

EXHIBIT A    000024

b.   The Government's "Voluntary Cessation" Of
     Detention Does Not Moot Mr. Rodriguez's
     Claim. ..........................................................37

c.   The Government Cannot Moot The Claims
     Of The Class By "Picking Off" The Named
     Representative. ............................................38

d.   Mr. Rodriguez's Claims Are Capable of
     Repetition Yet Evading Review. ................42

4.   Mr. Rodriguez Would Be An Adequate Class
     Representative. ...................................................44

B.   The Requirements Of Rule 23(b)(2) Are Satisfied .......45

IV.  Section 1252(f)(1) Plainly Does Not Bar
     Certification Of A Class In This Matter. ........................46

CONCLUSION.............................................................................51

CERTIFICATE OF COMPLIANCE.............................................................52

STATEMENT OF RELATED CASES.........................................................53

ii

## Table of Authorities

**Page(s)**

**CASES**

ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.,
  485 F.3d 85 (2d Cir. 2007) ....................................................................................................39

Ali v. Ashcroft,
  346 F.3d 873 (9th Cir. 2003) ..................................................................................25, 48, 49

Amchem Products, Inc. v. Windsor,
  521 U.S. 591 (1997) ....................................................................................26, 27, 31, 44

Andreiu v. Ashcroft,
  253 F.3d 477 (9th Cir. 2001) (en banc) ...............................................................................49

Barahona-Gomez v. Reno,
  167 F.3d 1228 (9th Cir. 1999) ..............................................................................................28

Carafas v. Lavallee,
  391 U.S. 234 (1968) ..............................................................................................................34

Casas-Castrillon v. Department of Homeland Security,
  535 F.3d 942 (9th Cir. 2008) ...........................................................................................passim

Clark v. Martinez,
  543 U.S. 371 (2005) ........................................................................................................30, 35

County of Riverside v. McLaughlin,
  500 U.S. 44 (1991) ................................................................................................................40

Demery v. Arpaio,
  378 F.3d 1020 (9th Cir. 2004) ..............................................................................................42

Demore v. Kim,
  538 U.S. 510 (2003) ........................................................................................................46, 47

Deposit Guar. Nat'l Bank v. Roper,
  445 U.S. 326 (1980) ........................................................................................................36, 39

Dukes v. Wal-Mart,
  509 F.3d 1168 (9th Cir. 2007) ........................................................................................passim

Foman v. Davis,
  371 U.S. 178 (1962) ..............................................................................................................43

Friends of the Earth, Inc., v. Laidlaw Environmental Services (TOC), Inc.,
  528 U.S. 167 (2000) ........................................................................................................37, 38

EXHIBIT A  000026

FTC v. Affordable Media, LLC,
    179 F.3d 1228 (9th Cir. 1999) .................................................................................. 37

Gardner v. Westinghouse Broadcasting Co.,
    559 F.2d 209 (3d Cir. 1977) .................................................................................... 36

Gerstein v. Pugh,
    420 U.S. 103 (1975) ................................................................................................ 43

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) .................................................................... 28, 29, 31

In re Northern Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litigation,
    693 F.2d 847 (9th Cir. 1982) .................................................................................. 44

INS v. St. Cyr,
    533 U.S. 289 (2001) ...................................................................................... 1, 46, 47

Knight v. Kenai Peninsula Borough Sch. Dist.,
    131 F.3d 807 (9th Cir. 1997) .................................................................................. 10

Lerwill v. Inflight Motion Pictures, Inc.,
    582 F.2d 507 (9th Cir. 1978) .................................................................................. 44

Linney v. Cellular Alaska Partnership,
    151 F.3d 1234 (9th Cir. 1998) ................................................................................ 44

Local Joint Execution Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,
    Inc.,
    244 F.3d 1152 (9th Cir. 2001) ................................................................................ 11

Lopez v. Smith,
    203 F.3d 1122 (9th Cir. 2000) (en banc) ............................................................... 43

Mead v. Parker,
    464 F.2d 1108 (9th Cir. 1972) ................................................................................ 25

Nadarajah v. Gonzales,
    443 F.3d 1069 (9th Cir. 2006) ......................................................................... passim

Nakaranurack v. United States,
    68 F.3d 290 (9th Cir. 1995) .................................................................................... 34

Nguyen Da Yen v. Kissinger,
    528 F.2d 1194 (9th Cir. 1975) .......................................................................... 24, 25

Oregon Advocacy Ctr. v. Mink,
    322 F.3d 1101 (9th Cir. 2003) ................................................................................ 42

iv

EXHIBIT A    000027

Perez-Funez v. Crosland,
    611 F. Supp. 990 (C.D. Cal. 1984) ............................................................................42, 43, 45

Prieto-Romero v. Clark,
    534 F.3d 1053 (9th Cir. 2008) ......................................................................................passim

Robidoux v. Celani,
    987 F.2d 931 (2d. Cir. 1993) ................................................................................................40

Society for Individual Rights, Inc. v. Hampton,
    63 F.R.D. 399 (N.D. Cal. 1973) ...........................................................................................46

Susman v. Lincoln American Corp.,
    587 F.2d 866 (7th Cir. 1978) ................................................................................................39

Tijani v. Willis,
    430 F.3d 1241 (9th Cir. 2005) ......................................................................................passim

U.S. Parole Comm'n v. Geraghty,
    445 U.S. 388 (1980) ..............................................................................................................25

United States v. Howard,
    480 F.3d 1005 (9th Cir. 2007) ........................................................................................42, 43

Valentino v. Carter-Wallace, Inc.,
    97 F.3d 1227 (9th Cir. 1996) ................................................................................................10

Walters v. Reno,
    145 F.3d 1032 (9th Cir. 1998) ........................................................................................29, 45

Ward v. Portland,
    857 F.2d 1373 (9th Cir. 1988) ..............................................................................................42

Weiss v. Regal Collections,
    385 F.3d 337 (3d Cir. 2004) ..................................................................................................39

Zadvydas v. Davis,
    533 U.S. 678 (2001) ........................................................................................................17, 30

Zeidman v. J. Ray McDermott & Co., Inc.,
    651 F.2d 1030 (5th Cir. 1981) ..............................................................................................39

### STATUTES

8 U.S.C. 1225 ............................................................................................................13, 17, 18

8 U.S.C. 1226 ........................................................................................................................passim

v

8 U.S.C. 1226a ............................................................................................................23

8 U.S.C. 1231 ..................................................................................................13, 17, 18

8 U.S.C. 1252 ................................................................................6, 12, 13, 46, 47, 49

8 U.S.C. 1537 ............................................................................................................23

28 U.S.C. 1292(e) .......................................................................................................1

28 U.S.C. 1331 ...........................................................................................................1

28 U.S.C. 1651 ...........................................................................................................1

28 U.S.C. 2241 ...............................................................................................1, 46, 47

**REGULATIONS AND RULES**

8 C.F.R. 241.4 .....................................................................................................34, 35

8 C.F.R. 1236.1 ..........................................................................................................33

Fed. R. Civ. P. 15 .......................................................................................................43

Fed. R. Civ. P. 23 ...............................................................................................passim

C.D. Cal. Local Rule 83-9 ............................................................................................7

EXHIBIT A    000029

## STATEMENT OF JURISDICTION

Petitioner-Appellant Alejandro Rodriguez ("Mr. Rodriguez") initiated
this action by filing a petition for a writ of habeas corpus in the District
Court on May 16, 2007. The District Court had jurisdiction over the petition
pursuant to 28 U.S.C. 2241 (habeas corpus), 28 U.S.C. 1651 (All Writs Act),
and the Suspension Clause of Article I of the U.S. Constitution. INS v. St.
Cyr, 533 U.S. 289, 304 (2001). The District Court also had jurisdiction
under 28 U.S.C. 1331 (federal question jurisdiction).

The District Court denied Mr. Rodriguez's motion for class
certification by order entered on March 21, 2008. ER 1. Mr. Rodriguez
timely filed a petition for permission to appeal, pursuant to Federal Rule of
Civil Procedure 23(f). This Court granted the petition on July 17, 2008.
This Court has jurisdiction under 28 U.S.C. 1292(e) and Federal Rule of
Civil Procedure 23(f).

## QUESTION PRESENTED

Did the District Court err in denying Mr. Rodriguez's motion for class
certification in a two-sentence order, without explanation, where class
members have been, are, and will continue to be subject to a Government
policy and practice of detaining immigrants for extremely long periods (in
Petitioner's case, for more than three years), without being provided with a

hearing to determine whether such prolonged detention is justified, even though such detention is not authorized by any statute and violates the fundamental liberty interest of class members under the Fifth Amendment of the U.S. Constitution?

## STATEMENT OF THE CASE

This case concerns perhaps the most fundamental right – the right to be heard on whether or not one should remain incarcerated. Mr. Rodriguez seeks to represent a class of non-citizens, a number of whom have no attorneys. Each of these non-citizens has been subjected to prolonged detention by the Immigration and Customs Enforcement ("ICE") while their removal proceedings remain pending, but none of them have been afforded a hearing before an immigration judge ("IJ") where the Government has had to justify their detention. Indeed, ICE has incarcerated many class members for years. They argue that their prolonged incarceration violates the immigration laws and the Constitution because they have been denied the detention hearing to which they are entitled.

The Government cannot seriously dispute that the putative class members have common factual and legal claims – all contend that they have been detained for at least six months without an adequate hearing, and that the immigration laws and the Constitution entitle them to that hearing. Nor

2

can the Government deny that a number of these detainees will be unable to
present their claims in the absence of this class action, because in the District
Court it presented no evidence to counter petitioner's declarations in support
of that claim. Thus, whether or not the detainees ultimately prevail on the
merits of their claim, they clearly should prevail on the central question in
this appeal: whether they should be afforded the benefits of class
certification.

Mr. Rodriguez brought this action after ICE had detained him for
more than three years. While he was in custody – and, indeed, more than a
year before he filed his habeas corpus petition – this Court decided Tijani v.
Willis, 430 F.3d 1241 (9th Cir. 2005) and Nadarajah v. Gonzales, 443 F.3d
1069 (9th Cir. 2006). As discussed in more detail below, these cases
recognized the legal principle that the Government could not hold Mr.
Rodriguez and other class members in prolonged detention without
providing a hearing on whether continued prolonged detention was justified.
Nonetheless, the Government continued to hold Mr. Rodriguez and other
class members in custody, without affording them an adequate hearing. To

3

EXHIBIT A    000032

remedy this unlawful conduct, Mr. Rodriguez initiated this proceeding, on

his own behalf and on behalf of all class members.[1]

In this proceeding, Mr. Rodriguez challenges his detention on

statutory and constitutional grounds, ER 2-40, and seeks two primary forms

of relief: (1) a writ of habeas corpus ordering the Government to conduct an

individualized hearing before an IJ, with certain procedural protections, to

determine whether his continued prolonged detention is justified; and (2) a

declaratory judgment holding that it is unlawful for the Government to

detain class members without such hearings. ER 27. He seeks this relief on

behalf of himself and a class defined as:

> [A]ll non-citizens detained within [the Central District of
>
> California] who 1) are or will be detained for longer than six
>
> months pursuant to one of the general detention statutes
>
> pending completion of removal proceedings, including judicial
>
> review, and 2) have not been afforded a hearing to determine
>
> whether their prolonged detention is justified.

---

[1] This Court's recent opinions in Prieto-Romero v. Clark, 534 F.3d 1053 (9th
Cir. 2008), and Casas-Castrillon v. Department of Homeland Security, 535
F.3d 942 (9th Cir. 2008), affirm Nadarajah and Tijani and, as discussed
below, provide further support for Mr. Rodriguez's position.

EXHIBIT A    000033

ER 48.  Specifically excluded from the class are those individuals detained

pursuant to any of the immigration detention statutes that specifically

authorize prolonged detention, such as those that apply to suspected

terrorists.  ER 10.[2]

On June 25, 2007, Mr. Rodriguez moved for class certification.  ER

41-60.  Shortly thereafter, the Government released Mr. Rodriguez from

detention, without any explanation from ICE or any change in his status.  ER

158-159.  The Government, however, continues to restrict Mr. Rodriguez's

liberty: among other things, he is under house arrest (he is not permitted to

travel more than 50 feet from his home between 7 pm and 7 am each night),

and he must wear an electronic ankle monitor at all times.  ER 158-159.

On August 7, 2007, the Government filed its opposition to the class

certification motion and argued – predictably – that its release of Mr.

Rodriguez mooted the case or, at the very least, rendered him an inadequate

representative of the class.  ER 69-70.  The Government also argued that

some of the other requirements of Federal Rule of Civil Procedure 23 were

---

[2] See generally Nadarajah v. Gonzales, 443 F.3d 1069, 1078-79 (9th Cir.
2007) (defining the "general detention statutes" as those that do not
explicitly authorize prolonged detention, such as under the national security
laws).

5

EXHIBIT A    000034

not satisfied and that certification of a class was barred by the provisions of

8 U.S.C. 1252(f)(1). ER 70-73; 83-88.

Mr. Rodriguez filed his reply on August 14, 2007. ER 120-168. Mr.

Rodriguez argued, among other things, that the Government cannot moot the

claims of an entire class by "picking off" the named representative, that a

live controversy continued to exist because the Government had not granted

him all of the relief he seeks, and that a class action is not barred by section

1252(f)(1). ER 135-143; 153-156. The district court took the motion under

submission without holding oral argument.

On November 7, 2007, while the class certification motion remained

under submission, the Government filed a motion to dismiss Mr.

Rodriguez's habeas petition as moot. This motion was dismissed by the

magistrate judge, sua sponte, the following day. The Government then

refiled its motion to dismiss with the district court judge on December 17,

2007. ER 169-240. Mr. Rodriguez filed a timely opposition, and the

Government filed a timely reply. ER 241-262; 263-270. Again, the district

court took the motion under submission without holding oral argument.

Also while the class certification motion in this action was pending,

the same counsel who represent Mr. Rodriguez filed a similar class action

habeas petition challenging the same Government conduct that is at issue

6

EXHIBIT A    000035

here in order to preserve the rights of class members in the event that the
district court determined that Mr. Rodriguez's petition was moot. Request
for Judicial Notice ("RJN") Ex. E. The petitioner in that case, Mr. Jung Jin
Lee, had been in custody for more than two years. The Government,
however, released Mr. Lee from custody four days after the petition was
filed – without any explanation from ICE or any other change in his status.
ER 256-261.

More than seven months passed from the completion of the class
certification briefing. Cf. C.D. Cal. Local Rule 83-9 (requiring district
judges to rule on motions within 120 days of submission and authorizing the
parties to request a ruling if the court has not ruled within that period). Two
requests for a ruling were filed. Finally, on March 21, 2008, the district
court entered a two-sentence order that denied both Mr. Rodriguez's motion
for class certification and the Government's motion to dismiss. ER 1. The
order provided absolutely no reasoning or explanation for the rulings. ER 1.

Mr. Rodriguez petitioned this Court for permission to appeal the
denial of class certification motion, which this Court granted on July 17,
2008. The following week, this Court decided Prieto-Romero v. Clark, 534
F.3d 1053 (9th Cir. 2008) and Casas-Castrillon v. Department of Homeland
Security, 535 F.3d 942 (9th Cir. 2008). Taken together, and, as discussed in

7

more detail below, Prieto and Casas reaffirm the principle that Mr.
Rodriguez and other class members cannot be detained for prolonged
periods without a hearing to determine whether such prolonged detention is
justified.

Nonetheless, Prieto and Casas do not obviate the need for Mr.
Rodriguez's action to proceed.  Prieto and Casas are not yet final, and even
if they were, it is unclear whether – and, if so, how – the Government will
change its policy and practice in response to these recent cases.  As occurred
after Tijani and Nadarajah, the Government may fail to comply with the
rulings, especially in cases involving unrepresented detainees, or may adopt
an unreasonably narrow interpretation of the cases, leaving class members in
custody and without providing them a hearing until and unless they file their
own individual habeas corpus actions.

Moreover, although Prieto and Casas both state that individuals
subject to prolonged detention must receive a hearing to determine whether
the prolonged detention is justified, and explain that the Government must
bear the burden of proof at such hearing, neither case further addresses the
nature of the hearing that must be provided.  That issue – and specifically
what procedural protections must be given at that hearing to individuals who

8

are subjected to prolonged detention – was not fully resolved in <u>Prieto</u> or

<u>Casas</u>.

### STATEMENT OF FACTS

Mr. Rodriguez is a lawful permanent resident of the United States.

ER 13. After completing a sentence for a state drug offense, he was

transferred to ICE custody in April 2004. ER 13. In July 2004, an IJ

ordered that he be deported to Mexico, and the Board of Immigration

Appeals ("BIA") affirmed that order in December 2004. ER 14. Mr.

Rodriguez then filed a timely petition for review of the BIA's order, but,

almost four years later, the Ninth Circuit has not yet ruled on that petition.

The delay in the resolution of Mr. Rodriguez's petition for review is

in large part attributable to the Government. The Government requested that

the case be stayed pending resolution in the Ninth Circuit, and ultimately the

U.S. Supreme Court, of a case that included certain issues similar to the ones

raised in Mr. Rodriguez's case. ER 15-16. Although that case did not

ultimately resolve the issues in Mr. Rodriguez's case, the Government's stay

requests delayed consideration of his petition for almost two years, during

which time Mr. Rodriguez remained in custody. ER 16. Mr. Rodriguez's

case remains pending in this Court; Mr. Rodriguez submitted his brief on the

merits on April 16, 2008, but the briefing schedule was subsequently

9

vacated, and the matter has been set for a settlement assessment conference
on October 9, 2008.

During more than three years in detention, Mr. Rodriguez was never
afforded a hearing before an IJ – or any other official – to determine whether
his prolonged detention was justified (because, for example, he was a flight
risk or a danger to the community). In fact, the only process Mr. Rodriguez
received with respect to his detention was a cursory paper review called a
"File Custody Review." ER 16-17.

The Government's treatment of Mr. Rodriguez is not unique. To the
contrary, the Government has a policy and general practice of holding
immigrants for prolonged periods of time, without a hearing to determine
whether such prolonged detention is justified, while removal proceedings are
pending. Dozens of other individuals or more have been, are, or will be
subjected to this unlawful policy or practice. See ER 30, 38-39.

STANDARD OF REVIEW

Class certification decisions are ordinarily reviewed for abuse of
discretion. See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1233-34
(9th Cir. 1996). A district court abuses its discretion when it bases its
decision upon an error of law. See Knight v. Kenai Peninsula Borough Sch.
Dist., 131 F.3d 807, 816 (9th Cir. 1997) (reversing the district court's denial

10

of the motion for class certification that was based upon a legally erroneous

mootness determination).  Moreover, when a district court issues a cursory

order on a class certification motion that is not supported by findings

regarding the application of the Rule 23 requirements, the ruling "is not

entitled to the traditional deference given to such a determination." Local

Joint Execution Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,

Inc., 244 F.3d 1152, 1162 (9th Cir. 2001).

## SUMMARY OF ARGUMENT

This is a case that is ideally suited for class certification.  Mr.

Rodriguez and all class members have been subjected to the same

Government practice and policy: all have been, are being, or will be held in

custody for prolonged periods (in many cases, for years) while their removal

proceedings are pending, and none has been granted an adequate hearing to

determine whether such prolonged detention is justified.  In a series of

decisions, the U.S. Supreme Court, the Ninth Circuit, and other courts have

recognized that such prolonged detention is not authorized by any applicable

statute.  Moreover, even if there were a statutory basis for holding class

members in custody for prolonged periods without a hearing, such detention

would violate the fundamental liberty interest of class members under the

Fifth Amendment.

11

EXHIBIT A    000040

Despite the common nature of their legal and factual claims, the District Court denied Mr. Rodriguez's motion for class certification in a terse, two-sentence order.  Although the District Court did not provide any explanation for the basis of its ruling, presumably it accepted one of the Government's three primary arguments: (1) that the Government's decision to release Mr. Rodriguez suddenly, just days before the Government's opposition to his class certification motion was due, mooted his claims or rendered him an inadequate or atypical representative of the class; (2) that the existence of different underlying immigration detention statutes defeats a determination of commonality; or (3) that a class action is barred by 8 U.S.C. 1252.  A ruling on any of these grounds would have been legal error.

    1.    The Government's voluntary decision to release Mr. Rodriguez from custody does not moot his claims or render him an inadequate or atypical class representative.  Under well-established law, a defendant cannot defeat class certification merely by "picking off" the claims of the named class representative.  Moreover, because Mr. Rodriguez remains subject to substantial restraints on his liberty, and because his release was voluntary and subject to revocation, the Government has not even succeeded in mooting his individual claims.

12

EXHIBIT A    000041

2.     The commonality requirement of Federal Rule of Civil
Procedure is construed permissively and is satisfied by the existence of
either a common core of facts or common legal claims. Here, class members
share both. All class members have been subject to prolonged detention
under one or more of the general immigration detention statutes without
being given a hearing to determine whether prolonged detention is justified.
Moreover, all class members share the same legal claims, arguing that their
prolonged detention (a) is not authorized by any statute and (b) violates their
liberty interests under the Fifth Amendment.

Although class members may be detained under different general
immigration detention statutes – including 8 U.S.C. 1225(b), 8 U.S.C. 1226,
and 8 U.S.C. 1231(a) – this Court has repeatedly held that none of the
general immigration detention statutes authorizes prolonged detention
without a hearing. The differences among the statutes may matter in other
contexts, but they do not matter here.

3.     For at least three independent reasons, nothing in 8 U.S.C.
1252(f)(1) – which bars courts from "enjoin[ing] or restrain[ing] the
operation of" certain immigration statutes – precludes certification of a class
in this proceeding. First, this is a habeas corpus action, and under settled
law, Congress cannot strip the federal courts of the power to grant habeas

13

EXHIBIT A     000042

relief without explicitly mentioning the federal habeas statute. Nothing in
section 1252(f)(1) mentions the federal habeas statute. Second, this Court
has recognized the distinction between seeking to enjoin the operation of
certain immigration statutes (which may be prohibited) and seeking to
correct an agency's mistaken interpretation of a statute (which is not
prohibited). Here, class members do not seek to enjoin the operation of a
statute but, rather, to ensure that a statute is properly interpreted and
implemented according to its terms. Third, nothing in section 1252(f)(1)
bars class actions or otherwise interferes with the ability of a district court to
certify a class and, if the class prevails on the merits, grant declaratory relief
and other forms of appropriate non-injunctive relief to class members.

Accordingly, and because all of the requirements of Rule 23(a) and
(b)(2) are satisfied here, the District Court erred in denying Mr. Rodriguez's
motion for class certification.

## ARGUMENT

Petitioner-Appellant Alejandro Rodriguez seeks certification of a
class of persons who all challenge the same Government detention policy
and practice based upon the same or similar facts. More specifically, Mr.
Rodriguez argues that (1) the government has a general practice and policy
of detaining non-citizens for prolonged periods of time pending completion

14

of removal proceedings without holding a hearing (with proper procedural protections for the detainee) to determine whether such detention is justified and (2) this general practice and policy is contrary to both the governing statutes and the U.S. Constitution – not only in the specific case of Mr. Rodriguez but also in relation to all other members of the class. The Government disagrees and argues that its general practice and policy is permitted by both the applicable statutes and the Constitution.

But regardless of which side ultimately prevails on the merits, the core issue in the case – whether the Government has the power under the general immigration detention statutes and the Constitution to hold non-citizens for prolonged periods without a hearing – is a pure question of law that is common to all class members and has nothing to do with the particular facts of any detainee's case. Mr. Rodriguez asserts that he and all class members share a common legal and factual claim: that, regardless of the particular posture of their respective cases, all class members who have been incarcerated for a prolonged period of time are entitled to an individualized hearing (with certain procedural protections) to determine whether their continued detention is justified. If Mr. Rodriguez prevails, then not only he but also all other class members will be entitled to receive immediate,

15

EXHIBIT A    000044

individualized hearings to determine whether their continued detention is
justified.

## I.     Legal Background

The Government has a policy and general practice of incarcerating
non-citizens for prolonged periods – including, in many cases, for years –
while removal proceedings are pending before an IJ, the BIA, or the Ninth
Circuit, without conducting an individualized hearing to determine if the
prolonged detention of each detainee is necessary or justified.  During the
past year, a handful of these detainees have won their release by filing
individual habeas corpus petitions, but the overwhelming majority of
detainees do not have representation or the necessary legal expertise to
challenge their prolonged detention in federal court.  Nonetheless, the
detention of each of these long-term inmates without a hearing gives rise to
the same legal questions.

Mr. Rodriguez and all other members of the putative class have been,
are being, or will be held in detention for more than six months under one of
the general immigration detention statutes that govern the detention of most
non-citizens whom the government is trying to remove.  See generally
Nadarajah v. Gonzales, 443 F.3d 1069, 1078-79 (9th Cir. 2006) (discussing
general immigration detention statutes, and holding that they do not

16

EXHIBIT A      000045

authorize detention beyond a "brief and reasonable" period of time,

presumptively six months, where removal is not significantly likely to occur

in the reasonably foreseeable future). These general immigration detention

statutes include 8 U.S.C. 1225(b) (authorizing detention of aliens seeking

admission), 8 U.S.C. 1226 (authorizing detention of aliens pending a

determination of removability), and 8 U.S.C. 1231(a) (authorizing detention

of aliens with final order of removal during and after the removal period).

As discussed in more detail below, courts have repeatedly held that

the general immigration detention statutes do not authorize prolonged

detention without a hearing to determine whether such prolonged detention

is justified. The courts have reached this conclusion in part to avoid the

serious constitutional problems that would be associated with such

detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 690-92 (2001)

(noting constitutional problems associated with prolonged immigration

detention absent sufficient procedural protections and ordering the release of

an individual detained under 8 U.S.C. 1231 for a prolonged period, and for

whom there was no significant likelihood of removal in the reasonably

foreseeable future). Instead, courts have interpreted the general immigration

detention statutes to authorize detention (without a hearing to determine

whether prolonged detention is justified) for only a "reasonable" period of

17

EXHIBIT A    000046

time, which is presumptively no more than six months. Id. at 701. This
Court has recognized and applied that rule in four recent cases.

1.      In the first case, Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005),
the petitioner had been detained under 8 U.S.C. 1226 for more than two
years and eight months while removal proceedings were pending. Id. at
1242. After observing that it was "constitutionally doubtful that Congress
may authorize imprisonment of this duration," the Court interpreted the
detention provisions of section 1226(c) as applying only to "expedited
removal of criminal aliens." Id. Because the petitioner had already been
detained for such a prolonged period – far beyond what could be considered
"expeditious" – the Court ordered the Government to release him, unless it
provided a prompt hearing before an IJ "with the power to grant him bail
unless the government establishes that he is a flight risk or will be a danger
to the community." Id.

2.      A few months later, this Court decided Nadarajah, a case
brought by an applicant for asylum and Convention Against Torture relief
who was detained upon entry under 8 U.S.C. 1225(b) and held in custody for
almost five years. 443 F.3d at 1071, 1076. Again noting the constitutional
issues that would be raised by any interpretation of a statute that would
permit prolonged and indefinite detention, the Court interpreted section

18

1225(b) to permit detention for only a "brief and reasonable" period –

presumptively six months. Id. at 1076-78. The Court held that after the six-

month period, the statute did not authorize continued detention of the

petitioner "or any other alien who is similarly situated," id. at 1079, unless

the Government could show that there was a "significant likelihood" of

removal within the "reasonably foreseeable future." Id. at 1078, 1079-80.

On the facts of the case, the Court ordered that the petitioner be released. Id.

at 1080-82.

      3.      More recently, in July 2008, the Court decided Prieto-Romero

v. Clark, 534 F.3d 1053 (9th Cir. 2008), a case brought by an individual

detained for more than three years under 8 U.S.C. 1226 while his removal

proceedings were pending. Id. at 1056, 1062. Distinguishing the holding in

Nadarajah, the Court concluded that removal of Mr. Prieto remained

reasonably foreseeable under the circumstances, and thus held that his

continued detention, although lengthy, was authorized by statute. Id. at

1062-65.

      Importantly, however, that determination did not end the Court's

analysis in Prieto. Rather, even after determining that there was a statutory

basis for his prolonged detention, the Court stated that Mr. Prieto was

entitled to an individualized hearing to determine whether, on the particular

19

EXHIBIT A    000048

facts of his case, continued and prolonged detention was justified. As the

Court succinctly explained:

> There is an important difference between whether detention is
>
> <u>statutorily authorized</u> and whether it has been <u>adequately</u>
>
> <u>determined to be necessary as to any particular person</u>.

<u>Id.</u> at 1065 (emphasis added); <u>see also id.</u> ("Even if Prieto-Romero's

continued detention is permitted by statute ..., due process requires

'adequate procedural protections' to ensure that the government's asserted

justification for physical confinement 'outweighs the individual's

constitutionally protected interest in avoiding physical restraint.'") (quoting

<u>Zadvydas</u>, 533 U.S. at 690-91).

The Court noted that Mr. Prieto had received three bond hearings

while in custody. <u>Id.</u> At the third hearing, the IJ determined that he was

eligible to be released on bond (although he remained in custody, apparently

unable to raise the funds to post the bond). <u>Id.</u> at 1057, 1065. In doing so,

the IJ "necessarily found ... that Prieto-Romero did <u>not</u> present a flight risk

or a danger to the community." <u>Id.</u> at 1067 (emphasis in original). Because,

on the facts as stated by the Court, Mr. Prieto had received a "full and fair"

individualized bond hearing – where he "had an opportunity to contest the

necessity of his detention before a neutral decisionmaker" and "a reasonable

20

EXHIBIT A    000049

opportunity to present arguments on his behalf," id. at 1065-66 & n.11 – the
Court affirmed the denial of his habeas corpus petition.

Thus, although the petitioner in Prieto was unsuccessful on the merits
of his individual claim, the opinion in the case reaffirms the general
principle that governs here.  Under the general immigration detention
statutes, aliens cannot be detained for prolonged periods without receiving a
"full and fair" hearing to determine whether their continued detention is
necessary and justified.

4.    The critical importance of such a hearing was also at the core of
the fourth, and final, recent decision on point from this Court, entitled Casas-
Castrillon v. Department of Homeland Security, 535 F.3d 942 (9th Cir.
2008), and decided by the same panel and on the same day as Prieto.  In
Casas, as in Prieto, the petitioner had been detained for many years under 8
U.S.C. 1226 while his removal proceedings were pending.  535 F.3d at 944,
948.  In contrast to Mr. Prieto, however, it was unclear what, if any, bond
hearing Mr. Casas had received.  Id. at 951-52.  That distinction was critical
to the Court's reasoning and led directly to the favorable disposition of Mr.
Casas' petition.

Echoing the reasoning and holdings of Tijani and Prieto, the Court
stated in Casas:

21

EXHIBIT A    000050

> We hold that the government may not detain a legal permanent
> resident such as Casas <u>for a prolonged period without providing</u>
> <u>him a neutral forum in which to contest the necessity of his</u>
> <u>continued detention</u>.

535 F.3d at 949 (emphasis added).  As the Court explained:

> Because the prolonged detention of an alien without an
> individualized determination of his dangerousness or flight risk
> would be "constitutionally doubtful," we hold that § 1226(a)
> must be construed as <u>requiring</u> the Attorney General to provide
> the alien with [a bond] hearing.  <u>See</u> <u>Tijani</u>, 430 F.3d at 1242.

535 F.3d at 951 (emphasis in original).

In light of the fact that Mr. Casas had apparently not received such a
bond hearing, the Court reversed the District Court's denial of his habeas
petition.  The Court remanded with instructions to grant the writ, unless the
Government provided Mr. Casas

> with "a hearing … before an Immigration Judge with the power
> to grant him bail unless the government establishes that he is a
> flight risk or will be a danger to the community," or shows that
> he has already received such a bond hearing.

<u>Id.</u> at 952 (quoting <u>Tijani</u>, 430 F.3d at 1242).

22

EXHIBIT A     000051

Thus, these four recent cases decided by this Court – <u>Tijani</u>,

<u>Nadarajah</u>, <u>Prieto</u>, and <u>Casas</u> – all support a single substantive principle of

law: that the general immigration detention statutes do not authorize the

Government to detain aliens for prolonged periods unless they are provided

with hearings (with certain procedural protections) to determine whether

such prolonged detention is necessary and justified in their individual cases.

Mr. Rodriguez and the members of the class have all been held in violation

of this principle of the law, and they all share a common legal claim in their

attempt, through this class action, to obtain relief from the Government's

unauthorized and improper detention practices.

It is also important to recognize that the general immigration detention

statutes at issue in this case (as well as in <u>Tijani</u>, <u>Nadarajah</u>, <u>Prieto</u>, and

<u>Casas</u>) do <u>not</u> include any of the narrower immigration detention statutes

that specifically authorize prolonged detention for time periods beyond six

months.  <u>See</u>, <u>e.g.</u>, 8 U.S.C. 1226a (authorizing detention of aliens that the

Attorney General has certified to be a threat to national security, subject to

procedural protections including a review of certification every six months);

8 U.S.C. 1537 (authorizing prolonged detention of alien terrorists, subject to

various procedural protections).  Neither Mr. Rodriguez nor (by definition)

any other class member is detained pursuant to these narrower statutes.

23

EXHIBIT A     000052

## II.    Courts May Certify A Class In Habeas Corpus Proceedings

As noted above, Mr. Rodriguez seeks two principal forms of relief:
(1) a writ of habeas corpus ordering a constitutionally adequate hearing
before an IJ, at which the Government will bear the burden to prove that
continued detention remains justified, and (2) a declaratory judgment
holding that it is unlawful for the Government to detain class members
without such hearings.  Both forms of relief can properly be obtained
through a class action.

Indeed, although a habeas corpus petition typically involves a claim
for only individual relief, it is well established that, in the correct
circumstances, a habeas corpus petition may proceed on a representative or
class basis.  For example, in Nguyen Da Yen v. Kissinger, 528 F.2d 1194
(9th Cir. 1975), plaintiffs representing a proposed class of "babylifted"
Vietnamese children brought suit against various government officials and
agencies, including the INS, challenging their custody in the United States
and alleging that the children were not orphans and had been erroneously
transported to the United States even though their parents in Vietnam wanted
to retain custody over them.  Id. at 1196-98.  This Court stated that a habeas
corpus class action was "not unprecedented" and held that, given the
common claim of all class members, a class action habeas proceeding was

24

EXHIBIT A    000053

proper. Id. at 1203-04. As the Court explained, "we see no reason here why the complaint may not be treated as a joint or class application for a writ of habeas corpus (on behalf of those ultimately determined to be illegally detained), and the legality of the children's custody tested in habeas proceedings." Id. at 1202; see also U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 393, 404 (1980) (holding that class representative could appeal denial of nationwide class certification of habeas and declaratory judgment claims); Mead v. Parker, 464 F.2d 1108, 1113 (9th Cir. 1972) (finding class action appropriate in habeas corpus proceeding where "the relief sought can be of immediate benefit to a large and amorphous group"); Ali v. Ashcroft, 346 F.3d 873, 886-91 (9th Cir. 2003) (affirming certification of class in habeas corpus proceeding), overruled on other grounds by Jama v. ICE, 543 U.S. 335 (2005).

Similarly, here too all class members share a common challenge to their detention: all allege that they may not be detained for prolonged periods under the general immigration detention statutes without a hearing to determine whether such prolonged detention is necessary and justified in their individual cases. Accordingly, class certification of a habeas corpus claim is appropriate in these circumstances.

25

### III.   The District Court Erred In Its Apparent Holding That The Requirements For Class Certification Under Rule 23 Are Not Fully Satisfied Here

As noted above, the District Court did not provide any reason or explanation for its decision to deny Mr. Rodriguez's motion for class certification.  To the extent the District Court silently determined that Mr. Rodriguez had failed to show that certification of the class was proper under Federal Rule of Civil Procedure 23, such a determination was erroneous as a matter of law.

Under the Federal Rule of Civil Procedure 23, an individual seeking to represent a class must first establish that the proposed class meets the four requirements set out under Rule 23(a).  Those requirements are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are common questions of law or fact common to the class; (3) the claims or defenses of the representative are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also, e.g., Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997).

26

EXHIBIT A    000055

In addition to satisfying all of the requirements of Rule 23(a), the
action must also meet the requirements of one of the three subsections in
Rule 23(b). In this case, Mr. Rodriguez sought certification under Rule
23(b)(2), which requires that "the party opposing the class has acted or
refused to act on grounds generally applicable to the class, thereby making
appropriate final injunctive relief or corresponding declaratory relief with
respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); see also Amchem,
521 U.S. at 614. Each of these requirements is satisfied here.

**A.      The Requirements Of Rule 23(a) Are Satisfied**

     **1.      The Government Does Not Dispute That The Class Is
Sufficiently Numerous For Certification.**

Rule 23(a)(1) requires that a class be of sufficient number so as to
make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1);
Amchem, 521 U.S. at 613. In the District Court, Mr. Rodriguez presented
uncontradicted evidence that the proposed class included more than 56
identified persons known to his counsel, plus other, unidentified persons
who (a) were currently subject to the Government's unlawful detention
policies or (b) would be subject to the Government's unlawful detention
policies in the future. ER 38-39; 30.

This showing was more than sufficient to demonstrate numerosity
under Rule 23(a)(1). Moreover, the Government did not contest numerosity

27

in the District Court and thus has waived any argument on this point.  Cf.

Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999) (noting that

in certifying a class of aliens the Government is uniquely positioned to

determine who is included within the class and to present arguments and

evidence regarding numerosity).[3]

> **2.    The Common Legal Claims And Factual Circumstances Of Class Members Plainly Satisfies The Commonality Requirement.**

This Court has repeatedly stated that the "commonality" requirement

of Rule 23(a)(2) is "construed permissively."  E.g., Dukes v. Wal-Mart, 509

F.3d 1168, 1177 (9th Cir. 2007); Hanlon v. Chrysler Corp., 150 F.3d 1011,

1019 (9th Cir. 1998).  It is satisfied by the existence of "shared legal issues"

---

[3] In any event, there is no fixed number of class members that either necessitates or precludes the certification of a class.  See General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission, 446 U.S. 318, 330 (1980) (numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations).  As a general matter, a number of courts have held that classes with at least 40 members are sufficiently numerous to satisfy the requirements of Rule 23(a)(1).  Stewart v. Abraham, 275 F.3d 220, 227-28 (3d Cir. 2001); Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)  In certain circumstances, even smaller classes have been certified.  E.g., Kazarov v. Achim, 2003 WL 22956006, at 4 (N.D. Ill. Dec. 12, 2003) (certifying class of 10-17 immigrants who were likely indigent and unable to speak English); Dale Electronics, Inc. v. R.C.L. Electronics, Inc., 53 F.R.D. 531 (D.N.H. 1971) (certifying class of thirteen defendants based on nationwide dispersion and because of the nature of patent litigation).

EXHIBIT A    000057

(and divergent facts) or a "common core of facts" (and disparate legal
claims). Dukes, 509 F.3d at 1177; Hanlon, 150 F.3d at 1019.

Here, class members share both a common core of facts and legal
claims. All class members share the same core of facts: they are non-
citizens subject to prolonged detention and have not been provided a hearing
with appropriate procedural protections before an IJ to determine whether
such prolonged detention is justified. All class members also share the same
legal claims: they all argue (a) that the general immigration detention
statutes pursuant to which they are held do not authorize such prolonged
detention without an appropriate hearing and (b) that even if their detention
is authorized by statute, it is contrary to their rights under the United States
Constitution. That common core of facts and legal claims plainly satisfies –
and, in fact, far surpasses – the minimal requirements imposed by Rule
23(a)(2). See, e.g., Walters v. Reno, 145 F.3d 1032, 1046 (9th Cir. 1998)
(finding commonality in claims of class of aliens challenging INS notice
regarding deportation procedures).[4]

In the District Court, the Government argued at length that differences

---

[4] Significantly, Mr. Rodriguez does not seek the immediate or unconditional
release of all class members. Rather, the relief sought – common to all class
members – is a court order requiring that class members be given individual
hearings on the issue of whether their prolonged detention is justified. ER 9.

29

.

EXHIBIT A    000058

in the operation of the general immigration detention statutes rendered class

certification inappropriate. But those differences – which may matter

significantly in other contexts – are irrelevant here. For purposes of this

proceeding, the central legal issue is whether the general immigration

detention statutes authorize prolonged detention without a hearing to

determine whether the prolonged detention is justified. Indeed, both the

Ninth Circuit and the Supreme Court have adopted the same substantive

principle of law in cases involving several different general immigration

detention statutes. See Prieto, 534 F.3d at 1062 (construing section

1226(a)); Nadarajah, 443 F.3d at 1076 (construing section 1225(b)); Tijani,

430 F.3d at 1242 (construing section 1226(c)); see also Clark v. Martinez,

543 U.S. 371 (2005) (construing, inter alia, section 1182(d)(5)(A));

Zadvydas, 533 U.S. at 688 (construing section 1231(a)(6)). Thus, the

question whether any of these statutes authorize detention without a hearing

is a common issue, and the answer is clear: they do not.[5]

---

[5] To the extent that the District Court silently determined that the
commonality requirement was not met, such a determination would have
been inconsistent with previous rulings by the same judge. In four previous
cases, petitioners with a common core of facts (prolonged detention) and a
common set of legal claims (that the detention was not authorized by statute
or the U.S. Constitution) challenged their detention. Although the
petitioners were detained under different general immigration detention
statutes (8 U.S.C. sections 1225, 1226, and 1231), and although there were
certainly factual differences relating to the merits of their individual

30

3.   **Mr. Rodriguez's Claims Are Typical Of The Claims Of Class Members, And His Release From Custody During The Class Certification Briefing Does Not Moot The Case Or Preclude A Finding Of Typicality.**

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." See Dukes, 509 F.3d at 1184; see also Amchem, 521 U.S. at 613. "Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Here, Mr. Rodriguez and all class members are all detainees who have been, are being, or will be held for more than six months pursuant to a Government policy and practice without a hearing to determine whether their prolonged detention is justified. Mr. Rodriguez's claims and the claims of the class members all arise from the same course of conduct by the Government – detaining non-citizens for more than six months without an

---

immigration cases (for example, one was admitted but allegedly convicted of an aggravated felony, one was not admitted and convicted of two crimes of moral turpitude, and two had overstayed their visas), the District Court granted precisely the same relief (a hearing) in all four cases. See RJN Exs. A-D (Diouf v. Gonzales, No. CV 06-7452-TJH (C.D. Cal. Jan. 4, 2007) (order granting in part Petitioner's Motion for Preliminary Injunction); Martinez v. Gonzales, No. CV 06-7609-TJH (C.D. Cal. Jan. 4, 2007) (same); Soeoth v. Gonzales, No. CV 06-7451-TJH (C.D. Cal. Jan. 4, 2007) (same); Rasheed v. Gonzales, No. CV 06-7449-TJH (C.D. Cal. Jan. 4, 2007)). Indeed, the orders issued by the Court in those four cases were in all material respects identical.

31

EXHIBIT A    000060

adequate bond hearing – are based upon the same legal theories, and seek the same relief. Thus, the typicality requirement of Rule 23(a)(3) is easily satisfied.

In the District Court, the Government argued that because it released Mr. Rodriguez from detention (subject to significant restrictions on his liberty) shortly before its opposition to the class certification motion was filed – and after the Government detained him for more than three years – the case is moot and Mr. Rodriguez cannot serve as a class representative because his claims are no longer typical of those of other class members. The District Court denied the Government's motion to dismiss the case as moot, ER 1, and thus appears to have rejected these arguments. But if the District Court nonetheless somehow silently determined that he was no longer a typical class member because of his release, such a determination was legally erroneous for at least four independent reasons: (a) the Government did not give Mr. Rodriguez all of the relief he seeks; (b) the "voluntary cessation" of the challenged conduct as it relates to the class representative does not render moot a class claim for injunctive relief; (c) a defendant may not evade certification of a class by "picking off" the class representative; and (d) the conduct at issue falls within the "capable of repetition yet evading review" doctrine.

32

a.     **The Government Did Not Provide Mr.
Rodriguez With All Of The Relief He Seeks.**

The Government has not provided Mr. Rodriguez with all of the relief
he seeks. This is clear in at least three separate ways.

*First*, Mr. Rodriguez asserts a right to a hearing – with certain
specified protections – before an IJ to determine whether continued
detention is justified. ER 27. As part of that hearing, if the IJ orders Mr.
Rodriguez to be released, the IJ would necessarily consider, among other
things, whether a bond is necessary and what, if any, conditions of
supervision are appropriate.

Mr. Rodriguez has not received any such hearing before an IJ.
Instead, the Government has unilaterally established release conditions that
severely restrain his liberty. Mr. Rodriguez is under house arrest, required to
stay within 50 feet of his residence from 7 pm to 7 am each day, and he must
wear an electronic ankle monitor at all times. ER 158-164. In addition, his
liberty is restricted in other, less severe but still significant ways, including
by arbitrarily limiting the people with whom he can "associate" and by
requiring him to take steps to obtain a Mexican travel document. ER 161,
163. If, however, Mr. Rodriguez were to obtain the hearing he seeks, he
would have the opportunity to show that he should not be subject to such
draconian and arbitrary conditions. See 8 C.F.R. 1236.1(d) (providing that a

33

non-citizen may "request amelioration of the conditions under which he or

she may be released" in a hearing before an IJ).

These restraints on liberty constitute sufficient injury to defeat

mootness; indeed, courts have held that other, much less immediate,

restrictions give rise to a live controversy and defeat any assertion of

mootness. See Carafas v. Lavallee, 391 U.S. 234, 238 (1968) (holding that

various restraints on liberty, including inability to vote and engage in certain

businesses, are sufficient to defeat mootness); cf. Nakaranurack v. United

States, 68 F.3d 290, 293 (9th Cir. 1995) (noting that courts "have broadly

construed 'in custody' to apply to situations in which an alien is not

suffering any actual physical detention").[6]

*Second*, and independently, the release of Mr. Rodriguez is

discretionary, and is subject to being revoked at any time. The release

documents indicate that he was released pursuant to 8 C.F.R. 241.4, which

gives certain immigration officials discretionary authority to release aliens

ordered removed for having been convicted of certain crimes. See ER 89; 8

---

[6] The Government has not argued that it has provided all of the relief that
Mr. Rodriguez seeks to obtain for members of the class, and so the claims of
class members are certainly not moot. See Gorbach v. Reno, 219 F.3d 1087,
1092 n.24 (9th Cir. 2000) (en banc) ( "a class action does not become moot
merely because it has become moot as to a named plaintiff") (citing Sosna v.
Iowa, 419 U.S. 393, 402 (1975)).

EXHIBIT A      000063

C.F.R. 241.4(d)(1) (immigration officials "may release an alien if the alien demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose [inter alia] a danger to the community"); 8 C.F.R. 241.4(a)(3) (applying discretionary release authority to, inter alia, cases involving aliens ordered removed for having been convicted of certain crimes). That the authority involved is discretionary is also clear from the release letter itself, which states only that he "may" be released. See ER 89.

Where an individual claims the right to be free of detention as a matter of law, the Government cannot moot the case by granting a discretionary, revocable release. Indeed, in Clark v. Martinez, 543 U.S. 371 (2005), another prolonged detention case, the Government granted a discretionary release to the petitioner shortly after oral argument in the Supreme Court. The Court, however, held that a live controversy continued to exist, explaining that a case is not moot where the petitioner contends "that the Government lacks the authority to continue to detain him," and although he has been released, he remains subject to the Government's claim that it possesses "discretionary authority to terminate" the release. Id. at 376 n.3.[7]

_____

[7] In Clark, the petitioner was released on a one-year parole, but the Court's discussion makes clear that what was dispositive was not the time limit but

EXHIBIT A    000064

Here, as in Clark, this case continues to present a live controversy. Mr. Rodriguez claims the Government has no authority to detain him without giving him a detention hearing, but the Government claims authority to release or detain him subject to its own discretionary decisionmaking, without any such hearing.

*Third*, when Mr. Rodriguez filed this action and asserted claims on behalf of other, similarly situated detainees, he voluntarily accepted fiduciary duties to the other class members. Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 331 (1980). His release – even if he had thereby obtained all of the relief that he sought for himself – does not eliminate his continuing personal interest in discharging his fiduciary obligations to the putative class members in the litigation. See Gardner v. Westinghouse Broadcasting Co., 559 F.2d 209, 219 (3d Cir. 1977) (Seitz, C.J., concurring) (stating that named plaintiff whose individual claim was moot "has a continuing personal stake stemming from the fact that she is a fiduciary on behalf of the putative class").

---

the fact that the Government continued to assert discretionary authority to re-detain him.

36

> b. **The Government's "Voluntary Cessation" Of
> Detention Does Not Moot Mr. Rodriguez's
> Claim.**

Even if Mr. Rodriguez had obtained all the relief he seeks, the

"voluntary cessation" exception to the mootness doctrine would still apply

here. Indeed, the voluntary cessation exception was crafted for situations

exactly like this one, where a party has sought to evade a ruling on the

legality of its actions by ceasing that action in response to a lawsuit. As the

Supreme Court has explained:

> It is well settled that a defendant's voluntary cessation of a
>
> challenged practice does not deprive a federal court of its power
>
> to determine the legality of the practice. ... If it did, the courts
>
> would be compelled to leave the defendant ... free to return to
>
> his old ways.

Friends of the Earth, Inc., v. Laidlaw Environmental Services (TOC), Inc.,

528 U.S. 167, 189 (2000) (internal citations omitted). For this reason, the

Government bears a "heavy burden" to make it "absolutely clear" that the

challenged conduct will not recur. Id.; see also FTC v. Affordable Media,

LLC, 179 F.3d 1228, 1238 (9th Cir. 1999) ("Mere voluntary cessation of

allegedly illegal conduct does not moot a case").

37

Here, the Government has not taken even the slightest step toward meeting its "heavy burden" of showing that it is "absolutely clear" that Mr. Rodriguez will not be re-detained. Nothing in the release order or any other document suggests that Mr. Rodriguez could not be re-detained. Under these circumstances, the most logical conclusion is that the Government would "return to [its] old ways" and re-detain him once this lawsuit is resolved. In any event, the Government has not shown that it is "absolutely clear" that this is not the case. See Friends of the Earth, 528 U.S. at 189-91.

### c. The Government Cannot Moot The Claims Of The Class By "Picking Off" The Named Representative.

The Government's decision to put Mr. Rodriguez on supervised release shortly before it filed its opposition to his class certification motion is an obvious attempt to moot the class claims by "picking off" the class representative. Courts have repeatedly rejected and condemned such attempts. Indeed, the Supreme Court has held that tendering payment to the named representatives while a case was on appeal from a denial of class certification did not moot the appeal, explaining:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification

38

EXHIBIT A    000067

> could be obtained, obviously would frustrate the objectives of
> class actions; moreover it would invite waste of judicial
> resources by stimulating successive suits brought by others
> claiming aggrievement.

Deposit Guar. Nat'l Bank, 445 U.S. at 339.  Numerous other decisions

reflect the same rule.  E.g., ABN Amro Verzekeringen BV v. Geologistics

Americas, Inc., 485 F.3d 85, 95 (2d Cir. 2007) (rejecting defendants'

contention that their consent to judgment against them on the individual

claims of the plaintiffs rendered the case moot or deprived the court of

subject matter jurisdiction); Weiss v. Regal Collections, 385 F.3d 337, 347

(3d Cir. 2004) (rejecting "defendants' tactic of 'picking off' lead plaintiffs");

Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1050 (5th Cir.

1981) (same); Susman v. Lincoln American Corp., 587 F.2d 866, 870 (7th

Cir. 1978) ("when a motion for class certification has been pursued with

reasonable diligence and is then pending before the district court, a case does

not become moot merely because of the tender to the named plaintiffs of

their individual money damages"); see also Newberg on Class Actions, 2:16

(2007).

   In an analogous context, courts have held that class challenges to

delays in providing public assistance are not rendered moot by the provision

EXHIBIT A    000068

of benefits to the named plaintiff. "[T]he fact that the plaintiffs received their unlawfully delayed benefits after the lawsuit was commenced did not mean that the action thereby became moot." Robidoux v. Celani, 987 F.2d 931, 938 (2d. Cir. 1993); see also Sosna, 419 U.S. at 402 n.11 (stating that if mootness occurs "before the district court can reasonably be expected to rule on a certification motion," certification may be allowed to relate back to the filing of the complaint, depending upon "the circumstances of the particular case" and whether "the issue would otherwise evade review"); County of Riverside v. McLaughlin, 500 U.S. 44, 52 (1991) ("That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction. ... In such cases, the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution.").

The timing and other circumstances surrounding Mr. Rodriguez's release clearly indicate that the Government released him in an attempt to "pick off" the class representative in this matter. The Government has never even claimed that there were changed circumstances or any other reason (independent of the litigation) for its decision to release Mr. Rodriguez. Indeed, the release documents themselves indicate that the Government made a decision to continue to detain Petitioner in custody on March 29, 2007 (approximately six weeks before the Petition was filed) but then

EXHIBIT A    000069

hurriedly changed course and ordered him released, without even creating a

separate set of adjudication documents or providing any reasoning, in late

July 2007.  ER 101.

Subsequent events further reinforce the conclusion that Mr. Rodriguez

was released in an attempt to "pick off" the class representative.  On October

1, 2007, while the class certification motion in this matter was under

submission, the same counsel who represent the Petitioner filed a similar

class action habeas petition challenging the same Government conduct that

is at issue here.  RJN Ex. E.  This was done, explicitly, in order to preserve

the rights of class members in the event that the district court determined

that Mr. Rodriguez's petition was moot.  The petitioner in that case, Mr.

Jung Jin Lee, had been in custody for more than two years without a

detention hearing.  The Government, however, released Mr. Lee from

custody four days after the petition was filed – without any explanation from

ICE or any other change in his status.  ER 256-261.[8]

Thus, the Government transparently attempted to "pick off" Mr.

Rodriguez as the class representative in this action.  As demonstrated above,

---

[8] Subsequently, the BIA <u>sua</u> <u>sponte</u> reopened Mr. Lee's case and ruled in his
favor, thus dismissing all removal proceedings against him.  The Magistrate
Judge ruled that the case was moot in light of the fact that Mr. Lee no longer
faced any possibility of removal from the United States.  RJN Ex. F.

EXHIBIT A    000070

such obvious defense tactics are not sufficient to defeat a motion for class

certification.

### d.    Mr. Rodriguez's Claims Are Capable of Repetition Yet Evading Review.

Mr. Rodriguez's claims also remain part of a live controversy because

they fall under the "capable of repetition yet evading review" exception. As

this Court has explained, this exception is particularly applicable when a

party is "challenging an ongoing government policy." United States v.

Howard, 480 F.3d 1005, 1010 (9th Cir. 2007); see also, e.g., Oregon

Advocacy Ctr. v. Mink, 322 F.3d 1101, 1118 (9th Cir. 2003). As Mr.

Rodriguez is subject to an ongoing government policy which allows for him

to be returned to detention, he meets the requirement that there be a

"reasonable expectation that the same parties will be subjected to the same

offending conduct." Demery v. Arpaio, 378 F.3d 1020, 1026 (9th Cir.

2004). That Mr. Rodriguez may be subject to repetition of prolonged

detention is "not at all difficult to foresee." Ward v. Portland, 857 F.2d

1373, 1377 (9th Cir. 1988).

Moreover, even if Mr. Rodriguez himself were not subject to

prolonged detention again, other members of the class remain in custody.

The rule "[t]hat the injury be capable of repetition with respect to the

particular plaintiff ... is a requirement only in non-class actions." Perez-

42

Funez v. Crosland, 611 F. Supp. 990, 999 (C.D. Cal. 1984) (citing Weinstein v. Bradford, 423 U.S. 147, 149 (1975)). "Thus, even if the claims of the [Petitioner] herein were deemed moot, this would not necessarily deprive [him] of standing to represent the proposed class." Id.; see also Gerstein v. Pugh, 420 U.S. 103, 110 n. 11 (1975); Howard, 489 F.3d at 1010. Any other rule would allow the Government to evade judicial review of its unlawful policy by repeatedly releasing the named plaintiff in any class action challenging prolonged detention.

Finally, even if the District Court properly determined that Mr. Rodriguez's release from custody makes his claim no longer typical, the District Court abused its discretion in denying his request for leave to amend to substitute or add another class member as the class representative. As Mr. Rodriguez advised the District Court, his counsel was aware of dozens of other detainees who are class members, and at least two of them have stated that they would serve as named class representatives in the event that Mr. Rodriguez is unable to do so. ER 166; see also Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); Foman v. Davis, 371 U.S. 178, 182 (1962); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

43

### 4.    Mr. Rodriguez Would Be An Adequate Class
Representative.

Rule 23(a)(4) requires that the class representatives must fairly and

adequately protect the interests of the class. <u>Dukes</u>, 509 F.3d at 1185;

<u>Amchem</u>, 521 U.S. at 613. To satisfy the requirement of adequate

representation, (1) the proposed class representative must not have conflicts

of interest with the proposed class, and (2) class counsel must be qualified

and competent. <u>Dukes</u>, 509 F.3d at 1185; <u>see also</u> <u>Linney v. Cellular Alaska

Partnership</u>, 151 F.3d 1234, 1238-39 (9th Cir. 1998); <u>In re Northern Dist. of

Cal. Dalkon Shield IUD Prods. Liab. Litigation</u>, 693 F.2d 847, 855 (9th Cir.

1982); <u>Lerwill v. Inflight Motion Pictures, Inc.</u>, 582 F.2d 507, 512 (9th Cir.

1978).

In the District Court, Mr. Rodriguez made the required showing on

adequacy of representation, and the Government did not identify any conflict

of interest between Mr. Rodriguez and the class (or within the class itself).

Nor did the Government suggest that the proposed class counsel – attorneys

from the ACLU of Southern California, the ACLU Immigrants' Rights

Project, the Stanford Law School Immigrants' Rights Clinic, and the law

firm of Sidley Austin LLP – are not qualified and competent to represent the

class. Thus, the requirements of Rule 23(a)(4) are plainly satisfied here.

44

## B.    The Requirements Of Rule 23(b)(2) Are Satisfied

For a class to be certified under Rule 23(b)(2), there must be a
showing that "the party opposing the class has either acted or failed to act on
grounds generally applicable to the class, thereby making appropriate final
injunctive relief or corresponding declaratory relief with respect to the class
as a whole." Fed. R. Civ. P. 23(b)(2); see also, e.g., Dukes, 509 F.3d at
1185-86. Rule 23(b)(2) is satisfied if class members complain of a pattern
or practice that is generally applicable to the class as a whole. See Walters,
145 F.3d at 1047.

Here, the requirements of Rule 23(b)(2) are easily satisfied. Mr.
Rodriguez alleges that all class members have been the victims of the
Government's unlawful general practices and policies. All class members
have been denied a hearing regarding their prolonged detention, and all seek
the same final injunctive and declaratory relief – a court order requiring
Respondents to provide them with a hearing and declaring that the policy
and practice of holding class members for prolonged periods without a
hearing is unlawful under the general immigration detention statutes and the
U.S. Constitution. Rule 23(b)(2) requires no more. See Walters, 145 F.3d at
1048; Perez-Funez v. INS, 611 F. Supp. 990 (C.D. Cal. 1984) (certifying
Rule 23(b)(2) class and finding injunctive and declaratory relief appropriate

45

where the INS acted on grounds applicable to a class of potential deportees);

Society for Individual Rights, Inc. v. Hampton, 63 F.R.D. 399, 401 (N.D.

Cal. 1973), aff'd, 528 F.2d 905, 906 (9th Cir. 1975) (certifying and

upholding Rule 23(b)(2) class action where the Civil Service uniformly

applied a practice of excluding homosexuals from government jobs).

## IV.   Section 1252(f)(1) Does Not Bar Certification Of A Class In This Matter.

In the District Court, the Government argued that the jurisdiction-

limiting provisions of 8 U.S.C. 1252(f)(1) barred a class action in this

matter.  Again, to the extent that the District Court silently accepted this

argument, it committed legal error.  For several independent reasons, the

provisions of 8 U.S.C. 1252(f)(1) plainly do not support the District Court's

order.

*First*, Mr. Rodriguez brought this class action as a habeas corpus

petition.  The Supreme Court has repeatedly held that, because of the

historical and constitutional importance of habeas, Congress may not strip

the federal courts of their jurisdiction to grant habeas relief without

explicitly mentioning the general federal habeas statute – 28 U.S.C. § 2241 –

by name.  See INS v. St. Cyr, 533 U.S. 289, 314 (2001); Demore v. Kim,

538 U.S. 510 (2003).

46

EXHIBIT A    000075

Section 1252(f)(1) does not come close to meeting the stringent requirements for repeal of Section 2241 set forth by the Supreme Court. The section does not mention either habeas corpus or Section 2241 by name. See St. Cyr, 533 U.S. at 312 (rejecting argument that two other statutory provisions repealed habeas corpus jurisdiction, in part because "[n]either explicitly mentions habeas, or 28 U.S.C. § 2241"); Demore, 538 U.S. at 517-18 (finding different jurisdictional statute insufficient to defeat habeas jurisdiction despite language stating that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien").

Indeed, the rule against implied repeals of habeas corpus jurisdiction has particular force in this case, because Congress amended the jurisdictional provisions of the immigration statutes to repeal (and replace) habeas corpus in 2005, with the passage of the REAL ID Act. But while Congress amended other sub-sections of 8 U.S.C. 1252 to make that change, it added no explicit repealing language to Section 1252(f). Compare Section 1252(a)(2)(A-C), 1252(a)(4), 1252(a)(5) (all explicitly repealing Section 2241) with Section 1252(f)(1) (not mentioning Section 2241); see generally REAL ID Act of 2005 § 106, Pub. L. 109-13, 119 Stat. 231. Thus, Congress has manifested its intent to allow district courts to continue to grant

47

EXHIBIT A     000076

injunctive relief in habeas corpus proceedings. Indeed, the Government
cannot point to a single case holding that a district court lacked authority to
issue habeas relief under Section 1252(f).

*Second*, even if this were not a habeas case, Section 1252(f)(1) still
would not strip the Court of authority to certify this class. Section
1252(f)(1) is narrowly drawn to bar injunctions against only "the operation
of" Sections 1221-1231. Mr. Rodriguez does not seek to enjoin the
"operation" of any of those provisions. Instead, he docs the opposite – he
argues that the Government has misinterpreted those statutory provisions,
and for this reason is failing to implement them correctly. Mr. Rodriguez
also argues that the Government's erroneous interpretation of those statutory
provisions is leading to unconstitutional results.

This Court has held that Section 1252(f) does not foreclose claims
challenging the Government's interpretation of the immigration statutes on
statutory and constitutional grounds. Ali v. Ashcroft, 346 F.3d 873 (9th Cir.
2003), vacated on unrelated grounds, Ali v. Gonzalez, 421 F.3d 795 (9th Cir.
2005) (vacating the earlier opinion because of the Supreme Court's opinion
in Jama v. ICE, 543 U.S. 335 (2005)). Although the Ali Court's conclusion
on the merits is no longer good law, its holding concerning the scope of
Section 1252(f) remains instructive. The Government argued in Ali, as it

48

EXHIBIT A   000077

does here, that Section 1252(f) barred the courts from entering a class-wide injunction. This Court rejected that claim. In doing so, the Court noted that the petitioners were seeking "not to enjoin the operation of [the statute] but violations of the statute and 'to ensure that the provision is properly implemented.'" Id. at 886 (citations omitted).[9]

*Third*, Section 1252(f)(1) by its plain terms does not bar class actions; it acts at most only to foreclose certain kinds of injunctive relief. Cf. 8 U.S.C. 1252(e)(1)(B) (neighboring provision that expressly bars certain class actions challenging expedited removal provisions of statute). Thus, even if Section 1252(f)(1) could be read to bar the injunctive relief that Mr. Rodriguez seeks, it still would manifestly not preclude the Court from certifying the class, adjudicating the statutory and constitutional issues raised by this action, and issuing declaratory relief and any other appropriate non-injunctive relief to Mr. Rodriguez and the class. Cf. Andreiu v. Ashcroft, 253 F.3d 477, 480-81 (9th Cir. 2001) (en banc) (construing Section 1252(f) narrowly so as not to strip court of jurisdiction to enter stays of removal in part because neighboring provision explicitly mentions stays).

_____

[9] This Court also found that Section 1252(f) is not implicated when a petitioner "seeks to enjoin conduct that allegedly is not even authorized by the statute." Ali, 346 F.3d at 886. Similarly, here, Section 1252(f) should not be read to bar challenges to detention that is not authorized by statute.

EXHIBIT A   000078

<u>CONCLUSION</u>

For the foregoing reasons, Mr. Rodriguez respectfully requests the

Court to reverse the order of the District Court denying his motion for class

certification and to remand this proceeding with instructions to the District

Court to grant the certification motion.

Respectfully submitted,

**ACLU FOUNDATION OF
SOUTHERN CALIFORNIA**
Peter J. Eliasberg
Ahilan T. Arulanantham

**AMERICAN CIVIL LIBERTIES
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT**
Judy Rabinowitz

**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT**
Cecillia D. Wang

**STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC**
Jayashri Srikantiah

**SIDLEY AUSTIN LLP**
Steven A. Ellis
William Tran
Brian K. Washington

Dated:  September 12, 2008              By:

Steven A. Ellis
Counsel for Petitioner-Appellant
Alejandro Rodriguez

50

EXHIBIT A    000079