1  PETER J. ELIASBERG (SBN 189110)
   Email: peliasberg@aclu-sc.org
2  AHILAN T. ARULANANTHAM (SBN 237841)
   Email: aarulanantham@aclu-sc.org
3  RANJANA NATARAJAN (SBN 230149)
   Email: rnatarajan@aclu-sc.org
4  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1616 Beverly Boulevard
5  Los Angeles, California 90026
   Tel: (213) 977-9500
6  Fax: (213) 250-3919
7  Attorneys for Petitioner
   (Additional counsel listed on following page)
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  WESTERN DIVISION

12
   ALEJANDRO RODRIGUEZ,              )  Case No. CV 07-3239-TJH  (RNB)
13 A# 41-551-486, et al.             )
                                     )  REPLY MEMORANDUM OF
14          vs.                      )  POINTS AND AUTHORITIES IN
                                     )  SUPPORT OF MOTION FOR
15 JAMES HAYES, Immigration and      )  CLASS CERTIFICATION;
   Customs Enforcement, Los Angeles  )  EXHIBITS
16 District Field Office Director;   )
   GEORGE MOLINAR, Chief of          )
17 Detention and Removal Operations, )
   San Pedro Detention Facility;     )
18 MICHAEL CHERTOFF, Secretary,      )
   Department of Homeland Security;  )
19 ALBERTO GONZALES, United          )
   States Attorney General; PAUL     )
20 WALTERS, Chief of Police for the  )
   city of Santa Ana; LEE BACA,      )
21 Sheriff of Los Angeles County;    )
   SAMMY JONES, Chief of the         )
22 Custody Operations Division of the )
   Los Angeles County Sheriff's      )
23 Department;                       )
                                     )
24          Respondents.            )
                                     )
25

26

27

28

EXHIBIT C    000100

1   Additional counsel:

2   JUDY RABINOVITZ**
    AMERICAN CIVIL LIBERTIES FOUNDATION
3   IMMIGRANTS' RIGHTS PROJECT
    125 Broad Street, 18th Floor
4   New York, NY 10004
    Telephone: (212) 549-2618
5   Facsimile: (212) 549-2654

6   CECILLIA D. WANG (SBN 187782)
    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
7   IMMIGRANTS' RIGHTS PROJECT
    39 Drumm Street
8   San Francisco, CA 94111
    Telephone: (415) 343-0775
9   Facsimile: (415) 395-0950

10  JAYASHRI SRIKANTIAH (SBN 189566)
    STANFORD LAW SCHOOL
11  IMMIGRANTS' RIGHTS CLINIC
    Crown Quadrangle
12  559 Nathan Abbott Way
    Stanford, CA 94305-8610
13  Telephone: (650) 724-2442
    Facsimile: (650) 723-4426

14
    STEVEN A. ELLIS (SBN 171742)
15  POOJA TECKCHANDANI (SBN 247854)*
    WILLIAM TRAN (SBN 245104)
16  BRIAN K. WASHINGTON (SBN 248960)*
    SIDLEY AUSTIN LLP
17  555 West Fifth Street, Suite 4000
    Los Angeles, California 90013-1010
18  Telephone: (213) 896-6000
    Facsimile: (213) 896-6600

19
    *Pending admission to Central District of California
20  **Application for admission *pro hac vice* forthcoming

21

22

23

24

25

26

27

28

EXHIBIT C   000101

## **TABLE OF CONTENTS**

REPLY MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . 1

I.    THE DISCRETIONARY, CONDITIONAL RELEASE OF
PETITIONER DOES NOT RENDER MOOT EITHER HIS
INDIVIDUAL CLAIM OR THE CLAIMS OF THE
PUTATIVE CLASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.    Because The Government Has Not Provided
         Either Petitioner Or The Other Class Members
         All Of The Relief They Seek, A Live Controversy
         Still Exists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   B.    The Government's Voluntary Cessation Of
         Detention Does Not Moot Petitioner's Claim
         For Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   C.    The Government Cannot Moot The Claims
         Of The Class By "Picking Off" The
         Named Representative . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   D.    The Claims Are Not Moot Because They Are
         Capable of Repetition Yet Evading Review . . . . . . . . . . . . . . . . . . 11

II.   THE PROPOSED CLASS MEETS THE REQUIREMENTS
OF RULE 23 AND SHOULD BE CERTIFIED . . . . . . . . . . . . . . . . . . . . 11

i

EXHIBIT C    000102

1

A.    The Definition Of The Proposed Class

2    In The Petition Is Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3        1.    Future Class Members Are Properly

4            Included Within The Class Definition  . . . . . . . . . . . . . . . . . 12

5        2.    The Petition Names As Respondents The

6            Immediate Custodian Of All Class Members  . . . . . . . . . . . 13

7        3.    The Proposed Class Definition Is Specific  . . . . . . . . . . . . . 14

8

9    B.    The Proposed Class Satisfies The

10    Requirements Of Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11        1.    Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12        2.    Commonality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13        3.    Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

14        4.    Adequacy  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

15

16    C.    The Proposed Class Satisfies The Requirements Of Rule 23(b) . . . 20

17

18 III.    8 U.S.C. 1252(f) DOES NOT PRECLUDE THIS CLASS ACTION  . . . . 21

19

20 CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

21

22

23

24

25

26

27

28

ii

EXHIBIT C    000103

1

## <u>TABLE OF AUTHORITIES</u>

2

3 **FEDERAL CASES**                                                                  **Page(s)**

4

5 <u>ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.</u>,
6        485 F.3d 85 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7

8 <u>AILA v. Reno</u>,
9        199 F.3d 1352, 1358-60, 1364 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 23

10

11 <u>Ali v. Ashcroft</u>,
12        346 F.3d 873 (9th Cir. 2003), vacated on unrelated grounds . . . . . . . . . . . 22

13

14 <u>Ali v. Gonzalez</u>,
15        421 F.3d 795 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

16

17 <u>American-Arab Anti-Discrimination Committee v. Reno</u>,
18        525 U.S. 471 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

19

20 <u>Andreiu v. Ashcroft</u>,
21        253 F.3d 477 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

22

23 <u>Armentero v. INS</u>,
24        412 F.3d 1088 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

25

26 <u>Bucio-Carillo v. Gilkey</u>,
27        2007 U.S. App. LEXIS 9861 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 4

28

iii

EXHIBIT C   000104

1  Carafas v. Lavallee,
2       391 U.S. 234 (1968) ........................................... 6
3
4  Catholic Social Services, Inc. v. INS,
5       232 F.3d 1139 (9th Cir. 2000) ........................... 23, 24
6
7  Clark v. Martinez,
8       543 U.S. 371 (2005) ........................................ 7, 17
9
10  County of Riverside v. McLaughlin,
11       500 U.S. 44 (1991) ........................................... 10
12
13  Demery v. Arpaio,
14       378 F.3d 1020 (9th Cir. 2004) .............................. 11
15
16  Demore v. Kim,
17       538 U.S. 510 (2003) ....................................... 17, 21
18
19  Deposit Guaranty National Bank v. Roper,
20       445 U.S. 326 (1980) ........................................ 8, 10
21
22  Diouf v. Gonzalez,
23       Case No. CV 06-7452-TJH (C.D. Cal. Jan. 4, 2007) ............... 1,16
24
25  Does 1-5 v. Chandler,
26       83 F.3d 1150 (9th Cir. 1996) ................................ 12
27
28

EXHIBIT C    000105

Dukes v. Wal-Mart,
     474 F.3d 1214 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

FTC v. Affordable Media, LLC,
     179 F.3d 1228 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Foman v. Davis,
     371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC),Inc.,
     528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 9

Gardner v. Westinghouse Broadcasting Co.,
     559 F.2d 209 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Gerstein v. Pugh,
     420 U.S. 103 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gorbach v. Reno,
     219 F.3d 1087 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hanlon v. Chrysler Corp.,
     150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

Hor v. Gonzales,
     400 F.3d 482 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

EXHIBIT C    000106

INS v. National Ctr. for Immigrant Rights,
    502 U.S. 183 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

INS v. St. Cyr,
    533 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

Jama v. ICE,
    543 U.S. 335 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

LaDuke v. Nelson,
    762 F.2d 1318 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lopez v. Smith,
    203 F.3d 1122 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ma v. Ashcroft,
    257 F.3d 1095 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Martinez v. Gonzales,
    Case No. CV 06-7609-TJH (C.D. Cal. Jan. 4, 2007) . . . . . . . . . . . . . . 1,16

Mussa v. Gonzalez,
    Case No. CV 06-2749-TJH, (Oct. 17, 2006) . . . . . . . . . . . . . . . . . . . 1,3,6

Nadarajah v. Gonzales,
    443 F.3d 1069 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 16, 17

vi

EXHIBIT C    000107

1  Nakaranurack v. United States,
2       68 F.3d 290 (9th Cir. 1995) ................................... 6
3
4  Ngo v. INS,
5       192 F.3d 390 (3d Cir. 1999) ................................. 18
6
7  Oregon Advocacy Ctr. v. Mink,
8       322 F.3d 1101 (9th Cir. 2003) .............................. 11
9
10 Pelich v. INS,
11      329 F.3d 1057 (9th Cir. 2003) .............................. 18
12
13 Perez-Funez v. Crosland,
14      611 F. Supp. 990 (C.D. Cal. 1984) ......................... 11
15
16 Picrin-Peron v. Rison,
17      930 F.2d 773 (9th Cir. 1991) ............................... 7
18
19 Probe v. State Teachers' Retirement System,
20      780 F.2d 776 (9th Cir. 1986) .............................. 12
21
22 Rasheed v. Gonzales,
23      Case No. CV 06-7449-TJH (C.D. Cal. Jan. 4, 2007) .............. 1,3,16
24
25 Robidoux v. Celani,
26      987 F.2d 931 (2d. Cir. 1993) .............................. 10
27
28

vii

EXHIBIT C    000108

Rumsfeld v. Padilla,
    542 U.S. 426 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Santillan v. Ashcroft,
    2004 U.S. Dist. LEXIS 20824 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . 13

Soeoth v. Gonzales,
    Case No. CV 06-7451-TJH (C.D. Cal. Jan. 4, 2007) . . . . . . . . . . . . . . 1,16

Sosna v. Iowa,
    419 U.S. 393 at 402 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Susman v. Lincoln American Corp.,
    587 F.2d 866 (7th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tesfamichael v. Gonzales,
    411 F.3d 169 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Tijani v. Willis,
    430 F.3d 1241 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 2, 17, 18

United States v. Howard,
    480 F.3d 1005 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Van Dinh v. Reno,
    197 F.3d 427 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

EXHIBIT C    000109

Ward v. Portland,
    857 F.2d 1373 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Weinstein v. Bradford,
    423 U.S. 147 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Weiss v. Regal Collections,
    385 F.3d 337 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Zadvydas v. Davis,
    533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16, 17

Zeidman v. J. Ray McDermott & Co., Inc.,
    651 F.2d 1030 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES**

8 C.F.R. 241.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

8 U.S.C. 1182(d)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8 U.S.C. 1225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

8 U.S.C. 1226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,16

8 U.S.C. 1231(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

viiii

EXHIBIT C     000110

8 U.S.C. 1225(b)(1)(B)(ii) ............................................. 16

8 U.S.C. 1225(b)(2)(A) ............................................... 16

8 U.S.C. 1226(c) ................................................. 17, 18

8 U.S.C. 1226a ...................................................... 14

8 U.S.C. 1231(a)(6) .............................................. 16, 18

8 U.S.C. 1252(a)(2) .................................................. 21

8 U.S.C. 1252(a)(4) .................................................. 21

8 U.S.C. 1252(a)(5) .................................................. 21

8 U.S.C. 1252(e)(1)(B) ............................................... 24

8 U.S.C. 1252(f) ......................................... 21, 22, 23, 24

8 U.S.C. 1252(g) ..................................................... 24

8 U.S.C. 1255(a) ..................................................... 23

8 U.S.C. 1531-1537 ................................................... 14

28 U.S.C. 2241 ................................................... 21, 22

x

EXHIBIT C    000111

Fed. R. Civ. P. 15(a) ................................................... 20

REAL ID Act of 2005 § 106, Pub. L. 109-13, 119 Stat. 231 ................ 22

**MISCELLANEOUS**

Newberg on Class Actions, 2:16 (2007) ................................ 10

xi

EXHIBIT C    000112

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

In this proceeding, all class members share a common claim: the Government has denied all of them their statutory and constitutional right to a hearing before an Immigration Judge (IJ) to determine whether their prolonged and indefinite detention is justified.

As is set forth clearly in his petition, the Petitioner here seeks only one form of relief for himself and the members of the putative class – a hearing (with certain procedural protections) to determine whether continued detention is justified. See Petition for Writ of Habeas Corpus ("Petition") at 2-3, 21. In response to this Court's ruling in Mussa v. Gonzales, Case No. CV 06-2749-TJH, Order Dismissing Without Prejudice (Oct. 17, 2006) (attached as Exhibit 2 to Government's Opposition ("Opp.")), the Petition expressly disclaims any intention to seek an order from this Court releasing Petitioner or other class members. Petition at 3.

The right of Petitioner and other class members to such a hearing is plainly established. Earlier this year, this Court ordered the Government to hold identical hearings in four separate, individual cases filed by similarly situated immigrants detained under various general detention statutes. Diouf v. Gonzales, Case No. CV 06-7452-TJH (C.D. Cal. Jan. 4, 2007) (order granting in part Petitioner's Motion for Preliminary Injunction); Martinez v. Gonzales, Case No. CV 06-7609-TJH (C.D. Cal. Jan. 4, 2007) (same); Soeoth v. Gonzales, Case No. CV 06-7451-TJH (C.D. Cal. Jan. 4, 2007) (same); Rasheed v. Gonzales, Case No. CV 06-7449-TJH (C.D. Cal. Jan. 4, 2007) (same). Those rulings were based upon decisions of the United States Supreme Court and the Ninth Circuit that have made it clear that the Government does not have the statutory right to detain class members for prolonged and indefinite periods while their immigration cases are pending, at least absent a constitutionally adequate hearing. Zadvydas v. Davis, 533 U.S. 678, 690-92 (2001); Nadarajah v. Gonzales, 443 F.3d 1069, 1078-79 (9th Cir. 2006);

1

EXHIBIT C    000113

1   <u>Tijani v. Willis</u>, 430 F.3d 1241, 1242 (9th Cir. 2005); <u>see also</u> Petition at 4, 15-17.

2       Although the Government has complied with this Court's ruling in the four

3   individual cases, the Government refuses to provide hearings to other detainees.

4   Thus, notwithstanding this Court's Standing Order regarding Indefinite Detention

5   cases, as of this time dozens of detainees in this District are being held in custody,

6   in some cases for years, without hearings to determine whether their detention is

7   justified, and without lawyers to vindicate their rights.  Petitioner seeks

8   certification of a class as the most efficient way, and perhaps the only practicable

9   way, to ensure that the Government will honor the statutory and constitutional

10   rights of all detainees in the District – and not only those detainees with the

11   contacts or resources to file their own separate habeas corpus petitions.  Courts

12   have on many occasions certified classes in habeas actions in precisely these

13   circumstances, in which a common government practice or policy is violating the

14   statutory and/or constitutional rights of a large number of persons.

15       In response to this motion, the Government – apparently realizing that it

16   was unable to defend its policy on the merits or to defeat class certification –

17   released the Petitioner at the eleventh hour (more than two months after the

18   Petition was filed but only twelve days before the Government's opposition to this

19   motion was due).  But, notwithstanding his release from custody, the Government

20   continues to impose substantial restrictions on Petitioner's liberty: among other

21   things, he is under house arrest (he is not permitted to travel more than 50 feet

22   from his home between 7 pm and 7 am each day), and he must wear an electronic

23   ankle monitor at all times.

24       The discretionary, conditional, heavily restricted release of the Petitioner

25   from physical custody does not render moot his individual claim; he has not

26   received all of the relief he seeks.  Moreover, the release of the Petitioner certainly

27   does not render moot the claims of the dozens of other class members who remain

28   in custody and have not been given the required hearing.  As a result, and as set

2

EXHIBIT C    000114

1   forth below in more detail, a live controversy remains.

2      If, however, the Court determines that the release of the Petitioner from

3   physical custody means that he no longer has typical claims or is no longer an

4   adequate representative of the class, Petitioner respectfully requests that he be

5   granted leave to amend his Petition, so that he may add or substitute a new class

6   representative who is currently in physical custody and subject to the

7   Government's unlawful detention policy. See Exhibit 10 (Declaration of Bardis

8   Vakili of August 13, 2007) (describing other detainees willing to serve as class

9   representatives) (attached).

10   **I.**     **THE DISCRETIONARY, CONDITIONAL RELEASE OF**

11         **PETITIONER DOES NOT RENDER MOOT EITHER HIS**

12         **INDIVIDUAL CLAIM OR THE CLAIMS OF THE**

13         **PUTATIVE CLASS**

14      The Government's primary argument in its Opposition is that this case is

15   moot, as to both Petitioner and the class he seeks to represent, because it released

16   Petitioner (subject to significant restrictions on his liberty) after he filed the

17   Petition and the motion for class certification at issue here. Opp. at 1-3. This

18   decision was made shortly before the Government's opposition to this motion was

19   due – and after it had held the Petitioner in custody for more than three years.

20      The Government does not claim that there were changed circumstances or

21   any other reason (independent of the litigation) for its decision to release

22   Petitioner, and the timing is suspect, to say the least. In this critical respect,

23   Petitioner's case is different from prior cases before this Court, in which the

24   Government released petitioners after they had prevailed in their immigration

25   cases. See, e.g., Opp., Exh. 2, at 38, 46 (order dismissing Mussa as moot after

26   petitioner won relief before the Board of Immigration Appeals). See also Rasheed

27   v. Gonzales, Case No. CV 06-7449-TJH (C.D. Cal Aug. 8, 2007) (dismissing

28   habeas petition as moot after Petitioner won his immigration case and was then

EXHIBIT C   000115

1  released).  In contrast, here the release documents themselves indicate that the

2  primary reason for the release was the pending litigation: the Government made a

3  decision to continue to detain Petitioner in custody on March 29, 2007

4  (approximately six weeks before the Petition was filed) but then hurriedly changed

5  course and ordered him released, without even creating a separate set of

6  adjudication documents, in late July.  See Opp., Exh. 1, at 34.[1]

7       The Government's naked attempt to evade the Court's review by releasing

8  the Petitioner fails for a number of independent reasons: (a) the Government did

9  not give either the Petitioner or the class all of the relief they seek; (b) the

10  "voluntary cessation" of the challenged conduct as it relates to the class

11  representative does not render moot a class claim for injunctive relief; (c) a

12  defendant may not evade certification of a class by "picking off" the class

13  representative; and (d) the conduct at issue falls within the "capable of repetition

14  yet evading review" doctrine.[2]

15

16  [1] Several features of the release order make it hard to determine what legal basis it
    rests upon, while simultaneously revealing that it was made in haste, no doubt in
17  an attempt to moot out this case.  For example, the release letter suggests that
    Petitioner is being released because the Government has been unable to obtain a
18  travel document for him, and actually states that he will be re-detained once a
    travel document is obtained so that he can be removed.  See Opp., Exh. 1, at 22.
19  However, as the Government's own documents state, Mexican nationals can be
    removed without obtaining travel documents.  See id. at 31.  In addition, the
20  release form was first completed in March of this year, but at that time it
    recommended that Petitioner remain in custody.  Four months later, after this case
21  was filed, the document was changed to recommend release, but no change to the
    reasoning on the form was given.  These problems make clear that the Government
22  has made a purely discretionary decision that it could reverse at any time.

23  [2] In its discussion of this issue, the Government conflates standing and mootness,
    Opp. at 1-3, which are related but distinct legal doctrines.  Plaintiff bears the
24  burden of establishing standing, which is measured as of the time the complaint is
    filed.  See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S.
25  167, 191 (2000).  Because Petitioner was in custody at the time he filed the
    complaint, he has standing.  See Bucio-Carillo v. Gilkey, 2007 U.S. App. LEXIS
26  9861 (9th Cir. 2007) (unpublished disposition) ("It is a statutory jurisdictional
    prerequisite that habeas petitioners be in custody at the time of filing.").
27  Mootness, in contrast, can only arise while an action is pending.  Where, as here, a
    defendant claims that its voluntary conduct has rendered the action moot, it is the
28  defendant that "bears the formidable burden of showing that it is absolutely clear

4

EXHIBIT C    000116

A.    **Because The Government Has Not Provided Either Petitioner Or The Other Class Members All Of The Relief They Seek, A Live Controversy Still Exists**

Notwithstanding its protestations to the contrary, the Government has not provided all of the relief sought in the Petition. Most obviously, the Government has not provided any relief at all to the members of the class, and so the claims of the class members are certainly not moot. See Gorbach v. Reno, 219 F.3d 1087, 1092 n.24 (9th Cir. 2000) (en banc) ( "a class action does not become moot merely because it has become moot as to a named plaintiff") (citing Sosna v. Iowa, 419 U.S. 393, 402 (1975)). Although Petitioner has been released, the other members of the proposed class continue to be subject to the Government's unlawful detention policy.

Moreover, the Government has not even provided the Petitioner with all of the relief he seeks in his Petition. This is clear in three separate ways.

*First*, Petitioner asserts a right to a hearing – with certain specified protections – before an IJ to determine whether continued detention is justified. Petition, at 21. As part of that hearing, if the IJ orders the Petitioner to be released, the IJ would necessarily consider, among other things, whether a bond is necessary and what, if any, conditions of supervision are appropriate.

Petitioner has not received any such hearing before an IJ. Instead, the Government has unilaterally established release conditions that severely restrain Petitioner's liberty. Petitioner is under house arrest, required to stay within 50 feet of his residence from 7 pm to 7 am each day, and he must wear an electronic ankle monitor at all times. See Exhibit 8 , ¶ 3 (Declaration of Alejandro Rodriguez of August 13, 2007) (attached); Exhibit 9 (release documents showing that he

---

the allegedly wrongful behavior could not reasonably be expected to recur," and that it has completely and permanently provided all relief that the Petitioner seeks. Friends of the Earth, 528 U.S. at 189. As set forth in more detail below, the Government has not met this burden.

5

EXHIBIT C    000117

1  remains under house arrest) (attached).  In addition, his liberty is restricted in other

2  less severe but still significant ways, including by arbitrarily limiting the people

3  with whom he can "associate" and apparently by requiring him to take steps to

4  obtain a Mexican travel document.  See Opp., Exh. 1, at 26-27.[3]  If, however,

5  Petitioner obtains the hearing he seeks, he would have the opportunity to show

6  that he should not be subject to such draconian conditions.  These restraints on

7  liberty constitute sufficient injury to defeat mootness; indeed, courts have held that

8  other, much less immediate, restrictions give rise to a live controversy and defeat

9  any assertion of mootness.  See Carafas v. Lavallee, 391 U.S. 234, 238 (1968)

10  (holding that various restraints on liberty, including inability to vote and engage in

11  certain businesses, are sufficient to defeat mootness); cf. Nakaranurack v. United

12  States, 68 F.3d 290, 293 (9th Cir. 1995) (noting in immigration context that courts

13  "have broadly construed 'in custody' to apply to situations in which an alien is not

14  suffering any actual physical detention").[4]

15      Second, and independently, the Petitioner's release is discretionary, and is

16  subject to being revoked.  The release documents indicate that he was released

17  pursuant to 8 C.F.R. 241.4, which gives certain immigration officials discretionary

18  authority to release aliens ordered removed for having been convicted of certain

19  crimes.  See 8 C.F.R. 241.4(d)(1) (immigration officials "may release an alien if

20  the alien demonstrates to the satisfaction of the Attorney General or her designee

21

22  [3]The release documents submitted by the government and those given to Petitioner
   are not the same, perhaps because the government rushed to submit its documents
23  before executing them.  In any event, the government's documents do not reflect
   that Petitioner is under house arrest from 7 pm to 7 am despite the fact that the
24  documents given to him show this.  There are also other minor differences
   between the two sets of documents.

25

26  [4] The contrast to the Mussa case, in which this Court ruled that petitioner's claims
   were moot, could not be more stark.  There, the petitioner had been released "'with
27  no conditions or reporting requirements.'"  Opp., Exh. 2, at 38 (quoting
   declaration submitted by Government); see also id. at 46 (stating that the "DHS
28  released Mussa without conditions").  Here, in contrast, the Petitioner is under
   house arrest.

6

EXHIBIT C    000118

1   that his or her release will not pose [inter alia] a danger to the community"); 8

2   C.F.R. 241.4(a)(3) (applying discretionary release authority to, inter alia, cases

3   involving aliens ordered removed for having been convicted of certain crimes).

4   That the authority involved is discretionary is also clear from the release letter

5   itself, which states only that he "may" be released. See Opp., Exh. 1, at 22; see

6   also supra, n.1.

7       Where a petitioner claims the right to be free of detention as a matter of law,

8   the Government cannot moot the case by granting a discretionary, revocable

9   release. Indeed, in Clark v. Martinez, 543 U.S. 371 (2005), another prolonged

10  detention case, the Government granted a discretionary release to the petitioner

11  shortly after oral argument in the Supreme Court. The Court, however, held that a

12  live controversy continued to exist, explaining that a case is not moot where the

13  petitioner contends "that the Government lacks the authority to continue to detain

14  him" and, although he has been released, he remains subject to the Government's

15  claim that it possesses "discretionary authority to terminate" the release. Id. at 376

16  n.3.[5]

17      Here, as in Clark, this case continues to present a live controversy.

18  Petitioner claims the Government has no authority to detain him without giving

19  him a detention hearing, but the Government claims authority to release or detain

20  him subject to its own discretionary decisionmaking, without any such hearing.[6]

21      Third, when Petitioner filed his Petition and asserted claims on behalf of

22

23  [5] In Clark, the petitioner was released on a one-year parole, but the Court's discussion makes clear that what was dispositive was not the time limit but the fact that the Government continued to assert discretionary authority to re-detain him.

24

25  [6] The Government cites Picrin-Peron v. Rison, 930 F.2d 773 (9th Cir. 1991), Opp. at 2, but that case actually supports Petitioner's position. There, the court dismissed the petition as moot only after a federal official stated under oath that the petitioner would not be re-detained absent further involvement with the criminal justice system or a change permitting his repatriation. Id. at 776. The Government offers no such evidence here. And, in any event, Picrin-Peron is no longer good law on this point after Clark, where the Supreme Court found that the petition was not moot even after the Government released the petitioner.

26

27

28

7

EXHIBIT C   000119

1  other, similarly situated detainees, he voluntarily accepted fiduciary duties to the

2  other members of the putative class. <u>Deposit Guar. Nat'l Bank v. Roper</u>, 445 U.S.

3  326, 331 (1980) (noting the "responsibility of named plaintiffs to represent the

4  collective interests of the putative class"). His release – even if he had thereby

5  obtained all of the relief that he sought for himself – does not eliminate his

6  continuing personal interest in discharging his fiduciary obligations to the putative

7  class members in the litigation. <u>See Gardner v. Westinghouse Broadcasting Co.</u>,

8  559 F.2d 209, 219 (3d Cir. 1977) (Seitz, C.J., concurring) (stating that named

9  plaintiff whose individual claim was moot "has a continuing personal stake

10  stemming from the fact that she is a fiduciary on behalf of the putative class").

11      **B.**    <u>**The Government's Voluntary Cessation Of Detention Does Not**</u>

12          <u>**Moot Petitioner's Claim for Injunctive Relief**</u>

13      Even if the Court were to conclude that Petitioner has obtained all the relief

14  he seeks, the "voluntary cessation" exception to the mootness doctrine would

15  apply here. Indeed, courts crafted the voluntary cessation exception for situations

16  exactly like this one, where a party has sought to evade a ruling on the legality of

17  its actions by ceasing that action in response to a lawsuit. As the Supreme Court

18  has explained:

19          It is well settled that a defendant's voluntary cessation of

20          a challenged practice does not deprive a federal court of

21          its power to determine the legality of the practice. ... If

22          it did, the courts would be compelled to leave the

23          defendant ... free to return to his old ways.

24  <u>Friends of the Earth, Inc., v. Laidlaw Environmental Services (TOC), Inc.</u>, 528

25  U.S. 167, 189 (2000) (internal citations omitted). For this reason, the Government

26  bears a "heavy burden" to make it "absolutely clear" that the challenged conduct

27  will not recur. <u>Id.</u> In addition, the government must show that it has "completely

28  and irrevocably eradicated the effects" of its illegal conduct. <u>FTC v. Affordable</u>

8

EXHIBIT C    000120

1    <u>Media, LLC</u>, 179 F.3d 1228, 1238 (9th Cir. 1999) ("Mere voluntary cessation of

2    allegedly illegal conduct does not moot a case") (internal citations omitted).

3        Here, the Government has failed to meet its "heavy burden" of showing that

4    it is "absolutely clear" that Petitioner will not be re-detained. The Government's

5    brief says absolutely nothing about the reasons for Petitioner's release, and the

6    documents it has filed show that the only changed circumstance justifying his

7    sudden release was this lawsuit. The Government does not even allege that

8    Petitioner will not be re-detained, and has kept him under house arrest even after

9    his release. Under these circumstances, the most logical conclusion is that the

10   Government would "return to [its] old ways" and re-detain him were this lawsuit

11   dismissed. In any event, the Government has not shown that it is "absolutely

12   clear" that this is not the case. See <u>Friends of the Earth</u>, 528 U.S. at 189-91. In

13   addition, the Government continues to detain the proposed class members without

14   any indication that the challenged conduct will cease with respect to them.

15   C.    **The Government Cannot Moot The Claims Of The Class By**

16          **"Picking Off" The Named Representative**

17       The Government's decision to put Petitioner on supervised release is an

18   obvious attempt to moot the class claims by "picking off" the class representative.

19   Courts have repeatedly rejected and condemned such attempts. Indeed, the

20   Supreme Court has held that tendering payment to the named representatives while

21   a case was on appeal from a denial of class certification did not moot the appeal,

22   explaining:

23          Requiring multiple plaintiffs to bring separate actions,

24          which effectively could be "picked off" by a defendant's

25          tender of judgment before an affirmative ruling on class

26          certification could be obtained, obviously would

27          frustrate the objectives of class actions; moreover it

28          would invite waste of judicial resources by stimulating

9

EXHIBIT C    000121

1    successive suits brought by others claiming
2    aggrievement.
3    Deposit Guar. Nat'l Bank, 445 U.S. at 339.  Numerous other decisions reflect the
4    same rule.  E.g., ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.,
5    485 F.3d 85, 95 (2d Cir. 2007) (rejecting defendants' contention that their consent
6    to judgment against them on the individual claims of the named plaintiffs rendered
7    the case moot or deprived the court of subject matter jurisdiction); Weiss v. Regal
8    Collections, 385 F.3d 337, 347 (3d Cir. 2004) (rejecting "defendants' tactic of
9    'picking off' lead plaintiffs"); Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d
10    1030, 1050 (5th Cir. 1981) (same); Susman v. Lincoln American Corp., 587 F.2d
11    866, 870 (7th Cir. 1978) ("when a motion for class certification has been pursued
12    with reasonable diligence and is then pending before the district court, a case does
13    not become moot merely because of the tender to the named plaintiffs of their
14    individual money damages"); see also Newberg on Class Actions, 2:16 (2007).
15        In an analogous context, courts have held that class challenges to delays in
16    providing public assistance are not rendered moot by the provision of benefits to
17    the named plaintiff.  "[T]he fact that the plaintiffs received their unlawfully
18    delayed benefits after the lawsuit was commenced did not mean that the action
19    thereby became moot."  Robidoux v. Celani, 987 F.2d 931, 938 (2d. Cir. 1993);
20    see also Sosna, 419 U.S. at 402 n.11 (stating that if mootness occurs "before the
21    district court can reasonably be expected to rule on a certification motion,"
22    certification may be allowed to relate back to the filing of the complaint,
23    depending upon "the circumstances of the particular case" and whether "the issue
24    would otherwise evade review"); County of Riverside v. McLaughlin, 500 U.S.
25    44, 52 (1991) ("That the class was not certified until after the named plaintiffs'
26    claims had become moot does not deprive us of jurisdiction. ... In such cases, the
27    'relation back' doctrine is properly invoked to preserve the merits of the case for
28    judicial resolution.").

10

EXHIBIT C    000122

1    **D.    The Claims Are Not Moot Because They Are Capable of**

2    **Repetition Yet Evading Review**

3    Petitioner's claims also fall under the "capable of repetition yet evading

4    review" exception.  As the Ninth Circuit has explained, this exception is

5    particularly applicable when a party is "challenging an ongoing government

6    policy." United States v. Howard, 480 F.3d 1005, 1010 (9th Cir. 2007); see also,

7    e.g., Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101, 1118 (9th Cir. 2003).  As

8    Petitioner is subject to an ongoing government policy which allows for him to be

9    returned to indefinite detention, Petitioner meets the requirement that there be a

10    "reasonable expectation that the same parties will be subjected to the same

11    offending conduct." Demery v. Arpaio, 378 F.3d 1020, 1026 (9th Cir. 2004).

12    That Petitioner may be subject to repetition of prolonged detention is "not at all

13    difficult to foresee." Ward v. Portland, 857 F.2d 1373, 1377 (9th Cir. 1988).

14    Moreover, even if Petitioner himself were not subject to prolonged

15    detention again, other members of the class remain in custody.  The rule "[t]hat the

16    injury be capable of repetition with respect to the particular plaintiff ... is a

17    requirement only in non-class actions." Perez-Funez v. Crosland, 611 F. Supp.

18    990, 999 (C.D. Cal. 1984) (citing Weinstein v. Bradford, 423 U.S. 147, 149

19    (1975)).  "Thus, even if the claims of the [Petitioner] herein were deemed moot,

20    this would not necessarily deprive [him] of standing to represent the proposed

21    class." Id.; see also Gerstein v. Pugh, 420 U.S. 103, 110 n. 11 (1975); Howard,

22    480 F.3d at 1010.  Any other rule would allow the Government to evade judicial

23    review of its unlawful policy by repeatedly releasing the named plaintiff in any

24    class action challenging prolonged and indefinite detention.

25    **II.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE**

26    **23 AND SHOULD BE CERTIFIED**

27    **A.    The Definition Of The Proposed Class In The Petition Is Proper**

28    The Government objects to the definition of the proposed class set forth in

11

EXHIBIT C    000123

1  the Petition and the Class Certification Motion on three grounds: (1) future class

2  members – those who have not yet been injured by the Government's current

3  policy – should not be included because their claims are not yet ripe; (2) class

4  members are held by different immediate custodians; and (3) the class definition is

5  not sufficiently specific.  None of these objections has any merit.

6      **1.    Future Class Members Are Properly Included Within The**

7          **Class Definition**

8          Contrary to the Government's argument, Opp. at 6-7, there is nothing

9  unusual or objectionable about defining a class to include both current class

10  members (those who have already been injured by an unlawful government policy)

11  and future class members (those who will be injured by the continued application

12  of the same unlawful policy in the future).  See, e.g., INS v. Nat'l Ctr. for

13  Immigrant Rights, 502 U.S. 183 (1991) (addressing the merits of a class action

14  representing "all those persons who have been or may in the future be denied the

15  right to work" pursuant to a federal regulation); Does 1-5 v. Chandler, 83 F.3d

16  1150, 1152 (9th Cir. 1996) (class defined as "all persons who are, have been, or

17  will be identified as disabled"); LaDuke v. Nelson, 762 F.2d 1318, 1321 (9th Cir.

18  1985) (affirming certification of a class consisting of "all persons who have

19  resided or will reside" in a type of farm housing).  Cf. Probe v. State Teachers'

20  Retirement System, 780 F.2d 776, 780 (9th Cir. 1986) ("The fact that the class

21  includes future members does not render the class definition so vague as to

22  preclude certification.").  As one District Court has explained,

23          [T]he inclusion of unnamed class members who will be

24          affected in the future by a challenged policy or practice

25          is a common characteristic of class actions seeking to

26          curtail ongoing harms. ...  To interpret the ripeness

27          doctrine otherwise would preclude claims for injunctive

28          relief on behalf of any "constantly changing" class, in

12

EXHIBIT C    000124

1          which new plaintiffs enter the class definition by virtue

2          of the passage of time.

3  Santillan v. Ashcroft, 2004 U.S. Dist. LEXIS 20824, *25-26 (N.D. Cal. 2004).

4       The inclusion of future class members is particularly appropriate in this

5  matter, where an ongoing Government policy continues to violate the rights of an

6  ever-changing group of persons. Included in this group are (a) those who are

7  current class members, (b) those who are currently in detention, and although they

8  have not yet been held for more than six months (and so are not within the class

9  definition) will, under the Government's current policy, be subject to prolonged

10  and indefinite detention and (c) those who are not yet in detention but will in the

11  future be detained and subject to prolonged and indefinite detention. Given the

12  clarity of the class definition, there will be nothing speculative – or particularly

13  difficult – in determining who has become a class member as the case proceeds

14  toward judgment, or even after judgment is entered.

15         **2.**   **The Petition Names As Respondents The Immediate**

16            **Custodian Of All Class Members**

17       Citing Rumsfeld v. Padilla, 542 U.S. 426 (2004), the Government argues

18  that the proper respondent in this habeas proceeding is the immediate custodian of

19  the Petitioner and each class member. Opp. at 8. The Ninth Circuit has not

20  decided whether the rule described in Padilla applies in immigration cases. See

21  Armentero v. INS, 412 F.3d 1088, 1089 (9th Cir. 2005) (Berzon, J., dissenting)

22  (noting that law remains unsettled on this issue, and arguing that proper

23  respondent in immigration habeas should be the Attorney General). Nonetheless,

24  out of an abundance of caution, Petitioner defined the class to include only

25  individuals detained within the Central District, and then named as respondents

26  every immediate custodian of class members within this District as well as all

27  relevant supervisory officials. Petition, at 6-7 (naming officials in charge of

28  detention facilities at San Pedro, Mira Loma, and Santa Ana). Thus, because the

13

EXHIBIT C    000125

1   Petition does not seek relief on behalf of individuals who are not within the
2   immediate custody of respondents, Petitioner has fully satisfied the requirements
3   of Padilla, assuming arguendo that it applies here.

4              **3.    The Proposed Class Definition Is Specific**

5      The Government argues that the use of the phrase "general immigration
6   detention statutes" is "enigmatic" and renders the proposed class definition
7   insufficiently specific. Opp. at 11-15.[7]  But there is nothing indefinite or
8   mysterious about that phrase.  It comes directly from the Nadarajah opinion, in
9   which the Ninth Circuit used the phrase "general detention statutes" or
10  "provisions" eight times – and, after comprehensively analyzing these statutes,
11  concluded that none authorizes prolonged, indefinite detention. See, e.g., 443
12  F.3d at 1078 ("we conclude that the general immigration detention statutes do not
13  authorize the Attorney General to incarcerate detainees for an indefinite period").

14     As set forth in the Petition in this case and the case law, the term "general
15  immigration detention statutes" means all statutes that authorize detention, except
16  for those statutes that *specifically authorize* prolonged detention.  See Petition, at
17  3-4.  The term includes 8 U.S.C. 1225 (authorizing detention of aliens seeking
18  admission), 8 U.S.C. 1226 (detention pending a determination of removability), 8
19  U.S.C. 1231(a) (detention of aliens with an administratively final order of removal
20  during and after the removal period), and 8 U.S.C. 1182(d)(5)(A) (authorizing
21  discretionary parole of aliens pending final determination of their admissibility).
22  The term excludes 8 U.S.C. 1226a and 8 U.S.C. 1531-1537, which specifically
23  authorize prolonged detention of, among others, suspected terrorists, as the court
24  in Nadarajah explained.  443 F.3d at 1076-80. Because the phrase "general
25  immigration detention statutes" has an established meaning set forth in both the

26  _____

27  [7] In the same section of its Opposition, the Government also argues about
    differences of "law and fact" among class members, but these alleged differences
    are more properly discussed under the "commonality" analysis required by Rule
28  23(a)(2).  See, infra, section II.B.2.

14

EXHIBIT C    000126

1   case law and the Petition, the use of that phrase in the definition of the class is

2   appropriate and proper.

3     **B.**    **The Proposed Class Satisfies The Requirements Of Rule 23(a)**

4          **1.**    **Numerosity**

5   The Government does not contest the Petitioner's showing that the proposed

6   class is sufficiently "numerous" under Rule 23(a)(1).

7          **2.**    **Commonality**

8   As the Government concedes, the "commonality" requirement of Rule

9   23(a)(2) does not require that all class members share the same precise legal and

10   factual issues. See Opp. at 16. Rather, the Ninth Circuit has repeatedly stated that

11   the commonality requirement is "construed permissively." E.g., Dukes v. Wal-

12   Mart, 474 F.3d 1214, 1225 (9th Cir. 2007); Hanlon v. Chrysler Corp., 150 F.3d

13   1011, 1019 (9th Cir. 1998). It is satisfied by the existence of "shared legal issues"

14   (and divergent facts) or a "common core of salient facts" (and disparate legal

15   claims). Dukes, 474 F.3d at 1225; Hanlon, 150 F.3d at 1019.

16   Here, class members share both a common core of facts and legal claims.

17   All class members share the same core of facts: they are non-citizens subject to

18   prolonged and indefinite detention and have not been provided a hearing before an

19   Immigration Judge to determine whether such detention is justified. All class

20   members also share the same legal arguments: they all argue (a) that the general

21   immigration detention statutes pursuant to which they are held do not authorize

22   such prolonged and indefinite detention and (b) that even if their detention is

23   authorized by statute, it is contrary to their rights under the United States

24   Constitution. That common core of facts and legal claims plainly satisfies – and

25   far surpasses – the minimal requirements imposed by Rule 23(a)(2).

26   Indeed, this Court need look no further than four of its own decisions to see

27   that the requirements of Rule 23(a)(2) are satisfied. In those four cases, petitioners

28   with a common core of facts (prolonged and indefinite detention) and a common

15

EXHIBIT C    000127

1   set of legal claims (detention not authorized by statute or the U.S. Constitution)

2   challenged their detention.  Although the petitioners were detained under different

3   general immigration detention statutes (8 U.S.C. sections 1225, 1226, and

4   1231(a)), and although there were certainly factual differences relating to the

5   merits of their individual immigration cases (for example, one was admitted but

6   allegedly convicted of an aggravated felony, one was not admitted and convicted

7   of two crimes of moral turpitude, and two had overstayed their visas), this Court

8   granted precisely the same relief (a hearing) in all four cases.  Martinez v.

9   Gonzales, No. CV 06-7609-TJH (C.D. Cal. Jan. 4, 2007) (order granting in part

10  Petitioner's Motion for Preliminary Injunction); Rasheed v. Gonzales, No. CV 06-

11  7449-TJH (C.D. Cal. Jan. 4, 2007) (same); Soeoth v. Gonzales, No. CV 06-7451-

12  TJH (C.D. Cal. Jan. 4, 2007) (same); Diouf v. Gonzales, No. CV 06-7452-TJH

13  (C.D. Cal. Jan. 4, 2007) (same).  Indeed, the orders issued by the Court in these

14  four cases were in all material respects identical.

15        Against this background, the Government's lengthy arguments about

16  differences in law or fact fall far short of the mark.  There is no doubt that the

17  general immigration detention statutes operate differently in certain contexts – all

18  of which are unrelated to this Petition.  For purposes of this Petition, the central

19  legal issue is whether the general immigration detention statutes authorize

20  prolonged and indefinite detention.  Under Nadarajah, that is a common issue, and

21  the answer is clear: they do not.  443 F.3d at 1076-80.

22        The Ninth Circuit's analysis in Nadarajah demonstrates the commonality of

23  the controlling legal issue here – whether prolonged and indefinite detention of

24  class members is authorized by the general immigration detention statutes.  In

25  Nadarajah, the detention statutes at issue were 8 U.S.C. 1225(b)(1)(B)(ii) and

26  (b)(2)(A), but the court began its analysis by reviewing the Supreme Court's

27  decision in Zadvydas, which addressed detention under Section 1231(a)(6).  See

28  Nadarajah, 443 F.3d at 1076.  The court explained that "[a]lthough Zadvydas

16

EXHIBIT C    000128

1  construed a different statute, that case and its progeny remain instructive." Id. at

2  1077. The Ninth Circuit also considered Demore v. Kim, 538 U.S. 510 (2003),

3  which examined yet another general immigration detention statute – 8 U.S.C.

4  1226(c). 443 F.3d at 1080-81. Based upon all of these authorities, the court in

5  Nadarajah concluded that "the general immigration detention statutes do not

6  authorize the Attorney General to incarcerate detainees for an indefinite period."

7  Id. at 1078.[8]

8       Independently, another common legal issue shared by all class members is

9  whether the Government's prolonged and indefinite detention policy is

10 constitutional. The Government never even mentions (and therefore never

11 disputes the existence of) this common legal issue. Thus, even if the Court were

12 to conclude – contrary to Nadarajah – that the general immigration detention

13 statutes are all too different to admit of common treatment, the Court should still

14 find that the common constitutional claim satisfies the requirements of Rule

15 23(a)(2).

16      The Government's other arguments, relating to burden of proof, custody

17 reviews, and length of detention, are irrelevant at the class certification stage, and

18 are best addressed at a subsequent stage of this litigation, when this Court

19 determines appropriate class-wide remedies. The Government relies on Zadvydas,

20 for instance, to contend that the burden of proof at the detention hearing should be

21 placed on the alien, not the Government. This issue can be more properly and

22 fully addressed at the remedy stage. In any case, however, the Ninth Circuit in

23 Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), considered the case of a non-

24 citizen detained under a general detention statute, and held that the Government

25

26 [8] The Government's contentions notwithstanding (Opp. at 12-13), the six-month
   duration of presumptively reasonable detention applies to all of the general
27 immigration detention statutes, not just the post-final order statute at issue in
   Zadvydas. See Nadarajah, 443 F.3d at 1080 (stating that Clark and Demore, both
28 of which were decided after Zadvydas, "endorse the general proposition of 'brief'
   detentions" and hold that "a six-month period [is] presumptively reasonable").

17

EXHIBIT C    000129

1    must bear the burden of proof of justifying continued detention by demonstrating

2    that the non-citizen "is a flight risk or will be a danger to the community." Id. at

3    1242.

4        The Government's argument about individuals who act to prevent their

5    removal is confused, and can also be addressed at the remedy stage if necessary.

6    See Opp. at 14. Detainees whose cases are no longer pending are not part of the

7    class; Petitioner does not seek a hearing on their behalf. In any event, if the

8    Government believes that a non-citizen whose case is still pending is somehow

9    acting to prevent his own removal, the Government may present such facts at the

10   non-citizen's detention hearing in order to meet its burden of proving that the non-

11   citizen should not be released.[9]

12       The Government's cryptic argument about detainees subject to continuous

13   mandatory detention is also irrelevant to class certification and can be addressed at

14   the remedy stage, if necessary. Its suggestion to the contrary notwithstanding,

15   Opp. at 14-15, a non-citizen detained for six months under 8 U.S.C. 1226(c), and

16   subsequently detained for a prolonged and indefinite period under 8 U.S.C.

17   1231(a)(6) would be included in the class definition and be entitled to a hearing on

18   whether his detention is justified, as long as his removal case remained pending.

19       The Government's discussion of paper custody reviews for non-citizens

20   detained under 8 U.S.C. 1231(a)(6) is similarly irrelevant at the class certification

21   stage, and instead pertains to the merits of putative class members' claims to relief.

22   In any event, these paper custody reviews are embarrassingly deficient as

23   compared to the standards required by due process, as illustrated by the cursory

24   paper reviews in Mr. Rodriguez's case, which allowed his detention for more than

25   three years. Cf. Ngo v. INS, 192 F.3d 390, 398 (3d Cir. 1999) (criticizing INS's

26

27   [9] In this respect, the Government's reliance on Pelich v. INS, 329 F.3d 1057 (9th Cir. 2003), is misplaced because the non-citizen in that case did not have a case challenging his removal order pending in the courts, and therefore would not be

28   covered by the proposed class definition in this case.

18

EXHIBIT C    000130

1  "rubber stamp denials based on temporally distant offenses" under file review

2  system).[10]

3  **3.    Typicality**

4      Repeating its arguments in other sections, the Government asserts that the

5  Petitioner's claims are not typical of those of other class members because (a) he

6  has been released, (b) the legal merits of his underlying immigration case differ

7  from those of other class members, and (c) the factual basis for detention differs

8  from class member to class member. Opp. at 18-19. For the same reasons as those

9  set forth above, none of these arguments defeats a finding of typicality.

10  Petitioner's claim is not moot (or falls within one of the recognized exceptions to

11  the mootness doctrine) and the differences in the legal basis for detention or the

12  factual circumstances of class members do not preclude a finding that there is a

13  common legal issue concerning the right to a hearing – and with regard to that

14  common issue, the Petitioner's claims are typical of those of all class members.

15  See Dukes, 474 F.3d at 1232 ("Under the rule's permissive standards,

16  representative claims are typical if they are reasonably co-extensive with those of

17  absent class members; they need not be substantially identical.") (quoting Hanlon,

18  150 F.3d at 1020).

19      Alternatively, if the Court determines that the release of Petitioner – subject

20  to conditions of supervision unilaterally imposed by the Government – makes his

21  claim no longer typical, Petitioner respectfully requests leave to amend his Petition

22  to substitute or add another class member as the class representative. Counsel for

23  Petitioner is aware of dozens of other detainees who are class members. At least

24  two of them have made it clear that they would like to serve as named class

25

26  [10] Nor is the Government's decision to detain one person for ten months and
another for eight months "entitled to judicial deference," as the Government

27  suggests, Opp. at 15, where, as here, the detention itself is not authorized by
statute or the Constitution. See St. Cyr, 533 U.S. at 320 n.45 (declining to afford

28  Chevron deference); Ma v. Ashcroft, 257 F.3d 1095, 1105 n.15 (9th Cir. 2001)
(same).

19

EXHIBIT C    000131

1   representatives in the event that Petitioner is unable to do so. See Exhibit 10, ¶ 8

2   (Vakili Dec.); see also Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given

3   when justice so requires"); Foman v. Davis, 371 U.S. 178, 182 (1962); Lopez v.

4   Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

5           **4.     Adequacy**

6       Again, the Government repeats the claims it makes elsewhere in its

7   Opposition to argue that the Petitioner would not be an adequate class

8   representative. Opp. at 20. As Petitioner explains above, however, none of the

9   purported differences cited by the Government relate to the claim for relief here –

10   the right to a hearing.

11      Moreover, if the Court determines that the release of Petitioner makes him

12   no longer an adequate representative of the class, Petitioner respectfully requests

13   leave to amend his Petition to substitute or add another class member as the class

14   representative.

15          **C.     The Proposed Class Satisfies The Requirements Of Rule 23(b)**

16      The Government briefly argues that the requirements of Rule 23(b)(2) are

17   not satisfied because of the individual variations of fact and law described

18   elsewhere in its brief. Opp. at 21. But the government does not even dispute that,

19   at a minimum, this case presents a substantial common legal question concerning

20   whether prolonged and indefinite detention without a hearing violates the Due

21   Process Clause, which is sufficient to satisfy Rule 23(b)(2). In any event, for all

22   the reasons set forth above, any alleged differences in fact and law are irrelevant to

23   Petitioner's claim, on behalf of the class, for individual hearings to determine

24   whether continued detention is justified. Regardless of each class member's legal

25   status or individual factual circumstances, Petitioner contends that there is no

26   doubt (1) that the Government has "either acted or failed to act on grounds

27   generally applicable to the class," in that none of the class members has had the

28   hearing requested in the Petition and (2) that neither the applicable statutes nor the

20

EXHIBIT C    000132

1   United States Constitution authorizes prolonged detention without such a hearing.

2   **III.     8 U.S.C. 1252(f) DOES NOT PRECLUDE THIS CLASS ACTION**

3       The government also briefly argues that 8 U.S.C. 1252(f) divests the Court

4   of jurisdiction to grant the class certification motion. This argument lacks merit

5   for several reasons.

6       *First*, Petitioner brought this class action as a habeas corpus petition. The

7   Supreme Court has repeatedly held that, because of the historical and

8   constitutional importance of habeas proceedings, Congress may not strip the

9   federal courts of power to grant habeas relief by statute without explicitly

10  mentioning the general federal habeas statute – 28 U.S.C. 2241 – by name. See

11  INS v. St. Cyr, 533 U.S. 289, 314 (2001) (establishing clear statement rule in part

12  because eliminating habeas jurisdiction would create serious constitutional

13  problem under the Suspension Clause); Demore v. Kim, 538 U.S. 510 (2003).

14      Section 1252(f)(1) does not come close to meeting the stringent

15  requirements for repeal of Section 2241 set forth by the Supreme Court. The

16  section does not mention either habeas corpus or Section 2241 by name. See St.

17  Cyr, 533 U.S. at 312 (rejecting argument that two provisions repealed habeas

18  because "[n]either explicitly mentions habeas, or 28 U.S.C. § 2241"); Demore, 538

19  U.S. at 517-18 (holding that different jurisdictional statute was insufficient to

20  defeat habeas jurisdiction despite language stating that "No court may set aside

21  any action or decision by the Attorney General under this section regarding the

22  detention or release of any alien").

23      The rule against finding implied repeals of habeas jurisdiction has particular

24  force in this case, because Congress amended the jurisdictional provisions of the

25  immigration statutes to repeal (and replace) habeas corpus in 2005, with the

26  passage of the REAL ID Act. But while Congress amended other sub-sections of

27  8 U.S.C. 1252 to make that change, it added no explicit repealing language to

28  Section 1252(f). Compare Section 1252(a)(2)(A-C), 1252(a)(4), 1252(a)(5) (all

21

EXHIBIT C     000133

1  explicitly repealing Section 2241) with Section 1252(f)(1) (not mentioning

2  Section 2241); see generally REAL ID Act of 2005 § 106, Pub. L. 109-13, 119

3  Stat. 231. Thus, Congress has manifested its intent to allow district courts to

4  continue to grant injunctive relief in habeas corpus proceedings. Indeed, the

5  government cannot point to a single case holding that a district court lacked

6  authority to issue habeas relief under Section 1252(f). See Opp. at 5-6 (citing a

7  number of cases, none of which deny habeas jurisdiction).

8      *Second*, even if this were not a habeas case, Section 1252(f) still would not

9  strip the Court of authority to certify this class. Nothing in the provision's text

10  announces any general rule barring the courts from creating "change in the law,"

11  as the Government asserts. See Opp. at 3. Instead, the provision is narrowly

12  drawn to bar injunctions against "the operation of" Section 1221-1231. Petitioner

13  does not challenge the "operation" of any of those provisions. Instead, he does the

14  opposite – he argues that the Government has mis-interpreted those statutory

15  provisions, and for this reason is failing to implement them correctly, and also that

16  the Government's interpretation of them is unconstitutional.

17      The Ninth Circuit has held that Section 1252(f) does not foreclose claims

18  challenging the Government's interpretation of the immigration statutes on

19  statutory and constitutional grounds. Ali v. Ashcroft, 346 F.3d 873 (9th Cir.

20  2003), vacated on unrelated grounds, Ali v. Gonzalez, 421 F.3d 795 (9th Cir.

21  2005) (vacating the earlier opinion because of the Supreme Court's decision in

22  Jama v. ICE, 543 U.S. 335 (2005)).[11] Although the Ninth Circuit's conclusion on

23  the merits is no longer good law, its holding concerning the scope of Section

24  1252(f) remains instructive. The Government argued in Ali, as it does here, that

25

---

[11] The government argues that Ali is no longer good law on a different point,
26  which concerns the proper respondent in a class action habeas petition. See Opp.
at 8 n.5. While Respondents are correct that the legal landscape on this aspect of
27  Ali's holding has changed, the change is irrelevant, as Petitioner only seeks to
certify a class within this judicial district, unlike the petitioner in Ali, who sought
28  nationwide class certification. See supra, section II.A.2.

22

EXHIBIT C   000134

1  Section 1252(f) barred the courts from entering a class-wide injunction. The

2  Ninth Circuit rejected that claim. In doing so, the court noted that the petitioners

3  were seeking "not to enjoin the operation of [the statute] but violations of the

4  statute and 'to ensure that the provision is properly implemented.'" Id. at 886

5  (citations omitted).[12]

6       While the government cites a number of cases to support its interpretation of

7  Section 1252(f)(1), none of them denies jurisdiction over statutory claims such as

8  those at issue here. Two of them do not involve Section 1252(f) at all, as the

9  Ninth Circuit itself noted in Ali when it rejected the government's reliance on

10  those cases. See Ali, 346 F.3d at 887 (citing AILA v. Reno, 199 F.3d 1352, 1358-

11  60, 1364 (D.C. Cir. 2000) (analyzing 1252(e)(3)(A) for standing purposes) and

12  Van Dinh v. Reno, 197 F.3d 427, 432 (10th Cir. 1999) (addressing

13  1252(a)(2)(B)(ii)). Similarly, the Fifth and Seventh Circuit decisions cited by the

14  Government also do not involve Section 1252(f)(1). See Tesfamichael v.

15  Gonzales, 411 F.3d 169 (5th Cir. 2005) (holding that Section 1252(f)(2) does not

16  strip court of jurisdiction to issue stays of removal); Hor v. Gonzales, 400 F.3d

17  482 (7th Cir. 2005) (same).

18       Two other cases cited by the government do involve Section 1252(f), but

19  provide no support for the government's position, as the Ninth Circuit also

20  concluded in Ali. See Ali, 346 F.3d at 887 n.6 ("The other two cases cited by the

21  government are equally unhelpful. In Catholic Social Servs., Inc. v. INS, 232 F.3d

22  1139 (9th Cir. 2000) (en banc), we held that § 1252(f)(1) did not bar injunctive

23  relief because the injunction was issued under 8 U.S.C. § 1255a, which is in part

24  V, not part IV, of the subchapter. 232 F.3d at 1149-50. Finally, in American-

---

[12] The Ninth Circuit also found Section 1252(f) inapplicable because while the statute limits the district court's authority to enjoin the INS from carrying out legitimate removal orders, Section 1252(f)(1) is not implicated when a petitioner "seeks to enjoin conduct that allegedly is not even authorized by the statute." Ali, 346 F.3d at 886. Similarly, here, Section 1252(f) should not be read to bar challenges to a detention that is *not* authorized by the statute.

23

EXHIBIT C    000135

1  <u>Arab</u>, the Supreme Court was analyzing § 1252(g) and cited § 1252(f)(1) only to

2  reject our 'reading of § 1252(f) as a jurisdictional grant.'") (citing <u>American-Arab</u>

3  <u>Anti-Discrimination Committee v. Reno</u>, 525 U.S. 471, 481 (1999)).[13]

4       *Third*, by its terms Section 1252(f) does not bar class actions. <u>Cf.</u> 8 U.S.C.

5  1252(e)(1)(B) (neighboring provision that expressly bars certain class actions

6  challenging expedited removal provisions of statute).  Thus, even if Section

7  1252(f) could be read to bar the injunctive relief that Petitioner seeks, it still would

8  not preclude the Court from certifying the class, adjudicating the statutory and

9  constitutional issues raised by the Petition, and issuing declaratory relief and any

10  other appropriate non-injunctive relief to the Petition and the class.  <u>Cf.</u> <u>Andreiu v.</u>

11  <u>Ashcroft</u>, 253 F.3d 477, 480-81 (9th Cir. 2001) (en banc) (construing Section

12  1252(f) narrowly so as not to strip court of jurisdiction to enter stays of removal in

13  part because neighboring provision explicitly mentions stays).

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24

---

25  [13] Strikingly, the Government cites the Ninth Circuit's earlier <u>Catholic Social</u>
   <u>Services</u> opinion, at 182 F.3d 1053, for the proposition that Section 1252(f)
26  divested the court of jurisdiction to enter the relief in that case, but the panel
   opinion was reversed on that very point, as review of the later en banc case
27  reveals.  <u>See</u> <u>Catholic Social Servs., Inc. v. INS</u>, 232 F.3d 1139, 1149-50 (9th Cir.
   2000) (en banc) (reversing panel opinion on question whether Section 1252(f) bars
28  the relief requested).

24

EXHIBIT C    000136

**CONCLUSION**

For the reasons discussed above, and those set forth in his moving papers, Petitioner respectfully requests that the Court grant this motion and enter an order certifying this proceeding as a class action and defining the class as set forth in the Motion for Class Certification.

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated: August 14, 2007        By _____

AHILAN T. ARULANANTHAM
Attorneys for Petitioner

SIDLEY AUSTIN LLP

Dated: August 14, 2007        By _____ Steven Ellis

STEVEN A. ELLIS
Attorneys for Petitioner

25

EXHIBIT C    000137