No. 08-56156

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ALEJANDRO RODRIGUEZ,

*Petitioner-Appellant,*

v.

JAMES HAYES, Immigration and Customs Enforcement, Los Angeles
District Field Office Director; GEORGE MOLINAR, Chief of Detention
and Removal Operations, San Pedro Detention Facility; MICHAEL
CHERTOFF, Secretary, Department of Homeland Security; MICHAEL
MUKASEY, United States Attorney General; PAUL WALTERS, Chief of
Police for the City of Santa Ana; LEE BACA, Sheriff of Los Angeles
County; SAMMY JONES, Chief of the Custody Operations Division of the
Los Angeles County Sheriff's Department,

*Respondents-Appellees.*

On Appeal From an Order Denying Appellant's Motion for Class
Certification
by the United States District Court for the Central District of California,
Case No. CV 07-3239-TJH (RNB)

## APPELLANT'S REPLY BRIEF

PETER J. ELIASBERG
AHILAN T. ARULANANTHAM
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
1313 West Eighth Street
Los Angeles, California 90017
(213) 977-9500 Telephone
(213) 250-3919 Facsimile
peliasberg@aclu-sc.org
aarulanantham@aclu-sc.org

i

EXHIBIT D    000138

JUDY RABINOWITZ
**AMERICAN CIVIL LIBERTIES FOUNDATION**
**IMMIGRANTS' RIGHTS PROJECT**
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2618 Telephone
(212) 549-2654 Facsimile

CECILLIA D. WANG
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
**IMMIGRANTS' RIGHTS PROJECT**
39 Drumm Street
San Francisco, California 94111
(415) 343-0775 Telephone
(415) 395-0950 Facsimile

JAYASHRI SRIKANTIAH
**STANFORD LAW SCHOOL**
**IMMIGRANTS' RIGHTS CLINIC**
Crown Quadrangle
559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-2442 Telephone
(650) 723-4426 Facsimile

STEVEN A. ELLIS
WILLIAM TRAN
BRIAN K. WASHINGTON
**SIDLEY AUSTIN LLP**
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
(213) 896-6000 Telephone
(213) 896-6600 Facsimile

Counsel for Petitioner-Appellant Alejandro Rodriguez,
on behalf of himself and all others similarly situated

ii

EXHIBIT D     000139

# TABLE OF CONTENTS

PAGE

ARGUMENT ................................................................................................. 1

I.    Standard of Review ................................................................. 3

II.   The Provisions Of 8 U.S.C. 1252(f) Do Not Preclude
      Class Certification ................................................................... 4

III.  In Appropriate Circumstances, Courts May Certify A
      Class In A Habeas Corpus Proceeding ................................... 10

IV.   The Requirements Of Rule 23 Are Satisfied .......................... 11

      A.    Rule 23(a) ..................................................................... 14

            1.    Although The Commonality Standard Requires
                  Only That Class Members Share Either A Common
                  Core of Facts Or Common Legal Claims, Here
                  Class Members Share Both. ................................ 14

            2.    Mr. Rodriguez's Claims Are Typical Of The
                  Claims Of Class Members, And His Release From
                  Custody During The Class Certification Briefing
                  Does Not Moot The Case Or Preclude A Finding
                  Of Typicality ...................................................... 18

                  a.    Neither Mr. Rodriguez's Claims Nor The
                        Claims Of The Putative Class Are Moot.... 19

                  b.    Mr. Rodriguez's Claims Remain Typical Of
                        Those Of All Class Members. .................... 23

            3.    Mr. Rodriguez Is An Adequate Class
                  Representative. .................................................... 24

      B.    The Requirements Of Rule 23(b)(2) Are Satisfied ...... 25

      C.    The Class Is Properly Defined .................................... 28

CONCLUSION ........................................................................................... 32

iii

EXHIBIT D     000140

CERTIFICATE OF COMPLIANCE............................................................ 33

EXHIBIT D     000141

## TABLE OF AUTHORITIES

Page(s)

CASES

ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.,
    485 F.3d 85 (2d Cir. 2007) ...................................................................... 19

Alaska Center for the Environment v. U.S. Forest Service,
    189 F.3d 851 (9th Cir. 1999) .................................................................... 22

Ali v. Ashcroft,
    346 F.3d 873 (9th Cir. 2003) ................................................................. 8, 9

Ali v. Gonzales,
    421 F.3d 795 (9th Cir. 2005) ..................................................................... 8

Boumediene v. Bush,
    128 S. Ct. 2229 (2008) ............................................................................... 5

Carafas v. Lavallee,
    391 U.S. 234 (1968) ................................................................................. 20

Casas-Castrillon v. Department of Homeland Security,
    535 F.3d 942 (9th Cir. 2008) ............................................. 11, 12, 17, 27

Catholic Social Servs., Inc. v. INS,
    182 F.3d 1053 (9th Cir. 1999) ................................................................... 8

Catholic Social Servs., Inc. v. INS,
    232 F.3d 1139 (9th Cir. 2000) (en banc) ................................................. 8

Celano v. Marriott Int'l,
    242 F.R.D. 544 (N.D. Cal. 2007) ........................................................... 18

Chmakov v. Blackman,
    266 F.3d 210 (3d Cir. 2001) ...................................................................... 7

Clark v. Martinez,
    543 U.S. 371 (2005) ................................................................................. 21

EXHIBIT D    000142

Demery v. Arpaio,
    378 F.3d 1020 (9th Cir. 2004) .............................................................. 23

Demore v. Kim,
    538 U.S. 510 (2003) .................................................................... 5, 7

Diouf v. Mukasey,
    542 F.3d 1222 (9th Cir. 2008) .............................................................. 13

Doe v. Los Angeles Unified Sch. Dist.,
    48 F. Supp. 2d 1233 (C.D. Cal. 1999) ...................................................... 18

Does 1-5 v. Chandler,
    83 F.3d 1150 (9th Cir. 1996) .............................................................. 30

Dukes v. Wal-Mart, Inc.,
    509 F.3d 1168 (9th Cir. 2007) ...................................................... 12, 14, 18, 24

Eisen v. Carlisle and Jacquelin,
    417 U.S. 156 (1974) ...................................................................... 12

Forbush v. J.C. Penney Co.,
    994 F.2d 1101 (5th Cir. 1993) ............................................................ 18

Friends of the Earth, Inc., v. Laidlaw Environmental Services (TOC),
    Inc.,
    528 U.S. 167 (2000) ...................................................................... 22

Gardner v. Westinghouse Broadcasting Co.,
    559 F.2d 209 (3d Cir. 1977) .......................................................... 21, 22

Gorbach v. Reno,
    219 F.3d 1087 (9th Cir. 2000) (en banc) .................................................. 21

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) ........................................................ 14, 24

INS v. Nat'l Ctr. for Immigrant Rights,
    502 U.S. 183 (1991) ...................................................................... 30

INS v. St. Cyr,
    533 U.S. 289 (2001) .................................................................... 5, 6

EXHIBIT D    000143

Koerner v. Grigas,
 328 F.3d 1039 (9th Cir. 2003) ...................................................31

LaDuke v. Nelson,
 762 F.2d 1318 (9th Cir. 1985) ..................................................30

Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las
 Vegas Sands, Inc.,
 244 F.3d 1152 (9th Cir. 2001) ....................................................3

Ma v. Ashcroft,
 257 F.3d 1095 (9th Cir. 2001) ..................................................13

Martinez-Villareal v. Stewart,
 118 F.3d 628 (9th Cir. 1997) ......................................................7

Muniz v. U.S.,
 236 F.3d 122 (2nd Cir. 2001) .....................................................7

Nadarajah v. Gonzales,
 443 F.3d 1069 (9th Cir. 2006) .............................................28, 29

Nakaranurack v. United States,
 68 F.3d 290 (9th Cir. 1995) .....................................................20

Nguyen v. BI, Inc.,
 435 F. Supp. 2d 1109 (D. Or. 2006) ..........................................20

Oregon Advocacy Center v. Mink,
 322 F.3d 1101 (9th Cir. 2003) ..................................................23

Perez-Funez v. Crosland,
 611 F. Supp. 990 (C.D. Cal. 1984) ............................................23

Prieto-Romero v. Clark,
 534 F.3d 1053 (9th Cir. 2008) ...............................11, 12, 17, 21

Probe v. State Teachers' Retirement System,
 780 F.2d 776 (9th Cir. 1986) ...................................................30

Rosenbaum v. City and County of San Francisco,
 484 F.3d 1142 (9th Cir. 2007) ..................................................31

EXHIBIT D   000144

Rumsfeld v. Padilla,
    542 U.S. 426 (2004)..................................................................10, 11

Tijani v. Willis,
    430 F.3d 1241 (9th Cir. 2005) ..............................................6

Walters v. Reno,
    145 F.3d 1032 (9th Cir. 1998) ..........................................18, 25

Webster v. Doe,
    486 U.S. 592 ............................................................................7

Weinstein v. Bradford,
    423 U.S. 147 (1975)..............................................................23


STATUTES

8 U.S.C. 1182..................................................................................29

8 U.S.C. 1225..................................................................................29

8 U.S.C. 1226............................................................................12, 29

8 U.S.C. 1226a................................................................................29

8 U.S.C. 1231............................................................................13, 29

8 U.S.C. 1252............................................................................passim

8 U.S.C. 1255a..................................................................................8

8 U.S.C. 1531-1537 ........................................................................29

28 U.S.C. 2241........................................................................4, 5, 6


OTHER AUTHORITIES

U.S. Const., Art. I, Sec. 9, Cl. 2....................................................6, 7

U.S. Const., Amend. V ............................................................1, 17, 27

EXHIBIT D    000145

Fed. R. Civ. P. 15(a) ..................................................................................................25

Fed. R. Civ. P. 23 ................................................................................................passim

8 C.F.R. 241.4 .........................................................................................................21

ix

EXHIBIT D     000146

## ARGUMENT

The class members in this action all share a common set of facts. All class members have been or will be held in civil detention for more than six months while removal proceedings against them are pending. No class member has received a hearing before an Immigration Judge ("IJ") at which the Government has been required to show that continued detention of this length is justified because, for example, the class member presents a sufficient flight risk or danger to the community.

Class members also all share a common set of legal claims. First, their detention is not authorized by statute. Congress has not enacted a statute or otherwise authorized the executive branch to hold class members in prolonged civil detention without an adequate hearing. Second, even if their detention were authorized by some statute, all class members would share a common constitutional challenge to such detention. The Fifth Amendment protects the liberty interest of class members against arbitrary, prolonged civil detention by the executive branch without a hearing.

In its Respondents' Brief ("RB"), the Government argues that a class should not be certified because class members are detained under the purported authority of several different, but related, general immigration detention statutes. Although there are certainly distinctions between and

among the general immigration detention statutes that are significant in <u>other</u> contexts, for purposes of a <u>class certification motion</u> these are distinctions without a difference. No statute does (or constitutionally could) authorize the hearing-less detention that class members have suffered – and continue to suffer to this day.

 The right to be free from prolonged Government incarceration, without a hearing, is perhaps the most fundamental right enshrined in our Constitution. Although the analogy is not a perfect one, it is informative to compare the situation of class members, and the Government's arguments against class certification, to the treatment of individuals accused of committing criminal offenses. Accused criminals can be charged under a number of different statutory schemes (federal, state, county, or city; felony or misdemeanor). The factual differences underlying their alleged offenses can be significant (ranging from petty theft to murder). But every accused criminal, even the alleged mass murderer, has a statutory and constitutional right to a bail hearing – the right to be heard on whether incarceration pending trial is appropriate or justified. The class members here, held in civil detention, have similar statutory and constitutional rights.

2

EXHIBIT D     000148

## I.     Standard of Review

The Government argues that although the District Court did not explain the basis for its denial of the class certification motion, deference to its decision is nonetheless proper because the District Court silently accepted each and every one of the arguments set forth in the Government's Opposition (ER 61-88). RB 10. Alternatively, the Government argues that if this Court will not defer to the District Court's implicit adoption of every one of the Government's arguments, the Court should remand the case "for the district court to provide an explanation for the denial." RB 10 n.1; see also RB 47-48.

Here, however, neither deference nor a remand is proper. Notwithstanding the brevity of the District Court's opinion, the factual record in the District Court proceedings was fully developed and complete: the parties presented all of their factual evidence and legal arguments on both the merits and class certification.

In Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152 (9th Cir. 2001), a previous panel of this Court faced a similar situation, in which the factual record was fully developed but the District Court's order denying class certification was opaque. Id. at 1060-61. Absent findings "as to the applicability of Rule 23

3

criteria," the panel stated that the District Court's order did not "warrant the deference we normally accord." Id. at 1061. But because the factual record was fully developed, the panel concluded that "we may evaluate for ourselves whether the provisions of Rule 23 have been satisfied, and ... we therefore do not need to remand." Id.[1]

Similarly, there is no need for a remand here. The factual record is fully developed, and this Court should make the necessary legal determinations regarding whether the proposed class should be certified.

## II.     The Provisions Of 8 U.S.C. 1252(f) Do Not Preclude Class Certification

The Government's primary argument, that 8 U.S.C. 1252(f) strips the Court of jurisdiction to grant the class certification motion, RB 12-15, lacks merit and should be rejected for several reasons.

First, Mr. Rodriguez brought this class action as a habeas corpus petition. The Supreme Court has repeatedly held that Congress may not strip the federal courts of power to grant habeas relief by statute without explicitly mentioning the general federal habeas statute – 28 U.S.C. 2241 –

---

[1] Additionally, there is no support for the Government's contention that the District Court implicitly accepted all of its arguments. RB 10. To the contrary, it appears that the District Court rejected at least the Government's mootness argument. ER 1.

4

by name.  See INS v. St. Cyr, 533 U.S. 289, 314 (2001); Demore v. Kim,

538 U.S. 510 (2003).  Although section 1252(f)(1) does not mention either

habeas corpus or section 2241 by name, the Government nevertheless argues

that section 1252(f)(1) bars this Court from adjudicating Mr. Rodriguez's

habeas corpus petition on a class-wide basis.

     The Government bases its argument on the flawed notion that section

1252(f)(1) does not strip the courts of habeas corpus jurisdiction, but instead

acts solely to "limit injunctive relief."  RB 13.  The difficulty with this

argument, however, is that it creates a false distinction between habeas

corpus and injunctive relief.  As the Supreme Court stated just a few months

ago, it is "uncontroversial" that the a habeas proceeding "entitles the

prisoner to a meaningful opportunity to demonstrate that he is being held

pursuant to the erroneous application or interpretation of relevant law, and

the habeas court must have the power to order the conditional release of an

individual unlawfully detained."  Boumediene v. Bush, 128 S. Ct. 2229,

2267 (2008) (emphasis added).  A federal court exercising its habeas

jurisdiction to review the lawfulness of executive detention may grant relief

in the form of an order requiring outright release or other measures that are

5

necessary to render the detention lawful, such as a hearing.[2]  While such

forms of relief may be characterized as "injunctive" in that the court is

directing the executive branch to take some action, the court is nonetheless

exercising habeas jurisdiction.

Accordingly, even if one accepts the Government's characterization

of section 1252(f) as solely "limit[ing] injunctive relief," the statute does not

apply in habeas corpus proceedings.  Any other reading of section 1252(f)

would effect a de facto bar on habeas corpus jurisdiction and therefore run

directly afoul of the strict requirements for repeal of Section 2241.  See also

Appellant's Opening Brief ("AOB") 46-48.

The Government also argues that because class members might

possibly be able to bring individual habeas actions, there is no violation of

the Suspension Clause.  See U.S. Const., Art. I, Sec. 9, Cl. 2; RB 14-15.  But

the Government misunderstands Mr. Rodriguez's argument.  Regardless of

whether there would be a Suspension Clause problem in any given case, the

Supreme Court has held – as an antecedent matter, and because of the

historical and constitutional significance of habeas relief – that the habeas

statute cannot be repealed absent a clear statement by Congress.  St. Cyr,

---

[2] See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005) (ordering a
hearing).

6

533 U.S. at 314; <u>Demore</u>, 538 U.S. at 517; <u>see also</u> <u>Chmakov v. Blackman</u>,
266 F.3d 210, 214 (3d Cir. 2001) (holding that <u>St. Cyr</u> applies even where
the jurisdictional provision at issue may not violate the Suspension Clause,
because the rule of statutory construction requiring a clear statement of an
intent to repeal habeas jurisdiction "must still be satisfied"). That is a rule of
statutory interpretation, and that rule of statutory interpretation is fully
dispositive here. Accordingly, the court need not reach the more difficult
constitutional question of whether section 1252(f), if applied to habeas
cases, would violate the Suspension Clause.[3]

---

[3] There is a substantial argument that interpreting section 1252(f) to bar a
class action for habeas corpus relief here would in fact violate the
Suspension Clause. As Mr. Rodriguez has explained, class-wide
adjudication of the claims in this action is the only realistic avenue that
many putative class members (many of whom have limited resources and
have been in custody for months, or years) will ever have to challenge their
unlawful detention. AOB 2-3; ER 48, 134. Leaving class members
effectively unable to present their claims against unlawful detention to a
federal court would raise serious Suspension Clause concerns. <u>See</u>
<u>Martinez-Villareal v. Stewart</u>, 118 F.3d 628, 632 (9th Cir. 1997) (construing
post-conviction habeas statute to preserve federal habeas review so as to
avoid the "serious constitutional problem" created by impeding petitioner's
ability to raise constitutional claim), <u>aff'd</u>, 523 U.S. 637 (1998); <u>Muniz v.
U.S.</u>, 236 F.3d 122, 128 (2nd Cir. 2001) (finding that barring a second
petition where petitioner's timely filed first petition was erroneously
dismissed would create a Suspension Clause issue because "[s]trict
impossibility of filing a claim is not the only example of a procedural bar to
a habeas petition creating an unreasonable burden upon petitioners sufficient
to raise serious issues under the Suspension Clause"); <u>cf.</u> <u>Webster v. Doe</u>,
486 U.S. 592, 603(1988) ("serious constitutional question[s] ... would arise
*(footnote continued)*

EXHIBIT D    000153

Second, the Government misguidedly relies on the panel opinion in Catholic Social Servs., Inc. v. INS, 182 F.3d 1053 (9th Cir. 1999), for the proposition that section 1252(f)(1) stripped the court of jurisdiction to enter relief in that case. RB 12-13. But this Court, sitting en banc, reversed the panel's holding on that very point. Catholic Social Servs., Inc. v. INS, 232 F.3d 1139, 1149-50 (9th Cir. 2000) (en banc) (reversing panel opinion on question of whether section 1252(f) bars the relief requested). Indeed, a subsequent Ninth Circuit panel explicitly labeled the Catholic Social Services panel opinion "unhelpful" in evaluating whether section 1252(f)(1) bars class-wide injunctive relief. Ali v. Ashcroft, 346 F.3d 873, 887 n.6 (9th Cir. 2003) (noting that the injunction in Catholic Social Services was issued under 8 U.S.C. 1255a, which is in part V of the statutory scheme, but section 1252(f)(1) applies to injunctions issued under part IV of the statute), vacated on unrelated grounds sub nom. Ali v. Gonzales, 421 F.3d 795 (9th Cir. 2005).[4]

---

if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.")

[4] Although the panel opinion in Ali is no longer good law and the case was ultimately resolved on other grounds, its observations regarding the scope of section 1252(f) remain instructive.

8

Third, even if section 1252(f)(1) did apply to habeas petitions, it still would not bar Mr. Rodriguez's motion for class certification because the relief sought by Mr. Rodriguez does not constitute enjoining the "operation" of sections 1221-1231. Section 1252(f)(1) narrowly limits only the court's authority to enjoin the "operation of" sections 1221-1231; it does not bar a court from adjudicating a challenge to the Government's misinterpretation of those provisions. Ali, 346 F.3d at 887. When a petitioner seeks to prevent conduct that is not authorized by statute or amounts to a constitutional violation, the court is not enjoining the "operation" of a statute, and thus section 1252(f)(1) is not implicated. Id.

Fourth, the Government does not meaningfully respond to Mr. Rodriguez's argument that section 1252(f)(1) does not bar certification of a declaratory relief class. AOB 49; cf. RB 14. Even if section 1252(f)(1) could be read to bar the injunctive relief Mr. Rodriguez seeks, it still would not preclude the court from certifying the class, adjudicating the statutory and constitutional issues raised by this action, and issuing declaratory relief and any other appropriate non-injunctive relief to Mr. Rodriguez and the class. See Fed. R. Civ. P. 23(b)(2) (permitting certification of a class where "final injunctive relief or corresponding declaratory relief is appropriate") (emphasis added); ER 27 (requesting injunctive and declaratory relief).

9

EXHIBIT D     000155

### III. In Appropriate Circumstances, Courts May Certify A Class In A Habeas Corpus Proceeding

The Government argues that the "very nature" of a habeas corpus proceeding "prevents class certification." RB 15. The law, however, is directly to the contrary. As set forth in Mr. Rodriguez's Opening Brief, numerous cases in the Ninth Circuit and elsewhere have recognized that, in the correct circumstances, a habeas corpus petition may be litigated as a class action. AOB 24-25.

In response, the Government makes two arguments. First, the Government cites to the "jurisdictional impact" of section 1252(f). RB 15. But, as explained above in section II., nothing in section 1252(f) precludes this action from proceeding as a class action. See also AOB 46-50.

Second, the Government claims that a class action is barred by the Supreme Court's decision in Rumsfeld v. Padilla, 542 U.S. 426 (2004). Rumsfeld, however, was not a class action, and the opinion neither states nor implies that classes cannot be certified in habeas corpus proceedings. Rather, Rumsfeld merely reaffirms the general rule (subject to various exceptions) that in a habeas corpus action, the proper defendant is usually the immediate custodian of the petitioner, "the warden of the facility where the prisoner is being held, not the Attorney General or some other remote

10

EXHIBIT D    000156

supervisory official." Id. at 435. Although the Supreme Court specifically

left open the question of whether this rule applies in habeas proceedings

filed by aliens "detained pending deportation," id. at 435 n.8, Mr. Rodriguez

fully complied with this requirement by naming as defendants his immediate

custodian and the immediate custodians of all of the class members held

within the judicial district in which he filed his petition. ER 12-13. The

petition does not seek to secure relief for anyone detained outside of the

Central District. ER 7-8; 18; 145.[5]

## IV.    The Requirements Of Rule 23 Are Satisfied

As a threshold matter, the Government argues that no class should be

certified here because in two recent individual habeas corpus actions, Casas-

Castrillon v. Department of Homeland Security, 535 F.3d 942 (9th Cir.

2008), and Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008), this

Court ruled in a manner that supports Mr. Rodriguez's arguments on the

merits of one or more of the issues raised in this case. RB 17-19.

---

[5] The Government also appears to make an alternative argument that even if
a class may be certified in a habeas proceeding, "at a jurisdictional
minimum, all of the putative class members must be under the immediate
supervision of the same custodian." RB 16. This assertion, however, is
supported by neither case law nor logic. Where, as here, class members in
custody within the same judicial district share common legal and factual
claims, the mere fact that they are held by different custodians – all of whom
are named as defendants – does not divest the court of jurisdiction to
adjudicate the claims on a class-wide basis.

11

EXHIBIT D    000157

Specifically, the Court ruled in <u>Casas</u> and <u>Prieto</u> that aliens in custody under the provisions of 8 U.S.C. 1226(a) – which applies to those who have been granted a stay of removal pending judicial review of their removal orders, and to those whose cases have been remanded after such review – cannot be subject to prolonged detention unless the Government proves, at a hearing before an IJ, that such prolonged detention is justified. <u>Casas,</u> 535 F.3d at 949-52; <u>Prieto,</u> 534 F.3d at 1065-66.

The Government appears to be arguing that class certification should be denied here because, otherwise, the class might win. <u>See</u> RB 17-19. This argument, however, is at best a non-sequitur, and at worst, a baseless contention with absolutely no support in the law. In either event, it runs directly contrary to the well-established principle that a court should not consider the merits of a claim in ruling on a motion for class certification. <u>See</u> <u>Eisen v. Carlisle and Jacquelin</u>, 417 U.S. 156, 177 (1974); <u>Dukes v. Wal-Mart, Inc.,</u> 509 F.3d 1168, 1178 (9th Cir. 2007) (stating defendant's challenges to plaintiffs' evidence of commonality related not to class certification but rather to the merits).[6]

---

[6] The Government's contention that its detention policies are entitled to deference (RB 19) similarly pertains to the merits of class members' claims. In any case, such deference is not warranted where, as here, detention raises

*(footnote continued)*

12

In any event, Casas does nothing to undermine the rationale for class certification here.  If some detainees obtain an adequate hearing under Casas, then they obviously would no longer remain part of the class.  But Casas does not specifically mandate hearings for all class members (and the Government has already argued that the principles of Casas do not apply to all class members, see RB 18-19), and it does not resolve what procedures are necessary in an adequate detention hearing.

Similarly, the subsequent decision of this Court in Diouf v. Mukasey, 542 F.3d 1222 (9th Cir. 2008), may affect the strength of the claims asserted on behalf of the class, but it goes only to the merits and not to whether the requirements of Rule 23 are satisfied.  In Diouf, this Court refused to decide whether to extend the holding of Casas to aliens detained under 8 U.S.C. 1231(a)(6) who have pending petitions for review in this Court from denials of motions.  Id. at 1234-35.  Instead, the Court reversed the District Court's judgment on other grounds and remanded the case for further proceedings. Id.[7]

---

a serious constitutional problem.  Ma v. Ashcroft, 257 F.3d 1095, 1105 n.15 (9th Cir. 2001).

[7] Also, Diouf is not yet final, and counsel for the petitioner in Diouf (who include several of the attorneys for Mr. Rodriguez here) anticipate that they will file a petition for rehearing in that case.

EXHIBIT D    000159

At this stage of the litigation, in ruling on a class certification motion, the Court should consider only whether the requirements of Rule 23 are met. Where, as demonstrated below (and at AOB 26-46), those requirements are met, the class should be certified – regardless of whether the claims of the class are, on the merits, weak or strong.

### A.    Rule 23(a)

Rule 23(a) sets out four requirements for certification of a class: numerosity, commonality, typicality, and adequacy of representation. The Government does not contest numerosity, and the other three requirements of Rule 23(a) are easily satisfied here.

### 1.    Although The Commonality Standard Requires Only That Class Members Share <u>Either</u> A Common Core of Facts <u>Or</u> Common Legal Claims, Here Class Members Share <u>Both</u>.

The commonality requirement of Rule 23(a) is not a difficult standard to meet. Rather, as this Court has stated, the requirement is "permissively construed." <u>Dukes</u>, 509 F.3d at 1177. The commonality standard is satisfied by <u>either</u> a shared common core of facts <u>or</u> shared legal theories or claims. <u>Id.</u>; <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, class members plainly share a common core of relevant facts. All have been or will be detained for more than six months. None has received a hearing before an IJ to determine whether their continued

14

prolonged detention is necessary or justified. Even if class members had disparate legal claims (which they do not), these shared facts alone would be sufficient to satisfy the commonality requirement of Rule 23(a).

Moreover, and independently, class members also share common legal claims and theories. All assert that there is no statutory basis for their prolonged detention without a hearing. All assert a constitutional right to a hearing. All assert that at the hearing, they are entitled to receive certain procedural protections, including that the hearing be before an IJ or a judicial officer (and not an ICE administrative official), that the Government be required to bear the burden of proof, that the class member be given an opportunity to appear at the hearing and be heard, and that the hearing take into account the length of the detention at issue. Even if the claims of the class members were based upon disparate facts (which they are not), these shared legal claims alone would be sufficient to satisfy the commonality requirement of Rule 23(a).

The Government argues that commonality does not exist because there are different factual circumstances underlying each class member's removal proceedings. RB 34-35. For example, one class member may have overstayed his visa, another may be charged with being an aggravated felon, another may have entered without inspection, and so forth. The fundamental

15

EXHIBIT D    000161

problem with this argument, however, is that these facts – relevant as they

may be to whether the class members will ultimately be <u>removable</u> – do not

alter the statutory and constitutional claims that they have a right to a

detention hearing.  For purposes of a class certification motion, these are

factual differences without a distinction.

Under the theory for relief set forth in Mr. Rodriguez's petition, the

only facts that matter are (a) whether the class member has been detained for

a prolonged period of time (six months or more) and (b) whether the class

member has had a procedurally sufficient hearing before an IJ to determine

whether continued prolonged detention is justified.  Because class members,

by definition, all share a common core of facts on these issues, the

commonality requirement is met.

Additionally (although no more is needed), the Government has also

failed to rebut the showing of common legal claims made by the proposed

class.  AOB 29-30.  The Government argues that different detention statutes,

with potentially different detention provisions, apply to class members, RB

29-34, but again the Government misses the point.  The claim asserted on

behalf of the class is that <u>none</u> of the general immigration detention statutes

at issue authorizes prolonged detention without a hearing – in part because,

as this Court has observed, such an interpretation of any of the detention

16

statutes would raise serious constitutional questions. Casas, 535 F.3d at
950-51; Prieto, 534 F.3d at 1065-66. Ultimately, this argument may prevail
(as Mr. Rodriguez argues), or it may not (as the Government argues), but it
is indisputably a common legal question that Mr. Rodriguez asserts on
behalf of all class members, and it thus independently satisfies the
commonality requirement for class certification.

Moreover, Mr. Rodriguez has asserted two other legal claims on
behalf of the class that the Government does not address or even
acknowledge in its brief. First, all class members share a constitutional
argument: even if the immigration detention statutes at issue were construed
to authorize prolonged detention without a hearing, the statutes would then
restrain liberty in violation of the rights of all class members under the Due
Process clause of the Fifth Amendment. ER 24-25. Second, all class
members share the argument that the detention hearing that they are entitled
to (whether by statute, the Constitution, or both) must provide them with
certain procedural protections, including that the Government must bear the
burden of proof and that the decisionmaker must take into account the length
of the detention in determining whether it remains justified. ER 27. Class
members all share these additional common legal claims, providing

17

additional, and independent, bases by which the proposed class meets the commonality requirement under Rule 23(a).

Rule 23(a) does not require Mr. Rodriguez to show that all class members have identical factual and legal claims. <u>Dukes</u>, 509 F.3d at 1177; <u>see also, e.g., Walters v. Reno</u>, 145 F.3d 1032, 1046 (9th Cir. 1998) (stating that differences among class members regarding merits of individual cases were "simply insufficient to defeat the propriety of class certification"); <u>Celano v. Marriott Int'l</u>, 242 F.R.D. 544, 551 (N.D. Cal. 2007); <u>see also</u> <u>Forbush v. J.C. Penney Co.</u>, 994 F.2d 1101, 1106 (5th Cir. 1993) (stating that the need for subsequent individual proceedings "does not supply a basis for concluding that [the named plaintiff] has not met the commonality requirement"); <u>Doe v. Los Angeles Unified Sch. Dist.</u>, 48 F. Supp. 2d 1233, 1241 (C.D. Cal. 1999) ("[C]ommonality exists if plaintiffs share a common harm or violation of their rights, even if individualized facts supporting the alleged harm or violation diverge."). The existence of one or more common facts or legal claims, as is present here, is sufficient.

### 2. Mr. Rodriguez's Claims Are Typical Of The Claims Of Class Members, And His Release From Custody During The Class Certification Briefing Does Not Moot The Case Or Preclude A Finding Of Typicality.

The Government asserts that Mr. Rodriguez failed to establish typicality and that Mr. Rodriguez's case is moot. RB 21-25, 34-40. Both of

18

these arguments rely on the fact that Mr. Rodriguez was conditionally released (subject to significant continuing restraints on his liberty) during the class certification briefing, and both are meritless.

  a.  **Neither Mr. Rodriguez's Claims Nor The Claims Of The Putative Class Are Moot.**

In its Opposition, the Government argues that because it released Mr. Rodriguez from physical detention shortly before its opposition to the class certification motion was filed, the case is moot. In support of this argument, the Government claims that Mr. Rodriguez was not "picked off" and that no exception to the mootness doctrine applies.

Tellingly, at no time in the District Court or on appeal has the Government ever offered any reason for its decision to release Mr. Rodriguez during the class certification briefing – other than the obvious one that it was attempting to moot out this proposed class action. Moreover, in response to Mr. Rodriguez's argument that the Government attempted to pick him off as a class representative, the Government responds only that detention cases are different from cases regarding tendered offers. RB 22. The Government cites no legal support for this distinction and ignores the cases cited by Mr. Rodriguez. See, e.g., ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85, 95 (2d Cir. 2007) (stating that "[t]here was no mootness" where the "defendants' consent to judgment

19

EXHIBIT D  000165

against them in the amount of $50 satisfied only a tiny portion of the

$500,000 dispute between the parties").

In addition, the Government has not provided Mr. Rodriguez with all

of the relief he seeks.  He remains subject to significant restraints on his

liberty.  ER 158-164.  Mr. Rodriguez has not received a hearing – with

certain specified protections – before an IJ.  ER 27.  Instead, the

Government has unilaterally imposed his conditions of release.  ER 158-64.

Although the Government downplays the significance of the ongoing

restraints on Mr. Rodriguez's liberty, RB 35-37,[8] it does not and cannot

refute the legal authority cited by Mr. Rodriguez holding that other, much

less immediate, restrictions give rise to a live controversy and defeat any

assertion of mootness.  See Carafas v. Lavallee, 391 U.S. 234, 238 (1968)

(inability to vote and engage in certain businesses sufficient to defeat

mootness); cf. Nakaranurack v. United States, 68 F.3d 290, 293 (9th Cir.

---

[8] The Government cites to Nguyen v. BI, Inc., 435 F. Supp. 2d 1109 (D. Or.
2006), in support of its decision to require Mr. Rodriguez to wear an
electronic monitoring device, but Nguyen itself suggests that supervised
monitoring constitutes "custody" and holds only that electronic monitoring
is not "detention," an irrelevant point that Mr. Rodriguez does not dispute.
Indeed, Mr. Rodriguez's own release documents indicate that custody
continues.  ER 101.

20

1995) (noting that courts "have broadly construed 'in custody' to apply to

situations in which an alien is not suffering any actual physical detention").[9]

The Government's sole response to the legal authority cited by Mr.

Rodriguez is that Clark v. Martinez, 543 U.S. 371 (2005), dealt with Mariel

Cubans and that if Mr. Rodriguez is re-detained it will be based on a new set

of facts. RB 35-36. But Clark is instructive because Mr. Rodriguez's

release documents indicate that he was released pursuant to 8 C.F.R. 241.4,

which gives certain immigration officials "discretionary authority to

terminate" Mr. Rodriguez's release, just as was true in Clark. Id. at 376 n.3;

ER 100. Moreover, Mr. Rodriguez's statutory and constitutional claims that

he is entitled to a hearing before an IJ have not been resolved, and thus,

necessarily continue to present a live controversy.

The Government also unsuccessfully attempts to distinguish cases

holding that putative class representatives have a continuing interest via their

fiduciary duties to the other class members. The Government acknowledges

that Gardner v. Westinghouse Broadcasting Co., 559 F.2d 209, 219 (3d Cir.

1977) (Seitz, C.J., concurring), recognizes that a fiduciary duty exists even

---

[9] Moreover, the Government has not argued that it has provided all of the
relief that Mr. Rodriguez seeks to obtain for members of the class, and so the
claims of class members are certainly not moot. See Gorbach v. Reno, 219
F.3d 1087, 1092 n.24 (9th Cir. 2000) (en banc) ("a class action does not
become moot merely because it has become moot as to a named plaintiff").

EXHIBIT D    000167

when no economic interests are involved, but argues that <u>Gardner</u> dealt only

with whether the representative could appeal a denial of class certification.

RB 39. Again, the Government does not explain why this distinction

matters or why Mr. Rodriguez does not have a continuing interest in

representing the class.

Finally, the Government unsuccessfully addresses some of Mr.

Rodriguez's arguments regarding exceptions to the mootness doctrine, while

ignoring others.[10] The Government cites to <u>Alaska Center for the</u>

<u>Environment v. U.S. Forest Service</u>, 189 F.3d 851 (9th Cir. 1999), and

argues that the "capable of repetition yet evading review" exception does not

apply. RB 23-25. But Mr. Rodriguez meets the requirements discussed in

<u>Alaska Center</u>, as the duration of the challenged conduct in Mr. Rodriguez's

case did not allow for full litigation and there is a reasonable expectation that

Mr. Rodriguez will be subject to the challenged conduct again due to the

Government's discretionary ability to redetain him. <u>See</u> 189 F.3d at 854-55.

---

[10] The Government fails to respond meaningfully to Mr. Rodriguez's
argument that under the voluntary cessation doctrine, the Government must
meets a "heavy burden" of showing that it is "absolutely clear" that Mr.
Rodriguez will not be re-detained. <u>Friends of the Earth, Inc., v. Laidlaw</u>
<u>Environmental Services (TOC), Inc.</u>, 528 U.S. 167, 189 (2000); AOB 37-38.
Contrary to the Government's assertion in a footnote, it is not settled law
that the voluntary cessation doctrine does not apply to habeas cases.

22

In fact, the Government acknowledges that the doctrine applies to
certain class action claims that are "inherently transitory" in nature in its
discussion of Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1117 (9th
Cir. 2003) (finding a live controversy due to a similar "ongoing, pervasive
and systemic" governmental policy). RB 24. The Government's ability to
unilaterally release and/or re-detain potential class members pursuant to its
discretion creates a situation where detainees' claims are "inherently
transitory." As such, Mr. Rodriguez meets the requirement that there be a
"reasonable expectation that the same parties will be subjected to the same
offending conduct." Demery v. Arpaio, 378 F.3d 1020, 1026 (9th Cir.
2004). At any rate, the rule "[t]hat the injury be capable of repetition with
respect to the particular plaintiff ... is a requirement only in non-class
actions." Perez-Funez v. Crosland, 611 F. Supp. 990, 999 (C.D. Cal. 1984)
(citing Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).

### b.    Mr. Rodriguez's Claims Remain Typical Of Those Of All Class Members.

The Government argues that factual distinctions in Mr. Rodriguez's
case, such as his aggravated felon status and his conditional release, defeat
typicality. Again, the Government confuses the issue. Mr. Rodriguez and
the class members are not seeking release, but a hearing. Thus, regardless of
Mr. Rodriguez's criminal status or current detention status, his claim

23

involves the same legal issue as those of the putative class members – the

right to a hearing – and with regard to that common issue, Mr. Rodriguez's

claims are typical of those of all class members. See Hanlon, 150 F.3d at

1020 ("Under the rule's permissive standards, representative claims are

typical if they are reasonably co-extensive with those of absent class

members; they need not be substantially identical.").

### 3.    Mr. Rodriguez Is An Adequate Class Representative.

To satisfy the requirement of adequate representation, (1) the

proposed class representative must not have conflicts of interest with the

proposed class, and (2) class counsel must be qualified and competent.

Dukes, 509 F.3d at 1185.  The Government fails to demonstrate how the

particular facts of Mr. Rodriguez's detention and subsequent conditional

release create a conflict of interest with the proposed class.  As explained

above, Mr. Rodriguez has a continuing interest in the claims, as he continues

to suffer restraints on his liberty and he has never received the relief sought

by the proposed class – a hearing before an IJ.  ER 158-64.  As such, Mr.

Rodriguez is an adequate class representative. [11]

---

[11] Importantly, even if the District Court properly determined that Mr.
Rodriguez's discretionary release makes his claim no longer typical or
renders him an inadequate representative of the class, the Government does
not dispute that the District Court should have, at a minimum, granted Mr.

*(footnote continued)*

24

EXHIBIT D    000170

**B.     The Requirements Of Rule 23(b)(2) Are Satisfied**

The requirements of Rule 23(b)(2) are easily satisfied here.  All class members have been or will be affected by the same Government conduct – prolonged detention in violation of their statutory and constitutional rights without a procedurally proper hearing.  Thus, the Government has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); see also Walters v. Reno, 145 F.3d 1032, 1048 (9th Cir. 1998) (requirements satisfied in claims by class of aliens challenging INS notice procedures); AOB 45-46.  The Government presents several arguments to the contrary, but none of these arguments withstands scrutiny.

First, the Government appears to argue that although it has held class members in detention for months or years without a hearing, the Government has neither "acted" nor "refused to act" with respect to the class.  RB 41.  The basis for this argument, however, is unclear at best.  Whatever it may be, the fact remains that in holding people in detention

---

Rodriguez leave to amend to substitute or add one of the dozens of other detainees who are class members as a new class representative.  In that circumstance, the District Court plainly abused its discretion in denying the request for leave to amend.  ER 166; see also Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

EXHIBIT D    000171

without a hearing, the Government has <u>both</u> acted <u>and</u> refused to act.

Injunctive relief, as well as declaratory relief, on behalf of the class is

appropriate and would remedy the wrong identified in Mr. Rodriguez's

Petition. <u>See</u> Fed. R. Civ. P. 23(b)(2).

Second, the Government argues that it may have a legitimate interest

in holding some class members for prolonged periods in excess of six

months. RB 41-42, 43-44. That may or may not be true, but all class

members nonetheless assert a common claim for injunctive and declaratory

relief: before the Government can subject them to prolonged detention, Mr.

Rodriguez argues, the Government must provide each class member with an

individualized <u>hearing</u>, with certain procedural protections, at which the

Government must bear the burden of proving its legitimate basis for the

prolonged detention on the specific facts of the class member's individual

circumstances.[12]

Third, the Government appears to repeat the arguments, already

addressed above in section IV.A.1., about differences in the statutory

provisions under which class members are held. RB 42-43. But, as noted

above, the class asserts a common claim that, despite these purported

---

[12] The Government suggests that class members are not "automatically" entitled to bond hearings, RB 43, but, as explained above, that contention goes to the merits of class members' claims, not to class certification.

26

EXHIBIT D    000172

differences, none of the general immigration detention statutes authorizes

prolonged detention without a hearing. Moreover, if one or more of the

statutes at issue were construed to authorize such hearing-less detention, the

class would then have a common claim that the statute violates their Due

Process rights under the Fifth Amendment. Again, the Government's

actions and failures to act can be remedied by class-wide injunctive and

declaratory relief.

Fourth, the Government points to its own regulations providing some

class members with "paper" custody reviews. RB 41-42, 44. This claim,

however, also goes only to the merits. In addition, the class claims here are

premised on the view that such paper reviews are insufficient under the

governing statutes and the Constitution. As this Court has already noted,

such a paper review "falls far short of the procedural protections afforded in

ordinary bond hearings." Casas, 535 F.3d at 951-52.

Fifth, the Government argues that, in certain cases, there may be

difficulties or disagreements in allocating the burden of proof or in

ascertaining the starting date for the six month period of presumptively

permissible detention. RB 45-47. These issues, however, relate to the

merits, not to whether a class should be certified. The common claim of all

class members that should be certified for class-wide adjudication – and that

27

can be remedied by injunctive or declaratory relief – is that after six months

of time in immigration detention, the Government must provide the class

member with a hearing before an IJ or a judicial officer and bear the burden

of proving that continued detention of the class member is necessary in light

of the length of detention.  ER 27.

### C.    The Class Is Properly Defined

Finally, the Government argues that, for various reasons, Mr.

Rodriguez has not properly defined the class.  For example, the Government

argues that the use of the term "general immigration detention statutes" in

Mr. Rodriguez's class certification motion is "enigmatic" and improperly

vague.  RB 28-32.  Moreover, the Government contends, the class definition

might include suspected terrorists.  RB 28.

There is no merit to these arguments.  The phrase "general

immigration detention statutes" comes directly from this Court's opinion in

Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006).  In Nadarajah, the

Court used the phrase "general detention statutes" or "provisions" eight

times – and, after comprehensively analyzing these statutes, concluded that

none of the general immigration detention statutes authorized indefinite

detention.  Id. at 1078.

EXHIBIT D    000174

As set forth in Mr. Rodriguez's Petition, the briefing below, and the case law, the term "general immigration detention statutes" means all statutes that authorize detention, except for those statutes that specifically authorize prolonged detention. ER 9-10, 146-47. The term includes 8 U.S.C. 1225 (authorizing detention of aliens seeking admission), 8 U.S.C. 1226 (detention of aliens pending a determination of removability), 8 U.S.C. 1231(a) (detention of aliens with an administratively final order of removal during and after the removal period), and 8 U.S.C. 1182(d)(5)(A) (authorizing discretionary parole of aliens pending a final determination of their admissibility). The term excludes 8 U.S.C. 1226a and 8 U.S.C. 1531-1537, which specifically authorize prolonged detention of, among others, suspected terrorists, as this Court explained in <u>Nadarajah</u>. 443 F.3d at 1076-80. Because the phrase "general immigration detention statutes" has an established meaning set forth in both the case law and the Petition – and because the class clearly excludes those detained as known or suspected terrorists – the proposed class definition is proper.

The Government also argues that the proposed class definition improperly includes future class members whose claims, according to the Government, are not yet ripe. RB 26-27. But here, many class members, including Mr. Rodriguez, have already been and are currently being injured

29

EXHIBIT D    000175

by the Government's unauthorized detention practices, and so have claims that are already ripe. ER 165. There is nothing objectionable about defining a class to include both current and future class members. See, e.g., INS v. Nat'l Ctr. for Immigrant Rights, 502 U.S. 183 (1991) (addressing the merits of the claims of a class that included "all those persons who have been or may in the future be denied the right to work" pursuant to a federal regulation); Does 1-5 v. Chandler, 83 F.3d 1150, 1152 (9th Cir. 1996) (class defined as "all persons who are, have been, or will be identified as disabled"); LaDuke v. Nelson, 762 F.2d 1318, 1321 (9th Cir. 1985) (affirming certification of a class consisting of "all persons who have resided or will reside" in a type of farm housing); see also Probe v. State Teachers' Retirement System, 780 F.2d 776, 780 (9th Cir. 1986) ("The fact that the class includes future members does not render the class definition so vague as to preclude certification.").

The inclusion of future class members is particularly appropriate in this matter, where an ongoing Government practice continues to violate the rights of an ever-changing group of persons. Included in this group are (a) current class members, (b) current detainees who have not yet been held for more than six months (and so are not yet within the class definition) but who will, under the Government's current practices, be subject to prolonged

30

EXHIBIT D    000176

detention without a hearing, and (c) future detainees who will be subject to

prolonged detention without a hearing.  Given the clarity of the class

definition, there will be nothing vague or speculative in determining who has

become a class member as the case proceeds, or after judgment is entered.[13]

---

[13] The Government also contends that Mr. Rodriguez waived his argument
on ripeness by not raising it in his AOB, but this contention makes no sense.
Where, as here, the respondent argues in his RB that the decision of the
District Court should be affirmed on some basis other than that relied upon
by the District Court, the first opportunity that the Appellant has to set forth
his arguments on this point is in his Reply Brief.  See Rosenbaum v. City
and County of San Francisco, 484 F.3d 1142, 1150 n.3 (9th Cir. 2007)
(appellant can respond in his reply brief to issues raised on appeal for the
first time in respondent's brief); Koerner v. Grigas, 328 F.3d 1039, 1048-49
(9th Cir. 2003) (same).

EXHIBIT D     000177

<u>CONCLUSION</u>

For the foregoing reasons, and those stated in his Opening Brief, Mr.

Rodriguez respectfully requests the Court to reverse the District Court's

order denying his motion for class certification and to remand this

proceeding with instructions to grant the certification motion.

Respectfully submitted,

**ACLU FOUNDATION OF
SOUTHERN CALIFORNIA**
Peter J. Eliasberg
Ahilan T. Arulanantham

**AMERICAN CIVIL LIBERTIES
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT**
Judy Rabinowitz

**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT**
Cecillia D. Wang

**STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC**
Jayashri Srikantiah

**SIDLEY AUSTIN LLP**
Steven A. Ellis
William Tran
Brian K. Washington

Dated:  November 13, 2008                  By: _____
                                               Steven A. Ellis
                                               Counsel for Petitioner-Appellant
                                               Alejandro Rodriguez

32

EXHIBIT D    000178

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I

certify that the attached brief is proportionately spaced, uses Times New

Roman 14-point typeface, and contains 6,984 words.

Respectfully submitted,

SIDLEY AUSTIN LLP
Steven A. Ellis
William Tran
Brian K. Washington

Dated:  November 13, 2008                 By:_____
Steven A. Ellis
Counsel for Petitioner-Appellant
Alejandro Rodriguez

EXHIBIT D    000179