PETER J. ELIASBERG (SBN 189110)
Email: peliasberg@aclu-sc.org
AHILAN T. ARULANANTHAM (SBN 237841)
Email: aarulanantham@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Tel: (213) 977-5211
Fax: (213) 977-5297

**Attorneys For Petitioner**
(Additional counsel listed on following page)

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, et al., <br><br> Petitioners, <br><br> vs. <br><br> TREY LUND, et al., <br><br> Respondents. | Case No. CV 07 – 3239 TJH (RNBx) <br><br> **REPLY BRIEF IN SUPPORT OF MOTION FOR DISCOVERY RELATED TO SUB-CLASSES** <br><br> Honorable Terry J. Hatter <br><br> Complaint Filed: 5/16/2007 <br><br> Hearing Date: March 22, 2010 <br> Time: 10:00 AM <br> Place: Courtroom 17 |

LA1 1765579v.2

| | |
|---|---|
| 1 | Additional Counsel: |
| 2 | JUDY RABINOVITZ* |
|  | AMERICAN CIVIL LIBERTIES FOUNDATION |
| 3 | IMMIGRANTS' RIGHTS PROJECT |
|  | 125 Broad Street, 18th Floor |
| 4 | New York, NY 10004 |
|  | Telephone: (212) 549-2618 |
| 5 | Facsimile: (212) 549-2654 |
| 6 | JAYASHRI SRIKANTIAH (SBN 189566) |
|  | STANFORD LAW SCHOOL |
| 7 | IMMIGRANTS' RIGHTS CLINIC |
|  | Crown Quandrangle |
| 8 | 559 Nathan Abbott Way |
|  | Stanford, CA 94305-8610 |
| 9 | Telephone: (650) 724-2442 |
|  | Facsimile: (650) 723-4426 |
| 10 | |
|  | STEVEN A. ELLIS (SBN 171742) |
| 11 | WILLIAM TRAN (SBN 245104) |
|  | BRIAN K. WASHINGTON (SBN 248960) |
| 12 | SIDLEY AUSTIN LLP |
|  | 555 West Fifth Street, Suite 4000 |
| 13 | Los Angeles, California 90013-1010 |
|  | Telephone: (213) 896-6000 |
| 14 | Facsimile: (213) 896-6600 |
| 15 | *Application for admission *pro hac vice* forthcoming |

2

# INTRODUCTION

The government invents a phantom inconsistency in Petitioner's positions where none exists, and then uses it to try to evade discovery obligations that are not only entirely reasonable, but absolutely necessary both to allow class counsel to communicate important information to their clients and also to form sub-classes as this Court has directed. The Court stated on the record at the last hearing that the parties should form sub-classes in this case, and both parties indicated their assent to that approach. Exh. 16 at 5, 9. While the government could have plausibly objected to at least some of the discovery requests if it also intended to oppose the creation of sub-classes, its objection in the current context is as baffling as it is misguided.[1]

The government's strenuous objection is particularly mysterious given that it does not argue that most of Petitioner's discovery requests are burdensome, perhaps because it already keeps the exact data that Petitioner seeks.[2] Instead, the government advances meritless legal challenges to the discovery sought. It argues, for the first time in three years, that this case cannot proceed under the general federal question statute. However, the case it cites for this argument has been undermined by subsequent authority, at least for the broad proposition for which the government cites it, and the law is clear that this case can proceed under the federal question statute. The government also argues that there is no "good cause" for discovery under the

---

[1] During negotiations that occurred both before and after this Motion was filed, Petitioner's counsel offered to withdraw this Motion if the government would provide class counsel access to a limited number of detainees and agree not to oppose sub-class certification once representatives were selected. The government refused this request, thus making litigation of this discovery motion necessary. *See* Exh. 17 (Letter of March 4 Regarding Motion for Discovery Related to Sub-Class Certification).

[2] Petitioner has learned that the government provided individualized detainee information to the Associated Press in response to a FOIA request, but without identifying names and A numbers. Class counsel provided that information to government counsel during negotiations concerning this motion. A copy of the information relating to detainees in the Central District of California is attached as Exhibit 18. The only one of Petitioner's requests that the government specifically mentions as burdensome concerns the production of transcripts from removal hearings that have not been created. If the government represents that it would have to create many transcripts to comply with this request, then Petitioner will withdraw it, at least with respect to all class members for whom transcripts do not already exist.

habeas statute here, but it never explains how to reconcile this position either with class counsel's obligation to contact their clients or with the need to determine which putative sub-class any given detainee falls under. Most important, the government cites no case where any Court has denied discovery of class member identifying information to class counsel.

Apart from these meritless arguments, the government makes only a procedural objection – that this Court has not certified the class or entered a scheduling order as required by the Rules, making this Motion premature. Petitioner disagrees with these objections, as they elevate form over substance, but in any event at the hearing on this Motion Petitioner will request that the Court enter an order certifying the class as required by the Ninth Circuit's decision, and also that it enter a scheduling order to begin the discovery process under Rule 26. Both of these orders would unquestionably resolve the government's procedural objections.

## I. Petitioner's Request for Discovery Relating to the Sub-Classes Creates No Inconsistency with Prior Positions in This Litigation.

Contrary to the government's claim, Petitioner's request for discovery to allow class counsel to communicate with their clients and form sub-classes creates no inconsistency with any prior positions in this litigation, either before this Court or the Ninth Circuit. *See* Opposition to Petitioner's Motion for Discovery Related to Subclasses at 4, Docket #61, *Rodriguez v. Lund*, No. CV 07-03239 TJH (RNBx) (C.D. Cal. Mar. 08, 2010) (hereinafter "Opp."). Petitioner continues to maintain that the Due Process Clause requires that all class members be afforded a constitutionally-adequate hearing once they have been detained for six months. *See* Petition for Writ of Habeas Corpus at 14-19, Docket #1, *Rodriguez v. Hayes*, No. CV 07-3239 VAP (E) (C.D. Cal. May 16, 2007) (hereinafter "Pet."); Motion for Class Certification at 5, Docket #10 *Rodriguez v. Hayes*, No. CV 07-3239 VAP (E) (C.D. Cal. Jun. 25, 2007).

At the same time, class counsel have a right to the names, A numbers, and locations of the class members, because they are class counsel's clients. As such,

class counsel have the right, and probably the obligation, to inform the class members as to the nature of this lawsuit and the relief sought on their behalf. Communicating that information to class members in a timely fashion is particularly important because many of them may choose to exercise their rights to appeal adverse decisions in their immigration cases, or to continue defending favorable decisions while the government appeals, if they believe that they may receive a bond hearing in the coming months. As explained *infra* at 14-17, the government is incorrect in its response to this point, where it claims that counsel have no right or obligation to communicate with their clients, Opp. at 17-19, but for present purposes the critical point is that this basis for discovery is entirely consistent with counsel's position that all class members are entitled to a hearing as a matter of law.

Petitioner also seeks discovery because the Ninth Circuit suggested, and this Court then stated at the last hearing, that the class should be divided into sub-classes in light of the different statutory arguments that class members will have, depending on what statute governs their detention. *See Rodriguez v. Hayes*, 578 F.3d 1032, 1049 (9th Cir. 2009); Exh. 16 at 5. This was entirely proper, both because the Court has discretion to order the creation of sub-classes as appropriate and because both parties assented to it. *See Rodriguez*, 578 F.3d at 1049; FED. R. CIV. P. 23(c)(5); Exh. 16.[3]

---

[3] At the outset of the hearing, the following exchange took place:

> The Court: "I would think that there would be some discussion at least among you, if not disagreement, about what kind of sub-classes we're going to have here because there's no way we can proceed without that.
> Mr. Arulanantham: Yes, your Honor. I think we may be in agreement about that. We're both in agreement that there should be sub-classes."

Later on, the government and Court again made clear that all sides agreed on the need for sub-classes.

> Mr. Juncaj: Mr. Arulanantham actually sort of hit both major points. We both agree that sub-classes – and your honor has indicated –
> The Court: Yes.
> Mr. Juncaj: -- that's the way to proceed with some clarity moving forward here. As to whether we can agree to what the sub-classes are, for a large majority of it perhaps we can. There may be some disagreements along the way.

As a result, Petitioner through his counsel will have to file a motion for sub-class certification, and in that motion will have to prove that the detainees in each sub-class and their named representative meet Rule 23's requirements. Rule 23(c)(5). *See also Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) ("each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action.").

In order to determine what sub-class the detainees fall under, one must have access to the detention-related documents that Petitioner requests in this Motion. Indeed, because the government does not inform detainees as to which statute they are held under except by providing different detention procedures to detainees based on what statute governs, accessing such documents is the *only reliable way* of determining under which statute an individual class member is being held. For example, one cannot determine that a class member is subject to "mandatory detention" under 8 U.S.C. 1226(c) without seeing the government's charging document (which must allege certain triggering convictions) and then the decision from any *Joseph* hearing that the detainee would have received if he or she requested it. *See Tijani v. Willis*, 430 F.3d 1241, 1243-1244 (9th Cir. 2005) (Tashima, J., concurring) (describing *Joseph* hearing process by which government assesses whether detainee is properly subject to mandatory detention). In contrast, if a class member has received a bond hearing where he or she bore the burden of proof, then the government must be detaining them under Section 1226(a). Similarly, the only way to know that a class member is an "arriving alien" detained under 8 U.S.C. 1225 is to see the documents charging the detainee as such and denying release under the parole procedure for arriving aliens, while the only way to determine if a class member is subject to detention under 8 U.S.C. 1231(a)(6), which governs detention after an adverse BIA decision of a denied motion to reopen, is to see the BIA decision explaining the procedural posture of the case or, if the decision provides no explanation, then the file custody review documents that show how the government

has characterized it. And the only way to know if the government is treating a class member as a "*Casas*" detainee under Section 1226(a) is to see whether the government provided the person with a hearing where the government bore the burden of proof, which will be reflected in the detention decision and in documents disclosing the detainee's immigration case status.[4]

It should be obvious then that nothing in this request creates any inconsistency with Petitioner's position that all class members are entitled to a hearing, let alone the "clear inconsistency" required to invoke estoppel. *See* Opp. at 5 (citing *United States v. Ibrahim*, 522 F.3d 1003 (9th Cir. 2008)). Indeed, the Ninth Circuit itself contemplated that there would be some differences among class members, based on the different governing statutes, but it held that these differences were not enough to defeat class certification in light of the common constitutional claim underlying the class as a whole. *See Rodriguez*, 578 F.3d at 1049.[5]

The government's only answers to this obvious point – that one cannot identify who belongs in which sub-class without discovery – come in two extremely cryptic paragraphs toward the end of its brief. *See* Opp. at 15-16. There, the government appears to argue that the request for discovery relating to sub-classes should come *after* the motion for sub-class certification is filed, and that Petitioner can, and therefore must, find sub-class representatives without the benefit of discovery. *Id.* at

---

[4] The government cites Petitioner's prior statements that custody reviews and other detention documents were irrelevant at the class certification stage. Opp. at 13. This remains Petitioner's position with respect to certifying the class for the constitutional claim, but it obviously cannot be correct with respect to the formation of statutory sub-classes, because one cannot determine which sub-class a detainee falls into without knowing what the government has said concerning its authority to detain that individual.

[5] As Petitioner noted in the original motion, much of the discovery he seeks now will become necessary at the merits stage, even if not provided here. Contrary to the government's claim, Opp at n.7, this too is entirely consistent with Petitioner's original position. While Petitioner believes that all detainees should be entitled to a hearing regardless of the cause of their detention, the government has taken the opposite view, arguing that its existing release procedures are sufficient. Resolving that dispute will require discovery concerning the existing procedures. *See* Motion for Discovery Related to Sub-Classes at 11, 11 n.6, Docket #54, *Rodriguez v. Hayes*, No. CV 07-3239 TJH (RNBx) (C.D. Cal. Feb. 8, 2010) (hereinafter "Mot.").

15 (describing request as "premature"). Petitioner explains *infra* at 10-11 why these arguments are incorrect, but again for present purposes the crucial point is that they have nothing to do with any alleged inconsistency with Petitioner's prior arguments. Thus, Petitioner's request for discovery relating to the sub-classes does not contradict in any way his claim that all class members are entitled to a constitutionally-adequate bond hearing as a matter of Due Process.

**II. Discovery Is Warranted Under the General Federal Habeas Statute, 28 U.S.C. 2241, and the General Federal Question Statute, 28 U.S.C. 1331.**

Petitioner is entitled to discovery as a matter of right under the federal question statute, and as a matter of discretion under the habeas statute because "good cause" exists for such discovery. Either of these bases is sufficient to support the discovery requests here.

**A. Discovery Is Available As of Right Under the Federal Rules.**

Petitioner's motion seeks discovery as a matter of right under the Federal Rules. Although the federal discovery rules do not apply generally to habeas petitions, they do apply to cases brought under the federal question statute, Mot. at 5-6, and this action is maintained under both statutes.

In response, for the first time in over three years of litigation in this case, the government argues that this Court lacks jurisdiction under Section 1331.[6] Opp. at 7. This assertion is meritless. By its terms, Section 1331 creates jurisdiction in this Court for any case presenting a federal question of law, which this case obviously does. *See Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998). The government contends that the Court nonetheless lacks jurisdiction because this case seeks "release from illegal custody," and therefore falls under the exception to federal question

---

[6] The timing of the government's claim is particularly striking given that it already filed and lost a motion to dismiss this case, and did not argue that this Court lacked jurisdiction under Section 1331 at that time. *See* Motion to Dismiss Action, Docket #26, *Rodriguez v. Hayes*, No. CV 07-3239 TJH (RNB) (C.D. Cal. Dec. 17, 2007). In contrast, Petitioner has consistently maintained this action under both Section 1331 and the habeas statute. *See* Pet. at 1; Appellant's Opening Brief at 1, *Rodriguez v. Hayes*, 578 F.3d 1032 (9th Cir. Sept. 12, 2008) (No. 08-56156).

jurisdiction established in *Preiser v. Rodriguez*, 411 U.S. 475 (1973). However, the Supreme Court has since made clear that *Preiser*'s rule is not as broad the government suggests. It does not apply to all claims that "relate to" the legality of confinement, but only to those claims that would "*necessarily* spell immediate or speedier release for the prisoner." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis in original); *see also Osborne v. District Attorney's Office for Third Judicial Dist.*, 423 F.3d 1050, 1054 (9th Cir. 2005) (stating that *Dotson* "rejects the notion that a claim which can be brought in habeas must be brought in habeas," and holding that the habeas statute did not preclude jurisdiction over a claim for DNA evidence because "success in such an action would not 'necessarily demonstrate the invalidity of confinement or its duration.'"). Here, Petitioner argues only for a better procedure for determining release, and not for release itself. *See* Pet. at 14. Therefore, the claim he asserts is not governed by *Preiser*.

Even if *Preiser*'s rule did apply to a challenge to release procedures, rather than only to challenges seeking release itself, neither its holding nor its rationale would apply in this case. *Preiser* involved a challenge to a state law criminal conviction, and the cases following it rest on two central principles arising in that context. The first is that the specific federal habeas statute concerning review of state court convictions – 28 U.S.C. 2254 – should control over the more general statute codified at Section 1983, which creates jurisdiction in cases alleging that a state actor has violated federal law. *Preiser*, 411 U.S. at 489 (contrasting "general" and "broad" language of Section 1983 with later-enacted "specific" habeas statute "designed to provide the means for a state prisoner to attack the validity of his confinement"). The second is that federalism concerns require caution when a federal court considers the validity of a state prison sentence. *Id.* at 490 (describing "policy reason" behind the rule as attempt "to avoid the unnecessary friction between the federal and state court systems that would result if a lower federal court upset a state court conviction without first giving the state court system an opportunity to correct its own constitutional errors.").

Neither rationale applies here. The federal habeas statute on which Petitioner relies is the general provision allowing any detained federal prisoner to file suit in district court, not the more recent specific provision that governs state prisoners. *Compare* 28 U.S.C. 2241(c) *with* 28 U.S.C. 2254. Indeed, Section 2241 is older than the general federal question statute codified at Section 1331, and certainly no more specific. *See* 28 U.S.C. 1331[7]; *see generally INS v. St. Cyr*, 533 U.S. 289 (2001) (discussing history of Section 2241, which dates from the First Judiciary Act of 1789). In addition, this case presents no federalism concerns analogous to those in *Preiser*; no court, let alone a state court, has upheld the validity of class members' detention.

The government also argues that, even if discovery is appropriate under Rule 26, it is premature for two reasons – because the Court has not set a Rule 26 conference and because it has not certified the class. Opp. at 9-10. These arguments elevate form over substance, and the Court should resolve them by entering the orders required to begin discovery. The government's argument regarding the Rule 26 conference is at the very least odd, given that the opposing parties have already had prolonged discussions with respect to the discovery requests at issue here. *See* Exh. 17. Moreover, it is not clear that the Rule 26 discovery timing guidelines should apply to discovery related to the sub-classes, given that the Court directed the parties to form them. But in any event, given that the Court already denied a motion to dismiss in this case (from which the government did not appeal), *see* Order of Mar. 19, 2008, Docket #33, No. CV 07-03239 TJH (RNB), it should now set a schedule pursuant to Rules 16 and 26 in order to allow discovery with respect to sub-classes and all other aspects of this case.

The government also argues that discovery would be premature because no class has actually been certified. Opp. at 12 n.5, 17. As discussed previously and further below, even if there were no certified class, discovery would likely still be

---

[7] Congress first conferred general federal question jurisdiction on the lower federal courts in 1875. *See* Act of March 3, 1875, § 1, 18 Stat. 470, now 28 U.S.C. § 1331.

Case 2:07-cv-03239-TJH-KES   Document 65   Filed 03/15/10   Page 11 of 17   Page ID #:355

1 appropriate. *See* Mot. at 9; *infra* at 11-14. In any event, this is a weak basis for
2 resisting discovery, given the Ninth Circuit's conclusions that "none of the grounds
3 offered by Respondents justify denial of class certification and that the class meets the
4 requirements of Rule 23." *Rodriguez*, 578 F.3d at 1038. Counsel have considered
5 themselves to be class counsel since the Ninth Circuit's decision.

6 Nonetheless, because the government has persisted in its refusal to provide
7 class counsel information on this basis, Petitioner requests that the Court enter an
8 order formally certifying the class as required by the Ninth Circuit, in order to obtain
9 the discovery to which that ruling will unquestionably entitle him. Petitioner requests
10 that the Court defer entry of an order certifying sub-classes after the discovery process
11 has allowed class counsel to determine in the first instance what the sub-classes
12 should be and who the representatives should be, and after the parties have briefed any
13 disagreements concerning the sub-class issues if necessary.

14 **B.  Discovery is Warranted Under the Habeas Statute.**

15 Even if the Court concludes that discovery cannot proceed under Rule 26, it
16 should still authorize the discovery sought here under the habeas statute. Because
17 counsel now represents the class members in their request for detention hearings, they
18 obviously have a right and an obligation to communicate with the class members
19 about this case and how it may implicate their decisionmaking generally. In addition,
20 as explained *supra*, counsel cannot form sub-classes and identify appropriate
21 representatives without at least some of the discovery sought.

22 The government agrees that discovery is permitted but not required in habeas
23 cases, Opp. at 9, but argues that there is no "good cause" for discovery in this case
24 because it should come only after a motion for certification of the sub-classes, and
25 alternatively that Petitioner ought to be able to identify sub-class representatives
26 without discovery. Opp. at 15-16. This ignores the first rationale for the discovery
27 motion – to allow counsel to communicate with their clients. It is also incorrect with
28 respect to the second rationale, because courts routinely allow discovery in support of

11

class certification motions. Indeed, the Ninth Circuit has recently reiterated that "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942-43 (9th Cir. 2009) (upholding denial of class certification after plaintiffs had "nearly ten months" to conduct discovery prior to consideration of motion); *see also* 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE, CIVIL § 1785.3 (3d ed. 2005) (the practice employed in the majority of class actions is to resolve class certification after an appropriate period of discovery). This is particularly true where the information at issue is in defendant's control. *Kamm v. California City Development Co.*, 509 F.2d 205, 210, 210 n.11 (9th Cir. 1975) (stating that "[t]he propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses" and noting that "[t]o pronounce finally, prior to allowing any discovery, the nonexistence of a class or set of subclasses, when their existence may depend on information wholly within defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23.") (internal citations omitted).[8]

The government also asserts that Petitioner can obtain the information needed to form sub-classes without discovery, because in the past counsel have identified enough class members to support the class certification motion. There are two serious problems with this argument. First, that Petitioner was able to gather information to establish the propriety of the class does not in any way prove that he could do the same for the sub-classes. Petitioner has always had to gather information about the

---

[8] The government cites *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985) for the rule that a district court does not abuse its discretion in denying discovery on a class certification motion if the plaintiff has made no prima facie showing that the discovery sought will lead to information that will substantiate the class allegations. As noted above, however, here the information requested will lead to facts necessary to formulate the sub-classes, and is sought after the class has been certified.

class in a haphazard and incomplete way, *see* Exh. 6 at ¶¶ 5, 7 (describing limitations on information-gathering procedure), and while Petitioner suspects that sub-classes meeting the Rule 23 requirements can be formed, the government is the primary source of that information and should be required to disclose it. *Kamm*, 509 F.2d at 210.[9]

Second, the authority concerning discovery in both the class action and habeas contexts does not impose any requirement that there be no other mechanism to obtain the requested information. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424-25 (9th Cir. 1985) (holding that district court should allow discovery where it is "likely to produce substantiation of the class allegations"); *Harris v. Nelson*, 394 U.S. 286, 300 (1969) (holding that district court has "duty" to allow discovery where "petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally"). In other words, as long as discovery could lead to information that would support Petitioner's claims, the Court should permit it.

The government also argues that there is no good cause for discovery because class counsel ought to find some other way of identifying sub-class representatives, and in support points to counsel's client Amadou Diouf as a possible representative for one of the sub-classes. But it is class counsel, not the government, who must choose sub-class representatives and determine whether any given person is suitable to shoulder the burdens associated with being a named plaintiff in a large federal lawsuit. Moreover, even if class counsel chose Mr. Diouf as a sub-class representative, this would not solve the problem with respect to other sub-class representatives.[10]

---

[9] The government's assertion that Petitioner has not "allege[d] that appropriate subclass representatives are not already known," Opp. at 15-16, is misleading. There is no requirement that Petitioner formally allege that claim in the complaint, or even that he make the allegation at all. But in any event, in fact Petitioner's counsel do not know of appropriate sub-class representatives at this time.

[10] In addition, class counsel would like to choose named representatives whose immigration cases will not end soon, thereby preventing them from becoming moot and requiring further amendment of the complaint.

13

Finally, it is telling that the government makes no argument that the discovery sought here is burdensome, except with respect to Petitioner's request for transcripts of removal proceedings (which request Petitioner will withdraw, for purposes of this Motion, in such cases where the transcripts do not already exist). This may be because the government already keeps the data that Petitioner requests. *See* Exh. 18. In any event, given that the government has not asserted that the information requested would be difficult to produce, and given that it undoubtedly would assist in the formation of sub-classes, the government offers no good reason for declining to provide it.

**III. The Government's General Objections to All Discovery In This Case Are Meritless**

The government also makes a set of arguments against discovery in this case that apply regardless of whether the Court treats this case as a general federal question case or instead only as a class habeas petition. These arguments are also meritless.

The government states that the Court must order Petitioner to amend the complaint at this stage, prior to any discovery, because the complaint does not describe the sub-classes. This is incorrect for two reasons. First, as noted above, even were there no sub-classes at issue, counsel would be entitled to discovery of their clients' contact information in order to counsel them about this case. Second, because the Court has directed the formation of sub-classes, Petitioner should have no obligation to amend the complaint until after class counsel have determined, through the discovery process, what sub-classes can be formed. While the government states that it is entitled to "fair notice" concerning the allegations, Opp. at 19, it provides no explanation as to how the discovery process denies it any notice – the discovery sought pertains only to people who are already members of the class, and both sides have discussed what possibilities for sub-classing may exist. While Petitioner will no

doubt amend the complaint given the Court's directive that sub-classes be formed, there is no reason why that amendment should precede discovery.[11]

The government also erroneously argues that privacy concerns counsel against providing the information requested. Opp. at 18. However, the case on which it relies – *Salazar v. Avis Budget Group, Inc.*, 2007 WL 2990281 (S.D. Cal. 2007) – concerns the right to discovery prior to certification. The government has still cited no case, and counsel is unaware of any, where a court has denied basic identifying information concerning class members to class counsel.

In any event, even with respect to the pre-certification context, the government's argument is incorrect. The government argues that *Salazar* raises privacy concerns, and cites to the Privacy Act of 1974 ("Privacy Act") and the Department of Homeland Security's internal policy regarding personally identifiable information as evidence of the privacy interests at stake here. But *Salazar* concluded that the defendant was required to produce the names and addresses of all putative class members even before class certification, so long as the class member did not opt out of the discovery request. In reaching this conclusion, the court applied a balancing test, asking whether there was a "legally protected privacy interest" and whether the class members had a "reasonable expectation of privacy under the particular circumstances." *Salazar* at *2 (citing *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1 (1994)). The court then balanced those interests against the interests at stake in the proposed class action, asking whether the class members would "reasonably weigh their privacy interests higher than the opportunity to sue" the defendant to obtain the relief sought. *Id.*

Applying that test here, it is clear that the Court would allow access to class members even if this class were not certified. Many class members do not even have a "legally protected privacy interest" under the government's theory because, as noted

---

[11] The government already filed a motion to dismiss in this case, which it lost and did not appeal. *Supra* at n.6. It therefore already had a full opportunity to litigate any defects in the complaint.

in the DHS's internal policy, the Privacy Act covers only citizens and lawful permanent residents. Privacy Policy Guidance Memorandum at 2-4.[12] Even for those class members who have a legally protected privacy interest, their interest in maintaining the privacy of their locations, A numbers, and basic detention-related documents is not so "serious" in nature, scope, and actual impact or potential impact to constitute an "egregious" breach of social norms. *Salazar* at \*2. Just as in *Salazar*, where the "minimal privacy interests" were overridden by the "valuable social function" served by the class action lawsuit, so too would the Court override those interests here. *Id.* Indeed, there is great irony in the government arguing that it must protect class members' privacy at the expense of an opportunity to meet with attorneys who seek to provide them with detention hearings. Surely the detainees would not "reasonably weigh their privacy interests higher than the opportunity to sue" the government to obtain a hearing after months or years of incarceration. *Id.*[13]

The government also makes two contradictory arguments concerning opt-outs, both of which are meritless. First, the Government claims that opt-out notices should be required before it has to produce identifying information concerning detainees to their counsel. Opp. at 18. However, it cites no authority for adopting such an approach after a class has been certified, let alone a class under Rule 23(b)(2), where there are no opt-outs. At the same time, the government also appears to assert that because class members have no right to opt out of the class, counsel has no right or obligation to communicate with his class members. Opp. at 18-19. However, it cites no authority for this claim, and Petitioner is aware of none. The class members should be allowed to communicate with their attorneys, whether or not they have a right to opt out of the class, so that counsel can advise them about this case, and in particular

---

[12] DHS nonetheless applies its privacy protection policy to all detainees, but it does so as a matter of convenience, not in order to protect statutory rights. *Id.* at 3-4.
[13] In any event, even if the government's privacy concerns were justified, the solution would be to subject the discoverable materials to a protective order to prevent widespread disclosure, not to bar counsel from gathering basic information concerning their detained clients.

concerning the possibility that some of them may win the right to a detention hearing in the near future.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the motion and order the government to produce the information requested, with the exception of the request for any immigration court transcripts that do not currently exist. *See supra* n.2.

Respectfully submitted,

Dated: March 15, 2010

By: s/Ahilan T. Arulanantham
Ahilan T. Arulanantham
Attorneys for Petitioner

Dated: March 15, 2010

SIDLEY AUSTIN LLP

By: _____
William Tran
Attorneys for Petitioner