UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


ALEJANDRO RODRIGUEZ,           ) CASE NO:  CV 07-3239-TJH(RNBx)
                               )
              Petitioner,      )           CIVIL
                               )
       vs.                     )    Los Angeles, California
                               )
JAMES HAYES, ET AL.,           )    Monday, March 22, 2010
                               )
              Respondents.     )   (10:12 a.m. to 11:09 a.m.)


STATUS CONFERENCE RE CLASS CERTIFICATION, DISCOVERY
AND ORDER TO SHOW CAUSE RE LACK OF PROSECUTION

BEFORE THE HONORABLE TERRY J. HATTER, JR.,
UNITED STATES DISTRICT JUDGE


APPEARANCES:              See next page

Court Recorder:           Michelle Ortega

Courtroom Deputy:         Joseph Remigio

Transcribed by:           Exceptional Reporting Services, Inc.
                          14493 S. Padre Island Drive
                          Suite A-400
                          Corpus Christi, TX 78418-5940
                          361 949-2988


Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**APPEARANCES FOR:**


Petitioner:                    AHILAN T. ARULANANTHAM, ESQ.
                               JUDY RABINOVITZ, ESQ.
                               ACLU Foundation of Southern California
                               1313 West 8th Street
                               Los Angeles, CA 90017

                               WILLIAM TRAN, ESQ.
                               Sidley Austin
                               555 West Fifth Street
                               Los Angeles, CA 90013

                               - And -

                               STEVEN ELLIS, ESQ.

Respondents:                   GJON JUNCAJ, ESQ.
                               U.S. Department of Justice
                               Office of Immigration Litigation
                               P.O. Box 868
                               Ben Franklin Station
                               Washington, DC 20044

1    **Los Angeles, California; Monday, March 22, 2010; 10:12 a.m.**

2    **(Call to Order)**

3    **THE CLERK:**  Calling Item Number One, Case Number

4    CV 07-3239-TJH, *Alejandro Rodriguez versus James Hayes, et al.*

5    Counsel, please state your appearances.

6    **MR. JUNCAJ:**  Good morning, your Honor.  Gjon Juncaj

7    for the respondents.

8    **THE COURT:**  Thank you.

9    **MR. ARULANANTHAM:**  Good morning, your Honor.  Ahilan

10    Arulanantham and Steve Ellis and Judy Rabinovitz and William

11    Tran.

12    **THE COURT:**  You'll have to keep your voice up,

13    because --

14    **MR. ARULANANTHAM:**  It's Ahilan Arulanantham --

15    **THE COURT:**  Uh-huh.

16    **MR. ARULANANTHAM:**  -- Steve Ellis, Judy Rabinovitz,

17    and William Tran for the class and the petitioner, your Honor.

18    **THE COURT:**  All right.  Any time you are at the

19    microphone, please repeat your representation for the sanity of

20    the court recorder.

21    Who wishes to be heard?

22    **MR. ARULANANTHAM:**  Thank you, your Honor.

23    Mr. Arulanantham for the petitioner and the class.

24    **THE COURT:**  Yes.

25    **MR. ARULANANTHAM:**  Your Honor, there are several

4

1    issues, I think, to discuss today, all related to the motion

2    for discovery and concerning the subclasses and, I think, even

3    more generally, where we go from here.

4         The first thing, your Honor, we would request an

5    order from the Court certifying the class; leave aside the

6    subclasses, but --

7         **THE COURT:**  Well --

8         **MR. ARULANANTHAM:**  -- just certifying the class.

9         **THE COURT:**  -- before we even get to that, we have an

10   order to show cause, and I don't know if you want to be heard

11   briefly regarding that.

12        **MR. ARULANANTHAM:**  Sure, your Honor.

13        Your Honor, unfortunately, I didn't bring the copies

14   of the service.  We have effected service and we filed it with

15   the --

16        **THE COURT:**  It's three years late.

17        **MR. ARULANANTHAM:**  Well, your Honor, I don't think it

18   is.  We made a filing with respect to this on Tuesday, the past

19   Tuesday.

20        The normal practice, as I have understood it and have

21   done it with respect to habeas corpus petitions filed in this

22   district, your Honor, is that when we file the petition, we

23   serve the U.S. Attorney, and the Court effects service on the

24   respondents.  In this case, Judge Eick, Magistrate Judge Eick,

25   who initially had this case, ordered the respondents to answer

1    this petition back in 2007.  And, so, when that happened, our

2    assumption was that he had served -- that the Court had served

3    the respondents.  And that is what I --

4         **THE COURT:**  And why did you have that assumption?

5         **MR. ARULANANTHAM:**  Because, your Honor, we never

6    serve the respondents in the habeas petitions.  And, as the

7    Court is aware, you know, I've filed, I don't know, seven or

8    something of them in the last five years -- seven or eight --

9    and we never serve the respondents.  I looked, after the Court

10   issued its show cause order, to figure out -- you know, we,

11   when we first started doing this, we issued, you know, service

12   documents, and they were sent back to us from the clerk's

13   office.  And I tried to figure out why, what the rule is for

14   this; called the clerks; and the only thing that I was able to

15   determine was, in 2255 petitions it's explicitly in the statute

16   that it's the Court and not the parties that effect service.

17   Twenty-two forty-one doesn't say anything about it, but that

18   has been the practice.  And we've never done it.

19        In this case, I think what happened, your Honor, is,

20   because the real party in interest, obviously, is the federal

21   government, you know, the federal government responded, and

22   then we had, you know, three years of litigation.  After the

23   Court -- but we never -- we never served the, you know, the

24   state respondents.

25        And I guess one other thing I should say about that,

1    your Honor, you know, it is our position that, you know, (a)

2    this is a 1331 case, and, so, we don't even need those

3    defendants; and (b) --

4            **THE COURT:**  Well, they will be dismissed, then, and

5    we can move on to the other --

6            **MR. ARULANANTHAM:**  Well, your Honor, I don't want

7    that result; if you could give me a minute to argue against it.

8    Because we have now served them, and the reason --

9            **THE COURT:**  Didn't you just say that you don't need

10   them?

11           **MR. ARULANANTHAM:**  Yes, your Honor; but this is our

12   concern.  The Government's probably going to argue today, just

13   like they did in their papers, that it's not a 1331 case; it

14   has to be a habeas.  All right.  We also think, even if it's a

15   habeas, that the only proper respondent is the Attorney General

16   or at least the field office director.  And, then, you know,

17   we're quite sure that -- that's our view of it, but it's an

18   open question; and the Government, I think, is going to argue

19   that, no, you have to serve each individual custodian.  And,

20   so, our concern is, even if the Court agrees with us now, you

21   know, that if we go up, you know, on appeal, or at some point

22   some Court rules, "No; you had to serve each individual proper

23   respondent," then that's going to cut out from the case all of

24   those people.

25           You know, and it's a serious concern for us, your

7

1  Honor, because huge chunks of the class are held in facilities

2  that are run by state defendants.  You know, the Mira Loma

3  Detention Center, which is the biggest detention center in

4  California, actually, is run by the L.A. County Sheriff.  So,

5  if there is a ruling at some later stage that we should have

6  sued the L.A. County Sheriff, that's going to gut the case.

7          And, given that it is the practice in this Court,

8  your Honor, not to serve respondents, and given that we have

9  now served them, you know, it's purely formal; it's a purely

10  formal distinction.  It doesn't make any difference.  It didn't

11  hurt them in any way; Mr. Juncaj effectively litigated for

12  those people throughout.  It's not like they had something else

13  to say.  You know, they don't even have the power to grant the

14  relief.  All they can do is do what ICE tells them to do.

15          **THE COURT:**  You're absolutely right.  So, why are

16  they needed?

17          **MR. ARULANANTHAM:**  Well, only because, your Honor, it

18  is an open question, as I said, and we have a real concern that

19  if this happens later, then the relief that, you know, the

20  class members are otherwise entitled to could disappear, you

21  know, because of what's really a legal technicality.

22          So, you know, at least, your Honor, at least I would

23  request this.  We've made a filing on this on Tuesday.  Okay.

24  Let them come back, or let someone else come back and say, "No,

25  you should dismiss this because it's too late."  And then let's

1    litigate it.  You know, at least give us that opportunity, your

2    Honor.  Because even though we agree with the Court that they

3    shouldn't be in the case, the Government will take the position

4    that they have to be in the case.  And we don't want them to

5    then, you know, allow the class to just -- the whole case,

6    actually, will just go up in smoke, you know, on appeal.

7         THE COURT:  Well, if the Government's going to take

8    that position, then I'll allow you the time.  All right.

9         MR. ARULANANTHAM:  Okay.  Thank you, your Honor.

10        THE COURT:  Yeah.  We'll put it over.

11        MR. ARULANANTHAM:  So, if we put that question aside,

12   then --

13        THE COURT:  All right.

14        MR. ARULANANTHAM:  -- the Ninth Circuit held --

15   whatever else it did, it definitely held that the class itself

16   should be certified.  And the reason why we want that order

17   today that actually certifies it, your Honor, is because the

18   Government has resisted giving us the names of, you know, what

19   we believe are our clients.

20        And I think the first thing that we want to talk

21   about today, your Honor, because they are our clients once this

22   class is certified, we need to talk to those people.  We need

23   to talk to them for a number of reasons.  Reason number one is

24   we need to tell them about this case and tell them that, you

25   know, this may affect their decision-making in their

1   immigration cases, because a lot of people give up and go home

2   if they think they're going to stay in detention forever;

3   whereas, if you tell them that they may get a bond hearing a

4   couple of months down the line, that may change their feeling.

5          We also just think, as an attorney-client matter, we

6   have a right to talk to these people.  There is not a case that

7   I could find anywhere -- the Government hasn't cited one --

8   that says when you have a certified class you still don't get

9   to talk to your clients.  You know, and they have that

10  information, so we -- that's the first discovery request.  All

11  right.  We want the names, day numbers, locations of the people

12  who are the class members.  And, so, we would request an order

13  today from the Court giving -- requiring the Government to give

14  us that information.  I mean, as a sort of practical matter,

15  even pre-certification we would be entitled to that.  But we

16  can dispense with that.  You know, we have a -- where there is

17  a dispute in the briefing about that, we can dispense with

18  that, because the Ninth Circuit said that they should be

19  certified as a class, so, you know, we'd request that ruling.

20         And I'm happy -- I have other things that I would

21  like to discuss, but if there is -- if the Court has questions

22  about that initial preliminary issue --

23         **THE COURT:**  Well, let me hear from the Government.

24         **MR. ARULANANTHAM:**  Okay.

25         **MR. JUNCAJ:**  Good morning again, your Honor.  John

1  Juncaj --

2          THE COURT:  Yes.

3          MR. JUNCAJ:  -- for the respondents.

4          Well, our position in this case, as far as the

5  attorney-client relationship goes, is, quite frankly, simply

6  grounded in the fact that there has to be a legally-established

7  attorney-client relationship before the position can be taken

8  that you're entitled to anything under that relationship.  And

9  for that to happen in this case there has to be an order from

10 your Honor certifying the class and appointing counsel as class

11 counsel for those individuals.

12         THE COURT:  Well, I'm prepared to do that, just

13 because the circuit seems to think that that's what ought to be

14 done.

15         MR. JUNCAJ:  Yeah, and, your Honor, we fully expect

16 that to happen, certainly.  But one of the phrases utilized was

17 that this elevates form over substance, but that form is very

18 important in order to move forward.

19         And that feeds into another issue.  So, backing up

20 just for one second; once that relationship is established, we

21 think it should be done by a proper mechanism.  The motion for

22 class certification should be renewed.  Some time has passed.

23 They should cross their T's, dot their I's to make sure that

24 Mr. Rodriguez, first of all, is still the appropriate class

25 representative, which he very well probably is, but that motion

 1    should be renewed; we should have an opportunity to respond.

 2    To the extent that our response is anything more than just

 3    renewing our objection based on the same reasons we provided

 4    before, we understand that the Court will probably simply grant

 5    that class certification motion.  But we think that needs to

 6    happen first of all.  Beyond that, if your Honor is inclined to

 7    then order that we provide the names of those individuals

 8    detained within the Central District, that it should be done

 9    under an appropriate protective order.  By no means is the

10    Government taking the position of obstructing an attorney-

11    client communication.  We don't want to do that.

12            The one thing, though, that we've emphasized -- and

13    this may be getting into issues that Mr. Arulanantham would

14    want to get into also -- one thing we wanted to emphasize,

15    though, is the purpose of that communication.  We, obviously,

16    don't want to put our ear into whatever communications there

17    are, but the proffered purposes we think go well beyond the

18    purely legal questions in this case.  And we've raised the

19    judicial estoppel argument citing that there are just simply

20    legal questions here, that apparently there are already

21    appropriate class representatives, subclass representatives,

22    out there.

23            And, moreover, the notice issue --

24            THE COURT:  Well, do we really need subclasses, then,

25    if what we're really talking about are just purely legal

12

1  issues?

2          **MR. JUNCAJ:**  I'm sorry, your Honor; was the question

3  do we need them?

4          **THE COURT:**  Do we need subclasses?

5          **MR. JUNCAJ:**  Well, your Honor, that's -- at the last

6  hearing I noted that --

7          **THE COURT:**  I know.

8          **MR. JUNCAJ:**  -- we certainly need to --

9          **THE COURT:**  Okay.

10         **MR. JUNCAJ:**  -- analyze the legal claims under the

11 particular statutes.  Whether that should be done through

12 subclasses or perhaps within a larger class definition, it's

13 really their case to make.  But certainly I think the legal

14 questions should be framed under those statutes.  We've talked;

15 we, obviously, haven't agreed on subclass definitions.  The

16 Government certainly won't stipulate to a definition, because

17 it's their burden to carry, and we should have the opportunity

18 to respond as to whether the subclass, as defined, is

19 appropriate or not or whether it was an appropriate

20 representative.

21         **THE COURT:**  Well --

22         **MR. JUNCAJ:**  But, yes.  It should be guided by the

23 statutes.

24         **THE COURT:**  -- the reason that I have ruled the way I

25 did initially was that I did not think that there was the

1    commonality necessary; circuit sees it otherwise.  And since

2    they do, then what we're talking about is just a question of

3    law, isn't it?

4          MR. JUNCAJ:  Precisely, your Honor.  But the briefing

5    in this case raises the specter that maybe it's more than just

6    that, given the factual circumstances that, by way of

7    discovery, petitioner wants to get into here.

8          THE COURT:  Well, do we need to get into that?

9          MR. JUNCAJ:  No, your Honor.  We do not.  I think

10   this question should be driven by the framework that was

11   established by the Ninth Circuit, a purely legal question,

12   statutory or constitutional, looking at the statute as the

13   guide, and that's it.

14         THE COURT:  All right.  Thank you.

15         MR. JUNCAJ:  Thank you, your Honor.

16         MR. ARULANANTHAM:  Your Honor --

17         THE COURT:  Yes.

18         MR. ARULANANTHAM:  -- Mr. Arulanantham for the

19   petitioner and the class.

20         I agree with some of what Mr. Juncaj says.  I think

21   we agree that there should be an order certifying the class,

22   and I think everyone seems to agree with that now.  We don't

23   have to renew our motion for class certification.  And I don't

24   understand why we would do that.  We have a pending motion for

25   class certification that defines the class.  If the Government

14

1   finds some change in circumstances that it thinks warrant

2   decertification, that would be the procedure to recheck that.

3   And, you know, we don't have a new class definition; it's

4   exactly the same.  So -- and we think for that reason it should

5   happen now.

6           With respect to the protective order and the purposes

7   of communication, your Honor, the Government doesn't normally

8   regulate attorney-client conversations.  So, I mean, I don't

9   know what they think that we're going to be talking to people

10  about, but I don't know what protective order that would be.

11          I should add, your Honor, we would never publish

12  individualized -- if that's the concern; I'm not sure what the

13  concern is -- but we would never publish individual information

14  about a detainee or make it public in any way without getting

15  the consent of that detainee.  That's always the way we do it.

16  So, I don't know what the -- I just -- I'm not sure what that's

17  about, but we don't think there is any protective order that's

18  required.  We should be allowed to talk to them and then

19  discuss the terms of any information, disclosures with our

20  clients.

21          With respect to subclasses and the question of law,

22  your Honor, we believe that the constitutional question,

23  whether everyone detained for six months is entitled to in-

24  person adversarial hearing with certain protections, which is

25  the way we pled it in the original complaint, we do believe

 1  that that is a question of law, your Honor.  The Government

 2  has -- now, the Government in this case has answered already.

 3  And if the Court is inclined to bind them to their answer, then

 4  there is probably no more discovery to be had; because their

 5  answer just says:  No, you're not entitled to a hearing,

 6  because when you litigate your case, you're acting to prevent

 7  your removal, and, so, you're not entitled to a hearing as a

 8  matter of law.

 9            I think, you know, as a technical matter, the Court

10  could bind them to their answer, and then we're done, and we

11  win; because that's controlled by existing Ninth Circuit

12  precedent, and the answer is, you know, that's wrong, so that's

13  it.  But I think, you know, what's more realistic, and probably

14  fair to the Government, is that there has been subsequent law

15  which rejected the premise of their answer, and in the other

16  cases their argument has been the existing procedures that we

17  have are sufficient.  All right.  So, we, I think, quite

18  clearly, can both say this is a question of law that's common

19  to the class, which it is, and also say, in order to answer

20  their argument that the existing procedures are deficient, we

21  have to know something about those procedures.

22            Now, here we're talking about the merits, right;

23  merits discovery.  And I want to make sure that that's clear,

24  because I think we're entitled to some discovery even

25  regardless of what the merits situation is.  But if the Court

1  is going to allow the Government to make that argument that,

2  say, the post-order custody review or the existing bond

3  hearings for some set of people, or whatever they are, parole

4  procedures, are sufficient, then, obviously, we get to argue

5  that they're not by looking at, you know, how many people get

6  released from those and, you know, what are those decisions

7  like.  So, those are questions -- it's still a legal claim;

8  there is no inconsistency; but we still get to look at that.

9  So, that's coming down the line, and I think that's the dispute

10 that we're going to have about merits discovery.  I think we're

11 entitled to it, and it's not inconsistent with the position

12 we've taken before.

13         But leaving that aside for a minute, if we're going

14 to have subclasses -- and I'll answer -- I want to speak to

15 that discussion in a minute.  But if we're going to have

16 subclasses, right?  Let's just, say, assume for a minute, that

17 we are?  We definitely need discovery to figure out who is in

18 which class.  And I think that -- you know, the Government

19 doesn't say anything to explain or respond to that, and it's

20 just obvious.  You can't figure out what statute a person is

21 detained under unless you can see the documents in their case

22 which explain what they were charged with, what procedures they

23 have been given; because, you know, you get different

24 procedures based on which statute you're under.  So, I think at

25 least those minimal documents, which is all we've sought in

 1    this request thus far, you know, we definitely are entitled to

 2    those if there are going to be subclasses.

 3           Now, on the question about whether or not there

 4    should be subclasses, your Honor?

 5           **THE COURT:**  Yes.

 6           **MR. ARULANANTHAM:**  You know, when we -- we,

 7    obviously, disagreed about this originally, but we also thought

 8    that -- we thought all the statutes could be construed the same

 9    way.  So, you know, our view was:  Why do we need subclasses,

10    because they're all the same?  The Ninth Circuit has cut it in

11    the middle.  I think they've said there are different statutes,

12    and the statutory questions may come out differently, but,

13    anyway, have to be analyzed differently; but at the same time,

14    they've said, you have an underlying constitutional claim which

15    is common, and, so, this can proceed as a class.

16           Given that they have cut it that way, I think

17    subclasses are going to be necessary, because everyone is going

18    to have both a statutory claim to a hearing and a

19    constitutional claim to a hearing.  The constitutional claim is

20    going to be the same in all of the cases; the statutory claims

21    will differ.  I think the analysis of them is even going to be

22    very similar.  Our argument when we brief it is going to be

23    very similar in all of them.  But they're going to be

24    different, because the Ninth Circuit has said you look at the

25    statute first to figure out, you know, whether that statute

18

1   authorizes a hearing.

2          So, we believe, in light of the Court's ruling, the

3   Ninth Circuit's ruling, we think there should be four

4   subclasses, which is -- there's four statutes here.  There's

5   two -- I won't repeat them, your Honor, but that's what we

6   think; that's what we think is going to be required.  And,

7   given that, I think we're going to need more than just the

8   names of our clients; we're also going to need those detention-

9   related documents.

10         Your Honor, I want to say one other thing, which is

11  this whole discussion now we're having about discovery related

12  to the subclasses.  All of it is relevant if Rule 26 does not

13  apply, right; if the regular federal rules do not apply.  If

14  they do apply, we don't need to have this discussion.  We

15  should just start discovery, and, you know, the Court should

16  issue the scheduling order and order the parties to confer, and

17  we should set a schedule.

18         Whether or not the rules apply turns on whether we

19  can bring this as a 1331 case.  And I think it clear that we

20  can.  And I guess -- I don't know if you want to have a further

21  discussion now about the subclasses or if I should start

22  talking about that, because I think that changes where we go

23  from here in a lot of ways.  And we want an order certifying

24  the class, and then the names of our clients and their

25  locations and A numbers.  That, I think, no matter what, we

19

 1  want.  Where we go after that turns on this question of whether

 2  the federal rules apply.  Because if the federal rules apply,

 3  then we know the answer of what we do next; you issue a

 4  scheduling order and we open the discovery -- well, we have a

 5  meet-and-confer, and then we open the discovery period.

 6          So, I could talk about that now, your Honor, or as

 7  you wish.

 8          THE COURT:  Does the Government wish to respond

 9  before we go any further?

10          MR. JUNCAJ:  Yes, your Honor.

11          THE COURT:  All right.  Go ahead, Mr. Juncaj.

12          MR. JUNCAJ:  Let me try to address some of the points

13  that were raised, starting with the most former.

14          With regard to the protective order, one of the

15  disputes that will certainly be in this case, and is what --

16  who really falls under that class definition.  One of our

17  positions is that those people that have received a bond

18  hearing are no longer members of the class, and we think the

19  Ninth Circuit's order backs that up.  So, the protective order

20  goes to, to the extent the Court is inclined to grant discovery

21  in the form of the names, if we were to provide the list of the

22  individuals that, at least on the surface, meet that

23  definition, all persons detained over six months --

24          THE COURT:  Yes.

25          MR. JUNCAJ:  -- that certainly there will be people

1  in that list that may have already received a bond hearing.

2  Now, it's in dispute as to whether or not those people are

3  still class members.  But if they're ultimately not class

4  members, then those names should not have been disclosed

5  anyways, because there was never that attorney-client

6  relationship.  So, certainly there is good cause for the

7  protective order.

8          Obviously, once again I'll reiterate, we're not

9  interested in trying to regulate communications with the

10  client, but certainly the protections that that order would

11  cover are very relevant and I think have good cause behind

12  them.

13          Second --

14          **THE COURT:**  Well, what would be the problem in just

15  providing two lists:  those people still being detained, those

16  who are out on bail or --

17          **MR. JUNCAJ:**  Well, the problem with that, your Honor,

18  is that just because someone received a bond hearing doesn't

19  necessarily mean that they're no longer detained.  And, then,

20  the burden on the Government to -- and I'll get into this issue

21  here, because this is a good segue --

22          **THE COURT:**  Well, I didn't see any argument about how

23  burdensome this might be.

24          **MR. JUNCAJ:**  Well, your Honor, we did make -- we

25  didn't specify what I'm about to say, but we did say it would

1  be unduly burdensome because it was, first, irrelevant, but

2  also the burden that would be implicit on it.  And, you know,

3  for the record, your Honor, the providing a list of names of

4  individuals detained beyond six months would not be unduly

5  burdensome.  However, in order to categorize who is a class

6  member, who falls under what statute, would be.  And that would

7  require file reviews.

8        And the reason for that is because there is no

9  systematic check, a database spot, for someone that received a

10 bond hearing.  There is no check mark for that.  That would

11 require a file review.

12       Second, there is no check mark in the system to

13 identify who has a petition for review pending in the Ninth

14 Circuit, which would set apart the *Casas* aliens, perhaps, or

15 the *Diouf* aliens from others.

16       And, third, there is a check mark for a stay of

17 removal, but that check mark doesn't specify whether or not

18 it's a board of immigration appeal stay, which would require a

19 different result as to what statute applies, or whether it's a

20 Ninth Circuit petition for review stay.  So, that would require

21 file reviews.

22       So, there would be a burden in getting all these

23 files together and going through them.

24       And, most importantly, if your Honor is inclined to

25 require us to produce the list of names, all the documents that

22

1   were referenced -- charging documents -- that's all served on

2   their clients.  They would be in possession of that.  So, I

3   don't see how there would be any need for discovery if the

4   client themselves has the charging document, has a copy of a

5   bond decision, or a POCA (phonetic) review.  It would certainly

6   be unduly burdensome on the Government to --

7          THE COURT:  Well, it sounds like you could come to

8   some agreement if, indeed, we were to have discovery, so that

9   we'd keep it to a reasonable place, and you've suggested

10  certain ways that you might do that.  And I think if you talk

11  with the petitioners maybe you can reach some agreement on

12  those things.

13         MR. JUNCAJ:  Well, just to clarify, your Honor, with

14  respect to discovery, really the only thing that we're focusing

15  on is, it's -- using the term "discovery," would be just

16  handing the names over so they can communicate with their

17  clients.

18         THE COURT:  Right.

19         MR. JUNCAJ:  As far as discovery relevant, we don't

20  think there is any discovery that is relevant to the claims

21  that are raised here, because, once again, they're purely legal

22  issues.

23         THE COURT:  Uh-huh.  Well, I --

24         MR. JUNCAJ:  So, that's the Government's position.

25         THE COURT:  I tend to agree with you on that.  But if

23

1   we start with the list of fellows who are being detained, and

2   if you're able, if you have paralegals or others to go through

3   this burdensome task and to get those flagged out, the ones

4   that you have mentioned, that's fine, too.  Or, if you don't

5   want to go through that and just provide the entire list to the

6   defense -- or excuse me -- to the petitioners, then you may do

7   that.

8          MR. JUNCAJ:  Yes, your Honor.  Well, respectfully, we

9   certainly would want the class certified first to have that --

10          THE COURT:  Well --

11          MR. JUNCAJ:  -- established.

12          THE COURT:  -- it seems to me that I may have no

13  other recourse but to certify the class, and it will be

14  certified.  Whether, indeed, we go into subclasses is -- I have

15  not made that determination yet.

16          MR. JUNCAJ:  Yes, your Honor.  And if I can bring up

17  one point, because this goes to the actual people that would be

18  in the class.  One of the things that was raised in briefing

19  and -- is the persons that are no longer in the Central

20  District of California.

21          THE COURT:  Right.

22          MR. JUNCAJ:  Now, in an ordinary individual habeas

23  petition the Government takes the position that if this Court

24  were to have jurisdiction and somebody were moved, that they

25  would not -- that that would not defeat jurisdiction.  This

24

1   case is driven as a class claim.  As it stands right now, the

2   class definition does not include people that were detained in

3   the Central District of California.  The definition is:  the

4   people that are detained or will be detained in the Central

5   District of California.  And that does not cover the

6   individuals that are no longer within the Central District.

7           Be that as it may, the identification of those

8   individuals, to the extent the Court would find ultimately that

9   they fit into that class definition, which we believe they do

10  not, that would even be more burdensome, because there is no

11  easy way to check -- there are many people that come through

12  the Central District of California, sometimes even only for a

13  few days, and then are moved to different locations outside of

14  the Central District.  The task of finding out who was detained

15  in this district for six months or longer, to the extent the

16  Court were to ever conclude that those individuals are entitled

17  to a bond hearing, and then the next step that they should be

18  entitled to some sort of notice, which is not mandatory in

19  these types of cases, that we would urge the Court to push that

20  off to the end of these proceedings.  Certainly the individuals

21  that are within the Central District of California, there's

22  plenty of them here for the petitioner to find appropriate

23  subclass representatives.

24          So, I did want to make that note.  But, importantly,

25  those individuals are not contained within the class definition

25

1    by its terms.

2            **THE COURT:**  Uh-huh.

3            **MR. JUNCAJ:**  And that's it for now, your Honor.

4            **THE COURT:**  All right.  Thank you.

5        **(Pause)**

6            Excuse me one minute.

7        **(Pause; voices and whispers off the record)**

8            I have just been reminded that the Government never

9    responded to the OSC.  Does the Government have a position

10   regarding that?

11           **MR. JUNCAJ:**  Yes, your Honor, if I could --

12           **THE COURT:**  Yes.

13           **MR. JUNCAJ:**  Gjon Juncaj; and I apologize for not

14   bringing that up.

15           The point that was raised by this Court's order to

16   show cause is a good one, and only because, after retracing the

17   Government's steps in this case, I realized recently that when

18   the Government answered initially, the Assistant U.S. Attorney

19   answered on behalf of the federal respondents and not the two

20   state officials.  Ordinarily, in cases, wherever they may be in

21   the country, the federal government represents even the state

22   wardens on these types of claims.  In this case, the position

23   that was taken in the answer, not overtly other than to say

24   we're responding on behalf of the federal respondents, the

25   other individuals were left out of it.  I intend after today to

1    contact any city or county officials, as appropriate, to sort

2    out with them what we believe will be the ultimate outcome, and

3    that is that the federal government will represent any city or

4    state officials.  But I can't say definitively at that point --

5    at this point -- that we do, in fact, represent those persons.

6         Really quickly, to respond; this may be a moot point,

7    only because, as I understand it, Lee Baca and the other

8    federal official is not actually the warden of the facility

9    within which that they're related to.  Even though it might be

10    in L.A. County --

11         **THE COURT:**  Yes.

12         **MR. JUNCAJ:**  -- they're not necessarily wardens.  So,

13    it might be a moot point, but certainly, as Mr. Arulanantham

14    noted, we take the position that the warden is the only proper

15    respondent.  That said, your Honor, we hope to have at least

16    the answer to who represents these folks to your Honor within

17    the next few days, and we can certainly follow up with a

18    response to the order to show cause, but that hasn't been

19    crystallized yet, but your Honor should expect that it is the

20    federal government.

21         **THE COURT:**  All right.  Thank you for that.

22         **MR. JUNCAJ:**  Yes, your Honor.

23         **THE COURT:**  All right.

24         **MR. ARULANANTHAM:**  Mr. Arulanantham -

25         **THE COURT:**  Yes.

1          **MR. ARULANANTHAM:**  -- for the petitioner, your Honor.

2     I think we're getting there.  I --

3          **THE COURT:**  Uh-huh.

4          **MR. ARULANANTHAM:**  We agree that there are some

5     people detained for six months who are in the Central District

6     today who are not in the class definition.  And I think we

7     might disagree about who those people are, because we think you

8     have to have an adequate hearing.  But, for example, there are

9     some people who are *Zadvydas* detainees, right, who are

10    definitely not in the class definition, and they are detained

11    six months.

12         So, we would be open to a protective order that -- I

13    think the procedure -- we can, hopefully, discuss this and work

14    it out; we haven't agreed on much, but maybe we can agreed on

15    this.  I think the procedure would just be -- I think they

16    should give us the names of everyone, because we may have

17    disputes about, you know, whether they're in the class or not,

18    and then we'll come up with a list.  You know, hopefully, we

19    can agree on most, and we'll come up with a list of people we

20    can't agree on, and then we can either brief that or just do it

21    orally, and the Court can resolve whether those people are in

22    or out.  And I think we can certainly agree not to have any

23    communication beyond what's necessary to determine whether

24    they're in the class and leave it at that.  I think that would

25    resolve the problem there, and, hopefully, Mr. Juncaj and I can

28

1    agree on that, and then --

2         THE COURT:  Well, Mr. Juncaj, can you agree on that?

3    Because I'm prepared to certify the class; and, as I have

4    indicated, that then leads us to a list of everyone who is

5    being held who would fit within the class, and, since we can't

6    really tell, it seems to me that it's a list of everybody

7    detained more than six months here in the district.

8         MR. JUNCAJ:  Your Honor, should the class be

9    certified first, I think my client would probably be inclined

10   to agree to that.  That said, I don't have confirmation on

11   that; but certainly, as I said before, the list of names of

12   persons detained beyond six months can be provided.  And,

13   again, though, we would like an appropriate protective order.

14        THE COURT:  Yes.  And I think you could work out such

15   a protective order among yourselves.

16        MR. JUNCAJ:  Be that as it may, your Honor, we would

17   certainly oppose any other discovery in this case.  It seems

18   that's required.

19        THE COURT:  I don't think we need to go any farther

20   at this juncture, but --

21        MR. ARULANANTHAM:  Right.

22        THE COURT:  -- do you want to be heard farther?

23        MR. ARULANANTHAM:  So, on the question -- there's two

24   other questions here, and then there is Rule 26.  So, let me

25   see if --

1          **THE COURT:**  Uh-huh.

2          **MR. ARULANANTHAM:**  The question -- the people who are

3   no longer here; I mean, they're definitely in the class,

4   because the class definition is people who are or will be in

5   the Central District, but, obviously, it's on the day that it

6   was written, which is now 2007, fall.  Right?  So obviously,

7   that was meant to include people who were in the class on that

8   day.

9          You know, that being said, your Honor, I'm

10  sympathetic to Mr. Juncaj's point that it may be difficult to

11  discover at least some of those people.  I know there are some

12  such people, because I represent one of them in a different

13  case.  They're in Pearsall, Texas, and he told me -- I don't

14  know if he's right or not -- but there's a handful of people

15  who he --

16         **THE COURT:**  Still detained?

17         **MR. ARULANANTHAM:**  Yeah.  He said there's a handful

18  of people who are --

19         **THE COURT:**  Well, then, why don't we at least ascribe

20  it to individuals who are no longer detained here but were

21  detained here for more than six months and are still detained?

22         **MR. ARULANANTHAM:**  Yes, your Honor.  I --

23         **THE COURT:**  No matter where.

24         **MR. ARULANANTHAM:**  Yes, your Honor.  We would be --

25  we would be fine with that.  I think Mr. Juncaj's point is he

30

1    can't find those people.  Right?  And I think we would be open

2    to, you know, delaying that schedule.

3            **THE COURT:**  All right.

4            **MR. ARULANANTHAM:**  I don't know when that would be.

5    Obviously, not indefinitely, but, hopefully --

6            **THE COURT:**  Yeah.

7            **MR. ARULANANTHAM:**  -- you know, I recognize --

8            **THE COURT:**  I understand.

9            **MR. ARULANANTHAM:**  -- that that could be more

10   complicated.  So, I mean, what I would like, ideally, is to be

11   able to tell Mr. Juncaj, "I know this person; he tells me that

12   there are other people in Pearsall, Texas," so at least we get

13   those people.  And, then, for other people, you know, maybe we

14   won't -- I mean, hopefully, we'll find everyone eventually.

15           On the documents, your Honor, I guess my -- the main

16   thing I have to say about that, your Honor, is, if you go --

17   you know, Ms. Stark, who is in the courtroom here, and I went

18   last week.  You know, she went to Santa Ana, and then we both

19   went to Mira Loma.  You know, in nine hours I talked to six

20   people.  Right?  And they don't all have their documents with

21   them.  Because -- I'm sure the Court understands this -- I

22   mean, they are immigration detainees.  Not everybody -- they

23   have been transferred back and forth.  So, asking us to produce

24   those documents when they're just sitting in a file, you know,

25   and the Government, you know, can just produce them, at least

1  for many of the detainees they can produce them, I think, you

2  know, it's far more burdensome for us than for them.  And it's

3  a very haphazard process for us.

4       So, I would request, given that, if we are going to

5  at least entertain a subclass motion, we're going to have to

6  show, for example, numerosity -- you know, we think the number

7  is going to be low, the required number is going to be low,

8  because it's a subclass and injunctive relief and all of  that,

9  we're still going to have to know what the number is.  You

10 know, and if the number is zero, then we're not going to file

11 our motion.  So, we're going to need to talk to these people

12 and to get documents to figure out what subclass -- I mean,

13 what statute they're detained under.  So, and that's all I have

14 to say on that issue, your Honor.  I just -- you know, if you

15 think about the reality of this, it's much easier for them to

16 do it than for us to try and get it from our detained, you

17 know, pro se clients.

18      The Court doesn't need to get there if we can enter a

19 Rule 26 and start this -- you know, because then we can just

20 request it in discovery and it has to be provided to us sort of

21 as a matter of due course, right?

22      **THE COURT:**  Yeah.  At the meeting and conferring.

23      What's the Government's position regarding Rule 26?

24      **MR. JUNCAJ:**  Gjon Juncaj.

25      Your Honor, regarding Rule 26, our position is that

1   1331 is not applicable to these proceedings.  But even if it

2   is, discovery into what is really the question when this is,

3   again, purely a legal question.  I don't know what facts would

4   be necessary to answer the question whether the statute or

5   constitution require a certain outcome.

6           Now, there was reference made to the application of

7   the regulations in a certain case, and what was stated was:  We

8   don't know whether or not somebody is actually released after

9   they get the process that the regulations provide them.  Well,

10  the question isn't whether or not somebody is released, so we

11  thought; I thought the question was whether or not they

12  actually get procedures, not that the outcome has to be release

13  from those procedures.  And in order to determine that, one

14  only needs to look at the regulations that are in place.  The

15  actual application in a particular case is a different

16  question.  That actually does bring up the individual factual

17  circumstances of each alien.  But the regulations, as your

18  Honor knows, in the *Diouf* case, in the POCA process --

19          **THE COURT:**  Uh-huh.

20          **MR. JUNCAJ:**  -- they're spelled out.  The argument

21  is:  Is this good enough or not?  Whether or not it was applied

22  properly is a different question dependent on individual

23  factual circumstances.

24          So, we're back to:  Is this a purely legal question

25  case or not?  If it's held to what we believe the Ninth Circuit

33

1  expected it to be, then the answer should be yes.  You look at

2  the regs, you look at the statute, and then -- and you go from

3  there.

4        So, we believe that Rule 26 is not applicable, first

5  of all.  This case is captioned and being litigated as a habeas

6  petition.  In fact, in the motion for class certification, the

7  question was raised whether or not Rule 23 even applies.

8  Courts are split on that.  Of course, it was applied in this

9  case, but it was used as a guideline.  Not explicitly; it

10 doesn't explicitly apply in this case, because it is a habeas

11 petition.  So, you can't have it apply for some circumstances

12 and then now that they want discovery have it distinctly apply.

13 And even if it does, again, we get back to the barebones issue

14 of whether or not the discovery is relevant.  And it's not

15 relevant in this case, so it shouldn't proceed.

16       Thank you, your Honor.

17       **THE COURT:**  All right.  Thank you.

18       Is there any question that it's perhaps not relevant

19 at this phase of the case, may become relevant later?

20       **MR. ARULANANTHAM:**  Well, your Honor, as I was saying

21 earlier, I think for figuring out who is in a subclass some of

22 the documents are relevant, right.  We've gotten that far.  I

23 think it is relevant -- the quality of the release procedures

24 is not -- hang on.  Let me think about that.

25       If Rule 26 applies, right, then it doesn't matter if

34

1  it's relevant now or later, right, as long as it's -- because

2  I'm not aware of -- and I'm not -- I know less about Rule 26 --

3  you know, I'm sure I know less about everything than the Court,

4  but I know much less about Rule 26 even than I do about the

5  other things here.  But my understanding is we get to ask for

6  information that's relevant at some stage of the proceeding,

7  and it doesn't sort of matter under Rule 26 if it's relevant

8  now or relevant later.

9          THE COURT:  Well, I think it does matter, and it

10  certainly matters with regard to managing the case itself,

11  and --

12          MR. ARULANANTHAM:  Okay, your Honor.

13          THE COURT:  (indiscernible)

14          MR. ARULANANTHAM:  Then, I guess I would say, at this

15  stage of the case, if we're not yet doing merits discovery,

16  then, you know, we still need the documents to figure out who

17  is in what subclass.  Beyond that, you know --

18          THE COURT:  All right.  So, we need names, we need

19  the A numbers, and we need documents for those people here

20  within the Central District of California.

21          Is that a good starting point, as far as the

22  Government's concerned?

23          MR. JUNCAJ:  You lost me at documents, your Honor,

24  with all due respect.

25          THE COURT:  Well, aren't the documents readily

35

 1   available?

 2        **MR. JUNCAJ:**  Well, your Honor, they may be available

 3   in each individual case, but what's being asked is that we pull

 4   documents for all of the people detained.  I think a more

 5   appropriate course would be that there be initial -- first of

 6   all, one thing that hasn't been mentioned is the

 7   representatives of the aliens in their removal proceedings.  We

 8   can provide that information, as well.  So, to the extent that

 9   those documents are not with the actual client, but their

10   attorney in the other case has them, they can certainly be

11   received that way.

12        But rather than having the Government go through each

13   file to pull these documents, what would be more prudent, if it

14   is our burden to facilitate production of documents when they

15   haven't even established the subclass claim yet, and our

16   position is it's their burden to make their case, that it be

17   done in a more, I guess, minimized approach.

18        First of all, we could provide the names; they can

19   talk to their clients.  If, after talking to their clients,

20   they don't have the documents necessary, on the very -- say

21   they talk to, say, five people, and they request -- if those

22   clients don't have those documents -- "My client does not have

23   this necessary document; can you please provide it to us" -- as

24   opposed to having the Government take the affirmative action of

25   going through all of the files on all these individuals and

36

1    providing them in advance, when that wouldn't be necessary, or

2    hasn't been presented to be necessary in any particular case,

3    really that would be a much more reasonable approach.  Again,

4    that's assuming that the clients don't have them, or their

5    attorneys, whose names we could provide.

6              THE COURT:  All right.  What about that as the

7    starting point --

8              MR. ARULANANTHAM:  Okay.  Well, your Honor --

9              THE COURT:  -- as Mr. Juncaj suggested?

10             MR. ARULANANTHAM:  -- the attorneys we are -- would

11   like that information.  It's in the discovery request.

12             THE COURT:  Well, but --

13             MR. ARULANANTHAM:  About 15 percent of the class.  I

14   mean, if --

15             THE COURT:  (indiscernible)

16             MR. ARULANANTHAM:  Yes.  That's a good start for

17   that.

18             THE COURT:  All right.

19             MR. ARULANANTHAM:  But, your Honor, if the ABA

20   numbers, which are nationwide numbers, are any indication, it's

21   about 15 percent of the class that's represented.  So, that's

22   not going to --

23             THE COURT:  All right.

24             MR. ARULANANTHAM:  That's not going to do it for --

25             THE COURT:  All right.

 1        **MR. ARULANANTHAM:**  -- for most people.

 2        **THE COURT:**  But even beyond that, some of the

 3   pro se's evidently have some documents you can check.

 4        **MR. ARULANANTHAM:**  Yes, your Honor.

 5        **THE COURT:**  If they don't have them, then the

 6   Government is to provide them.

 7        **MR. ARULANANTHAM:**  Well, I guess, to do that, your

 8   Honor, you know, we'll have to write to all these people and

 9   then go see a lot of them.  I think there's about 200 -- well,

10   let me step back.  Exhibit 3 of the -- or it's Exhibit 18

11   overall, the third exhibit in the reply brief here --

12        **THE COURT:**  Uh-huh.

13        **MR. ARULANANTHAM:**  -- is this AP snapshot, a set of

14   data which the Government gave to the Associated Press.  It

15   looks like there's about 250 people, roughly, who were detained

16   six months in this district.  So -- and we have to figure out

17   if at least a bunch of those people -- which statute they're

18   detained under.  We can't file the subclass motion until we

19   know which statute at least most of those people are detained

20   under.

21        **THE COURT:**  All right.  So, you talk with them; some

22   of them -- a very few -- will be represented by counsel.  You

23   can get the documentation from them.  And the other probably

24   small group not represented by counsel will have documentation.

25        **MR. ARULANANTHAM:**  Yes, your Honor.

1          **THE COURT:**  If they don't, then you ask the

2     Government for it.  That's all.

3          **MR. ARULANANTHAM:**  Your Honor, give me one moment

4     just to speak with --

5          **THE COURT:**  Sure.

6     **(Pause)**

7          **MR. ARULANANTHAM:**  I think my co-counsel and I are --

8     when you think about this as a pragmatic way, we're not happy

9     with that, your Honor.  And the reason we're not is because to

10    go to the detention centers and talk individually to 250 people

11    is just going to take so much longer, if they're sitting in a

12    file, you know, than getting the files, you know, to us.

13          We also -- here is a sort of alternative compromise.

14    If they know who the individual detainees are, we can go to the

15    Government, you know, to the relevant offices, and go through

16    the files.  Right; and, you know, we don't need -- we don't

17    need -- you know, if it's a matter of them going through the

18    files and sort of pre-screening people, you know, we can do

19    that.  But to ask us to go and talk to every detainee --

20    because that's what even the Court's process, as you mentioned,

21    right?  I mean, we're going to have to have a conversation with

22    each person at the front end in order to figure out, you know,

23    and to then say, okay, they don't have their documents, and

24    then go back and get it that way.

25          So, you know, if the Court enters an order that says

1    the Government has to give us these documents, then that's just

2    a much, much, much faster way of doing it.  And I don't know

3    what the sort of burden is; they have them anyway.  Right?  And

4    it just seems -- I mean, and just thinking about how long it

5    took to meet six people at Mira Loma last week, I mean, it's

6    just a massive, massive burden compared to having the files

7    produced to us.

8           And in terms of the amount of time it takes to

9    vindicate the right of these people to a hearing, you know,

10   it's just several months, at least, additional time to even get

11   to the point where we know who they are so we can even file our

12   motion for subclasses.

13          **THE COURT:**  Well, that's why it sounds almost like a

14   fishing expedition now.

15          **MR. ARULANANTHAM:**  Well, but, your Honor, there is no

16   question we need the information in order to figure out who is

17   under what statute.  Right?  And we have all been put in this -

18   - the Ninth Circuit --

19          **THE COURT:**  Well, I'm not sure that you do.  It seems

20   to me that, given what the circuit has indicated, that you've

21   got to deal with this constitutional issue, and then perhaps

22   you'd go to the next level and do some of these things that

23   you're talking about.

24          **MR. ARULANANTHAM:**  I mean, your Honor, all of the

25   cases -- I mean, I would have preferred it had come out

1    differently, too, obviously.  You know, that was not our hope

2    to have it divided by statute.  But every case, your Honor, has

3    done constitutional avoidance.  None of the cases have

4    addressed the constitutional question first.  You know, and if

5    the Court were to rule either way, I think, and resolve the

6    constitutional question first, you know, if you ruled in our

7    favor, of course, we would do our best to defend it on appeal.

8    But the reality is it's a, you know, cardinal principle of

9    statutory construction; you're supposed to address the

10   statutory basis for relief if you can.  And we have two

11   different Ninth Circuit cases already which have ruled that you

12   have a right to a hearing on a statutory claim, and they have

13   avoided the constitutional decision.  So, it puts -- you know,

14   it's a very odd position that --

15            **THE COURT:**  Those weren't class actions, were they?

16            **MR. ARULANANTHAM:**  No; they weren't class actions.

17   That's true, your Honor.  That's true.

18            Well, in any case, I guess I'll have more to say

19   about that issue as -- that it's going to take us a very, very

20   long time to individually go and talk to each person, determine

21   if they have documents, then go back to Mr. Juncaj and get

22   those documents.  They're sitting in a government office, and

23   it's a much easier and faster method for people who are

24   detained to just go directly and just get the documents, you

25   know, without going through -- you know, we represent them

41

1    either way, so we have a right to the documents.  And we would

2    prefer that the Court, you know, order that they be produced.

3              **THE COURT:**  All right.

4              Anything further, Mr. Juncaj?

5              **MR. JUNCAJ:**  If I can just follow up on that, and

6    then I have one other issue.

7              **THE COURT:**  Go ahead.

8              **MR. JUNCAJ:**  Gjon Juncaj for the respondents.

9              Your Honor, the respondents have been opposed to

10   litigating this case as a class action from the get-go.

11   Essentially what we have just heard is it takes a lot of work

12   to litigate a class action case.  It is a heavy burden.  And

13   that's a responsibility that they brought upon themselves at

14   this point in terms of having to talk to all of their class

15   clients.  Well, that, indeed, may take some effort.  But under

16   no circumstances should the burden of prosecuting their case

17   and their claims be shifted to the Government to provide

18   documents that, by regulation, have to be served on that alien.

19   So, there is an assumption that they just don't have it when a

20   notice to appear has to be served.  Any order of the Court has

21   to be served on that alien or their representative.

22             So, once again, that information should be available

23   to them.  And rather than shifting the burden of litigating a

24   class case to the Government for them by providing necessary

25   documents that their client should have, the Court,

1   respectfully, should not do that.

2          THE COURT:  How much documentation are we really

3   talking about with regard to each of these approximately 200 to

4   250 individuals?

5          MR. JUNCAJ:  Your Honor, actually the number is more

6   like 400.  That I have been able to ascertain.  They're not

7   250.  So, it would require going through the cases of

8   approximately 400 people, some of which may not even be class

9   members, because they have gotten a bond hearing.

10         THE COURT:  Well, if that's the case, it appears to

11  me, then, that, clearly, it does become a government function.

12  At the same time that you're giving the names and the

13  A numbers, why aren't the documents just pulled?  I mean, it

14  seems to me you must be looking at some documents in order to

15  provide that information.

16         MR. JUNCAJ:  No, your Honor.

17         THE COURT:  No?

18         MR. JUNCAJ:  That's actually not the case.

19         THE COURT:  Why not?

20         MR. JUNCAJ:  The names would be a system -- computer-

21  system-based issue.  And that's what I was trying to

22  distinguish in terms of the burden of going to the file.  That

23  would not be the case of just providing the names of people

24  detained longer than six months in the Central District.

25  That's something that can be run through the computer system

43

1   and doesn't require going to the file to determine who's gotten

2   a bond hearing, and all of those other factors that I discussed

3   before.

4          Certainly going to the file would also require that

5   before anything is disclosed in those files -- again, we're

6   talking about people that we believe are not class members.

7   So, there may be privileges there that the Government would

8   want to assert.  And, again, this can be simply solved by

9   speaking to the individuals.  All we're looking for is --

10          **THE COURT:**  Well, it isn't that simple if we're

11   talking about now some 400 people.  I just don't understand why

12   it isn't easy for some government functionary to just pull a

13   document that indicates under which statute the detainee is

14   being detained.

15          **MR. JUNCAJ:**  Well, your Honor, I don't think it's

16   that easy because --

17          **THE COURT:**  Why?

18          **MR. JUNCAJ:**  -- the document -- what is necessary to

19   determine whether many of these people fall into either statute

20   is whether or not their proceedings are pending or not before

21   the immigration judge.  That's one thing that someone could

22   just explain.  But we think it would be improper to shift the

23   burden in any respect to the Government when it's in the

24   client's -- in their client's possession to begin with.

25          The question of whether or not it can be done,

44

 1    certainly it can be done.  But the argument is that it's an

 2    undue burden to produce the documents as they request for 400

 3    individuals when all that is required is perhaps four or five

 4    people to fit whatever subclasses may be presented under,

 5    again, a purely legal question, the answer of which, you know,

 6    I assume, would be a very short conversation with the attorney

 7    of that individual in the removal proceeding case or the

 8    individual themselves.  There should be --

 9            **THE COURT:**  Well, these people aren't all being held

10    in one place.

11            **MR. JUNCAJ:**  No, your Honor.  They're --

12            **THE COURT:**  They're scattered around the district, I

13    take it.

14            **MR. JUNCAJ:**  Certainly.  But from what my

15    understanding, there's two main facilities where most of these

16    people are held.  So, it's either one or the other.  I don't

17    know what the breakdown is between the facilities, but there

18    are two facilities.

19            **THE COURT:**  All right.  Well, let's not keep

20    belaboring this.

21            Why don't the petitioners, once they have received

22    the names and the A numbers, talk with a representative number

23    of these individuals, see where you are in terms of their

24    having documentation or not, and then we can move on; and if we

25    need to do something further, we can do it.  But let's at least

45

1    try that.  It may be that you'll be right back here after

2    seeing 25 or 30 of these individuals.

3              **MR. ARULANANTHAM:**  Well --

4              **THE COURT:**  Yes.

5              **MR. ARULANANTHAM:**  -- Mr. Arulanantham, your Honor.

6              **THE COURT:**  Uh-huh.

7              **MR. ARULANANTHAM:**  I think we will.  I think we will

8    be right back here.  Just two -- a few brief points.

9              What I think Mr. Juncaj is saying, which doesn't

10   surprise me, is they don't know in advance what statute anyone

11   is detained under, right?  I mean, if they know, then they can

12   just put that in the list and we're done.  We don't need

13   anything.  But if they don't, then, obviously, they have to

14   give us the documents so we can figure that out.

15             **THE COURT:**  Unless the individuals happen to have the

16   documents themselves.

17             **MR. ARULANANTHAM:**  Right.  And for that, you know --

18             **THE COURT:**  All right.  So, let's just --

19             **MR. ARULANANTHAM:**  -- I guess all I --

20             **THE COURT:**  -- try a representative number, and then,

21   if you need to come back -- and as you indicate, you very well

22   may have to -- then I'll look at it again.

23             **MR. ARULANANTHAM:**  Okay, your Honor.

24             Your Honor, the last thing I'll say, then, on the

25   subject is the -- you know, Mr. Juncaj is talking about the

46

1    regulations that they have to be served.  You know, I wish we

2    could just go together to the detention center one day, you

3    know, and get --

4         **THE COURT:**  Why don't you?

5         **MR. ARULANANTHAM:**  You know, we should.  We should.

6    We should have a visit.  You know, except he should go

7    undercover so it's not clear that he's a government attorney

8    coming in.

9         **(Laughter)**

10        See -- you know, it takes an hour to -- it takes an

11   hour to drive there.  It takes another hour to get in to see

12   people.  You know, and then you're talking to people.  I mean,

13   the idea that you --

14        **THE COURT:**  Well, if he's not able to do that --

15        **MR. ARULANANTHAM:**  -- you know, that they all just

16   have it and they can just give it to you, it's just --

17        **THE COURT:**  -- perhaps he can -- you can provide him

18   with a DVD of <u>The Visitor</u>.

19        **(Laughter)**

20        **MR. ARULANANTHAM:**  Sure.  That might do the job, too.

21        **THE COURT:**  Yeah.

22        **MR. ARULANANTHAM:**  But, your Honor, I respect the

23   Court's decision.  Obviously, if -- you know, we'll come back.

24   We'll get a representative, you know --

25        **THE COURT:**  Yeah, a number.  Get at least --

47

1          MR. ARULANANTHAM:  -- maybe try a tenth or something.

2          THE COURT:  -- 25 or 30, and see where we are.

3          MR. ARULANANTHAM:  And see where we're at.

4          THE COURT:  Yeah.

5          MR. ARULANANTHAM:  And, I guess, then, your Honor,

6     we'll postpone the Rule 26 discussion --

7          THE COURT:  I think we should.

8          MR. ARULANANTHAM:  -- until after we've done that.

9          THE COURT:  Yes.

10         All right, then.  Anything else from any counsel?

11         MR. ARULANANTHAM:  Your Honor, is the Court going to

12    set a date for the -- giving us this list of locations and

13    names and A numbers?

14         THE COURT:  Let me inquire as to a reasonable time

15    that you would need in order to provide that list to them.

16         MR. JUNCAJ:  Yes, your Honor.  Well, were this a

17    straightforward 26 request, we'd get 30 days to produce

18    discovery.  But, again, just to repeat once more, that we, in

19    contemplation of this, there should be a class certification

20    order.  While --

21         THE COURT:  Well --

22         MR. JUNCAJ:  -- while that's being pushed forward --

23         THE COURT:  -- there will be a class certification

24    order.

25         MR. JUNCAJ:  And we would respectfully request

48

1   30 days to provide that list, then.

2              THE COURT:  Well, I don't think that's unreasonable.

3              MR. ARULANANTHAM:  Your Honor --

4              THE COURT:  Yes.

5              MR. ARULANANTHAM:  -- it's not a Rule 26 yet, right?

6              THE COURT:  (indiscernible)

7              MR. ARULANANTHAM:  We submitted it as an exhibit,

8    your Honor.  I think it's -- he says it's in a computer.  It's

9    30 more days that people are detained without a hearing.  I

10   mean, they already have it.  They should just give it to us.

11             THE COURT:  Is that true, Mr. Juncaj?

12             MR. JUNCAJ:  Whether or not it's in the computer,

13   yes, it is, your Honor.  But if your Honor is going to be

14   moving forward on the class certification --

15             THE COURT:  Yeah.

16             MR. JUNCAJ:  -- is that going to happen today?  That

17   order we would respectfully request identify the class and then

18   follow the procedures that, obviously, Rule 23 would require.

19   But it isn't in a system, and they would have to run that.

20             The list that's being referenced from before, I

21   believe that list was a year ago.  It's not as if this list --

22   this is the list, and we've just got to take the --

23             THE COURT:  All right.

24             MR. JUNCAJ:  -- (indiscernible)

25             THE COURT:  Perhaps it needs to be updated.  If you

 1  provide that with us within seven days, and then seven days

 2  after the receipt of it, when the order goes out --

 3          **MR. ARULANANTHAM:**  Seven -- provide -- meaning the

 4  proposed order for class certification?  Is that --

 5          **THE COURT:**  That's right.  And any --

 6          **MR. ARULANANTHAM:**  Okay.

 7          **THE COURT:**  -- any change in the list that you might

 8  have.

 9          **MR. ARULANANTHAM:**  Well, your Honor, just to clarify

10  the point about the list, right; we don't contend that that

11  list is the class representatives.  If we knew that, we'd be

12  much happier.

13          **THE COURT:**  Well --

14          **Mr. ARULANANTHAM:**  The AP -- the Government provided

15  a year ago, in response to a FOIA submitted by the Associated

16  Press, what appears to be a printout from a computer.  And

17  that's why we suspected --

18          **THE COURT:**  Uh-huh.

19          **MR. ARULANANTHAM:**  -- they never told us this -- that

20  they have this.  My assumption is, just like they printed that

21  out some day in January of '09, they could print out today the

22  same thing with the names and A numbers.  So, I --

23          **THE COURT:**  Well --

24          **MR. ARULANANTHAM:**  -- I respect Mr. Juncaj's point

25  that we need a class --

50

1          **THE COURT:**  Right.

2          **MR. ARULANANTHAM:**  -- a class certification order.

3          **THE COURT:**  Exactly.

4          **MR. ARULANANTHAM:**  I don't know that we -- we can

5    provide -- will provide it before seven days, but certainly

6    within seven days we can provide a proposed order.  And we have

7    one already; it's the same proposed order that we have from the

8    class certification motion from before, your Honor.  I think --

9    and that's the motion that the Ninth Circuit had before it.

10          So, I think what we'd request is the Court sign the

11   proposed order certifying the class and appointing us as class

12   counsel, and then Mr. Juncaj the next day should print out

13   his -- the list that's on their computer.  So --

14          **THE COURT:**  Well, no; not the next day.

15          **MR. ARULANANTHAM:**  Okay.

16          **THE COURT:**  He'll have seven days -- seven court

17   days -- in which to do that.

18          **MR. ARULANANTHAM:**  Okay, your Honor.

19          **THE COURT:**  Do we have a copy of that proposed order

20   in the file?

21          I just don't -- we don't actually have it, so I think

22   you'd do well to renew it and provide it to us.

23          **MR. ARULANANTHAM:**  We'll resubmit the same

24   classification motion --

25          **THE COURT:**  All right.

**EXCEPTIONAL REPORTING SERVICES, INC**

51

1          **MR. ARULANANTHAM:**  -- proposed order, your Honor.

2          **THE COURT:**  That will be fine.

3          **MR. ARULANANTHAM:**  Your Honor, if Mr. Juncaj knows

4    there's 400 people, they must know this list, so --

5          **THE COURT:**  I don't know.

6          All right.  Anything else?

7          **MR. JUNCAJ:**  Not from the respondents, your Honor.

8          **THE COURT:**  All right.

9          From the petitioners?

10         **MR. ARULANANTHAM:**  Nothing further, your Honor.

11   Thank you very much.

12         **THE COURT:**  All right.  Thank you all.

13         **THE CLERK:**  This court is adjourned.

14     **(This proceeding was adjourned at 11:09 a.m.)**

15

16

17

18

19

20

21

22

23

24

25

52

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    <u>March 29, 2010</u>

        Signed                                         Dated


*TONI HUDSON, TRANSCRIBER*