1    AHILAN T. ARULANANTHAM (SBN 237841)
     Email: aarulanantham@aclu-sc.org
2    JENNIFER  STARK (SBN 267062)
     Email: jstark@aclu-sc.org
3    ACLU FOUNDATION OF SOUTHERN CALIFORNIA
     1313 West 8th Street
4    Los Angeles, CA 90017
     Tel: (213) 977-5211
5    Fax: (213) 977-5297

6    **Attorneys For Petitioners**
     (Additional counsel listed on following page)

7

8

9                   **UNITED STATES DISTRICT COURT**

10          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11                       **WESTERN DIVISION**

12

13   ALEJANDRO RODRIGUEZ,                 )   Case No. CV 07-3239-TJH (RNBx)
     ABDIRIZAK ADEN FARAH, YUSSUF         )
14   ABDIKADIR, ABEL PEREZ RUELAS,        )   **PETITIONER'S OPPOSITION TO**
     JOSE FARIAS CORNEJO, ANGEL           )   **RESPONDENT'S EX PARTE**
15   ARMANDO AYALA, *for themselves*      )   **APPLICATION**
     *and on behalf of a class of similarly-* )
16   *situated individuals,*              )
                                          )
17            Petitioners,               )
                                          )
18       v.                              )
                                          )
19   ERIC H. HOLDER, JR., in his official )
     capacity as *United States Attorney* )
20   *General, et al.*                    )
                                          )
21            Respondents.               )
                                          )
22   ──────────────────────────────────  )

23

24

25

26

27

28

1 | Additional Counsel:

2 | JUDY RABINOVITZ
AMERICAN CIVIL LIBERTIES FOUNDATION
3 | IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
4 | New York, NY 10004
Telephone: (212) 549-2618
5 | Facsimile: (212) 549-2654

6 | JAYASHRI SRIKANTIAH (SBN 189566)
STANFORD LAW SCHOOL
7 | IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
8 | 559 Nathan Abbott Way
Stanford, CA 94305-8610
9 | Telephone: (650) 724-2442
Facsimile: (650) 723-4426

10 |

11 | STEVEN A. ELLIS (SBN 171742)
WILLIAM TRAN (SBN 245104)
BRIAN K. WASHINGTON (SBN 248960)
12 | SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
13 | Los Angeles, California  90013-1010
Telephone: (213) 896-6000
14 | Facsimile: (213) 896-6600

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

# TABLE OF CONTENTS

2

I. The Court Should Require the Government to Seek a Stay
of Discovery by Noticed Motion ................................................................4

3

4

II. If The Court Addresses the Merits of the Stay Request,
It Should Deny the Ex Parte Application Because the Stay
Request Itself is Unjustified.....................................................................8

5

6

   A.  Factual Issues are Relevant to the Legal Question at Issue in this Case .............8

7

8

   B.  A Stay of All Discovery is Unwarranted Because it Would
Substantially Delay Resolution of This Case ....................................13

9

10

   C.  A Stay of All Discovery is Unwarranted Because the
Government is Very Unlikely to Prevail on the Merits of
its Forthcoming Rule 12(c) Motion ..................................................14

11

12

CONCLUSION..........................................................................................17

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

**Page(s)**

*Blankenship v. Hearst Corp.,*
  519 F.2d 418 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*County of Riverside v. McLaughlin,*
  500 U.S. 44 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Demore v. Kim,*
  538 U.S. 510 (2003), . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 12, 13, 18

*Humphries v. County of Los Angeles,*
  554 F.3d 1170 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kwai Fun Wong v. United States,*
  373 F.3d 952 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mission Power Engineering Co. v. Continental Casualty Co.,*
  883 F. Supp. 488 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . 4, 7, 9

*Morales-Izquierdo v. Gonzalez,*
  486 F.3d 484 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Nadarajah v. Gonzales,*
  443 F.3d 1069 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Orantes-Hernandez v. Meese,*
  685 F. Supp. 1488 (C.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . 11

*Skellerup Industries Ltd. v. City of Los Angeles,*
  163 F.R.D. 598 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

**STATE CASES**

*Diouf v Holder, No. CV 06-7452,*
  2009 WL. 6331130 (C.D. Cal. September 9, 2009) . . . . . . . . . . . . . 13, 17

## PETITIONER'S OPPOSITION TO
## RESPONDENT'S EX PARTE APPLICATION

The government's Ex Parte Application seeking to stay all discovery in this case presents a classic example of abuse of the ex parte process. The government has filed a complex 20 page motion that includes substantial discussion of both the parties' discovery dispute and the merits of the underlying case, but Petitioners have had less than three days to respond to this motion.

Moreover, the government identifies absolutely no exigency justifying a departure from the normal noticed motion process. *See* Ex Parte Application at 2-3, 20 (Section D). Petitioner served the discovery at issue on July 22, 2010 – nearly three months ago. The government notified counsel of its intention to seek this on September 27, 2010 -- over two weeks ago.[4] The purported justification for the stay is the need to suspend discovery pending litigation on as-yet-unfiled motions, but the soonest a hearing on discovery could occur in this case would be November 9, 2010 – nearly a month from now – before the Magistrate Judge, and even then the government could appeal any order to this Court prior to producing any discovery. Thus, even if the government could be excused from having delayed so long in filing this motion, it would be well over 28 days before the government would have to comply with any discovery request. In the interim, the only potential additional work would be to file an optional short brief before the Magistrate – hardly a justification for this Ex Parte Application. *See* Local Rule 37-2.3 (parties "may" file five page supplemental memorandum prior to discovery hearing). In other words, there is absolutely no reason why the government cannot file a noticed motion to obtain the requested stay of all discovery.

Regardless of the merits of the request for a stay of discovery – which

---

[4] The government states that this meet and confer occurred on September 17, 2010. Ex Parte App. at 10. Whichever date is correct, the government knew of its plans for filing this Ex Parte Application at least two weeks ago.

1

1   Petitioner will attempt to address here in cursory fashion – the Court should deny this

2   Ex Parte Application and require the government to make its request by noticed

3   motion, as doing so would allow Petitioner sufficient time to brief the issue and give

4   the Court sufficient time to consider it. *See Mission Power Engineering Co. v.*

5   *Continental Cas. Co.*, 883 F.Supp. 488, 489 (C.D. Cal. 1995) (describing problems

6   created by "the abusive use of ex parte motions"). The Court can resolve this Ex Parte

7   Application without reaching any other issues addressed in this response. *See infra*

8   Section I.

9        If the Court considers the merits of the stay request, there are two serious

10  problems with the government's request that all discovery be delayed pending

11  litigation of its Rule 12(c) motion, which Petitioners have addressed in an incomplete

12  fashion given the briefing schedule in this Ex Parte Application. *See infra Section* II.

13  First, the government's initial premise – that no fact discovery is required because this

14  case involves a question of law – is flatly contradicted by the most recent applicable

15  Supreme Court case on the subject, *see Demore v. Kim*, 538 U.S. 510, ____ (2003)

16  (relying on aggregate facts to resolve facial Due Process challenge to detention

17  statute), and in any event is obviously incorrect with respect to at least some of the

18  discovery requests at issue. Contrary to the government's claim, controlling caselaw

19  governing due process challenges to detention schemes makes clear that such disputes

20  must be resolved by reference to aggregate facts. Thus, there is no contradiction

21  between Petitioner's assertion that the constitutional issue in this case involves a

22  question of law and Petitioner's requests for discovery concerning that constitutional

23  claim. *See infra Section* II (A).

24        Second, the government's approach will result in a massive delay – at bare

25  minimum of two to three months, but probably far longer – and therefore will

26  substantially prolong completion of this three-year-old case that challenges

27  unlawfully-prolonged detention. Hundreds of detainees will be denied bond hearings

28  to which they may be entitled while this delay occurs, and at the end of it the parties

2

1    will still have to litigate at least some discovery disputes. *See infra Section* I at 8, II

2    (B).

3            Third, the government has not come near making a "strong showing" that the

4    stay is warranted because it will prevail on the motion, as required under Ninth Circuit

5    law. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (reversing

6    district court because order denying discovery lacked "strong showing" of good

7    cause); *Skellerup Industries Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D.

8    Cal. 1995) (denying request to stay discovery pending litigation of dispositive motions

9    because defendants had failed to make "strong showing" of good cause). Tellingly,

10   the government does not even argue that it will prevail with respect to large parts of its

11   forthcoming Rule 12(c) motion, asserting instead only that discovery is not required to

12   resolve the issues. *See Ex Parte* at 14-17 (arguing that issues in dispute are legal and

13   therefore do not require discovery).

14           However, whether or not particular discovery requests are appropriate are issues

15   that can be resolved by the Magistrate Judge and, if necessary, by this Court, on a

16   case-by-case basis *after* compliance with the local rules governing litigation of such

17   disputes. That the government almost certainly will not prevail on its motion in its

18   entirety, and likely will not prevail on any of it, is an independent reason to reject this

19   Ex Parte Application, because if the government does not prevail on its Rule 12(c)

20   motion, the parties will still have to litigate the discovery issues, but will do so several

21   months later than they would have otherwise. *See infra* II (C). Moreover, this Court

22   would benefit from reviewing the Magistrate Judge's decision on the motion to

23   compel, which will analyze the very issue that the government has raised in its Ex

24   Parte Application in the context of the Petitioner's individual discovery requests.

25   Instead, Respondents have asked this Court to make a blanket discovery ruling on the

26   relevance of Petitioner's varied discovery requests without providing the parties and

27   the Court an opportunity to review those requests on an individual basis.

28           Finally, Petitioner notes that the absence of any real exigency justifying this Ex

Parte Application strongly suggests an ulterior motive: the government's stated position is that it will not comply with *any* of Petitioner's discovery requests, but it does not want to defend that implausible position before the Magistrate Judge in the context of litigating particular discovery disputes.  Instead, it seeks to short-circuit that process by staying all discovery for months while it litigates a Rule 12(c) motion on which it is unlikely to prevail.

While the government has every right to bring its Rule 12(c) motion, the Court should not countenance further delay – and further months of prolonged detention without hearings for class members – by staying all discovery while that motion is litigated.  And it certainly should not make such an important decision through an Ex Parte briefing schedule in the absence of any exigency.[5]

## I.    The Court Should Require the Government to Seek a Stay of Discovery by Noticed Motion.

As a threshold matter, the Court should deny the government's Ex Parte Application because the request for a stay of discovery should be brought by noticed motion on a schedule that would allow the parties and the Court the time necessary for appropriate briefing and consideration of the issue.  The government's 20 page motion, which includes substantial discussion of both the propriety of discovery and the merits of the underlying case, cannot be adequately addressed given the extremely short timeframe allowed for briefing and consideration of Ex Parte Applications.[6]

The government points to absolutely no exigency justifying its decision to

---

[5] The government also requests that the Court enter a case management or scheduling order.  This is somewhat of a red herring, as the parties have largely complied with their proposed schedule thus far, but in any event Petitioner has no objection to the entry of such an order, provided it does not stay discovery.

[6] Counsel undersigned spoke with the Court's deputy Ms. Park by telephone concerning the deadline for this brief, and asked for as much time as possible to respond to this Ex Parte Application.  The Court gave counsel an extra day – to noon on October 15, 2010.  While this extra day provided slightly more time to address the complex issues here than is available in other Ex Parte Applications, it obviously could not serve as a substitute for a noticed motion schedule.

4

1  proceed by Ex Parte Application.  The government's primary rationale for seeking the

2  stay is that the discovery Petitioner seeks is too burdensome.  However, under the

3  schedule on which the parties are presently operating, the government will have an

4  opportunity to present all of its objections to the discovery requests, and will obtain a

5  hearing that will occur no sooner than Nov. 9, 2010.  *See* Local Rule 37.  Even if the

6  Magistrate rules within a week, the government could still appeal the ruling to this

7  Court.  Thus, it will be far more than 28 days before the government has any

8  obligation to comply with any discovery request (an obligation that would arise only

9  from an order of the Magistrate and, if the government wishes, this Court).  Prior to

10  that time, the government's only potential additional work with respect to discovery

11  will be to file an optional five page brief before the Magistrate Judge's hearing, no

12  sooner than November 4, 2010.  *See* Local Rule 37-2.3.  This hardly constitutes an

13  exigency requiring resolution by Ex Parte process.  *Compare Mission Power Eng'g*,

14  883 F.Supp. at 490 (ex parte relief warranted in cases of "a temporal urgency such that

15  immediate and irreparable harm will occur if there is any delay in obtaining relief").

16      Equally troubling is the fact that any purported exigency created by the

17  discovery schedule is entirely of the government's own making.  Counsel for

18  Petitioners served the government with their discovery requests on July 22, 2010 –

19  nearly three months ago, and served the Second Amended Complaint on the

20  government on September 8, 2010 – over a month ago.  The government could have

21  moved to stay discovery, or indeed filed the Rule 12(c) motion itself, at any point after

22  that time, and thus would have obtained a ruling without incurring any discovery

23  obligations.[7]

24      Despite the obvious lack of exigency, the government offers virtually no

25  justification for proceeding *ex parte* on this important motion; indeed, its brief

26  mentions the issue only as an afterthought.  *See* Ex Parte App. at 20.  The government

27  ─────────────
   [7] Indeed, as of this time the government has not even filed the Rule 12(c) motion

28  which it says must be decided prior to discovery.

1    states that the existing schedule is "unworkable" because the discovery disputes will

2    be litigated at the same time that the forthcoming Motion for Class Certification and

3    Motion for Judgment on the Pleadings under Rule 12(c) will be litigated, *see* Ex Parte

4    App. at 20, and also intimates that the filing of the Second Amended Complaint

5    surprised the government and thereby altered the procedural posture in some respect.

6    *Id.* at 9.  These arguments are so undeveloped that they are difficult to rebut, but to the

7    extent they are coherent, they are meritless.

8         As a threshold matter, if a schedule is "unworkable" then the government

9    should ask the Court to hold a status conference to resolve the schedule, not file an Ex

10   Parte Application to stay all discovery on the basis of legal theories that have not been

11   briefed or argued.  Second, nothing about the schedule prevents the government from

12   filing its Rule 12(c) motion – indeed, it could have done so a month ago – and there is

13   nothing "unworkable" about the government complying with the minimal existing

14   discovery schedule – just one optional five page brief – prior to obtaining a ruling on

15   the 12(c) motion, assuming that motion is timely filed.

16        Similarly, the motion for class certification does not render the schedule

17   "unworkable" in any respect.  Petitioner's counsel notified the government as to their

18   proposal for subclasses on February 9, 2010, and their proposal has not deviated in

19   any way since that time.  *See* Exhibit 20 (email correspondence of February 9, 2010).

20   Whatever minimal litigation is necessary on that motion at this stage – after the Ninth

21   Circuit has already certified the class and this Court has already recommended that the

22   parties form subclasses – will not affect or be impeded by the discovery process.

23        The government also suggests that the Second Amended Complaint may have

24   altered the procedural posture in some way relevant to discovery, but it can point to no

25   such reason, and Petitioner's counsel can think of none.  Petitioner filed the Second

26   Amended Complaint on the schedule to which the government agreed, *see* Joint

27   Report Re: Conf. of Parties Pursuant to Fed. R. Civ. P. 26(F), Local Rule 26-1, and

28   Court Order [Dkt # 82 at 4, July 9, 2010], made exactly the same claims as in the

6

original complaint, asserted the same jurisdictional bases, and identified the same subclasses that counsel described to the government five months earlier. *Compare* Corrected Petition for Writ of Habeas Corpus (May 16, 2007) *with* Second Amended Complaint [Dkt # 85, Sept. 8, 2010]. Since then, the government has filed its answer. The timing and substance of the Second Amended Complaint have absolutely no relevance of any kind for the government's request to stay all discovery.

The total absence of any exigency in support of the Ex Parte Application strongly suggests an ulterior motive for the government's action. The government has taken the position in its negotiations with counsel that Petitioners are not entitled to *any* discovery. With respect to at least some of the discovery requests that position is completely untenable. *See infra* II(A). Entry of the requested stay would thus serve one important purpose – it would prevent the government from having to defend its refusal to comply with its discovery obligations before the Magistrate Judge, in the context of the specific discovery requests. Needless to say, that is not a valid basis for an Ex Parte Application.

In short, there is simply no reason why the request for a stay cannot be adjudicated by noticed motion. This Court has warned against the use of so-called "hybrid" Ex Parte Applications to achieve tactical advantage by avoiding the notice of motion rules where no true exigency exists. As Magistrate Judge Edwards explained,

> The fact that opposing parties are usually given an opportunity to argue or file opposing papers does not mask the plain truth: these hybrid ex parte motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system. Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship.

*Mission Power Eng'g*, 883 F.Supp. at 490.

1    The government's Ex Parte Application here presents a paradigmatic example

2    of such abuse, and should be rejected for that reason; wholly apart from the merits of

3    the stay request, the Court should reject the government's attempt to obtain it by Ex

4    Parte Application.  Given the total absence of exigency and the massive interests at

5    stake – months more detention without hearings for hundreds of people – the Court

6    should require the government to seek this relief by noticed motion and allow

7    Petitioners to brief it in due course.

8    **II.    If The Court Addresses the Merits of the Stay Request, It Should Deny the**

9    **Ex Parte Application Because the Stay Request Itself is Unjustified.**

10    While Petitioners cannot offer a complete opposition to the government's stay

11    request given the briefing schedule on this Ex Parte Application, they offer the

12    following discussion to highlight some of the most serious problems with the

13    government's request.

14    To prevail on a motion to stay pending discovery pending litigation on a

15    dispositive motion, a litigant must make a "strong showing" that a stay is warranted.

16    *Skellerup Industries Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600-01 (C.D. Cal.

17    1995) (rejecting motion to stay discovery where entering the stay "would undercut the

18    Federal Rules' liberal discovery provisions.").  A "strong showing" requires more

19    than mere "conclusory" arguments that it will prevail on the dispositive motion, and

20    more than a showing that the burdens of discovery are as onerous as those that

21    accompany "any reasonably large civil litigation." *Id*. at 601.

22    The government has utterly failed to make such a "strong showing" of good

23    cause, for three reasons.  First, the government is mistaken as to the essential premise

24    of its motion – that because this case presents a legal question, its resolution does not

25    require factual development.  Case law and common sense make clear that this is

26    incorrect as to at least some of the discovery requests in dispute.  Because Petitioner is

27    undoubtedly entitled to at least some discovery, the request for a blanket stay on all

28    discovery should be rejected.  Second, imposition of the stay would substantially

1    delay resolution of this case, but not resolve the parties' discovery disputes. As a

2    result, it would work a massive hardship on the class members – who will be subject

3    to prolonged detention for several additional months – without providing any

4    appreciable benefit in terms of efficient resolution of this litigation. Third, the

5    government is very unlikely to prevail on its Rule 12(c) motion, leaving the parties to

6    litigate the same discovery disputes that will shortly be presented to the Magistrate

7    Judge and this Court under the current schedule.

8        **A.**    **Factual Issues are Relevant to the Legal Question at Issue in this Case.**

9

10        The premise of the government's request for a stay of all discovery is that

11    because the constitutional claim in this case involves a question of law, factual claims

12    are irrelevant and no discovery should be required. However, this premise is

13    fundamentally misguided. The question of whether the Due Process Clause requires

14    the type of hearings that the class members seek is indeed a question of law, but, as

15    courts have repeatedly recognized, resolution of that legal question requires

16    information about the relevant facts. While individual cases allow courts to resolve

17    such claims by reference to a particular litigant's individual facts, in cases involving

18    class actions or facial challenges, courts resolve such claims by reference to aggregate

19    facts. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510 (2003) (in facial challenge, resolving

20    question whether due process required bond hearings by relying on aggregate data

21    concerning individual cases); *Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1507-

22    08 (C.D. Cal. 1988) (in class action, resolving procedural due process claim by

23    reference to facts about "a substantial number of class members"); *Morales-Izquierdo*

24    *v. Gonzalez*, 486 F.3d 484, 496 (9th Cir. 2007) (en banc) (in facial challenge, relying

25    on data concerning the "error rate" to assess whether additional process involving

26    hearings before immigration judges in every case was required in removal

27    proceedings); *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1200 (9th Cir.

28    2009) (in facial challenge to validity of database system listing offenders without

1  opportunity to challenge listing, utilizing error rate in system similar to the one at

2  issue in assessing due process claim); *County of Riverside v. McLaughlin*, 500 U.S.

3  44, 55, 57 (1991) (in class action, relying on information concerning causes for delays

4  in arraignment and conclusion that "it takes 36 hours to process arrested persons in

5  Riverside County" in assessing constitutional requirements); *see also id.* at 68 (Scalia,

6  J., dissenting) (arguing in favor of a 24-hour period to provide a probable cause

7  hearing based on the "available data" and observing that the Court had previously

8  declined to decide the issue "since we had before us little data to support any figure

9  we might choose" and that the Court would still benefit from "even more

10  information").

11        Several examples make clear that the government's position is incorrect:  some

12  of Petitioner's discovery requests seek to determine what the government's existing

13  detention procedures actually are, and whether it follows those procedures.  Given that

14  the government is arguing in this case that its existing detention procedures are

15  constitutionally sufficient, Petitioner is obviously entitled to learn what those

16  procedures are and how they function in practice; the Court cannot assess the

17  constitutionality of detention procedures without knowing what they are.  Similarly,

18  some of Petitioner's discovery requests seek to determine for how long class members

19  are typically detained, in order to determine the degree of liberty deprivation they will

20  suffer without obtaining constitutionally-adequate hearings.  The length of detention is

21  obviously relevant to assessing the constitutionality of the existing detention scheme.

22  *See Demore*, 538 U.S. at 529 (analyzing average length of detention in assessing

23  constitutionality of detention scheme).  The government's requested stay would bar

24  Petitioner from obtaining this discovery, even though it is plainly relevant and

25  therefore justified under the Federal Rules.

26        Of course, that some discovery is warranted does not resolve the question

27  whether *all* of Petitioner's discovery requests are justified.  However, the government

28  has ample opportunity to argue that particular discovery requests are inappropriate

1   under the local rules, without resorting to the blanket stay it seeks here.

2       In support of its claim that it can side-step that process, the government cites to

3   several Ninth Circuit cases– *Casas-Castrillon*, *Prieto-Romero*, *Tijani*, and *Diouf* – in

4   which the Court has decided (or will decide) due process challenges to prolonged

5   challenge without the benefit of factual discovery.[8]  However, there is a critical

6   difference between individual challenges to detention, on the one hand, and class

7   action and facial challenges to detention schemes, on the other.  In individual cases,

8   the constitutional analysis turns on the facts concerning the individual detainee and his

9   detention – information that can be presented in the district court without the need to

10  for significant discovery.  By contrast, in a class action or facial challenge – as in

11  *Demore*, *Salerno*, *Morales-Izquierdo*, *Humphries*, and *McLaughlin* – the plaintiff

12  challenges the government's policies and practices in *all* their applications.  The

13  analysis of class or facial claims thus necessarily requires consideration of aggregate

14  or class-wide information.  Accordingly, Petitioner does not seek discovery in order to

15  make claims about any given class member, but rather to make aggregate claims about

16  detainees subject to prolonged detention as a whole – the same information relied on

17  by the Supreme Court and Ninth Circuit in considering similar claims.

18      *Demore* is directly on point.  There, the Court considered a due process facial

19  challenge to section 1226(c)'s authorization of detention without the opportunity for a

20  bond hearing, the same basic constitutional question presented in this case.  In

21  concluding that bond hearings were not required, the Court stressed the "brief" period

22  of detention for most 1226(c) detainees, relying on aggregate data provided by the

23  government. 538 U.S. at 529 (EOIR "has calculated that, in 85% of the cases in

24  which aliens are detained pursuant to§ 1226(c), removal proceedings are completed in

25  an average time of 47 days and a median of 30 days") (quoting government brief).

26  That data was central to the majority opinion's ultimate conclusion, as well as Justice

27  _____
    [8] The government makes the same claim as to a set of pending Ninth Circuit
28  prolonged detention cases that were recently argued.  *See* Ex Parte App. at 15-16.

1   Kennedy's concurrence, that bond hearings were not required for the "brief" period of

2   detention at issue. *Id.*; *see also id.* at 532 (Kennedy, J., concurring) (stating that

3   individualized hearing may be required if there is an "unreasonable delay by the INS

4   in pursuing and completing deportation proceedings").

5   　　　Further, the Court relied on extensive findings and studies cited in the

6   Congressional record in assessing the strength of the government's interest. *Id.* at

7   518-21. The Court also found that a study done by the Vera Institute of Justice on

8   alternatives to detention had "limited" value due to methodological problems, but did

9   not reject that the availability of alternatives is relevant to due process analysis. *Id.* at

10   520 n. 5. Additionally, the majority opinion and Justice Kennedy's concurrence

11   emphasized that *Joseph* hearings provide a procedural safeguard against unlawful

12   detention – a safeguard that the petitioner in *Kim* had foregone by conceding

13   deportability. *Id.* at 514 n.3, 523 n.6; *id.* at 531-32 (Kennedy, J. concurring). The

14   Court specifically observed that because of the petitioner's concession "we have no

15   occasion to review the adequacy of Joseph hearings generally in screening out those

16   who are improperly detained." *Id.* at 514 n.3. Thus, in *Kim*, the government argued –

17   and the Court agreed – that aggregate data concerning individual cases and the

18   efficacy of alternative procedural safeguards are relevant factors in the due process

19   analysis.

20   　　　The government now attempts to diminish the significance of *Kim*, suggesting

21   that the Court only relied on only one "extrinsic" fact (length of detention) introduced

22   outside Congressional record. However, that one fact included extensive aggregate

23   data compiled by the government – exactly the same sort of information Petitioner

24   seeks here. Further, Respondent ignores the other factual information considered by

25   the *Kim* court – including the availability and efficacy of alternatives to detention for

26   preventing flight risk – in analyzing the due process claim. It is immaterial that this

27   information was introduced at the Supreme Court, rather than developed in discovery

28   at the district court. This Court must ultimately look to the Supreme Court's analysis,

not the district court's, in determining what information informs the constitutional analysis, and the Supreme Court's analysis makes clear that these aggregate facts were relevant to assessing the Due Process claim at issue.

### B.    A Stay of All Discovery is Unwarranted Because it Would Substantially Delay Resolution of This Case.

Apart from the error at the heart of the government's analysis, the Court should reject the requested stay because it will result in a massive delay in resolving this case. The government cannot seriously dispute that its proposed stay of all discovery would delay resolution of this case by several months. The Rule 12(c) motion would require briefing on virtually all of the merits of this case. *See* Ex Parte App. at 13-17. Briefing those issues would require at least two months prior to a hearing, and presumably at least several more weeks, if not months, prior to a decision. Assuming any part of the case survives – and it is virtually certain that at least large portions of it will, *see infra* II(C), discovery will likely be delayed for several months pending the Court's resolution of the Rule 12(c) motion.

Because this case involves a challenge to prolonged detention, the delay caused by the stay would ensure that hundreds of detainees (approximately 350 on any given day) would remain in detention without hearings to which they may be entitled for several more months. This is a massive interest counseling against any stay of discovery.

Contrary to the government's suggestion, weighed against that interest is *not* the government's interest in avoiding burdensome discovery, because even without the stay the government will have ample opportunity to avoid any unwarranted discovery. The government remains free to argue to the Magistrate Judge and, if necessary, on appeal to this Court that the discovery is burdensome or otherwise unwarranted, using the process set forth in the local rules. Indeed, the parties are engaged in that process already.[9]

---

[9] Petitioner disagrees with the government that his discovery requests are burdensome

*(Footnote continued)*

1    The government has no valid interest in avoiding the process for litigating

2  discovery disputes contemplated by the local rules, and any interest it may have in that

3  regard is certainly insufficient to outweigh the months of prolonged detention without

4  hearings that class members will suffer if the Court enters the requested stay.  These

5  interests counsel against any finding that the government has established good cause

6  for the stay.

7    **C.    A Stay of All Discovery is Unwarranted Because the Government is Very Unlikely to Prevail on the Merits of its Forthcoming Rule 12(c) Motion.**

8

9    The Court should also reject the request to stay all discovery pending resolution

10  of the government's Rule 12(c) motion because the government is very unlikely to

11  prevail on that motion.  A full explanation of why the government will not prevail is

12  obviously difficult given the compressed briefing schedule, but a few points bear

13  mention.

14    The government's assertion that non-citizens detained under Section 1225(b)

15  (whom the government refers to as "arriving aliens," *see* Ex Parte App. at 14), lack

16  due process rights and therefore cannot challenge their prolonged detention is

17  incorrect for two reasons.  First, the Ninth Circuit has held that all non-citizens

18  physically present in the United States, even if they have not effected an "entry," are

19  protected by the Due Process Clause.  "Even an excludable alien is a 'person' for

20  purposes of the Fifth Amendment and is thus entitled to substantive due process."

21  *Kwai Fun Wong v. United States*, 373 F.3d 952, 972 (9th Cir. 2004).  Second, the

22  Ninth Circuit has held that Section 1225(b) applies not only to non-citizens who have

23  never effected an entry into the United States, but also to lawful permanent residents

24  returning from travel abroad, because they too are characterized as "arriving aliens"

25  for purposes of the statute.  *See Nadarajah v. Gonzales*, 443 F.3d 1069, ____ (2006)

26  _____

27  or otherwise unjustified.  The parties are in the process of briefing those issues extensively before the Magistrate Judge pursuant to a schedule to which they have mutually agreed and largely followed thus far.  Their joint statement setting forth the discovery disputes are due on the coming business day -- Monday, October 18, 2010.

28

14

1  (construing Section 1225(b) in light of its potential effect on returning lawful

2  permanent residents).  While the government could respond that in fact no lawful

3  permanent residents are detained under Section 1225(b), at least in this district, this

4  assertion would require factual development to resolve, such that the government

5  could not prevail on it under Rule 12(c).

6         The government's arguments concerning detainees held under Section 1226(a)

7  are weaker still.  The government does not even claim that it will prevail on its Rule

8  12(c) motion with respect to this group.  *See* Ex Parte at 14-16.  Instead, it seeks to

9  pre-judge the question whether their claims can be resolved without discovery.  As

10 noted above, that question should be resolved in the context of litigation about the

11 discovery disputes.[10]  The government also argues that counsel for Petitioners have

12 litigated issues concerning the requirements for prolonged detention hearings at the

13 Ninth Circuit without requiring discovery.  Ex Parte App. at 15-16.  But those cases

14 involved individual petitioners whose factual circumstances were clear from the

15 record, they did not involve a facial challenge as in *Demore* or *Salerno*, or a class

16 action like this case.  Where litigants challenge the constitutionality of a statutory

17 scheme as a whole, the courts have resolved such disputes by reference to aggregate

18 facts concerning the group.  *See supra* at II(A).

19        Similarly, the government makes literally no argument whatsoever that it will

20 prevail on its Rule 12(c) motion with respect to the subclass of detainees subject to

21 prolonged detention without a hearing under Section 1226(c).  Ex Parte App. at 16.

22 Instead, it argues only that resolution of the claims for that subclass involves analysis

23 of a question of law.  As noted above, this is not a reason to stay discovery concerning

24 that sub-class, but instead to evaluate the relevance of individual discovery requests

25

26 [10] To provide but one example, Petitioners have sought discovery concerning whether
    the government provides notice to detainees of their right to a hearing under *Casas-*
27 *Castrillon*.  This discovery request is obviously relevant to determine whether the
    government's existing system of detention hearings for people detained under Section
28 1226(a) is constitutionally-adequate.

1   and reject them if they are unwarranted.  (Of course, any such argument against

2   discovery would have to contend with the fact that the Supreme Court relied on

3   factual conclusions in resolving a facial challenge to the same statute in *Demore*).

4        Finally, with respect to the subclass detained under Section 1231(a)(6), the

5   government claims that this Court has already decided the question in its decision in

6   *Diouf v Holder*, No. CV 06-7452, 2009 WL 6331130 (C.D. Cal. September 9, 2009),

7   and furthermore that it has done so without reference to facts.  Both claims are

8   mistaken.  A close reading of this Court's opinion in *Diouf* makes clear that the Court

9   decided only that Mr. Diouf had no right to a hearing, without deciding the broader

10   statutory question, and furthermore that it did so by reference to the particular facts of

11   Mr. Diouf's case.  *See id.* (holding that Diouf is not entitled to a bond hearing because

12   he had already exhausted direct review of his removal order and only sought Ninth

13   Circuit review of a motion to reopen, twice had bond cancelled after failing to timely

14   depart, and had received multiple post-order custody reviews).  In any case, Mr.

15   Diouf's case has been appealed and argued to the Ninth Circuit; this Court's

16   resolution of his particular case hardly constitutes a basis for staying all discovery in

17   the whole class action pending resolution of a Rule 12(c) motion that the government

18   has yet to file.

19        Most important, whatever merit there is in the government's arguments that the

20   issues in this case can be resolved without discovery, *but see supra* Section II(A),

21   those arguments are properly addressed to the Magistrate Judge in the context of

22   specific discovery disputes; they are not fit for blanket pre-judgment.

23

24

25

26

27

28

1  **CONCLUSION**

2         For all of these reasons, the Court should deny the government's Ex Parte

3  Application seeking to stay all discovery in this case.  It should require the

4  government to make its request by noticed motion without addressing the merits of the

5  stay request.  Alternatively, it should reject the stay request on the merits.

6

7                                                    Respectfully submitted,

8                                                    ACLU OF SOUTHERN CALIFORNIA

9  Dated:  October 15, 2010            s/ Ahilan T. Arulanantham

10                                                  AHILAN T. ARULANANTHAM

                                                    Counsel for Petitioners
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28