1  PETER J. ELIASBERG (SBN 189110)
   Email: peliasberg@aclu-sc.org
2  AHILAN T. ARULANANTHAM (SBN 237841)
   Email: aarulanantham@aclu-sc.org
3  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1616 Beverly Boulevard
4  Los Angeles, California 90026
   Tel: (213) 977-5211
5  Fax: (213) 977-5297

6  Attorneys for Petitioner
   (Additional counsel listed on following page)

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11

12  ALEJANDRO RODRIGUEZ, *et al.*,    )   Case No. CV 07-3239-TJH (RNBx)
                                      )
    Petitioner,                       )   **DISCOVERY MATTER**
13                                    )
    vs.                               )
14                                    )   JOINT STIPULATION REGARDING
    TIMOTHY S. ROBBINS, *in his*      )   PETITIONER'S MOTION TO COMPEL
15  *capacity as U.S. Immigration and*)   AND RESPONDENTS' MOTION FOR
    *Customs Enforcement, Los Angeles*)   PROTECTIVE ORDER PURSUANT TO
16  *District Field Office Director*; )   LOCAL RULE 37-2.1
    JANET NAPOLITANO, *in her*        )
17  *capacity as Secretary of Homeland*)  Honorable Robert N. Block
    *Security*; and ERIC H. HOLDER, JR.,)
18  *in his capacity as Attorney General of*)  Complaint Filed: 5/16/2007
    *the United States*,              )
19                                    )   Hearing Date: November 9, 2010
    Respondents.                      )   Time:          9:30 AM
20                                    )   Place:         Courtroom 6D
                                      )
21  _____   )

22

23

24

25

26

27

28

---

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS'
MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1  Additional counsel:

2  JUDY RABINOVITZ
   AMERICAN CIVIL LIBERTIES FOUNDATION
3  IMMIGRANTS' RIGHTS PROJECT
   125 Broad Street, 18th Floor
4  New York, NY  10004
   Telephone:  (212) 549-2618
5  Facsimile:  (212) 549-2654

6  JAYASHRI SRIKANTIAH (SBN 189566)
   STANFORD LAW SCHOOL
7  IMMIGRANTS' RIGHTS CLINIC
   Crown Quadrangle
8  559 Nathan Abbott Way
   Stanford, CA 94305-8610
9  Telephone:  (650) 724-2442
   Facsimile:  (650) 723-4426

10
   STEVEN A. ELLIS (SBN 171742)
11 WILLIAM TRAN (SBN 245104)
   BRIAN K. WASHINGTON (SBN 248960)
12 SIDLEY AUSTIN LLP
   555 West Fifth Street, Suite 4000
13 Los Angeles, California 90013-1010
   Telephone:  (213) 896-6000
14 Facsimile:  (213) 896-6600

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

# **TABLE OF CONTENTS**

**Page**

JOINT INTRODUCTORY STATEMENT AND OVERVIEW ......................................... 1

    A.    Nature of the Case and Procedural Background .................................... 1
    B.    The Parties' Discovery Dispute ............................................................ 2

I.    The Introductory Statements of the Parties............................................... 4

    A.    Petitioner's Introductory Statement ..................................................... 4
    B.    Respondents' Introductory Statement .................................................. 7

II.    Disputed Issues Relating to Respondents' Motion for a Protective Order ............ 10

    A.    Issue of Whether Fact Discovery is Relevant to the Issues of Statutory and Constitutional Interpretation ..................................................... 10
        1.    Text of Discovery .............................................................. 10
            a.    Text of General Objection Nos. 1, 2, and 4: ...................... 10
            b.    Text of Specific Requests and Responses........................... 12
        2.    Respondents' Contentions ................................................... 18
            a.    This class action presents purely legal questions of statutory construction and constitutional interpretation...................... 19
            b.    The Court should reject Petitioners' attempt to re-frame their claims as factually-intensive questions subject to extensive discovery. ....................................................................... 22
        3.    Petitioner's Contentions ...................................................... 25
            a.    Controlling due process case law requires the Court's consideration of facts available only through the discovery that Petitioner seeks. ............................................................... 26
            b.    Petitioner requires discovery into aggregate and class-wide facts because this case is a class action, and not an individual case.............................................................................. 29
            c.    The specific examples that Respondents provide actually illustrate why discovery is appropriate here. ........................ 31
    B.    Discovery Seeking Facts About Parole Determinations, Custody Reviews, Immigration Proceedings, and Court-Ordered Hearings in *Matter Of Joseph* and *Casas-Castrillon* ...................................................................... 33
        1.    Text of Discovery .............................................................. 33
            a.    Text of General Objections 5 through 8: ........................... 33
            b.    Text of Specific Requests and Responses........................... 34
        2.    Respondents Contend That The Hearings and Proceedings Identified in the Requests Above are Irrelevant to the Issues Before this Court.................. 39
        3.    Petitioner's Contentions ...................................................... 41
            a.    Petitioner is Entitled to Discovery About *Joseph* hearings. .............. 42
            b.    Petitioner is entitled to discovery regarding parole determinations................................................................. 43
            c.    Petitioner requires discovery about *Casas* hearings. ........................ 44

d.  Petitioner is entitled to discovery relating to custody reviews under 8 C.F.R. 241.4....................................................... 45

e.  Petitioner Requires Aggregate Information Related to Immigration Removal Proceedings........................................ 45

C.  Relevance of Other Requests ................................................................ 46
1.  Text of Discovery ......................................................................... 46
a.  Text of Specific Requests and Responses:............................ 46
2.  Respondents' Contentions ............................................................ 49
3.  Petitioner's Contentions ............................................................... 50

III.  Disputed Issues Relating to Petitioner's Motion to Compel Further Responses to Interrogatories and Document Requests ............................................................ 53

A.  Information Contained in "A-Files" .................................................... 53
1.  Text of Document Request No. 1 to DHS, Document Request No. 2 to DOJ, and Interrogatory No. 2 to DHS, and Government's Responses .......... 53
2.  Petitioner's Contentions ............................................................... 56
3.  Respondents' Contentions ............................................................ 64
a.  Relevance of Documents Requested ....................................... 64
(1)  Section 1236(a) Detainee Files ............................... 66
(2)  Section 1226(c) Detainee Files ............................... 67
(3)  Section 1226(a) Detainee Files ............................... 69
(4)  Section 1225(b) Detainee Files ............................... 70
b.  Undue Burden of Production .................................................. 70

B.  Statistical and Aggregate Information ................................................ 72
1.  Text of Interrogatory No. 2 to DOJ and Document Request No. 4 to DHS, and Government's Responses ................................................ 73
2.  Petitioner's Contentions ............................................................... 75
3.  Respondents' Contentions ............................................................ 82

C.  Written Policies and Practices ............................................................. 85
1.  Text of Interrogatory No. 7 to DHS and Document Request No. 3 to DOJ .................................................................................................. 85
2.  Petitioner's Contentions ............................................................... 87
3.  Respondents' Contentions ............................................................ 93

D.  Information Relating to the Costs ........................................................ 94
1.  Text of Interrogatory No. 13 to DHS and Document Request No. 13 to DOJ .................................................................................................. 94
2.  Petitioner's Contentions ............................................................... 95
3.  Respondents' Contentions .......................................................... 100

IV.  Disputed Issues as to Petitioner's Motion to Compel Further Responses to Requests for Admission from the Government ................................................................... 103

A.  Request For Admission No. 1 to DHS ............................................... 103
1.  Text of RFA and Government's Responses ................................. 103
2.  Petitioner's Contentions ............................................................. 104
3.  Respondents' Contentions .......................................................... 105

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**2**

B.    Request For Admission No. 2 to DHS ................................................................ 106
    1.    Text of RFA and Government's Response ................................................. 106
    2.    Petitioner's Contentions ........................................................................... 107
    3.    Respondents' Contentions ........................................................................ 108
C.    Request For Admission No. 3 to DHS ................................................................ 108
    1.    Text of RFA and Government's Response ................................................. 108
    2.    Petitioner's Contentions ........................................................................... 109
    3.    Respondents' Contentions ........................................................................ 110
D.    Request For Admission No. 4 to DHS ................................................................ 110
    1.    Text of RFA and Government's Response ................................................. 110
    2.    Petitioner's Contentions ........................................................................... 111
    3.    Respondents' Contentions ........................................................................ 112
E.    Request For Admission No. 5 to DHS ................................................................ 112
    1.    Text of RFA and Government's Response ................................................. 112
    2.    Petitioner's Contentions ........................................................................... 113
    3.    Respondents' Contentions ........................................................................ 114
F.    Request For Admission No. 6 to DHS ................................................................ 114
    1.    Text of RFA and Government's Response ................................................. 115
    2.    Petitioner's Contentions ........................................................................... 115
    3.    Respondents' Contentions ........................................................................ 116
G.    Request For Admission No. 7 to DHS ................................................................ 117
    1.    Text of RFA and Government's Response ................................................. 117
    2.    Petitioner's Contentions ........................................................................... 118
    3.    Respondents' Contentions ........................................................................ 120
H.    Request For Admission No. 8 to DHS ................................................................ 120
    1.    Text of RFA and Government's Response ................................................. 120
    2.    Petitioner's Contentions ........................................................................... 121
    3.    Respondents' Contentions ........................................................................ 122
I.    Request For Admission No. 9 to DHS ................................................................ 123
    1.    Text of RFA and Government's Response ................................................. 123
    2.    Petitioner's Contentions ........................................................................... 123
    3.    Respondents' Contentions ........................................................................ 124
J.    Request For Admission No. 10 to DHS .............................................................. 125
    1.    Text of RFA and Government's Response ................................................. 125
    2.    Petitioner's Contentions ........................................................................... 125
    3.    Respondents' Contentions ........................................................................ 126
K.    Request For Admission No. 11 to DHS .............................................................. 127
    1.    Text of RFA and Government's Response ................................................. 127
    2.    Petitioner's Contentions ........................................................................... 127
    3.    Respondents' Contentions ........................................................................ 128
L.    Request For Admission No. 12 to DHS .............................................................. 129
    1.    Text of RFA and Government's Response ................................................. 129
    2.    Petitioner's Contentions ........................................................................... 130
    3.    Respondents' Contentions ........................................................................ 131
M.    Request For Admission No. 13 to DHS .............................................................. 131
    1.    Text of RFA and Government's Response ................................................. 131
    2.    Petitioner's Contentions ........................................................................... 132

3.    Respondents' Contentions ................................................................ 133
N.    Request For Admission No. 14 to DHS ................................................. 133
1.    Text of RFA and Government's Response ...................................... 133
2.    Petitioner's Contentions .............................................................. 134
3.    Respondents' Contentions ........................................................... 135
O.    Request For Admission No. 15 to DHS ................................................. 135
1.    Text of RFA and Government's Response ...................................... 135
2.    Petitioner's Contentions .............................................................. 136
3.    Respondents' Contentions ........................................................... 137
P.    Request For Admission No. 18 to DHS ................................................. 137
1.    Text of RFA and Government's Response ...................................... 137
2.    Petitioner's Contentions .............................................................. 138
3.    Respondents' Contentions ........................................................... 139
Q.    Request For Admission No. 19 to DHS ................................................. 139
1.    Text of RFA and Government's Response ...................................... 139
2.    Petitioner's Contentions .............................................................. 140
3.    Respondents' Contentions ........................................................... 141
R.    Request For Admission No. 20 to DHS ................................................. 141
1.    Text of RFA and Government's Response ...................................... 141
2.    Petitioner's Contentions .............................................................. 141
3.    Respondents' Contentions ........................................................... 143
S.    Request For Admission No. 21 to DHS ................................................. 143
1.    Text of RFA and Government's Response ...................................... 143
2.    Petitioner's Contentions .............................................................. 143
3.    Respondents' Contentions ........................................................... 145
T.    Request For Admission No. 1 to DOJ ................................................... 145
1.    Text of RFA and Government's Response ...................................... 145
2.    Petitioner's Contentions .............................................................. 146
3.    Respondents' Contentions ........................................................... 147
U.    Request For Admission No. 2 to DOJ ................................................... 148
1.    Text of RFA and Government's Response ...................................... 148
2.    Petitioner's Contentions .............................................................. 148
3.    Respondents' Contentions ........................................................... 150
V.    Request For Admission No. 3 to DOJ ................................................... 150
1.    Text of RFA and Government's Response ...................................... 150
2.    Petitioner's Contentions .............................................................. 150
3.    Respondents' Contentions ........................................................... 151
W.    Request For Admission No. 4 to DOJ ................................................... 152
1.    Text of RFA and Government's Response ...................................... 152
2.    Petitioner's Contentions .............................................................. 152
3.    Respondents' Contentions ........................................................... 153
X.    Request For Admission No. 5 to DOJ ................................................... 154
1.    Text of RFA and Government's Response ...................................... 154
2.    Petitioner's Contentions .............................................................. 154
3.    Respondents' Contentions ........................................................... 156
Y.    Request For Admission No. 6 to DOJ ................................................... 156
1.    Text of RFA and Government's Response ...................................... 156

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS'
MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

4

|       |       | 2.  | Petitioner's Contentions | 157 |
|       |       | 3.  | Respondents' Contentions | 158 |
|       | Z.    |     | Request For Admission No. 7 to DOJ | 158 |
|       |       | 1.  | Text of RFA and Government's Response | 159 |
|       |       | 2.  | Petitioner's Contentions | 159 |
|       |       | 3.  | Respondents' Contentions | 160 |
|       | AA.   |     | Request For Admission No. 8 to DOJ | 160 |
|       |       | 1.  | Text of RFA and Government's Response | 160 |
|       |       | 2.  | Petitioner's Contentions | 161 |
|       |       | 3.  | Respondents' Contentions | 162 |
|       | BB.   |     | Request For Admission No. 9 to DOJ | 163 |
|       |       | 1.  | Text of RFA and Government's Response | 163 |
|       |       | 2.  | Petitioner's Contentions | 163 |
|       |       | 3.  | Respondents' Contentions | 164 |
|       | CC.   |     | Request For Admission No. 10 to DOJ | 165 |
|       |       | 1.  | Text of RFA and Government's Response | 165 |
|       |       | 2.  | Petitioner's Contentions | 165 |
|       |       | 3.  | Respondents' Contentions | 166 |
|       | DD.   |     | Request For Admission No. 11 to DOJ | 167 |
|       |       | 1.  | Text of RFA and Government's Response | 167 |
|       |       | 2.  | Petitioner's Contentions | 167 |
|       |       | 3.  | Respondents' Contentions | 168 |

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

5

## JOINT INTRODUCTORY STATEMENT AND OVERVIEW

Pursuant to Local Rule 37-2, Petitioner Alejandro Rodriguez ("Petitioner") and Timothy S. Robbins, *et al*. (collectively, "Respondents" or "the Government") submit this Joint Stipulation Regarding Respondents' Motion for Protective Order and Petitioner's Motion to Compel further Response to Petitioner's Discovery Requests ("Motion To Compel"). In accordance with Local Rule 37-1, counsel for the parties conferred at length on several occasions, both in person and on the telephone, and exchanged several letters regarding the issues in dispute set forth herein.

### A.    Nature of the Case and Procedural Background

This case concerns a class of non-citizens who allege that they (a) have been subjected to immigration detention in excess of six months by Immigration and Customs Enforcement ("ICE") while their removal proceedings remain pending and (b) have not been afforded a constitutionally adequate hearing before an immigration judge ("IJ") where the Government has had to justify continued detention. *See* Second Corrected Second Am. Comp ("SAC"). [Dkt. # 95-1, Sept. 10, 2010]. Petitioners "challenge their prolonged detention without adequate process on statutory and constitutional grounds, on behalf of themselves and a class of similarly-situated detainees." [Dkt # 95-1, SAC ¶ 1.] Petitioners claim that under the Immigration and Nationality Act, 8 U.S.C. §§ 1101, et seq., and the Due Process Clause of the Fifth Amendment, any alien who was or will be detained for six months or longer in the Central District of California is entitled to a constitutionally-adequate individualized hearing before an immigration judge to justify their continued detention under any of four detention provisions under the INA, specifically 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a).

This lawsuit was initially filed on May 16, 2007. [Dkt # 1.] On June 25, 2007, Petitioners filed a motion for class certification [Dkt # 10], which Respondents opposed. [Dkt # 20.] On December 17, 2007, Respondents filed a motion to dismiss on the ground that the action was moot, or otherwise barred as a class action. [Dkt #

26.]  The Court denied both the motion for class certification and the motion to dismiss on March 19, 2008.  [Dkt # 33.]  Petitioners appealed, and the Ninth Circuit concluded that this case could go forward on a class-wide basis.  *See Rodriguez*, 591 F.3d 1105, 1114  (9th Cir. 2010).

Following remand, this Court certified the class, and permitted limited discovery for the purpose of identifying sub-classes and sub-class representatives. The Court did not, however, consider or address the need for factual discovery on the merits of Petitioners' claims.  *See* Class Certification Order [Dkt # 77].[1]  The class certified by this Court consists of  "all non-citizens within the Central District of California who: (1) are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) have not been afforded a hearing to determine whether their detention is justified."  *Id.*

**B.    The Parties' Discovery Dispute**

On July 22, 2010, Petitioner Rodriguez propounded six sets of discovery: (1) requests for documents, (2) interrogatories, and (3) requests for admission to the Department of Homeland Security ("DHS"); and (4) requests for documents, (5) interrogatories, and (6) requests for admission to the Department of Justice ("DOJ"). From the perspective of the Petitioner, the discovery he seeks relates to four categories of information that are relevant to his due process claims: (1) information from class members' A-files (administrative files maintained by the Department of Homeland Security ("DHS")); (2) aggregate information about the outcomes of class members' removal and detention proceedings; (3) DHS and Department of Justice ("DOJ")

---

[1] Jurisdiction in this matter is based, *inter alia*, upon 28 U.S.C. § 2241 (habeas corpus) and § 1331 (federal question jurisdiction).  The District Court has stated that this Action is governed by the Federal Rules of Civil Procedure.  [Dkt. # 79.]

1    written policies and practices governing class members' detention; and (4) the costs of

2    providing constitutionally adequate detention hearings.

3         Respondents timely responded, objecting to each of the discovery requests,

4    stating general and specific objections.  From the perspective of the Respondents, their

5    objections are appropriately characterized as (1) raising a general objection to

6    discovery given the question of constitutional and statutory interpretation before this

7    Court;(2) raising other objections as to certain categories of documents on a general

8    basis; and (3) raising specific objections with regard to each discovery request on

9    various specific grounds.

10         By agreement of the parties, and pursuant to L.R. 37-1, on September 8, 2010,

11    counsel for the parties met to attempt to resolve their dispute.  Although the parties

12    could not agree to resolve all of the disputes between them through their present cross-

13    motions to the Court, the parties did agree that Respondents' objections, and

14    Petitioner's motion to compel, should address broader areas of dispute first, with the

15    understanding that after the Court has resolved those broader issues the parties will

16    reconvene to address any remaining disputes.  Accordingly, not every request that

17    Respondents object to, or every request on which Petitioner believes he is entitled to a

18    response, is identified herein.  Rather, in the interest of efficiency, the parties agreed

19    to submit certain representative requests and objections that present these broader

20    issues to the Court for resolution.  Each party selected its own representative samples.

21    Although neither party is waiving its rights with regard to the other interrogatories and

22    document requests, it is the expectation of the parties that a ruling on these sample

23    requests will provide sufficient guidance to the parties to avoid a second round of

24    motion practice.

25

26         This Joint Stipulation is organized in four parts.  In part I, each side sets forth

27    its introductory statement, pursuant to Local Rule 37-2.1.  In part II, the parties

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

3

address the issues relating to Respondents' motion for a protective order.  In part III, the parties address the issues relating to Petitioner's motion to compel further response to selected interrogatories and requests for production.  In part IV, the parties address the issues relating to Petitioner's motion to compel further responses to the pending requests for admission.

## I.    The Introductory Statements of the Parties

### A.    Petitioner's Introductory Statement

Petitioner's Motion to Compel stems from the Government's almost total refusal to respond to any discovery requests.  Aside from providing Petitioner with a roster of class members which the Court ordered it to produce, the Government has failed to produce even basic information relevant to the core of Petitioner's due process claims in this case.  The Government's basic contention is that Petitioner is not entitled to *any* discovery.  This position is in direct conflict with Federal Rule of Civil Procedure 26, which easily permits the discovery that Petitioner seeks.

In July, Petitioner served both DHS and DOJ with discovery requests.  In response, the Government served extensive objections but provided little if any information.  Despite extensive conferences between the parties undertaken in good faith (including a lengthy in-person meeting on September 8, 2010), the parties continue to disagree as to the necessity for, and scope of permissible, fact discovery in this action.

The discovery that Petitioner seeks from the Government is all well within the boundaries permitted by Rule 26, which permits discovery of "any nonprivileged matter, that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Rule 26(b) is "liberally interpreted" to allow "wide-ranging discovery of information." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635 (C.D. Cal. 2005); *accord Bible v. Rio Properties, Inc.*, 246 F.R.D. 614, 617 (C.D. Cal. 2007).  The opponent of discovery "has the burden to show discovery should not be allowed, and has the burden of

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**4**

clarifying, explaining, and supporting its objections." *Sullivan v. Prudential Ins. Co. of America*, 233 F.R.D. 573, 575 (C.D. Cal. 2005). "Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of this action." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) (citation omitted).

Petitioner seeks four general categories of information relevant to his due process claims: (a) information in the A-files (DHS administrative files) of current and former class members; (b) statistical and aggregate information maintained by DHS and DOJ about current and former class members' detention and removal cases; (c) information relating to written policies and practices of the DHS and DOJ; and (d) information relating to the costs to DHS and DOJ of detaining class members. This information is required for the Court to conduct the due process analysis.

"[D]ue process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Casas-Castrillon v. Dept. of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). To analyze Petitioner's claims under this standard, the Court must examine the facts and circumstances of class members' "physical restraint," the Government's justifications for such restraint (here, preventing flight and danger to the community), and the procedures (if any) that the Government currently provides to Petitioner. *Zadvydas*, 533 U.S. at 691-92 (examining, *inter alia*, the government's regulatory purpose for indefinite immigration detention, the government's interests in preventing flight and danger, and the nature of deprivation of liberty); *see also, e.g., United States v. Salerno*, 481 U.S. 739 (1987); *Demore v. Kim*, 538 U.S. 510 (2003) (assessing the government's interest in preventing flight by relying on aggregate data concerning individual cases).

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

5

The information Petitioner seeks in discovery is based on the legal standard enunciated by the Ninth Circuit and the Supreme Court.  First, to substantiate the nature of the deprivation of liberty here, Petitioner seeks information in the A-files of class members (which contain, for example, information about the length of detention, the provision of procedures to assess whether detention is warranted, and the nature of class members' claims to relief in immigration proceedings).  Second, to demonstrate the insufficiency of the government's processes and justifications for prolonged detention of class members, Petitioner seeks the Government's policies and practices governing such detention  – Petitioner cannot challenge the inadequacy of the existing procedures without knowing what those procedures are and how the Government implements them.  Petitioner also seeks information about prior custody determinations (if any), which potentially contain information regarding danger and flight risk as to individual class members.  In some cases, the Government has provided a file custody review or another type of detention review that Petitioner contends is constitutionally inadequate.  *See, e.g.*, Second Corrected Second Am. Compl. at ¶ 42 [Dkt. # 95-1, Sept. 10, 2010].  Third, to demonstrate the insufficiency of the existing detention procedures, Petitioner seeks aggregate database information (from databases the Government already maintains) as to the outcomes of the paper reviews, bond hearings, and other custody determinations that the Government provides to some class members.

To the extent the Court determines analysis under *Mathews v. Eldridge,* 424 U.S. 319 (1976), is required,[2] Petitioner also seeks discovery regarding the cost of the constitutionally adequate custody hearings Petitioner contends are necessary here, as

---

[2] Petitioner may ultimately contend that this case can be resolved under *Casas-Castrillon*, *Zadvydas*, and other detention precedent, and that resort to the *Mathews* test may not be required.  However, because information required under the *Mathews* test "can have [a] possible bearing" on the outcome here, *Oakes*, 179 F.R.D. at 283, Petitioner properly requests this information.

1    well as the accuracy of the government's existing custody procedures.  Briefly stated,

2    the elements of the *Mathews* test are: (1) the importance of the individual's private

3    interest; (2) the additional risk of erroneous deprivation caused by the absence of the

4    safeguards that Petitioner seeks; and (3) the costs and interests of the government.  *Id*.

5    As explained above, the discovery Petitioner seeks is relevant to the liberty (private)

6    interest at stake.  The two additional elements required by the *Mathews* test—risk of

7    erroneous deprivation under the existing procedures and cost of the additional

8    procedures Petitioner seeks—necessitate Petitioner's discovery of aggregate data and

9    A-file information about the accuracy of the Government's existing procedures and

10   the cost of current and additional procedures.

### B.    Respondents' Introductory Statement

12   This is a class action case involving, at its core, a legal question of statutory and

13   constitutional interpretation.  Petitioners argue that aliens detained for six months or

14   longer under one of four general immigration detention statutes are entitled by the

15   Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et. seq.*, and the Due

16   Process Clause to a bond hearing before an immigration judge.  Petitioners also argue

17   that due process requires that the immigration bond hearing contain certain procedural

18   safeguards, such as a high standard of proof, burden on the Government, and other

19   conditions.

20   As detailed below, the issues before this Court are ones that Petitioners

21   correctly characterized to the Ninth Circuit as "pure questions of law" that have

22   "nothing to do with the particular facts of any detainee's case."  The Ninth Circuit

23   agreed, certifying the class on the basis that the case presented a common question of

24   law that did not turn on the individual circumstances of any individual class member.

25   *See Rodriguez v. Hayes*, 591 F.3d 1105, 1114 (9th Cir. 2010).

26   Now that the Court has certified the class, Petitioners have propounded six sets

27   of discovery that are extraordinarily expansive in scope, and seek virtually every fact

28

regarding each class member's removal proceedings and detention, including each class member's A-file and their individual removal proceeding records.  Petitioners have requested information concerning the circumstances surrounding the outcomes of each class member's removal proceedings, the length of time between each stage of each class member's removal proceedings, and the history of each class member's removal proceedings on judicial review.  Petitioners want to know what educational and vocational opportunities are provided to detainees, what visitation policies they enjoy, and what access to legal materials they have.  Petitioners demand to see contracts between the Government and detention facility authorities.  Petitioners want to know how many bed spaces class members use at detention facilities, seek the amount it costs the Government to house detainees, care for detainees, and transport detainees.  These are just a few of the areas Petitioners have targeted for discovery.

Respondents have objected to these document requests both generally and specifically.  Respondents seek a protective order that the discovery not be had.  Federal Rule of Civil Procedure 26(c) authorizes the issuance of a protective order upon a showing of good cause. Fed. R. Civ. P. 26(c).  *Blankenship v. Hearst*, 519 F.2d 418, 429 (9th Cir. 1975).  Good cause exists for denying the discovery in this case, for three reasons.

First, the legal issues involved in this action may be determined without the need for the wide-ranging discovery sought into the individual facts of each of the class members.  Petitioners claim that the Court cannot decide the issue before it unless it compares, on a detailed factual level, the remedy of a bond hearing with the potential error that could result from some other form of relief from detention.  But whether the Constitution requires the Government to provide Petitioners and the class members with a bond hearing before an immigration judge may be determined by examining the purpose of the statutory detention schemes at issue, the interests of the class members as determined, in part, by their status, and the statutory and regulatory

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**8**

1  remedies provided to aliens under each scheme.  This approach is not new to this

2  Court, to the Ninth Circuit, or to the Supreme Court.  Each has addressed the issue of

3  prolonged immigration detention, but in no case has a court ever done so in the

4  manner Petitioners now seek, or applied its analysis after intensive factual discovery.

5  The issue before this Court is a pure question of law, and it should be addressed as

6  such in the same way in which all courts have previously addressed these issues.

7          Second, even if the Court were somehow to conclude that Petitioners are

8  entitled to some discovery to allow a comparison of a bond hearing to other

9  procedures set forth in the INA and in the regulations, Petitioners' discovery should

10  still be denied.  Broad categories of its discovery are wholly irrelevant to this action

11  no matter what due process framework this Court applies.  As just one example,

12  Petitioners seek information regarding the implementation and application of a

13  hearing aliens are entitled to under *Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL

14  339053 (BIA 1999).  However, those hearings only inquire as to the threshold

15  determination of whether a particular statute (specifically, 8 U.S.C. § 1226(c)) applies

16  to govern detention, and does not provide an avenue of relief from detention.  Like

17  other areas of Petitioners' discovery, *Joseph* hearings have nothing to do with the

18  constitutional and statutory issues Petitioners raise concerning prolonged detention,

19  and thus nothing to do with this case.  As another example, Petitioners seek

20  information regarding the implementation of hearings pursuant to *Casas-Castrillon v.*

21  *Dep't of Homeland Sec.*, 535 F.3d 942, 948 (9th Cir. 2008).  But the Ninth Circuit has

22  already spoken to the constitutional and statutory requirement of hearings in certain

23  cases in *Casas-Castrillon*, and whether bond hearings are required in those types of

24  cases has already been answered and is therefore is irrelevant to the undecided legal

25  question at issue here.  These are just two examples of irrelevant categories of

26  requests discussed below, and which Respondents objected to on a general basis.

27

28

---

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS'
MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**
**9**

Finally, Respondents seek a protective order with respect to a third category of "standalone" requests that are subject to specific objections as to their relevance in this action. For example, requests for information relating to the discovery of government contracts with detention facilities are irrelevant. Requests for policies and procedures concerning visitation, access to legal materials, and access to educational or vocational opportunities are other examples of discovery requests that are irrelevant to this action. Other objectionable requests are detailed below.

Petitioners' discovery requests constitute significant overreach as to facts which are not, at their core, relevant to this class action lawsuit concerning a legal issue of statutory and constitutional interpretation. The Court should enter a protective order to disallow the requested discovery.

## II.    Disputed Issues Relating to Respondents' Motion for a Protective Order

### A.    Issue of Whether Fact Discovery is Relevant to the Issues of Statutory and Constitutional Interpretation

#### 1.    Text of Discovery

##### a.    Text of General Objection Nos. 1, 2, and 4:

General Objection No. 1. Respondent objects to Petitioner's request for production of documents to the extent that Petitioner seeks the discovery of information which is beyond the scope of this lawsuit, and therefore, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.

Respondent objects to the document requests to the extent Petitioner seeks information that is not relevant to the determination of the claims in this action. The claims before this Court involve questions of law that are common to all class members, the resolution of which will not turn on the particular facts and circumstances of any individual class member. As the U.S. Court of Appeals for the Ninth Circuit recognized, the determination of whether the certified class in this case is entitled, by the Immigration and Nationality Act ("INA") and the Constitution, to a constitutionally-adequate bond hearing before an immigration judge (First and Second Causes of Action) will rest largely on the interpretation of the statute authorizing detention, and "[t]he particular characteristics of the Petitioner or any individual detainee will not impact the resolution

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

10

of this general statutory question . . . ."  Rodriguez v. Hayes, 591 F.3d 1105, 1124 (9th Cir. 2009).  Petitioner's motion for class certification itself asserts that "the core issue in this case – whether the government has the power under the general immigration detention statutes and the Constitution to hold non-citizens for prolonged and indefinite periods without a hearing – is a pure question of law and has nothing to do with the particular facts of any detainee's case."  Memorandum of Points and Authorities in Support of Class Certification at 4.

Similarly, the Amended Petition claims that an individualized bond hearing before an immigration judge will only be constitutionally adequate if (1) at the hearing the Government is required to bear the burden of showing, by clear and convincing evidence, that the alien is a sufficient danger or flight risk to justify continued detention under any statute authorizing detention that serves, in part, to defines the class (see Amended Petition ¶ 57), and (2) the alien is provided, at Government expense, with counsel at any hearing "where prolonged detention is at stake."  (See Amended Petition ¶ 57).  "Prolonged detention" is defined as detention for six months or more.  These are also legal claims that do not turn on any detainee's particular circumstances.  Therefore, to the extent a document request seeks facts regarding detainees' particular, individualized circumstances, the request is irrelevant.

General Objection No. 2.  Respondent objects that the requests are overly broad because they seek information with respect to aliens outside the class, which is defined as "all non-citizens within the Central District of California who: (1) are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) have not been afforded a hearing to determine whether their detention is justified."

General Objection No. 4.  Respondent objects that the requests for production are vague, overly broad and unduly burdensome to the extent any request seeks information about a "PROLONGED DETAINEE", as that term is defined by Petitioner.  Petitioner defines a "PROLONGED DETAINEE" not just as any member of the certified class, but as any person detained for longer than six months "pursuant to 8 U.S.C. 1226, 8 U.S.C. 1225, or 8 U.S.C. 1231, or any subsection of those statutes, pending completion of removal proceedings, including judicial review, if any of their detention beyond six months occurred in the Central District of California on or after October 1, 2006."  Any request employing this

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

11

term is overly broad.  For example, it includes any alien that  was detained in this district at some  point since October 1, 2006, for any length of time and for any reason. This would include an alien transferred to the Central District for one day for a consular interview; it would include an alien who was detained in the Central District but has since been released, removed, naturalized, etc; it would include an alien who has already had a bond hearing; it would include any alien who may have been detained for a brief period of time under a pre-final order statute of detention, but was  detained under a post-final order statute of detention for a period of time less than six months (and therefore constitutionally detained under Zadvydas v. Davis, 533 U.S. 678 (2001)), but detained "beyond six months" in the aggregate.  This list of just a few examples demonstrates how this term (and thus any request employing it) is vague, overly broad, unduly burdensome and inexhaustive.

### b.    Text of Specific Requests and Responses

**REQUEST FOR PRODUCTION NO. 1 [to DHS]:**

The "A" file of every Petitioner.

**OBJECTION AND RESPONSE:**

    (1)    See General Objections 1, 9 - 10 above.

    (2)    Respondent further objects that the request is vague.  It is unclear whether Petitioner seeks the A-file of every class member, or every class representative. It is also unclear who the class members are considering the class definition states "are or were" detained in the Central District of California but does not specify a date as to when detention must begin.  It is unclear whether Petitioner is suggesting that the class encompasses individuals who have spent six months in detention, only one day which was in the Central District of California, on or after October 1, 2006, and regardless of whether the individual has since been released, removed, naturalized, etc. To the extent the request seeks the A-files of those individuals, the request is overly broad, unduly burdensome, and seeks irrelevant information.  To the extent the request seeks the A-file of every class representative (currently Alejandro Rodriguez), the request seeks irrelevant information.

**REQUEST FOR PRODUCTION NO. 1 [to DOJ]:**

The immigration court file of every Petitioner.

**OBJECTION AND RESPONSE:**

    (1)    See General Objections 1, 9 - 10 above.

       (2)     Respondent further objects that the request is vague to the extent the term "immigration court file" is undefined.

       (3)     Respondent further objects that the request is vague. It is unclear whether Petitioner seeks the immigration court file of every class member, or every class representative. It is also unclear who the class members are considering the class definition states "are or were" detained in the Central District of California but does not specify a date as to when detention must begin. It is unclear whether Petitioner is suggesting that the class encompasses individuals who have spent six months in detention, only one day which was in the Central District of California, on or after October 1, 2006, and regardless of whether the individual has since been released, removed, naturalized, etc. To the extent the request seeks the immigration court files of those individuals, the request is overly broad, unduly burdensome, and seeks irrelevant information. To the extent the request seeks the immigration court files of every class representative (currently Alejandro Rodriguez), the request seeks irrelevant information.

## REQUEST FOR PRODUCTION NO. 16 [to DHS]:

       All DOCUMENTS that contain, refer to, or reflect data or statistics RELATING TO the number of PROLONGED DETAINEES who have been removed during any period since October 1, 2006; the number of PROLONGED DETAINEES whose removal proceedings were terminated during any period since October 1, 2006; and the number of PROLONGED DETAINEES who were granted relief in their removal proceedings during any period since October 1, 2006.

## OBJECTION AND RESPONSE:

       (1)     See General Objections 1, 3, 4, and 9.

       (2)     Respondent further objects that the request is vague, overly broad, and unduly burdensome. The request is not clear as to what is meant by "data," nor does it specify with any clarity what is meant by "statistics" (which is presumably a subset of "data"). The indefiniteness of these terms means that the request seeks any kind of information, as long as it "refer[s] to" "data" or "reflects" "data" having to do with the removal, termination of removal proceedings, or grant of relief with respect to any PROLONGED DETAINEE.

       (3)     Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome. The request seeks information with respect to certain proceedings before an immigration court (removal, grant of relief, or termination of removal proceedings) with respect to any

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

13

PROLONGED DETAINEE.  Even if the term "PROLONGED DETAINEE" was not overly broad, the information requested is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer is entitled to an automatic bond hearing before an immigration judge.  Because Petitioner contends that the Immigration and Nationality Act and the Constitution require a bond hearing before an immigration judge once an alien has been detained for six months under a general detention statute, information with respect to immigration proceedings is irrelevant to Petitioner's claim.  Any relevance such information may have is outweighed by the overly burdensome nature of producing documents in response to such an overly broad request.

(4)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the request to an appropriate time frame.

## REQUEST FOR PRODUCTION NO. 18 [to DHS]:

All DOCUMENTS RELATING TO the mean and median lengths of time it took (or takes) to complete the immigration court proceedings of PERSONS detained by Respondent in the Central District of California since October 1, 2006, including DOCUMENTS RELATING TO the time between the date that Respondent detains a given PERSON who is then placed in removal proceedings and the date of the PERSON's first master calendar hearing; the time between the date that Respondent files a Notice to Appear in a given PERSON's removal proceeding and the date of the PERSON's first master calendar hearing; the time between master calendar hearings; the time between initial master calendar hearings and merits hearings; the time between hearings (if additional hearings need to be scheduled); the time between final merits hearing and issuance of a decision by an IJ; and the time between the filing of a notice of appeal in a given PERSON's case and resolution of the appeal by the Board of Immigration Appeals.

## OBJECTION AND RESPONSE:

(1)    See General Objections 1 - 3, and 9 - 10 above.

(2)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome to the extent Petitioner seeks information with respect to the length of removal proceedings of any PERSON (regardless of whether the PERSON is a member of the class).

(3)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome to the extent Petitioner seeks information concerning the length of completed removal proceedings.

The requested information is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer is entitled to an automatic bond hearing before an immigration judge. Accordingly, to the extent the request seeks such information at this time, it is overly broad and unduly burdensome.

**REQUEST FOR PRODUCTION NO. 20 [to DOJ]:**

All DOCUMENTS RELATING TO the cost to Respondent or the Department of Justice of detaining PERSONS in the Central District of California from fiscal year 2006 through fiscal year 2009, including but not limited to, the costs of:

(a) conducting PAROLE DETERMINATIONS, BOND HEARINGS, CUSTODY REVIEWS, and CASAS HEARINGS (including but not limited to the costs of providing an immigration judge, an adversarial hearing, transcript, interpreters, written notice, and transportation of detainees from a detention facilities to the situs of the review or hearing), developing recommendations, drafting notices, decisions, and other DOCUMENTS in connection with such reviews or hearings, and rendering custody or release determinations.

(b) detaining PROLONGED DETAINEES, including housing, food, and medical/dental care.

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1 - 7, and 9 - 10 above.

(2)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome. To the extent the request asks for the specified documents with respect to the cost of detention or conducting certain immigration proceedings with respect to PROLONGED DETAINEES, the request is irrelevant to this action.

**REQUEST FOR PRODUCTION NO. 21 [to DOJ]:**

All DOCUMENTS that contain, refer to, or reflect data or statistics RELATING TO PROLONGED DETAINEES, including, but not limited to, DOCUMENTS RELATING TO:

(a) The number of PROLONGED DETAINEES.

(b) The number of PROLONGED DETAINEES with an administratively final order of removal.

(c) The number of PROLONGED DETAINEES with an administratively final order of removal that was judicially stayed.

(d) The number of PROLONGED DETAINEES whose detention became prolonged (i.e., over six months) while their removal proceedings were pending before an immigration judge for the first time.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**15**

(e) The number of PROLONGED DETAINEES whose detention became or was prolonged (i.e., over six months) during the pendency of their removal proceedings before the Board of Immigration Appeals for the first time.

(f) The number of PROLONGED DETAINEES whose detention became or was prolonged (i.e., over six months) during the pendency of judicial review of their removal orders before the courts of appeals.

(g) The number of PROLONGED DETAINEES whose detention became or was prolonged (i.e., over six months) during the pendency of their removal proceedings before an Immigration Judge or the Board of Immigration Appeals on remand.

**OBJECTION AND RESPONSE:**

(1)     See General Objections 1, 3, 4, and 9 - 10 above.

(2)     Respondent further objects that the request is vague, overly broad, and unduly burdensome.  The request is not clear as to what is meant by "data," nor does it specify with any clarity what is meant by "statistics" (which is presumably a subset of "data").  The indefiniteness of these terms means that the request seeks any kind of information, as long as it "refer[s] to" "data" or "reflects" "data" having to do with the identified categories (a) through (g), or grant of relief with respect to any PROLONGED DETAINEE.

(3)     Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  The request seeks information with respect to the length of detention as to each PROLONGED DETAINEE at specified times during removal and related proceedings.  Even if the term "PROLONGED DETAINEE" was not overly broad, the information requested is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer is entitled to an automatic bond hearing before an immigration judge.  Because Petitioner contends that the Immigration and Nationality Act and the Constitution require a bond hearing before an immigration judge once an alien has been detained for six months under a general detention statute, information with respect to the length of detention at successive stages – beyond six months of detention, or even before an alien has been detained for six months – is irrelevant to Petitioner's claim.  Any relevance such information may have is outweighed by the overly burdensome nature of producing documents in response to such an overly broad request.

(4)     Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the request to an appropriate time frame.

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

16

**REQUEST FOR PRODUCTION NO. 22 [to DHS]:**

All DOCUMENTS that contain, refer to, or reflect data or statistics RELATING TO PROLONGED DETAINEES who were released from custody in the Central District of California from October 1, 2006 onward, including but not limited to data or statistics RELATING TO:

(a) The number of PROLONGED DETAINEES released per fiscal year.

(b) The number of PROLONGED DETAINEES who were released for the purpose of deportation.

(c) The number of PROLONGED DETAINEES who were released after prevailing in their immigration cases, whether because proceedings were terminated or relief was granted.

(d) The length of each PROLONGED DETAINEE'S detention.

(e) dates, nature, and outcome of PROCEEDINGS for PROLONGED DETAINEES.

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1, 4, 8, and 9 - 10 above.

(2)    Respondent further objects that the request is vague, overly broad, and unduly burdensome.  The request is not clear as to what is meant by "data," nor does it specify with any clarity what is meant by "statistics" (which is presumably a subset of "data").  The request also is vague because it does not define, or distinguish between, the "nature" or "outcome" of a PROCEEDING.  The indefiniteness of these terms means that the request seeks any kind of information, as long as it "refer[s] to" "data" or "reflects" "data" having to do with a PROCEEDING (a term Respondent has objected to).

(3)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  The request seeks information with respect to proceedings before an immigration court unrelated to any individualized bond hearing.  That information is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer is entitled to an automatic bond hearing before an immigration judge.  Because Petitioner contends that the Immigration and Nationality Act and the Constitution require a bond hearing before an immigration judge once an alien has been detained for six months under a general detention statute, information with respect to other immigration proceedings is irrelevant to Petitioner's claim.  Any relevance such information may have is outweighed by the overly burdensome nature of producing documents in response to such an overly broad request.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**17**

(4)     Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the request to an appropriate time frame.

**INTERROGATORY NO. 5 [to DOJ]:**

State all facts RELATING TO the resolution of the removal proceedings of every PROLONGED DETAINEE whose removal proceeding is complete, including, for each detainee (identified by name and "A" number), the outcome of his or her removal proceeding (for example, whether the detainee was deported, whether the removal proceedings were terminated, or whether the detainee was granted relief in his or her removal proceedings); whether proceedings ended before an immigration judge, the Board of Immigration Appeals, or an Article III federal court; and the date(s) of PROCEEDINGS before immigration judge(s), the Board of Immigration Appeals, and the Circuit Courts of Appeals.

**OBJECTION AND RESPONSE:**

(1)     See General Objections 1, 3, 4, 8, and 9 - 11 above. Respondent notes that this interrogatory has at least 3 subparts.

(2)     Respondent further objects that the interrogatory is irrelevant, overly broad, and unduly burdensome.  The interrogatory seeks information with respect to proceedings before an immigration court or an Article III court related to any immigration proceeding of any type.  That information is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer is entitled to an automatic bond hearing before an immigration judge.  Because Petitioner contends that the Immigration and Nationality Act and the Constitution require a bond hearing before an immigration judge once an alien has been detained for six months under a general detention statute, the requested information is irrelevant to Petitioner's claim.  By the very definition of the class, the only immigration proceeding that matters is an individualized hearing before an immigration judge to determine whether continued detention is justified.  Any relevance such information may have is outweighed by the overly burdensome nature of producing information in response to such an overly broad interrogatory.

(4)     Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the request to an appropriate time frame.

2.     Respondents' Contentions

### a.    This class action presents purely legal questions of statutory construction and constitutional interpretation.

This case presents a pure question of law as to whether aliens detained for six months or longer under one of the four general immigration detention statutes – 8 U.S.C. § 1225(b), 1226(a), 1226(c), and 1231(a) – are entitled to a bond hearing before an immigration judge.  In deciding that this case could go forward as a class-action, the Ninth Circuit first surveyed the case law in the area of constitutional and statutory challenges to indefinite or prolonged detention.  The Ninth Circuit's overview of the legal landscape is important, because it shows that in each case before it the Court was able to analyze the statutory and constitutional issues as a question of law, and without resort to the kind of extensive factual discovery Petitioners seek in this case.  *See Rodriguez v. Hayes*, 591 F.3d at 1113-16.  The Court explained that in each decision the Supreme Court and the Ninth Circuit had decided, the courts had "undertaken interpretation of the immigration detention statutes against the backdrop of the serious constitutional issues raised by indefinite or prolonged detention."  *Id.* at 1114.  Accordingly, the Ninth Circuit correctly surveyed the relevant prior decisions taking up the same question in different immigration detention contexts and concluded that the issues before it were legal issues, not factual ones:  "[T]he determination of whether Petitioner is entitled to a bond hearing will rest largely on interpretation of the statute authorizing his detention.  The particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question . . . ."  *Id.* at 1124.

Indeed, Petitioners argued on appeal that this action could proceed on a class-wide basis because the case involved "a pure question of law that has nothing to do with the particular facts of any detainee's case."  *See* Petitioner's Opening Brief, No. 08-56156 [Dkt. # 6], at 44; *see also* Petitioner's Motion for Class Certification [Dkt. # 10], at 84 (stating the "core issue in this case . . . is a pure question of law that has

nothing to do with the particular facts of any detainee's case.").  At oral argument on the issue of sub-class discovery, counsel for Petitioners was clear in describing the sort of legal issue presented by this case, and in previous similar cases:

> MR. ARULANANTHAM: [A]ll of the cases . . . [E]very case, your Honor, has done constitutional avoidance.  None of the cases have addressed the constitutional question first. You know, and if the Court were to rule either way, I think, and resolve the constitutional question first, you know, if you ruled in our favor, of course, we would do our best to defend it on appeal.  But the reality is it's a, you know, cardinal principle of statutory construction; you're supposed to address the statutory basis for relief if you can.  And we have two different Ninth Circuit cases already which have ruled that you have a right to a hearing on a statutory claim, and they have avoided the constitutional decision.

(See Transcript of Proceedings (Dkt # 71), 39-40.)

Now that the class action has been certified, Petitioners have propounded six sets of sweeping document requests, interrogatories, and requests for admissions that seek, among other things, facts related to each individual class member, including – but by no means limited to – the following:  the complete A-file of each and every class member, which exceeds 350 detainees; the complete immigration court record of each and every class member; documents and facts related to any parole determination pursuant to 8 U.S.C. § 1182(d)(5), any hearing pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999), any hearing pursuant to *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 948 (9th Cir. 2008), or any custody review pursuant to 8 C.F.R. § 241.4 for each and every class member (including the production of any policy or procedure for each of those types of proceedings); facts and documents related to each and every class member's likelihood of success in their individual removal proceedings, including the result of any judicial review of those proceedings in district court or before a court of appeals; the results of the removal

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

20

proceedings for each and every class member; and documents and facts relating to the basis for any previous release for each and every class member.  The requests for information pertaining to the circumstances of each individual detainee's circumstances are comprehensive.

However, in addition to discovery requests for information concerning the individual facts and circumstances of each class member (which Petitioners represented this case does not turn on), Petitioners also seek wide-ranging discovery on matters that go far beyond what any court in the Ninth Circuit or elsewhere has ever considered in determining the "pure question of law" (as Petitioners described it) that lies at the core of this action.  For example, Petitioners seek documents and information relating to whether any detainee (class member or otherwise) is receiving proper access to legal materials while in detention.  Petitioners have requested policies and procedures related to any class members' visitation rights with counsel or families. Petitioners demand to know what policies exist relating to educational and vocational opportunities for class members in detention.  Several of the document requests and interrogatories demand documents and facts showing the dollar costs to the Government of "providing an immigration judge, an adversarial hearing, transcript, interpreters, written notice, and transportation of detainees from their respective detention facilities to the situs of the bond hearing."  Petitioners want copies of any contractual agreements between Respondents and any city, state, or county authority concerning the housing of any class member.  Petitioners demand to know how many bed spaces Respondents used to detain class members between 2006 and 2009.  The categories of documents and information sought is extensive, and far too numerous to be listed here.  Responding to each of these requests, particularly with regard to the document requests and the interrogatories, is burdensome, as Respondents will address in their supplemental memorandum.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**21**

**b.    The Court should reject Petitioners' attempt to re-frame their claims as factually-intensive questions subject to extensive discovery.**

In pursuing the discovery in dispute Petitioners now argue that while the issue of whether due process entitles the class members to bond hearings before an immigration judge is, in fact, a pure question of law, it is one that can only be answered by engaging in extensive fact discovery of individual facts of the class members and others outside the class.  According to Petitioners, the process now extended to detained aliens under the different detention provisions are not adequate under the Due Process Clause, and their adequacy can only be compared to the adequacy of an immigration hearing by engaging in extensive fact discovery as to broad aspects of the process now offered.  In characterizing the current dispute, Petitioners assert (in their letter concerning their cross-motion to compel) that there is "confusion concerning the nature of the pure question of law in this case," and contend that "[t]he question of whether the Due Process Clause requires the type of bond hearings that the class members seek is indeed a pure question of law, but courts have often resolved questions like it by relying on facts about the affected people."

However, a review of the decisions by the Supreme Court and before the Ninth Circuit shows that there is no confusion.  No court has ever engaged in the kind of fact-sifting Petitioners seek to undertake here in any case where the length of detention was challenged by an alien under any of the statutes at issue in this case.  *See Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008) (legal issue of statutory construction in the context of prolonged detention under section 1226(a)); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir.2008) (same);  *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (finding alien detained for nearly three years could not be mandatorily detained under section 1226(c) and ordering bond hearing, impliedly finding alien was detained under section 1226(a)); *Zadvydas v.*

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**22**

1    *Davis*, 533 U.S. 678 (2001) (engaging in statutory construction and constitutional

2    analysis of alien initially detained under post-final order detention provision of section

3    1231(a)(6)).

4           Petitioners attempt to give this Court the misguided impression that the kind of

5    heavily fact-based inquiry it wants to undertake is done frequently in cases like this

6    one. That is incorrect. Petitioners cite primarily to *Demore v. Kim*, 538 U.S. 510

7    (2003), in support of their argument, but the Supreme Court in that case looked to the

8    reasons cited by Congress for imposing mandatory detention under 8 U.S.C. §

9    1226(c), and not to any outside facts generated as a result of discovery at the district

10   court level. *See Demore*, 538 U.S. at 516-20 (citing information contained in Senate

11   reports and other legislative history in discussing statutory history and purpose).

12   Indeed, only one fact was introduced that was outside the congressional record – the

13   average length of removal proceedings – and it was introduced by the Government for

14   the first time in its brief to the Supreme Court. *See* Brief of Appellant in *Demore v.*

15   *Kim*, published at 2002 WL 31016560.  Thus, the Court's analysis of the

16   constitutional question presented cannot credibly be described as following the wide-

17   ranging fact-dependent approach Petitioners claim is necessary here.

18          Notably, in a recent case before this Court involving the same issues of due

19   process and adequacy of administrative safeguards in the context of prolonged

20   detention of aliens, counsel for Petitioners did not seek discovery of any kind, let

21   alone the type of discovery sought here. *See Diouf v. Mukasey*, No. 06-07452-TJH

22   (C.D. Cal. Sept. 9, 2009).  In *Diouf v. Mukasey*, 542 F.3d 1222 (9th Cir.2008), the

23   Ninth Circuit was presented with the question of whether an alien detained for longer

24   than six months was entitled to a bond hearing before an immigration judge under 8

25   U.S.C. § 1231(a)(6).  The Ninth Circuit held that the petitioner's detention beyond the

26   six month period was authorized under section 1231(a)(6), and then turned to the issue

27   of what bond hearing, if any, the petitioner was entitled to for determining the

28

necessity of his detention.  *Id.* at 1233.  The Ninth Circuit concluded that while release on bond was clearly authorized by section 1231(a)(6) and its implementing regulations, it was unclear whether a bond hearing was required under the statute for petitioner and what burden if any should be placed on the Government at such a hearing.  *Id.* at 1234-35 (remanding case to this Court).  The Ninth Circuit remanded those issues to this Court for determination, but petitioner – who was represented by counsel for Petitioners here – did not seek discovery before the district court.

The petitioner in *Diouf* did not claim, as it is now claimed, that he was entitled to obtain information about the challenged custody review procedures, including evidence concerning their application in particular cases.  Instead, this Court properly analyzed the due process question by examining the status of the alien at issue, the purpose of section 1236(a) and the government interest involved in the removal of aliens ordered removed, and the constitutional adequacy of the custody review procedures as set forth in the regulations.  *Diouf v. Mukasey*, No. 06-07452-TJH (C.D. Cal. Sept. 9, 2009) [Dkt # 74].  And he did so without claiming the need for discovery that Petitioners now cite as critical to the issues before the Court.

This case presents the same kinds of legal issues.  For example, with respect to section 1225(b), this Court will have to determine, in the first instance, whether arriving aliens – who have never effected entry in the United States and whose detention is governed by section 1225(b) – have any liberty interest with regard to detention while the Government seeks to remove them.  This question is older than the current immigration laws and is not a new issue to the Ninth Circuit or any other court.  And yet the determination of whether arriving aliens are entitled to a bond hearing will not turn in any respect on factual discovery Petitioners may want to undertake.  Additionally, with respect to sections 1226(a) and 1226(c), the Ninth Circuit has developed significant case law examining the issues of whether aliens are entitled to bond hearings, *see e.g., Casas-Castrillon*; *Prieto-Romero*; *Tijani v. Willis*,

*supra.*  Those cases were developed without factual discovery, but rather turned on statutory and constitutional interpretation of the detention schemes involved, and the authority and the interest of the Government in detaining aliens.  A third example: It is unclear why Petitioners need any factual discovery with regard to aliens detained under section 1226(c), because, as Petitioners know, no alien detained under section 1226(c) can be released at the discretion of ICE.  Thus, issues of whether such non-discretionary detention authority comports with due process when an alien has been detained under section 1226(c) for six months are entirely legal questions.  For additional discussion of why Petitioners' requests are irrelevant, see section III.A.3 (Respondents' Contentions concerning the request for the individual A-files of the class members).

These are all questions of law involving statutory and constitutional interpretation.  Petitioners' six sets of discovery requests – which are far greater in number than the representational requests set forth above completely reflect – amount to a fishing expedition for information about each class member that is not necessary to determining the issues in this action.  The Court should enter a protective order disallowing the discovery.

3.    Petitioner's Contentions

The Respondents principally object to the Petitioner's discovery requests on the ground that the case presents a question of law on which no factual discovery is necessary.  However, this objection is fundamentally misguided.  First, the Respondents' position is flatly contradicted by the most recent applicable Supreme Court case on the subject, *see Demore v. Kim*, 538 U.S. 510, 529 (2003) (relying on aggregate facts to resolve facial Due Process challenge to detention statute), as well as other Supreme Court and Ninth Circuit cases considering similar challenges.  Contrary to the government's claim, controlling caselaw governing due process challenges to detention schemes makes clear that such disputes must be resolved by reference to

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

25

aggregate facts.  Thus, there is no contradiction between Petitioner's assertion that the constitutional issue in this case involves a question of law and Petitioner's requests for discovery concerning that constitutional claim.

Moreover, at this stage in the case, the Court does not need to decide exactly what evidence will be required for the Court to conduct the proper due process analysis.  Rather, the Court only needs to determine whether the discovery Petitioner seeks is "relevant to any party's claims or defenses," or "is reasonably calculated to lead to the discovery of admissible evidence." FRCP 26(b)(1). This Court has explained that "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of this action." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998)) (citation omitted).  For the reasons discussed, the discovery sought by Petitioner clearly bears on the claims and defenses at issue, and comfortably fits within Rule 26's liberal discovery standards.

### a.  Controlling due process case law requires the Court's consideration of facts available only through the discovery that Petitioner seeks.

At base, the Government's objection rests on confusion concerning the nature of the legal question at issue in this case.[3]  The question of whether the statutes at issue and/or the Due Process Clause require the type of hearings that the class members seek is indeed a question of law, but, as courts have repeatedly recognized,

---

[3] Respondents state that Petitioner has asserted that "there is 'confusion concerning the nature of the pure question of law in this case.'"  However, the government quotes Petitioner out of context.  In a letter regarding the meet and confer process, Petitioner observed that Respondents' objection to discovery was premised on Respondents' "confusion concerning the nature of the pure question of law at issue in this case." Letter from Ahilan Arulanantham to Ted Atkinson (September 9, 2010). Thus, Petitioner was only stating that Respondents' objection rested on Respondents' own confusion, and did not suggest that there is in fact any confusion regarding the claim.

the legal analysis that the courts must undertake is informed by the relevant facts. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510 (2003) (resolving question whether due process required bond hearings by relying on aggregate data concerning individual cases); *Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1507-08 (C.D. Cal. 1988) (resolving procedural due process claim by reference to facts about "a substantial number of class members"); *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 496 (9th Cir. 2007) (en banc) (relying on data concerning the "error rate" to assess sufficiency of additional process in removal proceedings); *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1200 (9th Cir. 2009) (utilizing error rate in system similar to the one at issue in assessing due process claim); *County of Riverside v. McLaughlin*, 500 U.S. 44, 55, 57 (1991) (in class action, relying on information concerning causes for delays in arraignment and conclusion that "it takes 36 hours to process arrested persons in Riverside County" in assessing constitutional requirements); *see also id.* at 68 (Scalia, J., dissenting) (arguing in favor of a 24-hour period to provide a probable cause hearing based on the "available data" and observing that the Court had previously declined to decide the issue "since we had before us little data to support any figure we might choose" and that the Court would still benefit from "even more information"). Overlooking this precedent, the Respondents take the extraordinary position that there is no discovery relevant to Petitioner's claims, even under Rule 26's liberal discovery standard. *Se*e Fed. R. Civ. P.  26 ; *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).

Petitioner seeks discovery into factual information that is relevant to the due process standards developed and applied by the Ninth Circuit and Supreme Court in similar cases. "[D]ue process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Casas-Castrillon v. Dept. of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008) (quoting

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

27

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). To analyze Petitioner's claims under this standard, the Court must examine the facts and circumstances of the government's restriction of class members' liberty interest, the Government's justifications for such restraint (here, preventing flight and danger to the community), and the procedures (if any) that the Government currently provides to Petitioner. *See Zadvydas*, 533 U.S. at 691-92 (examining, inter alia, the government's regulatory purpose for indefinite immigration detention, the government's interests in preventing flight and danger, and the nature of deprivation of liberty); *see also, e.g.*, *United States v. Salerno*, 481 U.S. 739 (1987); *Demore v. Kim*, 538 U.S. 510 (2003).

Several examples demonstrate that the Respondents' position is incorrect. Some of Petitioner's discovery requests seek to determine what the government's existing detention procedures actually are, and whether it follows those procedures. Given that the government is arguing in this case that its existing detention procedures are constitutionally sufficient, Petitioner is obviously entitled to learn what those procedures are and how they function in practice; the Court cannot assess the constitutionality of detention procedures without knowing what they are. Other discovery requests seek to determine for how long class members are typically detained, in order to determine the degree of liberty deprivation they will suffer without obtaining constitutionally-adequate hearings. The length of detention is thus relevant to assessing the constitutionality of the existing detention scheme. *See Demore*, 538 U.S. at 529 (analyzing average length of detention in assessing constitutionality of detention scheme). The Court should reject Respondents' contention that it can refuse to disclose even basic information about the length of class members' detention or basic information about the nature of the custody determinations (if any) that it has provided.

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

28

**b.    Petitioner requires discovery into aggregate and class-wide facts because this case is a class action, and not an individual case.**

Respondents cite to a series of Ninth Circuit cases – *Casas-Castrillon*, *Prieto-Romero*, *Tijani*, and *Diouf* – in which the Court decided (or will decide) due process challenges to prolonged challenge without the benefit of factual discovery.  However, there is a critical difference between individual challenges to detention, on the one hand, and class-action and facial challenges to detention schemes, on the other.  In individual cases, the constitutional analysis turns on the facts concerning the individual detainee and his detention, information which can be presented in the district court without the need to for significant discovery.[4]  By contrast, in a class action or facial challenge – as in *Kim*, *Salerno, Morales-Izquierdo, Humphries and McLaughlin* – the plaintiff challenges the government's policies and practices in *all* their applications.  The analysis of class or facial claims thus necessarily requires consideration of aggregate or class-wide information.  Accordingly, Petitioner seeks discovery in order to make aggregate claims about detainees subject to prolonged detention as a whole -- the same information relied on by the Supreme Court and Ninth Circuit in considering similar claims.

*Kim* is directly on point.  There, the Court considered a due process facial challenge to section 1226(c)'s authorization of detention without the opportunity for a bond hearing, the same basic constitutional question presented in this case.  In concluding that bond hearings were not required, the Court stressed the "brief" period

---

[4] Additionally, in many of the individual cases cited by Respondents, the petitioner's A-file was in his counsel's possession and counsel was intimately familiar with the facts and circumstances of the Petitioner's claims.  Here, the government has refused to disclose class members' A-files, even though the class members are counsel's clients.  Without this basic information regarding class members and their detention, neither counsel nor the Court can adequately assess class members' claims.

of detention for most 1226(c) detainees, relying on aggregate data provided by the government.  538 U.S. at 529 (EOIR "has calculated that, in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days") (quoting government brief). That data was central to the majority opinion's ultimate conclusion, as well as Justice Kennedy's concurrence, that bond hearings were not required for the "brief" period of detention at issue.  *See id*.; *id*. at 532 (Kennedy, J., concurring) (stating that individualized hearing may be required if there is an "unreasonable delay by the INS in pursuing and completing deportation proceedings").

Further, the Court relied on extensive findings and studies cited in the Congressional record in assessing the strength of the government's interest.  *Id*. at 518-21.  The Court also found that a study done by the Vera Institute of Justice on alternatives to detention had "limited" value due to methodological problems, but did not reject that the availability of alternatives is relevant to due process analysis.  *Id*. at 520 n. 5.  Additionally, the majority opinion and Justice Kennedy's concurrence concluded that *Joseph* hearings provide a procedural safeguard against unlawful detention – a safeguard that the petitioner in *Kim* had foregone by conceding deportability.  *Id*. at 514 n.3, 523 n.6; *id*. at 531-32 (Kennedy, J. concurring).  The Court specifically observed that because of the petitioner's concession "we have no occasion to review the adequacy of Joseph hearings generally in screening out those who are improperly detained."  *Id*. at 514 n.3. Thus, in *Kim*, the government argued – and the Court agreed – that aggregate data concerning individual cases and the efficacy of alternative procedural safeguards are relevant factors in the due process analysis.

Respondents now attempt to diminish the significance of *Kim*, suggesting that the Court only relied on only one "extrinsic" fact (length of detention) introduced outside Congressional record.  However, that "one fact" included extensive aggregate

1    data compiled by the government, exactly the same sort of information Petitioner

2    seeks here.  Further, Respondent ignores the other factual information considered by

3    the *Kim* court – including the availability and efficacy of alternative procedures – in

4    analyzing the due process claim.  It is immaterial that this information was introduced

5    at the Supreme Court, rather than developed in discovery at the district court.  The

6    critical lesson from *Kim* is that the information—however it was introduced to the

7    Court—is highly relevant to the due process inquiry.

8        Respondent's incorrectly rely on the class certification opinion in this

9    case, *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009), to argue against

10   discovery here.  There, the Ninth Circuit was concerned only with class certification.

11   Thus, in stating that "[t]he particular characteristics of the Petitioner or any individual

12   detainee will not impact the resolution of this general statutory question…," the Ninth

13   Circuit was not suggesting that the parties were foreclosed from fact discovery.  *Id*. at

14   1124.  Rather, the Ninth Circuit was simply reasoning that the unique facts of each

15   class member's immigration case did not render the class unsuitable for certification.[5]

16            c.    **The specific examples that Respondents provide actually**

17                  **illustrate why discovery is appropriate here.**

18       Respondents provide three examples of legal issues which they erroneously

19   claim can be decided without factual discovery.  First, the Respondents claim that no

20   discovery is relevant to the question of whether arriving aliens held under 1225(b)

21   have any liberty interest with regard to detention.  But this is not an open question for

22   resolution by the Court.  The Ninth Circuit has held that all non-citizens physically

23

24   [5] Respondent's claims about the burden purportedly imposed by Petitioner's discovery
     requests are belied by the government's disclosure pursuant to Freedom of
25   Information Act (FOIA) requests of aggregate database and other information
     pertaining to removal cases.  *See, e.g.,* Transactional Records Access Clearinghouse,
26   *available at http://trac.syr.edu* (gathering information obtained from Department of
     Justice through FOIA requests).
27

28

present in the United States, even if they have not effected an "entry," are protected by the Due Process Clause. *Kwai Fun Wong v. United States*, 373 F.3d 952, 972 (9th Cir. 2004) ("Even an excludable alien is a 'person' for purposes of the Fifth Amendment and is thus entitled to substantive due process.").[6]  Given that arriving aliens do have a protected liberty interest under clear Ninth Circuit precedent, the factual discovery Petitioner seeks—about the nature of such aliens' detention, the government's justification for such detention, and any process—are required to permit the Court to conduct the proper due process analysis.

Second, Respondents claim that no discovery is relevant Petitioner's challenge to detention under sections 1226(a) and 1226(c) because the Ninth Circuit has decided a series of cases with respect to those sections without factual discovery.  As explained above, the government fails to appreciate the critical difference between an individual case (in which only the facts of an individual case are at issue) and a class action (which requires discovery as to aggregate information about class members).  Third, Respondents claim that no discovery is relevant to Petitioner's challenge to detention under section 1226(c) because it interprets the statute to prohibit ICE from exercising discretionary authority to release such detainees. This argument misses the point. The crux of Petitioner's complaint is that, even if the statute permitted such detention, it would raise serious due process problems absent constitutionally adequate hearings at which the government justifies the need for further detention.  The discovery Petitioner seeks is relevant to the due process problems of prolonged detention without a constitutionally adequate hearing.

---

[6] Additionally, the Ninth Circuit has held that Section 1225(b) applies not only to non-citizens who have never effected an entry into the United States, but also to lawful permanent residents returning from travel abroad, because they too are characterized as "arriving aliens" for purposes of the statute.  *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1077 n.3 (2006) (construing Section 1225(b) in light of its potential effect on returning lawful permanent residents).

Third, Respondents' selection of several discovery requests that it incorrectly characterizes as irrelevant only serves to highlight the need for discovery in this case.  Petitioner's request for information concerning the government's costs in providing certain procedures, the contractual agreements between Respondents and state and local entities, and bed space data are necessary to assess the costs of the Respondents' current procedures or the additional procedures Petitioner seeks.  If the Court concludes that recourse to a *Mathews* due process analysis is required here, the Court cannot conduct that analysis without considering the cost of current and additional procedures.  Relatedly, information concerning access to legal materials, visitation rights with counsel and counsel, educational opportunities in detention are needed to assess the nature and extent of the deprivation of class members' liberty interests while detained.  This information also bears on the Respondents' costs of detention.[7]

**B.    Discovery Seeking Facts About Parole Determinations, Custody Reviews, Immigration Proceedings, and Court-Ordered Hearings in *Matter Of Joseph* and *Casas-Castrillon***

1.    Text of Discovery

a.    **Text of General Objections 5 through 8:**

General Objection No. 5.  Respondent objects that the document requests are vague to the extent any request seeks information about a "CUSTODY REVIEW", as that term is defined by Petitioner. . . .  To the

---

[7] In its objections to Petitioner's discovery (but not in its arguments in this joint statement), Respondents contend that some Petitioner's requests contain terms that are somehow vague or undefined.  Petitioner's counsel remains available to clarify any confusion as to terms in Petitioner's discovery requests.  However, Respondents appears to create confusion where none exists.  For example, Respondents state that they are unaware of the meaning of "immigration court file" when in fact Respondent Department of Justice, through its sub-agency Executive Office of Immigration Review, regularly maintains files in administrative immigration courts pertaining to proceedings in individual aliens' cases.

extent "CUSTODY REVIEW" seeks information about any review of an alien under 8 C.F.R. § 241.4, that request is irrelevant.

General Objection No. 6. Respondent objects that the document requests are irrelevant, overly broad and unduly burdensome to the extent any request seeks information about a "CASAS HEARING", which Petitioner defines as "a hearing pursuant to Casas-Castrillon v. Dep't of Homeland Sec'y, 535 F.3d 942 (9th Cir. 2008)." To the extent a request seeks information about aliens who have received an individualized bond hearing consistent with Casas-Castrillon, that alien would fall outside the class certified in this case. "If an alien who would otherwise be a member of the class receives a bond hearing pursuant to Casas-Castrillon or any other ruling they would cease to be a member of the class." Rodriguez, 591 F.3d at 1118.

General Objection No. 7. Respondent objects that the document requests are vague, overly broad, and/or unduly burdensome to the extent any request seeks information about a "CUSTODY DETERMINATION", as that term is defined by Petitioner. The term "CUSTODY DETERMINATION" includes, as its definition, other terms elsewhere defined by Petitioner ("CASAS HEARING", "CUSTODY REVIEW") that are otherwise objected to as vague, irrelevant, overly broad, and/or unduly burdensome.

General Objection No. 8. Respondent objects that the document requests are vague, irrelevant, overly broad, and unduly burdensome to the extent any request seeks information about a "PROCEEDING", as that term is defined by Petitioner. Petitioner defines the term "PROCEEDING" to mean "removal proceedings pursuant to 8 U.S.C. 1229a, including judicial review, if any." This definition could include any form of a proceeding before any immigration judge, or judicial review by any court over any matter (even collateral matters, if the term is viewed most broadly). To the extent a request seeks all "PROCEEDING" information about an alien, the request is irrelevant, vague, overly broad, and unduly burdensome.

### b.   Text of Specific Requests and Responses

## REQUEST FOR PRODUCTION NO. 8 [to DHS]:

All DOCUMENTS that contain, refer to, or reflect data or statistics regarding CUSTODY REVIEWS, PAROLE DETERMINATIONS, BOND HEARINGS, and CASAS HEARINGS provided during any period after October 1, 2006 in PROLONGED DETAINEES' cases

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**34**

(regardless of whether before or after their detention became prolonged, i.e., six months in duration).

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1, 4 - 7, and 9 - 10 above.

(2)    Respondent further objects that the request is vague, overly broad, and unduly burdensome.  The request is not clear as to what is meant by "data," nor does it specify with any clarity what is meant by "statistics" (which is presumably a subset of "data").  The indefiniteness of these terms means that the request seeks any kind of information, as long as it "refer[s] to" "data" or "reflects" "data" having to do with CUSTODY REVIEWS, PAROLE DETERMINATIONS, BOND HEARINGS, and CASAS HEARINGS of any PROLONGED DETAINEE.

(3)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  To the extent Petitioner seeks information with respect to such reviews, determinations, or hearings (as defined by Petitioner),  that information is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer – regardless of length of detention beyond six months – is entitled to an automatic bond hearing before an immigration judge.  Because Petitioner contends that the Immigration and Nationality Act and the Constitution require a bond hearing before an immigration judge once an alien has been detained for six months under a general detention statute, information with respect to, for example, determinations of parole is irrelevant to Petitioner's claim.  The overly broad and unduly burdensome nature of the request is evidenced by the parenthetical clarifying that the scope of the request is not limited to such "data"  detention of six months or longer, but with respect to any detention.  Any relevance such information may have is outweighed by the overly burdensome nature of producing documents in response to such an overly broad request.

(4)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the request to an appropriate time frame

**REQUEST FOR PRODUCTION NO. 2 [to DHS]:**

All DOCUMENTS dated on or after October 1, 2006 RELATING TO CUSTODY DETERMINATIONS or hearings pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999), in any PROLONGED DETAINEE's case, regardless of whether the CUSTODY

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**35**

DETERMINATION occurred before or after detention became prolonged, i.e., six months in duration.

**OBJECTION AND RESPONSE:**

(1)      See General Objections 1, 3 - 7, and 9 - 10 above.

(2)      Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because the request seeks information for any PROLONGED DETAINEE's case about any hearing under Matter of Joseph. If Petitioner contends that a Matter of Joseph hearing is an individualized custody hearing of the type sought in the relief requested, then any alien who has received such a hearing falls outside the class, which is defined as "all non-citizens within the Central District of California who: (1) are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) have not been afforded a hearing to determine whether their detention is justified."  However, if Petitioner contends that a Matter of Joseph hearing is not an individualized bond hearing of the type sought in the relief requested, then Matter of Joseph hearing documents are irrelevant.

(3)      Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit his request to an appropriate time frame.

**REQUEST FOR PRODUCTION NO. 6 [to DHS]:**

All DOCUMENTS RELATING TO Respondent's policies, procedures, practices, forms, and trainings about CUSTODY DETERMINATIONS that apply in the Central District of California, including but not limited to manuals, guidances, instructions, policy statements, legal memoranda, training materials, and sample forms, worksheets, and letters.

**OBJECTION AND RESPONSE:**

(1)      See General Objections 1 - 3, 5 - 7, and 9 - 10 above.

(2)      Respondent further objects that the request is irrelevant.  To the extent it seeks information with respect to custody determinations, that information is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer – regardless of length of detention beyond six months – is entitled to an automatic bond hearing before an immigration judge.  Because Petitioner contends that the Immigration and Nationality Act and the Constitution require a bond hearing before an

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

36

immigration judge once an alien has been detained for six months under a general detention statute, custody determinations are irrelevant .

(2)    Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

**REQUEST FOR PRODUCTION NO. 9 [to DHS]:**

All DOCUMENTS that contain, refer to, or reflect data or statistics regarding the nature and outcome of PROCEEDINGS before immigration judges, the Board of Immigration Appeals, and the Ninth Circuit Court of Appeals for PROLONGED DETAINEES for any period after October 1, 2006.

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1, 4, 8, and 9 - 10 above.

(2)    Respondent further objects that the request is vague, overly broad, and unduly burdensome.  The request is not clear as to what is meant by "data," nor does it specify with any clarity what is meant by "statistics" (which is presumably a subset of "data").  The request also is vague because it does not define, or distinguish between, the "nature" or "outcome" of a PROCEEDING.  The indefiniteness of these terms means that the request seeks any kind of information, as long as it "refer[s] to" "data" or "reflects" "data" having to do with a PROCEEDING (a term Respondent has objected to).

(3)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  The request seeks information with respect to proceedings before an immigration court or an Article III court related to any immigration proceeding of any type.  That information is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer is entitled to an automatic bond hearing before an immigration judge.  Because Petitioner contends that the Immigration and Nationality Act and the Constitution require a bond hearing before an immigration judge once an alien has been detained for six months under a general detention statute, information with respect to immigration proceedings is irrelevant to Petitioner's claim.  Any relevance such information may have is outweighed by the overly burdensome nature of producing documents in response to such an overly broad request.

(4)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the request to an appropriate time frame.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS RELATING TO the potential eligibility of PROLONGED DETAINEES for relief from removal (including asylum, withholding of removal, relief under the Convention Against Torture ("CAT"), registry, adjustment of status, and cancellation of removal), including, for each detainee DOCUMENTS RELATING TO: the length of the PROLONGED DETAINEE's residence in the United States at the time proceedings were brought; the length of such residence as a lawful permanent resident of the United States; whether the PROLONGED DETAINEE ever claimed or now claims fear of persecution or torture; whether the PROLONGED DETAINEE ever applied or is applying for any immigration benefit, or if anyone applied or is applying on the PROLONGED DETAINEE's behalf (and a description of each such benefit); whether the PROLONGED DETAINEE had or has any U.S. citizen or lawful permanent son, daughter, spouse, parent, and/or siblings; date of the prolonged detainee's entry and admission (if any); the basis for Respondent's charge of removability against the PROLONGED DETAINEE (including factual allegations); and the alleged legal status of the PROLONGED DETAINEE at the time proceedings were brought, and the length of such status.

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1, 3, 4, and 9 - 10 above.

(2)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  The request is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer – without regard to the likelihood of relief in immigration proceedings – is entitled to an automatic bond hearing before an immigration judge.  Because Petitioner contends that the Immigration and Nationality Act and the Constitution require a bond hearing before an immigration judge once an alien has been detained for six months under a general detention statute, the requested information is irrelevant to Petitioner's claim.  Any relevance such information may have is outweighed by the overly burdensome nature of producing documents in response to such an overly broad request.

2.    Respondents Contend That The Hearings and Proceedings Identified in the Requests Above are Irrelevant to the Issues Before this Court

Respondents object to Petitioners' discovery requests because they seek information regarding the hearings and procedures that are wholly irrelevant to this action.  Petitioners have not explained how these requests are likely to lead to the production of information that has any bearing on the question of law that lies at the center of this action.  An examination of each hearing or proceeding shows that the requested information is corollary to the legal issues presented.

First, Petitioners seek a variety of information as it relates to hearings conducted under *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999).  *Joseph* hearings, and the procedures that implement them, see 8 C.F.R. § 3.19(h)(2)(ii), exist to permit aliens to test whether they are properly detained in the first instance under section 1226(c).  They permit an alien to challenge, for example, whether he fits within one of the enumerated categories of criminal aliens under section 1226(c)(1)(A) - (D) before an immigration judge.  The Joseph hearing is no more or less than a forum to permit an alien to challenge the application of the mandatory detention statute to his detention.  It is unclear how statistics, data, or other aggregate information about the outcomes of *Joseph* hearings for any alien, is relevant to the statutory or constitutional issue in this case.

Similarly, Petitioners have not identified how parole determination statistics or regulations will be relevant in this action.  As noted above, the determination of whether an arriving alien who has not effected an entry into the United States has rights to challenge his detention is not a new question in the history of this nation's jurisprudence.  *See, e.g., Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094 (9th Cir. 2004).  The statutory and constitutional issue of whether an arriving alien detained under section 1225(b) has always been examined in the context of the threshold issue of

1  whether such an alien has any due process rights, or whether those rights are

2  outweighed by the Government's broad and plenary authority over the admission or

3  exclusion of aliens.  *See, e.g., Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448 (9th

4  Cir.1995), *superseded by statute on other grounds as stated in Xi v. United States INS*,

5  298 F.3d 832, 837 (9th Cir. 2002).  The availability and frequency of the grant of the

6  discretionary authority of parole is irrelevant to this action.

7      Petitioners also seek vast information about the policies, procedures,

8  implementation, and outcomes of hearings conducted pursuant to *Casas-Castrillon v.*

9  *Dep't of Homeland Sec'y*, 535 F.3d 942 (9th Cir. 2008).  This action preceded the

10  Ninth Circuit's decision in *Casas-Castrillon*, and Petitioners' inclusion of requests

11  addressing *Casas-Castrillon* are inexplicable given the Ninth Circuit's statement, in

12  this case, that "[i]f an alien who would otherwise be a member of the class receives a

13  bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be

14  a member of the class."  *Rodriguez*, 591 F.3d at 1118.

15      Petitioners also seek information regarding the outcomes of custody reviews

16  conducted pursuant to 8 C.F.R. § 241.4.  Such reviews are available for aliens who

17  have been ordered removed and who are detained pending their removal.  8 C.F.R. §

18  241.4.  Again, however, the provision of custody reviews in this action cannot be

19  relevant to the statutory and constitutional interpretation questions that underlie this

20  case.  The issue of whether aliens detained for six months or longer are entitled to

21  constitutional safeguards has been examined under *Zadvydas v. Davis*, 533 U.S. 678

22  (2001).  As the Ninth Circuit has recognized, the issue of the constitutionality of the

23  detention of aliens pursuant to post-final order detention provisions is different from

24  the type of pre-order analysis courts engage in.  In *Zadvydas*, whether an alien may

25  lawfully be detained beyond the presumptively reasonable six-month period depends

26  on whether there is a significant likelihood that the alien will be removed in the

27  reasonably foreseeable future.  If so, then the Supreme Court has stated that continued

28

confinement is authorized by section 1231(a)(6), and release after six months is not required.  *Id.* at 702 ("This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.").  In any event, the issue of whether such aliens must be provided with a bond hearing – if not answered by *Zadvydas* – is nevertheless an issue of statutory and constitutional interpretation that does not depend on a factual analysis of the custody reviews provided to class members.

Finally, Petitioners seek broad statistical and aggregate data regarding the conduct and outcomes of immigration removal proceedings, including the outcomes during judicial review.  Again, no court examining the statutory and constitutional issues in this case has ever looked to the outcomes of merits hearings, petitions for review, or other immigration proceedings.  Petitioners have not adequately explained why this information is relevant and necessary to determine the legal issues involved in this case.

### 3.    Petitioner's Contentions

Discovery relating to *Joseph* hearings, parole determinations, *Casas* hearings, custody reviews conducted pursuant to 8 C.F.R. § 241.4, and immigration removal proceedings go to the heart of Petitioner's claims.[8]  First, the Government's objections to producing information about hearings pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999) are not well taken, given that the Government has relied on the adequacy of those hearings to defend the adequacy of its detention scheme in the past, *see Demore*, 538 U.S. at 514 n.3, and given that evidence submitted in *Joseph* hearings is very likely to demonstrate the presence or absence of an adequate justification for detention in a given case.  Second, asylum seekers and other

---

[8] Petitioner's counsel has explained the relevance of this discovery to Respondents' counsel on several occasions, including at the meet and confer conference of counsel.

1    individuals applying for admission who are stopped at the border for inspection are

2    part of the class that Petitioner represents, and as such, facts about the parole

3    determination procedures applicable to them are discoverable.  <u>Third</u>, the Government

4    objects to any discovery pertaining to its implementation of *Casas-Castrillon v. Dep't*

5    *of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), even though Petitioner's claims

6    include a challenge to the adequacy of *Casas* hearings.  <u>Fourth</u>, given that Petitioner's

7    claim is that current detention procedures, including custody reviews conducted

8    pursuant to 8 C.F.R. § 241.4, are insufficient to safeguard constitutional rights,

9    discovery regarding such custody reviews is relevant and permissible.  <u>Fifth</u>,

10    information regarding individual immigration removal proceedings is relevant to

11    determining whether the Government's current detention policies and procedures are

12    constitutional, as they will assist the parties and the Court in assessing the adequacy

13    and accuracy of Respondents' procedures.  Each of these types of hearings or

14    procedures and their relevance is discussed in more detail below.[9]

15              **a.      Petitioner is Entitled to Discovery About *Joseph***

16              **hearings.**

17         Petitioner seeks discovery related to *Joseph* hearings.  *See, e.g.*, Request for

18    Production No. 2 to DHS.  At a *Joseph* hearing, an Immigration Judge determines

19    whether an individual is "properly included" in the mandatory detention category

20

21    [9] In this section II.B., Petitioner has stated contentions regarding only the relevance of
the five issues of *Joseph* hearings, parole determinations, *Casas* hearings, custody

22    reviews, and immigration removal proceedings, even though Respondents' selection
of representative General Objections and Discovery Requests in this section II.B.

23    encompasses more than the relevance of these five issues.  This is because
Respondents chose only to discuss the relevance of these five issues in Respondents'

24    Contentions in section II.B.  Respondent's other objections in its selection of

25    representative General Objections and Discovery Requests in this section, such as
objections regarding burden and temporal scope, are addressed in section III of this

26    joint stipulation.

27

28

1    (pursuant to 8 U.S.C. 1226(c)) based on the likelihood that DHS will prevail on its

2    charge of removability.  Though the purpose and nature of a *Joseph* hearing—

3    determining the statutory propriety of mandatory detention—is distinct from the relief

4    requested by Petitioners—a constitutionally adequate hearing to review the class

5    member's detention—evidence relating to *Joseph* hearings is still highly relevant to

6    this action.

7        *Joseph* hearings are part of the Government's current custody review

8    procedures; Petitioner contends that those procedures are inadequate to protect due

9    process rights.  In other words, Petitioner's claim is that the Government's current

10   custody review procedures, which includes *Joseph* hearings, are constitutionally

11   insufficient and that the relief requested in Petitioner's Second Amended Complaint is

12   necessary to protect class members' constitutional rights.  As such, this discovery

13   relating to *Joseph* hearings may demonstrate the inadequacy of the Government's

14   current custody review procedures, a key factor in proving the unconstitutionality of

15   its detention practices.

16       Moreover, evidence submitted in *Joseph* hearings may be highly relevant to the

17   class members' claims, including information that directly bears on an individual's

18   likelihood of success on the merits and the adequacy and accuracy of the Government

19   procedures.  Finally, the Government has relied on the existence of *Joseph* hearings in

20   order to defend its detention scheme in the past.  *See Demore*, 538 U.S. at 514 n.3.

21   Accordingly, the Government's current objection that *Joseph* hearings are "corollary"

22   to the issue of the constitutionality of the Government's current detention scheme is

23   disingenuous.

24              **b.      Petitioner is entitled to discovery regarding parole**

25                       **determinations.**

26       Petitioner also seeks discovery regarding parole determinations made pursuant

27   to 8 C.F.R. 235.2, 8 C.F.R. 1235.2, and/or 8 U.S.C 1182(d)(5)(A).  *See, e.g.*, Request

28

for Production No. 8 to DHS.  Discovery of these parole determination procedures is relevant because they are part and parcel of Respondents' current detention procedures.  Asylum seekers and other individuals applying for admission who are stopped at the border for inspection are part of the class that Petitioner represents, and as such, facts about the parole determination procedures applicable to them are discoverable in order to determine if such current procedures are constitutionally adequate.  This discovery goes to the crux of Petitioner's claim: that class members— including aliens seeking admission—are entitled to constitutionally adequate hearings to justify prolonged detention.   Without an examination of the existing procedures that such aliens receive, the Court cannot analyze Petitioner's due process claims.

### c.     Petitioner requires discovery about *Casas* hearings.

Petitioner's discovery requests with regard to *Casas* hearings are also relevant to Petitioner's claims.  *See, e.g.*, Request for Production No. 8 to DHS.  The Government's objections to any discovery pertaining to its implementation of *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), are groundless.  One of the critical disputes in this case pertains to the Government's provision of *Casas* hearings.  The Government has claimed in this litigation that its provision of *Casas* hearings satisfies its due process obligations.  Petitioner's claims include a challenge to the adequacy of *Casas* hearings.

In *Casas*, the Ninth Circuit determined that Section 1226(a) provided authority for the Attorney General to release a detainee putatively subject to mandatory detention whose immigration case had been pending at the Ninth Circuit for several years.  *Id*.  "Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,'" the Court concluded "that Section 1226(a) must be construed as requiring the Attorney General to provide the alien with such a hearing."  *Id* (emphasis omitted).

Here, Petitioner is challenging both the Government's failure to provide *Casas* hearings to all class members and the constitutional sufficiency of those hearings as they are being implemented.  Furthermore, several of the claims alleged in Petitioner's Complaint relate to procedural protections not present in *Casas* hearings, including (a) the right to a transcript of the hearing; (b) the right to appointed counsel; and (c) consideration of the length of detention for any given detainee.  As such, Respondent's objection to producing any information relating to *Casas* hearings is unreasonable and should be rejected by the Court.

### d.    Petitioner is entitled to discovery relating to custody reviews under 8 C.F.R. 241.4.

The Court should also require Respondents to respond to Petitioner's discovery requests for information related to custody reviews conducted pursuant to 8 C.F.R. § 241.4.  *See, e.g.*, Request for Production No. 8 to DHS.  Petitioner's claim is that current detention procedures, including custody reviews conducted pursuant to 8 C.F.R. § 241.4, are insufficient to safeguard constitutional rights.  Petitioner requires discovery of such custody reviews to prove his case.  For example, evidence of an individual who was detained and not released after a custody review, but who later won his case on cancellation grounds based on a showing of positive equities, would tend to demonstrate that the Government's current procedure of custody reviews is insufficient to safeguard class members' due process rights.  Thus, Respondent's argument that custody reviews conducted pursuant to 8 C.F.R. § 241.4 have no bearing on Petitioner's claims is plainly incorrect, and Respondents' objections on this ground should be overruled.

### e.    Petitioner Requires Aggregate Information Related to Immigration Removal Proceedings.

Respondents object to producing statistical and aggregate data related to immigration removal proceedings and their outcomes, but such information is highly

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**45**

relevant to the core of Petitioner's due process claims.  *See, e.g.*, Request for Production No. 9 to DHS.  Petitioner's claims center on an evaluation of the adequacy and accuracy of the Government's existing detention procedures, the nature of class members' deprivation of liberty, the strength of the governmental interest in detention, and the incremental additional costs and benefits of the procedures that the class members demand.  *See supra* at pp. 4-7.  Respondents' records about removal proceedings as to a given noncitizen are highly relevant to these elements.  For instance, as to the adequacy and accuracy of Respondents' procedures, this information will reveal whether an individual ultimately won his immigration case and whether the current detention procedures accurately evaluated whether the given individual needed to be detained for a prolonged duration.  In other words, though Petitioner is not litigating the merits of any individual class member's immigration case, information regarding individual immigration removal proceedings is relevant to determining whether the Government's current detention policies and procedures are constitutional.

## C.   Relevance of Other Requests

### 1.   Text of Discovery

#### a.   Text of Specific Requests and Responses:

**REQUEST FOR PRODUCTION NO. 19:**
All DOCUMENTS RELATING TO policies, procedures, practices, and/or guidelines applicable to the detention or supervised release (including under electronic monitoring) of PROLONGED DETAINEES, including but not limited to manuals, guidances, instructions, policy statements, legal memoranda, training materials, and sample forms, worksheets, and letters.

**OBJECTION AND RESPONSE:**
(1)   See General Objections 1, 3, 4, and 9 - 10 above.
(2)   Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  Nothing in the Amended Petition raises a claim with regard to the supervised release of detainees.  The

request is irrelevant to this action.  To the extent the request asks for the specified documents with respect to the detention of PROLONGED DETAINEES, the request is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer is entitled to an automatic bond hearing before an immigration judge.  Because Petitioner contends that the Immigration and Nationality Act and the Constitution require a bond hearing before an immigration judge once an alien has been detained for six months under a general detention statute, the requested policies, procedures, practices and/or guidelines is irrelevant to Petitioner's claim.  Any relevance such information may have is outweighed by the overly burdensome nature of producing documents in response to such an overly broad request.

(3)    Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b).  Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

(4)    Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231. The request is irrelevant and overly broad.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS RELATING TO Respondent's policies, procedures, or practices regarding Petitioners' visitation rights, including for family and legal visits, while detained by Respondent.

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1 - 3, and 9 - 10 above.

(2)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  Nothing in the Amended Petition raises a claim with regard to the adequacy of the visitation rights afforded to detainees.  The request is irrelevant to this action.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS RELATING TO Respondent's policies, procedures, or practices RELATING TO educational and vocational opportunities available to Petitioners while detained by Respondent.

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1 - 3, and 9 - 10 above.

(2)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  Nothing in the Amended Petition raises a claim with regard to the adequacy of educational and vocational opportunities afforded to detainees.  The request is irrelevant to this action.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS RELATING TO Respondent's policies, procedures, or practices RELATING TO the availability of legal materials to Petitioners while detained by Respondent.

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1 - 3, and 9 - 10 above.

(2)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  Nothing in the Amended Petition raises a claim with regard to the availability of legal materials afforded to detainees.  The request is irrelevant to this action.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS RELATING TO any agreement in effect on or after, or entered into on or after, January 1, 2006, with the State of California, any county, city, or other governmental entity, or any private entity, regarding the housing of PROLONGED DETAINEES in the Central District of California, including the Inter Governmental Service Agreements governing detention at Mira Loma and Santa Ana Jails during fiscal years 2006 through the date of this request.

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1, 3, 4, and 9 - 10 above.

(2)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  Nothing in the Amended Petition raises a claim with regard to the adequacy of any detention facility.  The request is irrelevant to this action.  Any relevance such information may have is outweighed by the overly burdensome nature of producing documents in response to such an overly broad request.

(3)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the request to an appropriate time frame.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS regarding the Respondent's policies, procedures, or practices RELATING TO the implementation of ICE

Policy Directive No. 11002.1, "Parole of Arriving Aliens Found to have a Credible Fear of Persecution or Torture," in the Central District of California, including but not limited to manuals, guidances, instructions, policy statements, legal memoranda, training materials, and sample forms, worksheets, and letters.

**OBJECTION AND RESPONSE:**

     (1)     See General Objections 1 - 3, and 9 - 10 above.

     (2)     Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome. Nothing in the Amended Petition raises a claim with regard to the adequacy of the visitation rights afforded to detainees. The request is irrelevant to this action.

     (3)     Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

     (4)     Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231. The request is irrelevant and overly broad.

     2.     Respondents' Contentions

The requests seek irrelevant information that has no bearing on the statutory and constitutional issues in this action. The requests seek (1) policies, manuals, worksheets and other documents related to supervised release of any alien, including documents related to release on electronic monitoring; (2) information related to detainees' access to legal materials, educational and vocational opportunities, and visitation rights; (3) documents related to contracts between Respondents and any detention facility with which they contract; and (4) documents related to ICE Policy Directive No. 11002.1, "Parole of Arriving Aliens Found to have a Credible Fear of Persecution or Torture."

Throughout the discovery dispute process, Petitioners have offered no explanation whatsoever for the need for the information, and Respondents can discern

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**49**

no relevant value to these requests.  These appear, more than anything else, to be "wish list" requests.  Under no analytical framework for a due process analysis is the information sought relevant to the determination of whether detained aliens are entitled to a bond hearing before an immigration judge after six months of detention. The contractual terms of the Government's agreements with its contractors, the implementation of a specific policy regarding the grant of parole, the general policies regarding visitation, access to legal, educational, and vocational materials and opportunities – none of these requests are at all relevant to the issues before this Court. They should be disallowed.

### 3.    Petitioner's Contentions

The group of discovery requests to which Respondents object in this section II.C. seek (1) policies, manuals, worksheets and other documents related to supervised release of any alien, including documents related to release on electronic monitoring; (2) information related to detainees' access to legal materials, educational and vocational opportunities, and visitation rights; (3) documents related to contracts between Respondents and any detention facility with which they contract; and (4) documents related to ICE Policy Directive No. 11002.1, "Parole of Arriving Aliens Found to have a Credible Fear of Persecution or Torture."

Each of these categories of requests is relevant and discoverable.  First, individuals subject to supervised release have a claim of deprivation of liberty, and thus, discovery relating to the Government's policies relating to supervised release, including electronic monitoring, is relevant to Petitioner's claims, as such discovery will demonstrate the extent of the deprivation of liberty.  Second, information regarding detainees' loss of access to legal, educational, and vocation opportunities and loss of contact with family members is directly relevant to Petitioner's claim that the private interests of Petitioner and other class members are at stake, and that Petitioner and class members are being erroneously deprived of liberty.  Third,

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**50**

discovery relating to the Government's contracts with detention facilities will allow Petitioner to assess any potential fiscal and administrative burden of the additional procedures he proposes.  Fourth, documents related to ICE Policy Directive No. 11002.1, "Parole of Arriving Aliens Found to have a Credible Fear of Persecution or Torture," are relevant to the claims of class members who are asylum seekers and will allow such class members' to demonstrate that the Government's current procedures to determine whether they should be released or detained are insufficient.  The relevance of each of these categories of discovery requests is discussed in greater detail below.  Contrary to the government's contentions, these discovery requests are not a "wish list" but rather seek critical information directly relevant to Petitioner's case.[10]

First, Petitioner seeks documents related to the supervised release of any prolonged detainee, including documents related to release on electronic monitoring. *See, e.g.*, Request for Production No. 19 to DHS.  Respondents' confusion as to the relevance of these requests is puzzling given that the Ninth Circuit in this very case stated, "We further note that Petitioner's current release is subject to a number of restrictions, including the requirements that he remain within 50 feet of his home from 7:00 p.m. to 7:00 a.m. every night and wear an ankle monitoring device at all times. Petitioner proposes that he receive a bond hearing to determine not only whether he should be released, but also under what conditions such release would take place.  The strict limitations on Petitioner's freedom, therefore, provide an additional reason why his case presents a live controversy." *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2009).

---

[10] The other objections raised in the Respondents' selection of representative Discovery Requests in this section II.C., such as objections regarding burden and temporal scope, are addressed in section III of this joint stipulation.

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

51

The Ninth Circuit thus recognized that individuals subject to supervised release still have a claim of deprivation of liberty.  Therefore, discovery relating to the Government's policies and other documents relating to supervised release, including electronic monitoring, is relevant to Petitioner's claims, as such discovery will demonstrate the extent of the deprivation of liberty.

Second, Petitioner seeks discovery relating to detainees' access to legal materials, educational and vocational opportunities, and visitation rights.  *See, e.g.*, Request for Productions Nos. 10, 11, and 12 to DHS.  The relevance of such documents is clear.  To conduct a due process analysis, the Court will need to evaluate the private interests of class members that are at stake here.  Information regarding detainees' loss of access to legal, educational, and vocation opportunities and loss of contact with family members is directly relevant to demonstrating the nature of the deprivation of liberty at stake for Petitioner and other class members.  *See, e.g.*, *Mathews,* 424 U.S. 319 (1976).

Third, Respondents object to Petitioner's requests for documents related to contracts between Respondents and any detention facility with which they contract.  *See, e.g.*, Request for Production No. 26 to DHS.  The goal of these discovery requests is obvious: to determine the fiscal and administrative costs of detention (information about which is contained in such contracts).  Information regarding these costs is directly relevant to Petitioner's due process claims.  With regard to procedural due process, the third factor of the *Mathews* test explicitly requires an analysis of "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  These discovery requests relating to the Government's contracts with detention facilities directly relate to this *Mathews* factor.  In order for the Court to assess any potential burden of the additional procedures

Petitioner proposes, Petitioner must establish the fiscal and administrative costs of the existing procedures.

Finally, Petitioner seeks documents related to ICE Policy Directive No. 11002.1, "Parole of Arriving Aliens Found to have a Credible Fear of Persecution or Torture." *See, e.g.*, Request for Production No. 23 to DHS. Respondents' argument that these documents are irrelevant to Petitioner's claims is unfounded. This ICE Policy Directive deals specifically with asylum seekers. Asylum seekers are part of the certified class. In fact, two of the individuals named as sub-class representatives in the Second Corrected Second Amended Complaint, Abdirizak Aden Farah and Yussuf Abdikadir, have been denied parole under this policy. *See* Second Corrected Second Am. Complaint at ¶¶ 51, 61 [Dkt. # 95-1, Sept. 10, 2010]. As such, this discovery is relevant to such class members' claims that the Government's current procedures to determine whether they should be released or detained are unconstitutional.

## III. Disputed Issues Relating to Petitioner's Motion to Compel Further Responses to Interrogatories and Document Requests

### A. Information Contained in "A-Files"

1. Text of Document Request No. 1 to DHS, Document Request No. 2 to DOJ, and Interrogatory No. 2 to DHS, and Government's Responses

**REQUEST FOR PRODUCTION NO. 1 TO DHS**

The "A" file of every Petitioner.

**OBJECTION AND RESPONSE:**

(1) See General Objections 1, 9 - 10 above.

(2) Respondent further objects that the request is vague. It is unclear whether Petitioner seeks the A-file of every class member, or every class representative. It is also unclear who the class members are considering the class definition states "are or were" detained in the Central District of California but does not specify a date as to when detention must begin. It is unclear whether Petitioner is suggesting that

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

53

the class encompasses individuals who have spent six months in detention, only one day which was in the Central District of California, on or after October 1, 2006, and regardless of whether the individual has since been released, removed, naturalized, etc. To the extent the request seeks the A-files of those individuals, the request is overly broad, unduly burdensome, and seeks irrelevant information.  To the extent the request seeks the A-file of every class representative (currently Alejandro Rodriguez), the request seeks irrelevant information.

**REQUEST FOR PRODUCTION NO. 2 TO DOJ**

All DOCUMENTS dated on or after October 1, 2006 RELATING TO BOND HEARINGS, CASAS HEARINGS, or hearings pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999), in any PROLONGED DETAINEE's case, regardless of whether the hearing occurred before or after detention became prolonged, i.e., six months in duration.

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1, 3, 4, 6, and 9 - 10 above.

(2)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because the request seeks information for any PROLONGED DETAINEE's case about any hearing under Matter of Joseph. If Petitioner contends that a Matter of Joseph hearing is an individualized custody hearing of the type sought in the relief requested, then any alien who has received such a hearing falls outside the class, which is defined as "all non-citizens within the Central District of California who: (1) are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) have not been afforded a hearing to determine whether their detention is justified."  However, if Petitioner contends that a *Matter of Joseph* hearing is not an individualized bond hearing of the type sought in the relief requested, then *Matter of Joseph* hearing documents are irrelevant.

(3)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit his request to an appropriate time frame.

**INTERROGATORY NO. 2 TO DHS**

State all facts RELATING TO the length of detention of every PROLONGED DETAINEE, including, for each detainee

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

54

(identified by name and "A" number): the date(s) of placement into detention, the date(s) of release from detention, the detention statute(s) that authorize(d) detention, and the dates during which the detainee was detained pursuant to each statute.

**OBJECTION AND RESPONSE:**

(1)    See General Objections 1 - 4, and 9 - 11 above. Respondent notes that this interrogatory contains 4 distinct subparts.

(2)    Respondent further objects that the interrogatory is irrelevant, overly broad, and unduly burdensome.  To the extent Petitioner seeks information with respect to the length of detention of any class member, that information is irrelevant to Petitioner's claim, which is that any alien detained for six months or longer – regardless of length of detention beyond six months – is entitled to an automatic bond hearing before an immigration judge.  Documents identifying the date each class member was detained, the statute authorizing detention, and the dates each class member was detained pursuant to each statute is not relevant to determining the issue of whether the Immigration and Nationality Act or the Constitution require a bond hearing before an immigration judge once the alien has been detained for six months.  To the extent the requested information is relevant, it is relevant only to the provision of relief if Petitioner prevails on the claims stated in the Amended Petition. Accordingly, to the extent the interrogatory seeks such information at this time, it is overly broad and unduly burdensome.

(3)    Respondent further objects that the interrogatory is unduly burdensome to the extent it requires Respondent to identify, for each alien detained for six months or longer, the particular statute authorizing each alien's detention and the dates during which the detainee was detained pursuant to each statute.  This information is not available except through a manual search of each detainee's A-file, and thus is overly burdensome.  Respondent is also attempting to determine whether the date of detention and date of release is information that is obtainable other than through search of each alien's A-file. If responding to this interrogatory regarding these distinct subparts would require the manual search of each A-file, or time-intensive manual compilation of such information if it is available in another form, then Respondent objects that the interrogatory is overly burdensome and irrelevant at this stage.

Notwithstanding the objections stated above, Respondent has provided (as part of subclass discovery) and will continue to provide a list to Petitioner identifying each detainee currently in the Central

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

55

District detained for six months or longer, each detainee's A number, each detainee's location of detention, and each detainee's immigration counsel, to the extent known.  Respondent will seasonably supplement this list pursuant to Fed. R. Civ. P. 26(e) throughout the course of this action.  Respondent expects to provide Petitioner with the list on or before September 3, 2010.

> 2.    Petitioner's Contentions

Through Document Request No. 1 to DHS, Document Request No. 2 to DOJ, and Interrogatory No. 2 to DHS, Petitioner seeks the A-files of all class members and A-file information of prolonged detainees.  A-files are administrative files maintained by DHS about noncitizens, including the class members in this case.  These files contain critical information relevant to the class members' due process claims and regarding each class member's detention and immigration case, including but not limited to information related to length of detention, conduct and outcomes of custody determinations and *Joseph* hearings, outcomes of removal proceedings, length of time Respondents take to complete removal proceedings, dates and circumstances of release from detention, and potential eligibility for relief from removal.

Despite the relevance of this discovery, the Government has previously refused to produce class members' A-files (Transcript of March 22, 2010 Status Conference at 34:18-36:5; Dkt. # 71), even after the Court certified the class in this case and appointed undersigned counsel as counsel for class members.  Petitioner was therefore forced to simultaneously promulgate several specific discovery requests for information contained in the A-files, including Document Request No. 2 to DOJ (seeking documents related to custody determinations) and Interrogatory No. 2 to DHS (seeking facts relating to length of detention).

Respondents assert several objections in response to Petitioner's request for class members' A-files and the information contained in those files, all of which the Court should reject.  First, the Government's primary objection here —as with almost all of the discovery that Petitioner seeks—is that the case involves only questions of

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

56

law, despite the fact that resolution of the legal question here requires an aggregate factual inquiry.  <u>Second</u>, the Government objects to Petitioner's request for information about prolonged detainees, a group that encompasses both class members and individuals who satisfy the class definition, but who have already been released by the Government, even though this information is necessary to establish the inadequacy of the Government's existing detention procedures.  <u>Third</u>, the Government objects to Petitioner's use of the term "relating to."  <u>Fourth</u>, the Government objects to producing information about hearings pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999), even though the Government has relied on the adequacy of those hearings to defend the adequacy of its detention scheme in the past, *see Demore*, 538 U.S. at 514 n.3, and even though evidence submitted in *Joseph* hearings is very likely to demonstrate the presence or absence of an adequate justification for detention in a given case.  <u>Fifth</u>, the Government objects to any discovery pertaining to its implementation of *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), even though Petitioner's claims include a challenge to the adequacy of *Casas* hearings.  <u>Sixth</u>, the Government also asserts several other boilerplate objections, involving vagueness, privacy, and scope, which make little sense given the specificity of the discovery requests at issue.  <u>Seventh</u>, the Government objects that Petitioner's requests for specific information in A-files would necessitate a burdensome, manual file review.  Petitioner is fully willing, however, to withdraw these requests if the Government produces the A-files themselves.

As a preliminary matter, class members' A-files, and the information contained therein, are relevant to the core of Petitioner's due process claims.  These claims center on an evaluation of the adequacy and accuracy of the Government's existing detention procedures, the nature of class members' deprivation of liberty, the strength of the governmental interest in detention, and the incremental additional costs and

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**57**

1   benefits of the procedures that the class members demand.  *See supra* at pp. 4-7.  The

2   A-files—which contain DHS's records about the detention and removal proceedings

3   as to a given noncitizen—are highly relevant to each of these elements.  For instance,

4   as to the adequacy and accuracy of DHS procedures, the A-files will reveal whether

5   an individual who obtained a custody determination of some kind—whether an in-

6   person review or paper review—was ordered detained when facts in his record suggest

7   that he does not pose a danger or flight risk.  Similarly, the A-files contain information

8   about the length of detention and the related deprivation of time with family and loss

9   of job opportunities.  As to cost, by revealing the total number of days of detention,

10  the A-files of class members will help clarify the cost incurred by DHS to detain a

11  given class member.

12          The government's principal rationale for stonewalling Petitioner's discovery

13  requests is detailed in General Objection No. 1, which claims that Petitioner's

14  requests seek information not relevant to resolving the constitutional issue in this case

15  because that issue presents a pure question of law.  The Government is so extreme in

16  its reliance on this objection that it refuses to even produce the A-file of Mr.

17  Rodriguez, the original class representative.

18          The Government's objection rests on confusion concerning the nature of the

19  legal question at issue in this case.  The question of whether the statutes at issue

20  and/or the Due Process Clause require the type of hearings that the class members

21  seek is indeed a question of law, but, as courts have repeatedly recognized, the legal

22  analysis that the courts must undertake is informed by the relevant facts.  *See, e.g.*,

23  *Demore v. Kim*, 538 U.S. 510 (2003) (resolving question whether due process

24  required bond hearings by relying on aggregate data concerning individual cases);

25  *Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1507-08 (C.D. Cal. 1988) (resolving

26  procedural due process claim by reference to facts about "a substantial number of

27  class members"); *Morales-Izquierdo v. Gonzalez*, 486 F.3d 484, 496 (9th Cir. 2007)

28

(en banc)  (relying on data concerning the "error rate" to assess sufficiency of additional process in removal proceedings); *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1200 (9th Cir. 2009) (utilizing error rate in system similar to the one at issue in assessing due process claim).

Similarly, here, fact discovery of the information contained in the detainees' A-files will be necessary to resolve the due process question at issue. *See, e.g.*, *Big Lagoon Rancheria v. California*, 700 F.Supp.2d 1169, 1180 (N.D. Cal. 2010) (granting discovery in dispute involving legal claim between Native American tribe and State of California) ("The Tribe also disputes the State's characterization of the issue as a 'purely legal question'…As stated above, the Court agrees with the Tribe that additional facts-beyond those contained in the record of negotiations-may be relevant and are discoverable here, particularly given the broad federal discovery rules.") (internal citations omitted).

Respondents' reliance on the Ninth Circuit's class certification opinion in this case, *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009), is misplaced.  The Ninth Circuit's opinion in *Rodriguez* was concerned only with class certification. Thus, in stating that "[t]he particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question…," the Ninth Circuit was not suggesting that the parties were foreclosed from fact discovery. *Rodriguez*, 591 F.3d at 1124.  Rather, the Ninth Circuit was simply reasoning that the unique facts of each class member's immigration case did not render the class unsuitable for certification.  Petitioner does not seek discovery in order to make claims about any given class member, but rather to make aggregate claims about detainees subject to prolonged detention as a whole.  As such, Petitioner is entitled to discovery of the A-files and the information contained therein.

Respondents' second group of objections to the A-file related discovery requests relate to the alleged breadth of the requests.  Respondents assert General

1   Objection Nos. 2 and 4, which essentially argue that the A-file related discovery

2   requests are overbroad because they seek information "with respect to aliens outside

3   the class."[11]

4          These objections are meritless.  Petitioner's requests are not overbroad, as they

5   are relevant to the class members' due process claims.  Petitioner requires this

6   information related to non-class members because it will demonstrate the outcomes in

7   cases of individuals who would have been class members but whose cases have since

8   been completed.  Logically, Petitioner cannot obtain these outcomes as to individuals

9   who are currently detained in the class as their cases have not concluded and they

10  have not been released.  The discovery relating to the outcomes of non-class

11  members' cases are sought because they would demonstrate the insufficiency of the

12  Government's existing procedures.  For example, a non-class member who was

13  detained and not released after a custody review, but who later won his case on

14  cancellation grounds based on a showing of positive equities, would tend to

15  demonstrate that the Government's current procedure of custody reviews is

16  insufficient to safeguard current class members' due process rights.  Thus,

17  Respondents' argument that the discovery requests are overbroad as to non-class

18  members fails.

19         Respondents also exaggerate the breadth of Petitioner's A-file related discovery

20  requests by arguing that the requests would even apply to aliens detained for only one

21  day in the Central District for a consular interview.  To the contrary, Petitioner's

22

23

24  [11] With regard to Document Request No. 1 to DHS for the actual A-files, Petitioner

25  limited his request to "The 'A' file of every Petitioner," with "Petitioner" defined as all class members.  Thus, this overbreadth objection does not apply to Document

26  Request No. 1 to DHS and Respondents rightfully did not assert General Objection Nos. 2 or 4 to this request.  However, Respondents objected to this request on other

27  grounds, which are addressed herein.

28

counsel has clarified that Petitioner is only seeking information about individuals who are class members or would have been class members but for their release.

With regard to Respondents' argument that Petitioner's A-file related discovery requests would apply to individuals detained under *Zadvydas v. Davis*, 533 U.S. 678 (2001), at the meet and confer conference of counsel, Petitioner's counsel made clear to Respondents' counsel that the class does not include those people, and that Petitioner does not seek information concerning their cases.

The Government also objects to Petitioner's use of the term "relating to." This objection makes little sense, given the specificity of the requests. Furthermore, Respondents have failed to provide an adequate explanation of the basis for this objection. Rather than speculate as to Respondent's logic for this objection, Petitioner contends that the term "relating to" is self-explanatory and sufficiently clear to communicate the discovery that Petitioner seeks.

Here, Petitioner seeks information relating to the detention and removal of current class members and past individuals who were in the class. It is difficult to imagine that there is documentation beyond what is contained in the A-files. To the extend that the Government continues to disingenuously assert that the use of the term "relating to" leads to a "vast numbers of documents," Petitioner is willing to stipulate that Petitioner's request is limited to the information contained in the A-files.

The Government also objects to producing information about hearings pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999). A "*Joseph* hearing" is provided to a detainee who claims that he is not covered by § 1226(c). At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention. *See* 8 CFR § 3.19(h)(2)(ii) (2002); *see also Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999).

The Government erroneously argues that producing information about *Joseph* hearings is irrelevant, overly broad, and unduly burdensome. As an initial matter, Petitioner rejects the Government's suggestion that a *Joseph* hearing is an individualized custody review sought in the relief requested.  At a *Joseph* hearing, an Immigration Judge determines whether an individual is "properly included" in the mandatory detention category based on the likelihood that DHS will prevail on its charge of removability.  Plainly, the purpose and nature of a *Joseph* hearing is distinct from the relief requested, *i.e.*, a constitutionally adequate hearing to review the class member's detention.

Nonetheless, evidence relating to *Joseph* hearings is highly relevant to this action.  *Joseph* hearings are part of the Government's custody review procedures; Petitioner contends that those procedures are inadequate to protect due process rights. As such, this evidence may demonstrate the inadequacy of the Government's custody review procedures, a key factor in proving the unconstitutionality of its detention practices.

Moreover, evidence submitted in *Joseph* hearings may be highly relevant to Petitioner's claims, including information that directly bears on the individual's likelihood of success on the merits and the adequacy and accuracy of the Government procedures.  Finally, the Government has relied on the existence of *Joseph* hearings in order to defend its detention scheme in the past.  *See Demore*, 538 U.S. at 514 n.3. Accordingly, the Government's unexplained objections that the requests for information related to *Joseph* hearings are "irrelevant, overly broad and overly burdensome" are without merit.

The Government next objects to any discovery pertaining to its implementation of *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), even though the Government has also claimed in this litigation that its provision of *Casas* hearings satisfy its due process obligations, and even though Petitioner's claims

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**62**

include a challenge to the adequacy of *Casas* hearings.  In *Casas*, the Ninth Circuit determined that Section 1226(a) provided authority for the Attorney General to release a detainee putatively subject to mandatory detention whose immigration case had been pending at the Ninth Circuit for several years.  *Id.*  "Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,'" the Court concluded "that Section 1226(a) must be construed as requiring the Attorney General to provide the alien with such a hearing."  *Id.* (emphasis omitted).

Here, Petitioner is challenging both the Government's failure to provide *Casas* hearings to all class members and the constitutional sufficiency of those hearings as they are being implemented.  Furthermore, several of the claims alleged in Petitioner's Complaint relate to procedural protections not present in *Casas* hearings, including (a) the right to a transcript of the hearing; (b) the right to appointed counsel; and (c) consideration of the length of detention for any given detainee.  As such, Respondent's objection to producing any information relating to *Casas* hearings is unreasonable and should be rejected by the Court.

The Government's remaining objections are either boilerplate objections about overbreadth, vagueness, and privacy, or nonsensical objections about the scope of the request for A-file information.  The Government asserts General Objection Nos. 9 and 10, which are boilerplate objections listing every possible privilege or privacy objection that could apply and stating (without explanation) that the request is overbroad and burdensome.  As to privilege or privacy, during the meet and confer between counsel, the Government failed to clarify what particular privilege it is asserting.  Any privacy objections cannot be valid, as Class Counsel represent class members who seek their own A-files.  As to overbreadth and burden, the Government has failed to explain why a request for class members' A-file information is overbroad and how it would be burdensome for Respondents to produce the class members' A-

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**63**

file information.  The Government also claims that the discovery requests as to the A-files are vague because they do not specify a time period.  This objection makes no sense: Petitioner clearly requests information from October 1, 2006 onward only.  That time frame is explicit either in the discovery request itself or in the definition of "PROLONGED DETAINEE."

Finally, at the meet and confer conference of counsel, Petitioner's counsel proposed a compromise. Petitioner's counsel suggested that the Government produce the A-files of individuals on the Government's roster of class members (and agree to continue to produce A-files along with updates to the roster).  Petitioner's counsel were prepared to withdraw numerous requests for information contained in the A-files—including Document Request No. 2 to DOJ and Interrogatory No. 2 to DHS—if the Government agreed to the compromise.  Among other things, Petitioner's proposal would eliminate any need for the Government to conduct a manual review of the A-files (and address its objections regarding the burden of such a review), because Petitioner's counsel are prepared to conduct this review upon receipt of the A-files.  Respondents' counsel stated that Respondents would consider this proposal, but over a month later, Respondents have not responded with an answer.

3.    Respondents' Contentions

a.    ***Relevance of Documents Requested***

As discussed above, see Section II.A, supra, Petitioners have repeatedly described this action as involving a "pure question of law" that has "nothing to do" with the individual facts of any detainee.  In addition, Petitioners argued before the Ninth Circuit that "regardless of the particular posture of their respective cases, all class members who have been incarcerated for a prolonged period of time are entitled to an individualized hearing" to justify continued detention.  Petitioner's Opening Brief, No. 08-56156 [Dkt # 6], at 44.  Petitioners rejected the argument that the

differences in the operation of the statutes at issue precluded class certification, stating that "those differences are irrelevant here." *Id.* at 30.

Petitioners now argue that it needs to obtain the individual A-files (and "immigration court records") based on the generalized and largely non-specific argument that the files contain "highly relevant" and "critical information" regarding "each class member's detention and immigration case." *See* Petitioners' Contentions, *supra* at pp. 58-60. Petitioners totally contradict their previous position that earned them class certification by asserting that they are entitled to engage in an "aggregate factual inquiry" to discover the individual circumstances of each class member, because those individual facts are material to this case.

Petitioners provide this Court with exactly three specific reasons why they need to have the files of every detainee in this case: (1) to determine the "accuracy" of custody reviews (which, Respondents note, only goes to aliens detained under section 1231(a)); (2) to show, for each detainee, "the related deprivation of time with family and loss of job opportunities;" and (3) to show the total number of days in detention, which will help clarify the "cost incurred by DHS to detain each class member." Everything else they offer is couched in vague and general language about the need for "aggregate data" within the due process framework they think the Court should follow.

Petitioners' request for the A-files should be disallowed because the information they seek is not relevant to their legal challenge that every alien, *regardless of individual circumstances*, is entitled by the Constitution to a bond hearing after six months in detention, and that no statute authorizes detention for any period beyond six months. However, rather than decide this discovery issue in the abstract or against the backdrop of Petitioners' vague and largely unspecified assertions of need, it is instructive to consider their claimed need for the demanded A-

1   files and immigration court records against the statutory and constitutional issues

2   involved in this case.

3                    **(1) Section 1236(a) Detainee Files**

4        In seeking the A-file and court records of every class member, Petitioners

5   necessarily demand the files of each sub-class member, including the individual files

6   of each alien detained pursuant to 8 U.S.C. §1231(a)(6).  That statute governs the

7   detention of aliens ordered removed and whose continued custody is subject to

8   custody reviews conducted by ICE.  8 U.S.C. § 1231; see also 8 C.F.R. §§ 241.4,

9   241.13, and 241.14.  Petitioners seek to obtain the A-files of each of these class

10  members to determine "whether an individual who received a custody review . . . was

11  ordered detained when the facts in his record suggest that he does not pose a danger or

12  flight risk."  *See supra* at Section III.A.3.

13       Petitioners want the A-files of section 1231(a) detainees to try and establish that

14  for some detainees there was insufficient evidence to support a finding, on an

15  individual basis, that those detainees posed a danger or flight risk.  By seeking the

16  individual A-files of section 1236(a) detainees, Petitioners appear to be preparing an

17  argument that for certain groups of detainees (for example, a group of aliens with no

18  criminal record, or group with substantial ties to the community, etc.) the custody

19  determinations they received are inadequate.  But that goes against the core challenge

20  in this case (as it applies to section 1236(a) aliens) that all aliens are entitled to a bond

21  hearing when they have been detained for six months, regardless of their individual

22  circumstances.  Petitioners claim that the only constitutionally adequate process for

23  determining whether continued detention is justified is a bond hearing.

24       Under Petitioners' theory, as framed by their Complaint, the adequacy of the

25  custody review process as applied on an individual basis is not at issue because the

26  custody review process, no matter how fully and properly applied, is constitutionally

27  inadequate on its face.  In other words, Petitioners contend that there are no set of

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**66**

individual circumstances where the custody review process will be constitutionally adequate as applied to any alien detained for six months or longer. However, if that is true, then it is totally irrelevant how well that constitutionally inadequate custody review process worked or did not work for class members on an individualized basis.

The argument that section 1231(a)(6) aliens are entitled to a bond hearing because the custody review process – even at its best – is constitutionally inadequate is not new. Counsel for Petitioners, in another case, have recently presented this Court with substantially the same challenge to the prolonged detention of section 1231(a)(6) detainees. *See Diouf v. Mukasey*, No. 06-07452-TJH (C.D. Cal. Sept. 9, 2009). In that case, the American Civil Liberties Union argued that bond hearings were necessary because the custody review process was facially insufficient to justify prolonged detention. *Id.* Counsel also argued, alternatively, that the custody review process was inadequate as applied to Diouf's individual circumstances. But the as-applied argument was separate and distinct from the broader statutory and constitutional challenge asserted in that case. The same statutory and constitutional challenge is made in this case, and a review of *Diouf* demonstrates that the individual facts and circumstances of the detainee were irrelevant to the petitioner's argument. Petitioners cannot credibly argue that the individual facts they seek are relevant to substantially the same statutory and constitutional claim in this case.

### (2) Section 1226(c) Detainee Files

Petitioners also seek the A-files and court records of every class member detained under 8 U.S.C. § 1226(c). That statute governs the detention of aliens in removal proceedings who have committed certain serious criminal and terrorism-related offenses. *Id.* Detention under section 1226(c) is mandatory, not discretionary.

Petitioners have provided no basis for requesting the A-files of section 1226(c) detained aliens, nor can they. Even if Petitioners are correct that Mathews v. Eldridge governs this action (and it is far from established that it does), there is no

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**67**

1    administrative alternative to detention under 1226(c) to "balance" against an

2    immigration bond hearing.  Congress provided for mandatory detention by statute.

3    There is no "cost" of an alternative to detention to consider, because the cost-benefit

4    analysis Petitioners want this Court to engage in simply does not apply where

5    mandatory detention is concerned.

6         *Demore v. Kim* addressed the constitutionality of section 1226(c) and the issue

7    of prolonged detention under that statute.  The Supreme Court concluded that

8    mandatory detention was constitutional, and could continue beyond six months,

9    without regard to individualized showings of flight risk and danger.  *Demore*, 538

10   U.S. at 528.  In reaching its conclusion, the Court did not, as Petitioners argue,

11   "resolv[e] [the] question [of] whether due process required bond hearings by relying

12   on aggregate data concerning individual cases."  *See* Petitioners' Contentions, *supra* at

13   60.  Instead, as with every other case involving a challenge to prolonged immigration

14   detention, the Supreme Court engaged in a straightforward analysis of the rights of the

15   alien as compared to the compelling interest of the Government in continuing

16   detention.  That the Court cited the number of aliens nationwide who did not appear

17   for removal (a fact not material here) and the average length of removal proceedings

18   (a fact that was offered during briefing to the Supreme Court) is not, as Petitioners

19   argue, a basis to permit the type of discovery sought here.  In *Demore*, the Court did

20   not determine that the petitioner's detention was unconstitutionally prolonged by

21   looking at the length of his detention (which exceeded the average length of removal

22   proceedings in any event), but by engaging in a statutory analysis of Congress's

23   intent, the historic and substantial interests in ensuring the presence of aliens for

24   hearings, and the aliens' more limited liberty interests.  *Id.* at 526-528.

25        In contrast, Petitioners here argue that as a constitutional matter, all detention

26   becomes constitutionally prolonged at six months, a bright-line rule that was rejected

27   by the Court in *Demore*.  Moreover, the Court determined that the detention of

28

1  criminal aliens under section 1226(c) was constitutional even without a determination

2  of the individual's risk of flight or danger.  *Id.*  Petitioners cannot credibly claim that

3  *Demore* stands for the proposition that the individual facts and circumstances of each

4  detainee's risk of flight and danger must be weighed in undertaking the statutory and

5  constitutional analysis.  The A-files and individual court records of each class member

6  are irrelevant to the pure legal issues before this Court.[12]

7  ### (3) Section 1226(a) Detainee Files

8  Petitioners also seek the A-files and immigration court records of every class

9  member detained under 8 U.S.C. § 1226(a).  Put simply, that statute governs the

10  detention of aliens in removal proceedings who have made an entry into the United

11  States and who are not subject to detention under another statute.  *Id.*  Detention under

12  section 1226(a) is discretionary.  If ICE determines not to exercise its discretion and

13  release an alien under section 1226(a), the alien may seek a redetermination of his

14  custody at a hearing before an immigration judge who will determine whether the

15  alien poses a flight risk or danger.  See 8 C.F.R. § 236.

16  Consequently, class members detained under section 1226(a) are already

17  procedurally provided with a hearing before an immigration judge.  The challenge

18  Petitioners raise in this context, however, is that the immigration hearings the aliens

19  are provided with are constitutionally inadequate because such hearings are not

20  provided with counsel for the alien at the Government's expense; such hearings are

21  not transcribed; and such hearings follow constitutionally deficient standards of proof

22  _____

[12]  Respondents have already addressed *Matter of Joseph* hearings, *see supra* at
23  Section II.A.  However, regarding the A-files and court records, Petitioners make the
24  argument that they need to know the outcome of every *Joseph* hearing for each
detainee to determine the "accuracy" of those proceedings.   That argument is wholly
25  without merit.  It is inconceivable that the legal issues in this case require the
examination of each class member's file to determine whether an immigration judge
26  was correct or incorrect in finding, based on the alien's criminal offense, that the alien
27  was properly subject to section 1226(c).

28

1  and burden.  The individual records of aliens detained under section 1226(a) have no

2  bearing whatsoever on the determination of whether those procedures are

3  constitutional.  No information contained in class members' records could shed any

4  light on the legal issues presented in this regard.  The discovery as to these aliens

5  should be denied.

### (4) Section 1225(b) Detainee Files

7  Petitioners also seek the A-files of every class member detained under 8 U.S.C.

8  § 1225(b).  That statute governs the detention of aliens arriving in the United States

9  and other aliens who have not been admitted or paroled.  *Id.*  Detention under section

10  1225(b) is discretionary or mandatory, depending on the initial determination of a

11  claim of asylum.  See 8 U.S.C. § 1125(b)(1)(B)(IV), and aliens may only be released

12  under section 1225(b) through the entirely discretionary parole determination process

13  of 8 U.S.C. § 1182(d)(5).

14  The files of section 1225(b) detainees are irrelevant to this case because, even if

15  Petitioners are correct as the procedural due process framework applied, arriving

16  aliens have no constitutional right to due process regarding their admission or

17  exclusion.  *See, e.g., Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094 (9th Cir. 2004);

18  *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448 (9th Cir. 1995) (en banc).

19  Consequently, these aliens do not enjoy the kind of due process rights necessary to

20  trigger the due process "balancing" test that Petitioners cite to justify their expansive

21  request for A-files and court records for every class member.  The contents of the files

22  of section 1225(b) detainees is wholly irrelevant to this case.

### b.    *Undue Burden of Production*

24  If the Court orders Respondents to produce every A-file of every class member

25  (as Petitioners now define the term "Petitioner"), then Respondents maintain their

26  objection that the request is overly broad and unduly burdensome.

27

28

Petitioners' demand for the A-file of every class member includes, according to Petitioners, aliens "who were present in an ICE detention facility in the Central District on or after the date on which the original complaint was filed [in 2007] as long as they had been detained by ICE for more than six months at that time, even if they are no longer in the Central District," but detained somewhere.  Second Amended Complaint, ¶ 105.13

As a result, the scope of the A-file request includes not only the A-file for every detainee who has been detained for six months or longer and remains in detention in the Central District – a number that exceeds more than 300 detainees – but potentially hundreds more.  Based on Petitioners' interpretation of the class, this would include aliens who were detained for six months outside this district, but who were detained here for any period of time after that six month period, and who are now elsewhere.

The burden of simply identifying such individuals would be staggering.  To comply with the request for all class members, ICE would need to first identify every alien nationwide who has been detained for more than six months, then determine which of those aliens were ever detained in this district, and then determine whether their detention occurred in this district after they had been detained for six years.

---

[13]  As the Class Certification Order is presently worded, it includes potentially tens of thousands of aliens.  This Court certified a class of non-citizens who "are or were" detained for six months or longer.  However, in the version of the Petition and Complaint on which this Court entered class certification, Petitioners sought a class consisting of aliens who "are or will be" detained in the Central District, and who have been detained for six months or longer without a bond hearing.  *See* First Amended Petition [Dkt #4], ¶ 39.  It must be noted that during the meet and confer preceding the preparation of this joint stipulation, counsel for Petitioners pointed out the discrepancy between what was asked for and what was certified.  On October 14, 2010, Respondents informed Petitioners that they will file a motion to seek correction of the Class Certification Order, and Petitioners have indicated they may agree to a stipulation.

Once the class members were identified, obtaining their A-files would also require a massive effort. A-files of aliens are not centrally stored, and they are not kept electronically. A-files are kept in paper form, and are not always maintained by ICE, even when an alien is in detention. If a class member is in removal proceedings, the A-file could be with ICE in the Los Angeles Field Office, or even at another field office; it could be at ICE headquarters in Washington for custody review; it could be with DHS counsel for a hearing before an immigration judge; it could be with the Department of Justice for district or appellate court litigation; it could be with USCIS for action on an application or petition for immigration benefits. There is no central case file tracking, and locating the files themselves would take considerable time and require considerable dedicated resources. If located, the files – which, depending on the length of removal proceedings and immigration benefits applied for, can range between a few dozen pages to more than 1000 pages – would then have to be reviewed by ICE and counsel for claims of privilege, Privacy Act protections, and other considerations. A privilege log would have to be prepared and reviewed, and redactions made.

Under those circumstances, and in light of Petitioners' stated reasons for seeking the A-files, Respondents have more than met their burden of showing that the production of the A-files of each class member is unduly burdensome.

Then ICE would have to conduct a file-by-file review of every alien detained in the Central District in the last four years to determine, first, whether they were detained for six months, and, second, whether any period of their detention during the six months (even for one day) occurred in the Central District. Such an undertaking would encompass potentially thousands of aliens and would impose extraordinarily undue burden on ICE.

**B.    Statistical and Aggregate Information**

1.     Text of Interrogatory No. 2 to DOJ and Document Request No. 4 to DHS, and Government's Responses

**INTERROGATORY NO. 2 to DOJ:**

State all facts RELATING TO the aggregate outcomes of all BOND HEARINGS, CASAS HEARINGS, or hearings pursuant to *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999) for PROLONGED DETAINEES for each fiscal year from 2006 to the date of this request (regardless of whether it was before or after their detention became prolonged, i.e., more than six months), including the total number who were ordered to be released, the total number who were ordered to be continued in detention, and the total number who were ordered to be released on bond but remained in detention because the bond was not posted.

**OBJECTION AND RESPONSE:**

(1)     *See* General Objections 1, 3, 4, 5, 4, and 9 - 11 above. Respondent notes that this interrogatory contains at least 3 distinct subparts.

(2)     Respondent further objects that the interrogatory is vague.  Respondent does not know what Petitioner is asking for.  The term "aggregate outcomes" is undefined and vague.

(3)     Respondent further objects that the interrogatory is irrelevant, overly broad, and unduly burdensome because the interrogatory seeks information for any PROLONGED DETAINEE's case about any hearing under *Matter of Joseph*, but *Matter of Joseph* hearings are irrelevant to this action, particularly where the class members have been identified as those who have not been afforded a hearing to determine whether their detention is justified.  If Petitioner contends that a *Matter of Joseph* hearing is an individualized custody hearing of the type sought in the relief requested, then any alien who has received such a hearing falls outside the class, which is defined as "all non-citizens within the Central District of California who: (1) are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) *have not been afforded a hearing to determine whether their detention is justified*."  However, if Petitioner contends that a *Matter of Joseph* hearing is not an individualized bond hearing of the type sought in the

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

73

relief requested, then *Matter of Joseph* hearing information is irrelevant. Any relevance such information may have is outweighed by the overly burdensome nature of producing the information requested in response to such an overly broad interrogatory.

(4)     Respondent further objects that the interrogatory is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit his request to an appropriate time frame.

## REQUEST FOR PRODUCTION NO. 4 to DHS:

All electronic database records created on or after October 1, 2006 RELATING TO the detention of PROLONGED DETAINEES, including the relevant part of the Detention and Removal Information Management System (DRIMS), the Enforce Integrated Database (EID), and the Deportable Alien Control System (DACS) databases.

### OBJECTION AND RESPONSE:

(1)     See General Objections 1 - 4, and 9 - 10 above.

(2)     Respondent further objects that the request is also irrelevant, overly broad, and unduly burdensome because it seeks all "detention" documents, regardless of their nature.  It is also vague because documents related to detention is unclear.

(3)     Respondent further objects that the request is also irrelevant, overly broad, and unduly burdensome because it seeks all "detention" documents, regardless of whether they are duplicative of other documents found in the identified databases.

(4)     Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the request to an appropriate time frame.

(5)     Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

(6)     Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231.  The request is irrelevant and overly broad.

1              2.        Petitioner's Contentions

2          Through discovery, Petitioner sought aggregate information maintained in

3    Government databases about prolonged detainees in the Central District of California.

4    Petitioner is aware of several databases that contain aggregate information about class

5    members' detention and removal cases.  These databases include:  DRIMS (Detention

6    and Removal Information Management System), EID (Enforce Integrated Database),

7    DACS (Deportable Alien Control System), and GEMS.[14]  Because the Government

8    may maintain other databases as well, Petitioner's discovery requests asked for other

9    aggregate information about prolonged detainees. *See* Interrogatory No. 2 to DOJ.

10   The information contained in these databases is wholly relevant to this action and

11   critical to the Court's due process analysis.

12         Respondents assert several stock objections in response to Petitioner's request

13   for this aggregate information, all of which the Court should reject.  <u>First</u>, the

14   Government's primary objection here —as with almost all of the discovery that

15   Petitioner seeks—is that the case involves only questions of law, despite the fact that

16   resolution of the legal question here requires a factual inquiry.  <u>Second</u>, the

17   Government objects to Petitioner's request for information about prolonged detainees,

18   a group that encompasses both class members and individuals who satisfy the class

19   definition, but who have already been released by the Government, even though this

20   information is necessary to establish the inadequacy of the Government's existing

21   detention procedures.  <u>Third</u>, the Government objects to Petitioner's use of the term

---

[14] The Government has provided information from those databases to counsel in other cases.  *See*, *e.g.,* Interrogatories #1, 2, 3, 5, and 12 to Alejandro Rodriguez's First Set of Interrogatories to Department of Homeland Security; Interrogatories # 2, 7, 11, and 12 to Alejandro Rodriguez's First Set of Interrogatories to Department of Justice; Requests for Production # 4, 7, 8, 9, 16, 18, 21, 22, 25 in Alejandro Rodriguez's First Set of Document Requests to Department of Homeland Security; and Requests for Production # 4, 7, 8, 11, 12, 14, 15, 16, and 19 in Alejandro Rodriguez's First Set of Document Requests to Department of Justice.

28

"relating to."  Fourth, the Government objects to producing information about

hearings pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999), even though

the Government has relied on the adequacy of those hearings to defend the adequacy

of its detention scheme in the past, *see Demore*, 538 U.S. at 514 n.3, and even though

evidence submitted in *Joseph* hearings is very likely to demonstrate the presence or

absence of an adequate justification for detention in a given case.  Fifth, the

Government objects to the alleged vagueness of the terms "aggregate outcomes" and

"detention".  Finally, the Government also asserts several other boilerplate objections,

involving vagueness, privacy, and scope, which make little sense given the specificity

of the discovery requests at issue.

The Government's principal rationale for stonewalling Petitioner's discovery

requests is detailed in General Objection No. 1, which claims that Petitioner's

requests seek information not relevant to resolving the constitutional issue in this case

because that issue presents a pure question of law.

The Government's objection rests on confusion concerning the nature of the

legal question at issue in this case.  The question of whether the statutes at issue

and/or the Due Process Clause require the type of hearings that the class members

seek is indeed a question of law, but, as courts have repeatedly recognized, the legal

analysis that the courts must undertake is informed by the relevant facts.  *See, e.g.*,

*Demore v. Kim*, 538 U.S. 510 (2003) (resolving question whether due process

required bond hearings by relying on aggregate data concerning individual cases);

*Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1507-08 (C.D. Cal. 1988) (resolving

procedural due process claim by reference to facts about "a substantial number of

class members"); *Morales-Izquierdo v. Gonzalez*, 486 F.3d 484, 496 (9th Cir. 2007)

(en banc)  (relying on data concerning the "error rate" to assess sufficiency of

additional process in removal proceedings); *Humphries v. County of Los Angeles*, 554

F.3d 1170, 1200 (9th Cir. 2009) (utilizing error rate in system similar to the one at issue in assessing due process claim).

Similarly, here, fact discovery of aggregate information about prolonged detainees will be necessary to resolve the due process question at issue.  *See, e.g.*, *Big Lagoon Rancheria v. California*, 700 F.Supp.2d 1169, 1180 (N.D. Cal. 2010) (granting discovery in dispute involving legal claim between Native American tribe and State of California) ("The Tribe also disputes the State's characterization of the issue as a 'purely legal question'…As stated above, the Court agrees with the Tribe that additional facts-beyond those contained in the record of negotiations-may be relevant and are discoverable here, particularly given the broad federal discovery rules.") (internal citations omitted).

Respondents' reliance on the Ninth Circuit's class certification opinion in this case, *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009), is misplaced.  The Ninth Circuit's opinion in *Rodriguez* was concerned only with class certification. Thus, in stating that "[t]he particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question…", the Ninth Circuit was not suggesting that the parties were foreclosed from fact discovery. *Rodriguez*, 591 F.3d at 1124.  Rather, the Ninth Circuit was simply reasoning that the unique facts of each class member's immigration case did not render the class unsuitable for certification.  Petitioner does not seek discovery in order to make claims about any given class member, but rather to make aggregate claims about detainees subject to prolonged detention as a whole.  As such, the Ninth Circuit's decision is not a barrier to discovery of the requested aggregate data.

In addition, the discovery requests regarding aggregate data are entirely relevant to the question of law at issue, for several reasons.  Under, Petitioner seeks aggregate information relating to whether and when the Government provides prolonged detainees with custody determinations, including custody reviews pursuant to 8 C.F.R.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

77

241.4, hearings pursuant to *Casas-Castrillon*, parole determinations pursuant to 8 C.F.R. 235.2, and bond hearings under 8 U.S.C. 1226(a).  This information is relevant to demonstrating whether individuals who do not pose a sufficient risk of danger or flight are actually released through the Government's existing processes.  Discovery of this information will inform the Court's analysis as to whether the Government's procedures are adequate to satisfy the demands of due process, as measured against the Government's justifications for detention.  *See e.g.*, *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008); *United States v. Salerno*, 481 U.S. 739 (1987).  Similarly, under *Mathews v. Eldridge*, information about the accuracy of the Government's existing processes directly relates to the "risk of erroneous deprivation" posed by those processes.

Second, Petitioner seeks aggregate data relating to the length of removal proceedings and the length of detention suffered by class members.  This information is critical to demonstrating the extent of the deprivation of liberty suffered by class members.  As the length of detention increases, so does the deprivation of liberty—and the corresponding justification that the Government presents for such detention in any available proceeding should be greater.  *Cf. United States v. Accetturo*, 783 F.2d 382, 388 (1986) (advocating renewed bail hearings where pre-trial detention has gone on for a long period of time because "[i]n some cases, the evidence admitted at the initial detention hearing, evaluated against the background of the duration of pretrial incarceration and the causes of that duration, may no longer justify detention."); *Zadvydas v. Davis*, 533 U.S. at 690-91 (holding that immigration detention must bear a "reasonable relation" to its purpose and that due process requires a sufficiently strong justification that "outweighs the individual's constitutionally protected interest in avoiding physical restraint.")  Data about the length of detention is also critical for determining how long class members will be detained if they do not get the process they seek in this action.

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

78

1  <u>Third</u>, Petitioner seeks aggregate information relating to the outcomes of

2  individuals' removal proceedings.  This data directly relates to the reliability and

3  accuracy of the Government's existing custody determinations.  The data would

4  reveal, for instance, whether individuals whom the Government chose to detain for

5  prolonged periods of time ultimately prevailed on a form of relief based on their

6  strong equities.  *See, e.g.,* 8 U.S.C. § 1229a(a) (cancellation of removal); 8 U.S.C. §

7  1229a(b) (adjustment of status); 8 U.S.C. § 1229a(c) 8 U.S.C. § 1229c (voluntary

8  departure); 8 U.S.C. § 1182(h) (waiver of inadmissibility); 8 U.S.C. § 1158 (asylum);

9  8 U.S.C. § 1231(b)(3) (withholding); 8 C.F.R. § 208.18 (Convention Against Torture).

10  Discovery of this information would inform the Court's analysis of whether the

11  Government's existing procedures result in the detention of individuals who do not

12  pose a sufficient danger or flight risk.  *See, e.g.*, *Casas-Castrillon v. Dep't of*

13  *Homeland Security*, 535 F.3d 942 (9th Cir. 2008).  Framed in terms of the *Mathews*

14  test, this data is crucial to allowing the Court to properly analyze the "risk of

15  erroneous deprivation" of the Government's existing processes.

16  Respondents' second group of objections to the discovery requests regarding

17  aggregate data relate to the alleged breadth of the requests.  Respondents assert

18  General Objection Nos. 2 and 4, which essentially argue that the discovery requests

19  are overbroad because they seek information "with respect to aliens outside the class."

20  These objections are meritless.  Petitioner's requests are not overbroad, as they

21  are relevant to the class members' due process claims.  Petitioner requires this

22  information related to non-class members because it will demonstrate the outcomes in

23  cases of individuals who would have been class members but whose cases have since

24  been completed.  Logically, Petitioner cannot obtain these outcomes as to individuals

25  who are currently detained in the class as their cases have not concluded and they

26  have not been released.  The discovery relating to the outcomes of non-class

27  members' cases are sought because they would demonstrate the insufficiency of the

28

Government's existing procedures.  For example, a non-class member who was detained and not released after a custody review, but who later won his case on cancellation grounds based on a showing of positive equities, would tend to demonstrate that the Government's current procedure of custody reviews is insufficient to safeguard current class members' due process rights.  Thus, Respondents' argument that the discovery requests are overbroad as to non-class members fails.

Respondents also exaggerate the breadth of Petitioner's discovery requests by arguing that the requests would even apply to aliens detained for only one day in the Central District for a consular interview.  To the contrary, Petitioner's counsel has clarified that Petitioner is only seeking information about individuals who are class members or would have been class members but for their release.

With regard to Respondents' argument that Petitioner's discovery requests would apply to individuals detained under *Zadvydas v. Davis*, 533 U.S. 678 (2001), at the meet and confer conference of counsel, Petitioner's counsel made clear to Respondents' counsel that the class does not include those people, and that Petitioner does not seek data concerning their cases.

The Government also objects to Petitioner's use of the term "relating to."  This objection makes little sense, given the specificity of the requests.  Furthermore, Respondents have failed to provide an adequate explanation of the basis for this objection.  Rather than speculate as to Respondent's logic for this objection, Petitioner contends that the term "relating to" is self-explanatory and sufficiently clear to communicate the discovery that Petitioner seeks.

The Government also objects to producing aggregate data about hearings pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999).  A "*Joseph* hearing" is provided to a detainee who claims that he is not covered by § 1226(c).  At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien,

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**80**

1  was not convicted of the predicate crime, or that the INS is otherwise substantially

2  unlikely to establish that he is in fact subject to mandatory detention.   *See* 8 CFR §

3  3.19(h)(2)(ii) (2002);  *see also Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL

4  339053 (BIA 1999).

5       The Government erroneously argues that producing information about *Joseph*

6  hearings is irrelevant, overly broad and unduly burdensome. As an initial matter,

7  Petitioner rejects the Government's suggestion that a *Joseph* hearing is an

8  individualized custody review sought in the relief requested. At a *Joseph* hearing, an

9  Immigration Judge determines whether an individual is "properly included" in the

10  mandatory detention category based on the likelihood that DHS will prevail on its

11  charge of removability.  Plainly, the purpose and nature of a *Joseph* hearing is distinct

12  from the relief requested, *i.e.*, a constitutionally adequate hearing to review the

13  Petitioner's detention.

14       Evidence relating to *Joseph* hearings is highly relevant to this action.  *Joseph*

15  hearings are part of the Government's custody review procedures; Petitioner contends

16  that those procedures are inadequate to protect due process rights.  As such, this

17  evidence may demonstrate the inadequacy of the Government's custody review

18  procedures, a key factor in proving the unconstitutionality of its detention practices.

19  Furthermore, information about detainees' *Joseph* hearings would provide information

20  about the likelihood of success on the merits in the detainees' cases, which is relevant

21  to examining the accuracy of the Government's procedures.  Accordingly, the

22  Government's unexplained objections that the requests for information related to

23  *Joseph* hearing are "irrelevant, overly broad and overly burdensome" are without

24  merit.

25       The Government next objects to the alleged vagueness of the terms "aggregate

26  outcomes" and "detention."  It is unclear why the government finds these terms to be

27  unclear.  Petitioner seeks information relating to the normal range of information

28

1   associated with outcomes of bond hearings, *Joseph* hearings, and *Casas* hearings and

2   detention: decision to detain, the length of detention, the date of release, etc.

3        The Government's remaining objections are either boilerplate objections about

4   overbreadth, vagueness, and privacy, or nonsensical objections about the scope of the

5   request for aggregate information.  The Government asserts General Objection Nos. 9

6   and 10, which are boilerplate objections listing every possible privilege or privacy

7   objection that could apply and stating (without explanation) that the request is

8   overbroad and burdensome.  As to privilege or privacy, during the meet and confer

9   between counsel, the Government failed to clarify what particular privilege it is

10  asserting.  As to overbreadth and burden, the Government has failed to explain why a

11  request for data that the Government already aggregates and stores would be

12  burdensome for Respondents to produce.  The Government also claims that the

13  discovery requests are vague because they do not specify a time period.  This

14  objection makes no sense: Petitioner clearly requests information from October 1,

15  2006 onward only.  That time frame is explicit either in the discovery request itself or

16  in the definition of "PROLONGED DETAINEE."  Moreover, the Government's

17  separate argument here that the request is burdensome because there could be

18  duplication is easily resolved by the parties stipulating to exclude any duplications.

19       Finally, at the meet and confer conference between counsel, the Government

20  agreed to withdraw its objections regarding regulations, policy directives, policy

21  guidelines, or other written procedures to implement 8 U.S.C. § 1225(b).

22            3.    Respondents' Contentions

23        ***"Aggregate" Outcomes of Matter of Joseph and Casas Hearings and***

24        ***Immigration Proceedings***

25       Petitioners argue that they are entitled to "aggregate" data regarding the

26  outcomes of *all* immigration proceedings and *Matter of Joseph* and *Casas* hearings for

27  anyone detained for six months or longer in the past four years, regardless of whether

28

1    they are currently a member of the class.  Petitioners' contentions set forth exactly the

2    same arguments regarding the relevance of individual information that they assert

3    with regard to their claimed need for A-Files and immigration court records.  Those

4    re-asserted arguments were addressed by Respondents in their contentions concerning

5    the A-Files and immigration court records at Section III.A.3, *supra*.  For the sake of

6    the convenience of the Court, Respondents' contentions set forth in that section of the

7    Joint Stipulation are reasserted and incorporated herein.

8    　　　The only specific basis Petitioners claim for needing to discover the outcomes

9    of the individual immigration proceedings (including the outcomes of any judicial

10   review before a district court or any court of appeals) and the outcomes of *Matter of*

11   *Joseph* and *Casas* hearings is their assertion that the Court cannot engage in a

12   statutory construction and constitutional interpretation of the detention provisions at

13   issue without knowing the individual results of each person's immigration

14   proceedings.  Petitioners make the astonishing claim that the Court cannot assess the

15   constitutionality of detaining an alien beyond six months unless, it knows, for

16   example, whether "a non-class member who was detained and not released after a

17   custody review, but who later won his case on cancellation grounds based on a

18   showing of positive equities," because that  "would tend to demonstrate that the

19   Government's current procedure of custody reviews is insufficient to safeguard

20   current class members' due process rights."  That makes no sense.  That argument

21   assumes that the decision to detain an alien during the pendency of his removal

22   proceedings can somehow be fairly judged right or wrong by the specific legal relief

23   he or she ultimately is awarded at the end of those proceedings.  That also assumes

24   that during the period of the removal proceedings, ICE should make custody

25   determinations on the basis of an outcome on the merits of a removal proceeding that

26   has not yet been decided.  But most importantly, this request seeks information of

27   individuals in the class – and far beyond the class – that has no bearing on or

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**83**

relevance to the statutory and constitutional interpretation at hand.  *See supra*, Sections II.A and III.A.3 (discussing issues of relevance concerning individual information).

Separate and apart from this objection, the Court cannot overlook the incredible burden this would place on DHS and EOIR.  It would require those agencies to identify, gather, and compile *all* information concerning any immigration merits hearing, Board of Immigration Appeals decision, district court decision, and court of appeals decision on each and every person detained for six months or longer, and who spent *any part of that detention* in the Central District of California since 2006.  It would then require culling and reviewing information from the collected files (again, A-files are kept in paper format) – a monumental task requiring individual review of each individual file to identify documents "relating to" (an extraordinarily broad term) the "outcomes" of merits and other proceedings.  The resources this would require are impossible to even begin to estimate.

### *Data from Electronic Databases*

Petitioners also argue that they are entitled to *all* information about detained aliens – including aliens outside the class – contained in any electronic database maintained by DHS or DOJ.  Yet nowhere in their contentions do Petitioners offer any showing of why computer-stored documents are particularly relevant to the statutory and constitutional interpretation issues of law in this case.  Rather, Petitioners simply cut-and-paste their contentions from earlier portions of this stipulation to argue, generally, that they are entitled to "aggregate data" to support their case.  Petitioners also argue that Respondents have provided electronic database information in other cases, but that argument is without any meaning.  The fact that electronic documents have been produced in other cases does not mean that they are to be produced in every case.  Petitioners must show how the information in those databases is relevant.  And

for the reasons described above, *see* supra at Sections II.A and III.A.3, the individual information Petitioners seek is not relevant to the claims at issue.

**C.    Written Policies and Practices**

1.    Text of Interrogatory No. 7 to DHS and Document Request No. 3 to DOJ

**DHS INTERROGATORY NO. 7:**

Identify all PERSONS with knowledge of Respondent's policies, procedures, practices, forms, and trainings applicable to CUSTODY DETERMINATIONS provided to PROLONGED DETAINEES.

**OBJECTION AND RESPONSE:**

(1)    *See* General Objections 1, 3 - 7, and 9 - 10 above.

(2)    Respondent further objects that the interrogatory is irrelevant and overly broad because it seeks information regarding a bond hearing by an immigration judge (pursuant to *Casas-Castrillon* or otherwise), even though the class is defined as "all non-citizens within the Central District of California who:  are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) *have not been afforded a hearing to determine whether their detention is justified.*" Because the class is defined as those detainees detained for longer than six months who have not received a hearing, the interrogatory is irrelevant and overly broad.

(3)    Respondent further objects to the interrogatory to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b).  Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

(4)    Respondent further objects to the interrogatory to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231.  The interrogatory is irrelevant and overly broad.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**85**

## **DOJ REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS RELATING TO the Department of Homeland Security's (DHS's) and Respondent's policies, procedures, or practices for providing BOND HEARINGS, CASAS HEARINGS, or hearings pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999), that apply, or have at any time since October 1, 2006 applied, to PROLONGED DETAINEES.

## **OBJECTION AND RESPONSE:**

(1)    *See* General Objections 1, 3, 4, 6, and 9 - 10 above.

(2)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because the request seeks information for any PROLONGED DETAINEE's case about any hearing under *Matter of Joseph*.  If Petitioner contends that a *Matter of Joseph* hearing is an individualized custody hearing of the type sought in the relief requested, then any alien who has received such a hearing falls outside the class, which is defined as "all non-citizens within the Central District of California who: (1) are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) *have not been afforded a hearing to determine whether their detention is justified*." However, if Petitioner contends that a *Matter of Joseph* hearing is not an individualized bond hearing of the type sought in the relief requested, then *Matter of Joseph* hearing documents are irrelevant.

(3)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the request to an appropriate time frame.

(4)    Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**86**

(5)    Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231, the request is irrelevant and overly broad.

2.    Petitioner's Contentions

Through discovery, Petitioner seeks copies of the Government's policies and practices for detention hearings.  The Government asserts several unfounded objections to these requests.  The Government's primary objection here —as with almost all of the discovery that Petitioner seeks—is that the case involves only questions of law, despite the fact that resolution of the legal question here requires a factual inquiry.  However, the policies and practices governing the hearings provided to current and past class members are clearly relevant to any due process claim -- because such information demonstrates what the Government's current hearing practices are.  Second, the Government objects to Petitioner's request for information about prolonged detainees, a group that encompasses both class members and individuals who satisfy the class definition, but who have already been released by the Government, even though this information is necessary to establish the inadequacy of the Government's existing detention procedures.  Third, the Government objects to Petitioner's use of the term "relating to."    Fourth, the Government objects to producing information about hearings pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999), even though the Government has relied on the adequacy of those hearings to defend the adequacy of its detention scheme in the past, *see Demore*, 538 U.S. at 514 n.3, and even though evidence submitted in *Joseph* hearings is very likely to demonstrate the presence or absence of an adequate justification for detention in a given case.  Fifth,  the Government objects to any discovery pertaining to its implementation of *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), even though Petitioner's claims include a challenge to the adequacy of *Casas*

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

87

1  hearings.  <u>Sixth</u>, the Government objects that Petitioner is attempting to challenge the

2  regulations and directives of the agency; and that Petitioner is somehow seeking to

3  challenge the "discretionary application of any detention provision."  *See, e.g.* DHS

4  Interrogatory 7.  <u>Finally</u>, the Government also asserts several other boilerplate

5  objections, involving vagueness, privacy, and scope, which make little sense given the

6  specificity of the discovery requests at issue.

7        The Government's principal rationale for stonewalling Petitioner's discovery

8  requests is detailed in General Objection No. 1, which claims that Petitioner's

9  requests seek information not relevant to resolving the constitutional issue in this case

10  because that issue presents a pure question of law.

11        The Government's objection rests on confusion concerning the nature of the

12  legal question at issue in this case.  The question of whether the statutes at issue

13  and/or the Due Process Clause require the type of hearings that the class members

14  seek is indeed a question of law, but, as courts have repeatedly recognized, the legal

15  analysis that the courts must undertake is informed by the relevant facts.  *See, e.g.*,

16  *Demore v. Kim*, 538 U.S. 510 (resolving question whether due process required bond

17  hearings by relying on aggregate data concerning individual cases); *Orantes-*

18  *Hernandez v. Meese*, 685 F.Supp. 1488, 1507-08 (C.D. Cal. 1988) (resolving

19  procedural due process claim by reference to facts about "a substantial number of

20  class members"); *Morales-Izquierdo v. Gonzalez*, 486 F.3d 484, 496 (9th Cir. 2007)

21  (en banc)  (relying on data concerning the "error rate" to assess sufficiency of

22  additional process in removal proceedings); *Humphries v. County of Los Angeles*, 554

23  F.3d 1170, 1200 (9th Cir. 2009) (utilizing error rate in system similar to the one at

24  issue in assessing due process claim).

25        Similarly, here, fact discovery of policies and procedures applicable to

26  prolonged detainees will be necessary to resolve the due process question at issue.

27  *See, e.g.*, *Big Lagoon Rancheria v. California*, 700 F.Supp.2d 1169, 1180 (N.D. Cal.

28

---

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS'
MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   2010) (granting discovery in dispute involving legal claim between Native American

2   tribe and State of California) ("The Tribe also disputes the State's characterization of

3   the issue as a 'purely legal question'…As stated above, the Court agrees with the

4   Tribe that additional facts-beyond those contained in the record of negotiations-may

5   be relevant and are discoverable here, particularly given the broad federal discovery

6   rules.") (internal citations omitted).

7       Respondents' reliance on the Ninth Circuit's class certification opinion in this

8   case, *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009), is misplaced.  The

9   Ninth Circuit's opinion in *Rodriguez* was concerned only with class certification.

10  Thus, in stating that "[t]he particular characteristics of the Petitioner or any individual

11  detainee will not impact the resolution of this general statutory question…", the Ninth

12  Circuit was not suggesting that the parties were foreclosed from fact discovery.

13  *Rodriguez*, 591 F.3d at 1124.  Rather, the Ninth Circuit was simply reasoning that the

14  unique facts of each class member's immigration case did not render the class

15  unsuitable for certification.  Petitioner does not seek discovery in order to make claims

16  about any given class member, but rather to make class claims about policies and

17  procedures applicable to detainees subject to prolonged detention as a whole.  As

18  such, Petitioner is entitled to discovery of the Government's policies and procedures.

19      Here, the discovery requests regarding policies and procedures is entirely

20  relevant to the question of law at issue.  First, Petitioner seeks policies and procedures

21  relating to whether and when the Government provides prolonged detainees with

22  custody determinations and hearings, including custody reviews pursuant to 8 C.F.R.

23  241.4, hearings pursuant to *Casas-Castrillon*, parole determinations pursuant to 8

24  C.F.R. 235.2, and bond hearings under 8 U.S.C. 1226(a).  This information is relevant

25  to demonstrating whether individuals who do not pose a sufficient risk of danger or

26  flight are actually released through the Government's existing processes.  Discovery

27  of this information will inform the Court's analysis as to whether the Government's

28

procedures are adequate to satisfy the demands of due process, as measured against the government's justifications for detention.  *See e.g.*, *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008); *United States v. Salerno*, 481 U.S. 739 (1987).  Similarly, under *Mathews v. Eldridge*, information about the accuracy of the government's existing processes directly relates to the "risk of erroneous deprivation" posed by those processes.

Respondents' second group of objections to the discovery requests regarding policies and procedures relate to the alleged breadth of the requests.  Respondents assert General Objection Nos. 2 and 4, which essentially argue that the discovery requests are overbroad because they seek information "with respect to aliens outside the class."

These objections are meritless.  Petitioner's requests are not overbroad, as they are relevant to the class members' due process claims.  Petitioner requires this information related to class members and former class members because it will demonstrate that the Government's current policies and procedures are constitutionally inadequate.  Thus, Respondents' argument that the discovery requests are overbroad as to non-class members fails.

Respondents also exaggerate the breadth of Petitioner's discovery requests by arguing that the requests would even apply to aliens detained for only one day in the Central District for a consular interview.  To the contrary, Petitioner's counsel has clarified that Petitioner is only seeking information about individuals who are class members or would have been class members but for their release.

With regard to Respondents' argument that Petitioner's discovery requests would apply to individuals detained under *Zadvydas v. Davis*, 533 U.S. 678 (2001), at the meet and confer conference of counsel, Petitioner's counsel made clear to Respondents' counsel that the class does not include those people, and that Petitioner does not seek information concerning their cases.

1       The Government also objects to Petitioner's use of the term "relating to."  This

2   objection makes little sense, given the specificity of the requests.  Furthermore,

3   Respondents have failed to provide an adequate explanation of the basis for this

4   objection.  Rather than speculate as to Respondent's logic for this objection, Petitioner

5   contends that the term "relating to" is self-explanatory and sufficiently clear to

6   communicate the discovery that Petitioner seeks.

7       The Government also objects to producing policies and procedures about

8   hearings pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999).  A "*Joseph*

9   hearing" is provided to a detainee who claims that he is not covered by § 1226(c).  At

10  the hearing, the detainee may avoid mandatory detention by demonstrating that he is

11  not an alien, was not convicted of the predicate crime, or that the INS is otherwise

12  substantially unlikely to establish that he is in fact subject to mandatory detention.

13  *See* 8 CFR § 3.19(h)(2)(ii) (2002);  *see also Matter of Joseph*, 22 I. & N. Dec. 799,

14  1999 WL 339053 (BIA 1999).

15      The Government erroneously argues that producing policies and procedures

16  about *Joseph* hearings is irrelevant, overly broad and unduly burdensome. As an initial

17  matter, Petitioner rejects the Government's suggestion that a *Joseph* hearing is an

18  individualized custody review sought in the relief requested. At a *Joseph* hearing, an

19  Immigration Judge determines whether an individual is "properly included" in the

20  mandatory detention category based on the likelihood that DHS will prevail on its

21  charge of removability.  Plainly, the purpose and nature of a *Joseph* hearing is distinct

22  from the relief requested, *i.e.*, a constitutionally adequate hearing to review the

23  Petitioner's detention.

24      Evidence relating to *Joseph* hearings is highly relevant to this action.  *Joseph*

25  hearings are part of the Government's custody review procedures; Petitioner contends

26  that those procedures are inadequate to protect due process rights.  As such, this

27  evidence may demonstrate the inadequacy of the Government's custody review

28

1   procedures, a key factor in proving the unconstitutionality of its detention practices.

2   Accordingly, the Government's unexplained objections that the requests for

3   information related to *Joseph* hearings are "irrelevant, overly broad and overly

4   burdensome" are without merit.

5        The Government next objects to any discovery pertaining to its implementation

6   of *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), even

7   though the Government has also claimed in this litigation that its provision of *Casas*

8   hearings satisfy its due process obligations, and even though Petitioner's claims

9   include a challenge to the adequacy of *Casas* hearings.  In *Casas*, the Ninth Circuit

10  determined that Section 1226(a) provided authority for the Attorney General to release

11  a detainee putatively subject to mandatory detention whose immigration case had been

12  pending at the Ninth Circuit for several years.  *Id.*  "Because the prolonged detention

13  of an alien without an individualized determination of his dangerousness or flight risk

14  would be 'constitutionally doubtful,'" the Court concluded "that Section 1226(a) must

15  be construed as requiring the Attorney General to provide the alien with such a

16  hearing."  *Id.* (emphasis omitted).

17       Here, Petitioner is challenging both the Government's failure to provide *Casas*

18  hearings to all class members and the constitutional sufficiency of those hearings as

19  they are being implemented.  Furthermore, several of the claims alleged in Petitioner's

20  Complaint relate to procedural protections not present in *Casas* hearings, including (a)

21  the right to a transcript of the hearing; (b) the right to appointed counsel; and (c)

22  consideration of the length of detention for any given detainee.  As such,

23  Respondent's objection to producing any information relating to *Casas* hearings is

24  unreasonable and should be rejected by the Court.

25       Next, at the meet and confer conference between counsel, the Government

26  agreed to withdraw its objections regarding regulations, policy directives, policy

27  guidelines, or other written procedures to implement 8 U.S.C. § 1225(b).

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**92**

1    Finally, the Government's remaining objections are either boilerplate objections

2    about overbreadth, vagueness, and privacy, or nonsensical objections about the scope

3    of the request for aggregate information.  The Government asserts General Objection

4    Nos. 9 and 10, which are boilerplate objections listing every possible privilege or

5    privacy objection that could apply and stating (without explanation) that the request is

6    overbroad and burdensome.  As to privilege or privacy, during the meet and confer

7    between counsel, the Government failed to clarify what particular privilege it is

8    asserting.  As to overbreadth and burden, the Government has failed to explain why a

9    request for policies and procedures that the Government already promulgates and

10    implements would be burdensome for Respondents to produce.  The Government also

11    claims that the discovery requests are vague because they do not specify a time period.

12    This objection makes no sense: Petitioner clearly requests information from October

13    1, 2006 onward only.  That time frame is explicit either in the discovery request itself

14    or in the definition of "PROLONGED DETAINEE."

15            3.     Respondents' Contentions

16    As an initial matter, and contrary to Petitioners' assertion, Respondents did not

17    withdraw an objection to producing documents related to policies and procedures for

18    providing parole determinations under 8 U.S.C. § 1225(b).  Petitioners either misheard

19    or misunderstand Respondents' position, which was discussed in detail at the parties'

20    conference on September 8, 2010.  In any event, Respondents sent a letter after the

21    parties' conference in which Respondents withdrew several objections (based on

22    unclear definitions used by Petitioners), and memorialized its withdrawals in a letter

23    to counsel on September 20, 2010.

24    Again, Petitioners provide no explanation as to how these documents would be

25    specifically relevant to the legal issues before this Court.  Instead, Petitioners invoke

26    the same general assertions regarding the need for information to show "error rate"

27    they state elsewhere in this stipulation.  Petitioners' request is irrelevant to the legal

28

issues involved in this case, because petitioners' challenge is not to the implementation of any of the detention provisions set forth in 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), or 1231(a), but to the constitutionality of the provisions themselves when applied to any alien detained for six months or longer.

For example, policies and procedures (and other documents "relating to" such policies or procedures) may show how ICE implements the statutory provisions at § 1182(d)(5) and related regulations regarding parole determinations for arriving aliens, but that information is irrelevant. Petitioners' claim is that the statutory and regulatory provisions, *no matter how implemented*, are unconstitutional for any alien detained for six months or longer. The request seeks information irrelevant to this case. *See supra* at Sections II.A and III.A.3 (incorporated here by reference).

Moreover, Petitioners have never narrowed the universe of possibly responsive documents from one that includes any and all documents "related to" policies or procedures. Any number of types of documents may be "related to" such policies or procedures. The request is overbroad.

## D.    Information Relating to the Costs

1.    Text of Interrogatory No. 13 to DHS and Document Request No. 13 to DOJ

### DHS INTERROGATORY NO. 13:

For each fiscal year from 2006 through 2009, state the costs expended by Respondent per year, and per detainee (on average), on physically detaining PROLONGED DETAINEES, broken down by staffing costs of employing and maintaining detention and removal officers, and costs to house PROLONGED DETAINEES.

### OBJECTION AND RESPONSE:

(1)    *See* General Objections 1, 4, and 9 - 11 above. Respondent notes that this interrogatory has at least 2 distinct subparts.

(2)    Respondent further objects that the interrogatory is irrelevant, overly broad, and unduly burdensome.  To the extent the interrogatory asks for the specified information with respect to the cost of detention or conducting certain immigration proceedings with respect to PROLONGED DETAINEES, the interrogatory is irrelevant to this action.

(3)    Respondent further objects that the interrogatory is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the interrogatory to an appropriate time frame.

## DOJ REQUEST FOR PRODUCTION NO. 13:

All DOCUMENTS RELATING TO the cost to Respondent of conducting BOND HEARINGS and CASAS HEARINGS for PROLONGED DETAINEES for each fiscal year from 2006 to 2009, including but not limited to the costs of providing an immigration judge, an adversarial hearing, transcript, interpreters, written notice, and transportation of detainees from a detention facilities to the situs of the review or hearing; developing recommendations, drafting notices, decisions, and other DOCUMENTS in connection with such reviews or hearings; and rendering custody or release determinations.

### OBJECTION AND RESPONSE:

(1)    *See* General Objections 1 - 4, 6, and 9 - 10 above.

(2)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome.  To the extent the request asks for the specified documents with respect to the cost of detention or conducting certain immigration proceedings with respect to PROLONGED DETAINEES, the request is irrelevant to this action.

(3)    Respondent further objects that the request is irrelevant, overly broad, and unduly burdensome because Petitioner has failed to limit the request to an appropriate time frame.

2.    Petitioner's Contentions

Petitioner's Interrogatory No. 13 to DHS seeks cost information relating to the costs of physical detention, including the costs of supervising detainees and the costs

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

95

of housing detainees.  Petitioner's Document Request No. 13 to DOJ seeks cost information relating to the costs of providing custody determinations, including costs of providing an immigration judge, an adversarial hearing, transcript, interpreters, written notice, and transportation of detainees from a detention facilities to the situs of the review or hearing.

Respondents assert several objections in response to Petitioner's request for this cost information, all of which the Court should reject.  First, the Government's primary objection here —as with almost all of the discovery that Petitioner seeks—is that the case involves only questions of law, despite the fact that resolution of the legal question here requires a factual inquiry.  Second, the Government objects to Petitioner's request for information about prolonged detainees, a group that encompasses both class members and individuals who satisfy the class definition, but who have already been released by the Government, even though this information is necessary to establish the inadequacy of the Government's existing detention procedures.  Third, the Government objects to Petitioner's use of the term "relating to."  Fourth, the Government objects to any discovery pertaining to its implementation of *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), even though Petitioner's claims include a challenge to the adequacy of *Casas* hearings.  Fifth, the Government also asserts several other boilerplate objections, involving vagueness, privacy, burden, and scope, which make little sense given the specificity of the discovery requests at issue.

Respondents asserted General Objection No. 1 in response to the discovery requests related to cost information, arguing that discovery is not necessary because this case turns on a pure question of law.  As explained above, though this case may ultimately turn on a question of law, courts look to facts in assessing the question of law at issue.  *See, e.g.*, *Demore v. Kim*, 538 U.S. 510 (2003); *Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1507-08 (C.D. Cal. 1988); *Morales-Izquierdo v. Gonzalez*,

486 F.3d 484, 496 (9th Cir. 2007); *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1200 (9th Cir. 2009); *Big Lagoon Rancheria v. California*, 700 F.Supp.2d 1169, 1180 (N.D. Cal. 2010) (granting discovery in dispute involving legal claim between Native American tribe and State of California) ("The Tribe also disputes the State's characterization of the issue as a 'purely legal question'…As stated above, the Court agrees with the Tribe that additional facts-beyond those contained in the record of negotiations-may be relevant and are discoverable here, particularly given the broad federal discovery rules.") (internal citations omitted).  Petitioner's cost-related discovery requests are relevant even though this case turns on a question of law.

Respondents' reliance on the Ninth Circuit's class certification opinion in this case, *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009), is misplaced.  The Ninth Circuit's opinion in *Rodriguez* was concerned only with class certification.  Thus, in stating that "[t]he particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question…," the Ninth Circuit was not suggesting that the parties were foreclosed from fact discovery.  *Rodriguez*, 591 F.3d at 1124.  Rather, the Ninth Circuit was simply reasoning that the unique facts of each class member's immigration case did not render the class unsuitable for certification.  Petitioner does not seek discovery in order to make claims about any given class member, but rather to make class claims about detainees subject to prolonged detention as a whole.  As such, the Ninth Circuit's decision is not a barrier to discovery of the cost information sought here.

With regard to procedural due process, the third factor of the *Mathews* test explicitly requires an analysis of  "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.  These two discovery requests quite obviously relate to this *Mathews* factor directly.  In order for Petitioner to assess any potential burden of the additional procedures he proposes, the

1   Government must provide Petitioner with a basis for establishing the fiscal and

2   administrative costs of the existing procedures.

3        Respondents' second group of objections to the discovery requests regarding

4   cost information relate to the alleged breadth of the requests.  Respondents assert

5   General Objection Nos. 2 and 4, which essentially argue that the discovery requests

6   are overbroad because they seek information "with respect to aliens outside the class."

7        These objections are meritless.  Petitioner's requests are not overbroad, as they

8   are relevant to the class members' due process claims.  Petitioner requires this cost

9   information related to class members and former class members because it will

10  demonstrate any potential burden of the additional procedures the class members

11  propose.  Thus, Respondents' argument that the discovery requests are overbroad as to

12  non-class members fails.

13       Respondents also exaggerate the breadth of Petitioner's discovery requests by

14  arguing that the requests would even apply to aliens detained for only one day in the

15  Central District for a consular interview.  To the contrary, Petitioner's counsel has

16  clarified that Petitioner is only seeking information about individuals who are class

17  members or would have been class members but for their release.

18       With regard to Respondents' argument that Petitioner's discovery requests

19  would apply to individuals detained under *Zadvydas v. Davis*, 533 U.S. 678 (2001), at

20  the meet and confer conference of counsel, Petitioner's counsel made clear to

21  Respondents' counsel that the class does not include those people, and that Petitioner

22  does not seek information concerning their cases.

23       The Government also objects to Petitioner's use of the term "relating to."  This

24  objection makes little sense, given the specificity of the requests.  Furthermore,

25  Respondents have failed to provide an adequate explanation of the basis for this

26  objection.  Rather than speculate as to Respondent's logic for this objection, Petitioner

27

28

---

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS'**
**MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**
**98**

contends that the term "relating to" is self-explanatory and sufficiently clear to communicate the discovery that Petitioner seeks.

The Government next objects to any discovery pertaining to its implementation of *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), even though the Government has also claimed in this litigation that its provision of *Casas* hearings satisfy its due process obligations, and even though Petitioner's claims include a challenge to the adequacy of *Casas* hearings. In *Casas*, the Ninth Circuit determined that Section 1226(a) provided authority for the Attorney General to release a detainee putatively subject to mandatory detention whose immigration case had been pending at the Ninth Circuit for several years. *Id*. "Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,'" the Court concluded "that Section 1226(a) must be construed as requiring the Attorney General to provide the alien with such a hearing." *Id* (emphasis omitted).

Here, Petitioner is challenging both the Government's failure to provide *Casas* hearings to all class members and the constitutional sufficiency of those hearings as they are being implemented. Furthermore, several of the claims alleged in Petitioner's Complaint relate to procedural protections not present in *Casas* hearings, including (a) the right to a transcript of the hearing; (b) the right to appointed counsel; and (c) consideration of the length of detention for any given detainee. As such, Respondent's objection to producing any information relating to *Casas* hearings is unreasonable and should be rejected by the Court.

As with virtually all of the discovery requests, Respondents also assert General Objection Nos. 9 and 10 in response to the discovery requests related to cost information. Again, General Objection No. 9 is a boilerplate objection listing every potential privilege and is, indeed, general. During the meet and confer between counsel, Respondents failed to provide any additional insight as to what particular

privilege they are asserting.  Privacy concerns cannot be an issue here, as much of this information would likely be produced in response to a Freedom Of Information Act request.  In fact, Petitioner's counsel informed Respondents' counsel that Petitioner has attempted to obtain as much public information as possible regarding costs, but this information must be produced in litigation.  General Objection No. 10, relating to overbreadth and burden, is also boilerplate.  Respondents have failed to explain why a request for information regarding specific expenses and costs is overbroad and how it would be burdensome for Respondents to produce this information.

Finally, Respondents object that Petitioner's discovery requests relating to cost information is not limited to an appropriate time frame.  At the meet and confer conference, Respondents' counsel failed to specify what time frame would be appropriate and did not offer a compromise of producing cost information for a more narrow time frame.  In fact, Petitioner's request for cost information for each fiscal year from 2006 to 2009 is more than reasonable.  Cost information from more than one fiscal year is necessary to avoid any unpredictable increases or decreases in cost that were attributable to the special circumstances of a specific year.  Petitioner's request for cost information from a three-year period is narrow while providing Petitioner with data from more than one fiscal year.

### 3.    Respondents' Contentions

#### *Relevance*

Petitioners rely on *Mathews v. Eldridge*, 424 U.S. at 335, as its sole source of support that the costs of the immigration bond hearings they seek are relevant to determining whether the Government's interests in this case outweigh whatever constitutional interests the alien enjoys.  However, Petitioners can cite to no case in which the issue of prolonged immigration detention has ever embraced the due process analysis of *Mathews*, or weighed the costs of providing immigration hearings to detainees either individually or with regard to all alien in the alien's circumstances.

1   Accordingly, to the extent Petitioners seek fiscal cost information regarding the

2   increased burden to the Government of providing immigration bond hearings or other

3   hearings, they can cite to no authority supporting the view that such costs have ever

4   been considered by any Court in considering the issues before this Court.  Not only

5   does that suggest that costs are not an appropriate area where statutory and

6   constitutional interpretation issues are posed by a case, but the lack of any such

7   analysis by any court where immigration detention is concerned militates against

8   Petitioners' threshold argument that that *Mathews* even applies in this case.

9        Petitioners also request a detailed breakdown of information regarding the costs

10  of detention.  This request indicates that Petitioners intend to argue that providing

11  immigration bond hearings will reduce the costs of detention to the Government.  As

12  described above, that argument lies far afield of the statutory and constitutional

13  interpretation issues in this case.  However, even if *Mathews* somehow did apply in

14  this case, under *Mathews* the factor of costs acts as a "plus factor" (or at best, a non-

15  factor) in a due process calculation in weighing the Government's interest.  *Mathews*,

16  424 U.S. at 348 (describing costs of providing additional administrative process as a

17  factor that weighs in the Government's favor).  Petitioners have provided no authority

18  for the notion that the factor of *savings* in costs to the Government weighs as a "plus

19  factor" for Petitioners in any due process analysis.  Such an argument would go

20  entirely against a long and well-developed line of cases that emphasize "that the

21  formulation of procedures [is] basically to be left within the discretion of the agencies

22  to which Congress had confided the responsibility for substantive judgments."

23  *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc*.,

24  435 U.S. 519, 525 (1978).[15]

25

26  _____

27  [15]   Again, Petitioners restate the same contentions that are found throughout this Joint
    Stipulation regarding the relevance of and need for this expansive discovery.

28  *(Footnote continued)*

*Undue Burden*

Finally, there is a significant and undue burden attached to responding to requests that either seek (1) documents "related to" the identification of costs, or (2) interrogatories that require Respondents to create a breakdown of costs, particularly on as large a scale and with the level of specificity of breakdown as demanded here.

Respondents first address the document requests for cost information. Presumably, in the absence of existing documents within Respondents' control that identifies the costs of providing the types of hearings specified, Petitioners demand the production of documents that will allow it to calculate the cost of providing the hearings identified in the request. The size of the universe of documents "related to" the costs of providing the hearings identified for the broad time period demanded is impossible to know. The exercise of identifying documents that would identify the cost information Petitioners seek would require the devotion of substantial resources, and would take an inordinately long period of time. That effort is not justified in light of the limited utility such cost information would have in this case; no other Court has ever relied on such cost information in determining the statutory and constitutional interpretation issues in a prolonged immigration detention case. The effort demanded by Petitioners is unduly burdensome.

That burden is not reduced in responding to an interrogatory requiring Respondents to identify and breakdown the costs of detention. Just determining the overall costs per year, and per detainee (as demanded), of detaining aliens for six months or longer would require monumental efforts on the part of DHS. DHS would have to determine the total costs of detaining aliens, and then cull from that information the cost of detaining those aliens detained for six months or longer, per year, per detainee. That task may not even be possible, and if it is possible, the utility

---

Respondents incorporate as if fully set forth herein their contentions regarding relevance. *See supra* at Sections II.A and III.A.3.

of such an accounting effort would be overwhelmingly burdensome given the limited utility such information would have in this case.  Again, as with the cost of providing a hearing, no court has ever considered the cost of detention in any prolonged immigration detention case involving the same legal questions of law posed here.  Petitioners' requests are unduly burdensome and should be disallowed.

## IV.    Disputed Issues as to Petitioner's Motion to Compel Further Responses to Requests for Admission from the Government

### A.    Request For Admission No. 1 to DHS

1.    Text of RFA and Government's Responses

**REQUEST FOR ADMISSION NO. 1 to DHS:**

Admit that Petitioners detained under 8 U.S.C. 1226(c) have not been provided with any bond hearing or other review of their detention, except for hearings pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999).

**RESPONSE:**

(1)    See General Objections 1, 2, and 8 above.

(2)    Respondent further objects that the request is vague to the extent it is unclear what is meant by "other review of their detention." That term could mean (a) any review by an immigration judge to determine whether an alien should be released from detention; (b) any determination by DHS as to whether an alien should be released on bond, parole, order of supervision, or other release not including an initial custody determination by DHS; or (c) any determination, whether by an immigration judge or DHS, as to whether an alien should be released on bond, parole, order of supervision, or other release, including an initial custody determination by DHS.

(3)    Respondent further admits that the request is vague to the extent it is unclear whether "Petitioners" includes all class members currently detained; all class members currently or previously detained for an unspecified period; or just the named representatives.  According to Petitioners, this could also include members that have been released or removed.

Without waiving the objections set forth above, Respondent admits that aliens detained pursuant to 8 U.S.C. § 1226(c) (including aliens detained for six months or longer) are generally not entitled to

receive an individualized bond hearing before an immigration judge.  8 U.S.C. § 1226(c) mandates detention for certain criminal aliens.  Barring a bond hearing before an immigration judge (a) under Casas-Castrillon v. Dep't of Homeland Sec'y, 535 F.3d 942 (9th Cir. 2008), or (b) under exceptional circumstances, including those outlined in 8 U.S.C. § 1226(c)(2), aliens detained under 8 U.S.C. § 1226(c) are generally not provided with an individualized bond hearing before an immigration judge concerning their detention.

### 2.     Petitioner's Contentions

The Government's answer to RFA No. 1 is non-responsive.  The RFA poses a simple factual question – do certain class members receive individualized bond hearings.  The Government, in response, states a series of objections that are baseless (as explained below) and then (a) hides behind a legal contention (that those class members are "not entitled" to a hearing); and (b) answers evasively, introducing vague terminology (such as "generally" and "under exceptional circumstances") into its answer, all of which make the Government's answer improper and non-responsive. The Petitioner is entitled to a straightforward answer to a simple RFA.

Nor do any of the Government's objections withstand scrutiny.  The Government's General Objection No. 1 is, as explained above, based upon a fundamentally incorrect premise: contrary to the Government's contentions, the Petitioner is entitled to conduct discovery in this action to present the facts that are necessary to inform the Court's legal analysis of the due process issues present in this case.  Moreover, this RFA seeks information at the very heart of the Petitioner's case: Does the Government give class members a hearing?  Petitioner believes the Government does not do so, and Petitioner is entitled to a direct answer to this simple, foundational question.

The Government's General Objection No. 2 – which claims that the discovery requests are overly broad because they seek information related to non-class

---

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**104**

members – is also entirely misplaced here.  The RFA seeks information regarding "Petitioners," a term that is defined to be synonymous with "class members."

Nor does the Government fare better with General Objection No. 8, which asserts a laundry list of privileges.  The fact of whether hearings are provided to the members of the certified class is not covered by any privilege.

Next, the Government asserts that the term "other review of detention" is impermissibly vague.  The Government asserts that there are several potential meanings of the term, but the Petitioner accepts the most narrow one offered by the Government – that the phrase means any review by an immigration judge to determine whether an alien should be released from detention.

The Government also asserts that the term "Petitioners" is impermissibly vague, but any purported confusion on the Government's side is baseless.  As just noted, the term "Petitioners" is specifically defined to mean all class members.

3.    Respondents' Contentions

Respondents note at the outset that while the parties engaged in a lengthy conference over their discovery disputes and have exchanged several letters and e-mails regarding their disagreements on the issues presented in this Joint Stipulation, the parties have never engaged in a substantive discussion with respect to any of the requests for admission propounded by Petitioners.  Accordingly, Respondents were unaware of Petitioners' positions regarding the objections until the parties' exchanged contentions in preparing this Joint Stipulation.

As Petitioners correctly note, Respondents stated objections based on issues of vagueness and other grounds, and Petitioners have now, in their contentions, responded for the first time to Respondents' concerns.  In light of Petitioners' contentions and their responses to Respondents' objections, Respondents will re-examine their objections and determine before a hearing on these issues whether certain objections will be withdrawn.

Respondents also understand that the burden of responding to a request for admission is less than the burden of responding to a request for documents or answering an interrogatory.  At the same time, the requirement of an admission or denial, and the binding nature of any admissions made, requires the responding party to take care and ensure that it is accurate in responding to a request for admission.

Bearing these considerations in mind, Respondents make the following contention:

Respondents are prepared to admit that as a general matter, aliens detained under section 1226(c) are not entitled to a bond hearing before an immigration judge.  However, class members detained under section 1226(c) at this time may not have been initially detained under that statute.  Consequently, Respondents maintain their objection that the request is burdensome to the extent the request requires an admission or denial based upon the individual review of the A-files of aliens to determine whether any alien has received a bond hearing at some point during the alien's detention.

**B.    Request For Admission No. 2 to DHS**

1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 2 to DHS:**

Admit that Respondent has no policy or procedure requiring it to notify individuals detained under 8 U.S.C. 1226(c) that they are entitled to request a hearing under Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999).

**RESPONSE:**

(1)    See General Objections 1, 2, and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)    Respondent further objects that the request calls for Respondent to admit or deny a legal conclusion that individuals are "entitled to request a hearing under Matter of Joseph."  Matter of Joseph is a legal opinion that speaks for itself.

2.    Petitioner's Contentions

None of the Government's objections supports the refusal of the Government to respond to this RFA.  As explained above, (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the substantive and procedural due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect both class members and non-class members; and (c) General Objection No. 8 is baseless because the fact that a policy exists (or does not exist) is not subject to any privilege.

The Government's objection that *Matter of Joseph* is irrelevant is also completely misplaced.  As explained above, the Government has defended its detention regime by relying on the hearings it purportedly provides under *Matter of Joseph*; indeed, the availability of such hearings was central to the government's defense in *Demore*.  Because Joseph hearings are part of the existing detention review procedures that the Government provides, information about them is highly relevant to this lawsuit.

The RFA asks for factual information regarding whether there is a policy or procedure in place whereby the Government notifies detainees regarding their right to a hearing under *Matter of Joseph*.  If the Government does not provide such notice – because, for example, the Government contends that it is not required by *Matter of Joseph* to do so – then the Government should simply admit the facts set forth in the RFA.

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

107

Finally, the Government's objection that *Matter of Joseph* "is a legal opinion that speaks for itself" is also completely misplaced.  The RFA asks for factual information regarding whether there is a policy or procedure in place whereby the Government notifies detainees regarding their right to a hearing under *Matter of Joseph*.  That is a factual question – or, at the most, a permissible RFA addressing a mixed question of law and fact.  *See* Fed. R. Civ. P. 36(a); *A. Farber & Partners v. Garber*, 237 F.R.D. 250, 255 (C.D. Cal. 2006).  Regardless of whether the Government does or does not provide notice, the Petitioner is entitled to a direct answer to this RFA.

> 3. Respondents' Contentions

Respondents' primary objection to this request is that *Joseph* hearings are irrelevant to the legal issues of statutory and constitutional interpretation in this case.  Respondents reassert and incorporate its discussion of the irrelevance of *Joseph* hearings in these contentions.  *See supra* at Section II.A and III.A.3.

**C.    Request For Admission No. 3 to DHS**

> 1. Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 3 to DHS:**

Admit that the Department of Justice has no policy or practice requiring the creation of transcripts of BOND HEARINGS and CASAS HEARINGS.

**RESPONSE:**

(1)    See General Objections 1, 2, 6, and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

(3)    Respondent objects that it is not in a position to comment on another agency's policy or lack of a policy.  The appropriate party to respond to this request is the Department of Justice.

2.      Petitioner's Contentions

None of the Government's objections supports the refusal of the Government to respond to this RFA.  As explained above, (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; and (c) General Objection No. 8 is baseless because the fact that a policy exists (or does not exist) is not subject to any privilege.

General Objection No. 6 is also not well taken.  The Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim here that detention hearings should be transcribed.  For example, if *Casas* hearings are generally not transcribed, it would support Petitioner's claim that there is a need for a court order requiring that transcripts be prepared for detention hearings given to class members.   If, however, transcripts are routinely prepared in *Casas* hearings, the Petitioner may seek follow-up discovery to rebut any claim by the Government that it would be unreasonably expensive here to prepare transcripts of detention hearings provided to class members.

The Government's relevance objection approaches the frivolous.  Part of the Petitioner's claim here is that class members are entitled to a hearing that is transcribed (in order to facilitate further administrative or judicial review of the hearing).

Finally, the Government's objection that DHS "is not in a position to comment on another agency's policy or lack of a policy" is baseless.  If DHS has relevant factual information in its possession, it is required to provide it to Petitioner in discovery.  DHS lawyers represent the Government in *Casas* hearings, and they obviously have information concerning whether or not those hearings are transcribed.

1  The Petitioner seeks factual information, not DHS's "comment" on the policy of

2  another agency.

3            3.        Respondents' Contentions

4         Respondents have withdrawn their objections and have admitted that there is no

5  policy or procedure requiring that "bond hearings," as Respondents understand that

6  term, are required to be transcribed.

7         Whether there is a policy or procedure requiring that *Casas* hearings be

8  transcribed is irrelevant to this case.  Not only have the issues of the adequacy of

9  *Casas* hearings[16] recently been taken up by the Ninth Circuit in three related cases –

10  *V. Singh v. Holder*, Case No. 08-71682 (9th Cir. Oct. 4, 2010); *Leonardo v.*

11  *Crawford*, Case No. 09-17495 (9th Cir. Oct. 4, 2010); *G. Singh v. Chertoff*, Case No.

12  09-56567 (9th Cir. Oct. 4, 2010) – but the conduct of *Casas* hearings falls outside this

13  class action.  "If an alien who would otherwise be a member of the class receives a

14  bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be

15  a member of the class." *Rodriguez*, 591 F.3d at 1118.  Accordingly, whether *Casas*

16  hearings are transcribed is irrelevant to this action.

17       **D.    Request For Admission No. 4 to DHS**

18            1.      Text of RFA and Government's Response

19         **REQUEST FOR ADMISSION NO. 4 to DHS:**

20              Admit that Respondent has no policy or practice requiring
    the creation of transcripts of interviews or any other proceedings
21    conducted as part of CUSTODY REVIEWS and PAROLE
    DETERMINATIONS.
22
23         **RESPONSE:**

24              (1)      See General Objections 1, 2, 5, 6 and 8 above.

25  _____

26  [16]   The aliens in the three cases argued and submitted on October 4, 2010 argued that
    *Casas* hearings are not constitutionally adequate because, among other things, they are
27  not properly noticed, they are  not transcribed, and because the burden of proof is not
    adequate.
28

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)    Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

(4)    Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231, the request is irrelevant and overly broad.

## 2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (d) General Objection No. 8 is baseless because the fact that a policy exists (or does not exist) is not subject to any privilege.

The parties have resolved the vagueness portion of General Objection No. 5.  The relevance portion of General Objection No. 5 is not well taken; for similar reasons to those stated above, the Government's practices in reviewing custody under 8 C.F.R. 241.4 are relevant to the Petitioner's claims here.

The Government's relevance objection is misplaced. The absence of transcripts in other proceedings relating to detention or custody review goes to the inadequacy of those procedures, and therefore highlights both the need for the robust detention hearings that Petitioner seeks for the class here and the need for transcripts to be prepared for them. The preparation of a transcript is a necessary step in ensuring any meaningful administrative and/or judicial review of the IJ's custody determination.

The Government's venue objection is also entirely baseless. Through this RFA, the Petitioner seeks to uncover facts that are directly relevant to the claims he brings on behalf of the class, and the Government has an obligation to respond. If there are claims in this case that the Government believes are subject to a legal defense (venue), that contention should be resolved through motion practice, not through an objection to discovery requests seeking factual information relevant to the claims asserted in the case.

So, too, the Government's final objection relating to the challenge of discretionary authority is also misplaced. The RFA seeks factual information relevant to the Petitioner's claims, not review of a discretionary determination, and the Government is obligated to respond.

### 3. Respondents' Contentions

Respondents' primary objection to this request is that the adequacy of custody reviews and parole determinations are not relevant to the legal issues of statutory and constitutional interpretation in this case. Respondents reassert and incorporate its discussion of the irrelevance of the implementation of the custody review or parole determination processes in these contentions. *See supra* at Section III.A.3.

### E. Request For Admission No. 5 to DHS

#### 1. Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 5 to DHS:**

        Admit that Respondent has no policy or practice of informing individuals who are eligible for a hearing under Casas-Castrillon v. Dep't of Homeland Sec'y, 535 F.3d 942 (9th Cir. 2008), that they are eligible for such a hearing.

**RESPONSE:**

        (1)     See General Objections 1, 2, 6, and 8 above.

        (2)     Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

        (3)     Respondent further objects that the request calls for Respondent to admit or deny a legal conclusion that individuals are "entitled to a hearing under Casas-Castrillon." Casas-Castrillon is a legal opinion that speaks for itself.

        2.     Petitioner's Contentions

        None of the Government's general objections supports the refusal of the Government to respond to this RFA. As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (d) General Objection No. 8 is baseless because the fact that a policy exists (or does not exist) is not subject to any privilege.

        The Government's relevance objection is also misplaced. One of Petitioner's claims in this action is that class members not only have a right to a detention hearing but also that they have a right to *notice* of their right to a detention

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**113**

1    hearing.  The Government's policy with regard to providing notice of *Casas* hearings

2    is directly relevant to this aspect of the Petitioner's claim, as argued above.

3            Finally, the Government's objection that *Casas* "is a legal opinion that

4    speaks for itself" is also completely misplaced.  The RFA asks for factual information

5    regarding whether individuals eligible for a *Casas* hearing are given notice of their

6    right to a hearing.  Unless the Government's position is that *no one* is eligible for a

7    *Casas* hearing, the RFA does not require the Government to admit any legal

8    contention at all.  Moreover, the RFA seeks only to determine facts relating to whether

9    there is a policy or procedure in place whereby the Government notifies detainees

10   regarding their right to a hearing under *Casas*.  That is a factual question – or, at the

11   most, a permissible RFA addressing a mixed question of law and fact.  *See* Fed. R.

12   Civ. P. 36(a); *A. Farber & Partners v. Garber*, 237 F.R.D. 250, 255 (C.D. Cal. 2006).

13   Regardless of whether the Government does or does not provide notice, the Petitioner

14   is entitled to a direct answer to this RFA.

15           3.    Respondents' Contentions

16           Whether there is a policy or procedure requiring provision of notice that an

17   alien is entitled to a *Casas* hearing is irrelevant to this case.  Not only have the issues

18   of the adequacy of *Casas* hearings recently been taken up by the Ninth Circuit in three

19   related cases – *V. Singh v. Holder*, Case No. 08-71682 (9th Cir. Oct. 4, 2010);

20   *Leonardo v. Crawford*, Case No. 09-17495 (9th Cir. Oct. 4, 2010); *G. Singh v.*

21   *Chertoff*, Case No. 09-56567 (9th Cir. Oct. 4, 2010), *see supra* at 112 – but the

22   conduct of *Casas* hearings falls outside this class action.  "If an alien who would

23   otherwise be a member of the class receives a bond hearing pursuant to *Casas-*

24   *Castrillon* or any other ruling they would cease to be a member of the class."

25   *Rodriguez*, 591 F.3d at 1118.  Accordingly, whether *Casas* hearings are transcribed is

26   irrelevant to this action.

27       **F.    Request For Admission No. 6 to DHS**

28

---

1.      Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 6 to DHS:**

Admit that some PROLONGED DETAINEES who are eligible for a CASAS HEARING under Casas-Castrillon v. Dep't of Homeland Sec'y, 535 F.3d 942 (9th Cir. 2008), do not receive such a hearing.

**RESPONSE:**

(1)      See General Objections 1, 2, 4, 5, 6 and 8 above.

(2)      Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)      Respondent further objects that the request calls for Respondent to admit or deny a legal conclusion that individuals are "entitled to request a hearing under Casas-Castrillon." Casas-Castrillon is a legal opinion that speaks for itself.

2.      Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA. As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (d) General Objection No. 8 is baseless because the fact that the Government does or does not provide *Casas* hearings to eligible detainees is not subject to any privilege.

General Objection No. 5 is baseless for the reasons stated above. Also, it does not even apply here, as it challenges a term ("CUSTODY REVIEW") that is not even used in this RFA.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**115**

1       General Objection No. 4 is baseless.  Although the Petitioner seeks to

2   obtain relief only for members of the certified class, he is entitled to obtain relevant

3   factual information regarding the circumstances of detention of others who have

4   experienced or are continuing to experience prolonged detention.

5       The Government's relevance objection approaches the frivolous.  *Casas*

6   hearings are part of the existing detention review procedures, which Petitioner

7   contends are unconstitutional.  In addition, the Government has defended its actions in

8   this case by arguing that its provision of *Casas* hearings to detainees obviates the need

9   for any relief in this case.  *See* Respondents' 9th Cir. Answering Brief at pp. 7, 18-19,

10  No. 08-56156.  Whether the Government fails to provide *Casas* hearings to class

11  members or other detainees who are entitled to such hearings is obviously relevant to

12  the claims that Petitioner asserts and the relief he seeks to obtain for the class.

13      Finally, the Government's objection that *Casas* "is a legal opinion that

14  speaks for itself" is also completely misplaced.  The RFA asks for factual information

15  regarding whether individuals eligible for a *Casas* hearing are given such hearings.

16  Unless the Government's position is that *no one* is eligible for a *Casas* hearing, the

17  RFA does not require the Government to admit any legal contention at all.  Moreover,

18  the RFA seeks only to determine facts relating to whether the Government is

19  providing detainees with a hearing to which they are entitled under *Casas*.  That is a

20  factual question – or, at the most, a permissible RFA addressing a mixed question of

21  law and fact.  *See* Fed. R. Civ. P. 36(a); *A. Farber & Partners v. Garber*, 237 F.R.D.

22  250, 255 (C.D. Cal. 2006).  Regardless of whether the Government does or does not

23  provide such hearings, the Petitioner is entitled to a direct answer to this RFA.

24      3.    Respondents' Contentions

25      Respondents first General Objection and the first specific objection set forth

26  above are related, in that the request seeks information that is not relevant to the

27  claims presented in this action.  Petitioners allege that every alien detained for six

28

months or longer is entitled to a bond hearing.  This is, as Petitioners admit, a legal issue of statutory and constitutional interpretation.  However, this request seeks to determine whether ICE is in compliance with *Casas-Castrillon*, in which the Ninth Circuit concluded that aliens who obtained a stay of removal from the Ninth Circuit on a petition for review challenging their administratively final order of removal were entitled to a bond hearing under 8 U.S.C. 1226(a).  Although the compliance issue raised by the request relates to the detention of certain aliens under section 1226(a), ICE's compliance with *Casas-Castrillon* is not at issue here.

Even if the request was relevant, the request is overly burdensome to the extent the request requires an admission or denial based upon the individual review of the A-files of aliens who were eligible to receive *Casas* hearings to determine whether any alien has received a *Casas* hearing at some point during the alien's detention. Because the request includes those who are not within the class, ICE would have to identify those aliens detained for six months or longer, and determine whether at any time after they were detained for six months they were detained in the Central District, and then, from that universe of aliens, determine which ones were entitled to a *Casas* hearing, and identify whether those aliens received *Casas* hearings.

### G.  Request For Admission No. 7 to DHS

    1.  Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 7 to DHS:**

Admit that Respondent has failed to provide CUSTODY REVIEW(S) within the time periods outlined in 8 C.F.R. 241.4(k) to every eligible PROLONGED DETAINEE.

**RESPONSE:**

(1)  See General Objections 1, 2, 4, 5 and 8 above.

(2)  Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**117**

constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

(3)     Respondent further objects that the request calls for Respondent to admit or deny a legal conclusion with regard to whether aliens are "eligible" to receive CUSTODY REVIEWS, as that term has been defined by Petitioner.

(4)     Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

(5)     Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231, the request is irrelevant and overly broad.

## 2.     Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 4 is baseless because Petitioner is entitled to obtain relevant factual information regarding the circumstances of detention of not only class members but also others who have experienced or are continuing to experience prolonged detention; (d) General Objection No. 5 is baseless because the Government's practices in providing custody reviews under 8 C.F.R. 241.4 are relevant to the Petitioner's claims here; and (e) General Objection No. 8 is baseless because the fact that the Government does or does not provide custody reviews within the time periods outlined in the Government's own regulation is not subject to any privilege.

1        The Government's relevance objection is not well taken.  Whether the

2  Government is failing to provide even the minimal custody reviews set forth in its

3  own regulations is directly relevant to whether or not the existing detention review

4  system complies with due process requirements.

5        The Government's objection that this RFA poses a legal contention is

6  also completely misplaced.  The RFA asks for factual information regarding whether

7  individuals eligible for a custody review under the Government's own regulations

8  actually receive the review within the time period specified in the regulation.  Unless

9  the Government's position is that *no one* is eligible for the custody review described

10  in its regulation, the RFA does not require the Government to admit any legal

11  contention at all.  Moreover, the RFA seeks only to determine facts relating to whether

12  the Government is providing detainees with a custody review to which they are

13  entitled under the regulations.  That is a factual question – or, at the most, a

14  permissible RFA addressing a mixed question of law and fact.  *See* Fed. R. Civ. P.

15  36(a); *A. Farber & Partners v. Garber*, 237 F.R.D. 250, 255 (C.D. Cal. 2006).

16  Regardless of whether the Government does or does not provide such custody reviews

17  in a timely fashion, the Petitioner is entitled to a direct answer to this RFA.

18        The Government's venue objection is also entirely baseless.  Through

19  this RFA, the Petitioner seeks to uncover facts that are directly relevant to the claims

20  he brings on behalf of the class, and the Government has an obligation to respond.  If

21  there are claims in this case that the Government believes are subject to a legal

22  defense (venue), that contention should be resolved through motion practice, not

23  through an objection to discovery requests seeking factual information relevant to the

24  claims asserted in the case.

25        So, too, the Government's final objection relating to the challenge of

26  discretionary authority is also misplaced.  The RFA seeks factual information relevant

27

28

to the Petitioner's claims, not review of a discretionary determination, and the Government is obligated to respond.

### 3.    Respondents' Contentions

Respondents' primary objection to this request is that the adequacy of custody reviews is not relevant to the legal issues of statutory and constitutional interpretation in this case.  Respondents reassert and incorporate its discussion of the irrelevance of the implementation of the custody review processes in these contentions.  *See supra* at Sections II.A and III.A.3.

Even if the request was relevant, the request is overly burdensome to the extent the request requires an admission or denial based upon the individual review of the A-files of aliens who were eligible to receive custody reviews to determine whether any alien has received a custody review at some point during the alien's detention.  Because the request includes those who are not within the class, ICE would have to identify those aliens detained for six months or longer, and determine whether at any time after they were detained for six months they were detained in the Central District, and then, from that universe of aliens, determine which ones were entitled to a custody review.

### H.    Request For Admission No. 8 to DHS

#### 1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION 8 to DHS:**

Admit that, as part of its CUSTODY REVIEW process, Respondent has not conducted in-person interviews for all PROLONGED DETAINEES with final administrative removal orders, pursuant to 8 C.F.R. 241.4 or 8 C.F.R. 1241.4.

**RESPONSE:**

(1)    See General Objections 1, 2, 4, 5 and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a

constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)     Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.     (4)  Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231, the request is irrelevant and overly broad.

2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing practices, which affect class members; (c) General Objection No. 4 is baseless because Petitioner is entitled to obtain relevant factual information regarding the circumstances of detention of not only class members but also others who have experienced or are continuing to experience prolonged detention; (d) General Objection No. 5 is baseless because the Government's practices in providing custody reviews are relevant to the Petitioner's due process claims here; and (e) General Objection No. 8 is baseless because the fact that the Government does or does not conduct individual interviews as part of the custody review process is not subject to any privilege.

The Government's relevance objection approaches the frivolous.  The quality of the Government's existing custody review processes is directly relevant to Petitioner's claim here that additional review procedures are required by the Due Process Clause.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

121

1        The Government's venue objection is also entirely baseless.  Through

2    this RFA, the Petitioner seeks to uncover facts that are directly relevant to the claims

3    he brings on behalf of the class, and the Government has an obligation to respond.  If

4    there are claims in this case that the Government believes are subject to a legal

5    defense (venue), that contention should be resolved through motion practice, not

6    through an objection to discovery requests seeking factual information relevant to the

7    claims asserted in the case.

8        So, too, the Government's final objection relating to the challenge of

9    discretionary authority is also misplaced.  The RFA seeks factual information relevant

10   to the Petitioner's claims, not review of a discretionary determination, and the

11   Government is obligated to respond.

12       3.    Respondents' Contentions

13       Respondents' primary objection to this request is that the adequacy of custody

14   reviews is not relevant to the legal issues of statutory and constitutional interpretation

15   in this case.  Respondents reassert and incorporate its discussion of the irrelevance of

16   the implementation of the custody review processes in these contentions.  *See supra* at

17   Sections II.A and III.A.3.

18       Even if the request was relevant, the request is overly burdensome to the

19   extent the request requires an admission or denial based upon the individual review of

20   the A-files of aliens who were eligible to receive custody reviews to determine

21   whether any alien was interviewed as part of custody reviews during the alien's

22   detention.  Because the request includes those who are not within the class, ICE would

23   have to identify those aliens detained for six months or longer, and determine whether

24   at any time after they were detained for six months they were detained in the Central

25   District, and then, from that universe of aliens, determine which ones received a

26   custody review, and which aliens of that universe were interviewed as part of their

27   custody review.

28

1

## I.    Request For Admission No. 9 to DHS

2

    1.    Text of RFA and Government's Response

3

### REQUEST FOR ADMISSION NO. 9 to DHS:

4

    Admit that Respondent has failed to provide a PAROLE

5

DETERMINATION for some arriving alien asylum seekers in the

Central District of California who pass a credible fear determination, as

6

required by ICE Policy Directive No. 11002.1, since the implementation

of that Directive.

7

### RESPONSE:

8

    (1)    See General Objections 1, 2, and 8 above.

9

    (2)    Respondent further objects that the request is

10

irrelevant to Petitioner's claim that all aliens detained for six months or

longer under any general detention statute of the Immigration and

11

Nationality Act are required by the Act and the Constitution to a

12

constitutionally adequate individualized hearing concerning  their

detention before an immigration judge.

13

    (3)    Respondent further objects to the request to the extent

14

it seeks information to challenge regulations, policy directives, policy

guidelines, or other written procedures to implement 8 U.S.C. § 1225(b).

15

Challenges to such procedures, etc., must be brought in the United States

16

District Court for the District of Columbia.

    (4)    Respondent further objects to the request to the extent

17

it seeks to challenge the discretionary application of any detention

18

provision, including, but not limited to DHS's discretionary authority

under 8 U.S.C. §§ 1225, 1226, or 1231, the request is irrelevant and

19

overly broad.

20

    2.    Petitioner's Contentions

21

    None of the Government's general objections supports the refusal of the

22

Government to respond to this RFA.  As explained above: (a) General Objection No.

23

1 is baseless because the Petitioner is entitled to discovery in this matter to obtain

24

factual information relevant to the Court's legal analysis of the due process issues in

25

this matter; (b) General Objection No. 2 is baseless because the RFA seeks

26

information regarding the Government's existing practices, which affect class

27

members; and (c) General Objection No. 8 is baseless because the fact that the

28

1   Government does or does not conduct parole determinations is not subject to any

2   privilege.

3           The Government's relevance objection approaches the frivolous.  The

4   fact that some class members are seeking asylum, pass a credible fear determination,

5   and yet still do not receive a parole determination (and therefore remain in detention)

6   – if it is true – would directly support the Petitioner's claim here that additional review

7   procedures are required by the Due Process Clause.

8           The Government's venue objection is also entirely baseless.  Through

9   this RFA, the Petitioner seeks to uncover facts that are directly relevant to the claims

10   he brings on behalf of the class, and the Government has an obligation to respond.  If

11   there are claims in this case that the Government believes are subject to a legal

12   defense (venue), that contention should be resolved through motion practice, not

13   through an objection to discovery requests seeking factual information relevant to the

14   claims asserted in the case.

15           So, too, the Government's final objection relating to the challenge of

16   discretionary authority is also misplaced.  The RFA seeks factual information relevant

17   to the Petitioner's claims, not review of a discretionary determination, and the

18   Government is obligated to respond.

19          3.     Respondents' Contentions

20        Respondents' primary objection to this request is that the adequacy of parole

21   determinations is not relevant to the legal issues of statutory and constitutional

22   interpretation in this case.  Respondents reassert and incorporate its discussion of the

23   irrelevance of the implementation of the parole determination processes in these

24   contentions.  *See supra* at Sections II.A and III.A.3.

25        Even if the request was relevant, the request is overly burdensome to the

26   extent the request requires an admission or denial based upon the individual review of

27   the A-files of aliens who were eligible to receive or requested parole determinations to

28

determine whether any alien has received a parole determination.  Because the request

includes those who are not within the class, ICE would have to identify those aliens

detained for six months or longer, and determine whether at any time after they were

detained for six months they were detained in the Central District, and then, from that

universe of aliens, determine which ones were eligible to receive a parole

determination and which ones requested one.

### J.    Request For Admission No. 10 to DHS

1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 10 to DHS:**

Admit that some persons in the Central District of California who request BOND HEARINGS have waited longer than 3 months to receive such a hearing.

**RESPONSE:**

(1)    See General Objections 1, 2, and 8 above.

(2)    Respondent further objects that the request is vague. It is unclear to Respondent whether "have waited longer than 3 months to receive such a hearing" means that they have waited longer than three months since a hearing was requested, or that they were detained and did not receive a hearing within their first three months of detention.

(3)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

(4)    Respondent further objects that this request is overly broad and unduly burdensome because there is no time frame specified and this would encompass all persons, regardless of whether they are a class member.

2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the

Government to respond to this RFA.  As explained above: (a) General Objection No.

1 is baseless because the Petitioner is entitled to discovery in this matter to obtain

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

125

1   factual information relevant to the Court's legal analysis of the due process issues in
2   this matter; (b) General Objection No. 2 is baseless because the RFA seeks
3   information regarding the Government's existing practices, which affect class
4   members; and (c) General Objection No. 8 is baseless because the fact that the
5   Government does or does not delay requested bond hearings is not subject to any
6   privilege.

7       The Government's vagueness objection is not well taken.  In context, it is
8   clear that the RFA seeks to uncover whether some detainees have waited more than
9   three months to receive a bond hearing since their detention.  In any event, Petitioner
10  has clarified any ambiguity by his representation here.

11      The Government's relevance objection approaches the frivolous.  In a
12  case in which the Petitioner challenges prolonged detention on statutory and
13  constitutional grounds, and in which the Government defends, in part, on the ground
14  that its existing policies and practices are sufficient to comply with both the governing
15  statutes and the U.S. Constitution, the existence of extended, lengthy, and unjustified
16  delays in the Government's current practices is highly relevant to Petitioner's claim.

17      Finally, the Government's objection regarding the time frame of the RFA
18  is easy to address: the Petitioner will limit the RFA to class members and other
19  individuals detained in the Central District since October 1, 2008.

20          3.    Respondents' Contentions

21      Although Petitioners clarified what they meant by the phrase "waited more than
22  3 months" to receive a bond hearing, this does not make the request any less
23  objectionable.  The request is extraordinarily broad in scope.  By definition it includes
24  (1) all persons, (2) detained for three months in the Central District after October 1,
25  2008 (although this clarification simply raises the question of whether that includes
26  aliens detained for three months entirely in the Central District, or whose detention
27  occurred in part at any time in the Central District after October 1, 2008), and (3) who

28

requested a bond hearing.  For the reasons described elsewhere in this Joint Stipulation, simply identifying those individuals will constitute a significant and unduly burdensome undertaking.

Moreover, the request is irrelevant to the claims in this case.  Petitioners challenge detention beyond six months as unconstitutional.  It is entirely unclear what relevance the lack of a bond hearing at three months has on the issues presented in this action.

## K.    Request For Admission No. 11 to DHS

### 1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 11 to DHS:**

Admit that some PROLONGED DETAINEES who request CASAS HEARINGS have waited longer than 3 months to receive such hearings.

**RESPONSE:**

(1)    See General Objections 1, 2, 6, and 8 above.

(2)    Respondent further objects that the request is vague. It is unclear to Respondent whether "have waited longer than 3 months to receive such hearings" means that they have waited longer than three months since a hearing was requested, or that they were detained and did not receive a hearing within their first three months of detention.

(3)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

### 2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks

information regarding the Government's existing practices, which affect class members; (c) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (d) General Objection No. 8 is baseless because the fact that the Government does or does not delay requested *Casas* hearings is not subject to any privilege.

The Government's vagueness objection is not well taken. In context, it is clear that the RFA seeks to uncover whether some detainees have waited more than three months to receive a *Casas* hearing since being detained. In any event, Petitioner has clarified any ambiguity by his representation here.

The Government's relevance objection approaches the frivolous. In a case in which the Petitioner challenges prolonged detention on statutory and constitutional grounds, and in which the Government defends, in part, on the ground that its existing policies and practices are sufficient to comply with both the governing statutes and the U.S. Constitution, the existence of extended, lengthy, and unjustified delays in the Government's current practices in providing *Casas* hearings to class members and other detainees is highly relevant to Petitioner's claim.

3.    Respondents' Contentions

Although Petitioners clarified what they meant by the phrase "waited more than 3 months" to receive a *Casas* hearing, this does not make the request any less objectionable. The request is extraordinarily broad in scope. By definition it includes (1) all persons, (2) detained for three months in the Central District after October 1, 2008 (although this clarification simply raises the question of whether that includes aliens detained for three months entirely in the Central District, or whose detention occurred in part at any time in the Central District after October 1, 2008), and (3) who requested a *Casas* hearing. For the reasons described elsewhere in this Joint Stipulation, simply identifying those individuals will constitute a significant and unduly burdensome undertaking.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**128**

Moreover, the request is irrelevant to the claims in this case. Petitioners allege that every alien detained for six months or longer is entitled to a bond hearing. This is, as Petitioners admit, a legal issue of statutory and constitutional interpretation. However, this request seeks to determine whether ICE is in compliance with *Casas-Castrillon*, in which the Ninth Circuit concluded that aliens who obtained a stay of removal from the Ninth Circuit on a petition for review challenging their administratively final order of removal were entitled to a bond hearing under 8 U.S.C. 1226(a). Although the compliance issue raised by the request relates to the detention of certain aliens under section 1226(a), ICE's compliance with *Casas-Castrillon* is not at issue here.

## L.    Request For Admission No. 12 to DHS

### 1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 12 to DHS:**

Admit that in CASAS HEARINGS conducted in the Central District of California, transcripts are not routinely maintained or prepared.

**RESPONSE:**

(1)    See General Objections 1, 2, 6, and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)    Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

(4)    Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231, the request is irrelevant and overly broad.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**129**

2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing practices, which affect class members; (c) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (d) General Objection No. 8 is baseless because the fact that the Government does or does not prepare transcripts in *Casas* hearings is not subject to any privilege.

The Government's relevance objection approaches the frivolous.  One of the Petitioner's claims here is that class members are entitled to a hearing that is transcribed (in order to facilitate further administrative or judicial review of the hearing).  Whether *Casas* hearings are transcribed is directly relevant to the Petitioner's claim: if they are not transcribed, it would tend to show that the existing procedures in place are not adequate to protect the constitutional and statutory rights of class members and other detainees; if they are transcribed, it would be directly relevant to issues of cost and burden that may be part of the due process analysis.

The Government's venue objection is also entirely baseless.  Through this RFA, the Petitioner seeks to uncover facts that are directly relevant to the claims he brings on behalf of the class, and the Government has an obligation to respond.  If there are claims in this case that the Government believes are subject to a legal defense (venue), that contention should be resolved through motion practice, not through an objection to discovery requests seeking factual information relevant to the claims asserted in the case.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**130**

So, too, the Government's final objection relating to the challenge of discretionary authority is also misplaced.  The RFA seeks factual information relevant to the Petitioner's claims, not review of a discretionary determination, and the Government is obligated to respond.

### 3.    Respondents' Contentions

Whether transcripts are routinely prepared in *Casas* hearings is irrelevant to this case.  Not only have the issues of the adequacy of *Casas* hearings recently been taken up by the Ninth Circuit in three related cases – *V.  Singh v. Holder*, Case No. 08-71682 (9th Cir. Oct. 4, 2010); *Leonardo v. Crawford*, Case No. 09-17495 (9th Cir. Oct. 4, 2010); *G. Singh v. Chertoff*, Case No. 09-56567 (9th Cir. Oct. 4, 2010), *see supra* at 112 – but the conduct of *Casas* hearings falls outside this class action.  "If an alien who would otherwise be a member of the class receives a bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be a member of the class." *Rodriguez*, 591 F.3d at 1118.  Accordingly, whether *Casas* hearings are transcribed is irrelevant to this action.

### M.    Request For Admission No. 13 to DHS

#### 1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 13 to DHS:**

Admit that in CASAS HEARINGS conducted in the Central District of California, PROLONGED DETAINEES do not receive counsel, paid for by the Government.

**RESPONSE:**

(1)    See General Objections 1, 2, 4, 6, and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

(3)    Respondent admits that 8 U.S.C. 1362 states

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**131**

In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

2.    Petitioner's Contentions

As an initial matter, the Government's "response" to this RFA is entirely non-responsive.  The RFA asks for factual information regarding whether the Government pays for counsel for detainees at *Casas* hearings.  The Government responds by quoting a statute.  What is required, however, is a factual response, not a legal one.  If, as the Petitioner believes, the Government does not pay for counsel for detainees at *Casas* hearings, the Government must admit this RFA.

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 4 is baseless because Petitioner is entitled to obtain relevant factual information regarding the circumstances of detention of not only class members but also others who have experienced or are continuing to experience prolonged detention; (d) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (e) General Objection No. 8 is baseless because the fact that the Government does or does not pay for counsel for detainees at *Casas* hearings is not subject to any privilege.

The Government's relevance objection approaches the frivolous.  In a case in which the Petitioner challenges prolonged detention on statutory and

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**132**

constitutional grounds and alleges that the Government has a constitutional obligation to pay for counsel for detainees at detention hearings, and in which the Government defends, in part, on the ground that its existing policies and practices are sufficient to comply with both the governing statutes and the U.S. Constitution, the practice of the Government in not paying for counsel for detainees at *Casas* hearings provided to class members and other detainees is highly relevant to Petitioner's claim.

### 3. Respondents' Contentions

Whether aliens are provided with counsel at the Government's expense in *Casas* hearings is irrelevant to this case. Not only have the issues of the adequacy of *Casas* hearings recently been taken up by the Ninth Circuit in three related cases – *V. Singh v. Holder*, Case No. 08-71682 (9th Cir. Oct. 4, 2010); *Leonardo v. Crawford*, Case No. 09-17495 (9th Cir. Oct. 4, 2010); *G. Singh v. Chertoff*, Case No. 09-56567 (9th Cir. Oct. 4, 2010), *see supra* at 112 – but the conduct of *Casas* hearings falls outside this class action. "If an alien who would otherwise be a member of the class receives a bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be a member of the class." *Rodriguez*, 591 F.3d at 1118. Accordingly, whether aliens are provided with counsel at the Government's expense in *Casas* hearings is irrelevant to this action.

### N.    Request For Admission No. 14 to DHS

#### 1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 14 to DHS:**

Admit that in some CASAS HEARINGS conducted in the Central District of California, the burden of proof is placed on the PROLONGED DETAINEE.

**RESPONSE:**

(1)    See General Objections 1, 2, 4, 6, and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a

constitutionally adequate individualized hearing concerning their detention before an immigration judge.

        (3)    Respondent further objects that the request calls for Respondent to admit or deny a legal conclusion. Casas-Castrillon is a legal opinion that speaks for itself.

    2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA. As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 4 is baseless because Petitioner is entitled to obtain relevant factual information regarding the circumstances of detention of not only class members but also others who have experienced or are continuing to experience prolonged detention; (d) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (e) General Objection No. 8 is baseless because the fact that the burden of proof is or is not placed on the detainee at *Casas* hearings is not subject to any privilege.

The Government's relevance objection approaches the frivolous. In a case in which the Petitioner challenges prolonged detention on statutory and constitutional grounds and alleges that the burden of proof at a detention hearing must be placed on the Government to justify continued detention, and in which the Government defends, in part, on the ground that its existing policies and practices are sufficient to comply with both the governing statutes and the Constitution, the existence of a practice of improperly placing the burden of proof on detainees at

*Casas* hearings provided to class members and other detainees is highly relevant to Petitioner's claim.

Finally, the Government's objection that *Casas* "is a legal opinion that speaks for itself" is also completely misplaced. The RFA asks for factual information regarding whether the burden of proof is placed on detainees at *Casas* hearings. That is a factual question – or, at the most, a permissible RFA addressing a mixed question of law and fact. *See* Fed. R. Civ. P. 36(a); *A. Farber & Partners v. Garber*, 237 F.R.D. 250, 255 (C.D. Cal. 2006). Regardless of whether the burden of proof is or is not placed on the detainee, the Petitioner is entitled to a direct answer to this RFA.

### 3. Respondents' Contentions

This request is irrelevant to the claims in this case. Petitioners allege that every alien detained for six months or longer is entitled to a bond hearing. This is, as Petitioners admit, a legal issue of statutory and constitutional interpretation. However, this request seeks to determine whether ICE is in compliance with *Casas-Castrillon*, in which the Ninth Circuit concluded that aliens who obtained a stay of removal from the Ninth Circuit on a petition for review challenging their administratively final order of removal were entitled to a bond hearing under 8 U.S.C. 1226(a). Although the compliance issue raised by the request relates to the detention of certain aliens under section 1226(a), ICE's compliance with *Casas-Castrillon* is not at issue here.

Even if the request was relevant, the request is overly burdensome to the extent the request requires an admission or denial based upon the individual review of the A-files of aliens who received *Casas* hearings to determine whether the alien or the Government bore the burden of proof. Because the request includes those who are not within the class, ICE would have to conduct this inquiry with respect to all aliens, and not just aliens in the class.

### O. Request For Admission No. 15 to DHS

#### 1. Text of RFA and Government's Response

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

135

**REQUEST FOR ADMISSION NO. 15 to DHS:**

Admit that, other than through a petition for a writ of habeas corpus or other writ, there is no judicial review of the outcome of CASAS HEARINGS.

**RESPONSE:**

(1)     See General Objections 1, 2, 6, and 8 above.

(2)     Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)     Respondent further objects that the request calls for Respondent to admit or deny a legal conclusion.  Casas-Castrillon is a legal opinion that speaks for itself.

2.     Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (d) General Objection No. 8 is baseless because the fact that there is or is not judicial review of the outcome of *Casas* hearings is not subject to any privilege.

The Government's relevance objection approaches the frivolous.  In a case in which the Petitioner challenges prolonged detention on statutory and constitutional grounds, and in which the Government defends, in part, on the ground that its existing policies and practices are sufficient to comply with both the governing statutes and the U.S. Constitution, the availability of judicial review of the outcome of

*Casas* hearings provided to class members and other detainees is highly relevant to Petitioner's claim.

Finally, the Government's objection is that *Casas* "is a legal opinion that speaks for itself" is also completely misplaced.  The RFA asks for factual information regarding whether judicial review is available for the outcome of *Casas* hearings. That is a factual question – or, at the most, a permissible RFA addressing a mixed question of law and fact.  *See* Fed. R. Civ. P. 36(a); *A. Farber & Partners v. Garber*, 237 F.R.D. 250, 255 (C.D. Cal. 2006).  Regardless of whether judicial review is or is not available, the Petitioner is entitled to a direct answer to this RFA.

### 3.    Respondents' Contentions

This request is irrelevant to the claims in this case.  Petitioners allege that every alien detained for six months or longer is entitled to a bond hearing.  This is, as Petitioners admit, a legal issue of statutory and constitutional interpretation.  However, this request seeks to determine whether the immigration bond hearings ordered in *Casas-Castrillon* are judicially reviewable.  The request is therefore wholly irrelevant to the claims in this case.

### P.    Request For Admission No. 18 to DHS

#### 1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 18 to DHS:**

Admit that in PAROLE DETERMINATIONS conducted in the Central District of California, transcripts are not routinely maintained or prepared.

**RESPONSE:**

(1)    See General Objections 1, 2, and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

137

(3)     Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

(4)     Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231, the request is irrelevant and overly broad.

2.     Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing practices, which affect class members; and (c) General Objection No. 8 is baseless because the fact that transcripts are or are not routinely maintained or prepared is not subject to any privilege.

The Government's relevance objection approaches the frivolous.  In a case in which the Petitioner challenges prolonged detention on statutory and constitutional grounds, and in which the Government defends, in part, on the ground that its existing policies and practices are sufficient to comply with both the governing statutes and the U.S. Constitution, the existence or not of transcripts of parole determinations (which would be necessary to facilitate any administrative or judicial review of the decision) is directly relevant to the quality of the process currently in place and therefore highly relevant to Petitioner's claim.

The Government's venue objection is also entirely baseless.  Through this RFA, the Petitioner seeks to uncover facts that are directly relevant to the claims he brings on behalf of the class, and the Government has an obligation to respond.  If

there are claims in this case that the Government believes are subject to a legal defense (venue), that contention should be resolved through motion practice, not through an objection to discovery requests seeking factual information relevant to the claims asserted in the case.

So, too, the Government's final objection relating to the challenge of discretionary authority is also misplaced.  The RFA seeks factual information relevant to the Petitioner's claims, not review of a discretionary determination, and the Government is obligated to respond.

### 3.  Respondents' Contentions

Respondents' primary objection to this request is that the adequacy of parole determinations is not relevant to the legal issues of statutory and constitutional interpretation in this case.  Respondents reassert and incorporate its discussion of the irrelevance of the implementation of the custody review or parole determination processes in these contentions.  *See supra* at Sections II.A and III.A.3.

### Q.  Request For Admission No. 19 to DHS

#### 1.  Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 19 to DHS:**

Admit that in PAROLE DETERMINATIONS conducted in the Central District of California, PROLONGED DETAINEES do not receive counsel, paid for by the Government.

**RESPONSE:**

(1)  See General Objections 1, 2, 4 and 8 above.

(2)  Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)  Respondent admits that 8 U.S.C. 1362 states: In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**139**

represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

   2.    Petitioner's Contentions

   As an initial matter, the Government's "response" to this RFA is entirely non-responsive.  The RFA asks for factual information regarding whether the Government pays for counsel for detainees in parole determinations.  The Government responds by quoting a statute.  What is required, however, is a factual response, not a legal one.  If, as the Petitioner believes, the Government does not pay for counsel for detainees in parole determinations, the Government must admit this RFA.

   None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 4 is baseless because Petitioner is entitled to obtain relevant factual information regarding the circumstances of detention of not only class members but also others who have experienced or are continuing to experience prolonged detention; and (e) General Objection No. 8 is baseless because the fact that the Government does or does not pay for counsel for detainees in parole determinations is not subject to any privilege.

   The Government's relevance objection approaches the frivolous.  In a case in which the Petitioner challenges prolonged detention on statutory and constitutional grounds and alleges that the Government has a constitutional obligation to pay for counsel for detainees at detention hearings, and in which the Government defends, in part, on the ground that its existing policies and practices are sufficient to comply with both the governing statutes and the U.S. Constitution, the practice of the

Government in not paying for counsel for detainees in parole determinations (and at other stages in the proceedings) is highly relevant to Petitioner's claim.

3.    Respondents' Contentions

Respondents' primary objection to this request is that the adequacy of parole determinations is not relevant to the legal issues of statutory and constitutional interpretation in this case.  Respondents reassert and incorporate its discussion of the irrelevance of the implementation of the custody review or parole determination processes in these contentions.  *See supra* at Sections II.A and III.A.3.

**R.    Request For Admission No. 20 to DHS**

1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 20 to DHS:**

Admit that in CUSTODY REVIEWS conducted in the Central District of California, transcripts are not routinely maintained or prepared.

**RESPONSE:**

(1)    See General Objections 1, 2, 5, and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

(3)    Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

(4)    Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231, the request is irrelevant and overly broad.

2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing practices, which affect class members; (c) General Objection No. 5 is baseless because the Government's practices in providing custody reviews under 8 C.F.R. 241.4 are relevant to the Petitioner's claims here; and (d) General Objection No. 8 is baseless because the fact that transcripts are or are not routinely maintained or prepared is not subject to any privilege.

The Government's relevance objection approaches the frivolous.  In a case in which the Petitioner challenges prolonged detention on statutory and constitutional grounds, and in which the Government defends, in part, on the ground that its existing policies and practices are sufficient to comply with both the governing statutes and the U.S. Constitution, the existence or not of transcripts of custody reviews (which would be necessary to facilitate any administrative or judicial review of the decision) is directly relevant to the quality of the process currently in place and therefore highly relevant to Petitioner's claim.

The Government's venue objection is also entirely baseless.  Through this RFA, the Petitioner seeks to uncover facts that are directly relevant to the claims he brings on behalf of the class, and the Government has an obligation to respond.  If there are claims in this case that the Government believes are subject to a legal defense (venue), that contention should be resolved through motion practice, not through an objection to discovery requests seeking factual information relevant to the claims asserted in the case.

So, too, the Government's final objection relating to the challenge of discretionary authority is also misplaced. The RFA seeks factual information relevant to the Petitioner's claims, not review of a discretionary determination, and the Government is obligated to respond.

### 3. Respondents' Contentions

Respondents' primary objection to this request is that the adequacy of custody reviews is not relevant to the legal issues of statutory and constitutional interpretation in this case. Respondents reassert and incorporate its discussion of the irrelevance of the implementation of the custody review processes in these contentions. *See supra* at Sections II.A and III.A.3.

### S. Request For Admission No. 21 to DHS

#### 1. Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 21 to DHS:**

Admit that in CUSTODY REVIEWS conducted in the Central District of California, PROLONGED DETAINEES do not receive counsel, paid for by the Government.

**RESPONSE:**

(1)  See General Objections 1 - 5, and 8 above.

(2)  Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)  Respondent admits that 8 U.S.C. 1362 states In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

#### 2. Petitioner's Contentions

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

143

As an initial matter, the Government's "response" to this RFA is entirely non-responsive.  The RFA asks for factual information regarding whether the Government pays for counsel for detainees in custody reviews.  The Government responds by quoting a statute.  What is required, however, is a factual response, not a legal one.  If, as the Petitioner believes, the Government does not pay for counsel for detainees in custody reviews, the Government must admit this RFA.

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 4 is baseless because Petitioner is entitled to obtain relevant factual information regarding the circumstances of detention of not only class members but also others who have experienced or are continuing to experience prolonged detention; (d) General Objection No. 5 is baseless because the Government's practices in providing custody reviews under 8 C.F.R. 241.4 are relevant to the Petitioner's claims here; and (e) General Objection No. 8 is baseless because the fact that the Government does or does not pay for counsel for detainees in custody reviews is not subject to any privilege.

Although the Government asserts General Objection No. 3 in response to this RFA, that appears to be a typographical error.  In General Objection No. 3, the Government contends that the terms such as "relate to," "related to," or "relating to" are impermissibly vague.  No such terms are used in this RFA.

The Government's relevance objection approaches the frivolous.  In a case in which the Petitioner challenges prolonged detention on statutory and constitutional grounds and alleges that the Government has a constitutional obligation

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**144**

1    to pay for counsel for detainees at detention hearings, and in which the Government

2    defends, in part, on the ground that its existing policies and practices are sufficient to

3    comply with both the governing statutes and the U.S. Constitution, the practice of the

4    Government in not paying for counsel for detainees in custody reviews (and at other

5    stages in the proceedings) is highly relevant to Petitioner's claim.

6            3.      Respondents' Contentions

7            Respondents' primary objection to this request is that the adequacy of

8    custody reviews is not relevant to the legal issues of statutory and constitutional

9    interpretation in this case.  Respondents reassert and incorporate its discussion of the

10   irrelevance of the implementation of the custody review process in these contentions.

11   *See supra* at Sections II.A and III.A.3.

12           **T.    Request For Admission No. 1 to DOJ**

13           1.      Text of RFA and Government's Response

14           **REQUEST FOR ADMISSION NO. 1 to DOJ:**

15           Admit that Petitioners detained under 8 U.S.C. 1226(c) have
     not been provided with any bond hearing or other review of their
16   detention, except for hearings pursuant to Matter of Joseph, 22 I. & N.
     Dec. 799 (BIA 1999).
17
             **RESPONSE:**
18
             (1)     See General Objections 1, 2, and 8 above.
19           (2)     Respondent further objects that the request is vague to
     the extent it is unclear what is meant by "other review of their detention."
20   That term could mean (a) any review by an immigration judge to
     determine whether an alien should be released from detention; (b) any
21   determination by DHS as to whether an alien should be released on bond,
     parole, order of supervision, or other release not including an initial
22   custody determination by DHS; or (c) any determination, whether by an
     immigration judge or DHS, as to whether an alien should be released on
23   bond, parole, order of supervision, or other release, including an initial
     custody determination by DHS.
24
             (3)     Respondent further admits that the request is vague to
25   the extent it is unclear whether "Petitioners" includes all class members
     currently detained; all class members currently or previously detained for
26

27

28

an unspecified period; or just the named representatives. According to Petitioners, this could also include members that have been released or removed.

Without waiving the objections set forth above, Respondent admits that aliens detained pursuant to 8 U.S.C. § 1226(c) (including aliens detained for six months or longer) are generally not entitled to receive an individualized bond hearing before an immigration judge. 8 U.S.C. § 1226(c) mandates detention for certain criminal aliens. Barring a bond hearing before an immigration judge (a) under Casas-Castrillon v. Dep't of Homeland Sec'y, 535 F.3d 942 (9th Cir. 2008), or (b) under exceptional circumstances, including those outlined in 8 U.S.C. § 1226(c)(2), aliens detained under 8 U.S.C. § 1226(c) are generally not provided with an individualized bond hearing before an immigration judge concerning their detention.

### 2.     Petitioner's Contentions

The Government's answer to RFA No. 1 is non-responsive. The RFA poses a simple factual question – do certain class members receive individualized bond hearings. The Government, in response, states a series of objections that are baseless (as explained below) and then (a) hides behind a legal contention (that those class members are "not entitled" to a hearing); and (b) answers evasively, introducing vague terminology (such as "generally" and "under exceptional circumstances") into its answer, all of which make the Government's answer improper and non-responsive. The Petitioner is entitled to a straightforward answer to a simple RFA.

None of the Government's objections withstands scrutiny. As explained above, (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect both class members and non-class members; and (c) General Objection No. 8 is baseless because the fact that a hearing is or is not provided is not subject to any privilege.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**146**

Next, the Government asserts that the term "other review of detention" is impermissibly vague. The Government asserts that there are several potential meanings of the term, but the Petitioner accepts the most narrow one offered by the Government – that the phrase means any review by an immigration judge to determine whether an alien should be released from detention.

The Government also asserts that the term "Petitioners" is impermissibly vague, but any purported confusion on the Government's side is baseless. As noted above, the term "Petitioners" is specifically defined to mean all class members.

### 3.    Respondents' Contentions

Respondents note at the outset that while the parties engaged in a lengthy conference over their discovery disputes and have exchanged several letters and e-mails regarding their disagreements on the issues presented in this Joint Stipulation, the parties have never engaged in a substantive discussion with respect to any of the requests for admission propounded by Petitioners. Accordingly, Respondents were unaware of Petitioners' positions regarding the objections until the parties' exchanged contentions in preparing this Joint Stipulation.

As Petitioners correctly note, Respondents stated objections based on issues of vagueness and other grounds, and Petitioners have now, in their contentions, responded for the first time to Respondents' concerns. In light of Petitioners' contentions and their responses to Respondents' objections, Respondents will re-examine their objections and determine before a hearing on these issues whether certain objections will be withdrawn.

Respondents also understand that the burden of responding to a request for admission is less than the burden of responding to a request for documents or answering an interrogatory. At the same time, the requirement of an admission or denial, and the binding nature of any admissions made, requires the responding party to take care and ensure that it is accurate in responding to a request for admission.

Bearing these considerations in mind, Respondents make the following contention:

Respondents are prepared to admit that as a general matter, aliens detained under section 1226(c) are not entitled to a bond hearing before an immigration judge.  However, class members detained under section 1226(c) at this time may not have been initially detained under that statute.  Consequently, Respondents maintain their objection that the request is burdensome to the extent the request requires an admission or denial based upon the individual review of the A-files of aliens to determine whether any alien has received a bond hearing at some point during the alien's detention.

**U.    Request For Admission No. 2 to DOJ**

1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 2 to DOJ:**

Admit that Respondent has no policy or procedure requiring it to notify individuals detained under 8 U.S.C. 1226(c) that they are entitled to request a hearing under Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999).

**RESPONSE:**

(1)    See General Objections 1, 2, and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)    Respondent further objects that the request calls for Respondent to admit or deny a legal conclusion that individuals are "entitled to request a hearing under Matter of Joseph."  Matter of Joseph is a legal opinion that speaks for itself.

2.    Petitioner's Contentions

None of the Government's objections supports the refusal of the Government to respond to this RFA.  As explained above, (a) General Objection No. 1

1    is baseless because the Petitioner is entitled to discovery in this matter to obtain

2    factual information relevant to the Court's legal analysis of the due process issues in

3    this matter; (b) General Objection No. 2 is baseless because the RFA seeks

4    information regarding the Government's existing policies, which affect both class

5    members and non-class members; and (c) General Objection No. 8 is baseless because

6    the fact that a policy exists (or does not exist) is not subject to any privilege.

7         The Government's objection that *Matter of Joseph* is irrelevant is also

8    completely misplaced.  As explained above, the Government has defended its

9    detention regime by relying on the hearings it purportedly provides under *Matter of*

10   *Joseph*; indeed, the availability of such hearings was central to the government's

11   defense in *Demore*.  Because *Joseph* hearings are part of the existing detention review

12   procedures that the Government provides, information about them is highly relevant to

13   this lawsuit.

14        The RFA asks for factual information regarding whether there is a policy

15   or procedure in place whereby the Government notifies detainees regarding their right

16   to a hearing under *Matter of Joseph*.  If the Government does not provide such notice

17   – because, for example, the Government contends that it is not required by *Matter of*

18   *Joseph* to do so – then the Government should simply admit the facts set forth in the

19   RFA.

20        Finally, the Government's objection that *Matter of Joseph* "is a legal

21   opinion that speaks for itself" is also completely misplaced.  The RFA asks for factual

22   information regarding whether there is a policy or procedure in place whereby the

23   Government notifies detainees regarding their right to a hearing under *Matter of*

24   *Joseph*.  That is a factual question – or, at the most, a permissible RFA addressing a

25   mixed question of law and fact.  *See* Fed. R. Civ. P. 36(a); *A. Farber & Partners v.*

26   *Garber*, 237 F.R.D. 250, 255 (C.D. Cal. 2006).  Regardless of whether the

27

28
_____

Government does or does not provide notice, the Petitioner is entitled to a direct answer to this RFA.

3.      Respondents' Contentions

Respondents' primary objection to this request is that *Joseph* hearings are irrelevant to the legal issues of statutory and constitutional interpretation in this case. Respondents reassert and incorporate its discussion of the irrelevance of *Joseph* hearings in these contentions.  *See supra* at Sections II.A and III.A.3.

**V.      Request For Admission No. 3 to DOJ**

1.      Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 3 to DOJ:**

Admit that Respondent has no policy or practice requiring the creation of transcripts of BOND HEARINGS and CASAS HEARINGS.

**RESPONSE:**

(1)      See General Objections 1, 2, 3, 6, and 8 above.

(2)      Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

2.      Petitioner's Contentions

None of the Government's objections supports the refusal of the Government to respond to this RFA.  As explained above, (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and

1    (d) General Objection No. 8 is baseless because the fact that a policy exists (or does

2    not exist) is not subject to any privilege.

3    　　　　　The inclusion of General Objection No. 3 here appears to be a

4    typographical error.  According to the Government, General Objection No. 3 is

5    "reserved" and contains no substance.

6    　　　　　The Government's relevance objection approaches the frivolous.  One of

7    the Petitioner's claims here is that class members are entitled to a hearing that is

8    transcribed (in order to facilitate further administrative or judicial review of the

9    hearing). Whether bond and *Casas* hearings are transcribed is directly relevant to the

10   Petitioner's claim: if they are not transcribed, it would tend to show that the existing

11   procedures in place are not adequate to protect the constitutional and statutory rights

12   of class members and other detainees; if they are transcribed, it would be directly

13   relevant to issues of cost and burden that may be part of the due process analysis.

14   　　　　3.　　　Respondents' Contentions

15   　　　　Respondents have withdrawn their objections and have admitted that there is no

16   policy or procedure requiring that "bond hearings," as Respondents understand that

17   term, are required to be transcribed.

18   　　　　Whether there is a policy or procedure requiring that *Casas* hearings be

19   transcribed is irrelevant to this case.  Not only have the issues of the adequacy of

20   *Casas* hearings[17] recently been taken up by the Ninth Circuit in three related cases –

21   *V. Singh v. Holder*, Case No. 08-71682 (9th Cir. Oct. 4, 2010); *Leonardo v.*

22   *Crawford*, Case No. 09-17495 (9th Cir. Oct. 4, 2010); *G. Singh v. Chertoff*, Case No.

23   09-56567 (9th Cir. Oct. 4, 2010) – but the conduct of *Casas* hearings falls outside this

24

25   [17]   The aliens in the three cases argued and submitted on October 4, 2010 argued that

26   *Casas* hearings are not constitutionally adequate because, among other things, they are

27   not properly noticed, they are  not transcribed, and because the burden of proof is not
     adequate.

28

1  class action.  "If an alien who would otherwise be a member of the class receives a

2  bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be

3  a member of the class." *Rodriguez*, 591 F.3d at 1118.  Accordingly, whether *Casas*

4  hearings are transcribed is irrelevant to this action.

5  **W.    Request For Admission No. 4 to DOJ**

6  1.    Text of RFA and Government's Response

7  **REQUEST FOR ADMISSION NO. 4:**

8  Admit that Respondent has no policy or practice of informing individuals who are eligible for a hearing under Casas-

9  Castrillon v. Dep't of Homeland Sec'y, 535 F.3d 942 (9th Cir. 2008), that

10  they are eligible for such a hearing.

11  **RESPONSE:**

       (1)    See General Objections 1, 2, 3, 6, and 8 above.

12     (2)    Respondent further objects that the request is

13  irrelevant to Petitioner's claim that all aliens detained for six months or

14  longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a

15  constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

16     (3)    Respondent further objects that the request calls for

17  Respondent to admit or deny a legal conclusion that individuals are "entitled to a hearing under Casas-Castrillon."  Casas-Castrillon is a legal

18  opinion that speaks for itself.

19  2.    Petitioner's Contentions

20  None of the Government's general objections supports the refusal of the

21  Government to respond to this RFA.  As explained above: (a) General Objection No.

22  1 is baseless because the Petitioner is entitled to discovery in this matter to obtain

23  factual information relevant to the Court's legal analysis of the due process issues in

24  this matter; (b) General Objection No. 2 is baseless because the RFA seeks

25  information regarding the Government's existing policies, which affect class

26  members; (c) General Objection No. 6 is baseless because the Government's practices

27  with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and

28

(d) General Objection No. 8 is baseless because the fact that a policy exists (or does not exist) is not subject to any privilege.

The inclusion of General Objection No. 3 here appears to be a typographical error. According to the Government, General Objection No. 3 is "reserved" and contains no substance.

The Government's relevance objection is also misplaced. One of Petitioner's claims in this action is that class members not only have a right to a detention hearing but also that they have a right to *notice* of their right to a detention hearing. The Government's policy with regard to providing notice of *Casas* hearings is directly relevant to this aspect of the Petitioner's claim, as argued above.

Finally, the Government's objection that *Casas* "is a legal opinion that speaks for itself" is also completely misplaced. The RFA asks for factual information regarding whether individuals eligible for a *Casas* hearing are given notice of their right to a hearing. Unless the Government's position is that *no one* is eligible for a *Casas* hearing, the RFA does not require the Government to admit any legal contention at all. Moreover, the RFA seeks only to determine facts relating to whether there is a policy or procedure in place whereby the Government notifies detainees regarding their right to a hearing under *Casas*. That is a factual question – or, at the most, a permissible RFA addressing a mixed question of law and fact. *See* Fed. R. Civ. P. 36(a); *A. Farber & Partners v. Garber*, 237 F.R.D. 250, 255 (C.D. Cal. 2006). Regardless of whether the Government does or does not provide notice, the Petitioner is entitled to a direct answer to this RFA.

3.      Respondents' Contentions

Whether there is a policy or procedure requiring provision of notice that an alien is entitled to a *Casas* hearing is irrelevant to this case. Not only have the issues of the adequacy of *Casas* hearings recently been taken up by the Ninth Circuit in three related cases – *V. Singh v. Holder*, Case No. 08-71682 (9th Cir. Oct. 4, 2010);

*Leonardo v. Crawford*, Case No. 09-17495 (9th Cir. Oct. 4, 2010); *G. Singh v. Chertoff*, Case No. 09-56567 (9th Cir. Oct. 4, 2010), *see supra* at 112 – but the conduct of *Casas* hearings falls outside this class action.  "If an alien who would otherwise be a member of the class receives a bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be a member of the class." *Rodriguez*, 591 F.3d at 1118.  Accordingly, whether *Casas* hearings are transcribed is irrelevant to this action.

## X.    Request For Admission No. 5 to DOJ

### 1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 5 to DOJ:**

Admit that some PROLONGED DETAINEES who are eligible for a CASAS HEARING under Casas-Castrillon v. Dep't of Homeland Sec'y, 535 F.3d 942 (9th Cir. 2008), do not receive such a hearing.

**RESPONSE:**

(1)    See General Objections 1, 2, 4, 5, 6 and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

(3)    Respondent further objects that the request calls for Respondent to admit or deny a legal conclusion that individuals are "entitled to request a hearing under Casas-Castrillon."  Casas-Castrillon is a legal opinion that speaks for itself.

### 2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks

1  information regarding the Government's existing policies, which affect class

2  members; (c) General Objection No. 4 is baseless because Petitioner is entitled to

3  obtain relevant factual information regarding the circumstances of detention of others

4  who have experienced or are continuing to experience prolonged detention;

5  (d) General Objection No. 5 is baseless for the reasons stated above and challenges a

6  term ("custody review") that is not even used in this RFA; (e) General Objection No.

7  6 is baseless because the Government's practices with regard to *Casas* hearings are

8  directly relevant to the Petitioner's claim; and (f) General Objection No. 8 is baseless

9  because the fact that the Government does or does not provide *Casas* hearings to

10 eligible detainees is not subject to any privilege.

11       The Government's relevance objection approaches the frivolous.  *Casas*

12 hearings are part of the existing detention review procedures, which Petitioner

13 contends are unconstitutional.  In addition, the Government has defended its actions in

14 this case by arguing that its provision of *Casas* hearings to detainees obviates the need

15 for any relief in this case.  *See* Respondents' 9th Cir. Answering Brief at pp. 7, 18-19,

16 No. 08-56156.  Whether the Government fails to provide *Casas* hearings to class

17 members or other detainees who are entitled to such hearings is obviously relevant to

18 the claims that Petitioner asserts and the relief he seeks to obtain for the class.

19       Finally, the Government's objection that *Casas* "is a legal opinion that

20 speaks for itself" is also completely misplaced.  The RFA asks for factual information

21 regarding whether individuals eligible for a *Casas* hearing are given such hearings.

22 Unless the Government's position is that *no one* is eligible for a *Casas* hearing, the

23 RFA does not require the Government to admit any legal contention at all.  Moreover,

24 the RFA seeks only to determine facts relating to whether the Government is

25 providing detainees with a hearing to which they are entitled under *Casas*.  That is a

26 factual question – or, at the most, a permissible RFA addressing a mixed question of

27 law and fact.  *See* Fed. R. Civ. P. 36(a); *A. Farber & Partners v. Garber*, 237 F.R.D.

28

250, 255 (C.D. Cal. 2006). Regardless of whether the Government does or does not provide such hearings, the Petitioner is entitled to a direct answer to this RFA.

3.    Respondents' Contentions

Respondents first General Objection and the first specific objection set forth above are related, in that the request seeks information that is not relevant to the claims presented in this action. Petitioners allege that every alien detained for six months or longer is entitled to a bond hearing. This is, as Petitioners admit, a legal issue of statutory and constitutional interpretation. However, this request seeks to determine whether ICE is in compliance with *Casas-Castrillon*, in which the Ninth Circuit concluded that aliens who obtained a stay of removal from the Ninth Circuit on a petition for review challenging their administratively final order of removal were entitled to a bond hearing under 8 U.S.C. 1226(a). Although the compliance issue raised by the request relates to the detention of certain aliens under section 1226(a), ICE's compliance with *Casas-Castrillon* is not at issue here.

Even if the request was relevant, the request is overly burdensome to the extent the request requires an admission or denial based upon the individual review of the A-files of aliens who were eligible to receive *Casas* hearings to determine whether any alien has received a *Casas* hearing at some point during the alien's detention. Because the request includes those who are not within the class, ICE would have to identify those aliens detained for six months or longer, and determine whether at any time after they were detained for six months they were detained in the Central District, and then, from that universe of aliens, determine which ones were entitled to a *Casas* hearing, and identify whether those aliens received *Casas* hearings.

**Y.    Request For Admission No. 6 to DOJ**

1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 6 to DOJ:**

Admit that some persons in the Central District of California who request BOND HEARINGS have waited longer than 3 months to receive such a hearing.

**RESPONSE:**

(1)    See General Objections 1, 2, and 8 above.

(2)    Respondent further objects that the request is vague. It is unclear to Respondent whether "have waited longer than 3 months to receive such a hearing" means that they have waited longer than three months since a hearing was requested, or that they were detained and did not receive a hearing within their first three months of detention.

(3)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(4)    Respondent further objects that this request is overly broad and unduly burdensome because there is no time frame specified and this would encompass all persons, regardless of whether they are a class member.

2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing practices, which affect class members; and (c) General Objection No. 8 is baseless because the fact that the Government does or does not delay requested bond hearings is not subject to any privilege.

The Government's vagueness objection is not well taken.  In context, it is clear that the RFA seeks to uncover whether some detainees have waited more than

three months to receive a bond hearing since their detention.  In any event, Petitioner has clarified any ambiguity by his representation here.

The Government's relevance objection approaches the frivolous.  In a case in which the Petitioner challenges prolonged detention on statutory and constitutional grounds, and in which the Government defends, in part, on the ground that its existing policies and practices are sufficient to comply with both the governing statutes and the U.S. Constitution, the existence of extended, lengthy, and unjustified delays in the Government's current practices is highly relevant to Petitioner's claim.

Finally, the Government's objection regarding the time frame of the RFA is easy to address: the Petitioner will limit the RFA to class members and other individuals detained in the Central District since October 1, 2008.

3.     Respondents' Contentions

Although Petitioners clarified what they meant by the phrase "waited more than 3 months" to receive a bond hearing, this does not make the request any less objectionable.  The request is extraordinarily broad in scope.  By definition it includes (1) all persons, (2) detained for three months in the Central District after October 1, 2008 (although this clarification simply raises the question of whether that includes aliens detained for three months entirely in the Central District, or whose detention occurred in part at any time in the Central District after October 1, 2008), and (3) who requested a bond hearing.  For the reasons described elsewhere in this Joint Stipulation, simply identifying those individuals will constitute a significant and unduly burdensome undertaking.

Moreover, the request is irrelevant to the claims in this case.  Petitioners challenge detention beyond six months as unconstitutional.  It is entirely unclear what relevance the lack of a bond hearing at three months has on the issues presented in this action.

**Z.     Request For Admission No. 7 to DOJ**

1.   Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 7 to DOJ:**

Admit that some PROLONGED DETAINEES who request CASAS HEARINGS have waited longer than 3 months to receive such hearings.

**RESPONSE:**

(1)   See General Objections 1, 2, 6, and 8 above.

(2)   Respondent further objects that the request is vague. It is unclear to Respondent whether "have waited longer than 3 months to receive such hearings" means that they have waited longer than three months since a hearing was requested, or that they were detained and did not receive a hearing within their first three months of detention.

(3)   Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

2.   Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing practices, which affect class members; (c) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (d) General Objection No. 8 is baseless because the fact that the Government does or does not delay requested *Casas* hearings is not subject to any privilege.

The Government's vagueness objection is not well taken.  In context, it is clear that the RFA seeks to uncover whether some detainees have waited more than

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**159**

three months to receive a *Casas* hearing since being detained.  In any event, Petitioner has clarified any ambiguity by his representation here.

        The Government's relevance objection approaches the frivolous.  In a case in which the Petitioner challenges prolonged detention on statutory and constitutional grounds, and in which the Government defends, in part, on the ground that its existing policies and practices are sufficient to comply with both the governing statutes and the U.S. Constitution, the existence of extended, lengthy, and unjustified delays in the Government's current practices in providing *Casas* hearings to class members and other detainees is highly relevant to Petitioner's claim.

        3.     Respondents' Contentions

        Although Petitioners clarified what they meant by the phrase "waited more than 3 months" to receive a *Casas* hearing, this does not make the request any less objectionable.  The request is extraordinarily broad in scope.  By definition it includes (1) all persons, (2) detained for three months in the Central District after October 1, 2008 (although this clarification simply raises the question of whether that includes aliens detained for three months entirely in the Central District, or whose detention occurred in part at any time in the Central District after October 1, 2008), and (3) who requested a *Casas* hearing.  For the reasons described elsewhere in this Joint Stipulation, simply identifying those individuals will constitute a significant and unduly burdensome undertaking.

        Moreover, the request is irrelevant to the claims in this case.  Petitioners challenge detention beyond six months as unconstitutional.  It is entirely unclear what relevance the lack of a bond hearing at three months has on the issues presented in this action.

**AA.   Request For Admission No. 8 to DOJ**

        1.    Text of RFA and Government's Response

        **REQUEST FOR ADMISSION NO. 8 to DOJ:**

Admit that in CASAS HEARINGS conducted in the Central District of California, transcripts are not routinely maintained or prepared.

**RESPONSE:**

(1)     See General Objections 1, 2, 6, and 8 above.

(2)     Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)     Respondent further objects to the request to the extent it seeks information to challenge regulations, policy directives, policy guidelines, or other written procedures to implement 8 U.S.C. § 1225(b). Challenges to such procedures, etc., must be brought in the United States District Court for the District of Columbia.

(4)     Respondent further objects to the request to the extent it seeks to challenge the discretionary application of any detention provision, including, but not limited to DHS's discretionary authority under 8 U.S.C. §§ 1225, 1226, or 1231, the request is irrelevant and overly broad.

2.     Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing practices, which affect class members; (c) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (d) General Objection No. 8 is baseless because the fact that the Government does or does not prepare transcripts in *Casas* hearings is not subject to any privilege.

1    The Government's relevance objection approaches the frivolous. Part of

2    the Petitioner's claim here is that class members are entitled to a hearing that is

3    transcribed (in order to facilitate further administrative or judicial review of the

4    hearing). Whether *Casas* hearings are transcribed is directly relevant to the

5    Petitioner's claim: if they are not transcribed, it would tend to show that the existing

6    procedures in place are not adequate to protect the constitutional and statutory rights

7    of class members and other detainees; if they are transcribed, it would be directly

8    relevant to issues of cost and burden that may be part of the due process analysis.

9    The Government's venue objection is also entirely baseless. Through

10    this RFA, the Petitioner seeks to uncover facts that are directly relevant to the claims

11    he brings on behalf of the class, and the Government has an obligation to respond. If

12    there are claims in this case that the Government believes are subject to a legal

13    defense (venue), that contention should be resolved through motion practice, not

14    through an objection to discovery requests seeking factual information relevant to the

15    claims asserted in the case.

16    So, too, the Government's final objection relating to the challenge of

17    discretionary authority is also misplaced. The RFA seeks factual information relevant

18    to the Petitioner's claims, not review of a discretionary determination, and the

19    Government is obligated to respond.

20        3.    Respondents' Contentions

21    Whether transcripts are routinely prepared in *Casas* hearings is irrelevant to this

22    case. Not only have the issues of the adequacy of *Casas* hearings recently been taken

23    up by the Ninth Circuit in three related cases – *V. Singh v. Holder*, Case No. 08-

24    71682 (9th Cir. Oct. 4, 2010); *Leonardo v. Crawford*, Case No. 09-17495 (9th Cir.

25    Oct. 4, 2010); *G. Singh v. Chertoff*, Case No. 09-56567 (9th Cir. Oct. 4, 2010), *see*

26    *supra* at 112 – but the conduct of *Casas* hearings falls outside this class action. "If an

27    alien who would otherwise be a member of the class receives a bond hearing pursuant

28

to *Casas-Castrillon* or any other ruling they would cease to be a member of the class." *Rodriguez*, 591 F.3d at 1118.  Accordingly, whether *Casas* hearings are transcribed is irrelevant to this action.

### BB.   Request For Admission No. 9 to DOJ

1.   Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 9 to DOJ:**

Admit that in CASAS HEARINGS conducted in the Central District of California, PROLONGED DETAINEES do not receive counsel, paid for by the Government.

**RESPONSE:**

(1)   See General Objections 1, 2, 4, 6, and 8 above.

(2)   Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

(3)   Respondent admits that 8 U.S.C.  1362 states

In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

2.   Petitioner's Contentions

As an initial matter, the Government's "response" to this RFA is entirely non-responsive.  The RFA asks for factual information regarding whether the Government pays for counsel for detainees at *Casas* hearings.  The Government responds by quoting a statute.  What is required, however, is a factual response, not a legal one.  If, as the Petitioner believes, the Government does not pay for counsel for detainees at *Casas* hearings, the Government must admit this RFA.

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No.

1 is baseless because the Petitioner is entitled to discovery in this matter to obtain

factual information relevant to the Court's legal analysis of the due process issues in

this matter; (b) General Objection No. 2 is baseless because the RFA seeks

information regarding the Government's existing policies, which affect class

members; (c) General Objection No. 4 is baseless because Petitioner is entitled to

obtain relevant factual information regarding the circumstances of detention of not

only class members but also others who have experienced or are continuing to

experience prolonged detention; (d) General Objection No. 6 is baseless because the

Government's practices with regard to *Casas* hearings are directly relevant to the

Petitioner's claim; and (e) General Objection No. 8 is baseless because the fact that

the Government does or does not pay for counsel for detainees at *Casas* hearings is

not subject to any privilege.

The Government's relevance objection is frivolous. In a case in which

the Petitioner challenges prolonged detention on statutory and constitutional grounds

and alleges that the Government has a constitutional obligation to pay for counsel for

detainees at detention hearings, and in which the Government defends, in part, on the

ground that its existing policies and practices are sufficient to comply with both the

governing statutes and the U.S. Constitution, the practice of the Government in not

paying for counsel for detainees at *Casas* hearings provided to class members and

other detainees is highly relevant to Petitioner's claim.

3. Respondents' Contentions

Whether aliens are provided with counsel at the Government's expense in

*Casas* hearings is irrelevant to this case. Not only have the issues of the adequacy of

*Casas* hearings recently been taken up by the Ninth Circuit in three related cases – *V.

Singh v. Holder*, Case No. 08-71682 (9th Cir. Oct. 4, 2010); *Leonardo v. Crawford*,

Case No. 09-17495 (9th Cir. Oct. 4, 2010); *G. Singh v. Chertoff*, Case No. 09-56567

(9th Cir. Oct. 4, 2010), *see supra* at 112 – but the conduct of *Casas* hearings falls

outside this class action.  "If an alien who would otherwise be a member of the class receives a bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be a member of the class."  *Rodriguez*, 591 F.3d at 1118.  Accordingly, whether aliens are provided with counsel at the Government's expense in *Casas* hearings is irrelevant to this action.

## CC.  Request For Admission No. 10 to DOJ

### 1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 10 to DOJ:**

Admit that in some CASAS HEARINGS conducted in the Central District of California, the burden of proof is placed on the PROLONGED DETAINEE.

**RESPONSE:**

(1)    See General Objections 1, 2, 4, 6, and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning  their detention before an immigration judge.

(3)    Respondent further objects that the request calls for Respondent to admit or deny a legal conclusion.  Casas-Castrillon is a legal opinion that speaks for itself.

### 2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No. 1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 4 is baseless because Petitioner is entitled to obtain relevant factual information regarding the circumstances of detention of not

1   only class members but also others who have experienced or are continuing to

2   experience prolonged detention; (d) General Objection No. 6 is baseless because the

3   Government's practices with regard to *Casas* hearings are directly relevant to the

4   Petitioner's claim; and (e) General Objection No. 8 is baseless because the fact that

5   the burden of proof is or is not placed on the detainee at *Casas* hearings is not subject

6   to any privilege.

7          The Government's relevance objection approaches the frivolous.  In a

8   case in which the Petitioner challenges prolonged detention on statutory and

9   constitutional grounds and alleges that the burden of proof at a detention hearing must

10  be placed on the Government to justify continued detention, and in which the

11  Government defends, in part, on the ground that its existing policies and practices are

12  sufficient to comply with both the governing statutes and the Constitution, the

13  existence of a practice of improperly placing the burden of proof on detainees at

14  *Casas* hearings provided to class members and other detainees is highly relevant to

15  Petitioner's claim.

16         Finally, the Government's objection that *Casas* "is a legal opinion that

17  speaks for itself" is also completely misplaced.  The RFA asks for factual information

18  regarding whether the burden of proof is placed on detainees at *Casas* hearings.  That

19  is a factual question – or, at the most, a permissible RFA addressing a mixed question

20  of law and fact.  *See* Fed. R. Civ. P. 36(a); *A. Farber & Partners v. Garber*, 237

21  F.R.D. 250, 255 (C.D. Cal. 2006).  Regardless of whether the burden of proof is or is

22  not placed on the detainee, the Petitioner is entitled to a direct answer to this RFA.

23         3.    Respondents' Contentions

24         This request is irrelevant to the claims in this case.  Petitioners allege that every

25  alien detained for six months or longer is entitled to a bond hearing.  This is, as

26  Petitioners admit, a legal issue of statutory and constitutional interpretation.  However,

27  this request seeks to determine whether ICE is in compliance with *Casas-Castrillon*,

28

in which the Ninth Circuit concluded that aliens who obtained a stay of removal from the Ninth Circuit on a petition for review challenging their administratively final order of removal were entitled to a bond hearing under 8 U.S.C. 1226(a).  Although the compliance issue raised by the request relates to the detention of certain aliens under section 1226(a), ICE's compliance with *Casas-Castrillon* is not at issue here.

Even if the request was relevant, the request is overly burdensome to the extent the request requires an admission or denial based upon the individual review of the A-files of aliens who received *Casas* hearings to determine whether the alien or the Government bore the burden of proof.  Because the request includes those who are not within the class, ICE would have to conduct this inquiry with respect to all aliens, and not just aliens in the class.

### DD.    Request For Admission No. 11 to DOJ

#### 1.    Text of RFA and Government's Response

**REQUEST FOR ADMISSION NO. 11 to DOJ:**

Admit that, other than through a petition for a writ of habeas corpus or other writ, there is no judicial review of the outcome of CASAS HEARINGS.

**RESPONSE:**

(1)    See General Objections 1, 2, 6, and 8 above.

(2)    Respondent further objects that the request is irrelevant to Petitioner's claim that all aliens detained for six months or longer under any general detention statute of the Immigration and Nationality Act are required by the Act and the Constitution to a constitutionally adequate individualized hearing concerning their detention before an immigration judge.

(3)    Respondent further objects that the request calls for Respondent to admit or deny a legal conclusion.  Casas-Castrillon is a legal opinion that speaks for itself.

#### 2.    Petitioner's Contentions

None of the Government's general objections supports the refusal of the Government to respond to this RFA.  As explained above: (a) General Objection No.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**167**

1 is baseless because the Petitioner is entitled to discovery in this matter to obtain factual information relevant to the Court's legal analysis of the due process issues in this matter; (b) General Objection No. 2 is baseless because the RFA seeks information regarding the Government's existing policies, which affect class members; (c) General Objection No. 6 is baseless because the Government's practices with regard to *Casas* hearings are directly relevant to the Petitioner's claim; and (d) General Objection No. 8 is baseless because the fact that there is or is not judicial review of the outcome of *Casas* hearings is not subject to any privilege.

The Government's relevance objection approaches the frivolous. In a case in which the Petitioner challenges prolonged detention on statutory and constitutional grounds, and in which the Government defends, in part, on the ground that its existing policies and practices are sufficient to comply with both the governing statutes and the U.S. Constitution, the availability of judicial review of the outcome of *Casas* hearings provided to class members and other detainees is highly relevant to Petitioner's claim.

Finally, the Government's objection is that *Casas* "is a legal opinion that speaks for itself" is also completely misplaced. The RFA asks for factual information regarding whether judicial review is available for the outcome of *Casas* hearings. That is a factual question – or, at the most, a permissible RFA addressing a mixed question of law and fact. *See* Fed. R. Civ. P. 36(a); *A. Farber & Partners v. Garber*, 237 F.R.D. 250, 255 (C.D. Cal. 2006). Regardless of whether judicial review is or is not available, the Petitioner is entitled to a direct answer to this RFA.

3.    Respondents' Contentions

This request is irrelevant to the claims in this case. Petitioners allege that every alien detained for six months or longer is entitled to a bond hearing. This is, as Petitioners admit, a legal issue of statutory and constitutional interpretation. However, this request seeks to determine whether the immigration bond hearings ordered in

1    *Casas-Castrillon* are judicially reviewable.  The request is therefore wholly irrelevant

2    to the claims in this case.

3

4

5    Dated:  October 19, 2010                ACLU FOUNDATION OF SOUTHERN
                                             CALIFORNIA
6                                            Peter J. Eliasberg
                                             Ahilan T. Arulanantham

7                                            AMERICAN CIVIL LIBERTIES
                                             FOUNDATION
8                                            IMMIGRANTS' RIGHTS PROJECT
                                             Judy Rabinovitz
9
                                             STANFORD LAW SCHOOL
10                                           IMMIGRANTS' RIGHTS CLINIC
                                             Jayashri Srikantiah
11
                                             SIDLEY AUSTIN LLP
12                                           Steven A. Ellis
                                             William Tran
13                                           Brian K. Washington

14                                           By: /s/ *William Tran*
                                                   William Tran
15                                                 Attorneys for Petitioners

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Dated: October 19, 2010                    TONY WEST
                                               Assistant Attorney General
2                                              Civil Division

3                                              DAVID J. KLINE
                                               Director
4                                              Office of Immigration Litigation
                                               District Court Section
5
                                               VICTOR M. LAWRENCE
6                                              Principal Assistant Director

7                                              Theodore W. Atkinson
                                               THEODORE W. ATKINSON
8                                              Senior Litigation Counsel
                                               U.S. Department of Justice
9                                              Civil Division
                                               Office of Immigration Litigation
10                                             District Court Section
                                               P.O. Box 868, Ben Franklin Station
11                                             Washington D.C. 20044
                                               (202) 532-4135
12
                                               By: /s/ Theodore W. Atkinson
13                                                  Theodore W. Atkinson

14                                             NICOLE R. PRAIRIE
                                               Trial Attorney
15
                                               ELIZABETH L. WALKER
16                                             Trial Attorney

17                                             EREZ REUVENI
                                               Trial Attorney
18

19                                                  Attorneys For Respondents

20

21

22

23

24

25

26

27

28
_____
**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS'**
**MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**
**170**