1   AHILAN T. ARULANANTHAM (SBN 237841)
    Email: aarulanantham@aclu-sc.org
2   JENNIFER  STARK (SBN 267062)
    Email: jstark@aclu-sc.org
3   ACLU FOUNDATION OF SOUTHERN CALIFORNIA
    1313 West 8th Street
4   Los Angeles, CA 90017
    Tel: (213) 977-5211
5   Fax: (213) 977-5297

6   **Attorneys For Petitioners**
    (Additional counsel listed on following page)

7

8

9                    **UNITED STATES DISTRICT COURT**

10          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11                       **WESTERN DIVISION**

12

13   ALEJANDRO RODRIGUEZ,                )   Case No. CV 07-3239-TJH (RNBx)
     ABDIRIZAK ADEN FARAH, YUSSUF )
14   ABDIKADIR, ABEL PEREZ RUELAS, )
     JOSE FARIAS CORNEJO, ANGEL      )       **DISCOVERY MATTER**
15   ARMANDO AYALA, *for themselves* )
     *and on behalf of a class of similarly-* )  NOTICE OF FILING ADDITIONAL
16   *situated individuals,*            )       LEGAL AUTHORITY
                                        )
17          Petitioners,                )
                                        )
18      v.                              )       Honorable Robert N. Block
                                        )
19   ERIC H. HOLDER, JR., in his official )
     capacity as *United States Attorney* )
20   *General, et al.*                  )
                                        )
21          Respondents.                )
                                        )
22   _____)

23

24

25

26

27

28

1    Additional Counsel:

2    JUDY RABINOVITZ
     AMERICAN CIVIL LIBERTIES FOUNDATION
3    IMMIGRANTS' RIGHTS PROJECT
     125 Broad Street, 18th Floor
4    New York, NY 10004
     Telephone: (212) 549-2618
5    Facsimile: (212) 549-2654

6    JAYASHRI SRIKANTIAH (SBN 189566)
     STANFORD LAW SCHOOL
7    IMMIGRANTS' RIGHTS CLINIC
     Crown Quadrangle
8    559 Nathan Abbott Way
     Stanford, CA 94305-8610
9    Telephone: (650) 724-2442
     Facsimile: (650) 723-4426

10

     STEVEN A. ELLIS (SBN 171742)
11   WILLIAM TRAN (SBN 245104)
     BRIAN K. WASHINGTON (SBN 248960)
12   SIDLEY AUSTIN LLP
     555 West Fifth Street, Suite 4000
13   Los Angeles, California 90013-1010
     Telephone: (213) 896-6000
14   Facsimile: (213) 896-6600

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Petitioners provide this notice of recent Ninth Circuit authority that pertains

2    directly to the disputes before this Court.  On November 9, 2010, the Ninth Circuit

3    issued a published decision in Dent v. Holder, No. 09-71987 (9th Cir. Nov. 9, 2010), a

4    copy of which is attached to this pleading.  The Court held that the government is

5    obligated to provide all people in removal proceedings with their A files upon request,

6    both because such disclosure is required by statute and because a contrary

7    interpretation would create serious constitutional problems.  The Court explained:

8         "[t]he government uses the A-file routinely in almost every case to

9         determine whether an alien should be naturalized, and maintains an

10        automated system to make access easy for its staff.  All the official

11        records, correspondence, photographs, applications, petitions, statements,

12        reports and memoranda relating to immigration contacts between the

13        alien and the government are there, yet in the critical proceedings before

14        the IJ neither the IJ nor the BIA nor Dent was furnished with the relevant

15        documents.  We have no idea why not.  . . . The government offers no

16        reason why the A-file should not be furnished." Id. at 18464-65.

17    The Court concluded that "Dent, having asked for help in getting what records

18    the agency had that bore on his case, should have been given access to his file.  The

19    only practical way to give an alien access is to furnish him with a copy." Id. at 18467.

20    Petitioners thought it clear even prior to Dent that the government had an

21    obligation to turn over the A files of class members, because those files contain

22    information from which counsel can make relevant aggregate determinations

23    concerning the class, including how long class members are typically detained and the

24    quality of the procedures used to determine that their detention is warranted.  Dent

25    makes clear that the A file is highly relevant in assessing an individual's case, and also

26    that producing A files does not constitute a significant burden.  Indeed, Dent suggests

27    that the government's refusal to provide class members' A files could constitute a due

28    process violation.  Id. at 18465-67.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated:  November 11, 2010

By:  s/ Ahilan T. Arulanantham
AHILAN T. ARULANANTHAM
Counsel for Petitioners

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAZAR DENT, AKA Cesar Augusto Jimenez-Mendez,<br><br>*Petitioner,*<br><br>v.<br><br>ERIC H. HOLDER JR., Attorney General,<br><br>*Respondent.* | No. 09-71987<br><br>Agency No.<br>A037-082-657<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 13, 2010—San Francisco, California

Filed November 9, 2010

Before: Andrew J. Kleinfeld, A. Wallace Tashima and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Kleinfeld

18451

18454                         Dent v. Holder

## COUNSEL

Anne R. Traum, Supervising Attorney and Holly E. Cheong, Student Attorney, University of Nevada, William S. Boyd School of Law, Thomas & Mack Legal Clinic, Las Vegas, Nevada, for the petitioner.

Paul Fiorino, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

KLEINFELD, Circuit Judge:

We address an alien's right to see his "A-file" during proceedings against him.

## I.  Facts

The Department of Homeland Security initiated removal
proceedings against Dent on the ground that he was not an
American citizen or national, and had been convicted of an
aggravated felony. He has lived in the United States since
1981, but according to the government, he is a citizen of Hon-
duras and has been a lawful permanent resident rather than a
citizen. He was convicted on a guilty plea in the Superior
Court of Arizona of possession or use of narcotic drugs[1] and
escape in the third degree,[2] both felonies, and sentenced to
one year of imprisonment.

Dent defended pro se against his removal, arguing that he
had been adopted by an American citizen when he was a
child, and was an American citizen himself. He also argued
that his convictions did not suffice to make him an aggravated
felon under the statute.[3] The BIA adopted and affirmed the
IJ's decision that he be removed.

Dent at first conceded, at a hearing before the IJ, that he
was not a citizen of the United States. Subsequently, when the
IJ found that his escape, though on foot and for only half a
block, was a crime of violence, and that the charge of removal
had been proved, Dent said "I was adopted, you know that.
You guys know that." The IJ said he knew nothing about it.

In a previous hearing, government counsel had referred to
Dent's Alien File ("A-file") ("[the I-261] might have had a
different 'A' number on because we had to change 'A' num-
bers on this case . . . ."). In an earlier separate proceeding the
government filed a "motion to change A-file number" from
A24 411 521 to A37 082 657, consolidating the two files for
Dent, also using his pre-adoption name, Cesar Augusto

---

[1]A.R.S. § 13-3401, 3408, 3418, 701, 702, 702.01, and 801.

[2]A.R.S. § 13-1001, 2502, 2503, 31-342, 13-701, 702, 702.01, and 801.

[3]8 U.S.C. § 1101(43)(F).

Jimenez-Mendez. The government had not given copies of the
A-file to Dent or to the IJ in Dent's removal case. An A-file
is the file maintained by various government agencies for
each alien on record. "Contents include, but are not limited to
passport, driver's license, other identification cards, and pho-
tographs; immigration history (prior record); and all docu-
ments and transactions" relating to the alien.[4]

After Dent told the IJ he had been adopted by an American
citizen, the IJ reminded him that "You admitted that you're a
native and citizen of Honduras." Dent replied "Yes. But I no
[sic] I don't know anybody over there. I've been here since
I was 11 years old so I don't know." He went on, "I have my
adoption papers to show you, if you want to see them." The
IJ understood Dent to mean that he was claiming United
States citizenship and asked Dent if he had the adoption
papers with him. Dent did not, so the IJ gave him a continu-
ance so that he could produce them.

Dent succeeded. He wrote the lawyer in Arkansas who had
handled his Arkansas adoption twenty years before, and pro-
duced not only his adoption decree, but his school records
showing his elementary and high school attendance and his
grades. But then government counsel pointed out that he had
not proved that his adoptive mother, Roma Dent, was herself
an American citizen. The IJ asked Dent if he had his now-
deceased mother's birth certificate. Dent did not, so the IJ
gave him three weeks to get it and produce it. Dent wrote the

---

[4]INS Det. Man. T, Ch. 1, 2000 WL 35367104 (2000). "The A-File is
the record that contains copies of information regarding all transactions
involving an individual as he/she passes through the U.S. immigration and
inspection process. Previously, legacy Immigration and Naturalization
Services (INS) handled all of these transactions. Since the formation of
DHS, however, these responsibilities have been divided among USCIS
[United States Customs and Immigration Service], ICE [Immigration and
Customs Enforcement], and CBP [Customs and Border Protection]. While
USCIS is the custodian of the A-file, all three components create and use
A-files." 72 C.F.R. § 1755-02, 2007 WL 86868 (2007).

Arkansas adoption lawyer again. The lawyer replied that he would be unable to find a death certificate because Ms. Dent had died in Honduras, and a birth certificate would be a problem because "She was born before the central registry of birth certificates were issued. I have contacted the Labette County Courthouse in Kansas and due to a fire, they have lost all birth certificates before 1911." (Ms. Dent was born in 1905.) He was working on getting her passport, difficult since she had died on a trip to Honduras. Nevertheless the adoption lawyer sent Dent other persuasive evidence of his adoptive mother's citizenship: her 1950 application for a social security number, in which she had represented that she was born in Morehead in Labette County, Kansas June 17, 1905, of Arley Riggs and Irma Riggs nee Ross.

Dent wrote a statement to the IJ explaining that Ms. Dent had taken him, a child abandoned at age five or six, under her wing on her annual trips to help poor people in Honduras, brought him to America, and adopted him when he was fourteen:

> I was born in Honduras, Central America, I was abandoned at an early age by my biological parents. Probably when I was 5 or 6 yrs. old, one American woman by the name of Roma Riggs Dent, used to travel to Honduras then in the mid 70's to help the poor people, with clothes, food, and education, etc . . ., she was not connected or affiliated to any church, organizations, group, etc . . ., she did this on her own time, own financial support, etc . . . .

> I was a very poor and a needy orphan she treated me very nice and would let me in her house and we got closer to each other until I would miss her when she would leave for the united states, she would do this every year be in Honduras 6 months and come back to U.S.A., for another 6 months, any ways [sic] I started calling her mom as time went by until

finally she brought me to the united states in 1981
and finally adopted me as her legal son, now I was
14 yrs. old when the adoption was final in 1981.

I believe I inherited U.S. citizenship through this
adoption, now I seem to meet all of the I.N.S.
requirements for qualifying for it, exept [sic] for her
birth certificate, because she was born in 1904 and
records started being kept on files only since 1911.

However, I do have her SSI # birthdate and name,
etc . . ., she had a U.S. passport [sic] also, all of the
archives with the I.N.S. are in Memphis, Tenn. that
she had to give the I.N.S. in order for her to bring me
to the States. So I know that the government really
knows that she was a U.S. born citizen by birth not
any other kind of citizenship. She outlived her klan,
[sic] she died at age 96, the U.S. embassy in Hondu-
ras has her U.S. passport.

Dent pointed out in this statement that "the government really
knows that she was a U.S. born citizen by birth."

Noting that Dent had still not produced his mother's birth
certificate despite continuances and that he could pursue his
citizenship claim from Honduras, the IJ found that "respon-
dent has been unable to make a prima facie showing of citi-
zenship in the United States" and ordered him removed to
Honduras.

Dent appealed to the BIA, and won a remand on the non-
substantive ground that the record it received lacked the adop-
tion decree and the criminal judgment. On remand, the
government lodged an additional charge, that Dent was
removable not only for the escape but also for his controlled
substance violation. The IJ again found Dent removable
because his escape violation was a crime of violence, and also
because of his controlled substance violation. Dent again

appealed to the BIA, and the BIA adopted and affirmed the IJ's decision.

Unknown to Dent, documents existed in Dent's A-file related to Dent's claim of United States citizenship. These documents were always in the government's control, but never given to Dent. The documents consisted of a naturalization application Dent's adoptive mother filed on Dent's behalf on January 18, 1982 when Dent was fourteen, and an Application to File Petition for Naturalization Dent filed on his own behalf on February 26, 1986, when he was eighteen. The A-file does not include any document purporting to adjudicate either application. We now know about the A-file only because of a peculiar course of subsequent proceedings discussed below. Dent was not given these documents, and the IJ and BIA were not made aware of them, in the removal proceedings.

Dent petitions for review of the BIA decision affirming the IJ's decision, and raises a new issue, that he should have been furnished with the naturalization petitions in his A-file.

## II.   Analysis

### A.   Judicial notice

The procedural history of Dent's case took peculiar turns. First, the BIA remanded to the IJ because the record was inadequate. Second, the BIA affirmed, but failed to send notice to Dent at his current address. Dent was arrested in Ohio in 2008 for illegal reentry[5] and claimed (correctly) that he had not known that the BIA had affirmed or that he had been ordered deported. The government conceded inadequate notice and dismissed the indictment for illegal reentry in 2009. Dent had obtained counsel in the criminal proceeding. Counsel petitioned the BIA to reissue the 2005 decision that had not been

_____

[5]8 U.S.C. § 1326.

sent to the proper address, so that a timely petition for review could be filed. The BIA did so, and the petition for review before us is from the reissued decision.

The A-file documents have trickled into these proceedings subsequent to the government's aborted criminal prosecution for illegal reentry, so subsequent to the BIA decision under review. The BIA, so far as we can tell from the record, has never been provided with Dent's A-file documents regarding his adoptive mother's and his own petitions for his naturalization. When the BIA held that Dent had failed to prove that he was a naturalized citizen, it likely meant he had failed to prove that his adoptive mother was a United States citizen. That was the only argument the government had made once Dent had proved his adoption.

Dent's mother's and his own petitions to naturalize him were submitted to us as attachments to a motion Dent filed before us, asking us to take judicial notice of them. The government has opposed this motion, but suggests that if we do take notice, we also take notice of handwritten notations on the copy of the documents it has provided to us. The government submissions differ from Dent's, even though both are supposed to be copies of documents in Dent's A-file. The government's submission shows a rubber stamp Dent's does not, and there are other differences.

On Dent's adoptive mother's application filed in 1982 when Dent was fourteen, there are handwritten notations on the upper left corner of the first page that appear probably to say "absent" for dates in 1983, 1984 and 1986. There is a notation in a box labeled "nonfiled" appearing to say "over 18 2/26/86" with someone's initials. There is no explanation of why the INS may have sat on the document without acting on it for more than four years, until perhaps Dent aged out of the category where his adoptive mother could get him naturalized.[6]

---

[6]*See* Immigration and Nationality Act § 322, 8 U.S.C. § 1433.

The government argues that the handwritten notations mean
that Dent's adoptive mother had her chance, and either she or
her son or both failed to show up for three scheduled inter-
views or that they failed to file other required documents.[7]
There is a rubber stamp on the copy the government submit-
ted, illegible on our copy, which the government alleges says
"denied Nov 10 2008." Dent's submitted copy does not have
that stamp, so the stamp may have been added after the gov-
ernment had provided the copy without the denial stamp to
Dent, well after the 2005 conclusion of his removal proceed-
ings before the IJ and BIA.

On Dent's own application, signed in 1986 when he was
eighteen, there is an important discrepancy between his copy
and the government's. The copy the government gave him in
2008 does not show any government action. But the copy the
government gave us shows a label pasted onto the first page
dated February 26, 2009, and a handwritten notation that
appears to say "denied 3-25-09." That date, too, is long after
the BIA had affirmed the removal order on Dent's appeal. If
the government's representations are accepted, the govern-
ment denied Dent's mother's application 27 years after it was
filed, and denied Dent's 23 years after it was filed.

**[1]** Generally our review is confined to the administrative
record before the BIA. "We may review out-of-record evi-
dence only where (1) the Board considers the evidence; or (2)
the Board abuses its discretion by failing to consider such evi-
dence upon the motion of an applicant."[8] The law does not,
however, interpret this rule absurdly, so that injustice may be
done if the government successfully shields its documents
from a person who ought to have access to them, particularly
when the documents might change the result of the proceed-
ings. We took judicial notice of documents falsifying the

---

[7]*See Brue v. Gonzales*, 464 F.3d 1227, 1232 n.3 (10th Cir. 2006).

[8]*Fisher v. INS*, 79 F.3d 955, 964 (9th Cir. 1996) (en banc).

proposition on which the BIA had relied in *Lising v. I.N.S.*,[9]
and have discretion to do so here. We held in *Lising* that
*Fisher* does not prevent us from taking judicial notice of the
agency's own records.[10]

[2] We take notice of the existence of Dent's adoptive
mother's and his own applications for naturalization, because
they are official agency records from Dent's A-file. The gov-
ernment's failure to provide Dent with his A-file, and his evi-
dent ignorance of its existence, justify his failure to present
them to the tribunal. We cannot, however, take notice of the
facts proved by the documents, because we cannot ascertain
what those facts might be. We do not know who wrote the
handwritten notes, or what they mean. Nor are all the nota-
tions and rubber stamps legible.

B.   *The government's duty to produce the A-file*

[3] The A-File documents the history of immigrants' and
others' interactions with components of the Department of
Homeland Security and predecessor agencies. The United
States Customs and Immigration Service (USCIS) uses the
information in an A-File to enforce U.S. immigration laws.[11]
The A-file "contains all the individual's official record mate-
rial such as naturalization certificates; various forms (and
attachments, e.g., photographs), applications and petitions for
benefits under the immigration and nationality laws, reports

---

[9]124 F.3d 996 (9th Cir. 1997).

[10]*Id.*

[11]*See* 72 Fed. Reg. 9017-01, 2007 WL 594827 (2007); *see also* 72 Fed.
Reg. 1755-02, 2007 WL 86868 (2007) ("The A-File is the record that con-
tains copies of information regarding all transactions involving an individ-
ual as he/she passes through the U.S. immigration and inspection process.
Previously, legacy Immigration and Naturalization Services (INS) handled
all of these transactions. Since the formation of DHS, however, these
responsibilities have been divided among USCIS, ICE, and CBP. While
USCIS is the custodian of the A-File, all three components create and use
A-Files.").

of investigations; statements; reports; correspondence; and memoranda on each individual for whom INS has created a record under the Immigration and Nationality Act."[12]

[4] While Dent was struggling with the issues of his possible naturalization and his mother's citizenship, the government had his A-file with his adoptive mother's petition and his own. He did not have the contents of the file. The government has not suggested that anything in his A-file was or should be secret. The government had a central index linking to Dent's name, both before and after his adoption.[13] That a proceeding should have taken place without the benefit of the documents in the government's file on Dent invited error. The documents show the existence of highly debatable entries. That the parties still disagree about what those documents mean shows the importance of having them where they were most needed, in Dent's proceedings before the IJ. The extensive proceedings about whether he had been adopted, and whether his adoptive mother, evidently born in Kansas in 1905, was an American citizen, were all irrelevant if he was naturalized, and irrelevant if his naturalization was authoritatively and properly denied.[14]

In his first appeal (pro se) to the BIA, Dent expressly asked for help getting records relating to his mother's citizenship etc., because he was in jail and his adoptive mother was dead. Despite his request, he was not furnished with copies of his A-file. His lawyer later discovered the documents during his criminal prosecution for illegal reentry. That case was dismissed when the government discovered that it had failed to send his notice of his removal to the correct address. Had the government's error in service not led to Dent's arrest and

---

[12] 66 Fed. Reg. 46812-02, 2001 WL 1016875 (2001).

[13] 8 U.S.C. § 1360.

[14] Dent argues that the A-file showed that Dent's adoptive mother was granted a type of visa for him available only if she was a United States citizen. Pet'r Br. 9 n.3.

criminal proceedings, he apparently would never have seen the petitions for his naturalization filed decades before.

Dent argues that failure to furnish the A-file to him denied him due process of law, citing our decision in *Rendon*[15] that denial of a continuance necessary to a fair proceeding denied due process of law.

The government argues that Dent did not raise the claim before the BIA, so it is not exhausted. We reject that argument because his document request was indeed addressed to the BIA, and it would not be reasonable to require him to do more, particularly where he was not given the documents and therefore could not have put them before the BIA. The IJ and the government had focused the case, at that point, on whether Dent's Kansan adoptive mother was a United States citizen, a question to which the government may have already had the answer. (The adoption lawyer had suggested in the letter furnished to the BIA, that her 1950 application for a social security number, providing her date and place of birth, should be sufficient to establish her citizenship.)

No justification has been offered for the failure to furnish Dent, the IJ, the BIA, and us with the documents in the A-file. The government's motion in separate proceedings to change Dent's A-file number shows the government's awareness of the A-file. The government uses the A-file routinely in almost every case to determine whether an alien should be removed and whether an alien should be naturalized, and maintains an automated system to make access easy for its staff.[16] All the official records, correspondence, photographs, applications, petitions, statements, reports and memoranda relating to immigration contacts between the alien and the government

---

[15]*Rendon v. Holder*, 588 F.3d 669 (9th Cir. 2009).

[16]U.S. Gov't Accountability Office, GAO-07-85, Immigration Benefits: Additional Efforts Needed to Help Ensure Alien Files are Located when Needed 1 (2006).

are there, yet in the critical proceedings before the IJ neither the IJ nor the BIA nor Dent was furnished with the relevant documents. We have no idea why not. The only justification the government offers for why we all should have been left rooting around in the dark is in its 28(j) letter,[17] arguing that the law did not require them to furnish the A-file. The government offers no reason why the A-file should not be furnished.

**[5]**  "An alien has a Fifth Amendment right to due process, including the right to a full and fair hearing in a deportation proceeding."[18] "In order to prevail on such a claim, the alien must demonstrate that the challenged proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case."[19] Once the alien demonstrates that he was prevented from reasonably presenting his case, he must then "show prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation."[20] "[W]hen the alien appears pro se, it is the IJ's duty to 'fully develop the record.' "[21] "Because aliens appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country, it is critical that the IJ 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' "[22]

Dent argues that because he was not provided with the documents in his A-file, he was denied an opportunity to fully

---

[17]Fed. R. App. P. 28(j).

[18]*Burgos-Abril v. I.N.S.*, 58 F.3d 475, 476 (9th Cir. 1995) (citation omitted).

[19]*Rendon v. Holder*, 588 F.3d 669, 675 (9th Cir. 2009) (internal citations and quotation omitted).

[20]*Id.* (internal citations and quotation omitted).

[21]*Agyeman v. I.N.S.*, 296 F.3d 871, 877 (9th Cir. 2002) (quoting *Jacinto v. INS*, 208 F.3d 725, 733-34 (9th Cir. 2000)).

[22]*Id.*

18466                    DENT v. HOLDER

and fairly litigate his removal and his defensive citizenship claim.[23] We agree.

[6] Congress has provided that to meet his burden of proof in removal proceedings, "the alien shall have access" to his entry document "and any other records and documents, not considered by the Attorney General to be confidential, pertaining to the alien's admission or presence in the United States."[24] This mandatory access law entitled Dent to his A-file. The government takes the position that the only way Dent would be entitled to get the file would be a Freedom of Information Act request.[25] The government relies on a regulation (not a statute) providing that an individual seeking access to records about himself "must submit a written request" to the Freedom of Information Act (FOIA) office.[26]

The regulation does not purport to address removal hearings specifically. It is a general regulation governing records requests. If it applied to removal proceedings, a serious due process problem would arise, because FOIA requests often take a very long time, continuances in removal hearings are discretionary, and aliens in removal hearings might not get responses to their FOIA requests before they were removed.

[7] The doctrine of constitutional avoidance requires us to construe the statute and the regulation, if possible, to avoid a serious constitutional question.[27] We construe the "shall have

---

[23]Pet'r Br. 34.

[24]8 U.S.C. § 1229a(c)(2)(B).

[25]5 U.S.C. § 552.

[26]8 C.F.R. § 103.21.

[27]*See Public Citizen v. United States Department of Justice*, 491 U.S. 440, 466 (1989) ("It has long been an axiom of statutory interpretation that where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.") (quotation omitted).

DENT v. HOLDER                                      18467

access" statute to provide a rule for removal proceedings, and the regulation to apply generally in the absence of such a more specific rule.[28] It would indeed be unconstitutional if the law entitled an alien in removal proceedings to his A-file, but denied him access to it until it was too late to use it. That would unreasonably impute to Congress and the agency a Kafkaesque sense of humor about aliens' rights. Prejudice here is plain, because the A-file, when it is fully examined and this case adjudicated on all the facts, may show that Dent is a naturalized citizen of the United States.

[8] We conclude that Dent, having asked for help in getting what records the agency had that bore on his case, should have been given access to his file. The only practical way to give an alien access is to furnish him with a copy. We do not imply that Dent's request for help getting records was a necessary precondition to the government's obligation, nor do we imply that the government would have no obligation if Dent had not asked, because those cases are not before us. We are unable to imagine a good reason for not producing the A-file routinely without a request, but another case may address that issue when facts call for it.

The government argues that we ought to defer to the agency interpretation in *Matter of Duran*[29] for the proposition that the right to access to records is conditioned on following the procedure in the regulations, filing a FOIA request. We need not decide whether to defer to *Duran* because, first, it addressed discretionary 212(c) relief, not removal, and sec-

---

[28] *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001) (" '[W]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.' ") (quoting 2A Norman J. Singer, Sutherland-Statutory Construction § 47.17 (1991)).

[29] 20 I. & N. Dec. 1, 1989 WL 331857 (B.I.A. 1989).

ond, it came down before Congress promulgated the "shall have access" statute,[30] so *Duran* did not address the statute.[31]

### C.    Transfer to the district court

Ordinarily, upon deciding that an alien was denied a fair hearing in his removal proceeding, we would remand to the BIA so that he could get a fair hearing. In this case, though, Dent's claim is and has been that he is a naturalized citizen of the United States.

**[9]** The statute governing judicial review of orders of removal provides that if the petitioner claims to be a national of the United States, then the court of appeals should decide whether he is, in the absence of any genuine issue of material fact, or should transfer the case to the district court if there is a genuine issue of material fact.[32] Dent claims that he is a

---

[30] 8 U.S.C. § 1229a(c)(2)(B).

[31] Dent argues that the naturalization statute violates the Equal Protection Clause because it draws an irrational distinction between children adopted by natural born citizens and children adopted by naturalized citizens. We need not address this argument, or whether it is precluded by *Miller v. Albright*, 523 U.S. 420 (1998), and *Fiallo v. Bell*, 430 U.S. 787 (1977), because there has as yet been no decision on whether Dent is a citizen of the United States. Dent also argues that his escape offense is not an aggravated felony. We need not address this argument because if he is a citizen, he cannot be deported even if he did commit an aggravated felony.

[32] 8 U.S.C. § 1252(b)(5), which provides:

  (5) Treatment of nationality claims

    (A) Court determination if no issue of fact

      If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

    (B) Transfer if issue of fact

DENT V. HOLDER                    18469

United States citizen. That means we cannot remand Dent's
case to the BIA.

[10] This case presents a genuine issue of material fact.
The government claims that the handwritten notations and the
illegible photocopy of a possibly illegible rubber stamp prove
that Dent is not a citizen. We cannot confidently decide what
the notations and rubber stamp say. Nor can we decide who
put them there. Nor can we decide, in the absence of evi-
dence, whether, even if they say what the government claims
they say, and were put there by duly authorized officials of
the appropriate agencies, they have conclusive effect. We do
not know whether such notations amount to denials of natu-
ralization petitions. For all we know, the government lacks
authority to sit on an application to naturalize a fourteen year
old until after he is eighteen and has aged out, or to sit on
applications for naturalization for 23 or 27 years.

[11] Accordingly, we transfer the proceedings to the
United States District Court for the District of Arizona "for a
new hearing on [his] nationality claim and a decision on that
claim as if an action had been brought" for declaratory relief
under 28 U.S.C. § 2201.[33] If the district court determines that
Dent is not a citizen of the United States, then the case should
be remanded to the BIA for a new hearing after production of
the A-file in full, unless its production has already been
ordered by the district court.

---

If the petitioner claims to be a national of the United
States and the court of appeals finds that a genuine issue
of material fact about the petitioner's nationality is pre-
sented, the court shall transfer the proceeding to the dis-
trict court of the United States for the judicial district in
which the petitioner resides for a new hearing on the
nationality claim and a decision on that claim as if an
action had been brought in the district court under section
2201 of Title 28.

[33]*See* 8 U.S.C. § 1252(b)(5)(B).

18470                         DENT v. HOLDER

    The BIA decision is VACATED and the proceedings
TRANSFERRED to the district court.