TONY WEST
Assistant Attorney General,
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
Tel:  (202) 532-4135
Fax:  (202) 305-7000
E-mail: theodore.atkinson@usdoj.gov
NICOLE R. PRAIRIE
Trial Attorney
EREZ R. REUVENI
Trial Attorney
ELIZABETH L. WALKER
Trial Attorney

Attorneys for Respondents

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*,<br><br>Petitioners,<br><br>v.<br><br>ERIC H. HOLDER, JR., *et al.*,<br><br>Respondents. | Case No. CV 07-3239-TJH (RNBx)<br><br>RESPONDENTS' NOTICE OF MOTION AND RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS; AND MEMORANDUM OF POINTS AND AUTHORITIES |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 31, 2011, or as soon thereafter as the parties may be heard, Respondents will bring for hearing a motion for judgment on the pleadings in this action pursuant to Federal Rule of Civil Procedure 12(c).  The hearing will take place before the Honorable Terry J. Hatter, in Courtroom 17, 312 N. Spring Street, Los Angeles, CA 90012.

This motion is based on the Memorandum of Points and Authorities attached hereto, all pleadings in this action, and such oral argument as may be presented at the hearing on the motion.  This motion is also made following the conference of counsel pursuant to L.R. 7-3, which took place on September 22, 2010.

Dated: November 22, 2010        Respectfully submitted,

TONY WEST
Assistant Attorney General
Civil Division
U.S. Department of Justice

DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section

VICTOR M. LAWRENCE
Principal Assistant Director

By:   */s/Theodore W. Atkinson*
THEODORE W. ATKINSON
Senior Litigation Counsel

NICOLE R. PRAIRIE
Trial Attorney

EREZ R. REUVENI
Trial Attorney

ELIZABETH L. WALKER
Trial Attorney

# TABLE OF CONTENTS

Introduction and Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Procedural Background and Class Definition. . . . . . . . . . . . . . . . . . . . . . . . . . 4

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.  Arriving aliens do not have constitutional rights regarding their admission or exclusion, and the due process provided to them by Congress is constitutionally sufficient to permit their detention for more than six months under 8 U.S.C. § 1225(b).. . . . . . . . . . . . . . . . . . . . . 1

A.  Overview of the detention and parole provisions governing arriving aliens. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B.  Arriving aliens seeking initial admission request a privilege and have no constitutional rights regarding their immigration status... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C.  In any event, the Court lacks jurisdiction over DHS's parole determinations.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

D.  Even if the detention of arriving aliens for more than six months raises due process concerns, it does not follow that this Court can order bond hearings before immigration judges... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.  Section 1226(a) and related regulations already afford individuals the opportunity to challenge their detention or terms of release before an immigration judge.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A.  The law provides aliens detained or released under section 1226(a) with a procedural avenue to challenge detention decisions before the immigration courts.. . . . . . . . . . . . . . . . . . 17

B.  The section 1226(a) subclass representatives have either had bond hearings before an immigration judge, or were entitled to challenge the terms of release at a hearing before an immigration judge... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1.    Petitioner Rodriguez has been released, and he was entitled to challenge the terms of his release before an immigration judge............................................. 19

2.    Petitioner Ruelas has received at least two immigration bond hearings..................................................... 20

C.    Because aliens detained under section 1226(a) are entitled to a bond hearing before an immigration judge to challenge the terms of their release or their detention, Petitioners' section 1226(a) subclass claims are limited to a challenge to the constitutional adequacy of those hearings.................................. 22

III.    Due process does not require the bright line rule asserted by Petitioners that all aliens detained under section 1226(c) must receive a bond hearing after six months of detention........................ 22

A.    Overview of the mandatory detention provisions of section 1226(c) and the Supreme Court's Decision in *Demore*........... 23

B.    The mandatory detention of criminal aliens during ongoing removal proceedings for longer than six months does not raise constitutional concerns...................................... 26

C.    Even if mandatory detention under section 1226(c) is not constitutional in all cases, Petitioners are incorrect that mandatory detention for more than six months is unreasonable in every case, and the Court therefore cannot grant the class-wide relief Petitioners seek........................... 28

IV.    8 U.S.C. § 1231(a) and its implementing regulations satisfy due process as to the narrow subclass of aliens subject to a final order of removal but whose removal has been stayed pending judicial appeal............................................ 32

A.   The subclass only includes aliens with an administratively
     final order of removal who have received a stay of removal
     pending an appeal in a collateral attack on a final removal
     order – the same factual scenario examined by this Court
     last year in *Diouf*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

B.   The Court should apply its conclusions in *Diouf* to this case.. . . . . . 35

V.   The bond hearings afforded to class members meet due process
     and are constitutionally adequate... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

A.   Due process does not require bond hearing transcription or
     notice regarding availability of bond hearing.. . . . . . . . . . . . . . . . . 38

B.   The law does not require a heightened burden of proof on
     the Government to justify detention during immigration
     proceedings, and imposing mandatory factors for consideration
     of bond is improper.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

C.   Aliens are not constitutionally entitled to attorneys at the
     Government's expense during bond hearings.. . . . . . . . . . . . . . . . . 44

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Aguilera-Montero v. Mukasey,*
    548 F.3d 1248 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Alli v. Decker,*
    635 F. Supp. 2d 535 (M.D. Pa. 2009). . . . . . . . . . . . . . . . . . . . . . . 2, 29-30

*Alvarez-Garcia v. Ashcroft,*
    378 F.3d 1094 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

*Baltazar-Alcazar v. INS,*
    386 F.3d 940 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

*Barrera-Echavarria,*
    44 F.3d 1441 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Bd. of Regents v. Roth,*
    408 U.S. 564 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Brittain v. Hansen,*
    451 F.3d 982 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Carlson v. Landon,*
    342 U.S. 524 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Casas-Castrillon v. Department of Homeland Sec.,*
    535 F.3d 942 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Coppedge v. United States,*
    369 U.S. 438 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Demore v. Kim,*
    538 U.S. 510 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Diouf v. Mukasey,*
    542 F.3d 1222 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Diouf v. Holder,*
    No. 06-7452, 2009 WL 6331130 (C.D. Cal. Sept. 9, 2009). . . . . . . . . *passim*

*Fiallo v. Bell,*
    430 U.S. 787 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Fleming v. Pickard,*
    581 F.3d 922 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Flores-Powell v. Chadbourne,*
    677 F. Supp. 2d 455 (D. Mass. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 30

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,*
   896 F.2d 1542 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hardy v. United States,*
   375 U.S. 277 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*INS v. Chadha,*
   462 U.S. 919 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*INS v. Lopez-Mendoza,*
   468 U.S. 1032 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 41

*Jean v. Nelson,*
   472 U.S. 846 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jean v. Nelson (Jean II),*
   727 F.2d 957 (11th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kansas v. Hendricks,*
   521 U.S. 346 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kleindienst v. Mandel,*
   408 U.S. 753 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kokkonen v. Guardian Life Insurance Company,*
   511 U.S. 375 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Landon v. Plasencia,*
   459 U.S. 21 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 38

*Lata v. INS,*
   204 F.3d 1241 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Leonardo v. Crawford,*
   No. 09-17495 (9th Cir. Oct. 4, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Lierboe v. State Farm Mut. Auto. Ins. Co.,*
   350 F.3d 1018 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ly v. Hanson,*
   351 F.3d 263 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29-31

*Ma v. Ashcroft,*
   257 F.3d 1095 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Magallanes-Damian v. INS,*
   783 F.2d 931 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

*Martinez v. Gonzales,*
   504 F. Supp. 2d 887 (C.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Mathews v. Diaz,*
   426 U.S. 67 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Mayer v. City of Chicago,*
      404 U.S. 189 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Michelson v. INS,*
      897 F.2d 465 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Nadarajah v. Gonzales,*
      443 F.3d 1069 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nishimura Ekiu v. United States,*
      142 U.S. 651 (1892). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Noh v. INS,*
      248 F.3d 938 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Prieto-Romero v. Clark,*
      534 F.3d 1053 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Rodriguez v. Hayes,*
      591 F.3d 1105 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . 4, 16, 32

*Servin-Espinoza v. Ashcroft,*
      309 F.3d 1193 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Shaughnessy v. United States ex rel. Mezei,*
      345 U.S. 206 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 13

*Sidhu v. Chertoff,*
      No. 1:07-cv-00947-LJO-TAG-HC, 2009 WL 900734
      (E.D. Cal. March 31, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Singh v. Chertoff,*
      No. 08-70434, 2009 WL 1098493 (S.D. Cal. April 23, 2009). . . . . . . . . . 40

*Singh v. Holder,*
      No. 09-3012, 2010 WL 702246 (N.D. Cal. February 25, 2010). . . . . . . . 40

*G. Singh v. Chertoff,*
      No. 09-56567 (9th Cir. Oct. 4, 2010). . . . . . . . . . . . . . . . . . . . . . . 39

*V. Singh v. Holder,*
      No. 08-71682 (9th Cir. Oct. 4, 2010). . . . . . . . . . . . . . . . . . . . . . . 39

*Tijani v. Willis,*
      430 F.3d 1241 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Trench v. INS,*
      783 F.2d 181 (10th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*U.S. ex rel. Bilokumsky v. Tod,*
      263 U.S. 149, 157 (1923). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Carrillo*,
    902 F.2d 1405 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Motamedi*,
    767 F.2d 1403 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Warren*,
    338 F.3d 258 (3d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Wong Wing v. United States*,
    163 U.S. 228 (1896). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Zadvydas v. Davis*,
    533 U.S. 678 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## Administrative Decisions

*Matter of Adeniji*,
    22 I. & N. Dec. 1102 (BIA 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Matter of Chirinos*,
    16 I. & N. Dec. 276 (BIA 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Matter of Garcia-Garcia*,
    25 I. & N. Dec. 93 (BIA 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Matter of Guerra*,
    24 I. & N. Dec. 37 (BIA 2006). . . . . . . . . . . . . . . . . . . . . . . 18, 21, 39, 43

*Matter of Khalifah*,
    21 I. & N. Dec. 107 (BIA 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## Law Reviews

Goodhart, Determining the *Ratio Decidendi* of a Case,
    40 Yale L. J. 161, 169 (1930). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## Administrative Materials

Immigration Court Practice Manual, § 9.3(e)(iii). . . . . . . . . . . . . . . . . . . . . . . . 40

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction and Overview

At the heart of this immigration class action is Petitioners' claim that the Due Process Clause of the Fifth Amendment requires the Government to provide every alien detained under any one of four general immigration detention statutes with a bond hearing before an immigration judge once an alien has been detained for six months or longer.  Petitioners assert that due process compels this six-month blanket rule across each detention scheme, without regard to the governmental interest at stake, and without regard to an alien's status or individual circumstances.  Analysis of the relevant statutes, case law, and constitutional interpretation demonstrate that Petitioners are incorrect, and this Court should grant Respondents judgment on the pleadings.

Immigration detention receives unique constitutional consideration that sets it apart from criminal incarceration or even other forms of civil detention.  The Constitution provides Congress plenary authority over the admission and exclusion of non-citizens.  *See INS v. Chadha*, 462 U.S. 919, 940 (1983) ("The plenary authority of Congress over aliens under Art. I, § 8, cl. 4, is not open to question").  Indeed, the power to admit or exclude is firmly within the sovereign prerogative of the United States to determine its own national constitution and character.[1]  And the authority of the United States to admit or exclude necessarily includes the authority to detain non-citizens until their admission or exclusion is considered and determined.  *See Zadvydas v. Davis,* 533 U.S. 678, 712 (2001).

These fundamental constitutional principles guide all consideration of due process where immigration detention is concerned.  It is for this reason that the

---

[1]  Moreover, this authority rests with the legislative and executive branches.  "Our cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'"  *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953)).

1    Supreme Court, while acknowledging that "freedom from detention has always

2    been at the core of the liberty protected by the Due Process Clause from arbitrary

3    government action," *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997), has

4    repeatedly and steadfastly recognized that "[i]n the exercise of its broad power

5    over naturalization and immigration, Congress regularly makes rules that would be

6    unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003).

7    Within the framework of these bedrock constitutional principles, courts

8    examining the constitutionality of immigration detention have taken care to do so

9    within the confines of the detention statutes before them. This is because the

10    Constitution vests immigration authority in the political branches, each

11    immigration detention statute has a unique purpose, and each statute affects non-

12    citizens differently depending on their status and individual circumstances.

13    Without regard to the various and separate statutory schemes at issue here,

14    Petitioners seek an order requiring Respondents to apply a single standard across

15    the general detention statutes they challenge. They seek an order embracing a

16    bright-line rule requiring the Government to provide every alien – regardless of

17    statutory purpose, and regardless of status or circumstances – with a

18    "constitutionally adequate" bond hearing before an immigration judge once an

19    alien has been detained for six months or longer. Respondents are aware of only

20    one other time in which a claim was made that due process requires the imposition

21    of the six-month rule advanced here, and it was made by counsel for Petitioners,

22    and it was rejected. *Alli v. Decker,* 635 F. Supp. 2d 535 (M.D. Pa. 2009).

23    Moreover, since this case was filed in 2007, the Ninth Circuit has addressed

24    the constitutionality of prolonged immigration detention under different statutes at

25    issue here, but in no case has that court come close to embracing the view that

26    detention for more than six months without a bond hearing raises constitutional

27    concerns under *all* circumstances for every alien detained under *any* of the

28    challenged detention statutes. *See Casas-Castrillon v. Department of Homeland*

*Sec.*, 535 F.3d 942, 948 (9th Cir. 2008) ("Although Casas' nearly seven-year detention certainly qualifies as prolonged by any measure, we hold that the government retains authority to detain him under 8 U.S.C. § 1226(a) because Casas faces a significant likelihood of removal to Colombia once his judicial and administrative review process is complete."); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (rejecting habeas petition and concluding that although three-year detention qualifies as "prolonged by any measure," section 1226(a) authorized the alien's detention because he was likely to be removed); *Diouf v. Mukasey*, 542 F.3d 1222, 1232 (9th Cir. 2008) (declining to grant habeas even though Diouf's "detention undoubtedly extended beyond the presumptively reasonable period of six months" because Diouf was likely to be removed).

For the various reasons explained in this memorandum in consideration of the separate statutory provisions at issue, Petitioners are incorrect that they are entitled to the blanket class-wide relief of immigration bond hearings at six months that they seek.

Finally, Petitioners also claim that immigration bond hearings that they may have received under 8 U.S.C. § 1226(a) – the statute that entitles aliens to bond hearings before an immigration judge – are constitutionally inadequate. According to Petitioners, the regulations governing immigration bond hearings are insufficient to meet due process because the hearings are not transcribed, the Government does not notify aliens that they are entitled to request a bond hearing, the Government does not provide indigent aliens with counsel, the Government does not bear the burden of proof, and the standard of proof is not sufficiently high enough to justify detention beyond six months. Petitioners are incorrect that the Constitution requires such conditions in these administrative proceedings, and therefore they are incorrect that the types of wholesale, sweeping changes they seek to bond hearings must be ordered by this Court. For these reasons, the Court should grant Respomndents judgment on the pleadings.

## Procedural Background and Class Definition

This matter has been pending since 2007.[2]  [Dkt. # 1].  After this Court denied Petitioners' motion for class certification on, the U.S. Court of Appeals for the Ninth Circuit concluded that this case could proceed as a class action because it involves a legal issue of statutory and constitutional interpretation that does not turn on factual distinctions between class members or class representatives. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122–25 (9th Cir. 2010); [Dkt. # 51].[3]

Petitioners and the detainees they represent or seek to represent are purportedly detained under one of the four general immigration detention statutes that govern the detention of most aliens whom the Government seeks to remove. *See* 8 U.S.C. § 1225(b) (authorizing detention of non-citizens seeking admission); 8 U.S.C. § 1226(a) (authorizing detention of non-citizens pending a determination of removability); 8 U.S.C. § 1226(c) (authorizing mandatory detention of non-citizens who have committed certain criminal offenses); 8 U.S.C. § 1231(a) (authorizing detention of non-citizens with administratively final orders of removal during and after the removal period).  *See* Third Amended Complaint ("TAC") ¶ 109.

The proposed class consists "of all people within the Central District of California who 1) are or will be detained for longer than six months pursuant to the general immigration detention statutes pending completion of removal proceedings, including judicial review; 2) are not detained pursuant to one of the national security detention statutes at 8 U.S.C. § 1226a and 8 U.S.C. §§ 1531-37; and 3) have not been afforded a hearing to determine whether their prolonged

---

[2]  Petitioners filed a habeas petition on May 16, 2007 and a motion for class certification on June 25, 2007.

[3]  On November 17, 2010, Magistrate Judge Robert N. Block stayed all discovery in this matter so that the parties could focus on the legal issues presented in this Rule 12(c) motion for judgment on the pleadings. [Dkt. # 126].

1  detention is justified."[4]

2  Petitioners filed a motion for subclass certification and for clarification on

3  October 15, 2010.  Petitioners propose the following subclasses:

4  (1) a subclass of class members detained under 8 U.S.C. § 1225(b)

5  represented by Petitioners Abdirizak Aden Farah and Yussuf

6  Abdikadir;

7  (2) a subclass of class members detained under 8 U.S.C. § 1226(a)

8  represented by Petitioners Rodriguez and Abel Perez Ruelas;

9  (3) a subclass of class members detained under 8 U.S.C. § 1226(c)

10  represented by Petitioner Jose Farias Cornejo; and

11  (4) a subclass of class members detained under 8 U.S.C. § 1231(a)

12  represented by Petitioner Angel Armando Ayala.

13  [Dkt. # 101].

14  The class and subclass definitions exclude certain categories of aliens.  The

15  class excludes:  (1) aliens who have a final order of removal and no stay of that

16  removal order, such that the Government has legal authority to remove them;

17  (2) juveniles who are held under the care of the Office of Refugee Resettlement of

18  the Department of Health and Human Services; and (3) aliens imprisoned pursuant

19  to a criminal sentence, including individuals who complete removal proceedings

20  and any judicial review while serving such sentences.  *Id.*

21  On September 22, 2010, after Petitioners filed their Second Amended

22  Complaint,[5] Respondents notified Petitioners of their intent to file the present

23  motion for judgment on the pleadings pursuant to Rule 12(c).  This motion is ripe

24  for resolution because the claims presented in Petitioners' Third Amended

25  Complaint involve purely legal issues that have nothing to do with the particular

26

27  [4]  This Court certified the class on April 5, 2010. [Dkt. # 77].  On October 15, 2010, Petitioners sought clarification of the class definition to reflect the definition stated above. [Dkt. # 101].  Respondents do not oppose the clarification of the class definition.

28  [5]  The Third Amended Complaint corrects errors found in the Second Amended Complaint, but both pleadings make the same material allegations.

facts of any detainee's case. *See* Petitioner's Opening Brief, No. 08-56156 [Dkt. # 6 thereto], at 44; *see also* Petitioner's Motion for Class Certification [Dkt. # 10], at 84.[6]

## Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1989). The Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

## Argument

This class action involves a number of complex issues of statutory and constitutional interpretation. The issue of whether Petitioners or those they represent are entitled to a bond hearing turns in part on examining the statutory and due process claims within the context of each of the four immigration detention statutes. No single due process analysis will apply equally with respect to each of the subclasses, because "'[w]here an alien falls within [the] statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.'" *Casas-Castrillon*, 535 F.3d at 945 (9th Cir. 2008) (quoting *Prieto-Romero*, 534 F.3d at 1057 (9th Cir. 2008)). Complicating the subclass issues further is the fact that certain categories of aliens are excluded by Petitioners from their class definition. This means that discussion of the issue of whether due process requires bond hearings once an alien has been detained for

---

[6]  Respondents answered the material allegations of the Third Amended Complaint on October 1, 2010. [Dkt. # 94].

six months will be discussed broadly with respect to one statute, but may be more focused with respect to another.  Additionally, since this case was filed, a number of courts, including this Court and the Ninth Circuit, have already addressed issues raised in this action, in some cases definitively.  Consequently, some issues which may not have been addressed in 2007 may now be settled.  It is therefore important to identify at the outset those issues that are before the Court, and which are not.

First, Petitioners contend that because none of the general immigration detention statutes explicitly authorize prolonged detention, they cannot be construed to authorize more than six months of detention absent a hearing where the Government bears the burden of showing that continued detention is justified.[7]

Second, Petitioners contend that if the statutes do authorize prolonged detention without sufficient procedural safeguards, they violate the Due Process Clause of the Fifth Amendment.  When viewed through the prism of each of the challenged statutes, however, different issues are raised:

• With respect to section 1225(b), the issue of whether aliens seeking admission are entitled to a bond hearing at six months depends on a number of sub-issues:  (1) whether the statute authorizes the prolonged detention of aliens; (2) whether arriving aliens enjoy constitutional rights with regard to their immigration status; (3) even if they do enjoy constitutional due process rights with respect to their immigration status, whether the authority to parole aliens into the United States on a case-by-case basis is sufficient to satisfy due process; and (4) if parole is not sufficient, whether due process requires this Court to order the relief Petitioners seek, namely an order requiring Respondents to provide *every* alien detained under section 1225(b) for six months or longer with a

---

[7]   Since this action was filed, the Ninth Circuit concluded that section 1226(a) unambiguously authorized prolonged detention.  *Casas-Castrillon,* 535 F.3d at 949. This Court has recognized that section 1231(a)(6) is ambiguous as to the authority of the Attorney General (now the Department of Homeland Security ("DHS")) to prolong the detention of an alien.  *Diouf v. Holder*, No. 06-7452, 2009 WL 6331130, * 1 (C.D. Cal. Sept. 9, 2009) (Hatter, J.); *see also Diouf v. Mukasey*, 542 F.3d at 1234 (9th Cir. 2010) (finding section 1231(a)(6) ambiguous as to the authority of DHS to prolong the detention of an alien).

"constitutionally adequate" bond hearing, regardless of the alien's circumstances.

•       With respect to section 1226(a), the issue before the Court is not whether aliens detained under that statute may contest their detention or terms of release at a bond hearing before an immigration judge – such aliens already may seek a bond hearing before an immigration judge as a matter of procedural right. Instead, there is one issue before the Court regarding section 1226(a): whether the bond hearings that are provided to aliens are "constitutionally adequate."

•       With respect to the mandatory detention of criminal aliens under section 1226(c), there is no statutory ambiguity regarding DHS's authority to detain aliens beyond six months, and so the Court's inquiry should focus on two issues: (1) whether detention beyond six months raises a constitutional concern where the detention, regardless of length, has a definite termination point; and, (2) even if it does raise constitutional concerns, whether due process requires this Court to order the relief Petitioners seek, namely an order requiring Respondents to provide *every* alien detained under section 1226(c) for six months or longer with a "constitutionally adequate" bond hearing, regardless of the alien's circumstances.

•       With respect to section 1231(a), the issues in this case are significantly narrowed because the subclass is narrow.  The class only includes those aliens who have an administrative final order of removal and whose collateral (as opposed to direct) challenge to their removal has been stayed pending judicial appeal.  This subclass consists entirely of aliens in the same circumstances as the petitioner in *Diouf*, 2009 WL 6331130.  The issues with respect to this subclass are the same as those posed in *Diouf*: (1) whether the post-order custody review process satisfies the requirements of due process. *See Diouf*, 542 F.3d at 1235.

Third, and finally, Petitioners contend that bond hearings for aliens detained longer than six months must comport with certain requirements of constitutional adequacy.  These requirements include a notice of the hearing; transcription of the

1  hearing; burden on the Government to show by "clear and convincing" evidence
2  that "no conditions of release" can avoid a substantial risk of flight or "particularly
3  serious danger"; and that unrepresented aliens be provided with counsel at
4  Government expense.  TAC ¶¶ 9, 121-22.

5       As discussed below, Petitioners cannot prevail on any of these issues, and
6  are not entitled to the uniform class-wide relief they seek.

7  **I.    Arriving aliens do not have constitutional rights regarding their**
8       **admission or exclusion, and the due process provided to them by**
9       **Congress is constitutionally sufficient to permit their detention for**
10      **more than six months under 8 U.S.C. § 1225(b).**

11      Section 1225(b) provides for the detention of arriving aliens, with the
12  possibility of parole at the discretion of DHS, pending a determination of
13  admissibility.  8 U.S.C. §1225(b).  Petitioners argue that the Government may not
14  detain arriving aliens for longer than six months under section 1225(b) without
15  showing at an adequate hearing before an immigration judge that their continued
16  detention is justified by concerns of flight risk or danger.  TAC ¶ 116.  Petitioners
17  propose a subclass of members detained under section 1225(b) represented by
18  Petitioners Abdirizak Aden Farah and Yussuf Abdikadir.  Both Farah and
19  Abdikadir claim to be natives and citizens of Somalia who left that country and
20  traveled to the United States in December 2009 and March 2010, respectively, and
21  arrived at a port of entry.  TAC ¶¶ 45, 49, 53, 59.  Upon arrival at the United
22  States, both were detained under section 1225(b) pending a determination of their
23  claims for asylum by immigration judges.[8]  TAC ¶¶ 49, 59-60.  Both applied to

24
25
26
27

28  _____
    [8]  Although border officials referred Abdikadir to an immigration judge for
    determination of a claim for asylum, Abdikadir has yet to make an application for asylum
    before the immigration court.  TAC ¶ 60.

DHS for discretionary parole under 8 U.S.C. § 1182(d)(5)(A), but their initial applications were denied.  TAC ¶¶ 51, 61.[9]

### A.    Overview of the detention and parole provisions governing arriving aliens

Section 1225(b) authorizes the detention of those aliens who arrive at a port of entry but who are not admitted into the United States.  The term "admission" or "admitted," with respect to an alien, means the lawful entry of the alien into the United States after inspection and authorization by an immigration officer. 8 U.S.C. § 1101(a)(13)(A).  The term "arriving alien," as defined in 8 C.F.R. §§ 1.1(q), 1001.1(q), refers to persons entering or seeking admission into the United States at a port of entry.  *See* 8 C.F.R. § 1240.8(b).  Thus, while an alien arriving at a port of entry may be physically present in the United States, an alien not granted admission after arriving at a port of entry is legally outside the United States, having never made a "lawful entry."  These statutes reflect what has become known as the "entry fiction doctrine" under immigration law:

> [T]he doctrine provides that although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country.

*Aguilera-Montero v. Mukasey*, 548 F.3d 1248, 1253 (9th Cir. 2008) (citing *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097 (9th Cir. 2004).

Upon their arrival at the United States, Farah and Abdikadir requested asylum in the United States based on a fear of persecution if they were returned to Somalia.  TAC ¶¶ 49, 59.  Under our immigration laws, an arriving alien making a claim for asylum is interviewed by immigration officials to determine whether the

---

[9]    DHS granted Abdikadir subsequent parole request after he submitted new evidence. [Dkt. #94 at ¶ 61].

alien has a credible fear of persecution.  *See* 8 U.S.C. § 1225(b)(1)(B)(i).
Congress has provided that "[i]f the [immigration official] determines at the time
of the interview that an alien has a credible fear of persecution . . . the alien shall
be detained for further consideration of the application for asylum."  8 U.S.C.
§ 1225(b)(1)(B)(ii).

Both Farah and Abdikadir were found to have a credible fear of persecution
by immigration officials.  TAC ¶¶ 49, 59.  Accordingly, Farah and Abdikadir were
placed into proceedings under 8 U.S.C. § 1229a for a determination of their claims
for asylum by an immigration judge in accordance with law.  *See* 8 C.F.R.
§ 235.6(a)(1)(ii).  However, until their asylum claims are determined by an
immigration judge, the are subject to detention under section 1225(b)(1)(B)(ii).

Congress has also provided that, except under certain circumstances,
arriving aliens may be released from detention into the United States on parole:

> The Attorney General may . . . *in his discretion* parole into
> the United States temporarily under such conditions as he
> may prescribe only on a case-by-case basis for urgent
> humanitarian reasons or significant public benefit any alien
> applying for admission to the United States, but such
> parole of such alien shall not be regarded as an admission
> of the alien and when the purposes of such parole shall, in
> the opinion of the Attorney General, have been served the
> alien shall forthwith return or be returned to the custody
> from which he was paroled and thereafter his case shall
> continue to be dealt with in the same manner as that of any
> other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5).[10]   The decision to parole an alien into the United States is entirely discretionary.  *Id*.  Significantly, the act of paroling an alien into the United States does not provide that alien with admission, and thus a paroled alien remains an arriving alien.  8 U.S.C. § 1101(a)(13)(B) ("An alien who is paroled under section 1182(d)(5) of this title . . . shall not be considered to have been admitted.").[11]

> **B.    Arriving aliens seeking initial admission request a privilege and have no constitutional rights regarding their immigration status.**

Congress has plenary power to admit aliens to the United States or to bar them.  *Kleindienst v. Mandel*, 408 U.S. 753 (1972).   The Supreme Court has long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.  *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953).  Likewise, "[t]he Supreme Court has consistently recognized that our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission and those who are within the United States after an entry, irrespective of its legality."  *Alvarez-Garcia*, 378 F.3d at 1097 (9th Cir. 2004); *Barrera-Echavarria*, 44 F.3d 1441, 1450 (9th Cir. 1995) (en banc).  This fundamental "distinction between an alien who has effected an entry into the United States and one who has never entered" runs throughout immigration law.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

This distinction is significant because aliens "standing on the threshold of entry" are "not entitled to the constitutional protections provided to those within the territorial jurisdiction of the United States."  *Alvarez-Garcia*, 378 F.3d at

---

[10]   Pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002), all immigration functions vested in the Attorney General, with few exceptions, were transferred to the Secretary of Homeland Security.  *See also* 8 U.S.C.A. §1551, note.

[11]   The factors ICE may consider in determining whether to grant parole are not fixed. In making their decisions, immigration officials should apply "reasonable discretion" and may, for example, consider whether the alien has "[c]ommunity ties," such as close relatives with known addresses, in determining the alien's flight risk.  *See, e.g.*, 8 C.F.R. § 212.5(d)(2).

1097; *citing Ma v. Ashcroft*, 257 F.3d 1095, 1107 (9th Cir. 2001); *see also Zadvydas*, 533 U.S. at 693 ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders."); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Therefore, "immigration laws can constitutionally treat aliens who are already on our soil (and who are therefore deportable) more favorably than aliens who are merely seeking admittance (and who are therefore excludable)." *Alvarez-Garcia*, 378 F.3d at 1097 (quoting *Servin-Espinoza v. Ashcroft*, 309 F.3d 1193, 1198 (9th Cir. 2002)). Thus, an arriving alien standing on the threshold of initial entry has no procedural due process rights regarding admission or exclusion and stands on a different footing: "whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Mezei*, 345 U.S. at 212, *quoting United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *Nishimura Ekiu v. United States*, 142 U.S. 651 (1892). *See also Barrera-Echevarria*, 44 F.3d at 1449.

Simply put, arriving aliens such as Farah and Abdikadir "do not have an equal protection right to the same procedural mechanisms afforded to deportable aliens in the admissions process." *Alvarez-Garcia*, 378 F.3d at 1099. As a result, it is firmly settled law that the Due Process Clause affords an excludable alien no procedural protection beyond the procedure explicitly authorized by Congress, nor any substantive right to be free from immigration detention. *See Mezei*, 345 U.S. at 212; *Barrera*, 44 F.3d at 1450; *see also Wong Wing v. United States*, 163 U.S. 228 , 235 (1896) (providing that it is "clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion of expulsion of aliens would be valid").

Moreover, the Ninth Circuit has concluded that arriving aliens such as Farah and Abdikadir may be detained for prolonged periods: "Because an alien who has not been paroled must by definition be detained, and because Congress has certainly been aware that deportation cannot in all cases be immediately effected, . . . the statutory scheme implicitly authorizes prolonged detention." *Barrera-Echavarria*, 44 F.3d at 1446. The detention of inadmissible aliens is not a new practice. The Ninth Circuit explained that "it is significant that Congress has for at least four decades been aware of instances of long-term detention of excludable aliens by the executive branch" and yet has not amended the immigration statutes to limit their detention, require bond hearings, or otherwise divest the Secretary of Homeland Security of her statutory power to grant parole at her discretion. *Barrera-Echavarria*, 44 F.3d at 1447-48. "This legislative history confirms [the] interpretation that long-term detention is authorized under the current statutes." *Id.* at 1448.

As arriving aliens, Farah and Abdikadir and those they seek to represent can be lawfully detained under section 1225(b), even if that detention lasts for six months or longer. This Court should grant judgment to Respondents with respect to Petitioners' section 1225(b) claims.

## C.    In any event, the Court lacks jurisdiction over DHS's parole determinations.

Under the statutory scheme created by Congress to address the detention of arriving aliens, parole is the only avenue by which such aliens may be released. 8 U.S.C. § 1182(d)(5)(A). The Supreme Court has concluded that the power to parole is "subject to review only on a deferential abuse-of-discretion standard." *Jean v. Nelson*, 472 U.S. 846, 853 (1985). As the Ninth Circuit explained in *Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006), "immigration officials clearly have the authority to deny parole to unadmitted aliens if they can advance a facially legitimate and bona fide reason for doing so." *Id.* (citing *Jean*, 472 U.S. at 853 (quoting *Jean II*, 727 F.2d 957, 977 (11th Cir. 1984)). "If such a

reason is advanced the denial of parole is essentially unreviewable." *Nadarajah*, 443 F.3d at 1082 (citing *Noh v. INS*, 248 F.3d 938, 942 (9th Cir. 2001)).  Indeed, Congress has specifically provided that discretionary immigration decisions vested in the executive are beyond the purview of federal courts.  *See* 8 U.S.C. §1252(a)(2)(B) ("no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . .").[12]

There is an important consequence from these principles.  Petitioners Farah and Abdikadir each claim that they have applied for parole but the "decision whether or not to release him [was] made by a single officer, with no appeals process, and without providing a hearing of any kind.  An ICE officer denied [them] release without meaningful explanation."  TAC ¶¶ 50, 61.  But DHS's facially legitimate, discretionary decisions not to parole Farah or Abdikadir or anyone they represent is beyond the jurisdictional review of this Court.  On this ground alone the Court should grant judgment to Respondents with respect to the class claims regarding denial of parole.

**D.   Even if the detention of arriving aliens for more than six months raises due process concerns, it does not follow that this Court can order bond hearings before immigration judges.**

Congress has provided that arriving aliens detained under section 1225(b) may only be released under the discretionary authority of DHS to grant parole.  8 U.S.C. § 1182(d)(5)(A).  Within the complex statutory scheme concerning the detention and release of arriving aliens, Petitioners can point to no statutory construct that would permit this Court to order, under the doctrine of constitutional avoidance or otherwise, immigration bond hearings for any arriving alien in a pre-removal context.  To the contrary, as at least one district court in the

---

[12]   The parole statute, 8 U.S.C. § 1182(d)(5)(A), is within the same subchapter as the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii).

1  Ninth Circuit has recently concluded, immigration judges lack authority to

2  consider bond for arriving aliens.  *See Sidhu v. Chertoff*, No.

3  1:07-cv-00947-LJO-TAG-HC, 2009 WL 900734, *5 (E.D. Cal. March 31, 2009)

4  ("[T]he Court concludes that an Immigration Judge does not have jurisdiction to

5  conduct a bond hearing regarding an arriving alien such as Petitioner.") (citing 8

6  C.F.R. § 1003.19(h)(2)).

7        Therefore, even if this Court were somehow to conclude against the weight

8  of longstanding precedent that arriving aliens could not be detained for six months

9  or longer in compliance with due process, it cannot grant the relief Petitioners

10  seek.  To do so would overstep the discretionary authority granted by Congress to

11  the Executive to determine circumstances for release.  To do so would require the

12  Court to either strike down the law in its entirety as unconstitutional, or create in

13  place of section 1225(b) and section 1182(d)(5)(A) a judicially-crafted system of

14  detention not contemplated by Congress.  This the Court does not have the

15  authority to do this and therefore should grant Respondents judgment on the

16  pleadings as to all claims challenging detention under 8 U.S.C. § 1225(b).

17  **II.**    **Section 1226(a) and related regulations already afford individuals the**

18          **opportunity to challenge their detention or terms of release before an**

19          **immigration judge.**

20        Included within Petitioners' class claims are two subclass claims

21  challenging separate subsections of 8 U.S.C. § 1226.  Section 1226 provides for

22  both discretionary detention generally and mandatory detention for certain narrow

23  categories of criminal aliens pending a determination of their removability.

24  *Rodriguez*, 591 F.3d at 1113-14 (9th Cir. 2010).  The discretionary detention

25

26

27

28

provisions are found at section 1226(a), and the mandatory detention

provisions are found at section 1226(c).  These detention statutes are distinct, and,

as discussed below, raise separate issues within the context of Petitioners'

statutory and due process claims.

**A.    The law provides aliens detained or released under section 1226(a) with a procedural avenue to challenge detention decisions before the immigration courts.**

Aliens detained under section 1226(a) are entitled to bond hearings before

an immigration judge as a matter of procedural process.  Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may
> be arrested and detained pending a decision on whether the
> alien is to be removed from the United States. Except as
> provided in subsection (c) of this section and pending such
> decision, the Attorney General--
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on–
> (A) bond of at least $1,500 with security approved by, and
> containing conditions prescribed by, the Attorney General;
> or
> (B) conditional parole . . .

8 U.S.C. § 1226(a).  Thus, in the case of non-criminal aliens subject to removal

proceedings, the Attorney General (now the Secretary of Homeland Security)

retains discretion to decide whether they should be detained, released on bond, or

released on conditional parole.  *Id.*

The process for determining whether an alien detained under section

1226(a) may be released is governed by regulations found at 8 C.F.R. § 236.1.

Once an alien has been apprehended, ICE makes an initial custody determination;

ICE may release an alien if ICE determines that the release of an alien would not

pose a danger to property or persons, and that the alien is likely to appear for

removal proceedings.  8 C.F.R. §§ 236.1(c)(8) and (g).  If ICE releases an alien, ICE has the discretion to set a bond and/or prescribe other conditions for release. 8 U.S.C. § 1226(a); *see also* 8 C.F.R. §§ 236.1(c)(8) and (d)(1).  An alien released by ICE may apply to an immigration judge for amelioration of the terms of release within seven (7) days of release.  8 C.F.R. § 236.1(d)(1).  *Matter of Garcia-Garcia*, 25 I. & N. Dec. 93 (BIA 2009).

If ICE determines not to release an alien, the alien may appeal ICE's initial custody determination to an immigration judge.  8 C.F.R. § 236.1(d)(1).  The immigration judge is authorized to "detain the alien in custody, release the alien and determine the amount of bond, if any . . . ."  *Id.*  At the bond hearing, the alien bears the burden of showing that he is not a flight risk or danger (*see* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1; *See e.g., Matter of Guerra,* 24 I. & N. Dec. 37 (BIA 2006)), and the immigration judge must take into consideration a number of factors in determining a request for bond redetermination.  *See* Section V, *infra* (discussing nature of bond proceeding before an immigration judge).  An alien can also appeal an immigration judge's decision to the Board of Immigration Appeals. 8 C.F.R. § 236.1(d); *see also Prieto-Romero*, 534 F.3d at 1058.

> **B.    The section 1226(a) subclass representatives have either had bond hearings before an immigration judge, or were entitled to challenge the terms of release at a hearing before an immigration judge**.

Although the class certified in this action excludes any non-citizen not currently detained or who have "been afforded a hearing to determine whether their detention is justified," *see* Class Certification order [Dkt. # 77], Petitioners have identified two class representatives who fail to meet that definition. Petitioner Alejandro Rodriguez was once detained in this district, but ICE long ago released Rodriguez under section 1226(a) on an order of supervision that included electronic monitoring, curfew restrictions, and other conditions

Petitioners appear to challenge.  TAC ¶ 44.  Similarly, Petitioner Abel Perez Ruelas is currently detained, but received at least two bond hearings before an immigration judge under section 1226(a), and as a result was permitted release on bond in the amount of $5,000, which Ruelas has not posted.  TAC ¶¶ 73-75. Accordingly, the subclass representatives either have been released on terms that could have been challenged before an immigration judge (Rodriguez) or received immigration bond hearings (Ruelas).  Petitioners therefore cannot show that aliens detained or released under section 1226(a) lack the opportunity to raise detention decisions to an immigration judge in a bond hearing.

**1.    Petitioner Rodriguez has been released, and he was entitled to challenge the terms of his release before an immigration judge.**

Rodriguez complains that the terms of his release "subject him to severe restraints on his liberty" and that the Government "has continued to require that he abide by these restrictions, and has never afforded him a hearing before an immigration judge to determine if they are necessary to ensure his appearance at his final removal hearing . . . ."  TAC ¶¶ 44.  Petitioners are incorrect.  Contrary to Petitioners' assertions, Regulations implementing section 1226(a) already afford Rodriguez and others released under section 1226(a) the opportunity to seek amelioration of the terms of release set by ICE at a hearing before an immigration judge.  *See* 8 C.F.R. § 236.1(d)(1).[13]  Thus, Rodriguez and the subclass of aliens he represents are or were afforded the very relief sought:  the opportunity to challenge the terms of their release before an immigration judge.  Accordingly,

---

[13]    Moreover, the standard Form I-286 Notification to Alien of Conditions of Release or Detention issued by ICE to aliens in accordance with 8 C.F.R. § 236.1(g) notifies aliens detained under section 1226(a) that "You may request a review of this determination by an immigration judge."  *See* 8 C.F.R. § 299.1 (listing prescribed forms).  *See* Standard Form I-286 (attached as Exhibit A).

1  there is no additional relief sought by Petitioners that this Court may grant them.[14]

2  Judgment should be granted to Respondent on this claim.

3    **2.**  **Petitioner Ruelas has received at least two immigration bond**

4       **hearings.**

5      Unlike Rodriguez, who did not avail himself of the opportunity to seek a

6  hearing before an immigration judge to challenge the terms of his release,

7  Petitioner Ruelas has had at least two bond hearings before immigration judges.

8  The first bond hearing before an immigration judge occurred in April 2009, at

9  which time the immigration judge denied Ruelas release on the ground that Ruelas

10  presented a danger to society.  TAC ¶ 73.  Unsatisfied with the result he received

11  from the immigration judge, Ruelas later applied for a bond redetermination in

12  February 2010, and was afforded a second bond hearing before an immigration

13  judge.  TAC ¶ 74.  At that hearing, the immigration judge *granted* Ruelas bond in

14  the amount of $5,000.  *Id.*  Ruelas now complains that the $5,000 bond set by the

15  immigration judge is too high to pay – a complaint he did not appeal to the Board

16  of Immigration Appeals, even though that was his right, *see* 8 C.F.R. § 236.1(d)(3)

17  – and he seeks relief from this Court in the form of yet another bond hearing

18  before an immigration judge.

19      Ruelas has received the due process to which he is entitled.  In a case

20  decided after this action was filed, the Ninth Circuit determined that the provision

21  of bond hearings before an immigration judge is sufficient to overcome claims that

22  prolonged detention is unconstitutional.  *See Prieto-Romero*, 534 F.3d at 1065-66

23  (9th Cir. 2008) (concluding that because Prieto-Romero was found eligible for a

24  bond by an immigration judge, he "had an opportunity to contest the necessity of

25  his detention before a neutral decisionmaker and an opportunity to appeal that

---

26

27   [14]  Petitioners may argue that even if they could appeal ICE's custody determination to an immigration judge, the nature of the immigration proceeding is constitutionally inadequate.  *See infra* at Section V (discussing constitutionally adequate nature of immigration bond hearings).  However, Rodriguez has no standing to challenge the constitutional adequacy of a hearing to contest the terms of his release that he never sought.

28

1  determination to the [Board].") (citing 8 C.F.R. § 236.1(d); *Matter of Guerra*, 24 I.

2  & N. Dec. 37 (BIA 2006)).  Ruelas availed himself of the opportunity to seek

3  release from an immigration judge, and was successful.  Any claim he asserts that

4  he was not provided with due process because he was deprived of a hearing is

5  without merit.[15]  Furthermore, Ruelas cannot make a claim that his bond hearing

6  was inadequate on the basis of lack of notice of the bond hearings he was

7  provided, or on the basis of lack of legal representation.  The facts in this regard

8  are undisputed.  Ruelas could not have been deprived of due process for lack of

9  representation because Ruelas was represented by counsel at his second bond

10  hearing.  TAC ¶ 74.  Nor can Petitioners prevail on their claim (based on Ruelas's

11  circumstances) that aliens are deprived of advance notice of immigration bond

12  hearings because the representative subclass member, Ruelas, appeared at not one

13  but two bond hearings, and there is no allegation that he was not provided with

14  notice of the hearings.  TAC ¶ 73-74.[16]

---

[15]  Moreover, the Ninth Circuit has determined that any claim Ruelas may have that the $5,000 bond set by the immigration judge is too high is beyond the purview of this Court.  *See Prieto-Romero*, 543 F.3d at 1067.  Prieto-Romero complained that the immigration judge "set an excessively high bond amount" of $15,000.  *Id.*  The Ninth Circuit concluded that 8 U.S.C. § 1226(e) "does not permit us to reach the merits of this claim."  *Id.*  Section 1226(e) provides:  "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

[16]  In considering whether bond hearing procedures provided by statute and regulation meet constitutional muster, this Court is limited in the findings it can make and the relief it can grant, because in the absence of a representative party to stand for the class with respect to a classwide claim, the unrepresented claim must fail.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (stating that, "if Lierboe has no stacking claim, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail").

**C.    Because aliens detained under section 1226(a) are entitled to a bond hearing before an immigration judge to challenge the terms of their release or their detention, Petitioners' section 1226(a) subclass claims are limited to a challenge to the constitutional adequacy of those hearings.**

The law provides that aliens such as Rodriguez and Ruelas who are detained under the discretionary detention provisions of section 1226(a) are entitled to challenge their detention or seek amelioration of the terms of their release. Accordingly, this Court cannot conclude that such individuals are deprived of due process because the process they seek is already available to them.  Since Petitioners cannot allege that aliens detained under section 1226(a) do not receive bond hearings, the only issue before this Court is whether those bond hearings are "constitutionally adequate."

Later in this memorandum, Respondents address the issue of whether due process requires an immigration bond hearing to conform to the procedural demands listed by Petitioners in their complaint.  *See* TAC ¶¶ 121-22; *see also infra* Section V (discussing Petitioners' argument that a constitutionally adequate bond hearing requires advance notice, transcribed proceedings, burden of proof on the Government, a showing of particularly serious danger or flight risk, a heightened standard of proof, and provision of counsel at Government expense).

**III.    Due process does not require the bright line rule asserted by Petitioners that all aliens detained under section 1226(c) must receive a bond hearing after six months of detention.**

Petitioners' class action encompasses a challenge to the detention provisions found at 8 U.S.C. § 1226(c) that mandate the detention of certain criminal aliens pending their removal proceedings.  Petitioners seek the adoption of a bright line rule that would apply to each class member currently detained, and any alien who will be detained in the future under section 1226(c) for longer than

1    six months.  Specifically, read plainly, Petitioners seek an order that any alien

2    detained for six months or longer under section 1226(c), regardless of their

3    individual circumstances, must be provided with a bond hearing before an

4    immigration judge to determine whether their continued detention is justified

5    based on flight risk and danger.  TAC ¶ 127; TAC Prayer for Relief ¶¶ a, c.

6    Petitioners seek to have this Court impose a dramatic reinterpretation of section

7    1226(c), one that has never been adopted by any court.  In fact, courts that have

8    examined this issue have rejected either explicitly or implicitly any categorical

9    bright line test.

10        A.    **Overview of the mandatory detention provisions of section**

11              **1226(c) and the Supreme Court's Decision in *Demore***

12            Removable criminal aliens have long posed a special congressional concern.

13    Recognizing that criminal aliens released on bond pending removal frequently

14    failed to appear for removal proceedings or, worse, engaged in other crimes,[17]

15    Congress took steps in 1996 to revisit and strengthen detention provisions in

16    federal immigration law regarding criminal aliens.[18]  Thus, Congress adopted

17    section 1226(c) "against a backdrop of wholesale failure by the INS to deal with

18    increasing rates of criminal activity by aliens."  *Demore*, 538 U.S. at 518.  The

19    mandatory detention provisions enacted by Congress provide:

20

21

22    [17]   The Supreme Court has acknowledged these problems.  In *Demore*, the Supreme
      Court noted that "[c]riminal aliens were the fastest growing segment of the federal prison
23    population, already constituting roughly 25% of all federal prisoners, and they formed a
      rapidly rising share of state prison populations as well."  *Demore*, 538 U.S. at 518.  "One
24    1986 study showed that, after criminal aliens were identified as deportable, 77% were
      arrested at least once more and 45% – nearly half – were arrested multiple times before
25    their deportation proceedings even began."  *Id.*  The Supreme Court also recognized that
      in enacting the provisions that would become section 1226(c), "Congress also had before
26    it evidence that one of the major causes of the INS' failure to remove deportable criminal
      aliens was the agency's failure to detain those aliens during their deportation
27    proceedings." *Demore*, 538 U.S. at 519.

28    [18]   Congress enacted the provisions of section 1226(c) by passing section 303(b) of the
      Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.
      L. No. 104-208, Div. C., § 303(b), 110 Stat. 309-586 (Sept. 30, 1996).

23

1    (c) Detention of criminal aliens

2    (1) Custody

3    The Attorney General shall take into custody any alien

4    who—

5    (A) is inadmissible by reason of having committed

6    any offense covered in section 1182 (a)(2) of this

7    title,

8    (B) is deportable by reason of having committed any

9    offense covered in section 1227 (a)(2)(A)(ii),

10    (A)(iii), (B), (C), or (D) of this title,

11    (C) is deportable under section 1227 (a)(2)(A)(i) of

12    this title on the basis of an offense for which the

13    alien has been sentence [1] to a term of

14    imprisonment of at least 1 year, or

15    (D) is inadmissible under section 1182 (a)(3)(B) of

16    this title or deportable under section 1227 (a)(4)(B)

17    of this title,

18    when the alien is released, without regard to whether the

19    alien is released on parole, supervised release, or probation,

20    and without regard to whether the alien may be arrested or

21    imprisoned again for the same offense.

22    8 U.S.C. § 1226(c).  Barring exceptional circumstances enumerated in section

23    1226(c)(2), section 1226(c) prohibits the release of a criminal alien during

24    removal proceedings.

25    The constitutionality of non-discretionary detention under section 1226(c)

26    was affirmed by the Supreme Court in *Demore*.  Kim argued that "the Government

27    may not, consistent with the Due Process Clause of the Fifth Amendment, detain

28    him for the brief period necessary for his removal proceedings," without a bond

hearing.  *See Demore*, 538 U.S. at 523.  The Supreme Court disagreed, reiterating the long-established principle that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens."  *Demore*, 538 U.S. at 522 (citing *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976); *Zadvydas*, 533 U.S. at 718 (2001)).  Such authority exists because "Congress' power to detain aliens in connection with removal or exclusion . . . is part of the Legislature's considerable authority over immigration matters."  *Demore*, 538 U.S. at 523.  The Supreme Court further explained that it had previously held that "the INS could deny bail to the detainees 'by reference to the legislative scheme' even without any finding of flight risk," *Demore*, 538 U.S. at 524 (citing *Carlson v. Landon*, 342 U.S. 524 (1952)).

The Supreme Court also distinguished the pre-final order detention under section 1226(c) from the post-order, but potentially indefinite, detention considered in *Zadvydas*.  The aliens in *Zadvydas* were "ones for whom removal was 'no longer practically attainable,'" and thus "detention there did not serve its purported immigration purpose."  *Demore*, 538 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690).  Aliens detained under section 1226(c), by contrast, are detained pending their removal proceedings, and thus their detention "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  *Demore*, 538 U.S. at 528.  The Supreme Court further distinguished *Zadvydas* by explaining that while "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point," pre-final order detention under section 1226(c) has "a definite termination point."  *Demore*, 538 U.S. at 529.

With these principles in mind, the Supreme Court held that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for the removal hearing in large numbers,

1   may require that persons such as respondent be detained for the brief period

2   necessary for their removal proceedings." *Demore*, 538 U.S. at 513.

3   **B.      The mandatory detention of criminal aliens during ongoing**

4   **removal proceedings for longer than six months does not raise**

5   **constitutional concerns.**

6       Petitioner Farias Cornejo represents a class of aliens detained under section

7   1226(c). TAC ¶ 77-88. Cornejo has been detained since September 14, 2009, and

8   he is in removal proceedings based on drug-related convictions in 2007 and 2009,

9   and for a theft offense in 2009. TAC ¶¶ 82-83. His removal proceedings are

10  ongoing, and a hearing in his case was scheduled as recently as November 15,

11  2010. TAC ¶ 87.

12      Because Petitioner Cornejo's detention – and the detention of all other class

13  members detained under section 1226(c) – will come to an end in the foreseeable

14  future with a final order of the immigration judge, his detention cannot be

15  characterized as "potentially permanent," as in the context of *Zadvydas*. In

16  addition, unlike the potentially *indefinite* detention of the aliens in *Zadvydas*, the

17  statutory purpose in Cornejo's case has been and continues to be met. The

18  prolonged detention at issue in *Zadvydas* was unlawful because the removal of the

19  aliens there was not possible, which ran afoul of the statutory purpose justifying

20  their detention. *See Zadvydas*, 533 U.S. at 699. So as long as removal

21  proceedings – which will come to an end – are active, the criminal alien's

22  detention serves the overall statutory objective and is therefore inherently legal.[19]

23

24      [19] This is consistent with the conclusion in *Zadvydas* that prolonged detention is
    constitutionally permissible – regardless of the length of detention – as long as there is a

25  "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533
    U.S. at 699. In both *Demore* and *Zadvydas*, the continued detention was constitutional

26  to the extent the end of the detention is foreseeable, measured by the moment of removal
    in the post-order context, and the conclusion of removal proceedings in the pre-final

27  order context. The Court in *Demore* recognized that pre-final order detention was not
    potentially indefinite because it had a definite termination point. Because the

28  termination of removal proceedings is definite, as opposed to indefinite, detention under
    section 1226(c) raises no greater constitutional concern than post-final order detention
    where there is a likelihood of removal in the reasonably foreseeable future.

1    Although the reasoning of *Demore* was based, in part, on the Supreme

2  Court's assumption that removal proceedings would be relatively short in

3  duration, *see id.* at 529, the Court's assumptions regarding the standard time

4  frames for removal proceedings were not part of the holding of the case and do not

5  bind this Court.  *See Kokkonen v. Guardian Life Insurance Company*, 511 U.S.

6  375, 379 (1994) ("it is to the holdings of our cases, rather than their dicta, that we

7  must attend").  Only the conclusion reached on the material facts in a case form

8  the *ratio decidendi*; all other statements are *obiter dictum*.  *See* Goodhart,

9  Determining the *Ratio Decidendi* of a Case, 40 Yale L. J. 161, 169 (1930).

10    Put another way, "[g]ratuitous statements in an opinion that do not implicate

11  the adjudicative facts of the case's specific holding do not have the bite of

12  precedent."  *United States v. Warren*, 338 F.3d 258, 265 (3d Cir. 2003).  The

13  Court's gloss on the average processing times in *Demore* was *obiter dictum*, as it

14  did not implicate the adjudicative or material facts that the alien's removal

15  proceedings and related detention in that case were finite.  At most, the average

16  processing times were only evidence of the finitude of removal proceedings in

17  general, but were not necessary for resolution of the issue relating to the alien in

18  *Demore*.  The average times for removal proceedings discussed in *Demore* were

19  not properly facts of the case, as the alien in *Demore* himself had been detained for

20  longer than the average removal proceeding.  *See* 538 U.S. at 530-31.  Regardless

21  of the average time for removal proceedings, such proceedings and corresponding

22  detention are by definition never "indefinite," and that was the only material fact

23  actually decided in *Demore*.

**C.    Even if mandatory detention under section 1226(c) is not constitutional in all cases, Petitioners are incorrect that mandatory detention for more than six months is unreasonable in every case, and the Court therefore cannot grant the class-wide relief Petitioners seek.**

Petitioners have argued that neither section 1226(c) or the Fifth Amendment authorize mandatory detention to continue as long as removal proceedings are ongoing absent a bond hearing before an immigration judge.  *See* TAC ¶ 117 (citing *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005)).  However, even if mandatory detention under section 1226(c) is not constitutional in all cases where removal proceedings are ongoing, *Demore* and the cases that have followed do not support Petitioners' position that due process requires that a bond hearing is required in *every* case in which an alien has been detained for six months or longer under section 1226(c).  Instead, even under the most generous reading of *Demore* and its progeny, the constitutionality of a criminal alien's continued detention without a bond hearing under section 1226(c) depends on the reasonableness of continued mandatory detention under the facts of that alien's individual case.  This approach of examining the reasonableness of continued mandatory detention on a case-by-case basis deprives this Court of the ability to order, on a class-wide basis, the uniform relief Petitioners seek:  an order requiring Respondents to provide any alien who is or will be detained under section 1226(c) for six months or longer with a bond hearing before an immigration judge.

The view that due process requires an examination of the reasonableness of continued mandatory detention under section 1226(c) finds its genesis in the Supreme Court's conclusion that Congress constitutionally "may require that persons such as respondent be detained for the brief period necessary for their removal proceedings," *Demore*, 538 U.S. at 513, and the citation to the average length of removal proceedings as lasting approximately five to six months.  *Id.* at

529, n.12; *see also Casas-Castrillon*, 535 F.3d at 944 (noting that detention of more than five years exceeded a "brief period of time" for completion of removal proceedings).  In his concurring opinion, Justice Kennedy stated:

> Since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness *if the continued detention became unreasonable or unjustified*. . . . Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

*Demore*, 538 U.S. at 532-33 (emphasis added).  A number of courts have concluded, based on *Demore*, that whether a bond hearing is required in a particular case depends on whether continued detention is reasonable based on the circumstances of a particular case.  *See Ly v. Hanson*, 351 F.3d 263 (6th Cir. 2003); *Alli v. Decker*, 644 F. Supp. 2d 535 (M.D. Pa. 2009).

To be clear, courts have not embraced – and have instead rejected – Petitioners' assertion that the length of detention alone determines whether continued detention under section 1226(c) is reasonable and therefore constitutional.  Merely because a particular alien has been held pursuant to section 1226(c) for six months does not make otherwise constitutional detention, unconstitutional.

In *Demore*, the Supreme Court sanctioned the detention of the petitioner under section 1226(c), even though his detention had already exceeded the "average" length of removal proceedings, because the petitioner had sought a continuance of his removal proceedings beyond that time. *Demore*, 538 U.S. at 530-531.  In *Ly v. Hansen*, the Sixth Circuit declined to establish a bright line test for the reasonable time limitation of pre-removal detention, finding that "hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant." *Ly*, 351 F.3d at 271.  *See also Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455 (D. Mass. 2010) (citing *Ly*'s rejection of a bright line rule based solely on length of detention).  This court, citing *Ly*, has also indicated that the reasonableness of detention under section 1226(c) cannot be measured solely by reference to the length of the detention.  *Martinez v. Gonzales*, 504 F. Supp. 2d 887, 898 (C.D. Cal. 2007) (Hatter, J.) (stating that "[a] court must 'be sensitive to the possibility' that a removable alien may engage in 'dilatory tactics' in order to 'compel a determination' that his detention was unreasonably long.") (quoting *Ly*, 351 F.3d at 272).

Similarly, the court in *Alli* rejected the very six-month bright line rule Petitioners urge here,[20] concluding that "there is no expression of Congress's doubts as to the constitutionality of detention of deportable criminal aliens for more than six months," and because "[a] bright-line rule, and likely even a rule based solely on whether detention is 'prolonged,' run the risk of ignoring . . . considerations" of "relevant factors beyond the length of detention, such as the alien's conduct during removal proceedings and the likelihood that proceedings will result in an order of removal."  *Alli*, 644 F. Supp. 2d. at 542-43.

---

[20]   The American Civil Liberties Union also represented the petitioners in *Alli*, and although petitioners appealed the denial of class certification in that case, they did not appeal the district court's order rejecting the same bright line rule proposed here, nor did they appeal the "reasonableness" framework adopted by the court.

1    Rather than adopt a bright line rule, courts consider the reasonableness of

2    detention under section 1226(c) by reference to any number of factors within the

3    context of an alien's individual circumstances.  For example, in *Ly*, the Sixth

4    Circuit instructed courts to "examine the facts of each case, to determine whether

5    there has been unreasonable delay in concluding removal proceedings." *Id.*  In

6    *Alli*, the court identified a list of non-exhaustive factors that should go into a

7    court's reasonableness inquiry.  They include such matters as (1) the length of

8    detention, (2) the probable extent of future removal proceedings, (3) the likelihood

9    that removal proceedings will actually result in removal, and (4) the conduct of

10   both the alien and the government during removal proceedings.  *Alli*, 644 F. Supp.

11   2d at 543-45.

12   Even if this Court rejects Respondents' argument that mandatory detention

13   under section 1226(c) is constitutional in all cases because the statutory purpose

14   continues to be served and pre-final order detention is not indefinite, this Court

15   should reject the blanket six-months rule Petitioners urge.  Courts have repeatedly

16   held that the reasonableness approach that examines prolonged detention with an

17   eye towards the facts of a particular case is preferable to the blanket rule

18   Petitioners propose.  This approach is akin to *Demore*, in which the Supreme

19   Court took into account the fact that the petitioner there had requested a

20   continuance during his removal proceedings and ultimately ruled that his six

21   month detention was constitutional.  *Demore*, 538 U.S. at 531.  This

22   "reasonableness" approach also avoids anomalous results and gives weight to the

23   Government's legitimate interest in detaining criminal aliens to secure their

24   removal and prevent further crimes.

25   Determining whether continued detention under section 1226(c) is

26   reasonable under the circumstances is a fact-intensive inquiry.  For this reason, if

27   the Court correctly rejects Petitioners' bright line rule and instead determines that

28   due process demands only a case-by-case reasonableness inquiry, then the Court

1    should grant judgment to Respondents because the Court cannot grant the relief

2    sought to the section 1226(c) subclass.  The fact-intensive approach demanded by

3    reasonableness inquiry precludes this Court from providing "uniform relief from a

4    practice applicable" to each subclass, *Rodriguez*, 591 F.3d at 1125, such that "final

5    injunctive relief or corresponding declaratory relief is appropriate respecting the

6    [sub]class as a whole." Fed. R. Civ. P. 23(b)(2).  Put another way, because the

7    reasonableness of continued detention must turn on facts unique to each class

8    member, this Court cannot grant what is essentially individual relief on a case-by-

9    case basis under the umbrella of a class action.  This case would, with respect to

10   the section 1226(c) subclass, cease to be a class action.

**IV.    8 U.S.C. § 1231(a) and its implementing regulations satisfy due process as
to the narrow subclass of aliens subject to a final order of removal but
whose removal has been stayed pending judicial appeal.**

14   Petitioners seek an order from this Court declaring that aliens detained under

15   section 1231(a) for six months or longer are entitled to a bond hearing before an

16   immigration judge.  This claim, however, only applies to a narrow subclass of aliens

17   by dint of Petitioners' exclusion from the class certain categories of aliens detained

18   in the post-order context.  When the exclusions are applied to the class definition,

19   the entire subclass of aliens is limited to those aliens who (1) have an administrative

20   final order of removal, (2) who have made a collateral challenge to a removal order

21   in the Ninth Circuit, such as through a petition for review of the denial by the Board

22   of Immigration Appeals of a motion to reopen, (3) who have received a stay from

23   the Ninth Circuit, and (4) who have been detained for six months or longer.  This

24   subclass contain individuals who present identical circumstances to the petitioner in

25   *Diouf v. Holder*, 2009 WL 6331130, a case decided by this Court last year.  *Diouf*

26   presented a challenge to the prolonged detention of an alien like those in the

27   subclass, and concluded that the statutory and regulatory scheme of post-final order

28   custody reviews was sufficient to satisfy due process.  The Court should reach the

32

1 same conclusion again here, because the facial challenge to the post-order detention

2 scheme is the same in both cases, and there is no difference between Diouf and

3 Ayala (and the subclass members Ayala represents).[21]

4     **A.**    **The subclass only includes aliens with an administratively final**

5         **order of removal who have received a stay of removal pending an**

6         **appeal in a collateral attack on a final removal order – the same**

7         **factual scenario examined by this Court last year in *Diouf*.**

8       The section 1231(a) subclass includes a narrowly defined category of detained

9 aliens.  As defined by Petitioners, the proposed section 1231(a) subclass only

10 encompasses aliens detained pursuant to section 1231(a) "for longer than six months

11 . . . pending completion of removal proceedings" whom the Government does not

12 have "legal authority to remove."  TAC at ¶ 105.  It expressly "excludes people who

13 have a final order of removal *and no stay of that removal order*."  *Id.* at ¶ 107.[22]

14 However, the Ninth Circuit's decision in *Casas-Castrillon* in 2008 effectively limits

15 the class even further, because in *Casas-Castrillon* the Ninth Circuit held that aliens

16 detained under section 1231(a) who obtained a stay of removal pending a direct

17 challenge to their removal order through a petition for review are detained under

18 section 1226(a) and entitled to a bond hearing.  *See Casas-Castrillon*, 535 F.3d at

19 946-47.  Consequently, Petitioners' subclass excludes aliens with a stay and who

20 *directly* challenge their removal order.  So limited, the subclass consists *solely* of

21 aliens whose administrative final orders of removal have been stayed pending

22

23     [21]  This Court's decision in *Diouf* was appealed by the petitioner, and was argued and

24 submitted to the Ninth Circuit on October 4, 2010.  *See Diouf v. Holder*, No. 09-56774 (Docket Entry dated Oct. 4, 2010).  A decision by the Ninth Circuit is pending.

25     [22]  So limited, the subclass excludes aliens who have judicially final orders of removal

26 because (1) they never appealed their administratively final orders of removal to the Ninth Circuit; (2) they appealed their administratively final orders of removal to the

27 Ninth Circuit, but they did not receive a stay of removal from the Ninth Circuit; or (3) they appealed to the Ninth Circuit, received a stay, but the stay was lifted, in most cases

28 because they lost their appeal.  Those categories of aliens are explicitly excluded by Petitioners from the class and subclass definitions.

*collateral review* of those orders, such as an appeal from the Board of Immigration Appeals on a motion to reopen.

This is reflected in the facts surrounding the section 1231(a) class representative, Angel Armando Ayala. Ayala, a native and citizen of El Salvador, was arrested in 1994 and charged with removability by the former Immigration and Naturalization Service. TAC ¶ 92. Ayala admits that he did not appear for the hearing at which he was ordered removed, and at which his application for relief from removal under the Nicaraguan and Cuban Adjustment Relief Act ("NACARA") would have been decided. TAC ¶¶ 92-94. Because he did not appear at his own hearing, Ayala was ordered removed *in absentia*. TAC ¶ 95. According to Ayala, he did not timely seek to reopen his removal proceedings because of ineffective assistance of counsel. TAC ¶ 96. Indeed, he took no action to either challenge or comply with the removal order against him. TAC ¶ 98. Nearly ten years later, Ayala was arrested by immigration authorities on the basis of his 1999 removal order, and placed into detention pending removal. TAC ¶ 99. He subsequently sought to reopen his proceedings, which was denied; he appealed to the Board of Immigration Appeals, and the Board denied the request because Ayala's counsel did not represent him at the time. *Id.* Ayala then filed an appeal to the Ninth Circuit, challenging the Board's denial of the motion to reopen. TAC ¶ 101. The Ninth Circuit granted Ayala a stay of removal while it considered his appeal. *Id.*

Ayala and the petitioner in *Diouf* are – from a legal point of view – materially indistinguishable. Both were ordered removed, and neither challenged his removal order directly. Instead, both unsuccessfully moved the Board of Immigration Appeals to reopen their removal proceedings based on ineffective assistance of counsel, and both appealed the denials of their motions to reopen to the Ninth Circuit and received a stay of removal. There is complete overlap of the material aspects of each alien's case.

**B.    The Court should apply its conclusions in *Diouf* to this case.**

The result of the class definition in this action is that this Court is being asked to consider the exact same issue it considered in *Diouf*:  whether the statutory and regulatory scheme of section 1231(a) provides aliens such as Diouf (and now Ayala and those he represents) with due process for their continued detention.

In *Diouf*, this Court began its analysis of the claim presented in this case by examining the precedents on the issue of indefinite detention.  As an initial matter, this Court recognized that the post-order detention of an alien beyond six months is permissible under the Constitution, provided there is a significant likelihood that the alien will be removed in the reasonably foreseeable future.  *See Diouf v. Holder*, No. 06-7452 TJH, 2009 WL 6331130, *1 (C.D. Cal. Sept. 9, 2009) (finding Diouf likely to be removed and stating that "'an alien is entitled to habeas relief after a presumptively reasonable six-month period of detention under § 1231(a)(6), only upon demonstration that the detention is indefinite – i.e., that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.") (quoting *Diouf*, 542 F.3d at 1233).[23]

With this in mind, this Court then explained that the decision in *Casas-Castrillon* does not compel the conclusion that an alien detained under section 1231(a) is entitled to a bond hearing:  "[I]t does not follow that Diouf, like an alien under § 1226(a), is entitled to a bond hearing as a requirement of the due process." *Diouf*, 2009 WL 6331130, *2.  This Court noted that the status of Casas-Castrillon as a lawful permanent resident differentiated Casas-Castrillon from Diouf, and observed that the "circumstance of the alien in Casas-Castrillon is factually different from Diouf."  *Id.*  For this reason, this Court explained that "[t]he Constitutional concern due to the ambiguity of § 1231(a)(6) does require that an alien receive

---

[23]  Procedural timing is the only reason the section 1231(a) issue presented in this case was answered in *Diouf* rather than in this case.  Although Petitioners made their claim in this case in 2007, *Diouf* reached conclusion in this Court first.

1  adequate procedural protection to ensure that the government's asserted justification

2  for physical confinement outweighs the individual's constitutionally protected

3  interest in avoiding physical restraint." *Id.* (Citing *Prieto-Romero*, 534 F.3d at

4  1065).

5      This Court then turned to the issue of whether Diouf received adequate

6  procedural process, even without a bond hearing. *Id.* The Court had before it

7  evidence of the rigorous process used by ICE to review the post-order custody of

8  aliens such as Diouf. After considering this evidence, the Court concluded that the

9  post-order custody review process set forth in 8 C.F.R. §§ 241.4 constituted

10 "adequate procedural due process":

11          The post-order custody review worksheet required the

12          reviewing officer to consider numerous factors laid out at 8

13          C.F.R. § 241.4(e), (t), and (h)(2). The basic purpose of the

14          immigration detention is assuring the alien's presence at

15          removal. *Prieto-Romero*, 534 F.3d at 1063. The

16          government's decision to continue custody is not in violation

17          of due process when balanced with other considerations, such

18          as Diouf's criminal history, lack of cooperation in past

19          removal proceedings and the likelihood of his future removal.

20          To the extent Diouf retains any constitutional rights, the

21          post-order custody review procedures provided ample

22          procedural due process in these circumstances.

23 *Diouf*, 2009 WL 6331130, *3.

24      Thus, when confronted with the precise issue presented in this case – whether

25 the detention provisions of section 1231(a) and the regulatory scheme of 8 C.F.R.

26 §§ 241.4, *et. seq.*, provide due process to aliens detained longer than six months –

27 this Court decided that Diouf had been provided with due process. Nothing has

28 changed in the law in the year since *Diouf* was decided. The post-order custody

36

1   review process the Court found constitutionally adequate has not changed. It

2   remains a robust process for reviewing the detention of aliens who have been

3   ordered removed.[24]   This Court should embrace its decision in *Diouf*, apply it to the

4   class-wide claims made here, and grant judgment on the pleadings for Respondents.

**V.      The bond hearings afforded to class members meet due process and are**

**        constitutionally adequate.**

7   In addition to the prolonged detention issues discussed above, Petitioners

8   claim that the bond hearings provided aliens under section 1226(a) are

9   constitutionally inadequate. Specifically, Petitioners claim that a constitutionally

10  adequate bond hearing requires proper notice and transcription, the burden must be

11  on the Government to prove flight risk and danger under heightened standards, and

12  the Government must provide counsel to indigent aliens at bond hearings. TAC ¶¶

13  9, 121-22. Petitioners are incorrect as a matter of law.

14  This Court should conclude that the bond hearings conducted in accordance

15  with 8 C.F.R. § 1003.19 are constitutionally adequate, and that Petitioners' proposals

---

[24]   Respondents detailed the post-order custody review process in *Diouf*. *See Diouf*, 2:06-cv-07452-TJH-FMO [Dkt # 68] (Respondents' Opening Brief on Remand*)* at 16-21 (addressing constitutionality of post-order custody review process). In summary, aliens detained under section 1231(a), such as Ayala, receive a post-order custody review ("POCR") at the end of the 90-day statutory period, during which ICE must determine whether the alien should be released in consideration of a number of factors. *See* 8 C.F.R. §§ 241.4(e), (f), (k)(1)(i). If the alien is not released or removed at the time of the initial POCR, and has cooperated with the removal process, he or she will receive a second review three months later, or after 180 days have passed from the date the removal period began. 8 C.F.R. § 241.4(k)(2)(ii). If the alien is not released following the 180-day POCR, a subsequent review will be commenced within approximately one year after the 180-day POCR. 8 C.F.R. § 241.4(k)(2)(iii). If ICE determines that there is not a significant likelihood of removal in the reasonably foreseeable future, the alien must be released unless his continued detention is justified by the special circumstances provided for in 8 C.F.R. § 241.14. *See* 8 C.F.R. § 241.13(b)(1). Aside from the required review procedures outlined in 8 C.F.R. § 241.4, an alien may also request a determination from ICE of whether there is a significant likelihood of removal in the reasonably foreseeable future at anytime after a removal order becomes final. *See* 8 C.F.R. § 241.13(d)(3). Each of these regulations provide for notice to the detained alien and permit the submission of evidence by the alien. *See* 8 C.F.R. §§ 241.4(h)(1) and (h)(2). Respondents incorporate the discussion and arguments detailed in their opening brief on remand in *Diouf* herein. *See Diouf*, 2:06-cv-07452-TJH-FMO [Dkt # 68] (Respondents' Opening Brief on Remand).

1  to include potential improvements during bond hearings are simply not required as a

2  matter of right or constitutional law.  Certain basic principles should guide the

3  Court's consideration of Petitioners' claims.  The constitutional prerequisite for due

4  process protection is that "life, liberty, or property" be at stake in order to implicate

5  a due process right.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972);

6  *Brittain v. Hansen*, 451 F.3d 982, 999 (9th Cir. 2006).  Although detention pending

7  removal implicates the notion of liberty, removal proceedings are civil, not criminal

8  in nature.  *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984).  The full range of

9  constitutional rights available in criminal proceedings is not afforded respondents in

10  removal proceedings.  *Id*. at 1038.  Moreover,

11      [i]t must weigh heavily in the balance that control over

12      matters of immigration is a sovereign prerogative,

13      largely within the control of the executive and the

14      legislature.   The role of the judiciary is limited to

15      determining whether the procedures meet the essential

16      standard of fairness under the Due Process Clause and

17      does not extend to imposing procedures that merely

18      displace congressional choices of policy.

19  *Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982).  Petitioners seek to displace

20  congressional choices of policy by having this Court impose unnecessary factors

21  into the immigration bond hearing process, a process that already meets the

22  procedural due process requirements as outlined by the Ninth Circuit.

23      **A.    Due process does not require bond hearing transcription or notice**

24          **regarding availability of bond hearing.**

25      Petitioners cannot establish that they have a constitutional procedural right to

26  additional process, such as notice of the availability of the bond hearing itself and

27

28

transcription of those proceedings.[25]  Fundamentally, Petitioners cannot demonstrate how the lack of such process impinges on the fundamental fairness of the bond hearing, which is required for due process violations.

As an initial matter, bond proceedings, which are authorized by 8 U.S.C. § 1226(a), are informal and are separate from removal proceedings:

> (d) Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section *shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding.*

8 C.F.R. § 1003.19(d) (emphasis added); *accord Matter of Guerra*, 24 I. & N. Dec. at 40 n.2 ("Bond proceedings are separate and apart from the removal hearing"); *Matter of Khalifah*, 21 I. & N. Dec. 107, 112 (BIA 1995) ("It is well settled that there is no requirement in bond proceedings for a formal hearing and that informal procedures may be used so long as no prejudice results") (citation omitted).  The immigration judge need only prepare a bond memorandum as a record of the bond proceedings:

> In any bond case in which the parties or the Immigration Judge rely on evidence from the merits case, it is necessary that such evidence by introduced or otherwise reflected in the bond record (such as through a summary

---

[25]  Indeed, the Ninth Circuit concluded in this case that "If an alien who would otherwise be a member of the class receives a bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be a member of the class." *Rodriguez*, 591 F.3d at 1118.  Respondents note, however, that the issue of whether hearings conducted pursuant to *Casas-Castrillon* require transcription, provision of Government counsel, and heightened burdens of proof was recently taken up by the Ninth Circuit.  In a trio of cases that advanced after this case was filed in 2007, the Ninth Circuit has heard arguments as to whether *Casas-Castrillon* hearings must conform to certain substantive and procedural standards that are identical to those set forth in the Third Amended Complaint at ¶¶ 121-122. *V. Singh v. Holder*, No. 08-71682 (9th Cir. Oct. 4, 2010); *Leonardo v. Crawford*, No. 09-17495 (9th Cir. Oct. 4, 2010); *G. Singh v. Chertoff*, No. 09-56567 (9th Cir. Oct. 4, 2010).  Decisions in those cases remain pending.

1    of merits hearing testimony that is reflected in the

2    Immigration Judge's bond memorandum).

3 *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1115 (BIA 1999) (emphasis added).  There

4 is no statutory or regulatory requirement of a verbatim record.  The Executive Office

5 of Immigration Review's own manual provides that bond hearings are not generally

6 recorded.  *See* Immigration Court Practice Manual, § 9.3(e)(iii) ("Bond hearings are

7 generally not recorded"); *see also Matter of Chirinos*, 16 I. & N. Dec. 276, 277

8 (BIA 1977) ("there is no right to a transcript of a bond redetermination hearing.

9 Indeed there is no requirement of a formal 'hearing'"); *Singh v. Holder*, No. 09-

10 3012, 2010 WL 702246 at *6 (N.D. Cal. February 25, 2010) (denying procedural

11 due process claim to a transcribed bond hearing); *Singh v. Chertoff*, No. 08-70434,

12 2009 WL 1098493, at *5 (S.D. Cal. April 23, 2009) (same).  Moreover, even in

13 criminal trials, the Supreme Court has held that, to be constitutionally adequate, the

14 record need not be verbatim.  *See Mayer v. City of Chicago*, 404 U.S. 189, 193–94

15 (1971); *Coppedge v. United States*, 369 U.S. 438, 446 (1962); *United States v.*

16 *Carrillo*, 902 F.2d 1405, 1409 (9th Cir. 1990) (citing *Hardy v. United States*, 375

17 U.S. 277, 279–82 (1964)).  Thus, transcription should not be required as a

18 constitutional matter in immigration-related bond hearings.  The immigration

19 judge's bond memorandum is a sufficient record of whether correct burdens and

20 standards were considered, and as no formal hearing is required as a matter of law,

21 notice of the availability of a bond hearing is also not necessary.

22    **B.    The law does not require a heightened burden of proof on the**

23        **Government to justify detention during immigration proceedings,**

24        **and imposing mandatory factors for consideration of bond is**

25        **improper**.

26    Petitioners urge this Court to require, as a constitutional matter, that the

27 Government prove "by clear and convincing evidence that *no set* of release

28 conditions could reasonably assure the detainee's presence in the event of removal

40

1  or protect the community from serious danger, taking into account the length of

2  detention at issue," in order to justify detention.  TAC ¶ 9 n.3.  There is no basis for

3  requiring such a standard.  No standard of proof is prescribed in the statute and

4  regulations, and no court has established such a heightened requirement.  When the

5  Ninth Circuit was faced with a similar lack of prescribed standard of proof in the

6  pre-trial detention provisions Bail Reform Act of 1984, it ruled that a

7  preponderance-of-the-evidence standard applied:

8              [The 1984 Act] is silent with regard to the burden of

9              proof governing the finding that a person poses a risk of

10             flight.  The language and structure of the 1984 Act lead

11             us to conclude that the flight risk determination is

12             governed by a standard other than that of clear and

13             convincing evidence. . . . [T]he Government must

14             establish risk of flight by a clear preponderance of the

15             evidence, not by the higher standard of clear and

16             convincing evidence.

17  *United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985).

18         Petitioners cannot demonstrate that their proposed heightened standard should

19  be applied.  As the Supreme Court noted in *INS v. Lopez-Mendoza*, release of an

20  alien in removal proceedings would "[c]learly frustrate the express public policy

21  against an alien's unregistered presence in this country."  468 U.S. at 1047.  In

22  *Lopez-Mendoza*, the U.S. Supreme Court held that even Fourth Amendment

23  violations could not be used as a basis to exclude evidence used in removal

24  proceedings.  *Id*.  ("Even the objective of deterring Fourth Amendment violations

25  should not require [the alien's release within our borders].").  Thus, Petitioners have

26  not shown how, even when other Constitutional protections are not implicated by

27  affirmative violations, that applying the standard for bond hearings set forth by the

28  Ninth Circuit is a violation of Petitioners' due process rights under the law.

1    Furthermore, the proposed requirement that the immigration judge must find

2    "*no set* of release conditions could reasonably assure the detainee's presence in the

3    event of removal or protect the community from serious danger" would be an

4    improper intrusion into the immigration judge's discretion when making bond

5    determinations.  The same concept applies to the improper assertion that

6    immigration judges must be required to consider length of detention when a bond

7    hearing is conducted.

8    Immigration judges have the ability to make bond determinations "based on

9    any information that is available to [him] or that is presented to him . . . by the alien

10    or the Service."  8 C.F.R. § 1003.19(d).  The immigration judge's discretionary

11    judgment on what to consider during a bond hearing is unreviewable by courts, and

12    thus it necessarily follows that this Court cannot impose upon them a requirement

13    that he or she consider any particular factor during a bond hearing or find that *no* set

14    of release conditions could reasonably assure the detainee's presence at removal.

15    *See* 8 U.S.C. 1226(e) ("No court may set aside any action or decision by the

16    Attorney General under this section regarding the detention or release of any alien

17    or the grant, revocation, or denial of bond or parole.").  Whether or not a probable

18    set of release conditions exists that may or may not assure a detainees' presence at

19    removal could differ from judge to judge, and the possibilities could prove endless.

20    As stated by the Tenth Circuit Court of Appeals, "a deportation hearing is unlike a

21    law school exam; the immigration judge is not required to construct elaborate

22    theories, marshal obscure, facts and develop an arguable basis for relief from

23    deportation."  *Michelson v. INS*, 897 F.2d 465, 468 (10th Cir. 1990).  Similarly,

24    immigration judges should not be required to conduct such an analysis during a

25    bond hearing and find that *no set* of release conditions is possible, but then be

26    faulted for not examining every obscure prospect.

27

28

To the contrary, the immigration judge has broad discretion in deciding the factors that he may consider in custody determination hearings. *See Matter of Guerra*, 24 I. & N. Dec. at 40. When determining whether a petitioner is entitled to bond, an immigration judge must review the evidence in accordance with *Matter of Guerra*, 24 I. & N. Dec. 37; *see also Prieto-Romero*, 534 F.3d at 1066–67 (recognizing that where an alien is detained under § 1226(a), the immigration judge should look to the factors set forth in *Matter of Guerra* when determining bond).[26] The immigration judge "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Id*. at 39–40. The question in reviewing an immigration judge's bond decision is reasonableness. *Id*. Moreover, the BIA conducts a *de novo* review of all the evidence presented. *See Lata v. INS*, 204 F.3d 1241 (9th Cir. 2000) (alien must show substantial prejudice, a demonstration that the alleged violation affected the outcome of the proceeding). This due process is constitutionally adequate and Petitioners simply cannot demonstrate as a matter of law that these factors are somehow fundamentally unfair. *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 157 (1923) ("a hearing granted does not cease to be fair, merely because rules of evidence and of procedure applicable in judicial proceedings have not been strictly followed by the executive; or because some evidence has been

---

[26] *Matter of Guerra* holds that:

> Immigration Judges may look at a number of factors in determining whether an alien merits release on bond, as well as the amount of bond that is appropriate. These factors include *any or all* of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

24 I. & N. Dec. at 40 (emphasis added).

43

improperly rejected or received.  To render a hearing unfair, the defect, or the

practice complained of, must have been such as might have led to a denial of justice,

or there must have been absent one of the elements deemed essential to due

process.") (internal citations omitted).  Accordingly, this Court should reject

Petitioners' proposal for a heightened burden of proof during bond hearings and

required factors for consideration of bond.[27]

**C.    Aliens are not constitutionally entitled to attorneys at the Government's expense during bond hearings.**

There is simply no right to appointed counsel at bond hearings or immigration

hearings generally.  Thus, Petitioners' claim that aliens should be provided attorneys

during bond hearings at the Government's expense must fail as a matter of law.  The

Ninth Circuit has recognized that "deportation hearings are deemed to be civil, not

criminal, proceedings and thus not subject to the full panoply of procedural

safeguards accompanying criminal trials." *Magallanes-Damian v. INS*, 783 F.2d

931, 933 (9th Cir. 1986); *Baltazar-Alcazar v. INS*, 386 F.3d 940, 945 (9th Cir. 2004)

("the plain language of [8 U.S.C. § 1362 and 8 U.S.C. § 1229a(b)(4)(A)] provides

that, so long as there is no expense to the government, a petitioner has the right to be

represented by an attorney of his choice who is authorized to practice before the

---

[27]    Moreover, while recognizing that *Tijani* imposes the burden of proof in *Casas* hearings on the government and that *Casas-Castrillon* quotes the *Tijani* decision on this point in apparent approval, the Government nevertheless continues to believe that its possession of the burden of proof in *Casas* hearings is improper.  First of all, the Ninth Circuit has failed to provide any justification as to why *Casas* hearings place the burden of proof on the Government, which burden otherwise rests on the alien in all other bond contexts.  *See* 8 C.F.R. § 236.1(c)(8); 8 C.F.R. § 1236.1(c)(8); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1114 – 15 (BIA 1999).  Secondly, the Ninth Circuit itself has demonstrated ambivalence in clarifying the allocation of the burden of proof in *Casas* hearings, suggesting that this matter has yet to be resolved.  In *Prieto-Romero*, a case decided on the same day as *Casas-Castrillon*, the Court noted that "the Petitioner contends that *Tijani* requires all aliens to receive bond hearings where the government bears the burden of establishing ineligibility for release," but held, "We need not resolve the issue because Prieto-Romero cannot demonstrate prejudice." 534 F.3d at 1066.  If *Tijani* and *Casas-Castrillon* settle the matter of whether or not the Government bears the burden of proof in *Casas* hearings, it is odd that the *Prieto* court was unwilling to issue a holding on this very issue.

1  INS."). Although it is well-settled that aliens are entitled to some due process of

2  law during removal proceedings, "there is no right to appointed counsel in

3  deportation proceedings, and the fact that an alien without counsel is not considered

4  a denial of due process, if he does not show that he was prejudiced thereby." *Trench*

5  *v. INS*, 783 F.2d 181, 183 (10th Cir. 1986). Because aliens in removal proceedings

6  have no constitutional right to counsel under the Sixth Amendment, *see*

7  *Magallanes-Damian*, 783 F.2d at 933, the Constitution cannot then require that

8  aliens be provided with an attorney at the Government's expense during bond

9  hearings.

10  8 U.S.C. § 1229a(b)(4) provides that in removal proceedings, "the alien shall

11  have the privilege of being represented, at no expense to the Government, by

12  counsel of the alien's choosing who is authorized to practice in such proceedings."

13  Similarly, 8 U.S.C. § 1362 states,

14  In any removal proceedings before an immigration judge and in

15  any appeal proceedings before the Attorney General from any such

16  removal proceedings, the person concerned shall have the privilege

17  of being represented (at no expense to the Government) by such

18  counsel, authorized to practice in such proceedings, as he shall

19  choose.

20  8 U.S.C. § 1362. Pertinent regulations require that an alien be notified of his right

21  to counsel (at no expense to the Government) and be given a list of free legal

22  services at his or her removal proceeding. 8 C.F.R. § 246.5(b). Furthermore, issues

23  of counsel are only appropriately raised on a case-by-case basis, and certainly not

24  the proper subject for a class action matter. *See e.g., Michelson*, 897 F.2d at 468

25  (finding claim regarding lack of counsel meritless when petitioner had not shown

26  "prejudice that would cast doubt on the fundamental fairness of the hearing.");

27  *Baltazar-Alcazar*, 386 F.3d at 946–47 (aliens challenged immigration judge's

28  determination that they could not have certain attorneys represent them during

1  removal proceedings).

2  <u>**Conclusion**</u>

3       Petitioners have failed to state a claim to which they are entitled to relief with

4  respect to each of their constitutional and statutory claims in this case.  The six-

5  months bright-line rule they seek to establish through this action is not required by

6  due process, nor is such a broad, generalized rule that ignores the individual

7  circumstances of detained aliens an appropriate form of relief in this action.

8  Petitioners contention that an immigration bond hearing must conform to procedures

9  that stretch the current practices in ways never embraced by any court is also

10  without merit.  The Court should enter an order granting Respondents judgment on

11  the pleadings.

12  Dated: November 22, 2010          Respectfully submitted,

13

14                      TONY WEST
                    Assistant Attorney General
                    Civil Division

15

16                      DAVID J. KLINE
                    Director, Office of Immigration Litigation
                    District Court Section

17

18                      VICTOR M. LAWRENCE
                    Principal Assistant Director

19            By:     <u>*/s/ Theodore W. Atkinson*</u>

20                      THEODORE W. ATKINSON
                    Senior Litigation Counsel
                    U.S. Department of Justice

21                      Office of Immigration Litigation
                    District Court Section

22                      P.O. Box 868, Ben Franklin Station
                    Washington DC 20044

23                      (202) 532-4135
                    theodore.atkinson@usdoj.gov

24

25                      NICOLE R. PRAIRIE
                    Trial Attorney

26                      EREZ R. REUVENI
                    Trial Attorney

27

28                      ELIZABETH L. WALKER
                    Trial Attorney

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on November 22, 2010, I submitted the foregoing to
opposing counsel by e-mailing the same on the following:

4

5    Ahilan T. Arulanantham                    Judy Rabinovitz
     ACLU Foundation of Southern               ACLU Immigrants' Rights Project
6    California                                125 Broad Street 18th Floor
7    1616 Beverly Boulevard                    New York, NY 10004
     Los Angeles, CA 90026                     212-549-2618
8    213-977-5211                              Fax: 212-549-2654
9    Fax: 213-977-5297                         Email: jrabinovitz@aclu.org
     Email: aarulanantham@aclu-sc.org
10                                             Steven A. Ellis
11   Jayashri Srikantiah                       Sidley Austin LLP
12   Stanford Law School                       555 W 5th St, Ste 4000
     Immigrants' Rights Clinic,                Los Angeles, CA 90013-1010
13   Crown Quadrangle                          213-896-6000
14   559 Nathan Abbott Way                     Fax: 213-896-6600
     Stanford, CA 94305-8610                   Email: sellis@sidley.com
15   650-724-2442
16   Fax: 650-723-4426                         Brian Kelley Washington
     Email: jsrikantiah@law.stanford.edu       Sidley Austin
17                                             555 West Fifth Street Suite 400
18   William Tran                              Los Angeles, CA 90013-1010
19   Sidley Austin                             213-896-6000
     555 West Fifth Street Suite 4000          Fax: 213-896-6600
20   Los Angeles, CA 90013-1010                Email: bwashi01@sidley.com
21   213-816-6000
22   Fax: 213-896-6600
     Email: wtran@sidley.com
23

24

25

26                                             */s/ Theodore w. Atkinson*
                                               THEODORE W. ATKINSON
27                                             Senior Litigation Counsel
28                                             United States Department of Justice