1  PETER J. ELIASBERG (SBN 189110)
   Email: peliasberg@aclu-sc.org
2  AHILAN T. ARULANANTHAM (SBN 237841)
   Email: aarulanantham@aclu-sc.org
3  MICHAEL KAUFMAN (SBN 254575)*
   Email: mkaufman@aclu-sc.org
4  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West Eighth Street
5  Los Angeles, California 90017
   Tel: (213) 977-5211
6  Fax: (213) 977-5297

7  **Attorneys For Petitioner**
   (Additional counsel listed on following page)

8

9

10              **UNITED STATES DISTRICT COURT**

11         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12                    **WESTERN DIVISION**

13

14

15  ALEJANDRO RODRIGUEZ, et al.,        ) Case No. CV 07- 3239-TJH (RNBx)
                                         )
16            Petitioners,              ) **MEMORANDUM OF POINTS AND**
                                         ) **AUTHORITIES**
17       vs.                            )
                                         ) Honorable Terry J. Hatter
18  TROY ROBBINS, et al.,               )
                                         ) Hearing Date:  January 3, 2011
19            Respondents.              ) Hearing Time:  UNDER SUBMISSION
                                         )
20                                       ) Complaint Filed: 5/16/2007
                                         )
21                                       )
                                         )
22  _____ )

23

24

25

26

27

28

Additional Counsel:

JUDY RABINOVITZ
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

JAYASHRI SRIKANTIAH (SBN 189566)
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS (SBN 217603)*
WILLIAM TRAN (SBN 245104)
BRIAN K. WASHINGTON (SBN 248960)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Notice of Appearance forthcoming

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................... 1

FACTUAL BACKGROUND ......................................................................... 3

ARGUMENT .............................................................................................. 5

    I. Petitioner Is Very Likely to Prevail on His Claim that
His Prolonged Detention In the Absence of a Bond Hearing Violates the
Immigration Statutes and the Due Process Clause........................................... 6

        A. Petitioner's prolonged detention is governed by
section 1226(a), not section 1226(c), and he is therefore
entitled to a bond hearing ............................................................... 7

            1. Section 1226(c) only applies to "expedited"
proceedings, it does not authorize prolonged detention ............. 8

            2. Petitioner's detention is no longer authorized
by section 1226(c) because it is prolonged by
any measure ................................................................... 11

            3. Petitioner is entitled to a hearing where the
government must prove that his detention is warranted........... 14

        B. Due process requires that the government provide a
hearing to justify petitioner's prolonged detention ............................. 15

    III. Petitioner Will Continue to Suffer Irreparable Harm
as a Result of His Prolonged Detention, and the Balance
of Hardships Tips Sharply in His Favor ...................................................... 17

    IV. An Injunction is in the Public Interest................................................... 19

CONCLUSION ......................................................................................... 20

i

1

## TABLE OF AUTHORITIES

2

3

**Cases**

Casas-Castrillon v. Dep't of Homeland Security,
   535 F.3d 942 (9th Cir. 2008) ...................................................................passim

Phelps-Roper v. Nixon,
   545 F.3d 685 (8th Cir. 2008) ......................................................................19

United States v. Accetturo,
   783 F.2d 382 (3rd Cir. 1986) .....................................................................16

United States v. Bogle,
   855 F.2d 707 (11th Cir. 1998).....................................................................18

Golden Gate Rest. Ass'n v. City and County of San Francisco,
   512 F.3d 1112 (9th Cir. 2008) ...................................................................19

Goldie's Bookstore, Inc. v. Superior Court of the State of Calif.,
   739 F.2d 466 (9th Cir. 1984); ....................................................................17

Alliance for Wild Rockies v. Cottrell,
   --- F.3d ---, No. 09-35756, 2010 WL3665149 (9th Cir. Sept. 22, 2010) .......5, 19

Am. Trucking Ass'ns v. City of Los Angeles,
   559 F.3d 1046 (9th Cir. 2009).....................................................................5

Martinez v. Gonzalez,
   CV06-7609 (C.D. Cal. Jan. 4, 2007) ..............................................................15

Vongsa Sengkeo  v. Horgan,
   670 F. Supp. 2d 116 (D. Mass. 2009)...............................................................13

S.O.C. Inc. v. County of Clark,
   152 F.3d 1136,1148 (9th Cir. 1998) ...............................................................18

Associated General Contractors of Calif., Inc. v. Coalition for Economic Equity,
   950 F.2d 1401 (9th Cir. 1991).....................................................................18

Nt'l Ctr. for Immigrants Rights, Inc. v. INS,
   743 F.2d 1365 (9th Cir. 1984) ....................................................................18

Matter of Joseph,
   22 I. & N. Dec. 799 (BIA 1999)....................................................................8

1

STATUTES

2

8 U.S.C. § 1226(c) ........................................................................1, 4, 7

3

8 U.S.C. § 1226(c)(2)...........................................................................7

4

8 U.S.C. § 1226a ...............................................................................13

5

8 U.S.C. § 1229b...................................................................................4

6

8 U.S.C. §§ 1531-1537. .....................................................................13

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Petitioner Jose Farias Cornejo has been incarcerated for the past fourteen months even though he poses no danger or flight risk and even though the government itself has stated that it will not oppose his request for relief from removal. A longtime lawful permanent resident who came to the United States with his parents when he was still an infant, Mr. Farias Cornejo was placed in removal proceedings and taken into immigration detention after he completed serving a 2-month sentence for being under the influence of a controlled substance. Although his 14-months of immigration detention has now far surpassed the time he served for his crime, and although the government itself agrees that Mr. Farias Cornejo's strong equities warrant a grant of "cancellation of removal," the government insists that his mandatory detention is required under 8 U.S.C. § 1226(c) until his immigration case is finally resolved – a process that could extend for months or longer.

The government's position violates case law from the Ninth Circuit establishing that prolonged detention requires rigorous procedural safeguards. Indeed, in light of the serious constitutional problems created by prolonged and indefinite detention, the Ninth Circuit has construed the very statute relied upon here, 8 U.S.C. § 1226(c), as not authorizing prolonged mandatory detention. See Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2006) (construing 8 U.S.C. § 1226(c) to authorize mandatory detention only where removal proceedings are "expeditious," and ordering bond hearing); Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942, 948 (9th Cir. 2008) (holding that section 1226(c) only authorizes "limited" periods of mandatory detention, and that detention authority "shifts" to section 1226(a), which requires a bond hearing when it continues beyond that brief period). Cf. Nadarajah v. Gonzales, 443 F.3d 1069, 1078, 1080-81 (9th Cir. 2005) (holding that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period," and requiring "immediate release" of detainee whose removal was not reasonably foreseeable). Thus, even where prolonged detention is statutorily

1

authorized, the Ninth Circuit has required the government to provide a bond hearing at which the government bears the burden to justify detention because "prolonged detention without adequate procedural protections would raise serious constitutional concerns."  Casas, 535 F.3d at 952.

Here, the government has detained Mr. Farias Cornejo for more than 14-months without providing him a Casas hearing, or a hearing of any kind, to justify his detention.  His detention is indisputably prolonged.  Indeed, it far exceeds the brief period which the Supreme Court contemplated in Demore v. Kim, when it upheld the constitutionality of mandatory detention – typically a month and a half in the majority of cases, and five months in those cases where the noncitizen pursues an appeal.  538 U.S. 510, 528-29 (2003).  Moreover, unlike the petitioner in Demore who had no defense to deportability, the government concedes that Mr. Farias Cornejo is not only eligible for relief but entitled to cancellation of removal.  Thus, his removal, far from being inevitable, is unlikely ever to happen.  Neither the immigration statutes nor the Due Process Clause allow for such prolonged detention without any hearing to determine whether continued detention remains justified.  See infra Section I.

Mr. Farias-Cornejo easily satisfies the traditional standard for a grant of a preliminary injunction.  He is very likely to succeed on the merits because the result in his case follows from the straightforward application of Ninth Circuit precedent construing the statutory provisions under which he is purportedly detained and the Due Process Clause.  In addition, the balance of hardships overwhelmingly tips in his favor.  Mr. Farias-Cornejo continues to suffer severe harm as a result of his illegal confinement, including lengthy incarceration and separation from his family.  By contrast, the government would suffer little, if any, harm if the injunction were granted.  Mr. Farias-Cornejo has agreed to submit to reasonable conditions of supervision, including electronic monitoring if necessary.  Finally, an injunction would serve the public interest by preventing the ongoing violation of Mr. Farias Cornejo's rights.

1    Accordingly, Mr. Farias Cornejo respectfully requests that this Court grant his

2 motion for a preliminary injunction and order that the government either release him

3 from detention or provide him with a bond hearing before an immigration judge where

4 the government must demonstrate that his prolonged and on-going detention is

5 justified.

6                              **FACTUAL BACKGROUND**

7    Petitioner Jose Farias Cornejo is a lawful permanent resident and citizen of

8 Mexico.  Prior to his first birthday, Mr. Farias Cornejo's parents moved to the United

9 States, and he has lived here continuously ever since.  Mr. Farias Cornejo has never

10 left the United States and speaks English fluently.  Exhibit 24 (Declaration of Jose

11 Farias Cornejo of Oct. 12,2010) at ¶ 2.  He has no family connections in Mexico.

12 Indeed, all of his immediate family live in the United States, including his mother,

13 who is a lawful permanent resident, and his four siblings, all of whom are U.S.

14 citizens.  His fiancée, Melissa Lopez, is also a United States citizen.  Id. at ¶ 4.

15    During his childhood, Mr. Farias Cornejo's parents worked as migrant laborers,

16 moving their family to parts of Washington and California following the agricultural

17 seasons.  Mr. Farias Cornejo attended several schools in California, including

18 Montclair High School in Montclair, California.  In high school, he took special

19 education classes due to his diagnosed learning disability, dyslexia.    Nonetheless, he

20 successfully graduated from high school in 2003.  Following his graduation, Mr.

21 Farias Cornejo worked a variety of jobs near his hometown, including in construction

22 and landscaping.  Id. at ¶¶ 3-4.

23    Mr. Farias Cornejo has several criminal convictions, although none of them

24 resulted in sentences even close to the 14-months he has spent in immigration

25 detention.  In 2007, he was convicted of possession of methamphetamine, for which

26 he received substance abuse treatment as an alternative to incarceration under

27 California Proposition 36.  He successfully completed his drug treatment classes, but

28 because he could not afford to pay the mandatory fine was sentenced to 180 days in

3

1    jail.  In 2009, Mr. Farias Cornejo was convicted of a misdemeanor theft offense, for

2    which he spent 14 days in jail.  In that same year, he was convicted of being under the

3    influence of a controlled substance, for which he spent 60 days in jail.  Id. at ¶¶ 5-6.

4         Shortly after serving his last sentence, in September 2009, immigration officials

5    initiated removal proceedings against Mr. Farias Cornejo on the basis of his criminal

6    convictions.  At that time they also placed him in immigration detention, citing their

7    authority to mandatorily detain any individual with a prior controlled substance

8    offense under 8 U.S.C. § 1226(c).  He has remained in detention since that time, a

9    period which now exceeds 14 months.  During that time, Mr. Farias Cornejo has never

10   received a hearing of any kind to justify his prolonged detention.  Id. at ¶¶ 7, 12.

11        Although the government contends that Mr. Farias Cornejo is subject to the

12   "mandatory detention" statute, 8 U.S.C. §1226(c), the government attorney in his

13   removal case has acknowledged that Mr. Farias Cornejo is eligible for relief from

14   removal in the form of cancellation of removal under 8 U.S.C. § 1229b.  An

15   Immigration Judge provided him the application in October 2009, but Mr. Farias

16   Cornejo struggled to find an attorney to assist him while in detention due to his

17   indigency and isolation in the detention center.  He finally retained an attorney in June

18   of 2010, and has since filed his application for cancellation of removal.  Id. at ¶ 9.

19   The government attorney in his removal case has stated that the government will not

20   oppose his application for cancellation relief based on the strong equities in his case.

21   Id. at ¶ 10; Respondents' Answer to the Corrected Second Amended Complaint [Dkt.

22   #94] at ¶ 18, ln. 15-16 ("Respondents admit that the government has not opposed the

23   application for cancellation of removal . . . .").[1]

24        On August 17, 2010, the immigration judge stated that he had no objection to

25   _____

26   [1] Despite the apparent clarity of these statements, in the meet and confer regarding this
     motion counsel for the government expressed ambivalence as to whether the ICE

27   attorney in Mr. Farias Cornejo's removal hearing had in fact stated that ICE would not
     oppose his request for relief.  In any event, Mr. Farias Cornejo has an extremely

28   strong application for such relief, and his eligibility is not in dispute.

1  Mr. Farias Cornejo's application, but refused to adjudicate the application because of
2  an outstanding warrant which was likely filed in error.  The judge postponed Mr.
3  Farias Cornejo's merits hearing until November 15, 2010, to allow Mr. Farias Cornejo
4  to resolve the warrant.  Id. at ¶ 11.  Shortly before that date, the judge again postponed
5  his hearing, apparently due to a conflict in his schedule, thus delaying Mr. Farias
6  Cornejo's next hearing until January 26, 2011.  Exhibit 28 (Declaration of Jose Farias
7  Cornejo of Nov. 17, 2010) at ¶ 3.  Given the immigration judges' case load and the
8  frequency with which hearings are continued, it is certainly possible that the judge
9  will again extend Mr. Farias Cornejo's hearing date.  Even if the judge does hold a
10  hearing, it could well take more than one day, which could result in several more
11  months of detention until the hearing concludes on the next available date.  Moreover,
12  given the government's uncertain position regarding whether it will oppose Mr. Farias
13  Cornejo's cancellation application, it is conceivable – although unlikely – that the
14  immigration judge could deny his application and he would appeal, a process which
15  would lengthen his detention by at least several months.  Accordingly, Mr. Farias
16  Cornejo faces ongoing detention of an undetermined length while his immigration
17  case is resolved.

## ARGUMENT

18
19      Petitioner seeks a preliminary injunction ordering a bond hearing to determine
20  whether his prolonged detention is justified.
21      To obtain a preliminary injunction, Petitioner must demonstrate that (1) he is
22  likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the
23  absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an
24  injunction is in the public interest.  Winter v. NRDC, 129 S. Ct. 365, 374 (2008); Am.
25  Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).  Where
26  the balance of hardships tips sharply in Petitioner's favor, the Court should issue the
27  injunction as long as the moving party raises "serious questions" on the merits.
28  Alliance for Wild Rockies v. Cottrell, --- F.3d ---, No. 09-35756, 2010 WL3665149,

1  *8 (9th Cir. Sept. 22, 2010) ("A preliminary injunction is appropriate when a plaintiff

2  demonstrates . . . that serious questions going to the merits were raised and the balance

3  of hardships tips sharply in the plaintiff's favor" and meets the other <u>Winter</u> factors)

4  (quoting <u>Lands Council v. McNair</u>, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)).

5  Where an injunction seeks mandatory relief, the moving party must show that "the

6  facts and law clearly favor" granting the injunction.  <u>Stanley v. Univ. of S. Cal.</u>, 13

7  F.3d 1313, 1320 (9th Cir. 1994) (quoting <u>Anderson v. United States</u>, 612 F.2d 1112,

8  1114 (9th Cir. 1979)).

9       Here, Mr. Farias Cornejo is very likely to succeed on the merits of his statutory

10  and constitutional claims.  Further, he faces severe and irreparable harm in the form of

11  his ongoing lengthy incarceration, which overwhelmingly outweighs any minimal

12  harm to the government.  Under these circumstances, issuance of a preliminary

13  injunction is clearly in the public interest.

**I.  Petitioner Is Very Likely to Prevail on His Claim that His Prolonged Detention In the Absence of a Bond Hearing Violates the Immigration Statutes and the Due Process Clause.**

16       The government has already detained Mr. Farias Cornejo for 14 months without

17  providing any kind of bond hearing to justify his detention.  This far exceeds the

18  "brief period" of time the Supreme Court contemplated in <u>Demore</u> when it upheld the

19  constitutionality of mandatory detention – a period which it estimated to be a month

20  and a half in the majority of cases, and five months for those 15 percent of cases

21  where appeal to the BIA was sought.  538 U.S. at 513, 527-29; <u>see also</u> <u>Nadarajah</u>,

22  443 F.3d at 1080 (citing <u>Demore</u> as endorsing a "presumptively reasonable" six month

23  period of detention).  Consistent with <u>Demore</u>, the Ninth Circuit has twice held that

24  section 1226(c) does not authorize prolonged mandatory detention, but only

25  authorizes such detention when proceedings are "expeditious."  <u>Casas</u>, 535 F.3d at

26  948-49; <u>Tijani</u>, 430 F.3d at 1242.  When mandatory detention becomes prolonged, it is

27  no longer authorized by 1226(c); instead, the authority for such detention "shifts" to

28  section 1226(a), which requires a bond hearing at which the government bears the

1   burden to justify detention.  Casas, 535 F.3d at 948.   Because Mr. Farias Cornejo's

2   proceedings have exceeded the period that can be considered "expeditious," he is

3   substantially likely to prevail on his statutory claim that his detention is governed by

4   section 1226(a), not 1226(c), and that he is therefore entitled to a Casas hearing.

5         Mr. Farias Cornejo is also substantially likely to prevail on his claim that he is

6   entitled to such a hearing as a matter of due process.  It is well established that due

7   process does not permit prolonged detention in the absence of a sufficiently strong

8   justification to outweigh the deprivation of liberty as well as procedural safeguards to

9   ensure that such justification actually exists in each particular case.  Here the

10  government has failed in both regards, providing no review of Mr. Farias Cornejo's

11  14-month detention and putting forth no justification for such detention other than that

12  it believes it is mandated by statute.  Indeed, Mr. Farias Cornejo's detention is

13  particularly egregious in light of the government's concession that, based on his

14  strong equities, it will not oppose a grant of cancellation of removal at his next

15  hearing.  Under such circumstances, requiring Mr. Farias Cornejo to remain locked up

16  until such time serves no legitimate purpose.  At a very minimum, due process

17  requires a bond hearing where the government must justify his continued detention.

18  **A.    Petitioner's prolonged detention is governed by section 1226(a), not
        section 1226(c), and he is therefore entitled to a bond hearing.**

19

20         At the time of Mr. Farias Cornejo's initial detention, the government claimed

21  authority to detain him under section 1226(c), which the government contends

22  provides for the mandatory detention of noncitizens convicted of certain crimes.  See

23  8 U.S.C. § 1226(c).[2]   Regardless of whether Mr. Farias Cornejo was properly

24  _____

25  [2] Section 1226(c) provides that the Attorney General "shall" take into custody
    noncitizens convicted of listed offenses and that the Attorney General may only

26  release an alien held pursuant to section 1226(c) in certain limited circumstances,
    none of which are applicable here.  8 U.S.C. § 1226(c)(2). The Ninth Circuit has

27  interpreted section 1226(c) to prohibit the government from releasing on bond aliens

28  held under that section.  Casas, 535 F.3d at 946 ("these aliens do not have the

                                                        *(Footnote continued)*

                                        7

1  detained under section 1226(c) at the time he was taken into custody, see Matter of

2  Joseph, 22 I. & N. Dec. 799, 800 (BIA 1999) (section 1226(c) does not apply if

3  government is substantially unlikely to prevail on charge of deportability) [3], his

4  ongoing prolonged detention is no longer authorized under section 1226(c) because

5  his proceedings can no longer be characterized as "expeditious."  Rather, his

6  prolonged detention is authorized, if at all, by the Attorney General's general,

7  discretionary detention authority under section 1226(a), pursuant to which Mr. Farias

8  Cornejo is entitled to a bond hearing.

### 1. Section 1226(c) only applies to "expedited" proceedings, it does not authorize prolonged detention.

11      The Ninth Circuit has narrowly construed section 1226(c)'s mandatory

12  detention provision to apply only to "expeditious" removal proceedings because of the

13  significant constitutional concerns raised by prolonged detention without a hearing.

14  Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005) (holding that detention of two

opportunity to show-as noncriminal aliens would-that their detention is unnecessary because they do not pose a danger to the community or a flight risk").  Detainees subject to section 1226(a), by contrast, are eligible for a bond hearing before an IJ. Id. at 946.

[3] See also Tijani, 430 F.3d at 1246-47 (Tashima, J., concurring) (finding Joseph standard "egregiously" unconstitutional and arguing instead that section 1226(c) only applies where the detainee cannot raise a "substantial" argument against removability); Demore, 538 U.S. at 578-79 (Breyer, J., dissenting) (section 1226(c) only applies where noncitizen's claims are "insubstantial" or"interposed solely for purposes of delay").  Thus, there is a strong argument that Mr. Farias Cornejo was not properly subject to mandatory detention to begin with in light of the government concession that he is entitled to cancellation of removal.  Similarly, even if his initial detention under section 1226(c) was proper, it is highly doubtful that it remained authorized after the government agreed that he should receive cancellation of removal, because that concession makes it very unlikely that his removal is "reasonably foreseeable."  Thus, under the Ninth Circuit's decision in Nadarajah, once Mr. Farias Cornejo's detention exceeded a presumptively reasonable period of six months, it was no longer authorized.  443 F.3d at 1081-82 (holding detention in excess of six months was not reasonably foreseeable and therefore unauthorized by statute where detainee had twice won relief from removal, despite pending government appeals).

years, eight months in absence of a bond hearing under 1226(c) is "constitutionally doubtful" and therefore construing statute to apply only to "expeditious" proceedings); Casas, 535 F.3d at 948-49 (construing statute not to apply in cases where detainee has sought judicial review of his removal order because "prolonged detention without adequate procedural protections would raise serious constitutional concerns" and holding that "§ 1226(c) was intended to apply for only a limited time"). Cf. Ly v. Hansen, 351 F.3d 263, 270 (6th Cir. 2003) (in light of serious constitutional concerns of prolonged mandatory detention, construing statute as only authorizing detention for period of time reasonably necessary to conduct proceedings, and finding 18 month detention not reasonable); Alli v. Decker, 644 F.Supp.2d 535, 539 (M.D.Pa. 2009) (concurring with the "growing consensus within the federal courts . . . that the prolonged detention of aliens under §1226(c) raises serious constitutional concerns") (collecting cases).

In Casas, the Ninth Circuit rejected the government's argument that section 1226(c) applies to the prolonged detention of noncitizens whose removal orders had been stayed pending judicial review, relying on Tijani and Demore. 535 F.3d at 947. The Ninth Circuit observed that, in Demore, the Supreme Court upheld mandatory detention under section 1226(c) only for a "brief" period, "which the [Supreme] Court emphasized typically 'lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal' his removal order." Id. at 948 (quoting Demore, 538 U.S. at 527-28); id. at 950 ("References to the brevity of mandatory detention under § 1226(c) run throughout Demore."). Accordingly, the Court in Casas concluded that once the detention of a noncitizen ceases to be expeditious, the authority to detain "shifts" from section 1226(c) to section 1226(a). Id. at 947-48.

The Ninth Circuit's conclusion in Casas and Tijani that section 1226(c) does not authorize prolonged detention without a hearing is grounded in the fundamental principal that "prolonged detention without adequate procedural protections would

9

1    raise serious constitutional concerns." <u>Casas</u>, 535 F.3d at 950. "Even where detention

2    is permissible . . . due process requires 'adequate procedural protections' to ensure

3    that the government's asserted justification for physical confinement 'outweighs the

4    individual's constitutionally protected interest in avoiding physical restraint.'" <u>Id.</u>

5    (quoting <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001)). For this reason, the <u>Casas</u>

6    Court concluded that the mere fact that the immigration laws authorize prolonged

7    detention in some circumstances did not mean that Casas' particular detention was

8    authorized. Instead, under section 1226(a), he was entitled to a bond hearing before

9    an immigration judge at which the government was required to justify his ongoing

10   prolonged detention. <u>Id.</u> at 592.

11       Although <u>Casas</u> and <u>Tijani</u> involved noncitizens whose removal orders had

12   been stayed pending judicial review, their rationale applies with equal if not greater

13   force to Mr. Farias Cornejo, whose case is before an immigration judge and has not

14   yet sought judicial review. First, <u>Casas</u> itself applied its rule to a petitioner whose

15   immigration case was before the immigration courts; the petitioner's case was before

16   the BIA at the time the Ninth Circuit issued its opinion. <u>Id.</u> at 945 ("As of the time

17   that this opinion is filed, Casas is now back before the BIA after this court granted his

18   petition for review of his final order of removal."). In deciding the petitioner's

19   statutory and constitutional claims, the Court did not find it relevant that the

20   petitioner's immigration case was in administrative proceedings, rather than before the

21   Ninth Circuit with a stay of removal. Instead, the Court focused on the fact that the

22   petitioner had suffered prolonged detention without a bond hearing, emphasizing that

23   the length of his proceedings was not "expeditious." <u>Id.</u> at 948. Indeed, while

24   prolonged detention in absence of a hearing is always "constitutionally doubtful" –

25   regardless of the stage at which it occurs – it is even more problematic when it

26   happens while the administrative process is still pending, both because such

27   individuals have not yet lost their immigration cases at any level, and because they

28   face the prospect of longer periods of detention until both administrative *and* judicial

1   review of their cases is complete.  Cf. Tijani, 430 F.3d at 1242 (noting anticipated

2   length of future proceedings and detention in assessing due process claim).

3        Furthermore, the Ninth Circuit has already made clear in an analogous context

4   that the limits on the length of immigration detention apply to detention pending

5   completion of removal proceedings.  In Nadarajah v. Gonzales, 443 F.3d 1069 (9th

6   Cir. 2006), the Ninth Circuit ordered the release of a detainee held pending

7   completion of removal proceedings.  Although the petitioner in Nadarajah argued that

8   his detention was "indefinite" and not authorized by statute because his removal was

9   not reasonably foreseeable, the Ninth Circuit's rationale made clear that detention

10  pending completion of removal proceedings also raises constitutional concerns.  Id. at

11  1080 (construing Demore to permit only "brief " detention under section 1226(c)

12  pending removal proceeding, "with a specific holding of a six-month period as

13  presumptively reasonable").

14       For all of these reasons, existing Ninth Circuit law makes clear that Section

15  1226(c) authorizes mandatory detention only where removal proceedings are

16  "expeditious."  Where removal proceedings continue for a prolonged period of time,

17  detention is governed by Section 1226(a), rather than Section 1226(c).  Indeed, it

18  would be incongruous for Section 1226(c) to continue to apply to noncitizens subject

19  to prolonged detention pending completion of the administrative process prior to

20  judicial review, even though under existing law it does not apply either to noncitizens

21  whose cases are pending at the Ninth Circuit or noncitizens whose cases have been

22  returned to the immigration courts after judicial review.

23       **2.    Petitioner's detention is no longer authorized by section
24  1226(c) because it is prolonged by any measure.**

25       Mr. Farias Cornejo's 14-month detention is no longer authorized by section

26  1226(c) because it far exceeds the "brief and reasonable" period necessary for

27  concluding removal proceedings contemplated by the Supreme Court in Demore.  The

28  Demore Court expressly tied the constitutionality of mandatory detention to its brevity

1   – a period which it estimated to be month and a half in majority of cases, and 5

2   months for those 15 percent of cases where appeal to BIA was sought.  538 U.S. at

3   527-28.  The Ninth Circuit has repeatedly recognized that <u>Demore</u>'s endorsement of

4   brief detention pending completion of removal proceedings strongly suggests that

5   detention beyond that period is constitutionally suspect.  <u>Nadarajah</u>, 443 F.3d at 1080;

6   <u>Casas</u>, 535 F.3d at 950 (recognizing that <u>Demore</u> upheld mandatory detention "with

7   the specific understanding that § 1226(c) authorized mandatory detention only for the

8   'limited period of [the alien's] removal proceedings" and that "[r]eferences to the

9   brevity of mandatory detention . . . run throughout <u>Demore</u>"); <u>cf.</u> <u>Ly v. Hansen</u>, 351

10  F.3d 263, 276 (6th Cir. 2003) (Haynes, J., concurring in part and dissenting in part)

11  (interpreting <u>Demore</u> to set presumptively unconstitutional time period of four months

12  for mandatory detention pending completion of proceedings).  Although Mr. Farias

13  Cornejo still awaits his final merits hearing, his detention has already extended 10

14  times the average month and a half period of detention the Court anticipated for 85

15  percent of mandatory detainees, and nearly three times the average five month period

16  for the few who appeal to the BIA.

17      Ninth Circuit case law strongly supports a finding that detention beyond six

18  months under any of the general detention statutes is presumptively unreasonable.[4]  In

19  <u>Nadarajah</u>, the Ninth Circuit held that the general detention statutes only authorize

20  detention pending completion of removal proceedings for a "brief and reasonable"

21  period, which it concluded is presumptively six months based on the Supreme Court's

22  decisions in <u>Zadvydas</u>, <u>Clark</u> and <u>Demore</u>.  443 F.3d at 1080 ("<u>Zadvydas</u> and <u>Clark</u>

23  used the six-month period as the touchstone of reasonableness."); <u>id.</u> ("<u>Demore</u>

24  endorses the general proposition of 'brief' detentions, with a specific holding of a six-

25

26  [4] Petitioners will argue that detention beyond six months requires the provision of
    bond hearings in response to the government's motion for dismissal on the pleadings
27  pursuant to Rule 12(c).  However, the issue is not presented here, because this motion
28  seeks relief only for Mr. Farias Cornejo himself.

1  month period as presumptively reasonable.").   In addition, the <u>Nadarajah</u> Court relied

2  on two national security detention provision that specifically authorize detention in

3  excess of six months, while providing additional procedural safeguards for these

4  detentions.  <u>Id.</u> at 1078-79 (citing 8 U.S.C. § 1226a, and 8 U.S.C. 1531-1537).  That

5  Congress specifically legislated detention for longer than six months without a hearing

6  in a narrow set of cases implicating national security strongly suggests that section

7  1226(c) does not authorize detention beyond six months for routine immigration

8  cases, like that at issue here.  <u>Id.</u>  <u>See also</u> <u>Clark v. Martinez</u>, 543 U.S. 371, 387

9  (2005) (O'Conner, J. concurring).

10      In any event, this Court need not decide at this time whether six months

11  constitutes the permissible time limit for detention without a bond hearing, because

12  Mr. Farias Cornejo's 14-month detention far exceeds that benchmark.  Numerous

13  courts have found that comparable, or even lesser, periods of detention raise serious

14  constitutional concerns.  <u>See</u> <u>Welch v. Ashcroft</u>, 293 F.3d 213, 224-25 (4th Cir. 2002)

15  (holding, prior to <u>Demore</u>, that 14-month mandatory detention prior to final removal

16  order was excessive in violation of substantive due process); <u>Akinola v. Weber</u>, No.

17  09-3415, 2010 WL 376603, at *5-6 (D.N.J. Jan. 26, 2010) (ordering hearing to

18  determine reasonableness of Petitioner's 17-month detention under section 1226(c)

19  because "<u>Demore</u> did not expressly contemplate the constitutionality of such

20  prolonged detention"); <u>Vongsa Sengkeo v. Horgan</u>, 670 F. Supp. 2d 116, 127 (D.

21  Mass. 2009) (ordering bond hearing for detainee held "almost" 20 months under

22  section 1226(c) because "[t]wenty months can hardly be characterized as 'the brief

23  period necessary' for removal proceedings" and citing <u>Demore</u>); <u>Singh v. Sepulveda</u>,

24  No. 08-00881, 2008 WL 2242215, at *4-5 (N.D. Cal. May 28, 2008) (granting habeas

25  relief to noncitizen detained 14 months pending challenge to removal order);

26  <u>Diomande v. Wrona</u>, No. 05-73290, 2005 WL 3369498, at *2-3 (E.D. Mich. Dec. 12,

27  2005) (granting habeas relief to noncitizen detained 21 months pending challenge to

28  removal order); <u>Parlak v. Baker</u>, 374 F.Supp.2d 551, 560-62 (E.D. Mich. May 20,

2005) (granting habeas relief to noncitizen detained 8 months pending challenge to removal order), vacated on other grounds by Parlak v. Baker, No. 05-2003, 2006 WL 3634385 at *1 (6th Cir. April 26, 2006).

Because Mr. Farias Cornejo's ongoing detention without a hearing exceeds the "expeditious" period contemplated by section 1226(c), that statute no longer governs his detention. Tijani, 430 F.3d at 1242; Casas, 535 F.3d at 948. Instead, following Casas, this Court should conclude that Mr. Farias Cornejo's detention is authorized, if at all, "under the Attorney General's general, discretionary detention authority under 1226(a)." Casas, 535 F.3d at 948. Because he is detained under section 1226(a), the government must afford him a bond hearing.

### 3. Petitioner is Entitled to a Hearing Where the Government Must Prove that His Detention is Warranted.

Because Mr. Farias Cornejo's detention is governed by section 1226(a) he is entitled to a bond hearing, where the government bears the burden of justifying his ongoing detention. In Casas, the Ninth Circuit held that because "prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,'" Section 1226(a) "must be construed as *requiring* the Attorney General to provide the alien with such a hearing." 535 F.3d at 951 (emphasis in original). Further, at that hearing, "an alien is entitled to release on bond unless the 'government establishes that he is a flight risk or will be a danger to the community.'" Id. at 951 (quoting Tijani, 430 F.3d at 1242, and citing Cooper v. Oklahoma, 517 U.S. 348, 363 (1996)). Accordingly, following Casas, the Court should order the government to provide a bond hearing before an immigration judge at which Mr. Farias Cornejo is entitled to release unless the government can demonstrate that he is a danger or flight risk.

In their class action, Petitioners argue that due process requires the government to provide certain procedural protections at these hearings – the hearing must be transcribed, counsel must be present, and to prevail the government must show by

1   "clear and convincing" evidence that "no conditions of release" are sufficient to

2   protect the government's interests in preventing flight and danger.[5]  However, for the

3   purposes of this preliminary injunction, because of Mr. Farias Cornejo is very likely to

4   obtain relief from removal and because the evidence that he presents a danger or flight

5   risk sufficient to justify his lengthy detention is exceedingly weak, any bond hearing

6   where the government bears the burden of proof to show that his lengthy detention is

7   warranted would likely be sufficient to ensure his release on appropriate conditions.[6]

8   For this reason, Petitioner only asks that this Court order the government to provide a

9   hearing that complies with <u>Casas</u>.

**B.    Due process requires that the government provide a constitutionally
adequate hearing to justify Petitioner's prolonged detention.**

12      Quite apart from his statutory claim, Mr. Farias Cornejo is substantially likely

13  to prevail on his constitutional claim – i.e., that the Due Process Clause requires a

14  bond hearing where the government must justify his prolonged detention.

15      The requirement of a bond hearing to justify prolonged detention rests on

16  fundamental due process principles.  "Freedom from imprisonment – from

17  government custody, detention, or other forms of physical restraint – lies at the heart

---

[5] This Court ordered hearings that largely comported with these requirements when it
granted preliminary injunctions for four individual prolonged detainees in litigation
closely related to this case.  <u>See, e.g.</u>, Order Granting Motion for Preliminary
Injunction, <u>Martinez v. Gonzalez</u>, CV06-7609 (C.D. Cal. Jan. 4, 2007) (ordering
government to release detainee unless "the government shows by clear and convincing
evidence that he is a sufficient danger or risk of flight to justify his detention in light
of how long he has been detained already and the likelihood of his case being finally
resolved in favor of the government in the reasonably foreseeable future").

[6] That the government's attorney in his removal case has not opposed his application
for cancellation of removal demonstrates that it does not consider him to be a serious
danger to the community, which is unsurprising given that he completed his short
criminal sentence long ago.  With respect to flight risk, Mr. Farias Cornejo presented a
very low flight risk due to his family ties and long history in this country even before
he became likely to win relief from removal.  Now that he is likely to obtain such
relief, he has every incentive to appear for his proceedings.

of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Thus, the Supreme Court has made clear that detention must always be reasonable in relation to its purpose. Id. (citing Jackson v. Indiana, 406 U.S. 715, 738 (1972)). Indeed, due process requires not only a "special justification" to outweigh the deprivation of liberty, but also "strong procedural protections" to ensure that an individual's detention is actually serving those governmental purposes. Id. at 690-91. Moreover, where detention is prolonged, the deprivation of liberty at issue becomes greater, and a greater justification is required as well as more rigorous procedural safeguards. Id. at 690-92; Casas, 535 F.3d at 959 ("prolonged detention without adequate procedural protections would raise serious constitutional concerns"); see also Kansas v. Hendricks, 521 U.S. 346, 368 (1997) (upholding involuntary civil commitment for periods of one year at a time, subject to "strict procedural safeguards" including right to jury trial before state court and burden of proof beyond a reasonable doubt); United States v. Accetturo, 783 F.2d 382, 388 (3rd Cir. 1986).[7]

     Mr. Farias Cornejo's ongoing prolonged detention, where it bears no reasonable relation to a legitimate government purpose, and where it has been imposed without any meaningful review, violates these core due process principles.  In the immigration context, the primary purpose of detention is to effect the alien's deportation in the event that removal proceedings and any available review ultimately conclude in the government's favor.  Zadvydas, 533 U.S. at 699 (holding that the "statute's basic purpose" is "to assure the alien's presence at the moment of removal").  Protection

---

[7] As previously discussed, in Demore, the Supreme Court upheld mandatory, pre-removal order detention under 8 U.S.C. §1226(c), but only for the "brief period necessary for . . . removal proceedings."  538 U.S. at 513 (emphasis added).  Justice Kennedy's concurrence strongly suggests that the Court would view prolonged detention differently for constitutional purposes.  See id. at 532-33 (Kennedy, J., concurring) (noting that, at some point, prolonged mandatory detention is not reasonably related to removal and requires provision of a bond hearing).

1  against danger constitutes valid "secondary" purpose. Id. at 697.

2          Even a cursory review of Mr. Farias Cornejo's case demonstrates that his

3  detention serves neither of these purposes, not to mention satisfying the stronger

4  justification that is required for detention of such length.  Mr. Farias Cornejo clearly

5  poses no flight risk as the government has already stated that it will not oppose a grant

6  of cancellation of removal in his case.  His strong cancellation claim gives him every

7  incentive to appear for proceedings and thereby preserve his right to reside lawfully

8  with his family in the only country he has ever known.

9          Likewise, the government's position that it will not oppose a grant of

10  discretionary relief for Mr. Farias Cornejo demonstrates that it does not consider him a

11  danger to the community.  Even if it had not taken this position, his criminal history –

12  while not insignificant – clearly does not support detention for over a year based

13  purely on his dangerousness, particularly given that his longest criminal sentence was

14  two months.

15           Under these circumstances, due process does not permit the government to

16  continue to detain Mr. Farias Cornejo.  At a minimum, due process requires adequate

17  procedural safeguards to ensure that his detention is necessary.  Casas, 535 F.3d at

18  959.  Accordingly, the Court should find that Mr. Farias Cornejo's ongoing detention

19  violates due process and order that the government provide him a bond hearing.

20  **III.  Petitioner Will Continue to Suffer Irreparable Harm as a Result of His
21        Prolonged Detention, And the Balance of Hardships Tips Sharply in His
             Favor.**

22          Petitioner suffers irreparable harm as his unlawful detention continues, and the

23  balance of hardships tips ever more sharply in his favor.

24          The Ninth Circuit has made clear that "[a]n alleged constitutional infringement

25  will often alone constitute irreparable harm."  Goldie's Bookstore, Inc. v. Superior

26  Court of the State of Calif., 739 F.2d 466, 472 (9th Cir. 1984); Associated General

27  Contractors of Calif., Inc. v. Coalition for Economic Equity, 950 F.2d 1401, 1412 (9th

28  Cir. 1991) (recognizing presumption of irreparable harm when constitutional

17

1  infringement alleged); <u>see, e.g.</u>, <u>Sammartano v. First Judicial District Court</u>, 303 F.3d

2  959, 973 (9th Cir. 2002) (explaining that the existence of a colorable First

3  Amendment claim is sufficient to establish irreparable harm under Ninth Circuit

4  precedent); <u>S.O.C. Inc. v. County of Clark</u>, 152 F.3d 1136,1148 (9th Cir. 1998)

5  (same); <u>see also</u> Federal Practice & Procedure, § 2948.1 at 161 (2d ed. 1995) ("When

6  an alleged deprivation of a constitutional right is involved, most courts hold that no

7  further showing of irreparable injury is necessary.").  Further, as the Eleventh Circuit

8  has held, the "unnecessary deprivation of liberty clearly constitutes irreparable harm."

9  <u>United States v. Bogle</u>, 855 F.2d 707, 710-11 (11th Cir. 1998).

10       The harm suffered by the violation of constitutional rights is particularly severe

11  in this case.  Mr. Farias Cornejo has been separated from his fiancé and family for

12  over 14 months, and has been unable to help support them.  In the absence of a

13  preliminary injunction, he will continue to be detained until his case is finally

14  concluded.   Surely detention of this length is irreparable harm.  <u>Cf.</u> <u>Nat'l Ctr. for</u>

15  <u>Immigrants Rights, Inc. v. INS</u>, 743 F.2d 1365, 1369 (9th Cir. 1984) ("The hardship

16  from being unable to work to support themselves and their dependents, to obtain

17  release bonds, and to pay for legal representation is beyond question.").

18       In contrast to the harm suffered by Petitioner, the government will not suffer

19  irreparable harm should the injunction be entered.  As an initial matter, because the

20  government's detention of Mr. Farias Cornejo is almost certainly illegal under

21  controlling statutory and constitutional authority, it "cannot reasonably assert that it is

22  harmed in any legally cognizable sense by being enjoined from [statutory and]

23  constitutional violations."  <u>Id.</u> (holding that district court did not err in enjoining INS

24  practices that probably violated plaintiffs' constitutional rights).  Moreover, Mr. Farias

25  Cornejo will agree to comply with all conditions of release, including electronic

26  monitoring if necessary.  The government can thus ensure that he will appear in the

27  event of removal without subjecting him to prolonged detention.  Furthermore, the

28  government's interest in Mr. Farias Cornejo's detention is even weaker given its

1  statement that it will not oppose a grant of cancellation of removal in case, relief that

2  will entitle him to remain in the United States.  In light of this, the government has not

3  explained what purpose is served by continuing to lock him up.

4        Under these circumstances, any harm to the government pales in comparison to

5  the irreparable harm that Petitioner continues to suffer.  Cf. Alliance for Wild Rockies

6  v. Cottrell, --- F.3d ----, No. 09-35756, 2010 WL3665149, *11 (9th Cir. Sept. 22,

7  2010) (holding that the balance of hardships tipped sharply against government

8  because its additional costs of "up to $70,000" were "so small that they cannot

9  provide a significant counterweight to the harm caused" by logging in a forest);

10  Golden Gate Rest. Ass'n v. City and County of San Francisco, 512 F.3d 1112, 1126

11  (9th Cir. 2008) ("Faced with . . . a conflict between financial concerns and preventable

12  human suffering, we have little difficulty concluding that the balance of hardships tips

13  decidedly in favor of the latter.") (internal quotation marks omitted).

14  **IV.  An Injunction is in the Public Interest.**

15        Finally, the injunction sought here is in the public interest.  The public has an

16  interest in upholding constitutional rights.  See Preminger v. Principi, 422 F.3d 815,

17  826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a

18  constitutional right has been violated, because all citizens have a stake in upholding

19  the Constitution."); Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008) ("[I]t is

20  always in the public interest to protect constitutional rights.").

21        In addition, the public has an interest in accurate determinations in all legal

22  proceedings, including in the decision of whether to detain individuals during their

23  immigration cases, and in ensuring that the government only expends its resources to

24  detain individuals where it is necessary to prevent danger or flight risk.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For all of the foregoing reasons, Petitioner requests that the Court grant preliminary injunctive relief to stop the government's on-going violations of the federal immigration laws and the Due Process Clause.  Specifically, Petitioner requests that the Court order that he be released unless the government affords him a hearing where it bears the burden to show that his prolonged detention remains justified in light of its length.

Respectfully submitted,

Dated:  November 29, 2010          By   s/ Ahilan T. Arulanantham
                                         AHILAN T. ARULANANTHAM
                                         Counsel for Petitioners