1  TONY WEST
   Assistant Attorney General,
2  Civil Division
   DAVID J. KLINE
3  Director, Office of Immigration Litigation
   District Court Section
4  VICTOR M. LAWRENCE
   Principal Assistant Director
5  THEODORE W. ATKINSON
   Senior Litigation Counsel
6  United States Department of Justice
   Office of Immigration Litigation
7  District Court Section
   P.O. Box 868, Ben Franklin Station
8  Washington, DC 20044
   Tel: (202) 532-4135
9  E-mail: theodore.atkinson@usdoj.gov
   NICOLE R. PRAIRIE
10 Trial Attorney
   EREZ R. REUVENI
11 Trial Attorney
   ELIZABETH L. WALKER
12 Trial Attorney

13
   Attorneys for Respondents
14

15              UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

17                  WESTERN DIVISION

18
   ALEJANDRO RODRIGUEZ, *et al.*,          Case No. CV 07-3239-TJH (RNBx)
19
                    Petitioners,           RESPONDENTS' OPPOSITION TO
20                                          PETITIONER JOSE FARIAS
   v.                                       CORNEJO'S MOTION FOR A
21                                          PRELIMINARY INJUNCTION
   ERIC H. HOLDER, JR., *et al.*,
22
                    Respondents.
23

24

25

26

27

28

# **Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    1.    Cornejo's detention raises no constitutional concerns because it
           continues to serve the legitimate purposes recognized
           by the Supreme Court.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    2.    Even if the length of detention may raise constitutional concerns,
           the reasonableness of detention is not determined by length of
           detention alone.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    3.    Cornejo is responsible for lengthening his detention by more
           than a year, and Cornejo is incorrect that the Government
           admitted that he is likely to obtain cancellation of removal.. . . . . . 22

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

i

# Table of Authorities

## CASES

*Agyeman v. I.N.S. Asst. Dir. Coachman*,

    74 Fed. Appx. 691, 2003 WL 21480344 (9th Cir. 2003). . . . . . . . . . . . . . . 20

*Alli v. Decker*,

    644 F. Supp. 2d 535 (M.D. Pa. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Andreenko v. Holder*,

    2010 WL 2900363 (S.D.N.Y. June 25, 2010). . . . . . . . . . . . . . . . . . . . . . . . 20

*Carlson v. Landon*,

    342 U.S. 524 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Casas-Castrillon v. Dep't of Homeland Sec.*,

    535 F.3d 942 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Castellanos v. Holder*,

    No. 08-4665, 2009 WL 2138408 (3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . 19

*Demore v. Kim*,

    538 U.S. 510 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Earth Island Inst. v. Carlton*,

    --- F.3d ----, 2010 WL 4399138 (9th Cir. Nov. 8, 2010). . . . . . . . . . . . . . 13

*Guled v. Mukasey*,

    515 F.3d 872 (8th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ly v. Hansen*,

    351 F.3d 263 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mathews v. Diaz*,

    426 U.S. 67 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mazurek v. Armstrong*,

    520 U.S. 968, 972 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nadarajah v. Gonzales*,

    443 F.3d 1069 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ii

*Nken v. Holder*,

    129 S.Ct. 1749 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ovchinnikov v. Clark*,

    543 F. Supp. 2d 1265 (W.D. Wash. 2008). . . . . . . . . . . . . . . . . . . . . . . . .  20

*Rodrigques v. Holder*,

    No. 09-1764, 2010 WL 830929 (M.D. Pa. March 4, 2010). . . . . . . . . . . . 19

*Segura v. Holder*,

    No. 10-cv-1341, 2010 WL 3666759 (M.D. Pa. Sept. 15, 2010). . . . . . . .  19

*Tijani v. Willis*,

    430 F.3d 1241, 1242 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*INS v. Yueh-Shaio Yang*,

    519 U.S. 26, 30 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Zadvydas v. Davis*,

    533 U.S. 678 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17,19

## STATUTES & REGULATIONS

8 U.S.C. § 1226(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

8 U.S.C. § 1229b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8 U.S.C. § 1229a(c)(4)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8 C.F.R. §1240.8(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cal. Health & Safety Code § 11377(a) (West 2009). . . . . . . . . . . . . . . . . . . . . 4

Illegal Immigration Reform and Immigrant Responsibility Act of 1996,

    Pub. L. No. 104-208, Div. C., § 303(b),

    110 Stat. 309-586 (Sept. 30, 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

**Introduction**

Stepping out of his role as a representative petitioner and abandoning for the moment his claim that every criminal alien detained for six months or more under 8 U.S.C. § 1226(c) is entitled to a bond hearing *regardless of* their individual circumstances, Petitioner Jose Farias Cornejo seeks a preliminary injunction now – for himself only – arguing that his release has become unconstitutional *because of* his individual circumstances. Notably, Cornejo's motion for a preliminary injunction is explicitly not predicated on his core class action claim that every criminal alien must be given a bond hearing after six months' of detention, regardless of the facts of an alien's case. Cornejo has utterly abandoned that fundamental constitutional claim here, and the Court should not consider it in determining his standalone request for relief.

The Court should deny Cornejo's individual motion for a preliminary injunction because, first, Cornejo is wrong that he is entitled to a bind hearing solely because of the length of his detention, regardless of other circumstances, including the reasons for the delay in proceedings. This is Cornejo's central legal argument, but one that has never been adopted by any court in the Ninth Circuit, and one that has been explicitly rejected by other courts – including decisions cited approvingly by Cornejo in his motion.

Second, the Court should deny the motion because when one examines the indicia of the reasonableness of detention adopted by courts in cases cited by Cornejo, the case-specific factors that go into assessing the reasonableness of Cornejo's detention weigh heavily against granting him the relief requested. Foremost is the fact that Cornejo – and Cornejo alone – is responsible for delaying his removal proceedings and extending his detention by *a full year.* Cornejo's extended detention is not, as Cornejo suggests, attributable to the Government. As the accompanying audio transcripts of Cornejo's removal proceedings and other evidence show, Cornejo has it exactly backwards: it was the *immigration judge*

1

who informed Cornejo that he could file an application for cancellation of removal, and it was the *immigration judge and Government counsel* who were prepared to reach the merits of Cornejo's application for cancellation as early as December 15, 2009. But action on Cornejo's cancellation claim was utterly stymied by continuance upon continuance again – all requested by Cornejo or his counsel. They repeatedly sought delay to prepare or complete an application for cancellation of removal – an application which remains essentially incomplete. Although informed a year ago that he could make an application for cancellation, Cornejo did not submit that application until June 1, 2010 – nine months after Cornejo was first detained and six months after he indicated he would seek cancellation. Action on Cornejo's application was stymied yet again by Cornejo's failure to perfect the application, by his delay in submitting evidence on his behalf, by complications posed by Cornejo's failure to immediately disclose additional criminal convictions that threaten his ability to obtain cancellation, by the withdrawal and substitution of counsel unprepared to proceed, and by the withdrawal of counsel a second time.

Additionally, the circumstances of Cornejo's case show that Cornejo is also wrong that the cancellation he seeks is all but imminent – and Cornejo is demonstrably, unquestionably wrong that the Government conceded that his circumstances warrant cancellation of removal. Counsel for the Department of Homeland Security ("DHS") did not raise objections to Cornejo *filing an application* seeking cancellation, but that is a far cry from the repeated assertion now made by Cornejo that the Government will not oppose cancellation at his next hearing – a merits hearing now scheduled, due to Cornejo's delays, for January 26, 2011.

The Supreme Court has upheld the constitutionality of mandatory, pre-final order detention under 8 U.S.C. §1226(c). At most, courts have examined whether an alien's detention under section 1226(c) without a hearing is reasonable. Even

1    applying a reasonableness approach, the facts of Cornejo's case – and in particular,

2    the repeated delays that Cornejo himself has occasioned – demonstrate that his

3    continued detention pending the resolution of his removal proceedings is

4    reasonable.  Because Cornejo is not likely to succeed on the merits of the

5    individual claim he now asserts, the preliminary injunction motion should be

6    denied.

7    **Background**

8    Submitted with this brief are audio transcripts of the immigration court

9    proceedings addressing Cornejo's removability and application for cancellation,

10   Cornejo was arrested and detained by Immigration and Customs Enforcement

11   ("ICE") on September 15, 2009.  (A bond hearing before an immigration judge

12   was held on October 19, 2009, but no bond was awarded because Cornejo's

13   criminal conviction for possession of methamphetamine require that he be detained

14   under the provisions of 8 U.S.C. § 1226(c).).[1]

15   The submitted transcripts reveal the extent to which Cornejo's removal

16   proceedings have been delayed – and his detention lengthened – by more than a

17   year as he sought continuance after continuance to prepare and file an application

18   for cancellation of removal, an application that still lacks the documentation

19   specifically requested by the immigration judge hearing Cornejo's case.  The

20   transcripts show that during the first immigration hearing a year ago, the

21   immigration judge found Cornejo removable based on Cornejo's drug conviction

22   and then immediately turned to the issue of whether Cornejo was statutorily

23   eligible to file an application for cancellation of removal.  It was then – one year

24   

25   [1]   The audio transcripts have been delivered to Petitioners' counsel by e-mail in mp3
     format.  Undersigned counsel has confirmed that the files sent to Petitioners' counsel may
26   be played through Windows Media Player version 6.0 and higher, through Apple
     QuickTime, and through other audio player software.  A copy of the files have also been
27   burned to a DVD and will be delivered by Federal Express to Petitioners' counsel for
     delivery on December 10, 2010.  A copy of the files have also been burned to a DVD in
28   mp3 format and will be lodged with this Court on December 10, 2010, in accordance with
     L.R. 11-5.1 (Non-Paper Physical Exhibits).

1  ago – that Cornejo stated he would submit an application for cancellation, one that

2  still has not been acted upon because of Cornejo's repeated continuances and his

3  counsel's lack of preparation.  Cornejo sought continuances that delayed his

4  proceedings because his counsel did not prepare the required cancellation

5  application, did not perfect the required application, did not submit the required

6  evidence to support cancellation and address issues arising from Cornejo's other

7  criminal charges.

8      The transcripts also show that at no time did the Government attorney admit

9  that Cornejo was eligible for, entitled to, or worthy of the discretionary relief of

10  cancellation of removal – a fact that has been asserted by Cornejo here, and which

11  is flatly incorrect.  The transcripts tell an accurate story of this case, and they are

12  summarized for the Court's convenience as follows:

13      **December 15, 2009 Hearing** – At this initial hearing, Cornejo was found

14  removable and requested the opportunity to file an application for cancellation.

15      Immigration Judge Scott D. Laurent convened the hearing, with Cornejo

16  present.  Exhibit 1, Track 1 – December 15, 2009 Hearing (Part 1).  DHS counsel

17  entered her appearance.  *Id.*  Judge Laurent asked Cornejo if he still wanted to go

18  forward representing himself, and asked him whether he had talked to any legal

19  referral services.  *Id.*  Cornejo confirmed that he wanted to go forward representing

20  himself.  *Id.*  Judge Laurent explained how the proceedings would work, informing

21  Cornejo that the court would go through the allegations on the Notice to Appear,

22  look at the conviction documents, determine removability, and then determine if he

23  qualified for any form of relief.  *Id.*  Cornejo acknowledged that he understood.  *Id.*

24  When questioned by Judge Laurent, Cornejo confirmed that he was not a citizen or

25  national of the United States; that he was a citizen of Mexico; that he was admitted

26  to the United States at Los Angeles on October 17, 2001, as a lawful permanent

27  resident; and that on December 18, 2007, he was convicted in the Superior Court of

28  Los Angeles for the offense of possession of methamphetamine in violation of §

11377(a) of the California Code, CAL. HEALTH & SAFETY CODE § 11377(a) (West 2009).  *Id.*

Judge Laurent noted for the record that Cornejo admitted all four factual allegations of the Notice to Appear.  *Id.*  Cornejo was then asked whether, based on court documents shown to him at the hearing and described by Judge Laurent in the record, he was placed into a program in accordance with Proposition 36 on November 18, 2008, which he then violated in 2009, leading to his conviction.  *Id.*  Cornejo confirmed those facts, and testified that he did not pay the fee required by the Proposition 36 program.  *Id.*  Cornejo also confirmed that as a result he was sentenced to 180 days.  *Id.*  Judge Laurent then admitted the Government's evidence consisting of records of conviction and found that Cornejo was removable by clear, convincing, and unequivocal evidence under 8 U.S.C. § 127(a)(2)(B)(i).  *Id.*

Judge Laurent next informed Cornejo that the proceedings would turn to the second phase of the hearing to determine if he qualified for other forms of relief.  *Id.*  Through questioning, Cornejo testified that if he were ordered removed, he would want to be removed to Mexico.  *Id.*  He confirmed his date of birth in 1984.  *Id.*  He testified that he was not married, and had no children.  *Id.*  Cornejo then stated that his mother lived in the United States, *id.*, and that she was a permanent resident of the United States.  Exhibit 1, Track 2, December 15, 2009 Hearing (Part 2).  Judge Laurent then attempted to ascertain whether Cornejo's mother – who was in the courtroom at the time – became a permanent resident before or after Cornejo, because that could affect his ability to obtain cancellation.  *Id.*  Judge Laurent asked Cornejo's mother when she became a permanent resident, and she responded that she became a permanent resident in 1988, when Cornejo was four years of age.  *Id.*  The immigration judge then asked Cornejo whether he lived with his mother the entire time that he was in the United States, and Cornejo said he did.  *Id.*

1    "The reason I ask you that," Judge Laurent continued, "is because you may

2    be eligible for what's called cancellation of removal." *Id.*[2]  The court explained

3    that to be eligible, Cornejo had to have five years of lawful permanent residence

4    status, which he had, and then continuous residence in any legal status.  *Id.*  Judge

5    Laurent went on to explain that even though Cornejo only had about six years and

6    two months as a green card holder from the time between when he became a green

7    card holder and his conviction, the court could impute or add the time Cornejo's

8    mother was a green card holder if Cornejo lived with her during that period.  *Id.*

9    Judge Laurent concluded:

10        I'm going to give you an opportunity to apply for [cancellation], but we

11        are going to [have to] see the mother's green card . . . This is what I need

12        you to do:  You need to fill it out [a 42A Application for Cancellation of

13        Removal] in the English language, you need to make three copies.  I

14        need to see your birth certificate, because it's got to show your mother's

15        name on it.  And then we need to see your mother's green card, or some

16        proof that she's been a lawful permanent resident all these years.  If you

17        have been working, I need to see employment-based income tax returns.

18        You have a drug conviction, so an important factor in your case is your

19        rehabilitation, and I know that you failed your Prop 36, but if you have

20        undergone drug rehabilitation programs outside of here, I need to see that

21        . . . So do you understand what you need to do?

22

23

24    [2]  Under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, the Attorney General (now the Secretaruy of Homeland Security), as an exercise of discretion, may

25    cancel the removal of an alien who is found to be removable.  8 U.S.C. § 1229b.  The discretion of the Attorney General to grant relief from removal is akin to "a judge's

26    power to suspend the execution of a sentence, or the President's to pardon a convict." *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996) (citation omitted).  To obtain

27    cancellation of removal, the alien must demonstrate both that he is statutorily eligible for such relief and that he warrants a favorable exercise of discretion.  *See, e.g., Guled v.*

28    *Mukasey*, 515 F.3d 872, 879-880 (8th Cir. 2008).  The alien bears the burden of proving eligibility for cancellation of removal.  8 U.S.C. § 1229a(c)(4)(A)(i); 8 C.F.R. §1240.8(d).

Cornejo responded that he understood. *Id.* Judge Laurent then informed Cornejo that he could get a lawyer to help him complete the 42A application for cancellation. *Id.* The court also requested that DHS counsel provide the court with a copy of the conviction records or a background check from the California Department of Justice – a report referred to as a "California DOJ." *Id.* Finally, Judge Laurent set the next hearing date, noting that "it takes about 60 days to put all this paperwork together, [and] that's going to get us to our next available date." *Id.* Judge Laurent then set the case for February 18, 2010, "for you to file that application . . . . Okay, sir, do you understand what you need to do?" Cornejo responded that he did. *Id.* The hearing was adjourned.

**February 18, 2010 Hearing** – At the next hearing, however, Cornejo did not complete – indeed, had not yet begun to prepare – a 42A application for cancellation of removal, even though he was represented by counsel.

Judge Laurent convened the hearing, and Cornejo's counsel, Isabel O'Donald, entered her appearance. Exhibit 1, Track 3, February 18, 2010 Hearing. Judge Laurent explained to Ms. O'Donald that at the previous hearing pleadings were taken, and Cornejo was found removable. *Id.* He then explained that it appeared that Cornejo might be eligible for cancellation, and so a hearing was set for cancellation to February 18, 2010. *Id.* Judge Laurent asked Ms. O'Donald if she had the application ready, and she responded, "I don't have that application ready, your Honor, I did want to come and see and verify if pleadings were taken." *Id.* Judge Laurent again explained that pleadings were taken at the previous hearing, and that Cornejo had been found removable. *Id.*

Judge Laurent also explained what happened at the previous hearing regarding the issue of cancellation, noting that he reset the case to allow him to apply for cancellation. *Id.* "Okay, we will be filing that application for him," Ms. O'Donald represented, "we just need a little bit of time to do so." *Id.* Judge Laurent informed Ms. O'Donald that his "next available date is not until April 5,

1  2010, are you available that day?"  *Id.*  Ms. O'Donald represented that she was

2  available, and once again Judge Laurent explained what documents he would need

3  to see with the 42A application, and explained that she would need to file a fee and

4  how to file that fee.  *Id.*  Judge Laurent indicated that he would need to see a

5  California DOJ, and DHS counsel responded that she had obtained a California

6  DOJ, and submitted it.  It was marked and admitted into evidence.  *Id.*  The hearing

7  was adjourned.

8       **April 5, 2010 Hearing** – At the third hearing, Cornejo once again did not

9  have an application for cancellation ready for submission – and, again, the

10  transcript shows that his counsel had not even begun to prepare it.

11       Judge Laurent convened proceedings, and requested appearances of counsel.

12  Exhibit 1, Track 4, April 5, 2010 Hearing.  Appearing for Cornejo was Kimberly

13  Trinkhaus.  *Id.*  Judge Laurent noted that Cornejo had previously been represented

14  by Ms. O'Donald, and asked if Ms. Trinkhaus and Ms. O'Donald were in the same

15  office.  *Id.*  Ms. Trinkhaus stated that they were employed by the same firm, but

16  that Ms. O'Donald was no longer with the firm.  *Id.*  Ms. Trinkhaus requested the

17  opportunity to serve a motion for substitution and a motion for continuance.  *Id.*

18  Judge Laurent explained that the hearing that day was set for cancellation of

19  removal, and noted that this represented two continuances that had been granted

20  for Cornejo's application to be filed.  *Id.*  Judge Laurent then asked:

21            Judge Laurent: Do you have that ready to be filed?

22            Ms. Trinkhaus: I do not, your Honor.

23            Judge Laurent: And why not?

24            Ms. Trinkhaus: Um, I was just assigned this case, and it

25            does not appear Ms. O'Donald prepared the cancellation

26            application.  I'd like just, you know, a brief time to prepare

27            that application and come back and file.  And I do

28            apologize, your Honor.

1    *Id.* Judge Laurent asked DHS counsel if DHS objected to a third continuance, and

2    DHS stated no objection, but did note that there was an issue regarding statutory

3    eligibility, and stated that Cornejo was only statutorily eligible if Cornejo's

4    mother's time as a lawful permanent could be imputed to him. *Id.* Ms. Trinkhaus

5    said she understood and would look into that. *Id.* Judge Laurent, setting the next

6    hearing, stated that "unfortunately, I am not available until June 1, 2010, my first

7    available date." *Id.* He reminded counsel to pay the fee for the filing of the

8    application, and described how to pay for the fee. *Id.* The hearing was again

9    adjourned.

10    **June 1, 2010** Hearing – At the start of the fourth hearing, Judge Laurent

11    noted at the outset that the hearing represented the fourth continued hearing date

12    for the filing of the cancellation of removal application. Exhibit 1, Track 5, June 1,

13    2010 Hearing. Ms. Trinkhaus appeared for Cornejo and filed the application. *Id.*

14    In looking over the application, Judge Laurent asked whether counsel paid the fee,

15    and counsel stated that she did; Judge Laurent noted that Cornejo had requested a

16    waived fee, and counsel corrected herself and admitted that the required fee had

17    not been paid. *Id.* Although Judge Laurent could have rejected the application –

18    and he noted that other judges would have – he did not. "I'll go ahead since this is

19    the fourth – I've got to admonish you, though . . ." *Id.* Judge Laurent then marked

20    the application for admission. *Id.* In reviewing the materials, the court noted that

21    the Government had already submitted the California DOJ, and asked Ms.

22    Trinkhaus if she had a chance to review it. *Id.* She represented to the court that

23    she had. *Id.* Judge Laurent then proposed a merits hearing on the application for

24    the next available date, August 13, 2010, but Ms. Trinkhaus indicated that there

25    was a conflict, so the hearing was set for August 17, 2010. *Id.* The hearing was

26    adjourned.

27

28

**August 17, 2010 Hearing** – Although August 17, 2010 was set for the merits on Cornejo's cancellation application, that hearing did not go forward because of a previously undisclosed burglary conviction Cornejo's counsel appeared unaware of, even though it was noted in a document she presented in court on August 17, 2010.  That conviction raised fresh doubts in the mind of Judge Laurent as to whether Cornejo was statutorily eligible for cancellation, and the hearing was again continued to give Cornejo's counsel time to prepare.

Judge Laurent again convened proceedings and took appearance of counsel. Exhibit 1, Track 6, August 17, 2010 (Part 1).  Judge Laurent asked DHS counsel whether background clearances had been conducted, and DHS counsel indicated that a clearance had been conducted and no issues were presented.  *Id.*  Judge Laurent began by noting a concern that there appeared to be outstanding warrants against Cornejo for burglary and for conspiracy to commit a crime.  *Id.*  He asked counsel if those issues had been resolved.  *Id.*  Ms. Trinkhaus, appearing for Cornejo, responded that she was "not aware of whether or not that has been resolved, your Honor."  *Id.*

Judge Laurent again asked DHS counsel whether there was anything in the background checks to indicate an outstanding warrants, and DHS counsel indicated that based on the report, there were no outstanding warrants.  *Id.*  Judge Laurent stated his concern that with the indication of an outstanding warrant for offenses as serious as those indicated, if he went forward and had a hearing on cancellation, and if there were a favorable grant, and Cornejo was later convicted and sentenced to more than 365 days, he could again be charged as removable and he would be unable to apply for cancellation a second time.  *Id.*  He asked Ms. Trinkhaus how she wanted to proceed.  *Id.*

Ms. Trinkhaus indicated that she had with her in court a copy of the California DOJ previously submitted by DHS at an earlier hearing.  *Id.*  Judge Laurent noted that the existence of outstanding warrants was indicated in the

10

1  California DOJ the Government had previously submitted into evidence, and

2  which Ms. Trinkhaus had with her. *Id.* However, despite having informed Judge

3  Laurent on June 1, 2010, that she had a chance to review the California DOJ

4  submitted into evidence, Ms. Trinkhaus appeared not to be aware that outstanding

5  warrants for Cornejo's arrest were indicated on the report. *Id.* Judge Laurent then

6  directed Ms. Trinkhaus to the location on page six of the California DOJ where

7  separate outstanding warrants were indicated. *Id.*

8      Judge Laurent explained again that if he was convicted of an outstanding

9  offense, it may render him ineligible for cancellation. *Id.* Ms. Trinkhaus indicated

10  she had with her a copy of a set of minutes on the burglary charge, but not for the

11  conspiracy charge. *Id.* Judge Laurent examined the minutes on the burglary

12  charge to determine if the hearing could go forward in the absence of Ms.

13  Trinkhaus's understanding of whether the outstanding warrant issues had been

14  resolved. *Id.*

15      In examining the minutes provided by Ms. Trinkhaus, Judge Laurent noted

16  that Cornejo had actually been convicted of burglary – again, a fact Ms. Trinkhaus

17  appeared not to know. Exhibit 1, Track 7, August 17, 2010 Hearing (Part 2).

18      Judge Laurent: So he was convicted of burglary.

19      Ms. Trinkhaus: Yes.

20      Judge Laurent: Were you aware of that, Ms. Contreras [DHS counsel]?

21      DHS Counsel: No.

22      Judge Laurent: Okay.

23          . . .

24      Judge Laurent: Well, that definitely resolves [the issue of whether there

25          was an outstanding warrant]; I'll say here the court definitely finds the

26          respondent guilty. . . actually, it looks like he has . . .

27      DHS Counsel: And why was that not submitted, before today?

28      Ms. Trinkhaus: I'm sorry?

1     DHS counsel: Why it wasn't submitted, prior to today?

2     Judge Laurent: Do you know why you did not submit it or have copies?

3     Ms. Trinkhaus: I do not know.  I'm sorry.

4     Judge Laurent: I did set a document submission [deadline] of August

5     3rd.

6 *Id.*  The court then examined the documents and, reading further, determined that it

7 did not appear that Cornejo had yet been sentenced for the burglary conviction –

8 again, a fact Ms. Trinkhaus appeared to be unaware of.  *Id.*  Judge Laurent then

9 recommended that the matter be set over to determine, first, whether Los Angeles

10 County wanted Cornejo to appear for sentencing for burglary, and, second, to give

11 Ms. Trinkhaus time to determine whether there was an issue regarding the

12 outstanding warrant against Cornejo for conspiracy.  *Id.*

13   Judge Laurent again highlighted his concern:  "I mean, if he got more than a

14 year, he might be ineligible for cancellation of removal as an aggravated felon.  So

15 I think it's in your client's best interest to try and resolve this."  Exhibit 1, Track 8,

16 August 17, 2010 Hearing (Part 3).

17   Judge Laurent then rescheduled the hearing for the next available date on the

18 calendar, November 15, 2010.  *Id.*  DHS requested that the court set a date for the

19 submission of the documents Judge Laurent requested Ms. Trinkhaus to provide.

20 *Id.*  Judge Laurent walked Ms. Trinkhaus through the documents she would need to

21 submit, and then set the date for the submission of documents for November 1,

22 2010.  *Id.*  Judge Laurent concluded the hearing by noting that he would put the

23 November 1 document deadline on the written notice to counsel.  *Id.*  The hearing

24 was then adjourned.

25   Despite Judge Laurent's clear instructions, November 1 came and went, and

26 no documents were submitted on behalf of Cornejo.  The hearing set for November

27 15, 2010 was agains delayed by Cornejo because Ms. Trinkhaus withdrew as

28 counsel two weeks before the hearing.  *See* Declaration of Court Administrator

1    Garciela Sosa ¶ 3.  When she withdrew on October 27, 2010, Ms. Trinkhaus

2    submitted a notice indicating that another named attorney would be replacing her.

3    *Id.* ¶¶ 4-5.  Based on this representation, Judge Laurent reset the merits hearing on

4    Cornejo's application for the next available date, January 26, 2010.  *Id.* ¶ 4.  To

5    date, no new counsel has entered an appearance on behalf of Cornejo.  *Id.* ¶ 5.  The

6    documents requested by the Court and necessary to adjudicate the application for

7    cancellation have not been submitted by Cornejo.  *Id.* ¶ 3.  Nonetheless, the merits

8    hearing remains set for January 26, 2010.

9                                            **Argument**

10        "[A] preliminary injunction is an extraordinary and drastic remedy, one that

11   should not be granted unless the movant, by a clear showing, carries the burden of

12   persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Earth Island Inst.*

13   *v. Carlton*, --- F.3d ----, 2010 WL 4399138, * 3 (9th Cir. Nov. 8, 2010).

14   Traditionally, "[a] plaintiff seeking a preliminary injunction must establish that he

15   is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

16   absence of preliminary relief, that the balance of equities tips in his favor, and that

17   an injunction is in the public interest."  *Marlyn Nutraceuticals, Inc v. Mucos*

18   *Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009).

19        Cornejo cannot succeed on the merits of his individual claim for a

20   preliminary injunction for three reasons.  First, Cornejo's detention continues to

21   serves the valid immigration purpose of securing Cornejo's attendance at his

22   removal proceedings, a purpose the Supreme Court recognized is not tied to or

23   limited by the length of detention.  Second, even if the length of pre-final order

24   detention may raise constitutional concerns, Cornejo is incorrect that the mere

25   length of his detention alone – to the exclusion of other facts in his case –

26   determines the lawfulness of his detention.  Courts that have examined the issue of

27   prolonged detention, including decisions of the Ninth Circuit and other courts in

28   cases relied on by Cornejo, reject the sort of arithmetic standard urged by Cornejo

and weigh the reasonableness of detention under section 1226(c) by looking to the

facts and considering numerous factors, and not just the length of detention alone.

Third, Cornejo cannot succeed because the facts of his case – and in particular the

singular manner in which he has contributed to the numerous delays in his removal

proceedings – weigh against a determination that his continued detention is

unreasonable, as courts have repeatedly found, including in decisions cited and

relied on by Cornejo in his motion.

**1.    Cornejo's detention raises no constitutional concerns because it
continues to serve the legitimate purposes recognized by the Supreme
Court.**

As Respondents argued in their previously filed motion for judgment on the

pleadings [Dkt. # 130], section 1226(c) stands as Congress's response to the

special concerns posed by removable criminal aliens.  Specifically, in enacting

section 303(b) of the Illegal Immigration Reform and Immigrant Responsibility

Act of 1996, Pub. L. No. 104-208, Div. C., § 303(b), 110 Stat. 309-586 (Sept. 30,

1996), which would later be codified as section 1226(c), Congress recognized that

criminal aliens released on bond pending removal frequently failed to appear for

removal proceedings or, worse, engaged in other crimes.[3]  Section 1226(c) was

thus passed "against a backdrop of wholesale failure by the [Immigration and

Naturalization Service ("INS")] to deal with increasing rates of criminal activity by

---

[3]   The Supreme Court has acknowledged these problems.  In *Demore v. Kim*, 538 U.S.
510 (2003), the Supreme Court noted that "[c]riminal aliens were the fastest growing
segment of the federal prison population, already constituting roughly 25% of all federal
prisoners, and they formed a rapidly rising share of state prison populations as well."
*Demore*, 538 U.S. at 518.  "One 1986 study showed that, after criminal aliens were
identified as deportable, 77% were arrested at least once more and 45% – nearly half –
were arrested multiple times before their deportation proceedings even began." *Id.*  The
Supreme Court also recognized that in enacting the provisions that would become section
1226(c), "Congress also had before it evidence that one of the major causes of the INS'
failure to remove deportable criminal aliens was the agency's failure to detain those
aliens during their deportation proceedings." *Demore*, 538 U.S. at 519.

aliens." *Demore v. Kim*, 538 U.S. 510, 518 (2003).[4]  Section 1226(c) provides that "[t]he Attorney General shall take into custody any alien who [has committed an offense enumerated in sections 1226(c)(A) though (D)] when the alien is released . . ." 8 U.S.C. § 1226(c)(1).  With the exception of extraordinary circumstances not relevant to Cornejo's case, aliens detained under section 1226(c) are not entitled to a bond hearing before an immigration judge.  *See* 8 U.S.C. § 1226(c)(2).

The seminal case interpreting section 1226(c) is the Supreme Court's decision in *Demore*.  In rejecting a challenge to the constitutionality of mandatory immigration detention, the Supreme Court reiterated that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522 (citing *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976); *Zadvydas v. Davis*, 533 U.S. 678, 718 (2001)).  Moreover, the Supreme Court rejected the argument that mandatory detention could not occur in the absence of an individualized determination that a detainee posed a risk of flight or danger to the community.  The Supreme Court, echoing prior decisions, concluded that "the INS could deny bail to the detainees 'by reference to the legislative scheme' even without any finding of flight risk," *Demore*, 538 U.S. at 524 (citing *Carlson v. Landon*, 342 U.S. 524 (1952)).

Significantly, the Supreme Court distinguished pre-final order detention under section 1226(c) from post-order, but potentially indefinite, detention considered in *Zadvydas*.  The aliens in *Zadvydas* were "ones for whom removal was 'no longer practically attainable,'" and thus "detention there did not serve its purported immigration purpose." *Demore*, 538 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690).  By contrast, aliens detained under section 1226(c) are detained only during the period of their removal proceedings, and thus their detention "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance

---

4    Section 1226(c) provides that the "Attorney General shall

1    that, if ordered removed, the aliens will be successfully removed." *Demore*, 538

2    U.S. at 528. The Supreme Court further distinguished *Zadvydas* by explaining that

3    while "post-removal-period detention, unlike detention pending a determination of

4    removability, has no obvious termination point," pre-final order detention under

5    section 1226(c) has "a definite termination point." *Demore*, 538 U.S. at 529.

6    Upon this foundation, the Supreme Court concluded that the mandatory detention

7    of criminal aliens pending the brief period of their removal proceedings was

8    constitutional. *Demore*, 538 U.S. at 513.

9         Cornejo is therefore incorrect that his detention is unconstitutional because it

10   "far exceeds the brief period which the Supreme Court contemplated in *Demore v.*

11   *Kim*, when it upheld the constitutionality of mandatory detention – typically a

12   month and a half in the majority of cases, and five months in those cases where the

13   noncitizen pursues an appeal." Pet.'s Br. at 2. The critical factor in the Supreme

14   Court's analysis was not the length of detention – indeed, the Supreme Court

15   upheld the alien's detention in *Demore* even though it exceeded the average length

16   of removal proceedings. For the Supreme Court, pre-final order detention serves a

17   legitimate governmental interest because the Government had a valid basis for

18   seeking mandatory detention, and because pre-final order detention is not

19   indefinite, but has a foreseeable termination point.

20        Cornejo's continued detention serves the statutory purpose because his

21   detention has a foreseeable termination point: the conclusion of his removal

22   proceedings. Cornejo has been found removable by the immigration judge, a fact

23   Cornejo did not and cannot contest; Cornejo admitted that he was convicted of an

24   offense that is unquestionably removable under the law. In this sense, he has

25   conceded removability.[5] All that remains to be decided is his application for

26

27   _____

      [5]  Cornejo argues that unlike the petitioner in *Demore*, he has not conceded
      removability. Pet.'s Br. at 2. That is incorrect. Cornejo has conceded that he is
28   removable for his conviction, and thus has conceded removability. Cornejo confuses a
      claim for *relief from* removability with a challenge *to* removability. The distinction is

1  cancellation of removal – provided Cornejo supplies the information previously

2  requested by the immigration court.  Judge Laurent has reset the merits hearing for

3  January 26, 2010.  If Cornejo is correct and his application is granted, his removal

4  proceedings face an imminent, not merely foreseeable, termination point: his

5  removal proceedings will end on that day.  If he loses and then appeals, his

6  removal proceedings will end with the determination of his appeal to the Board of

7  Immigration Appeals.[6]  Cornejo's detention thus has a foreseeable termination

8  point, and his detention is constitutional under section 1226(c).  The preliminary

9  injunction should be denied.

10  **2.    Even if the length of Cornejo's detention may raise constitutional**

11     **concerns, the reasonableness of his detention cannot be determined**

12     ***solely* by the length of his detention.**

13     Even if this Court were to conclude that the length of detention does not

14  raise constitutional concerns in pre-removal immigration detention where that

15  detention has a foreseeable termination point, the Court must still reject Cornejo's

16  suggestion that the length of his detention is sufficient, standing alone, to justify

17  granting him a bond hearing.

18     In *Demore*, Justice Kennedy acknowledged that constitutional concerns

19  would become more pronounced should detention under Section 1226(c) become

20  prolonged, and he stated that individualized bond hearings might be warranted for

21  lawful permanent residents "if the continued detention *became unreasonable or*

22  *unjustified*." *Id.* at 532 (Kennedy, J., concurring) (citing *Zadvydas v. Davis*, 533

23

24  apparent in *Demore* itself, where the Supreme Court noted that Kim had conceded
    removability, 538 U.S. at 1712 and 1717 n.6, while at the same time noting that he had
25  also applied for withholding from removal, *id.* at 1717 n.6 and 1721.

26  [6]  Even if he loses before the Board of Immigration Appeals and appeals to the Ninth
    Circuit, Cornejo must concede that under the Ninth Circuit's decision in *Casas-Castrillon*
27  *v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), his petition for review is likely
    to be stayed under the Ninth Circuit General Order 6.4(c), and he will no longer be
28  detained under section 1226(c).  For this reason, Cornejo's argument that his detention is
    potentially limitless finds even less purchase in this Circuit than elsewhere.

U.S. at 684-86) (emphasis added).  Based on this language, courts have engaged in

case-by-case inquiries concerning the reasonableness of detention, considering

factors such as the duration of detention, the alien's contribution to the length of

his detention, the likelihood of removal, delay by the Government, and other

factors.  *See*, *e.g.*, *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005); *Ly v.

Hansen*, 351 F.3d 263, 271 (6th Cir. 2004) (identifying factors to be weighed in

determining the reasonableness of detention); *Alli v. Decker*, 644 F. Supp. 2d 535,

541 (M.D. Pa. 2009) (establishing reasonableness analytical framework and

identifying non-exhaustive list of factors that should be weighed in considering

whether continued detention is reasonable).

The fact that courts determine the reasonableness of detention under section

1226(c) on a case-by-case basis places Petitioners on the horns of a dilemma.

Petitioners' class-wide claim – that every alien detained under section 1226(c) is

entitled by the Constitution to a bond hearing after six months of detention

regardless of their individual circumstances – cannot survive if the reasonableness

(and thus, constitutionality) of an alien's detention under section 1226(c) depends

on a careful weighing of case-by-case factors unique to each alien. The only way

Petitioners can square their class-wide claim and Cornejo's individual claim is to

argue that no individual facts can make prolonged detention reasonable, and

therefore the court need not look at the reasons behind the length of an alien's

detention.  Unless this Court accepts Petitioners' argument, their class-wide claim

cannot be reconciled with the individual claim presented in this motion.

However, courts – including courts in decisions relied on by Cornejo – have

rejected that very argument and have concluded that it is necessary not only to look

at the *length* of detention, but to look at *why* detention has become prolonged, on a

case-by-case basis.  Length of detention alone is an insufficient foundation to

declare detention unconstitutional.  As one court explained:

> [T]he analysis here does not involve simple arithmetic. A qualitative assessment must also be made of the reasons for the delay in removal, and who bears responsibility for that delay.  Therefore, when weighing claims of excessive delay made by immigration detainees challenging mandatory pre-removal detention, courts must also carefully assess the reasons for the delay.  Where the delay is attributable to actions taken by the alien in the course of litigating the removal proceedings, courts typically will not hold the [G]overnment accountable for that delay when conducting a due process analysis.

*Segura v. Holder*, No. 10-cv-1341, 2010 WL 3666759, *9 (M.D. Pa. Sept. 15, 2010) ("[T]he pre-removal detention in this case is largely attributable to litigation decisions made by Segura, who was almost exclusively responsible for the first 8 months of delay in the litigation of this matter.") (citing *Demore*, 538 U.S. at 531, n.15; *Castellanos v. Holder*, No. 08-4665, 2009 WL 2138408, *5 (3d Cir. 2009); *Rodrigques v. Holder*, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010) (one year detention held attributable to alien's litigation tactics)).

Similarly, the Supreme Court in *Demore* allowed the detention to continue, even though it exceeded the average length of removal proceedings, because the alien in *Demore* had prolonged his proceedings, and thus his detention, by seeking continuances to make an application for relief from removal.  *Demore*, 538 U.S. at 530 & n.15. ("Respondent was detained for somewhat longer than the average-spending six months in INS custody prior to the District Court's order granting habeas relief, but respondent himself had requested a continuance of his removal hearing. . . .  Respondent was held in custody for three months before filing his habeas petition. His removal hearing was scheduled to occur two months later, but respondent requested and received a continuance to obtain documents relevant to his withholding application.").

1    Other courts have articulated this principle forcefully.  For example, in

2  *Andreenko v. Holder*, 2010 WL 2900363, *4 (S.D.N.Y. June 25, 2010), the

3  Southern District of New York denied habeas relief to an alien detained for two

4  years largely because "his prolonged detention is at least partly attributable to his

5  own actions."  *Id.*  Like Cornejo, the petitioner in *Andreenko* did not contest

6  removability, and his proceedings were delayed because he contributed to the

7  length of his detention by changing counsel and by seeking continuances to apply

8  for cancellation of removal.  *Id.*  The district court was quick to reject the argument

9  that the petitioner was only pursuing his legal rights: "Although Mr. Andreenko

10  has every right to seek any relief from deportation for which he may be eligible,

11  delay caused by his actions does not make continued detention unreasonable or

12  unjustified."  *Id.*

13    In this Circuit, courts have also reached the conclusion that where an alien

14  has contributed to the length of his removal proceedings, and thus his detention,

15  that detention is neither unreasonable nor unconstitutional.  *See, e.g., Ovchinnikov*

16  *v. Clark*, 543 F. Supp. 2d 1265, 1271 (W.D. Wash. 2008) ("Continuances granted

17  solely for the petitioner's benefit should not count" against the Government when

18  considering constitutionality of detention under section 1226(c)); *see also*

19  *Agyeman v. I.N.S. Asst. Dir. Coachman*, 74 Fed. Appx. 691, 2003 WL 21480344,

20  *2 (9th Cir. 2003) (although governed by section 1226(a), noting length of

21  detention was attributable to various continuances of removal proceedings and

22  other steps taken by alien that had the effect of delaying his proceedings).

23    For this reason, Cornejo's reliance on *Tijani* is misplaced.  In *Tijani*, Judge

24  Noonan, writing for the majority, devoted two brief paragraphs to the issue of

25  prolonged detention.  *Tijani*, 430 F.3d at 1241.  Although *Tijani* notes the

26  constitutional concerns that prolonged detention may raise, Cornejo is incorrect to

27  suggest that the Ninth Circuit relied solely on the length of detention to reach its

28  conclusion without looking at the reasons for the length of Tijani's detention or his

20

1    individual circumstances.  It is evident from the decision that certain facts weighed

2    on the Court.  First, the Court cited and relied on the fact that the Government was

3    partly to blame – and Tijani was not to blame – for Tijani's detention of more than

4    two years.  Judge Noonan noted that the Government made two requests for

5    extensions of time to file an appellate brief.  *Id.* at 1242.  Judge Tashima noted that

6    "[w]hile it is true that Tijani requested continuances," those requests "have not

7    contributed at all to the year-long delay since the [Board of Immigration Appeals]

8    heard his appeal." *Id.* at 1249 (Tashima, J.) (concurring opinion).

9         Second, the two judges voting in the majority cited questions about Tijani's

10   removability and threshold eligibility for mandatory detention.  The Court also

11   distinguished the *Tijani* case from that of *Demore* by explaining that the alien in

12   *Demore* "conceded deportability" while Tijani did not.  *Id.*  And Judge Tashima

13   emphasized that Tijani's detention "is not the result of a criminal conviction," *id.* at

14   1243, and that Tijani was convicted "of offenses that have never been found by a

15   court or by the [Board of Immigration Appeals] to trigger mandatory detention."

16   *Id.* at 1244.[7]

17

18   ────────────────
     [7]   In addition to *Demore* and *Tijani*, Cornejo relies on four other cases to support his
     arguments.  Two of those cases – *Ly* and *Alli* – reject the idea that the length of detention
19   determines the reasonableness of detention under section 1226(c).  Both *Ly* and *Alli*
     instead embrace a reasonableness framework.  In another case, *Casas-Castrillon*, the
20   Ninth Circuit acknowledged that prolonged detention may raise constitutional concerns,
     but the Court in *Casas* addressed a different issue than the one presented here.  Finally,
21   Cornejo also contends that he is entitled to be released under *Nadarajah v. Gonzales*, 443
     F.3d 1069, 1079-80 (9th Cir. 2006).  But *Nadarajah* concerns *indefinite* detention, not
22   prolonged detention.   In *Nadarajah*, the petitioner, detained pursuant to 8 U.S.C. §
     1225(b)(1)(B)(ii) and 1225(b)(2)(A), challenged the ICE's denial of parole.  *Id.* at
23   1075-76.  The immigration judge had already granted the petitioner deferral of removal
     under the Convention Against Torture (which was unchallenged), and asylum (which had
24   been affirmed by the Board of Immigration Appeals).  *Id.*  Despite having prevailed on
     his application for relief at every administrative level, Nadarajah had been detained for
25   five years pending a determination of removability by the Attorney General in an unusual
     and rarely invoked process.  *Id.*  Relying on the Supreme Court's analysis in *Zadvydas*,
26   the Ninth Circuit held that "the general immigration detention statutes do not authorize
     the Attorney General to incarcerate detainees for *an indefinite period*." *Id.* at 1076 (citing
27   *Zadvydas*, 533 U.S. at 678).  The Ninth Circuit concluded that there was no likelihood of
     removal in the reasonably foreseeable future in light of the fact that the petitioner had
28   been awarded asylum twice and protection under the Convention Against Torture.  *Id.* at
     1080-81.  This case does not involve any issue of indefinite detention, and therefore

This Court should reject Cornejo's argument that the reasons for the length of detention are of no importance to the constitutionality of that detention. Instead, even if this Court determines that Cornejo's detention raises constitutional concerns, it should weigh that detention against the facts of his case, including, as the hearing transcripts show, the length of Cornejo's detention is attributable to Cornejo alone.

**3.    Cornejo is responsible for lengthening his detention by more than a year, and Cornejo is incorrect that the Government admitted that he is likely to obtain cancellation of removal.**

In listening to the transcripts of the hearings before Judge Laurent, this Court should come to certain well-established conclusions regarding the reasons why Cornejo has been detained for 15 months, and whether the Government conceded that Cornejo is entitled to cancellation of removal.

First, the record of the proceedings demonstrates that Cornejo is responsible for the delays in his removal proceedings. He sought and received five continuances to prepare and file his cancellation application, and to address concerns raised by the immigration judge when Cornejo's counsel was not prepared to proceed. Twice Cornejo's counsel admitted that preparation of the application *had not even begun*, most recently in April 2010, nearly seven months after Cornejo was detained. Once Cornejo's counsel sought, on Judge Laurent's recommendation, more time to respond to the concerns raised about Cornejo's criminal record – a subject Cornejo's counsel was not prepared to address at the merits hearing in August 2010 because she was not aware of his criminal record, even though that record was plain from the documents she brought with her to court that day. And once continuance was sought to move the merits hearing because Cornejo's second counsel sought to withdraw from the case. All told, these continuances and delays began in December 2009 and delayed the

*Nadarajah* is inapposite.

1  proceedings for more than a year.

2      Second, the transcripts show that neither the immigration court nor DHS

3  counsel were responsible for delaying Cornejo's removal proceedings.  The first

4  hearing was held three months after Cornejo was detained, and with each

5  continuance Judge Laurent reset the matter to the next available hearing date.  The

6  only time Judge Laurent suggested resetting a date was when Cornejo's counsel

7  was unprepared to address Cornejo's criminal record, and only then when it

8  became clear to Judge Laurent that it would benefit Cornejo by avoiding the

9  possibility that a possible grant of cancellation would be rendered moot by a later

10  charge of removability.  Similarly, DHS counsel never requested a continuance,

11  and was prepared to address the application for cancellation at each hearing.  DHS

12  counsel provided documents when requested by Judge Laurent, and supplemented

13  the immigration court's records with criminal records when necessary.  If anything,

14  the transcripts show that Cornejo received significant advice on how to proceed

15  with an application for cancellation from the court, and that the court advised his

16  counsel on how best to proceed on different occasions, as well.

17      Finally, Cornejo is patently incorrect that his detention is unreasonable

18  because he is almost certain to obtain cancellation of removal, a fact the

19  Government conceded.  At the outset, nowhere in the transcripts does DHS counsel

20  state or suggest that Cornejo is entitled to receive cancellation.  Indeed, DHS

21  counsel raised to the court the fact that Cornejo's uncertain criminal record may

22  raise an issue of statutory ineligibility for cancellation, and DHS counsel also

23  reiterated Judge Laurent's request that Cornejo provide proof of his mother's

24  permanent resident status.  The most that can be said of DHS's position on the

25  issue of cancellation is that DHS did not object when Judge Laurent suggested to

26  Cornejo that he could make an application for cancellation – a fact that is entirely

27  consistent with Respondents' answer to the second Amended Complaint that the

28  Government "has not opposed the application for cancellation of removal . . ."

23

1  [Dkt. # 94, ¶ 18].  That is far different from Cornejo's claim that "the Government

2  will not oppose a grant of discretionary relief" of cancellation.  Pet.'s Br. at 17.

3  That statement is completely untrue, blatantly misleading, and not supported

4  anywhere in the record of proceedings.  The Court should afford it no weight.

5       Whether Cornejo will receive cancellation of removal is uncertain.  Because

6  cancellation of removal is, as Cornejo admits, *see* Pet.'s Br. at 17, a discretionary

7  form of relief, it is not certain that Cornejo will obtain cancellation.  Judge

8  Laurent's comments indicate that there are a number of factors that must be

9  considered, including Cornejo's efforts at drug rehabilitation, the issues

10  surrounding his criminal past, and, when a merits hearing on the application is

11  held, the testimony of Cornejo's family and other witnesses.  The immigration

12  court must also consider the Government's position at the hearing.  Thus, the issue

13  of cancellation – a discretionary matter left to the administrative process – is hardly

14  settled, and cannot support granting Cornejo's preliminary injunction motion.[8]

15                                  **Conclusion**

16       For the foregoing reasons, the Court should deny the motion for a

17  preliminary injunction.

18

19  //

20

21  //

22

23  //

24

25

---

26  [8]  The public interest also weighs in favor of the Government.  This Court "must be mindful that the Government's role as the respondent in every removal proceeding does not make its interest in each one negligible.  There is always a public interest in the

27  prompt execution of removal orders," *Nken v. Holder*, 129 S.Ct. 1749, 1762 (2009). There is similarly a public interest in making sure that the Congressional concern over the

28  low numbers of criminal aliens who attend removal proceedings and the high number of those who commit crimes after release on bond is addressed.

1   Dated: December 9, 2010                    Respectfully submitted,

2

3                                              TONY WEST
                                               Assistant Attorney General
                                               Civil Division

4                                              DAVID J. KLINE
5                                              Director, Office of Immigration Litigation
                                               District Court Section

6                                              VICTOR M. LAWRENCE
7                                              Principal Assistant Director

8                       By:     /s/ Theodore W. Atkinson
                                               THEODORE W. ATKINSON
9                                              Senior Litigation Counsel
                                               U.S. Department of Justice
10                                             Office of Immigration Litigation
                                               District Court Section
11                                             P.O. Box 868, Ben Franklin Station
                                               Washington DC 20044
12                                             (202) 532-4135
                                               theodore.atkinson@usdoj.gov
13
                                               NICOLE R. PRAIRIE
14                                             Trial Attorney

15                                             EREZ R. REUVENI
                                               Trial Attorney
16
                                               ELIZABETH L. WALKER
17                                             Trial Attorney

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2010, I submitted the foregoing to opposing counsel by e-mailing the same on the following:

Ahilan T. Arulanantham
ACLU Foundation of Southern
California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

William Tran
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: wtran@sidley.com

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Steven A. Ellis
Sidley Austin LLP
555 W 5th St, Ste 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: sellis@sidley.com

Brian Kelley Washington
Sidley Austin
555 West Fifth Street Suite 400
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: bwashi01@sidley.com


*/s/ Theodore w. Atkinson*
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice