TONY WEST
Assistant Attorney General,
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
Tel:  (202) 532-4135
E-mail: theodore.atkinson@usdoj.gov
NICOLE R. PRAIRIE
Trial Attorney
EREZ R. REUVENI
Trial Attorney
ELIZABETH L. WALKER
Trial Attorney

Attorneys for Respondents

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*,<br><br>    Petitioners,<br><br>v.<br><br>ERIC H. HOLDER, JR., *et al.*,<br><br>    Respondents. | Case No. CV 07-3239-TJH (RNBx)<br><br>RESPONDENTS' AMENDED MEMORANDUM IN OPPOSITION TO PETITIONER JOSE FARIAS CORNEJO'S MOTION FOR A PRELIMINARY INJUNCTION |

# **TABLE OF CONTENTS**

Introduction................................................................................................... 1

Background. ................................................................................................. 3

Argument. .................................................................................................. 13

    1.    Cornejo's detention raises no constitutional concerns because it continues to serve the legitimate purposes recognized by the Supreme Court.............................................................................. 14

    2.    Even if the length of Cornejo's detention may raise constitutional concerns, the reasonableness of his detention cannot be determined *solely* by the length of his detention........... 17

    3.    Cornejo is responsible for lengthening his detention by more than a year, and Cornejo is incorrect that the Government admitted that he is likely to obtain cancellation of removal. ........ 21

Conclusion. ................................................................................................. 24

CERTIFICATE OF SERVICE

i

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>CASES</u>

3

*Agyeman v. I.N.S. Asst. Dir. Coachman,*

4
    74 Fed. Appx. 691, 2003 WL 21480344 (9th Cir. 2003)................. 13, 20

5

*Alli v. Decker,*

6
    644 F. Supp. 2d 535 (M.D. Pa. 2009)................................................. 18, 21

7

*Andreenko v. Holder,*
    2010 WL 2900363 (S.D.N.Y. June 25, 2010). ................................ 19, 20

8

*Carlson v. Landon,*

9
    342 U.S. 524 (1952). ......................................................................... 15

10

*Casas-Castrillon v. Dep't of Homeland Sec.,*

11
    535 F.3d 942 (9th Cir. 2008). .......................................................... 17, 21

12

*Castellanos v. Holder,*

13
    2009 WL 2138408 (3d Cir. 2009). .................................................. 19

14

*Demore v. Kim,*
    538 U.S. 510 (2003)......................................................... 14, passim

15

*Earth Island Inst. v. Carlton,*

16
    --- F.3d ---, 2010 WL 4399138 (9th Cir. 2010)............................... 13

17

*Guled v. Mukasey,*

18
    515 F.3d 872 (8th Cir. 2008). ......................................................... 6

19

*INS v. Yueh-Shaio Yang,*

20
    519 U.S. 26 (1996)............................................................................ 6

21

*Ly v. Hansen,*
    351 F.3d 263 (6th Cir. 2004). .......................................................... 18, 21

22

23

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
    571 F.3d 873 (9th Cir. 2009). .......................................................... 13

24

25

*Matthews v. Diaz,*
    426 U.S. 67 (1976). .......................................................................... 15

26

27

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997)......................................................................... 13

28

ii

*Nadarajah v. Gonzales,*
    443 F.3d 1069 (9th Cir. 2006). ........................................ 21, 22

*Nken v. Holder,*
    129 S.Ct. 1749 (2009). ............................................ 24

*Ovchinnikov v. Clark,*
    543 F. Supp. 2d 1265 (W.D. Wash. 2008) ............................ 20

*Rodrigues v. Holder,*
    2010 WL 830929 (M.D. Pa.  March 4, 2010). ........................ 19

*Segura v. Holder,*
    2010 WL 3666759 (M.D. Pa. Sept. 15, 2010). ........................ 19

*Tijani v. Willis,*
    430 F.3d 1241 (9th Cir. 2005). .............................. 18, 20, 21

*Zadvydas v. Davis,*
    533 U.S. 678 (2001). ........................... 15, 18, 21, 22

## STATUTES

8 U.S.C. § 127(a)(2)(B)(i). ........................................ 5

8 U.S.C. § 1101. ............................................... 6

8 U.S.C. § 1225(b)(1)(B)(ii). ....................................... 21

8 U.S.C. § 1225(b)(2)(A). ......................................... 21

8 U.S.C. § 1226(a). ............................................. 20

8 U.S.C. § 1226(c). ......................................... 1, passim

8 U.S.C. § 1226(c)(1). ........................................... 15

8 U.S.C. § 1226(c)(2). ........................................... 15

8 U.S.C. § 1226(A). ............................................ 15

8 U.S.C. § 1226(D). ............................................ 15

8 U.S.C. § 1229a(c)(4)(A)(i). ....................................... 6

8 U.S.C. § 1229b. .............................................. 6

## California Health & Safety Code

Section § 11377(a) (West 2009) ................................. 4, 5

iii

**Illegal Immigration Reform and Immigrant Responsibility Act**

Pub. L. No. 104-208, Div. C., § 303(b), 110 Stat. 309-586 (Sept. 30, 1996). ..  14

## **REGULATIONS**

8 C.F.R. § 1240.8(d) ........................................................................  6, 7

iv

**Introduction**

Stepping out of his role as a representative petitioner and abandoning for the moment his claim that every criminal alien detained for six months or more under 8 U.S.C. § 1226(c) is entitled to a bond hearing *regardless of* their individual circumstances, Petitioner Jose Farias Cornejo seeks a preliminary injunction now – for himself only – arguing that his release has become unconstitutional *because of* his individual circumstances.  Notably, Cornejo's motion for a preliminary injunction is explicitly not predicated on his core class action claim that every criminal alien must be given a bond hearing after six months' of detention, regardless of the facts of an alien's case.  Cornejo has utterly abandoned that fundamental constitutional claim here, and the Court should not consider it in determining his standalone request for relief.

The Court should deny Cornejo's individual motion for a preliminary injunction because, first, Cornejo is wrong that he is entitled to a bond hearing solely because of the length of his detention, regardless of other circumstances, including the reasons for the delay in proceedings.  This is Cornejo's central legal argument, but one that has never been adopted by any court in the Ninth Circuit, and one that has been explicitly rejected by other courts – including decisions cited approvingly by Cornejo in his motion.

Second, the Court should deny the motion because when one examines the indicia of the reasonableness of detention adopted by courts in cases cited by Cornejo, the case-specific factors that go into assessing the reasonableness of Cornejo's detention weigh heavily against granting him the relief requested.  Foremost is the fact that Cornejo – and Cornejo alone – is responsible for delaying his removal proceedings and extending his detention by *a full year.*  Cornejo's extended detention is not, as Cornejo suggests, attributable to the Government.  As the accompanying audio transcripts of Cornejo's removal proceedings and other evidence show, Cornejo has it exactly backwards:  it was the *immigration judge*

who informed Cornejo that he could file an application for cancellation of
removal, and it was the *immigration judge and Government counsel* who were
prepared to reach the merits of Cornejo's application for cancellation as early as
December 15, 2009. But action on Cornejo's cancellation claim was utterly
stymied by continuance upon continuance again – all requested by Cornejo or his
counsel. They repeatedly sought delay to prepare or complete an application for
cancellation of removal – an application which remains essentially incomplete.
Although informed a year ago that he could make an application for cancellation,
Cornejo did not submit that application until June 1, 2010 – nine months after
Cornejo was first detained and six months after he indicated he would seek
cancellation. Action on Cornejo's application was stymied yet again by Cornejo's
failure to perfect the application, by his delay in submitting evidence on his behalf,
by complications posed by Cornejo's failure to immediately disclose additional
criminal convictions that threaten his ability to obtain cancellation, by the
withdrawal and substitution of counsel unprepared to proceed, and by the
withdrawal of counsel a second time.

Additionally, the circumstances of Cornejo's case show that Cornejo is also
wrong that the cancellation he seeks is all but imminent – and Cornejo is
demonstrably, unquestionably wrong that the Government conceded that his
circumstances warrant cancellation of removal. Counsel for the Department of
Homeland Security ("DHS") did not raise objections to Cornejo *filing an
application* seeking cancellation, but that is a far cry from the repeated assertion
now made by Cornejo that the Government will not oppose cancellation at his next
hearing – a merits hearing now scheduled, due to Cornejo's delays, for January 26,
2011.

The Supreme Court has upheld the constitutionality of mandatory, pre-final
order detention under 8 U.S.C. §1226(c). At most, courts have examined whether
an alien's detention under section 1226(c) without a hearing is reasonable. Even

1   applying a reasonableness approach, the facts of Cornejo's case – and in

2   particular,  the repeated delays that Cornejo himself has occasioned – demonstrate

3   that his continued detention pending the resolution of his removal proceedings is

4   reasonable.  Because Cornejo is not likely to succeed on the merits of the

5   individual claim he now asserts, the preliminary injunction motion should be

6   denied.

7                                   **Background**

8         Cornejo was arrested and detained by Immigration and Customs

9   Enforcement ("ICE") on September 15, 2009.  (A bond hearing before an

10  immigration judge was held on October 19, 2009, but no bond was awarded

11  because Cornejo's criminal conviction for possession of methamphetamine require

12  that he be detained under the provisions of 8 U.S.C. § 1226(c).).[1]

13        Submitted with this brief are audio transcripts of the immigration court

14  proceedings addressing Cornejo's removability and application for cancellation.

15  The submitted transcripts reveal the extent to which Cornejo's removal

16  proceedings have been delayed – and his detention lengthened – by more than a

17  year as he sought continuance after continuance to prepare and file an application

18  for cancellation of removal, an application that still lacks the documentation

19  specifically requested by the immigration judge hearing Cornejo's case.  The

20  transcripts show that during the first immigration hearing a year ago, the

21  immigration judge found Cornejo removable based on Cornejo's drug conviction

22  and then immediately turned to the issue of whether Cornejo was statutorily

23  eligible to file an application for cancellation of removal.  It was then – one year

24

25  [1]   The audio transcripts have been delivered to Petitioners' counsel by e-mail in mp3
      format.  Undersigned counsel has confirmed that the files sent to Petitioners' counsel
26  may be played through Windows Media Player version 6.0 and higher, through Apple
      QuickTime, and through other audio player software.  A copy of the files have also been
27  burned to a DVD and will be delivered by Federal Express to Petitioners' counsel for
      delivery on December 10, 2010.  A copy of the files have also been burned to a DVD in
28  mp3 format and will be lodged with this Court on December 10, 2010, in accordance
      with L.R. 11-5.1 (Non-Paper Physical Exhibits).

ago – that Cornejo stated he would submit an application for cancellation, one that still has not been acted upon because of Cornejo's repeated continuances and his counsel's lack of preparation. Cornejo sought continuances that delayed his proceedings because his counsel did not prepare the required cancellation application, did not perfect the required application, and did not submit the required evidence to support cancellation and address issues arising from Cornejo's other criminal charges.

The transcripts also show that at no time did the Government attorney admit that Cornejo was eligible for, entitled to, or worthy of the discretionary relief of cancellation of removal – a fact that has been asserted by Cornejo here, and which is flatly incorrect. The transcripts tell an accurate story of this case, and they are summarized for the Court's convenience as follows:

**<u>December 15, 2009 Hearing</u>** – At this initial hearing, Cornejo was found removable and requested the opportunity to file an application for cancellation.

Immigration Judge Scott D. Laurent convened the hearing, with Cornejo present. Exhibit 1, Track 1 – December 15, 2009 Hearing (Part 1). DHS counsel entered her appearance. *Id.* Judge Laurent asked Cornejo if he still wanted to go forward representing himself, and asked him whether he had talked to any legal referral services. *Id.* Cornejo confirmed that he wanted to go forward representing himself. *Id.* Judge Laurent explained how the proceedings would work, informing Cornejo that the court would go through the allegations on the Notice to Appear, look at the conviction documents, determine removability, and then determine if he qualified for any form of relief. *Id.* Cornejo acknowledged that he understood. *Id.* When questioned by Judge Laurent, Cornejo confirmed that he was not a citizen or national of the United States; that he was a citizen of Mexico; that he was admitted to the United States at Los Angeles on October 17, 2001, as a lawful permanent resident; and that on December 18, 2007, he was convicted in the Superior Court of Los Angeles for the offense of possession of

1  methamphetamine in violation of § 11377(a) of the California Code, CAL. HEALTH

2  & SAFETY CODE § 11377(a) (West 2009).  *Id.*

3      Judge Laurent noted for the record that Cornejo admitted all four factual

4  allegations of the Notice to Appear.  *Id.*  Cornejo was then asked whether, based

5  on court documents shown to him at the hearing and described by Judge Laurent

6  in the record, he was placed into a program in accordance with Proposition 36 on

7  November 18, 2008, which he then violated in 2009, leading to his conviction.  *Id.*

8  Cornejo confirmed those facts, and testified that he did not pay the fee required by

9  the Proposition 36 program.  *Id.*  Cornejo also confirmed that as a result he was

10  sentenced to 180 days.  *Id.*  Judge Laurent then admitted the Government's

11  evidence consisting of records of conviction and found that Cornejo was

12  removable by clear, convincing, and unequivocal evidence under 8 U.S.C. §

13  127(a)(2)(B)(i).  *Id.*

14      Judge Laurent next informed Cornejo that the proceedings would turn to the

15  second phase of the hearing to determine if he qualified for other forms of relief.

16  *Id.*  Through questioning, Cornejo testified that if he were ordered removed, he

17  would want to be removed to Mexico.  *Id.*  He confirmed his date of birth in 1984.

18  *Id.*  He testified that he was not married, and had no children.  *Id.*  Cornejo then

19  stated that his mother lived in the United States, *id.*, and that she was a permanent

20  resident of the United States.  Exhibit 1, Track 2, December 15, 2009 Hearing

21  (Part 2).  Judge Laurent then attempted to ascertain whether Cornejo's mother –

22  who was in the courtroom at the time – became a permanent resident before or

23  after Cornejo, because that could affect his ability to obtain cancellation.  *Id.*

24  Judge Laurent asked Cornejo's mother when she became a permanent resident,

25  and she responded that she became a permanent resident in 1988, when Cornejo

26  was four years of age.  *Id.*  The immigration judge then asked Cornejo whether he

27  lived with his mother the entire time that he was in the United States, and Cornejo

28  said he did.  *Id.*

"The reason I ask you that," Judge Laurent continued, "is because you may be eligible for what's called cancellation of removal." *Id.*[2]  The court explained that to be eligible, Cornejo had to have five years of lawful permanent residence status, which he had, and then continuous residence in any legal status.  *Id.*  Judge Laurent went on to explain that even though Cornejo only had about six years and two months as a green card holder from the time between when he became a green card holder and his conviction, the court could impute or add the time Cornejo's mother was a green card holder if Cornejo lived with her during that period.  *Id.*  Judge Laurent concluded:

> I'm going to give you an opportunity to apply for [cancellation], but we are going to [have to] see the mother's green card . . . This is what I need you to do:  You need to fill it out [a 42A Application for Cancellation of Removal] in the English language, you need to make three copies.  I need to see your birth certificate, because it's got to show your mother's name on it.  And then we need to see your mother's green card, or some proof that she's been a lawful permanent resident all these years.  If you have been working, I need to see employment-based income tax returns. You have a drug conviction, so an important factor in your case is your rehabilitation, and I know that you failed your Prop 36, but if you have undergone drug rehabilitation programs outside of here, I need to see that . . . So do you understand what you need to do?

---

[2]  Under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, the Attorney General (now the Secretary of Homeland Security), as an exercise of discretion, may cancel the removal of an alien who is found to be removable.  8 U.S.C. § 1229b.  The discretion of the Attorney General to grant relief from removal is akin to "a judge's power to suspend the execution of a sentence, or the President's to pardon a convict." *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996) (citation omitted).  To obtain cancellation of removal, the alien must demonstrate both that he is statutorily eligible for such relief and that he warrants a favorable exercise of discretion.  *See, e.g., Guled v. Mukasey*, 515 F.3d 872, 879-880 (8th Cir. 2008).  The alien bears the burden of proving eligibility for cancellation of removal.  8 U.S.C. § 1229a(c)(4)(A)(i); 8 C.F.R. §1240.8(d).

6

1   Cornejo responded that he understood.  *Id.*  Judge Laurent then informed Cornejo

2   that he could get a lawyer to help him complete the 42A application for

3   cancellation.  *Id.*  The court also requested that DHS counsel provide the court

4   with a copy of the conviction records or a background check from the California

5   Department of Justice – a report referred to as a "California DOJ."  *Id.*  Finally,

6   Judge Laurent set the next hearing date, noting that "it takes about 60 days to put

7   all this paperwork together, [and] that's going to get us to our next available date."

8   *Id.*  Judge Laurent then set the case for February 18, 2010, "for you to file that

9   application . . . .  Okay, sir, do you understand what you need to do?"  Cornejo

10  responded that he did.  *Id.*  The hearing was adjourned.

11       **February 18, 2010 Hearing** – At the next hearing, however, Cornejo did

12  not complete – indeed, had not yet begun to prepare – a 42A application for

13  cancellation of removal, even though he was represented by counsel.

14       Judge Laurent convened the hearing, and Cornejo's counsel, Isabel

15  O'Donald, entered her appearance.  Exhibit 1, Track 3, February 18, 2010

16  Hearing.  Judge Laurent explained to Ms. O'Donald that at the previous hearing

17  pleadings were taken, and Cornejo was found removable.  *Id.*  He then explained

18  that it appeared that Cornejo might be eligible for cancellation, and so a hearing

19  was set for cancellation to February 18, 2010.  *Id.*  Judge Laurent asked Ms.

20  O'Donald if she had the application ready, and she responded, "I don't have that

21  application ready, your Honor, I did want to come and see and verify if pleadings

22  were taken."  *Id.*  Judge Laurent again explained that pleadings were taken at the

23  previous hearing, and that Cornejo had been found removable.  *Id.*

24       Judge Laurent also explained what happened at the previous hearing

25  regarding the issue of cancellation, noting that he reset the case to allow him to

26  apply for cancellation.  *Id.*  "Okay, we will be filing that application for him," Ms.

27  O'Donald represented, "we just need a little bit of time to do so."  *Id.*  Judge

28  Laurent informed Ms. O'Donald that his "next available date is not until April 5,

7

1   2010, are you available that day?" *Id.*  Ms. O'Donald represented that she was

2   available, and once again Judge Laurent explained what documents he would need

3   to see with the 42A application, and explained that she would need to file a fee

4   and how to file that fee. *Id.*  Judge Laurent indicated that he would need to see a

5   California DOJ, and DHS counsel responded that she had obtained a California

6   DOJ, and submitted it.  It was marked and admitted into evidence. *Id.*  The

7   hearing was adjourned.

8   **April 5, 2010 Hearing** – At the third hearing, Cornejo once again did not

9   have an application for cancellation ready for submission – and, again, the

10  transcript shows that his counsel had not even begun to prepare it.

11  Judge Laurent convened proceedings, and requested appearances of

12  counsel.  Exhibit 1, Track 4, April 5, 2010 Hearing.  Appearing for Cornejo was

13  Kimberly Trinkhaus. *Id.*  Judge Laurent noted that Cornejo had previously been

14  represented by Ms. O'Donald, and asked if Ms. Trinkhaus and Ms. O'Donald were

15  in the same office. *Id.*  Ms. Trinkhaus stated that they had been employed by the

16  same firm, but that Ms. O'Donald was no longer with the firm. *Id.*  Ms. Trinkhaus

17  requested the opportunity to serve a motion for substitution and a motion for

18  continuance. *Id.*  Judge Laurent explained that the hearing that day was set for

19  cancellation of removal, and noted that the April 5 hearing represented the second

20  continuance (actually, the third) that had been granted for Cornejo's application to

21  be filed. *Id.*  Judge Laurent then asked:

22        Judge Laurent: Do you have that ready to be filed?

23        Ms. Trinkhaus: I do not, your Honor.

24        Judge Laurent: And why not?

25        Ms. Trinkhaus: Um, I was just assigned this case, and it

26        does not appear Ms. O'Donald prepared the cancellation

27        application.  I'd like just, you know, a brief time to prepare

28        that application and come back and file.  And I do

1    apologize, your Honor.

2    *Id.* Judge Laurent asked DHS counsel if DHS objected to a third continuance, and

3    DHS stated no objection, but did note that there was an issue regarding statutory

4    eligibility, and stated that Cornejo was only statutorily eligible if Cornejo's

5    mother's time as a lawful permanent could be imputed to him. *Id.* Ms. Trinkhaus

6    said she understood and would look into that. *Id.* Judge Laurent, setting the next

7    hearing, stated that "unfortunately, I am not available until June 1, 2010, my first

8    available date." *Id.* He reminded counsel to pay the fee for the filing of the

9    application, and described how to pay for the fee. *Id.* The hearing was again

10   adjourned.

11       **June 1, 2010 Hearing** – At the start of the fourth hearing, Judge Laurent

12   noted at the outset that the hearing represented the fourth continued hearing date

13   for the filing of the cancellation of removal application. Exhibit 1, Track 5, June

14   1, 2010 Hearing. Ms. Trinkhaus appeared for Cornejo and filed the application.

15   *Id.* In looking over the application, Judge Laurent asked whether counsel paid the

16   fee, and counsel stated that she did; Judge Laurent noted that Cornejo had

17   requested a waived fee, and counsel corrected herself and admitted that the

18   required fee had not been paid. *Id.* Although Judge Laurent could have rejected

19   the application – and he noted that other judges would have – he did not. "I'll go

20   ahead since this is the fourth – I've got to admonish you, though . . ." *Id.* Judge

21   Laurent then marked the application for admission. *Id.* In reviewing the

22   materials, the court noted that the Government had already submitted the

23   California DOJ, and asked Ms. Trinkhaus if she had a chance to review it. *Id.* She

24   represented to the court that she had. *Id.* Judge Laurent then proposed a merits

25   hearing on the application for the next available date, August 13, 2010, but Ms.

26   Trinkhaus indicated that there was a conflict, so the hearing was set for August 17,

27   2010. *Id.* The hearing was adjourned.

28

**August 17, 2010 Hearing** – Although August 17, 2010 was set for the merits on Cornejo's cancellation application, that hearing did not go forward because of a previously undisclosed burglary conviction on Cornejo's record that Cornejo's counsel appeared unaware of, even though it was noted in a document she presented in court on August 17, 2010. That conviction raised fresh doubts in the mind of Judge Laurent as to whether Cornejo was statutorily eligible for cancellation, and the hearing was again continued to give Cornejo's counsel time to prepare.

Judge Laurent again convened proceedings and took appearance of counsel. Exhibit 1, Track 6, August 17, 2010 (Part 1). Judge Laurent asked DHS counsel whether background clearances had been conducted, and DHS counsel indicated that a clearance had been conducted and no issues were presented. *Id.* Judge Laurent began by noting a concern that there appeared to be outstanding warrants against Cornejo for burglary and for conspiracy to commit a crime. *Id.* He asked counsel if those issues had been resolved. *Id.* Ms. Trinkhaus, appearing for Cornejo, responded that she was "not aware of whether or not that has been resolved, your Honor." *Id.*

Judge Laurent again asked DHS counsel whether there was anything in the background checks to indicate an outstanding warrants, and DHS counsel indicated that based on the report, there were no outstanding warrants. *Id.* Judge Laurent stated his concern that with the indication of an outstanding warrant for offenses as serious as those indicated, if he went forward and had a hearing on cancellation, and if there were a favorable grant, and Cornejo was later convicted and sentenced to more than 365 days, he could again be charged as removable and he would be unable to apply for cancellation a second time. *Id.* He asked Ms. Trinkhaus how she wanted to proceed. *Id.*

Ms. Trinkhaus indicated that she had with her in court a copy of the California DOJ previously submitted by DHS at an earlier hearing. *Id.* Judge

Laurent noted that the existence of outstanding warrants was indicated in the California DOJ the Government had previously submitted into evidence, and which Ms. Trinkhaus had with her. *Id.* However, despite having informed Judge Laurent on June 1, 2010, that she had a chance to review the California DOJ submitted into evidence, Ms. Trinkhaus appeared not to be aware that outstanding warrants for Cornejo's arrest were indicated on the report. *Id.* Judge Laurent then directed Ms. Trinkhaus to the location on page six of the California DOJ where separate outstanding warrants were indicated. *Id.*

Judge Laurent explained again that if he was convicted of an outstanding offense, it may render him ineligible for cancellation. *Id.* Ms. Trinkhaus indicated she had with her a copy of a set of minutes on the burglary charge, but not for the conspiracy charge. *Id.* Judge Laurent examined the minutes on the burglary charge to determine if the hearing could go forward in the absence of Ms. Trinkhaus's understanding of whether the outstanding warrant issues had been resolved. *Id.*

In examining the minutes provided by Ms. Trinkhaus, Judge Laurent noted that Cornejo had actually been convicted of burglary – again, a fact Ms. Trinkhaus appeared not to know. Exhibit 1, Track 7, August 17, 2010 Hearing (Part 2).

> Judge Laurent: So he was convicted of burglary.
>
> Ms. Trinkhaus: Yes.
>
> Judge Laurent: Were you aware of that, Ms. Contreras [DHS counsel]?
>
> DHS Counsel: No.
>
> Judge Laurent: Okay.
>
> . . .
>
> Judge Laurent: Well, that definitely resolves [the issue of whether there was an outstanding warrant]; I'll say here the court definitely finds the respondent guilty. . . actually, it looks like he has . . .
>
> DHS Counsel: And why was that not submitted, before today?

1        Ms. Trinkhaus: I'm sorry?

2        DHS counsel: Why it wasn't submitted, prior to today?

3        Judge Laurent: Do you know why you did not submit it or have copies?

4        Ms. Trinkhaus: I do not know.  I'm sorry.

5        Judge Laurent: I did set a document submission [deadline] of August

6           3rd.

7  *Id.*  The court then examined the documents and, reading further, determined that

8  it did not appear that Cornejo had yet been sentenced for the burglary conviction

9  – again, a fact Ms. Trinkhaus appeared to be unaware of.  *Id.*  Judge Laurent then

10  recommended that the matter be set over to determine, first, whether Los Angeles

11  County wanted Cornejo to appear for sentencing for burglary, and, second, to give

12  Ms. Trinkhaus time to determine whether there was an issue regarding the

13  outstanding warrant against Cornejo for conspiracy.  *Id.*

14       Judge Laurent again highlighted his concern:  "I mean, if he got more than a

15  year, he might be ineligible for cancellation of removal as an aggravated felon.  So

16  I think it's in your client's best interest to try and resolve this."  Exhibit 1, Track 8,

17  August 17, 2010 Hearing (Part 3).

18       Judge Laurent then rescheduled the hearing for the next available date on

19  the calendar, November 15, 2010.  *Id.*  DHS requested that the court set a date for

20  the submission of the documents Judge Laurent requested Ms. Trinkhaus to

21  provide.  *Id.*  Judge Laurent walked Ms. Trinkhaus through the documents she

22  would need to submit, and then set the date for the submission of documents for

23  November 1, 2010.  *Id.*  Judge Laurent concluded the hearing by noting that he

24  would put the November 1 document deadline on the written notice to counsel.  *Id.*

25  The hearing was then adjourned.

26       Despite Judge Laurent's clear instructions, November 1 came and went, and

27  no documents were submitted on behalf of Cornejo.  The hearing set for

28  November 15, 2010 was agains delayed by Cornejo because Ms. Trinkhaus

1  withdrew as counsel two weeks before the hearing.  *See* Declaration of Court

2  Administrator Garciela Sosa ¶ 3.  When she withdrew on October 27, 2010, Ms.

3  Trinkhaus submitted a notice indicating that another named attorney would be

4  replacing her.  *Id.* ¶¶ 4-5.  Based on this representation, Judge Laurent reset the

5  merits hearing on Cornejo's application for the next available date, January 26,

6  2010.  *Id.* ¶ 4.  To date, no new counsel has entered an appearance on behalf of

7  Cornejo.  *Id.* ¶ 5.  The documents requested by the Court and necessary to

8  adjudicate the application for cancellation have not been submitted by Cornejo.

9  *Id.* ¶ 3.  Nonetheless, the merits hearing remains set for January 26, 2010.

10                                      **Argument**

11         "[A] preliminary injunction is an extraordinary and drastic remedy, one that

12  should not be granted unless the movant, by a clear showing, carries the burden of

13  persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Earth Island Inst.*

14  *v. Carlton*, --- F.3d ----, 2010 WL 4399138, * 3 (9th Cir. Nov. 8, 2010).

15  Traditionally, "[a] plaintiff seeking a preliminary injunction must establish that he

16  is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

17  absence of preliminary relief, that the balance of equities tips in his favor, and that

18  an injunction is in the public interest."  *Marlyn Nutraceuticals, Inc v. Mucos*

19  *Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009).

20         Cornejo cannot succeed on the merits of his individual claim for a

21  preliminary injunction for three reasons.  First, Cornejo's detention continues to

22  serves the valid immigration purpose of securing Cornejo's attendance at his

23  removal proceedings, a purpose the Supreme Court recognized is not tied to or

24  limited by the length of detention.  Second, even if the length of pre-final order

25  detention may raise constitutional concerns, Cornejo is incorrect that the mere

26  length of his detention alone – to the exclusion of other facts in his case –

27  determines the lawfulness of his detention.  Courts that have examined the issue of

28  prolonged detention, including decisions of the Ninth Circuit and other courts in

cases relied on by Cornejo, reject the sort of arithmetic standard urged by Cornejo and instead weigh the reasonableness of detention under section 1226(c) by considering numerous factors on a case-by-case basis, and not just the length of detention alone.  Third, Cornejo cannot succeed because the facts of his case – and in particular the singular manner in which he has contributed to the numerous delays in his removal proceedings – weigh against a determination that his continued detention is unreasonable, as courts have repeatedly found, including in decisions cited and relied on by Cornejo in his motion.

1.    **Cornejo's detention raises no constitutional concerns because it continues to serve the legitimate purposes recognized by the Supreme Court.**

As Respondents argued in their previously filed motion for judgment on the pleadings [Dkt. # 130], section 1226(c) stands as Congress's response to the special concerns posed by removable criminal aliens.  Specifically, in enacting section 303(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C., § 303(b), 110 Stat. 309-586 (Sept. 30, 1996), which would later be codified as section 1226(c), Congress recognized that criminal aliens released on bond pending removal frequently failed to appear for removal proceedings or, worse, engaged in other crimes.[3]  Section 1226(c) was thus passed "against a backdrop of wholesale failure by the [Immigration and Naturalization Service ("INS")] to deal with increasing rates of criminal activity

---

[3]    The Supreme Court has acknowledged these problems.  In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court noted that "[c]riminal aliens were the fastest growing segment of the federal prison population, already constituting roughly 25% of all federal prisoners, and they formed a rapidly rising share of state prison populations as well." *Demore*, 538 U.S. at 518.  "One 1986 study showed that, after criminal aliens were identified as deportable, 77% were arrested at least once more and 45% – nearly half – were arrested multiple times before their deportation proceedings even began." *Id.*  The Supreme Court also recognized that in enacting the provisions that would become section 1226(c), "Congress also had before it evidence that one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings." *Demore*, 538 U.S. at 519.

1   by aliens." *Demore v. Kim*, 538 U.S. 510, 518 (2003).[4]  Section 1226(c) provides

2   that "[t]he Attorney General shall take into custody any alien who [has committed

3   an offense enumerated in sections 1226(c)(A) though (D)] when the alien is

4   released . . ." 8 U.S.C. § 1226(c)(1).  With the exception of extraordinary

5   circumstances not relevant to Cornejo's case, aliens detained under section

6   1226(c) are not entitled to a bond hearing before an immigration judge.  *See* 8

7   U.S.C. § 1226(c)(2).

8          The seminal case interpreting section 1226(c) is the Supreme Court's

9   decision in *Demore*.  In rejecting a challenge to the constitutionality of mandatory

10  immigration detention, the Supreme Court reiterated that "[i]n the exercise of its

11  broad power over naturalization and immigration, Congress regularly makes rules

12  that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522

13  (citing *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976); *Zadvydas v. Davis*, 533 U.S.

14  678, 718 (2001)).  Moreover, the Supreme Court rejected the argument that

15  mandatory detention could not occur in the absence of an individualized

16  determination that a detainee posed a risk of flight or danger to the community.

17  The Supreme Court, echoing prior decisions, concluded that "the INS could deny

18  bail to the detainees 'by reference to the legislative scheme' even without any

19  finding of flight risk." *Demore*, 538 U.S. at 524 (citing *Carlson v. Landon*, 342

20  U.S. 524 (1952)).

21         Significantly, the Supreme Court distinguished pre-final order detention

22  under section 1226(c) from post-order, but potentially indefinite, detention

23  considered in *Zadvydas*.  The aliens in *Zadvydas* were "ones for whom removal

24  was 'no longer practically attainable,'" and thus "detention there did not serve its

25  purported immigration purpose." *Demore*, 538 U.S. at 527 (citing *Zadvydas*, 533

26  U.S. at 690).  By contrast, aliens detained under section 1226(c) are detained only

27  during the period of their removal proceedings, and thus their detention

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [4]   Section 1226(c) provides that the "Attorney General shall

15

"necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 528.  The Supreme Court further distinguished *Zadvydas* by explaining that while "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point," pre-final order detention under section 1226(c) has "a definite termination point." *Demore*, 538 U.S. at 529.

Upon this foundation, the Supreme Court concluded that the mandatory detention of criminal aliens pending the brief period of their removal proceedings was constitutional. *Demore*, 538 U.S. at 513.  Cornejo is therefore incorrect that his detention is unconstitutional because it "far exceeds the brief period which the Supreme Court contemplated in *Demore v. Kim*, when it upheld the constitutionality of mandatory detention – typically a month and a half in the majority of cases, and five months in those cases where the noncitizen pursues an appeal." Pet.'s Br. at 2.  The critical factor in the Supreme Court's analysis was not the length of detention – indeed, the Supreme Court upheld the alien's detention in *Demore* even though it exceeded the average length of removal proceedings. *Demore*, 538 U.S. at 517 n.15.  For the Supreme Court, pre-final order detention serves a legitimate governmental interest because the Government had a valid basis for seeking mandatory detention, and because pre-final order detention is not indefinite, but has a foreseeable termination point.

Cornejo's continued detention serves the statutory purpose because his detention has a foreseeable termination point:  the conclusion of his removal proceedings.  Cornejo has been found removable by the immigration judge, a fact Cornejo did not and cannot contest; Cornejo admitted that he was convicted of an offense that is unquestionably removable under the law.  In this sense, he has

conceded removability.[5]  All that remains to be decided is his application for cancellation of removal – provided Cornejo supplies the information previously requested by the immigration court.  Judge Laurent has reset the merits hearing for January 26, 2010.  If Cornejo is correct and his application is granted, his removal proceedings face an imminent, not merely foreseeable, termination point: his removal proceedings will end on that day.  If he loses and then appeals, his removal proceedings will end with the determination of his appeal to the Board of Immigration Appeals.[6]  Cornejo's detention thus has a foreseeable termination point, and his detention is constitutional under section 1226(c).  The preliminary injunction should be denied.

**2.  Even if the length of Cornejo's detention may raise constitutional concerns, the reasonableness of his detention cannot be determined *solely* by the length of his detention.**

Even if this Court were to conclude that the length of detention does not raise constitutional concerns in pre-removal immigration detention where that detention has a foreseeable termination point, the Court must still reject Cornejo's suggestion that the length of his detention is sufficient, standing alone, to justify granting him a bond hearing.

In *Demore*, Justice Kennedy acknowledged that constitutional concerns would become more pronounced should detention under Section 1226(c) become

---

[5]  Cornejo argues that unlike the petitioner in *Demore*, he has not conceded removability.  Pet.'s Br. at 2.  That is incorrect.  Cornejo has conceded that he is removable for his conviction, and thus has conceded removability.  Cornejo confuses a claim for *relief from* removability with a challenge *to* removability.  The distinction is apparent in *Demore* itself, where the Supreme Court noted that Kim had conceded removability, 538 U.S. at 513 and 523 n.6, while at the same time noting that he had also applied for withholding from removal, *id.* at 523 n.6 and 529.

[6]  Even if he loses before the Board of Immigration Appeals and appeals to the Ninth Circuit, Cornejo must concede that under the Ninth Circuit's decision in *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), his petition for review is likely to be stayed under the Ninth Circuit General Order 6.4(c), and he will no longer be detained under section 1226(c).  For this reason, Cornejo's argument that his detention is potentially limitless finds even less purchase in this Circuit than elsewhere.

prolonged, and he stated that individualized bond hearings might be warranted for lawful permanent residents "if the continued detention *became unreasonable or unjustified*." *Id.* at 532 (Kennedy, J., concurring) (citing *Zadvydas v. Davis*, 533 U.S. at 684-86) (emphasis added).  Based on this language, courts have engaged in case-by-case inquiries concerning the reasonableness of detention, considering factors such as the duration of detention, the alien's contribution to the length of his detention, the likelihood of removal, delay by the Government, and other factors.  *See*, *e.g.*, *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005); *Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2004) (identifying factors to be weighed in determining the reasonableness of detention); *Alli v. Decker*, 644 F. Supp. 2d 535, 541 (M.D. Pa. 2009) (establishing reasonableness analytical framework and identifying non-exhaustive list of factors that should be weighed in considering whether continued detention is reasonable).

The fact that courts determine the reasonableness of detention under section 1226(c) on a case-by-case basis places Petitioners on the horns of a dilemma. Petitioners' class-wide claim – that every alien detained under section 1226(c) is entitled by the Constitution to a bond hearing after six months of detention regardless of their individual circumstances – cannot survive if the reasonableness (and thus, constitutionality) of an alien's detention under section 1226(c) depends on a careful weighing of case-by-case factors unique to each alien.  The only way Petitioners can square their class-wide claim and Cornejo's individual claim is to argue that no individual facts can make prolonged detention reasonable, and therefore the court need not look at the reasons behind the length of an alien's detention.  Unless this Court accepts Petitioners' argument, their class-wide claim cannot be reconciled with the individual claim presented in this motion.

However, courts – including courts in decisions relied on by Cornejo – have rejected that very argument and have concluded that it is necessary not only to look at the *length* of detention, but to look at *why* detention has become prolonged,

on a case-by-case basis.  Length of detention alone is an insufficient foundation to declare detention unconstitutional.  As one court explained:

> [T]he analysis here does not involve simple arithmetic. A qualitative assessment must also be made of the reasons for the delay in removal, and who bears responsibility for that delay.  Therefore, when weighing claims of excessive delay made by immigration detainees challenging mandatory pre-removal detention, courts must also carefully assess the reasons for the delay.  Where the delay is attributable to actions taken by the alien in the course of litigating the removal proceedings, courts typically will not hold the [G]overnment accountable for that delay when conducting a due process analysis.

*Segura v. Holder*, No. 10-cv-1341, 2010 WL 3666759, *9 (M.D. Pa. Sept. 15, 2010) ("[T]he pre-removal detention in this case is largely attributable to litigation decisions made by Segura, who was almost exclusively responsible for the first 8 months of delay in the litigation of this matter.") (citing *Demore*, 538 U.S. at 531, n.15; *Castellanos v. Holder*, No. 08-4665, 2009 WL 2138408, *5 (3d Cir. 2009); *Rodrigques v. Holder*, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010) (one year detention held attributable to alien's litigation tactics)).

Similarly, the Supreme Court in *Demore* allowed the detention to continue, even though it exceeded the average length of removal proceedings, because the alien in *Demore* had prolonged his proceedings, and thus his detention, by seeking continuances to make an application for relief from removal.  *Demore*, 538 U.S. at 530 & n.15. ("Respondent was detained for somewhat longer than the average-spending six months in INS custody prior to the District Court's order granting habeas relief, but respondent himself had requested a continuance of his removal hearing. . . .  Respondent was held in custody for three months before filing his habeas petition. His removal hearing was scheduled to occur two months later, but respondent requested and received a continuance to obtain documents

1  relevant to his withholding application.").

2      Other courts have articulated this principle forcefully.  For example, in

3  *Andreenko v. Holder*, 2010 WL 2900363, *4 (S.D.N.Y. June 25, 2010), the

4  Southern District of New York denied habeas relief to an alien detained for two

5  years largely because "his prolonged detention is at least partly attributable to his

6  own actions."  *Id.*  Like Cornejo, the petitioner in *Andreenko* did not contest

7  removability, and his proceedings were delayed because he contributed to the

8  length of his detention by changing counsel and by seeking continuances to apply

9  for cancellation of removal.  *Id.*  The district court was quick to reject the

10  argument that the petitioner was only pursuing his legal rights:  "Although Mr.

11  Andreenko has every right to seek any relief from deportation for which he may be

12  eligible, delay caused by his actions does not make continued detention

13  unreasonable or unjustified."  *Id.*

14      In this Circuit, courts have also reached the conclusion that where an alien

15  has contributed to the length of his removal proceedings, and thus his detention,

16  that detention is neither unreasonable nor unconstitutional.  *See, e.g., Ovchinnikov*

17  *v. Clark*, 543 F. Supp. 2d 1265, 1271 (W.D. Wash. 2008) ("Continuances granted

18  solely for the petitioner's benefit should not count" against the Government when

19  considering constitutionality of detention under section 1226(c)); *see also*

20  *Agyeman v. I.N.S. Asst. Dir. Coachman*, 74 Fed. Appx. 691, 2003 WL 21480344,

21  *2 (9th Cir. 2003) (although governed by section 1226(a), noting length of

22  detention was attributable to various continuances of removal proceedings and

23  other steps taken by alien that had the effect of delaying his proceedings).

24      For this reason, Cornejo's reliance on *Tijani* is misplaced.  In *Tijani*, Judge

25  Noonan, writing for the majority, devoted two brief paragraphs to the issue of

26  prolonged detention.  *Tijani*, 430 F.3d at 1241.  Although *Tijani* notes the

27  constitutional concerns that prolonged detention may raise, Cornejo is incorrect to

28  suggest that the Ninth Circuit relied solely on the length of detention to reach its

1   conclusion, without looking at the reasons for the length of Tijani's detention or

2   his individual circumstances.  It is evident from the decision that certain facts

3   weighed on the Court.  First, the Court cited and relied on the fact that the

4   Government was partly to blame – and Tijani was not to blame – for Tijani's

5   detention of more than two years.  Judge Noonan noted that the Government made

6   two requests for extensions of time to file an appellate brief.  *Id.* at 1242.  Judge

7   Tashima noted that "[w]hile it is true that Tijani requested continuances," those

8   requests "have not contributed at all to the year-long delay since the [Board of

9   Immigration Appeals] heard his appeal."  *Id.* at 1249 (Tashima, J.) (concurring

10  opinion).

11       Second, the two judges voting in the majority cited questions about Tijani's

12  removability and threshold eligibility for mandatory detention.  The Court also

13  distinguished the *Tijani* case from that of *Demore* by explaining that the alien in

14  *Demore* "conceded deportability" while Tijani did not.  *Id.*  And Judge Tashima

15  emphasized that Tijani's detention "is not the result of a criminal conviction," *id.*

16  at 1243, and that Tijani was convicted "of offenses that have never been found by

17  a court or by the [Board of Immigration Appeals] to trigger mandatory detention."

18  *Id.* at 1244.[7]

19

20  [7]   In addition to *Demore* and *Tijani*, Cornejo relies on four other cases to support his arguments.  Two of those cases – *Ly* and *Alli* – reject the idea that the length of detention

21  determines the reasonableness of detention under section 1226(c).  Both *Ly* and *Alli* instead embrace a reasonableness framework.  In another case, *Casas-Castrillon*, the

22  Ninth Circuit acknowledged that prolonged detention may raise constitutional concerns, but the Court in *Casas* addressed a different issue than the one presented here.  Finally,

23  Cornejo also contends that he is entitled to be released under *Nadarajah v. Gonzales*, 443 F.3d 1069, 1079-80 (9th Cir. 2006).  But *Nadarajah* concerns *indefinite* detention,

24  not prolonged detention.  In *Nadarajah*, the petitioner, detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) and 1225(b)(2)(A), challenged the ICE's denial of parole.  *Id.* at

25  1075-76.  The immigration judge had already granted the petitioner deferral of removal under the Convention Against Torture (which was unchallenged), and asylum (which

26  had been affirmed by the Board of Immigration Appeals).  *Id.*  Despite having prevailed on his application for relief at every administrative level, Nadarajah had been detained

27  for five years pending a determination of removability by the Attorney General in an unusual and rarely invoked process.  *Id.*  Relying on the Supreme Court's analysis in

28  *Zadvydas*, the Ninth Circuit held that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for *an indefinite period*."  *Id.* at

21

This Court should reject Cornejo's argument that the reasons for the length of detention are of no importance to the constitutionality of that detention. Instead, even if this Court determines that Cornejo's detention raises constitutional concerns, it should weigh that detention against the facts of his case, including, as the hearing transcripts show, the length of Cornejo's detention is attributable to Cornejo alone.

**3.    Cornejo is responsible for lengthening his detention by more than a year, and Cornejo is incorrect that the Government admitted that he is likely to obtain cancellation of removal.**

In listening to the transcripts of the hearings before Judge Laurent, this Court should come to certain well-established conclusions regarding the reasons why Cornejo has been detained for 15 months, and whether the Government conceded that Cornejo is entitled to cancellation of removal.

First, the record of the proceedings demonstrates that Cornejo is responsible for the delays in his removal proceedings.  He sought and received five continuances to prepare and file his cancellation application, and to address concerns raised by the immigration judge when Cornejo's counsel was not prepared to proceed.  Twice Cornejo's counsel admitted that preparation of the application *had not even begun*, most recently in April 2010, nearly seven months after Cornejo was detained.  On one occasion Cornejo's counsel sought, on Judge Laurent's recommendation, more time to respond to the concerns raised about Cornejo's criminal record.  This was a subject Cornejo's counsel was not prepared to address at the merits hearing in August 2010 because she was not aware of his criminal record, even though that record was plain from the documents she brought with her to court that day.  And on a second occasion Cornejosought a

1076 (citing *Zadvydas*, 533 U.S. at 678).  The Ninth Circuit concluded that there was no likelihood of removal in the reasonably foreseeable future in light of the fact that the petitioner had been awarded asylum twice and protection under the Convention Against Torture.  *Id.* at 1080-81.  This case does not involve any issue of indefinite detention, and therefore *Nadarajah* is inapposite.

continuance to move the merits hearing because Cornejo's second counsel sought to withdraw from the case. All told, these continuances and delays began in December 2009 and delayed the proceedings for more than a year.

Second, the transcripts show that neither the immigration court nor DHS counsel were responsible for delaying Cornejo's removal proceedings. The first hearing was held three months after Cornejo was detained, and with each continuance Judge Laurent reset the matter to the next available hearing date. The only time Judge Laurent suggested resetting a date was when Cornejo's counsel was unprepared to address Cornejo's criminal record, and only then when it became clear to Judge Laurent that it would benefit Cornejo by avoiding the possibility that cancellation – if granted – would be rendered moot by a later charge of removability based on his later burglary conviction. Similarly, DHS counsel never requested a continuance at anytime during the proceedings, and was prepared to address the application for cancellation at each hearing. DHS counsel provided documents when requested by Judge Laurent, and supplemented the immigration court's records with criminal records when necessary. If anything, the transcripts show that Cornejo received significant advice on how to proceed with an application for cancellation from the court, and that the court advised his counsel on how best to proceed on different occasions, as well.

Finally, Cornejo is patently incorrect that his detention is unreasonable because he is almost certain to obtain cancellation of removal, a fact the Government conceded. At the outset, nowhere in the transcripts does DHS counsel state or suggest that Cornejo is entitled to receive cancellation. Indeed, DHS counsel raised to the court the fact that Cornejo's uncertain criminal record may raise an issue of statutory ineligibility for cancellation, and DHS counsel also reiterated Judge Laurent's request that Cornejo provide proof of his mother's permanent resident status. The most that can be said of DHS's position on the issue of cancellation is that DHS did not object when Judge Laurent suggested to

1  Cornejo that he could make an application for cancellation – a fact that is entirely

2  consistent with Respondents' answer to the second Amended Complaint that the

3  Government "has not opposed the application for cancellation of removal . . ."

4  [Dkt. # 94, ¶ 18].  That is far different from Cornejo's claim that "the Government

5  will not oppose a grant of discretionary relief" of cancellation.  Pet.'s Br. at 17.

6  Cornejo's assertion is completely untrue, blatantly misleading, and not supported

7  anywhere in the record of proceedings.  The Court should afford it no weight.

8      Because cancellation of removal is, as Cornejo admits, *see* Pet.'s Br. at 17, a

9  discretionary form of relief, it is not certain that Cornejo will obtain cancellation.

10  Judge Laurent's comments indicate that there are a number of factors that must be

11  considered, including Cornejo's efforts at drug rehabilitation, the issues

12  surrounding his criminal past, and, when a merits hearing on the application is

13  held, the testimony of Cornejo's family and other witnesses.  The immigration

14  court must also consider the Government's position at the hearing.  Thus, the issue

15  of cancellation – a discretionary matter left to the administrative process – is

16  hardly settled, and cannot support granting Cornejo's preliminary injunction

17  motion.[8]

### Conclusion

18

19      For the foregoing reasons, the Court should deny the motion for a

20  preliminary injunction.

21

22

23

24

25  _____

26  [8]  The public interest factor also weighs in favor of the Government.  This Court "must be mindful that the Government's role as the respondent in every removal proceeding does not make its interest in each one negligible.  There is always a public interest in the

27  prompt execution of removal orders," *Nken v. Holder*, 129 S.Ct. 1749, 1762 (2009). There is similarly a public interest in making sure that the Congressional concern over

28  the low numbers of criminal aliens who attend removal proceedings and the high number of those who commit crimes after release on bond is addressed.

Dated: December 20, 2010                    Respectfully submitted,

                                            TONY WEST
                                            Assistant Attorney General
                                            Civil Division

                                            DAVID J. KLINE
                                            Director, Office of Immigration Litigation
                                            District Court Section

                                            VICTOR M. LAWRENCE
                                            Principal Assistant Director

                            By:     /s/ Theodore W. Atkinson
                                            THEODORE W. ATKINSON
                                            Senior Litigation Counsel
                                            U.S. Department of Justice
                                            Office of Immigration Litigation
                                            District Court Section
                                            P.O. Box 868, Ben Franklin Station
                                            Washington DC 20044
                                            (202) 532-4135
                                            theodore.atkinson@usdoj.gov

                                            NICOLE R. PRAIRIE
                                            Trial Attorney

                                            EREZ R. REUVENI
                                            Trial Attorney

                                            ELIZABETH L. WALKER
                                            Trial Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2010, I submitted the foregoing to opposing counsel by e-mailing the same on the following:

Ahilan T. Arulanantham
ACLU Foundation of Southern
California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

William Tran
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: wtran@sidley.com

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Steven A. Ellis
Sidley Austin LLP
555 W 5th St, Ste 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: sellis@sidley.com

Brian Kelley Washington
Sidley Austin
555 West Fifth Street Suite 400
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: bwashi01@sidley.com

*/s/ Theodore w. Atkinson*
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice

26