PETER J. ELIASBERG (SBN 189110)
Email: peliasberg@aclu-sc.org
AHILAN T. ARULANANTHAM (SBN 237841)
Email: aarulanantham@aclu-sc.org
MICHAEL KAUFMAN (SBN 254575)*
Email: mkaufman@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Tel: (213) 977-5211
Fax: (213) 977-5297

**Attorneys for Petitioners**
(Additional counsel listed on following page)

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, et al., | Case No. CV 07- 3239-TJH (RNBx) |
| Petitioners, | **REPLY IN SUPPORT OF PETITONER FARIAS CORNEJO'S MOTION FOR A PRELIMINARY INJUNCTION** |
| vs. | |
| TROY ROBBINS, et al., | Honorable Terry J. Hatter |
| Respondents. | Hearing Date:  January 3, 2011 |
| | Hearing Time:  UNDER SUBMISSION |
| | Complaint Filed: 5/16/2007 |

1  Additional Counsel:

2  JUDY RABINOVITZ
   AMERICAN CIVIL LIBERTIES FOUNDATION
3  IMMIGRANTS' RIGHTS PROJECT
   125 Broad Street, 18th Floor
4  New York, NY 10004
   Telephone: (212) 549-2618
5  Facsimile: (212) 549-2654

6  JAYASHRI SRIKANTIAH (SBN 189566)
   STANFORD LAW SCHOOL
7  IMMIGRANTS' RIGHTS CLINIC
   Crown Quadrangle
8  559 Nathan Abbott Way
   Stanford, CA 94305-8610
9  Telephone: (650) 724-2442
   Facsimile: (650) 723-4426

10
   SEAN COMMONS (SBN 217603)*
11 WILLIAM TRAN (SBN 245104)
   BRIAN K. WASHINGTON (SBN 248960)
12 SIDLEY AUSTIN LLP
   555 West Fifth Street, Suite 4000
13 Los Angeles, California  90013-1010
   Telephone: (213) 896-6000
14 Facsimile: (213) 896-6600

15 *Notice of Appearance forthcoming

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ............................................................................... 1

I.    Mr. Farias Cornejo is Likely to Prevail on His Claim that His
      15-Month Detention Requires that the Government Provide a
      Bond Hearing to Justify His Prolonged Detention................................ 4

      A.    Mr. Farias Cornejo's detention is governed by § 1226(a)
            because § 1226(c)'s mandatory detention provision does not
            authorize prolonged detention ........................................... 4

      B.    Mr. Farias Cornejo's detention is governed by § 1226(a)
            because § 1226(c)'s mandatory detention provision does
            not authorize prolonged detention ....................................... 6

II.   Mr. Farias Cornejo Is Not Responsible for the Majority of
      His 15-Month Detention ..................................................... 10

III.  Mr. Farias Cornejo Will Suffer Irreparable Harm Absent
      the Injunction, the Balance of Hardships Tips Sharply in His
      Favor, and an Injunction is in the Public Interest........................... 11

i

# TABLE OF AUTHORITIES

**CASES**

*Casas Castrillon v. Dep't of Homeland Sec.*,
535 F.3d 942 (9th Cir. 2008)....................................................................*passim*

*Nadarajah v. Gonzalez*,
443 F.3d 106 (9th Cir. 2006)....................................................................4, 5, 9

*INS v. St. Cyr*,
533 U.S. 289 (2001)....................................................................16

*Prieto-Romero v. Clark*,
534 F.3d 1053 (9th Cir. 2008) ....................................................................7

*United States v. Muro-Inclan*,
249 F.3d 1180 (9th Cir. 2001)....................................................................11

*Tijani v. Willis*,
430 F.3d 1241 (9th Cir. 2005)....................................................................*passim*

*Ly v. Hansen*,
351 F.3d 263 (6th Cir. 2004) ....................................................................8


**STATUTES**

8 U.S.C. § 1226(c)  ....................................................................*passim*

8 U.S.C. § 1226(a)  ....................................................................4, 5, 6


**OTHER AUTHORITIES**

Ninth Circuit Rule 36-3(c) ....................................................................8

ii

**INTRODUCTION**

Mr. Farias Cornejo has been incarcerated without a bond hearing for a period that now exceeds 15 months – far longer than he ever served for his underlying criminal convictions.  Notably, the government never suggests that he poses either a danger or flight risk, let alone the kind of danger or flight risk that would be necessary to justify detention of such length.  Instead, the government argues that Mr. Farias Cornejo should not receive a bond hearing because he is allegedly wholly responsible for the length of his detention, even though it does not dispute that he has a substantial claim for relief from removal and does not allege that he himself has engaged in any dilatory tactics.  At most, the government's allegations prove that Mr. Farias Cornejo has been ill-served by his prior lawyers' lack of diligent representation.  But this alone is hardly grounds to continue to imprison him when he poses no danger or flight risk, and, more important for present purposes, to refuse even to give him a bond hearing where that determination can be made.  Indeed, to the extent there is any concern that Mr. Farias Cornejo has engaged in dilatory tactics that make him a flight risk, his Immigration Judge (IJ) would be in the best position to decide that question, *at a bond hearing*.

While the government spends much of its brief attempting to explain the facts surrounding the delays in Mr. Farias Cornejo's case, it has no answer to the controlling Ninth Circuit authority on the central legal issue in this motion: whether the government can continue to incarcerate Mr. Farias Cornejo for a prolonged period without affording him a bond hearing to determine whether his continued detention is justified.  The answer to that question is dictated by controlling Ninth Circuit authority already holding that because prolonged incarceration without such a hearing creates serious constitutional problems, the statute under which Mr. Farias Cornejo is purportedly detained, 8 U.S.C. § 1226(c), must be construed to apply only to "expeditious" proceedings rather than to "prolonged" ones.  *Casas Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008).

1

1    Remarkably, the government's only discussion of *Casas* is hidden in a footnote,

2  which cryptically states that "the Court in *Casas* addressed a different issue than the

3  one presented here" but does not explain how the issues are different.  Opp. at 21 n.7.

4  The government's failure to address this binding circuit authority is fatal to its

5  arguments.  *See infra* Section I.A.

6    While the government does not explain how its view can be reconciled with

7  *Casas*, it nonetheless offers an alternative proposal that would require this Court to

8  conduct its own reasonableness determination before ordering a bond hearing.  But

9  none of the Ninth Circuit decisions addressing prolonged detention have adopted this

10  view, and it is contrary to both the rationale of *Casas* and the instructions provided to

11  this Court in *Rodriguez* itself – the Ninth Circuit's class certification decision in this

12  very case.  The government's approach would require individuals suffering from

13  prolonged mandatory detention to file individual habeas petitions in order to obtain a

14  bond hearing – the very problem that the Ninth Circuit sought to avoid in this case

15  when it reversed this Court's decision denying class certification.  *See Rodriguez v.*

16  *Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010) (class certification warranted to "facilitate

17  development of a uniform framework for analyzing detainee claims to a bond

18  hearing," so as to "obviat[e] the severe practical concerns that would likely attend

19  them were they forced to proceed alone.").  In addition, the practical effect of such an

20  approach would be to require two hearings – one by this Court to determine if

21  detention is reasonable, and then another by an IJ considering virtually the identical

22  factors.  The government's proposal is contrary to the law of this circuit and a waste

23  of judicial resources.  *See infra* Section I.B.

24    Even were this Court inclined to delve into the procedural history of Mr. Farias

25  Cornejo's case, rather than allowing an IJ to undertake that task as required by *Casas*,

26  it would find that his prolonged detention is not the result of any dilatory conduct on

27  his part.  Much of it is attributable to the inordinate delays associated with the process

28  for seeking relief in the immigration court.  While some of the delay is due to  his

2

prior attorneys' lack of preparedness, the last four months of detention have occurred despite his attorney being ready to proceed.  Most important, none of the government's discussion of Mr. Farias Cornejo's procedural history goes to the basic issue that would be decided at a bond hearing, which is whether he presents a danger or flight risk sufficient to justify detention.  *See infra* Section II.

Finally, the government fails to discuss the equity factors that weigh in favor of issuing a preliminary injunction.  Mr. Farias Cornejo is now approaching his second Christmas apart from his family, faces ongoing detention of an undetermined length while his immigration case is resolved, and remains very likely to win his removal case.[1]  He remains incarcerated simply because the government refuses to provide any review of the necessity of his ongoing detention.  Counterbalanced against Mr. Farias Cornejo's significant interest in his physical liberty is the government's virtually non-existent interest in avoiding holding a single bond hearing.  *See infra* Section III.[2]

---

[1] As explained more fully *infra*, counsel for Petitioner was informed both by the Petitioner and his prior counsel that the government had stated it would not oppose a grant of cancellation – which was confirmed by the government's answer in this case. If the government has changed its position, or if it intended only to concede that Mr. Farias Cornejo is eligible for cancellation, it nonetheless remains true that he has a strong case for relief from removal.

[2] The government also appears to argue that Mr. Farias Cornejo's Motion for a Preliminary Injunction has somehow undermined the arguments in favor of the subclass he represents.  Opp. at 1.  But the motion in no way reflects a retreat from the legal claims put forward on behalf of the class – namely that, in order to avoid the serious constitutional problems posed by prolonged mandatory detention under § 1226(c), the statute must not be construed as authorizing mandatory detention beyond six months.  In this Motion, Mr. Farias Cornejo simply raises an *additional* claim that his detention of *15* months is unlawful, and that the Court should grant a preliminary injunction both because he is more likely to prevail on that claim and because the equity factors strongly favor him in particular.

3

1   **I.     Mr. Farias Cornejo is Likely to Prevail on His Claim that His 15-Month**
2          **Detention Requires that the Government Provide a Bond Hearing to**
           **Justify His Prolonged Detention.**

3          Mr. Farias Cornejo's claim that he must receive a bond hearing because he has

4   suffered prolonged detention follows from controlling Ninth Circuit authority

5   construing the detention statute under which the government purports to detain him –

6   § 1226(c) – to not apply to prolonged detentions.  The government's alternative

7   suggestion – that the Court should conduct an individualized reasonableness

8   assessment to determine if § 1226(c) applies – is both contrary to this circuit's

9   authority, including the class certification decision in this case, and unsound because it

10  would waste judicial resources.

11         **A.     Mr. Farias Cornejo's detention is governed by § 1226(a)**
12                 **because § 1226(c)'s mandatory detention provision does not**
                   **authorize prolonged detention.**

13         The government continues to argue that § 1226(c) authorizes detention of any

14  length without a hearing, even though it is well aware that the Ninth Circuit has

15  rejected that view – repeatedly construing § 1226(c)'s mandatory detention provision

16  to apply only to "expeditious" removal proceedings due to the significant

17  constitutional concerns raised by prolonged detention without a hearing.  *Casas*, 535

18  F.3d at 948-49 (construing statute not to apply in cases where detainee has obtained

19  judicial review of his removal order because "prolonged detention without adequate

20  procedural protections would raise serious constitutional concerns" and holding that

21  "§ 1226(c) was intended to apply for only a limited time"); *Tijani v. Willis*, 430 F.3d

22  1241, 1242 (9th Cir. 2005) (holding that detention of two years, eight months in

23  absence of a bond hearing under § 1226(c) is "constitutionally doubtful" and therefore

24  construing statute to apply only to "expeditious" proceedings); *Nadarajah v.*

25  *Gonzalez*, 443 F.3d 106, 1075 (9th Cir. 2006) (construing *Demore* to permit only

26  "brief " detention under § 1226(c), "with a specific holding of a six-month period as

27

28

4

1    presumptively reasonable").[3]

2        As Petitioner explained in his Motion, *see* Mot. at 9-12, *Casas* already rejected

3    the government's argument that § 1226(c) applies to the prolonged detention of two

4    different groups of noncitizens – those whose removal orders had been stayed pending

5    judicial review, and those whose cases had been remanded after such judicial review.

6    535 F.3d at 948-49.  *Casas* recognized that, in *Demore*, the Supreme Court upheld

7    mandatory detention under § 1226(c) only for a "brief" period, "which the [Supreme]

8    Court emphasized typically 'lasts roughly a month and a half in the vast majority of

9    cases in which it is invoked, and about five months in the minority of cases in which

10   the alien chooses to appeal' his removal order."  *Id*. at 948 (quoting *Demore*, 538 U.S.

11   at 527-28); *id*. at 950 ("References to the brevity of mandatory detention under §

12   1226(c) run throughout *Demore*.").  Accordingly, the Court in *Casas* concluded that

13   once the detention of a noncitizen ceases to be expeditious, the authority to detain

14   "shifts" from § 1226(c) to § 1226(a).  *Id.* at 947-48.

15       Rather than address *Casas*, which is far and away the closest relevant authority

16   here, the government hides from it.  Remarkably, the government's only discussion of

17   *Casas* is in a footnote in which it asserts that it involved "a different issue than the one

18   presented here," but does not explain at all what the difference is.  As explained more

19   fully in Petitioner's opening brief, the constitutional concerns identified by *Casas* and

20   *Tijani* arise from prolonged detention without rigorous procedures, and therefore

21   apply at least as much to Mr. Farias Cornejo as to the petitioners in those cases.  *See*

22   Mot. at 14-15.  Therefore, as in *Casas*, the authority for Mr. Farias Cornejo's

23   

24   [3] The government's argument, which it mentions only briefly here but develops more
25   fully in its Rule 12(c) motion, is premised on its theory that pre-final order removal
     detention serves a statutory purpose and is therefore constitutional regardless of its
26   length.  But *Nadarajah v.Gonzalez* directly rejected that proposition, holding that §
     1225(b) does not authorize detention beyond six months where a noncitizen's removal
27   is not reasonably foreseeable – even though the noncitizen's case remained pending.
28   443 F.3d at 1080-81.

1   detention has "shifted" to § 1226(a), under which he is eligible for a bond hearing.

**B.   The government's position that a habeas court must make a reasonableness determination before ordering a bond hearing is contrary to the law of the circuit and a waste of judicial resources.**

The government argues in the alternative that even if Mr. Farias Cornejo's detention raises constitutional concerns, the Court can only order a bond hearing if it concludes that his prolonged detention is "unreasonable" based on the circumstances of his particular case.  *See* Opp. at 12-22.  But the government points to no Ninth Circuit authority endorsing this requirement, and in fact it is it is contrary to both the rationale of *Casas* and the instructions provided to this Court in *Rodriguez* itself.

In *Casas*, the Ninth Circuit held that "[b]ecause the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,' we hold that § 1226(a) must be construed as *requiring* the Attorney General to provide the alien with" a bond hearing at which the government bears the burden to justify detention.  *Casas*, 535 F.3d at 951 (emphasis in original).  The Ninth Circuit's emphasis that bond hearings are "required," and that they must be conducted by the "Attorney General," rather than by district courts entertaining habeas petitions, makes clear that the government must provide bond hearings in *every* case of prolonged detention, not just on a case-by-case basis.  Importantly, the Ninth Circuit did not state that the government is required to provide a bond hearing only after a federal court conducts a searching inquiry and determines that the length of a noncitizen's detention is "unreasonable."  Rather, the Ninth Circuit made clear that it is the government's duty affirmatively to provide such hearings, in order to ensure that prolonged detention is justified.

Further, *Casas* indicates that the trigger for a bond hearing is the length of detention, not the reasons for it: "We hold that the government may not detain a legal permanent resident such as Casas for a prolonged period without providing him a neutral forum in which to contest the necessity of his continued detention."  535 F.3d

6

at 949.  Thus, under Ninth Circuit law it is a "prolonged period" of detention – not "unreasonable" detention as the government argues here – that requires inquiry into the reasons that might justify that detention at a bond hearing before an IJ.  This conclusion is reinforced by the Ninth Circuit's consideration of length of detention in *Casas* and *Prieto-Romero*, a companion case decided the same day.  In both cases, the Ninth Circuit concluded that the petitioners' detention was "prolonged" without conducting any analysis into the reasons for the delay in their respective cases.  *Casas*, 535 F.3d at 948 ("Casas' nearly seven-year detention certainly qualifies as prolonged by any measure"); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) ("Prieto-Romero's more than three-year detention certainly qualifies as prolonged by any measure.").[4]

   Perhaps the strongest indication that this Court should not engage in the type of reasonableness review suggested by the government comes from the Ninth Circuit's instructions in this very case.  *See Rodriguez*, 591 F.3d at 1122-23.  There, the government argued, just as it does again now, that "the question of whether individual class members' detention may be continued without a bond hearing turns on . . . consideration of different factual circumstances."  *Id*. at 1122.  The Ninth Circuit rejected that view, holding that Petitioners could proceed with their claims on a class-wide basis in order to "facilitate development of a uniform framework for analyzing detainee claims to a bond hearing."  *Id*. at 1123.  The Court found that class treatment "would also benefit many of the putative class members by obviating the severe practical concerns that would likely attend them were they forced to proceed alone."  *Id*.  Although these statements were made in the context of class certification, they make perfectly clear the Ninth Circuit's preference for establishing a "uniform

---

[4] In *Prieto-Romero*, the Ninth Circuit ultimately denied relief because the petitioner had received three bond hearings, and the Court found that any error in placing the burden on him was harmless.  534 F.3d at 1066-67.  Here, Mr. Farias Cornejo has never received even a single bond hearing.

framework" for Immigration Judges to review the reasonableness of prolonged

detention in bond hearings, rather than requiring district courts to make those

determinations through individual, separately-filed habeas petitions.

The government states that a number of courts have rejected Petitioner's

argument and instead endorsed the case-by-case approach suggested by the

government, but this claim rests on a misreading of most of those decisions and, more

important, ignores that the Ninth Circuit has already rejected that approach.  In most

of the cited cases, the petitioners sought outright release, not a bond hearing, and

therefore the courts necessarily reviewed all of the circumstances of the petitioners'

cases, including the reasons for delay, rather than just the detention's length.[5]  While

*Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2004), declined to adopt a bright line rule of the

kind that Petitioners seek here, it did so based on its view that district courts, not

immigration courts, should supervise the reasonableness of prolonged detention by

entertaining habeas petitions.  *Id*. at 271-72.  But the Ninth Circuit has already

rejected that position, holding in *Casas* that the "Attorney General" is "require[d]" to

conduct bond hearings when detention is prolonged, and then that this Court must

---

[5] *See Segura v. Holder*, 2010 WL 3666759, * 8 (M.D.Pa. 2010) (petitioner claims that
due process requires his release); *Castellanos v. Holder*, No. 08-4665, 2009 WL
2138408, *5 (3d. Cir. 2009) (same); *Rodrigques v. Holder*, No. 09-1764, 2010 WL
830929, *1 (M.D. Pa. March 4, 2010) (petitioner "seeks release pending the decision
of the Board of Immigration Appeals (BIA)"); *Andreenko v. Holder*, 2010 WL
2900363, *1 (S.D.N.Y. June 25, 2010) (petitioner "seek[s] release on bail");
*Ovchinnikov v. Clark*, 543 F. Supp. 2d 1265, 1266, 1270 (W.D. Wash. 2008)
("Petitioner argues that he is entitled to release from detention" and observing that
petitioner in *Tijani* sought bond hearing).  The government also cites to the Ninth
Circuit's unpublished decision in *Agymenan v. INS Asst. Dir. Coachman*, 74 Fed.
Appx. 691 (9th Cir. 2003), which is impermissible under Ninth Circuit Rule 36-3(c)
("Unpublished dispositions and orders of this Court issued before January 1, 2007
may not be cited to the courts of this circuit").  Regardless, the case is inapposite
because it too considered a noncitizen's habeas petition seeking release, not a bond
hearing, and the decision was issued prior to the Ninth Circuit's published decision in
*Casas*.

8

1   develop a "uniform framework" for determining when those bond hearings should

2   take place, in order to avoid potentially hundreds or thousands of individual habeas

3   petitions.  Thus, while *Ly* instructs district courts to determine when detention is

4   *reasonable*, the Ninth Circuit has instead instructed this Court to decide only when it

5   is *prolonged*, leaving the reasonableness inquiry to be made instead by immigration

6   judges.  *Rodriguez*, 591 F.3d at 1123; *Casas*, 535 F.3d at 951.[6]

7       The government also supports its interpretation of § 1226(c) by arguing that

8   Justice Kennedy's concurrence in *Demore* and language from the Ninth Circuit's prior

9   decision in *Tijani* supports its approach, but these arguments are both meritless and

10  irrelevant.  Justice Kennedy stated that a bond hearing would be warranted if there

11  were "to be an unreasonable delay by the INS in pursuing and completing deportation

12  proceedings."  538 U.S. at 532.  When read in conjunction with the majority's

13  "specific holding of a six-month period as presumptively reasonable," *Nadarajah,* 443

14  F.3d at 1080 (construing *Demore*), Justice Kennedy's concurrence supports a finding

15  that a bond hearing is required after six months.[7]  Similarly, the government struggles

16  to find support for its case-by-case approach by reading between the lines of the *Tijani*

17  majority opinion.  The government asserts that it is "evident" from the decision that

18  the Court considered the reasons for the petitioner's lengthy delay when ordering the

19  bond hearing.  Opp. at 20-21.  But the majority opinion nowhere discusses them.  430

---

[6] The district court in *Alli v. Decker*, 644 F. Supp. 2d 535 (M.D. Pa. 2009) adopted the approach the government advances here.  However, that case is currently on appeal at the Third Circuit.

[7] The government repeatedly cites the fact that the petitioner in *Demore* was detained slightly more than six months – more than the "brief" period authorized under § 1226(c) – because he had requested a continuance.  538 U.S. at 530 n.14.  However, *Demore* considered a challenge to all mandatory detention under § 1226(c) regardless of its length, and did not address the constitutionality of that provision as applied to the particular detention length of any given detainee.  *Id*. at 513.  As the Ninth Circuit has held, *Demore* does not permit prolonged detention without a hearing.  *Casas*, 535 F.3d at 948.

1    F.3d at 1241.  To the contrary, the Ninth Circuit categorically concluded that "it is

2    constitutionally doubtful that Congress may authorize imprisonment of this duration

3    [two years, eight months] for lawfully admitted resident aliens who are subject to

4    removal."  *Id.*

5           Most important, the meaning of *Demore* and the sparse opinion in *Tijani* have

6    been clarified by *Casas*, which unambiguously establishes that the government is

7    "required" to hold a bond hearing in cases of "prolonged" detention, without regard to

8    the reasons for the delay, which are instead issues for resolution by the IJ.

9

10   **II.   Mr. Farias Cornejo Is Not Responsible for the Majority of His 15-Month Detention.**

11          As explained above, the reasoning of *Casas* dictates that Mr. Farias Cornejo

12   receive a bond hearing without regard to whether or not he is responsible for the

13   length of his detention.  His role in lengthening his detention and its relevance for

14   whether or not he should be released is for the IJ to determine at his bond hearing, not

15   for the government (or this Court) to pre-judge in advance of that hearing.

16   Nonetheless, the government's account of the causes of Petitioner's lengthy detention

17   is misleading.  Even if the Court concludes that the details of Mr. Farias Cornejo's

18   procedural history are relevant, it must find that his 15-month detention is

19   unreasonable and afford him a bond hearing.[8]

20          The government distorts the procedural history of Mr. Farias Cornejo's

21   immigration case by suggesting that he is responsible for virtually all of his 15-month

22

---

23   [8] Even assuming that the Court, rather than the IJ, should be assessing who is
     responsible for delay, it is clear under *Casas* that in order to find detention
24   unreasonably prolonged the Court need not hold that *the government* engaged in
     unreasonable delay.  Rather, if the delay is due to unavoidable circumstances such as a
25   detainee's eligibility for relief or the length of time needed to complete proceedings
     given backlogs, then it must treat the detention as "prolonged" for purposes of
26   assessing eligibility for a bond hearing.  *See Casas*, 535 F.3d at 945, 948 (holding that
     petitioner's detention was prolonged based on the length of detention, even though the
27   government had not unreasonably delayed proceedings).

28

1 detention.  The government's summary of the procedural history omits three critical

2 facts: first, that the ordinary process for applying for cancellation of removal in this

3 immigration court requires at least three hearings, and often more; second, that the

4 long length of continuances in Mr. Farias Cornejo's case – on average, roughly two

5 months – is entirely the result of the IJ's backlogged calendar; and third, that the last

6 four months of his detention have occurred despite his attorney being present and

7 willing to proceed on his case.  While the government is correct that the procedural

8 history reveals that Mr. Farias Cornejo's attorneys were not adequately prepared for

9 some of the earlier hearings, there is absolutely no evidence that Mr. Farias Cornejo

10 himself has engaged in "dilatory tactics" that would support a conclusion that he is a

11 flight risk or would otherwise justify his ongoing prolonged detention. [9]  In fact, the

12 government does not even argue that Mr. Farias Cornejo presents a flight risk, or a

13 danger for that matter, and that his prolonged detention is justified on that basis.

14        As the procedural history of Mr. Farias Cornejo makes clear, the process for

15 applying for cancellation in Mr. Farias Cornejo's immigration court takes three steps.

16 First, at a master calendar hearing, Mr. Farias Cornejo was determined to be

17 removable based on his controlled substance conviction but eligible for cancellation of

18 removal, and therefore given the cancellation application.  *See* Govt. Ex. 1, Track 1.[10]

19 Second, at a later hearing, Mr. Farias Cornejo submitted his application and was

20

21 _____

22 [9] Mr. Farias Cornejo's first attorney, Isabel O'Donnell, was fired shortly after taking on his case.  *See* Ex. 28 (Decl. of Marisa-Andrea Moore) at ¶ 7.

23 [10] The IJ is required to determine whether a noncitizen is eligible for relief from

24 removal and inform the noncitizen if he is eligible.  *See* 8 C.F.R. § 1240.11(a)(2) (requiring immigration judges to "inform the alien of his or her apparent eligibility to

25 apply for [relief from removal] and shall afford the alien an opportunity to make an application [for such relief] during the hearing . . . ."); *United States v. Muro-Inclan*,

26 249 F.3d 1180, 1183-84 (9th Cir. 2001) (holding that § 1240.11(a)(2)'s notice

27 requirement is "mandatory" because "if the record before the immigration judge raises a reasonable possibility of relief from deportation . . . it is a denial of due process to

28 fail to inform an alien of that possibility at the deportation hearing").

11

1    scheduled for a merits hearing.  *See* Govt. Ex. 1, Track 5.  The third step – the merits

2    hearing – has yet to occur, even though Mr. Farias Cornejo has twice been scheduled

3    for a merits hearing but had the hearing continued through no fault of his own.

4         Given this process, which Mr. Farias Cornejo obviously did not choose, the

5    government's statement that he is responsible for the entire delay after his first master

6    calendar hearing on December 15, 2009, is incorrect.  *See* Mot. 2.  Mr. Farias Cornejo

7    cannot be faulted for exercising his right to apply for cancellation and following the

8    process established by the immigration courts – a process that necessarily takes time.

9    *Cf. Diouf v. Mukasey*, 542 F.3d 1222, 1232 (9th Cir. 2008) (finding the petitioner's

10   "repeated[] and unsuccessful[] petitioning for relief before this court" to be "an alien's

11   good faith attempt to make use of legally available judicial review and remedies" not a

12   conspiracy or act to prevent his removal within the meaning of section 1231(a)(1)(C)).

13        Second, the government completely ignores that Mr. Farias Cornejo's 15-month

14   detention is due in large part to the IJ's backlogged calendar.  The average length

15   between hearings in his case has been roughly two months.  At multiple hearings, the

16   IJ observed that the lengthy delays were the result of his backlogged calendar.  Govt.

17   Ex. 1, Track 1 (stating on December 15, 2009, that the "next available date . . .

18   February 18, 2010"); Govt. Ex. 1, Track 3 (on February 19, 2010: "my next available

19   date is not until April 5, 2010"); Govt. Ex. 1, Track 4 (on April 5, 2010: "Well,

20   actually, unfortunately, I am not available until June 1, 2010.  That's my first available

21   date."); Govt. Ex. 1, Track 5 (on June 1, 2010: "My first available date for my

22   individual calendar would not be until August 13, 2010").  Indeed, at the April 5

23   hearing, Mr. Farias Cornejo's counsel requested an earlier date, but the IJ responded:

24   "Unfortunately not, you can always check with the clerk and see, but it's probably a

25   waste of your time, to be honest, because we're pretty, pretty booked."  Govt. Ex. 1,

26   Track 4.  Thus, even if Mr. Farias Cornejo's attorneys are responsible for some of the

27   hearings themselves, the length of time between them cannot be attributed to Mr.

28   Farias Cornejo.

12

Finally, the government's claim ignores the reasons for the last *four months* of detention in this case.  Mr. Farias Cornejo was prepared to move forward with his merits hearing on August 17, 2009, but the hearing has twice been continued through no fault of his own.  At the August 17 hearing, Mr. Farias Cornejo appeared with his counsel, ready to put on his case for cancellation.  At the outset of the hearing, the government attorney stated that she had done a background check that morning, which revealed no outstanding warrants, and that the government did not object to moving forward with the hearing.  Nonetheless, the IJ *sua sponte* raised concerns that Mr. Farias Cornejo had an outstanding warrant for burglary, even though the warrant he was concerned about did not name Mr. Farias Cornejo.[11]  While the IJ expressed some concern that it may not be in Mr. Farias Cornejo's interest to move forward with the cancellation hearing while the warrant remained outstanding, at the end of the hearing he clearly stated his concern that Mr. Farias Cornejo was not eligible for cancellation based on the warrant, and continued the merits hearing for that reason.  Govt. Ex. 1, Track 8.

Following the hearing, on September 22, 2009, Mr. Farias Cornejo's attorney submitted a motion explaining that the warrant does not involve him at all.  It is for a different person, under a name ("Smita Uday Shroff") that Mr. Farias Cornejo has never used as an alias.  Indeed, the fact that he never committed the crime in question is confirmed by the fact that the government's searches did not find the outstanding warrant under his name.  *See* Ex. 29.  Thus, the government is incorrect in suggesting that counsel failed to submit documents as required and that Mr. Farias Cornejo may not be eligible for cancellation of removal.  Opp. 12.

---

[11] The government asserts that Mr. Farias Cornejo's attorney provided minute orders which described the procedural history of the outstanding warrant.  However, Mr. Farias Cornejo's attorney has stated that it was in fact the government that provided the document in question.  *See* Ex. 29.  To the extent it is relevant (which it probably is not given that the warrant at issue does not involve Mr. Farias Cornejo at all), this is precisely the type of factual dispute which the IJ is best positioned to resolve.

Mr. Farias Cornejo was again prepared to move forward with his merits hearing on November 15, 2010, but the hearing was again continued through no fault of his own.  The government asserts that the continuance occurred because Mr. Farias Cornejo's counsel withdrew, but this is also incorrect.  In fact, in mid-October of 2010, Mr. Farias Cornejo's substituted counsel received a call from the IJ's clerk stating that his hearing was continued – without seeking counsel's consent or providing an opportunity to respond – even though counsel was fully prepared to move forward with his merits hearing as scheduled.  Ex. 28 (Moore Decl.) at ¶¶ 4, 5. The declaration submitted by the IJ's clerk confirms that the IJ *sua sponte* ordered the continuance because of "uncertainty whether the Respondent's case would go forward," and because the IJ had other complex matters scheduled for the hearing date that took "precedence" over Mr. Farias Cornejo's case, despite the fact that he had been detained for nearly a year at that point.   Opp. Ex 2.

In any event, the entire inquiry concerning who should bear the blame for Mr. Farias Cornejo's lengthy detention is a red herring for purposes of this Motion.  The IJ at the bond hearing he seeks – who likely would be the same IJ that has presided over his merits case – can examine the entire record of proceedings and determine, if so warranted, whether Mr. Farias Cornejo has engaged in dilatory tactics to prolong his detention because he is trying to avoid resolution of a meritless case.  If the Judge so concludes, he can find that Mr. Farias Cornejo presents a flight risk and must be detained notwithstanding the length of his detention.  It is telling that the government would prefer to litigate that question here, rather than raise its arguments in front of the IJ who is best able to evaluate them.

## III.   Mr. Farias Cornejo Will Suffer Irreparable Harm Absent the Injunction, the Balance of Hardships Tips Sharply in His Favor, and an Injunction is in the Public Interest.

Notably absent from the government's brief is any suggestion that he, as an individual, presents a danger or flight risk, let alone any explanation for how the government would be harmed by asking an IJ to decide whether Mr. Farias Cornejo

14

1 presents such a danger or flight risk.  Indeed, the government offers virtually no

2 argument in opposition to the equity factors in this case.  It does not dispute that

3 Petitioner is suffering immense harm in the form of a prolonged deprivation of liberty,

4 and that the cost to the government of complying with the requested relief is minimal.

5 And while the government does make a general claim that Congress did not want to

6 release people subject to detention under § 1226(c), *see* Opp. at 14-15, it does not

7 argue that Mr. Farias Cornejo himself presents a danger or flight risk sufficient to

8 justify his lengthy detention.

9        The government also does not dispute that Mr. Farias Cornejo is a longtime

10 lawful permanent resident who came to the United States with his parents when he

11 was still an infant, that he has extremely strong family ties – his entire family,

12 including his fiancé, resides in the United States as either citizens or lawful permanent

13 residents – and a successful work and school history.  Dkt. # 101, Ex. 24 (Decl. of

14 Jose Farias Cornejo of Oct. 12, 2010) at ¶ 4.  His criminal history, while not

15 insignificant, is relatively minor, and he has committed to rehabilitating himself.  *Id.*

16 at ¶ 6.  Indeed, his 15-month immigration detention has already been significantly

17 longer than the time he spent in criminal custody.  Mr. Farias Cornejo's strong

18 cancellation claim gives him every incentive to appear for proceedings and thereby

19 preserve his right to reside lawfully with his family in the only country he has ever

20 known.

21        In response to Mr. Farias Cornejo's claim that the equities tip in his favor

22 because he will very likely win his application for cancellation of removal, the

23 government now contends that it never stated that it would not oppose the application

24 for cancellation of removal.  In making this argument, the government reverses the

25 position it took earlier in this very case.  *Compare* Resp't Answer ¶ 19 ("Respondents

26 admit that the government has not opposed the application for cancellation of

27 removal") *with* Opp. 2 (stating that it is "demonstrably, unquestionably wrong" that

28 the "Government will not oppose cancellation").  The government attempts to

reconcile its conflicting positions by claiming that its prior concession meant only that "it did not raise objections to Cornejo filing an application seeking cancellation." Opp. 2. However, there is no way for the government to object to a "filing." If the government means to say that it conceded that Mr. Farias Cornejo is "eligible" for cancellation but will oppose him on whether he deserves a discretionary grant, it should simply admit that its position has changed. Instead, the government would have the Court believe that experienced immigration counsel did not know the difference between eligibility for discretionary relief and an exercise of that discretion – an unlikely claim given that the distinction runs throughout immigration law and is obviously a central issue in nearly all cancellation cases. *See generally INS v. St. Cyr*, 533 U.S. 289, 307 (2001). ("Traditionally, courts recognized a distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other").

While the government is correct that the prosecuting immigration attorney never stated on the record that the government did not oppose the cancellation application, this omission is unsurprising at this stage because the merits hearing has not occurred yet. However, counsel undersigned was told in clear terms by both Mr. Farias Cornejo's prior immigration attorney and Mr. Farias Cornejo himself, prior to the filing of this Motion, that the government had stated its intention not to oppose a grant of cancellation in Mr. Farias Cornejo's favor. *See* Ex. 30 (Decl. of Ahilan Arulanantham of December 20, 2010) at ¶¶ 4, 5.

In any event, whether or not the government has formally decided not to oppose his request for cancellation of removal, it nowhere disputes that Mr. Farias Cornejo is a strong candidate for cancellation based on the equities in his case, and is very likely to obtain relief, entitling him to remain in the United States as a lawful permanent resident. If he is likely to ultimately win his case and remain, the government has absolutely no interest in continuing to detain him.

Under these circumstances, controlling Ninth Circuit law requires that an IJ at

16

least consider him for release.  Because he is clearly entitled to that modest form of relief, the Court should grant the preliminary injunction and order Respondents to schedule Mr. Farias Cornejo for a bond hearing before an IJ as soon as possible, and to direct the IJ to grant him release on bond unless the government shows that his continued detention is justified based on danger or flight risk.  *See* Mot. at 5-6 (setting forth criteria for bond hearing under governing law).

Respectfully submitted,

Dated:  December 20, 2010

  s/ Ahilan T. Arulanantham
AHILAN T. ARULANANTHAM
Attorney for Petitioners

17