PETER J. ELIASBERG (SBN 189110)
Email: peliasberg@aclu-sc.org
AHILAN T. ARULANANTHAM (SBN 237841)
Email: aarulanantham@aclu-sc.org
MICHAEL KAUFMAN (SBN 254575)*
Email: mkaufman@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Tel: (213) 977-5211
Fax: (213) 977-5297

**Attorneys for Petitioners**
(Additional counsel listed on following page)

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, et al., | Case No. CV 07- 3239-TJH (RNBx) |
| Petitioners, | **PETITIONERS' OPPOSITION TO RESPONDENTS' 12(c) MOTION FOR JUDEMENT ON THE PLEADINGS** |
| vs. | |
| TROY ROBBINS, et al., | Honorable Terry J. Hatter |
| Respondents. | Hearing Date:  January 31, 2011 |
| | Hearing Time:  UNDER SUBMISSION |
| | Complaint Filed: 5/16/2007 |

1 | Additional Counsel:

2 | JUDY RABINOVITZ
AMERICAN CIVIL LIBERTIES FOUNDATION
3 | IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
4 | New York, NY 10004
Telephone: (212) 549-2618
5 | Facsimile: (212) 549-2654

6 | JAYASHRI SRIKANTIAH (SBN 189566)
STANFORD LAW SCHOOL
7 | IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
8 | 559 Nathan Abbott Way
Stanford, CA 94305-8610
9 | Telephone: (650) 724-2442
Facsimile: (650) 723-4426
10 |
SEAN COMMONS (SBN 217603)*
11 | WILLIAM TRAN (SBN 245104)
BRIAN K. WASHINGTON (SBN 248960)
12 | SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
13 | Los Angeles, California  90013-1010
Telephone: (213) 896-6000
14 | Facsimile: (213) 896-6600

15 | *Notice of Appearance forthcoming

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

INTRODUCTION ................................................................................... 1

3

4

I.  STATEMENT OF FACTS THAT THE COURT MUST TAKE AS TRUE ......... 4

5

II.  THE COURT MUST CONSTRUE THE DETENTION STATUTES
TO REQUIRE A RIGOROUS BOND HEARING, IN LIGHT OF THE

6

SERIOUS CONSTITUTIONAL PROBLEMS THAT WOULD
OTHERWISE RESULT ...................................................................... 8

7

8

    A.  Controlling Ninth Circuit Case Law Makes Clear
    That Prolonged Immigration Detention Absent Adequate
    Procedures Raises Serious Constitutional Problems......................... 9

9

10

    B.  All of the Detention Statutes Must Be Construed to
    Avoid the Serious Constitutional Problem Posed by Class
    Members' Prolonged Detention Without Adequate Procedures ................... 10

11

12

    C.  Caselaw from Analogous Contexts Establishes That Due
    Process Prohibits Prolonged Detention Absent Rigorous
    Hearing Procedures ................................................ 13

13

14

III.  THE GOVERNMENT'S ARGUMENTS AGAINST A SIX
MONTH RULE ARE FUNDAMENTALLY MISCONCEIVED AND,

15

IN ANY CASE, IRRELEVANT BECAUSE THIS COURT CAN
ORDER CLASSWIDE RELIEF EVEN WITHOUT ADOPTING

16

SUCH A RULE ............................................................................... 16

17

    A.  Petitioners' Complaint Does Not Rise or Fall on Their
    Six Month Claim, as this Court can Order Class-Wide Relief

18

    Regardless of Whether it Adopts a Six Month Rule ...................................... 17

19

    B.  The Government's Proposal for Case-by-Case Determinations
    as to Whether Detention is Reasonable is Inconsistent with

20

    Controlling Law, Including the Instructions Provided by the
    Ninth Circuit in This Case ........................................................................ 18

21

    C.  The Six Month Rule Is Well-Grounded In the Canon of
    Constitutional Avoidance and Supreme Court and Ninth

22

    Circuit Precedent ......................................................................... 21

23

24

IV.  THE GOVERNMENT'S ARGUMENTS WITH RESPECT TO
THE INDIVIDUAL SUBCLASSES ARE WHOLLY WITHOUT MERIT ............ 24

25

    A.  Respondents Have Not Established that the Section 1225(b)

26

    Subclass Cannot Prevail as a Matter of Law .................................................. 24

27

        1.  This Court has jurisdiction to hear petitioners'
        legal challenge to the adequacy of the parole procedures .................... 26

28

i

    2.  Section 1225(b) does not preclude this Court from
ordering bond hearings before the IJ ..................................................... 26

    3.  Non-admitted aliens have due process rights against
prolonged detention without constitutionally adequate hearing........... 28

B.  Respondents Have Not Established that the Section 1226(c)
Subclass Cannot Prevail as a Matter of Law .................................................. 29

C.  Respondents Have Not Established that the Section 1231(a)
Subclass Cannot Prevail as a Matter of Law .................................................. 33

D.  Respondents Have Not Established that the Section 1226(a)
Subclass Cannot Prevail as a Matter of Law .................................................. 36

V.  RESPONDENTS HAVE NOT ESTABLISHED THAT BOND
HEARINGS PROVIDED TO CLASS MEMBERS ARE
CONSTITUTIONALLY ADEQUATE AS A MATTER OF LAW ....................... 39

A.  The Government Has Not Established as a Matter of
Law that Due Process Does Not Require Notice of the
Bond Hearing and a Bond Hearing Transcript ............................................... 40

B.  The Government Has Not Established as a Matter of Law
that Due Process Does Not Require that the Government Bear
the Burden to Establish Flight Risk or Danger By Clear and
Convincing Evidence ....................................................................................... 42

C.  The Government Cannot Demonstrate as a Matter of Law
that Detention is Only Permitted Where No Conditions of
Release Could Reasonably Assure the Detainee's Presence in
the Event of Removal or to Protect the Community From
Serious Danger ................................................................................................ 44

    1.  Detention is only permitted where no other
alternatives will prevent danger or flight risk ...................................... 44

    2.  The determination of whether prolonged detention is
justified must consider the length of past detention and
likely length of future detention ........................................................... 45

D.  The Government Has Not Established that Petitioners'
Right to Appointed Counsel Claim Fails as a Matter Of Law........................ 46

CONCLUSION ................................................................................................. 48

ii

1

# TABLE OF AUTHORITIES

2

3

**CASES**

4

*Addington v. Texas,*
5
    441 U.S. 418 (1979).........................................................................42, 43, 44
6

*Alli v. Decker,*
    635 F. Supp. 2d 535 (M.D. Pa. 2009)..............................................24
7

8
*Alvarez-Garcia v. Ashcroft,*
    378 F.3d 1094 (9th Cir. 2004).........................................................29
9

10
*Barrera-Echavarria v. Rison,*
    44 F.3d 1441 (9th Cir. 1995) (en banc) ...........................................30
11

12
*Barrett v. Belleque,*
    544 F.3d 1060 (9th Cir. 2008)..........................................................4
13

14
*Bergerco U.S.A. v. Shipping Corp. of India, Ltd.,*
    896 F.2d 1210 (9th Cir. 1990).........................................................41
15

16
*Califano v. Yamasaki,*
    442 U.S. 682 (1979).......................................................................14
17

18
*Camins v. Gonzales,*
    500 F.3d 872 (9th Cir. 2007)......................................................11, 28
19

*Casas-Castrillon v. Dept of Homeland Security,*
    535 F. 3d 942 (9th Cir. 2008)...................................................*passim*
20

21
*Cheff v. Schnackenberg,*
    384 U.S. 373 (1966) ......................................................................23
22

23
*Clark v. Martinez,*
    543 U.S. 371 (2005).................................................................*passim*
24

25
*Cooper v. Oklahoma,*
    517 U.S. 348 (1996).......................................................................42
26

27
*County of Riverside v. McLaughlin,*
    500 U.S. 44 (1991)....................................................................15, 23
28

*Dada v. Mukasey,*
    128 S. Ct. 2307 (2008)...................................................................35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Demore v. Kim,*
   538 U.S. 510 (2007)............................................................................*passim*

*Diouf v. Holder,*
   No. 06-7452, 2009 WL 6331130 (C.D. Cal. Sept. 9, 2009)...................... 34, 35

*Doss v. South Central Bell Telephone Co.,*
   834 F.2d 421 (5th Cir.1987).........................................................................17

*Draper v. Washington,*
   372 U.S. 487 (1963)....................................................................................41

*F.T.C. v. Affordable Media,*
   179 F.3d 1228 (9th Cir. 1999)......................................................................43

*Foucha v. Louisiana,*
   504 U.S. 71 (1992)................................................................................13, 43

*Goldberg v. Kelly,*
   397 U.S. 254 (1970)....................................................................................14

*Idema v. Dreamworks, Inc.,*
   162 F. Supp. 2d 1129 (C.D. Cal. 2001).................................................16, 17

*In re Gault,*
   387 U.S. 1(1967)........................................................................................47

*In re Grand Jury Proceedings,*
   468 F.2d 1368 (9th Cir. 1972)......................................................................48

*Jean v. Nelson,*
   472 U.S. 846 (1985)....................................................................................12

*Jones v. Blanas,*
   393 F.3d 918 (9th Cir. 2004)........................................................................45

*Kansas v. Hendricks,*
   521 U.S. 346 353 ........................................................................................14

*Kwai Fung Wong v. United States,*
   373 F.3d 952 (9th Cir. 2004)..................................................................29, 30

*Kwong Hai Chew v. Colding,*
   344 U.S. 590 (1953 .....................................................................................27

iv

*Landon v. Plasencia*,
   459 U.S. 21 (1982................................................................28

*Lassiter v. Dept. of Soc. Servs.*,
   452 U.S. 18 (1981)...............................................................47

*Ly v. Hansen*,
   351 F.3d 263 (6th Cir. 2004)...............................................24

*Maharaj v.Ashcroft*,
   295 F.3d 963 (9th Cir. 2002)...............................................36

*Manimbao v. Ashcroft*,
   329 F.3d 655 (9th Cir. 2003)...............................................14

*Martinez v. Gonzalez*,
   CV06-7609 (C.D. Cal. Jan. 4, 2007) ...................................40

*Matter of Guerra*,
   24 I. & N. Dec. 37 (BIA 2006)...........................................45

*Matter of Joseph*,
   22 I. & N. Dec. 799 (BIA 1999)..........................................30

*Matter of Werner*,
   25 I&N Dec. 45 (BIA 2009) ................................................39

*Matter of X-K*,
   25 I&N Dec. 731 (BIA 2005) .............................................27

*Mau v. Chertoff*,
   562 F.Supp.2d 1107 (S.D. Cal. 2008) ................................41

*Mayer v. City of Chicago*,
   404 U.S. 189 (1971)...........................................................41

*Memphis Light, Gas and Water Division v. Craft*,
   436 U.S. 1 (1978)................................................................14

*Nadarajah v. Gonzales*,
   443 F.3d 1069 (9th Cir. 2006)...................................*passim*

*Norwalk CORE v. Norwalk Redevelopment Agency*,
   395 F.2d 920 (2nd Cir. 1968).............................................18

*Ontiveros-Lopez v. INS,*
    213 F.3d 1121 (9th Cir. 2000)...........................................................35

*Prieto-Romero v. Clark,*
    534 F.3d 1053 (9th Cir. 2008)....................................................19, 38

*Reynoso-Rodriguez v. Napolitano,*
    No. CIV S-08-321, 2009 WL 3157477 (E.D. Cal. Sept. 28, 2009)...................44

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2009).................................................*passim*

*Rosales-Garcia v. Holland,*
    322 F.3d 386 (6th Cir. 2003) (en banc) ......................................29, 30

*Shatzer v. Maryland,*
    130 S. Ct. 1213 (2010).................................................................23

*Shaughnessy v. United States ex rel. Mezei,*
    345 U.S. 206 (1953).....................................................................30

*Smith v. Richards,*
    569 F.3d 991 (9th Cir. 2009)........................................................43

*Sidhu v. Chertoff,*
    No. 1:07-cv-00947, 2009 WL 900734, (E.D. Cal. March 31, 2009)...............27

*Spallone v. U.S.,*
    493 U.S. 265 (1990)....................................................................45

*Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.,*
    368 F.3d 1053 (9th Cir. 2004).......................................................6

*Tijani v. Willis,*
    430 F.3d 1241 (9th Cir. 2005)................................................*passim*

*United States v. Aileman,*
    165 F.R.D. 571 (N.D. Cal. 1996) ............................................45, 46

*United States v. James Daniel Good Real Prop.,*
    510 U.S. 43 (1993).....................................................................40

*United States v. Motamedi,*
    767 F.2d 1403 (9th Cir. 1985)......................................................43

vi

*United States v. Salerno,*
    481 U.S. 739 (1987)..........................................................................13, 43, 45

*Vitek v. Jones,*
    445 U.S. 480 (1980)..........................................................................47

*Walker v. McLain,*
    768 F.2d 1181 (10th Cir. 1985).......................................................47

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998).........................................................48

*Woodby v. INS,*
    385 U.S. 276 (1966)..........................................................................43

*Xi v. INS,*
    298 F.3d 832 (9th Cir. 2001)...........................................................30

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)...................................................................*passim*


STATUTES

8 U.S.C. § 1101(a)(13)(C)......................................................................28

8 U.S.C. § 1225(b)(2) .............................................................................25

8 U.S.C. § 1182(d)(5)(A) ........................................................................27

8 U.S.C. §1225(b).............................................................................*passim*

8 U.S.C. § 1225(b)(1)(A)(iii)(II)............................................................28

8 U.S.C. § 1226(a) ...........................................................................*passim*

8 U.S.C. § 1226(c) ...........................................................................*passim*

8 U.S.C. § 1231(a) ...........................................................................*passim*

8 U.S.C. § 1231(a)(6).................................................................9, 12, 29

18 U.S.C. § 3142(f).................................................................................43

18 U.S.C. § 3142(c)(1)(B) ......................................................................45

1

18 U.S.C. § 3142(e) .................................................................45

2

18 U.S.C. § 3142(g)(3) ............................................................14

3

4

5

**REGULATIONS**

6

8 C.F.R. § 1003.19 ..................................................................27

7

8 C.F.R. § 1003.19(h)(2)(i)(D) ...............................................39

8

8 C.F.R. § 1236.1(c)(3) ...........................................................39

9

8 C.F.R. § 1236.1(c)(11) .........................................................39

10

11

8 C.F.R. § 1001.1(q) ...............................................................28

12

8 C.F.R. § 1003.19(h)(2)(I) .....................................................27

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

In its Rule 12(c) motion, the government faces the daunting task of showing that, even if all the factual allegations in Petitioners' complaint are assumed to be true, it must still prevail as a matter of law. This means the government must show that there is no serious constitutional problem with the existing detention procedures even if we *assume* that those procedures lead to the incarceration, for years, of people who present no danger to the community and no risk of flight, and who have strong immigration cases that many of them will ultimately win.

Accepting the above allegations as true – as this Court is required to do -- the government's Rule 12(c) motion fails. Supreme Court and Ninth Circuit precedent require this Court to construe the detention statutes here to avoid the serious constitutional problems that would otherwise result from the prolonged detention of class members. The Ninth Circuit has already held that "prolonged detention without adequate procedural protections would raise serious constitutional concerns," *Casas-Castrillon v. Dept of Homeland Security*, 535 F. 3d 942, 950 (9th Cir. 2008). In light of these concerns, *Casas* construed the immigration detention statute at issue in that case to require a bond hearing where the government bore the burden to justify prolonged detention. *Id*. at 950. Because virtually identical constitutional problems are raised by the government's prolonged detention of class members under each of the detention statutes at issue in this case, and because the government has not even attempted to show that the applicable statutes cannot be construed to avoid these problems, it cannot prevail on its Rule 12(c) motion. *See infra* Section II.

In its motion, the government scarcely defends the legality of the existing system, focusing instead on refuting the claim that detention without an adequate hearing at six months for each and every class member would violate the Due Process Clause. Mot. at 1. But Petitioners' primary argument is not that each and every class member has an across-the-board due process right to such a hearing at six months, instead they argue that the immigration statutes should be *construed* to require such

1

hearings for all class members at six months in order to avoid serious constitutional problems that arise in at least some class members' cases.  As the Supreme Court made clear in *Clark v. Martinez*, 543 U.S. 371 (2005), a case that the government fails even to cite, the canon of constitutional avoidance requires a court to construe a statute to avoid constitutional problems, even if those problems do not apply to all persons subject to the statute.  Thus, the fact that not all class members have the same *due process* entitlement to a hearing does not mean that they have no right to such a hearing under a proper construction of *the statute*.  Reading the statutes to require such hearings whenever detention exceeds six months is simply the most reasonable way to avoid the serious constitutional problems present in some cases arising under each statute, given existing Supreme Court and Ninth Circuit authority.  *See infra*. Section II.

More important for present purposes, even if the Court disagrees with Petitioners' proposed six-month limitation, the complaint cannot be dismissed merely because the Court concludes that there is no right to such a hearing after six months' detention.  As long as there is *some* relief that the Court can grant, it must deny the Rule 12(c) motion.  Thus, if the statutes should be read to require a hearing at one year, or based on some other criteria, the Court can still remedy the violation that Petitioners have alleged, which is simply that "prolonged" detention requires "constitutionally-adequate" (or "rigorous" or "adequate") hearings.  *See* dkt. # 11, Third Amended Complaint (hereinafter "TAC") ¶¶ 125, 127.  As long as serious constitutional problems are raised by the government's incarceration of class members without procedures that accurately assess their danger or flight risk, this Court can order class-wide relief even without construing the detention statutes to include an implicit six month hearing requirement.  *See infra* Section II.A.

Indeed, the government's insistence that classwide relief is inappropriate, even while simultaneously conceding that in certain situations prolonged detention without a hearing would likely violate due process, ignores the concerns articulated by the

Ninth Circuit when it reversed this Court's denial of class certification. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1115 (9th Cir. 2009) (emphasizing the importance of developing "a uniform framework for analyzing detainee claims to a bond hearing," one that would not only "render management of these claims more efficient for the courts," but would also "benefit many of the putative class members by obviating the severe practical concerns that would likely attend them were they forced to proceed alone."); *id.* at 1124 ("the District Court should not lose sight of the overarching issue: The circumstances, if any, that warrant prolonged detention without [a] hearing."). *See infra* Section III.B.

The government makes a number of other arguments that are specific to each subclass, almost all of which are meritless under existing Ninth Circuit precedent, particularly given that each statute at issue authorizes the detention of people who have resided here as lawful permanent residents, who unquestionably have due process rights.

With respect to Section 1225(b), the Ninth Circuit has already construed it, in keeping with *Clark*, to authorize only "brief and reasonable" detention because it applies to lawful permanent residents as well as arriving aliens. This definitively refutes the government's argument that the existing procedures are sufficient because detainees in this subclass have no due process rights. *See infra* Section IV.A.

Likewise, with respect to Section 1226(c), the Ninth Circuit has also already construed it to apply only to "expeditious" removal proceedings in order to avoid the serious constitutional problems arising from prolonged mandatory detention. The government's arguments as to that statute are really arguments against controlling precedent, which this Court is bound to follow. *See infra* Section IV.B.

With respect to Section 1231(a), the government argues only that this Court's prior decision in *Diouf* controls the outcome. However, this Court's decision was limited to the facts of Mr. Diouf's case. Assuming the facts alleged here – that the existing administrative custody review procedures result in the prolonged detention of

3

1  individuals who pose no danger or flight risk and many of whom will ultimately

2  prevail in their removal cases -- the principles established by the Ninth Circuit in

3  *Casas* and other cases dictate that the Court must construe Section 1231(a) to require

4  rigorous hearings.  *See infra* Section IV.C.

5  Finally, with respect to Section 1226(a), the government makes arguments

6  against the particular named class representatives.  But the government has waived

7  these arguments by already conceding that the class representatives are adequate.

8  Apart from this, the government merely argues that bond hearings are already

9  provided to 1226(a) class members and that these hearing satisfy due process, even

10  though they provide no automatic hearing when detention becomes prolonged, place

11  the burden on the detainee, take no account of length of detention or alternative

12  conditions of release that might alleviate the need for detention, force indigent

13  detainees to proceed without the assistance of counsel, and suffer from various other

14  defects.  Such deficient procedures do not constitute the type of rigorous hearing the

15  Supreme Court has required to justify prolonged detention in every other context,

16  where established due process standards require proper notice, transcription of

17  proceedings, a "clear and convincing evidence" burden of proof, a standard that

18  requires consideration of alternatives to incarceration, and appointed counsel.  *See*

19  *infra* Section V.

20
21  **I.    STATEMENT OF FACTS THAT THE COURT MUST TAKE AS TRUE.**

22  In deciding the government's Rule 12(c) motion, the Court must assume the

23  truth of all facts in Petitioners' complaint and all inferences that can reasonably be

24  drawn from those facts.  *See Barrett v. Belleque*, 544 F.3d 1060, 1061 (9th Cir. 2008)

25  ("[f]actual allegations in the complaint are taken as true and all reasonable inferences

26  are drawn in the plaintiff's favor").  Here, that standard requires the Court to assume

27  as true the following material facts and resulting inferences:

28  •     The government has a policy and practice of detaining hundreds of people in

4

the Central District of California, for *years*, while their immigration cases remain pending.[1]

- Many class members detained for years *do not present a danger or flight risk*, thus rendering their detention unnecessary to protect the community or ensure their appearance at removal proceedings or for removal itself.[2]

- Many class members *will ultimately prevail* in their removal cases, thus rendering wholly unnecessary detention for the purpose of effectuating their removal.[3]

- The government's existing procedures do not accurately determine whether class members pose a danger or flight risk or whether they are likely to win their cases, and therefore class members do not receive an *accurate* hearing to determine whether continued detention is necessary.[4]

---

[1] *See, e.g.*, TAC at ¶ 5 (Petitioner Rodriguez detained over three years); id. at ¶¶ 64, 71 (Petitioner Perez Ruelas detained 17 months).

[2] *See, e.g.*, TAC ¶ 9; *id.* at ¶¶ 15, 16 (Petitioners Farah and Abdikadir have no criminal history); *id.* at ¶¶ 64, 71 (Petitioner Perez Ruelas detained nearly ten times the length of his longest criminal sentence, two months).

[3] *See, e.g.*, TAC ¶ 44 (explaining that Petitioner Rodriguez will "likely" be granted cancellation); *id.* at ¶ 76 (explaining that Petitioner Perez Ruelas is "entitled to adjust status immediately and will no doubt ultimately prevail in his immigration case"); *id.* at ¶ 87 ("the government stated that it had no objection to [Petitioner Farias Cornejo's] application" for cancellation of removal).

[4] Throughout their motion, the Respondents defend their existing procedures as constitutionally sufficient because they purport to accurately distinguish between those who should and should not be released on bond. *See, e.g.*, Mot. 18, 36, and 37. However, the factual allegations in the complaint, which must be taken as true, assert that Respondents' existing procedures – parole under section 1225(b), bond hearings under section 1226(a), and post-order custody reviews ("POCR") under section 1231(a) – fail to identify people who do not present a danger or flight risk, routinely leading to the unnecessary and prolonged detention of countless people while their immigration cases remain pending.

5

- None of the government's procedures for any of the subclasses require decision-makers to consider whether alternatives to detention would adequately serve the government's interests, or to consider length of detention as a factor in determining whether release is appropriate after it has become prolonged. *Id.* at ¶ 17.[5]

A description of the existing procedures as described in the complaint reveals just how high the government's hurdle is in this Motion.

Members of the Section 1226(c) subclass, which forms roughly half of the class as a whole, *see* dkt. # 101, Ex.26 [Stark Decl. ¶ 15], receive *no* procedures to review their detention, regardless of its length. Thus, Respondents continue to detain class members like Petitioner Farias Cornejo – who falls under Section 1226(c) due to relatively minor drug convictions – for prolonged periods (in his case, more than 15 months), even though he is a long time lawful permanent resident with strong family ties and successful school and work history. *Id.* at ¶¶ 78-80.[6]

---

[5] Subclass members detained under Section 1225(b) and Section 1231(a) can file for "paper" redeterminations based on changed circumstances, but those redeterminations will occur under the same standard as the original denials, notwithstanding the length of detention. *See, e.g.*, *id.* at ¶ 62. Subclass members under Section 1226(c) are the worst off in this respect; under the existing system they cannot seek release no matter how long they are detained.

[6] Petitioners present this example and others like it as illustrative, however the government would gain nothing for purposes of this motion by countering them with a contrary version of the facts and circumstances surrounding any given class member. Because the allegations in the complaint and reasonable inferences from them must be taken as true, the Court must assume that class members with similarly-sympathetic factual histories exist, and that they are subject to prolonged detention under the existing system. In the event that the Court is not ready to accept this inference from the representative examples provided in the Complaint, it should allow Petitioners to amend the complaint to clarify any ambiguity. *See Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.").

6

1    Members of the Section 1225 subclass also receive extremely minimal

2 procedures notwithstanding their lengthy detention.  For these individuals, the

3 decision whether or not to release an individual is made by a single officer, with no

4 appeal process, and without providing an in-person hearing of any kind.  TAC ¶ 51.

5 Decisions can be rendered by checking a box on a form that contains no specific

6 explanation.  *Id.* at ¶¶ 51, 61.  For example, Petitioner Abdikadir was denied parole

7 without any meaningful explanation, despite the fact that he has no criminal history, a

8 sponsor in San Diego willing to house him, and an extremely strong case for asylum.

9 *Id.* at ¶ 16.

10    The subclass incarcerated under Section 1231(a) receive only slightly more

11 process, and it too is wholly inadequate to assess their danger or flight risk.  They

12 receive POCR reviews, which are conducted without a hearing or even an in-person

13 interview, and often without adequate notice.  At most, these subclass members can

14 submit only a questionnaire with information on their family members, employment

15 experience, and any outstanding probation requirements.  *Id.* at ¶ 42.  Decisions are

16 rendered on a one-page notice that frequently provides no meaningful explanation of

17 the reason for continued detention.  *Id.*

18    Section 1226(a) subclass members are the only class members who do receive

19 bond hearings, but they receive notice about them only at the outset of their detention,

20 so that most have no knowledge as to whether they can seek a new hearing after

21 months or years have passed.  In addition, these hearings are not transcribed and place

22 the burden on detainees to demonstrate that they are not a danger or flight risk.   For

23 example, Petitioner Perez Ruelas has had several bond proceedings at which he bore

24 the burden.  *Id.* at ¶ 17.  Initially, he was denied bail entirely, even though the IJ knew

25 that he had a pending adjustment application based on his marriage to a United States

26 citizen.  *Id.* at ¶ 73.  After the IJ later set bond at $5,000, an amount too high for him,

27 the IJ refused to reduce the bond amount, even after being informed that Mr. Perez

28 Ruelas' application to adjust had been granted – all but ensuring that he will remain in

7

1  the United States as a lawful permanent resident.  *Id*. at ¶ 74; dkt. # 101, Ex. 23 (Perez

2  Ruelas decl. ¶ 11).

3

4  **II.    THE COURT MUST CONSTRUE THE DETENTION STATUTES TO REQUIRE A RIGOROUS BOND HEARING, IN LIGHT OF THE SERIOUS CONSTITUTIONAL PROBLEMS THAT WOULD OTHERWISE RESULT.**

5

6         Controlling Ninth Circuit and Supreme Court precedent make clear that

7  prolonged detention under any of the statutes at issue in this case is "constitutionally

8  doubtful" in the absence of adequate procedures to determine that detention is actually

9  necessary.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1115 (9th Cir. 2010) (quoting *Casas*,

10  535 F.3d at 951); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) ("it is

11  constitutionally doubtful that Congress may authorize imprisonment of this duration

12  for lawfully admitted resident aliens who are subject to removal").

13         Because of these constitutional problems, the Court must construe each of the

14  detention statutes at issue to require a constitutionally adequate hearing, just as the

15  Ninth Circuit did in *Casas* and *Tijani*.  Courts are obligated to construe statutes to

16  avoid raising serious constitutional concerns, as long as such a construction is "fairly

17  possible."  *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).  Here, each of the detention

18  statutes at issue applies to at least some "admitted aliens" who have resided here as

19  lawful permanent residents.  Because prolonged immigration detention without

20  rigorous review of such individuals' detention would raise serious constitutional

21  problems under any of the detention statutes at issue here, this Court must construe

22  each statute to require a rigorous hearing whenever detention becomes prolonged.

23         Crucially for purposes of Petitioners' argument in this case, courts must apply

24  the canon of constitutional avoidance when *any* application of a statute raises a

25  constitutional problem, even if that problem does not arise as to the particular detainee

26  whose case is before the court.  *Clark*, 543 U.S. at 378 (construing Section 1231(a) to

27  bar indefinite detention of "inadmissible aliens" without addressing whether their

28  detention raises constitutional problems because "[t]he operative language of §

8

1231(a)(6) . . . applies without differentiation to all three categories of aliens that are its subject.  To give these same words a different meaning for each category would be to invent a statute rather than interpret one."); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1077 n.3 (9th Cir. 2006) (construing Section 1225(b) to authorize only "brief and reasonable" detention of an "inadmissible alien" because "[s]ome admissible aliens are likely detained pursuant to these provisions . . . : if admitted aliens can only be detained for a reasonable period, and admissible aliens may be detained pursuant to this statutory provision, then the statute can only authorize a limited detention.").

Finally, if the Court declines to interpret the statutes here to avoid the constitutional problem, it must then reach the constitutional question, and hold that due process requires that each class member receive a rigorous hearing when detention has become prolonged.  Nowhere in our legal system does the law permit such massive deprivations of liberty based on the minimal procedures the government defends here.[7]

**A.    Controlling Ninth Circuit Case Law Makes Clear That Prolonged Immigration Detention Absent Adequate Procedures Raises Serious Constitutional Problems.**

The Ninth Circuit has already decided that prolonged detention without rigorous procedural protections presents serious constitutional problems.  *Casas* considered the detention of a lawful permanent resident who had been subjected to prolonged detention pending completion of his removal case without ever receiving a bond hearing to determine if his detention was justified.  The court noted that Section 1226(c) authorized "mandatory detention" without providing for bond hearings, and therefore held that his detention should be governed by 8 U.S.C. § 1226(a) in part because of the "serious constitutional concerns" that would be raised if the statutes were construed as authorizing "prolonged detention without adequate procedural protections."  *Casas*, 535 F. 3d at 950.  The court then further held that such

---

[7]  Petitioners address the government's specific arguments as to the due process rights of the §§ 1225(b) and 1231(a)(6) subclass members below.  *See infra* Section IV.

9

protections must include a hearing where the government bears the burden to show that detention is justified.  *Id*. at 951 ("Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,' we hold that § 1226(a) must be construed as *requiring* the Attorney General to provide the alien with such a hearing"—one where the government bears the burden of establishing that detention is justified." (citing *Tijani*, 430 F. 3d at 1242) (emphasis in original)).

In reaching this result, *Casas* was guided by the Supreme Court's analysis of due process challenges to immigration detention in *Zadvydas* and *Demore*.  *Casas*, 535 F. 3d at 950-51.  Notably, those cases involved detainees held under different detention statutes:  *Zadvydas* construed section 1231(a), while *Demore* construed section 1226(c).  Nonetheless, *Casas* found their reasoning instructive in concluding that prolonged detention requires rigorous procedural safeguards.

*Casas* also relied heavily on *Tijani*, 430 F.3d at 1242, which also found serious constitutional problems raised by prolonged detention without a hearing.  Although its reasoning was sparse, *Tijani* also construed Section 1226(c)'s mandatory detention requirement to apply only to "expeditious" proceedings, in order to avoid the constitutional problem otherwise created.  430 F.3d at 1242 ("it is constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal").

*Casas* and *Tijani* thus establish a general rule that prolonged detention without rigorous hearings raises constitutional problems.  And while those two cases dealt with Sections 1226(a) and 1226(c), the constitutional concerns that motivated those decisions apply to each detention statute at issue in this case.

**B.    All of the Detention Statutes Must Be Construed to Avoid the Serious Constitutional Problem Posed by Class Members' Prolonged Detention Without Adequate Procedures.**

Each of the detention statutes at issue in this case must be construed to avoid the same constitutional problems recognized in *Casas* and *Tijani* because each of them

10

covers at least some class members who have resided here as lawful permanent residents, just like the petitioners in *Casas* and *Tijani*. Therefore, under the doctrine of constitutional avoidance, each statute must be construed to avoid the constitutional problem raised by the detention of lawful permanent residents.

As the Supreme Court explained in *Clark*, the canon of constitutional avoidance "is not a method of adjudicating constitutional questions" but rather one of statutory interpretation – "a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." 543 U.S. at 382. Because *Casas* and *Tijani* establish that there are serious constitutional problems raised by the prolonged detention of at least some class members under each statute, and because each statute is ambiguous as to whether it authorizes prolonged detention without adequate procedures, they must all be construed to require rigorous hearings for people subject to prolonged detention.

Each statute at issue here authorizes the detention of "admitted aliens" who have resided here as lawful permanent residents. This is undisputed as to sections 1226(a) and 1226(c). *See, e.g.*, TAC ¶ 34 (Rodriguez is admitted LPR); TAC ¶ 18 (Farias Cornejo is admitted LPR). Section 1225(b) also authorizes the detention of lawful permanent residents and other "admitted aliens," when they return from travel abroad. *See* § 1101(a)(13)(C); *Nadarajah*, 443 F.3d at 1077 (recognizing that admissible aliens are detained under section 1225(b)); *Camins v. Gonzales*, 500 F.3d 872, 875 (9th Cir. 2007) (petition for review filed by returning lawful permanent resident who was treated as an "alien seeking admission"). Finally, section 1231(a) also authorizes the detention of admitted noncitizens who resided here as lawful permanent residents, as long as they are now detained pending a decision on a motion to reopen their removal case. *See infra* Section IV.

While each of the detention statutes at issue here plainly authorizes the detention of admitted noncitizens, each statute is silent with respect to the procedures

required when detention is prolonged.  *See* 8 U.S.C. §1225(b); 8 U.S.C. § 1226(a); 8 U.S.C. § 1226(c); 8 U.S.C. § 1231(a).  The Supreme Court has previously found that silence is not a basis for assuming that Congress intended to authorize unlimited detention.  *Zadvydas*, 533 U.S. at 698-99.  *Cf. Nadarajah*, 433 F.3d at 1076 ("Congress cannot authorize indefinite detention in the absence of a clear statement"). Notably, with the exception of section 1225(b), the government never argues that the statutes at issue here cannot be construed to avoid the constitutional problems posed by prolonged detention without rigorous procedures.  Mot. at 15.  Nor could it, since the language of all four provisions in no way precludes such a construction.  The Ninth Circuit has already held that Section 1226(c) only applies in cases of "expeditious" proceedings, and that in cases of prolonged detention authority "shifts" to section 1226(a), which in turn must be construed to "require" a bond hearing in such cases.  *Casas*, 535 F. 3d at 950.  The relevant language of section 1231(a) is nearly identical to the language in section 1226(a), and is therefore susceptible to a similar construction.  *Compare* 8 U.S.C. § 1226(a) ("Attorney General may release the alien . . . .") *with* 8 U.S.C. § 1231(a)(6) ("An alien . . . may be . . . released . . . .").  Likewise, section 1225(b) can be construed to authorize bond hearings because it already permits release on parole.  *See, e.g.*, *Jean v. Nelson*, 472 U.S. 846, 848 (1985) (construing predecessor to Section 1225(b) to authorize release on parole).  Even if it cannot be so construed, following *Casas* the Court should conclude that authority for detention "shifts" to section 1226(a), under which class members are entitled to a bond hearing when detention under section 1225(b) becomes prolonged.  *See infra* Section IV.[8]

---

[8] Each general detention statute serves the same two basic purposes for detainees whose immigration cases remain pending: the primary justification for detention is "preventing deportable . . . aliens from fleeing prior to or during their removal proceedings," *id.*, while preventing danger remains a valid "secondary purpose." *Zadvydas*, 533 U.S. at 697; *Demore*, 538 U.S. at 531 (Kennedy, J., concurring) ("the ultimate purpose behind detention is premised upon the alien's deportability").

*(Footnote continued)*

1    Accordingly, each of the statutes is amenable to a construction requiring a bond

2  hearing to justify prolonged detention.  Petitioners believe that the construction most

3  consistent with existing caselaw would be one requiring a hearing when detention

4  exceeds six months.  *See infra* Section III.  However, as explained more fully *infra*,

5  even if the Court disagrees with that view, it cannot grant the Rule 12(c) motion

6  unless it concludes that the existing detention scheme raises no constitutional concerns

7  on the facts pled in the complaint – a conclusion that would be impossible to reconcile

8  with controlling caselaw.

9
10   **C.    Caselaw from Analogous Contexts Establishes That Due Process Prohibits Prolonged Detention Absent Rigorous Hearing Procedures.**

11    If the detention statutes could not be construed to authorize adequate bond

12  hearings for noncitizens subject to prolonged detention, a large body of case law

13  concerning prolonged detention in analogous contexts establishes that the

14  existing scheme would violate the Due Process Clause in at least a large number of

15  class members' cases.  Indeed, nowhere in our legal system does the law permit

16  detention of the lengths at issue here without an in-person hearing where the

17  government bears the burden of proof.  Pre-trial detainees, people who are dangerous

18  due to mental illness, and even child sexual predators all receive far greater procedural

19  protections in regard to their detention than do class members under the current

20  system.  *See United States v. Salerno*, 481 U.S. 739, 750-52 (1987) (upholding a

21  federal bail statute permitting pretrial detention in part because the statute required

22  strict procedural protections for detention, including prompt hearings before a judicial

23  officer where the government bore the burden of proving dangerousness by clear and

24  convincing evidence); *Foucha v. Louisiana*, 504 U.S. 71, 81-82 (1992) (striking down

25
26  Because the basic purpose of detention under each statute is the same and each

27  subclass consists of at least some detainees who unquestionably enjoy substantial due process rights, the core issues at stake for each subclass are fundamentally similar, as

28  the Ninth Circuit already held.

13

a civil insanity detention statute because it placed the burden on the detainee to prove eligibility for release); *Kansas v. Hendricks*, 521 U.S. 346 353, 368 (1997) (upholding involuntary civil commitment for periods of one year at a time, subject to "strict procedural safeguards" including a right to a jury trial and proof beyond a reasonable doubt).

Even in situations where far lesser interests are at stake, the Supreme Court has found that due process requires more rigorous procedures than those present here. The government may not terminate welfare benefits or public utilities, or even recover excess Social Security benefits, without providing an in-person hearing. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (government's failure to provide an in-person hearing prior to termination of welfare benefits was "fatal to the constitutional adequacy of the procedures"); *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 16 (1978) (due process requires, at minimum, an opportunity for utility clients to argue their cases prior to termination of service); *Califano v. Yamasaki*, 442 U.S. 682, 696 (1979) (in-person hearing required for recovery of excess Social Security payments where beneficiary was at fault because "written review hardly seems sufficient to discharge the Secretary's statutory duty to . . . assess the absence of 'fault'"). It follows from these cases that the Constitution requires the government to provide an in-person hearing prior to imposing prolonged incarceration on people who may not present a danger or flight risk, especially when some of them will ultimately win their immigration cases and be allowed to remain in the United States.[9]

---

[9] The justification for an in-person hearing in the prolonged detention context is particularly strong given that the hearing may well call for determinations concerning a non-citizen's credibility, as it relates to his or her willingness to appear for removal should the government ultimately prevail in the immigration case. *See, e.g.*, *Califano*, 442 U.S. at 697 (paper review failed to satisfy due process because determination at issue "usually requires an assessment of the recipient's credibility"). *Cf.* 18 U.S.C. § 3142(g)(3) (treating "character" of defendant as relevant criteria in assessing bail eligibility); *Manimbao v. Ashcroft*, 329 F.3d 655, 661 (9th Cir. 2003) (holding, in the asylum context, that immigration judges are in a "superior position" to assess

*(Footnote continued)*

14

1    The government may argue that this large body of authority is inapplicable

2  because immigration detainees are not entitled to the same protections as citizens, but

3  there are two serious problems with that view.  Mot. at 12 (citing "plenary power"

4  doctrine).

5    First, the Ninth Circuit and Supreme Court have firmly held that plenary power

6  does not shield the government from due process constraints on prolonged

7  immigration detention – the Supreme Court relied on much of the above-cited

8  authority in *Zadvydas*, 533 U.S. at 690, and *Casas* cited that portion of *Zadvydas* in

9  analyzing the due process requirements for prolonged detention.  535 F.3d at 950

10  (citing *Zadvydas*' quotation of *Hendricks*).  Indeed, the first case relied upon by the

11  government for its assertion that its detention policies are largely immune from

12  constitutional constraints actually struck down the immigration statute in question as

13  unconstitutional.  *See* Mot. at 1-2 (citing *INS v. Chadha*, 462 U.S. 919, 941 (1983)

14  (holding that Congress's plenary power over immigration is subject to constitutional

15  constraints, and striking down provision at issue)).  Similarly, although *Zadvydas*

16  involved detainees who had lost all right to reside in the United States -- unlike class

17  members here – the Supreme Court nonetheless analyzed their detention claims by

18  reference to due process civil detention caselaw.

19    Second, the government's argument ignores that Petitioners do not seek

20  protections even *remotely* equivalent to those provided to citizens.  Indeed, the

21  difference is stark; the Constitution likely requires within *48 hours* the hearings that

22  Petitioners seek here for class members detained for six months.  *See County of*

23  *Riverside v. McLaughlin*, 500 U.S. 44, 56-58 (1991).

24    Accordingly, even if the Court concludes that the general detention statutes

25  cannot be construed to afford class members a bond hearing, the Court should still

26  deny the government's motion because it cannot demonstrate that Petitioners'

27  _____

28  credibility).

prolonged detention does not violate due process as a matter of law.

### III. THE GOVERNMENT'S ARGUMENTS AGAINST A SIX MONTH RULE ARE FUNDAMENTALLY MISCONCEIVED AND, IN ANY CASE, IRRELEVANT BECAUSE THIS COURT CAN ORDER CLASSWIDE RELIEF EVEN WITHOUT ADOPTING SUCH A RULE.

The government repeatedly argues that because due process does not require a hearing at six months for all class members, Petitioners' complaint fails to state a claim. *See* Mot. at 1, 30-31. Instead, the government asserts, the lawfulness of detention depends on whether or not it is *unreasonable*, which in turn must be assessed on a case-by-case basis. Mot. at 28-32.

These claims are fundamentally misguided, and in any event have no bearing on whether or not the Court can dismiss this case under Rule 12(c). First, to prevail against this Rule 12(c) motion Petitioners need not establish that their six-month rule is the best reading of the statutes. Instead, they need only establish two weaker propositions: that the prolonged detention without rigorous procedures of people who pose no danger, no flight risk, and who are likely to win their removal cases, presents serious constitutional problems; and that this Court can order some form of class-wide relief to remedy those problems. If the Court agrees with these conclusions, then it cannot dismiss the case at this stage. *See, e.g.*, *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1142 (C.D. Cal. 2001).

Second, the government's argument that the law leaves each detainee responsible for triggering an assessment of the lawfulness of his or her own detention by filing a habeas petition, rather than requiring the government to conduct such assessments at a fixed time, is contrary to the Ninth Circuit's instructions in *Rodriguez*. Indeed, the government's proposed system is precisely what the Ninth Circuit sought to avoid when it reversed this Court's decision denying class certification. *Rodriguez*, 591 F.3d at 1123 (class certification warranted to "facilitate development of a uniform framework for analyzing detainee claims to a bond hearing," so as to "obviat[e] the severe practical concerns that would likely attend

16

1   them were they forced to proceed alone.").

2        Finally, the government's arguments against the particular construction that

3   Petitioners advocate – a rigorous bond hearing at six months – reflects yet again the

4   government's refusal to recognize the canon of constitutional avoidance and the fact

5   that individuals who have different due process claims may nonetheless have the same

6   entitlements under a statute. *See Clark*, 543 U.S. at 378. Petitioners' primary

7   argument is not that due process requires a bond hearing at six months in all cases, as

8   the government suggests. Rather, it is that because detention beyond six months in

9   the absence of a constitutionally-adequate hearing creates serious constitutional

10  problems in many cases, the immigration statutes must be construed to require such

11  bond hearings at six months. Notably, the government fails even to acknowledge that

12  the six-month rule is grounded in both Supreme Court and Ninth Circuit case law as

13  well as the overall statutory scheme.

14  **A.    Petitioners' Complaint Does Not Rise or Fall on Their Six Month
15         Claim, as this Court can Order Class-Wide Relief Regardless of
        Whether it Adopts a Six Month Rule.**

16       The government is wrong when it argues that rejection of Petitioners' proposed

17  six month rule should necessarily result in dismissal of their complaint. Mot. at 1, 30-

18  31. It is well established that a motion to dismiss "'will not be granted merely

19  because [a] plaintiff requests a remedy to which he or she is not entitled.'" *Idema v.*

20  *Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1142 (C.D. Cal. 2001) (quoting Schwarzer,

21  Tashima, & Wagstaffe, *Civil Procedure Before Trial* § 9:230 (2000)). Thus, "'it need

22  not appear that [a] plaintiff can obtain the *specific* relief demanded as long as the court

23  can ascertain from the face of the complaint that *some* relief can be granted.'" *Id.*

24  (quoting *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1104 (D.C. Cir.1985))

25  (emphasis in original). *Cf. Doss v. South Central Bell Telephone Co.*, 834 F.2d 421,

26  425 (5th Cir.1987) (holding that "even though Doss demanded a legal remedy which

27  was improper under the ADEA" the district court erred in granting motion to dismiss

28  because the "complaint sufficiently alleged facts, which, if true, stated a claim for

17

equitable relief under the ADEA"); *Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920, 926 (2nd Cir. 1968) (holding that district court erred in dismissing equal protection claim on grounds that specific relief sought could not be granted because "some relief, not limited by the request in the complaint, can be granted").

In the instant case, Petitioners' complaint seeks relief from "prolonged" detention without "constitutionally-adequate" hearing procedures – not simply from a system that lacks hearings after six months. *See* TAC at ¶¶ 125, 127. And, of course, it asks the Court to grant not only the relief in the form of hearings at six months, but also any other appropriate relief. *See* TAC at 32 (Prayer For Relief). Thus, as long as this Court can issue some form of class-wide relief for at least a portion of the class – that is, relief that will protect them from prolonged detention without rigorous procedural safeguards – the government cannot demonstrate that Petitioners' claims fail as a matter of law.

### B. The Government's Proposal for Case-by-Case Determinations as to Whether Detention is Reasonable is Inconsistent with Controlling Law, Including the Instructions Provided by the Ninth Circuit in This Case.

The government's argument that no class-wide relief is possible because the legality of detention must be assessed on a case-by-case basis through individual habeas petitions, *see* Mot. at 28-32, finds no support in Ninth Circuit authority and is in fact contrary to both the reasoning of *Casas* and the instructions provided to this Court in *Rodriguez*.

In *Casas*, the Ninth Circuit held that "[b]ecause the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,' we hold that § 1226(a) must be construed as *requiring* the Attorney General to provide the alien with" a bond hearing at which the government bears the burden to justify detention. *Casas*, 535 F.3d at 951 (emphasis in original). The Ninth Circuit's emphasis that bond hearings are "required," and that

18

they must be conducted by the "Attorney General," rather than by district courts entertaining habeas petitions, makes clear that the government must provide bond hearings in *every* case of prolonged detention, not just on a case-by-case basis. Importantly, the Ninth Circuit did not state that the government is required to provide a bond hearing only after a federal court receives a habeas petition and conducts a searching inquiry to determine that the length of a noncitizen's detention is "unreasonable."  Rather, the Ninth Circuit made clear that it is the government's duty affirmatively to provide such hearings in order to ensure that prolonged detention is justified.

Further, *Casas* indicates that the trigger for a bond hearing is the length of detention, not the reasons for it: "We hold that the government may not detain a legal permanent resident such as Casas for a prolonged period without providing him a neutral forum in which to contest the necessity of his continued detention."  535 F.3d at 949.  Thus, under Ninth Circuit law it is a "prolonged period" of detention – not "unreasonable" detention as the government argues here – that requires inquiry into the reasons that might justify that detention at a bond hearing before an IJ.  This conclusion is reinforced by the Ninth Circuit's consideration of length of detention in *Casas* and *Prieto-Romero*, a companion case decided the same day.  In both cases, the Ninth Circuit concluded that the petitioners' detention was "prolonged" without conducting any analysis into the reasons for the delay in their respective cases.  *Casas*, 535 F.3d at 948 ("Casas' nearly seven-year detention certainly qualifies as prolonged by any measure"); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) ("Prieto-Romero's more than three-year detention certainly qualifies as prolonged by any measure.").[10]

The strongest indication that this Court should not engage in the type of

---

[10] In *Prieto-Romero*, the Ninth Circuit ultimately denied relief because the petitioner had received three bond hearings, and the Court found that any error in placing the burden on him was harmless.  534 F.3d at 1066-67.

1   reasonableness review suggested by the government comes from the Ninth Circuit's
2   instructions in this very case.  There, the government argued, just as it does again
3   now, that "the question of whether individual class members' detention may be
4   continued without a bond hearing turns on . . . consideration of different factual
5   circumstances." *Rodriguez*, 591 F.3d at 1122.  The Ninth Circuit rejected that view,
6   holding that Petitioners could proceed with their claims on a class-wide basis in order
7   to "facilitate development of a uniform framework for analyzing detainee claims to a
8   bond hearing." *Id*. at 1123.  The Court found that class treatment "would also benefit
9   many of the putative class members by obviating the severe practical concerns that
10  would likely attend them were they forced to proceed alone." *Id*.  Although these
11  statements were made in the context of class certification, they make perfectly clear
12  the Ninth Circuit's directive that the Court establish a "uniform framework" for
13  Immigration Judges to review the reasonableness of prolonged detention in bond
14  hearings, rather than requiring district courts to make those determinations through
15  individual, separately-filed habeas petitions.

16      Indeed, the government's apparent endorsement of an alternative multi-factored
17  reasonableness test, Mot. at 30-31, underscores both that this Court can order relief for
18  the class even if it does not adopt the six month construction Petitioners propose, and
19  the need for such relief.  Notably, in proposing such a reasonableness test, the
20  government implicitly concedes that the Due Process Clause likely imposes limits on
21  prolonged detention that require additional procedural safeguards -- just not
22  automatically at six months.  Mot. at 30-31.  But, apart from the obvious
23  inconsistency between such an approach and the "uniform framework" required by the
24  Ninth Circuit, the government never explains how class members whose detention has
25  become unreasonably prolonged can obtain relief from unlawful detention and benefit
26  from the additional procedures to which they are entitled.  Absent a requirement that
27  the "Attorney General" make such reasonableness determinations and a ruling from
28  this Court specifying both when and how such a determination must be made,

20

1  individual class members will continue to face the precise predicament that the Ninth

2  Circuit found unacceptable when it reversed this Court's earlier denial of class

3  certification, *i.e.*, they will be forced to challenge unlawful detention through

4  individual habeas petitions.

5       **C.    The Six Month Rule Is Well-Grounded In the Canon of**
           **Constitutional Avoidance and Supreme Court and Ninth Circuit**
6           **Precedent.**

7       Although the Court need not assess the propriety of Petitioners' proposed six-

8  month rule at this stage of the litigation, if it is inclined to do so it should reject the

9  government's arguments against it for two reasons.  First, the government

10  mischaracterizes Petitioners' claim as solely a due process right to bond hearings at

11  six months, completely ignoring that the Petitioners' primary argument is statutory –

12  that the canon of constitutional avoidance obligates the Court to construe the detention

13  statutes to require a hearing at six months.  Second, the government disregards the fact

14  that controlling precedent and the statutory scheme itself both support Petitioners'

15  proposed construction.

16       Petitioners' proposed six-month rule is primarily a rule of statutory

17  interpretation designed to avoid a serious constitutional problem.  As explained above,

18  *Clark* makes clear that a statute must be construed to avoid constitutional problems,

19  even if those problems do not apply to all people detained under the statute.  543 U.S.

20  at 378.  Because detention beyond six months without hearings would pose serious

21  constitutional problems in at least some class members' cases, the Court should read

22  the statutes to contain that limitation. [11]

23       The use of six months as the particular benchmark is hardly made up out of

24  whole cloth; instead it derives directly from Supreme Court and Ninth Circuit

25

26  [11] Petitioners do not concede that the Due Process Clause itself does not require a
   hearing at six months, following the Supreme Court's adoption of similar prophylactic
27  constitutional rules in other contexts.   But their primary argument is based on
28  statutory construction under *Clark* and *Casas*.

precedent in this context.  In *Zadvydas*, the Court found it "practically necessary to recognize some presumptively reasonable period of detention" for post-removal order detention – which it determined to be six months.  533 U.S. at 700-01.  Likewise, in *Nadarajah*, the Ninth Circuit held that the general detention statutes only authorize detention pending completion of removal proceedings for a "brief and reasonable" period, which it concluded is presumptively six months, based on the Supreme Court's decisions in *Zadvydas*, *Clark*, and *Demore*.  443 F.3d at 1080 ("*Zadvydas* and *Clark* used the six-month period as the touchstone of reasonableness."); *id.* ("*Demore* endorses the general proposition of 'brief' detentions, with a specific holding of a six-month period as presumptively reasonable.").  In addition, *Nadarajah* relied on two national security detention provisions that specifically authorize detention in excess of six months, while providing additional procedural safeguards for such detentions.  *Id.* at 1078-79 (citing 8 U.S.C. § 1226a, and 8 U.S.C. §§1531-1537).  That Congress specifically legislated detention for longer than six months without a hearing in a narrow set of cases implicating national security strongly suggests that it believed that time period carries special significance.  *Id.  See also Clark*, 543 U.S. at 387 (O'Connor, J. concurring).

A six-month period is also consistent with *Demore*'s key finding that removal proceedings last between 45 days and five months, and expressly tying the constitutionality of mandatory detention to its brevity.  538 U.S. 510, 529 (2007).  The Ninth Circuit has repeatedly recognized that *Demore*'s endorsement of brief detention pending completion of removal proceedings strongly suggests that detention beyond that period is constitutionally suspect.  *Nadarajah*, 443 F.3d at 1080; *Casas*, 535 F.3d at 950 (recognizing that *Demore* upheld mandatory detention "with the specific understanding that § 1226(c) authorized mandatory detention only for the 'limited period of [the alien's] removal proceedings" and that "[r]eferences to the brevity of

22

1    mandatory detention . . . run throughout *Demore*").[12]

2          As the Supreme Court has recognized, bright line rules are appropriate to ensure

3    uniform administration and protect against constitutional violations in several

4    contexts.  In adopting the six-month rule in *Zadvydas*, the Court relied on its adoption

5    of "similar presumptions in other contexts," 533 U.S. at 700-01, citing to *Cheff v.*

6    *Schnackenberg*, 384 U.S. 373, 379-80 (1966) (plurality opinion) (adopting rule that

7    right to jury trial extends to all cases in which sentence of six months or greater is

8    imposed) and *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-58 (1991)

9    (adopting requirement that probable cause hearings occur within 48 hours of arrest).

10   *Id.  See also Shatzer v. Maryland*, 130 S. Ct. 1213, 1222 (2010) (holding that a

11   suspect who asserts his Miranda rights cannot be re-interrogated following a break in

12   custody for 14 days).  In each of these cases, the courts adopted a bright line rule to

13   protect against constitutional violations in most but not all circumstances, and in order

14   to allow the government to "establish procedures with confidence that they fall within

15   constitutional bounds" with "some degree of certainty."  *McLaughlin*, 500 U.S. at 56;

16   *id.* ("judicial determinations of probable cause within 48 hours of arrest will, as a

17   general matter, comply with the promptness requirement of *Gerstein*"); *Shatzer*, 130

18   S. Ct. at 1222 ("[c]onfessions obtained after a 2-week break in custody and a waiver

19   of Miranda rights are most unlikely to be compelled").

20         Finally, the government states that "courts" have rejected a test that depends on

21   a specific length of detention, Mot. at 29, but this statement is deeply misleading,

22

23   [12] The government may argue that the petitioner in *Demore* was detained slightly
     more than six months – more than the "brief" period authorized under section 1226(c)
24   – because he had requested a continuance, and therefore that *Demore* cannot be read
     to authorize detention of only six months.  538 U.S. at 530 n.14.  However, *Demore*
25   considered a challenge to all mandatory detention under Section 1226(c) regardless of
     its length, and did not address the constitutionality of that provision as applied to the
26   particular detention length of any given detainee.  *Id.* at 513.  In any event, the Ninth
     Circuit has already held that *Demore* does not permit prolonged detention without a
27   hearing and that it stands for a presumptively valid six months.

28

                                               23

1    because the only context in which such a claim can arise is a class action.  In

2    individual cases, courts generally consider only the case before them, which nearly

3    always involves detention of longer than six months.  As a result, only two cases have

4    squarely considered the issue – this one, where the Ninth Circuit directed this Court to

5    consider the claim with a view to creating "a uniform framework for analyzing

6    detainee claims to a bond hearing," *Rodriguez*, 591 F.3d at 1123, and *Alli v. Decker*,

7    635 F. Supp. 2d 535 (M.D. Pa. 2009), which is now on appeal to the Third Circuit,

8    just as was the decision in this case prior to the Ninth Circuit's decision.  No other

9    courts have addressed this issue because there has been no opportunity to do so.  As

10   the Ninth Circuit recognized in *Rodriguez*, in the absence of class certification,

11   detainees have no opportunity to present a claim that detention requires a bond

12   hearing at six months.  *See* 591 F.3d at 1123.

13            Although it did not consider a six month rule, *Ly v. Hansen*, 351 F.3d 263 (6th

14   Cir. 2004), did decline to adopt a bright line rule of the kind that Petitioners seek here,

15   but did so based on assumptions contrary to *Casas* and *Rodriguez*.  *Ly* held that

16   district courts, not immigration courts, should supervise the reasonableness of

17   prolonged detention by entertaining habeas petitions.  *Id*. at 271-72.  The Ninth

18   Circuit has already rejected that position, holding in *Casas* that the "Attorney

19   General" is "require[d]" to conduct bond hearings when detention is prolonged, and

20   then in *Rodriguez* that this Court must develop a "uniform framework" for

21   determining when those hearings should take place, in order to avoid potentially

22   hundreds or thousands of individual habeas petitions.  Thus, while *Ly* instructs district

23   courts to determine when detention is *reasonable*, the Ninth Circuit has instead

24   instructed this Court to decide only when it is *prolonged*, leaving the reasonableness

25   inquiry to be made instead by immigration judges.  *Rodriguez*, 591 F.3d at 1123;

26   *Casas*, 535 F.3d at 951.

27

28

24

**IV.    THE GOVERNMENT'S ARGUMENTS WITH RESPECT TO THE INDIVIDUAL SUBCLASSES ARE WHOLLY WITHOUT MERIT.**

As set forth above, controlling case law from the Ninth Circuit and the Supreme Court establishes that prolonged immigration detention unaccompanied by rigorous procedural safeguards creates serious constitutional problems, and that because each immigration detention statute at issue here is silent as to what procedures are required for prolonged detention, each must be construed to avoid those constitutional problems – even if those problems may not apply to all individuals subject to detention under the statute, and even if the solution is not to construe them to require a rigorous hearing after six months.  This conclusion is sufficient to defeat the government's Rule 12(c) motion, given the facts pled in the complaint.  Nonetheless, the government advances a number of subsidiary arguments that are meritless, as explained below.

**A.    Respondents Have Not Established that the Section 1225(b) Subclass Cannot Prevail as a Matter of Law.**

Respondents have not demonstrated that Petitioners' claims on behalf of the section 1225(b) subclass fail as a matter of law.  This subclass includes arriving aliens with no criminal history, many of whom will ultimately win asylum.  *See* TAC ¶¶ 15, 16.  It also includes LPR's returning from travel abroad, *see* 8 U.S.C. § 1225(b)(2).  As described above, these subclass members receive no hearings even if they are detained for years.  The existing system only allows them to obtain parole, a form of release determined by low level detention officers who simply check a box after conducting a paper review -- a process that routinely leads to the incarceration of people who present no danger or flight risk.   *See supra* Section I.

The government makes three arguments in defense of this Kafka-esque system.  It argues (1) that this Court lacks jurisdiction to review parole denials; (2) that because the INA makes parole the exclusive means of releasing non-citizens detained under section 1225(b), this Court cannot order IJ bond hearings for subclass members; and

(3) that under the so-called "entry fiction," noncitizens detained under section 1225(b) have no due process rights and thus the extant parole procedures satisfy any constitutional concerns.  *See* Mot. at 9-16.  Notably, the government does not contend that if the Due Process Clause applies, the existing parole procedures would satisfy its constraints.

### 1.   This Court has jurisdiction to hear petitioners' legal challenge to the adequacy of the parole procedures.

The government's assertion that this Court lacks jurisdiction over Petitioners' claims is utterly meritless.  Contrary to the governments' argument, Petitioners do not challenge any individual parole denial made in DHS' discretion.  Rather, they challenge the legal sufficiency of the parole *procedures* with respect to prolonged detention under section 1225(b).  As a result, the limits on this Court's review of discretionary parole denials are entirely inapposite.

In any event, the Ninth Circuit has explicitly held that it retains jurisdiction to review detention challenges arising in the context of parole denials.  *Nadarajah*, 443 F.3d at 1082.  *Nadarajah* held that where, as here, a detainee raises a legal challenge going to the authority to detain itself, the challenge is reviewed *de novo*, *id.* at 1075; *cf. Demore*, 538 U.S. at 516-17 (holding that bar over review of discretionary bond determinations did not preclude habeas review of legal challenge to detention statute).[13]

### 2.   Section 1225(b) does not preclude this Court from ordering bond hearings before the IJ.

The government's argument that applicable statutory and regulatory provisions foreclose bond hearings for Section 1225(b) subclass members is also plainly incorrect.  While the government asserts that the INA makes parole the sole avenue for release from detention under section 1225(b), it points to no language in either

---

[13] If Petitioners were challenging their individual parole denials, which they are not, those decisions would be reviewable under the "facially legitimate and bona fide" standard.  *Nadarajah*, 443 F.3d at 1075; 1082-83.

section 1225(b) or the parole statute, 8 U.S.C. § 1182(d)(5)(A), providing that parole is an exclusive remedy.  In fact, the BIA has held the opposite.  In *Matter of X-K-*, the BIA held that noncitizens who entered unlawfully and were detained under section 1225(b) could obtain a bond hearing after being placed in removal proceedings.   23 I&N Dec. 731, 731-32, 734-35 (BIA 2005).  Although the BIA also noted that the implementing regulations for section 1225(b) restricted arriving aliens to parole, *see id.* at 735 (citing 8 C.F.R. §§ 1003.19(h)(2)(i)(B), 1235.3(c)), it made clear that the *statute* in no way bars IJ bond determinations. Thus, section 1225(b) can be construed to authorize bond hearings.

The government also cites to an unpublished district court opinion, *Sidhu v. Chertoff*, in which the court held that the IJ lacked authority to consider bond for an arriving alien because 8 C.F.R. § 1003.19(h)(2)(I) precludes immigration judges from "redetermining" parole decisions. No. 1:07-cv-00947, 2009 WL 900734, *5 (E.D. Cal. March 31, 2009).  However, Petitioners do not seek bond hearings to "redetermine" parole decisions, but rather to conduct *de novo* review of the justification for prolonged detention.  Even if the regulations precluded such review, this Court should hold them inapplicable to cases involving prolonged detention, just as the Ninth Circuit in *Casas* held that section 1226(a) "must" be construed to authorize bond hearings due to the serious constitutional problems posed by prolonged detention, notwithstanding a regulation that prohibits bond hearings for people with administratively final orders of removal.  *See* 8 C.F.R. § 1003.19.  Similarly, here section 1225(b) should be construed to authorize bond hearings to avoid the significant constitutional problems raised by prolonged detention.  To the extent that the regulations do bar IJ review, they are *ultra vires* and therefore not dispositive.  *See Kwong Hai Chew v. Colding*, 344 U.S. 590, 599 (1953) (construing regulation to avoid constitutional problems).

Alternatively, if the Court concludes that section 1225(b) cannot be construed to authorize bond hearings, the Court should find that it simply does not apply to cases

involving prolonged detention – as the Ninth Circuit found with respect to section 1226(c) in *Casas* and *Tijani* – and therefore that authority for prolonged detention "shifts" to section 1226(a), under which the detainees are indisputably eligible for bond hearings.  Nothing in section 1225(b) precludes it being read in such a fashion.  Accordingly, following *Casas*, the Court should construe the statutes so as to require bond hearings for these subclass members.

### 3.    Non-admitted aliens have due process rights against prolonged detention without constitutionally adequate hearing.

The government further asserts that prolonged detention under section 1225(b) raises no constitutional problems because of the fiction that all noncitizens subject to Section 1225(b) are still presumed to be at the border seeking admission.  As a result, the government contends, they are entitled to *no* due process protections with respect to their prolonged confinement.   *See* Mot. at 12-14.

This argument fails for several reasons.  First, as explained above, the Ninth Circuit already held when construing this same statute that admissible aliens such as returning LPRs are subject to prolonged detention under Section 1225(b) because they can be treated as "arriving aliens."  *Nadarajah*, 443 F.3d at 1077.  *See also Camins v. Gonzales*, 500 F.3d 872, 875 (9th Cir. 2007) (petition for review filed by returning lawful permanent resident who was treated as seeking admission).  As the Supreme Court has held, returning LPRs are clearly entitled to due process even when they are stopped at the border after a trip abroad.  *Landon v. Plasencia*, 459 U.S. 21, 32-33 (1982).[14]

---

[14] This error is unsurprising insofar as the government erroneously refers to all noncitizens detained under section 1225(b) as "arriving aliens," when in fact that statute also applies to returning lawful permanent residents who seek re-admission, *see* 8 U.S.C. § 1101(a)(13)(C), and noncitizens who "enter without inspection" (EWIs).  *See e.g.*, Mot. at 10; *see also* 8 C.F.R. § 1001.1(q); 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (extending Section 1225(b)'s procedures to EWIs who have not been admitted or paroled and cannot show they have been in the United States continuously for two years).  This error is crucial because LPRs and certain

*(Footnote continued)*

Because the Court has to construe the statute to avoid constitutional problems even if those problems do not arise with respect to all people detained under the statute, it must construe Section 1225(b) to authorize rigorous hearings to ensure that it remains constitutional as applied to returning LPRs. *See Nadarajah*, 443 F.3d at 1077-78 (holding that *Clark* prohibits "treating some detentions authorized by the same statute differently, depending on the identity and status of the detainee").

Second, and more fundamentally, the government's assertion that "arriving aliens" have no due process rights is incorrect. The fact that non-admitted aliens may lack due process rights with regard to their *admission* does not mean that they lack due process rights with regard to their *detention*. Indeed, as recognized by the Ninth Circuit in *Kwai Fun Wong v. United States*—a case the government does not even cite, much less distinguish—the entry fiction is "determinative of the procedural rights of aliens with respect to their applications for admission," but it does not "deny all constitutional rights to non-admitted aliens." 373 F.3d 952, 971 (9th Cir. 2004) (emphasis omitted). In the Ninth Circuit, even non-citizens who have not entered the country are protected by the Due Process Clause. *Id.* at 972; *accord Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1098-99 (9th Cir. 2004). *See also Rosales-Garcia v. Holland*, 322 F.3d 386, 410-13 (6th Cir. 2003) (en banc) (holding that indefinite detention of inadmissible aliens under post-final order statute, 8 U.S.C. § 1231(a)(6), raises serious constitutional concerns). Like the deportable noncitizens in *Zadvydas*, inadmissible noncitizens possess a liberty interest in being free from prolonged imprisonment that is distinct from any right to admission. *Cf. Zadvydas*, 533 U.S. at 696. Thus, even if Section 1225(b) authorized the detention of only arriving non-citizens who had never been admitted, it still would have to be construed to require

---

noncitizens who entered without inspection ("EWIs") and reside in the United States indisputably have due process rights with regards to their prolonged detention. *See Zadvydas*, 533 U.S. at 693 (explaining that "once an alien enters the country . . . the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent").

1  rigorous release procedures for people subject to prolonged detention under it.[15]

2
3
**B.  Respondents Have Not Established that the Section 1226(c) Subclass
Cannot Prevail as a Matter of Law.**

4      Members of the Section 1226(c) "mandatory detention" subclass, who

5  constitute roughly half of the class as a whole, receive virtually no process with

6  respect to their detention.  Remarkably, as long as an IJ believes that there is a non-

7  frivolous argument that they have been convicted of an offense that triggers Section

8  1226(c)'s mandatory detention requirement, they cannot be released regardless of the

9  length of detention under the existing system.  *See Matter of Joseph*, 22 I. & N. Dec.

10  799 (BIA 1999).  This is so, under the existing system, even if their conviction is

11  extremely minor, they are virtually certain to win their case, and their detention length

12  greatly exceeds the sentence they received for the underlying conviction.  *See, e.g.*,

13  TAC ¶¶ 82-88.

14      Respondents' primary argument in defense of this draconian system -- that

15  ─────────────────
[15] The government relies on *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir.

16  1995) (en banc), but it is likely no longer good law insofar as the Supreme Court

17  struck down the indefinite detention of excludable non-citizens in *Clark*, 543 U.S. at
380.  *See Xi v. INS*, 298 F.3d 832, 837-38 (9th Cir. 2001) (acknowledging that

18  *Barrera* no longer controls).  *Barrera*'s statement that "an alien who has not been
paroled must by definition be detained," construed the predecessor statute 1225(b) and

19  thus does not apply here.  *Barrera*, 44 F.3d at 1446.  In any event, *Barrera* could not

20  control here because it held only that excludable noncitizens who had lost their cases
lacked a substantive due process right to be *released* from immigration detention,

21  whereas the Section 1225(b) subclass members are non-citizens who may well win

22  their cases and seek only the right to a *hearing* to be considered for release.  *Id.* at
1450.  The government also relies on a relic from the Cold War, *Shaughnessy v.*

23  *United States ex rel. Mezei*, 345 U.S. 206 (1953), but that case is distinguishable as

24  well.  The government's suggestion that *Mezei* holds that a noncitizen who has not
entered the United States is excluded from Fifth Amendment protections is not the law

25  of this circuit, if indeed anywhere.  *See Wong*, 373 F.3d at 972.  Moreover, as the *en*

26  *banc* Sixth Circuit concluded in *Rosales-Garcia*, *Mezei* involved special national
security concerns that do not exist here and has been eclipsed by Supreme Court

27  precedent restricting the government's powers over prolonged civil detention.  *See*

28  *Rosales-Garcia*, 322 F.3d at 413-15 (discussing case law).

30

prolonged detention of any length is "inherently legal" so long as removal proceedings are "active," Mot. 26 – borders on the frivolous; it has been flatly rejected by the Ninth Circuit in three cases of which government counsel is well-aware: *Tijani*, *Casas*, and *Nadarajah*. It is also contrary to numerous statements in the Supreme Court's decision in *Demore* itself, which serve to limit the decision to brief detentions. The government's claim that such statements are dicta has been repeatedly rejected by the Ninth Circuit.[16]

As explained above, the Ninth Circuit narrowly construed section 1226(c)'s mandatory detention provision to apply only to "expeditious" removal proceedings because of the significant constitutional concerns raised by prolonged detention without a hearing five years ago, in *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (holding that detention of two years, eight months in absence of a bond hearing under 1226(c) is "constitutionally doubtful" and therefore construing statute to apply only to "expeditious" proceedings).

The Ninth Circuit elaborated upon and extended *Tijani* in *Casas*, which rejected the government's argument that section 1226(c) applies to the prolonged detention of two different groups of noncitizens – those whose removal orders had been stayed pending judicial review, and those whose cases had been remanded after such judicial review. *Casas* recognized that, in *Demore*, the Supreme Court upheld mandatory detention under section 1226(c) only for a "brief" period, "which the [Supreme] Court emphasized typically 'lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien

---

[16] In fact, Respondents have taken a contrary position in another case currently pending in the Central District of California. In *Franco-Gonzales v. Holder*, CV 10-2211 (CDCA), counsel for the government stated that it is the government's position that section 1226(c) does have a temporal limit, but that the limit must be assessed on a case-by-case basis. Ex. 31 Pg 15, lns. 18-24 ("there is a time limit where 1226(c) shouldn't apply, but what that is depends on the circumstances") (October 18, 2010, hearing transcript).

1   chooses to appeal' his removal order."  535 F.3d at 947at 948 (quoting *Demore*, 538

2   U.S. at 527-28); *id*. at 950 ("References to the brevity of mandatory detention under §

3   1226(c) run throughout *Demore*.").[17]  Accordingly, the court in *Casas* concluded that

4   once the detention of a noncitizen ceases to be expeditious, the authority to detain

5   "shifts" from section 1226(c) to section 1226(a).  *Id.* at 947-48.

6       Although *Tijani* involved a noncitizen whose removal order had been stayed

7   pending judicial review and *Casas* involved a noncitizen whose case had been

8   remanded to the immigration courts after such review, the rationale in both cases

9   applies with equal if not greater force to noncitizens whose cases are before the

10   immigration courts and who have not yet sought judicial review.  *Casas* itself refutes

11   any suggestion that the limit on prolonged detention does not apply to cases pending

12   in the immigration courts; the petitioner's case was before the BIA at the time the

13   Ninth Circuit issued its opinion.  *Id.* at 945 ("As of the time that this opinion is filed,

14   Casas is now back before the BIA after this court granted his petition for review of his

15   final order of removal.").  In deciding the petitioner's statutory and constitutional

16   claims, the court did not find it relevant that the petitioner's immigration case was in

17   administrative proceedings, rather than before the Ninth Circuit with a stay of

18   removal.  Instead, the court focused on the fact that the petitioner had suffered

19   prolonged detention without a bond hearing, emphasizing that the length of his

20   proceedings was not "expeditious."  *Id.* at 948.

21       Indeed, while prolonged detention without hearings is always "constitutionally

22   doubtful" – regardless of the stage at which it occurs – it is even more problematic

23   while the administrative process is still pending, both because such individuals have

24   ───────────────

25   [17] Thus, in *Casas* the Ninth Circuit already rejected the government's lengthy
argument that *Demore*'s discussion of average time periods of mandatory detention

26   was *dicta*.  That view had also been rejected even before, in *Nadarajah*, which called

27   the claim that *Demore* implicitly authorized lengthy detentions because of its
reference to average detention lengths "a patently absurd reading of *Demore*."  443

28   F.3d at 1081.

not yet lost their immigration cases at any level, and because they face the prospect of longer periods of detention until both administrative *and* judicial review is complete. *Cf. Tijani*, 430 F.3d at 1242 (noting anticipated length of future proceedings and detention in assessing due process claim).

For all of these reasons, existing Ninth Circuit law makes clear that Section 1226(c) authorizes mandatory detention only where removal proceedings are "expeditious." Accordingly, where removal proceedings become prolonged rather than expeditious, detention is governed by Section 1226(a), rather than Section 1226(c).

### C. Respondents Have Not Established that the Section 1231(a) Subclass Cannot Prevail as a Matter of Law.

Subclass members detained under Section 1231(a) share many characteristics with other class members. Some have resided here for many years as lawful permanent residents, while others are refugees fleeing persecution and yet others were admitted for different reasons. They have in common that all such detainees have received an administratively final removal order but now seek to reopen their removal proceedings, often to introduce new material evidence or to assert a claim of ineffective assistance of counsel. Because of this unique procedural posture, the existing system denies them bond hearings, even if they have no criminal history, strong family ties, and are very likely to win their motions to reopen and ultimately the right to remain in the United States. Instead, their liberty is left in the hands of a paper review process. *See supra* Section I.

Respondents have not demonstrated that Plaintiffs' claims on behalf of the Section 1231(a) subclass fail as a matter of law. As explained above, *supra* Section II.B., the purposes of detention under Section 1231(a) is the same as under the other statutes at issue, and the interests of at least some subclass members detained under Section 1231(a) are as strong as other class members. Indeed, because the facts alleged in the complaint must be taken as true, the Court must assume that many

33

1  subclass members present little danger or flight risk, have strong claims for relief, and

2  will not obtain meaningful review of their detention under the POCR process.  *See*

3  *supra* Section I.  Given that Section 1231(a) is easily amenable to a construction that

4  allows for bond hearings, the Court should construe it as requiring such hearings for

5  the subclass here, at least if the facts in the complaint are true.

6        The government's sole argument in response to these claims is that this Court's

7  prior decision in *Diouf v. Holder*, No. 06-7452, 2009 WL 6331130 (C.D. Cal. Sept. 9,

8  2009), requires dismissal as a matter of law of the subclass's claims.  <u>See</u> Mot. at 35-

9  37.  However, *Diouf* is distinguishable for at least three reasons.

10       First, as this Court explained, *Diouf*'s holding was based on the specific "status

11  and circumstance" of the petitioner in that case—in particular, the fact that Diouf was

12  not an LPR and that he had previously failed to depart when released on bond.  *Id*. at

13  *2.  Here, however, the subclass includes both LPRs and non-LPRs who are detained

14  for months and sometimes for years while they appeal a decision denying their

15  motions to reopen.  *See, e.g.*, TAC ¶ 22 (petitioner Ayala detained ten months).  All of

16  these subclass members receive no bond hearing of any kind, instead they receive only

17  the minimal process provided by the POCR system.  As explained above, the

18  inclusion of people who resided here as LPRs in the subclass is crucial because the

19  Ninth Circuit has already made clear that the statute would unquestionably raise a

20  serious constitutional problem if construed to authorize the prolonged detention of

21  LPRs without an individualized hearing where the government bears the burden of

22  proof.  *See Casas*, 535 F.3d at 948-49; Section II.A., *supra*.  Once the statute is

23  construed to require such a hearing for LPRs, the same interpretation applies to non-

24  LPRs, regardless of whether their detention would raise the same constitutional

25  problems.  *See Clark*, 543 U.S. at 380-81; *Nadarajah*, 443 F.3d at 1078.

26       Second, although this Court held in *Diouf* that the post-order custody review

27  procedures that Mr. Diouf received satisfied due process in his case, *Diouf*, 2009 WL

28  6331130 at *2, it does not follow that those procedures have satisfied due process for

34

1  all or even most subclass members.  Indeed, Petitioners have sought to establish via

2  discovery that the POCRs frequently allow for the detention of class members even

3  where they pose neither a flight risk nor a danger to the community.  Thus, it would be

4  inappropriate for this Court to dismiss Petitioners' claims before they have an

5  opportunity to take discovery on that issue.

6      Third, contrary to the government's assertion, *see* Mot. 33-34, the serious

7  constitutional problems resulting from subclass members' detention are not somehow

8  mitigated by the fact that they are detained pending judicial review of a denied motion

9  to reopen, rather than pending direct review of a removal order.  *Cf. Diouf*, 2009 WL

10  6331130 at *2.  As recognized by the Supreme Court, and the Ninth Circuit's record

11  of granting relief in such cases, motions to reopen serve a vital function in ensuring

12  the integrity of the removal process.  Indeed, these cases often present the most

13  egregious circumstances.  In this respect, the constitutional problems raised by

14  subclass members' detention are no different than those the Ninth Circuit recognized

15  in *Casas*.

16      In our immigration system, motions to reopen serve a critical function.  As with

17  a petition for review, the purpose of a motion to reopen is "to ensure a proper and

18  lawful disposition" of a non-citizen's case.  *Dada v. Mukasey*, 128 S. Ct. 2307, 2318

19  (2008).  Motions to reopen are required to remedy claims of ineffective assistance of

20  counsel (as in Mr. Ayala's case), *in absentia* hearings conducted without notice, and

21  changed circumstances, including those in an individual's home country that create a

22  risk of persecution, torture, or death.  This "important safeguard" is particularly

23  crucial in the immigration context, where judicial decisions have life-altering

24  consequences.  *Id.* at 2318.[18]

25

26  ---

[18] Indeed, the Ninth Circuit has explained that, "[a] motion to reopen is the procedural

27  vehicle through which a petitioner may bring, usually for the first time, an ineffective

28  assistance of counsel claim before the BIA."  *Ontiveros-Lopez v. INS*, 213 F.3d 1121, 1123 (9th Cir. 2000).

1    Particularly where, as is the case for most subclass members, the Court of

2    Appeals has granted a discretionary stay pending its consideration of a denied motion

3    to reopen, there is no principled justification for distinguishing between detention here

4    and the detention in *Casas* involving a challenge to a final removal order.  In both

5    situations, to obtain a stay subclass members were required to demonstrate either a

6    "probability of success on the merits" or that their cases presented "serious legal

7    questions." *Maharaj v.Ashcroft*, 295 F.3d 963, 966 (9th Cir. 2002) (citing *Andreiu v.*

8    *Ashcroft*, 253 F.3d 477, 483 (9th Cir. 2001)).

9    In sum, in light of the serious constitutional problems posed by prolonged

10   detention under section 1231, the Court should construe the statute to authorize

11   adequate bond hearings.  Notably, the government does not contend that section 1231

12   or its implementing regulations preclude such a construction.  Even if section 1231

13   could not be so construed, the Court should hold – following *Casas* – that section

14   1231 does not authorize prolonged detention, and therefore the authority for detention

15   "shifts" to section 1226(a), under which noncitizens subject to prolonged detention are

16   eligible for a bond hearing.

17

18
    **D.    Respondents Have Not Established that the Section 1226(a) Subclass Cannot Prevail as a Matter of Law.**

19   The parties' dispute concerning the Section 1226(a) subclass is narrower than

20   with respect to the other subclasses, because both sides agree that these class members

21   are entitled to bond hearings at least at some point.  *See* Mot. 22.  However, they

22   disagree as to the procedures concerning those hearings.  First, Petitioners contend

23   that the government must hold a bond hearing in every case of prolonged detention,

24   rather than placing the burden on a noncitizen to know of his right to a hearing and

25   request it on his own.  Second, Petitioners contend that the government's existing

26   procedures for bond hearings are defective and fall below minimum due process

27   standards.  *See infra* Section V.

28   To prevail with respect to this subclass, the government must prove that the

36

government's existing procedures are, *as a matter of law*, rigorous enough to satisfy all constitutional concerns in cases of prolonged detention, such that no inquiry into how the procedures work in practice is actually required.  That the government must prove that the procedures are sufficiently rigorous as a matter of law is critical for present purposes because Petitioners have alleged that the existing procedures result in the widespread detention, for prolonged periods, of people who present no danger or flight risk, and have sought discovery to test the practical sufficiency of the existing procedures to prove this claim.  They contend that because the existing hearings place the burden of proof on the detainee, fail to account for the length of detention, provide inadequate notice, are not transcribed, do not require that the IJ find that detention is actually necessary, and afford no appointed counsel, in practice they do not afford these subclass members with a meaningful opportunity to win their release, even if they present no danger or flight risk.  *See, e.g.*, TAC ¶¶ 121. 122.  Those arguments are addressed *infra* Section V.[19]

Respondents also argue at some length that Petitioners Rodriguez and Perez Ruelas, named representatives for the section 1226(a) subclass, "fail to meet the definition" of the subclass based on their individual circumstances, Mot. 18-21, but these arguments go to the adequacy of the class representatives, not to whether the Section 1226(a) claims must fail as a matter of law – and thus are completely irrelevant to the issues presented in the Rule 12(c) motion.  Indeed, it is particularly baffling that the Respondents' raise these arguments here, given that they filed a non-opposition to Petitioners' motion for subclass certification merely *eight days* before they filed the Rule 12(c) motion, in which they expressly conceded that Petitioners'

---

[19] Contrary to the government's claim, see Mot. at 18, the statute at section 1226(a) does not require the noncitizen to bear the burden proof, and is in fact silent with respect to which party bears the burden at a bond hearing.  *See* 8 U.S.C. § 1226(a). The burden placed on noncitizens at certain bond hearings is solely a creation of the regulations, and has already been abrogated by *Tijani* and *Casas* with respect to prolonged detention.  *See* 8 C.F.R. § 236.1.

1  named representatives adequately represent the class.   *See* Gov't Response to Motion

2  for Subclass Certification 3-4 (agreeing that "the class satisfies each of the

3  numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)").

4      In any event, Respondents' arguments with respect to both Petitioners

5  Rodriguez and Perez Ruelas are completely without merit.  And even if they were

6  neither waived nor meritless, Petitioners would be entitled to an opportunity to find

7  new representatives to replace them.[20]

8                              *       *       *

9      For these reasons, prolonged detention without rigorous hearings presents

10 serious constitutional problems under each of the four general detention statutes at

11 issue in this case.  Because the Court can construe those statutes to require rigorous

12 hearings to ensure that prolonged detention remains necessary, it should do so in order

13 to avoid raising the serious constitutional problems presented by the prolonged

14 detention of hundreds of people who pose no danger or flight risk.

15

16

17

18 [20] Respondents argue that Petitioner Rodriguez could have obtained a hearing upon
request and therefore was afforded the relief sought.  However, Petitioner Rodriguez
19 was never made aware that the hearing was available to him, which demonstrates the
20 inadequacy of the Respondents' notice procedures.  *See* dkt. #24, Ex.1(release
documents make no mention of the availability of bond hearings to review release
21 decision).  Regardless, as argued *infra* Section V, the hearing would be inadequate.
22 With respect to Perez Ruelas, Respondents erroneously suggest that he seeks review
of the bond amount set at his bond hearing.  However, he challenges the deficient
23 procedures used at his bond proceeding, not the amount of bond set.  For that reason,
24 the government's citation to *Prieto-Romero* is inapposite: it does not foreclose
constitutional challenges to bond proceedings, and indeed specifically authorized
25 challenges on the ground that the procedures at such hearings did not comport with
26 due process requirements.  534 F.3d 1053, 1067 n.11 (9th Cir. 2008) (holding that IJ's
decision regarding bond amount is a discretionary determination subject to section
27 1226(e), but that legal challenges are not precluded).
28

1
2

## V.     RESPONDENTS HAVE NOT ESTABLISHED THAT BOND HEARINGS PROVIDED TO CLASS MEMBERS ARE CONSTITUTIONALLY ADEQUATE AS A MATTER OF LAW.

3       Respondents' central argument against Petitioners' claim for constitutionally

4   adequate procedures at bond hearings, *see* TAC ¶¶ 116-122,  is that the Court cannot

5   order more or different procedures than what are expressly provided for by the

6   existing regulations.  However, the Ninth Circuit has already directly rejected the

7   premise of Respondents' argument by holding that the government must provide

8   hearings to people with administratively-final orders despite 8 C.F.R. §

9   1003.19(h)(2)(i)(D) and 8 C.F.R. § 1236.1(c)(11), and by placing the burden on the

10  government despite 8 C.F.R. § 1236.1(c)(3), as the Respondents acknowledge, *see*

11  Mot. at 44 n.27.  Thus, the Ninth Circuit has already made clear that these regulations

12  do not apply to cases of prolonged detention, because they would be "constitutionally

13  doubtful" if they did.  *Casas*, 535 F.3d at 951. [21]

14       The same constitutional concerns require that class members' bond hearings

15  meet the other basic standards that Petitioners seek.  Although *Casas* did not describe

16  what substantive requirements or standard of proof should govern in the hearings it

17  ordered, those issues have been addressed in analogous civil detention contexts,

18  including pretrial detention and civil commitment of the mentally ill.  The law in these

19  areas provides critical guidance for resolution of those issues here.  *See Zadvydas*, 533

20  U.S. at 690-91(relying on pretrial detention and civil commitment law to establish

21  constitutional constraints on immigration detention); *Tijani*, 430 F.3d at 1242 (citing

22  *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996), which governs mental competency

---

23
24
25
26
27
28

[21] The BIA has held that Immigration Judges "only have the authority to consider matters that are delegated to them" by statute or regulation, which does not include the power to holding bond hearings for people subject to administratively final removal orders (with one exception not relevant here).  *Matter of Werner*, 25 I&N Dec. 45, n.3 (BIA 2009).  Nonetheless, the Ninth Circuit construed the immigration statutes to require IJs to hold bond hearings for detainees with administratively final orders in both *Tijani* and *Casas*, because of the constitutional problems created by the existing regulatory scheme.

hearings).  Because the facts alleged in complaint demonstrate that additional procedures are necessary to ensure that class members are only subject to prolonged detention where justified, the Respondents cannot demonstrate that Petitioners' claim for a constitutionally adequate hearing fails as a matter of law. [22]

### A.   The Government Has Not Established as a Matter of Law that Due Process Does Not Require Notice of the Bond Hearing and a Bond Hearing Transcript.

Respondents have failed to meet their burden to demonstrate that due process does not require notice and a transcript as a matter of law.  As the experiences of the named representatives demonstrate, the facts alleged in the complaint establish that these minimal protections are vital to protecting against unnecessary prolonged detention.

Notice is the most basic due process requirement.  "No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it."  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 55 (1993) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170-172 (1951) (Frankfurter, J., concurring)).  Indeed, in *Casas*, the Ninth Circuit expressly the found that the government's "Post-Order Custody Review" in that case was procedurally deficient because it was not clear that the petitioner received notice.  535 F.3d at 951-52.  Without adequate notice, class members may be unaware of their entitlement to any available release procedures, inevitably leading to the prolonged illegal incarceration of many people.

Petitioner Rodriguez's example is instructive.  Since his release from detention,

---

[22] This Court ordered hearings that largely comported with these requirements when it granted preliminary injunctions for four individual prolonged detainees in litigation closely related to this case.  *See, e.g.*, Order Granting Motion for Preliminary Injunction, *Martinez v. Gonzalez*, CV06-7609 (C.D. Cal. Jan. 4, 2007) (ordering government to release detainee unless "the government shows by clear and convincing evidence that he is a sufficient danger or risk of flight to justify his detention in light of how long he has been detained already and the likelihood of his case being finally resolved in favor of the government in the reasonably foreseeable future").

1    Mr. Rodriguez has been subject to severe restraints on his liberty.  In its Rule 12(c)

2    brief, Respondents state that he had the opportunity to seek amelioration of the terms

3    of his release.  *See* Mot. at 19.  However, Mr. Rodriguez was never made aware that

4    such process was available to him.  *See* dkt. # 24, Ex. 1(release documents make no

5    mention of the availability of bond hearings to review release decision).   Respondents

6    assert that notice is provided in the form of a "standard issue" Form I-286, *see* Mot. 19

7    n.13, but Mr. Rodriguez did not receive that document.  Discovery may well show

8    that such errors are common.

9        Likewise, the government has failed to show that a transcript is not required as

10    a matter of law.  Due process requires that a "'record of sufficient completeness' be

11    furnished to permit proper consideration of [the defendant's] claims."  *Draper v.*

12    *Washington*, 372 U.S. 487, 495-96 (1963) (quoting *Coppedge v. United States*, 369

13    U.S. 438, 446 (1962)).  While the government is correct that transcripts of the record

14    need not be *verbatim*, only an "equivalent report" is permissible, and the government

15    bears the burden to demonstrate that an alternative "will suffice for an effective

16    appeal."  *Mayer v. City of Chicago*, 404 U.S. 189, 193-94 (1971).

17        The government's answer contains no allegations of facts sufficient to establish

18    that IJ bond memoranda meet these standards, most likely because such memoranda

19    are not remotely similar to transcripts.  The memorandum is prepared after the IJ has

20    rendered a decision – sometimes weeks or months after the hearing.  The Ninth

21    Circuit has recognized the dangers of such post-hoc reconstruction:  "once the court

22    has entered judgment, it may become subject to the very natural weight of its

23    conviction, tending to focus on that which supports its holding."  *Bergerco U.S.A. v.*

24    *Shipping Corp. of India, Ltd.*, 896 F.2d 1210, 1214 (9th Cir. 1990).  Numerous courts

25    have recognized the need for a transcript at bond hearings.  *See, e.g.*, *Mau v. Chertoff*,

26    562 F.Supp.2d 1107, 1119 n.3 (S.D. Cal. 2008) ("review of IJ bail determinations

27    would be aided significantly by a transcript of the proceedings and a written

28    decision").  Moreover, requiring a transcript places a minimal burden on the

1  government because all other immigration proceedings are already recorded.

2      In any event, it is clear that discovery of class members' bond hearing decisions

3  could well reveal consistent errors in those decisions, making the need for transcripts

4  obvious.  The government cannot prevail on this claim as a matter of law.

5  **B.    The Government Has Not Established as a Matter of Law that Due
   Process Does Not Require that the Government Bear the Burden to

6  Establish Flight Risk or Danger By Clear and Convincing Evidence.**

7      The government has also failed to show that the "clear and convincing"

8  standard is not required as a matter of law.  In analogous civil detention contexts, the

9  Supreme Court has held that the "clear and convincing" standard is required to protect

10 an individual's fundamental interest in freedom from imprisonment.  Indeed, in *Tijani*,

11 the court referenced *Cooper v. Oklahoma*, in which the Supreme Court unanimously

12 held that "due process places a heightened burden of proof on the State in civil

13 proceedings in which the individual interests at stake . . . are both particularly

14 important and more substantial than mere loss of money."  517 U.S. 348, 363 (1996)

15 (internal citations and quotations omitted).

16     The experience of class members such as Petitioner Perez Ruelas demonstrate

17 that a heightened burden may be necessary to ensure the release of class members who

18 do not pose a danger or flight risk.  He remains detained because he cannot pay the

19 bond set by the IJ, even though he has shown that he is married to a U.S. citizen and

20 that his application to adjust his status on that basis has been granted, all but ensuring

21 that he will remain in the United States as a lawful permanent resident.  TAC at ¶ 73-

22 74; dkt. # 101, Ex. 23(Perez Ruelas decl. ¶ 11).  A heightened "clear and convincing"

23 standard placed on the government would have prevented this unnecessary detention,

24 which has forced Mr. Perez Ruelas to spend over a year and a half of his life away

25 from his family.

26     The federal courts have required some version of the clear and convincing

27 evidence standard in several cases involving civil detention and other severe

28 deprivations of liberty, including deportation itself.  *See Addington v. Texas*, 441 U.S.

42

418, 427 (1979) (civil commitment); *Foucha v. Louisiana*, 504 U.S. 71 (1992) (commitment of insanity acquittee); *Smith v. Richards*, 569 F.3d 991, 994 (9th Cir. 2009) (acknowledging, in sex offender context, that *Addington*'s "clear and convincing evidence" standard created minimum requirement that is "constitutional in nature"); *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (civil contempt); *Woodby v. INS*, 385 U.S. 276, 285 (1966) (deportation proceedings).  In *Zadvydas*, the Supreme Court relied on this very same case law in describing the due process requirements for post-removal order indefinite detention.  533 U.S. at 690 (citing *Addington* and *Foucha*).

The government argues that a lesser standard is warranted here because the Bail Reform Act (BRA) requires proof of flight risk by a "preponderance" of the evidence. *See United States v. Motamedi*, 767 F.2d 1403, 1407-07 (9th Cir. 1985), but there are two problems with this view.  First, the BRA still applies the heightened "clear and convincing" standard for dangerousness.  18 U.S.C. § 3142(f).  Second, federal pretrial detention provides for both "extensive" procedural protections, including counsel, and strict limits on the length of federal pre-trial detention via the "stringent time limitations of the Speedy Trial."  *U.S. v. Salerno*, 481 U.S. 739, 747, 752 (1987). Where, as here, IJs will be considering the lawfulness of detention far longer than permitted under the Speedy Trial Act, and IJs will be making bond determinations based on both danger and flight risk, the Due Process Clause requires the rigorous "clear and convincing" standard for both.

The government also argues that a heightened standard is not appropriate because the Supreme Court has held that certain constitutional protections from the criminal system do not apply in removal proceedings, citing *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984).  However, the due process concerns that require a "clear and convincing" standard apply not only in the criminal pre-trial system but in various other civil detention contexts as well.  As *Addington* explained, "[o]ne typical use of the [clear and convincing] standard is in civil cases involving . . . quasi-criminal

43

1   wrongdoing by the defendant. The interests at stake in those cases are deemed to be

2   more substantial than mere loss of money."  441 U.S. at 424.  Given that the bond

3   hearing for class members would determine whether an individual can be incarcerated

4   for months or years, the government must make the requisite showing by clear and

5   convincing evidence.  *See Reynoso-Rodriguez v. Napolitano*, No. CIV S-08-321, 2009

6   WL 3157477, at *8 (E.D. Cal. Sept. 28, 2009) (holding that government must

7   establish "clear and convincing" evidence to order detention at *Casas* hearing).

8
9
10       **C.**    **The Government Cannot Demonstrate as a Matter of Law that Detention is Only Permitted Where No Conditions of Release Could Reasonably Assure the Detainee's Presence in the Event of Removal or to Protect the Community From Serious Danger.**

11          **1.**    **Detention is only permitted where no other alternatives will prevent danger or flight risk.**

12       The government advances no plausible argument against Petitioners' claim that

13   prolonged detention hearings must apply a rigorous "no conditions of release

14   standard" – the same standard applied to short detentions in the criminal pre-trial

15   context to ensure that detention is actually necessary.

16       The constitutional standard proposed by Petitioners is compelled by the nature

17   of the inquiry at the bond hearing and case law in similar civil detention contexts.  The

18   purpose of a bond hearing is to evaluate "the necessity of  . . .  continued detention."

19   *Casas*, 535 F.3d at 949.  That evaluation obviously requires an immigration judge to

20   consider if detention is "necessary," or instead whether less restrictive alternatives -

21   such as electronic monitoring - can satisfy the government's concerns regarding flight

22   risk and danger.

23       The law governing civil detention in other contexts makes clear that in order to

24   justify the prolonged detention here, the Due Process Clause requires an Immigration

25   Judge to find "no conditions" other than detention that can satisfy the government's

26   interests.  With respect to pre-trial detention, federal magistrate and district judges are

27   required to consider a variety of alternatives to incarceration, and may order detention

28   only if they conclude that none of these alternatives will reasonably assure the

defendant's presence at trial and the safety of the community.  *See* 18 U.S.C. § 3142(c)(1)(B); 18 U.S.C. § 3142(e).  The Supreme Court commented approvingly on this rigorous scheme in upholding the pre-trial detention statute with respect to detention based on danger.  *See United States v. Salerno*, 481 U.S. 739, 750 (1987) (recognizing that the "no conditions of release" standard strikes appropriate balance of interests); *United States v. Aileman*, 165 F.R.D. 571, 579 (N.D. Cal. 1996) (exhaustively reviewing pre-trial detention case law and concluding "the proper focus is . . . not how much threat the defendant would pose if he were as free as any law-abiding citizen, but how much threat he would pose if he were released on the most restrictive available conditions").  The Supreme Court and Ninth Circuit have applied the same rule in other civil detention contexts.  *See Spallone v. U.S.*, 493 U.S. 265, 276 (1990) ("in selecting contempt sanctions, a court is obliged to use the least possible power adequate to the end proposed") (quotations omitted); *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (striking down measures to incarcerate civil detainees because government's procedures "[we]re employed to achieve objectives that could be accomplished in so many alternative and less harsh methods").

The government's sole argument against Petitioners' claims regarding this constitutionally-required standard is that it somehow "intrudes" on IJs' discretion in making bond determinations, apparently in contravention of section 1226(e), which bars certain challenges to individual bond decisions.  The government's argument is incorrect for at least two reasons.  First, section 1226(e) is not implicated by Petitioners' claims, which seek prospective relief to compel constitutionally-adequate bond hearings, not review of individual bond determinations.  Second, the due process standards described here are consistent with existing regulations and BIA case law, *see Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).  Petitioners argue simply that, in evaluating the factors set forth in the regulations and *Guerra*, the IJ has to determine whether any alternative set of release conditions – such as electronic monitoring, curfews or other intensive reporting requirements – could accomplish the

45

1 purpose served by detention.[23]

**2. The determination of whether prolonged detention is justified must consider the length of past detention and likely length of future detention.**

Due process also requires that bond hearings consider both the length of detention that an individual has already endured, and the likelihood that he will suffer continued detention in the future pending final resolution of his immigration case.  In the pretrial detention context, courts recognize that in determining whether detention has become unconstitutionally prolonged, they must consider "the non-speculative length of expected [future] confinement." *Aileman*, 165 F.R.D. at 681.  *Cf. Tijani*, 430 F.3d at 1242 (noting anticipated length of future proceedings and detention in assessing due process claim).   If discovery reveals that detainees are routinely incarcerated for years, it should be obvious that the IJ should have to take this fact into account when determining if detention is justified.

**D. The Government Has Not Established that Petitioners' Right to Appointed Counsel Claim Fails as a Matter Of Law.**

Respondents fail to meet their burden to demonstrate that appointed counsel is not required for constitutionally adequate bond hearings as a matter of law. Respondents point to a statute providing that noncitizens have a right to counsel at their own expense and a Tenth Circuit opinion holding that there is no right to appointed counsel in deportation proceedings in general, but fail to address Petitioners' specific claim that their prolonged detention requires the appointment of counsel at their six month bond hearings, which will determine whether they will be incarcerated potentially for years.  Petitioners' claim does not seek appointed counsel

___

[23] Defendants do not specifically attack Petitioners' claim that rigorous hearings require a heightened standard for determining dangerousness. *See* Complaint at 28-29.  In any event, discovery could very well reveal that existing hearings result in class members being detained as dangers even if they have little or no criminal history, thus requiring use of a heightened standard.  Therefore, this claim is clearly not subject to dismissal under Rule 12(c).

1    outside this narrow setting. Because appointed counsel is essential to protecting class

2    members' fundamental interest in avoiding prolonged and unnecessary detention, and

3    because appointed counsel is required in similar civil detention contexts, Respondents

4    have not demonstrated that the claim will fail as a matter of law.

5        The Supreme Court has held that the Due Process Clause can require the

6    appointment of counsel in civil cases, and that such appointment is presumptively

7    required when physical liberty is at stake. *See generally Lassiter v. Dept. of Soc.*

8    *Servs.*, 452 U.S. 18, 25 (1981). In *Lassiter*, the Court surveyed its case law on the

9    right to appointed counsel and distinguished between two classes of cases – those

10   where a litigant "may lose his physical liberty if he loses" the case, and others in

11   which physical liberty is not at stake. *Id*. at 25. Where physical liberty is at stake,

12   *Lassiter* found that appointed counsel is presumptively required, relying on the

13   Court's prior holding that due process requires appointed counsel for juveniles in civil

14   delinquency proceedings, *In re Gault*, 387 U.S. 1, 41 (1967), and that due process

15   requires appointed assistance (if not a licensed attorney) for convicted prisoners facing

16   civil commitment, *Vitek v. Jones*, 445 U.S. 480, 497, 500 (1980). *See also Walker v.*

17   *McLain*, 768 F.2d 1181, 1183 (10th Cir. 1985) ("The right to counsel, as an aspect of

18   due process, turns not on whether a proceeding may be characterized as 'criminal' or

19   'civil,' but on whether the proceeding may result in a deprivation of liberty.").

20       The government may argue that appointed counsel is only required where the

21   *purpose* of the civil proceeding is to determine whether to detain an individual,

22   whereas in the immigration context, detention is incident to the removal proceeding.

23   However, the relevant Supreme Court authority never draws this distinction – it is

24   focused solely on whether or not the proceedings result in prolonged deprivation of

25   physical liberty -- and in fact appointed counsel is already required in other contexts in

26   which detention is ancillary to another civil proceeding. For example, the vast

27   majority of jurisdictions -- including the Ninth Circuit -- have held that appointed

28   counsel is required for civil contempt proceedings that result in incarceration. *See,*

47

1   *e.g.*, *In re Grand Jury Proceedings*, 468 F.2d 1368, 1368 (9th Cir. 1972) (per curiam).

2       The government also argues that issues of counsel are only appropriately raised

3  on a case-by-case basis, citing two cases in which courts determined whether

4  noncitizens were prejudiced by a violation of their statutory right to counsel. *See* Mot.

5  at 45.  However, a showing of prejudice is only required where an individual

6  challenges past violations of the right to counsel, not in systemic challenges that seek

7  prospective relief. *Cf. Walters v. Reno*, 145 F.3d 1032, 1044 (9th Cir. 1998)

8  (questioning whether plaintiffs must demonstrate prejudice in order to prevail on due

9  process challenge to INS administrative procedures).

10      In any event, Petitioners can show prejudice, insofar as they may prove through

11 discovery that counsel is critical to ensuring that class members are able to effectively

12 present their claims at their prolonged detention hearings.   Bond proceedings can

13 involve factually and legally complex matters, and detainees may be unable to

14 conduct critical investigation while in detention, arrange for supporting declarations

15 and testimony, and disprove allegations made by the government, such as those

16 involving inaccurate criminal history. *See* dkt. #101, Ex. 24 (Farias Decl. of Oct. 12,

17 2010 ¶ 8, ¶ 11) (Mr. Farias Cornejo did not understand the process for applying for

18 cancellation of removal and needed the assistance of an attorney to, among other

19 things, show that an outstanding warrant was not his).

20                         **CONCLUSION**

21      The Ninth Circuit has directed this Court to "not lose sight of the overarching

22 issue: The circumstances, if any, that warrant prolonged detention without [a]

23 hearing." *Rodriguez*, 591 F.3d at 1124.  For the reasons set forth above, the

24 government has not shown that any of the general detention statutes can, as a matter of

25 law, be construed to authorize prolonged detention without a hearing without creating

26

27

28

1   serious constitutional problems.  Therefore, the Court should deny the government's

2   motion under Rule 12(c).

3                                                  Respectfully submitted,

4

5   Dated:  December 20, 2010                         s/ Ahilan T. Arulanantham
                                                   AHILAN T. ARULANANTHAM
6                                                  Attorney for Petitioners

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28