TONY WEST
Assistant Attorney General,
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
Tel:  (202) 532-4135
Fax:  (202) 305-7000
E-mail: theodore.atkinson@usdoj.gov
NICOLE R. PRAIRIE
Trial Attorney
EREZ R. REUVENI
Trial Attorney
ELIZABETH L. WALKER
Trial Attorney

Attorneys for Respondents

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*, | Case No. CV 07-3239-TJH (RNBx) |
| Petitioners, | RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF THEIR RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| ERIC H. HOLDER, JR., *et al.*, | |
| Respondents. | |

# TABLE OF CONTENTS

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    Petitioners cannot prevail unless they can show that there is a classwide violation
      that can be addressed through uniform classwide relief. . . . . . . . . . . . . . . . . . . . . 4

II.   Petitioners have not shown that they can prevail on the merits of their statutory
      and constitutional claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    The Court should disregard Petitioners' attempts to conflate indefinite
            detention with prolonged detention. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    No Court has ever determined that detention for six months is
            "prolonged," and the relief Petitioners seek has been explicitly
            rejected in at least one district.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.    Respondents are entitled to judgment on the section 1225(b) subclass
            claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.    No arriving alien subject to detention under section 1225(b)
                  has due process rights regarding their admission or exclusion. . . . 13

            2.    Even if arriving aliens defined under section 1101(a)(13)(C)
                  had rights regarding their admission or exclusion, the doctrine
                  of constitutional avoidance is not at issue here. . . . . . . . . . . . . . 16

      D.    Respondents are entitled to judgement with respect to the section
            1226(c) subclass claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      E.    Respondents are entitled to judgment with respect to the section
            1231(a)(6) subclass claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III.  Respondents are entitled to judgment with respect to Petitioners'
      claims regarding the adequacy of bond hearings because due process
      does not require the conditions for bond hearings that Petitioners
      seek. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      A.    Petitioners cannot establish that they are entitled to notice of bond
            hearings or bond hearing transcripts, and their arguments avoid the
            substance of Respondents' arguments on these issues. . . . . . . . . . . . . . 23

      B.    Petitioners cannot establish that due process requires a heightened burden
            and standard of proof in immigration bond hearings. . . . . . . . . . . . . . . 24

      C.    Petitioners cannot establish a right to appointed counsel during
            immigration bond hearings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Addington v. Texas,
    441 U.S. 418 (1979)................................................. 24

Adler v. DHS,
    No. 09-4093, 2009 WL 3029328 (S.D.N.Y. Sept. 22, 2009)...................... 20

Alli v. Decker,
    635 F. Supp. 2d 535 (M.D. Pa. 2009). ............................... 19, 20, 21

Baltazar-Alcazar v. INS,
    386 F.3d 940 (9th Cir. 2004). ......................................... 25

Barrera-Echavarria v. Rison,
    44 F.3d 1441 (9th Cir. 1995). ....................................... 9, 14

Beqir v. Clark,
    220 Fed. Appx. 469, 2007 WL 201108 (9th Cir. 2007)........................ 18, 22

Casas-Castrillon v. DHS,
    535 F.3d 942 (9th Cir. 2008). ..................................... 9, 11, 25

Cholla Ready Mix Inc. v. Civish,
    382 F.3d 969 (9th Cir. 2004). ......................................... 4

Clark v. Martinez,
    543 U.S. 371 (2005)........................................... 13, passim

Demore v. Kim,
    538 U.S. 510 (2003)............................................ 3, passim

Diouf v. Holder,
    No. 06-07452, 2009 WL 6331130 (C.D. Cal. Sept. 9, 2009). .................. 9, 21

Diouf v. Mukasey,
    542 F.3d 1222 (9th Cir. 2008). .................................... 9, passim

Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council,
    485 U.S. 568 (1988)................................................. 17

Flores-Powell v. Chadbourne,
    677 F. Supp. 2d 455 (D. Mass 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Goldberg v. Kelly,
    397 U.S. 254 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hernandez de Anderson v. Gonzales,
    497 F.3d 927 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Idema v. Dreamworks, Inc.,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Jie Lin v. Ashcroft,
    377 F.3d 1014 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Kansas v. Hendricks,
    521 U.S. 346 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Kaplan v. Tod,
    267 U.S. 228 (1925). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Kwai Fun Wong v. United States,
    373 F.3d 952 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Landon v. Plascencia,
    459 U.S. 21 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Lassiter v. Dept. of Soc. Servs.,
    452 U.S. 18 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Luna-Aponte v. Holder,
    —F. Supp. 2d –, 2010 WL3547707 (W.D.N. Y. Sept. 10, 2010). . . . . . . . . . . . . . . . . 21

Ly v. Hansen,
    351 F.3d 263 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Martinez v. Gonzales,
    504 F. Supp. 2d 887 (C.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Memphis Light, Gas and Water Div. V. Craft,
    436 U.S. 1 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Nadarajah v. Gonzales,
        443 F.3d 1069 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Pierre v. Weber,
        No. 09-6345, 2010 WL. 1373710 (D.N.J. March 31, 2010). . . . . . . . . . . . . . . . . . . . 21

Prieto-Romero v. Clark,
        534 F.3d 1053 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12

Ray v. Gonzales,
        439 F.3d 582, 586-87 (9th Cir.2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Rios-Berrios v. I.N.S.,
        776 F.2d 859, 862 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Rodriguez v. Hayes,
        591 F.3d 1105 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, passim

Rust v. Sullivan,
        500 U.S. 173 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Shaughnessy v. United States ex. Rel. Mezei,
        345 U.S. 206 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Singh v. Chertoff,
        No. 08-70434, 2009 WL 1098493 (S.D. Cal. April 23, 2009). . . . . . . . . . . . . . . . . . 23

Singh v. Holder,
        No. 09-3012, 2010 WL 702246 (N.D. Cal. Feb. 25, 2010). . . . . . . . . . . . . . . . . . . . 23

Smith v. Doe,
        538 U.S. 84 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Szabo v. Bridgeport Mach., Inc.,
        249 F.3d 672, 677 (7th Cir.2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tijani v. Willis,
        430 F.3d 1241 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 20, 25

United States v. Reyna-Tapia,
        328 F.3d 1114 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Comstock,
    130 S. Ct. 1949 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United Steel Workers v. ConocoPhillips Co.,
    593 F.3d 802 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Vermont Yankee Nuclear Power Corp. v. Nat. Res. Defense Council, Inc.,
    435 U.S. 519 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Weir v. Sabol,
    No. 09-1938, 2010 WL 1526392 (M.D. Pa. April 15, 2010). . . . . . . . . . . . . . . . . . . . . . 20

Wilson v. Mukasey,
    No. 08-1646, 2010 WL 456777 (W.D. La. Feb. 2, 2010). . . . . . . . . . . . . . . . . . . . . . . 20

Matter of X-K-,
    23 I. & N. Dec. 731 (BIA 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Zadvydas v. Davis,
    533 U.S. 678 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, passim

Zepeda v. U.S. I.N.S.,
    753 F.2d 719 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## **STATUTES**

8 U.S.C. § 1101(a)(13)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8 U.S.C. § 1101(a)(20). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

8 U.S.C. §1182(d)(5)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

8 U.S.C. § 1225(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

8 U.S.C. § 1226(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 23

8 U.S.C. §1226(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

8 U.S.C. § 1231(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 21, 22

## REGULATIONS

8 C.F.R. § 1.1(p). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

8 C.F.R. § 241.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## FEDERAL RULES OF PROCEDURE

Fed. R. Civ. P. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8

Fed. R. Civ. P. 23(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 23(d)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## **Introduction**

In deciding this motion, the Court is presented with three straightforward issues:  (1) Do the challenged statutes authorize detention for longer than six months?  (2) Are aliens detained under the challenged statutes constitutionally entitled to a bond hearing once they have been detained for six months or longer, regardless of their immigration status or individual circumstances? and (3) Does due process require the changes to bond hearings that Petitioners propose?

The answers to those questions show that Respondents are entitled to judgment as a matter of law.  As to the first issue, the four challenged statutes authorize detention for longer than six months – a fact Petitioners do not and cannot seriously contest in light of decisions by the Supreme Court, the Ninth Circuit, and this Court concerning the challenged statutes.  As to the second issue, which is the core issue in this case, Petitioners cannot show that due process requires this Court to order that *all* aliens – regardless of the statute authorizing their detention, and regardless of their immigration status and individual circumstances – are entitled by due process to a bond hearing before an immigration judge once they have been detained for six months or longer.  Finally, Petitioners cannot show that due process requires this Court to order the changes Petitioners propose to immigration bond hearings.  In these matters of statutory and constitutional interpretation the law is clear, and this Court should grant Respondents' motion.

Petitioners' arguments in opposition to this motion fall into two broad categories.  In one category, Petitioners make a number of arguments about what they are required to prove in this class action, and what the Court is required or permitted to order as relief to the class.  Specifically, Petitioners contend that they do not have to prove that immigration detention becomes unconstitutional at six months.  Instead, Petitioners argue that they need only show that prolonged detention of *some* length under the challenged statutes is unconstitutional.

According to Petitioners, if they can establish that some prolonged detention is unconstitutional, then this Court can fashion whatever relief it deems appropriate. Petitioners vaguely assert that may mean hearings for aliens detained after one year, or it may mean hearings based on some other criteria. *See* Pet. Br. at 2. In fact, Petitioners argue that even if due process does *not* require a hearing at six months, the Court can and should just order hearings at six months anyway, because that would be – in Petitioners' words – "simply the most reasonable way to avoid the serious constitutional problems present in *some* cases arising under each statute . . ." Pet. Br. at 2 (emphasis added).

Petitioners fundamentally misstate the law concerning the limitations inherent in class action cases such as this. By pursuing this action as a class action, Petitioners cannot prevail unless they show that as a class (or subclass) their common shared circumstances – detention longer than six months under one of four statutes without a bond hearing – entitles them to uniform relief demanded by due process. And this Court can only grant *uniform* relief (as opposed to individual relief to any individual class member), and only if the relief requested by Petitioners is required by due process. Put another way, if Petitioners cannot show *as a class* that due process entitles them to the uniform relief they seek – bond hearings for all aliens after six months of detention – then Petitioners cannot prevail and judgment should be granted to Respondents. As discussed below, Petitioners cannot meet this burden, and the Court should grant judgment to Respondents on the pleadings.

Turning to the merits, Petitioners argue that detention for longer than six months under any of the detention statutes at issue is unconstitutional in the case of every alien so detained. Petitioners cannot prevail on their core claim as a matter of law. As the Ninth Circuit has recognized, each statute has a different purpose under immigration law, and each statute affects different classes of non-citizens differently. Thus, as courts recognize, the constitutionality of detention

for six months or longer must be examined in the broader context of each statutory scheme.  In examining each statutory scheme at issue, this Court must conclude that Petitioners cannot prevail on their stated claims, for the following reasons:

First, as courts have repeatedly recognized, arriving aliens may be detained for six months or longer under 8 U.S.C. § 1225(b) because they do not have constitutional rights regarding their admission or exclusion, and are only entitled to release through parole at the discretion of the Government.  Petitioners attempt to avoid this long-recognized set of principles by arguing that the statute also includes the detention of all lawful permanent residents who travel abroad and seek re-admission; that the lawful permanent resident aliens detained under section 1225(b) may have greater rights regarding their admission or exclusion; and that the statute cannot be read as treating newly-arriving aliens and lawful permanent residents differently because they are detained by the same indivisible language.  As explained below, Petitioners' various arguments concerning section 1225(b) are incorrect.

Second, Petitioners argue that the Ninth Circuit has construed 8 U.S.C. § 1226(c) only to apply to "expeditious" proceedings, but none of the cases cited by Petitioners supports their claim that detention under section 1226(c) for longer than six months automatically raises constitutional concerns.  Instead, the Supreme Court, the Ninth Circuit, and other courts have recognized that the constitutionality of continued mandatory detention involves a fact-intensive examination of the individual circumstances in each case.  Because a fact-intensive, case-by-case approach is fundamentally inconsistent with the classwide, uniform relief Petitioners seek for all section 1226(c) class detainees, this Court cannot grant the classwide claims or order the classwide relief requested as to the section 1226(c) subclass.

1  Third, Petitioners argue that this Court should not look to its prior decision

2  in *Diouf* in addressing prolonged detention under 8 U.S.C. § 1231(a)(6) because

3  *Diouf* was limited to the facts of Diouf's individual case. But this Court's decision

4  in *Diouf* addresses the very constitutional and statutory interpretation issues

5  presented here, and the principles this Court articulated there should be followed

6  here.

7  Finally, Petitioners cannot prevail on their claims concerning the adequacy

8  of bond hearings because they cannot establish that the procedures and conditions

9  they seek to have imposed are constitutionally mandated.

10  <u>**Argument**</u>

11  **I.    Petitioners cannot prevail unless they can show that there is a classwide violation that can be addressed through uniform classwide relief.**

12  At the outset, Respondents must address three arguments Petitioners

13  advance concerning their burden in this class action and the relief this Court may

14  order.[1] Combined, these arguments demonstrate an attempt by Petitioners to

15  distance themselves from the claims they have made in this class action, while at

16  the same time attempting to broaden the grounds on which they may prevail and

17

18  _____

[1]    Petitioners begin their opposition by trying to suggest that Respondents have conceded critical facts asserted in the Third Amended Complaint ("TAC"). Petitioners' Opposition Brief ("Pet. Br.") at 4-8. Contrary to Petitioners' assertions: (1) the TAC does not allege that the Government has a practice and policy of detaining "hundreds" of non-citizens "for years" (Pet. Br. at 4-5 & n.1); (2) the Complaint does not allege that "many" class members pose no risk of danger or flight, and the criminal history and length of detention of three class representatives says nothing about flight risk and in any event cannot be imputed to "many" class members (*id.* at 5 & n.2); (3) the TAC does not allege that "many class members will ultimately prevail", but instead states Petitioners' opinion that three class representatives have good defenses to removal (*id.* at 5 & n.3); (4) the TAC does not allege that the Government's procedures inaccurately assess flight risk or danger or likelihood of success in removal proceedings, and Petitioners notably cite to no paragraphs in the TAC where that allegation is contained (*id.* at 5 & n.4); and, (5) the TAC does not contain the allegation that "none of the [G]overnment's detention procedures" require the Government to consider alternatives to detention or the length of detention in considering release. Even if pled in the TAC, this court is under no obligation to consider bold allegations that many class members will prevail in their immigration cases and do not present risk of danger of flight. For purposes of this motion, this Court need not accept as true Petitioners' conclusory allegations, unwarranted factual inferences, or legal conclusions. *Cholla Ready Mix Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

1   the relief this Court may – or, as Petitioners argue, *must* – order.

2       First, Petitioners improperly characterize the Ninth Circuit's decision in

3   *Rodriguez v. Hayes,* 591 F.3d 1105 (9th Cir. 2009), as instructing this Court to

4   grant the very relief Petitioners seek.  *See* Pet. Br. at 2-3, 16, and 19-20.

5   Petitioners' arguments should be rejected outright.  As Petitioners themselves have

6   previously acknowledged, *Rodriguez* determined only whether the case could go

7   forward as a class action.  *See* Joint Stipulation Regarding Discovery [Dkt. # 103],

8   at 34.  By no means did the Ninth Circuit encourage this Court to rule in favor of

9   Petitioners, or grant the type of relief Petitioners seek.  The procedural decision on

10  class certification is not indicative of the final outcome on the merits, and

11  Petitioners are incorrect to represent *Rodriguez* as sanctioning judgment in their

12  favor.  *See United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 808-09 (9th

13  Cir. 2010) (class certification not indicative of success on the merits); *Szabo v.*

14  *Bridgeport Mach., Inc.*, 249 F.3d 672, 677 (7th Cir.2001) ("A class certification

15  decision isn't tied to the merits of the claim.").

16      Second, Petitioners argue that the Court need not find that detention lasting

17  six months is unconstitutionally prolonged; instead, they claim that they need only

18  show that "the prolonged detention without rigorous procedures [sic] of people

19  who pose no danger, no flight risk, and who are likely to win their removal cases

20  presents serious constitutional concerns; and that this Court can order some form

21  of class-wide relief to remedy these problems."  Pet. Br. at 16.  This amounts to a

22  complete reformulation by Petitioners of their core constitutional claim.

23  Petitioners simply cannot – in an effort to defeat dismissal – unmoor their

24  challenge to the constitutionality of prolonged detention from their claim that it

25  becomes unconstitutional at six months regardless of an alien's individual

26  circumstances. The Ninth Circuit did not sanction certification of a class of non-

27  citizens who are not dangerous or flight risks and who have been detained for a

28  "prolonged" period.  The Ninth Circuit instead recognized that the issue framed by

1  Petitioners as whether "an individual [may] be detained for over six months

2  without a bond hearing under a statute that does not explicitly authorize detention

3  for longer than that time without generating serious constitutional concerns."

4  *Rodriguez,* 591 F.3d at 1105, 1115 (9th Cir. 2009).  That is Petitioners' case, and

5  this Court cannot ignore the fact that the definition of the class is inextricably tied

6  to Petitioners' claim that detention beyond six months is constitutionally suspect.

7  *See, e.g.*, Pet. Br. at 21 ("Because detention beyond six months without hearings

8  would pose serious constitutional concerns . . .").  As the Ninth Circuit

9  recognized, the claim presented in Petitioners' complaint is that detention for

10 longer than six months is unconstitutional, regardless of any alien's individual

11 circumstances.[2]  That is the claim upon which this action will succeed or fail.  If

12 Petitioners cannot show that detention for longer than six months, regardless of

13 individual circumstances, is unconstitutional, then they cannot prevail.

14      Third, Petitioners make the extraordinary argument that even if detention

15 for six months does *not* raise constitutional concerns, the Court should order bond

16 hearings at six months anyway, because that would be "the most reasonable way to

17 avoid the serious constitutional problems" Petitioners allege in this case.  Pet. Br.

18 at 2.  This is an astonishing argument because it invites this Court to substitute its

19 judgment for congressional action, which is not permitted under concepts of

20 separation of powers.  *See*, *e.g.*, *Vermont Yankee Nuclear Power Corp. v. Nat. Res.*

21 *Defense Council, Inc.*, 435 U.S. 519, 524 (1978) (a court may not substitute its

22 judgment for legislative or executive action, even where the court might have a

23 more reasonable interpretation of the proper course of action).

24      Moreover, Petitioners' argument ignores the fact that any classwide relief

25 ordered may not be disassociated from the claimed injury.  Rule 23(b)(2) requires

26 Petitioners to show that the Government has "acted or refused to act on grounds

27

28      [2]  "[T]he determination of whether Petitioner is entitled to a bond hearing will rest largely on interpretation of the statute authorizing his detention.  The particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question."  *Rodriguez*, 591 F.3d at 1124.

that apply generally to the [sub]class, so that final injunctive relief or . . . declaratory relief is appropriate respecting the [sub]class as a whole." Fed. R. Civ. P. 23(b)(2). The Court cannot impose classwide relief unless that classwide relief is constitutionally demanded. Here, the Court cannot order bond hearings at six months simply because it is "reasonable." The Court can only order classwide bond hearings if such hearings are constitutionally *required*. Petitioners' citation to *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129 (C.D. Cal. 2001), and other cases is misguided. *See* Pet. Br. at 17-18. Those cases merely instruct that a motion to dismiss may be denied if predicated solely on the inability of the court to offer the precise relief sought, as long as it can offer *some* relief. What these cases stand for is the proposition that a court can fashion some relief required to remedy a violation, even if it is not the specific relief requested. The cases do not support Petitioners' argument that this Court in this case can fashion some relief even if it is *not* required to remedy a violation. Put simply, this Court cannot order bond hearings at six months unless that is a remedy required by due process. By arguing that the Court can order bond hearings at six months' detention because it is a "reasonable way" to address *some* alleged violations, Petitioners invite this Court to deviate from Rule 23(b) and make the kind of policy choices left to the political branches. The Court should decline that invitation.

## II.  Petitioners have not shown that they can prevail on the merits of their statutory and constitutional claims.

Petitioners cannot prevail because their challenges to the constitutionality of each statutory scheme at issue fails as a matter of law. Notably, Petitioners do not quarrel with the principle evidenced by the Supreme Court's and Ninth Circuit's approach to prolonged detention cases that the issue of whether Petitioners or those they represent are entitled to a bond hearing turns in part on examining the statutory and due process claims within the context of each of the four immigration detention statutes. *Compare, e.g., Demore*, 538 U.S. at 515, and *Zadvydas*, 633 U.S. at 689 (applying different constitutional analysis with respect

1    to pre- and post-final order detention statutes); *see also Casas-Castrillon*, 535

2    F.3d at 945 (9th Cir. 2008) (quoting *Prieto-Romero*, 534 F.3d at 1057 (9th Cir.

3    2008)) (no single due process analysis will apply equally with respect to each of

4    the subclasses, because "'[w]here an alien falls within [the] statutory scheme can

5    affect whether his detention is mandatory or discretionary, as well as the kind of

6    review process available to him if he wishes to contest the necessity of his

7    detention'").

8        After examining the four statutory detention schemes at issue here,[3] the case

9    law interpreting those statutes, and Petitioners' opposition to this motion, the

10   Court should conclude that Petitioners cannot prevail on their statutory[4] or

11   constitutional claims, and grant judgment to Respondents.

12   **A.    The Court should disregard Petitioners' attempts to conflate indefinite detention with prolonged detention.**

13       In examining the issue of prolonged detention in the context of the detention

14   statutes at issue, it is important to distinguish those cases that address *indefinite*

15   detention as opposed to *prolonged* detention, because Petitioners at times conflate

16

17   _____

18   [3]  Four statutes are challenged, but Petitioners do not contest that aliens detained under section 1226(a) are entitled to a bond hearing as a matter of due process. Petitioners contest the constitutional adequacy of the hearings afforded aliens detained under section 1226(a), not the availability of hearings.

19

20   [4]  Petitioners' opposition does not contest Respondents' argument that the challenged statutes authorize detention for longer than six months. Nor can they, given that the Supreme Court, the Ninth Circuit, and this Court have recognized that the statutes themselves authorize detention for more than six months. *See Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1445-46 (9th Cir. 1995) ("Because an alien who has not been paroled must by definition be detained, and because Congress has certainly been aware that deportation cannot in all cases be immediately effected, it seems difficult not to conclude that the statutory scheme implicitly authorizes prolonged detention"); *Demore v. Kim*, 538 U.S. 510, 521 (2003) (detention of alien for longer than six months in case before the Court deemed constitutional under 8 U.S.C. § 1226(c)); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (although detained for more than five years, "Prieto-Romero's detention continues to be authorized by [8 U.S.C.] § 1226(a) . . ."); *Casas-Castrillon v. DHS*, 535 F.3d 942 (although detained for more than seven years, the Government "retains authority to detain [petitioner] under section 1226(a). . ."); *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) (detention for more than three years authorized by 8 U.S.C. § 1231(a)(6), and detainee is entitled to habeas relief only upon demonstration that the detention is indefinite (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)); *Diouf v. Holder*, No. 06-7452, 2009 WL 6331130 (C.D. Cal. Sept. 9, 2009) (Hatter, J.).

21

22

23

24

25

26

27

28

1  the two constitutional issues as one.

2      The Supreme Court has examined the constitutionality of indefinite

3  detention of post-order aliens in *Zadvydas v. Davis*, and the Ninth Circuit has

4  examined indefinite detention in *Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir.

5  2006), and, to some extent, in *Prieto-Romero v. Clark*.  In *Zadvydas*, the Supreme

6  Court held that, excluding certain special cases, the indefinite detention of aliens

7  with judicially final orders of removal posed serious constitutional concerns

8  because indefinite detention served no legitimate statutory purpose.  533 U.S. at

9  699-700.  Indeed, if *Zadvydas* contains any instruction about prolonged detention,

10  it is that prolonged detention is constitutionally *permissible* (at least where an

11  order of removal has become judicially final) regardless of the length of detention,

12  so long as there is a significant likelihood that removal will occur in the

13  reasonably foreseeable future.  *Id.* at 700.  The Ninth Circuit similarly recognized

14  the distinction between indefinite and prolonged detention in *Prieto-Romero*,[5] and

15  held in *Nadarajah* that indefinite detention under any immigration detention

16  statute would be constitutionally impermissible.[6]

17

18

19

---

20  [5]   The Ninth Circuit concurred with *Zadvydas* in *Prieto-Romero* and concluded that
21  prolonged detention is – contrary to Petitioners' claim here – statutorily authorized by
sections 1226(a) and 1231(a)(6).  534 F.3d at 1063.

22  [6]   Petitioners have largely and correctly (but not completely, *see* Pet. Br. at 22)
23  constrained their characterization of *Nadarajah* as a decision addressing indefinite
detention rather than prolonged detention.  *Nadarajah* involved an unusual case of an
24  alien who had prevailed at every step of his removal proceedings, but whose case was
referred by the Board of Immigration Appeals to the Attorney General for a "review"
that was not governed by any particular process and was subject to no judicial review,
25  during which time Nadarajah remained in detention potentially indefinitely.  443 F.3d at
1081-82.  Since *Nadarajah*, the Ninth Circuit has been careful to note that the case
26  involves issues of indefinite detention, and have tied its reasoning to *Zadvydas* in this
regard.  *See Prieto-Romero*, 534 F.3d at 1064 ("*Nadarajah*, like *Zadvydas* . . . thus
27  involved the detention of an alien whom the government could not lawfully remove.");
*Rodriguez v. Hayes*, 591 F.3d at 1115 (citing *Nadarajah* and noting that "indefinite
28  detention under these statutes poses the same constitutional concerns present in
*Zadvydas*.  Consequently, *Nadarajah*, like *Zadvydas*, falls outside the purview of
decisions addressing the specific issue of prolonged detention at issue in this case.

1
2

**B.    No Court has ever determined that detention for six months is "prolonged," and the relief Petitioners seek has been explicitly rejected in at least one district.**

3      It is also important in examining the constitutional claims that the Court

4    consider Respondents' argument that neither the Supreme Court nor the Ninth

5    Circuit have ever indicated that detention of six months should be considered

6    "prolonged" detention.[7]   At most, the Ninth Circuit has stated (with regard to

7    section 1226(c) detention only) that pre-final order detention under section

8    1226(c) governs detention so long as the removal proceedings are "expeditious."

9    *See Tijani v. Willis*, 430 F.3d at 1242; *Casas-Castrillon*, 535 F.3d at 948.[8]

10      But "expeditious" was not defined by the Ninth Circuit by reference to any

11   particular time period.   In *Tijani,* the Court only stated that "[t]wo years and eight

12   months or process is not expeditious."   430 F.3d at 1242.   However, at the same

13   time, *Tijani* was not decided solely by reference to the period of time Tijani

14   remained in detention; the Court relied on a factual analysis in reaching its

15   conclusion.  *See* 430 F.3d at 1242 (considering Tijani's immigration status, claims

16   to relief, and further time Tijani was expected to be detained).

17      The Ninth Circuit in *Prieto-Romero* again addressed prolonged detention,

18   albeit briefly.  It did not explain when detention became so prolonged that it raised

19   constitutional concerns, and so it provides little guidance on the issue.  Similarly,

20   *Casas-Castrillon* addressed prolonged detention, but more narrowly than

21   Petitioners suggest.  There the Ninth Circuit held that the detention of a legal

22   permanent resident for seven years constituted prolonged detention that entitled

23   him to a bond hearing – a period of time by no means comparable to the six-month

24

25   [7]   Petitioners do not meaningfully address the fact that counsel for Petitioners recently sought a classwide declaratory judgment that six months' detention was unconstitutional,
26   and that claim was rejected by the district court and not raised as part of the current appeal in that case.  *Alli v. Decker*, 635 F. Supp. 2d 535 (M.D. Pa. 2009).
27

28   [8]   By that same token, the Ninth Circuit has held that prolonged detention after a judicially final order of removal is constitutionally acceptable, following *Zadvydas*, even if it lasts for more than six months, so long as the alien is significantly likely to be removed in the reasonably foreseeable future.  *See, e.g., Diouf*, 542 F.3d at 1233.

period Petitioners' propose as a bright-line rule.  535 F.3d at 949.  Notably, the decision is also only limited to (1) lawful permanent residents (2) who seek judicial review of an administratively final order of removal, and who had obtained a stay of that removal.  *Id.* at 948-50; *see also Diouf v. Mukasey*, 542 at 1234 (describing the "limited holding of *Casas-Castrillon*").

These cases hardly establish that prolonged detention is constitutionally problematic under each of the detention schemes at issue, and there is no basis for Petitioners to claim that the Ninth Circuit, based on any of these decisions, would find immigration detention at six months to be constitutionally problematic, particularly where those cases addressed periods of detention between three to seven years.[9]

**C.  Respondents are entitled to judgment on the section 1225(b) subclass claims.**

In opposing judgment on their section 1225(b) subclass claims, Petitioners raise the following three arguments:  (1) arriving aliens enjoy due process rights regarding their admission or exclusion; (2) section 1225(b) is used to detain lawful permanent residents who have due process rights regarding their admission or exclusion; and (3) because section 1225(b) detains newly-arriving aliens and lawful permanent residents equally, the doctrine of constitutional avoidance as discussed in *Clark v. Martinez*, 543 U.S. 371 (2005), prevents the Court from construing section 1225(b) one way for newly-arriving aliens and another for lawful permanent residents, and requires the Court to read section 1225(b) as providing all aliens with the rights of lawful permanent residents.  These

---

[9]  Petitioners cite other cases involving civil commitment and other deprivations of due process, and attempt to apply them to the immigration context.  *See* Pet. Br. at 13-15.  These cases are distinguishable in that they involve issues of deprivations of social security and welfare entitlements, *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970), revocation of utilities without a hearing, *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1 (1978), and civil commitment cases, *Kansas v. Hendricks*, 521 U.S. 346 (1997).  All of these cases involved United States citizens.  The cases discussed herein arise specifically in the immigration context, a critical distinction because, as the Supreme Court has repeatedly acknowledged, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003).

arguments are incorrect.

### 1. No arriving alien subject to detention under section 1225(b) has due process rights regarding their admission or exclusion.

Petitioners argue that arriving aliens have constitutional due process rights regarding their admission or exclusion, and rely primarily on *Kwai Fun Wong v. United States*, 373 F.3d 952, 971 (9th Cir. 2004). Pet. Br. at 29-30 & n.15. That case, however, does not apply here. *Kwai Fun Wong* involved a *Bivens* claim against the former Immigration and Naturalization Service ("INS") for violations of petitioner's First, Fourth and Fifth Amendment rights related to her treatment during detention. *Id.* at 958-59. While acknowledging that the petitioner, as an arriving alien, had rights regarding her treatment during detention (including the right to pray, to be provided with appropriate meals, to be free of unreasonable searches), none of the petitioner's claims related to a right to be free from her detention. *See Kwai Fun Wong*, 373 F.3d at 970-73 (painstakingly describing the entry fiction doctrine and recognizing the long-standing principle that aliens arriving at the United States enjoy no constitutional rights regarding their admission or exclusion, and distinguishing those rights from the substantive due process rights at issue in the case then before it). *Kwai Fun Wong* does not support Petitioners' arguments; it supports Respondents'.[10]

Petitioners avoid the long-standing constitutional principles embraced in *Kwai Fun Wong* and cases cited by Respondents by making several arguments

---

[10]    Moreover, in *Kwai Fun Wong* the Ninth Circuit embraced *Shaughnessy v. United States ex. Rel. Mezei* 345 U.S. 206 (1953) – which Petitioners incorrectly dismiss as a "relic from the Cold War" – and the description of the entry fiction doctrine described therein. *Kwai Fun Wong*, 373 F.3d at 971. In *Kwai Fun Wong* the Court also relied on *Barrera-Echavarria v. Rison,* 44 F.3d 1441, 1449 (9th Cir. 1995) (en banc) – which Petitioners assert is no longer good law – and noted that the Court in *Barrera-Echavarria* "considered specifically whether such aliens have a constitutional right to be free from extended detention, concluding they do not." *Kwai Fun Wong*, 373 F.3d at 972. The Ninth Circuit in *Kwai Fun Wong* also acknowledged that the statutory provision at issue in *Barrera-Echavarria* no longer exists, as Petitioners now argue, but nevertheless cited *Barrera-Echavarria* for the underlying reasoning that arriving aliens enjoy no constitutional rights precluding prolonged detention – a fact Petitioners conveniently ignore. *Id.* at 972 n.26 & n.27.

1    about lawful permanent residents and other aliens detained under section 1225(b).

2    Petitioners argue that "arriving aliens" does not include just newly-arriving aliens,

3    but also includes "lawful permanent residents returning to the United States," and

4    aliens who entered without inspection.  *See* Pet. Br. at 28 n. 14.  Citing *Landon v.*

5    *Plascencia,* 459 U.S. 21 (1982), and *Zadvydas*, Petitioners contend that aliens who

6    once were admitted retained whatever due process rights they gained upon entry

7    after they left the United States.

8        A few points are important to note here.  First not all lawful permanent

9    residents who leave the United States and seek re-admission are detained under

10   section 1225(b).  Under 8 U.S.C. § 1101(a)(13)(C), the only lawful permanent

11   residents who would be considered "arriving aliens" – and thus who would be

12   subject to detention under section 1225(b) – are those who fit into one of the

13   categories under that statute.[11]  All other lawful permanent residents are *excluded*

14   from the definition of an "arriving alien" and thus are not subject to detention

15   under section 1225(b).

16       Second, whatever rights lawful permanent residents may have, the Supreme

17   Court has indicated that certain lawful permanent residents upon leaving the

18   United States lack any rights regarding their admission or exclusion.  *See Landon*,

19   459 U.S. at 29.  In *Landon*, a lawful permanent resident returned to the United

20   States from travel abroad and claimed she was entitled to the same removal

21   proceeding process other aliens received, namely an exclusion hearing to

22   determine whether she was excludable.  *Id*. at 27-29.  The issue before the Court

23   was whether the statute authorizing exclusion proceedings applied to a lawful

24   permanent resident, and thus the issue turned on whether, under the law at that

25

26   [11]   These include lawful permanent residents who the Government determines upon
     their return and arrival at the United States to have either abandoned their status, *see*
27   section 1101(a)(13)(C)(i); remained abroad for more than six months, *see* section
     1101(a)(13)(C)(ii); engaged in illegal activity abroad or committed certain inadmissible
28   offenses, *see* section 1101(a)(13)(C)(iii) and (v); departed while in removal or
     extradition proceedings, *see* section 1101(a)(13)(C)(iv); or made an illegal entry into the
     United States, *see* section 1101(a)(13)(C)(vi).

time, the petitioner had made an "entry." *Id.*

The Supreme Court explained that "an innocent, casual, and brief excursion" by a resident alien would not "subject him to the consequences of an 'entry' on his return." *Id.* at 29.  However – and this is critical – "[if] the purpose of leaving the country is to accomplish some object which is itself contrary . . . to our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful." *Id.*

The definition of arriving aliens under section 1101(a)(13)(C) includes aliens who either left the United States to accomplish some goal contrary to federal immigration law, or who actually accomplished that goal while outside the United States – it includes those who abandoned their status, those who committed certain crimes while overseas, those who fled the United States while in removal proceedings, and those who left for more than a "brief excursion," in the words of the Supreme Court. *Landon*, 459 U.S. at 29.  Consequently, under *Landon*, section 1101(a)(13)(C) aliens who are outside the United States and seek re-entry stand in the same position as those who never entered. *See also Mezei*, 345 U.S. 206 (the alien in *Mezei* had previously been admitted to the United States but traveled abroad, and upon his return was denied entry and had no rights regarding his admission or exclusion); *Zadvydas*, 533 U.S. at 693 (citing *Kaplan v. Tod*, 267 U.S. 228 (1925) (despite nine years presence in the United States, an "excluded" alien "was still in theory of law at the boundary line and gained no foothold in the United States")).[12]  Petitioners' argument that lawful permanent aliens *subject to detention under section 1225(b)* – which is not all lawful permanent residents – have greater rights than newly arriving aliens is incorrect.  Whether newly-arriving aliens under section 1101(a)(13)(A) or certain aliens seeking re-admission under

---

[12]    In *Zadvydas* the Supreme Court distinguished between aliens who have been denied "entry" and those who had entered the United States lawfully, unlawfully, temporarily or permanently.  533 U.S. at 693.  Lawful permanent residents who seek admission at a port of entry, and thus who are arriving aliens under the statute, have not gained entry and thus do not stand "inside" the United States.  *Id.*

1    section 1101(a)(13)(C), arriving aliens who are subject to detention under section

2    1225(b) enjoy no rights regarding their admission or exclusion, and thus cannot

3    challenge their prolonged detention.

4        **2.    Even if arriving aliens defined under section 1101(a)(13)(C) had rights regarding their admission or exclusion, the doctrine of constitutional avoidance is not at issue here.**

5

6        Petitioners argue that, under the reasoning of *Clark v. Martinez*, 543 U.S.

7    371 (2005), the doctrine of constitutional avoidance prohibits this Court from

8    construing section 1225(b) to apply one way for arriving aliens who have never

9    entered the United States (section 1101(a)(13)(A) aliens), and another way for

10   arriving aliens who have previously entered the United States (section

11   1101(a)(13)(C) aliens).  However, even if the prolonged detention of arriving

12   aliens gave rise to constitutional concerns, the doctrine of constitutional avoidance

13   does not apply here.

14       The doctrine of constitutional avoidance "is a tool for choosing between

15   competing plausible interpretations of a statutory text, resting on the reasonable

16   presumption that Congress did not intend the alternative which raises serious

17   constitutional doubts."  *Clark,* 543 U.S. at 382 (citing *Rust v. Sullivan*, 500 U.S.

18   173 (1991); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr.*

19   *Trades Council*, 485 U.S. 568 (1988)).  The doctrine instructs courts to choose

20   between competing, permissible statutory interpretations as "a means of giving

21   effect to congressional intent, not of subverting it."  *Id.*

22       Here, however, section 1225(b) unambiguously authorizes the prolonged

23   detention of arriving aliens and is not susceptible to more than one interpretation

24   or construction.  Congress has unambiguously provided that arriving aliens must

25   be detained under certain sub-sections of 1225(b), and provides for their release

26   only on conditions of parole set by DHS in its discretion.  8 U.S.C. §

27   1182(d)(5)(A).  Congress's statutory scheme for the detention and parole of

28   arriving aliens cannot be interpreted as permitting bond hearings before

immigration judges, and Petitioners citation to *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), does not support a contrary conclusion.[13]  The doctrine of constitutional avoidance simply does not apply.

Additionally, even if the Court were to apply constitutional avoidance, the possibility of dual interpretations to a single statutory provision is not an issue here as it was in *Clark*.  There one statute – section 1231(a)(6) – authorized the detention of both arriving and admitted aliens.  Here, section 1225(b) contains two separate provisions of detention.  Section 1225(b)(1) governs the detention of section 1101(a)(13)(A) newly-arriving aliens, and section 1225(b)(2) governs the detention of all section 1101(a)(13)(C) arriving aliens.[14]

**D.    Respondents are entitled to judgment with respect to the section 1226(c) subclass claims.**

As Respondents argued in their motion, *Demore* may be interpreted as holding that because removal proceedings are by definition finite, there is no constitutional limit to the duration of detention under section 1226(c).  In discussing *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court in *Demore* noted that the aliens challenging their detention in *Zadvydas* were individuals for whom

---

[13]    Petitioners misinterpret *Matter of X-K-*.  In its decision the Board held that the detention of arriving aliens under section 1225(b) is *not* subject to review by immigration judges, but is instead left wholly to the parole discretion of DHS. *Id.* at 734-35.  Respondent in *Matter of X-K-* was not an arriving alien detained under section 1225(b), but fell within a category of "certain other aliens" in removal proceedings, and who are entitled to bond redetermination by immigration judges.  The class members detained under section 1225(b) are by definition within the category of "arriving aliens" because they are detained subject to section 1225(b).

[14]    Additionally, Petitioners have not shown that there are any class members that fall under section 1101(a)(13)(C).  Given the narrow circumstances under which a lawful permanent resident would be subject to section 1225(b) detention, *see* section 1101(a)(13)(C)(i) through (vi), this Court cannot assume that *any* such alien is detained in this district, let alone assume that such an alien has been detained for six months or longer.  For that matter, this Court also cannot assume that aliens who have made an entry without inspection (referred to by Petitioners as "EWIs") are detained in this district and have been so detained for more than six months.  Article III limits judicial action to cases or controversies.  Because Petitioners have identified only two newly arriving aliens as class representatives, this Court should decide this case based on their presence, and not on the possible but speculative presence of other-status aliens under section 1225(b).

removal was "no longer practically attainable" and therefore detention did not serve the purported immigration purpose. *Demore*, 538 U.S. at 526. But as the Court acknowledged in *Demore*, the reasons for detaining criminal aliens pending removal do not diminish over the duration of their detention. 533 U.S. at 521 (citing "evidence that one of the major causes of of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings," and citing Congress's supported concern that "even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight."). Although Petitioners belittle this interpretation as "frivolous," it has found support in the Ninth Circuit. *Beqir v. Clark*, 2007 WL 201108, *2 (9th Cir. Jan. 25, 2007) (examining challenge to pre-final order detention and noting in dicta that "[w]hile [petitioner's] detention has been lengthy, its length is attributable to the administrative and judicial processes. Moreover, his detention has a definite termination point.").

Even if Petitioners are correct, and the Ninth Circuit views prolonged detention under section 1226(c) as raising constitutional concerns, the question then becomes *when and under what circumstances* prolonged detention that has a definite termination point becomes unconstitutional. As Respondents argued in the alternative, even if prolonged mandatory detention under section 1226(c) raises constitutional concerns, the constitutionality of continued mandatory detention depends on whether detention is reasonable under the individual circumstances of each case. Resp. Memo. at 28-32.

Petitioners are undeniably incorrect that courts determine the constitutionality of prolonged mandatory detention by sole reference to a predetermined time period such as six months' of detention. No court has held that detention under section 1226(c) ceases to become constitutional on the day that detention becomes six months. As Respondents noted, the view that the length of detention alone determines the constitutionality of detention has been

1  rejected by various courts, including this Court. *Martinez v. Gonzales*, 504 F.

2  Supp. 2d 887, 898 (C.D. Cal. 2007) (Hatter, J.) (stating that "[a] court must 'be

3  sensitive to the possibility' that a removable alien may engage in 'dilatory tactics'

4  in order to 'compel a determination' that his detention was unreasonably long");

5  *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455 (D. Mass. 2010) (rejecting

6  bright-line rule). Petitioners make no effort to distinguish these cases.

7      Respondents also cited cases in which courts have determined that the

8  constitutionality of prolonged detention turns on questions of reasonableness,

9  which requires a fact-intensive inquiry conducted on a case-by-case basis. Resp.

10  Memo. at 29 (citing *Alli v. Decker*, 635 F. Supp. 2d 535 (M.D. Pa. 2009); *Ly v.*

11  *Hansen*, 351 F.3d 263 (6th Cir. 2004)). Petitioners attempt to distinguish *Alli* – a

12  case Petitioners' counsel brought – by arguing that it is currently on appeal. Pet.

13  Br. at 24. While it is true that *Alli* is on appeal, the appeal is limited to the district

14  court's denial of class certification. The petitioners in *Alli* – represented by the

15  same attorneys representing Petitioners here – did not appeal the district court's

16  conclusion that prolonged detention may be justified if reasonable, or its order

17  establishing a reasonableness inquiry framework. Petitioners also try to

18  distinguish *Ly* on the ground that the court concluded that district courts, and not

19  immigration judges, should conduct a reasonableness inquiry. Pet. Br. at 24. But

20  who conducts the reasonableness inquiry does not change the fact that the Sixth

21  Circuit concluded that prolonged detention must be judged by reasonableness, not

22  by reference solely to length of detention.

23      The decisions of the Supreme Court and the Ninth Circuit are not to the

24  contrary. As previously noted, the Supreme Court in *Demore* found the

25  petitioner's detention constitutional in part because the petitioner had filed appeals

26  and taken other actions to lengthen his detention, and the Court looked to whether

27

28

1  the petitioner had conceded removability.[15]  *Demore*, 538 U.S. at 515.  Similarly,

2  the Ninth Circuit in *Tijani* looked not only to the length of time Tijani had been

3  detained, but the Court also looked to the period of time he was likely to remain

4  detained, his immigration status, and (in the concurrence) whether Tijani was

5  himself to blame for any of the delay in his proceedings.  *Tijani*, 430 F.3d at 1242,

6  1249.  These cases examined the individual circumstances of each alien's case to

7  weigh the kinds of "reasonableness" factors identified in both *Ly* and *Alli,* and by

8  numerous other courts embracing a "reasonableness" approach to determining the

9  constitutionality of prolonged detention.[16]

10     As discussed above, Petitioners cannot prevail on their classwide claims

11  with respect to any subclass unless this Court can order uniform relief for that

12  subclass.  Moreover, this Court cannot order classwide relief unless the relief is

13  justified by the harm proven.  *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 n.1 (9th

14  Cir. 1984) ("[R]elief should be narrowly tailored to remedy the specific harms

15  shown by plaintiffs . . .").  Following these fundamental principles, this Court

16  should grant Respondents judgment as to the section 1226(c) subclass claims

17  because it cannot order the classwide relief sought because entitlement to any

18  relief depends on the reasonableness of their detention under the individual facts

19  of each alien's case.

20

21  [15]  Petitioners cite to *Demore* as authority for the proposition that detention becomes prolonged at six months despite the fact that the petitioner in *Demore* was held more

22  than six months and the Supreme Court expressly held that the petitioner was not subjected to prolonged detention.  Petitioners then boldly state that Ninth Circuit has

23  already held that Demore does not permit prolonged detention absent a hearing after presumptively six months.  Petitioners Opposition at 23 fn.12. *Casas* and *Nadarajah*, the

24  Ninth Circuit authority Petitioners are presumably relying on, are cases where the court conducted fact specific analysis of petitioners detained  seven years and five years

25  respectively.  They by no means held that six months equals prolonged detention that necessitates a bond hearing.

26  [16]  *See, e.g, Adler v. DHS*, No. 09-4093, 2009 WL 3029328 (S.D.N.Y. Sept. 22, 2009);

27  *Wilson v. Mukasey*, No. 08-1646, 2010 WL 456777 (W.D. La. Feb. 2, 2010); *Weir v. Sabol*, No. 09-1938, 2010 WL 1526392 (M.D. Pa. Apr. 15, 2010) (same district judge as

28  in *Alli*); *Pierre v. Weber*, No. 09-6345, 2010 WL 1373710 (D.N.J. Mar. 31, 2010); *Luna-Aponte v. Holder*, --- F. Supp. 2d ----, 2010 WL 3547707 (W.D.N.Y. Sept. 10, 2010).

**E.    Respondents are entitled to judgment with respect to the section
1231(a)(6) subclass claims.**

There is no dispute that in deciding *Diouf v. Holder*, No. 06-07452, 2009
WL 6331130 (C.D. Cal. Sept. 9, 2009) (Hatter, J.), this Court addressed the
constitutionality of prolonged detention under 8 U.S.C. § 1231(a)(6) of aliens with
administratively final orders of removal, but who seek to reopen their removal
proceedings.  This Court's decision in *Diouf* examined the very same issues of
statutory interpretation presented here.  *Id.* at *2 (examining ambiguity of section
1231(a)(6), determining that an alien in Diouf's position must receive adequate
procedural protection to justify continued detention, and concluding that the post-
order custody review process of 8 C.F.R. § 241.4 provides "ample procedural due
process.").  And Petitioners concede that the subclass share common
characteristics identical to Diouf's.  Pet. Br. at 33.

Petitioners' chief argument as to why this Court cannot follow what it did in
*Diouf* is that the class in this case may include lawful permanent residents,
whereas *Diouf* did not involve a lawful permanent resident.  And thus Petitioners
return to their flawed argument that *Clark* requires that the Court construe section
1231(a)(6) as if it applied to lawful permanent residents, even though the section
1231(a)(6) subclass representative was never a lawful permanent resident and
stands in exactly the same shoes as Diouf.

However, this Court can reject Petitioners' argument because no alien
detained under Section 1231(a)(6) retains any lawful status in the United States.
Although an individual may have at one time been a lawful permanent resident,
that individual retains no such status once a final order of removal has issued.  *See*
8 U.S.C. § 1101(a)(20) ("The term 'lawfully admitted for permanent residence'
means the status of having been lawfully accorded the privilege of residing
permanently in the United States as an immigrant in accordance with the
immigration laws, such status not having changed."); 8 C.F.R. § 1.1(p) (stating
lawful permanent resident status terminates upon entry of final administrative

removal order); *Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 943 (9th Cir. 2007) ("a lawful permanent resident is lawfully present in the United States until a final deportation or removal order is entered.") (citing 8 C.F.R. § 1.1(p); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1117 (9th Cir. 2003) (en banc)); see also *Zadvydas*, 533 U.S. at 720 (Kennedy, J., dissenting) ("When an alien is removable, he or she has no right under the basic immigration laws to remain in this country").

Petitioners cite no authority for their claim that aliens ordered removed remain lawful permanent residents. They do not. The Court should follow *Diouf*, and reach the same conclusions here that it did there and grant judgment to Respondents on the pleadings.

**III.    Respondents are entitled to judgment with respect to Petitioners' claims regarding the adequacy of bond hearings because due process does not require the conditions for bond hearings that Petitioners seek.**

Petitioners propose several revisions to the way in which bond hearings are noticed and conducted, drawing from arguments counsel has previously made with regard to the conduct of *Casas-Castrillon* hearings. Here, however, Petitioners propose changes to *all* bond hearings for prolonged detainees. Because such proposals, if adopted by this Court, will substantially affect how all bond hearings are held in this district, this Court should reject Petitioners' proposals if they are not required as a matter of constitutional command. Petitioners cannot show that they are, and this Court should grant judgment to Respondents on the pleadings.

**A.    Petitioners cannot establish that they are entitled to notice of bond hearings or bond hearing transcripts, and their arguments avoid the substance of Respondents' arguments on these issues.**

Petitioners have not demonstrated that that they are entitled to notice of their right to a bond hearing under 8 U.S.C. § 1226(a). Petitioners cite one case dealing with the seizure of property without any notice to support its argument that aliens in detention are required by due process to notice of a bond hearing. Pet. Br. at 41. They ignore Respondents' citation to regulations, administrative

1   interpretations, and court decisions establishing that bond hearings are separate

2   from removal proceedings and that aliens are not entitled to notice of such

3   hearings.[17]

4        Similarly, Petitioners have not shown that they are constitutionally entitled

5   to a verbatim transcription of bond hearings, and they have made no attempt to

6   address the court decisions establishing that no such due process right exists.

7   Resp. Memo. at 40 (citing *Singh v. Holder*, No. 09-3012, 2010 WL 702246 at *6

8   (N.D. Cal. Feb. 25, 2010) (denying procedural due process claim to a transcribed

9   bond hearing); *Singh v. Chertoff*, No. 08-70434, 2009 WL 1098493, at *5 (S.D.

10  Cal. Apr. 23, 2009) (same).  Rather, Petitioners offer judicial statements offering

11  the view that judicial review of immigration judge bond decisions would be aided

12  by transcripts, *see* Pet. Br. at 41.  But those cases – while reflecting the possible

13  wisdom of a different *policy* choice – do not establish that bond hearing transcripts

14  are required by due process, nor do they establish that the immigration judge

15  memoranda required by law are constitutionally inadequate.[18]

16  **B.    Petitioners cannot establish that due process requires a**
17  **heightened burden and standard of proof in immigration bond hearings.**

18       Petitioners contend that because prolonged detention involves

19  such a significant deprivation of liberty, only a showing that the alien is a

20  "particularly serious" danger can justify prolonged detention.  This claim fails to

21  address a critical distinction between the purpose of other forms of detention and

22  the primary purpose of immigration detention:  ensuring that the alien appears at

23  

24  [17]   Significantly, Petitioners do not deny that the form I-286 contains a notice to
25  detainees that they are entitled to a bond hearing; instead, Petitioners claim Petitioner Rodriguez did not receive one.  Be that as it may, the relief for an as-applied failure by the Government to provide notice, even if required, is an individual action.  This case
26  tests the facial constitutionality of notice and other hearing-related procedures.

27  [18]   Petitioners also argue that discovery could help determine whether the procedures
   are being followed, but, again, that falls outside the scope of this action.  Petitioners challenge the constitutionality of the existing procedures *on their face*.  Because this is
28  not an as-applied challenge to regulations, the issue of discovery is irrelevant to the statutory and constitutional issues before this Court.

removal proceedings and for his or her eventual removal, if authorized, not that the alien is a danger to the community.  *See Zadvydas*, 533 U.S. at 699.

In analyzing the circumstances involving alien detention of "potentially indefinite duration," the Supreme Court noted the heightened standards that it has imposed for these situations, including a finding of particularly serious danger. *Demore*, 538 U.S. at 530 (emphasis added).  But aliens subject to post-order bond hearings are not being detained for the same purposes as those in the potentially indefinite civil commitment, as the primary purpose for other forms of civil commitment is to protect the public from future harm.  *See Smith v. Doe*, 538 U.S. 84, 104 (2003); *see, e.g., United States v. Comstock*, 130 S. Ct. 1949 (2010) (commitment of sexually dangerous persons after release from prison); *Addington v. Texas*, 441 U.S. 418 (1979) (commitment of the mentally ill).  In immigration detention, the primary purpose is to ensure presence at removal proceedings, and so the flight risk factor predominates the determination on their continued detention.  *See Casas-Castrillon*, 535 F.3d at 949–50.

Petitioners also request that the court impose a "clear and convincing" burden of persuasion on the Government to justify an alien's prolonged detention. In making their argument, Petitioners ignore this court's guidance in *Tijani* and *Casas-Castrillon* that a "clear and convincing" standard is unnecessary for *Casas* bond determinations in *Casas* bond hearings.  In *Tijani*, the concurring opinion urged that the Court adopt a "clear and convincing" standard, but it did not. *See Tijani*, 430 F.3d at 1244–45 (Tashima, J., concurring).  In *Casas-Castrillon*, the Court affirmed *Tijani* and required bond hearings for post-order criminal aliens pending judicial review, but again did not adopt the "clear and convincing" standard. 535 F.3d at 951.  Petitioners offer no reason why that standard should not be applied in hearings on a broader scale than in *Casas* hearings, which the Ninth Circuit declined to do.

**C.    Petitioners cannot establish a right to appointed counsel during immigration bond hearings.**

Without even weighing in on the merits of whether the Constitution requires the Government to provide counsel at immigration bond hearings, this Court can grant judgment to Respondents because claims of right to counsel are individualized and are not appropriately addressed in class action claims, particularly where the class action relief sought will be prospective in nature.  *See, e.g., Baltazar-Alcazar v. INS*, 386 F.3d 940, 946-47 (9th Cir. 2004).

As to the merits, Petitioners have not explained how aliens detained for up to six months and who may be indigent are *not* entitled by due process to appointed counsel, but aliens who are detained for six months or more *are* entitled to appointed counsel at a bond hearing.  If Petitioners are correct, then *every* alien should be entitled to appointed counsel, regardless of the length of their detention. Yet Petitioners must concede that the law makes no such requirement.  *See Jie Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004) ("Although a deportation hearing is not a criminal matter and [an alien has] no Sixth Amendment right to appointment of counsel at government expense, due process mandates that he is entitled to counsel *of his own choice at his own expense . . .*") (emphasis added); *Ray v. Gonzales*, 439 F.3d 582, 586-87 (9th Cir.2006) (individual in immigration proceeding does not have Sixth Amendment guarantee of an attorney at government expense, but has right to obtain counsel of own choice).  *Rios-Berrios v. I.N.S.*, 776 F.2d 859, 862 (1985) (An alien subject to deportation does not have a constitutional right to the appointment of counsel at government expense.).

Petitioners' citation of *Lassiter v. Dept. of Soc. Servs.*, 452 U.S. 18, 25 (1981), does not address this logical fallacy.  That case involved the right to appointed counsel at a hearing to terminate parental rights, and there the Court made a distinction between parole and probation revocation proceedings – in which appointed counsel is not a right – and cases involving the permanent loss of personal liberty.  *Id.* at 26.  Immigration detention does not lead to a permanent

loss of personal liberty, and due process does not require the appointment of counsel at Government expense.

## Conclusion

Petitioners cannot establish that they can prevail on the issues of statutory and constitutional interpretation before this court, as framed by their complaint. Respondents are therefore entitled to judgment on the pleadings, and this Court should grant Respondents' motion.

Dated: January 10, 2010                    Respectfully submitted,

                                           TONY WEST
                                           Assistant Attorney General
                                           Civil Division

                                           DAVID J. KLINE
                                           Director, Office of Immigration Litigation
                                           District Court Section

                                           VICTOR M. LAWRENCE
                                           Principal Assistant Director

                              By:    */s/ Theodore W. Atkinson*
                                           THEODORE W. ATKINSON
                                           Senior Litigation Counsel
                                           U.S. Department of Justice
                                           Office of Immigration Litigation
                                           District Court Section
                                           P.O. Box 868, Ben Franklin Station
                                           Washington DC 20044
                                           (202) 532-4135
                                           theodore.atkinson@usdoj.gov

                                           NICOLE R. PRAIRIE
                                           Trial Attorney

                                           EREZ R. REUVENI
                                           Trial Attorney

                                           ELIZABETH L. WALKER
                                           Trial Attorney

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2010, I submitted the foregoing to opposing counsel by e-mailing the same on the following:

Ahilan T. Arulanantham
ACLU Foundation of Southern
California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

William Tran
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: wtran@sidley.com

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Steven A. Ellis
Sidley Austin LLP
555 W 5th St, Ste 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: sellis@sidley.com

Brian Kelley Washington
Sidley Austin
555 West Fifth Street Suite 400
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: bwashi01@sidley.com

*/s/ Theodore w. Atkinson*
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice