PETER J. ELIASBERG (SBN 189110)
Email:  peliasberg@aclu-sc.org
AHILAN T. ARULANANTHAM (SBN 237841)
Email:  aarulanantham@aclu-sc.org
MICHAEL KAUFMAN (SBN 254575)
Email:  mkaufman@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1616 Beverly Boulevard
Los Angeles, California 90026
Tel: (213) 977-5211
Fax: (213) 977-5297

Attorneys for Petitioner
(Additional counsel listed on following page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*, <br><br> Petitioners, <br><br> vs. <br><br> TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director*; JANET NAPOLITANO, *in her capacity as Secretary of Homeland Security*; and ERIC H. HOLDER, JR., *in his capacity as Attorney General of the United States*, <br><br> Respondents. | Case No. CV 07-3239-TJH (RNBx) <br><br> **DISCOVERY MATTER** <br><br> **JOINT STIPULATION REGARDING PETITIONERS' MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-2.1** |

Additional counsel:

JUDY RABINOVITZ
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

JAYASHRI SRIKANTIAH (SBN 189566)
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS (SBN 217603)
CODY JACOBS (SBN 272276)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

# <u>TABLE OF CONTENTS</u>

JOINT INTRODUCTORY STATEMENT AND OVERVIEW ....................................i

I.     Nature of the Case and Procedural Background ...................................1

II.    The Parties' Stipulation as to Cost Discovery....................................4

III.   The Parties' Discovery Dispute ...................................................5

THE INTRODUCTORY STATEMENTS OF THE PARTIES....................................7

I.     Petitioner's Introductory Statement.............................................7

II.    Respondents' Introductory Statement ..........................................10

PARTIES' CONTENTIONS AS TO THE DISPUTED DISCOVERY .....................13

I.     A-FILE MATERIALS...........................................................13

       A.    Text of the Disputed Discovery ..........................................13

       B.    PARTIES' PROPOSALS...................................................13

       C.    PETITIONERS' CONTENTIONS .........................................13

             1.    A files contain information that is highly relevant to the due
                   process standards that governs Petitioners' claims.......................14

             2.    Respondents' claims regarding the burden of producing A
                   files are greatly overstated. ........................................18

             3.    Respondents' Relevancy Arguments About A File
                   Discovery Are Without Merit........................................21

                   a.    Controlling Precedent Has Considered Aggregate
                         Facts Similar to Those at Issue Here. .........................21

                   b.    Information in the A files Can Be Easily Aggregated
                         and is Critically Relevant to Petitioner's Arguments
                         About the Sufficiency of Respondents' Existing
                         Procedures. ..........................................26

             4.    Respondents' specific doctrinal arguments regarding the
                   subclasses are meritless ............................................29

                   a.    Section 1231(a)(6) detainee files......................29

                   b.    Section 1226(c) detainee files ......................29

                   c.    Section 1226(a) detainee files ......................31

                   d.    Section 1225(b) detainee files ......................31

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

D.   RESPONDENTS' CONTENTIONS ...................................................... 32

   1.   Overview ............................................................................... 32

   2.   Even narrowed, Petitioners seek the majority of materials contained in each A-file. .............................................. 38

   3.   The A-file materials requested are not relevant to this action. ...... 40

      a.   Section 1231(a)(6) Detainee Files ...................................... 41

      b.   Section 1226(c) Detainee Files ............................................ 43

      c.   Section 1226(a) Detainee Files ........................................... 44

      d.   Section 1225(b) Detainee Files ........................................ 45

   4.   The request for A-file materials is unduly burdensome, particularly in light of the irrelevance of the information to be obtained. ....................... 46

II.   WRITTEN POLICIES AND PROCEDURES REGARDING CERTAIN PROCEDURES ................................................................ 48

   A.   Text of the Disputed Discovery ................................................. 48

   B.   PARTIES' PROPOSALS .............................................................. 49

   C.   PETITIONERS' CONTENTIONS ................................................. 49

   D.   RESPONDENTS' CONTENTIONS ............................................. 53

III.   REQUESTS FOR ADMISSIONS REGARDING CERTAIN PROCEDURES ................................................................ 56

   A.   Text of the Disputed Discovery ................................................. 56

   B.   PARTIES' PROPOSALS .............................................................. 58

   C.   PETITIONERS' CONTENTIONS ................................................. 58

   D.   RESPONDENTS' CONTENTIONS ............................................. 59

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1

## TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4

*Alvarez-Garcia v. Ashcroft*,
   378 F.3d 1094 (9th Cir. 2004) ....................................................46, 54, 60

*Asea, Inc. v. Southern Pac. Transp. Co.*,
   669 F.2d 1242 (9th Cir. 1981) ...........................................................59

*Barrera-Echavarria v. Rison*,
   44 F.3d 1441 (9th Cir. 1995) (en banc) ................................46, 55, 60

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ............................................................20

*Bible v. Rio Props., Inc.*,
   246 F.R.D. 614 (C.D.Cal.2007) .......................................................50

*Blankenship v. Hearst*,
   519 F.2d 418 (9th Cir. 1975) ............................................................10

*Casas-Castrillon v. Dep't of Homeland Sec.*,
   535 F.3d 942 (9th Cir.2008) .......................................................passim

*City of Rialto v. U.S. Dept. of Defense*,
   492 F. Supp. 2d 1193 (C.D. Cal. 2007) ...........................................51

*County of Riverside v. McLaughlin*,
   500 U.S. 44 (1991)............................................................................17

*Demore v. Kim*,
   538 U.S. 510 (2003)....................................................................passim

*Dent v. Holder*,
   627 F. 3d 365 (9th Cir. 2010) ...........................................................19

*Diouf v Holder*,
   No. CV 06-7452, 2009 WL 6331130 (C.D. Cal. September 9, 2009) ..............26

*Diouf v. Mukasey*,
   542 F.3d 1222 (9th Cir. 2008) ..................................25, 29, 35, 43

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

*Diouf v. Mukasey,*
 No. 06-07452-TJH (C.D. Cal.) ............................................................25

*Diouf v. Mukasey,*
 No. 06-07452-TJH (C.D. Cal. Sept. 9, 2009)...........................35, 42, 43

*Diouf v. Napolitano,*
 No. 09-56774 (9th Cir. March 7, 2011)................................................25

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
 331 F.3d 1122 (9th Cir. 2003) ......................................................14, 20

*Gibson v. County of Riverside,*
 181 F. Supp.2d 1057 (C.D. Cal. 2002) ...............................................28

*Green v. Baca,*
 219 F.R.D. 485 (C.D. Cal. 2003)..................................................14, 21

*Humphries v. County of Los Angeles,*
 554 F.3d 1170 (9th Cir. 2009) .............................................................17

*In re American Mut. Funds Fee Litigation,*
 2008 WL 5749912 (C.D. Cal. 2008) ...................................................37

*In re Community Psychiatric Centers Securities Litigation,*
 SA CV91-533AHS, 1993 WL 497253 (C.D. Cal. 1993)....................48

*In re Heritage Bond Litigation,*
 220 F.R.D. 624 (C.D. Cal. 2004).........................................................59

*Mathews v. Eldridge,*
 424 U.S. 319 (1976)..............................................................4, 11, 40

*Matter of Guerra,*
 24 I. & N. Dec. 37 (2006)....................................................................16

*Matter of Joseph,*
 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999) ...................passim

*Morales-Izquierdo v. Gonzalez,*
 486 F.3d 484 (9th Cir. 2007) (en banc) ..............................................17

*Oakes v. Halvorsen Marine Ltd.,*
 179 F.R.D. 281 (C.D. Cal. 1998).........................................................51

iv

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)....................................................................52

*Orantes-Hernandez v. Meese*,
   685 F.Supp. 1488 (C.D. Cal. 1988)........................................17

*Prieto- Romero v. Clark*,
   534 F.3d 1053 (9th Cir. 2008) ........................................25, 34

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ......................................passim

*Schall v. Martin*,
   467 U.S. 253 (1984).................................................................18

*Schauf v. Mortgage Bankers Serv. Corp.*,
   2001 WL 1654711 (N.D. Ill. 2001).......................................22

*Skellerup Indus. Ltd. v. City of Los Angeles*,
   163 F.R.D. 598 (C.D. Cal. 1995)............................................13

*Sullivan v. Prudential Ins. Co. of America*,
   233 F.R.D. 573 (C.D. Cal. 2005)..............................................9

*Tijani v. Willis*,
   430 F.3d 1241 (9th Cir. 2005) ................................................34

*Zadvydas v. Davis*,
   533 U.S. 678 (2001)......................................................passim

STATUTES

8 U.S.C. §§ 1101, et seq. ...............................................................1

8 U.S.C. § 1125(b)(1)(B)(IV) .......................................................45

8 U.S.C. § 1182(d)(5) ...............................................................6, 45

8 U.S.C. § 1225.....................................................................passim

8 U.S.C. § 1226.....................................................................passim

8 U.S.C. § 1226a...........................................................................2

8 U.S.C. § 1231.....................................................................passim

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

8 U.S.C. §§ 1531-37 ................................................................................ 2

8 U.S.C. § 1182(d)(5)(A) ........................................................................ 51

REGULATIONS

8 C.F.R. § 235.2 ....................................................................................... 51

8 C.F.R. § 241.4 ....................................................................................... 57

8 C.F.R. § 241.4(k) .................................................................................. 56

8 C.F.R. § 1235.2 ..................................................................................... 51

8 C.F.R. § 1241.4 ..................................................................................... 57

8 C.F.R. § 3.19(h)(2)(ii) ..................................................................... 54, 60

8 C.F.R. § 236 .......................................................................................... 45

8 C.F.R. § 241.4 ................................................................ 6, 41, 50, 52, 55, 61

8 C.F.R. § 241.13 ..................................................................................... 41

8 C.F.R. § 241.14 ..................................................................................... 41

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

## JOINT INTRODUCTORY STATEMENT AND OVERVIEW

Pursuant to Local Rule 37-2 and this Court's order of April 4, 2011 [Dkt # 164], Petitioner Alejandro Rodriguez, on behalf of himself and other members of the class (collectively, "Petitioners"), and Timothy S. Robbins, *et al.* (collectively, "Respondents" or "the Government") submit this Joint Stipulation Regarding Respondents' Motion for Protective Order and Petitioner's Motion to Compel further Response to Petitioners' Discovery Requests ("Motion To Compel").

## I.   Nature of the Case and Procedural Background

This case concerns a class of non-citizens who allege that they (a) have been subjected to immigration detention in excess of six months by Immigration and Customs Enforcement ("ICE") while their removal proceedings remain pending and (b) have not been afforded a constitutionally adequate hearing before an immigration judge ("IJ") where the Government has had to justify continued detention. *See* Second Corrected Second Am. Comp. [Dkt. # 95-1, Sept. 10, 2010]. Petitioners "challenge their prolonged detention without adequate process on statutory and constitutional grounds, on behalf of themselves and a class of similarly-situated detainees." [Dkt # 111, Third Amended Complaint ("TAC"), ¶ 1.]. Petitioners claim that under the Immigration and Nationality Act, 8 U.S.C. §§ 1101, et seq., and the Due Process Clause of the Fifth Amendment, any alien who was or will be detained for six months or longer in the Central District of California is entitled to a constitutionally-adequate individualized hearing before an immigration judge to justify their continued detention under any of four detention provisions under the INA, specifically 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a).

This lawsuit was initially filed on May 16, 2007. [Dkt # 1.] On June 25, 2007, Petitioners filed a motion for class certification [Dkt # 10], which Respondents opposed. [Dkt # 20.] On December 17, 2007, Respondents filed a motion to dismiss on the ground that the action was moot, or otherwise barred as a class action. [Dkt # 26.] The Court denied both the motion for class certification and the motion to

1    dismiss on March 19, 2008.  [Dkt # 33.]  Petitioners appealed, and the Ninth Circuit

2    concluded that this case could go forward on a class-wide basis.  *See Rodriguez*, 591

3    F.3d at 1114 (9th Cir. 2010).

4         Following remand, this Court certified the class, and permitted limited

5    discovery for the purpose of identifying sub-classes and sub-class representatives.  *See*

6    Class Certification Order [Dkt # 77].  Following a period of sub-class discovery,

7    Petitioners moved to clarify the class-certification order, and certify the sub-classes.

8    [Dkt # 101].  Respondents did not oppose this motion, and on March 8, 2011, the

9    Court granted the motion.  [Dkt # 161].  Accordingly, the class consists of  "all people

10   within the Central District of California who (1) are or will be detained for longer than

11   six months pursuant to the general immigration detention statutes pending completion

12   of removal proceedings, including judicial review; (2) are not detained pursuant to one

13   of the national security detention statutes at 8 U.S.C. § 1226a and 8 U.S.C. §§ 1531-

14   37; and (3) have not been afforded a hearing to determine whether their prolonged

15   detention is justified."  *See* Plaintiff's Motion for Class and Subclass Certification,

16   Memorandum in Support, and Proposed Order [Dkt # 101].[1]  The class members are

17   further subdivided into sub-classes of aliens detained by each of the four detention

18   statutes at issue in this case.  *Id.*

19        On November 22, 2011, Respondents filed a Motion for Judgment on the

20   Pleadings under Fed. R. Civ. P. 12(c).  [Dkt # 130].  The Rule 12(c) motion sought

21   judgment on the pleadings as to all claims.  *Id.*  The motion was opposed, and on

22

23   _____

24   [1]  In its March 8, 2011 order, the Court granted Petitioner's motion but did not
     specifically address the unopposed request to clarify the class definition to include

25   detainees who are or "will be" detained under one of the general detention statutes.
     *See* Dkt # 161.  However, the parties are proceeding in this action with the

26   understanding that the class certified by the Court is the clarified class definition

27   identified above and requested by Plaintiff in the unopposed motion for class and sub-
     class certification.

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

January 27, 2011, the Court denied the motion for judgment on the pleadings in its entirety.  [Dkt # 155].

Prior to the filing of the motion for judgment on the pleadings, however, Respondents moved to stay discovery pending resolution of the Rule 12(c) motion. [Dkt # 115].  This Court granted that motion on November 17, 2011.  [Dkt # 126]. Following the denial of Respondents' Rule 12(c) motion, and in accordance with this Court's November 17, 2011 order, counsel met and conferred extensively in order to narrow their discovery disputes.  First, in correspondence dated February 14, 2011 and February 24, 2011, Petitioners focused the discussion on a limited subset of discovery requests that were significantly narrower in number and scope than the discovery initially served.  Of the 48 requests for production, 34 interrogatories, and 34 requests for admission served on the Department of Homeland Security ("DHS") and the Department of Justice ("DOJ"), Petitioners proposed meeting and conferring on eight requests for production, three interrogatories and all of the requests for admission.

After extensive telephonic discussions during which the parties discussed this limited subset of requests at some length, the parties agreed to meet in person, which they did on February 28, 2011. During this five hour meeting, and in subsequent correspondence and telephonic conversation, the parties were successful in reaching agreement on a significant number of issues.  Through these discussions, the parties have agreed that the Respondents will produce a substantial amount of database information about current and past class members, as well as the Respondents' policies regarding bond hearings, initial decisions to detain, and supervised release; and answers to several requests for admission. Throughout this period, the parties have worked cooperatively to reach agreements to produce information that is responsive to Petitioners' requests for relevant information in a manner that is technically feasible and not unduly burdensome for the Respondents.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

## II.     The Parties' Stipulation as to Cost Discovery

One of the disputes that the parties have resolved is a dispute over certain several requests regarding the costs of detention and the costs of providing bond hearings.  Petitioners sought that information on the ground that the "costs" may be relevant to the due process analysis established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which Petitioners contend may apply to this case.  In *Mathews*, the Supreme Court set forth a balancing test for determining, in a case raising procedural due process challenges to administrative procedures, what administrative procedures are required when there has been a deprivation of liberty and due process is required.  Under the *Mathews* due process analysis, the Court considers, among other things, the Government's interest, including "the fiscal . . . burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

Petitioners propounded requests for documents and interrogatories identifying detailed breakdowns of the costs of detaining aliens under the challenged immigration detention statutes and detailed breakdowns of the costs of providing bond hearings and other proceedings before immigration judges.  Respondents objected that such cost discovery was irrelevant in light of the fact that the Government did not intend to raise the fiscal burdens as a defense to this action.  During the parties' negotiations, Petitioners agreed not to compel responses to the requests pertaining to "costs" if Respondents agreed not to pursue a general defense at any stage of this litigation, including on appeal, as to the "fiscal burdens" of providing bond hearings.

To that end, the parties stipulate as follows:

1.     Respondents represent and the parties stipulate that, except as described in paragraphs 3 and 4, they will not argue or otherwise pursue a general defense in this litigation on the grounds that (1) that the cost of providing a bond hearing should be considered in this case as a factor weighing in favor of Respondents, or (2) that the cost of providing bond hearings to class members (were Petitioners granted the relief they seek) would be greater than the cost of detaining class members.  This stipulation

4

in no way represents a factual assertion by Respondents as to any issue of fiscal burden associated with the relief sought by Petitioners, but instead is a stipulation not to pursue the general defenses described above for the purposes of this litigation only. Nothing in this stipulation shall be read to bind the Government in any litigation or action other than in this action.

2.      Because Respondents have represented that they will not raise these arguments or defenses in this case (except as provided in paragraph 3 and 4), Petitioners represent and the parties stipulate that Petitioners will not seek an order compelling responses to any discovery requests related to costs, including the costs of providing bond hearings.

3.      The parties stipulate that Respondents do not waive the right to argue or otherwise pursue a general defense in this litigation on the grounds that the cost of providing appointed counsel should be considered as a factor weighing in favor of Respondents.

4.      The parties also stipulate that if, during the pendency of district court proceedings, Respondents determine that they should raise arguments or defenses described in paragraph 1, Respondents shall immediately notify Petitioners of that fact in writing, and, if Petitioners request it, Respondents shall join a stipulation seeking an extension of the discovery period or, if discovery has closed, to reopen discovery, in order to permit Petitioners to seek or compel discovery as to any such defense.

5.      If Respondents do not raise any argument or defense referred to in paragraph 1 before the district court, they agree not to raise any such argument or defense on appeal.

## III.   **The Parties' Discovery Dispute**

Despite the parties' significant progress in narrowing their disagreements, several disputes remain outstanding. There are three principal areas of disagreement:

(1) Request for A-files (DHS Request for Production No. 1):

5

1    Petitioners have narrowed their request, but continue to seek the following

2    information from the A-files of every class member currently detained, and every

3    individual who would have fallen into the class during the period from April 21, 2010,

4    forward:  (a) any document sent, given or otherwise delivered by a Petitioner to the

5    federal courts, DOJ or DHS (including ICE, Customs and Border Protection ("CBP"),

6    and U.S. Citizenship and Immigration Services ("USCIS")); (b) documents sent, given

7    or otherwise delivered by those entities to a Petitioner; (c) post-order custody review

8    ("POCR") worksheets concerning anyone in the request universe; and (d) transcripts

9    of any statements given by a detainee to DOJ or DHS officials, such as transcripts of

10   removal hearings or CBP interviews.

11   Respondents maintain their objections to Petitioner's request for A-files for past

12   and current class members, including as to Petitioner's proposal to limit production to

13   a narrowed time period and only to certain documents within the A-files.

14   (2) Request for certain written policies and procedures (DHS Request for

15   Production Nos. 3, 6; DOJ Request for Production No. 3):

16   Respondents have withdrawn objections with respect to the request for

17   information concerning bond hearings, initial decisions by ICE to detain, and

18   supervised release, but they maintain their objections to the extent the requests seek

19   policies related to hearings permitted under *Matter of Joseph*, 22 I. & N. Dec. 799,

20   1999 WL 339053 (BIA 1999); hearings ordered under *Casas-Castrillon v. Dep't of

21   Homeland Sec.*, 535 F.3d 942, 951 (9th Cir.2008); parole determinations under 8

22   U.S.C. § 1182(d)(5), and post-order custody reviews ("POCRs") under 8 C.F.R. §

23   241.4.

24   (3) Requests for Admissions on Certain Topics (DHS Requests for Admission

25   Nos. 3, 4 - 15,18 - 21; DOJ Request for Admission Nos. 3, 4 – 11):

26   Respondents have maintained their objections to these RFAs.  Respondents

27   have withdrawn in part their objections to DHS Request for Admission No. 3 and DOJ

28   Request for Admission No. 3.

6

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1       The remainder of this Joint Stipulation is organized in two parts.  In part I, each

2   side sets forth its introductory statement, pursuant to Local Rule 37-2.1.  In part II, the

3   parties address the issues relating to the three areas of disagreement, setting forth their

4   contentions concerning Respondents' Motion for a Protective Order and Petitioners'

5   Motion to Compel.  Additionally, in part II, the parties set forth, in accordance with

6   this Court's April 4, 2011 order, their "propos[al] to resolve the dispute over that

7   discovery request at the conference of counsel."  [Dkt # 164].

8   **THE INTRODUCTORY STATEMENTS OF THE PARTIES**

9   **I.**   **Petitioner's Introductory Statement**

10      Petitioner seeks three limited categories of information in discovery, all of

11  which are highly relevant to their core claim that the government's existing custody

12  review processes in class members' cases do not satisfy the requirements of the Due

13  Process Clause.  These categories are (1) a limited set of information from the "A

14  files" (DHS administrative files) for individuals who were or are members of the class

15  in the past year,[2] (2) information relating to written policies and practices for DHS and

16  DOJ existing custody procedures applicable to class members, and (3) requests for

17  admission relating to those DHS and DOJ custody procedures.  This discovery is well

18  within the boundaries of Rule 26, which permits discovery of "any nonprivileged

19  matter, that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).

20      The information Petitioner seeks is based on the legal standard enunciated by

21  the Ninth Circuit and the Supreme Court.  "[D]ue process requires 'adequate

22  procedural protections' to ensure that the government's asserted justification for

23  physical confinement 'outweighs the individual's constitutionally protected interest in

24  avoiding physical restraint.'"  *Casas-Castrillon v. Dept. of Homeland Sec.*, 535 F.3d

25  942, 950 (9th Cir. 2008) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).  To

26  ─────────────────

27  [2] As explained *infra*, Petitioner has dramatically narrowed the information from A files that he now seeks, and is prepared to further narrow his request upon receipt of

28  certain information from Respondents.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

analyze Petitioner's claims under this standard, the Court must examine the Government's justifications for "physical confinement" (here, preventing flight and danger to the community), and the "adequa[cy]" of the "procedural protections" that the Government currently provides to class members,  to determine if their constitutionally protected liberty interest entitles them to greater procedures. *Zadvydas*, 533 U.S. at 691-92; *Demore v. Kim*, 538 U.S. 510, 529 (2003) (assessing the government's interest by relying on aggregate data concerning individual cases).

Each of the three categories of discovery that Petitioner now seeks is highly relevant under controlling due process precedent.  For example, by aggregating information in class members' A files—such as records of the custody review procedures, class members' biographical information (including family ties, work history and criminal history), and court documents revealing the strength of Petitioners' claims against removal ("merits claims")--Petitioner can draw conclusions as to whether the Respondents' existing procedures accurately assess danger and flight risk.  These conclusions are central to Petitioner's claim that the existing procedures are constitutionally inadequate.  This information will also allow Petitioners to document the nature of DHS's deprivation of his liberty.  The A-files are the *only source* from which Petitioner can gather much of this information critical to the due process standard, because the government does not maintain this crucial information in any other format or location.

Likewise, discovery about the government's existing custody review processes is also highly relevant to Petitioner's contention that these procedures fail to satisfy due process.  Petitioner's discovery requests seek information such as whether the government has a policy notifying detainees of the existing procedures, and how release decisions are made.  The requested policies and practices are critical for assessing the adequacy of the existing detention procedures.  Finally, Petitioner's requests for admission seek information about existing custody determination processes that is also clearly relevant to Petitioner's core due process claim.

8

The government has not met its burden of showing why this limited set of critical information "should not be allowed," much less "clarifying, explaining, and supporting its objections."  *Sullivan v. Prudential Ins. Co. of America*, 233 F.R.D. 573, 575 (C.D. Cal. 2005).  The government raises three arguments with respect to the A file discovery, none of which are persuasive.  First, the government contends here that producing the A files is burdensome, even though it routinely produces A files in other contexts.[3]  Second, Respondents' unsupported contention that relevant information cannot be extracted from class members' A files is without merit.  As set forth below, standard empirical methods would allow Petitioner to draw conclusions about the quality of the existing procedures and the strength of class members' liberty interest from the documents that Petitioner seeks from the A files.  *See* Exhibit 34 (Siulc Decl.) ¶¶ 4-8.  Third, Respondents' remaining objections to Petitioner's request for A files on relevance grounds reflect an attempt to re-litigate issues that Respondents raised and lost in their Rule 12(c) motion before this Court.  This Court has already rejected, for instance, Respondents' contentions that Section 1225(b) class members lack due process rights, *see* Dkt. # 155 at 2, and that *Demore v. Kim* authorizes mandatory detention of any length.  *Id*. at 2-3.

With respect to Petitioner's remaining document requests and requests for admission, Respondents do not, and obviously could not, contend that these requests are burdensome.  Instead, they recycle their relevance arguments, which are even less plausible in this context.  The crux of Petitioner's challenge is that the existing detention procedures do not satisfy due process, and the core of Respondents' defense is that they do.  Given that the custody review processes about which Petitioner seeks

---

[3] A subdivision of DHS, the National Records Center, produces 4,000 to 6,000 A files *per month* in individual immigration cases, in response to requests under the Freedom of Information Act.  Petitioner's narrowed request for approximately 350 - 1,000 A files (based on Respondents' estimate) thus amounts to what DHS ordinarily produces every few days.

9

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   discovery-- parole determinations, post-order custody reviews (POCRs), *Casas*

2   hearings and *Joseph* hearings--are part of the Respondents' existing processes for

3   determining whether individuals should be detained or released, there can be no

4   serious dispute that information about them is relevant.  Indeed, their sufficiency is the

5   central issue in this case.

6   **II.   Respondents' Introductory Statement**

7           Respondents seek a protective order that the discovery still in dispute not be

8   had.  Federal Rule of Civil Procedure 26(c) authorizes the issuance of a protective

9   order upon a showing of good cause. Fed. R. Civ. P. 26(c).  *Blankenship v. Hearst*,

10  519 F.2d 418, 429 (9th Cir. 1975).  Good cause exists for denying the discovery in

11  this case.

12          As detailed below, the issues before this Court are ones that Petitioners

13  characterized to the Ninth Circuit as "pure questions of law" that have "nothing to do

14  with the particular facts of any detainee's case."  The Ninth Circuit agreed, certifying

15  the class on the basis that the case presented a common question of law that did not

16  turn on the individual circumstances of any individual class member.  *See Rodriguez*

17  *v. Hayes*, 591 F.3d 1105, 1114 (9th Cir. 2010).  Once the case was remanded,

18  Petitioners propounded six sets of discovery that seek individual facts concerning a

19  wide range of individual facts about each class member (and even about individuals

20  outside the class) for a period dating back several years.  Among other things,

21  Petitioners sought the A-files of everyone who fits within the definition of the class

22  going back five years, and sought information through other requests that were vast in

23  scope.  Respondents objected to it on several grounds.  Although the parties have

24  compromised to resolve disputes over a large number of requests, Petitioners continue

25  to seek information that is irrelevant, overly burdensome, or both.

26          To resolve this dispute, the Court must understand Petitioners' theory for the

27  requested discovery.  At the outset, there is no dispute that in deciding this case the

28  Court must determine whether non-citizens are provided with adequate due process

10

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   under the current detention procedures after examining the Government's justification

2   for detention and the liberty interests at stake.  *See Zadvydas v. Davis*, 533 U.S. 678,

3   690-691 (2001); *Demore v. Kim*, 538 U.S. 510, 526-31 (2003).  However, Petitioners

4   further argue that under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court must

5   weigh the "risk of erroneous deprivation" of personal liberty by examining, on an

6   "aggregate" basis, certain facts of each individual class member's circumstances.

7   Specifically, Petitioners argue that the Court must test whether the existing procedures

8   – ranging from parole determinations, bond hearings, *Casas* hearings, *Joseph*

9   hearings, and POCRs – are "erroneous" because they result in the continued detention

10  of aliens who are not a flight risk or danger, or who have meritorious defenses to

11  removal, or other grounds.  Petitioners take the position that the Court must examine

12  the facts in each individual class member's case, somehow "aggregated" in a

13  statistically or otherwise significant manner, and determine whether the detention

14  procedures used result in incorrect determinations to continue detention.

15         Some of the problems with Petitioners' arguments are best examined in the

16  context of the discovery requests in dispute.  First, the A-file materials sought by

17  Petitioners are not relevant to this action, because Petitioners cannot show that the

18  information to be gleaned – the flight risk of an alien, an alien's dangerousness to

19  society, the likelihood of their success in removal proceedings, etc. – which is varied

20  and fact-intensive, can be "aggregated" in any meaningful way.   Moreover, with

21  respect to some classes of aliens, Petitioners' *Mathews* approach is irrelevant.  For

22  example, arriving aliens detained under section 1225(b) do not, as the Ninth Circuit

23  has repeatedly recognized, have a due process right to enter the United States, and the

24  parole of such aliens is entirely discretionary – legal realities that undercut any

25  claimed need to determine the "error" rate of discretionary parole.  In the case of

26  aliens detained under section 1226(c), there is no administrative procedure to test in

27  terms of "error."  In any event, Petitioners can cite *no* case where the type of

28

11

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1    information sought has been used to determine the "pure issue of law" this case is

2    about.

3        Additionally, complying with the request for A-file materials – which, even in

4    its more narrowed scope, seeks a substantial amount, if not most, of the documents

5    contained in the A-files of large universe of individuals – imposes an undue burden on

6    the part of Respondents.  Producing the documents requested from each file would

7    require Respondents to first locate and obtain such files – any of which could by with

8    USCIS, with ICE, with immigration courts or Government counsel – and then require

9    an individual review of each file to pull responsive documents for production.  We

10   know that at present the number of A-files that would need to be located, reviewed,

11   and copied for production is at least 350, and because the request seeks A-files going

12   back a year, that number is going to be larger.

13       Second, the requests for written policies and admissions about the

14   implementation of policies concerning *Casas* hearings, *Joseph* hearings, POCRs, and

15   parole determinations are also irrelevant.  Petitioners' case alleges that no matter how

16   conscientiously applied, no procedure is constitutionally sufficient to afford due

17   process, and that there can only be adequate due process if aliens detained for more

18   than six months are provided with bond hearings before immigration judges.  The

19   application of those procedures is not being challenged, and any request seeking to

20   determine how imposed procedures are being implemented is irrelevant because those

21   procedures are alleged to be inadequate on their face.  In this regard, none of the

22   remaining disputed requests are relevant, and Petitioners can cite no case to support

23   their need for information about the implementation of those procedures.  The

24   requests are also irrelevant for other reasons, as discussed below.

25       Petitioners' discovery requests are not relevant to this class action lawsuit

26   concerning a purely legal issue of statutory and constitutional interpretation.  The

27   Court should enter a protective order to disallow the requested discovery.

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

# PARTIES' CONTENTIONS AS TO THE DISPUTED DISCOVERY

I.  **A-FILE MATERIALS**

   A.  **Text of the Disputed Discovery**

   **DHS RPD No. 1:**
   The "A" file of every Petitioner.

   B.  **PARTIES' PROPOSALS**

   Petitioner proposed narrowing the scope of DHS RFP No. 1 in several respects.
   First, Petitioners proposed that Respondents' produce A file information for
   noncitizens detained six months or longer in the Central District from April 21,
   2011 on (rather than October 1, 2006), and who spent a substantial portion of
   their time in the Central District.  Petitioner further proposed that the
   Respondents produce the following A file records (rather than the entire files):
   "any document sent, given or otherwise delivered by a Petitioner to the federal
   courts, DOJ or DHS (including ICE, CBP and USCIS) and documents sent,
   given or otherwise delivered by those entities to a Petitioner.  In addition, we
   request POCR worksheets and the transcripts, if produced, of any statements
   given by a detainee to DOJ or DHS officials, such as transcripts of removal
   hearings or CBP interviews."

   In addition, in correspondence dated March 8, 2011, the Petitioner stated that
   "[w]e are hopeful that after reviewing the database information that the
   Respondents have – largely – agreed to produce, Petitioners may be able to
   significantly reduce the number of A-files we request. For this reason, we urge
   the Respondents to promptly produce the database information so that we can
   evaluate the information and determine how, if at all, our request for A-files
   could be further reduced."  In response, in correspondence dated March 17,
   2011, Respondents indicated that "we remain open to reasonable proposals."

   Respondents have not submitted a proposal with respect to DHS RFP No. 1.

   C.  **PETITIONERS' CONTENTIONS**

   As a threshold matter, the relevant legal standards strongly favor Petitioner with
respect to both assessing relevance and the burden of producing relevant information.
A party seeking to establish "good cause" for a protective order "carries a heavy
burden of making a 'strong showing' why discovery should be denied."  *See Skellerup
Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995) (citing

13

1   *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).  "[F]or each

2   particular document it seeks to protect," the movant bears the burden "of showing that

3   specific prejudice or harm will result if no protective order is granted."  *See Foltz v.*

4   *State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

5       Courts "cannot accept at face value" sweeping assertions of undue burden.

6   *Green v. Baca*, 219 F.R.D. 485, 492-493 (C.D. Cal. 2003) (rejecting government's

7   assertions that it would take in excess of 4,200 person hours to produce "back-up

8   documentation" relating to unlawful prolonged detentions in jail facility).  Even when

9   a claim of burden is adequately made, courts must weigh the burden against the needs

10  of the case, the amount in controversy, the parties' resources, the importance of the

11  issues at stake, and the importance of the proposed discovery.  *Id.* at 493.  Prolonged

12  detention cases raise "important constitutional issues" that favor discovery,

13  particularly given the resources available to the government.  *See id.* (rejecting undue

14  burden argument in an individual action challenging detention practices).

15      Here, the A files Petitioner seeks contain highly relevant information that can

16  be aggregated to produce evidence relevant to both the adequacy of the existing

17  detention procedures and the liberty interests at stake for class members.  Production

18  of the limited number of files Petitioner now seeks is not so burdensome as to justify a

19  protective order barring the discovery.

20      **1.**   **A files contain information that is highly relevant to the due**

21          **process standards that governs Petitioners' claims**

22      A files are administrative files maintained by DHS that contain all the

23  government's records related to a noncitizen's immigration case and detention.  These

24  records include: applications and requests for release (e.g., briefs submitted for bond

25  hearings); records of custody determinations (e.g., post-order custody review

26  ("POCR")  worksheets, parole decisions, transcripts or bond memorandum from bond

27  hearings); and documents related to the noncitizen's immigration case, including

28  applications for relief, petitions for adjustment and asylum applications, as well as

14

court-related documents (e.g., requests for continuances, transcripts of hearings and merits decisions).  These documents often contain a variety of biographical information, including immigration status, family ties, residence history, work history, criminal history and other information.

This information is indispensible in evaluating the accuracy of Respondents' existing custody review procedures and the nature of the deprivation of liberty that class members suffer – issues at the core of this case.  Petitioner's request for A file information thus comfortably falls within the scope of discovery permitted under Rule 26.

With respect to the accuracy of the existing detention procedures, the records related the class members' custody determinations provide the only source of information from which the Court can determine how the Respondents' existing custody review procedures work in practice.  For example, with the A files, Petitioners will be able to determine rates of release under the various custody review procedures for the class.  Additionally, the Petitioners will be able to present information that may bear on the adequacy of specific procedures.  For example, the Petitioners will be able to determine how many POCR decisions are issued without any written explanation, or how many people are found to lack community ties even though they have lived for years in the same community.

The records will also allow the Court to determine the overall accuracy of the existing procedures in determining whether an individual is in fact a flight risk or danger.[4]  For example, a noncitizen with a strong claim for relief from removal is less

---

[4] The Board of Immigration Appeals has provided some guidance for determining whether an individual is a danger or flight risk.  In *Matter of Guerra*, the Board held that the following factors are relevant in determining whether to release an individual on bond "(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in

*(Footnote continued)*

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1    likely to be a flight risk.  From reviewing an individual's merits documents, a

2    qualified immigration expert can determine with reasonable certainty whether an

3    individual is clearly eligible for relief, arguably eligible for relief, or clearly not

4    eligible.  *See* Exhibit 35 (Tolchin Decl.) at ¶¶ 14-17.   Additionally, an individual with

5    strong community ties and work history is less likely to be a flight risk.  It is entirely

6    feasible for Petitioner to extract and tabulate such data relevant to flight risk and

7    danger from the A files and determine the occurrence and occurrence of these factors

8    within the class.  *See* Siulc Decl. ¶¶ 4-8.  By analyzing this aggregate data, Petitioner

9    will then be able to draw statistically significant conclusions about whether the

10   Respondents' existing procedures accurately determine which class members are in

11   fact flight risks or dangers to the community.

12        Likewise, information related to a noncitizen's criminal history and other

13   biographical information will allow the Court to draw conclusions concerning how

14   well the Respondents' existing procedures determine whether class members present a

15   danger to the community.  The A files contain the only documents that describe class

16   members' criminal histories, if any.  By aggregating that data and comparing it to the

17   outcomes of Respondents' existing custody procedures, the Petitioners will be able to

18   test whether those procedures lead to the detention of individuals who in fact do not

19   present a danger to the community.[5]

---

20   court; (6) the alien's criminal record, including the extensiveness of criminal activity,
     the recency of such activity, and the seriousness of the offenses; (7) the alien's history

21   of immigration violations; (8) any attempts by the alien to flee prosecution or

22   otherwise escape from authorities; and (9) the alien's manner of entry to the United

23   States." 24 I. & N. Dec. 37, 40 (2006).   While Petitioner does not believe that

24   *Guerra* establishes a definitive list of relevant factors, the information it identifies as
     relevant is more than adequate to justify Petitioner's request for A files.

25   [5] There are a variety of other ways in which A file information will allow the Court to
     evaluate the Respondents' existing custody procedures.  For example, Petitioners will

26   be able to determine how many individuals who were denied bond are ultimately

27   granted cancellation of removal, which is – like bond – a discretionary determination

28   that turns in part on the equities in the noncitizen's case.  While the two decisions are

*(Footnote continued)*

16

1    This kind of data is directly relevant to Petitioners' due process claim that

2    existing custody review procedures raise serious constitutional problems since they

3    result in the prolonged detention of individuals who pose no significant danger or

4    flight risk.  Indeed, both controlling Supreme Court and Ninth Circuit precedent look

5    to such aggregate facts in assessing due process challenges. *See, e.g.*, *Demore v. Kim*,

6    538 U.S. 510, 529 (2003) (resolving question whether due process required bond

7    hearings by relying on aggregate data concerning individual cases); *Zadvydas*, 533

8    U.S. at 723-24 (Kennedy, J., dissenting) (citing statistics concerning the number of

9    individuals released under existing procedures as relevant to the question whether

10   those procedures were adequate); *Orantes-Hernandez v. Meese*, 685 F.Supp. 1488,

11   1507-08 (C.D. Cal. 1988) (resolving procedural due process claim by reference to

12   facts about "a substantial number of class members"); *Morales-Izquierdo v. Gonzalez*,

13   486 F.3d 484, 496 (9th Cir. 2007) (en banc)  (relying on data concerning the "error

14   rate" to assess sufficiency of additional process in removal proceedings); *Humphries*

15   *v. County of Los Angeles*, 554 F.3d 1170, 1200 (9th Cir. 2009) (utilizing error rate in

16   system similar to the one at issue in assessing due process claim); *County of Riverside*

17   *v. McLaughlin*, 500 U.S. 44, 55, 57 (1991) (in class action, relying on information

18   concerning causes for delays in arraignment and conclusion that "it takes 36 hours to

19   process arrested persons in Riverside County" in assessing constitutional

20   requirements); *see also id.* at 68 (Scalia, J., dissenting) (arguing in favor of a 24-hour

21   period to provide a probable cause hearing based on the "available data" and

22   observing that the Court had previously declined to decide the issue "since we had

---

based on different criteria, it would bear on the quality of the existing detention
procedures if, for example, a large percentage of individuals who were granted
cancellation were denied bond because they were determined to be dangers or flight
risks.  This is simply one example of many potentially relevant conclusions that
Petitioners may be able to draw after analyzing A file information.  Moreover, after
reviewing the A files, Petitioners may be able to develop a number of other ways to
evaluate the Respondents' procedures by observing patterns in the cases.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1  before us little data to support any figure we might choose" and that the Court would

2  still benefit from "even more information"); *Schall v. Martin*, 467 U.S. 253, 265, 271-

3  72 (1984) (in habeas class action challenging juvenile pre-trial detention on due

4  process grounds, considering aggregate data on juvenile crime rates in assessing

5  government interest, factual testimony on the conditions of confinement in assessing

6  individual's interest, and aggregate data on the outcome of class members' cases).

7       2.    **Respondents overstate the burden of producing A files.**

8       Respondents' claims regarding burden are greatly overstated.  At issue here are

9  approximately 350-1,000 A files (based on Respondent's estimate), which amounts to

10  what DHS routinely produces every few days in response to individual requests for A

11  files.  A subdivision of DHS, the National Records Center, produces 4,000 to 6,000 A

12  files per month in 2005 in individual immigration cases in response to FOIA requests

13  from individual immigrants.  *See* Recommendations from the CIS Ombudsman to the

14  Director USCIS (July 12, 2006), *available at* http://www.dhs.gov/xlibrary/assets/

15  CISOmbudsman _RR_30_FOIA_Processing_07-12-06.pdf.  That number is almost

16  certainly larger today, given that the number of deportation cases has substantially

17  increased in the last few years.  *See* http://trac.syr.edu/immigration/reports/246/.  The

18  Respondents thus routinely "coordinat[e]" "four departments and agencies" to locate

19  A files on a daily basis and magnitude far larger than the number of A files at issue

20  here.  *See infra* section I.D.4.

21       This is particularly true because there is nothing distinctive about Petitioner's

22  discovery request that requires more or different review than the Respondents

23  ordinarily conduct under FOIA.  A files produced in response to FOIA requests

24  undergo review for confidential and privileged information, similar to the process that

25  Respondents complain that they will be forced to do here.  *See* Tolchin Decl. at ¶ 9.

26  The Respondents have not identified any source of privilege or confidentiality that

27  applies in the discovery context that is different from their ordinary FOIA review.

28  The Respondents claim that each A file will have to be reviewed by counsel for DHS

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1    and DOJ, as well litigation counsel, but provide no explanation why they need to

2    conduct such extensive and duplicative review.  Thus the nature of Respondents'

3    review of the A files at issue here should be no different from their regular and

4    frequent review of such files in the FOIA context.

5        Nor is there anything distinctive about the content of the A files requested here.

6    The size of an A file can vary depending on nature of the individual's claims, whether

7    he or she is represented and the procedural history of the individual's case.  *See*

8    Tolchin Decl. at ¶¶ 11-13.  While all the individuals whose A files Petitioner has

9    requested have been detained for more than six months, the vast majority of those

10    individuals are likely still litigating their cases before the immigration judge, meaning

11    that their A files will be relatively less voluminous.  *See* Exhibit 36 (Tan Decl.) at ¶ 6

12    (explaining, based on data disclosed pursuant to Freedom of Information Act Request,

13    that 73% of class members detained on November 1, 2010 had removal cases pending

14    before the immigration judge).  Additionally, Respondents have not claimed that the

15    rates of representation for the requested cases are significantly greater than in other

16    detained removal cases.  Likewise, the Respondents have not identified anything

17    distinctive about the claims at issue in the requested A files that is significantly

18    different than in FOIA-requested A files.  Because the burden of producing the A files

19    is no different than DHS's existing system, which produces thousands of A files each

20    month, the Court should reject Respondents' unfounded assertion of undue burden.[67]

21

22    [6] Respondents' burdensomeness objection also ignores that noncitizens across the
Ninth Circuit now  have the right to access their A files, separate and apart from any

23    discovery request.  *See Dent v. Holder*, 627 F. 3d 365 (9th Cir. 2010).  Although  the
Court rejected Petitioner's claim that *Dent* requires the production of the  A files in

24    this case,  Respondents' obligation to provide the Petitioners with their A files for

25    their individual immigration cases is relevant in assessing the burden to produce them
here.

26    [7] Any concern about protecting class members' privacy interests can be addressed by

27    protective order, given that class counsel are counsel for all members of the class and
therefore barred by attorney-client privilege from revealing information concerning

28

*(Footnote continued)*

19

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1        The government's additional assertion of burden based on resources required to

2   remove and copy only the requested  documents from each A file is is entirely a

3   problem of the Respondents own making.  Petitioners have repeatedly volunteered—

4   and continue to volunteer-- to take on the burden of sorting through the A files for

5   relevant documents if the Respondents produce them in their entirety.  Petitioner only

6   provided the Respondents with a limited and specified list of requested documents on

7   the Respondents' request.  Respondents cannot now complain about a burden that they

8   willingly assumed.  Additionally, we observe that DHS routinely produces electronic

9   copies of A files.  *See* Tolchin decl. at ¶ 10.  Thus, contrary to the Respondents'

10   assertion, the Respondents could easily comply with Petitioner's request without

11   conducting any copying.

12        Respondents' refusal to disclose any A file information is particularly

13   unwarranted given Petitioner's significant narrowing of his request for A files during

14   the parties' extensive discovery negotiations.  Petitioner dramatically reduced the

15   *temporal scope* of the request (from four years' worth of files to one) limited *the set of*

16   *documents* they seek from the files, and limited the *geographic scope* of their request

17   to those detainees who spent substantially all of their detention in the Central District.

18   Petitioner has also offered to reduce his request further depending on the total number

19   of A files at issue here.  Petitioners remain willing to explore other compromises that

20   would enable the Petitioners to gather the critical information they need from A files

21   without unduly burdening the Respondents.  For example, as Petitioners indicated in

22   their March 8, 2011 letter, they may be amenable to accepting a sample of A files,

23   _____

24   their cases absent their consent.  *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d
470, 475 (9th Cir. 1992) (recognizing that "Ninth Circuit precedent strongly favors

25   disclosure to meet the needs of parties in pending litigation" and that any "legitimate
interests in privacy can be protected" with a protective order); *accord Foltz v. State*

26   *Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) ("reasonable

27   restrictions on collateral disclosure … protect an affected party's legitimate interests in
privacy").

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

after reviewing the database information to determine whether and how it would be possible to draw a representative sample.  Additionally, Petitioners would be willing to receive A files on a rolling basis to accommodate the Respondents, so long as the Respondents agree to complete production within a reasonable period.  *Cf. Green*, 219 F.R.D. at 492-93 (rejecting claim that production of files was unduly burdensome in prolonged detention challenge concerning jail).  Despite all of these attempts at compromise, Respondents have continued to maintain their objection to producing any A file information.

Under these circumstances, the Court should reject Respondents' assertion of burden regarding A file discovery.

### 3.   Respondents' Relevancy Arguments About A File Discovery Are Without Merit.

Read generously, the Respondents' relevancy arguments against production of A file information fall into two categories.  First, Respondents argue that the A file information is not relevant because this case involves only legal issues, even though the Ninth Circuit and Supreme Court have considered similar facts when deciding similar detention cases.  Respondents' second contention--that Petitioner will not be able to meaningfully aggregate or otherwise use the information in the A files—is flatly wrong given the kind of information about danger and flight risk that exists in the typical A file.

### a.   Controlling Precedent Has Considered Aggregate Facts Similar to Those at Issue Here.

As a threshold matter, Petitioner must correct Respondents' mistaken argument that the factual information in A files is irrelevant because this case involves a "facial" challenge that raises only a "pure questions of law", and because Petitioner seeks a particular form of bond hearing at six months for all class members.  These arguments rest on a confused understanding of Petitioner's due process claims and cannot serve as a basis for refusing Petitioner's requests for A files.  First, the mere fact that

21

1   Petitioners' challenge presents a "question of law" – i.e., whether the immigration

2   statutes must be construed to require a bond hearing when detention is prolonged in

3   order to avoid the serious constitutional problems that would otherwise be presented

4   [8]– does not mean that aggregate facts about class members are irrelevant.  As

5   explained below, both controlling Supreme Court and Ninth Circuit precedent have

6   looked to aggregate facts in assessing whether custody review procedures satisfy due

7   process.  *See* section I.C.3.b, *infra*.[9]

8   Second, there is nothing inconsistent in Petitioner seeking uniform relief for the

9   class – i.e., a constitutionally adequate bond hearing -- while also seeking discovery to

10  show that the existing procedures are deficient.  As Petitioners have consistently

11  maintained, the determination of whether class members' rights have been violated

12  will require the Court to consider whether the Respondents' existing custody

13  procedures in fact are constitutionally sufficient.  And consideration of aggregate facts

14  

15  [8] Respondents imply that Petitioner has conceded that "there is 'confusion concerning the nature of the pure question of law in this case.'"  However, the government quotes

16  Petitioner out of context.  In a letter regarding the meet and confer process, Petitioner

17  observed that *Respondents* were confused about "the nature of the pure question of law at issue in this case."  *See* Exh. 37 (Letter from Ahilan Arulanantham to Ted

18  Atkinson (August 31, 2010)).  Respondents characterization of Petitioners' challenge

19  as "facial" is also misleading.  As noted above, Petitioners principle claim is that the statute does not authorize prolonged detention without a bond hearing, in light of the

20  serious constitutional problems that such an interpretation would raise as applied to

21  class members.

22  [9] Moreover, Respondents have already attempted to dispose of this case based on their position that it involves only pure questions of law through their Rule 12(c) motion

23  for judgment on the pleadings.  They lost.  The Court should not permit Respondents

24  to stonewall discovery using the same arguments already rejected by this Court.

25  Particularly given this holding the Respondents cannot refuse to respond to discovery because it considers Petitioner's legal theories meritless.  "Defining the scope of

26  discovery in this manner is improper, for it allows" a party to essentially "filter its documents through its own construction of" the case and thereby decide "an ultimate

27  issue" that should "be resolved by the court."  *See Schauf v. Mortgage Bankers Serv.*

28  *Corp.*, 2001 WL 1654711, at *2 (N.D. Ill. 2001).

22

from the A files of class members may also shape the relief that the Court ultimately orders.  Review of the Respondents' existing practices may reveal, for instance, that certain procedures that Petitioners seek are already provided or unnecessary to protect class members' rights.

The Supreme Court's decision *Demore v. Kim* is instructive.  *See* section I.C.1, *supra.*  There, the Court considered a due process challenge to section 1226(c)'s authorization of detention without the opportunity for a bond hearing, the same basic constitutional question presented in this case.  In *Demore*, the government argued – and the Court agreed – that aggregate data concerning individual cases and the efficacy of alternative procedural safeguards are relevant factors in the due process analysis.[10]

In concluding that bond hearings were not required, for example, the *Demore* Court stressed the "brief" period of detention for most 1226(c) detainees, relying on aggregate data provided by the government.  538 U.S. at 529 (EOIR "has calculated that, in 85% of the cases in which aliens are detained pursuant to§ 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days") (quoting government brief).  That data was central to the majority opinion's ultimate conclusion, as well as Justice Kennedy's concurrence, that bond hearings were not required for the "brief" period of detention at issue.  *See id*.; *id.* at 532 (Kennedy, J.,

---

[10] Respondents argue that information on *Joseph* hearings is not relevant to the case because *Joseph* hearings determine only whether a detainee is subject to mandatory detention, and not whether the detainee is a danger or flight risk.  However, *Joseph* hearings form a critical part of the existing procedure for determining whether or not class members remain detained.  Both the majority opinion and Justice Kennedy's concurrence in *Demore* concluded that *Joseph* hearings provide a procedural safeguard against unlawful detention.  *Id.* at 514 n.3, 523 n.6; *id.* at 531-32 (Kennedy, J. concurring).  The Court specifically observed that because the petitioner did not seek a *Joseph* hearing, "we have no occasion to review the adequacy of *Joseph* hearings generally in screening out those who are improperly detained."  *Id.* at 514 n.3.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1  concurring) (stating that individualized hearing may be required if there is an

2  "unreasonable delay by the INS in pursuing and completing deportation

3  proceedings").

4      The Court also relied on extensive findings and studies cited in the

5  Congressional record in assessing the strength of the government's interest.  *Id*. at

6  518-21.  The Court further found that a study done by the Vera Institute of Justice on

7  alternatives to detention had "limited" value due to methodological problems, but did

8  not reject that the availability of alternatives is relevant to due process analysis.  *Id*. at

9  520 n. 5.

10      Respondents attempt to diminish the significance of *Demore*, suggesting that

11  the Court only relied on only one "extrinsic" fact (length of detention) introduced

12  outside of the Congressional record.  However, that "one fact" included extensive

13  aggregate data compiled by the government, exactly the same sort of information

14  Petitioner seeks here through A file discovery.  Further, Respondents ignore the other

15  factual information considered by the *Demore* Court – including the availability and

16  efficacy of alternative procedures – in analyzing the due process claim.  It is

17  immaterial that this information was introduced at the Supreme Court, rather than

18  developed in discovery at the district court.  The critical lesson from *Demore* is that

19  the information—however it was introduced to the Court—is highly relevant to the

20  due process inquiry.

21      The Respondents also ignore that the Ninth Circuit as well has repeatedly relied

22  on the individual facts of cases in resolving the due process claims of immigration

23  detainees, based on; information contained in the A files of the individual petitioners.

24  For example, in *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008), the Ninth

25  Circuit reviewed the facts in the administrative record—including the limited

26  procedural protections of paper custody reviews, the nature of prior bond hearings, the

27  length of detention, and the outcomes of removal proceedings—to determine "whether

28  Casas ha[d] been afforded an adequate opportunity to challenge the necessity of his

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   detention." *Id.* at 951; *see also Prieto- Romero v. Clark*, 534 F.3d 1053, 1065-67 (9th

2   Cir. 2008) (reviewing record facts regarding three bond hearings and outcome of

3   removal proceedings); *Diouf v. Mukasey*, 542 F.3d 1222 (9th Cir. 2008) (vacating and

4   remanding to address the sufficiency of the post-order custody review process

5   received by the detainee).  The Ninth Circuit has clarified that the record of procedural

6   review—the very information Petitioner seeks here from the A files—is necessary for

7   "a determin[ation] whether the government has afforded . . . a [sufficient] bond

8   hearing." *Id.* at 952.  It is difficult to understand how the government expects this

9    Court to resolve the due process claims here without an examination of the accuracy

10  of "the procedural review" that class members have received, obtainable through

11  review of the A files of class members.

12         The Respondents wrongly assert that counsel for Petitioners has somehow taken

13  inconsistent positions by litigating individual detention cases without the benefit of

14  discovery, citing to *Diouf v. Mukasey*, No. 06-07452-TJH (C.D. Cal.).[11]  Respondents

15  ignore that counsel were aware of Mr. Diouf's individual facts and were able to

16  present them to the Court *because they had a copy of his A file* and did not need to

17  seek that information through discovery.  In its decision denying Mr. Diouf's habeas

18  petition, and contrary to Respondents' suggestion, Judge Hatter expressly relied on the

19  individual facts of Mr. Diouf's case – that he had "received two post order custody

20  review considerations on July 29, 2005, and again on July 25, 2006" and his "criminal

21  history, lack of cooperation in past removal proceedings and likelihood of future

22  removal" – in finding that "the post order custody review procedures provided ample

23  procedural due process *in these circumstances*."  *Diouf v Holder*, No. CV 06-7452,

24

---

25  [11] The Ninth Circuit reversed Judge Hatter's Diouf decision on the merits in *Diouf v.*

26  *Napolitano*, No. 09-56774 (9th Cir. March 7, 2011) (holding that Mr. Diouf was
     entitled to a bond hearing under Section 1231(a)(6)).  Because the government has

27  obtained an extension of time to seek rehearing in that case, the mandate has not

28  issued.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   2009 WL 6331130, at *2 (C.D. Cal. September 9, 2009) (emphasis added).  Petitioner

2   now seeks precisely the same type of information from class members' A files that

3   Judge Hatter relied on in deciding Mr. Diouf's case.

4          Respondents also misread the class certification opinion in this case, *Rodriguez*

5   *v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009), to argue against discovery here.

6   There, the Ninth Circuit was concerned only with class certification.  Thus, in stating

7   that "[t]he particular characteristics of the Petitioner or any individual detainee will

8   not impact the resolution of this general statutory question…," the Ninth Circuit was

9   not suggesting that the parties were foreclosed from fact discovery.  *Id*. at 1124.

10  Rather, the Ninth Circuit was simply reasoning that the unique facts of each class

11  member's immigration case did not render the class unsuitable for certification.

12          **b.**      **Information in the A files Can Be Easily Aggregated and**

13                      **is Critically Relevant to Petitioner's Arguments About**

14                      **the Sufficiency of Respondents' Existing Procedures.**

15          With respect to the practical claims, Respondents wrongly assert both that there

16  are no relevant documents in the A files and that even if there is relevant information,

17  it is impossible to aggregate that information in a meaningful way.   Respondents'

18  contentions notwithstanding, "legal briefs, supplemental authorities, declarations,

19  country reports,"  "applications or petitions for immigration benefits with USCIS" and

20  "change of address forms, notices of legal representation, correspondence" are not

21  "inherently irrelevant" here.  *See infra* section I.D.3.  Quite to the contrary, documents

22  related to a noncitizen's merits case can be critical in evaluating the strength of his

23  claim and therefore whether he presents a flight risk.  Additionally, merits-related

24  documents also may contain a variety of biographical information that is central in

25  determining whether an individual is a flight risk or danger, as well as evaluating his

26  interest in avoiding detention (e.g., whether the individual has United States citizen

27  children or owns a small business).

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1    Likewise, Respondents' unsubstantiated assertion that A file information is
2    incapable of aggregation is wrong.  In fact, various studies have undertaken aggregate
3    analyses of individual noncitizen case files to identify factors that are generally
4    associated with flight risk and danger.  For example, a study conducted by the Vera
5    Institute of Justice in conjunction with its Appearance Assistance Program aggregated
6    case-level data to conclude that asylum seekers subject to appropriate supervision are
7    highly likely to appear for removal proceedings, and that several factors consistently
8    increase the likelihood of appearance, such as having community and family ties in
9    the United States, and being represented by counsel.  *See* Vera Institute of Justice,
10   Testing Community Supervision for the INS: An Evaluation of the Appearance
11   Assistance Program, Vol. 1, at 7 (Aug. 1, 2000), available at
12   http://www.vera.org/content/testing-community-supervision-ins-evaluation-
13   appearance-assistance-program; *see also id*. at 21-24 & vol. II, App'x II (describing
14   statistical method for determining, based on aggregated case-level data, which factors
15   are associated with appearance in immigration court).  Similarly, the Vera Institute's
16   audit of the Executive Office for Immigration Review (EOIR) Legal Orientation
17   Program determined, based on aggregated case-level data, that individuals with
18   representation received in absentia orders at much lower rates than unrepresented
19   persons and that rates of removal in absentia were even lower for persons pursuing
20   certain types of relief from removal, such as asylum.  Vera Institute of Justice, Testing
21   Community Supervision for the INS: An Evaluation of the Appearance Assistance
22   Program, Vol. 1, at 7 (Aug. 1, 2000), available at http://www.vera.org/content/testing-
23   community-supervision-ins-evaluation-appearance-assistance-program.
24       Similarly, here a variety of A file information can be extracted and tabulated for
25   the purpose of testing whether Respondents' various custody review procedures
26   accurately identify individuals who pose a danger or risk of flight.  *See* Siulc Dec. ¶¶
27   4-8.
28

27

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   Respondents claim that the database information they have agreed to produce

2   serves as a substitute for the information contained in A files, but this is incorrect.

3   Government databases do not contain information about the strength of an

4   individual's merits claims, that actual content of the POCR worksheets, parole

5   determination, and bond hearing transcripts, or a variety of biographical information,

6   including criminal history, work history and community ties.  The A files are the only

7   readily available source for this critical information.  *See* Siulc Dec. ¶ 7 (explaining

8   that paper files and database information are likely not identical, and that information

9   in A files may not be available in administrative databases because the database does

10   not record the information, or because the information is missing from the individual

11   database record).

12   Moreover, to the extent that there is duplicative information, review of the A

13   files will allow Petitioners and the Court to determine whether the government

14   database information is accurate.  The databases maintained by the DHS have been

15   historically criticized for their inaccuracy and unreliability.  DHS's own Office of

16   Inspector General ("OIG") repeatedly criticized the agency for failing to maintain data

17   in a consistent, timely, and reliable manner.  The deficiencies identified by the OIG

18   have included, *inter alia*, information regarding detainee security classification,

19   appearance rates, releases due to the lack of detention resources, regarding length of

20   residence in the United States, complete criminal history, and basic demographic data

21   on the children of noncitizens in proceedings, as well as the creation of numerous

22   duplicate records for individual noncitizens.[12]  *See Gibson v. County of Riverside*, 181

23   _____

24   [12] *See* Department of Homeland Security, Office of Inspector General, Removal
     Involving Illegal Alien Parents of United States Citizen Children, OIG-09-15, at 3
25   (Jan. 2009), available at http://www.dhs.gov/xoig/assets/mgmtrprts/OIG_09-
     15_Jan09.pdf; Department of Homeland Security, Office of Inspector General,
26   Detention and Removal of Illegal Aliens, OIG-06-33, at 19-20, OIG-09-15, at 6, 8-9,
     10-11, 13 (Apr. 2006), available at http://www.dhs.gov/xoig/assets/mgmtrprts
27   /OIG_06-33_Apr06.pdf.

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

F. Supp.2d 1057, 1066 (C.D. Cal. 2002) (noting that "for a summary of data to be admissible" the "underlying documents" must have been "made available to the opposing party for inspection prior to their introduction.'") (quoting *United States v. Miller*, 771 F.2d 1219, 1238 (9th Cir. 1985)) (internal punctuation omitted).

Thus, because information from A files can be meaningfully aggregated, and because such information is relevant to the legal standard set forth by the Ninth Circuit and Supreme Court, the Court should reject the Respondents' contentions as to relevance.

### 4.    **Respondents' specific doctrinal arguments regarding the subclasses are meritless**

In addition to the general objections discussed above, Respondents also make several doctrinal arguments specific to each of the subclasses.  Again, these arguments are largely attempts to relitigate arguments rejected in Respondents' Rule 12(c) motion, and they are meritless.

### a.    **Section 1231(a)(6) detainee files**

Respondents' objections to the production of A files for the section 1231(a)(6) subclass are simply recycled versions of their general objections.  Respondents claim that their application of the existing custody review procedures to section 1231(a)(6) detainees is irrelevant to Petitioners' "facial" challenge.  However, as explained above, this is not a facial challenge, the accuracy of class members' custody determinations is central to this case, and a review of class members' A files is the only way to assess their sufficiency.  Respondents also again assert that there is some inconsistency between the arguments here and those in *Diouf v. Mukasey*, but Judge Hatter expressly relied on Mr. Diouf's individual circumstances in determining that the custody determinations he received satisfied minimum due process standards.

### b.    **Section 1226(c) detainee files**

Respondents' arguments against disclosure of 1226(c) subclass A files center on *Demore v. Kim*.  Respondents' central argument – that section 1226(c) class

1   members have no claims on the merits – was rejected by Judge Hatter, and is contrary

2   to a wealth of Ninth Circuit precedent.  *See* Dkt. #155 at 2-3; *see also Casas*, 535 F.3d

3   at 949-50.  Although Judge Hatter did not determine the exact time period at which a

4   hearing is required, he unambiguously rejected the Respondents' argument that

5   *Demore* authorizes prolonged detention of any length without a hearing.

6          The Respondents also argue in passing that information on *Joseph* hearings is

7   not relevant to the case because *Joseph* hearings determine only whether a detainee is

8   subject to mandatory detention, and not whether the detainee is a danger or flight risk.

9   However, Joseph hearings form a critical part of the existing procedure for

10  determining whether or not class members remain detained.  Both the majority

11  opinion and Justice Kennedy's concurrence in *Demore* concluded that *Joseph* hearings

12  provide a procedural safeguard against unlawful detention.  Id. at 514 n.3, 523 n.6; id.

13  at 531-32 (Kennedy, J. concurring).  The Court specifically observed that because the

14  petitioner did not seek a Joseph hearing, "we have no occasion to review the adequacy

15  of Joseph hearings generally in screening out those who are improperly detained."  Id.

16  at 514 n.3.  Indeed, Respondents concede that these hearings are supposed to provide

17  "procedural safeguard[s]" at the "*outset of detention[s]*."  *See infra at* section II.D.

18  Indeed, the government expressly relied on *Joseph* hearings as a procedural safeguard

19  that supports the constitutionality of mandatory detention under section 1226(c) in

20  *Demore v. Kim*.  *See* 538 U.S. at 514; 514 n.3; 532 (Kennedy, J., concurring).  As

21  *Joseph* hearings are part of the procedures that Respondents utilizes to determine

22  whether to subject an individual to prolonged detention, they are indisputably relevant

23  to Petitioners' claims.  Additionally, the documents filed for *Joseph* hearings will

24  contain information about the merits of the individual's case.  For the reasons

25  discussed above, merits documents are relevant to assessing flight risk and the

26  Petitioners' liberty interests and therefore Petitioners are entitled to *Joseph* hearing

27  documents on this basis alone.

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1

### c.   Section 1226(a) detainee files

2   Respondents assert that because section 1226(a) subclass members are eligible

3   for bond hearings, and consequently only challenge the adequacy of those hearings,

4   there is no factual information in A files that bears on the section 1226(a) claims.

5   Respondents are incorrect. The Court can only assess the sufficiency of the

6   Respondents' existing bond hearings by reviewing whether those bond hearings in

7   fact lead to the prolonged detention of individuals who do not present a danger or

8   flight risk.  The A files of section 1226(a) subclass members contain information

9   regarding their merits claims and biographical information, which are both critical in

10  determining whether an individual is a flight risk or danger.  Additionally, the A files

11  may contain transcripts or bond memorandum that reflect the immigration judge's

12  reasons for denying bond – information that bears on whether Respondents apply the

13  appropriate standards and burden of proof at bond hearings.  Critically, the A files are

14  the only readily available source from which much of this information can be

15  gathered.  Thus, without production of the A files, the Court will be deprived of

16  information that is central to evaluating Petitioners' claims.

17  Likewise, the Respondents are incorrect in suggesting that *Casas* hearing

18  information is irrelevant.  Respondents cite to dicta from *Rodriguez*, in which the

19  Ninth Circuit suggested that individuals who receive *Casas* hearings may no longer be

20  class members.  *Rodriguez* merely states that "full compliance" with *Casas* "*could*

21  reduce the size of the class." *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010)

22  (emphasis added).  But even assuming "full compliance" with *Casas* could decrease

23  the size of this class, Petitioners are entitled to determine whether Respondents in fact

24  conduct hearings consistent with *Casas*, even if only to determine whether *Casas*

25  hearings impact the size of the class.

26  ### d.   Section 1225(b) detainee files

27  The Respondents' primary argument against production of section 1225(b) –

28  that "arriving aliens" have no due process rights – was flatly rejected by Judge Hatter

31

in his order denying the Respondents' Rule 12(c) motion, and the Court should not permit the Respondents to relitigate the issue here.  *See* Dkt. # 155.  Because arriving non-citizens may raise procedural due process challenges to their detention, they can challenge the validity of the existing parole determination process, and therefore are entitled to discovery on that question.

## D.   **RESPONDENTS' CONTENTIONS**

Petitioners seek certain materials from the A-files of identified class members and others who, while not currently detained, would have fallen into the definition of the class for a period going back to April 21, 2010.  An A-File is a record containing documentation regarding an individual's interaction with U.S. Citizenship and Immigration Services (USCIS), Customs and Border Protection (CBP), ICE and the Department of Justice  as prescribed by the Immigration and Nationality Act (INA) and other regulations regarding immigration benefits.  Before discussing Respondents' objections on grounds of relevance and burden, an overview of this case is required.

### 1.   **Overview**

This class action presents purely legal questions of statutory construction and constitutional interpretation.  The issue in this case is whether aliens detained for six months or longer under one of the four general immigration detention statutes – 8 U.S.C. § 1225(b), 1226(a), 1226(c), and 1231(a) – are entitled to a bond hearing before an immigration judge.

In deciding that this case could go forward as a class action, the Ninth Circuit first surveyed the case law in the area of constitutional and statutory challenges to indefinite or prolonged detention.  *Rodriguez v. Hayes,* 591 F.3d 1105, 1113-16 (9th Cir. 2009).  In each case the Ninth Circuit discussed, the court was able to analyze the statutory and constitutional issues as a question of law, and without resort to the kind of extensive factual discovery Petitioners seek in this case.  The Ninth Circuit explained that in each decision the Supreme Court and the Ninth Circuit had decided,

32

the courts had "undertaken interpretation of the immigration detention statutes against the backdrop of the serious constitutional issues raised by indefinite or prolonged detention." *Id.* at 1114.  Accordingly, the Ninth Circuit concluded that the issues before it were legal issues, not factual ones: "[T]he determination of whether Petitioner is entitled to a bond hearing will rest largely on interpretation of the statute authorizing his detention. The particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question . . . ." *Id.* at 1124.

Indeed, Petitioners argued on appeal that this action could proceed on a classwide basis because the case involved "a pure question of law that has nothing to do with the particular facts of any detainee's case." *See* Petitioner's Opening Brief, No. 08-56156 [Dkt. # 6], at 44; *see also* Petitioner's Motion for Class Certification [Dkt. # 10], at 84 (stating the "core issue in this case . . . is a pure question of law that has nothing to do with the particular facts of any detainee's case.").

However, Petitioners now argue that while the issue of whether due process entitles the class members to bond hearings before an immigration judge is, in fact, a pure question of law, it is one that can only be answered by engaging in extensive fact discovery of individual facts of the class members and others outside the class. According to Petitioners, the process now extended to detained aliens under the different detention provisions are not adequate under the Due Process Clause, and their adequacy can only be compared to the adequacy of an immigration hearing by engaging in extensive fact discovery as to broad aspects of the process now offered. In characterizing the current dispute, Petitioners have asserted in correspondence to Respondents' counsel that there is "confusion concerning the nature of the pure question of law in this case," and contend that "[t]he question of whether the Due Process Clause requires the type of bond hearings that the class members seek is indeed a pure question of law, but courts have often resolved questions like it by relying on facts about the affected people."

33

1     Petitioners are incorrect.  A review of the decisions by the Supreme Court and

2   before the Ninth Circuit shows that there is no confusion.  No court has ever engaged

3   in the kind of fact-sifting Petitioners seek to undertake here in any case where the

4   length of detention was challenged by an alien under any of the statutes at issue in this

5   case.  *See Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008) (legal issue of

6   statutory construction in the context of prolonged detention under section 1226(a));

7   *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir.2008) (same);

8   *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (finding alien detained for nearly

9   three years could not be mandatorily detained under section 1226(c) and ordering

10   bond hearing, impliedly finding alien was detained under section 1226(a)); *Zadvydas*

11   *v. Davis*, 533 U.S. 678 (2001) (engaging in statutory construction and constitutional

12   analysis of alien initially detained under post-final order detention provision of section

13   1231(a)(6)).

14     Petitioners attempt to give this Court the misguided impression that the kind of

15   heavily fact-based inquiry it wants to undertake is done frequently in cases like this

16   one.  That is incorrect.  Petitioners cite primarily to *Demore v. Kim*, 538 U.S. 510

17   (2003), in support of their argument, but the Supreme Court in that case looked to the

18   reasons cited by Congress for imposing mandatory detention under 8 U.S.C. §

19   1226(c), and not to any outside facts generated as a result of discovery at the district

20   court level.  *See Demore*, 538 U.S. at 516-20 (citing information contained in Senate

21   reports and other legislative history in discussing statutory history and purpose).

22     Indeed, only one fact was introduced that was outside the congressional record

23   – the average length of removal proceedings – and it was introduced by the

24   Government for the first time in its brief to the Supreme Court.  *See* Brief of Appellant

25   in *Demore v. Kim*, published at 2002 WL 31016560.  Thus, the Court's analysis of the

26   constitutional question presented cannot credibly be described as following the wide-

27   ranging, fact-dependent approach Petitioners claim is necessary here.  Notably, in a

28   recent case before this Court involving the same issues of due process and adequacy

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   of administrative safeguards in the context of prolonged detention of aliens, counsel

2   for Petitioners did not seek discovery of any kind, let alone the type of discovery

3   sought here.  *See Diouf v. Mukasey*, No. 06-07452-TJH (C.D. Cal. Sept. 9, 2009).  In

4   *Diouf v. Mukasey*, 542 F.3d 1222 (9th Cir.2008), the Ninth Circuit was presented with

5   the question of whether an alien detained for longer than six months was entitled to a

6   bond hearing before an immigration judge under 8 U.S.C. § 1231(a)(6).  The Ninth

7   Circuit held that the petitioner's detention beyond the six month period was authorized

8   under section 1231(a)(6), and then turned to the issue of what bond hearing, if any, the

9   petitioner was entitled to for determining the necessity of his detention.  *Id.* at 1233.

10  The Ninth Circuit concluded that while release on bond was clearly authorized by

11  section 1231(a)(6) and its implementing regulations, it was unclear whether a bond

12  hearing was required under the statute for petitioner and what burden if any should be

13  placed on the Government at such a hearing.  *Id*. at 1234-35 (remanding case to this

14  Court).  The Ninth Circuit remanded those issues to this Court for determination, but

15  petitioner – who was represented by counsel for Petitioners here – did not seek

16  discovery before the district court.  The petitioner in *Diouf* did not claim, as it is now

17  claimed, that he was entitled to obtain information about the challenged custody

18  review procedures, including evidence concerning their application in particular cases.

19  Instead, this Court properly analyzed the due process question by examining the status

20  of the alien at issue, the purpose of section 1236(a) and the government interest

21  involved in the removal of aliens ordered removed, and the constitutional adequacy of

22  the custody review procedures as set forth in the regulations.  *Diouf v. Mukasey*, No.

23  06-07452-TJH (C.D. Cal. Sept. 9, 2009) [Dkt # 74].  And he did so without claiming

24  the need for discovery that Petitioners now cite as critical to the issues before the

25  Court.

26        Petitioners, citing *Mathews v. Eldridge, supra*, seek to have this Court take an

27  approach that no other court has taken with regard to the types of due process issues

28  presented.  Petitioners argue that they need the A-file materials, and information about

35

1    *Joseph* hearings, *Casas* hearings, parole determinations, and POCRs to test whether

2  the class members are truly flight risks or dangers to the community, or whether they

3  have meritorious defenses to removal or claims that have been overlooked or ignored

4  in removal proceedings, so that they can then determine whether the administrative

5  procedures identified above have erroneously resulted in the continued detention of

6  the class members.  But rather than present the individual facts on an individual basis

7  – which would invite class decertification – Petitioners seek to keep the action moving

8  as a viable class action by "aggregating" the individual data into broad categories.

9  This, of course, would require Petitioners to show that out of the tens of thousands of

10  aliens detained each year by ICE, the aggregated sampling of information obtained

11  from the A-files and from the other requests is somehow statistically significant in

12  reflecting a pattern or practice of the kind of "error" Petitioners seek to attribute to the

13  detention system as a whole.

14        Under this theory the case is no longer about whether due process requires

15  aliens detained to have bond hearings after six months' detention; it becomes a vague,

16  amorphous legal challenge to the immigration detention system as a whole, to which

17  Petitioners blithely claim the Court can then provide a remedy in any manner whether

18  requested in the Complaint or not.  Setting that aside, Petitioners' arguments raise

19  many questions.  If the goal is to show that certain aliens are not dangers to society or

20  flight risks, how does one "aggregate" the data from A-files to show that, given that a

21  determination of flight risk and danger is an inherently *individualized* determination

22  based on numerous factors and considerations?  If the goal is to show that aliens had

23  meritorious defenses to removal (and thus their detention is not necessary), is that

24  fairly determined by "aggregating" the results of the eventual outcomes of

25  immigration proceedings, and presenting those uncertain outcomes (uncertain at least

26  when they are being litigated) as certainties that should have been known by ICE or

27  immigration judges months or years earlier?  How does one even begin to categorize

28

36

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   and aggregate the outcomes of immigration and judicial proceedings in a meaningful

2   way for the purposes Petitioners intend?  Is this even possible?

3       Of course, Petitioners offer nothing to answer any of these questions.  Nor do

4   they show that their theory or approach has ever been followed in any immigration

5   detention case *anywhere*, an important consideration when weighing issues of

6   relevance in discovery.  *See In re American Mut. Funds Fee Litigation*, 2008 WL

7   5749912 (C.D. Cal. 2008) ("The Court finds it significant in this regard that plaintiffs

8   are unable to cite a single § 36(b) case in which the district court ordered the

9   defendant's independent outside auditor to produce its workpapers.").  Nor do

10  Petitioners offer anything other than vague argument as to why gleaning the individual

11  information sought is relevant, or how it can even be gathered and "aggregated" in

12  any meaningful way.

13      It is not possible to "aggregate" thousands of pieces of such individualized data

14  to show an aliens' flight risk or danger based on the contents of an A-file.  Besides the

15  fact that the information would not exist in an A file for individuals that are detained

16  under 1225(b), 1226(c) and 1231(a) because those statutes do not provide the

17  Government with the authority to even hold a bond hearing, flight risk and danger to

18  community are subjective determinations that are ultimately left to the discretion of an

19  immigration judge.   For instance, what is the legal basis for claiming that a parole

20  determination, a discretionary determination of temporary admittance to the United

21  States for humanitarian or other grounds – a type of "custody determination" that can

22  ever be in error?  How is a *Joseph* hearing, which is *not* an individualized

23  determination of flight risk or danger, but an objective determination of whether a

24  criminal alien is subject to section 1226(c) detention, even relevant?  How is it

25  relevant to determining whether *Casas* hearings, already available to certain aliens *not*

26  *covered in the class*, are constitutionally adequate in this proceeding?  How can one

27  determine that POCRs are "erroneous" by their outcome?

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   The claims presented in this case present straightforward issues of statutory and

2   constitutional interpretation, and the fact discovery sought is not relevant to those

3   issues.   Respondents now discuss these broad and general issues of relevance in the

4   specific context of the request for A-files.

5   ### 2.   <u>Even narrowed, Petitioners seek the majority of materials

6   contained in each A-file.</u>

7   Petitioners originally requested the A-files of every class member back to 2006.

8   *See* DHS RPD No. 1.  On March 8, 2011, Petitioners – acknowledging Respondents'

9   assurance that responding to the request would be unduly burdensome – narrowed the

10   scope of the request by (1) requesting the A-files of all individuals detained for six

11   months or longer, and who spent a significant portion of that period in the Central

12   District, from April 21, 2010 to the present, and (2) requesting certain materials form

13   the A-files, rather than the entire A-file.

14   Petitioners have not narrowed their request to make it unduly burdensome.

15   Although the time period the request covers has been limited from 4 years ago to 1

16   year ago, the number of A-files this will require review of remains large –certainly

17   more than 350, and possibly more than 1,000.  *See* Section II.C.3, below.

18   Nor is the scope of the materials sought in the A-files meaningfully narrowed

19   by Petitioners' March 8, 2011 revised request.  The request as revised seeks:

20   - Any document sent, given or otherwise delivered by a Petitioner to the
21   federal courts, DOJ or DHS (including ICE, CBP and USCIS).  This
22   would include, but would not be limited to: all applications or petitions
23   for any immigration benefit filed with USCIS, the voluminous exhibits
24   often attached to those applications, and all associated forms, notices,
25   requests, and motions filed with USCIS; all documents associated with
26   any appeal of a final order of removal or requests for stays with the Ninth
27   Circuit, to the extent contained; all briefs, correspondence, and exhibits
28   filed in removal proceedings; all change of address forms, attorney
29   representation forms, or any other documents filed with EOIR.

27   - Documents sent, given or otherwise delivered by those entities (DOJ,
28   DHS, ICE, CBP, or USCIS) to a Petitioner.  This would include, but

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

would not be limited to:  all correspondence, notices, requests for evidence, or other communications sent by USCIS in connection with an application or petition for an immigration benefit; all legal briefs, exhibits, and other documents filed by the Government in any removal proceeding, as well as all correspondence, notices, orders, and decisions issued by any immigration judge, the Board of Immigration Appeals, or EOIR; all warrants, notices, forms, decisions, or other documents issued to a Petitioner by ICE or DHS; and any documents sent to a Petitioner by any federal court.

- POCR worksheets and the transcripts, if produced, of any statements given by a detainee to DOJ or DHS officials, such as transcripts of removal hearings or CBP interviews.

Petitioners' "narrowed" request is not significantly narrowed because it seeks Almost every document contained in an A-file.  An A-file is, after all, the entire administrative record of an alien.  The only types of documents not covered by petitioners' request are documents that they could not claim any relevance in anyway: adjudicator notes and memos, attorney notes, cover sheets, form documents.  Much of this would be privileged, and none of it would be relevant.

Respondents note that they have agreed – as a compromise in further negotiations – to provide Petitioners with a wide range of information contained in electronic databases maintained by respondents.  Specifically, respondents expect to produce for every alien detained for six months or longer in the Central District, going back one year, the following information:  name; A-number; country of origin; detention facility; initial detention date; end date of detention; reasons for release from detention (i.e. removed, released on order of supervision, granted cancellation of removal); initial charge of removability; immigration status (if known);  criminal categorization by ICE (if any); posted bond amount (if any); dates of all immigration hearings and the electronic notations notes of the outcomes of those hearings; dates of attorney representation.

39

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1    Respondents' agreement to produce a wide-range of information in readable

2    electronic format from Respondents' databases demonstrates a willingness to provide

3    information that arguably could be objectively aggregated and renders Petitioners'

4    request for A-file materials duplicative in some respects.  But more importantly, it is

5    not relevant to this case and overly burdensome to produce.

6         **3.      The A-file materials requested are not relevant to this action.**

7    As discussed above, see Section II.C.1, *supra*, Petitioners have repeatedly

8    described this action as involving a "pure question of law" that has "nothing to do"

9    with the individual facts of any detainee.  Petitioners now argue that it needs to obtain

10   the individual A-files based on the generalized and largely non-specific argument that

11   the files contain highly relevant and critical information regarding each class

12   member's detention and immigration case.  *See* Petitioners' Contentions, *id.*

13   Petitioners totally contradict their previous position that earned them class

14   certification by asserting that they are entitled to engage in an "aggregate factual

15   inquiry" to discover the individual circumstances of each class member, because those

16   individual facts are material to this case.

17   In the Joint Stipulation previously submitted to this Court [Dkt # 103],

18   Petitioners provided three specific reasons why the A-file materials sought are

19   relevant:  (1) to determine the "accuracy" of custody determinations; (2) to show, for

20   each detainee, "the related deprivation of time with family and loss of job

21   opportunities;" and (3) to show the total number of days in detention, which will help

22   clarify the "cost incurred by DHS to detain each class member."  Apart from these

23   specific grounds for relevance, Petitioners offered vague and general assertions about

24   the need for "aggregate data" within the *Mathews* due process framework they think

25   the Court should follow.

26   At the outset, the Court should disallow the request as overly broad because it

27   seeks information that is inherently irrelevant given the claimed need for the

28   materials.  It is unclear, for example, what relevance there is in this case to the

40

1   numerous filings made by either the Government or aliens in immigration proceedings

2   such as legal briefs, supplemental authorities, declarations, country reports, etc.  Nor

3   can Petitioners articulate why they would need any applications or petitions for

4   immigration benefits with USCIS.  Nor can Petitioners explain why they would need

5   to review change of address forms, notices of legal representation, correspondence, or

6   any of the myriad of other documents that may be contained in an A-file.  This is a

7   fishing expedition for inherently irrelevant information.

8          Petitioners' request for the A-files should also be disallowed because the

9   information they seek is not relevant to their legal challenge that every alien,

10  *regardless of individual circumstances*, is entitled by the Constitution to a bond

11  hearing after six months in detention, and that no statute authorizes detention for any

12  period beyond six months.  However, rather than decide this discovery issue in the

13  abstract or against the backdrop of Petitioners' vague and largely unspecified

14  assertions of need, it is instructive to consider their claimed need for the demanded A-

15  files and immigration court records against the statutory and constitutional issues

16  involved in this case.

17              a.      **Section 1231(a)(6) Detainee Files**

18          In seeking the A-file and court records of every class member, Petitioners

19  necessarily demand the files of each sub-class member, including the individual files

20  of each alien detained pursuant to 8 U.S.C. §1231(a)(6).  That statute governs the

21  detention of aliens ordered removed and whose continued custody is subject to

22  custody reviews conducted by ICE.  8 U.S.C. § 1231; see also 8 C.F.R. §§ 241.4,

23  241.13, and 241.14.  As Petitioners previously maintained, they seek the A-file

24  materials of each class member (present or detained in the past year) to determine

25  whether an individual who received a custody review . . . was ordered detained when

26  the facts in his record suggest that he does not pose a danger or flight risk."  *See* Dkt #

27  103.

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1    Petitioners want the A-files of section 1231(a)(6) detainees to try and establish

2    that for some detainees there was insufficient evidence to support a finding, on an

3    individual basis, that those detainees posed a danger or flight risk.  By seeking the

4    individual A-files of section 1231(a)(6) detainees, Petitioners appear to be preparing

5    an argument that for certain groups of detainees (for example, a group of aliens with

6    no criminal record, or group with substantial ties to the community, etc.) the custody

7    determinations they received are inadequate.  But that goes against the core challenge

8    in this case (as it applies to section 1231(a)(6) aliens) that all aliens are entitled to a

9    bond hearing when they have been detained for six months, regardless of their

10    individual circumstances.  Petitioners claim that the only constitutionally adequate

11    process for determining whether continued detention is justified is a bond hearing.

12    Under Petitioners' theory, as framed by their Complaint, the adequacy of the

13    custody review process as applied on an individual basis is not at issue because the

14    custody review process, no matter how fully and properly applied, is constitutionally

15    inadequate on its face.  In other words, Petitioners contend that there are no set of

16    individual circumstances where the custody review process will be constitutionally

17    adequate as applied to any alien detained for six months or longer.  However, if that is

18    true, then it is totally irrelevant how well that constitutionally inadequate custody

19    review process worked or did not work for class members on an individualized basis.

20    The argument that section 1231(a)(6) aliens are entitled to a bond hearing

21    because the custody review process – even at its best – is constitutionally inadequate

22    is not new.  Counsel for Petitioners, in another case, have recently presented this

23    Court with substantially the same challenge to the prolonged detention of section

24    1231(a)(6) detainees.  *See Diouf v. Mukasey*, No. 06-07452-TJH (C.D. Cal. Sept. 9,

25    2009).  In that case, the American Civil Liberties Union argued that bond hearings

26    were necessary because the custody review process was facially insufficient to justify

27    prolonged detention.  *Id.*  Counsel also argued, alternatively, that the custody review

28    process was inadequate as applied to Diouf's individual circumstances.  But the as-

42

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1  applied argument was separate and distinct from the broader statutory and

2  constitutional challenge asserted in that case.  The same statutory and constitutional

3  challenge is made in this case, and a review of *Diouf* demonstrates that the individual

4  facts and circumstances of the detainee were irrelevant to the petitioner's argument.

5  Petitioners cannot credibly argue that the individual facts they seek are relevant to

6  substantially the same statutory and constitutional claim in this case.

7                    **b.**     <u>**Section 1226(c) Detainee Files**</u>

8        Petitioners also seek the A-files and court records of every class member

9  detained under 8 U.S.C. § 1226(c).  That statute governs the detention of aliens in

10  removal proceedings who have committed certain serious criminal and terrorism-

11  related offenses.  Id.  Detention under section 1226(c) is mandatory, not discretionary.

12        Petitioners have provided no basis for requesting the A-files of section 1226(c)

13  detained aliens, nor can they.  Even if Petitioners are correct that Mathews v. Eldridge

14  governs this action, there is no administrative alternative to detention under 1226(c) to

15  "balance" against an immigration bond hearing.  Congress provided for mandatory

16  detention by statute.  There is no "cost" of an alternative to detention to consider,

17  because the cost-benefit analysis Petitioners want this Court to engage in simply does

18  not apply where mandatory detention is concerned.

19        *Demore v. Kim* addressed the constitutionality of section 1226(c) and the issue

20  of prolonged detention under that statute.  The Supreme Court concluded that

21  mandatory detention was constitutional, and could continue beyond six months,

22  without regard to individualized showings of flight risk and danger.  *Demore*, 538

23  U.S. at 528.  In reaching its conclusion, the Court did not, as Petitioners have argued,

24  "resolv[e] [the] question [of] whether due process required bond hearings by relying

25  on aggregate data concerning individual cases."  *See* Dkt # 103.  Instead, as with every

26  other case involving a challenge to prolonged immigration detention, the Supreme

27  Court engaged in a straightforward analysis of the rights of the alien as compared to

28  the compelling interest of the government in continuing detention.  That the Court

43

cited the number of aliens nationwide who did not appear for removal (a fact not material here) and the average length of removal proceedings (a fact that was offered during briefing to the Supreme Court) is not, as Petitioners argue, a basis to permit the type of discovery sought here.  In *Demore*, the Court did not determine that the petitioner's detention was unconstitutionally prolonged by looking at the length of his detention (which exceeded the average length of removal proceedings in any event), but by engaging in a statutory analysis of Congress's intent, the historic and substantial interests in ensuring the presence of aliens for hearings, and the aliens' more limited liberty interests.  *Id.* at 526-528.

In contrast, Petitioners here argue that as a constitutional matter, all detention becomes constitutionally prolonged at six months, a bright-line rule that was rejected by the Court in *Demore*.  Moreover, the Court determined that the detention of criminal aliens under section 1226(c) was constitutional even without a determination of the individual's risk of flight or danger.  Id.  Petitioners cannot credibly claim that *Demore* stands for the proposition that the individual facts and circumstances of each detainee's risk of flight and danger must be weighed in undertaking the statutory and constitutional analysis.  The A-files and individual court records of each class member are irrelevant to the pure legal issues before this Court.13

### c.   <u>Section 1226(a) Detainee Files</u>

Petitioners also seek the A-files and immigration court records of every class member detained under 8 U.S.C. § 1226(a).  Put simply, that statute governs the

---

13   Respondents have already addressed *Matter of Joseph* hearings, *see* supra at ___.  However, regarding the A-files and court records, Petitioners make the argument that they need to know the outcome of every *Joseph* hearing for each detainee to determine the "accuracy" of those proceedings.  That argument is wholly without merit.  It is inconceivable that the legal issues in this case require the examination of each class member's file to determine whether an immigration judge was correct or incorrect in finding, based on the alien's criminal offense, that the alien was properly subject to section 1226(c).

44

1   detention of aliens in removal proceedings who have made an entry into the United

2   States and who are not subject to detention under another statute.  Id.  Detention under

3   section 1226(a) is discretionary.  If ICE determines not to exercise its discretion and

4   release an alien under section 1226(a), the alien may seek a redetermination of his

5   custody at a hearing before an immigration judge who will determine whether the

6   alien poses a flight risk or danger.  See 8 C.F.R. § 236.

7       Consequently, class members detained under section 1226(a) are already

8   procedurally provided with a hearing before an immigration judge.  The challenge

9   Petitioners raise in this context, however, is that the immigration hearings the aliens

10  are provided with are constitutionally inadequate because such hearings are not

11  provided with counsel for the alien at the Government's expense; such hearings are

12  not transcribed; and such hearings follow constitutionally deficient standards of proof

13  and burden.  The individual records of aliens detained under section 1226(a) have no

14  bearing whatsoever on the determination of whether those procedures are

15  constitutional.  No information contained in class members' records could shed any

16  light on the legal issues presented in this regard.  The discovery as to these aliens

17  should be denied.

18          **d.    Section 1225(b) Detainee Files**

19      Petitioners also seek the A-files of every class member detained under 8 U.S.C.

20  § 1225(b).  That statute governs the detention of aliens arriving in the United States

21  and other aliens who have not been admitted or paroled.  Id.  Detention under section

22  1225(b) is discretionary or mandatory, depending on the initial determination of a

23  claim of asylum.  See 8 U.S.C. § 1125(b)(1)(B)(IV), and aliens may only be released

24  under section 1225(b) through the entirely discretionary parole determination process

25  of 8 U.S.C. § 1182(d)(5).

26      The files of section 1225(b) detainees are irrelevant to this case because, even if

27  Petitioners are correct as the procedural due process framework applied, arriving

28  aliens have no constitutional right to due process regarding their admission or

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1    exclusion.  *See, e.g., Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094 (9th Cir. 2004);

2    *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448 (9th Cir. 1995) (en banc).

3    Consequently, these aliens do not enjoy the kind of due process rights necessary to

4    trigger the due process "balancing" test that Petitioners cite to justify their expansive

5    request for A-files and court records for every class member.  The contents of the files

6    of section 1225(b) detainees is wholly irrelevant to this case.

7               **4.      The request for A-file materials is unduly burdensome,**

8                       **particularly in light of the irrelevance of the information to be**

9                       **obtained.**

10            If the Court orders Respondents to produce every A-file of every class member

11   (as Petitioners now define the term "Petitioner"), then Respondents maintain their

12   objection that the request is overly broad and unduly burdensome.

13            The scope of the A-file material requested includes the A-files for certainly

14   hundreds of aliens.  As of February 14, 2011, there were 350 aliens detained for more

15   than six months in the Central District.  That number represented a one-day snapshot.

16   Because Petitioners seek the A-files of aliens so detained going back to April 21,

17   2010, the number – as yet unknown[14] – could  be well in excess of 1,000 aliens.

18            Once identified, locating and obtaining the A-files would require a significant

19   undertaking in terms of time and effort.  *See* Declaration of Dominick Gentile,

20   attached hereto as Respondents' Exhibit 1; Declaration of Monti Zimmerman,

21   attached hereto as Respondents' Exhibit 2.  A-files of aliens are not centrally stored,

22

23   [14] Respondents are in the process of building a SQL database search inquiry that will

24   permit ICE to identify not only those currently detained, but those who were detained
     and who met the parameters set forth by Petitioners going back one year.  Eventually

25   the SQL query must be run on a day-by-day basis going back through the database to
     ensure that the search captures everyone who meets Petitioners' criteria.  Until that

26   search is completed before the end of April 2011, the precise universe of aliens as

27   defined by Petitioners is unknown.

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   uniformly compiled, and they are not all kept electronically.  A-files are kept in paper

2   form, and are not always maintained by ICE, even when an alien is in detention.  If a

3   class member is in removal proceedings, the A-file could be with ICE in the Los

4   Angeles Field Office, or even at another field office; it could be at ICE headquarters in

5   Washington for custody review; it could be with DHS counsel for a hearing before an

6   immigration judge; it could be with the Department of Justice for district or appellate

7   court litigation; it could be with USCIS for action on an application or petition for

8   immigration benefits; it could also be with the National Records Center. There is no

9   inter-department central case file tracking, and locating the files themselves would

10   take considerable time and require considerable dedicated resources.  *See* Gentile

11   Declaration.  It will require coordination among at least four departments or agencies

12   – DOJ, USCIS, ICE, and EOIR – simply to locate the files, compile the materials, and

13   produce them for review.

14          Once located, the files – which, depending on the length of removal

15   proceedings and immigration benefits applied for, can range between a few dozen

16   pages to more than 1000 pages – would then have to be reviewed by counsel for DHS

17   and DOJ, as well as litigation counsel, to ensure that the vast array of documents

18   sought in the "narrowed" request (as defined by Petitioners' March 8, 2011 letter) are

19   identified and pulled for production.  See Resp. Exh. 1, Gentile Declaration.  As noted

20   above, these materials will constitute the bulk of the A-files, and many of those

21   documents will have to undergo an additional review to ensure redactions in

22   compliance with the Privacy Act, with departmental guidelines, with respect to

23   confidentiality regulations respecting asylum claims, and to ensure no documents

24   classified on national security grounds are produced.  *See* Resp. Exh. 2, Zimmerman

25   Declaration.  Respondents may also have to obtain approval and coordinate

26   production with CBP, USCIS, and all agencies that fall under DOJ because

27   Petitioners' request seeks documents from these agencies, as well.  *Id.*

28

47

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

The burden imposed by this request is undue, particularly in light of the fact that (1) many of the pages produced will have no relevance whatsoever to this case, *see* Respondents' Contentions, *supra* at Section I.D.2., and (2) the material produced will have no relevance in this case to either the claims of Petitioners or the defenses raised by the Government for the reasons discussed herein.  Where the burden imposed by a request is offset by marginal relevance, it should be disallowed as overly burdensome.  *See In re Community Psychiatric Centers Securities Litigation*, SA CV91-533AHS, 1993 WL 497253 * 7 (C.D. Cal. 1993) ("Since the relevant information in the minutes is such a small portion of the documents, which total over 27,000 pages, and since plaintiffs have not shown that the remainder of the documents sought are reasonably calculated to lead to the discovery of admissible evidence, the Court finds that production of the entirety of the Consulting Board Minutes would be overly burdensome.").  Here, Petitioners can show no relevance, let alone marginal relevance, of their A-files request.  The request should be disallowed.

## II. WRITTEN POLICIES AND PROCEDURES REGARDING CERTAIN PROCEDURES

### A. Text of the Disputed Discovery

**DHS RPD No. 3:**
All DOCUMENTS RELATING TO Respondent's policies, procedures, or practices for providing CUSTODY DETERMINATIONS or hearings pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999), that apply, or have at any time since October 1, 2006 applied, to PROLONGED DETAINEES.

**DHS RPD No. 6:**
All DOCUMENTS RELATING TO Respondent's policies, procedures, practices, forms, and trainings about CUSTODY DETERMINATIONS that apply in the Central District of California, including but not limited to manuals, guidances, instructions, policy statements, legal memoranda, training materials, and sample forms, worksheets, and letters.

**DOJ RPD NO. 3**

48

All DOCUMENTS RELATING TO the Department of Homeland Security's (DHS's) and Respondent's policies, procedures, or practices for providing BOND HEARINGS, CASAS HEARINGS, or hearings pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999), that apply, or have at any time since October 1, 2006 applied, to PROLONGED DETAINEES.

## B.  PARTIES' PROPOSALS

During their February 28, 2011, meet and confer and in subsequent correspondence and email, the parties were able to reach partial agreement with respect to DHS RFP No. 3 and No. 6, and DOJ RPD No. 3.  The parties agreed that Respondents would produce written policies and procedures concerning bond hearings, the initial decision to detain and the decision to release detainees on supervised release (including electronic monitoring).

Petitioner proposed that they would not seek to compel responses to DHS RFP No. 3 and No. 6, and DOJ RPD No. 3 if Respondents also produced their written policies, procedures and practices with respect to parole determinations, post-order custody reviews, *Casas* hearings and *Joseph* hearings.  Respondents maintained their objections with respect to these parole determinations, post-order custody reviews, *Casas* hearings and *Joseph* hearings.

## C.  PETITIONERS' CONTENTIONS

Petitioner requests copies of the policies and procedures that describe the Respondents' existing custody review practices, because Petitioner claims they are inadequate to satisfy due process requirements.  Respondents agree that "there is no dispute that in deciding this case the Court must determine whether non-citizens are provided with adequate due process under the current detention procedures."  *See infra* Respts' Intro Section.  Given this concession, it should be self-evident that Petitioners' requests seek documents that bear directly on the claims in this case. Because the government continues to defend the adequacy of its detention policies and procedures, the requests also are relevant to Respondent's purported defenses.  *See, e.g.*, Resp't Rule 12(c) Motion at 36-37 (arguing for dismissal based in part on "robust process" provided to class members) [Dkt. # 130].  Petitioner thus has a right to such documents, and Respondents should be ordered to produce them.

49

1    During the meet and confer process, Respondents offered to provide some of
2    Petitioner's requests for policies and procedures, and Petitioner in turn narrowed his
3    requests, such that the only ones now in dispute concern policies and procedures
4    regarding parole determinations, *Casas* hearings, custody reviews pursuant to 8 C.F.R.
5    § 241.4, and *Joseph* hearings.  Petitioner believes that the policies and procedures on
6    these issues will demonstrate that, despite Respondent's protestations, class members
7    never receive constitutionally adequate process with respect to their prolonged
8    detentions.  Therefore, discovery into the procedures afforded to class members
9    certainly is "reasonably calculated to lead to the discovery of admissible evidence."
10   Fed. R. Civ. P. 26(b)(1).

11   Respondents argue that discovery into policies and procedures should not be
12   allowed, but fails to satisfy its burden.  *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 617
13   (C.D. Cal. 2007) ("party who resists discovery has the burden to show discovery
14   should not be allowed, and has the burden of clarifying, explaining, and supporting its
15   objections").  Respondents assume either (a) that Petitioner's legal theories are
16   meritless and thus that the requests are irrelevant; or (b) that, because core issues in
17   this case present legal questions of statutory and constitutional interpretation,
18   Petitioner is required to proceed with this class action without the benefit of discovery
19   into the underlying facts.  These arguments have been largely addressed above, and
20   therefore will be discussed here only to the extent that the discussion is not
21   duplicative.

22   First, as noted above, Respondents' doctrinal objections on relevance grounds
23   were rejected by Judge Hatter and are contrary to controlling authority.  Second,
24   Respondents cannot limit the scope of discovery on the ground that this case has been
25   certified as a class action.  Petitioner is not required to advance the interests of class
26   members only by arguing legal propositions in the abstract.  Petitioner is entitled to
27   discovery "if there is any *possibility* that the information sought may be relevant to the
28   subject matter of [the] action."  *See City of Rialto v. U.S. Dept. of Defense*, 492 F.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1    Supp. 2d 1193, 1202 (C.D. Cal. 2007); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D.

2    281, 283 (C.D. Cal. 1998).  Documents about current policies and practices certainly

3    are relevant to Petitioner's claims that class members are entitled to greater

4    protections than currently exist.

5        Finally, the Ninth Circuit regularly begins any due process analysis by asking

6    what procedural protections currently exist.  *Casas-Castrillon v. Dep't of Homeland*

7    *Security*, 535 F.3d 942, 952 (9th Cir. 2008) (remanding due process challenge to

8    develop a record regarding "the procedural review" the petitioner received).  The

9    government has already argued in this case that the existing procedures are adequate.

10   *See, e.g.*, Resp't Rule 12(c) Motion at 36-37 (characterizing post order custody

11   reviews as a "robust process") [Dkt. # 130].  Given that the government is not

12   prepared to concede that Petitioners received constitutionally inadequate procedures

13   then the documents sought by way of these Requests remain clearly relevant.

14       In short, the government cannot assert that its policies and procedures for parole

15   determinations, *Casas* hearings, custody reviews, and *Joseph* hearings are

16   constitutionally adequate without disclosing what those procedures in fact are.

17       Respondents also make several arguments specific to each set of policies

18   requested that merit a brief response:

19   •   ***Parole determinations*** (8 C.F.R. §§ 235.2, 1235.2, 8 U.S.C.

20   § 1182(d)(5)(A))**:**  Policies and procedures regarding parole determinations are clearly

21   relevant.  Parole determinations are the one and only opportunity that most class

22   members who are arriving noncitizens have to challenge their detentions.  The policies

23   and procedures respecting these determinations certainly are relevant to their claims

24   that they do not receive constitutionally adequate process given their prolonged

25   detentions.  Respondents argue that these class members have no due process rights,

26   but, again, the District Court already rejected that argument by denying the Rule 12(c)

27   motion.  Dkt. #155 at 2.

28

51

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

- **Casas hearings**:  *Casas* hearings are bond hearings where the government bears the burden of proof that are supposed to be provided to class members whose removal orders are stayed upon direct judicial review.  The parties disagree as to what procedures must be afforded to class members at such hearings.  Respondents argue that compliance with *Casas* would defeat the claims of class members, citing *dicta* from the last appeal in this case.  *Rodriguez* merely states that "full compliance" with *Casas* "*could* reduce the size of the class." *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010) (emphasis added).  This hardly forecloses discovery to determine *whether* the government complies, particularly given that the parties disagree as to what procedures must be afforded at a constitutionally-adequate hearing.  Moreover, even assuming "full compliance" with *Casas* would decrease the size of this class, Petitioners are entitled to determine whether Respondents in fact maintain policies and procedures consistent with *Casas*, even if only to determine whether *Casas* hearings impact the size of the class.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, n.13 (1978) ("discovery often has been used to illuminate issues . . . such as numerosity" of a class).

- **Post order custody reviews** (8 C.F.R. § 241.4):  Post order custody reviews are provided to class members whose cases are stayed pending judicial review, and are the only form of process provided to the class members detained under Section 1231(a)(6).  There can be no serious dispute that policies and procedures concerning these reviews is highly relevant to assessing the quality of the existing detention procedures.

- **Joseph hearings**:  The class includes persons subject to prolonged detention under 8 U.S.C. § 1226(c).  Such persons are entitled to *Joseph* hearings, which determine whether noncitizens are subject to mandatory detention under Section 1226(c) or discretionary detention under Section 1226(a).  Respondents concede that these hearings are supposed to provide "procedural safeguard[s]" at the "*outset of detention[s]*."  *See infra* at section II.D.  *See also Demore*, 538 U.S. at 514;

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   514 n.3; 532 (Kennedy, J., concurring).  This demonstrates precisely why Petitioner

2   requests policies and procedures for *Joseph* hearings.  The government is relying on

3   the adequacy of *Joseph* hearings to detain class members for prolonged periods of

4   time.  The fact that *Joseph* hearings occur at the "outset" of a detention does not make

5   them irrelevant.[15]  Petitioners seek to show that the existing protections afforded to

6   class members – from the outset of a detention through the point at which a detention

7   becomes unconstitutionally prolonged – violate due process.  The adequacy of *Joseph*

8   hearings thus is squarely at issue, and *Joseph* policies and procedures are an

9   appropriate subject of discovery.

10      Finally, Respondents' assertion of burden is unsubstantiated.  Respondents do

11  not contend – because they cannot – that producing policies and procedures for these

12  four types of hearings and determinations would require a voluminous production of

13  documents or an unjustified expenditure of government.  The requests likely will

14  result in the production of no more than a few hundred pages of documents.

15  Moreover, any minimal burden associated with responding to these requests is far

16  outweighed by the fundamental due process rights at stake for hundreds of current and

17  future class members.

18      The Court therefore should compel Respondents to produce the requested policies

19  and procedures.

20      **D.    RESPONDENTS' CONTENTIONS**

21      Respondents object to Petitioners' discovery requests because they seek

22  information regarding the hearings and procedures that are wholly irrelevant to this

23  action.  Petitioners have not explained how these requests are likely to lead to the

24  production of information that has any bearing on the question of law that lies at the

25

26  ───────────────
    [15] Indeed, the government has agreed to produce policies and procedures concerning
27  an initial decision to detain pursuant to Section 1226(a), which also occurs at the
    outset of detention.
28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   center of this action.  An examination of each hearing or proceeding shows that the

2   requested information is corollary to the legal issues presented.

3        First, Petitioners seek a variety of information as it relates to hearings

4   conducted under *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999).  *Joseph* hearings,

5   and the procedures that implement them, *see* 8 C.F.R. § 3.19(h)(2)(ii), exist to permit

6   aliens to test whether they are properly detained in the first instance under section

7   1226(c).  They permit an alien to challenge, for example, whether he fits within one of

8   the enumerated categories of criminal aliens under section 1226(c)(1)(A) - (D) before

9   an immigration judge.  The *Joseph* hearing is no more or less than a forum to permit

10  an alien to challenge the application of the mandatory detention statute to his

11  detention.  It is not an individualized hearing as to flight risk or danger.  It is instead

12  an objective determination by an immigration judge as to whether the crime

13  underlying the charge of removal falls into one of the categories of offenses under

14  section 1226(c)(1)(A) through (D) that subjects an alien to detention under section

15  1226(c), as ICE determined in its initial custody determination.  It is not an

16  administrative procedure meant to provide adequate procedural safeguards against

17  continued detention – it is a procedural safeguard to determine, *at the outset of*

18  *detention*, whether detention is properly qualified under section 1226(c).  It is unclear

19  how statistics, data, or other aggregate information about the outcomes of *Joseph*

20  hearings for any alien, is relevant to the statutory or constitutional issue in this case.

21       Similarly, Petitioners have not identified how parole determination statistics or

22  regulations will be relevant in this action.  As noted above, the determination of

23  whether an arriving alien who has not effected an entry into the United States has

24  rights to challenge his detention is not a new question in the history of this nation's

25  jurisprudence.  *See, e.g., Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094 (9th Cir. 2004).

26  The statutory and constitutional issue of whether an arriving alien detained under

27  section 1225(b) has always been examined in the context of the threshold issue of

28  whether such an alien has any due process rights, or whether those rights are

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   outweighed by the Government's broad and plenary authority over the admission or

2   exclusion of aliens.  *See, e.g., Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448 (9th

3   Cir.1995), *superseded by statute on other grounds as stated in Xi v. United States INS*,

4   298 F.3d 832, 837 (9th Cir. 2002).  The availability and frequency of the grant of the

5   discretionary authority of parole is irrelevant to this action.

6       Petitioners also seek vast information about the policies, procedures,

7   implementation, and outcomes of hearings conducted pursuant to *Casas-Castrillon v.*

8   *Dep't of Homeland Sec'y*, 535 F.3d 942 (9th Cir. 2008).  This action preceded the

9   Ninth Circuit's decision in *Casas-Castrillon*, and Petitioners' inclusion of requests

10  addressing *Casas-Castrillon* are inexplicable given the Ninth Circuit's statement, in

11  this case, that "[i]f an alien who would otherwise be a member of the class receives a

12  bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be

13  a member of the class."  *Rodriguez*, 591 F.3d at 1118.

14      Petitioners also seek information regarding the outcomes of custody reviews

15  conducted pursuant to 8 C.F.R. § 241.4.  Such reviews are available for aliens who

16  have been ordered removed and who are detained pending their removal.  8 C.F.R. §

17  241.4.  Again, however, the provision of custody reviews in this action cannot be

18  relevant to the statutory and constitutional interpretation questions that underlie this

19  case.  The issue of whether aliens detained for six months or longer are entitled to

20  constitutional safeguards has been examined under *Zadvydas v. Davis*, 533 U.S. 678

21  (2001).  As the Ninth Circuit has recognized, the issue of the constitutionality of the

22  detention of aliens pursuant to post-final order detention provisions is different from

23  the type of pre-order analysis courts engage in.  In *Zadvydas*, whether an alien may

24  lawfully be detained beyond the presumptively reasonable six-month period depends

25  on whether there is a significant likelihood that the alien will be removed in the

26  reasonably foreseeable future.  If so, then the Supreme Court has stated that continued

27  confinement is authorized by section 1231(a)(6), and release after six months is not

28  required.  Id. at 702 ("This 6-month presumption, of course, does not mean that every

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.").  In any event, the issue of whether such aliens must be provided with a bond hearing – if not answered by *Zadvydas* – is nevertheless an issue of statutory and constitutional interpretation that does not depend on a factual analysis of the custody reviews provided to class members.

The requests should be disallowed.

## III.  REQUESTS FOR ADMISSIONS REGARDING CERTAIN PROCEDURES

### A.  Text of the Disputed Discovery

**DHS RFA NO. 3**
Admit that the Department of Justice has no policy or practice requiring the creation of transcripts of BOND HEARINGS and CASAS HEARINGS.

**DHS RFA NO. 4**
Admit that Respondent has no policy or practice requiring the creation of transcripts of interviews or any other proceedings conducted as part of CUSTODY REVIEWS and PAROLE DETERMINATIONS.

**DHS RFA NO. 5**:
Admit that Respondent has no policy or practice of informing individuals who are eligible for a hearing under Casas-Castrillon v. Dep't of Homeland Sec'y, 535 F.3d 942 (9th Cir. 2008), that they are eligible for such a hearing.

**DHS RFA NO. 6**:
Admit that some PROLONGED DETAINEES who are eligible for a CASAS HEARING under Casas-Castrillon v. Dep't of Homeland Sec'y, 535 F.3d 942 (9th Cir. 2008), do not receive such a hearing.

**DHS RFA NO. 7**:
Admit that Respondent has failed to provide CUSTODY REVIEW(S) within the time periods outlined in 8 C.F.R. 241.4(k) to every eligible PROLONGED DETAINEE.

**DHS RFA NO. 8**:

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

Admit that, as part of its CUSTODY REVIEW process, Respondent has not
conducted in-person interviews for all PROLONGED DETAINEES with final
administrative removal orders, pursuant to 8 C.F.R. 241.4 or 8 C.F.R. 1241.4.

**DHS RFA NO. 9**:
Admit that Respondent has failed to provide a PAROLE DETERMINATION
for some arriving alien asylum seekers in the Central District of California who
pass a credible fear determination, as required by ICE Policy Directive No.
11002.1, since the implementation of that Directive.

**DHS RFA NO. 10**:
Admit that some persons in the Central District of California who request
BOND HEARINGS have waited longer than 3 months to receive such a
hearing.

**DHS RFA NO. 11**:
Admit that some PROLONGED DETAINEES who request CASAS
HEARINGS have waited longer than 3 months to receive such hearings.

**DHS RFA NO. 12**:
Admit that in CASAS HEARINGS conducted in the Central District of
California, transcripts are not routinely maintained or prepared.

**DHS RFA NO. 13**:
Admit that in CASAS HEARINGS conducted in the Central District of
California, PROLONGED DETAINEES do not receive counsel, paid for by the
Government.

**DHS RFA NO. 14**:
Admit that in some CASAS HEARINGS conducted in the Central District of
California, the burden of proof is placed on the PROLONGED DETAINEE.

**DHS RFA NO. 15**:
Admit that, other than through a petition for a writ of habeas corpus or other
writ, there is no judicial review of the outcome of CASAS HEARINGS.

**DHS RFA NO. 16**:
Admit that in PAROLE DETERMINATIONS conducted in the Central District
of California, transcripts are not routinely maintained or prepared.

**DHS RFA NO. 17**:

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

Admit that in PAROLE DETERMINATIONS conducted in the Central District of California, PROLONGED DETAINEES do not receive counsel, paid for by the Government.

**DHS RFA NO. 18**:
Admit that in CUSTODY REVIEWS conducted in the Central District of California, transcripts are not routinely maintained or prepared.

**DHS RFA NO. 19**:
Admit that in CUSTODY REVIEWS conducted in the Central District of California, PROLONGED DETAINEES do not receive counsel, paid for by the Government.

## B.      PARTIES' PROPOSALS

Petitioner continues to seek responses to the RFAs listed above, and the Respondents have maintained their objections to responding to them.  The parties have not made any counter-proposals with respect to these RFAs.

## C.      PETITIONERS' CONTENTIONS

On grounds of relevance and nothing else, Respondents refuse to respond to seventeen Requests for Admission that ask simple yes or no questions.  The requests ask such straightforward questions as whether Respondents maintain policies or procedures with respect to providing hearings transcripts (DHS RFA Nos. 3-4) and informing detainees of their rights (DHS RFA Nos. 5), whether Respondents comply with procedural protections owed to class members under case law, regulations, and an executive order (DHS RFA Nos. 6-10, 12), and to acknowledge that certain due process protections are not currently in place to protect class members (DHS RFA Nos. 11, 13-19).

Respondents suggest that Petitioners "have not explained how these requests are likely to lead to" discoverable information.  *See infra* section III.D.[16]  Their

---

[16] Respondents also restate almost verbatim its objections to Petitioner's requests for the production of policies and procedures regarding parole determinations, *Casas* hearings, custody reviews, and *Joseph* hearings.  *Supra* Section II.  To avoid undue repetition, Petitioner will not restate why those arguments are unavailing, except to

*(Footnote continued)*

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

relevance is self-evident.  Each request bears on the ultimate issue of whether
Respondents have violated and continues to violate the due process rights of class
members by detaining them for long periods of time without adequate procedural
protections.  The requests single out specific points in a detention where the
government may or may not provide class members with a particular type of
procedural protection.  By doing so, the requests serve the twin goals of "narrowing
the range of issues" in dispute (*Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d
1242, 1245 (9th Cir. 1981)), and "facilitat[ing] proof with respect" to others.  *In re
Heritage Bond Litig.*, 220 F.R.D. 624, 625-26 (C.D. Cal. 2004) (quoting Fed. R. Civ.
P. 36, Adv. Comm. Notes).

Respondents may not want to admit facts that will starkly demonstrate the
constitutional infirmity of the prolonged detention of class members.  That, however,
is not a valid reason for refusing to respond to focused discovery requests relating to
its current practices, policies, and procedures.  Consequently, the Court should compel
Respondents to answer each of the Requests for Admission.

## D.     **RESPONDENTS' CONTENTIONS**

Respondents object to Petitioners' discovery requests because they seek
information regarding the hearings and procedures that are wholly irrelevant to this
action.  Petitioners have not explained how these requests are likely to lead to the
production of information that has any bearing on the question of law that lies at the
center of this action.  An examination of each hearing or proceeding shows that the
requested information is corollary to the legal issues presented.

First, Petitioners seek a variety of information as it relates to hearings
conducted under *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999).  *Joseph* hearings,
and the procedures that implement them, *see* 8 C.F.R. § 3.19(h)(2)(ii), exist to permit

---

note that Respondent's attempts to characterize certain Requests for Production as
requiring disclosure of "vast information," "statistics," or "outcomes" do not apply to
the Requests for Admissions.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND
RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1   aliens to test whether they are properly detained in the first instance under section

2   1226(c).  They permit an alien to challenge, for example, whether he fits within one of

3   the enumerated categories of criminal aliens under section 1226(c)(1)(A) - (D) before

4   an immigration judge.  The *Joseph* hearing is no more or less than a forum to permit

5   an alien to challenge the application of the mandatory detention statute to his

6   detention.  It is not an individualized hearing as to flight risk or danger.  It is instead

7   an objective determination by an immigration judge as to whether the crime

8   underlying the charge of removal falls into one of the categories of offenses under

9   section 1226(c)(1)(A) through (D) that subjects an alien to detention under section

10  1226(c), as ICE determined in its initial custody determination.  It is not an

11  administrative procedure meant to provide adequate procedural safeguards against

12  continued detention – it is a procedural safeguard to determine, *at the outset of*

13  *detention*, whether detention is properly qualified under section 1226(c).  It is unclear

14  how statistics, data, or other aggregate information about the outcomes of *Joseph*

15  hearings for any alien, is relevant to the statutory or constitutional issue in this case.

16          Similarly, Petitioners have not identified how parole determination statistics or

17  regulations will be relevant in this action.  As noted above, the determination of

18  whether an arriving alien who has not effected an entry into the United States has

19  rights to challenge his detention is not a new question in the history of this nation's

20  jurisprudence.  *See, e.g., Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094 (9th Cir. 2004).

21  The statutory and constitutional issue of whether an arriving alien detained under

22  section 1225(b) has always been examined in the context of the threshold issue of

23  whether such an alien has any due process rights, or whether those rights are

24  outweighed by the Government's broad and plenary authority over the admission or

25  exclusion of aliens.  *See, e.g., Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448 (9th

26  Cir.1995), *superseded by statute on other grounds as stated in Xi v. United States INS*,

27  298 F.3d 832, 837 (9th Cir. 2002).  The availability and frequency of the grant of the

28  discretionary authority of parole is irrelevant to this action.

60

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1    Petitioners also seek vast information about the policies, procedures,

2    implementation, and outcomes of hearings conducted pursuant to *Casas-Castrillon v.*

3    *Dep't of Homeland Sec'y*, 535 F.3d 942 (9th Cir. 2008).  This action preceded the

4    Ninth Circuit's decision in *Casas-Castrillon*, and Petitioners' inclusion of requests

5    addressing *Casas-Castrillon* are inexplicable given the Ninth Circuit's statement, in

6    this case, that "[i]f an alien who would otherwise be a member of the class receives a

7    bond hearing pursuant to *Casas-Castrillon* or any other ruling they would cease to be

8    a member of the class."  *Rodriguez*, 591 F.3d at 1118.

9    Petitioners also seek information regarding the outcomes of custody reviews

10   conducted pursuant to 8 C.F.R. § 241.4.  Such reviews are available for aliens who

11   have been ordered removed and who are detained pending their removal.  8 C.F.R. §

12   241.4.  Again, however, the provision of custody reviews in this action cannot be

13   relevant to the statutory and constitutional interpretation questions that underlie this

14   case.  The issue of whether aliens detained for six months or longer are entitled to

15   constitutional safeguards has been examined under *Zadvydas v. Davis*, 533 U.S. 678

16   (2001).  As the Ninth Circuit has recognized, the issue of the constitutionality of the

17   detention of aliens pursuant to post-final order detention provisions is different from

18   the type of pre-order analysis courts engage in.  In *Zadvydas*, whether an alien may

19   lawfully be detained beyond the presumptively reasonable six-month period depends

20   on whether there is a significant likelihood that the alien will be removed in the

21   reasonably foreseeable future.  If so, then the Supreme Court has stated that continued

22   confinement is authorized by section 1231(a)(6), and release after six months is not

23   required.  Id. at 702 ("This 6-month presumption, of course, does not mean that every

24   alien not removed must be released after six months. To the contrary, an alien may be

25   held in confinement until it has been determined that there is no significant likelihood

26   of removal in the reasonably foreseeable future.").  In any event, the issue of whether

27   such aliens must be provided with a bond hearing – if not answered by *Zadvydas* – is

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1  nevertheless an issue of statutory and constitutional interpretation that does not

2  depend on a factual analysis of the custody reviews provided to class members.

3       The requests should be disallowed.

4

5  Dated:  April 4, 2011                          s/ Ahilan T. Arulanantham

6                                                 AHILAN T. ARULANANTHAM
                                                  Counsel for Petitioners

7  Dated April 4, 2011                            s/ Theodore Atkinson

8                                                 THEODORE ATKINSON
                                                  Counsel for Respondents

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**