# EXHIBIT 32



**Error! Main Document Only.**Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Hector O. Villagra

Chief Counsel
Mark D. Rosenbaum

Deputy Executive Director
James Gilliam

Chief Financial Officer
Brenda Maull

Development Director
Sandy Graham-Jones

Legal Director & Manheim Family Attorney for First Amendment Rights
Peter J. Eliasberg

Deputy Legal Director
Ahilan T. Arulanantham

Director of Policy Advocacy
Clarissa Woo

Director of Community Engagement
Elvia Meza

*Via email*

March 8, 2011

Theodore W. Atkinson
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20

RE: Discovery meet and confer in *Rodriguez*

Dear Ted,

I write to follow up on the February 28, 2011 meet and confer regarding discovery in *Rodriguez*. After we drafted this letter, the Ninth Circuit issued its decision in *Diouf v. Chertoff*, Case No. 09-56774. We are discussing the implications of the decision and will follow up after we determine its effects on this case.

With regard to the meet and confer, we were pleased to make significant progress in resolving a number of our discovery disputes, and remain hopeful that we can reach agreement on several additional issues without resort to further litigation.

At the close of the meeting, we agreed to provide additional clarification regarding the scope of several discovery requests. In this letter, we attempt to provide that clarification, as well as make a proposal to significantly narrow the scope of our request for A-files. We believe that the proposal could reduce the burdens on the government in producing A-file information while still permitting Petitioners access to information critical to their claims.

As we repeatedly have made clear, we are concerned about the slow pace of the discovery process thus far and remain committed to resolving the outstanding disputes as quickly as possible. We welcome your thoughts or suggestions on how we can further narrow our disputes. Should you have any questions about our proposal or any other matters, please do not hesitate to contact me.

## 1. Meet and Confer Process

We believe it would be helpful to first provide an overview of the meet and confer process to provide some context for the issues discussed in this letter.

In advance of the meet and confer, in letters dated February 14 and 24, 2011, Petitioners set forth the agenda for the meeting: a limited set of discovery requests significantly narrower in number and scope than the discovery we initially served. Of the 48 requests for production, 34 interrogatories, and 34 requests for admission served on the Department of Homeland Security ("DHS") and the Department of Justice ("DOJ"), we proposed meeting and conferring about only eight requests for production and three interrogatories:
- DHS Requests for Production 1, 3, 4, 6, 19
- DOJ Requests for Production 3, 4, 18
- DHS Interrogatories 7, 8
- DOJ Interrogatories 4

In addition, we proposed meeting and conferring about the requests for admission.

We further limited several of the discovery requests at issue by either restricting the dates for which information is sought or the type of the information sought through those requests. In addition, we provided detailed descriptions of the types of documents or information sought, including our basis for believing that DHS or DOJ maintained that information.

As we explained before and during the meet and confer, Petitioners' intention in providing this reduced list was not to withdraw the requests not covered, or to otherwise waive any right to other discovery. Rather, the narrowed list was our attempt to reach agreement on a limited set of issues with the aim of expediting the discovery process and narrowing (if not altogether eliminating) any further litigation about it. Petitioners will evaluate the information and documents they receive in response to the requests raised during the meet and confer (whether voluntarily or through a motion to compel). Should Petitioners determine that additional information is needed, Petitioners would meet and confer with the government prior to pursuing any of the requests not covered.

On February 28, 2011, the parties met and conferred over this limited handful of discovery requests. The meeting was attended by multiple attorneys for the Petitioners and the Respondents, several of whom appeared telephonically. Over approximately five hours, the parties discussed each of the discovery requests, reaching tentative agreements on a significant number of requests. The parties further agreed that, if final agreement is not reached as to these requests, Petitioners have satisfied their duty to meet and confer in good faith prior to moving to compel responses to the requests as narrowed.



## 2. Categories of Database Information

At the meet and confer, we requested two additional categories of database information (in addition to the categories listed in our February 21, 2011 letter): (1) charges; and (2) immigration status.  We hereby memorialize our requests for those two categories of information.

## 3. Representation During Merits Hearings

During the meet and confer, you asked whether we sought information regarding whether detainees are represented at their merits hearings.  Our understanding is that neither DHS nor DOJ databases maintain information regarding whether a detainee is represented at any given hearing, rather, only the dates on which a G-28 or E-28 are filed and withdrawn, and the name of the attorney.  Because information regarding whether detainees are represented at custody determinations is essential to the Petitioners' claims, we seek the database information regarding whether a detainee is represented, and the time periods during which a detainee is represented – even if that information includes representation at merits hearings.

## 4. "Universe" for Database Requests

During the meet and confer, we agreed to provide additional clarification regarding the "universe" of Petitioners that are the subject of our requests for database information.

This is how we propose defining the "universe": applying the same criteria used to generate class member lists on April 21, 2010 and February 24, 2011, generate class member lists for the 21st of each month from April 21, 2010 until present.  That will be roughly ten lists in total.  Using those lists, the government can (or we can, if it would be more convenient) compile a master list of all detainees who are class members as of those dates.  We propose that the government then provide the requested database information for each detainee on the master list.

We recognize that the cases of many detainees on the master list will have been completed.  But we are nonetheless requesting that information because information regarding case outcomes is relevant to the Petitioners' claims, as we explained in our opposition to the Rule 12(c) motion.

We believe this is the most efficient way to produce database information in a manner that is limited and technically feasible for the government, and will allow the Petitioners to obtain sufficient, representative information from which we can draw statistically significant conclusions.



### 5. Proposal for Scope of A-file Production

As we have consistently maintained, Petitioners need A-file information in order to evaluate the sufficiency of the government's current custody determination procedures. During the meet and confer, we explained our intention to analyze A-file information to draw statistically significant conclusions about the class. We are hopeful that after reviewing the database information that the Respondents have – largely – agreed to produce, Petitioners may be able to significantly reduce the number of A-files we request. For this reason, we urge the Respondents to promptly produce the database information so that we can evaluate the information and determine how, if at all, our request for A-files could be further reduced.

### 6. A-file information

At the meet and confer, you asked us to provide a description of the types of documents found in A-files that Petitioners seek. To that end, we hereby clarify that Petitioners seek the following documents from the A-file of any Petitioner who falls within the "universe" defined above: any document sent, given or otherwise delivered by a Petitioner to the federal courts, DOJ or DHS (including ICE, CBP and USCIS) and documents sent, given or otherwise delivered by those entities to a Petitioner. In addition, we request POCR worksheets and the transcripts, if produced, of any statements given by a detainee to DOJ or DHS officials, such as transcripts of removal hearings or CBP interviews.[1]

Sincerely,

_____/s_____

Ahilan Arulanantham
Director of Immigrants' Rights
and National Security

---

[1] For many pro se detainees or in cases where there is no other transcript created, a CBP interview may be the only source of information regarding the substance of the person's claims

