# EXHIBIT 33



**U.S. Department of Justice**

Civil Division
District Court Section
Office of Immigration Litigation

---

*Box 868, Ben Franklin Station*
*Washington, DC 20044*
*Tel: (202) 532-4135*
*Fax: (202) 305-7000*
*Email: theodore.atkinson@usdoj.gov*

March 17, 2011

**<u>BY E-MAIL</u>**

Ahilan Arulanantham
Deputy Legal Director
American Civil Liberties Union of Southern California
1313 West Eighth Street
Los Angeles, California 90017

      RE:   <u>Rodriguez v. Robbins, et. al.</u>, No. 07-cv-3239 (C.D. Cal.)
              Discovery Issues & Follow-Up to Meeting and Conference

Dear Ahilan:

I am writing to memorialize our understanding of the parties' positions with respect to the outstanding discovery requests propounded by Petitioners on Respondents in this matter.

Petitioners served six sets of discovery requests on Respondents on July 22, 2010, and Respondents timely objected to the discovery both generally and specifically. The parties then engaged in pre-filing activities proscribed by Local Rule 37-1 and 37-2 in advance of cross-motions for a protective order (by Respondents) and to compel (by Petitioners). However, Respondents also sought a stay of discovery from Magistrate Judge Block, which was granted on November 17, 2010, pending resolution of Respondents' Rule 12(c) motion for judgment on the pleadings. The motion for judgment on the pleadings was subsequently denied. In accordance with Judge Block's November 17, 2010 Order, counsel met and conferred on February 28, 2011 to attempt to narrow the areas of dispute.

We are pleased that we have been able to significantly reduce our areas of dispute, and we herein memorialize our areas of disagreement and agreement, taking into consideration your letters of February 14, February 24, and March 8, as well as our discussions at the meeting and since:

-2-

**Areas of Disagreement**

1.   **A-Files (DHS Request for Production 1)**

In your discovery request, you requested the entire A-file of every class member.  In response to our objections, you modified your request in your February 14, 2011 letter by narrowing the universe of A-files to all A-files for any detainee who was a class member from April 21, 2010, to the present, while reserving the right to seek A-files from additional class members if you believed it was necessary.  At our meeting, we indicated that such a universe would still impose an undue burden, and would require the production of irrelevant material from files.

In your March 8, 2011 letter, you offered to limit the materials sought in A-files to "any document sent, given or otherwise delivered by a Petitioner to the federal courts, DOJ or DHS (including ICE, CBP and USCIS) and documents sent, given or otherwise delivered by those entities to a Petitioner.  In addition, we request POCR worksheets and the transcripts, if produced, of any statements given by a detainee to DOJ or DHS officials, such as transcripts of removal hearings or CBP interviews."

In our considered view, the scope of your request remains objectionable.  Among other things, the universe of A-files remains exceptionally broad, particularly given the breadth of your class definition.  Moreover, the March 8, 2011 letter does not present a significant limitation to your expansive request.  The scope of your modified request remains exceptionally broad, seeks irrelevant information, and imposes an undue burden on Respondents.  We therefore maintain our objections to this request.

You stated in your March 8, 2011 letter that you may be able to significantly reduce the number of A-files requested, depending on the database information Respondents produce.  We hope that remains the case, and we remain open to reasonable proposals.

However, at present we understand that you will seek to compel a response to DHS RPD 1, but will not seek to compel the following:

•   DOJ RPD 1, 2
•   DHS RPD 2

2.   **Requests Seeking Information Regarding the Implementation of *Joseph* and *Casas* Hearings, and Conduct of Post-Order Custody Reviews and Parole Determinations.**

As we discussed at the meeting, we maintain our objection to any discovery request seeking information regarding the implementation of *Joseph* or *Casas* hearings.  We also maintain our objections with regard to certain requests seeking information on whether Immigration and Customs Enforcement ("ICE") follows regulations in conducting discretionary parole

-3-

determinations and post-order custody reviews ("POCRs").[1] As we discussed at the meeting, *Joseph* hearings are irrelevant to your claims. To the extent you seek information regarding ICE's implementation of the Ninth Circuit's decision in *Casas-Castrillon*, that information is irrelevant to this case. Similarly, certain of your requests regarding whether ICE follows regulations concerning discretionary parole determinations and POCRs are irrelevant, particularly because you claim that those procedures are insufficient, even if they are properly conducted.

Specifically, with respect to this category of requests, Respondents will maintain objections to the following requests that we understand are still on the table:

| | | |
|---|---|---|
| • DHS RPD 3 and DOJ RPD 3 | – | Withdraw objection with respect to request for information concerning bond hearings and supervised release[2] as defined in the request and as request is modified by February 14, 2011 letter; maintain objection to the extent it seeks the requested information as to *Joseph* hearings, *Casas* hearings, parole determinations, and POCRs. |
| • DHS RPD 6 | – | Withdraw objection with respect to request for information concerning bond hearings and supervised release as defined in the request and as request is modified by February 14, 2011 letter; maintain objection to the extent it seeks the requested information as to *Casas* hearings, parole determinations, and POCRs. |
| • DHS RFA 2 DOJ RFA 2 | – | Maintain objection. |
| • DHS RFA 3 DOJ RFA 3 | – | Maintain objection with respect to *Casas* hearings, but will answer with respect to bond hearings, as defined in the request. |
| • DHS RFA 4 - 15 DHS RFA 18 - 21 DOJ RFA 4 - 11 | – | Maintain objection. |

---

[1] We note that given the definition of the class and the claims raised with respect to aliens detained under 8 U.S.C. § 1231(a)(6), the scope of any request seeking post-order custody reviews is limited to information regarding 180-day POCRs, and not 90-day POCRs.

[2] We understand the inclusion of "supervised release" to refer to requests for policies and procedures relating to the release of aliens on conditions of supervision, including alternatives to detention (including electronic monitoring).

-4-

We understand that you will seek to compel answers or responses to the above-identified requests, while not seeking to compel as to the following requests for admission (which Respondents have agreed to answer):

- DHS RFA 1, 3 (objection withdrawn in part), 16, 17
- DOJ RFA 1, 3 (objection withdrawn in part), 12, 13

**Areas of Agreement**

1.     **Database Information – Category "B" Information**

Much of the time at our meeting was spent discussing the production of certain electronic database information with respect to several categories. As we discussed, our ability to produce the information requested depended on the technical ability of ICE and EOIR to do so.

At present, we have determined *which* categories of information exist in the database, and we anticipate producing such information – constituting almost all of the information you requested. We caution, however, that we have not yet begun to work with information technology specialists to cull the information from the database, but if problems arise, we will inform you.

With respect to each of the numbered categories of information identified in your February 14, 2011 letter, we will produce the following information in spreadsheet format for aliens who were detained for six months or longer[3] within the Central District (Los Angeles Area of Responsibility) from April 21, 2010 to the present, unless otherwise noted:

(1)     Respondents will produce the initial date of detention, end date of detention, detention facility, and reasons for release (*e.g.* to effectuate deportation, under a grant of supervision or bond, cancellation of removal, etc.).

---

[3] As we discussed on March 16, 2011, by telephone, your March 8, 2011 letter identifies a universe of aliens detained from April 21, 2010, to the present. While that temporal limitation should not pose a problem, we expressed serious doubt that we could identify information for every class member or "prolonged detainee" (as defined in the requests) during that period. Your definition of "prolonged detainee" includes any non-citizen detained for six months or longer *anywhere*, and who then is detained *for any period of time* thereafter in the Central District. We have long objected that it is difficult – if not virtually impossible – for us to identify everyone who may fit within that broad definition. This view would encompass all aliens that are sent to or travel through Los Angeles for removal from the United States. In addition, we note that the class as defined is limited to aliens who "are or will be" detained and it excludes *Zadvydas* aliens. By agreeing to provide database information on all aliens detained six months or longer in the Central District from April 21, 2010, until present, we believe you will receive extensive data that will encompass more than the defined class, but less than the full definition of "prolonged detainee."

-5-

(2) Respondents do not maintain electronic records of the detention statute that authorizes or authorized detention. However, Respondents can at least identify whether the detainee is/was held under mandatory detention by producing the charge against the alien (from EOIR) and whether the alien has been identified as mandatorily detained (from ICE – although we note that this database entry is not required to be completed by ICE officials and therefore may be underinclusive).

(3) Respondents will produce information identifying the nature and outcome of "custody determinations," to the extent such information exists. With respect to each: (1) parole determinations – ICE's database reflects the category "parole" under release type and will produce that category of information. It is possible that this list will be underinclusive because the list of release type categories include bond, order of supervision, order of recognizance and if release on parole with some type of release conditions is granted it is possible the type will only reflect order of supervision, bond, etc. The database does not reflect whether parole was requested or denied. recordsnot ; (2) bond hearings – EOIR's database reflects whether there was a bond hearing, and whether bond was granted, and ICE databases can identify whether a bond was posted and in what amount. (3) *Casas* hearings – Respondents maintain their objection that such information is irrelevant, but note that because the database does not specifically distinguish between bond hearings and *Casas* bond hearings, and because of the structure of the database, such information will be produced; (4) *Joseph* hearings – Respondents maintain their objection that such information is irrelevant, but note that such information is likely to be produced because of the structure of the database; (5) post-order custody reviews – Respondents are still looking into this category, but we do not believe such information is maintained in an electronic database.

(4) Respondents will produce information showing the nature and outcome of removal proceedings before an immigration judge and the Board of Immigration Appeals, including whether class members were removed, had proceedings terminated, or who were granted relief. Respondents do not maintain such information regarding the Ninth Circuit, although we note that the database information Respondents produce will identify each hearing and decision in each case, and thus will show whether a case has been remanded from a court of appeals.

(5) Respondents will produce information showing the country of origin.

(6) Respondents will produce information showing whether each alien (1) is an aggravated felon (from ICE – although we note that this database entry is not required to be completed by ICE officials and therefore may be underinclusive) and (2) their security categorization by ICE (Category I, II, or III),

-6-

(7) Respondents will produce information showing the date of every filing of a G-28 or E-28 in each alien's case. Respondents do not have information showing whether such representation was withdrawn.

(8) Respondents will produce information sufficient to identify the time between different stages and length of detention by identifying (1) the date of initial detention, (2) date detention ended, and (3) information showing each proceeding and decision in each alien's removal proceedings (excluding in the Ninth Circuit, which information neither ICE nor EOIR maintain).

(9) Respondents will produce information showing the initial removal charges (although this field may not capture additional charges added later).

(10) Respondents will produce information showing original immigration status when charged.

In committing to providing the information above, we understand from our discussion that you will not seek to compel the following requests:

- DHS RPD 4, 7, 8, 9, 14, 15, 16, 17, 18, 21, 22
- DOJ RPD 4, 7, 8, 10, 11, 12, 14, 15, 16, 17, 19
- DHS INT 1, 2, 3, 4, 5, 6, 9, 12
- DOJ INT 1, 2, 3, 4, 5, 7, 11, 12

**2.   Written Policies and Procedures**

For the purpose of clarity, Respondents will maintain their objections with respect to DHS RPD 3 and 6 and DOJ RPD 3 to the extent they seek policies and procedures regarding *Joseph* hearings, *Casas* hearings, parole determinations, and post-order custody reviews.

Respondents will produce, as we indicate above, written policies and procedures concerning bond hearings and the decision to release detainees on supervised release (including electronic monitoring), as narrowed by your letter of February 14, 2011 and in our discussions (*i.e.*, regarding e-mails, as discussed above). Accordingly, we understand you will not seek to compel DHS RPD 19 and DOJ RPD 18, as those requests were narrowed by your February 14, 2011 letter.

**3.   Interrogatories**

We understand, as explained in your February 14, 2011 letter and reiterated at our meeting, that Petitioners only sought to compel DHS Interrogatories 7 and 8 and DOJ Interrogatory 4, unless Respondents agreed to identify supervisors or upper-level DHS and DOJ officials who are responsible for the training, supervision, and implementation of DHS and DOJ policies

-7-

concerning bond hearings, *Joseph* hearings, *Casas* hearings, parole determinations, and post-order custody reviews, as well as policies and procedures concerning initial custody determinations and release under conditions of supervision.

Respondents will identify supervisors or upper-level DHS and DOJ officials who are responsible for the training, supervision, and implementation of DHS and DOJ policies concerning bond hearings, initial custody determinations, and release under conditions of supervision in the Central District of California.  However, Respondents object to identifying such individuals with knowledge of such policies or procedures as they relate to *Joseph* hearings, *Casas* hearings, parole determinations, and post-order custody reviews.  Respondents also object to the request to the extent that "supervisors or upper-level" DHS and DOJ officials includes the identification of immigration judges, members of the Board of Immigration Appeals, or other similar individuals.  We note that the provision of this information should not be construed as acquiescence to the deposition of any such individual.

**4.      Cost Discovery**

The parties also appear to agree that if Respondents do not pursue a defense or claim in this litigation relying on the cost of providing bond hearings, then Petitioners will not seek to compel such information.  Although we rejected the suggestion that the parties enter into a joint stipulation on this issue – on the ground that the determination not to pursue a general defense is not a "fact" that can be stipulated to and out of concern that such stipulation may be used outside this litigation – Respondents are willing to provide Petitioners with assurance to that effect.  If this understanding is correct, then Respondents offer the following assurance:

> Respondents do not intend to pursue a general defense in this litigation (1) that the cost of providing a bond hearing should be considered in this case as a factor weighing in favor of Respondents, or (2) that the cost of providing bond hearings to class members is greater than the cost of detaining class members, except with respect to Petitioners' claim that due process requires the Government to provide detainees counsel at governmental expense.  Because Respondents do not intend to raise these defenses in this case (except as noted above), Petitioners have determined not to seek an order compelling responses to any discovery requests related to costs.  However, if Respondents determine that they will raise these or similar general defenses, then Respondents agree to immediately notify Petitioners of that fact in writing, and agree to join a stipulation seeking, if necessary, additional time in discovery or to reopen discovery to permit Petitioners to seek or compel discovery as to any such defense.  Respondents agree that in such circumstances, good cause would exist for the extension or reopening of discovery.

-8-

Based on this assurance, we understand that you will not seek to compel the following discovery requests:

- DHS RPD 20, 26
- DOJ RPD 13, 20
- DHS INT 13, 14, 16, 17, 18, 19, 20
- DOJ INT 8, 9, 10

**5.     Office of Immigration Litigation Spreadsheet of Ninth Circuit Cases**

At the meeting we discussed whether the Department of Justice would produce what you refer to as a "database" of cases before the Ninth Circuit involving aliens detained for more than six months. As we explained, the "database" is a spreadsheet identifying all cases where aliens have filed petitions for review in the Ninth Circuit, and in which the aliens have been detained for more than six months. It identifies (1) case number, (2) case name, (3) days detained, and (4) OIL trial attorney handling the case. We will not produce the name of the OIL attorney handling the case, but we will produce the rest of the spreadsheet. This spreadsheet is only periodically updated, but we will seasonably supplement to the extent the spreadsheet is updated during this litigation.

**6.     Protective Order Governing Confidential Information**

One issue we did not discuss, but which we previously indicated we would need to address, is the need for a general protective order in this case governing confidential or private information. We are willing to produce the information identified above once the parties have negotiated a protective order that adequately safeguards the use of the private information to be produced, and limits its use to the present litigation. If you are generally agreeable to such a protective order, please let us know. We will then draft a proposed protective order and forward it to you for your review.

**7.     Other Requests**

Finally, we understand that to the extent not otherwise addressed herein, you are not seeking to compel any other document requests at this time. Please let us know immediately if that is not correct.

-9-

To the extent you disagree with any portion of this letter, please let us know during our scheduled call on March 18, 2011.

Regards,

*/s/ Theodore W. Atkinson*

Theodore W. Atkinson
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section