# EXHIBIT 35

## DECLARATION OF STACY TOLCHIN

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

2. My name is Stacy Tolchin. I am an immigration attorney in private practice in Los Angeles, CA.

3. I graduated from UCLA Law School in 2001. From 2001-2010, I was employed by Van Der Hout, Brigagliano & Nightingale, LLP, where I specialized in complex removal cases in immigration court, appeals before the Board of Immigration Appeals and Administrative Appeals Office, and petitions for review before the U.S. Court of Appeals for the Ninth Circuit. In 2010, I opened my own practice, the Law Offices of Stacy Tolchin, where I continue to practice immigration law.

4. I was lead counsel or co-lead counsel in *Husyev v. Mukasey*, 528 F.3d 1172 (9th Cir. 2008), *Silaya v. Mukasey*, 524 F.3d 1066 (9th Cir. 2008), *Padilla-Padilla v. Gonzales*, 463 F.3d 972 (9th Cir. 2006) and *Singh v. Still*, 470 F.Supp.2d 1064 (N.D. Cal 2007). I have received numerous awards and recognitions for my work, including the American Immigration Lawyers Association Jack Wasserman Memorial Award for excellence in the field of litigation in 2009, the American Civil Liberties Union of Southern California Equal Justice Advocacy Award in 2009, and the National Immigration Law Center Annual Award in 2008. In addition, I currently serve on the Advisory Committee for the American Immigration Council and the Board of Directors of the National Immigration Project of the National Lawyers Guild, and served on the Rules Committee of the U.S. Court of Appeals for the Ninth Circuit from 2009-2010.

5. I regularly represent individuals in removal proceedings, including both individuals who are detained and those who are not. At any given time I am likely to represent 8-15 such individuals. Over the course of my nearly 10 year career, I conservatively estimate that I

have represented 60-80 individuals in removal cases. I have also been counsel in immigration-related class actions in which I represented hundreds of noncitizens.

6. In addition, although I have no simple way to estimate it, I have assessed for representation numerous other individuals whose cases I did not ultimately take. In any given week, I would estimate that I review for possible representation the cases of approximately 3 individuals.

7. In the course of my work I routinely review the A files of individuals, both detained and non-detained. In total, I would estimate that I have reviewed approximately 400 – 700 A files. I generally obtain these A files through filing a Freedom of Information Act request with both EOIR and ICE, or from the clients or their prior attorneys. Based on my knowledge of immigration practice and interaction with other attorneys who work in my field, it is standard practice to request A files, and agencies provide such files to individuals and their attorneys in removal proceedings as a matter of course.

8. Based on my experience, A files are typically organized chronologically, with sheets dividing each stage of the case (e.g., immigration court, BIA appeal, etc.). For older A files that were printed by the agency prior to the use of CD's, the documents in the A file are two-hole punched at the top and secured with an Acco fastener. In my experience, government attorneys typically are able to search through A files to find particular documents with relative ease.

9. Based on my knowledge of the FOIA process and immigration practice, it is my understanding that the government ordinarily reviews A files for privileged and confidential information and redacts such information before producing A files in response to a FOIA request. The A files I have seen routinely contain redactions. In my experience, the amount of redactions does not differ materially depending on the size of the A file. Larger A files often contain country conditions reports and other voluminous documents on which redactions rarely appear.

10. In my experience, for approximately the last four years, DHS provides an electronic copy of an A file on compact disc in response to a FOIA request. DHS does not provide a paper copy.

11. It is very difficult to estimate the number of pages that are likely to be contained in any given A file. When I have reviewed cases involving unrepresented detainees, it is very common for them to contain less than 30 pages. However, if those detainees have made use of the resources of a legal orientation provider, then they could contain more pages. Nonetheless, in my experience it is unusual for a pro se detainee to have an A file containing more than one hundred pages, although it does occur from time to time.

12. Detainees with legal representation tend to have larger A files, and in my experience I have found that the length often tends to increase with the quality of the representation. The length of the A file also increases substantially when a represented detainee is seeking relief from removal. For example, a represented detainee seeking relief from removal in the form of cancellation of removal will typically have between 100 and 200 pages of information in their A file for a case that is in immigration court. After appeal, the A file of represented detainee seeking relief from removal in the form of cancellation of removal will typically have between 250 and 350 pages of information.

13. Some A files contain several hundred pages of information concerning "country conditions" – information about the political or social climate in a foreign country that is often relevant for asylum, withholding, and Convention Against Torture claims. Such information may also be relevant to other types of relief such as cancellation of removal or adjustment of status, and therefore may appear in A files involving those issues. Information about country conditions, however, is not privileged, and I am not aware of the government redacting such information from A files on the grounds of privilege.

14. I routinely draw strong conclusions about the strength of a potential client's removal case by reviewing his or her A file; indeed, review of the A file is absolutely indispensible when I seek to make such assessments.

15. Through review of the A file, I can generally determine whether the potential client is clearly eligible for relief, arguably eligible for relief, or clearly not eligible. A files also often contain information that allows me to make assessments of the chances that a given individual will obtain such relief. For example, applications for relief will often list information concerning family ties and employment, which is relevant to assessing the strength of one's case for relief in many situations.

16. In addition, when a case has progressed through appeal, the A file contains a transcript of prior proceedings. In such cases, the transcript provides very good information concerning the Immigration Judge's assessment of the case, including the Judge's reason for denying or granting relief. This information is also critical in assessing the strength of a client's case.

17. A files also often contain information that is useful in assessing a potential client's likelihood of winning release on bond at a *Casas* hearing. A files as a matter of course include criminal history information, and often also include information concerning an individual's residence history, family ties, and employment situation.

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge and belief. Executed this 15th day of April, 2011 in Los Angeles, California.

Stacy Tolchin

4