PETER J. ELIASBERG (SBN 189110)
Email: peliasberg@aclu-sc.org
AHILAN T. ARULANANTHAM (SBN 237841)
Email: aarulanantham@aclu-sc.org
MICHAEL KAUFMAN (SBN 254575)
Email: mkaufman@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1616 Beverly Boulevard
Los Angeles, California 90026
Tel: (213) 977-5211
Fax: (213) 977-5297

Attorneys for Petitioner
(Additional counsel listed on following page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*, <br><br> Petitioners, <br><br> vs. <br><br> TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director*; JANET NAPOLITANO, *in her capacity as Secretary of Homeland Security*; and ERIC H. HOLDER, JR., *in his capacity as Attorney General of the United States*, <br><br> Respondents. | Case No. CV 07-3239-TJH (RNBx) <br><br> **DISCOVERY MATTER** <br><br> SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO COMPEL AND OPPOSITION TO RESPONDENTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-2.1 |

Additional counsel:

JUDY RABINOVITZ
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:  (212) 549-2618
Facsimile:  (212) 549-2654

JAYASHRI SRIKANTIAH (SBN 189566)
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone:  (650) 724-2442
Facsimile:  (650) 723-4426

SEAN COMMONS (SBN 217603)
CODY JACOBS (SBN 272276)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO COMPEL AND OPPOSITION TO RESPONDENTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-2.1**

1   This case is about whether Respondents' custody review procedures are
2   constitutionally sufficient. As Respondents admit, "there is no dispute that in
3   deciding this case the Court must determine whether non-citizens are provided with
4   adequate due process under the current detention procedures." Joint Stipulation at 10-
5   11. To aid the Court in that determination, Petitioner is entitled to obtain information
6   about what Respondents' procedures *are*, how they operate *in practice*, and whether
7   they appropriately assess danger and flight risk, which are the central justifications for
8   detention in this context. Petitioner's narrowed requests target only basic information
9   about Respondents' custody procedures and their applicability to class members –
10  information central to the due process question at the heart of this case.

11  Petitioner seeks three categories of information: (1) limited information from
12  "A files" for persons in the class during the past year; (2) information relating to
13  written custody policies and practices applicable to class members; and (3) requests
14  for admission relating to current custody policies and practices. Respondents object to
15  all three categories of information as irrelevant, arguing this case involves "purely"
16  legal issues. That position simply cannot be reconciled with Supreme Court and
17  Ninth Circuit law concerning due process challenges to prolonged detentions, and the
18  fact that Respondents' Rule 12(c) motion was denied. Petitioner also has identified
19  numerous uses for aggregate data from A files, and courts have considered precisely
20  such aggregate data in other due process class actions. Particularly given the low
21  threshold for relevance in the discovery context, the Court should reject Respondents'
22  relevance arguments. *See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.
23  Cal. 1998) ("Discovery should ordinarily be allowed under the concept of relevancy
24  unless it is clear that the information sought can have no possible bearing upon the
25  subject matter of this action.").

26  Respondents also argue that production and redaction of the A file documents
27  would be burdensome, but they overstate the burden involved given that DHS
28

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO COMPEL AND OPPOSITION TO RESPONDENTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-2.1**

routinely produces thousands of A files each month in response to individual requests. Respondents' claims concerning the need to redact private information are also overstated given that this class is certified, class counsel seek information about class members they now represent, and Petitioner is amenable to entry of a protective order that would limit dissemination of information from the A files.

## I. The Discovery Is Highly Relevant to the Due Process Standards That Govern Petitioner's Claims.

Ninth Circuit and Supreme Court precedent require courts assessing due process claims to analyze the "adequa[cy]" of the "procedural protections" currently provided as well as the justifications for "physical confinement" to determine whether the existing custody procedures satisfy constitutional standards. *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). In *Casas*, the seminal recent Ninth Circuit case on prolonged detention, the court reviewed the administrative record to determine whether a non-citizen detainee had "been afforded an adequate opportunity to challenge the necessity of his detention." *Casas-Castrillon*, 535 F.3d at 951. Similarly, in *Demore v. Kim*, 538 U.S. 510, 529 (2003), the Supreme Court drew upon statistics about similarly situated non-citizens to resolve a due process claim. Indeed, in both *Casas* and *Demore*, the Government itself relied on its existing custody processes to defend the constitutionality of prolonged detentions. *See, e.g.*, Brief for Appellants, *Demore v. Kim*, 538 U.S. 510 (2003) (No. 01-1491), 2002 WL 31016560, at *26-27 (arguing that *Joseph* hearings are a key procedural safeguard that support the constitutionality of mandatory detention under section 1226(c)); Brief for Appellees, *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008)

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO COMPEL AND OPPOSITION TO RESPONDENTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-2.1**

(07-56261), 2007 WL 4559452, at *24-25 (arguing that Casas "has received due process in periodic [post-order] custody reviews").[1]

Here, Petitioner's requests concern precisely the sorts of information relied upon in these cases. The requests for policies and procedures and requests for admission seek to determine what detention procedures *currently exist*. The request for A files seeks information on how those policies and procedures work *in practice*, and will also shed light on the quality of those determinations in light of the liberty interests at stake. Thus, these requests will allow Petitioner to assess the adequacy of the procedural protections currently provided to class members as well as the strength of the Government's justifications for incarcerating them. *See* Joint Stip. at 14-18.

Furthermore, A files are the *only source* from which Petitioner can gather information critical to the due process standard. The databases Respondents have agreed to produce do not contain information about class members' custody review determinations, criminal history information, or information concerning defenses against deportation. Moreover, the accuracy of these databases has been called into question, Joint Stip. at 28-29, and a review of the A files will allow Petitioners to assess their reliability. *See Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1066 (C.D. Cal. 2002) ("underlying documents" must have been "made available to the opposing party for inspection" for "a summary of data to be admissible").

Despite what Respondents claim, information from the A files can be aggregated in a number of ways relevant to the claims in this case. The declaration of Professor Siulc describes how she has conducted studies *for Respondents* by using

---

[1] Respondents argue that there was no discovery in these cases, but this is unsurprising given that they were individual challenges for which the Petitioners were given access to their A files. Petitioner here seeks the same basic information, but on a class-wide basis. Respondents' other efforts to avoid the holdings in these cases recycle positions rejected by Judge Hatter in his order denying their Rule 12(c) motion and thus merit no further discussion.

3
**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO COMPEL AND OPPOSITION TO RESPONDENTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-2.1**

exactly the kinds of aggregate data that Petitioner will extract once given access to the A files. Joint Stip. at 26-29; Petitioner's Exhibit 34 (Siulc Dec.) at ¶¶ 4-8. In fact, a number of studies have drawn conclusions based on aggregate analyses of noncitizen case files. Joint Stip. at at 27. Petitioner, likewise, intends to draw conclusions from aggregate data about the adequacy of danger and flight risk determinations by looking at the custody reviews themselves, class members' biographical information (including family ties, work history and criminal history), and the strength of their asserted defenses against removal. Petitioner can also draw conclusions about the adequacy of the procedures in other respects – such as whether the procedures provide for decisions reasonably subject to review and challenge (e.g., by providing written reasons or transcripts). Respondents cannot dispute that a number of class action cases have relied on similar aggregate data in assessing due process challenges. *See* Joint Stip. at 21-26 (collecting cases).

**II.    Respondents Greatly Overstate the Burden of Producing A Files.**

Respondents contend that producing A files is burdensome, but undisputed evidence proves the contrary. A subdivision of DHS produces 4,000 to 6,000 A files *per month* for individual immigration cases in response to requests under the Freedom of Information Act. Joint Stip. at 18. Based on Respondents' own estimates, Petitioner seeks approximately 350 - 1,000 A files. Petitioner's request thus amounts to what DHS ordinarily produces every few days.

Moreover, Respondents' declarations do not establish undue burden either with respect to producing A files or redacting information from them. *Green v. Baca*, 219 F.R.D. 485, 492-493 (C.D. Cal. 2003) (rejecting as inadequate government's blanket assertions that it would take thousands of hours to produce "back-up documentation" relating to detentions). Respondents' declarations fail to identify anything distinctive about Petitioner's A file request that requires more or different review or redaction than is ordinarily undertaken to produce thousands of A files each month. *See*

4

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO COMPEL AND OPPOSITION TO RESPONDENTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-2.1**

Respondents' Exhibit 1 (Gentile Dec.) at ¶¶ 4-8; Respondents' Exhibit 2 (Zimmerman Dec.) at ¶¶ 4-7. Indeed, the declarations reveal that the Government stores and can likely review A files electronically, which itself eliminates much of the supposed burden. *See* Zimmerman Decl. at ¶ 4; *see also* Joint Stip. at 20.

Finally, despite having dramatically narrowed his request for A files already, *see* Joint Stip. at 20, Petitioner is amenable to reasonable procedures that further minimize the burden on Respondents. To the extent certain A files do not exist electronically, Respondents are prepared to assist with copying specific materials within the files, and would agree to a "claw-back" provision for the return of documents subsequently determined to be produced inadvertently. *See* Fed. R. Civ. P. 26(b)(5)(B); Fed. R. Evid. 502. Petitioners also will accept a rolling production if, despite their ability to produce thousands of A files per month in the normal course, the Government needs several weeks to gather and produce them here. And, while privacy concerns are not well taken given that class counsel represents each member of the certified class, Petitioner already has offered to stipulate to a protective order to limit dissemination of any confidential information. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) (recognizing that "Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation" and that any "legitimate interests in privacy can be protected" with a protective order); *accord Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) ("reasonable restrictions on collateral disclosure . . . protect an affected party's legitimate interests in privacy").

For these reasons, the Court should order Respondents to produce the information sought in Petitioner's narrowed discovery requests.

Dated: April 22, 2011

          s/ Ahilan T. Arulanantham
          AHILAN T. ARULANANTHAM
          Counsel for Petitioners

5

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO COMPEL AND OPPOSITION TO RESPONDENTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-2.1**