TONY WEST
Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 532-4135
e-mail: theodore.atkinson@usdoj.gov
NICOLE R. PRAIRIE
Trial Attorney
EREZ R. REUVENI
Trial Attorney
ELIZABETH LEE WALKER
Trial Attorney

Attorneys for Respondents

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*, <br><br> Petitioners, <br><br> vs. <br><br> TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director*; JANET NAPOLITANO, *in her capacity as Secretary of Homeland Security*; and ERIC H. HOLDER, JR., *in his capacity as Attorney General of the United States*, <br><br> Respondents. | Case No. CV 07-3239-TJH (RNBx) <br><br> **DISCOVERY MATTER** <br><br> SUPPLEMENTAL MEMORANDUM IN SUPPORT OF RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-2.1 |

With regard to the discovery of A-Files, there are two related issues before the Court that Respondents are compelled to revisit in this supplemental memorandum: (1) is the information sought relevant to this class action, and (2) even if it is relevant, is the need for that information outweighed by the burden of its production?  The A-File materials sought are irrelevant to this case of statutory and constitutional construction, and in any event the burden of producing responsive materials from more than 1,000 A-Files far outweighs Petitioners' need, if any, for those documents.[1]

As to relevance, the materials sought by Petitioners from the A-Files are not relevant to Petitioners' classwide claims of statutory and constitutional interpretation. Petitioners can insist all they want that Respondents are "confused" by what this case is really about, but the undeniable fact is that Petitioners' counsel stood before a panel of the Ninth Circuit and represented to that court that this case involved a "pure question of law *that has nothing to do with the particular facts of any detainee's case*," see Joint Stip. at 33.  And now the same counsel stands before this Court and makes the exact opposite representation:  that a broad range of individual information concerning class members is "indispensible" to this case.  Joint Stip. at 15.

Petitioners claim that they need a vast array of "biographical" and other information to "aggregate" this highly individualized information to determine whether "existing procedures accurately determine which class members are in fact flight risks or dangers to the community."  Joint Stip. at 15-16.[2]  But as Petitioners

---

[1] On April 20, 2011, U.S. Immigration and Customs Enforcement ("ICE") informed undersigned counsel that ICE's initial search to determine the size of the universe is approximately 1,030 A-Files.

[2] Petitioners also claim they need all the A-File materials sought to confirm the electronic database information Respondents have agreed to produce, claiming that the electronic information comes from a database has been criticized for inaccuracy and unreliability.  Joint Stip. at 28.  But the Inspector General reports Petitioners cite concern the mainframe database DACS (Deportable Alien and Control System), which is no longer in operation.  The database from which Respondents will produce electronic data is EID (Enforcement Integrated Database).  Furthermore, despite the five hour meet and confer where the database capabilities were extensively discussed

*(Footnote continued)*

1

admit, whether someone is a flight risk or a danger involves – here's that phrase again – a highly individualized examination of various elements of a person's background. To put it bluntly, Petitioners talk broadly and generally about how "standard empirical methods would allow Petitioner[s] to draw conclusions about the quality of the existing procedures and the strength of class members' liberty interest" from the requested A-File materials. Joint Stip. at 9. But that is all Petitioners offer: vague generalities and broad characterizations. Doctor Siulc's declaration certainly does not support Petitioners' lofty assertion. At *best*, her declaration states what no one with a rudimentary understanding of statistics would contest: that some information about individuals can be tabulated and recorded in a way that allows a later statistical analysis. No one doubts that such statistical analysis, as a general matter, can be done, and has been done in incarceration or detention contexts. The question is *what* is being measured, and whether the information sought to be measured can be objectively reduced to identifiable data that can then be analyzed statistically. Petitioners do not explain with any specificity how they can aggregate all of these individual facts to show in an objective way that the "subjective"[3] determination of flight risk and danger was "in error."[4]

---

and Respondents ultimately agreed to produce all information Petitioners requested, Petitioners now to choose to raise an argument that the database information is unreliable and the A-Files are necessary to corroborate the database information. This statement completely contradicts what Petitioners represented to Respondents at the conference of counsel, and calls into question Petitioners' need for information that ICE has now spent several weeks compiling, and which Petitioners repeatedly demanded, but which Petitioners now question the accuracy of.

[3] Petitioners cite *Matter of Guerra*, 24 I. & N. Dec. 37 (2006), and admit that in considering whether an alien should be released, and immigration judge considers at least *nine different factors*, including such non-mathematically precise things as the presence of an alien's family and his employment history, and the recency and "seriousness" of a criminal offense. Joint Stip. at 16. Petitioners also concede that *Matter of Guerra* does not even include all the relevant factors that could be considered in setting or denying bond. Joint Stip. at 15 n.4. Despite this, Petitioners base their claimed need for discovery on the idea that such determinations can be

*(Footnote continued)*

2

But even if Petitioners could convert the multi-factored subjective considerations of flight risk and danger into statistically assessable information, *it would still be irrelevant*. For example, consider the subclass of detainees under 8 U.S.C. § 1226(c), who are required to be detained. There is nothing to weigh the "error" of, because the statute itself does not provide for alternatives to detention or redetermination of custody. Thus, the issue of whether detention beyond six months is constitutional does not require a *Mathews* analysis, because – as Petitioners admit – the *Mathews* factors test whether there is an "error rate" in an applied administrative procedure.[5] There is simply nothing to "test."[6]

---

reduced to measurable, testable variables, *after* the fact. As one district judge wrote, "The release/detention decision . . . is hardly an exact science. It is appreciably more inexact than trying to determine what events occurred in the past (as we do in trials). For here we are trying to make judgments about what specific individual persons, whom we certainly cannot claim to fully understand, will do in the future -- how they will respond to circumstances and feelings that we have only quite limited powers to foresee." *U.S. v. Aileman*, 165 F.R.D. 571, 599 (N.D. Cal. 1996) (Shifman, J.) (discussing Bail Act). Similarly, in post-order custody reviews, immigration officials are required to asses a number of enumerated factors, not unlike those in *Matter of Guerra*. *See* 8 C.F.R. § 241.4. Flight risk and danger cannot be reduced to easy aggregation, and Petitioners have provided nothing to show that such aggregation is even possible, or, if possible, reliable.

[4] Similarly, Petitioners claim without support that that the strength of an alien's immigration claim is some sort of proxy for flight risk and danger. And they claim, citing the Tolchin Declaration, that one can determine the likelihood of success from the A-File. But Tochin, an immigration attorney, only states the obvious: that as a lawyer she "routinely draw[s] strong conclusion[s] about the strength of a client's removal case by reviewing [the] A-file," and can then "make assessments" as to whether a client is "clearly eligible for relief, arguably eligible . . ., or clearly not eligible." Tolchin's characterization of the lawyer's art is hardly evidence of the reliability of Petitioners' "aggregation" and statistical theory.

[5] Petitioners argue that *Joseph* hearings fit into the same category as POCRs and parole determinations because an immigration judge determines whether an alien is lawfully detained under section 1226(c). Petitioners' argument is without merit. As Petitioners know, *Joseph* hearings are only used to consider whether section 1226(c) applies in the first instance because the alien's crimes fit one of the enumerated

*(Footnote continued)*

3

These kind of core, why-is-it-needed questions that Petitioners did not address are set forth in Respondents' contentions. *See* Joint Stip. at 36-46. Petitioners also do not acknowledge that Respondents have already agreed to provide the data that they cite as "central to the majority's ultimate conclusion" in *Demore v. Kim*. Joint Stip at 23. Respondents agreed to provide initial date of detention, end date of detention, and dates and outcomes of all immigration hearings. Petitioners do not address any additional information they would need in order to establish the statistics (not based on the production of any A-Files) introduced in *Demore v. Kim*. Finally, Petitioners have yet to cite a single case in which any court examining the issue of prolonged detention has *ever* considered whether the alien challenging detention is a flight risk or danger, or tested the detention procedures for "error" in this regard.

As to the issue of burden, the relevance of the information to the case is a critical factor in assessing burden, as is the demand on the resources of the parties in balancing the need. *See* Fed. R. Civ. P. 26(b)(2); *Hysell v. Pliler*, 2007 WL 273882, *1 (E.D. Cal. 2007) (citing same). Petitioners argue that Respondents have overstated

---

categories of offenses under sub-sections 1226(c)(1)(A) through (D). Flight risk and danger do not come into the equation. What, then, is to test?

[6] Consider the subclass of detainees under 8 U.S.C. § 1225(b). Even assuming that arriving aliens have due process rights as to their admission or exclusion – and they do *not*, as the Ninth Circuit has repeatedly recognized – that still does not answer the question of why Petitioners need to know whether parole determinations are "erroneously" concluding an alien is a flight risk or danger. The decision to grant or deny parole – a matter left by statute entirely to the Government's discretion – does not turn on whether the arriving alien is a flight risk or danger, but is permitted in the first instance "for urgent humanitarian reasons or significant public benefit . . ." 8 U.S.C. § 1182(d)(5)(A). Thus, parole determinations are not bond determinations, and it is not an alternative to detention that claims to serve the same interest as detention, i.e., securing aliens in removal proceedings for removal. Thus, the issue of "error" as Petitioners frame it is a comparison of apples to oranges in the context of this subclass. It is also unclear what Petitioners are going to "test" under 8 U.S.C. § 1226(a) considering bond decisions are discretionary determinations by immigration judges. How could these subjective determinations possibly be aggregated to produce reliable, objective statistics?

4

the burden, comparing the production in this action to a FOIA production conducted by USCIS. Petitioners not only misrepresent USCIS's FOIA capabilities with regards to A-Files[7], but assert – without any basis – that the review conducted by USCIS's FOIA office is the same as what would be done here. That is not true. If ordered, the review of A-Files would be conducted by ICE, not USCIS, because ICE is a party to this case and USCIS is not. Any discussion of USCIS's FOIA office capabilities are entirely irrelevant to this litigation.[8]

Petitioners do not and cannot dispute that ICE will need to conduct a manual file-by-file review of more than 1,000 A-Files, first to identify the responsive documents, and also to identify – in consultation with other agencies – which privileges apply. Petitioners' assertion that these files will be less voluminous than other A-Files is pure conjecture. Thus, a review would require a considerable devotion of resources to produce documents that are either inherently irrelevant to this case, irrelevant under Petitioners' theory, or of such minimal relevance as not to justify the burden. The Court should grant the motion for a protective order.

---

[7] Petitioners assert that USCIS produces 4,000 to 6,000 A-Files a month, *see* Joint Stip. at 18, but the memorandum they cite does not support that. The memorandum states that USCIS – with its 260 national FOIA processing locations – is *processing* that number of FOIA *requests*. That figure does not address only A-File requests, it represents all FOIA requests and it represents an amount that they are processing (*i.e.*, started but not completed). The memo further states that one FOIA request for a file could involve information maintained by other agencies and as a result the "acquisition of information between agencies causes delay and results in an unmet statutory mandate to process FOIA requests within 20 days."

[8] FOIA offices process FOIA requests, they do not process civil discovery requests. The rules and privileges applied are distinct. *See Kamanka v. City and County of Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006) ("'It is unsound to equate the FOIA exemptions and similar discovery privileges' because the two schemes serve different purposes.")

5

| | | |
|---|---|---|
| 1 | April 22, 2011 | Respectfully submitted, |
| 2 | | |
| 3 | | TONY WEST |
| 4 | | Assistant Attorney General |
| | | Civil Division |
| 5 | | DAVID J. KLINE |
| 6 | | Director, Office of Immigration Litigation |
| | | District Court Section |
| 7 | | VICTOR M. LAWRENCE |
| 8 | | Principal Assistant Director |
| | | */s/ Theodore W. Atkinson* |
| 9 | | THEODORE W. ATKINSON |
| 10 | | Senior Litigation Counsel |
| | | United States Department of Justice |
| 11 | | Office of Immigration Litigation |
| 12 | | District Court Section |
| | | P.O. Box 868, Ben Franklin Station |
| 13 | | Washington, DC 20044 |
| 14 | | Tel.: (202) 532-4135 |
| | | NICOLE R. PRAIRIE |
| 15 | | Trial Attorney |
| 16 | | EREZ R. REUVENI |
| | | Trial Attorney |
| 17 | | ELIZABETH LEE WALKER |
| 18 | | Trial Attorney |

# CERTIFICATE OF SERVICE

I certify that on April 22, 2011, I served a copy of the foregoing through the Court's CM/ECF system on the following counsel of record:

Ahilan T. Arulanantham
ACLU Foundation of Southern California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

William Tran
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: wtran@sidley.com

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Steven A. Ellis
Sidley Austin LLP
555 W 5th St, Ste 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: sellis@sidley.com

Brian Kelley Washington
Sidley Austin
555 West Fifth Street Suite 400
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: bwashi01@sidley.com

*/s/ Theodore W. Atkinson*
Theodore W. Atkinson
Senior Litigation Counsel
United States Department of Justice