TONY WEST
Assistant Attorney General,
Civil Division
DAVID J. KLINE
Director
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4135
E-mail: theodore.atkinson@usdoj.gov
NICOLE R. PRAIRIE
Trial Attorney
ELIZABETH L. WALKER
Trail Attorney
EREZ R. REUVENI
Trial Attorney

Attorneys for Respondents

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*,<br><br>Petitioners,<br><br>vs.<br><br>TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director*; JANET NAPOLITANO, *in her capacity as Secretary of Homeland Security*; and ERIC H. HOLDER, JR., *in his capacity as Attorney General of the United States*,<br><br>Respondents. | Case No. CV 07-3239-TJH (RNBx)<br><br>**DISCOVERY MATTER**<br><br>DECLARATION OF CONRAD AGAGAN |

I, Conrad Agagan, hereby state as follows:

1. I am employed by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Enforcement Removal Operations ("ERO") and hold the title of Deputy Assistant Director, Eastern Operations. I have been employed by legacy INS and now ICE since November 18, 1996. My duties include providing managerial oversight over twelve of the twenty-four ERO Field Offices nationwide.

2. This declaration is based upon my personal knowledge, information obtained from other individuals employed by ICE, and information obtained from records maintained by DHS.

3. The purpose of this declaration is to describe the burden that would be placed upon ICE to comply with the court order that requires the production by June 27, 2011 of certain materials from 1,036 alien files (A-files), representing the number of aliens detained six months or longer since April 21, 2010. This process would require ICE to (1) locate all the A-files; (2) scan, photocopy and/or convert the files into a reviewable format; (3) transfer files that cannot be scanned at their current location; (4) review every page within the files for responsiveness; (5) review all responsive pages for applicable privileges; (6) coordinate with all third party agencies that maintain responsive documents in the A-files to determine what privileges they would assert; (7) redact any documents that contain confidential or privileged information; (8) prepare a privilege log for all redacted privileged and confidential information; and (9) perform a quality control review.

4. ICE has never completed a document litigation production that would involve all the steps outlined above for over 1,000 A-files and does not currently have in place the infrastructure needed to complete a production of such scale within a short time frame.

5. When ICE received the court order on April 27, 2011, ICE began diligently attempting to locate the 1,036 A-files. This process first involved a search in the National File Tracking System database to locate each individual A-File.

6. A-files can be paper files maintained nationwide, "digitized" electronic files maintained at the National Records Center (NRC), or paper files that are in the process of being converted to digitization at the NRC. Of the over 1000 A-files responsive to this court order, 53 are already digitized and 357 are in the process of being digitized at the NRC. NRC can digitize approximately 65 A-files per day. Once a file is digitized it is uploaded into the Enterprise Document Management System (EDMS). EDMS does not contain a platform for ICE to redact documents so all documents from EDMS will need to be printed and re-scanned or transferred into a system that will allow ICE to redact confidential and privileged information. The remaining A-files are all paper files that cannot be sent to NRC for digitization.

7. Approximately 600 paper A-files are located in the Los Angeles Area of Responsibility (LOS AOR). These A-files are not in one centralized location. These are active A-files that are in the following locations: Mira Loma Detention Center in Lancaster; Theo Lacy and Musick Detention Centers in Santa Ana, and at the Offices of Chief Counsel (LOS OCC) at 606 S. Olive St. and 300 N. Los Angeles Street. ERO in Los Angeles is currently tracking and pulling these active paper A-files to prepare them for scanning. There are also approximately 40 paper A-files stored in other locations. ERO in Washington D.C. is currently reaching out to the various facilities that maintain these 40 A-files to have them scanned and available for processing.

8. At least 17 A-files are currently with U.S. Citizenship and Immigration Services awaiting adjudication of a visa petition or other benefit application. Removing these A-files for

production purposes pursuant to this court order will delay the adjudication of those petitions and will further delay those aliens removal proceedings.

9. The scanning of each paper A-file must be done by hand because the documents contained in an A-file are different shapes, sizes and paper quality, and may contain staples, post-it notes, flags, or other items that must be removed and then replaced in the same position once scanning is completed. Where documents are old or worn, which is common in the case of older files, a document must first be photocopied prior to being scanned.

10. Many paper A-files in LOS AOR relate to active cases and cannot be transferred from their current location to a central location for scanning, uploading and preparation for discovery review and production due to upcoming immigration court proceedings. However, ICE maintains only two high speed scanners at LOS OCC and does not have the mission support available to scan approximately 600 paper A-files on-site. ICE's examination of a sample of files at Lancaster, California reveals that many files from that location subject to this order average 400 to 500 pages. If the remaining files also have 400-500 pages then the total number of pages that will need to be scanned for the 600 A-files in California will be approximately 240,000-300,000 pages.

11. Due to the difficulty of scanning approximately 600 paper A-files within the time frame of the court order, the Los Angeles Office of Chief Counsel and ERO are currently coordinating and prioritizing which A-files can be sent to a separate location for scanning and returned in a timely manner so that they will be available for use in immigration court proceedings. This is incredibly time consuming because it involves determining all upcoming court proceedings for all 600 A-files and setting a schedule that allows ICE enough time to have the A-file scanned and returned with time to prepare for upcoming immigration hearings.

12. ICE is diligently exploring various options including the use of ICE mission support outside of LOS AOR, Department of Justice's, Office of Litigation Support (OLS), U.S. Citizenship

4

and Immigration Services, and outside contractors to assist with the collection and scanning of the files. These options cannot be implemented immediately because they need to be analyzed to determine which is the most cost effective and efficient.

13. Additionally, in order to produce the A-file materials sought by petitioners, ICE will have to review each page of an A-file to determine which documents are responsive. Page by page review of an entire file is the only means by which it is possible to determine responsiveness. If each of the 1,036 A-files could contain anywhere from 200-500 pages, ICE may have to review up to half a million pages of documents for responsiveness.

14. Once responsive documents are identified, ICE will have to review each responsive document for all applicable privileges, redact that information and complete a privilege log for each file.

15. Documents created by third party federal agencies also are contained in A-files. Most commonly, documents from U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, Federal Bureau of Investigation, Executive Office of Immigration Review and the U.S. Department of State are found in A-files. The proper way to produce third party documents is to refer those documents to the third party agency for processing and receive those agencies' permission to produce, redact or release. This poses a logistical problem because it will involve segregating out all third party agency documents and sending them to those agencies for review prior to production. Typically this is a time consuming process and there is no guarantee that a third agency, that is not a party to this lawsuit, will provide immediate turnaround with their recommendations.

16. ICE is also prohibited by law from releasing certain documents in an A-file absent a signed waiver from the alien. Therefore, ICE cannot agree to release these confidential documents subject to a blanket protective order. These restrictions on release include, but are not

5

limited to, information relating to asylum or refugee applications;[1] applications under the Violence Against Women Act;[2] information relating to Season Agricultural Worker or Legalization claims;[3] information relating to an individual's Temporary Protected Status (TPS);[4] and information relating to nonimmigrant S visas,[5] T visas,[6] or U visas.[7]

17. U.S. Citizenship and Immigration Services is the custodian of A-files, and processes all requests for A-files requested under the Freedom of Information Act (FOIA). ICE does not, as a general matter, produce A-files pursuant to FOIA and as stated above, has never received a discovery request or court order in litigation to produce even close to 1,000 A-files.

18. As of today, there are only 39 working days, excluding weekends and federal holidays, until the production deadline set by the court order. The order would require ICE to locate, scan, transfer, review, redact, coordinate redactions with all third party agencies that maintain responsive documents in A-files, mark redactions on a privilege log, conduct a quality control review and produce all files by June 27, 2011. To complete all these steps by that date, ICE would have to fully process an average of 26.5 A-files per day.

---

[1] 8 C.F.R. §§ 208.6, 1208.6.

[2] 8 U.S.C. § 1367.

[3] 8 U.S.C. §§ 1160(b)(5),(6)

[4] 8 C.F.R. §§ 244.16, 8 U.S.C. §1254a(c)(6)

[5] *See generally* 28 U.S.C. § 16.26(b)(4)-(5) (prohibiting disclosures that would reveal a confidential source or information or records relating to law enforcement investigations).

[6] 8 U.S.C. § 1367.

[7] 8 U.S.C. § 1367.

19. Given all the issues discussed above, ICE anticipates that it will not be able to comply with the court order to produce materials from over 1,000 A files by June 27, 2011.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 3, 2011

Conrad Agagan
Deputy Assistant Director, Eastern Operations