1  TONY WEST
   Assistant Attorney General
2  Civil Division
   DAVID J. KLINE
3  Director, Office of Immigration Litigation
   District Court Section
4  VICTOR M. LAWRENCE
   Principal Assistant Director
5  THEODORE W. ATKINSON
   Senior Litigation Counsel
6  United States Department of Justice
   Civil Division
7  Office of Immigration Litigation
   District Court Section
8  P.O. Box 868, Ben Franklin Station
   Washington, DC 20044
9  Tel.: (202) 532-4135
   e-mail: theodore.atkinson@usdoj.gov
10 NICOLE R. PRAIRIE
   Trial Attorney
11
   Attorneys for Respondents
12

                  **UNITED STATES DISTRICT COURT**
13
                  **CENTRAL DISTRICT OF CALIFORNIA**
14
                        **WESTERN DIVISION**
15

16 | ALEJANDRO RODRIGUEZ, *et al.*, | Case No. CV 07-3239-TJH (RNBx) |

17          Petitioners,              NOTICE OF MOTION AND
                                      RESPONDENTS' MOTION FOR
18          vs.                       REVIEW OF AND OBJECTIONS
                                      TO MAGISTRATE JUDGE BLOCK'S
19 TIMOTHY S. ROBBINS, *in his*       ORDER OF APRIL 25, 2011;
   *capacity as U.S. Immigration and*
20 *Customs Enforcement, Los Angeles* MEMORANDUM IN SUPPORT;
   *District Field Office Director, et al.*,
21                                    DECLARATIONS
            Respondents.
22                                    Hon. Terry J. Hatter, Jr.

23                                    Hearing Date: June 6, 2011
                                      Hearing Time: 9:30 a.m.
24                                    Courtroom No.: 17

25                                    Discovery Cut-Off: None
                                      Pretrial conference: None
26                                    Trial date: None

27       Please take notice that Respondents object to and move this Court for review of

28 the Magistrate Judge's Order issued April 27, 2011, denying Respondents' Motion for

a Protective Order and granting Petitioners' Motion to Compel.  This motion for
review and objections is made under Fed. R. Civ. P. 72(a) and Local Rule 72-2.1.

On June 6, 2011, at 9:30 a.m., or at a time set by the Court, Respondents will
appear in Courtroom 17 of this Court, located at 312 N. Spring Street, Los Angeles,
CA 90012, and request that the Court grant this motion to review and sustain their
objections to the Magistrate Judge's April 27, 2011 Order.

This motion for review is based on this notice and motion; the Memorandum of
Points and Authorities accompanying this motion; the declarations of Conrad Agagan,
Terry Graves Sloan, and Theodore W. Atkinson; the prior pleadings on Respondents'
Motion for Judgment, as well as all other pleadings and matters of record in this case;
and such other evidence of which this Court may take judicial notice or consider.

This motion for review was discussed by counsel under Local Rule 7-3 on April
28, 2011, and at other later times.

May 9, 2011                              Respectfully submitted,


                                         TONY WEST
                                         Assistant Attorney General
                                         Civil Division
                                         DAVID J. KLINE
                                         Director, Office of Immigration Litigation
                                         District Court Section
                                         VICTOR M. LAWRENCE
                                         Principal Assistant Director
                                         */s/ Theodore W. Atkinson*
                                         THEODORE W. ATKINSON
                                         Senior Litigation Counsel
                                         United States Department of Justice
                                         Office of Immigration Litigation
                                         District Court Section
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, DC 20044
                                         Tel.: (202) 532-4135
                                         NICOLE R. PRAIRIE
                                         Trial Attorney

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . .…………………………………………1

BACKGROUND………………………………………………………………...4

STANDARD OF REVIEW…………………………………………………...7

DISCUSSION……………………………………………………………………7

1.    The highly-individual factual information Petitioners
      seek from the A-Files is wholly irrelevant to the issues of statutory
      and constitutional interpretation before this Court…………………………..7

2.    Even if there is some marginal relevance to the individual information
      from the approximately 1,000 A-Files at issue, the burden of gathering,
      reviewing, and producing the requested information from those files far
      outweighs its relevance………………………………………………...13

CONCLUSION………………………………………………………………16

# TABLE OF AUTHORITIES

## CASES

*Bhan v. NME Hospitals, Inc.*,
    929 F.2d 1404, 1414 (9th Cir. 1991)……………………………………………7

*Bovarie v. Schwarzenegger*,
    No. 08cv1661 LAB (NLS), 2011 WL 719206 (S.D. Cal. Feb. 22, 2011)……..13

*Casas-Castrillon v. Dep't of Homeland Security*,
    535 F.3d 942 (9th Cir. 2008)……………………………………………………2

*Diouf v. Mukasey*,
    No. 06-07452-TJH (C.D. Cal. Sept. 9, 2009)………………………………..8

*Diouf v. Mukasey*,
    542 F.3d 1222 (9th Cir. 2008)…………………………………………….9-10

*Diouf v. Napolitano*,
    No. 09-56774 (9th Cir. Mar. 7, 2011)………………………………………12

*Demore v. Kim*,
    538 U.S. 510 (2003)…………………………………………………….10-11

*F.D.I.C. v. Fidelity & Deposit Company of Maryland*,
    196 F.R.D. 375 (S.D. Cal. 2000)……………………………………………..7

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010)……………………………………………...4-5

*Sorosky v. Burroughs Corp.*,
    826 F.2d 794, 796 (9th Cir. 1987)……………………………………………7

*Tijani v. Willis*,
    430 F.3d 1241 (9th Cir. 2005)……………………………………………….10

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)………………………………………………………...10

*U.S. v. Aileman*,
    165 F.R.D. 571, 599 (N.D. Cal. 1996)………………………………………13

## ADMINISTRATIVE DECISIONS

*Matter of Guerra*,
        24 I. & N. Dec. 37 (BIA 2006)……………………………………………...13

*Matter of Joseph*,
        22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999)……………………………2

## STATUTES

8 U.S.C. §§ 1101, *et seq*………………………………………………………….4

8 U.S.C. § 1182(d)(5)(a)………………………………………………………...10

8 U.S.C. § 1225(b)…………………………………………………………….4, 10

8 U.S.C. § 1226(a)………………………………………………………………….4

8 U.S.C § 1226(c)………………………………………………………….4, 8, 10

8 U.S.C § 1231(a)…………………………………………………………...4, 11, 12

## REGULATIONS

8 C.F.R. § 241.4…………………………………………………………….8, 11

## COURT RULES

Fed. R. Civ. P. 26(c)…………………………………………………………...7

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

On April 25, 2011, Magistrate Judge Block ordered Respondents to produce materials concerning each class member and other individuals not in the class from more than 1,000 A-Files, on a rolling basis, and to complete production within 60 days. (Dkt # 169). This production would require Respondents to review each file and produce every document between these individuals and the Government – every warrant or charging document; every document between any individual and any immigration court, including briefs, motions, representation forms, changes of address forms, and dozens of other types of documents generated in removal proceedings; every filing with any immigration court; and every application or petition for any immigration benefit of any kind – asylum requests, applications for adjustment of status, applications on behalf of spouses or relative beneficiaries, and any other kind of benefit – whether it relates to any individual's detention or not.

In ordering this production, Judge Block concluded, without elaboration, that the information requested was relevant "for the reasons stated by the petitioners." *Id.* Respectfully, Judge Block is incorrect that this highly-individual information is relevant to this action. Even if it has some marginal relevance, its value is far outweighed by the burden on Respondents of having to collect, scan, digitize, review, redact, and produce the documents from over 1,000 A-Files, which contain approximately 200 to 500 pages each.

To be clear, Respondents previously agreed to produce a vast array of information about each of the approximately 1,000 individuals at issue, including, but not limited to: the dates of each individual's detention, the removability charges against them, their country of origin, their status as lawful permanent residents, the dates of each hearing or proceeding before immigration judges and the Board of Immigration Appeals, the nature and outcomes of their immigration proceedings, and whether an appeal was taken to a court of appeals. *See supra* at 10 n. 3 (listing the

1

1  categories of information Respondents have agreed to produce in this case).  To that

2  extent, Petitioners will have a wide range of individual information for each of the

3  over 1,000 individuals at issue.

4        The discovery dispute before this Court is not over the information Respondents

5  have agreed to provide, but over the contents of the A-File materials that contain

6  "biographical" and other individual factual information Petitioners have requested.

7  That information is simply irrelevant in light of the statutory and constitutional claims

8  at issue in this case:  whether due process requires the Government to provide

9  immigration detainees with a bond hearing before an immigration judge at six months.

10        Petitioners argue that the A-Files are relevant to determine whether the types of

11  procedural safeguards the law offers instead of bond hearings are constitutionally

12  adequate.  Put another way, Petitioners challenge a number of administrative or court-

13  ordered procedures – parole determinations, post-order custody reviews, hearings

14  under *Matter of Joseph,* 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999), and

15  hearings ordered under *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942,

16  951 (9th Cir.2008) – as fundamentally constitutionally inadequate alternatives to bond

17  hearings.  Petitioners further claim that the kind of "biographical" and other individual

18  information is necessary to determine how adequate these procedures are in

19  identifying and releasing aliens who are not flight risks or dangers to society, or who

20  have strong claims for relief from removal (and therefore should be released).

21        But the individual information Petitioners seek is irrelevant to what this case is

22  about.  Petitioners argue that due process requires a bond hearing after detention for a

23  "prolonged period," which Petitioners argue is six months.  But because Petitioners

24  legal claim is that due process requires a bond hearing at six months *regardless of the*

25  *individual circumstances in each case*, the individual facts of each case are wholly

26  irrelevant to this class action.

27        Moreover, the challenge here is *not* that post-order custody reviews, parole

28  determinations, etc., are facially constitutionally adequate, but inadequately applied.

2

Instead, Petitioners' legal claim is that no matter how conscientiously applied, there is no administrative procedure currently on the books that is constitutionally adequate, and that the *only* constitutionally adequate procedure to protect against the potentially erroneous deprivation of liberty is a bond hearing before an immigration judge.

In this context, Petitioners' claimed need to take literally thousands of pieces of individual factual information from the A-Files at issue and "aggregate" them into a statistically assessable form makes no sense. If, as Petitioners claim, due process requires a bond hearing for every alien detained for six months or longer, regardless of their individual circumstances, then the individual circumstances of each class member and other individuals is simply irrelevant.

The claimed need for the A-File materials is even more dubious in light of what it is that Petitioners say they hope to do with the information. Petitioners argue that with the A-File information, they will be able to determine on an "aggregate" basis (for they cannot present individual circumstances on an individual basis, or else risk class decertification) whether aliens are being "erroneously" detained when they are not flight risks or dangers to society, or where they have sufficiently strong cases against removal. But Petitioners cannot ask this Court to ultimately determine whether, on an "aggregate" basis, aliens detained for six months or longer, *as a class*, constitute flight risks or dangers or, *as a class*, have strong meritorious defenses to removal. Petitioners' claims of relevance fall apart completely when their claimed need is compared to the legal claims presented to this Court.

However, even if the A-File information has some relevance to the legal claims at issue in this case, the extraordinary burden of producing that information far outweighs its relevance. In light of Judge Block's order to produce the A-File materials in 60 days, Respondents and other government agencies have determined that more than 600 of the A-Files are not centrally located, many are in active use in aliens' cases in removal proceedings, and some are with other agencies for use related to immigration benefit claims. As detailed in the accompanying declarations, the

1    process of gathering these files will take weeks to complete.  Moreover, even if the A-

2    Files are collected, scanned and/or digitized for review, the Government reasonably

3    estimates that there will be anywhere between 200,000 to 500,000 pages that will have

4    to be reviewed to identify responsive documents that meet Petitioners' request, and to

5    review those documents for privileged or confidential information.  In light of the lack

6    of relevance of the materials sought by Petitioners, the burden of producing

7    documents from over 1,000 A-Files outweighs the value of those files in this

8    litigation.

9         The Court should conclude that production of the A-File materials is irrelevant

10   and/or unduly burdensome, and modify the April 25, 2011 discovery order

11   accordingly.

12                                  **Background**

13        Petitioners claim that under the Immigration and Nationality Act, 8 U.S.C. §§

14   1101, *et seq.*, and the Due Process Clause of the Fifth Amendment, any alien who was

15   or will be detained for six months or longer in the Central District of California is

16   entitled to a constitutionally-adequate individualized hearing before an immigration

17   judge to justify their continued detention under any of four detention provisions under

18   the INA, specifically 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a).

19        Class certification was denied by this Court, and on appeal the Ninth Circuit

20   Court of Appeals concluded that this case could go forward on a class-wide basis.  *See*

21   *Rodriguez v. Hayes*, 591 F.3d 1105, 1114 (9th Cir. 2010).  In deciding that this case

22   could go forward as a class action, the Ninth Circuit first surveyed the case law in the

23   area of constitutional and statutory challenges to indefinite or prolonged detention.  *Id.*

24   at 1113-16.  In each case the Ninth Circuit discussed, the court analyzed the statutory

25   and constitutional issues as a question of law, and without resort to the kind of

26   extensive factual discovery Petitioners seek in this case.  The Ninth Circuit explained

27   that in each decision of the Supreme Court and the Ninth Circuit on the issue of

28   prolonged detention, the courts had "undertaken interpretation of the immigration

4

detention statutes against the backdrop of the serious constitutional issues raised by indefinite or prolonged detention." *Id.* at 1114.  Accordingly, the Ninth Circuit concluded that the issues before it were legal issues, not factual ones: "[T]he determination of whether Petitioner is entitled to a bond hearing will rest largely on interpretation of the statute authorizing his detention.  *The particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question . . . ."  Id.* at 1124 (emphasis added).  Indeed, Petitioners argued on appeal that this action could proceed on a class wide basis because the case involved "a pure question of law that has nothing to do with the particular facts of any detainee's case."  *See* Petitioner's Opening Brief, No. 08-56156 [Dkt. # 6], at 44; *see also* Petitioner's Motion for Class Certification [Dkt. # 10], at 84 (stating the "core issue in this case . . . is a pure question of law *that has nothing to do with the particular facts of any detainee's case*.").

Once this case was remanded, Petitioners propounded six sets of discovery seeking a wide range of individual facts about each class member and other individuals.  Petitioners included a request for the A-Files of every alien detained for six months or longer in the Central District for a period going back five years.  Respondents objected to this discovery, and to the discovery of the A-Files, on several grounds.  After meeting and conferring in anticipation of a Joint Stipulation to Judge Block over cross motions to compel and for a protective order, Petitioners agreed to reduce the period for the A-File discovery to all aliens detained for six months or more in the Central District, for a period from April 21, 2010 to the present.  That universe consists of 1,036 A-Files.  In addition, Petitioners only slightly narrowed the scope of their A-File request to include the following subset of documents to be found in the A-Files:

> any document sent, given or otherwise delivered by a Petitioner to the
> federal courts, [the Department of Justice] or [the Department of
> Homeland   Security]   (including   [Immigration   and   Customs

5

Enforcement ("ICE"), Customs and Border Protection ("CBP"), and U.S. Citizenship and Immigration Services ("USCIS")]) and documents sent, given or otherwise delivered by those entities to a Petitioner. In addition, we request [post-order custody review] worksheets and the transcripts, if produced, of any statements given by a detainee to DOJ or DHS officials, such as transcripts of removal hearings or CBP interviews.

*See* Joint Stipulation, Dkt # 165, at 13.

On April 15, 2011, the parties filed their Joint Stipulation. On April 25, 2011, Judge Block ordered the production of the A-File materials requested by Petitioners on a rolling basis, with production to be completed within 60 days. *See* Dkt # 169.[1] Judge Block wrote: "The Government's relevance and undue burden objections to the production of this discovery are overruled for the reasons stated by petitioners." *Id.* at 2. Judge Block also wrote that:

in ruling on the remaining discovery requests in dispute, the Court has not considered or credited any arguments by the Government that were either explicitly or implicitly rejected by the District Judge when he . . . denied the Government's motion for judgment on the pleadings … The Court also has not considered or credited any other arguments by the Government that go solely to the merits of petitioners' claims. The issue before the Court is not whether petitioners are unlikely to prevail on their claims with respect to any or all of the sub-classes, but rather whether the discovery sought falls within the scope of permissible discovery…

*Id.* at 1.

On May 5, 2011, Respondents filed an *ex parte* application with Judge Block, requesting a stay of the A-File discovery pending the consideration of this motion for

---

[1] The April 25, 2011 Order also resolved other discovery disputes not at issue here.

review or, in the alternative, to enlarge the production period from 60 to 120 days to permit this Court to decide the motion for review while discovery proceeded.  That *ex parte* application remains pending before Judge Block as of the filing date of this motion.

## Standard of Review

A magistrate judge's order can be reversed by the district court if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *See Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991); *F.D.I.C. v. Fidelity & Deposit Company of Maryland*, 196 F.R.D. 375, 378 (S.D. Cal. 2000) ("The 'clearly erroneous' standard applies to factual findings and discretionary decisions made in connection with non-dispositive pretrial discovery matters").

Where the information sought in discovery is irrelevant, or where the burden of production outweighs the value of the information to be obtained from discovery, that discovery should be disallowed.  Fed. R. Civ. P. 26(c); S*ee also, e.g.*, *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 796 (9th Cir. 1987) (where burden outweighs benefit of discovery, it should be disallowed).  Judge Block's April 25, 2011 order that Respondents produce materials from the more than 1,000 A-Files is clearly erroneous, because it orders the production of information that is irrelevant or, even if relevant, outweighed by the extraordinary burden of production.

## Discussion

**1.     The highly-individual factual information Petitioners seek from the A-Files is wholly irrelevant to the issues of statutory and constitutional interpretation before this Court.**

Judge Block erred in concluding that the individual factual information requested by Petitioners is relevant to the statutory and constitutional issues before this Court.  Indeed, when this Court denied Respondents' motion for judgment on the pleadings in this case, it recognized that the issues in this case are ones of statutory and constitutional interpretation that do not depend on the individual facts of any

detainee's case, with the possible exception of the length of detention.  *See* Dkt # 155 (discussing, among other things, the requirements of due process in the context of the length of detention, and noting that the mandatory detention provisions of section 1226(c) "can be interpreted to require a bond hearing *after a certain amount of time*, not only to comply with precedent, but to avoid constitutional concerns as well.").  In short, this Court agreed with Petitioners that this case has nothing to do with the individual facts of any individual detainee's case – whether those facts are individually presented, or "aggregated" as Petitioners claim to be able to do.

This is not the first time that this Court has recognized that the kinds of statutory and constitutional issues surrounding the issues of "prolonged" detention do not turn of the particular facts of any case.  When this Court decided the issue of whether the post-order custody review ("POCR") process was a constitutionally adequate alternative to a bond hearing in *Diouf v. Mukasey*, No. 06-07452-TJH (C.D. Cal. Sept. 9, 2009), it did so on the basis of a *facial* challenge to the constitutionality of the post-order custody review process under 8 C.F.R. § 241.4.  Of course, the petitioner in *Diouf* also argued that the POCR process was not properly followed,[2] but this Court's decision as to the facial constitutionality of the POCR regulations did not, as Petitioners will claim here, turn on the individual facts of Diouf's case.  They turned on an examination of the POCR process as set forth in the regulations, as compared to the length of Diouf's detention and in consideration of Supreme Court and Ninth Circuit precedent.  This Court did not consider Diouf's flight risk or his potential danger in determining that the POCR regulations were constitutional in *Diouf*, nor did this Court look to the strength of his case in removal proceedings.  Respondents ask that this Court again recognize that the issues before it will not turn

---

[2] If Petitioners are now attempting to claim in this case that the POCR process was not properly followed for all individuals subject to this discovery order, then again that would entail an examination of individual facts and completely contradict Petitioners representations to this Court and the Ninth Circuit that individual facts are irrelevant to their claims.

on the individual factual information Petitioners seek from the more than 1,000 A-Files at issue.

Petitioners were correct when they told this Court and the Ninth Circuit that the facts of any detainee's individual circumstances are irrelevant to the "pure question of law" before this Court. Of course, Petitioners now want to avoid their representation by explaining that while they do not want to introduce any individual facts of any particular detainee, they want to take the individual facts of *many* detainees and group them – or, as they put it, "aggregate" them – for presentation to this Court. But besides the obvious fact that grouping individual facts invites decertification, what do Petitioners hope to accomplish by grouping or "aggregating" these individual facts? In the Joint Stipulation to Judge Block, Petitioners claim that

> by aggregating information in class members' A files—such as records of the custody review procedures, class members' biographical information (including family ties, work history and criminal history), and court documents revealing the *strength of Petitioners' claims against removal* ("merits claims") – Petitioner[s] can draw conclusions as to whether the Respondents' existing procedures *accurately assess danger and flight risk*. These conclusions are central to Petitioner's claim that the existing procedures are constitutionally inadequate. This information will also allow Petitioners to document the nature of DHS's deprivation of [Petitioners'] liberty.

Joint Stipulation, Dkt # 155, at 8 (emphasis added).

There are several glaring problem with Petitioners' theory. First, Petitioners can cite no case in which the kind of "aggregate" data Petitioners seek has ever been relied on or examined by a court to determine the constitutional and statutory issues presented in this case. Petitioners claim that in *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court examined "aggregate" data to reach its conclusion that mandatory

detention was constitutional, but the "aggregate" data the Court looked to was the average length of removal proceedings.  *Id.* at 529.  Petitioners are unable to identify any other "aggregate data" relied on by the Court in *Demore* – or in any other case from the Supreme Court or the Ninth Circuit in cases about immigration detention.

Not only is the average length of removal proceedings the kind of data the Government has already agreed to provide to Petitioners in this case,[3] but that kind of information is wholly divorced from the individual factual information Petitioners seek to "aggregate" from all of the class members and other individuals whose A-Files are at issue.  Indeed, Petitioners cannot point to a single case where a court's determination of the constitutional adequacy of a particular immigration detention or custody determination procedure turns on a finding that the alien is not a flight risk or danger, or that the alien has a strong case on the merits of his removal proceedings.  Instead, courts examining the constitutionality of "prolonged" detention have framed

_____

[3] In negotiating an end to their discovery dispute, Respondents have agreed to provide, from their respective electronic databases, the following information about each of the approximately 1,000 individuals at issue:  (1) The name and A-number of each individual; (2) each individual's country of origin; (3) whether each individual is a lawful permanent resident; (4) the length of each individual's detention, measured by the date of initial custody and the date of release; (5) if released, reasons for the release(*i.e.*, ordered removed, cancellation of removal granted, etc.); (6) whether each individual is an aggravated felon (and therefore subject to detention under 8 U.S.C. § 1226(c)); (7) each individual's "threat level" categorization by ICE; (8) whether each individual was provided with a bond determination and, if so, in what amount; (9) whether each individual who was offered bond posted bond; (10) the initial removability charge against each individual, and a description of the charge; (11) the dates of each hearing or proceeding before an immigration judge for each individual, and the outcomes of those proceedings; (12) whether each individual filed an appeal from the immigration judge's order to the Board of Immigration Appeals; (13) the disposition of each immigration proceeding for each individual before an immigration judge or the Board of Immigration Appeals; (14) the names of each individual's attorney, if any, before the immigration judge and the Board, and the dates of their appearance; and (15) whether each individual filed an appeal with a circuit court of appeals (including, Respondents expect, the docket number of any such appeal and the approximate date of the appeal).

the constitutional and statutory interpretation issues without reference to the petitioner's flight risk, danger, or the strength of the merits of their case. *See Zadvydas v. Davis*, 533 U.S. 678 (2001); *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008); *Diouf v. Mukasey*, 542 F.3d 1222 (9th Cir. 2008); *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005). For Petitioners to claim that this kind of "biographical" and other information is "central" to their case not only goes against their prior representations in this case, but are disingenuous, as well.

Second, a review of Petitioners' subclass claims shows that the legal questions in this case will not turn on individual facts Petitioners claim paint a portrait about each class member's danger, flight risk, or strength of defenses against removal. Briefly stated:

- Even if this Court concludes that arriving aliens detained under section 1225(b) are entitled to some due process, evidence of flight risk, danger, or strength of their defenses against removal are not relevant to the issue of whether those aliens are *entitled* to parole. Parole is discretionarily available "on a case-by-case basis for urgent humanitarian reasons or significant public benefit …" 8 U.S.C. § 1182(d)(5)(a). Therefore, the materials Petitioners seek do not even go to the issue of whether arriving aliens in the class are even entitled to parole on urgent humanitarian or public benefit bases.

- Petitioners' claimed need for the individual factual information about criminal aliens detained under section 1226(c) is irrelevant to this action, because there is no alternative to detention for such aliens under the statute. Thus, regardless of the flight risk, danger, or the strength of their defenses to removal, criminal aliens under section 1226(c) must be detained, a fact recognized by the Supreme Court in *Demore*. The "biographical" and other information petitioners seek is irrelevant to the constitutionality of the statutory detention mandate of section 1226(c).

- Aliens detained under section 1231(a)(6) are entitled to post-order custody reviews under 8 C.F.R. § 241.4.  But as noted above, this Court in *Diouf* determined the constitutional adequacy of those POCR regulations *without* reference to Diouf's flight risk, danger, or the strength of his defenses in his removal proceedings.[4]

- With respect to the adequacy of the bond hearings aliens receive, Petitioners challenge issues of notice, transcription, burden of proof, and representation by counsel at government expense, among other things.  But as Petitioners well know, they have propounded requests for admission that seek to determine whether, as a matter of policy and procedure, aliens are provided notice; whether bond hearings are transcribed; what the burden of proof is in immigration bond hearings; and whether the Government provides counsel at government expense to aliens at bond hearings.  Thus, the individual A-File information of more than 1,000 detainees and former detainees is irrelevant to those issues before this Court.

At bottom, Petitioners' claimed need for the "biographical" and other information from the A-Files of the more than 1,000 individuals at issue does not match the pure legal claims presented to this Court in Petitioners' complaint.  Where the requested discovery is not necessary in light of the legal claims presented and a

---

[4] As this Court is also aware, a panel of the Ninth Circuit recently issued a decision in *Diouf v. Napolitano*, No. 09-56774 (9th Cir. Mar. 7, 2011).  The mandate has not issued in that case, and the panel's decision is subject to a possible petition for *en banc* rehearing.  However, the panel in *Diouf* concluded that *all* aliens detained for six months or longer under section 1231(a)(6) are entitled to a bond hearing before an immigration judge.  In reaching that conclusion, the panel did not consider Diouf's flight risk, danger to the community, or the strength of his claims in his removal proceedings.  Moreover, in deciding that all aliens are generally entitled to a bond hearing after six months, the Ninth Circuit did not rely on the kind of aggregate data that Petitioners claim is central to their cause here.  This decision, although subject to further review, undercuts completely Petitioners' claim that "aggregate" evidence of flight risk, danger, or strength of defenses to removal are central to this case.

12

plaintiff's theory of the case, that discovery should be disallowed as irrelevant.  *See, e.g., Bovarie v. Schwarzenegger*, No. 08cv1661 LAB (NLS), 2011 WL 719206, at *4 (S.D. Cal. Feb. 22, 2011) (discovery disallowed because it was not relevant based on plaintiff's legal claims or plaintiff's theory of the case).

The discovery of the "biographical" and other information requested – even if it could be "aggregated" as Petitioners suggest[5] – is irrelevant to the issues of law presented by the statutory and constitutional questions before this Court.  The Court should modify the April 25, 2011 Order with respect to the order of production concerning the A-File materials in light of the classwide claims in this action.

**2.    Even if there is some marginal relevance to the individual information from the approximately 1,000 A-Files at issue, the burden of gathering, reviewing, and producing the requested information from those files far outweighs its relevance.**

As detailed in the accompanying declarations from officials at ICE and USCIS, there are significant logistical barriers making compliance with the April 25, 2011

---

[5] A determination that an alien is a flight risk or a danger is essentially a subjective determination, and hardly an obvious candidate for analysis on an "aggregate" basis among many members of a class.  As Petitioners have already acknowledged (see Joint Stipulation, Dkt # 165, at 15 n. 4) under *Matter of Guerra*, 24 I. & N. Dec. 37 (2006), an immigration judge considers at least nine different factors, including such non-mathematically precise things as the presence of an alien's family and his employment history, and the recency and "seriousness" of a criminal offense – and other factors.  Thus, flight risk and danger cannot be reduced to mathematical precision, in an individual case or on an aggregate basis.  As one district judge wrote,

the release/detention decision . . . is hardly an exact science. It is appreciably more inexact than trying to determine what events occurred in the past (as we do in trials). For here we are trying to make judgments about what specific individual persons, whom we certainly cannot claim to fully understand, will do in the future – how they will respond to circumstances and feelings that we have only quite limited powers to foresee.

*U.S. v. Aileman*, 165 F.R.D. 571, 599 (N.D. Cal. 1996) (Shifman, J.) (discussing Bail Act).

discovery order extraordinarily burdensome.  *See* Declarations of Conrad Aganan and Terry Graves Sloan.

There are approximately 1,036 A-Files at issue.  Agagan Decl. ¶ 3. Approximately 400 of those A-Files are not actively being used and have been located as being housed in the National Records Center ("NRC") of USCIS.  *Id.* ¶ 6. Approximately 600 A-Files are located in ICE's Los Angeles area of responsibility, and are not centrally located.  *Id.* ¶ 7.  Each set of A-Files presents unique production issues.

The approximately 400 files at the NRC are already in the process of being digitized for review, and may be digitized in early May, but will then have to be converted from NRC's system to a system ICE can use to review the files.  *Id.* ¶ 7. The remaining 600 A-Files are at various detention facilities and other locations in the Los Angeles area, and ICE has begun the process of requesting and gathering those files.  *Id.*  Many files are actively being used in proceedings and for other purposes, so ICE will need to prioritize, coordinate and stagger shipments in order to ensure that the files are available for any upcoming immigration proceedings.  *Id.* ¶ 11.  Several A-Files are being processed by USCIS for adjudication of a visa petition or other immigration benefit applications, and pulling those files may delay the benefits sought by those aliens.  *Id.* ¶ 8.  The process of gathering these 600 A-files will take some time, but once they are collected and prioritized, they may be sent to NRC for production.  (ICE lacks the capacity to scan 600 A-Files in the Los Angeles office. Agagan Decl. ¶ 10).  However, NRC estimates it would take a minimum of 30 days to produce CDs with the contents of the A-file ready for review.  Graves Sloan Decl. ¶ 5. The staff time to produce CDs in response to this request would be approximately 1.5 hours per file, and a preliminary estimate to produce CDs with a scanned image of the files would cost approximately $28,000 and would require USCIS staff to be diverted from fulfilling their daily responsibilities.  Id.

14

Once the A-Files are scanned and/or digitized, review of those files presents additional significant burdens.  Agagan Decl. ¶¶ 11-15.  ICE estimates – based on a random sample – that A-Files for aliens in detention range between 400 to 500 pages. Agagan Decl. ¶ 10.  Thus, Respondents will be required to review approximately 400,000 to 500,000 pages within the 60-day period.  *Id.*  Even if those A-Files were digitized and ready for review today – and they are not – Respondents would have to review approximately 26.5 files per day, *id*. ¶ 18, or between approximately 10,000 and 12,500 pages per day between May 3 and the end of June to identify responsive documents and review those documents for privilege or restrictions on disclosure.  *Id.* ¶ 15-17.   The review for privilege may have to be coordinated with separate agencies – USCIS, ICE, EOIR, the Federal Bureau of Investigations, and possibly others –to determine if a particular document is responsive or if a privilege or restriction applies. *Id.* ¶ 15.  This simply adds another layer of complexity to a significant production of A-File documents – one that ICE has not handled before.  *Id.*

Here the burden of gathering, reviewing, and producing responsive, non-privileged information from more than 1,000 A-Files outweighs the marginal benefit – if any – gained from the discovery of the information requested.  The benefit/burden analysis particularly weighs in favor of the Government given the fact that the Government has agreed to produce more than a dozen categories of information regarding the detention and removal proceedings for each of the more than 1,000 individuals at issue – in addition to the other areas of discovery about the policies and procedures concerning detention, parole, POCRs, *Joseph* hearings, and *Casas* hearings that the Government has been ordered to produce in this case.

## Conclusion

Judge Block's April 25, 2011 order erroneously ordered Respondents to produce irrelevant information from more than 1,000 A-Files, a production that is overly burdensome.  Respondents respectfully request that this Court modify the April

15

25, 2011 discovery order in part, and grant Respondents' motion for a protective order with regard to those A-File materials.

Dated:  May 9, 2011                    Respectfully submitted,


                                       TONY WEST
                                       Assistant Attorney General
                                       Civil Division
                                       DAVID J. KLINE
                                       Director, Office of Immigration Litigation
                                       District Court Section
                                       VICTOR M. LAWRENCE
                                       Principal Assistant Director
                                       */s/ Theodore W. Atkinson*
                                       THEODORE W. ATKINSON
                                       Senior Litigation Counsel
                                       United States Department of Justice
                                       Office of Immigration Litigation
                                       District Court Section
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, DC 20044
                                       Tel.: (202) 532-4135
                                       NICOLE R. PRAIRIE
                                       Trial Attorney

1

## CERTIFICATE OF SERVICE

2

3          I certify that on May 9, 2011, I served a copy of the foregoing through the
Court's CM/ECF system on the following counsel of record:

4

5    Ahilan T. Arulanantham                Judy Rabinovitz
     ACLU Foundation of Southern           ACLU Immigrants' Rights Project
6    California                            125 Broad Street 18th Floor
     1616 Beverly Boulevard                New York, NY 10004
7    Los Angeles, CA 90026                 212-549-2618
     213-977-5211                          Fax: 212-549-2654
8    Fax: 213-977-5297                     Email: jrabinovitz@aclu.org
     Email: aarulanantham@aclu-sc.org
9                                          Steven A. Ellis
     Jayashri Srikantiah                   Sidley Austin LLP
10   Stanford Law School                   555 W 5th St, Ste 4000
     Immigrants' Rights Clinic,            Los Angeles, CA 90013-1010
11   Crown Quadrangle                      213-896-6000
     559 Nathan Abbott Way                 Fax: 213-896-6600
12   Stanford, CA 94305-8610               Email: sellis@sidley.com
     650-724-2442
13   Fax: 650-723-4426                     Brian Kelley Washington
     Email: jsrikantiah@law.stanford.edu  Sidley Austin
14                                         555 West Fifth Street Suite 400
     William Tran                          Los Angeles, CA 90013-1010
15   Sidley Austin                         213-896-6000
     555 West Fifth Street Suite 4000      Fax: 213-896-6600
16   Los Angeles, CA 90013-1010            Email: bwashi01@sidley.com
     213-816-6000
17   Fax: 213-896-6600
     Email: wtran@sidley.com

18

19

20                                         /s/  Theodore W. Atkinson

21                                         Theodore W. Atkinson

22                                         Senior Litigation Counsel

23                                         United States Department of Justice

24

25

26

27

28