PETER J. ELIASBERG (SBN 189110)
Email: peliasberg@aclu-sc.org
AHILAN T. ARULANANTHAM (SBN 237841)
Email: aarulanantham@aclu-sc.org
MICHAEL KAUFMAN (SBN 254575)
Email: mkaufman@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Tel: (213) 977-5211
Fax: (213) 977-5297

**Attorneys for Petitioners**
(Additional counsel listed on following page)

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, et al., <br><br> Petitioners, <br><br> v. <br><br> TIMOTHY ROBBINS, et al., <br><br> Respondents. | Case No. CV 07- 3239-TJH (RNBx) <br><br> **OPPOSITION TO RESPONDENTS'** ***EX PARTE*** **APPLICATION FOR AN ORDER PARTIALLY STAYING APRIL 25, 2011 DISCOVERY ORDER PENDING CONSIDERATION OF MOTION FOR REVIEW, OR, IN THE ALTERNATIVE, FOR MODIFICATION OF THE DISCOVERY ORDER** <br><br> Honorable Robert N. Block |

Additional Counsel:

JUDY RABINOVITZ
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

JAYASHRI SRIKANTIAH (SBN 189566)
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS (SBN 217603)*
CODY JACOBS (SBN 272276)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Notice of Appearance forthcoming

# **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

I. RESPONDENTS FAIL TO ESTABLISH A BASIS FOR A STAY ................. 2

II. RESPONDENTS ALSO FAIL TO ESTABLISH A
    BASIS FOR MODIFYING THIS COURT'S ORDER .......................................5

   A. Respondents Improperly Seek to Introduce New Evidence
      that is Untimely and Incorrect ........................................................................5

   B. Respondents Continue to Overstate the Burden of Compliance ....................8

   C. Respondents Alleged Burden is Largely of Their Own Invention .............. 10

   D. That Respondents Will Have to Partially Comply Prior to
      the District Judge's Review Does Not Justify a 120 Day
      Production Schedule ................................................................................... 12

III. RESPONDENTS HAVE NOT DEMONSTRATED A
     NEED FOR EX PARTE RELIEF ................................................................. 14

CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Brodheim v. Veal*,
  2010 WL 4878816 (E.D. Cal. Nov. 17, 2010) ....................................................... 4

*Carter v. U.S. Dept. of Commerce*,
  307 F.3d 1084 (9th Cir. 2002) ............................................................................. 7

*Frederick S. Wyle P.C. v. Texaco, Inc.*,
  764 F.2d 604 (9th Cir. 1985) ............................................................................... 6

*Green v. Baca*,
  219 F.R.D. 485 (C.D. Cal. 2003) ..................................................................... 3, 4

*GTSI Corp. v. Wildflower Int'l, Inc.*,
  2009 WL 3245396 (E.D. Va. Sep. 29, 2009) ...................................................... 3

*Hernandez v. Balakian*,
  2007 WL 2580556 (E.D. Cal. Sep. 5, 2007) ..................................................... 12

*In re Omnitrition Int'l, Inc.*,
  1993 WL 271466 (N.D. Cal. Jun. 2, 1993) ....................................................... 13

*In re Toys R Us-Delaware*,
  2010 WL 4942645 (C.D. Cal. July 29, 2010) .................................................. 3, 5

*Martinelli v. Petland, Inc.*,
  2010 WL 4627893 (D.Kan. November 3, 2010) ................................................ 2

*MedImmune, Inc. v. Genentech, Inc.*,
  2008 WL 616250 (C.D. Cal. Mar. 6, 2008) ........................................................ 3

*Mission Power Eng'g Co v. Cont'l Cas. Co.*,
  883 F. Supp. 488 (C.D. Cal. 1995) ................................................................... 14

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  319 F. Supp. 2d 1094 (C.D. Cal. 2003) .............................................................. 2

*Nken v. Holder*,
  129 S.Ct. 1749 (2009) ......................................................................................... 2

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ............................................................................................ 7

*Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*,
  421 U.S. 168 (1975) ............................................................................................ 7

*Skellerup Indus. Ltd. v. City of Los Angeles*,
  163 F.R.D. 598 (C.D. Cal. 1995) ........................................................................ 3

*Tessera, Inc. v. Micron Tech., Inc.*,
  2006 WL 733498 (N.D. Cal. Mar. 22, 2006) .................................................... 12

**STATUTES**

5 USC § 552(b)(3) ................................................................................................. 8

5 USC § 552(b)(5) ................................................................................................. 7

8 USC § 1160(b)(5) ............................................................................................... 8

8 USC § 1160(b)(6) ............................................................................................... 8

8 USC § 1367 ........................................................................................................ 8

28 USC § 636(b)(1)(A) ......................................................................................... 3

**REGULATIONS**

8 CFR §§ 208.6, 1208.6 ........................................................................................ 8

8 CFR § 244.16 ..................................................................................................... 8

**OTHER AUTHORITIES**

Fed. R. Civ. Pro 12(c) ................................................................................. 2, 3, 13

Fed. R. Civ. Pro. 26(b)(1) ..................................................................................... 7

Fed. R. Civ. Pro. 34(b)(2)(A) ............................................................................... 6

Local Rule 72-2.1 ................................................................................................ 14

Local Rule 72-2.2 .................................................................................................. 2

Roberts, Michelle, AP, Impact: Immigrants face detention, few rights,
   Wash. Post.  Mar. 13, 2009,
   http://www.deseretnews.com/article/705291116/Immigrants-face-long-detention-few-rights.html ........................................................................... 4

GAO, "Freedom of Information Act" (March 2009),
   http://www.gao.gov/new.items/d09260.pdf ................................................. 6

DHS, "Chief FOIA Officer Report" (March 2011),
   http://www.dhs.gov/xlibrary/assets/ foia/priv-chief-foia-officer-report-cy11.pdf ..................................................................................................... 10

# INTRODUCTION

Respondents again cry wolf regarding their inability to produce A files, but the concerns they raise in support of a stay (or, alternatively, for twice as much time to produce those files as that granted by the Court's order) were already considered and rejected by this Court. The new evidence they provide on the issue is both untimely and dramatically inconsistent with their earlier claims with respect to the burden of production. Indeed, it is astonishing that Respondents claim to be "still early in the process of determining the logistical demands" in producing the A files, App. at 4 n. 3, months after the parties have filed two separate lengthy joint stipulations in which the Respondents repeatedly and forcefully claimed that production would be unduly burdensome – claims which apparently were based, by the Respondents' own admission, on guesses and conjectures about the "logistical demands" involved.

Perhaps most important, Respondents are flatly incorrect about their inability to use the existing FOIA review process to accomplish the production that Petitioner seeks. USCIS, which processes thousands of such requests each month, is a component agency of Respondent DHS that controls all of the A files, and therefore is a defendant in this case. Contrary to Respondents' claims, USCIS already processes FOIA requests for information subject to the privileges at issue here because FOIA incorporates the privilege law of civil litigation.

Respondents' concerns also ring hollow because they could already have been solved through the use of a protective order governing the A file production. However, rather than offering a response to Petitioner's proposal for such an order, Respondents have chosen to seek this stay and wait in the hopes that the District Judge will reverse this Court's order. The effect of this refusal has been to create the very exigency of which they now complain.

For all the reasons stated below, the *Ex Parte* Application should be denied.[1]

## I. RESPONDENTS FAIL TO ESTABLISH A BASIS FOR A STAY.

Respondents have not met the legal standard for a stay pending their motion for review. Their motion revisits burden arguments rejected by this Court, and disregards other requirements necessary for an *ex parte* stay of a discovery order that is fully consistent with the District Court's Rule 12(c) ruling.

A stay pending a motion for review is an "intrusion into the ordinary processes of administration and judicial review," and Respondents bear the burden of showing that one is justified. *See Nken v. Holder*, 129 S.Ct. 1749, 1760-61 (2009) (describing the rule for stay pending judicial review of administrative action). Respondents must (1) make a strong showing that they are likely to succeed on the merits of a motion for reconsideration; (2) show that they will be irreparably injured absent a stay; (3) demonstrate that the issuance of the stay will not substantially injure the other parties interested in the proceeding; and (4) establish that a stay is in the public interest. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1094, 1107-8 (C.D. Cal. 2003).[2] Respondents' application fails on each of these factors.

---

[1] On May 4, 2011, the Court granted the Respondents' *ex parte* application in part and continued the hearing date scheduled for May 10, 2011. Accordingly, this opposition only addresses the Respondents' request for a stay or, in the alternative, an enlargement of the production schedule.

[2] Ordinary stay standards logically govern motions to stay pending review of a Magistrate's order, which by default remain in effect despite the filing of a motion for review. Local Rule 72-2.2 ("Regardless of whether a motion for review has been filed, the Magistrate Judge's ruling remains in effect unless the ruling is stayed or modified by the Magistrate Judge or the District Judge"); *Martinelli v. Petland, Inc.*, 2010 WL 4627893, at *1 (D.Kan. November 3, 2010) (standards applicable to stays pending appeal are applicable to stays pending District Judge review of a Magistrate's orders).

2

1    First, Respondents make no showing of *any* likelihood of success on the
2 merits, let alone a strong one.  Respondents face a heavy burden on a motion for
3 review to establish that this Court's ruling is "clearly erroneous or contrary to
4 law."  28 USC § 636(b)(1)(A); *Green v. Baca*, 219 F.R.D. 485, 488-89 (C.D. Cal.
5 2003) (affirming magistrate order compelling production in prolonged pre-trial
6 detention case); *see also GTSI Corp. v. Wildflower Int'l, Inc.*, 2009 WL 3245396,
7 at *1-2 (E.D. Va. Sep. 29, 2009) ("likelihood of success" requires evaluating the
8 "standard of review" employed by the district court, not just underlying merits).
9 Respondents also have "a heavy burden of making a 'strong showing' why
10 discovery should be denied."  *Skellerup Indus. Ltd. v. City of Los Angeles*, 163
11 F.R.D. 598, 600 (C.D. Cal. 1995).  Those twin burdens are heightened here given
12 that Respondents bear the burden to justify limiting the broad scope of discovery in
13 class actions, the District Court's Rule 12(c) ruling rejecting Respondents' merits
14 arguments, and inconsistencies in Respondents' declarations regarding the burden
15 of producing A files. [3]

16    Second, Respondents have not demonstrated irreparable injury.  Costs
17 associated with a document production do not ordinarily constitute irreparable
18 injury.  *See In re Toys R Us-Delaware*, 2010 WL 4942645, at *6 (C.D. Cal. July
19 29, 2010) ("Merely because compliance with a 'Request for Production' would be
20 costly or time-consuming is not ordinarily sufficient reason to grant a protective
21 order where the requested material is relevant and necessary to the discovery of
22 evidence."); *MedImmune, Inc. v. Genentech, Inc.*, 2008 WL 616250, at *1-2 (C.D.
23 Cal. Mar. 6, 2008) (finding potential cost associated with conducting an entire trial

---

[3] Petitioner acknowledges the Court's reluctance to opine on how the District Judge may or may not rule on the underlying motion when considering stay applications. *See* Dkt. No. 126. at 2.  However, the Respondents' application is flawed because they fail to make *any* showing that they will prevail on the merits.

3

twice insufficient to demonstrate irreparable injury).[4] Furthermore, as explained below, many of these purported costs are largely illusory, insofar as they are due to self-imposed inefficiencies which stem from various misconceptions, including most importantly their misconception concerning whether the processing of A files can occur through the existing FOIA system.

Finally, Respondents disregard that continued discovery delays substantially harm the putative class and the public interest. Prolonged detention raises "important constitutional issues." *Green*, 219 F.R.D. at 492-493. While Respondents drag their feet to relitigate for a third time merits arguments rejected months ago, class members languish in prolonged detention in violation of their statutory and constitutional rights. Unlike Respondents' burden arguments, these deprivations of liberty interests cause irreparable injuries that can never be fully compensated. *See, e.g.*, *Brodheim v. Veal*, 2010 WL 4878816, at *1 (E.D. Cal. Nov. 17, 2010) (denying stay pending appeal because the "potential harm to the respondent" in conducting unnecessary parole revocation hearing "is heavily outweighed by the irreparable injury of continued unlawful incarceration of petitioner"). Respondents' burden arguments also pale in comparison to the burden borne by the public to pay for these unconstitutionally prolonged detentions. The average cost to detain one class member is roughly $141 *per day*. *See* Roberts, Michelle, AP, *Impact: Immigrants face detention, few rights*, Wash. Post. Mar. 13, 2009, *available at* http://www.deseretnews.com/article/ 705291116/Immigrants-face-long-detention-few-rights.html. Assuming that even

---

[4] Respondents take out of context counsel for Petitioner's statement that Respondents could "hire more people" to comply with the Court's order. Counsel's statement was made while explaining that the mere fact that it is costly for the government to comply with the Court's order does not justify a stay. *See* Exh. 38 at ¶ 13. Counsel made a number of other suggestions for how the Respondents could comply with the Court's order that are conspicuously absent from Respondents' account, discussed *infra*.

1  a small percentage of class members would be released on bond if they obtain the
2  relief they seek (a constitutionally adequate bond hearing), the taxpayer dollars
3  wasted to unnecessarily detain class members far exceeds Respondents'
4  guestimates about costs associated with producing A files.
5      For these reasons alone, a stay is inappropriate, and Respondents' motion
6  should be denied.

**II.   RESPONDENTS ALSO FAIL TO ESTABLISH A BASIS FOR MODIFYING THIS COURT'S ORDER.**

9      Respondents protest being required to produce A files in 60 days in response
10 to discovery served on July 22, 2010 – nearly ten months ago.  The parties already
11 briefed the factual question of burden extensively, and Respondents offer no valid
12 basis for revisiting the burden issue a second time.  Nothing about this Court's
13 decision is "clearly erroneous."  If anything, the latest round of declarations
14 submitted by Respondents raise troubling questions regarding prior representations
15 regarding the burden, and confirm that, in fact, the current deadline is appropriate
16 and reasonable.

**A.   Respondents Improperly Seek to Introduce New Evidence that is Untimely and Incorrect.**

19     Respondents re-raise burden arguments with new declarations from new
20 declarants.  These declarations, which rest on several false assumptions, should be
21 rejected.
22     First, Respondents should have stated the factual grounds for their burden
23 objection in response to Petitioner's discovery, rather than offer boilerplate
24 objections.  *See* Dkt. No. 103 at 57, 63, 76; *In re Toys R Us-Delaware*, 2010 WL
25 4942645, *5 (C.D. Cal. July 29, 2010) (holding that a party is required to
26 specifically explain and prove its objections based on burden "at the time he asserts
27 his objection").  Respondents now all but admit their showing in response to the
28 motion to compel was inadequate, insofar as they offer entirely new evidence.

5

Respondents, however, do not and cannot claim the information in their new declarations was both unavailable and not discovered despite reasonable diligence. *See, e.g.*, *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (setting forth two-part standard for offering new evidence in connection with reconsideration). Respondents also cannot seriously contend that they could not anticipate a 60-day deadline, as that is twice the amount of time provided for under the Federal Rules. *See* Fed. R. Civ. Pro. 34(b)(2)(A). Courts regularly order the production of information on 30 days or less. *See infra*. section II.D.

Second, Respondents continue to argue burden based on the unsubstantiated assertion that they cannot use the existing FOIA production process, which regularly produces A files on a scale and at a pace far greater than what this Court has ordered. As an initial matter, Respondents argue the USCIS FOIA process is irrelevant because USCIS is not a defendant. This is incorrect. USCIS is a division of Respondent DHS. The Secretary of DHS is also a Respondent and has ultimate authority over both USCIS and ICE.

Respondents next argue that ICE alone is competent to review A files. This too is directly contradicted by publicly-available information. Since 2006, USCIS has reviewed requests for A files received by ICE, precisely to avoid the "unnecessary delays" Respondents seek to invent here:

> After November 2006, the ownership of all A-Files was transferred to USCIS. In order to facilitate faster processing, ICE provided USCIS with a processing guide containing the policies, procedures, and background information necessary to enable USCIS to process A-File requests on behalf of ICE. This process eliminated the need to refer records to ICE for review and determination of releasability, which could result in unnecessary delays.

GAO, "Freedom of Information Act" (March 2009), *available at* http://www.gao.gov/new.items/d09260.pdf.

As a result, there is no merit to Respondents' argument that the FOIA production process is "wholly different" and irrelevant when assessing burden. App. at 5 n.4. In fact, the FOIA exemptions are co-extensive or *broader* than the

6

discovery privileges and confidentiality at issue in this case. The Supreme Court held over thirty years ago that Exemption 5 (codified at 5 USC § 552(b)(5)) "incorporates the privileges which the Government enjoys under the relevant statutory and case law in the pretrial discovery context." *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184 (1975); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975) ("Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency."); *Carter v. U.S. Dept. of Commerce*, 307 F.3d 1084, 1088-89 (9th Cir. 2002) (same).

Third, Respondents suggest they can withhold documents until a host of third parties perform independent reviews and separately consent to production. Nearly all of the so-called "third party" agencies identified by the Respondents – USCIS, ICE, EOIR, FBI – operate under the authority of Respondents DHS or DOJ. App. at 6; Agagan Decl. at 15. Moreover, Respondents presumably conduct such "third party" review under FOIA while still managing to produce thousands of A files per month. And because USCIS apparently has a computerized system that can perform all necessary redactions (Sloan Decl. at ¶ 4), no reason exists for employing the less efficient process proposed by Respondents of scanning, printing for redactions, and then re-scanning the A files (Agagan Decl. at ¶ 6) to comply with this Court's order. In any event, Petitioner is entitled to documents within the possession, custody, or control of Respondents, which the A files plainly are. *See* Fed. R. Civ. Pro. 26(b)(1).

Finally, Respondents erroneously assert, again, that a variety of statutes and regulations bar the disclosure of certain information contained in A files. App. at 6; Agagan Decl. at ¶ 16; Dkt. No. 165, Respdnt's Exh. 2 at ¶ 7. However, Respondents fail to recognize that those statutes and regulations only bar

7

disclosure to third parties, not to class counsel,[5] or are otherwise inapplicable because they authorize disclosure under a court order.[6] In any event, to the extent that those statutes and regulations may bar disclosure, Respondents' existing FOIA review process already screens and redacts such information. *See* 5 USC § 552(b)(3) (barring disclosure where required by statute). And, as noted below, virtually all of those concerns can be resolved through the use of a protective order.

### B. Respondents Continue to Overstate the Burden of Compliance.

Respondents' assertions of undue burden are hard to take seriously given that, as of the date of their Application, they had yet to produce a single document in response to any discovery request, including basic information they agreed to produce over two months ago.[7]

Regardless, Respondents' declarations contain troubling inconsistencies on basic facts relating to the purported burden of production that warrant denying their request. For example, in opposition to the motion to compel, Mr. Gentile stated that "[a]ssuming the majority of the files are located at NRC, the bulk of the files could be completed in approximately 8 weeks." *See* Dkt. No. 165, Respdnt's Exh. 1 at ¶ 8. The newly submitted declaration of Conrad Agagan now reveals that

---

[5] 8 CFR §§ 208.6, 1208.6 (entitled "Disclosure to third parties"); 8 CFR § 244.16 (barring disclosure to a "third party requester" and expressly permitting release to noncitizen's "authorized representative"); 8 USC § 1160(b)(6) (permitting release with noncitizen's consent); 8 USC § 1367.

[6] 8 USC § 1160(b)(5) (permitting disclosure under "court order"); 8 CFR § 244.16 (permitting disclosure under "court order"). *See also* 8 USC §1367 (permitting disclosure "in connection with judicial review").

[7] In fact, the only discovery of any kind that Respondents had provided in this case until today is a list of class members detained on a given day. Judge Hatter ordered Respondents to produce such lists on March 22, 2010, and Respondents have done so on two occasions. Today, May 9, 2011, Respondents provided some of the database information that they agreed to produce during the February 28, 2011, meet and confer. Some database information remains to be produced, as well as responses to certain requests for admission.

even if 1,000 files were at NRC, it would have to take only roughly *15 days* to digitize all of the files at NRC. Dkt. No. 170-2 at ¶ 6 ("NRC can ditigitize approximately 65 A-files per day.").

Respondents also rely on distorted "estimates" concerning the size of the A files. Respondents now assert that "ICE estimates . . . that A-files for aliens in detention range between 400 to 500 pages." App. at 6 (citing Agagan Decl. at ¶ 10). In fact, the declarant only states that "*many* files from [Lancaster, California] subject to this order average 400 to 500 pages" (Agagan Decl. at ¶ 10) (emphasis added), and later than A files "could contain anywhere from 200-500 pages" (*id*. at ¶ 10). These statements do not support the assertion that the average file at issue is 400-500 pages. To the contrary, Respondents' previously declared that a "typical A file contains 125-150 pages." *See* Dkt. No.165, Respdnt's Exh. 1 at ¶ 6 (Declaration of Dominick Gentile).[8]

The Respondents' errors regarding the size of A files and the amount of time needed to copy A files are compounded by their ever-changing estimates of the number of A files at issue. Respondents initially represented that 350 to 1,000 A files are at issue, *see* Dkt. No. 165 at 38, and later increased that estimate to 1,030 A files, *see* Dkt. No.167 at 1 n.1. In their Application, Respondents attach a new declaration claiming 1,036 A files are at issue. *See* Aragan Decl. at ¶ 13. However, in the meet and confer prior to this briefing, Respondents acknowledged that its earlier estimate of 1,030 overstated the number of A files at issue because it included A files for persons never in the class. *See* Exhibit 38 (letter from Ahilan Arulanantham to Theodore Atkinson) (May 2, 2011); Exhibit 39 at 9 (Declaration

---

[8] Mr. Aragan's statement that "many" A files include 400-500 pages is consistent with immigration expert Stacy Tolchin's declaration, in which she stated that some A files include several hundred pages but that it is "very common for" A files of unrepresented detainees to contain "less than 30 pages." *Se*e Dkt. # 165, Petr's Exh. 35 at ¶¶ 11-12.

9

of Ahilan Arulanantham of May 9, 2011). Lacking any assurance that Respondents have identified the true number of A files at issue – something none of the declarants claim to have personally determined – no basis exists for modifying an order that already provides Respondents with more than twice the amount of time contemplated under the Federal Rules for producing documents.[9]

The Court therefore should reject Respondents' request to modify an order more than a month before the deadline for compliance when, as explained below, the DHS routinely produces thousands of A files.

### C.  Respondents Alleged Burden is Largely of Their Own Invention.

Respondents also fail to acknowledge that the burdens of which they complain are largely of their own making. Respondents' concerns regarding burden could be satisfied by a protective order, but the Respondents have chosen to devote their energies to filing an *ex parte* application and a motion for review, rather than negotiate over a draft protective order that Petitioner circulated before this Court granted Petitioner's motion to compel.[10]

---

[9] Respondents' declarations raise other questions. For example, the Sloan Declaration states that the "USCIS FOIA program processes in excess of 80,000 FOIA requests per year." Sloan Decl. at 4. That number is roughly 25% less than DHS's official estimate of the number of FOIA requests processed by USCIS last year. *See* DHS, "Chief FOIA Officer Report" (March 2011), available at http://www.dhs.gov/xlibrary/assets/ foia/priv-chief-foia-officer-report-cy11.pdf (stating that USCIS processed "101,000 FOIA cases . . . over the course of" 2010). Mr. Sloan perhaps is stating the number of A files produced each year under FOIA (rather than the number of requests processed), but that explanation does not appear in Mr. Sloan's declaration or Respondents' brief. In any event, it would merely confirm that Respondents regularly produce more than 6,500 A files per month.

[10] Respondents mischaracterize Petitioner's attempts at compromise on this issue. Petitioner has repeatedly maintained that Respondents should comply with the Court-ordered 60-day production schedule and negotiate a protective order that would allow it to do so, while at the same time pursuing a motion for review. *See* Exh. 38.

10

Petitioner has stated his willingness to negotiate a strict "attorneys' eyes only" protective order to eliminate confidentiality concerns and facilitate production of the A files. *See* Exh. 38 at 2. Indeed, Petitioner has cited for the Respondents' review protective orders used in other cases where the government produced sensitive information relevant to claims in the litigation. *See* Exh. 38 at 2 (citing *Parhat v. Gates*, 532 F.3d 834, 851-52 (D.C. Cir. 2008 and *Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007) (authorizing the disclosure of sensitive national security information to attorneys representing people detained as enemy combatants)).[11]

Petitioner provided Respondents with a draft protective order to govern the production of database information on April 25, 2011, and, following this Court's order granting Petitioner's motion to compel, offered to broaden the protective order to cover the production of A files. *See* Exh. 38. Rather than negotiate a protective order, Respondents initially took the position that they would instead attempt to reverse or stay this Court's order. Exhibit 39 at 11 (counsel for Respondents stated: "we don't need to negotiate a protective order that we don't think will come to pass"). Respondents eventually changed course, stating that they would propose a protective order by Wednesday, May 4, 2011. *See* Exhibit 40 (email from Theodore Atkinson to Ahilan Arulanantham) (May 3, 2011). Instead, on May 5, 2011, Respondents proposed entering into an informal temporary protective order, but only to enable the production of database information. *See* Exhibit 41 (email from Theodore Atkinson to Ahilan

---

[11] Petitioner does not believe that such a strong protective order is warranted here, given that by definition none of the class members is held under a national security detention statute. Nonetheless, the fact that the government has produced extremely sensitive information to opposing counsel in other habeas cases confirms that the problems described by Respondents can be resolved through a protective order.

11

Arulanantham) (May 5, 2011); Exhibit 44 (email from Ahilan Arulanantham to Theodore Atkinson) (May 6, 2011). Respondents *still* have not provided a draft protective order to govern the A file production. *See* Exh. 39 at ¶ 12.

Respondents also ignore that Petitioner has offered to assist with scanning A files that do not already exist electronically. *See* Dkt. #166 at 5. As Respondents acknowledge, they can hire contractors to facilitate production and avoid diverting employees from current responsibilities. *See* Agagan Decl. at ¶ 12.[12]

### D. That Respondents Will Have to Partially Comply Prior to the District Judge's Review Does Not Justify a 120 Day Production Schedule.

The Respondents' request for an enlargement of the production schedule is largely based on the same flawed claims of burden that it advances in support of its request for a stay, and should be rejected for the reasons discussed *supra*. Apart from these claims, Respondents make a somewhat distinct argument that they should not have to comply with this Court's discovery order prior to obtaining review from Judge Hatter because if they win then the work will have been wasted. For that reason, they ask the Court to double its production schedule to 120 days.

As a general matter, Respondents' argument would apply to most if not all discovery orders requiring the production of more than a few documents. In almost all such cases, Magistrate Judges rule that one side or another must produce a large number of documents, often in thirty days, yet review of such orders takes 28 days under this District's local rules. *See, e.g.*, *Hernandez v. Balakian*, 2007 WL 2580556, at *2-3 (E.D. Cal. Sep. 5, 2007) (ordering production of "hundreds if not thousands of documents" within 20 days); *Tessera, Inc. v. Micron Tech., Inc.*,

---

[12] As described in great detail in the Joint Stipulation, *see* Dkt. # 165 at 20-21, Petitioner has worked in good faith to lessen burdens on Respondents. For example, Respondents complain about the burden of a privilege log. Petitioner has no objection to production of the privilege log 30 days after the production of A files.

12

2006 WL 733498, at *7-8 (N.D. Cal. Mar. 22, 2006) (compelling production of "thousands of documents" within 15 days); *In re Omnitrition Int'l, Inc.*, 1993 WL 271466, at *2, *6 (N.D. Cal. Jun. 2, 1993) (ordering production of "hundreds of thousands of documents in three locations, Texas, Nevada and West Virginia" within 30 days).

Respondents' argument is also particularly unpersuasive given that they will almost certainly have to produce some A files in any event. Unless Respondents win their argument that the A files are entirely irrelevant – an argument that relied extensively on claims that Judge Hatter already rejected in his Rule 12(c) ruling, *see* Dkt. #169 at 1 -- Respondents will be ordered to produce at least some A files on some schedule. Moreover, this case does not present a situation where the producing party will suffer irreparable harm by the disclosure of the information itself, particularly given that Petitioners have offered to provide a "claw back" provision as part of any protective order. *See* Exhibit 42 (email from Ahilan Arulanantham to Theodore Atkinson) (April 25, 2011). Given that Respondents will likely have to produce at least some files, there is little rationale for slowing down the production time in order to wait for the District Judge's order.

Finally, and perhaps most important, the Court should reject Respondents' suggestion because they continue to attempt to negotiate the production deadline with the Court, rather than simply stating how long they believe would be a reasonable time period to produce the files. Respondents ask this Court, in the alternative, for a 120 day production schedule, but at the same time refuse to state whether they can comply with even that deadline. Presumably Respondents could make some accurate estimate as to how long they would need to produce the files ordered by the Court, but any such honest estimate is conspicuously absent from their briefing. *See* App. at 4 n. 3 ("Respondents have not conclusively determined that they could even complete production within 120 days . . . ."). The Court should decline the invitation to bargain with Respondents; rather, they must

13

comply with the Court's order unless and until such time as it is reversed by the District Judge.

### III. RESPONDENTS HAVE NOT DEMONSTRATED A NEED FOR *EX PARTE* RELIEF.

"*Ex parte* motions are rarely justified." *Mission Power Eng'g Co v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). They represent a radical departure from the normal rules of litigation. Because Respondents fail to make a compelling showing to warrant a stay, they certainly fail to meet their burden for securing one on shortened notice. *See id*. at 492 ("To show irreparable prejudice, it will usually be necessary to refer to the merits of the accompanying proposed motion"). No irreparable harm will come to Respondents should their challenge to this Court's order be resolved as a normally noticed motion before Judge Hatter.

The best proof that this application is merely another delay tactic is that Respondents have chosen to wait the longest period of time permissible under the local rules to file their motion for review with Judge Hatter. *See* App. at 3 n. 3 ("Respondents intend to file the motion on May 9, 2011"); Local Rule 72-2.1 (14 day deadline for motions for review). If they had moved promptly, this matter could have been fully briefed and heard nearly a month before the deadline set by this Court. Indeed, Petitioner suggested setting a schedule of less than 21 days' notice for a motion to stay this Court's order, for example by waiving the time for a reply brief, but Respondents instead chose to multiply these proceedings by filing what undoubtedly will be the first of two *ex parte* applications for a stay. *See* Exh. 39 at ¶ 5.

14

**CONCLUSION**

    For the foregoing reasons, the Court should deny Respondents' application.

                              Respectfully submitted,

                              ACLU OF SOUTHERN CALIFORNIA

Dated: May 9, 2011             s/Ahilan T. Arulanantham
                                    AHILAN T. ARULANANTHAM
                                    Attorney for Petitioners