# Exhibit 38

ACLU
AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

*Via Email*

May 2, 2011

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Hector O. Villagra

**Chief Counsel**
Mark D. Rosenbaum

**Deputy Executive Director**
James Gilliam

**Chief Financial Officer**
Brenda Maull

**Development Director**
Sandy Graham-Jones

**Legal Director &**
**Manheim Family Attorney**
**for First Amendment Rights**
Peter J. Eliasberg

**Deputy Legal Director**
Ahilan T. Arulanantham

**Director of Policy Advocacy**
Clarissa Woo

**Director of Community**
**Engagement**
Elvia Meza

**Executive Director Emeritus**
Ramona Ripston

Theodore W. Atkinson
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20044

Dear Ted,

We write regarding our April 28, 2011 phone call regarding discovery in
Rodriguez, for the purpose of memorializing the parties' positions with regard
to certain issues discussed in that conversation. Our conversation touched on
three related issues: (1) your planned appeal of Magistrate Judge Block's April
27, 2011 order, (2) our offer to ease the burden of producing the A files by
agreeing to a strict protective order, and (3) the status of the production of the
database information.[1]

Your Planned Appeal

You stated on the phone call that you intend to appeal Magistrate Judge
Block's April 27, 2011 order granting our motion to compel and denying your
motion for a protective order. Specifically, you stated that you definitely plan
to appeal Judge Block's order with regard to A files, and that we "should
assume" that you are also planning to appeal the other portions of the order.
You also stated your intent to seek a stay of the order (at least with regard to A
files) pending the appeal.[2]

We stated that we would oppose any such appeal, as we believe the Order is
correctly decided.

---

[1] This letter does not discuss either your proposal for a scheduling order in the case, a draft of
which you said you would provide to us on Monday, May 2, 2011, or our two requests concerning
the possibility of obtaining other database information.

[2] This letter also does not memorialize our subsequent April 28 conversation in which we met and
conferred regarding Respondents' intention to file an *ex parte* application to stay a part of Judge
Block's order.

The Protective Order

You also stated that the government could not comply with the Order's requirement to produce A files within 60 days, in part because of the burden associated with reviewing the A files for privileged information.

In response, we stated that we sent you a revised draft of a stipulated protective order on April 25, 2011, prior to the issuance of Judge Block's order. We also reiterated our willingness to agree to a strict "attorneys' eyes only" protective order to eliminate confidentiality concerns and speed up the process for A file production. As we mentioned during the call, the government has produced very sensitive information in other litigation using such protective orders. *See, e.g.,* *Parhat v. Gates*, 532 F.3d 834, 851-52 (D.C. Cir. 2008) (citing *Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007)) (authorizing the disclosure of sensitive national security information to attorneys representing people detained as enemy combatants).[3] While we highly doubt that an order even remotely as stringent as that at issue in those cases is necessary for the production at issue here, particularly given that (by definition) no class member is detained under a national security detention statute, we reiterated our willingness to discuss the protective order in order to ease the government's burden of production.

You stated your agreement that "the ball is in [Respondents'] court," regarding the negotiations over the protective order, but did not discuss it with us further.

Finally, I note two other points regarding the burden associated with the files. First, you maintained your position that you may not be able to produce any A Files, even with a protective order in place. In fact, you told us that you were "not sure" if it was possible for the government to produce even a single A file within 60 days.

Second, you told us that your prior calculation that there were 1,030 A files responsive to our narrowed request accidentally included detainees who were not within the request, such that the actual number of A files to be produced under Judge Block's order would be less, and perhaps significantly less, than that number.

The Database Information

We also discussed the production of the database information. As we stated prior to Judge Block's order, we remain open to the possibility of unilaterally narrowing our request for A files if our experts determine that – based on a review of the production of database information – we can draw robust statistical conclusions from the data set without analyzing all of the requested files. As we have stated repeatedly, and as we stated again on the call, this presents another opportunity to lessen the burden of the A file production.

---

[3] We mentioned these cases by name on our call.



LIBERTY | JUSTICE | EQUALITY

I note that you agreed to produce the database information we requested at our meet and confer on February 28, 2011, but were unable to give us a timeline for producing any of this database information at that time. You told us during that meet and confer that you would let us know when you had a timeline for the production of that information. In a letter dated March 8, 2011 and an accompanying e-mail, we followed up on the meet and confer and asked you about the status of the database information. In a response letter dated March 17, 2011, you confirmed that you would produce the database information, but again provided no timeline for production. In a conversation on March 28, 2011, you told us that you would let us know your timeline for producing the database information by Wednesday March 30, 2011. You did not do so; we then sent you an e-mail on April 4, 2011 asking you again about the timeline. You replied that you were working to produce the database information as quickly as possible, but again provided no timeline. We sent you another e-mail on April 25, 2011 asking you when the database information was coming, and you replied the next day telling us that you had asked ICE for a date and were awaiting their response.

It has now been two months since you agreed to produce the database information at the February 28, 2011 meet and confer. During our April 28, 2011 phone conversation, you gave us an "estimate" that database information from ICE would be produced "sometime next week,"[4] and did not know when EOIR would produce its database information. We reiterate that both sides would greatly benefit from the timely production of this information.

Finally, we discuss one topic that did not arise during the April 28, 2011 call. We note that the government has yet to produce the policies and procedures, or respond to the requests for admission, which the government agreed to provide during our February 28, 2011 meet and confer. We agreed not to seek a motion to compel for this information based on your representation that the government would produce it. You have not provided any reason for the government's delay in producing this information, or a timeline for its production. We urge the government to immediately produce this information.

Sincerely,

Ahilan Arulanantham
Deputy Legal Director, ACLU/SC

---

[4] We were unclear on whether you were stating that the information will be produced by that date or that you will have a timeline for the production of the information by that date.



LIBERTY | JUSTICE | EQUALITY

# Exhibit 39

**DECLARATION OF**
**AHILAN T. ARULANANTHAM OF MAY 9, 2011**

I, Ahilan Arulanantham, hereby declare:

1.      I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

2.      I am an attorney and the Deputy Legal Director of the American Civil Liberties Union of Southern California.

3.      I am lead counsel for Petitioners in the above-captioned case.

4.      On Monday, April 25, 2011, I sent by email a draft protective order to Theodore Atkinson, counsel for Respondents.  As the email stated, the draft protective order was Petitioner's proposal for a protective order to govern the production of database information in this case.  A copy of that email is included as Exhibit 42 to the brief filed concurrently with this declaration.  I have not included a copy of the draft protective order itself, but can do so upon request.

5.      On April 28, 2011, I spoke by phone with Theodore Atkinson, counsel for Respondents, who had requested to meet and confer with me regarding Respondents' ex parte application for a stay of the Magistrate Judge's April 25, 2011, Order.  Michael Kaufman, co-counsel to me in this case, was also on the phone during the conversation.  During that conversation, I stated that we opposed the Respondents' use of the ex parte process in part because the shortened briefing schedule placed unfair demands on us.  I suggested that the parties stipulate to a shortened briefing schedule under Rule 7-3, which would permit the Respondents to have their motion decided on a quicker schedule, without unduly prejudicing Petitioner.  As one example, I suggested that the parties could agree to omit a reply brief or jointly request that the hearing on the motion occur in less than two weeks from the completion of briefing.  On April 29, 2011, via email, Mr. Atkinson declined our offer to negotiate a shortened briefing schedule under Rule 7-3.  A copy of the relevant email correspondence is

1

1    included as an Exhibit 43 to the brief filed concurrently with this declaration.

2    6.    During our April 28, 2011, conversation, I told Mr. Atkinson that

3    Petitioner also opposed the Respondents' ex parte application in part because the

4    Respondents had failed to negotiate a protective order that could satisfy the

5    Respondents' concerns regarding the production of the A files.  I reminded Mr.

6    Atkinson that Petitioner had provided a draft protective order on April 25, 2011,

7    to govern the production of database information, and that Petitioner was

8    amenable to broadening the draft protective order to cover the production of A

9    files.

10    7.    In response, Mr. Atkinson stated that his clients could not agree to

11    any protective order that required the government to produce A files before first

12    reviewing the files for privileged and confidential information.  In response, I

13    suggested that the inclusion of an "attorneys' eyes only" provision could satisfy

14    the Respondents' concerns.  I also cited to two cases, by name, which discussed

15    situations in which courts had used protective orders to allow the government to

16    produce sensitive national security information.  In response, Mr. Atkinson said

17    that he would take our proposal under consideration, and that "the ball was in [his]

18    court" regarding the protective order.

19    8.    I sent a letter memorializing the telephone conversation with Mr.

20    Atkinson to him on May 2, 2011.  A copy of that letter is included as Exhibit 38 to

21    the brief filed concurrently with this declaration.

22    9.    During the same conversation on April 28, 2011, Mr. Atkinson

23    indicated that he had been informed by his clients that the number of A files in the

24    "universe" responsive to Petitioner's A file request was less than 1,030, which

25    was the number cited by Respondents in their supplemental brief on the motion to

26    compel.  Mr. Atkinson stated that the cited number mistakenly included a number

27    of individuals who were never class members, and that these individuals had been

28    inadvertently included in the original number because the data query had

2

1  accidentally included individuals who had been detained for more than 180 days

2  pursuant to multiple removal proceedings.  He stated that he did not know how

3  many such individuals were inadvertently included, but that he would find out.

4       10.    On May 3, 2011, Mr. Atkinson sent an email again requesting that we

5  meet and confer, this time regarding the Respondents' alternative request in the ex

6  parte application, which is to enlarge the production schedule as set forth in the

7  Magistrate Judge's April 24, 2011 Order from 60 to 120 days.  We spoke later that

8  day.  My co-counsel Michael Kaufman was also on the phone with both me and

9  Mr. Atkinson.

10       11.    During that conversation, I stated that we opposed this request.  I also

11  reiterated our desire to negotiate a protective order to govern the production of the

12  A files.  In response, Mr. Atkinson declined to provide a counter-proposal to our

13  proposal for a protective order to govern the A file production.  Mr. Atkinson

14  indicated that his clients would not propose a protective order to govern the A file

15  production prior to a decision on their ex parte application.  Specifically, he

16  stated: "we don't need to negotiate a protective order that we don't think will

17  come to pass."

18       12.    After that conversation, he sent an email at 5:49pm that purported to

19  describe the position he had taken during our phone conversation.  Although he

20  stated in that email that "We plan to provide you tomorrow with a draft protective

21  order that we believe can serve as a basis for the identification and protection of

22  confidential and privileged information," to date he has not provided us with a

23  proposal for a protective order that would govern the production of the A files.  A

24  copy of that email is included as Exhibit 40 to the brief filed concurrently with

25  this declaration.

26       13.    Mr. Atkinson and I discussed the possibility of mitigating the burdens

27  associated with the production of A file information on both April 28, 2011 and

28  May 3, 2011.  During the course of those conversations, I stated that the Petitioner

3

1  opposed the Respondents' motion in part because the cost of complying with the
2  Court's Order did not, by itself, warrant a stay.  I suggested a variety of ways in
3  which the Respondents could lessen the burden of compliance.  For example, I
4  suggested that Respondents could use the existing FOIA review process, by
5  negotiating a protective order, or by hiring more people to complete the
6  processing.

7       14.     On May 5, 2011, Mr. Atkinson provided me by email with a proposal
8  for a protective order to govern the production of database information.  The
9  proposal did not address directly my proposal of April 25, 2011.  Over the course
10 of several email exchanges, he and I have now agreed to terms governing the
11 production of the database information on an interim basis, pending negotiation
12 over the terms I proposed in my April 25, 2011 draft order.  A copy of the relevant
13 email correspondence on that issue is included as Exhibit 44 to the brief filed
14 concurrently with this declaration.

15      I declare under penalty of perjury of the laws of the State of California and
16 the United States that the foregoing is true and correct to the best of my
17 knowledge and belief.  Executed this 9th day of May, 2011 in Los Angeles,
18 California.

19

20                         s/ Ahilan T. Arulanantham
                          AHILAN T. ARULANANTHAM
21

22

23

24

25

26

27

28

4

# Exhibit 40

| From: | Atkinson, Theodore (CIV) [Theodore.Atkinson@usdoj.gov] |
|---|---|
| Sent: | Tuesday, May 03, 2011 5:49 PM |
| To: | Ahilan Arulanantham; Michael Kaufman |
| Cc: | Atkinson, Theodore (CIV) |
| Subject: | Rodriguez -- Protective Order and Ex parte Application |

Ahilan and Michael,

I write to set forth to make sure there is no misunderstanding or misrepresentation to the Court of our position regarding the negotiations for a protective order. We raised the issue of a protective order with you last Friday, and we understood the framework of your proposal to be that if the 60-day deadline for production is not stayed, and if Respondents cannot complete review of remaining A-Files by the end of the 60-day period. You propose a protective order that would permit production of those files on an eyes' only basis in whole, without an opportunity for any review for either responsiveness of documents contained in those files, and without the opportunity for review of the files for even the most basic of privilege review.

I repeat what we informed you on Friday: we cannot stipulate to any protective order provision that permits the production of third-party information to opposing counsel when such a production risks disclosure of sensitive, privileged, restricted, or confidential information. This would include the majority of aliens not included in the class whose files you seek information from.

That said, we do believe that the parties are very likely to agree to the terms of a protective order with respect to A-Files that Respondents have had an opportunity to review. We plan to provide you tomorrow with a draft protective order that we believe can serve as a basis for the identification and protection of confidential and privileged information.

Regards,

Ted Atkinson
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box, Ben Franklin Station
Washington, DC  20044
(202) 532-4135

1

# Exhibit 41

| | |
|---|---|
| **From:** | Atkinson, Theodore (CIV) [Theodore.Atkinson@usdoj.gov] |
| **Sent:** | Thursday, May 05, 2011 12:39 PM |
| **To:** | Ahilan Arulanantham; Michael Kaufman |
| **Cc:** | Atkinson, Theodore (CIV) |
| **Subject:** | RE: Rodriguez -- Production of Electronic Database |

Ahilan,

That is a fair point. The draft protective order we are working on contemplates disclosure of certain confidential information to experts after they agree to comply with the terms of the protective order. If you will agree to have your expert state in writing that he or she will not disclose the information to any other third party, then we will agree to allow that limited disclosure pending the entry of a formal protective order. You must retain the written statement from the expert and notify us when the statement has been obtained so we know we can produce it.

Regards,

Ted Atkinson
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20044
Tel: 202-532-4135


**From:** Ahilan Arulanantham [mailto:aarulanantham@ACLU-SC.ORG]
**Sent:** Thursday, May 05, 2011 3:17 PM
**To:** Atkinson, Theodore (CIV); Michael Kaufman
**Subject:** RE: Rodriguez -- Production of Electronic Database

Ted,

We will consult with the team and get back to you, but I want to be clear about one thing in your request re the protective order. Are you saying that we _cannot_ produce the database information to an expert? If we agree to that, how are we going to figure out whether we can use it to narrow the A file request? As I mentioned in prior communication, we will need an expert to figure out whether sampling is possible based on the database information, as none of the lawyers (as far as I know) have the expertise to do that ourselves.

Please clarify that. If you are, then we'll come back with a counter-proposal, but I want to make sure you considered that aspect when making that demand.

Thanks,
ahilan


**From:** Atkinson, Theodore (CIV) [mailto:Theodore.Atkinson@usdoj.gov]
**Sent:** Thursday, May 05, 2011 12:11 PM
**To:** Ahilan Arulanantham; Michael Kaufman
**Cc:** Atkinson, Theodore (CIV)
**Subject:** Rodriguez -- Production of Electronic Database

1

24

Ahilan and Michael,

We will be responding to your May 2 letter in full early next week, but I want to inform you that ICE is prepared to produce its spreadsheet by Wednesday of next week, and EOIR estimates that it may have its tables ready for production as early as the end of next week. But before we produce the ICE information, we want to make sure that the confidentiality of the information we produce is protected from unwarranted disclosure.

Given the Court's decision to put off the protective order hearing, we want to be able to produce the ICE information by Wednesday without having to await a court-entered protective order. The ICE information does not contain restricted information, but because it contains personal and confidential information, it should be treated as confidential.

Will you tentatively agree to treat the information we will provide from ICE by Wednesday as confidential, and restrict its use to this litigation only, and restrict disclosure to counsel for Petitioners and support staff (paralegals, etc.)? We also specifically want your agreement not to release any of the information we provide to anyone else, including any consulting or testifying experts or other third parties.

If you can agree to those terms with respect to this production until a formal protective order is put into place, we will produce the ICE information by Wednesday.

Regards,

**Ted Atkinson**
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20044
Tel: 202-532-4135

# Exhibit 42

**From:**          Ahilan Arulanantham
**Sent:**          Monday, April 25, 2011 6:35 PM
**To:**            Atkinson, Theodore (CIV); Michael Kaufman
**Subject:**       Protective Order, Database Info
**Attachments:**   Proposed Protective Order April 2011 re Discovery 7.wpd

Dear Ted,

I hope you are well.  I'm writing about two issues related to Rodriguez.

First  please find attached a revised draft protective order.  As I mentioned to you earlier, we are not satisfied with the terms of the prior protective order.  Specifically, they are not consistent with existing law governing the presumption in favor of unsealing court documents or the local rules governing such sealing.  In addition, we have had a lot of problems with similar protective order language in Franco, and could face similar problems here once we start to use the discovery in briefing to the Court.

The revised version is an attempt to comply with the existing disclosure rules and prevent over-use of the sealing procedures  We will agree to be bound by the prior protective order until we resolve our negotiations on this one -- so this should not hold up the production of discovery -- but we think it important to enter these revisions and would like to start that process now.

Second, I saw in your filing on Friday that you learned that the "universe" of people on whom we seek information is 1,030 people   You had earlier told me that you would tell us that number as soon as you knew it, and also that you would tell us when you were going to produce the database information.  Now that you know the universe of people, can you tell us by when you expect to produce the database information for us?

Thanks,
ahilan

1

26

# Exhibit 43

| From: | Ahilan Arulanantham |
|---|---|
| Sent: | Friday, April 29, 2011 6:28 AM |
| To: | Atkinson, Theodore (CIV); Michael Kaufman |
| Cc: | Lawrence, Victor (CIV); Commons, Sean |
| Subject: | RE: Meet & Confer -- Ex Parte Stay |

Ted,

To be clear, Sean did not state an ex parte was appropriate, he only was asking for notice if you filed one.  I too could have predicted that you would do this, but that obviously does not make it procedurally correct.

Given the alternatives, we accept the offer to file our response by Friday.  We assume "first thing Tuesday morning" means that we will have it by opening of business our time.

Thanks,
ahilan

**From:** Atkinson, Theodore (CIV) [mailto:Theodore.Atkinson@usdoj.gov]
**Sent:** Friday, April 29, 2011 6:25 AM
**To:** Ahilan Arulanantham; Michael Kaufman
**Cc:** Lawrence, Victor (CIV); Commons, Sean
**Subject:** RE: Meet & Confer -- Ex Parte Stay

Ahilan,

The problem with your approach is that an ex parte to shorten the briefing schedule for a Rule 7-3 motion may not be accepted.

I have consulted with the USAO in Los Angeles, and they have indicated that the ex parte application is appropriate.  Your own co-counsel, Sean Commons, suggested that an ex parte on a stay would be appropriate on our call yesterday.

Your position is noted.  We will file our ex parte, likely Monday evening or first thing Tuesday morning.  We offer to let you have through Friday to respond to the ex parte, which is the same period of time you requested yesterday evening.  Please let me know if you accept this offer.

As I informed you yesterday, I am out of the office on leave, and I am out of town this weekend.  If you accept our offer, let me know before the end of the day.

Regards,

Ted Atkinson
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20044
Tel: 202-532-4135

**From:** Ahilan Arulanantham [mailto:aarulanantham@ACLU-SC.ORG]
**Sent:** Friday, April 29, 2011 9:07 AM
**To:** Atkinson, Theodore (CIV); Michael Kaufman
**Cc:** Lawrence, Victor (CIV); 'Commons, Sean'
**Subject:** RE: Meet & Confer -- Ex Parte Stay

Ted,

If you agree to our position, then you would not be seeking the stay through the ex parte process. You would be seeking the shortened briefing schedule on the motion for stay through that process. On that approach, we would be agreeing to the ex parte application because it only seeks the imposition of the schedule that we have agreed upon.

I want to be clear though that, either way, we will argue that your claims about the exigency created by the burden are incorrect because we continue to believe that production of A files on this schedule is not overly burdensome, particularly in light of our offer to enter into a suitable protective order. But we will not argue that the ex parte process is inappropriate for the purpose of seeking a shortened briefing schedule if you agree to our offer. In fact, that's what the ex parte application process is most appropriate for in this context.

Take care,
ahilan

> **From:** Atkinson, Theodore (CIV) [mailto:Theodore.Atkinson@usdoj.gov]
> **Sent:** Friday, April 29, 2011 5:50 AM
> **To:** Ahilan Arulanantham; Michael Kaufman
> **Cc:** Lawrence, Victor (CIV)
> **Subject:** RE: Meet & Confer -- Ex Parte Stay
>
> Ahilan,
>
> If I agree to the shortened period, are you going to nevertheless argue in your opposition that the ex parte application is an improper vehicle for seeking the stay?
>
> I'm not agreeing to an extension if you are going to complain about the process to the Court.
>
> Ted

> > **From:** Ahilan Arulanantham [mailto:aarulanantham@ACLU-SC.ORG]
> > **Sent:** Friday, April 29, 2011 1:41 AM
> > **To:** Atkinson, Theodore (CIV); Michael Kaufman
> > **Cc:** Lawrence, Victor (CIV)
> > **Subject:** RE: Meet & Confer -- Ex Parte Stay
> >
> > Ted,
> >
> > I guess we will have to disagree about the burden -- given that you can produce on a rolling basis, we don't see the exigency.
> >
> > Re the timing, our disagreement is with your use of the ex parte process in this instance, and not with the rules governing that process. The rule exists for exigent circumstances, and if yours were truly exigent you would be filing the application tomorrow. We aren't claiming to be prejudiced by your having met and conferred with us early – of course you should do so as soon as possible in an ex parte situation – but rather by your filing an ex parte application when it's not warranted.
> >
> > I look forward to hearing from you regarding our alternative that would allow a shortened briefing schedule on the stay.

Yours,
ahilan

**From:** Atkinson, Theodore (CIV) [mailto:Theodore.Atkinson@usdoj.gov]
**Sent:** Thursday, April 28, 2011 5:53 PM
**To:** Ahilan Arulanantham; Michael Kaufman
**Cc:** Lawrence, Victor (CIV)
**Subject:** Re: Meet & Confer -- Ex Parte Stay

Ahilan,

Thank you for your e-mail.

I think what you fail to appreciate is the burden our clients will have to bear in attempting to produce in response to the order, and your statement that we have 60 days to do so makes no sense in light of the fact that the burden began yesterday, and will consider until the stay request is resolved. We believe we have a meritorious argument that the burden outweighs the need for the information in the A-Files you seek. We believe that the burden imposed by the request outweighs the need for the requested information. And we believe that the imposition of a 60-day order to produce -- which you did not seek -- is more than unduly burdensome.

As for your argument that it is not fair that you only get two days to respond while we have five days to draft it and the supporting declaration or declarations, is meritless. Your argument is that the rule is unfair, not us. I was not required to offer the additional time, but I did so. And your argument is also particularly baseless in light of the fact that the order was issued yesterday, and we sought a meet and confer today. We require time to consult with our agency clients, to prepare supporting declarations, and draft argument.

Moreover, your complaint that you cannot begin to prepare an argument against a stay application rings hollow in light of the meet and confer that we had, and which we held at the soonest opportunity -- not the latest. You would have thought yourself ill-used had we notified you Monday of an ex parte filed Tuesday. It's a bizarre argument that you are prejudiced by the fact that we had a meet and confer today, at the earliest convenience. It is also a surprising reaction given the fact that your co-counsel, Sean Commons, raised the issue of a stay today, opined that it would have to be raised before the magistrate and then -- wait for it, because you know it's coming -- asked us to contact you sooner rather than later to meet and confer if we sought an ex parte application.

Travel safely.

Ted Atkinson

**From:** Ahilan Arulanantham [mailto:aarulanantham@ACLU-SC.ORG]
**Sent:** Thursday, April 28, 2011 08:34 PM
**To:** Atkinson, Theodore (CIV); Michael Kaufman <mkaufman@aclu-sc.org>
**Cc:** Lawrence, Victor (CIV)
**Subject:** RE: Meet & Confer -- Ex Parte Stay

Dear Ted,

Just confirming, in light of the phone conversation we just had, that we oppose the ex parte application. While we would agree to an ex parte application to shorten the briefing schedule on a motion for stay, we do not feel the ex parte process is appropriate here given that the order

3

gives you 60 days to produce them. We also do not think it fair for you to have until Monday to file an ex parte application that we then have to respond to in 24 hours. We understand that you have offered to give us 48 hours to respond, and we will let you know our position on that shortly.

In addition, as I stated this morning, we remain open to negotiating the protective order, having sent you a draft proposal prior to Judge Block's order.

Take care,
ahilan

> **From:** Atkinson, Theodore (CIV) [mailto:Theodore.Atkinson@usdoj.gov]
> **Sent:** Thursday, April 28, 2011 2:44 PM
> **To:** Ahilan Arulanantham; Michael Kaufman
> **Cc:** Lawrence, Victor (CIV); Atkinson, Theodore (CIV)
> **Subject:** Meet & Confer -- Ex Parte Stay
>
> Ahilan & Michael,
>
> We intend to file an ex parte application for temporary stay with Magistrate Judge Block on Monday evening or early Tuesday of next week.
>
> The stay would only be as to the portion of the order requiring complete production of the A-Files within 60 days of the date of the order. We would not seek a stay as to the 30-day order as to the Requests for Admission or the Requests for Production of the written policies and procedures. We note, however, that we may still appeal those requests under the motion for review we plan to file and discussed today.
>
> I am requesting a brief meet and confer on the stay application either later today at any time, or tomorrow before noon your time. Please let me know what time we can speak.
>
> I will be out of the office. Please reach me on my cell phone at 443-722-7326.
>
> Regards,
>
> Ted Atkinson
> Senior Litigation Counsel
> Office of Immigration Litigation
> District Court Section

4

# Exhibit 44

| | |
|---|---|
| **From:** | Ahilan Arulanantham |
| **Sent:** | Friday, May 06, 2011 5:28 PM |
| **To:** | Atkinson, Theodore (CIV); Michael Kaufman |
| **Cc:** | Prairie, Nicole (CIV) |
| **Subject:** | RE: Electronic Database Information |

Dear Ted,

With respect to the interim agreement, the only proviso I would add is that the experts' support staff should be exempted as well. I'm sure we can amend the experts' written agreement to capture that issue. I have added language to that effect in bold below. Please confirm that it is acceptable to you.

With respect to the redlining, I am sure you are right that no authority requires you to respond in redline. But we will negotiate again, and if you don't pay us the courtesy then we won't pay it to you either. We took a long time and conducted much internal review to produce that document, and for you to simply disregard it is disrespectful. If there are additional provisions that have to be included because of Judge Block's order, they can be added in redline. We ask that you consider what we took time to draft, and we have no way of assessing whether or not you have done that if you don't redline what we sent.

Take care,
ahilan

**From:** Atkinson, Theodore (CIV) [mailto:Theodore.Atkinson@usdoj.gov]
**Sent:** Friday, May 06, 2011 5:16 PM
**To:** Ahilan Arulanantham; Michael Kaufman
**Cc:** Prairie, Nicole (CIV)
**Subject:** RE: Electronic Database Information

Ahilan,

You will receive our draft counter-proposal, which we are working on. However, it is unlikely to be a redlined version of your offer, and I am aware of no precedent or authority requiring us to provide you with a redlined version of your proposal. Our protective order will be more comprehensive than the proposed order you sent us, and will also include terms required by Judge Block, which your proposal does not contain. Because of the significant difference in the language, a redlined proposal is impracticable.

I want you to be clear in accepting the terms of the confidentiality agreement, Ahilan. Please confirm that we are correct that you have agreed to the following terms:

1. Until a final protective order is entered by the Court, you agree to treat the information we will provide from ICE's electronic database as confidential, and restrict its disclosure to (1) counsel for Petitioners; (2) paralegals and support staff of counsel for Petitioners; and (3) testifying or consulting experts **(as well as their support staff)**, provided that such experts provide you with a written statement, which you agree to retain, in which those experts agree not to disclose the information we produce to anyone else;

2. Until a final protective order is entered by the Court, you agree that use of the information we will provide from ICE's electronic database is restricted to this litigation only.

We understand that those are the temporary terms you are agreeing to, pending the entry of a protective order by the Court.

If you agree, we will provide you with the information from ICE's database in e-mail form. Please respond in writing.

1

Regards,

**Ted Atkinson**
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20044
Tel: 202-532-4135

**From:** Ahilan Arulanantham [mailto:aarulanantham@ACLU-SC.ORG]
**Sent:** Friday, May 06, 2011 7:23 PM
**To:** Atkinson, Theodore (CIV); Michael Kaufman
**Cc:** Prairie, Nicole (CIV)
**Subject:** RE: Electronic Database Information

Dear Ted,

We are pleased to hear that the data is ready.  Let us know when and how you intend to send it.

We will agree to the terms you have set forth, including the additional proviso allowing us to provide the information to our experts, for purposes of the period from now until we agree to the terms of a protective order for this information (or, if we cannot agree, then the date on which we will appear before Judge Block to discuss a protective order  which is now off calendar).  To be clear, we do not accept the terms of your proposal except for the limited purpose of allowing us to get this information sooner rather than waiting for negotiations to conclude. We still believe, and intend to argue to the Court if necessary, that the draft protective order that we sent you on April 25, 2011 should govern this production.

Given that we sent you a redline and the counter-proposal that you have sent us is spelled out in cursory terms in an email, we expect you to redline our proposal so that we can continue to negotiate on this issue.

I hope you will provide us a counter-proposal in the next few days.  As we have been asking for this information for weeks and have a clear record to that effect, you are unlikely to persuade the Court that we are the cause of any delay in the production of the database information.

Take care,
ahilan

**From:** Atkinson, Theodore (CIV) [mailto:Theodore.Atkinson@usdoj.gov]
**Sent:** Friday, May 06, 2011 2:03 PM
**To:** Ahilan Arulanantham; Michael Kaufman
**Cc:** Atkinson, Theodore (CIV); Prairie, Nicole (CIV)
**Subject:** Electronic Database Information

Ahilan and Michael,

We have database information from ICE ready to produce.  Please let us know by Monday morning if you will agree to the terms of the temporary confidentiality agreement we outlined in my e-mails yesterday.  If we do not hear from you Monday we may have to indicate in our motion for review that we stand ready to provide, but Petitioners have not responded to our last e-mail from yesterday.

The ball is in your court.

Regards,

**Ted Atkinson**
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20044
Tel: 202-532-4135