TONY WEST
Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation,
District Court Section
    P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
    Phone: (202) 532-4135
    theodore.atkinson@usdoj.gov

Attorneys for Federal Respondents

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*, <br><br>    Petitioners, <br><br>vs. <br><br>TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director;* JANET NAPOLITANO, *in her official capacity as Secretary of Homeland Security;* ERIC H. HOLDER, JR., *in his official capacity as United States Attorney General,* <br><br>    Respondents. | Case No. CV 07-3239-TJH (RNBx) <br><br>**DISCOVERY MATTER** <br><br>RESPONDENTS' REPLY IN SUPPORT OF THEIR *EX PARTE* APPLICATION FOR AN ORDER PARTIALLY STAYING APRIL 25, 2011 DISCOVERY ORDER PENDING CONSIDERATION OF MOTION FOR REVIEW, OR, IN THE ALTERNATIVE, FOR MODIFICATION OF THE DISCOVERY ORDER <br><br>Hon. Robert N. Block <br><br>Discovery Cut-Off: None <br>Pretrial conference: None <br>Trial date: None <br>Hearing: None Requested |

Respondents submit this brief reply in support of their *ex parte* application to respond to three points made by Petitioners' in their opposition to this application.

**1.     The <u>Martinelli</u> decision cited by Petitioners on the four-factor standard for stay actually *supports* Respondents' application for a stay.**

Petitioners argue that a four-factor test of the type set forth in <u>Nken v. Holder</u>, 129 S.Ct. 1749, 1760-61 (2009), "logically governs" motions to stay pending review of a magistrate judge's order.  <u>Nken</u>, however, concerned the issue of whether the traditional stay factors or a particular statutory interpretation applied in a stay of *removal* pending a circuit court appeal – not a stay of a discovery matter during the course of district court proceedings.

Respondents have been unable to locate any case in this district or in the Ninth Circuit articulating the four-prong standard as the governing test for determining whether to stay a discovery order pending a motion for review.  However, Respondents note that in the one district court case Petitioners cite, the magistrate judge granted a stay of document production pending a motion for review.  <u>Martinelli v. Petland, Inc.</u>, Nos. 10-407-RDR, 09-529-PHX-DGC, 2010 WL 4627893(D. Kan. Nov. 3, 2010).

In <u>Martinelli</u> the magistrate judge applied the four-part test and determined under the first factor that while he could not determine that his own order was clearly erroneous (and therefore he could not conclude that the moving party was likely to succeed on the merits of their motion for review before the district judge), it was possible that the district judge would disagree with the magistrate judge's order of production.  <u>Id</u>. at 2.  Even though the magistrate judge determined that the likelihood of success of a motion for review weighed against the moving party, the Court determined that the possible irreparable harm to the moving party was significant: "As for the second factor, the court finds [defendant] could suffer irreparable harm if it expends time and resources producing documents were the district judge to ultimately conclude [defendant] need not comply with the undersigned's order." <u>Id</u>.

The magistrate judge also rejected the argument that the plaintiff was likely to be harmed by the delay, even though plaintiff required to the discovery to complete class certification. Id. The other factor – public interest – was considered neutral in the Court's view. Id. Thus, even if it determines that the four-factor test is the appropriate governing standard here, this Court should reach the same conclusion reached in Martinelli that the likely irreparable harm of production – which cannot be undone if Respondents succeed on their motion for review – counsels a brief stay.

**2.    Petitioners incorrectly suggest that the Government routinely agrees to turn over documents to opposing counsel that the Government has not had a chance to review.**

Petitioners take the position that Respondents can avoid the burden of having to produce documents from more than 1,000 A-Files by simply turning over to Petitioners' counsel – under an "eyes-only" protective order – those A-Files Respondents' do not have a chance to review before the 60-day deadline. That position is unreasonable in the extreme.

In a letter to counsel for Respondents, and in their opposition to this Court, Petitioners incorrectly claim that "the government has produced very sensitive information in other litigation using such ['eyes-only'] protective orders." But the Government rejects any inference that it has agreed to "eyes-only" protective orders that permit the production of undeniably privileged, private, and/or confidential information *without the opportunity to first review the materials being produced*.

The cases Petitioners cite do not support their sweeping claim. Both *Parhat v. Gates*, 532 F.3d 834 (D.D.C. 2008), and *Bismullah v. Gates*, 501 F.3d 178 (C.A.D.C. 2007), involved the protection of highly classified information that was nevertheless necessary for the defense, to allow the defense to show that the Guantanamo detainee habeas petitioners were not enemy combatants. But the Court in *Bismullah* considered the scope of a protective order under the presumption that "counsel for a detainee has a 'need to know' the classified information relating to his client's case,

*except that the Government may withhold from counsel, but not from the court,* certain highly sensitive information." *Bismullah*, 501 F.3d at 181. The Court went on to establish an elaborate protective order separating the treatment of protected information from other sensitive information, but *at no time* did the Court suggest that the Government would be required to produce such documents without first reviewing the information. Indeed, in both *Bismullah* and *Parhat*, the courts crafted protective orders requiring the disclosure of certain sensitive information, but only *after* the Government had an opportunity to review the information being disclosed and identify it as either protected or sensitive information.

Moreover, while those cases address the treatment and handling of Government-designated sensitive and protected information, Petitioners cite no case where the Government was required to engage in a wholesale production without first reviewing the documents to protect even the most basic privileged information – the attorney-client privilege being just one example.[1]

Petitioners subtly attempt to paint counsel for Respondents as failing to engage in good faith negotiations over the terms of a protective order. But as long as Petitioners continue to insist as a condition of those negotiations that Respondents agree to an order designed to require the wholesale production of A-Files without first permitting the Government an opportunity to review those documents to assert basic, fundamental privileges – let alone identify potentially sensitive, confidential, or protected information – then Petitioners make good-faith negotiations impossible. Notably, in their recitation of their view of the facts, Petitioners fail to admit that it

---

[1] Petitioners assert that confidentiality provisions maintained in various statutes and regulations do not prohibit disclosure to class counsel. Besides the fact that this is simply untrue (see 8 C.F.R. § 208.6 - counsel is not listed as an exception that would permit disclosure), Petitioners are only class counsel for individuals that are class members. Many of the 1,036 individuals subject to this Court's order are no longer class members because they have been released due to termination of immigration proceedings or removed from this country. They are therefore ineligible for the relief Petitioners are seeking and cease to be class members.

was *Respondents* who first raised the need for a protective order, and that on two different occasions *Respondents* initiated discussions of protective orders later entered in this case to protect private identifying information of individuals.² To suggest that Respondents are not willing to come to the table for discussions over a reasonable protective order is patently false.

**3.    There are no "troubling inconsistencies" between the declarations submitted in this action regarding the burden and logistics of production.**

Finally, Petitioners allege that there are widespread and "troubling inconsistencies" between the declarations submitted by Respondents that raise "troubling questions" about, it is suggested, Respondents' motives in this case. That insinuation is baseless, except to the extent it is based on a complete misreading and mischaracterization of the declarations at issue.

The discrepancies Petitioners cite are, first, the statement by Dominick Gentile that "[a]ssuming the majority of the files are located at NRC, the files could be completed in approximately 8 weeks." Pet. Oppo. at 8. Petitioners argue that this is contradicted by the later declaration of Conrad Agagnan, in which he states that it would take "15 days to digitize all of the files at [the USCIS National Records Center ("NRC")]." Pet. Oppo. at 9. However, Petitioners ignore the rest of Agagnan's declaration which explains that after this Court entered its order ICE determined that 400 of the files were located at the NRC, and that after further discussions with the NRC, Respondents determined that approximately 400 of the A-Files were located at

---

² Respondents have represented to this Court and continue to maintain that if the *ex parte* application is granted either as to a stay or, in the alternative, with respect to the enlargement of the production deadline, the parties will be able to negotiate a mutually-acceptable protective order. The parties have done so on two prior occasions, and even during this discovery dispute the parties were amicably able to negotiate terms of an agreement over the treatment of confidential, private information about class members and other individuals. Under the terms of that agreement, reached on May 9, 2011, Respondents produced a spreadsheet containing numerous categories of information about more than 1,000 aliens.

5

the NRC (a fact not yet then known by Gentile), and that ICE and the NRC determined that they could process the files faster than had originally been anticipated. This "inconsistency" is nothing more than an example of a later declaration honed to provide more recently learned information – here, facts and estimates settled on after further, continuing investigation by ICE and NRC, after this Court's order was entered.

Second, Petitioners seize upon the difference in estimates of the number of pages in A-Files, noting that Gentile states in his declaration that a "*typical* A-File contains 125-150 pages," and that Agagnan's declaration states that after a review of a sampling of the *files at issue*, the average A-File at issue contains between 400 to 500 pages (with Agagnan conservatively noting at one point that such files could contain between 200 to 500 pages). But Petitioners conveniently fail to note to the Court that in the same sentence that Gentile described a *typical* A-File's length, he also stated that "some A-Files may contain several hundred or even thousands of pages." Gentile Decl. ¶ 6. In Agagnan's later declaration, he stated that after "an examination of a sample of files at Lancaster, California reveals that many files from that location *subject to this order* average 400 to 500 pages." Agagnan Decl. ¶ 10 (emphasis added). Again, this difference in estimates – between the typical and the more specific – is, as Agagnan's declaration makes clear, the result of further investigation by Respondents, and not an effort to hoodwink this Court.

The Court should closely consider the fact that in pointing out these minor differences, Petitioners leave many facts set forth in the declarations unanswered. Petitioners repeatedly insist that the review process can be handled by FOIA, but they do *not once* offer any evidence to contradict the declaration of Terry Graves Sloan, Acting Center Director for NRC, that the three-tiered FOIA review process Petitioners repeatedly cite as the solution to any claimed burden "has a backlog of 31,000 requests," or that the partially automated FOIA system is "not programmed to process discovery requests," or that "if ordered to process A-files in this litigation, based upon

6

current processing times, it would take approximately *five months* before the A-file would be released." Sloan Decl. ¶ 4. Petitioners wholly ignore the substance of Ms. Sloan's declaration. They also ignore the remaining portions of the declarations offered, which document the type and extent of extraordinary burden of producing the requested A-File materials in the 60-day time period set by this Court.

\* \* \*

Contrary to Petitioners' assertions, Respondents are not trying to "drag their feet by relitigat[ing] for a third time merits" of this case. Pet. Oppo. at 4. Respondents put forth a meritorious motion for a protective order, and this Court granted a stay on a determination of that motion pending the Rule 12(c) motion. Those motions have been resolved, and this Court recently ordered production of A-Files, which – as set forth in Respondents' unanswered declarations – is proceeding. Respondents seek a partial stay to try and avoid the type of potentially unnecessary burden and expense the court in Martinelli sought to avoid when it granted a partial stay. Alternatively, if this Court is not inclined to grant a stay, Respondents request that this Court extend the production period to 120 days to allow Respondents a reasonable period of time to collect the A-Files at issue; review those files for privileged, confidential, and restricted information; and produce those documents to Petitioners under a protective order Respondents are confident the parties can agree to.

Dated: May 10, 2011          Respectfully submitted,

TONY WEST
Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director

*/s/ Theodore W. Atkinson*
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4135
theodore.atkinson@usdoj.gov

Attorneys for Respondents

# CERTIFICATE OF SERVICE

I certify that on May 10, 2011, I served a copy of the foregoing and the accompanying declarations through the Court's CM/ECF system on the following counsel of record:

Ahilan T. Arulanantham
ACLU Foundation of Southern California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

William Tran
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: wtran@sidley.com

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Steven A. Ellis
Sidley Austin LLP
555 W 5th St, Ste 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: sellis@sidley.com

Brian Kelley Washington
Sidley Austin
555 West Fifth Street Suite 400
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: bwashi01@sidley.com

*/s/ Theodore W. Atkinson*
Theodore W. Atkinson
Senior Litigation Counsel
United States Department of Justice

1