1 PETER J. ELIASBERG (SBN 189110)
Email: peliasberg@aclu-sc.org
2 AHILAN T. ARULANANTHAM (SBN 237841)
Email: aarulanantham@aclu-sc.org
3 MICHAEL KAUFMAN (SBN 254575)
Email: mkaufman@aclu-sc.org
4 ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
5 Los Angeles, California 90017
Tel: (213) 977-5211
6 Fax: (213) 977-5297

7 **Attorneys for Petitioners**
(Additional counsel listed on following page)
8

10    UNITED STATES DISTRICT COURT

11    FOR THE CENTRAL DISTRICT OF CALIFORNIA

12    WESTERN DIVISION

13

14  ALEJANDRO RODRIGUEZ, et al.,  ) Case No. CV 07- 3239-TJH (RNBx)
                                  )
15           Petitioners,          ) **PETITIONERS' OPPOSITION TO**
                                  ) **RESPONDENTS' MOTION FOR**
16      v.                        ) **REVIEW OF MAGISTRATE**
                                  ) **JUDGE BLOCK'S ORDER OF**
17  TIMOTHY ROBBINS, et al.,       ) **APRIL 25, 2011**
                                  )
18           Respondents.          ) Honorable Terry J. Hatter
                                  )
19                                 )
                                  )
20  _____  )

Additional Counsel:

JUDY RABINOVITZ
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

JAYASHRI SRIKANTIAH (SBN 189566)
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS (SBN 217603)*
CODY JACOBS (SBN 272276)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Notice of Appearance forthcoming

# **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

ARGUMENT ................................................................................................................2

   I.  THE MAGISTRATE DID NOT COMMIT CLEAR ERROR IN CONCLUDING THAT THE A FILE INFORMATION PETITIONER SEEKS IS RELEVANT ........................................................2

   II.  MAGISTRATE BLOCK PROPERLY FOUND THAT PRODUCTION OF A FILES WILL NOT IMPOSE AN UNDUE BURDEN ON RESPONDENTS, WHO PRODUCE THOUSANDS OF A FILES EVERY MONTH ........................................... 10

CONCLUSION ................................................................................................ 15

# **TABLE OF AUTHORITIES**

**CASES**

*Baxter Travenol Laboratories, Inc. v. Le May*,
　93 F.R.D. 379 (S.D. Ohio 1981) ................................................................................ 11

*Carter v. U.S. Dept. of Commerce*,
　307 F.3d 1084 (9th Cir. 2002) .................................................................................. 12

*Casas-Castrillon v. Dep't of Homeland Sec.*,
　535 F.3d 942 (9th Cir. 2008) .................................................................................. 3, 4

*County of Riverside v. McLaughlin*,
　500 U.S. 44 (1991) .................................................................................................. 6, 7

*Demore v. Kim*,
　538 U.S. 510 (2003) ............................................................................................ 3, 4, 8

*Diouf v. Holder*,
　No. CV 06-7452, 2009 WL 6331130 (C.D. Cal. Sept. 9, 2009) ........................... 5, 9

*Diouf v. Mukasey* (*Diouf I*),
　543 F.3d 1222 (9th Cir. 2008) .................................................................................... 5

*Diouf v. Napolitano* (*Diouf II*),
　634 F.3d 1081 (9th Cir. 2011) .................................................................................... 5

*Frederick S. Wyle P.C. v. Texaco, Inc.*,
　764 F.2d 604 (9th Cir. 1985) .................................................................................... 10

*Gibson v. County of Riverside*,
　181 F. Supp. 2d 1057 (C.D. Cal. 2002) ..................................................................... 8

*Green v. Baca*,
　219 F.R.D. 485 (C.D. Cal. 2003) ..................................................................... 2, 11, 14

*Humphries v. County of Los Angeles*,
　554 F.3d 1170 (9th Cir. 2009), *overruled on other grounds by*
　*Los Angeles County v. Humphries*, 131 S.Ct. 447 (2010) ...................................... 7

*In re Omnitrition Int'l, Inc.*,
　1993 WL 271466 (N.D. Cal. Jun. 2, 1993) ............................................................. 11

*In re Toys R Us-Delaware*,
　2010 WL 4942645 (C.D. Cal. July 29, 2010) ......................................................... 10

*Mathews v. Eldridge*,
　424 U.S. 319 (1976) ................................................................................................. 10

*MedImmune, Inc. v. Genentech, Inc.*,
　2008 WL 616250 (C.D. Cal. Mar. 6, 2008) ............................................................. 10

*Morales-Izquierdo v. Gonzalez*,
   486 F.3d 484 (9th Cir. 2007) .................................................................... 7

*Orantes-Hernandez v. Meese*,
   685 F.Supp. 1488 (C.D. Cal. 1988) .......................................................... 6

*Prieto-Romero v. Clark*,
   534 F.3d 1053 (9th Cir. 2008) .................................................................. 5

*Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*,
   421 U.S. 168 (1975) ................................................................................ 12

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2009) .................................................................. 6

*Schall v. Martin*,
   467 U.S. 253 (1984) .................................................................................. 7

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ........................................................................... 3, 4, 5

**STATUTES**

28 U.S.C. 636(b)(1)(A) ................................................................................. 2

**OTHER AUTHORITIES**

Vera Institute of Justice, Testing Community Supervision for the INS: An Evaluation of the Appearance Assistance Program, (Aug. 1, 2000), http://www.vera.org/content/testing-community-supervision-ins-evaluation-appearance-assistance-program .......................................... 8

DHS, "Chief FOIA Officer Report" (March 2011), http://www.dhs.gov/xlibrary/assets/ foia/priv-chief-foia-officer-report-cy11 ....................................................................................................... 11

GAO, "Freedom of Information Act" (March 2009), http://www.gao.gov/new.items/ d09260.pdf ....................................... 12

Roberts, Michelle, AP, *Impact: Immigrants face detention, few rights*, Wash. Post. Mar. 13, 2009 .................................................................... 13

# INTRODUCTION

Petitioner seeks information from class members' alien files ("A files") that plainly is relevant to the core issues in the case, and production of the files will not impose an undue burden on Respondents.

Boiled down, Respondents' relevance arguments rest either on legal positions rejected by this Court in connection with Respondents' failed Rule 12 motion, or on the notion that Petitioners must establish their claims without the benefit of key documentary evidence because this case involves only legal questions. Judge Block properly rejected these arguments. The documents at issue concern the central issue in this case, which is whether Respondents' custody review procedures are constitutionally sufficient. To establish their claims, and adequately protect the interests of the class, Petitioner has a right to know not only what the Respondents' existing custody procedures are, but how they work *in practice*. Indeed, this Court already has held, when it denied Respondents' Rule 12(c) motion, that "the Ninth Circuit has indicated this Court should determine in which *fact scenarios* bond hearings would be appropriate." Dkt. #155 at 3 (emphasis added).

Amazingly, Respondents argue that the discovery should be disallowed based on its burdensomeness using entirely new declarations – evidence not timely presented to Judge Block. Respondents cannot blame Judge Block for not considering evidence they failed to proffer, particularly when it is inconsistent in material respects from the evidence they did submit. Regardless, the Court should reject Respondents' burden arguments whether or not it considers the untimely evidence. To start, burden alone cannot defeat Petitioner's right to relevant evidence, especially given that Petitioner has *no other avenue* for obtaining information about actual custody determinations. Nor do Respondents offer evidence to disprove Petitioner's evidence that the information sought can be analyzed to draw useful conclusions about the claims of class members.

1

In addition, Respondents overstate the burden of production. Respondents routinely produce thousands of A files each month under the Freedom of Information Act, and they now will have at least three months to produce the files Petitioner seeks. Respondents' claims of undue burden are particularly unpersuasive given that Petitioner has agreed to severely restrict the scope of his request, by limiting the type of information sought (to a limited set of identified documents within the A files), the temporal scope (from roughly 5 years to 1 year of class member files), and the geographic scope (to individuals detained for a substantial period in the Central District). *See* Dkt. No. 165 at 13, 20.

Judge Block's conclusion that the requested discovery is relevant and not unduly burdensome thus was not "clearly erroneous," and the motion should be denied. 28 U.S.C. 636(b)(1)(A); *Green v. Baca*, 219 F.R.D. 485, 488-89 (C.D. Cal. 2003) (affirming magistrate order compelling production of extensive documentation in prolonged pre-trial detention case).

## ARGUMENT

### I. THE MAGISTRATE DID NOT COMMIT CLEAR ERROR IN CONCLUDING THAT THE A FILE INFORMATION PETITIONER SEEKS IS RELEVANT.

Judge Block correctly rejected Respondents' relevance arguments. As Respondents themselves have admitted, "there is no dispute that in deciding this case the Court must determine whether non-citizens are provided with adequate due process under the current detention procedures." Dkt. No. 165 at 10-11. Respondents cannot force Petitioners to pursue classwide relief without the benefit of any documentary evidence on how Respondents' "current detention procedures" operate. In addition, many of Respondents' relevance arguments were raised and rejected in connection with the Rule 12(c) motion.

The premise of Respondents' motion is that information contained in A files – that is, information about how their existing custody review procedures function in practice – is entirely irrelevant to assessing their constitutionality. This premise

2

is fundamentally flawed. The governing Ninth Circuit and Supreme Court precedent requires courts assessing due process claims to analyze the "adequa[cy]" of the "procedural protections" currently provided as well as the justifications for "physical confinement," to determine whether the existing custody procedures satisfy constitutional standards. *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Petitioner simply asks to see the custody determinations themselves, as well as related documents needed to assess the quality of those determinations.[1]

Indeed, the controlling cases in this area reviewed precisely the kinds of evidence that Petitioner seeks here. In *Casas*, the seminal recent Ninth Circuit case on prolonged detention, the court reviewed the administrative record to determine whether a non-citizen detainee had "been afforded an adequate opportunity to challenge the necessity of his detention." *Casas-Castrillon*, 535 F.3d at 951. Similarly, in *Demore v. Kim*, 538 U.S. 510, 529 (2003), the Supreme Court drew upon statistics about similarly situated non-citizens to resolve a due process challenge to detention based on minimal procedures. Most important, in both *Casas* and *Demore* the Government itself relied on its existing custody processes to defend the constitutionality of the detentions at issue.[2] Indeed, even in *Zadvydas*

---

[1] A files are administrative files maintained by DHS that contain all the government's records related to a noncitizen's immigration case and detention. These records include: applications and requests for release (e.g., briefs submitted for bond hearings); records of custody determinations (e.g., post-order custody review ("POCR") worksheets, parole decisions, transcripts, or bond memorandum from bond hearings); and documents related to the noncitizen's immigration case, including applications for relief, petitions for adjustment and asylum applications, as well as court-related documents (e.g., requests for continuances, transcripts of hearings and merits decisions). These documents often contain a variety of biographical information, including immigration status, family ties, residence history, work history, criminal history and other information.

[2] *See, e.g.*, Brief for Appellants, *Demore v. Kim*, 538 U.S. 510 (2003) (No. 01-1491), 2002 WL 31016560, at *26-27 (arguing that *Joseph* hearings are a key (cont'd)

3

*v. Davis*, 533 U.S. 678 (2001), the Supreme Court case governing indefinite immigration detention, the Court analyzed the quality of the existing detention review procedures. *Id.* at 692. *See also id.* at 723-24 (Kennedy, J., dissenting) (stating that "[i]t should be noted the procedural protection here is real, not illusory" and analyzing statistical information concerning the custody review process at issue for indefinite detainees). Petitioner surely has a right to obtain the same types of information these courts analyzed.[3]

Respondents next argue that the facts analyzed in these cases were limited to the length of detention, and therefore did not encompass the kinds of evidence that Petitioner now seeks. *See* Mot. for Review at 7-8. That is not correct. Each discusses a variety of factual issues relevant to the quality of custody determinations, and includes analysis of such fact-specific matters as: (a) the procedural adequacy of existing custody determination systems, *Demore*, 538 U.S. 514 n.3 (discussing "*Joseph*" hearings), (b) the accuracy of flight risk assessments, *id.* at 519-20 (discussing statistics on flight risk), and (c) the quality of decisionmaking, including the rate at which people were released, under existing custody determination systems. *Zadvydas*, 533 U.S. at 692. In *Casas*, the Ninth Circuit remanded in part because it found that the record regarding the existing procedural practices—the very information Petitioner seeks here from the A files—should be developed further to "determin[e] whether the government has

---

procedural safeguard that support the constitutionality of mandatory detention under section 1226(c)); Brief for Appellees, *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008) (07-56261), 2007 WL 4559452, at *24-25 (arguing that Casas "has received due process in periodic [post-order] custody reviews").

[3] Respondents may argue that there was no discovery in these cases, but this is unsurprising given that they were individual challenges for which the Petitioners were given access to their A files. Petitioner here seeks the same basic information, but on a class-wide basis.

4

afforded . . . a [sufficient] bond hearing." *Id.* at 952. *See also Prieto-Romero v. Clark*, 534 F.3d 1053, 1065-67 (9th Cir. 2008) (reviewing record facts regarding three bond hearings and outcome of removal proceedings); *Diouf v. Mukasey* (*Diouf I*), 542 F.3d 1222 (9th Cir. 2008) (vacating and remanding to address the sufficiency of the post-order custody review process received by the detainee); *Diouf v Holder*, No. CV 06-7452, 2009 WL 6331130, at *2 (C.D. Cal. Sept. 9, 2009) (observing that Diouf "received two post order custody review considerations on July 29, 2005, and again on July 25, 2006" and his "criminal history, lack of cooperation in past removal proceedings and likelihood of future removal" and holding that "the post order custody review procedures provided ample procedural due process in these circumstances."), *reversed by Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (*Diouf II*).[4]

Petitioner's request for A files follows directly from these authorities. For example, if analysis of the existing custody determination system were to reveal that the government routinely detains people on the basis of danger even though they have no criminal history, or regularly detains people as flight risks even though they have extensive family ties and strong defenses to removal, such information would obviously be relevant in assessing whether the existing custody determination process is constitutionally-sufficient. Petitioner has no way to draw

---

[4] Respondents erroneously claim that the Ninth Circuit's decision in *Diouf II* undercuts Petitioner's need for discovery. Contrary to Respondents' claim, the Ninth Circuit extensively discussed the factual history of Diouf's case and expressly relied on that history in concluding that his custody reviews were constitutionally insufficient. *Diouf*, 634 F.3d at 1082-84, 1092 (holding that Diouf was entitled to a bond hearing because Diouf was twice denied release under POCR reviews based on his alleged "criminal history and lack of family support," conclusions that were undermined by an immigration judge's later "determin[ation] that Diouf was not a flight risk").

5

such conclusions without analyzing the information he seeks here – information contained in the A files of class members.[5]

Despite these and other uses for information in A files, Respondents argue that A files should be deemed irrelevant based on a mischaracterization of the Ninth Circuit's class certification ruling in this case, *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009). In *Rodriguez*, the court was concerned only with class certification. Thus, in stating that "[t]he particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question," the Ninth Circuit was not suggesting that Petitioners were foreclosed from fact discovery. *Id*. at 1124. Rather, the Ninth Circuit was recognizing that the unique facts of each class member's immigration case did not render the class unsuitable for certification.

Similarly, there is no validity to Respondents' claim that the information sought here should not be provided because Petitioner plans to *aggregate* data with respect to the class. Mot. at 9. Again, Respondents ignore that courts regularly rely on aggregate data when evaluating due process claims on a class-wide or system-wide basis. *See Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1507-08 (C.D. Cal. 1988) (resolving procedural due process claim by reference to facts about "a substantial number of class members"); *County of Riverside v. McLaughlin*, 500 U.S. 44, 55, 57 (1991) (in class action, relying on information

---

[5] The database information Respondents have agreed to provide does not contain the custody determinations themselves, and therefore does not contain even the reasons (i.e., danger or flight risk) for any decision to detain, let alone any explanation behind such reasons. The database also contains no information about criminal history other than the label that a detainee was or was not classified as an "aggravated felon," no information about family ties, and no information from which one can draw conclusions about the strength of a detainee's defense against removal. In contrast, the A files Petitioner seeks contain the custody determinations themselves, along with the various immigration court filings from which one can determine criminal history, family ties, and defenses to removal.

6

concerning causes for delays in arraignment in assessing constitutional requirements); *see also id.* at 68 (Scalia, J., dissenting) (arguing in favor of a 24-hour period to provide a probable cause hearing based on "available data" and observing the Court had previously declined to decide the issue "since we had before us little data" and that the Court would still benefit from "even more information"); *Schall v. Martin*, 467 U.S. 253, 265, 271-72 (1984) (in habeas class action challenging juvenile pre-trial detention on due process grounds, considering aggregate data on juvenile crime rates in assessing government interest, factual testimony on conditions of confinement in assessing individual's interest, and aggregate data on the outcome of class members' cases); *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1200 (9th Cir. 2009) (utilizing error rate in system similar to the one at issue in assessing due process claim), *overruled on other grounds by Los Angeles County v. Humphries*, 131 S.Ct. 447 (2010); *Morales-Izquierdo v. Gonzalez*, 486 F.3d 484, 496 (9th Cir. 2007) (en banc) (relying on data concerning the "error rate" to assess sufficiency of additional process in removal proceedings). .

     Respondents also speculate that Petitioner will be unable to extract useful aggregate data, because the determination whether a given class member should be detained as a danger or flight risk is a "subjective" determination. Mot. at 10-12 n.5. Notably, however, Respondents offer no evidence to rebut the sworn expert declaration presented to Judge Block, describing studies that Professor Nina Siulc conducted *for the government* in the immigration context using the kinds of aggregate data that Petitioner expects to extract from A files. Dkt. No. 165, Ex. 34 (Siulc Dec.) at ¶¶ 4-8. In fact, a number of studies have drawn conclusions based on aggregate analyses of noncitizen case files, and the Supreme Court has relied on

such studies in detention cases. *See Demore*, 538 U.S. at 519-20 (discussing Vera study); *id*. at 656 (same) (Souter, J., dissenting).[6]

  Respondents further argue that Petitioner cannot use the information in A files on behalf of the class because individual factual variations will predominate. This rests on the unsupported notion that data cannot be aggregated (*see supra*) and naked speculation about differences among class members. Respondents employ regular procedures and practices, which make class members similarly situated. Tellingly, Respondents acknowledge that Petitioner is entitled to aggregate information in databases relating to class members. If such aggregate data is relevant, then surely Petitioner is entitled to analyze the custody decisions themselves. *See Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1066 (C.D. Cal. 2002) ("underlying documents" must be "made available to the opposing

---

[6] For example, a study conducted by the Vera Institute of Justice in conjunction with its Appearance Assistance Program aggregated case-level data – including information contained in A files – to conclude that asylum seekers subject to appropriate supervision are highly likely to appear for removal proceedings, and that several factors consistently increase the likelihood of appearance, such as having community and family ties in the United States, and being represented by counsel. *See* Vera Institute of Justice, Testing Community Supervision for the INS: An Evaluation of the Appearance Assistance Program, Vol. 1, at 7 (Aug. 1, 2000), http://www.vera.org/content/testing-community-supervision-ins-evaluation-appearance-assistance-program; *see also id*. at 21-24 & vol. II, App'x II (describing statistical method for determining, based on aggregated case-level data, which factors are associated with appearance in immigration court). Similarly, the Vera Institute's audit of the Executive Office for Immigration Review (EOIR) Legal Orientation Program determined, based on aggregated case-level data, that individuals with representation received in absentia orders at much lower rates than unrepresented persons and that rates of removal in absentia were even lower for persons pursuing certain types of relief from removal, such as asylum. Vera Institute of Justice, Testing Community Supervision for the INS: An Evaluation of the Appearance Assistance Program, Vol. 1, at 7 (Aug. 1, 2000), http://www.vera.org/content/testing-community-supervision-ins-evaluation-appearance-assistance-program.

1 party for inspection" for "a summary of data to be admissible"). Respondents also
2 do not dispute that the database information they have agreed to produce lacks
3 critical information – such as Respondents' custody review decisions, biographical
4 information and information about the strength of class members' merits claims –
5 relevant to the core issues in this case, and therefore cannot seriously contest
6 Petitioner's right to gather such information from class members' A files.

Finally, Respondents make a series of relevance arguments directed at sub-classes that revisit arguments already rejected by this Court in connection with the Rule 12(c) motion. Mot. at 11. Respondents claim that parole determinations for detainees incarcerated under Section 1225(b) are irrelevant because parole decisions are discretionary. This Court squarely rejected that argument when it ruled that detainees in the Section 1225(b) sub-class could "bring[] procedural due process claims under Section 1225(b)." Dkt. No.155 at 2. Respondents also claim that the Section 1226(c) sub-class can raise no claims because "there is no alternative to detention for such aliens." Mot. at 11. Again this Court already rejected that categorical claim, holding that "the statute can be interpreted to require a bond hearing after a certain amount of time, not only to comply with precedent, but to avoid constitutional concerns as well." Dkt. No.155 at 3.[7]

---

[7] Respondents' arguments with respect to the section 1231(a)(6) and section 1226(a) subclasses are also without merit. For the reasons discussed *supra*, Respondents mischaracterize this Court's decision in *Diouf* and its implications for discovery for the section 1231(a)(6) subclass. With regard to the adequacy of bond hearings provided individuals under section 1226(a), the Respondents' responses to requests for admission – which, notably, Respondents have not yet provided despite agreeing to do so more than two months ago – are plainly not a substitute for the detailed information contained in subclass members' A files.

9

For all of these reasons, Judge Block correctly rejected Respondents' relevance arguments and did not commit clear error by ordering the production of A files.[8]

## II. MAGISTRATE BLOCK PROPERLY FOUND THAT PRODUCTION OF A FILES WILL NOT IMPOSE AN UNDUE BURDEN ON RESPONDENTS, WHO PRODUCE THOUSANDS OF A FILES EVERY MONTH.

Judge Block also properly found that Respondents had not met their heavy burden of establishing undue burden. Nothing in Respondents' untimely evidence provides any basis for concluding that Judge' Block's ruling was clearly erroneous.[9]

As a general matter, Respondents cannot defeat Petitioner's right to discovery on the ground that discovery is inconvenient or costly. *See In re Toys R Us-Delaware*, 2010 WL 4942645, at *6 (C.D. Cal. July 29, 2010) ("Merely because compliance with a 'Request for Production' would be costly or time-consuming is not ordinarily sufficient reason to grant a protective order where the requested material is relevant and necessary to the discovery of evidence."); *MedImmune, Inc. v. Genentech, Inc.*, 2008 WL 616250, at *1-2 (C.D. Cal. Mar. 6, 2008) (finding potential cost associated with conducting an entire trial twice insufficient to demonstrate irreparable injury). Courts have compelled government agencies to produce relevant documents in detention cases notwithstanding

---

[8] Petitioner additionally observes that A file information is relevant to the due process analysis established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Petitioner has not argued that the *Mathews* framework applies to this case. However, should the Court determine that *Mathews* applies, it provides additional support for the relevancy of A file information.

[9] The new evidence should be stricken or disregarded because Respondents do not, and cannot, claim this information was unavailable and not discovered despite reasonable diligence. *See, e.g.*, *Frederick S. Wyle P.C. v. Texaco, Inc*., 764 F.2d 604, 609 (9th Cir. 1985) (setting forth two-part standard for offering new evidence in connection with reconsideration).

objections that compliance would require "thousands" of work-hours, even where cases were not pursued on behalf of certified classes. *Green v. Baca*, 219 F.R.D. 485, 488-89 (C.D. Cal. 2003) (affirming magistrate order compelling production of extensive documentation in detention case); *see also In re Omnitrition Int'l, Inc.*, 1993 WL 271466, at *2, *6 (N.D. Cal. Jun. 2, 1993) (ordering production of "hundreds of thousands of documents in three locations, Texas, Nevada and West Virginia" within 30 days); *Baxter Travenol Laboratories, Inc. v. Le May*, 93 F.R.D. 379, 383 (S.D. Ohio 1981) (ordering the production of about 800,000 documents, even when production required review of 2.8 million documents because "an unwieldy record-keeping system, which requires heavy expenditures in money and time to produce relevant records, is simply not an adequate excuse to frustrate discovery").

      Here, Judge Block rejected the government's motion for a protective order based on Petitioner's arguments, including, most importantly, that, Respondents regularly produce thousands of A files every month. *See* DHS, "Chief FOIA Officer Report" (March 2011), *available at* http://www.dhs.gov/xlibrary/assets/foia/priv-chief-foia-officer-report-cy11.pdf (stating that the "bulk" of USCIS's "requests are generally for Alien files," and that in 2010, "USCIS received 91,503 new [FOIA] requests" and processed "101,000 FOIA cases . . . over the course of the year," including backlogged cases). Much of the purported burden here is illusory. Respondents have invented artificial burdens and inefficient processes to justify their refusal to produce A files, rather than simply relying on the existing FOIA process. For instance, Respondents complain that they need to "convert" digitized files to another electronic format for ICE to perform its own review, Mot. at 14, but these steps are unnecessary and contrary to Respondents' standard practice for producing A files. USCIS, a component agency of Respondent DHS, reviews and produces thousands of A files pursuant to requests under the Freedom

11

of Information Act (FOIA), *including on behalf of ICE*:

> After November 2006, the ownership of all A-Files was transferred to USCIS. In order to facilitate faster processing, ICE provided USCIS with a processing guide containing the policies, procedures, and background information necessary to enable USCIS to process A-File requests on behalf of ICE. This process eliminated the need to refer records to ICE for review and determination of releasability, which could result in unnecessary delays.

GAO, "Freedom of Information Act" (March 2009), http://www.gao.gov/new. items /d09260.pdf.

Respondents argued to Judge Block that the FOIA review process cannot be used for civil discovery. In fact, the FOIA exemptions – covering information which USCIS is required to screen for and redact from A files that it produces through that process – are co-extensive or broader than the discovery privileges and confidentiality potentially at issue in this case. *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184 (1975) (holding that Exemption 5 (codified at 5 USC § 552(b)(5)) "incorporates the privileges which the Government enjoys under the relevant statutory and case law in the pretrial discovery context."); *Carter v. U.S. Dept. of Commerce*, 307 F.3d 1084, 1088-89 (9th Cir. 2002) (same). Despite the fact that FOIA review would result in the production of *less* information, Petitioner has agreed to allow Respondents to use that process as a substitute to ease their burden and speed production of the A files.

Respondents also claim that the production will be difficult because they will have to coordinate with other agencies to conduct their review for privileges. This also is a manufactured obstacle. To start, the "third party" agencies identified by Respondents – USCIS, ICE, EOIR, FBI – operate under the authority of Respondents DHS or DOJ. Mot. at 15; Agagan Decl. at 15. Moreover, to the extent such "third party" reviews are in fact regularly performed, Respondents presumably conduct such "third party" review under FOIA while still managing to produce thousands of A files per month. And because USCIS has a computerized system that can perform all necessary redactions (Sloan Decl. at ¶ 4), no reason

1 exists for Respondents to scan, print for manual redactions, and then re-scan A
2 files (Agagan Decl. at ¶ 6).[10] Finally, the purported burden of compliance has been
3 lessened now that Judge Block has stayed his order to require production only 60
4 days after this Court rules on this motion.

5       The Court should also hesitate to reverse Judge Block's ruling based on
6 Respondents' declarations given that they contain startling inconsistencies that
7 undermine their claims of burden. Respondents at one point argue the "average" A
8 file contains between 400 to 500 pages based on their analysis of a purportedly
9 "random sample." Mot. at 15, (citing Agagan Decl. at ¶ 10). Respondents told
10 Judge Block, however, that a "typical A file contains 125-150 pages." *See* Dkt.
11 No.165, Respdnt's Exh. 1 at ¶ 6 (Declaration of Dominick Gentile). In any event,
12 Respondents' new declarant does not claim to have looked at a representative
13 sample of the A files at issue, yet counsel makes that assertion in Respondents'
14 brief. (Agagan Decl. at ¶ 10). Respondents also hedge in their motion, at one
15 point stating that A files "could contain anywhere from 200-500 pages," though
16 this too far exceeds their original estimate as to the average file size (*id.* at ¶ 10).[11]

17       The Respondents' errors regarding the size of A files are compounded by
18 their ever-changing estimates of the number of A files at issue. Respondents

---

[10] Respondents' burden arguments, of course, ignore the harm to class members from prolonged detentions and the cost to the government of roughly $141 per day to detain a class member. *See* Roberts, Michelle, AP, *Impact: Immigrants face detention, few rights*, Wash. Post. Mar. 13, 2009, http://www.deseretnews.com/ article/ 705291116/Immigrants-face-long-detention-few-rights.html. Such costs far exceed Respondents' estimates of costs associated with complying with discovery.

[11] Mr. Aragan's statement that "many" A files include 400-500 pages is consistent with immigration expert Stacy Tolchin's declaration, in which she stated that some A files include several hundred pages but that it is "very common for" A files of unrepresented detainees to contain "less than 30 pages." *Se*e Dkt. No. 165, Petr's Exh. 35 at ¶¶ 11-12.

13

initially represented to Judge Block that 350 to 1,000 A files are at issue, *see* Dkt. No. 165 at 38, and later increased that estimate to 1,030 A files, *see* Dkt. No.167 at 1 n.1. In their motion, Respondents attach a new declaration claiming 1,036 A files are at issue. *See* Aragan Decl. at ¶ 13. However, in a meet and confer, Respondents acknowledged that the estimate of 1,030 overstated the number of A files at issue because it included A files for persons never in the class. *See* Dkt. No. 173, Exhibit 38 (letter from Ahilan Arulanantham to Theodore Atkinson) (May 2, 2011); Exhibit 39 at 9 (Declaration of Ahilan Arulanantham of May 9, 2011). Judge Block cannot be faulted for Respondents' continued failure to accurately identify the number of files at issue, and Respondents cannot complain of the burden associated with producing documents that Petitioner never requested. *Green*, 219 F.R.D. at 492-93 (refusing to "accept defendant's time estimates at face value" when affirming magistrate order granting discovery of detainee files because "estimates that the review will consume thousands of hours to complete appear grossly inflated").

     For these reasons, Judge Block properly found that producing A files would not impose an undue burden on Respondents. He did not commit clear error in so finding, particularly given that Respondents now will likely have more than 90 days to produce the documents.

**CONCLUSION**

For the foregoing reasons, this Court should affirm Judge Block's order and require Respondents to produce the requested A files within 60 days of this Court's ruling on this motion.[12]

                        Respectfully submitted,

                        ACLU OF SOUTHERN CALIFORNIA

Dated: May 16, 2011         s/Ahilan T. Arulanantham
                                   AHILAN T. ARULANANTHAM
                                   Attorney for Petitioners

---

[12] Respondents do not appeal those portions of Judge Block's order requiring them to produce two other categories of information and documents. *See* Dkt. No. 172.