TONY WEST
Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 532-4135
e-mail: theodore.atkinson@usdoj.gov
NICOLE R. PRAIRIE
Trial Attorney

Attorneys for Respondents

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*, | Case No. CV 07-3239-TJH (RNBx) |
| Petitioners, | REPLY IN SUPPORT OF RESPONDENTS' MOTION FOR REVIEW OF AND OBJECTIONS TO MAGISTRATE JUDGE BLOCK'S ORDER OF APRIL 25, 2011 |
| vs. | |
| TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director, et al.*, | Hon. Terry J. Hatter, Jr. |
| Respondents. | Hearing Date: June 6, 2011<br>Hearing Time: 9:30 a.m.<br>Courtroom No.: 17 |
| | Discovery Cut-Off: None<br>Pretrial conference: None<br>Trial date: None |

# **TABLE OF CONTENTS**

INTRODUCTION...............................................................................................1

1.    The individual detainee information Petitioners seek is irrelevant....................2

    a.    The individual detainee information Petitioners seek is irrelevant
       to the classwide questions of statutory construction and due process
       in this case.............................................................................................2

    b.    The aggregate detainee information Petitioners seek is irrelevant to
       evaluate how the Government's existing detention procedures operate
       in practice..............................................................................................5

    c.    Respondents are not attempting to relitigate the merits of their Rule
       12(c) motion by highlighting fundamental problems in Petitioners'
       relevance arguments with respect to each sub-class.................................8

        i.    Parole decisions are not "custody determinations.".......................9

        ii.    Because criminal aliens must be detained under section
           1226(c), there is no "custody determination" to be reviewed........10

        iii.    The A-Files of aliens who were detained under section 1226(a)
           – and who are entitled to a bond hearing – are irrelevant to
           this case..........................................................................................11

        iv.    The A-files of aliens detained under section 1241(a) (6)
           are entirely irrelevant in light of Diouf v. Napolitano..................12

2.    The burden of collecting and reviewing more than 1,000 A-Files outweighs
    the value of the information sought...................................................................13

CONCLUSION.................................................................................................16

# **TABLE OF AUTHORITIES**

## CASES

*Casas-Castrillon v. Dep't of Homeland Security,*
    535 F.3d 942 (9th Cir. 2008)……………………………………………3,7

*County of Riverside v. McLaughlin,*
    500 U.S. 44 (1991)..................................................................6

*Diouf v. Napolitano,*
    No. 09-56774 (9th Cir. Mar. 7, 2011)…………………………………...12-13

*Demore v. Kim,*
    538 U.S. 510 (2003)………………………………………….......8

*Humphries v. County of Los Angeles,*
    554 F.3d 1170 (9th Cir. 2009)..................................................6

*In re Community Psychiatric Centers Securities Litigation,*
    SA CV91-533AHS, 1993 WL 497253 (C.D. Cal. 1993)................................13

*Morales v. Izquiedero v. Gonzalez,*
    486 F.3d 484 (9th Cir. 2007)....................................................6

*Orantes-Hernandez v. Meese,*
    685 F. Supp. 1488 (C.D. Cal. 1988)……………………........6

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2010)………………………………………...3-4

*Schall v. Martin,*
    467 U.S. 253 (1984)………………………………………….......6

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)……………………………………….....8

## ADMINISTRATIVE DECISIONS

*Matter of Joseph,*
    22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999)………………….......3

## STATUTES

8 U.S.C. § 1182(d)(5)(a)………………………………………………………....9

8 U.S.C. § 1225(b)………………………………………………………………....9

8 U.S.C. § 1226(a)…………………………………………………………..11-12

8 U.S.C § 1226(c)……………………………………………………….....9-11

8 U.S.C § 1231(a)……………………………………………………..4, 11, 12

## REGULATIONS

8 C.F.R. 212.5……………………………………………………………………10

8 C.F.R. § 241.4…………………………………………………………………....3

## COURT RULES

Fed. R. Civ. P. 26(b)……………………………………………………...............1

# **Introduction**

The A-File information Petitioners seek is irrelevant to their claims, and the burden of producing responsive documents from more than 1000 A-Files Petitioners have requested far outweighs whatever marginal value those files have in this case. The discovery should be disallowed under Federal Rules of Civil Procedure 26(b)(1) and (b)(2)(C)(iii).

Rule 26 (b)(1) limits the scope of permissible discovery to "nonprivileged matter that is relevant to any party's claim or defense." This case presents one question – may aliens be detained for over six months without a bond hearing. Petitioners argue that prolonged detention without an individualized hearing violates the detention statutes of the Immigration and Nationality Act (INA) and the Due Process Clause of the Fifth Amendment of the United States Constitution. The information Petitioners seek in discovery – the individual A-Files of more than 1000 aliens – has no bearing on either claim. Petitioners' opposition fails to address these issues of relevance, or fails to address them correctly.

Rule 26(b)(2)(C)(iii) provides that the Court may limit the extent of discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." As Respondents have articulated consistently, gathering 1000 A-Files from multiple locations, reviewing those files for responsive documents and making redactions for privileged and confidential information before producing the materials to Petitioners constitutes an extraordinary burden that far outweighs the benefits Petitioners claim they will receive from being able to aggregate the material. In their opposition, Petitioners make no meaningful effort to address any of Respondents' evidence detailing the extraordinary burden Respondents face in complying with Judge Block's discovery order. The only thing Petitioners offer in response is an outdated general departmental report about the ability of the Department of Homeland Security to process Freedom of Information Act (FOIA) requests, and complete mischaracterizations of the timeliness and consistency of the declarations offered.

1

1.    **The individual detainee information Petitioners seek is irrelevant.**

Petitioners seek A-File information that will purportedly allow them to identify the individual flight risk and danger of more than 1000 detainees, or assess the strength of the Government's removal case against each of those aliens.  This information is irrelevant to the class and sub-class claims to be decided in this case – whether the specific detention statutes in the INA permit detention beyond six months without a bond hearing.

a.    **The individual detainee information Petitioners seek is irrelevant to the classwide questions of statutory construction and due process in this case.**

As the Ninth Circuit explained in its class certification ruling, determining whether Petitioners are entitled to bond hearings after six months hinges on interpreting the statute under which a Petitioner is detained.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir.).  Resolving this "general statutory question" has nothing to do with evaluating the "particular characteristics" of any individual detainee and his or her flight risk or danger to the community.   Petitioners recognized the limitation of this question in asserting their two legal claims that the lack of a bond hearing after six months: (1) violates the INA and (2) violates the Due Process Clause of the Constitution.  (TAC ¶ 13 "Respondents' general policies and practices of prolonged detention without hearings are in violation of the statutory and constitutional rights of the Petitioners and other class members.").  In their Third Amended Complaint, Petitioners nowhere articulate that an individual's entitlement to a bond hearing after six months should be dependent on that person's – or an aggregate compilation of – individual circumstances.  Accordingly, it is disingenuous for Petitioners to claim now, in discovery, that such individual facts are "central" to their legal claims.

Petitioners attempt to reconcile this disconnect by asserting in their opposition that they need A-File information for over 1000 aliens to show that "custody

1  determinations"[1] employed by the Government are constitutionally insufficient – *no*

2  *matter how conscientiously the Government follows those procedures*.  Oppo. at 6.

3  Specifically, Petitioners assert that a custody determination procedure is "erroneous,"

4  and thus constitutionally inadequate, if it permits the continued detention of aliens

5  who do not pose a flight risk and are not a danger to the community, and/or who may

6  have a strong case against their removal.  But because Petitioners' Third Amended

7  Complaint alleges that no "custody determination" short of a bond hearing before an

8  immigration judge is constitutionally sufficient – whether "erroneous" or not – the

9  manner in which alternative custody determination procedures are followed and

10 applied is not relevant to Petitioners' case as framed.

11      There can be little question that the *length of detention* lies at the heart of this

12 challenge.  It is the fact that binds all of the class members, and it is the fact common

13 to all class members that led to class certification.  *Rodriguez v. Hayes*, 591 F.3d 1105

14 (9th Cir. 2008).  In reviewing the various precedents of the Supreme Court and the

15 Ninth Circuit in "prolonged detention" cases, the Ninth Circuit properly described

16 those cases in terms of the length of detention and the statutory purpose of each

17 detention statute.  The Ninth Circuit did not describe those cases as addressing the

18 flight risk, danger, or strength of any particular alien's case against removal.  *Id.* at

19 1113-17.

20      The impact of individual facts of class members on the resolution of this case

21 was squarely addressed by the Ninth Circuit in *Rodriguez*.  The Government argued

22 that the class members had different circumstances, and noted Respondent

23 Rodriguez's status as an aggravated felon as one fact that may place him in a position

24

25 [1] Petitioners repeatedly refer to "custody determinations" as including post-order
custody reviews ("POCRs") under 8 C.F.R. § 241.4(k), parole determinations under 8
26 U.S.C. § 1182(d)(5)(a), *Joseph* hearings, and *Casas* hearings.  POCRs and *Casas*
hearings are admittedly "custody determinations," but for the reasons described
27 below, parole determinations and *Joseph* hearings are not custody determinations
28 because they do not consider release based on considerations of flight risk and danger.

different from other class members.  *Id.* at 1124.  The Ninth Circuit dismissed those differences as irrelevant, and its view that the individual facts of each class member are irrelevant to the statutory and constitutional claim at issue is unmistakable:

> The claims of Petitioner and the class on the whole are that they are entitled to a bond hearing in which dangerousness and risk of flight are evaluated. While Petitioner's criminal history is currently central to the question of whether Petitioner will ultimately be removed and will almost certainly be relevant to any bond hearing determination, the determination of whether Petitioner is *entitled* to a bond hearing will rest largely on interpretation of the statute authorizing his detention. ***The particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question . . .***

*Id.* at 1124 (bolded emphasis added).

Petitioners dismiss the Court's conclusion as only addressing the issue of typicality for class certification, and claim that the Ninth Circuit's decision did not "foreclose[] fact discovery."  Oppo. at 6.  The issue is not whether fact discovery may go forward in this case in light of the Ninth Circuit's decision – it may, and is proceeding.  The question before this Court is whether individual facts showing flight risk, danger to the community, or the strength of the Government's removal case are relevant to this class action.  The Ninth Circuit's conclusion that the "particular characteristics" of any individual detainee "will not impact the resolution of this general statutory question" is unambiguous.  It is disingenuous for Petitioners to now claim that such individual facts are "central" to its legal claims, both in light of the Ninth's Circuit's conclusion and Petitioners' prior representation that this case has "nothing to do" with the individual facts of any detainee's case.

4

### b.  The aggregate detainee information Petitioners seek is irrelevant to evaluate how the Government's existing detention procedures operate in practice.

Petitioners argue that they need this information to evaluate how the Government's existing detention procedures operate and to show, in the aggregate, that the Government "routinely detains people on the basis of danger even though they have no criminal history, or regularly detains people as flight risks even though they have extensive family ties and strong defenses to removal."  Oppo. at 5.  To the extent that Petitioners want to show how the Government's detention procedures operate, they have selected, and this Court has certified, representatives for the class and each subclass based on the four INA statutes at issue.  March 8, 2011 Order [Dkt # 161]. As this Court noted in its class certification order, those representatives are appropriate because "each subclass member shares a similar factual pattern," and "the questions of law under each section are the same: Whether that section can be interpreted to require a bond hearing after six months, or, conversely, whether the procedures already in place satisfy due process."  *Id*. at 3.

To the extent that Petitioners seek to introduce aggregate information about individual flight risk and danger determinations for over 1000 aliens, their request is fundamentally flawed and not supported by the case law they cite.   As an initial matter, Respondents readily admit that there are numerous cases in which information about a class has been collected and presented in a statistically significant manner relevant to the legal claims of the case.[2]  The question before the Court, however, is

---

[2] It is unsurprising, then, that Respondents have not offered a declaration to rebut Professor Nina Siulc's declaration that she has conducted studies in which individual data was aggregated.  Professor Siulc's declaration that she has aggregated certain pieces of information in other cases for other reasons is unremarkable.  Notably absent from her declaration, however, is any statement that she has aggregated flight risk or danger information from individual A-Files – the type of aggregated data Petitioners seek to compile and present in this case.  Whether such data can be compiled in a relevant and reliable manner is an issue for another day, but *even if* Petitioners can

*(Footnote continued)*

not whether  information *can* ever be aggregated, but rather, whether the information sought to be aggregated here is relevant to  Petitioners' legal claims.

The cases Petitioners cite for the proposition of using aggregate data are distinguishable from this case because the data in those cases was used to make quantitative not qualitative points, and because the data in those cases directly supported the legal claims at issue.  First, the aggregate data used in each of the cases Petitioners cite concerned a discernible, measurable statistic – such as the number of aliens statutorily eligible for asylum, the number of people successful in an administrative proceeding, the number of cases closed before trial, the number of cases reversed on appeal.  *See Orantes-Hernandez v. Meese*, 685F. Supp. 1488, 1507-08 (C.D. Cal. 1988) (class action challenging lack of notice of right to seek asylum; court determined that a number of aliens were statutorily eligible for asylum, but did not receive notice); *Schall v. Martin*, 467 U.S. 253, 265, 271-72 (1984) (relying on data showing how many juveniles' habeas petitions are dismissed by courts before and after adjudication); *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1200 (9th Cir. 2009) (citing percentage of individuals who successfully challenged their inclusion on a sex-offender list); *Morales v. Izquiedero v. Gonzalez*, 486 F.3d 484, 496 (9th Cir. 2007) (comparing number of immigration reinstatement cases with number later reversed).[3]  Here, Petitioners seek to measure fundamentally subjective

---

reduce individual information from individual A-Files into a formula for flight risk and danger, and aggregate that information across the class or across a sub-class, *that information would be irrelevant in this case*.

[3] Petitioners incorrectly assert that *County of Riverside v. McLaughlin* 500 U.S. 44, 55, 57 (1991), relied on aggregate data concerning the reasons for delay in holding probable cause determinations.  There is no indication that the facts cited by the Court regarding reasons for delay (overnight bookings, transportation delays, obtaining the presence of an arresting officer, etc.) was the result of a statistical compilation of aggregate data, rather than either judicial notice or the product of witness testimony in proceedings below.  Contrary to Petitioners' arguments, Justice Scalia's dissent in that case does not rely on "available data" in a statistical sense, but his own survey of time-limits set for probable-cause hearings in various States.

elements:  an alien's flight risk or danger; the likelihood of success in a removal

proceeding.

Second, the information aggregated in the cases Petitioners cited had a direct

and undeniable bearing on the legal claim at issue in each case.  Here, by contrast, the

aggregation of flight risk and danger and strength of the merits in a removal

proceeding are not only subjective, but irrelevant to the legal claims at issue – whether

the statutes and the Constitution require a bond hearing at six months.  Instead, the

information that may be relevant to Petitioners' claims – length of detention, reasons

for release, charge of removability, length of removal proceedings, identification of

the hearings held, outcomes of hearings, bond determinations, and other categories of

information Respondents previously specified in the motion to review – is precisely

the information that Respondents have already begun producing to Plaintiffs as

requested.   Mot. at 10.

The weakness of Petitioners' argument for the relevance of the A-File

information requested is most clearly discerned when cases involving challenges to

the length of detention are considered.  Petitioners stretch credibility when they claim

that a number of immigration detention cases considered "precisely the kinds of

evidence" Petitioners seek here.  First, Petitioners cite *Casas-Castrillon v. Dep't of

Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008), noting that the Ninth Circuit

"reviewed the administrative record" to determine whether a detainee "had been

afforded an adequate opportunity to challenge the necessity of his detention."  Oppo.

at 3.  But nowhere in *Casas* did the Ninth Circuit conclude that the petitioner had been

deprived of due process based on his *flight risk or danger*.  Nor did the Ninth Circuit

examine the likelihood he would succeed in his removal proceedings as a factor for

consideration.  The central factor in the Court's consideration was the length of the

petitioner's detention.  *Casas*, 535 F.3d at 951.

Nor are Petitioners correct that the Supreme Court examined "precisely the

kinds of evidence" Petitioners seek through their A-File request.  The only statistical

evidence the Court in *Demore* relied on was the length of removal proceedings and the

high rates of non-appearance of criminal aliens following release.  *Demore v. Kim*,

538 U.S. 510, 529 (2003).  Similarly, the Court also relied on rates of release in

*Zadvydas*, 533 U.S. at 692.  The difference in those cases and this case is that data

examined by the Court in *Demore* and *Zadvydas* measures were objective in nature,

but, more importantly, they were the only "aggregate data" examined in cases

considering challenges to the *length of detention*.  If nothing else, those decisions

serve to underscore the fact that the kind of individual information Petitioners now

seek had no bearing on the determination of those cases.  Those cases focused on the

length of detention, and factors leading to the length of detention.  The petitioners'

flight risk, danger, or likelihood of avoiding removal were not considered by the

Supreme Court in cases most closely like this one.  Similarly, the Ninth Circuit has yet

to consider, as a matter for their determination in the first instance, the flight risk or

danger of a petitioner in any challenge to prolonged detention.

Petitioners' characterization of these cases as ones where courts considered the

type of evidence they seek to aggregate is unpersuasive.  The A-File information

Petitioners seek has no bearing on the due process issues presented in this prolonged

detention case.    Accordingly, this Court should conclude that the individual A-Files

are irrelevant to the determination of the class and sub-class claims and modify the

magistrate judge's order to disallow the A-File discovery under Rule 26(b)(1).

> **c.**    **Respondents are not attempting to relitigate the merits of their Rule**
>    **12(c) motion by highlighting fundamental problems in Petitioners'**
>    **relevance arguments with respect to each sub-class.**

Petitioners complain that Respondents' relevance arguments are nothing more

than an attempt to relitigate the merits of this case following Respondents

unsuccessful Rule 12(c) motion for judgment on the pleadings.  Oppo. at 9.  However,

Respondents have never argued that the discovery sought is irrelevant because

Petitioners are unlikely to prevail on the merits.  The question of relevance turns on

whether the information sought has any bearing on the legal claims, not whether Petitioners are ultimately likely to succeed on those claims. [4]

In looking at the sub-class claims of this class action, Petitioners' claimed need for individual information about flight risk and danger or likelihood of removal of class members simply does not withstand scrutiny. [5]

### i. Parole decisions are not "custody determinations."

Petitioners are incorrect that the decision to parole an arriving alien (detained under section 1225(b)) into the United States under the parole provisions of 8 U.S.C. § 1182(d)(5)(a) is a "custody determination" in any ordinary sense. Significantly, Petitioners do not dispute that the decision to parole an arriving alien into the United States is, as a threshold matter, a decision that turns on whether paroling an alien serves "urgent humanitarian reasons" or serves a "significant public benefit" and other similar considerations. *Id.* Whether an alien is a flight risk or danger may be a

---

[4] Nothing in this Court's order denying judgment on the pleadings addresses the issue of the discovery of the A-File materials sought here. Petitioners cite two passages from this Court's Rule 12(c) order in support of their claim that this Court has already spoken to the relevance of the A-File materials in this case. First, Petitioners cite this Court's conclusion that the section 1225(b) subclass of arriving aliens could "bring[] procedural due process claims under Section 1225(b)." Oppo. at 9. Second, Petitioners quote the Court's conclusion that section 1226(c) "can be interpreted to require a bond hearing after a certain amount of time, not only to comply with precedent, but to avoid constitutional concerns as well." Oppo. at 9. But both of these statements refer to issues of constitutional interpretation, and neither addresses the need for discovery, let alone the relevance of the particular A-File discovery at issue in this motion for review. Petitioners' characterization of this Court's order to the contrary is baseless.

[5] For the reasons described in their motion for review, Respondents doubt that inherently subjective determinations of flight risk and danger can be objectively assessed from the individual A-Files of different aliens – each with different backgrounds and circumstances that are not susceptible to uniform measurement across a class. And Respondents are deeply skeptical that such information can be compiled in a meaningful or reliable way under the strictures of *Daubert* and its progeny.

ground *against* a parole decision, 8 C.F.R. § 212.5(d), but lack of flight risk or danger is not a ground *for* parole.  Thus, to the extent Petitioners seek to review parole determinations to assess whether they are correctly or incorrectly made as a "custody determination," they are attempting to compare apples and oranges.  The Court should conclude that the information from the A-Files detained under section 1225(b) is irrelevant, and the discovery order should be modified accordingly.

### ii.    Because criminal aliens *must* be detained under section 1226(c), there is no "custody determination" to be reviewed.

Petitioners are incorrect that flight risk and danger information, or the strength of the Government's removal case in immigration proceedings, needs to be examined to determine the extent to which detainees are "erroneously" detained under section 1226(c).  Petitioners simply cannot dismiss the fact that there is no alternative to an alien's detention under section 1226(c).  It is indisputable that an alien charged with removability for a qualifying, enumerated offense under section 1226(c)(1)(A) – (D) *must* be detained, and has no alternative to detention.

It is unclear what "custody determination" Petitioners seek to test with information from the A-Files of section 1226(c) detainees.  There is no "custody determination" made by Respondents, other than the charge of removability qualifying an alien for mandatory detention under section 1226(c) – and Respondents have already provided Petitioners with a spreadsheet identifying the charge of removability against each of the 1,036 aliens at issue, as well as the length of their detention and other information Respondents previously specified in the motion to review.  Mot. at 10.

To the extent Petitioners claim a need to "analyze the adequacy of the procedural protections currently provided" with respect to detention under section 1226(c), Oppo. at 3, the statute is clear that there *is no other* procedural protection.  Aliens who have committed certain crimes must be detained, regardless of their flight

risk, danger, or the strength of the Government's removal case against them. Given this, Petitioners' claim for A-Files of section 1226(c) detainees is simply baffling.

In their Joint Stipulation contentions to Judge Block, Petitioners argued that *Joseph* hearings are "custody determinations." That is an incorrect characterization. A *Joseph* hearing is a custody determination only insofar as an immigration judge determines whether an alien is properly categorized as a section 1226(c) criminal alien based on the charge of removability and the record supporting the charge. They are not "custody determinations" that consider issues of flight risk or danger, and they do not take into account an alien's defenses to removability.

> **iii.  The A-Files of aliens who were detained under section 1226(a) – and who are entitled to a bond hearing – are irrelevant to this case.**

Petitioners make no effort in their opposition to identify any need for the A-Files of aliens detained under section 1226(a) and who are already entitled to a bond hearing before an immigration judge. In their Joint Stipulation, Petitioners argued that "[t]he Court can only assess the sufficiency of the Respondents' existing bond hearings by reviewing whether those bond hearings in fact lead to the prolonged detention of individuals who do not present a danger or flight risk." Joint Stipulation [Dkt # 165] at 31. But a comparison of the legal claims regarding the alleged insufficiency of bond hearings shows no nexus between those alleged infirmities and the need for flight risk and danger information about aliens entitled to bond hearings.

In their Third Amended Complaint, Petitioners cite as constitutionally inadequate (1) the lack of notice of a right to bond hearings, (2) the lack of transcription services at bond hearings, (3) the use of a "preponderance of the evidence" standard rather than a "clear and convincing evidence" standard, (4) the lack of a heightened showing of dangerousness and flight risk, and (5) the failure to provide aliens with counsel at government expense. TAC ¶ 121.

Petitioners do not deny that they have propounded requests for admission precisely designed to identify whether immigration bond hearings incorporate these procedures.  Nevertheless, Petitioners disingenuously claim that they must review all of the A-Files of all of the 1226(a) detainees because requests for admission as to whether these procedures are being followed are "no substitute" for the A-File materials.  Oppo. at 9 n. 7.  The Court should reject discovery of the A-Files for this duplicative purpose.

Moreover, Petitioners have not and cannot identify how an alien's flight risk or danger – assessed now, outside of the context of an immigration bond hearing – is relevant to determine whether the immigration judge, in its discretionary authority, was correct in setting or denying bond.  In fact, nowhere in the Third Amended Complaint do Petitioners claim that a hindsight review of class members' flight risk and danger play any role in the question of whether due process requires these additional hearing procedures.  *See* TAC ¶ 121-22.[6]  The A-File materials requested are plainly irrelevant to the section 1226(a) claims, and should be disallowed.

### iv.    The A-files of aliens detained under section 1241(a) (6) are entirely irrelevant in light of *Diouf v. Napolitano.*

With respect to the sub-class of section 1231(a)(6) detainees, a panel of the Ninth Circuit recently held that at the 180 day juncture the post-order custody review process does not provide adequate procedural safeguards, and concluded that aliens detained under section 1231(a)(6) for more than 180-days are generally entitled to a bond hearing before an immigration judge where the Government bears the burden of proving flight risk and danger.  *Diouf v. Napolitano ("Diouf II")*, 634 F.3d 1081,

---

[6] Even if, as Petitioners claimed in their Joint Stipulation contentions, A-File materials "may contain transcripts or bond memorandum that reflect the immigration judge's reasons for denying bond," Joint Stipulation [Dkt # 165] at 31, Petitioners have not attempted to justify in their opposition why that information is relevant given their claims, nor have Petitioners justified the production of A-File materials unrelated to these types of documents.

1091-1092 (9th Cir. 2011).  Petitioners have not addressed the need or relevance of 1231(a)(6) A-files, nor have they specifically explained the need for POCR worksheets in light of this decision.[7]

**2.**     **The burden of collecting and reviewing more than 1,000 A-Files outweighs the value of the information sought.**

Where the burden of production outweighs the value of the information to be discovered, discovery should be disallowed.  *See In re Community Psychiatric Centers Securities Litigation*, SA CV91-533AHS, 1993 WL 497253 * 7 (C.D. Cal. 1993).  Petitioners argue in their opposition that Respondents submitted untimely information to Judge Block, accuse Respondents of filing declarations with "startling inconsistencies," and insist that any and all "manufactured" issues of burden can be resolved if Respondents simply process the 1,036 A-Files at issue through the FOIA process maintained and operated by U.S. Citizenship and Immigration Services ("USCIS").  Petitioners are wrong on all counts.

First, and most noticeably, Petitioners make no effort to answer either of the declarations submitted by Conrad Agagnan of ICE or Terry Graves Sloan of USCIS's National Records Center ("NRC") detailing the burden of collecting, scanning, reviewing, and producing the more than 1,000 A-Files at issue.  Petitioners instead argue that the Department of Homeland Security ("DHS") Freedom of Information Act ("FOIA") staff could process the A-Files within a short period of time.

The only evidence Petitioners cite to support their assertion are selected excerpts from a March 2011 general report by the DHS Chief FOIA Officer.  Those excerpts are taken out of context and are misleading.  While it is true that the report states that the "bulk" of FOIA requests are for A-Files, Petitioners fail to mention that

---

[7] *Diouf I* is subject to possible further review on a petition for rehearing *en banc* due on June 6, 2011, the date this motion is set for a hearing.  However, if a petition for *en banc* hearing is not made, or is denied, then that case will be dispositive of the issues in this case with respect to the section 1231(a)(6) sub-class.  Respondents will notify the Court if a petition for *en banc* rehearing is pursued on or before June 6, 2011.

1    at the end of fiscal year 2010 (the most recent information available in the report),

2    there was a backlog of more than 8,000 FOIA requests at USCIS.  Chief FOIA Officer

3    Report, http://www.dhs.gov/xlibrary/assets/foia/priv-chief-foia-officer-report-

4    cy11.pdf, at 28.  According to Terry Graves Sloan, Acting Director of USCIS NRC,

5    that backlog now stands at approximately 30,000 cases, and, because NRC operates

6    on a first-in, first-out basis by law, processing the A-Files at issue would take several

7    months.  Graves Sloan Decl. ¶ 7.  Petitioners have no answer to her declaration.

8    Moreover, A-Files requested pursuant to FOIA are typically requested by the aliens

9    themselves in which case the same privilege and confidentiality protections do not

10    apply.  Here, by contrast, class counsel has requested over 1000 A-Files that pertain to

11    aliens, the majority of whom are no longer part of the class because they have been

12    released and removed and are therefore ineligible for the relief sought.  This class was

13    certified pursuant to Rule 23(b)(2), which does not require notice to individuals or the

14    ability to opt-out.  Therefore, the individuals do not know that their confidential

15    information could be disclosed to third-parties.  Accordingly, contrary to Petitioners'

16    contention, review and redaction of the files at issue to ensure that no confidential

17    information is improperly disclosed will entail a substantially heavier burden than

18    does A-File production pursuant to FOIA requests.

19         Second, the declarations provided to Judge Block after he entered his April 25,

20    2011 discovery order were not "untimely," as Petitioners contend.  The Agagnan and

21    Graves Sloan declarations were submitted in response to Judge Block's order, and

22    they were offered in support of Respondents' successful application for a stay of the

23    discovery pending resolution of this motion.  Those declarations go directly to the

24    burden of complying with Judge Block's order to produce within 60 days.

25    Petitioners' argument that this was an attempt to submit untimely burden evidence is

26    completely without merit and underscores the weaknesses of their burden arguments.

27

28

Third, there are no "startling inconsistencies" between the declarations submitted by Respondents concerning the burden of production.  Petitioners seize upon the difference in estimates of the number of pages in A-Files, noting that in an earlier declaration Dominick Gentile, Chief of the Records Division of DHS, stated that a "*typical* A-File contains 125-150 pages," while Agagnan's declaration states that after a review of a sampling of the *files subject to this order*, the average A-File at issue contains between 400 to 500 pages (with Agagnan conservatively noting at one point that such files could contain between 200 to 500 pages).  Agagnan Decl. ¶ 10. But Petitioners conveniently fail to note to the Court that in the same sentence that Gentile described a *typical* A-File's length, he also stated that "some A-Files may contain several hundred or even thousands of pages."  Dominick Gentile Decl. [Dkt # 165] ¶ 6.  Again, this difference in estimates – between the typical and the more specific – is, as Agagnan's declaration makes clear, the result of further investigation by Respondents, and not an effort to hoodwink this Court.[8]

Respondents' declarations from ICE and NRC regarding the burden of collecting, scanning, reviewing, and producing the A-Files at issue are not addressed in any meaningful way by Petitioners.  The process of locating and scanning the approximately 600 A-Files that are not centrally located – and which may be in use by agencies throughout Los Angeles or elsewhere – is ongoing, but time-consuming. The task of reviewing those A-Files for responsive documents, and then for privilege,[9]

---

[8] There is also no merit to Petitioners' claim that Respondents have provided "ever-changing estimates of the number of A-Files at issue."  Oppo. at 13.  By Petitioners' own admission, the estimate of the number of A-Files changed exactly once – from approximately 1,000 A-Files – to an estimate provided during a conference call of counsel.  However, that estimate was never confirmed.

[9] Unresolved by Judge Block's discovery order is the treatment of confidential, private, privileged, and restricted information contained in the A-Files.  However, some information that may be contained in the A-Files is prohibited from disclosure under various statutory and regulatory provisions.  This includes information related to claims for asylum; claims for legalization; claims under the Violence Against Women Act; claims for "T" or "U" visas, related to spousal or child battery; and other

*(Footnote continued)*

1   will place an extraordinary burden on Respondents.   This burden far outweighs the

2   value of the A-File documents sought.  The magistrate judge's decision to order this

3   burdensome, irrelevant discovery is clearly erroneous, and should be modified.

4                                          <u>Conclusion</u>

5           Judge Block's April 25, 2011 order erroneously ordered Respondents to

6   produce irrelevant information from more than 1,000 A-Files, a production that is

7   overly burdensome.  Respondents respectfully request that this Court modify the April

8   25, 2011 discovery order in part, and grant Respondents' motion for a protective order

9   with regard to those A-File materials.

10

11  Dated:  May 23, 2011                    Respectfully submitted,

12

13                                          TONY WEST
                                            Assistant Attorney General
14                                          Civil Division
                                            DAVID J. KLINE
15                                          Director, Office of Immigration Litigation
                                            District Court Section
16                                          VICTOR M. LAWRENCE
17                                          Principal Assistant Director
                                            <u>*/s/ Theodore W. Atkinson*</u>
18                                          THEODORE W. ATKINSON
19                                          Senior Litigation Counsel
                                            United States Department of Justice
20                                          Office of Immigration Litigation
21                                          District Court Section
                                            P.O. Box 868, Ben Franklin Station
22                                          Washington, DC 20044
23                                          Tel.: (202) 532-4135

24

25  _____

26  similar immigration-related information.  *See* Agagan Decl ¶ 16.  In some instances,
    wrongful disclosure of this information carries criminal penalties.  *See, e.g.,* 8 U.S.C.
27  § 1367 (enumerating penalties that may accrue for anyone who permits an alien's
    confidential information to be disclosed).  If the motion for review is denied, Judge
28  Block stated that he would revisit the se protective order issues at a later date.

## CERTIFICATE OF SERVICE

I certify that on May 23, 2011, I served a copy of the foregoing through the Court's CM/ECF system on the following counsel of record:

Ahilan T. Arulanantham
ACLU Foundation of Southern
California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

William Tran
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: wtran@sidley.com

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Steven A. Ellis
Sidley Austin LLP
555 W 5th St, Ste 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: sellis@sidley.com

Brian Kelley Washington
Sidley Austin
555 West Fifth Street Suite 400
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: bwashi01@sidley.com

*/s/  Theodore W. Atkinson*
Theodore W. Atkinson
Senior Litigation Counsel
United States Department of Justice