TONY WEST
Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation,
District Court Section
    P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
    Phone: (202) 532-4135
    theodore.atkinson@usdoj.gov

Attorneys for Respondents

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*,<br><br>    Petitioners,<br><br>vs.<br><br>TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director*; JANET NAPOLITANO, *in her capacity as Secretary of Homeland Security*; and ERIC H. HOLDER, JR., *in his capacity as Attorney General of the United States*,<br><br>    Respondents. | Case No. CV 07-3239-TJH (RNBx)<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING RESPONDENTS' MOTION FOR A PROTECTIVE ORDER AND PETITIONERS' MOTION TO COMPEL PURSUANT TO LOCAL RULE 37-2.1**<br><br>Discovery Cut-Off:  None<br>Pretrial Conference:  None<br>Trial Date:  None |

## JOINT INTRODUCTORY STATEMENT AND OVERVIEW

Pursuant to Local Rule 37-2, Petitioner Alejandro Rodriguez, on behalf of himself and other members of the class (collectively, "Petitioners"), and Timothy S. Robbins, *et al*. (collectively, "Respondents" or "the Government") submit this Joint Stipulation Regarding Respondents' Motion for Protective Order and Petitioners' Motion to Compel.

## 1.    Nature of the Case and Procedural Background

This case concerns a class of non-citizens who allege that they (a) have been subjected to immigration detention in excess of six months by Immigration and Customs Enforcement ("ICE") while their removal proceedings remain pending and (b) have not been afforded a constitutionally-adequate hearing before an immigration judge ("IJ") where the Government has had to justify continued detention. *See* Third Amended Complaint. [Dkt. # 111]. Petitioners "challenge their prolonged detention without adequate process on statutory and constitutional grounds, on behalf of themselves and a class of similarly-situated detainees." [Dkt. # 111, Third Amended Complaint, ¶ 1]. Petitioners claim that under the Immigration and Nationality Act ("INA" or "the Act"), 8 U.S.C. §§ 1101, *et seq*., and the Due Process Clause of the Fifth Amendment, any alien who was or will be detained for six months or longer in the Central District of California is entitled to a constitutionally-adequate individualized hearing before an immigration judge to justify their continued detention under any of four detention provisions under the INA, specifically 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a).

This lawsuit was initially filed on May 16, 2007. [Dkt. # 1]. Following Petitioners' successful appeal of the district court's denial of Petitioners' motion for class certification, the case was remanded for further proceedings. Following a period of sub-class discovery, on March 8, 2011, this Court granted Petitioners' unopposed motion for class and sub-class certification. [Dkt. # 161]. Accordingly, the class

consists of "all people within the Central District of California who (1) are or will be detained for longer than six months pursuant to the general immigration detention statutes pending completion of removal proceedings, including judicial review; (2) are not detained pursuant to one of the national security detention statutes at 8 U.S.C. § 1226a and 8 U.S.C. §§ 1531-37; and (3) have not been afforded a hearing to determine whether their prolonged detention is justified." *See* Plaintiff's Motion for Class and Subclass Certification, Memorandum in Support, and Proposed Order [Dkt. # 101]. The four sub-classes consist of aliens detained by each of the four detention statutes at issue in this case. *Id.*

On November 22, 2011, Respondents filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). [Dkt. # 130]. On January 27, 2011, the Court denied the motion for judgment on the pleadings in its entirety. [Dkt. # 155].

Following the denial of Respondents' Rule 12(c) motion, the parties raised cross-motions for a protective order and to compel with respect to disputed discovery requests propounded by Petitioners. Most relevant for the purposes of this Joint Stipulation, Petitioners sought certain information from the administrative files – or "A-Files" – for each of more than 1,000 non-citizens currently or formerly detained for a period going back approximately one year.[1]

---

[1] Specifically, Petitioners originally sought "the A-File of every Petitioner," which Respondents interpreted as the entire A-File of every current class member. After several rounds of meeting and conference, Petitioners agreed to clarify their request to seek the following information from the A-files of every class member currently detained, and every individual who would have fallen into the class during the period from April 21, 2010, forward: (a) any document sent, given or otherwise delivered by a Petitioner to the federal courts, DOJ or DHS (including ICE, Customs and Border Protection ("CBP"), and U.S. Citizenship and Immigration Services ("USCIS")); (b) documents sent, given or otherwise delivered by those entities to a Petitioner; (c) post-order custody review ("POCR") worksheets concerning anyone in the request universe; and (d) transcripts of any statements given by a detainee to DOJ or DHS officials, such as transcripts of removal hearings or CBP interviews.

1    On April 25, 2011, this Court granted Petitioners' motion to compel the

2    production of the requested A-File materials and denied Respondents' motion for a

3    protective order.  [Dkt. # 169].  Respondents filed a motion for review of this Court's

4    order, and this Court granted Respondents a stay in the production of the requested A-

5    File materials pending consideration of the motion for review.  The motion for review

6    remains pending before Judge Hatter.

7    **2.**    **The Present Discovery Dispute**

8    The parties' present dispute is over the extent to which certain immigration-

9    related information is protected from production under various statutes and

10   regulations.  Respondents seek an order that the discovery of certain documents they

11   believe should be restricted from disclosure be disallowed, and Petitioners seek an

12   order compelling the production of such documents to the extent they exist, and under

13   the terms of the parties' existing protective order.

14   The documents at issue fall into the following five categories:

15   (1)    Asylum claim related information – Information contained in or pertaining

16          to any asylum application.  Asylum claim information includes reasonable

17          fear, credible fear, refugee and Convention Against Torture (CAT) related

18          information.

19   (2)    Violence Against Women Act ("VAWA") claimant and "T" visas and "U"

20          visa applicant information – Information relating to a person who has filed

21          an application for relief under VAWA, or trafficking or certain crime

22          victims who sought "T" or "U" visas.

23   (3)    Battered spouse or child information – Information provided by an alien

24          spouse or on behalf of a child, in the context of a petition to remove

25          conditions on the alien's status as a lawful permanent resident, to establish

26          eligibility for a hardship waiver on the ground that the spouse or child was

27

28

1    battered or the subject of extreme cruelty perpetrated by the lawful

2    permanent resident or U.S. citizen spouse.

3    (4)  Legalization and Special Agricultural Worker ("SAW") claim information

4         – Information relating to certain legalization applications or adjustment of

5         status applications.

6    (5)  Temporary Protected Status ("TPS") claimant information – Information

7         provided by an alien in support of an application for TPS, a temporary

8         immigration status for nationals of States where there is ongoing armed

9         conflict, where an environmental disaster has occurred, or where other

10        extraordinary and temporary conditions exist.

11        This Court is not required to decide the parties' dispute as to all five categories

12   of information listed above if Judge Hatter grants Respondents' motion for review and

13   disallows discovery of the A-File materials requested by Petitioners.  If that happens,

14   then this Court need only decide the dispute with respect to asylum-related

15   information and TPS information.  Respondents have determined that the electronic

16   database information produced in redacted form by Respondents *specifically* identifies

17   asylum and TPS-related information.  However, if Judge Hatter denies the motion for

18   review and allows this Court's April 25, 2011 Order to stand, then this Court must

19   decide the dispute *in its entirety* – that is, it must decide the motions as to all five

20   categories of information – with respect to the A-File materials.[2]

21   _____

22   [2] At the conference of counsel before this Court on June 14, 2011, the parties agreed
     to discuss ways to narrow the dispute.  To that extent, several categories are either no

23   longer in dispute, or the parties agree to address any dispute at a later date, if
     necessary.  Specifically:  (1) Respondents have reexamined regulations concerning the

24   disclosure of tax information and have excluded that information from the subject of
     the requested protective order because the regulations do not restrict the disclosure of

25   tax information submitted by the alien in the context of the A-File discovery

26   requested.  (2) In reviewing nearly half of the A-Files at issue, Respondents have not

27   found any documents that are protected from disclosure or may be disclosed only at

28   *(Footnote continued)*

# INTRODUCTORY STATEMENTS OF THE PARTIES

## 1.    Respondents' Introductory Statement

This Court should enter an order permitting Respondents to redact or otherwise withhold certain immigration-related information legally protected from disclosure under certain provisions of immigration law.  There are five categories of confidential information at issue.  Three of those categories – asylum-related information; VAWA and "T" and "U" visa information provided by abused, exploited, and victimized aliens; and information provided by battered spouses and children seeking hardship waivers – have extraordinarily strong statutory, regulatory, and public policy grounds that support the entry of the protective order Respondents seek.  As courts, international organizations, the American Civil Liberties Union, and even class counsel in this action have publicly acknowledged, the information Petitioners seek in these three categories, if improvidently disclosed, may directly lead to harm to the applicant by a foreign government seeking to exact retribution, by criminals seeking to interfere with law enforcement investigations, or by a spouse seeking to impose suffering.

The two remaining categories of information – legalization and SAW applications, and applications for TPS – are also protected by statute and regulation.  Even though disclosure of TPS and SAW applications is permitted by court order, that is limited to circumstances in which the SAW or TPS application is actually being litigated.  Legalization-related provisions do not permit disclosure by court order.

---

the discretion of the State Department and only following certification procedures under 8 U.S.C. § 1202(f).  If any documents are located, the parties have agreed that Respondents will immediately advise Petitioner to enable the parties to resolve the issue at that time.  The parties disagree as to how resolution of the State Department records issue will impact any discovery deadlines.  (3) The parties agree that registration-related fingerprinting and photographical information protected from disclosure under 8 U.S.C. § 1304(b) will be produced but redacted in its entirety.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS'
MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

6

Furthermore, entry of an order requiring the Government to produce information determined is highly discouraged given that Congress and federal agencies have already deemed this information worthy of confidential protection and limited disclosure. They have no bearing on this case, and there is no good reason for the Court to order the production of indisputably confidential information to Petitioners.

But in considering the particular categories of information in dispute, this Court should also ask a broader question: What need have Petitioners articulated for any of these categories of information in this class action challenge to detention beyond six months? There is no need that Respondents can identify. In previous filings Petitioners argued that they seek to "aggregate" individual data to show that detainees have strong cases against removal, but Petitioners have never articulated why they need to know the *particular basis* for a claim. With respect to the non-class members whose proceedings may have concluded (either in their favor or not), what value does the specific identification of the winning or losing claims add to this action challenging the statutory and regulatory bases for detention beyond six months? This question applies to each of the categories of information discussed in this stipulation, and the answer is that there is no need. The Court should grant the protective order.

One other matter that should be addressed at the outset is the question of what an appropriate protective order should provide. If this Court agrees that asylum, VAWA, "T" and "U" visa information should be most fiercely protected given the considerable risks disclosure can bring, then the protective order should allow Respondents to withhold the entire A-File of any such claimant or applicant. There is a critical reason the Court should adopt this approach: if these extraordinarily sensitive types of information are not protected in the same way, then identification of which alien made which claim becomes a matter of simple deduction and would defeat the purpose of the protection in the first instance.

For example, assume the Court were to permit Respondents to withhold the A-Files of VAWA and "T"/"U" visa applicants – which it should, given the breadth of the statute protecting such information – but also ordered Respondents to only redact asylum-related information from A-File materials to be produced.  Under those circumstances, identifying aliens who filed asylum claims would be as simple as identifying aliens whose A-Files were heavily redacted, and identifying aliens who filed VAWA and/or "T"/"U" visa applications would be as easy as identifying whose A-File was withheld – a simple exercise because Petitioners have a list of every alien whose A-File would be produced.  This would entirely undermine the purpose of the protective order from the outset.  For this reason, Respondents contend that the only way to provide the full and complete protection afforded by law to aliens who made asylum claims, VAWA claims, and "T"/"U" visa applications is to permit Respondents to withhold those A-Files (unless Petitioners obtain written waivers from those aliens).[3]

The Court should grant the protective order.

## 2.    Petitioners' Introductory Statement

As this Court concluded in granting Petitioner's motion to compel, the information in A Files is central to the due process inquiry at the heart of this case: whether the Respondents' existing custody review procedures are constitutionally adequate, including whether they appropriately assess danger or flight risk.  *See* Dkt. #165, #169.  The government objects to the production of broad categories of

---

[3] Although it would provide less protection to those aliens – and thus is far less preferable – the Court could permit Respondents to redact SAW, legalization, and TPS-related information as well as asylum information.  This would, to some degree, "mask" the claim subject to redaction, and would make identification of aliens who applied for asylum more difficult to identify.  However, it would not do anything to protect those aliens who filed a VAWA claim or "T"/"U" visa application, whose A-File should be withheld in light of the breadth of the statute.

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

8

documents within the A files as somehow privileged from civil discovery. The
documents in dispute include applications for immigration relief that, for many class
members, are the only source of critical information concerning their claims for relief
from removal and important biographical information, including family ties, work
history, length of residence, and criminal history.

None of the regulations or statutes cited by Respondents supports withholding
these relevant documents from Petitioners and their counsel in civil litigation. While
Congress can create a "privilege" within the meaning of Rule 26, courts narrowly
construe provisions that classify information as confidential to avoid "'suppress[ing]
otherwise competent evidence.'" *In re Nelson*, 873 F.2d 1396, 1397 (11th Cir. 1989)
(quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218 (1961)). A statutory
provision designating information as confidential "do[es] not bar judicial discovery
absent an express prohibition against such disclosure." *See Zambrano v. I.N.S.*, 972
F.2d 1122, 1125 (9th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993).

The statutory and regulatory provisions cited by Respondents neither contain an
express prohibition against judicial discovery nor purport to create an absolute
privilege. In fact, Respondents concede, as they must, that they cannot withhold the
disputed information from Petitioners who make requests in individual immigration
cases. But if Petitioners can obtain such files in individual proceedings, then they
necessarily can obtain those files in a certified class action. For this reason, it is
unsurprising that courts have overruled objections based on the same or similar
statutory provisions, including in immigration class actions. *Zambrano*, 972 F.2d at
1125-26 (granting class counsel access to legalization applications); *In re Nelson*, 873
F.2d at 1397 (granting class counsel access to SAW applications); *see also Nguyen Da
Yen v. Kissinger*, 528 F.2d 1194, 1205 (9th Cir. 1975) (granting class counsel access
to class members' immigration files because there is "no basis for finding the

plaintiffs [sic] own records absolutely privileged from disclosure to the plaintiffs' representatives").

Furthermore, the regulatory provisions cited by Respondents were enacted to protect the interests of individuals applying for immigration relief, not to create obstacles to seeking relief through civil proceedings.  Disclosure to class counsel does not interfere with, or undermine, any of the statutory purposes for treating information as confidential.  Class counsel has an ethical duty to maintain class members' information as confidential and disclose it, if at all, only when it serves their best interests.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("class counsel's fiduciary duty is to the class as a whole"); *Burnett v. Rowzee*, No. SACV07-641, 2007 WL 2767936, at *4 (C.D. Cal. Aug. 13, 2007) (recognizing ethical duty of confidentiality).  To the extent Respondents are concerned that people have or may fall out of the class, it is well-established that class counsel's duty of confidentiality extends to former clients as well.  *See City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846 (Cal. 2006) ("the duty to preserve client confidences . . . survives the termination of the attorney's representation"); ABA Model Rules of Professional Conduct: Rule 1.6 [Comment 18] and Rule 1.9(c)(2).

Respondents seek to pervert the purpose underlying the statutory provisions at issue by using them to withhold relevant evidence about due process violations.  For good reason, courts historically have expressed skepticism when the government seeks to use a statutory provision intended to protect a class of persons to withhold information about abuses of those persons.  *Cf. Pearson v. Miller*, 211 F.3d 57, 68 (3rd Cir. 2000) ("There is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged.") (citation omitted).

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**10**

Finally, Respondents' objections to disclosure of confidential information are overblown.  The Court already has adopted a protective order, and Petitioners of course will comply with that order.  In addition, as Respondents have pointed out, information about the class is likely to be presented on an aggregate basis.  To the extent possible, Petitioners intend to use evidence on an aggregate basis to eliminate any potential concern about the privacy or confidentiality interests of individual class members.  *See* Dkt. # 165 at 26-29.

# PARTIES' CONTENTIONS

## 1.  <u>ASYLUM CLAIM RELATED INFORMATION</u>

### A.  <u>Respondents' Contentions</u>

The protection of asylum-related information in this case is of distinct importance, because it has long been recognized that the disclosure of such information may have direct, possibly dangerous effects on the asylum seeker.  One plaintiff put it this way in a recent action in this district against the Department of Homeland Security for allegedly unlawfully disclosing information about the plaintiff's asylum application:  "One of the purposes for making the disclosure of such information unlawful is the protection of asylum applicants from reprisals from the governments of countries from which they are seeking asylum."  *Metry v. United States*, No. 08-cv-00585 (C.D. Cal. 2008) [Dkt # 1 ¶ 20].  About that lawsuit – and about the paramount need for the Government to keep asylum information undisclosed – class counsel in this case, Ahilan Arulanantham, had this to say:  "There is a serious concern that the government does not take any steps, on a regular basis, to ensure that the confidential information that *could endanger the immigrant* is kept out of the file provided to the home country."  Egyptian Asylum Applicant Sues the U.S., *Daily Journal*, Feb. 4 2008 (attached as Exhibit A).

The central purpose of international refugee protection and the U.S. asylum system is to protect refugees from persecution based on political opinion and other

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**11**

specified grounds.  As the D.C. Circuit noted, "[a]n asylum application contains personal information about the applicant and his family, including his personal history and political views, the release of which not only threatens the individual's privacy, but may very well endanger his life and the safety of other family members." *Judicial Watch, Inc. v. Reno*, 2001 WL 1902811, at *8 (D.D.C. Mar. 30, 2001).  Indeed, some states view the very act of applying for asylum in another state as the expression of an antigovernment political opinion – a political expression that can in turn lead to further persecution.  *See, e.g.,* Virgil Wiebe, *et al.,* <u>Asking for a Note From Your Torturer: Corroboration and Authentication Requirements in Asylum, Withholding and Torture Convention Claims</u>, Immigr. Briefings, Oct. 2001, at 6, n. 24 (human rights organization in Chad was forced to close down and its members forced to flee the country after the name of a Chadian human rights activist who had applied for asylum in the United States was revealed).  The critical importance of keeping asylum-related information confidential is a foundational underpinning of international agreements binding the United States.[4]

The United States has recognized its obligation to protect the confidentiality of asylum claims by restricting disclosure of asylum-related information.  Specifically, 8 C.F.R. § 208.6 provides:

---

[4] In 1968, the United States acceded to the 1967 Protocol Relating to the Status of Refugees, Oct. 4, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267, and became bound by provisions of the Protocol and the 1951 Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150, reprinted in 19 U.S.T. 6223, at 6259.  In 1980 the United States enacted the Refugee Act, which created the U.S. asylum adjudication system, in order to bring U.S. refugee law into conformance with the Protocol.  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 435-36 (1987).  The United Nations High Commission for Refugees has committed itself to a general policy of refusing to share any information relating to individual cases with the country of origin. *See* UNHCR, Letter Re: Requests for Documentation in Support of Refugee Claims (Oct. 19, 1998).

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

12

Disclosure to third parties.

(a)    Information contained in or pertaining to any asylum application shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General.

(b)    The confidentiality of other records kept by the Service that indicate that a specific alien has applied for asylum shall also be protected from disclosure. The Service will coordinate with the Department of State to ensure that the confidentiality of these records is maintained if they are transmitted to Department of State offices in other countries.

(c)    This section shall not apply to any disclosure to:

    (1)    Any United States Government official or contractor having a need to examine information in connection with:

        (i) The adjudication of asylum applications;

    (ii)    The defense of any legal action arising from the adjudication of or failure to adjudicate the asylum application;

    (iii)    The defense of any legal action of which the asylum application is a part; or

    (iv)    Any United States Government investigation concerning any criminal or civil matter; or

    (2)    Any Federal, state, or local court in the United States considering any legal action:

        (i)    Arising from the adjudication of or failure to adjudicate the asylum application; or

        (ii)    Arising from the proceedings of which the asylum application is a part.

8 C.F.R § 208.6.  It is important to note the breadth of the limitation on disclosure of any "[i]information contained in or pertaining to any asylum application," which includes acknowledgement of the application's very existence.  *See Al-Amiri v. Holder*, 412 Fed. Appx. 988 (9th Cir. 2011) (disclosure that "reveals that [an alien] had applied for asylum in this country" violates the regulation).

The Department of Justice has interpreted section 208.6 as prohibiting disclosure of asylum seekers to third parties, and has underscored the circumstances in

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

13

which those disclosures may be made – none of which apply here.  *See* Memorandum from Bo Cooper, INS General Counsel, to Jeffrey Weiss, INS Director of Int'l Affairs, Confidentiality of Asylum Applications and Overseas Verification of Documents and Application Information (June 21, 2001) ("Cooper Memo"), available at http://judiciary.house.gov/legacy/82238.pdf at 39–45 ("Preserving the confidentiality of asylum applications must always be a primary consideration in processing requests for investigations.").  Indeed, the need for confidentiality in asylum-related matters is so important that the Cooper Memo instructed that "[i]f an investigation cannot be accomplished without compromising the confidentiality of the application, *the investigation should be abandoned . . .*"  *Id.*  DHS has similarly made public a detailed memorandum providing guidance as to the maintenance and disclosure restrictions on asylum-related information, and that guidance likewise countenances no applicable exception here.  *See* U.S. Citizenship and Immigration Services, Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants (June 3, 2005) ("USCIS Fact Sheet"), available at http://www.uscis.gov/files/pressrelease /FctSheetConf061505.pdf. (detailing the guidelines for maintaining confidentiality of asylum-related information) (attached as Exhibit B).

The regulation expressly and unambiguously restricts identifying those circumstances in which a disclosure of asylum-related information has been made. Disclosures of asylum-related information may be made in two general circumstances: (1) where the asylum-seeker has provided "written consent" – not merely oral consent or consent conveyed by counsel for an asylum-seeker in the context of the attorney-client relationship,[5] and (2) in the discretion of the Attorney General (now the Secretary of Homeland Security)[6].

---

[5] Although the protective order agreed to by the parties in this action permits "Confidential Information" to be disclosed by class counsel for class members on the "consent" of their class clients in this action, such consent is not the same as the

*(Footnote continued)*

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

14

In the absence of either written consent of the asylum-seeker or an exercise of discretion on the part of the Secretary of Homeland Security (which has not occurred in this case), no disclosure may be made in this case.  The enumerated exceptions in § 208.6(c) do not apply.  Section 208.6(c)(1) does not apply because Petitioners do not seek a disclosure to a "United States Government official" or a government "contractor," nor would any disclosure meet the asylum-adjudicatory, defense, or investigatory purposes of section 208.6(c)(1).  Section 208.6(c)(2) permits disclosure to a federal court, but only in a legal action "[a]rising from the adjudication of or failure to adjudicate the asylum application" or "[a]rising from the proceedings of which the asylum application is a part."  Neither applies here.  This is a class action challenging prolonged detention under four detention statutes.  It is not an action challenging the denial of an asylum application.  And only under the most attenuated reading could one accept an argument that the mere fact that some class members may have sought or are seeking asylum makes this class action suit arise from "proceedings" of which the asylum applications are a "part."  That language was intended to permit disclosure in cases where the asylum application was a meaningful part of earlier proceedings, and not any class action where an alien happened to have sought asylum at some point.

---

written consent the regulation requires.  As the parties explained to this Court at the June 14, 2011 hearing, when crafting the protective order the parties specifically agreed that the protective order would not address the issues presented herein.  Thus, the Court should not conflate the "consent" for the unrestricted disclosure of "Confidential Information" in the June 28, 2011 protective order with an understanding that such "consent" amounts to the consent required by the regulations and statutes at issue in this dispute.

[6] Given the extraordinarily sensitive nature of asylum-related information, the Second Circuit has acknowledged that DHS would exercise its discretion and release asylum information only in "presumably rare circumstances."  *Lin v. U.S. Dept. of Justice*, 459 F.3d 255, 266-67 (2d Cir. 2006).

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

15

Several circuit courts have recognized that section 208.6 imposes broad restrictions on the disclosure of asylum-related information.  *See Lin v. U.S. Dept. of Justice*, 459 F.3d 255, 263 (2d Cir. 2006) (reviewing section 208.6 and interpreting memoranda, and concluding that compliance with section 208.6 was so important to the safety of the applicant that a violation of that section made the previously ineligible applicant eligible for asylum and/or withholding of removal); *Anim v. Mukasey*, 535 F.3d 243 (4th Cir. 2008) (stating that "the confidentiality regulations are of utmost importance in protecting asylum applicants" and holding that a violation of section 208.6 requires an asylum applicant to be given a new opportunity to apply for asylum); *Averianova v. Mukasey*, 509 F.3d 890 (8th Cir. 2008) (giving substantial deference to the Board of Immigration Appeals' interpretation of section 208.6 and discussing the Cooper Memo and USCIS Fact Sheet).

In *Lin*, the Second Circuit held that the regulation was "unambiguously absolute" in restricting disclosure of information "contained in" or "pertaining to" an asylum application.  *Lin*, 459 F.3d at 262.  In rejecting the argument that section 208.6 applies to "sensitive" information, the court cited to the Cooper Memo and the USCIS Fact Sheet as established interpretations of section 208.6, and explained that the Fact Sheet provided the Government's view of its own regulation:  "[C]onfidentiality [under 8 C.F.R. § 208.6] is breached when information contained in or pertaining to an asylum application is disclosed to a third party in violation of the regulations, and the unauthorized disclosure is of a nature that allows the third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum."  *Lin*, 459 F.3d at 262.

Petitioners cannot identify any exception or policy ground in section 208.6, the Government's interpretations of its own regulation, or *Lin* to conclude that they

should be provided with the asylum information that is restricted in "unambiguously absolute" terms.  Petitioners have already admitted that they need the asylum information *specifically so they can identify the asylees and aggregate their data*. That sort of linking of the individual with their claim for asylum is precisely what *Lin* acknowledges the regulation seeks to prevent, and the sort of identification that Mr. Arulanantham himself has acknowledged can pose grave risks to asylum-seekers.

Of course, Petitioners may contend that the only real danger to asylum-seekers in this case arises if the information Petitioners demand gets into the hands of the persecutors from which those asylum-seekers have fled.  But that is not what the regulation restricts.  By restricting disclosure to any third party, the regulation is designed to prevent *any* reasonable possibility that information regarding an alien's claim of asylum will ultimately pose a risk to that alien.  Additionally, the confidentiality restrictions assure asylum seekers that the information they share will be protected from disclosure.[7]  If this Court were to order disclosure, it would include disclosure to class counsel, their staff, Petitioners' experts and *their* staff.  Petitioners may argue that disclosure here is permissible because they are counsel to the individuals whose files are at issue.  However, Petitioners seek disclosure of asylum-

---

[7] Individuals are expressly told that their asylum information will remain confidential. From the USCIS informational webpage for readers seeking information on filing a claim for asylum:  "The information you share with the Asylum Officer is protected by confidentiality provisions found in 8 CFR § 208.6.  In general, information related to your asylum claim cannot not be shared with third parties without your written consent or specific authorization by the Secretary of Homeland Security.  There are certain exceptions to this rule, however, which can be found in the confidentiality regulations cited above."  *See* USCIS Webpage, attached as Exhibit E.  Courts have recognized that privacy interests are enhanced where an asylum-seeker has been informed that their request for asylum would be kept confidential.  *See Phillips v. ICE*, 385 F. Supp. 2d 296, 305 (S.D.N.Y. 2005) ("the fact that a government agency has effectively promised confidentiality to persons supplying information to it creates justifiable expectation of privacy.")

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**17**

related information of literally hundreds of individuals *who have nothing to do with this action*. The vast majority of the over 1,000 A-files at issue here are of individuals that are not class members and are not represented by Petitioners. The class members who represent a far fewer number of A-files could also be completely unaware of this class action (and unaware that confidential information in their A-file could potentially be disclosed) given that the class was certified under Rule 23(b)(2) and no notice was provided. Accordingly, disclosure to class counsel as proposed would not only be made without asylum applicants' consent, it would be done without their knowledge that this information was subject to disclosure at all.

Those factors taken together are ample to support the entry of a protective order. The Court also must consider that Petitioners have articulated no need for sensitive, highly-guarded asylum information in this class action challenge to detention beyond six months. Petitioners' previous filings have argued that Petitioners seek to "aggregate" individual data to show that detainees have strong cases against removal, but Petitioners have never articulated why they need to know the actual basis for a claim. There is none. Asylum-related information should be protected from disclosure in this non-asylum-related case.

## B.    **Petitioners' Contentions**

Asylum applicants constitute the majority of the section 1225(a) sub-class and a significant portion of the overall class. Exhibit 45 (Declaration of Jennifer Stark) ("Stark Decl.") ¶ 23. Respondents contend they can withhold relevant, non-privileged asylum-related information about these class members based on 8 C.F.R. § 208.6. Section 208.6 does not bar disclosure of relevant information in civil litigation and certainly should not when the disclosure is being made to vindicate the due process rights of asylum seekers.

Asylum-related documents contain a wealth of relevant information about the claims of class members. Asylum applications, for example, include such relevant

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**18**

information as recent residences, employment history, education history, criminal history and other biographical information, as well as information about family members, including the residence and immigration status of the applicant's spouse and children.  Exhibit 46 (Declaration of Judy London) ("London Decl.") ¶ 13.  In addition, an application typically includes supporting documents, including "declarations from witnesses (including family and community members), the birth certificates and green cards of relatives, school diplomas, letters from past employers, criminal court documents, and extensive information about country conditions."  *Id*. at ¶ 15.  This information can bear on whether an individual presents a danger to the community or flight risk and thus is relevant to whether the individual should be released on bond.  Asylum applications also reflect the basis for the claims for immigration relief, which independently can bear on the assessment of flight risk and thus the necessity of release on bond.

Significantly, asylum applications in many instances constitute the only ready source of information about class members' claims.  Individuals who arrive at a port of entry and apply for asylum, for instance, generally do not have any prior contact with immigration authorities or apply for additional forms of relief besides asylum.  In addition, asylum applicants often lack sufficient understanding of the immigration process to be able to answer questions about their claims. Exh. 45 (Stark Decl.) ¶¶ 13, 24.  As a result, barring disclosure of asylum-related information would deprive Petitioners not only of relevant information, but also what is likely the best and only source of information about a large number of class members.

Perhaps because of the importance of this information, Respondents now argue that Section 208.6 requires them to withhold asylum-related information from the very persons who provided the information in the first instance.  As an initial matter, Section 208.6 does not create a privilege or explicitly bar disclosure of asylum-related information in civil proceedings.  Rather, the statute generically provides that:

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**19**

(a) Information contained in or pertaining to any asylum application, records pertaining to any credible fear determination conducted pursuant to § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 208.31, shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General.

The lack of a statutory privilege or express language prohibiting disclosure in judicial proceedings alone defeats Respondents' position. *See Zambrano*, 972 F.2d at 1125-26 (provisions barring disclosure "do not bar judicial discovery absent an express prohibition against such disclosure").[8]

Respondents' refusal to produce relevant asylum-related information also cannot be reconciled with the purpose of Section 208.6. Congress was concerned about disclosures that would "subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin.'" *Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008) (quoting U.S. Customs & Immigration Servs. Asylum Div., U.S. Dep't of Homeland Sec., Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants (2005)). None of those concerns applies here, particularly given class counsel's duty of confidentiality and the protective order, which prevents disclosure to third parties.

---

[8] *Zambrano* was vacated and remanded in light of an intervening Supreme Court decision dealing with the ripeness of the class' claim for relief. *See I.N.S. v. Zambrano*, 509 U.S. 918 (1993). While the portion of the Ninth Circuit's opinion dealing with § 1255a(c)(5) is not binding precedent, it remains "the most pertinent statement of the governing law" on this issue in the Ninth Circuit. *See Orhorhaghe v. I.N.S.*, 38 F.3d 488, 493 n.4 (9th Cir. 1994) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 646 (1979) (Powell, J., dissenting)). That is why courts have continued to cite and rely upon the Ninth Circuit's original decision in *Zambrano*. *See, e.g.*, *Hassan v. United States*, No. C05-1066C, 2006 WL 681038, at *3 (W.D. Wash. Mar. 15, 2006) (following *Zambrano* in holding documents subject to civil discovery).

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

20

Respondents' misreading of Section 208.6 mirrors positions rejected by the
Ninth Circuit and other courts.  For instance, in a class action concerning the
Immigration Reform and Control Act ("IRCA"), the Ninth Circuit rejected efforts by
the INS to withhold identifying information about class members based on a
confidentiality provision in the IRCA.  *Zambrano*, 972 F.2d at 1125-26.  The relevant
provision provided that any disclosure of information was prohibited, but it did not
expressly bar disclosure in civil discovery.  *Id.*  The Ninth Circuit looked to the
purpose for treating information as confidential – to protect the interests of applicants
for legalization – and concluded disclosure to class counsel "facilitates, rather than
frustrates, the legislative intent of the statute."  *Id.* at 1126; *see also United States v.
Hernandez*, 913 F.2d 1506, 1512 (10th Cir. 1990) (concluding SAW and legalization
provisions "only prohibit disclosures which aid in the deportation of illegal aliens").

Likewise, the Eleventh Circuit affirmed an order compelling production of class
members' A files in a case challenging the INS's administration of the Special
Agricultural Worker ("SAW") program.  *In re Nelson*, 873 F.2d 1396, 1397 (11th Cir.
1989).  Like the Ninth Circuit, the Eleventh Circuit court looked to the purpose for
treating information as confidential, which was to assure potential applicants that
immigration information would not be used *by the government* for enforcement
purposes.  *Id.*  Because civil discovery did not frustrate that purpose, the Court did not
allow the government to withhold relevant information sought in civil discovery.  *Id.*

The Ninth Circuit's decision in *Zambrano* and the Eleventh Circuit's decision
in *Nelson* are consistent with numerous cases construing analogous statutory
provisions that generally prohibit the disclosure of information, but do not prohibit
disclosure in connection with judicial proceedings.[9]  *Zambrano* and *Nelson* also are

---

[9] *See, e.g., Hassan v. United States*, No. C05-1066C, 2006 WL 681038, at *3 (W.D.
Wash. Mar. 15, 2006) (confidentiality provision in Food Stamp Act "makes no
explicit reference to judicial disclosure" and therefore "does not create any privilege

*(Footnote continued)*

consistent with decisions that overrule assertions of confidentiality by the government where, as here, the information is being sought to prevent government abuses. *Cf. Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 587 (D. Kan. 1999) (granting Americans with Disabilities Act plaintiff access to personnel files, observing that "Congress never intended for a defendant charged with violating the ADA to use the ADA's confidentiality provisions to impede a plaintiff's ability to…establish his/her claims"); *Pearson*, 211 F.3d at 68 (3rd Cir. 2000) (recognizing "a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged.").

Finally, two additional factors reinforce why Section 208.6 does not bar civil discovery in this case. First, the regulation expressly grants the Attorney General discretion to disclose asylum-related information, which is inconsistent with an absolute statutory bar that would enable Respondents to withhold relevant information in civil litigation. Second, the regulation prohibits disclosure "to third parties," and class counsel in a certified class action is not a "third party." Rather, class counsel represent and stand in the shoes of their clients.

---

barring discovery"); *In re Grand Jury Subpoena Duces Tecum*, No. 101MC00005, 2001 WL 896479, at *4 (W.D.Va. June 12, 2001) (Medicaid and Food Stamp Act confidentiality provisions do not "state that these documents may not be used in legal proceedings" and "do not create a statutory privilege protecting these records from disclosure"); *Wallman v. Tower Air, Inc.*, 189 F.R.D. 566, 569 (N.D. Cal. 1999) (ordering airline to produce passenger manifest because confidentiality provision in Aviation Security Improvement Act "does not create a special privilege"); *Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 585-87 (D. Kan. 1999) (granting Americans with Disabilities Act plaintiff access to personnel files); *cf. Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 428 (C.D. Cal. 1999) (deciding under California law that "a statement of confidentiality does not automatically preclude such information from discovery," and noting California law is consistent with Ninth Circuit precedent).

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

22

Consequently, Section 208.6 does not allow Respondents to withhold relevant asylum-related information, and the Court should order that this information be disclosed.

### C.    **Respondents' Reply to Petitioners' Contentions**

#### (1)    *Petitioners misstate the proper standard.*

As an initial matter, there is no dispute between the parties that in determining whether to order disclosure, the Court must look to the statutory or regulatory language to determine congressional or agency intent regarding the disclosure of confidential information, including in judicial proceedings.  *See St. Regis Paper Co. v. United States*, 368 U.S. 208 (1962).  But Petitioners' contentions misstate the appropriate standard by looking exclusively to whether Congress declared its intent through language expressly barring the disclosure of confidential information in judicial proceedings.  Petitioners rely primarily on the Supreme Court's discussion in *St. Regis*, and on the Ninth Circuit's decision in *Zambrano v. INS*, 972 F.2d 1122 (9th Cir. 1992), *vacated and remanded*, *I.N.S. v. Zambrano*, 509 U.S. 918 (1993), to claim that unless there is a *specific* provision in a statute or regulation prohibiting disclosure in a judicial proceeding, no privilege attaches to prevent such a disclosure.  This too narrowly – and incorrectly – states the law in this area.

Undoubtedly, the terms of a statute should be strictly construed "to avoid a construction that would suppress otherwise competent evidence," *St. Regis*, 368 U.S. at 218, but if there is a valid statutory privilege, then "information may be withheld, even if relevant to the lawsuit and essential to the establishment of plaintiff's claim." *Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982).[10]  However, the issue of whether

---

[10]    By no means do Respondents concede that the information sought through the various claims and applications are in any way "relevant and essential" to the establishment of Petitioners' claims in this case.  In this case, Petitioners argue that detention for more than six months without an individualized bond hearing violates

*(Footnote continued)*

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

23

Congress or an agency intended to create a privilege that renders certain information immune from civil discovery does not solely turn on whether the statute or regulation contains language explicitly shielding that information from civil discovery.  Congress or an agency *may* incorporate such express language, but the establishment of a privilege does not require Congress or an agency to do so.

Indeed, normal conventions of statutory construction instruct that where Congress has *not* created an exception to otherwise clear disclosure restrictions, courts should not create exceptions not otherwise provided.  "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others." *In re England*, 375 F.3d 1169, 1180 (D.C. Cir. 2004) (quoting *Detweiler v. Pena*, 38 F.3d 591, 594 (D.C. Cir. 1994), and citing *United States v. Johnson*, 529 U.S. 53, 58 (2000)).

In *England*, the D.C. Circuit properly concluded that where a statute provides a disclosure restriction, but *does not include* an exception for judicial disclosure in civil discovery, then courts must conclude that Congress did not intend such an exception. *Id.* at 1177-78.  The restriction against disclosure in the statute at issue in that case – 10 U.S.C. § 618, which restricted the disclosure of selection board reports – was clear

---

the detention statutes of the INA and the Due Process Clause of the Fifth Amendment of the United States Constitution.  (Third Amended Complaint ¶ 13 "Respondents' general policies and practices of prolonged detention without hearings are in violation of the statutory and constitutional rights of the Petitioners and other class members.").  The case thus requires analysis of the relevant statutes and the U.S. Constitution, and does not require information about the merits of over 1000 aliens' removal defenses or their individual risks of flight and danger to the community.  *See Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir.) ("The particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question").  To the extent that Petitioners want to show how the Government's detention procedures operate, they have selected, and the district court has certified, representatives for the class and each subclass based on the four INA statutes at issue. .

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

24

and unambiguous.  The D.C. Circuit found "no inherent ambiguity in the phrase 'may not be disclosed' that would justify departing from those plain terms pursuant to a judicially-crafted exception" allowing disclosure in civil proceedings.  *Id.* at 1177.  The D.C. Circuit held that because "[t]he statute makes no provision for disclosure pursuant to the Federal Rules of Civil Procedure, even as it does for disclosure pursuant to Section 618 itself, . . . we are reluctant to imply an additional exception for that purpose."  *Id.* at 1178.  Other courts are in accord with this reasoning.  *See Chowdhury v. Northwest Airlines Corp.*, 226 F.R.D. 608, 611-12 (N.D. Cal. 2004) (concluding that neither the transportation safety statute nor the disclosure regulations authorized by the statute at issue made an exception for disclosure in civil discovery, and declining to create such an exception in light of either Congress's or the agency's expert determination not to make such an exception).

> **(2)    *The asylum regulations explicitly bar disclosure in judicial proceedings, with two exceptions that do not apply here*.**

Petitioners argue that section 208.6 permits disclosure by court order because that section lacks "express language prohibiting disclosure in judicial proceedings." *Supra* at 20.  In their contentions, Petitioners focus exclusively on sub-section 208.6(a) to conclude that section 208.6 "does not explicitly bar disclosure of asylum-related information in civil proceedings."  *Supra* at 19.  Petitioners are incorrect.

First, section 208.6(a) contains an absolute prohibition that asylum-related information "shall not be disclosed" except to Government Officials or contractors (of which Petitioners and their counsel are neither), or in the discretion of the Attorney General (now the Secretary of Homeland Security).  Second, notably absent from Petitioners' contentions is any discussion or acknowledgement of subsection 208.6(c)(2), which specifically addresses the limited circumstances in which asylum information may be disclosed in judicial proceedings.  That sub-section – read

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**25**

together with the general prohibition against disclosure of subsection 208.6(a) –

provides as follows:

> (a) Information contained in or pertaining to any asylum application shall not be disclosed . . . except as permitted by this section . . .
>           . . .
> (c) This section shall not apply to any disclosure to:
>           . . .
> (2) Any Federal, state, or local court in the United States considering any legal action:
> (i) Arising from the adjudication of or failure to adjudicate the asylum application; or
> (ii) Arising from the proceedings of which the asylum application is a part.

8 C.F.R. §§ 208.6(a), (c)(2).  Read together, this regulation provides an express and

unambiguous prohibition against disclosure in any judicial proceeding except in the

two narrow circumstances expressly identified in subsection 208.6(c)(2).[11]  The

regulation simply cannot logically be read any other way.  Thus, even if this Court

were to accept Petitioners' characterization of *St. Regis* and *Zambrano*, the asylum-

information they seek is barred from disclosure in this action because the regulation

does in fact "expressly bar disclosure in civil discovery."

---

[11] This action meets neither exception of section 208.6(c)(2)(i) or (ii).  This is not an action "arising from the adjudication or failure to adjudicate an asylum application." 8 C.F.R. § 208.6(c)(2)(i).  That language exempts disclosure in an action challenging an agency's denial of an asylum application, or an action seeking mandamus or other relief to compel adjudication of an asylum application.  Nor is this an action "arising from the proceedings of which an asylum application is a part."  8 C.F.R. § 208.6(c)(2)(ii).  This action "aris[es] from" no "proceedings," immigration or otherwise, in which an asylum application was "a part."  This provision likely contemplates actions arising from removal proceedings in which a claim of asylum is an issue.  Accordingly, the exceptions against disclosure in a judicial proceeding do not apply.

1
2

### (3) *The Court should ignore Petitioners' efforts to circumvent the unambiguous language of the regulation.*

3
4
5

Petitioners seek to circumvent the clear and explicit prohibition against disclosure of asylum-related information in civil proceedings under section 208.6 by ignoring the plain language of the regulation.

6
7
8
9
10
11
12

First, Petitioners argue that upholding the disclosure restrictions "cannot be reconciled with the purpose of section 208.6." *Supra* at 20. This argument must be rejected because – even under Petitioners' own interpretation of the law in this area – the primary question is whether the language of the regulation bars disclosure. There can be no doubt that the statute expressly bars disclosure in judicial proceedings except in two narrow circumstances that do not apply here. That should end the inquiry.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

But even if this Court could look past the regulation's express language, Petitioners are incorrect in arguing that disclosure to them would somehow not undermine the regulation's purpose. As courts, international bodies, and even counsel for Petitioners have publicly stated, the confidentiality of asylum-related information is paramount. *See supra* at 12. Because asylum-related information is highly sensitive, the regulation unambiguously limits the manner in which it can be disclosed. Petitioners insist that the Court should not be concerned about disclosure of asylum-related information in this action because there is a confidentiality order in place. Nothing in the regulation, however, exempts disclosures made pursuant to a confidentiality order. Moreover, as Petitioners cannot deny, inadvertent disclosures unfortunately occur. *See, e.g., El Badrawi v. DHS*, No. 07-cv-01074-JCH (D. Conn. Jan. 12, 2011) (Dkt # 403) (joint notice to the district court that public-interest group counsel for Plaintiff "inadvertently filed highly confidential law enforcement information subject to the Court's Attorneys-Only Protective Order."). Petitioners'

27
28

promise not to release the information notwithstanding,[12] the language of the regulation is clear, and the Court should reject Petitioners' attempt to create an end-run around the regulation's disclosure prohibitions on the ground that they will keep it secret. This Court should adhere to the regulation's restrictions as to how such information can be disclosed, because it is entirely in keeping with the purposes of maintaining confidentiality of asylum-related information, and consistent with the United States' obligations under international convention.

Second, Petitioners argue that this Court may ignore the express restriction against the disclosure of asylum-related information in judicial proceedings because "the information is being sought to prevent government abuses." *Supra* at 22. But the cases Petitioners cite – *Scott v. Leavenworth Unified School Dist No.* 453, 190 F.R.D. 583, 587 (D. Kan. 1999), and *Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000) – stand for the proposition that a party cannot use statutory or regulatory disclosure provisions as a shield to prevent discovery against their own wrongdoing. This case does not involve an action against a Government official over misconduct, as in *Pearson*. This

---

[12] Despite Petitioners' counsel's sincerity in expressing their intention to keep information confidential, Petitioners have nevertheless insisted that as class counsel, they should be entitled to receive any and all information about current class members *and former class members they do not represent*, regardless of *any* disclosure restrictions, even where disclosure to the asylum-seeker is itself prohibited except through written consent to the Government by the alien. The scope of Petitioners' demand should give this Court pause, because the majority of A-files at issue are of individuals who are not class members and Petitioners have offered nothing to explain why they would be entitled to confidential information from individuals they do not represent. As to the limited number of class member A-files, Petitioners have offered nothing to assure this Court that those even in the class (1) aware of this action, or (2) aware that counsel now seeks their asylum-related information – information they were promised would be kept confidential – so that counsel can further disclose it to their staff, experts, and the experts staff. (*See* Protective Order). Because Petitioners have a list of names, A-numbers and detention locations, they can obtain written consent forms for these class members.

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

28

case also does not raise any claims regarding asylum applications.  Nor would protecting confidential asylum information defeat the very purpose of the regulation containing the disclosure restrictions, as in *Leavenworth*.  To the contrary, government officials risk committing misconduct and defeating the purpose of the regulation precisely by disclosing the protected information that Petitioners now request.  *See, e.g.,* 8 U.S.C. § 1367 (enumerating penalties that may accrue for anyone who permits an alien's confidential information related to a VAWA, U or T visa application to be disclosed).

Petitioners suggest that by standing as a defendant in this action, the Government is not in a position to assert governmental privileges that it would otherwise be able to assert under other circumstances.  However, courts and scholars have recognized that the position of the Government in civil litigation should not affect the Government's ability to assert its privilege absent waiver.  *Cf. Wirtz v. Continental Finance & Loan Co. of West End*, 326 F.2d 561, 563 (5th Cir. 1964) (the Government, when it institutes an action, does not waive all privileges it may have and submit itself to unlimited discovery); *see also* A. Wright & C. Moore, 8 Fed. Prac. & Proc. Civ. § 2019 (3d ed.) (2011) ("Any distinction between the government as plaintiff and the government as defendant seems unsound.  The balance between the private litigant's need for the information and the government's interest in keeping it confidential does not depend on how the parties are aligned in the litigation.") (citing Hardin, *Executive Privilege in the Federal Courts*, 71 Yale L.J. 879, 891–892 (1962));

Third, Petitioners argue that the regulation grants the Attorney General discretion to release asylum-related information, which Petitioners claim is "inconsistent with an absolute statutory bar that would enable Respondents to withhold" such information.  *Supra* at 22.  However, there *is* an absolute bar, except with respect to disclosures permitted under the regulation (including by the Secretary of Homeland Security in her discretion).  Petitioners would have the regulation's

carefully-defined exceptions swallow the regulation's prohibition that asylum-related information "shall not be disclosed." If Petitioners are correct, then any statute or regulation barring disclosure except in limited circumstances would mean that the exception obliterates the bar in all other circumstances. That would lead to absurd results rendering the disclosure bar meaningless.

Finally, Petitioners advance the argument that this regulation, titled, "Disclosure to Third Parties," does not apply to them because as class counsel they are not "third parties." As an initial matter, conventions of statutory and regulatory construction have established that a section's title alone is not controlling. *See Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947) (recognizing that a statutory title is typically a shorthand summary – and not a complete description – of the general provisions contained in the text, and therefore is not binding on the statute's interpretation). Accordingly, while the *title* of the regulation states "Disclosure to Third Parties," the text of section 208.6 makes clear that these prohibitions protect asylum-related information, including disclosure about who has applied for asylum, from disclosure with respect to judicial proceedings in all but two specific types of judicial proceedings.

In any event, class counsel's argument that they are not "third parties" because they "stand in the shoes of their clients" is erroneous. This argument fails to account for the fact that the majority of A-file materials subject to disclosure are of individuals who are not currently detained and are not class members in this action. It is instructive at this point to touch the scope of the attorney-client relationship with respect to the aliens who are currently in the class, and those who are no longer in the class. Certification under Rule 23(g) "makes *the Class* the attorney's client for all practical purposes." *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n. 15 (2d Cir. 1978) (finding attorney-client relationship between absentee class members and class counsel after certification and trial) (emphasis added). However, where an individual

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

30

falls out of the class, that individual is no longer a member of the class and therefore no longer represented by the class counsel. *Cf. In re Williams*, 40 F.3d 1245 (4th Cir. 1994) (unpublished) (prisoner who was member of a class action fell out of the class and was therefore no longer entitled to seek replacement of class counsel or class monitor); *Cox v. Management Training Corp.*, No. 3-02-cv-1134, 2003 WL 21730542 (N.D. Tex. 2003) (released prisoner in detention class action is "no longer a member of any class which may be entitled to injunctive relief"); *see* March 10, 2010 Class Certification Order (certifying class of non-citizens who "*are* or will be detained") (emphasis added).

The Government does not dispute Petitioners' contention that class counsel has a duty to preserve former class members' confidences, *see supra* at 10, but that is not the same as entitlement by class counsel to confidential information about former class members, nor does that principle establish that the class counsel stands in the place of the former class member such that they may provide an intentional waiver on that alien's behalf. The duty to preserve confidences does not perpetuate the representation. Not surprisingly, then, Petitioners cite to no authority permitting them such information with respect to such individuals outside the class, either on the basis of current representation or otherwise.

The far limited number of class members are "absent class members" who may have no knowledge that they are represented. Courts recognize a distinct difference between absent class members such as those at issue here, and named plaintiffs, because absent class members are generally not subject to discovery and are not considered to have the same relationship to counsel as do named plaintiffs. *See McPhail v. First Command Fin. Planning, Inc.,* 251 F.R.D. 514, 517 (S.D. Cal. 2008) (*quoting Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810, (1985) ("[A]n absent class-action plaintiff is not required to do anything.") *and Fischer v. Wolfinbarger*, 55 F.R.D. 129, 132 (W.D. Ky. 1971) ("It is not intended that members of the class should

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

31

be treated as if they were parties plaintiff, subject to the normal discovery procedures, because if that were permitted, then the reason [behind Rule 23(a)(1) of the Federal Rules of Civil Procedure] would fail.").

Moreover, Petitioners' position fails to account for the fact that individuals with authority to waive confidentiality provisions such as those at issue here must do so intentionally, which is impossible in an action where they have no idea that they are even represented.  *See, e.g., Irons v. F.B.I.,* 811 F.3d 681, 686 (1st Cir., 1987) (holding that "waiver" of confidentiality is defined based on "the purposeful relinquishment of an appreciated right"); *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999 (7th Cir. 1971), *cert. denied by Herriman v. Midwestern United Life Ins. Co.,* 405 U.S. 921 (1972) (allowing post-certification discovery from absent members in a limited circumstance "so long as adequate precautionary measures are taken to insure that the absent member is not misled or confused").  For example, the disclosure of asylum-related information is deemed so confidential that it may be made only with express written consent of the alien.  8 C.F.R. § 208.6.[13]  Given these requirements for waiver, it is illogical, as Petitioners now ask, for the Government to deem the majority of class members whose A-files are at issue here to have expressly consented to disclosure of their confidential asylum claim and other information to counsel they do not know and have not had any role in selecting.

### D.    Petitioners' Reply to Respondents' Contentions

Respondents never explain how Section 208.6 can bar disclosure of asylum-related information to Petitioners' own counsel.  While Respondents discuss at great length the regulation's purpose – to protect asylum applicants from retaliation in their home countries – they fail to explain at all how disclosure to class counsel could lead

---

[13]  Petitioners could seek written consent from current class members, who counsel are aware of and are in detention and can be contacted directly.

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

32

to any "reasonable possibility" of such harm.  In fact, Petitioners are well protected by the confidentiality and fiduciary duties that class counsel owe their clients, as well as the Stipulated Protective Order that governs production of the A files.

Counsel for Petitioners agree that preventing disclosure of asylum-related information *to home country governments* is of utmost importance, as Mr. Arulanantham has previously stated.  The fact that the regulation prohibits the disclosure of sensitive information to an asylum applicant's home country, however, in no way implies that the regulation bars disclosure to an applicant's lawyer.  The authority cited by Respondents supports Petitioner's argument that the regulation is intended to protect from disclosure to the applicant's home country, not to his or her attorney.  *See* "Cooper Memo," *available at* http://judiciary.house.gov/legacy/82238.pdf at 41-43 (memo for *overseas* immigration personnel, including guidance on permissible communication with asylum applicant's home country); USCIS Fact Sheet, *available at* http://www.uscis.gov/files/pressrelease/FctSheetConf061505.pdf (explaining that "regulations safeguard information that, if disclosed publicly, could subject the claimant [or family members still residing in the home country] to retaliatory measures by government authorities").[14]

Respondents observe that asylum applicants are expressly told that their asylum information will remain confidential, but that statement only begs the question of whether that confidentiality extends to civil discovery.  Confidential does not mean privileged, and Respondents have provided no authority that suggests the regulation

---

[14] Every case cited by Respondents involves claims that the government disclosed information to the asylum applicant's home country.  *See Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008); *Averianova v. Mukasey*, 509 F.3d 890, 898 (8th Cir. 2007); *Lin v. United States Dep't of Justice*, 459 F.3d 255, 264-65 (2d Cir. 2006).

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

33

bars disclosure to an applicant's own attorney.  The clear intent of the regulation – to prevent disclosure to home countries – is inconsistent with such a broad construction.

Respondents also misunderstand the key relevance of asylum applications and supporting documents to this case.  Petitioners seek these documents because they contain a wide range of biographical information that bears on class members' level of flight risk and danger, and not simply for the purpose of showing that "detainees have strong cases against removal" as Respondents suggest.  Indeed, for many class members, their asylum applications will be the only source of critical biographical information.

Respondents' arguments notwithstanding, it does not matter that this is a Rule 23(b)(2) class or that some detainees are no longer members of the class.  Courts have permitted discovery of private information about Rule 23(b)(2) class members, including in immigration cases.  *In re Nelson*, 873 F.2d 1396, 1397 (11th Cir. 1989) (permitting discovery of class members' SAW files in certified Rule 23(b)(2) class action);[15] *see also Ligas v. Maram*, No. 05 C 4331, 2007 WL 4225459, at *7 (N.D. Ill. Nov. 27, 2007); *Orlowski v. Dominick's Finer Foods, Inc.*, No. 95 C 1666, 1998 WL 26171, at *2 (N.D. Ill. Jan. 16, 1998).  Respondents cite no authority for treating Rule 23(b)(2) classes as having different privacy protections.  There is similarly no support for Respondents' contention that disclosure of information about past class members is inappropriate.  Class counsel have an ethical responsibility to past class members, which would prevent any inappropriate disclosure here.  *See supra* Part 1.B.  And any disclosure would occur pursuant to the terms of the strict protective order in this case.

Finally, the Court should reject Respondents' untenable suggestion, in its introductory statement, that the Court bar the production of the entire A files of

---

[15] *Haitian Refugee Center, Inc. v. Nelson*, 694 F. Supp. 864, 876-78 (S.D. Fla. 1988) (lower court decision from *In re Nelson* certifying the class under Rule 23(b)(2)).

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**34**

asylum, VAWA, U- and T- visa applicants, even if the applicable regulations permit disclosure of one of these types of applications.  Under Respondents' reasoning, Respondents would not need to provide A files for any of these class members because otherwise class counsel could determine who filed asylum, VAWA and U and T-visa applications and who did not.  No court has accepted Respondents' expansive view of privilege, which would appear to preclude even the production of a privilege log.  Nothing in the confidentiality regulations at issue supports Respondents' broad view of such provisions.

Therefore, the asylum-related documents should be produced without redactions.

## 2.    VIOLENCE AGAINST WOMEN ACT CLAIMANT AND "T" AND "U" VISA APPLICANT INFORMATION

### A.    Respondents' Contentions

Just as there is no apparent need for Petitioners to obtain specific asylum-related information in this case, there is no need for Petitioners to obtain information related to a claim made by an alien under the Violence Against Women Act where such a claim is either pending or approved, or for a "T" or "U" visa where such application is either pending or approved.

#### (1)    VAWA

In November 2000, revisions to the 1994 Violence Against Women Act ("VAWA") were passed into law.  Among other things, VAWA made changes to previously existing immigration laws that had allowed abused immigrants and their children to seek lawful permanent residence in the United States independently of their abusers.  The law allows individuals to petition for adjustment of status for themselves and exempts them from section 245(c) of the INA, 8 U.S.C. § 1255, which prohibits immigrants who have engaged in unauthorized employment, those who have

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

35

failed to maintain valid immigration status and a number of others from applying for adjustment of status.  In addition, VAWA provides for special rule cancellation of removal and adjustment of status for battered spouses and children of LPRs or U.S. citizens under a more generous standard than that applied generally.  8 U.S.C. 1229b(b)(2).

Under VAWA, applicants are allowed to apply for permanent residence if they can demonstrate that they were the victims of domestic violence in the United States. A VAWA claimant must demonstrate that "the marriage or the intent to marry []was entered into in good faith by the alien" and that "during the marriage or relationship intended by the alien to be legally a marriage, the alien or a child of the alien has been battered or has been the subject of extreme cruelty perpetrated by the alien's spouse or intended spouse." 8 U.S.C. §§ 1154(a)(1)(A)(iii) (United States citizen spouse); 1154(a)(1)(B)(ii) (lawful permanent resident spouse).

The law also allows applicants to file without their abusers learning of their application.  The USCIS webpage on VAWA applications informs potential applicants that "VAWA allows certain spouses, children and parents of U.S. citizens and permanent residents (green card holders) to file a petition for themselves without the abuser's knowledge.  This will allow you to seek both safety and independence from the abuser. . . Your abuser will not be notified that you have filed for immigration benefits under VAWA." *See* USCIS Webpage, attached hereto as Exhibit C.  The importance of keeping applicant information confidential was underscored by the American Civil Liberties Union, which stated in testimony to Congress:

> For survivors of domestic violence, *the need for informational privacy is particularly acute. Often the safety of a domestic violence victim who has escaped from her abuser hinges on her ability to keep her identity and location confidential.* An abuser can use insecure information to track down and further victimize a survivor, and this

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**36**

risk of exposure and retaliation may make survivors less likely to access emergency housing, health care, and other supportive services.

Written Testimony of the American Civil Liberties Union Before the Committee on the Judiciary, United States Senate, Hearing to Consider S. 1197 Violence Against Women Act of 2005 (July 23, 2005) (attached as Exhibit D).

The confidentiality and disclosure of information for VAWA applicants is governed by 8 U.S.C. § 1367, which provides for penalties for the disclosure of protected information. That statute provides:

> Except as provided in subsection (b) of this section, *in no case* may the Attorney General, or any other official or employee of the Department of Justice, the Secretary of Homeland Security, the Secretary of State, or any other official or employee of the Department of Homeland Security or Department of State (including any bureau or agency of either of such Departments) --
>     (2) permit use by or disclosure to anyone (other than a sworn officer or employee of the Department, or bureau or agency thereof, for legitimate Department, bureau, or agency purposes) *of any information which relates to an alien* who is the beneficiary of an application for relief under paragraph (15) (T), (15)(U), or (51) of section 101(a) of the Immigration and Nationality Act [8 U.S.C.A. § 1101(a) ] or section 240A(b)(2) of such Act [8 U.S.C.A. § 1229b(b)(2) ].

8 U.S.C. § 1367(a)(2) (emphasis added). These restrictions end "when the application for relief is denied and all opportunities for the appeal of the denial have been exhausted." *Id.* Under section 1367, the disclosure of VAWA applicant information may "in no case" be disclosed by any Government official, except in certain enumerated circumstances – *e.g.*, for law enforcement investigatory purpose, for census reasons, for presentation to Congress – that do not apply here. 8 U.S.C. § 1367(b).

The U.S. District Court for the Northern District of California recently addressed the breadth of this restriction in *Hawke v. U.S. Dept. of Homeland Sec.*, No.

07-03456, 2008 WL 4460241, at *6 (N.D. Cal Sept. 29, 2008).  There the court denied a subpoena for the production of the entirety of an A-File which the petitioner sought to use in his defense in a criminal proceeding.  The district court noted that while information related to a VAWA claim that has been denied on the merits without opportunities for further appeal is not restricted from disclosure, *id.* at *7, the restrictions on disclosure under section 1367 require the denial of any request for VAWA-related information that does not meet that exception:

> Congress' focus on the exhaustion of all opportunities for review underscores its intent to limit the expiration of confidentiality to petitions that have been denied on the merits. This focus on the merits also accords with the fact that the confidentiality never expires on granted petitions filed by the victims of abuse. To hold that a mooted petition is "denied" would defeat one of the primary purposes of the VAWA confidentiality provision, namely, to prohibit disclosure of confidential application materials to the accused batterer. See 151 Cong. Rec. E2605, E2607 (daily ed. Dec. 18, 2005) (statement of Rep. Conyers that VAWA confidentiality provisions "are designed to ensure that abusers and criminals cannot use the immigration system against their victims").

*Id.*

Petitioners ignore the plain and unambiguous language of the statute and insist upon the disclosure of information from the requested A-File materials that relate to aliens who have VAWA claims.  They are not entitled to it by law, and the Government is specifically barred from producing information related to such aliens – which would include the entirety of the file, *see Hawke*, 2008 WL 4460241 at *7 – except where a VAWA application has been denied on the merits without further opportunities for appeal or proceeding on the claim.  Petitioners can show no exception under section 1367(b) that applies to permit the disclosure of such information.  Accordingly, this Court should issue an order affirming Respondents' obligation to withhold the A-File of any alien who has filed a claim under VAWA,

except where that claim has been denied and there are no opportunities for further appeal or proceedings on the claim.

### (2)    "T" and "U" Visas

The strict statutory protections afforded to information provided by VAWA applicants extends to information related to applications for "T" or "U" visas.  8 U.S.C. § 1367(a)(2) (restricting disclosure of information "which relates to an alien who is the beneficiary of an application for relief under paragraph (15)(T), (15)(U) . . . of [8 U.S.C. § 1101].")

By passing the Victims of Trafficking and Violence Protection Act of 2000, which includes the Violence Against Women Act of 2000, Congress created two new categories of nonimmigrant visas, the "T" and "U" visas.  "T" visas are available to individuals who are victims of "a severe form of trafficking in persons."  8 U.S.C. § 1101(a)(15)(T)(i)(I).  Severe forms of trafficking include sex trafficking of persons under 18 years of age, or recruiting or obtaining persons for labor or services through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.  *Id.*  The other visa created by the act is the "U" visa, which is available to immigrants who are either victims of or who possess information concerning covered criminal activity.  8 U.S.C. § 1101(a)(15)(U).

In their review of several hundred of the A-Files at issue, Respondents have not yet discovered any current or former detainees who have applied for a "T" or "U" visa.  However, that review is ongoing, and such information may be contained in A-Files yet to be reviewed.  If Respondents' motion for review is denied and if any A-File is found to contain such information, the aliens' A-File should be protected from disclosure under section 1367 for the same reasons articulated in the discussion of VAWA above to protect the privacy of the victims of exploitative crimes –

information which, like VAWA claim information, has no bearing on the outcome of this case.[16]  The Court should grant the protective order.

### B.    Petitioners' Contentions

Respondents claim that 8 U.S.C. § 1367 prohibits production of VAWA, U-Visa, and T-Visa information.  This assertion is without merit because Section 1367 also does not authorize withholding relevant, non-privileged information in civil discovery.

VAWA grants legal status to certain victims of domestic violence, thus permitting them to terminate their removal proceedings.  *See* 8 U.S.C. § 1101(a)(51).[17] U-Visa and T-Visas are nonimmigrant visas available to certain victims of crime and victims of human trafficking.  *See* 8 U.S.C. §§ 1101(a)(15)(U), 1101(a)(15)(T). T-Visa and U- Visa holders can terminate removal proceedings upon obtaining their visas.  All three applications for legal status contain information that is critical to proving Petitioner's claims.  For example, the VAWA application elicits basic biographical information, including the applicant's address history, marriage history, and biological information relating to the applicant's spouse and children.  *See* Exh. 46 ("London Decl.") ¶ 22-27.  The application will typically include a declaration from the applicant that addresses the applicant's employment, education, residence, and immigration history.  *Id*. ¶24.  Applicants often apply for fee waiver for related immigration benefits, which will typically include a variety of financial information

---

[16] Additionally, 8 C.F.R. § 214.14(e) provides restrictions on the use and disclosure of information relating to petitioners for "U" visas that clarify – but do not diminish – the restrictions on disclosure under section 1367.

[17] While it is most common for eligible noncitizens to file affirmative VAWA applications, VAWA can also be invoked defensively in removal proceedings.  Under VAWA, certain victims of domestic violence are eligible for cancellation of removal and adjustment to lawful permanent resident status.  *See* 8 U.S.C. § 1229b(b)(2).  The application and supporting documents for VAWA cancellation are similar to those required for affirmative VAWA applications.

about the applicant and their family and supporting documents, including pay stubs, rent receipts, and other financial documents. *Id*. ¶26.

U and T-visa applications include similar information. *Id*. ¶¶ 29-36, 38-43. U and T- visa applicants often must seek a waiver of inadmissibility. *Id*. at 33. The "grant of the waiver is a discretionary act and therefore the individual's declaration filed in support of a waiver application must discuss all of the equities that go into the decision. Every aspect of the person's life, including employment history, education history, and community ties, is potentially relevant." *Id*. For individuals whose T-Visa, U-Visa, or VAWA applications are currently pending, an immigration expert can evaluate the availability of these types of relief, which is an important factor in assessing flight risk.

Section 1367(a)(2) does not prohibit disclosure here. First, Section 1367(a)(2) does not purport to preclude discovery in civil proceedings. It provides that the government in general should maintain the confidentiality of these applications and not "permit use by or disclosure to anyone . . . of any information which relates to an alien who is the beneficiary of an application for relief …." *Id*. Section 1367(a)(2) thus cannot be viewed as creating a discovery privilege that allows the government to withhold relevant information that would assist the very applicants the statute was enacted to protect. *Zambrano*, 972 F.2d at 1125; *See In re Nelson*, 873 F.2d at 1397.

Second, nothing in Section 1367(a)(2)'s implementing regulations supports withholding this information from attorneys representing applicants. Indeed, Respondents' own forms for T-Visa, U-Visa, and VAWA relief contemplate that attorneys will provide assistance to applicants. *See, e.g.*, http://www.uscis.gov/files/form/i-918.pdf (U-visa application).

Third, Section 1367(a)(2) was intended to protect applicants from abusers, not to prevent applicants from accessing their information to support claims against the

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**41**

government.  The government recognized this shortly after the statute was enacted by acknowledging that:

> "[T]his provision appears to have been enacted in response to concerns from the advocacy community that INS officers have provided information on the whereabouts of self-petitioners or on their pending applications for relief *to the allegedly abusive spouse or parent*.  The VAWA provisions . . . were created by Congress so that the battered alien can seek status independent of the abuser."

Paul W. Virtue, INS Acting Exec. Assoc. Comm'r, to all INS offices, File No. 96 act. 036, Non-Disclosure and Other Prohibitions Relating to Battered Aliens: IIRAIRA § 384 (May 5, 1997) (emphasis added), *reprinted at*, 2 Bender's Immigr. Bull. 503 (June 15, 1997).  Courts likewise have viewed Section 1367(a)(2) as intended to protect applicants from potential abusers.  *See Hawke v. United States Dep't of Homeland Sec.*, 2008 U.S. Dist. LEXIS 87603, at *19 (N.D. Cal. Sept. 29, 2008) (denying an allegedly abusive husband access to his wife's VAWA application in part because doing so "would defeat one of the primary purposes of the VAWA confidentiality provision, namely, to prohibit disclosure of confidential application materials to the accused batterer") (citing 151 Cong. Rec. E2605, E2607 (daily ed. Dec. 18, 2005) (statement of Rep. Conyers noting that U-Visa, T-Visa and VAWA confidentiality provisions "are designed to ensure that abusers and criminals cannot use the immigration system against their victims")).  Concerns about potential physical abuse do not apply to disclosures to class counsel, who have ethical obligations to preserve confidentiality and comply with a stringent protective order.  Consequently, information in A files relating to VAWA, U-Visa and T-Visa applications are subject to civil discovery, and Respondents cannot refuse to produce them as somehow privileged.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.**    **Respondents' Reply to Petitioners' Contentions**

   **(1)**    *8 U.S.C. § 1367 explicitly bars disclosure of any information relating to an alien who is the beneficiary of an application for VAWA, "T" or "U" visa benefits in civil proceedings like this action.*

As in their contentions concerning asylum-related information, petitioners take the position that they are entitled to receive information about aliens who made VAWA claims or applied for "T" or "U" visas because there is no express restriction on the disclosure of such information in court proceedings.

Petitioners again ignore the plain and unambiguous language of the statute, in which Congress specified that "[e]xcept as provided in subsection (b) of this section, *in no case* may [any official or employee of the Departments of Justice, Homeland Security, or State] permit use by *or disclosure to anyone* (other than a sworn officer or employee of the Department, or bureau or agency thereof, for legitimate Department, bureau, or agency purposes) *of any information which relates to an alien* who is the beneficiary of" a VAWA claim or a "T" or "U" visa. According to Petitioners, this language is insufficient to permit disclosure because it does not specifically *include* language excepting its discovery in civil litigation. But again, Petitioners are incorrect. Subsection 1367(b)(3) provides:

> Subsection (a) of this section shall not be construed as preventing disclosure of information in connection with judicial review *of a determination* in a manner that protects the confidentiality of such information.

8 U.S.C. § 1367(b)(3) (emphasis added). This is a narrow exception to the general prohibition that "in no case" shall such information "be disclosed," *see* section 1367(a), except in certain judicial proceedings as specified by Congress.

The meaning and scope of that exception – cases in connection with "judicial review of a determination" – has been addressed by a court of this circuit. In *Hawke v. DHS*, No. 07-cv-03456, *6 (N.D. Cal. Sept. 29, 2008), the district court denied a

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

43

petitioner's request for an A-File containing VAWA-related information under section 1367(b)(3), explaining that

> "judicial review of a determination" refers to judicial review of a VAWA self-petitioner's immigration petition, *not any court proceeding*. . . . The court agrees that "a determination" refers to the government's determination of a VAWA self-petitioner's immigration status. The court reaches this conclusion in part because subsection (a)(1) uses the term "determination" in this limited context. Accordingly, the exception in subsection (b)(3) does not apply to court proceedings like this one.

*Id.* Like the criminal proceeding in *Hawke*, this case does not involve judicial review of a determination of any VAWA self-petitioner's immigration petition. By extension, this case also cannot be construed as a judicial review of a determination of a "T" or "U" visa application. Accordingly, under the language of the statute, the judicial disclosure exception to section 1367(a) does not apply. For Petitioners to argue that the statute is silent as to the disclosure in civil proceedings such as this one stands in plain defiance of the statutory language itself.

Indeed, Congress provided that even where such information may be disclosed in connection with "judicial review of a determination" of a VAWA claim or a "T" or "U" application, such a disclosure may only be made under the terms of a protective order governing confidentiality. 8 U.S.C. § 1367(b)(3). If Congress had thought that *any* protective order governing confidentiality would be sufficient to protect against risks of unintended disclosure, it could have allowed disclosure in *any* judicial setting where such an order existed. It did not. Thus, the specificity with which Congress detailed the type of civil proceedings in which such information could be disclosed, and the manner in which such information, if disclosed, must be protected, belies Petitioner's argument that Congress simply left disclosure in judicial proceedings unaddressed. The statute does not allow the disclosure of VAWA claim or "T" or "U" visa application information in civil proceedings like this one, except where every possibility of pursuing such claims or applications have been extinguished.

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

44

**(2)** ***Petitioners are not entitled to any information that relates to an alien who is the beneficiary of an application for VAWA, "T" or "U" visa benefits, including class members absent written consent.***

Petitioners' also argue that they should be provided with the VAWA and "T" and "U" visa information from each of the A-Files because they are "attorneys representing applicants," and because the immigration forms associated with these claims and applications "contemplate that attorneys will provide assistance to applicants." This is incorrect for a number of reasons. First, the fact that the forms contemplate that attorneys will provide assistance in their preparation says nothing about the disclosure of such information by the Government. Such information would be provided directly by the applicant to the attorney. Second, class counsel may be attorneys for *some* applicants by dint of serving as class counsel, but they are not counsel for applicants who are *no longer part of the class*. Petitioners have provided no authority showing that they (1) currently represent individuals not currently detained, or (2) are entitled to obtain information based on an attorney-client relationship that no longer exists. Third, the fact that the form "contemplates" assistance by attorneys is meaningless considering Petitioners have not served as *immigration counsel* for any of the aliens whose A-Files are at issue. They have made no assertion that they helped prepare any VAWA, "T" or "U" visa applications at issue, and so any connection between class counsel and any claimants among the more than 1,000 aliens at issue is irrelevant.

Finally, the Court should reject Petitioners' arguments that they should be provided with the VAWA and "T" and "U" visa information they seek because the statute is meant to protect against disclosure to abusive spouses, not aliens seeking their own files for their own benefit. Petitioners' argument suffers from several faults. First, no alien in this case has sought his or her own file. Second, Petitioners do not

explain how their request is on behalf of "applicants . . . accessing their information to support claims against the government" when they do not represent fully three-quarters of the individuals whose A-Files they seek.  Those individuals, who are no longer in the class and no longer represented by class counsel, do not have claims against the Government.  Finally, the class members are absent individuals who have made no requests for their files.  Their interests could be protected if they were made aware of this litigation and provided consent forms to execute.  It is disingenuous for counsel to claim that they stand in the shoes of applicants that have no idea that their confidential information may be subject to disclosure to counsel they do not know and for use in case they know nothing about.

### D.    Petitioners' Reply to Respondents' Contentions

Respondents incorrectly rely on confidentiality provisions intended to allow "applicants to file without their abusers learning of their application" to withhold information from class counsel.  Respondents discuss at length the harm that victims might suffer if their abusers were able to obtain their VAWA, U-visa or T-visa applications, a concern that the American Civil Liberties Union shares.  But this concern, which Respondents concede is the purpose of the confidentiality provisions, is in no way undermined by disclosing information to class counsel under the terms of the protective order.

Respondents cite only one case in support of their position, *Hawke v. United States Department of Homeland Sec.*, but that case was about an alleged abuser trying to gain access to a VAWA petitioner's A file.  *See id.* No. 07-03456, 2008 U.S. Dist LEXIS 87603, at *19 (N.D. Cal. Sept. 29, 2008).  There is no support for Respondents' position that the confidentiality provisions bar disclosure to an applicant's counsel, particularly under the strict protective order in effect here, and Respondents cite none.

Despite what Respondents claim, moreover, Petitioners do not need to fall within one of the express exceptions in Section 1367 to obtain relevant information in civil discovery.  To the contrary, Respondents have the burden to establish that Section 1367 expressly bars civil discovery; they have not met this burden.  *See Zambrano*, 972 F.2d at 1125; *see also In re Nelson*, 873 F.2d at 1397.  The only support that the Respondents cite, *Hawke*, does not suggest (let alone hold) that Section 1367 creates a blanket privilege from civil discovery.

3.     **BATTERED SPOUSE OR CHILD INFORMATION**

    A.     **Respondents' Contentions**

Just as the confidentiality provisions of section 1367 seek to prevent the disclosure of information related to aliens who apply under VAWA or for a "T" or "U" visa, the confidentiality provisions of 8 U.S.C. §1186a(c)(4)(C) protect from disclosure certain information provided by an alien spouse or child in the context of a petition to remove conditions on the alien's lawful permanent resident ("LPR") status. Generally, aliens who have obtained LPR status on a conditional basis through marriage to a U.S. citizen or LPR must file a joint petition with the U.S. citizen or LPR spouse to remove the conditions on their LPR status.  However, such aliens may request a hardship waiver of the requirement of a jointly-filed petition where the alien spouse or child is able to demonstrate that he or she was battered or the subject of extreme cruelty perpetrated by the U.S. citizen or LPR spouse or parent.  8 U.S.C. § 1186a(c)(4)(C); 8 C.F.R. §§ 216.5(a)(1)(iii) and 1216.5(a)(1)(iii).  That statute mandates the promulgation of regulations "to protect the confidentiality of information concerning any abused alien spouse or child, including information regarding the whereabouts of such spouse or child."  *Id.*

The regulation promulgated to address the confidentiality of battered spouse or child information under section 1186a provides that

> [a]s directed by the statute, the information contained in the application and supporting documents *shall not be released* without a court order or the written consent of the applicant; or, in the case of a child, the written consent of the parent or legal guardian who filed the waiver application on the child's behalf.  Information may be released only to the applicant, his or her authorized representative, an officer of the Department of Justice, or any federal or State law enforcement agency.  Any information provided under this part may be used for the purposes of enforcement of the Act or in any criminal proceeding.

8 C.F.R. § 216.6.

Although the regulation contemplates production following a "court order," the statutory and regulatory scheme establishing the waiver counsels strongly against an order for the production of this information, for two fundamental reasons.

First, the same need for privacy that underlies the confidentiality protections of section 1367 applies here.  Information regarding battered spouses and children should be guarded fiercely, absent a strong showing by Petitioners for such information in this case, because that information poses the same or similar risks regarding revelation of the applicant to the abusive spouse.  Indeed, that reasoning provides the purpose of the hardship waiver in the first instance – to protect an applicant from potentially tragic consequences if an abusive spouse learns of an immigration claim based on the abuse.

Second, the claimed need by Petitioners for the type of information protected by these regulations is far removed from the circumstances contemplated by the regulation and from their theory of this case.  There is no law enforcement investigation at issue, and information about battered spouses or children is not sought to enforce the INA here.  Petitioners' claimed need for information about hardship waiver claims made by battered spouses and children grows even more doubtful in light of Petitioners' theory.  According to Petitioners, the due process analysis of the constitutionality of detention beyond six months turns, in part, on the strength of an

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

48

alien's claim against removal. Petitioners seek to somehow aggregate data to show that in aggregated cases aliens' claims were strong or weak, depending on the outcome.

Even under the very best reading of Petitioners' "aggregation" and due process theories, battered spouse and child information related to an effort to remove conditional LPR status is not necessary to this case. The detention-related statutory and constitutional interpretation issues of this action have absolutely no bearing on specific claims made by battered spouses or children to lift the conditions on their LPR status. This Court, should not order the production of battered spouse or child information because it has no bearing on the issues in this action, and because the risk associated with the disclosure of such information – some of which may concern aliens not a part of the class – tilts decidedly against such an order. The discovery of information about aliens who have made an application for a hardship waiver under section 1186a(c)(4)(C) should be disallowed.

### B.    Petitioners' Contentions

Respondents cannot rely on 8 C.F.R. § 216.5(e)(3)(viii) to withhold relevant information in applications for hardship waivers under 8 U.S.C. § 1186a. Neither the text nor the purpose of 8 C.F.R. § 216.5 support creating a privilege that would exempt Respondents from civil discovery, especially discovery that advances the interests of the applicants.

Waiver applications under Section 1186a and their supporting documentation contain relevant information bearing on the flight risk inquiry in a bond determination, such as the existence of family and financial ties in the United States, as well as eligibility for relief. These applications are typically filed by non-citizens who become legal permanent residents (LPRs) on a conditional basis through marriage to a United States citizen or another LPR. Although noncitizens typically must file a joint petition with their spouse to lift the conditional residence and acquire full lawful

permanent residence, certain non-citizens can request a waiver from this requirement if they can show (1) extreme hardship will result if they are removed, or (2) the marriage was terminated through no fault of their own, or (3) during the marriage, they were battered or subject to extreme cruelty by their spouse.  8 U.S.C. § 1186a(c)(4).  The battered spouse waiver application and supporting documents are similar to those filed for U- or T-visas and self-petitions under VAWA.  *See* Exh. 46 (London Decl.) ¶¶ 22-27, 29-36, 38-43.

The plain text of 8 C.F.R. § 216.5(e)(3)(viii) forecloses Respondents from withholding battered spouse waiver applications for at least three reasons.  First, Section 216.5(e)(3)(viii) permits disclosure with a court order, and there already *is* a court order requiring disclosure of these applications, namely this Court's order requiring Respondents to produce A Files.  *See* Dkt. # 169.  Second, Section 216.5(e)(3)(viii) permits disclosure without a court order to an "authorized representative" of an applicant, and since this class has been certified, Petitioner's counsel are the applicants' "authorized representative[s]."  Third, nothing in this regulation purports to bar civil discovery, and thus it should not be construed in that manner.  *See Zambrano*, 972 F.2d at 1125-26.  Thus, the plain text of this regulation does not foreclose civil discovery in this context.

Additionally, Respondents' argument fails because the purpose of Section 216(e)(3)(viii) would not justify denying Petitioners access to relevant information in this setting.  As Respondent the Department of Justice explained when promulgating this regulation:

> [C]oncerns were raised that conditional residents would be reluctant to reveal abuse due to fear of further harm *if the abusers were informed* of information contained in the applications.
>
> . . .

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**50**

> A confidentiality provision was included to ensure that *the abuser* would not become aware of the information contained in the waiver application.
> . . .
> The confidentiality provision contained in this rule is designed to ensure that an abused alien need not fear that applying for the waiver could subject the applicant to further abuse. It effectively prevents disclosure of the information *to the abuser* without the applicant's written consent or a court order.

*Battered and Abused Conditional Residents*, 56 Fed. Reg. 22635 (interim rule May 16, 1991) (to be codified at 8 C.F.R. § 216.5) (supplementary information) (emphasis added). Disclosing information to class counsel under the terms of the strict protective order already entered in this case presents no risk that information will end up in the hands of potential abusers.

Therefore, Respondents cannot assert applicants' privacy to shield misconduct from the full scrutiny of civil discovery. The applications and related documentation should be produced.

### C.    **Respondents' Reply to Petitioners' Contentions**

As Respondents' have noted above, unlike the regulation and statutory provisions explicitly prohibiting disclosure of asylum, VAWA, "T" or "U" information in judicial proceedings (except those that do not apply here), 8 C.F.R. § 216.5(e)(3)(viii) permits disclosure under a court order of information provided by battered spouses or children in pursuing waiver applications. Accordingly, while this court *may* enter an order that the Government produce such information, the Court is not required to do so. Petitioners are incorrect that the language permitting disclosure by court order ends the inquiry. It does not.

The question with respect to the battered spouse/child information at issue is whether there is good cause to order the disclosure in light of the fact that Congress

has deemed that information confidential and/or subject to non-disclosure. The fact that Congress has decided to treat such information specially

> may have some application to discovery. These protected interests reflect a congressional judgment that certain delineated categories of documents may contain sensitive data which warrants a more considered and cautious treatment. In the context of discovery of government documents in the course of civil litigation, the courts must accord the proper weight to the policies underlying these statutory protections, and . . . compare them with the factors supporting discovery in a particular lawsuit.

*Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984).

As Petitioners admit in their contentions, the policies behind the treatment of battered spouse/child information confidential under section 216.5 is similar, if not identical, to the policies behind the treatment of VAWA, "T" or "U" application information. The policy of confidentiality in such cases is to prevent revelation of a claim that would permit further harm to an abused spouse or child. To that extent, the regulation reflects a strong policy that should be considered in weighing the necessity of disclosing such information under a "good cause" standard.

As to the other end of that balancing test, Petitioners offer little. They assert that the battered spouse/child waiver application (specifically, a Form I-751) contains information critical to their case, but a review of the Form I-751 waiver shows that the information to be gleaned is limited, and requires the provision of information almost certainly to be found on other materials in the A-File, given that the applicant of a hardship waiver has already sought and been granted conditional residence – information likely to be contained in the A-File and responsive to Petitioners' request. To be clear, Respondents are not seeking a protective order with respect to *all* Form I-751 applications contained in the A-Files, but only those where the hardship waiver sought is by a battered spouse or child. This information can easily be redacted from the A-File, and would be unlikely to prevent Petitioners from learning the basic

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**52**

"biographical" information they seek.[18]  Accordingly, there is no good cause to compel the production of such information in light of the substantial policy motivations behind the regulation's confidentiality requirements.

Finally, Petitioners argue that this Court has already deemed the information protected from disclosure or statutorily deemed confidential as relevant, thus ending further inquiry.  But this Court has *not* considered the information responsive to Petitioners' request in the context of the disclosure restrictions at issue.  Doing so now, and in weighing good cause, the Court should be appropriately cautious about ordering the release of confidential, sensitive and, in some cases, even-life threatening information based simply on the fact that it issued an order *generally* allowing the discovery of the A-File materials requested.  The Court should now consider a protective order in light of the *specific* issues presented in this dispute.  Given the considerations of confidentiality presented under section 216.5, the Court should grant the protective order.

### D.    Petitioners' Reply to Respondents' Contentions

Respondents incorrectly claim that battered spouse waiver applications are irrelevant and exempt from civil discovery.

The information plainly is relevant.  Like VAWA self-petitions, U-visas, and T-visas, these applications contain critical biographical and financial information that is relevant to determining whether a given detainee poses a danger or flight risk necessitating detention.  Contrary to Respondents' claims, information about the strength of an applicant's claim is relevant to determining whether an individual constitutes a flight risk.

---

[18]  As noted above, Respondents have not discovered any such forms in its review of nearly half of the A-Files.

Respondents offer no precedent supporting a privilege from discovery. Nor do they explain why, after Petitioners prevailed on their motion to compel, they must now make "a strong showing" of need for the information (although Petitioners have done so anyway). Respondents—not Petitioners—have the burden of establishing any applicable privilege and of demonstrating why "discovery should not be allowed," by "clarifying, explaining, and supporting" their written objections to discovery. *See, e.g.*, *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998); *see also Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 428 (C.D. Cal. 1999) (holding, consistent with Ninth Circuit precedent, that "a statement of confidentiality does not automatically preclude such information from discovery").[19] They have not done so because they have not pointed to language in the confidentiality provisions that establish a privilege here. To the contrary, the provision explicitly permits disclosure based on a court order.

Respondents' entire argument is centered on the uncontroversial provision that abusers should not be able to access battered spouse waiver applications. That purpose is not served by allowing Respondents to conceal relevant information about Petitioners' claims from Petitioners' own counsel.

**4.    LEGALIZATION AND SPECIAL AGRICULTURAL WORKER CLAIMS**

**A.    Respondents' Contentions**

Petitioners also seek, as part of the A-File materials requested, any applications for legalization, and any applications for adjustment of status by special agricultural workers ("SAW") under specific provisions of the INA. However, both legalization

---

[19] Respondents' eleventh-hour objection to disclosure of battered spouse waiver applications is particularly inappropriate because they failed to cite any confidentiality provision regarding these applications in their written objections or defend their position in opposition to Petitioner's motion to compel.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**54**

and SAW applications are subject to restrictive confidentiality and disclosure provisions that carry with them stiff criminal penalties if violated.

It is important to understand the applications at issue. Under 8 U.S.C. § 1255a, certain illegal aliens were eligible to apply for temporary and eventually permanent resident status – a program referred to as "legalization." To be eligible, aliens must have continuously resided in the United States in an unlawful status since January 1, 1982, not be excludable, and have entered the United States either (1) illegally before January 1, 1982, or (2) as temporary visitors before January 1, 1982, with their authorized stay expiring before that date or with the Government's knowledge of their unlawful status before that date. 8 U.S.C. § 1255a. Legalization applicants must file a written application for legalization, which is then maintained in the A-File.

Like legalization applications, SAW applications have eligibility requirements based on residence in the United States, specified activities, and the timing[20] of a SAW application. Under 8 U.S.C. § 1160, aliens who performed labor in perishable agricultural commodities for a specified period of time were admitted for temporary and then permanent residence. SAW applications are also made on the basis of a written application.

The INA prohibits the disclosure of information relating to legalization and SAW applications. 8 U.S.C. § 1255a(c)(4) and (5) applies to legalization applications; 8 U.S.C. §1160(b)(5) and (6) apply to SAW applications. Those statutes contain similar – but in critical ways, different – provisions:

---

[20] Up to 350,000 aliens who worked at least 90 days in each of the 3 years preceding May 1, 1986 were eligible for Group I temporary resident status. Eligible aliens who qualified under this requirement but applied after the 350,000 limit was met and aliens who performed labor in perishable agricultural commodities for at least 90 days during the year ending May 1, 1986 were eligible for Group II temporary resident status. Adjustment to permanent resident status is essentially automatic for both groups; however, aliens in Group I were eligible on December 1, 1989 and those in Group II were eligible one year later on December 1, 1990.

(5) Limitation on access to information

Files and records prepared for purposes of this section . . . are confidential and the Attorney General and the Service shall not have access to such files or records relating to an alien without the consent of the alien, except as allowed by a court order issued pursuant to paragraph (6) of this subsection.

(6) Confidentiality of information

(A) In general

Except as provided in this paragraph, neither the Attorney General, nor any other official or employee of the Department of Justice, or bureau or agency thereof, may -

(i)    use the information furnished by the applicant . . . for any purpose other than to make a determination on the application . . . ;

(ii)    make any publication whereby the information furnished by any particular individual can be identified; or

(iii)    permit anyone other than the sworn officers and employees of the Department or bureau or agency or, with respect to applications filed with a designated entity, that designated entity, to examine individual applications.

8 U.S.C. §§ 1160(b)(5), (6); *see* 1255a(c)(4), (c)(5). There are additional required disclosures for law enforcement and coroner examination purposes under both statutes. 8 U.S.C. §§ 1160(b)(6)(B), (C); 1255a(c)(5)(B), (C). Criminal penalties for unauthorized disclosure are also provided for. 8 U.S.C. §§ 1160(b)(7); 1255a(c)(6).[21]

One substantial difference between the statutes is that the legalization-related provisions do not contain the "except allowed by a court order" language of the SAW-related statute. *Compare* section 1160(b)(5) ("Files and records prepared for purposes of this section . . . are confidential and the Attorney General and the Service shall not have access to such files or records relating to an alien without the consent of the

---

[21] There are corresponding regulations that clarify the statutory provisions, but are substantively the same as the statutory prohibitions. *See* 8 CFR 245a.2(t), 245a.3(n), 245a.21 (regulations governing confidentiality and disclosure of legalization applications); 8 CFR 210.2(e) (governing confidentiality and disclosure of SAW applications).

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

56

1   alien, *except as allowed by a court order issued pursuant to paragraph (6) of this*

2   *subsection*") *with* section 1255a(c)(4) ("Files and records . . . relating to an alien's

3   seeking assistance or information with respect to filing an application under this

4   section are confidential and the Attorney General and the Service shall not have

5   access to such files or records relating to an alien without the consent of the alien.").

6       This is significant because at the June 14, 2011 conference this Court asked if

7   any of the provisions involved in this dispute contained a general "except by court

8   order" provision.  The legalization-related disclosure provisions do not contain them;

9   they previously contained the "except as allowed by court order" language, but

10  Congress removed that language in 1996.  While the SAW-related provisions do

11  contain the "court order" language, it is not a general provision.  Instead, the

12  disclosure may be made by court order "issued pursuant to paragraph [sections

13  1160(b)(6) or 1255a(c)(5)] of this subsection," which limits the purpose of disclosure

14  in conjunction with some proceeding or action *on the application itself*.  This class

15  action is not a proceeding or action on any SAW application.

16      However, even if disclosure is permitted by court order, the fact that this Court

17  may enter an order does not answer the question of whether it should.  Petitioners

18  contend that SAW applications may contain "biographical" or other information to

19  help Petitioners identify, on an aggregate basis, whether the class members have

20  strong defenses to removal, or do not pose a flight risk or danger.  Even if SAW

21  applications may be disclosed through court order, those applications are not likely to

22  provide any information that would reflect on the defenses to removal or the

23  dangerousness or flight risk of any detainee.  As Petitioners must concede SAW

24  applications in any requested A-File materials are likely to be several years old, and

25  likely would precede detention.  They will therefore almost certainly have no bearing

26  on any defense to removal – a fact that is almost certain to be true among those

27  currently detained – and can offer no information concerning flight risk.  At the

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

57

Court's June 14, 2011 hearing, and in conference of counsel, Petitioners represented that such information may have biographical information that identifies an alien's family ties and employment.  Again, however, those applications are likely several years old and not probative of flight risk or danger.  Therefore, even if these applications may contain purely biographical information, that information is going to be of little or no probative value.[22]  The protective order should be granted.

### B.    Petitioners' Contentions

Despite case law directly rejecting their position, the government incorrectly claims it can withhold SAW and "legalization" applications under 8 U.S.C. § 1160(b)(6) and 8 U.S.C. § 1255a(c)(5), respectively.

The Special Agricultural Workers (SAW) and legalization programs have allowed undocumented workers to adjust their status to that of a temporary resident, or if they maintain a certain period of continuous residence, to a lawful permanent resident.  See 8 U.S.C. § 1160; 8 U.S.C. § 1255a.

These applications are highly relevant to Petitioners' statutory and constitutional claims challenging Respondent's failure to provide adequate bond hearings.  In particular, the applications contain information including date of entry into the United States, employment and residence history, criminal and immigration history, and information about family members, as well as supporting documents such as pay stubs and school records, which are all relevant to the danger and flight risk inquiries for purposes of eligibility for release on bond.  See Exh. 46 (London Decl.) ¶¶ 45-47; 8 U.S.C. § 1160(a)(1)(C).[23]

---

[22] If this court orders the production of SAW applications and does not permit A-files with asylum claim information to be withheld in their entirety, by process of elimination, Petitioners will be able to discern which A-files contain asylum information (a violation of the regulation), even if that information is redacted.

[23] Petitioners have offered to limit their request to applications submitted within the last ten years if Respondents agree to promptly produce those applications.  To date,

*(Footnote continued)*

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

58

1   The Ninth and Eleventh Circuits already have expressly held that Sections
2   1160(b)(6) and 1255a(c)(5) do not permit the government to withhold relevant
3   information in civil discovery. *Zambrano*, 972 F.2d at 1125-26; In re Nelson, 873
4   F.2d at 1397. The Tenth Circuit also has held that Sections 1160(b)(6) and
5   1255a(c)(5) do not prevent the use of relevant information in legal proceedings. *See*
6   *United States v. Hernandez*, 913 F.2d 1506, 1512 (10th Cir. 1990) (holding that
7   Sections 1160(b)(6) and 1255a could not support suppression of relevant information
8   in criminal proceeding). Respondents have not identified any authority that questions
9   these holdings, and Petitioner is not aware of any.

10      Therefore, Respondents' objections based on these sections are meritless and
11   should be overruled.

12   **C.    Respondents' Reply to Petitioners' Contentions**

13      Petitioners cite *Hernandez* and *Zambrano* in support of their argument that
14   SAW and legalization applications are discoverable in this case, but there are two
15   important points to note with respect to those decisions. First, both *Hernandez* and
16   *Zambrano* were decided before the 1996 amendments that removed the language
17   providing a disclosure exception where "allowed by a court order." At the time those
18   decisions were issued, section 1255a(c)(4) provided as follows:

19      Files and records prepared for purposes of this section . . . are confidential
20      and the Attorney General and the Service shall not have access to such files
21      or records relating to an alien without the consent of the alien, *except as*
22      *allowed by a court order issued pursuant to paragraph (6) of this*
        *subsection.*

23   8 U.S.C. § 1255a(b)(5) (1995) (italics added). In amending the Immigration and
24   Nationality Act in 1996, however, Congress eliminated the italicized portion above,

25   _____

26   Respondents have not responded. *See* Exhibit 47 (Declaration of Michael Kaufman)
27   ¶¶ 7-9 & Exhibit 48 (email dated June 27, 2011 from Michael Kaufman to Theodore
     Atkinson).

28   _____
     **JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS'**
     **MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

1  and thus eliminated language that expressly permitted disclosure through a court

2  order, leaving the remaining specific disclosure requirements intact.  *See* 8 U.S.C. §

3  1225(a)(c)(4) (1997).  Neither *Hernandez* (decided in 1990) nor *Zambrano* (decided in

4  1992) considered these statutory revisions, which did not exist at that time.

5       Under ordinary conventions of statutory construction, Congress's amendment to

6  section 1255a(c)(4) must be given meaning.  *See United States v. McNeil*, 362 F.3d

7  570, 574 (9th Cir. 2004) (holding that "when Congress amends statutes, our decisions

8  that rely on the older versions of the statutes must be reevaluated in light of the

9  amended statute").  By removing the language establishing an exception of disclosure

10  of legalization applications through court order, Congress eliminated that exception.

11  In eliminating the exception language, however, Congress did not elsewhere provide

12  in section 1255a that disclosure would be permitted through court order under certain

13  circumstances, or at all.  Petitioners' argument that the statute does not specifically

14  provide for disclosure through court order, and therefore *must* mean that court ordered

15  disclosure is permitted, flies in the face of Congress's decision to specifically remove

16  language providing a court-order exception to section 1160.  This Court should give

17  that amendment meaning and conclude that the legalization applications – which are

18  deemed "strictly confidential" under both statutes, *see Hernandez*, 913 F.2d at 1510 –

19  are not subject to production through court order.

20       With respect to SAW applications, this Court should reach the same conclusion,

21  but for a slightly different reason.  When Congress amended the legalization

22  provisions to remove the exception for court ordered disclosure, it brought section

23  1160 into line with the provisions restricting disclosure under 1255(a), which did not

24  include the court-ordered language.  This Court can presume that when Congress

25  acted to eliminate the court-order exception language, it was aware of the Ninth

26  Circuit's decision in *Zambrano* and the Tenth Circuit's decision in *Hernandez*, and

27  considered that interpretation when amending the statute to remove the exception.  *See*

28

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**60**

*Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1072 (9th Cir.2002) ("[We] presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation. . . ").

Even if this Court ignores the change in law subsequent to *Hernandez* and *Zambrano*[24], the Court should nevertheless determine that no good cause exists to compel the information contained on SAW or legalization applications. As the parties agree, both forms of immigration relief are legislative creations designed to address particular immigration needs and issues arising in the 1980s and early 1990s. Respondents maintain that the information maintained in those applications will have no bearing on issues related to any SAW or legalization applicants' current detention, and to an extent, Petitioners agree: they notably do *not* contend that information in those applications is relevant to whether they are likely to succeed in their removal proceedings. Nor can they. The information in SAW and legalization applications, which were almost certainly made years ago, has no relevance to any of the subject alien's defenses to removal.

Petitioners instead contend that such information is important because it contains certain biographical information "relevant to the danger and flight risk inquiries for purposes of eligibility for release on bond." But the information they seek – *e.g.,* employment history, family ties, residences, criminal history – will be years old. Petitioners must concede that much, if not all, of the biographical information will be stale, and thus no longer a proper basis for Petitioners to reliably conclude that the alien is presently not a flight risk or danger. Too many years will have intervened to make that a credible claim.

---

[24] *Zambrano*, a vacated decision, is also distinguishable because the litigation itself challenged the promulgation of the INS regulation at issue. 972 F.2d at 1124. This case alleges no such challenge to the SAW or legalization regulations.

JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1

61

Petitioners recognize as much.  At the hearing on June 14, 2011, counsel for Petitioners stated to the Court that Petitioners would consider limiting their request. They have done so, offering to forego the discovery of SAW or legalization applications more than ten years old.  Respondents have since rejected that offer. While SAW and legalization applications going back more than ten years are certainly irrelevant to the determination of whether an alien is presently a flight risk or danger, the same can be said of SAW or legalization applications going back more than two or three years, because that information will not be informative to an expert as to the alien's *present* flight risk or danger.

### D.    Petitioners' Reply to Respondents' Contentions

Respondents' arguments for withholding relevant information in SAW and legalization applications have been rejected by every court confronted with the issue.

Respondents argue the information is irrelevant by focusing on the alleged age of these applications.  These arguments are misplaced and unfounded.  First, information such as date of birth, family ties, and criminal history remain relevant to bond determinations irrespective of the passage of several years.  Second, Respondents have put forward no evidence whatsoever as to the age of any of these applications, despite repeated requests by Petitioner's counsel for clarification.

Respondents point to statutory language about a "court order," but its arguments go nowhere.  The Ninth and Eleventh Circuits already have rejected Respondents' position that it can withhold this type of information in civil discovery. *See Zambrano*, 972 F.2d at 1125-26; *In re Nelson*, 873 F.2d at 1397.  Neither the Ninth or Eleventh Circuits mentioned the "court order" provision as even a *potential* basis for preventing civil discovery.  Instead, both relied on the well established rule "that statutes prohibiting general disclosure of information do not bar judicial discovery . . . ." *Zambrano*, 972 F.2d at 1125; *In re Nelson*, 873 F.2d at 1397.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**62**

Finally, since Petitioners "in this case are the aliens whose interests are protected by the statute, . . . [p]roviding the [information] of class members to class counsel facilitates, rather than frustrates, the legislative intent of the statute." *Zambrano*, 972 F.2d at 1126 (quotations omitted); *In re Nelson*, 873 F.2d at 1397.

## 5.    TEMPORARY PROTECTED STATUS CLAIMANT INFORMATION

### A.    Respondents' Contentions

The INA permits the Secretary of Homeland Security to designate a foreign country (or any part of such foreign country) for temporary protected status ("TPS") due to conditions in the country (such as ongoing armed conflict or natural disaster) that temporarily prevent the country's nationals from returning safely, or in certain circumstances, where the country is unable to handle the return of its nationals adequately.  8 U.S.C. § 1254a.  USCIS may grant TPS to eligible nationals of certain countries (or parts of countries), who are already in the United States, and the grant of TPS prevents an alien's removal.

The statute mandates the promulgation of regulations to protect the confidentiality of information provided by aliens in applying for TPS.  8 U.S.C. § 1254a(c)(6).  The regulations providing for the confidentiality of TPS application information is found at 8 C.F.R. § 244.16, which provides:

> The information contained in the application and supporting documents submitted by an alien shall not be released in any form whatsoever to a third party requester without a court order, or the written consent of the alien. For the purpose of this provision, a third party requester means any requester other than the alien, his or her authorized representative, an officer of the Department of Justice, or any federal or State law enforcement agency. Any information provided under this part may be used for purposes of enforcement of the Act or in any criminal proceeding.

*Id.*

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

63

Respondents concede that the regulation permits the disclosure of such information upon "court order."  However, the authorized uses for TPS application information are limited to criminal proceedings and INA enforcement actions under the statute.  So while a court order within those contexts would be sufficient, a court order for the disclosure of TPS application-related information collateral to civil discovery in a class action does not appear to square with the statutory purpose for allowing limited disclosure of TPS application information.

But the question again arises as to whether the information sought in a TPS application should be ordered in light of Petitioners' theory of the case.  Although a TPS application will contain biographical information about the applicant, the information is unlikely to be found only in the TPS application.  The same information can be obtained from other A-File materials without compromising confidential information.  The application for temporary protected status based on the country of the applicant's origin is also unlikely to have the kind of detailed biographical information that would allow Petitioners to establish that the alien is not a danger to society.  The Court should not order disclosure of this confidential information where the application, which seeks a specific, narrow immigration benefit, is unlikely to have any information to support Petitioners' case.[25]  The protective order should be granted.

## B.    **Petitioners' Contentions**

Respondents incorrectly assert that 8 C.F.R. § 244.16 bars disclosure of Temporary Protected Status ("TPS") applications.  Respondents cannot withhold relevant, non-privileged information on this ground either.

---

[25] If this court orders the production of TPS applications unredacted, and does not permit A-files with asylum claim information to be withheld in their entirety, by process of elimination, Petitioners will be able to discern which A-files contain asylum information (a violation of the regulation), even if that information is redacted.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**64**

TPS applications contain information that that is highly relevant to whether an individual is danger or flight, and therefore are central to Petitioner's due process claims.  Like asylum applications, TPS applications typically contain a variety of biographical information, such as marital status, residence of family members, and criminal history, which are relevant to whether a person is a flight risk or a danger. *See* Exh. 46 ¶ 17-18.  In addition, the applications will often be supplemented by a variety of supporting documents including employment records (such as pay stubs and tax returns), medical bills, and school records.  *Id.*  Information about family ties and length of residence in the United States also bears on the availability of immigration relief, which is pertinent to the flight risk assessment.  *See* Dkt. # 165 at 15-16.

The TPS regulation, moreover, plainly permits disclosure to class counsel in this case.  First, rather than prohibit disclosure in connection with civil discovery, Section 244.16 merely prohibits disclosure of "information contained in the application and supporting documents submitted by an alien shall not be released in any form whatsoever to a third party requester ***without a court order***, or the written consent of the alien."  8 C.F.R. § 244.16 (emphasis added).  Here, the Court issued such an order when it compelled Respondents to produce the A files because of their clear relevance.

Second, Section 244.16 only bars disclosure absent a court order when "third party requesters" seek TPS information.  Section 244.16 specifically exempts "authorized representatives" from the definition of "third party requesters."  Petitioners' counsel are court-approved authorized representatives for class and thus not "third party requesters" subject to Section 244.16.

Third, particularly in light of these exceptions, Section 244.16 cannot be read as granting the government a privilege to withhold relevant information in civil discovery.  *See Zambrano*, 972 F.2d at 1125.  For each of these reasons, Respondents cannot withhold relevant documents based on Section 244.16.

**JOINT STIPULATION REGARDING PETITIONER'S MOTION TO COMPEL AND RESPONDENTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO LR 37.2-1**

**65**

### C.    Respondents' Reply to Petitioners' Contentions

Although the provisions of section 244.16 provide for disclosure through a court order, Petitioners are incorrect that this Court has already specifically ordered the production of TPS applications.  Although this Court has generally ordered the production of certain A-File materials, this Court should consider the specific production of TPS information in light of the specific confidentiality provisions set for in 8 C.F.R. § 244.16.

That regulation provides strict disclosure requirements – rather than designation of confidentiality – by restricting release of "any information" contained in a TPS application to any third party requestor, without a court order.  The regulation also restricts disclosure to the alien without written consent.  The last provision of the regulation provides that the information disclosed may be used for enforcement of the INA or for law enforcement purposes.  These provisions, taken together, demonstrate the agency's intent to maintain the information strictly confidential except where disclosure is required for law enforcement purposes.

Although disclosure to a third party is permitted by court order, this Court should nevertheless restrict disclosure in this case because Petitioners – for reasons discussed above – do *not* represent those aliens who are not class members, nor can they show written consent to such a disclosure by any class member whose A-File is at issue.  The Court should grant the protective order.

### D.    Petitioners' Reply to Respondents' Contentions

Respondents misinterpret the TPS regulation in three respects.  First, the regulation is inapplicable because Petitioners' counsel are court-approved "authorized representatives" of class members.  Second, 8 C.F.R. § 244.16 does not limit disclosure to immigration and criminal proceedings.  Respondents misconstrue the last sentence of Section 244.16, which states that "Any information provided under this part may be used for purposes of enforcement of the Act or in any criminal

proceeding." That sentence merely clarifies that disclosure of TPS information may occur in immigration and criminal proceedings. It does not operate, as Respondents suggest, to limit what may be disclosed pursuant to court order. Indeed, the provision contains no limit on what may be disclosed pursuant to court order.

Third, Respondents underestimate the relevance of information in TPS files to Petitioners' claims. As explained in Petitioners' contentions, the TPS application, supporting documents, and associated fee waiver request contain a wealth of biographical information that is pertinent to whether a class member is a flight risk or danger.

Date: July 19, 2011

FOR PETITIONER:

By: */s/ Michael Kaufman*
Michael Kaufman
ACLU OF SOUTHERN CALIFORNIA

Attorneys for Petitioners

FOR RESPONDENTS:

TONY WEST
Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director

*/s/ Theodore W. Atkinson*
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4135
theodore.atkinson@usdoj.gov

Attorneys for Respondents

1

2

## CERTIFICATE OF SERVICE

3

4

I certify that on July 19, 2011, I served a copy of the foregoing through the Court's CM/ECF system on the following counsel of record:

5

6

7

8

9

Ahilan T. Arulanantham
ACLU Foundation of Southern
California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

10

11

12

13

14

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

Cody Jacobs
Sidley Austin LLP
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: cjacobs@sidley.com

15

16

17

18

Sean Commons
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: scommons@sidley.com

19

20

21

22

23

*/s/  Theodore W. Atkinson*
Theodore W. Atkinson
Senior Litigation Counsel
United States Department of Justice

24

25

26

27

28