PETER J. ELIASBERG (SBN 189110)
Email:  peliasberg@aclu-sc.org
AHILAN T. ARULANANTHAM (SBN 237841)
Email:  aarulanantham@aclu-sc.org
MICHAEL KAUFMAN (SBN 254575)
Email:  mkaufman@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1616 Beverly Boulevard
Los Angeles, California 90026
Tel: (213) 977-5211
Fax: (213) 977-5297

Attorneys for Petitioners
(Additional counsel listed on following page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*,<br><br>Petitioners,<br><br>vs.<br><br>TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director*; JANET NAPOLITANO, *in her capacity as Secretary of Homeland Security*; and ERIC H. HOLDER, JR., *in his capacity as Attorney General of the United States*,<br><br>Respondents. | Case No. CV 07-3239-TJH (RNBx)<br><br>**JOINT STIPULATION REGARDING PETITIONER'S MOTION FOR RECONSIDERATION AND/OR CLARIFICATION OF JULY 25, 2011 ORDER [Dkt. # 195]**<br><br>Honorable  Robert N. Block<br><br>Discovery Cut-Off:   None<br>Pretrial Conference:  None<br>Trial Date:  None |

1    Additional counsel:

2    JUDY RABINOVITZ
     AMERICAN CIVIL LIBERTIES FOUNDATION
3    IMMIGRANTS' RIGHTS PROJECT
     125 Broad Street, 18th Floor
4    New York, NY 10004
     Telephone: (212) 549-2618
5    Facsimile: (212) 549-2654

6    JAYASHRI SRIKANTIAH (SBN 189566)
     STANFORD LAW SCHOOL
7    IMMIGRANTS' RIGHTS CLINIC
     Crown Quadrangle
8    559 Nathan Abbott Way
     Stanford, CA 94305-8610
9    Telephone: (650) 724-2442
     Facsimile: (650) 723-4426
10
     SEAN COMMONS (SBN 217603)
11   CODY JACOBS (SBN 272276)
     SIDLEY AUSTIN LLP
12   555 West Fifth Street, Suite 4000
     Los Angeles, California 90013-1010
13   Telephone: (213) 896-6000
     Facsimile: (213) 896-6600

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

3    JOINT INTRODUCTORY STATEMENT AND OVERVIEW ................................. 1

4        1.  Nature of the Case and Procedural Background ................................ 1

5        2.  The Present Discovery Dispute .......................................................... 3

6

7    PETITIONER'S CONTENTIONS ...................................................................... 4

8        A.  The Court Should Reconsider its Determination That the
             Provisions "Arguably" Bar Disclosure Absent Written Consent ..................... 5

9
         B.  Should the Court Decline to Reconsider its Order, it Should
10           Clarify That the Government May Only Redact Asylum, VAWA,
             "U" and "T" Visa Related Information ................................................. 8
11

12
     RESPONDENTS' CONTENTIONS ...................................................... 11
13
     1.  Overview .................................................................................. 11
14
     2.  Petitioners present no new facts to support reconsideration ................................ 13
15
     3.  Withholding the A-Files of asylum claimants, VAWA
16       petitioners, and "T" or "U" visa applicants is the only
         way to ensure that the restrictions on disclosure will not be violated ................. 18
17
     4.  Petitioners' claim of burden does not justify non-compliance
18       with the law or modification of this Court's Order ................................ 26

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**CASES**

*389 Orange Street Partners v. Arnold*,
  179 F.3d 656 (9th Cir. 1999) .......................................................... 14

*Compton Unified School Dist. v. Addison*,
  598 F.3d 1181 (9th Cir. 2010) ........................................................ 10

*In re Nelson*,
  873 F.2d 1396 (11th Cir. 1989) ....................................................... 10

*Knight v. Rios*,
  No. 1:09-cv-00823, 2010 WL 5200906 (E.D. Cal. Dec. 15, 2010) .................. 17

*Ogden v. Keystone Residence*,
  226 F. Supp. 2d 588 (M.D. Pa. 2002) .......................................... 14, 17

*Rose v. Beverly Health and Rehabilitation Services, Inc.*,
  No. CVF06-0067AWIDLB, 2006 WL 3593472 (E.D. Cal. Dec. 8, 2006) ....... 17

*Shalit v. Coppe*,
  182 F.3d 1124 (9th Cir. 1999) ........................................................ 13

*St. Regis Paper Co. v. United States*,
  368 U.S. 208 (1961) .............................................................. 10, 11

*Wood v. Midland Credit Management, Inc.*,
  No. CV05-3881FMCMANX, 2005 WL 3159637 (C.D. Cal. Sept. 21, 2005) .. 14

**STATUTES**

8 U.S.C. §§ 1101, *et seq.* ................................................................ 1

8 U.S.C § 1129b(b)(2) ................................................................... 21

8 U.S.C. § 1225(b) ..................................................... 1, 6, 15, 23

8 U.S.C. § 1226a ........................................................................... 2

8 U.S.C. § 1226(a) ......................................................................... 1

8 U.S.C. § 1226(c) ......................................................................... 1

8 U.S.C. § 1231(a) ......................................................................... 1

8 U.S.C. § 1367 ...................................................................*passim*

8 U.S.C. § 1367(a)(2) ................................................................... 12

8 U.S.C. §§ 1531-37 ....................................................................... 2

**REGULATIONS**

8 C.F.R. § 208.6 .................................................................................*passim*

8 C.F.R. § 208.6(b) ............................................................................... 12

**OTHER AUTHORITIES**

Immigration and Nationality Act .................................................................1

Fed. R. Civ. P. 12(c) ...................................................................................2

Fifth Amendment ........................................................................................1

Local Rule 7-18........................................................................5, 12, 14

Local Rule 37-2............................................................................................1

**JOINT INTRODUCTORY STATEMENT AND OVERVIEW**

Pursuant to Local Rule 37-2,  Petitioner Alejandro Rodriguez, on behalf of himself and other members of the class (collectively, "Petitioners"), and Timothy S. Robbins, *et al.* (collectively, "Respondents" or "the Government") submit this Joint Stipulation Regarding Petitioner's Motion for Reconsideration and/or Clarification of this Court's July 25, 2011 discovery order ("Order").

### 1.    Nature of the Case and Procedural Background

This case concerns a class of non-citizens who allege that they (a) have been subjected to immigration detention in excess of six months by Immigration and Customs Enforcement ("ICE") while their removal proceedings remain pending and (b) have not been afforded a constitutionally adequate hearing before an immigration judge ("IJ") where the Government has had to justify continued detention.  *See* Third Amended Complaint.  [Dkt. # 111].  Petitioners "challenge their prolonged detention without adequate process on statutory and constitutional grounds, on behalf of themselves and a class of similarly-situated detainees." [Dkt. # 111, Third Amended Complaint, ¶ 1.]  Petitioners claim that under the Immigration and Nationality Act ("INA" or "the Act"), 8 U.S.C. §§ 1101, *et seq.*, and the Due Process Clause of the Fifth Amendment, any alien who was or will be detained for six months or longer in the Central District of California is entitled to a constitutionally-adequate individualized hearing before an immigration judge to justify their continued detention under any of four detention provisions under the INA, specifically 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a).

This lawsuit was initially filed on May 16, 2007.  [Dkt. # 1.]  Following Petitioners' successful appeal of the district court's denial of Petitioners' motion for class certification, the case was remanded for further proceedings.  Following a period of sub-class discovery, on March 8, 2011, this Court granted Petitioners' unopposed motion for class and sub-class certification.  [Dkt . # 161].  Accordingly, the class consists of  "all people within the Central District of California who (1) are or will be

detained for longer than six months pursuant to the general immigration detention statutes pending completion of removal proceedings, including judicial review; (2) are not detained pursuant to one of the national security detention statutes at 8 U.S.C. § 1226a and 8 U.S.C. §§ 1531-37; and (3) have not been afforded a hearing to determine whether their prolonged detention is justified." *See* Plaintiff's Motion for Class and Subclass Certification, Memorandum in Support, and Proposed Order [Dkt. # 101]. The four sub-classes consist of aliens detained by each of the four detention statutes at issue in this case. *Id.*

On November 22, 2011, Respondents filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). [Dkt. # 130]. On January 27, 2011, the Court denied the motion for judgment on the pleadings in its entirety. [Dkt. # 155].

Following the denial of Respondents' Rule 12(c) motion, the parties raised cross-motions for a protective order and to compel with respect to disputed discovery requests propounded by Petitioners. Most relevant for the purposes of this Joint Stipulation, Petitioners sought certain information from each of the administrative files – or "A-Files" – for each of more than 1,000 non-citizens currently or formerly detained for a period going back approximately one year.

On April 25, 2011, this Court granted Petitioners' motion to compel the production of the requested A-File materials and denied Respondents' motion for a protective order. [Dkt. # 169]. Respondents' filed a motion for review of this Court's order.

On May 11, 2011, this Court granted Respondents a stay in the production of the requested A-File materials pending consideration of the motion for review. [Dkt. # 175]. Judge Hatter denied the motion for review on July 29, 2011. [Dkt. # 196]. Accordingly, Respondents are required to complete production of the requested A-File materials on September 30, 2011.

On July 19, 2011, the parties submitted a joint stipulation regarding the parties' cross-motions for a protective order and to compel discovery. [Dkt. # 190]. At issue

was discovery of A-files that include information related to claims for asylum, claims under the Violence Against Women Act ("VAWA"), "T" or "U" visa applications, battered spouse/child information, Special Agricultural Worker ("SAW") applications, legalization applications, and applications for aliens seeking Temporary Protected Status ("TPS").

On July 25, 2011, this Court issued its Order granting the parties' motions in part and denying them in part.  [Dkt. # 196].

### 2.    <u>The Present Discovery Dispute</u>

The parties' present discovery dispute concerns this Court's July 25, 2011 Order.  Petitioner seeks reconsideration and/or clarification of the portions of the Court's Order that address the asylum and VAWA, "U" and "T" visa confidentiality provisions.   The Court's Order provides in relevant part:

> 1.  With respect to the category of asylum claim related information, the Court finds that there is language in 8 C.F.R. § 208.6 that arguably bars by implication disclosure in judicial proceedings other than those enumerated in § 208.6(c)(2).  Accordingly, the Government need only produce this information for class members who provide written consent.
> 2.  With respect to the category of VAWA and "T" and "U" visa applicant information, the Court finds that there is language in 8 U.S.C. § 1367 that arguably bars by implication disclosure in judicial proceedings other than those enumerated in § 1367(b)(3). Accordingly, the Government need only produce this information for class members who provide written consent.

[Dkt. # 195.]

Petitioner seeks clarification that the Court's Order only authorizes Respondents to redact asylum and VAWA, "U" and "T" visa information – the applications, directly supporting documents, and references to the fact of application. Respondents disagree, and maintain that the Court's Order recognizes the Government's obligation not to reveal the identity of an alien who has a pending or granted application for VAWA, "T" or "U" visa relief and that withholding the A-Files of aliens whose files contain asylum/VAWA/ "T" and "U" visa application information is the only way to comply with the law.

1   In addition, Petitioner seeks reconsideration of the Court's Order in light of, in

2   the Petitioner's view, new information regarding the impact of the Court's Order on

3   production of A-file information.  Respondents oppose the motion for reconsideration

4   because, in Respondents' view, Petitioners have presented no new information on

5   which to challenge the Court's ruling.

6   **PETITIONERS' CONTENTIONS**

7   Petitioner seeks reconsideration and clarification regarding this Court's July 25,

8   2011 Order.  [Dkt. # 195].  In the Order, the Court found that "asylum claim related

9   information," and "VAWA and 'T' and 'U' visa applicant information," is "arguably"

10  barred from disclosure in this proceeding absent written consent, and therefore ruled

11  that the government need not turn over such information absent Petitioner obtaining

12  individual consents.  *Id.*

13  The parties disagree about the proper way to construe the Court's Order.

14  Respondents' view it as an opportunity to dramatically limit the production of A files

15  for approximately 25% of the class, and thereby undermine this Court's prior order

16  requiring the production of class members' A files, which was upheld by Judge

17  Hatter.  [Dkt. # 169, #196].  Because the Respondents have interpreted the Court's

18  order to permit them to *entirely* withhold the A files of asylum, VAWA, "U" visa and

19  "T" visa applicants absent written consent, and because Petitioner has no practical

20  hope of obtaining individual consent from the vast majority of the approximately 25%

21  of the class at issue, Petitioner could be deprived of critical information about a

22  material portion of an entire subclass, many of whom have among the strongest claims

23  for relief from removal.

24  In light of this new information, Petitioner respectfully requests that this Court

25  reconsider or clarify its recent Order that certain information in the A file materials of

26  class members is "arguably" barred from disclosure to court-appointed class counsel

27  in a civil action subject to a protective order absent written consent.  Otherwise,

28  Respondents will have succeeded in using the confidentiality provisions as a sword to

4

conceal wrongdoing against the very individuals the provisions are intended to protect.

Petitioner respectfully requests that the Court make clear that Respondents may only withhold asylum, VAWA, "U" visa and "T" visa information that discloses the identity of an applicant, rather than the entire A files of class members who applied for those forms of relief. Although this Court's Order authorizes withholding only "information," Respondents nonetheless intend to withhold entire A files, including information completely unrelated to asylum, VAWA, "U" visa and "T" visa applications. Instead, Respondents should be required to redact the names and all but the last four digits of the A numbers for the disputed files. This would preserve the confidentiality of the individuals at issue while allowing Petitioner to advance and protect the interests of this certified class, consistent with language and purpose of the confidentiality provisions at issue. At a minimum, Petitioner respectfully requests that Respondents be permitted to withhold only the specific applications at issue and directly supporting materials (and redact any references to the fact of their application).

### A. The Court Should Reconsider its Determination That the Provisions "Arguably" Bar Disclosure Absent Written Consent.

Reconsideration of the Court's Order is warranted because of "the emergence of new material facts . . . occurring after the time of such decision." Local Rule 7-18. First, Petitioner has only recently been able to determine based on conferring with Respondents that the Court's Order will deprive Petitioner (and the Court) of information concerning at least 25% of all class members, including a large portion of one subclass. *See* Exhibit 49 at ¶ 8 (Declaration of Michael Kaufman). This is exacerbated by the government's expansive reading of the confidentiality provisions, that threatens to undermine this Court's previous conclusion that production of A file information is critical to questions at the heart of this class action. Second, Petitioner has learned that Respondents' proposal to the Court – which the Court adopted – to

5

require Petitioner to obtain written consent because information is "arguably" protected is a largely hollow offer because, for a variety of reasons, Petitioner has no practical ability to reach the vast majority of class members at issue.

The combination of two pieces of new information make clear that the Order will dramatically curtail Petitioner's information concerning class members. Respondents take the position that the Court's Order permits them to withhold *entire* A files, not simply the confidential information about the identity of applicants, whenever a detainee has applied for asylum, VAWA, or a "U" or "T" visa. *Id.* at ¶ 4. Respondents thus intend to withhold some 200-250 A files in their entirety, including custody review documents (like Post Order Custody Review worksheets and bond determinations) and other documents that may be completely unrelated to an individual's confidential applications, but which go to the very heart of the dispute in this case. This represents approximately a quarter of the entire class and virtually the entirety of the section 1225(b) subclass (which is comprised largely of individuals applying for asylum).[1]

As a result, under Respondents' reading, the Court and Petitioner will not have access to *any* of the release determinations for asylum seekers – the very documents in which the government explains why it has detained class members seeking asylum. This will obviously impede Petitioner's ability to demonstrate that Respondents' decisionmaking process for prolonged detentions violates class members' statutory and due process rights. As this Court found in granting Petitioner's motion to compel, the A files contain documents – like the custody review determinations – that are critical to evaluating whether the Respondents' existing procedures adequately

---

[1] Section 1225 authorizes the detention of individuals who have not been admitted to the United States. A large percentage of the class members in that category are individuals who fled their countries due to alleged persecution, were stopped at or very near the border (whether at an airport or land border), and then applied for asylum.

1    determine whether class members are dangers or flights risk.  *See* Dkt. # 169 at 2.

2    Thus, the Court's Order – at least as construed by Respondents – will greatly restrict

3    Petitioner's access to this vital information, and thereby deprive the Court of

4    important factual material for deciding the case.

5      In addition, the Court's Order has the practical effect of denying access to such

6    relevant evidence for the vast majority of the files at issue. There are three categories

7    of individuals from whom Petitioner would now need to seek written consent:

8    (1) individuals who have been removed from the United States, (2) individuals

9    released who remain in the United States, and (3) detained individuals.  For reasons

10   explained more fully below, it is practically impossible to obtain written consent from

11   individuals in the first two categories because Respondents cannot reliable provide

12   contact information.  The government does not maintain any contact information for

13   individuals who are removed from the country, and Petitioner has no way of obtaining

14   it.  *See* Exh. 49 at ¶ 7.  The government has offered to provide last known addresses

15   for individuals released from custody within the United States, but has stated in

16   discussions with Petitioners' counsel subsequent to the Court's order that those

17   records are often inaccurate and, due to the passage of time, also now stale.  *See* Exh.

18   49 at ¶ 6.  Indeed, roughly 65% of the class was no longer in custody on April 18,

19   2011.  Exhibit 50 at ¶ 6 (Declaration of Nina Siulc).  At least 23% of the class – and

20   possibly more than 33% of the class – were removed from the country as of that date.

21   *Id*.  These numbers will continue to grow.[2]

22     Even for the individuals in the third category – current detainees – experience

23   has shown that class members have difficulty responding to letters, making it

24   necessary to invest enormous resources to individually contact class members in

25   person.  Counsel for Petitioner previously conducted interview sessions with

26   ――――――――――――

27   [2] This is consistent with the government's estimates.  *See* Dkt. # 193 at 18 ("The vast majority of the over 1,000 A-files at issue here are of individuals that are not class

28   members . . . .").

approximately 127 class members to support claims in this action.  That process alone required roughly 350 hours over 14 days and involved over 15 attorneys, student interns, and volunteers.  *See* Exhibit 51 at ¶¶ 3-7 ("Declaration of Jennifer Stark").  Such an extraordinary investment of time should not be required where, as here, information is only "arguably" protected, a protective order is in place, and court-appointed class counsel seek information to advance the rights of class members.

In light of the impracticality of obtaining written consent, Petitioner respectfully requests that the Court either reconsider its decision that the government can withhold A file information absent written consent, or clarify the limited scope of its order.  *See infra*.  As the Court's analysis of the TPS, SAW and "battered spouse" provisions recognizes, disclosure to class counsel should not be barred absent an express prohibition.  *See id.* (holding that TPS, SAW and "battered spouse" provisions do not apply to "class members currently detained").  For the same reason, the Court should hold that the confidentiality provisions do not bar disclosure to class members' counsel.

### B. Should the Court Decline to Reconsider its Order, it Should Clarify That the Government May Only Redact Asylum, VAWA, "U" and "T" Visa Related Information.

In the event that the Court declines to reconsider its Order, Petitioner respectfully requests that the Court clarify that Respondents may only withhold personally-identifying asylum, VAWA, "U" and "T" visa-related information, not entire A files.

As an initial matter, this Court's Order refers only to "information" related to asylum, VAWA, "U" and "T" visas.  It nowhere states that the A files can be withheld in full.  See Dkt. # 193 ("the Government need only produce this information for class members who provide written consent") (emphasis added).  To the extent that there remains an open question, neither the language of the disputed statutory confidentiality provisions nor their purpose support Respondents' position that it can withhold A files in their entirety.

1     The asylum regulation provides that "[i]nformation contained in or pertaining to
2  any *asylum application* shall not be disclosed without the written consent of the
3  applicant." 8 C.F.R. § 208.6 (emphasis added). Plainly, only the asylum application,
4  supporting documents, and references to the application constitute information that is
5  "contained in or pertain[s] to any asylum application." As Petitioner explained in the
6  Joint Stipulation, the purpose of the asylum regulation is to protect against disclosure
7  to the home country that could result in retaliation against the applicant or his or her
8  family. *See* Dkt. #193 at 18-23. That purpose is not served by withholding the entire
9  A file, which includes many documents that are unrelated to the asylum application
10 and do not reveal that the individual has applied for asylum, particularly if redacted
11 appropriately.

12    The VAWA provision arguably has broader language, but the proper reading of
13 the statute is that – like the asylum regulation – it only restricts disclosure of the
14 application, supporting documents, and references to the application. 8 U.S.C. § 1367
15 prohibits the "disclosure to anyone . . . of any information which relates to an alien
16 who is the beneficiary of [a VAWA, "U" or "T" visa application]." As Petitioner
17 argued in the Joint Stipulation, this provision must be read in light of its purpose – to
18 ensure that information is not disclosed to an applicant's abuser – because the scope of
19 the provision barring disclosure of "information which relates to" an individual who
20 has sought such a visa is ambiguous. *See* Dkt. # 193 at 40-42. Respondents contend
21 instead that the provision clearly defines what constitutes such protected information,
22 and that it includes the *entire* A file, all of which constitutes "information which
23 relates to" a beneficiary of such a visa. However, if the government's broad
24 construction were correct, literally all information in the government's possession that
25 is about a beneficiary would be barred from disclosure, regardless of whether it was
26 related to the application for benefits. If this were so, then the government would be
27 prohibited from publishing census information that included the applicants, or from
28 bringing a criminal case that relied upon information about the applicant (even if that

information was completely unrelated to the applicant's VAWA application). Surely the provision cannot be read in such an absurd manner. *See Compton Unified School Dist. v. Addison*, 598 F.3d 1181, 1184 (9th Cir. 2010) (courts "avoid statutory interpretations which would produce absurd results"). Moreover, barring disclosure of information unrelated to the application does not serve the provision's purpose. As with the asylum regulation, the most plausible reading of the statute is that is bar information "related" to the application, not the applicant.[3]

While Respondents argued in the Joint Stipulation that the Court must bar production of the entire A file of asylum applicants to "mask" their identification, this argument actually counsels in favor of disclosing more information concerning the VAWA, "U", and "T" visa applicants. Respondents claimed that if the Court ordered the partial redaction A files belonging to the asylum applicants, while ordering the withholding of A files belonging to VAWA, "U" and "T" visa applicants, then counsel for Petitioner would be able to determine that the redacted files belonged to the asylum applicants. Dkt. # 193 at 7-8. However, the easiest solution to this problem is to redact only the asylum, VAWA, "U" and "T" visa related information from all of the A files that contain such information. The production would then include many A files with substantial redactions, which could belong to either an asylum, VAWA, "U" or "T" visa applicant, or to an individual no longer in detention whose A file includes TPS, SAW or "battered spouse" related information – which, under the Court's Order, Respondents are required to redact. Petitioner would be unable to identify whether any given individual had applied for any of the forms of relief at issue. Such an approach is more consistent with the language and purposes of

---

[3] To the extent there is any ambiguity in the provisions, it is well-established that courts should narrowly construe provisions that classify information as confidential to avoid "'suppress[ing] otherwise competent evidence.'" *In re Nelson*, 873 F.2d 1396, 1397 (11th Cir. 1989) (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218 (1961)).

the confidentiality provisions, and with the Court's obligation to narrowly construe confidentiality provisions, particularly where the underlying issue is highly relevant. *See supra* note 3 (citing *St. Regis Paper Co*, 368 U.S. at 218).

Finally, in light of the potentially drastic consequences of the Court's Order and the Court's apparent interest in arriving at a compromise position between the parties, Petitioner respectfully submits an alternative proposal that would equally serve to protect the identity of asylum, VAWA, "U" and "T" visa applicants: redacting any reference to the applicants' names, Alien numbers ("A numbers") or any other personal identifying information in the A files, while not otherwise redacting information relating to asylum, VAWA, "U" or "T" visa applications. Without any personal identifying information, neither counsel for Petitioner nor any third party would be able to determine whether an A file belonged to any given individual. While Petitioner admittedly did not raise this proposal in the Joint Stipulation, he does so here in order to provide an alternative way to resolve this dispute in light of the massive amount of information subject to the Court's Order and the need to reach a compromise between the parties. Should the Court reject this approach, it nonetheless should, at a minimum, clarify that the government may not withhold the entire A file of individuals who have applied for these forms of relief, and in particular that it may not withhold the custody determination documents that go to the heart of the issues in this case.

**RESPONDENTS' CONTENTIONS**

**1.    Overview**

This Court should deny the motion for reconsideration because Petitioners do not identify any new basis in fact for this Court to reverse its Order. Petitioners cite to "two pieces of new information" that they argue give the Court a reason to change its decision. First, Petitioners cite their concern that a large number of A-Files contain asylum/VAWA/"T" or "U" visa application information. Petitioners' claim that this information is "new" is disingenuous. Indeed, Petitioners have consistently used that

very fact to argue against a protective order throughout this litigation.  Second, Petitioners cite their concern that obtaining written consent from aliens, including class members and non-class members, will be difficult and in some cases impracticable.  Petitioners' contention that this information is in any way "new" is undermined by their very basis for reaching this conclusion – their past experience reaching out to class members.  At bottom, in their motion for reconsideration Petitioners simply reargue matters already presented to – and rejected by – this Court.  As courts have repeatedly recognized, Local Rule 7-18 prohibits reconsideration under such circumstances.

The Court should also deny Petitioners' motion for clarification, which is really a motion for modification of this Court's Order.  With respect to asylum/VAWA/"T" or "U" visa application information prohibited from disclosure under 8 C.F.R. § 208.6 and 8 U.S.C. § 1367, the Court stated clearly in its Order that the Government "need only produce this information for class members who provide written consent." [Dkt. # 195.]  Importantly, the regulatory and statutory provisions at issue cover not just the disclosure of information included in such applications, as Petitioners suggest, but also prohibit the Government from revealing any information that would "indicate that a specific alien has applied for asylum" or "any information which relates to an alien" who has a pending or granted application for VAWA, "T" or "U" visa relief.  8 C.F.R. § 208.6(b), 8 U.S.C. § 1367(a)(2).  As Respondents explained in the contentions on which the Court made its ruling, withholding the A-Files of aliens whose files contain asylum/VAWA/ "T" and "U" visa application information is the only way to comply with these restrictions.

Petitioners are incorrect that redaction of asylum/VAWA/"T" or "U" visa application information or of personal identifying information[4] would comply with

_____

[4] The proposal to redact names and partially redact A-numbers was never introduced to this Court prior to the Order and as such should not be considered in this motion for reconsideration/clarification.

these provisions because either approach would still entail the production of information relating to protected aliens and would fail to protect the identity of aliens who had applied for relief because Petitioners already have a list of every alien whose A-File would be produced.  Moreover, as detailed below, when an alien makes a claim for asylum in defending against removal, that asylum claim is presented to Asylum Officers and to immigration courts in removal proceedings.  Moreover, the request for asylum runs throughout the course of the alien's proceedings, and thus asylum information – easily the most common type of protected information in the A-Files at issue  – permeates the A-Files of aliens in removal proceedings seeking asylum.  In contrast, VAWA petitions and "T" or "U" visa applications are discreet immigration benefits presented on standardized forms to USCIS for adjudication.  These differences mean that redactions will give away the identity of an alien making a particular claim.  An A-File containing redacted asylum information will contain an extraordinarily large number of redactions, while the A-Files of aliens seeking VAWA or "T" or "U" visa application benefits will contain far fewer redactions.  One paging through the redacted A-Files would easily determine which claims were made, and by which aliens.  That is precisely the type of identifying disclosure the regulatory and statutory provisions were designed to protect against.

Because redaction will not protect the identity of aliens whose A-Files contain asylum/VAWA/"T" or "U" visa application information, the only interpretation of the Order that gives effect to the disclosure restrictions correctly identified by this Court is one that permits withholding of those A-Files containing asylum/VAWA/"T" or "U" visa application information.  Petitioners' interpretation of the Order is incorrect because it fails to afford that protection.  If the Court's Order is to have any meaning, then Petitioners' contentions must be rejected.

**2.    Petitioners present no new facts to support reconsideration.**

"The law is clear that reconsideration is appropriate only in very limited" and "highly unusual" circumstances. *Shalit v. Coppe*, 182 F.3d 1124, 1132 (9th Cir. 1999)

1    (limited circumstances for reconsideration); *389 Orange Street Partners v. Arnold*,

2    179 F.3d 656, 665 (9th Cir. 1999) (reconsideration justified only in highly unusual

3    circumstances).  This Court's local rules set forth the limited grounds that may

4    support reconsideration.  Specifically, Local Rule 7-18 states that a motion for

5    reconsideration "may be made only on the grounds of (a) a material difference in fact

6    or law from that presented to the Court before such decision that in the exercise of

7    reasonable diligence could not have been known to the party moving for

8    reconsideration at the time of such decision, or (b) the emergence of new material

9    facts or a change of law occurring after the time of such decision, or (c) a manifest

10   showing of a failure to consider material facts presented to the Court before such

11   decision."  L.R. 7-18 (emphasis added).  That Rule further specifies that "[n]o motion

12   for reconsideration shall in any manner repeat any oral or written argument made in

13   support of or in opposition to the original motion."  *Id.*  Petitioners do not meet the

14   standard for reconsideration.

15        Petitioners base their motion for reconsideration on the purportedly "new" facts

16   that approximately one-quarter of the A-Files at issue contain asylum, VAWA, or "T"

17   or "U" visa application information, and that withholding the information protected by

18   the relevant regulation and statute would frustrate Petitioners' ability to obtain

19   information about a large number of class members and former class members.  These

20   are hardly new facts.  Rather, they amount to nothing more than the repackaging of

21   arguments Petitioners previously but unsuccessfully made in their motion to compel.

22   "Local Rule 7-18 explicitly prohibits parties from filing motions for reconsideration

23   that repeats any oral or written argument made in support of or in opposition to the

24   original motion."  *Wood v. Midland Credit Management, Inc.*, No. CV05-

25   3881FMCMANX, 2005 WL 3159637 (C.D. Cal. Sept. 21, 2005).  A motion for

26   reconsideration "is not to be used as a means to reargue matters already argued and

27   disposed of or as an attempt to relitigate a point of disagreement between the Court

28   and the litigant."  *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa.

1    2002).  But that is exactly what Petitioners attempt to do in their present motion.

2          First, Petitioners cannot credibly claim that they did not anticipate that a large

3    number of aliens' A-Files would contain asylum/VAWA/"T"or "U" visa application

4    information until after the Court's Order.  Petitioners' argument is patently

5    disingenuous given that Petitioners relied on the fact that a large number of A-files –

6    indeed, by their own estimates, nearly half of the files – would contain asylum

7    information when they argued against the protective order:

8          •    Petitioners argued that "[a]sylum applicants constitute the majority of the

9               section 1225(a) sub-class and a significant portion of the overall class," Dkt. #

10              193 at 18.

11         •    Petitioners submitted a declaration from one of their own counsel stating

12              that "it is safe to conclude that a majority of [the subclass of] individuals

13              detained under 8 U.S.C. § 1225(b) are applying for asylum."  Dkt. # 193-2

14              (Declaration of Jennifer Stark ¶ 23).

15         •    Indeed, Petitioners argued that "almost half" of the A-Files of the class

16              would contain such information, *Id.*, a number substantially *greater* than that

17              now estimated by Respondents.

18   Petitioners can hardly claim surprise that possibly a quarter of all A-Files may contain

19   such information *when they argued that "nearly half" of the A-Files would contain*

20   *such information*.  There is no new fact on which to base reconsideration.  This is, at

21   best, an attempt by Petitioners to get a second bite at the apple.

22         Second, Petitioners argue that the Court should reconsider its decision "in light

23   of the impracticability of obtaining written consent" from the aliens whose files are

24   protected by regulation and statute.  In support of this contention, they note that "class

25   members have difficulty responding to letters" and last known addresses for non-class

26   members may not be "reliable" because many of them have been removed.  The fact

27   that they base both of these assertions on prior "experience" and an assessment made

28   in April 2011, indicate that this information is anything by "new."  Counsel's desire to

obtain the requested information without the inconvenience of seeking consent from the aliens whose information the Government is prohibited by statute and regulation from disclosing provides no basis for the Court to reconsider its legal analysis.

To the extent that Petitioners also seek to argue that the Government's interpretation of this Court's Order presents "new information" supporting reconsideration, that position is also erroneous. The Government's interpretation that the Court's Order provides for withholding the A-Files containing asylum/VAWA/"T" or "U" visa application related information is the only logical interpretation of the Order given the language in 8 C.F.R. § 208.6 and 8 U.S.C. § 1367. In fact, this was precisely the position that the Government explained in its contentions where it stated clearly that "the protective order should allow Respondents to withhold the entire A-File" for such aliens. *See* Dkt. # 190 at 7. The Government specifically took the position that that redaction alone would not mask the identities of those who made such claims, and that the mere redaction of asylum/VAWA/"T" or "U" visa application related information would nevertheless result in the disclosure of the identity of those who made such claims – a disclosure that would defeat the entire purpose of the disclosure restriction provisions. This is discussed in greater detail below with regard to Petitioners' request for clarification, but as to reconsideration, Petitioners cannot reasonably claim that the Government's position in this regard is suddenly "new information." To the contrary, it was a critical portion of Respondents' previous contentions to this Court. *See* Dkt. # 190 at 8 ("Respondents contend that the only way to provide the full and complete protection afforded by law to aliens who made asylum claims, VAWA claims, and "T"/"U" visa applications is to permit Respondents to withhold those A-Files."). In fact, Petitioners attempted to address this very issue by arguing in their own contentions that "Section 1367 also does not authorize withholding relevant, non-privileged information in civil discovery." Dkt. # 190 at 40. Accordingly, Petitioners cannot point to Respondents' interpretation of the Order as a basis for reconsideration.

1    Moreover, to the extent Petitioners argue that withholding asylum/VAWA/"T"

2  and "U" visa application related information will "impede" Petitioners' ability to

3  pursue its claims, that is a reargument of contentions that Petitioners already presented

4  to this Court.   In their previous contentions, Petitioners argued that "asylum

5  applications in many instances constitute the only ready source of information about

6  class members' claims," Dkt. # 190 at 19, and that "the documents in dispute include

7  applications for immigration relief that, for many class members, are the only source

8  of critical information concerning their claims for relief from removal . . ." *Id.* at 9.

9  Those same arguments are repeated here, just in different form.   A party cannot base

10 reconsideration on reformulated arguments it either pursued or could have pursued

11 with the Court.  *See Knight v. Rios*, No. 1:09-cv-00823, 2010 WL 5200906, * 2 (E.D.

12 Cal. Dec. 15, 2010) (denying motion for reconsideration because it "is merely a

13 rearguing of the evidence and arguments previously argued by Petitioner and

14 considered by this Court. . ."); *Rose v. Beverly Health and Rehabilitation Services,*

15 *Inc.*, No. CVF06-0067AWIDLB, 2006 WL 3593472, * 2 (E.D. Cal. Dec. 8, 2006)

16 (denying reconsideration because "Plaintiff's motion for reconsideration is essentially

17 a re-argument of her two previously-argued contentions. . .").

18    This Court considered – and rejected – Petitioners' arguments as to their

19 claimed need for the information sought, and correctly concluded that with respect to

20 asylum/VAWA/"T" and "U" visa application information, regulation and statutory

21 provisions restrict the disclosure of that information in this judicial proceeding.   As

22 one court succinctly put it, "[a] motion for reconsideration is not to be used as a means

23 to reargue matters already argued and disposed of or as an attempt to relitigate a point

24 of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*,

25 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002).   For this reason, Petitioners' argument that

26 the information is purportedly critically important to their case is irrelevant to the core

27 issue:  whether the law allows that information to be disclosed in judicial proceedings

28 like this one.  This Court concluded it did not, and correctly so.  Neither 8 C.F.R. §

17

1  208.6 (governing disclosure of asylum information) nor 8 U.S.C. § 1367 (governing

2  the disclosure of VAWA/"T" and "U" visa application information) permit disclosure

3  in judicial proceedings where the information is relevant.  Rather, those provisions bar

4  disclosure in judicial proceedings like this one, period.  Petitioners' claims of need are

5  simply not relevant, and because Petitioners have already made that argument, they

6  are prohibited from rearguing that position to obtain reconsideration.  Petitioners

7  clearly disagree with this Court's interpretation of the regulations and statutes

8  restricting disclosure of certain information, but that disagreement, standing alone,

9  does not justify reconsideration.  The Court should deny Petitioners' motion.

10  **3.    Withholding the A-Files of asylum claimants, VAWA petitioners, and "T"**

11  **or "U" visa applicants is the *only* way to ensure that the restrictions on disclosure will not be violated.**

12      Petitioners complain that Respondents view this Court's Order as "an

13  opportunity" to "undermine" the production of A-Files previously ordered by this

14  Court.  That accusation is wholly without merit.[5]  As Respondents have consistently

15  maintained, and as this Court recognized, under the disclosure restrictions set forth at

16  8 C.F.R. § 208.6 (relating to asylum information) and 8 U.S.C. § 1367 (related to

17  VAWA petition and "T" and "U" visa application information), the Government has

18  an obligation not to disclose extraordinarily sensitive information in judicial

19  proceedings such as this one.

20      Significantly, in seeking reconsideration, Petitioners do not challenge – and

21  indeed accept – that the purpose of restricting asylum/VAWA/"T" and "U" visa

22  application related information from disclosure is to *protect the identity of aliens* who

23

---

24  [5] This accusation is particularly galling because counsel for Petitioners know that

25  Respondents have continued to review files and work toward the production of A-Files, even though this Court entered a stay of that discovery.  Petitioners' attempt to

26  paint Respondents' effort to protect the highly sensitive information of aliens (who were informed such information would remain confidential) and to adhere to the

27  unambiguous disclosure restrictions set forth in the law as a mere "opportunity" to

28  undercut this Court's A-File production order should be flatly rejected by this Court.

made and pursued such claims, applications, and petitions.  This was the central
principle of Respondents' contentions, and one that Petitioners never disputed.  Nor
could they dispute that principle, given the need to protect the identity of such
claimants emphasized by Congress, international bodies, the ACLU, and Petitioners'
own counsel.  The disclosure of the identity of those who have made such claims is
paramount, and has been the subject of litigation, including litigation against the
Government for violation of disclosure restriction provisions at issue.

If the protection of the identity of aliens making asylum/VAWA/"T" and "U"
visa claims is paramount, then this Court's Order must be read in such a way as to
provide that protection.  For the reasons discussed below, withholding the A-Files
containing asylum/VAWA/"T" and "U" visa application related information is the
only way to ensure compliance with 8 C.F.R. § 208.6 and 8 U.S.C. § 1367.
Withholding the A-Files is thus a necessary implication of the Court's Order
recognizing the restrictions of those provisions of law.

Petitioners argue that the same result could be achieved either (1) by redacting
the asylum/VAWA/"T" and "U" visa application related information, while not
redacting all other personal identifying and other information (name, A-number, etc.);
or (2) by redacting all personal identifying information (name, A-number, etc.), while
not redacting asylum/VAWA/"T" and "U" visa application related information.
However, neither approach works because – for the reasons discussed below – each
approach violated the statutory and regulatory provisions at issue because they
disclose the identity of each alien making an asylum claim, petitioning for relief under
VAWA, or filing a "T" or "U" visa application.  Petitioners' proposals are considered
in turn:

(1)  Redacting the asylum/VAWA/"T" or "U" visa application information does
not shield the alien from identification as a claimant.

Petitioners propose redacting the asylum/VAWA/"T" and "U" visa application
information from the A-File materials to be produced (while leaving personal

19

identifying and other information unredacted).  In practical terms redacting the "claim" information does not protect against the disclosure of the identification of an alien making a claim for asylum/VAWA/"T" or "U" visa benefits.  Because of differences in the kind and nature of the claims being pursued, one could easily identify which alien was making which claim simply by looking to the nature and of the redactions themselves.

How Petitioners' first proposal undermines the disclosure restrictions at issue takes a little effort to explain.  An asylum claim follows a much different and much more involved course than a VAWA claim, or an application for a "T" or "U" visa. Many of the aliens who have made asylum claims with respect to this case have done so in the context of removal proceedings (proceedings giving rise to the detention at issue in this class action).  By way of brief background, an arriving alien or an alien present in the United States facing removal may claim asylum in defense to that removal.  If the alien facing removal indicates an intention to apply for asylum, expresses a fear of persecution or torture, or expresses a fear of return to his or her country, he or she must be referred to an Asylum Officer for an interview to determine whether the individual has a credible fear of persecution or torture.  Individuals found to have a credible fear of persecution or torture are then given an opportunity to seek asylum before an immigration judge. This puts the alien on the "defensive" path to asylum. Those found not to have a credible fear of persecution or torture may request that an immigration judge review the negative determination in a removal proceeding.[6]

For these reasons, an asylum-seeker's asylum claim is at the core of the process

---

[6] Of course, aliens may also file "affirmative" claims for asylum not made as a defense to removal.  For a more detailed description of the asylum process, including a description of the differences between "affirmative" and "defensive" asylum claims, *see* Exhibit A hereto, "Obtaining Asylum in the United States," from USCIS's website.

of removal, and, accordingly, the alien's A-File.  To redact asylum-related information would require redaction of an asylum application, all exhibits filed in support of the application, any reference to the credible fear interview process, any notices or filings referring to asylum, references to an asylum claim in removal proceedings – including in transcripts, decisions, court filings – and references to asylum in any administrative or judicial appeal.  In short, information pertaining to or related to an asylum claim permeates the A-File of an asylum-seeker.

By contrast, the VAWA petition and "T" and "U" application processes are more narrowed in scope, and do not permeate the A-Files at issue.  Under VAWA, the spouses and children of United States citizens or lawful permanent residents (LPR) may self-petition to obtain lawful permanent residency by filing a particular petition – a Form I-360 – with USCIS for consideration.[7]  USCIS will process the petition and request proof supporting the petition, and then render a decision.  Appeals of denied VAWA petitions go to the Administrative Appeals Office ("AAO") – not an immigration judge.[8]  Similarly, applicants for "T" or "U" visas apply through specific applications (Form I-914 for a "T" visa, and Form I-918 for a "U" visa), which is submitted to USCIS.  In the case of "T" and "U" visa applications and, to a similar extent, VAWA petitioners, the information to be redacted from an A-File would be relatively discreet.  (Even then, however, it would not be impossible to distinguish between VAWA petitioners and "T" or "U" visa applicants).

Thus, anyone comparing a redacted A-File of a VAWA petitioner (or "T" or

---

[7] Although uncommon, Respondents also note that aliens may file VAWA Cancellation of Removal applications under 8 U.S.C § 1129b(b)(2), which, like asylum applications, would present information that would permeate an A-file because they would be referenced through the immigration court transcript, in immigration court decisions, appeal briefs, BIA decisions, etc.

[8] For a series of questions and answers about the VAWA process, *see* Exhibit B, "Questions and Answers: Battered Spouses, Children and Parents Under the Violence Against Women Act (VAWA)," from USCIS's website.

"U" visa applicant) and the redacted A-File of an asylum-seeker would be able to identify which *alien* filed which *claim* based solely on the volume and type of redactions alone.  The asylum-seeker's A-File would be heavily redacted, particularly with respect to filings, claims, transcripts, and decisions of immigration judges in removal proceedings.  The VAWA petitioner's A-File would not be as heavily redacted because the VAWA petitioning process is confined to consideration by USCIS of the Form I-360 and, if appealed, by the AAO; similarly, redactions pertaining to "T" or "U" visa applications would be similarly small in number.  And in no event would one expect to find heavily redacted portions of removal proceeding related documents in the case of VAWA petitions or "T" and "U" applications, because unlike asylum claims, relief under VAWA or an application for a "T" or "U" visa cannot be used to defend against removal.   Thus, while it may be somewhat more difficult to discern between VAWA applicants and "T" and "U" visa applicants, it would be easy to discern between, on the one hand, VAWA and "T" or "U" visa applicants and, on the other, asylum-seekers.  In short, no matter how carefully Respondents redact asylum information in an A-File, *the sheer volume and quality of redactions* will identify the A-File as belonging to an asylum-seeker.[9]

The ease with which one could identify an asylum-seeker from the redactions in an A-File would completely undermine the entire purpose of the disclosure restrictions of 8 C.F.R. § 208.6 – to prevent the identification of those aliens seeking asylum.  By that same token, identification of VAWA petitioners and "T" and "U" applicants would also be relatively easy by examining the redactions – thus undermining the entire purpose of the disclosure restrictions of 8 U.S.C. § 1367.  In no

---

[9] This argument also applies to redactions made to SAW, TPS, Legalization, and Battered Spouse and Child, which Respondents have been ordered to redact for former class members and produce in full for current class members.  Those redactions will be easily distinguishable from redactions for asylum by virtue of the quantity and types of documents redacted.

1    sense does the act of redaction comport with the regulatory and statutory purposes of

2    the disclosure restrictions this Court recognized when it properly issued its Order.[10]

3        There is another reason why Petitioners' first proposal makes no sense.

4    Petitioners have repeatedly claimed that they need information about the claims aliens

5    have made in removal proceedings to determine whether aliens detained have a

6    defense to removal – the theory being that aliens who ultimately are likely to succeed

7    in preventing removal should not be detained for more than six months without a bond

8    hearing. Even if one accepts Petitioners' theory – and Respondents do not – that

9    theory is made pointless if, as Petitioners propose, all of the claim information is

10    redacted from the A-File. It is difficult to conceive how, on an "aggregate" basis,

11    Petitioners could qualify claims as likely to succeed or not in removal proceedings

12    without knowing what claims are at issue, and what is being asserted by any given

13    alien in removal proceedings. If, for example, Petitioners intend to show that aliens

14    detained under 8 U.S.C. § 1225(b) are likely to avoid removal because they have a

15    valid asylum claims, then Petitioners' proposal undercuts their theory. At best,

16    Petitioners examining a heavily-redacted A-File would only be able to determine

17    whether an alien was ultimately successful by avoiding removal, or unsuccessful by

18    being removed. *But Petitioners already have that information in the electronic*

19    *databases provided by Respondents.* It is entirely unclear how – as Petitioners

---

[10] The result would be the same if this Court modified its Order to require redaction of A-Files for asylum claims, but permit withholding of A-Files containing VAWA petitions or "T" and "U" visa applications. In that case, the redactions would clearly signal one kind of claimant, while withholding of an A-File would clearly identify another kind of claimant. This is so because Petitioners sought and obtained a list of the names, A-numbers and a variety of additional information for all of the more than 1,000 aliens at issue. Additionally, any instruction to redact asylum will clearly be conveyed for current class members where the Order at issue does not permit redaction of TPS, SAW, Legalization and Battered Spouse or Child. If the Court were to allow the withholding of some A-Files and not others, the confidentiality provisions at issue and the Order that correctly prohibits disclosure of that information absent consent will be rendered meaningless.

propose – redacting asylum information would allow Petitioners to determine the possible success of a claim, information about which they are not permitted to examine under the law.  The motion for clarification should be denied, and the Court should accordingly reject Petitioners' request for modification of this Court's Order.

(2)    Redacting the personal identifying information does not shield the alien from identification as a claimant for asylum/VAWA/"T" or "U" visa benefits.

Petitioners' alternative proposal is that the Court should modify its Order to require the redaction of certain personal identifying information of an alien seeking asylum/VAWA/"T" or "U" visa benefits.  Specifically, Petitioners propose redaction *only* of the alien's name, and the last four digits of the alien's A-number.[11]  This proposal was never raised in the previous joint stipulation and as such it should not be considered by this Court on a motion for reconsideration/clarification.   However, if this Court does consider it, this request should be denied because it also fails to prevent the identification of asylum-seekers, VAWA petitioners, and "T" and "U" applicants.

As a starting point, A-Files contain much more personal identifying information than an alien's name and A-number.  As Petitioners themselves concede, A-files contain other "biographical" information – addresses, dates of birth, family members, places of residence, biometric information, places of employment, criminal records, and other information.  This will constitute an undue burden to redact all of this information that will be contained in multiple places on every page within the files by September 30, 2011.  This is precisely why the parties entered into a protective order that was approved by this Court to produce all personally identifiable information. Even if this information could be redacted within the time period set by this Court for completion of the production, such redactions would nevertheless be rendered

---

[11] Redacting only the last four digits of an A-number would clearly identify the alien because Petitioners already have a list of all names and A-numbers.

meaningless for one obvious reason.  Petitioners have already received a list of each of the more than 1,000 aliens at issue in electronic databases requested in discovery.  Those databases list each alien's name and A-number.  Presumably Petitioners seek to complement the information in the electronic databases Respondents provided by examining that electronic information in conjunction with the A-File.  Otherwise, Petitioners cannot hope to establish aggregate information about the class based solely on examination of the A-Files in isolation, or the electronic databases in isolation.  If, for example, Petitioners want to bolster a particular factual assertion gleaned from the electronic databases by also examining for that alien certain biographical information not in the electronic database – such as places of employment, family ties, etc. – then they will have to pair the electronic database information (including name and A-number) with the information in the A-File.  Matching the A-File to the electronic information reveals information this Court has recognized as subject to protection from disclosure.

Even if Petitioners do not intend to compile aggregate data from both sources, the fact remains that Petitioners have in hand a list of the individual aliens and their A-numbers, as well as other information (such as dates of detention, dates of immigration hearings, etc.).  Providing Petitioners with A-Files revealing protected asylum/VAWA "T" and "U" visa related information would be providing Petitioners with the ability to identify who has filed which claims by simply comparing the database information with the redacted A-Files Petitioners seek.  There is no difference between impermissibly disclosing the information in one step (by providing an unredacted A-File) and providing the same information in two steps (by first providing a database of all aliens by name and A-number, and containing other information; and then by providing the A-Files for those aliens containing much of that same information).  Disclosing the identity of those whose information is protected from disclosure by law constitutes a violation whether done all at once or in two pieces.

Again, however, Petitioners' second proposal makes no sense in the context of their novel theory. Petitioners have repeatedly claimed that they need certain "biographical" information to show that certain aliens, on an aggregate basis, do not pose a flight risk or danger. Under Petitioners' theory, this can be extrapolated to the class by examining the very types of things Petitioners now seek to have redacted – places of residence, places of employment, family ties, criminal background, and other ties to the community. These are all pieces personal identifying information, and all of it would be redacted under Petitioners' second proposal. In this context, Petitioners' proposal is self-defeating. The court should deny the motion for reconsideration and/or clarification, and decline to adopt Petitioners' proposal.

**4.    Petitioners' claim of burden does not justify non-compliance with the law or modification of this Court's Order.**

This Court, in recognition of the regulatory and statutory provisions at issue, correctly ordered Respondents to provide Petitioners with the A-File information they seek upon written consent by an alien whose information is withheld. Respondents do not challenge that provision of the Order. Nevertheless, Petitioners now claim that obtaining such written consent will be burdensome, and seek relief from this Court's Order on that claim of burden. This Court should reject Petitioners' complaint.

Tellingly, Petitioners did not inform this Court in their contentions that as part of the meeting of counsel in advance of this joint stipulation, Respondents unambiguously offered to assist Petitioners in delivering sealed letters, drafted by Petitioners' counsel and containing a standard waiver consent form used for such purposes, to each of the current class members at their place of detention. Those aliens presently detained are easily located, and delivery of written consent requests can be arranged with little foreseeable difficulty. Nor is it clear why they would need to conduct interviews in order to obtain signed consent forms. With respect to aliens who are not presently detained and therefore outside of the class, a substantial number of those aliens have been removed, and thus were unsuccessful in pursuing defenses to

removal, to the extent they advanced any.  As to those aliens who were not removed, but were not detained, Respondents offered to collect the last address of each alien known to Respondents and provide that information to counsel for Petitioners. Respondents have also already provided attorney information for all aliens that were represented in their removal proceedings.

However, despite Respondents' willingness to take these steps, the issue of burden is not and should not be factored into this Court's consideration of Petitioners' motion.  Petitioners never raised the issue of burden in the previous joint stipulation and the provisions at issue do not provide exceptions to disclosure restrictions where written consent is not easily or even possibly obtained.  The regulatory and statutory provisions at issue are clear that disclosure may be made only in certain circumstances, one of them being through written consent of the alien.  Those provisions were clear when this action was filed.  They were clear when Petitioners propounded discovery.  And they were clear when Petitioners sought their motion to compel.  The fact that Petitioners were incorrect in their interpretation of the law should not now permit them to come to this Court and untimely argue that the law should be ignored because their compliance with it is too burdensome.

The aliens who sought asylum, who made petitions under VAWA, and who filed "T" or "U" applications were informed that their information would remain confidential and would not be disclosed without their permission.  Petitioners do not and cannot argue that each of the aliens whose information is at issue would consent to the release of their confidential information, but that is precisely what they seek. This Court should reject Petitioners' argument that the burden of obtaining the consent required by law and by this Court justifies non-compliance with the law and

1   warrants modification of this Court's Order.  The Court should deny Petitioners'

2   motion for reconsideration or to clarify the Order.

3                                          Respectfully submitted,

4   Dated:  August 11, 2011

5   ACLU OF SOUTHERN CALIFORNIA          TONY WEST
                                          Assistant Attorney General
6   By: */s/ Michael Kaufman*             DAVID J. KLINE
    Michael Kaufman                       Director,
7   Attorneys for Petitioners             Office of Immigration Litigation
                                          District Court Section
8                                         VICTOR M. LAWRENCE
                                          Principal Assistant Director
9
                                          By:  */s/ Theodore W. Atkinson*
10                                        THEODORE W. ATKINSON
                                          Senior Litigation Counsel
11                                        United States Department of Justice
                                          Civil Division
12                                        Office of Immigration Litigation
                                          District Court Section
13                                        P.O. Box 868, Ben Franklin Station
                                          Washington, DC 20044
14                                        Tel.: (202) 532-4135
                                          e-mail: theodore.atkinson@usdoj.gov
15
                                          Attorneys for Respondents
16

17

18

19

20

21

22

23

24

25

26

27

28

28