PETER J. ELIASBERG (SBN 189110)
Email: peliasberg@aclu-sc.org
AHILAN T. ARULANANTHAM (SBN 237841)
Email: aarulanantham@aclu-sc.org
MICHAEL KAUFMAN (SBN 254575)
Email: mkaufman@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1616 Beverly Boulevard
Los Angeles, California 90026
Tel: (213) 977-5211
Fax: (213) 977-5297

Attorneys for Petitioners
(Additional counsel listed on following page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*,<br><br>Petitioners,<br><br>vs.<br><br>TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director*; JANET NAPOLITANO, *in her capacity as Secretary of Homeland Security*; and ERIC H. HOLDER, JR., *in his capacity as Attorney General of the United States*,<br><br>Respondents. | Case No. CV 07-3239-TJH (RNBx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S ORDER OF AUGUST 15, 2011**<br><br>Honorable Terry J. Hatter, Jr.<br><br>Hearing Date: September 26, 2011<br><br>Hearing Time: Under Submission |

Additional counsel:

JUDY RABINOVITZ
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

JAYASHRI SRIKANTIAH (SBN 189566)
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS (SBN 217603)
CODY JACOBS (SBN 272276)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Introduction ................................................................................................... 1

Background ..................................................................................................... 1

   I.  Procedural History ................................................................................ 1

   II. The Current Discovery Dispute .......................................................... 3

Standard of Review ........................................................................................ 5

Discussion ...................................................................................................... 5

   I.  The Asylum and VAWA Provisions Do Not Create
       An Absolute Bar to Civil Discovery By Class Counsel
       in a Certified Class Action Absent Individual Written Consent ................... 5

      A.  Asylum Provision ....................................................................... 8

          1.  Section 208.6 Does Not Apply to Class Counsel
             in Civil Discovery ..................................................... 8

      B. VAWA Provision ........................................................................ 11

          1.  Nothing in Section 1367(a)(2) Prohibits
             Disclosure of VAWA, U-visa, and T-visa Applications
             to Class Counsel in This Case ................................... 11

   II. The SAW, TPS and "Battered Spouse" Provisions
       Do Not Bar Disclosure of Information About Past Class Members ........ 12

   III. Obtaining Written Consent is Impracticable for the
        Vast Majority of Individuals ....................................................... 14

Conclusion ..................................................................................................... 15

i

1

# TABLE OF AUTHORITIES

2

3

**CASES**

*Anim v. Mukasey,*
   535 F.3d 243 (4th Cir. 2008) ...............................................................8

*Bhan v. NME Hospitals, Inc.,*
   929 F.2d 1404 (9th Cir. 1991) .............................................................5

*Burnett v. Rowzee,*
   No. SACV07-641, 2007 WL 2767936 (C.D. Cal. Aug. 13, 2007) ....................7

*City and County of San Francisco v. Cobra Solutions, Inc.,*
   38 Cal. 4th 839 (2006)........................................................................ 13

*Columbia Pictures, Inc. v. Bunnell,*
   245 F.R.D. 443 (C.D. Cal. 2007).........................................................5

*Hassan v. United States,*
   No. C05-1066C, 2006 WL 681038 (W.D. Wash. Mar. 15, 2006) ................. 6, 9

*Hawke v. United States Dep't of Homeland Sec.,*
   2008 U.S. Dist. LEXIS 87603 (N.D. Cal. Sept. 29, 2008) ............................ 12

*I.N.S. v. Zambrano,*
   509 U.S. 918 (1993) ...........................................................................6

*In re Ahmed,*
   362 B.R. 445 (C.D. Cal. 2006) .............................................................5

*In re Grand Jury Subpoena Duces Tecum,*
   No. 101MC00005, 2001 WL 896479 (W.D.Va. June 12, 2001)...................... 10

*In re Nelson,*
   873 F.2d 1396 (11th Cir. 1989) .....................................................*passim*

*Nguyen Da Yen v. Kissinger,*
   528 F.2d 1194 (9th Cir. 1975) .............................................................7

*Orhorhaghe v. I.N.S.,*
   38 F.3d 488 (9th Cir. 1994) ................................................................6

*Pearson v. Miller,*
   211 F.3d 57 (3rd Cir. 2000) .....................................................7, 10, 11

*Rodriguez v. West Publishing Corp.,*
   563 F.3d 948 (9th Cir. 2009) ..............................................................7

*Scott v. Leavenworth Unified School Dist. No. 453,*
   190 F.R.D. 583 (D. Kan. 1999) ........................................................... 10

*United States v. Hernandez,*
   913 F.2d 1506 (10th Cir. 1990) ...................................................... 9, 13

ii

1

*Wallman v. Tower Air, Inc.*,
189 F.R.D. 566 (N.D. Cal. 1999) ........................................................... 10

2

*Wolpin v. Philip Morris Inc.*,
189 F.R.D. 418 (C.D. Cal. 1999) ........................................................... 10

3

4

*Zambrano v. I.N.S.*,
972 F.2d 1122 (9th Cir. 1992), *vacated on other grounds*,
509 U.S. 918 (1993) ....................................................................*passim*

5

6

7

**STATUTES**

8

8 U.S.C. §§ 1101, *et seq.* ...................................................................... 1

9

8 U.S.C. §1160(b)(5)-(6) ....................................................................... 13

10

8 U.S.C. § 1255a(c)(4)-(5) .................................................................... 13

11

8 U.S.C. § 1367(a)(2) ........................................................................... 11

12

28 U.S.C. § 636(b)(1)(A) ........................................................................ 5

13

14

**REGULATIONS**

15

8 C.F.R. § 208.6 ........................................................................ 8, 10, 11

16

8 C.F.R. § 216.5(e)(3)(viii) .................................................................... 13

17

8 C.F.R. § 244.16 ................................................................................. 13

18

19

**OTHER AUTHORITIES**

20

American Bar Association Rules of Professional Conduct:  Rule 1.9(c)(2) ........... 13

21

American Bar Association Rules of Professional Conduct: Rule 1.6 ..................... 13

22

Due Process Clause of the Fifth Amendment ..................................... 1, 2, 3

23

U-Visa Application
http://www.uscis.gov/files/form/i-918.pdf............................................. 11

24

25

26

27

28

**Introduction**

Petitioner seeks review of two orders by Magistrate Judge Block establishing new absolute privileges from civil discovery based on immigration statutes and regulations. *See* Dkts. # 195 & 201. Petitioner respectfully submits that Judge Block erred. The statutes and regulations exist to protect victims of crime and persecution from their abusers, not to prohibit disclosure in standard civil litigation, particularly when sought by class counsel to advance the interests of the very persons the provisions seek to protect. Class counsel are required to keep any client-related information confidential, both under their ethical duty of confidentiality and the terms of the parties' stipulated protective order. The Court therefore should reverse the orders to the extent they purport to establish new privileges from civil discovery never previously recognized in the case law.

**Background**

**I.     Procedural History**

This case concerns a certified class of non-citizens who have been subjected to immigration detention in excess of six months. Petitioners challenge their prolonged detention in the absence of adequate procedural safeguards that comport with the Immigration and Nationality Act ("INA" or "the Act"), 8 U.S.C. §§ 1101, *et seq.*, and the Due Process Clause of the Fifth Amendment. *See* Third Amended Complaint. Dkt. # 111.

Following this Court's denial of the Respondents' motion for judgment on the pleadings [Dkt. #155], Petitioner sought discovery of a limited set of materials from the A files (administrative files maintained by the Department of Homeland Security about all noncitizens) of class members detained in the Central District during a roughly one year period. *See* Dkt. # 165 at 3-7. The Respondents objected to the discovery request on relevance and burden grounds. *Id.* On April 25, 2011, Judge Block issued an order agreeing with Petitioner that the A file materials contain highly

relevant and discoverable information that bear on the critical issues in this case.  Dkt. #169 at 1.  This Court already has affirmed that prior ruling.  Dkt. #196.

After losing its arguments about the relevance of these materials, Respondents essentially sought to re-litigate discoverability by asserting broad privilege objections over certain A file materials.  The parties filed cross motions before Judge Block on the materials in dispute, which fell into five general categories:

(1) <u>Asylum claim related information</u> – Information contained in or pertaining to any asylum application.  Asylum claim information includes reasonable fear, credible fear, refugee, and Convention Against Torture (CAT) related information.

(2) <u>Violence Against Women Act ("VAWA") claimant and "T" visas and "U" visa applicant information</u> – Information relating to a person who has filed an application for relief under VAWA, or trafficking, or certain crime victims who sought "T" or "U" visas.

(3) <u>Battered spouse or child information</u> – Information provided by an alien spouse or on behalf of a child, in the context of a petition to remove conditions on the alien's status as a lawful permanent resident, to establish eligibility for a hardship waiver on the ground that the spouse or child was battered or the subject of extreme cruelty perpetrated by the lawful permanent resident or U.S. citizen spouse.

(4) <u>Legalization and Special Agricultural Worker ("SAW") claim information</u> – Information relating to certain legalization applications or adjustment of status applications.

(5) <u>Temporary Protected Status ("TPS") claimant information</u> – Information provided by an alien in support of an application for TPS, a temporary immigration status for nationals of States where there is ongoing armed conflict, where an environmental disaster has occurred, or where other extraordinary and temporary conditions exist.

On July 25, 2011, Judge Block issued an order on the parties' cross motions. With respect to the asylum and VAWA provisions, Judge Block held that language in the statutory provisions "arguably bars by implication disclosure in [these] judicial proceedings," absent written consent.  Dkt. #195 at 1.  With respect to the "battered spouse," Legalization and SAW, and TPS provisions, Judge Block overruled Respondents' privilege objections and granted Petitioner's motion to compel.  Judge Block ordered Respondents to produce information subject to these three provisions, but only for class members currently being detained, not past class members.  *Id.*

On August 11, 2011, Petitioner filed a motion for reconsideration and/or clarification of the July 15, 2011 order.  Dkt. #200.  Petitioner explained that treating

2

asylum and VAWA materials as privileged would mean that Respondents would withhold 25% or more of the A files at issue. *Id.* at 4-10. Petitioner also requested clarification because Respondents were taking the position that the order allowed them to withhold any A file that contained asylum, VAWA, "U" and "T" visa related information, rather than only those specific portions of the A files.

On August 15, 2011, Judge Block denied the motion for reconsideration and granted, in part, the motion for clarification. Dkt. #201 (hereinafter, "Order"). He ruled that Respondents "may only withhold from the A files of class members who were asylum applicants the applications, documents submitted in support of the applications, and any direct references to the applications," unless class counsel obtains written consent. *Id.* at 1. On the other hand, he held that Respondents "may withhold in their entirety the A files of class members who were VAWA claimants or who were 'T' or 'U' visa applicants, except for (a) those class members whose claims or applications have been denied on the merits and all opportunities for appeal of the denial have been exhausted, and (b) those class members who provide written consent." *Id.*

## II.    The Current Discovery Dispute

Petitioner timely filed this request for review to address two issues: (1) whether asylum, VAWA, "T", and "U" visa applications are absolutely privileged in civil discovery, and (2) whether "battered spouse," legalization, SAW, and TPS applications for former class members are absolutely privileged in civil discovery. To provide the Court with some context for the current discovery dispute, Petitioner here briefly summarizes the documents at issue and their relevance in this proceeding.[1]

The documents in dispute include applications for various forms of immigration relief and supporting documents. For many class members, these documents are the only source of critical information concerning their claims for relief from removal and

---

[1] For a fuller description of the documents, *see* Dkt. # 193.

3

important biographical information.  As this Court and Judge Block have already agreed, such information is central to evaluating the due process inquiry at the heart of this case: whether the Respondents' existing custody review procedures are constitutionally adequate, including whether they appropriately assess danger or flight risk.  *See* Dkt. #165, #169, # 196 (affirming Judge Block's order requiring Respondents to produce class members' A files).

While the requirements for each form of immigration relief differ, the applications and supporting documents typically include a wealth of relevant information about the claims in this case.  *See* Dkt. # 191, Exhibit 46 (Declaration of Judy London) ("London Decl.") ¶¶ 13-15 (describing contents of asylum applications); 22-27 (VAWA applications); ¶¶ 29-36 ("U" visa applications); ¶¶ 38-43 ("T" visa applications); 45-47 (SAW and Legalization applications); ¶¶ 17-20 (TPS applications).  The documents typically include extensive biographical information, including family ties, education and work history, length of residence, and criminal history.  *Id.*  This information can bear on whether an individual presents a danger to the community or flight risk and thus is relevant to whether the individual should be released on bond.  The applications also reflect the basis and strength of an individual's claims for immigration relief, which independently can bear on the assessment of flight risk.

These documents in many instances constitute the only ready source of information about class members and their claims.  This is particularly true with respect asylum applicants, as individuals who arrive at a port of entry and apply for asylum generally do not have any prior contact with immigration authorities or apply for additional forms of relief besides asylum.  Asylum applicants constitute the majority of the section 1225(a) sub-class and a significant portion of the overall class. *See* Dkt. # 191, Exhibit 45 (Declaration of Jennifer Stark) ¶ 23; Dkt. # 200, Exhibit 49 at ¶ 8 (Declaration of Michael Kaufman) (Respondents have estimated that asylum applicants constitute roughly 25% of all class members).  As a result, barring

disclosure of asylum-related information deprives Petitioner and the Court not only of relevant information, but also what is likely the best and only source of information about a large number of class members and virtually an entire subclass.

Judge Block' orders further authorize Respondents to withhold the entire A files of individuals with VAWA, "U" and "T" visa applications, including documents that contain custody review determinations (such as Post Order Custody Review worksheets and bond decisions) that reveal how the Respondents' custody review procedures work in practice. If Judge Block's Order is allowed to stand, Petitioner and the Court will thus lack virtually any information about these individuals.

**Standard of Review**

A magistrate judge's order can be reversed by the district court if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991). In this case, Petitioner challenges the Magistrate's interpretation and application of immigration regulations and statutes, and thus review is *de novo*. *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) ("The 'clearly erroneous' standard applies to the magistrate judge's findings of fact; legal conclusions are freely reviewable de novo to determine whether they are contrary to law.") (citations omitted); *In re Ahmed*, 362 B.R. 445 (C.D. Cal. 2006) ("Questions of statutory interpretation are conclusions of law and are reviewed de novo.").

**Discussion**

**I.    The Asylum and VAWA Provisions Do Not Create An Absolute Bar to Civil Discovery By Class Counsel in a Certified Class Action Absent Individual Written Consent**

The asylum and VAWA provisions at issue do not create a privilege against civil discovery, let alone discovery by class counsel on behalf of the very persons whose information is being withheld. Petitioner is not aware of any case recognizing such a privilege or otherwise barring disclosure to class counsel in such circumstances. The Court therefore should reverse the Order, which effectively

1  creates a never-before-recognized privilege for asylum-related information and the

2  entire A files of VAWA, "U" and "T" visa applicants.

3         The asylum or VAWA provisions do not create a privilege barring discovery in

4  civil litigation.  To be sure, Congress can create a "privilege" within the meaning of

5  Rule 26, but courts narrowly construe provisions that classify information as

6  "confidential" or otherwise protected to avoid "'suppress[ing] otherwise competent

7  evidence'" relevant to civil proceedings.  *In re Nelson*, 873 F.2d 1396, 1397 (11th Cir.

8  1989) (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218 (1961)).  A

9  statutory provision designating information as confidential "do[es] not bar judicial

10 discovery absent an ***express prohibition*** against such disclosure."  *See Zambrano v.*

11 *I.N.S.*, 972 F.2d 1122, 1125 (9th Cir. 1992) (emphasis added), *vacated on other*

12 *grounds*, 509 U.S. 918 (1993).[1]

13        The asylum and VAWA provisions do not contain an express prohibition

14 against judicial discovery and do not purport to establish an absolute privilege.  In

15 fact, Respondents concede, as they must, that they cannot withhold the disputed

16 information from Petitioners who make requests in individual immigration cases.  But

17 if Petitioners can obtain such files in individual proceedings, then they necessarily can

18 obtain those files in a certified class action.  For this reason, courts consistently have

19 overruled objections based on the same or similar statutory provisions, including in

20 immigration class actions.  *Zambrano*, 972 F.2d at 1125-26 (granting class counsel

21

---

22 [1] *Zambrano* was vacated and remanded in light of an intervening Supreme Court

23 decision dealing with the ripeness of the class' claim for relief.  *See I.N.S. v.*
   *Zambrano*, 509 U.S. 918 (1993).  While the portion of the Ninth Circuit's opinion

24 dealing with § 1255a(c)(5) is not binding precedent, it remains "the most pertinent
   statement of the governing law" on this issue in the Ninth Circuit.  *See Orhorhaghe v.*

25 *I.N.S.*, 38 F.3d 488, 493 n.4 (9th Cir. 1994) (quoting *County of Los Angeles v. Davis*,
   440 U.S. 625, 646 (1979) (Powell, J., dissenting)).  That is why courts have continued

26 to cite and rely upon the Ninth Circuit's original decision in *Zambrano*.  *See, e.g.*,

27 *Hassan v. United States*, No. C05-1066C, 2006 WL 681038, at *3 (W.D. Wash. Mar.
   15, 2006) (following *Zambrano* in holding documents subject to civil discovery).

28

1    access to legalization applications); *In re Nelson*, 873 F.2d at 1397 (granting class

2    counsel access to SAW applications); *see also Nguyen Da Yen v. Kissinger*, 528 F.2d

3    1194, 1205 (9th Cir. 1975) (granting class counsel access to class members'

4    immigration files because there is "no basis for finding the plaintiffs [sic] own records

5    absolutely privileged from disclosure to the plaintiffs' representatives").

6         Even if the regulations could be viewed as barring certain forms of judicial

7    disclosure, the regulations have no application here.  The provisions at issue were

8    enacted to protect the interests of individuals applying for immigration relief, not to

9    create obstacles to those individual seeking relief through civil proceedings.  For good

10   reason, courts historically have expressed skepticism when the government seeks to

11   use a statutory provision intended to protect a class of persons to withhold information

12   about abuses of those persons.  *Cf. Pearson v. Miller*, 211 F.3d 57, 68 (3rd Cir. 2000)

13   ("There is a 'special danger' in permitting state governments to define the scope of

14   their own privilege when the misconduct of their agents is alleged.") (citation

15   omitted).

16        In addition, disclosure to class counsel would not interfere with, or undermine,

17   the statutory purposes for treating information as confidential.  Class counsel has an

18   ethical duty to maintain class members' information as confidential and disclose it, if

19   at all, only when it serves their best interests.  *See Rodriguez v. West Publishing*

20   *Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("class counsel's fiduciary duty is to the

21   class as a whole"); *Burnett v. Rowzee*, No. SACV07-641, 2007 WL 2767936, at *4

22   (C.D. Cal. Aug. 13, 2007) (recognizing ethical duty of confidentiality).  The parties

23   also have stipulated to a protective order, which further protects the information at

24   issue from public disclosure.

25        In short, the regulations at issue do not create an express privilege, and their

26   underlying purpose is undermined, not advanced, by allowing Respondents to assert

27   privilege here.

28

7

### A.    Asylum Provision

Section 208.6 does not bar disclosure of relevant information in civil litigation and certainly does not when the disclosure is being made to class counsel who seeks to vindicate the due process rights of the asylum seekers.

#### 1.    Section 208.6 Does Not Apply to Class Counsel in Civil Discovery

Despite the critical relevance of information about asylum applications, the Order permits Respondents to withhold information based on a privilege never previously recognized to exist under Section 208.6.  That section, however, does not create a privilege or explicitly bar disclosure of asylum-related information in civil proceedings.  Rather, the statute generically provides that:

> (a) Information contained in or pertaining to any asylum application, records pertaining to any credible fear determination conducted pursuant to § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 208.31, shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General.

8 C.F.R. § 208.6.  The lack of a statutory privilege or express language prohibiting disclosure in *judicial proceedings* alone means that the provision cannot create a privilege within the meaning of Rule 26.  *See Zambrano*, 972 F.2d at 1125-26 (provisions barring disclosure "do not bar judicial discovery absent an express prohibition against such disclosure").

The Order's treatment of asylum-related information also cannot be reconciled with the purpose of Section 208.6.  Congress was concerned about disclosures that would "subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin.'" *Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008) (quoting U.S. Customs & Immigration Servs. Asylum Div., U.S. Dep't of Homeland Sec., Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants (2005)).  None of those concerns

8

1    applies here, particularly given class counsel's duty of confidentiality and the
2    protective order, which prevents disclosure to third parties.
3        The Order is contrary to rulings by the Ninth Circuit and other Circuits.  For
4    instance, in a class action concerning the Immigration Reform and Control Act
5    ("IRCA"), the Ninth Circuit rejected efforts by the INS to withhold identifying
6    information about class members based on a confidentiality provision in the IRCA.
7    *Zambrano*, 972 F.2d at 1125-26.  The relevant provision prohibited any disclosure of
8    covered information, but it did not expressly bar disclosure in civil discovery.  *Id.*  The
9    Ninth Circuit looked to the purpose for treating information as confidential – to
10   protect the interests of applicants for legalization – and concluded disclosure to class
11   counsel "facilitates, rather than frustrates, the legislative intent of the statute."  *Id.* at
12   1126; *see also United States v. Hernandez*, 913 F.2d 1506, 1512 (10th Cir. 1990)
13   (concluding SAW and legalization provisions "only prohibit disclosures which aid in
14   the deportation of illegal aliens").
15       Likewise, the Eleventh Circuit affirmed an order compelling production of class
16   members' A files in a case challenging the INS's administration of the Special
17   Agricultural Worker ("SAW") program.  *In re Nelson*, 873 F.2d 1396, 1397 (11th Cir.
18   1989).  Like the Ninth Circuit, the Eleventh Circuit court looked to the purpose for
19   treating information as confidential, which was to assure potential applicants that
20   immigration information would not be used *by the government* for enforcement
21   purposes.  *Id.*  Because civil discovery did not frustrate that purpose, the Court did not
22   allow the government to withhold relevant information sought in civil discovery.  *Id.*
23       The Ninth Circuit's decision in *Zambrano* and the Eleventh Circuit's decision
24   in *Nelson* are consistent with numerous cases construing analogous statutory
25   provisions that generally bar disclosure of information, but do not expressly bar
26   disclosure in judicial proceedings or civil litigation.[1]  *Zambrano* and *Nelson* also are

27   ──────────────
28   [1] *See*, *e.g.*, *Hassan v. United States*, No. C05-1066C, 2006 WL 681038, at *3 (W.D.
     Wash. Mar. 15, 2006) (confidentiality provision in Food Stamp Act "makes no

9

*(Footnote continued)*

1    consistent with decisions that overrule assertions of confidentiality by the government

2    where, as here, the information is being sought to prevent government abuses against

3    the very persons the government claims have an absolute privilege against disclosure.

4    *Cf. Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 587 (D. Kan.

5    1999) (granting Americans with Disabilities Act plaintiff access to personnel files,

6    observing that "Congress never intended for a defendant charged with violating the

7    ADA to use the ADA's confidentiality provisions to impede a plaintiff's ability

8    to…establish his/her claims"); *Pearson*, 211 F.3d at 68 (3rd Cir. 2000) (recognizing

9    "a 'special danger' in permitting state governments to define the scope of their own

10   privilege when the misconduct of their agents is alleged.").

11        Finally, two additional factors reinforce why Section 208.6 does not bar civil

12   discovery in this case.  First, the regulation expressly grants the Attorney General

13   discretion to disclose asylum-related information, which is inconsistent with an

14   absolute statutory bar to disclosure in civil litigation.  Second, the regulation prohibits

15   disclosure "to third parties," and class counsel in a certified class action is not a "third

16   party."  Rather, class counsel represents and stands in the shoes of their clients.

17

18

19   _____

20   explicit reference to judicial disclosure" and therefore "does not create any privilege
     barring discovery"); *In re Grand Jury Subpoena Duces Tecum*, No. 101MC00005,

21   2001 WL 896479, at *4 (W.D.Va. June 12, 2001) (Medicaid and Food Stamp Act
     confidentiality provisions do not "state that these documents may not be used in legal

22   proceedings" and "do not create a statutory privilege protecting these records from
     disclosure"); *Wallman v. Tower Air, Inc.*, 189 F.R.D. 566, 569 (N.D. Cal. 1999)

23   (ordering airline to produce passenger manifest because confidentiality provision in

24   Aviation Security Improvement Act "does not create a special privilege"); *Scott v.
     Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 585-87 (D. Kan. 1999)

25   (granting Americans with Disabilities Act plaintiff access to personnel files); *cf.
     Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 428 (C.D. Cal. 1999) (deciding under

26   California law that "a statement of confidentiality does not automatically preclude

27   such information from discovery," and noting California law is consistent with Ninth

28   Circuit precedent).

### B.    VAWA Provision

Like Section 208.6, Section 1367 does not empower Respondents to withhold relevant, non-privileged information in the A files of VAWA, U-Visa, and T-Visa applicants when sought in civil discovery.

### 1.    Nothing in Section 1367(a)(2) Prohibits Disclosure of VAWA, U-visa, and T-visa Applications to Class Counsel in This Case.

Section 1367(a)(2) does not create a privilege against disclosure of relevant information in civil discovery for three reasons. First, Section 1367(a)(2) does not purport to preclude discovery in civil proceedings. *See* 8 U.S.C. 1367(a)(2). Like innumerable other confidentiality provisions that are not deemed to create privileges, it generally provides that the government should maintain the confidentiality of VAWA, U-visa, and T-visa applications and not "permit use by or disclosure to anyone." *Id.* This fall far short of creating an absolute privilege barring civil discovery in all contexts. *Zambrano*, 972 F.2d at 1125. *See In re Nelson*, 873 F.2d at 1397.

Second, nothing in Section 1367(a)(2)'s implementing regulations supports withholding information from attorneys representing the interests of applicants. Indeed, Respondents' own forms for T-Visa, U-Visa, and VAWA relief contemplate that attorneys will provide assistance to applicants. *See, e.g.*, http://www.uscis.gov/files/ form/i-918.pdf (U-visa application).

Third, Section 1367(a)(2) was intended to protect applicants from abusers, not to prevent attorneys for applicants from accessing information to support claims against the government. Indeed, shortly after the statute was enacted, the government itself recognized this distinction, explaining that:

> "[T]his provision appears to have been enacted in response to concerns from the advocacy community that INS officers have provided information on the whereabouts of self-petitioners or on their pending applications for relief *to the allegedly abusive spouse or parent*. The VAWA provisions . . . were created by Congress so that the battered alien can seek status independent of the abuser."

1  Paul W. Virtue, INS Acting Exec. Assoc. Comm'r, to all INS offices, File No. 96 act.
2  036, Non-Disclosure and Other Prohibitions Relating to Battered Aliens: IIRAIRA
3  § 384 (May 5, 1997) (emphasis added), *reprinted at*, 2 Bender's Immigr. Bull. 503
4  (June 15, 1997).  Courts likewise have viewed Section 1367(a)(2) as intended to
5  prohibit disclosures to the persons accused of committing abuse, who represent
6  continued threats to the safety of applicants.  *See Hawke v. United States Dep't of*
7  *Homeland Sec.*, 2008 U.S. Dist. LEXIS 87603, at *19 (N.D. Cal. Sept. 29, 2008)
8  (denying an allegedly abusive husband access to his wife's VAWA application in part
9  because doing so "would defeat one of the primary purposes of the VAWA
10  confidentiality provision, namely, to prohibit disclosure of confidential application
11  materials to the accused batterer") (citing 151 Cong. Rec. E2605, E2607 (daily ed.
12  Dec. 18, 2005) (statement of Rep. Conyers noting that U-Visa, T-Visa and VAWA
13  confidentiality provisions "are designed to ensure that abusers and criminals cannot
14  use the immigration system against their victims")).  These concerns, of course, have
15  no relevance here.  Class counsel does not present a risk of abuse and certainly would
16  not disclose information in a manner that could expose a class member to abuse.
17      Because information in A files relating to VAWA, U-Visa and T-Visa
18  applications is not absolutely privileged from civil discovery, the Court should reverse
19  the Order and order Respondents to produce this information.

20  **II.  The SAW, TPS and "Battered Spouse" Provisions Do Not Bar Disclosure of Information About Past Class Members**
21

22      The orders under review erroneously create an absolute privilege for SAW, TPS
23  and "battered spouse" information about past class members.  Because the provisions
24  at issue do not create an absolute privilege of any kind, they certainly do not create a
25  separate privilege for former class members.   Moreover, class counsel's duty of
26  confidentiality extends to former clients, not just current clients, whose information in
27  all events will be subject to the proactive order.  The Court should therefore reverse
28  the orders to the extent they create a privilege for information relating to former class

12

members.

As the Judge Block's July 25, 2011 order itself recognizes, none of the applicable statutory provisions authorizes withholding relevant, non-privileged information in civil discovery. *See* Dkt. # 196 at 1-2; 8 U.S.C. § 1255a(c)(4)-(5) (Legalization confidentiality provision); 8 U.S.C. §1160(b)(5)-(6) (SAW); 8 C.F.R. § 244.16 (TPS); 8 C.F.R. § 216.5(e)(3)(viii) ("battered spouse" information). And as already explained, the purposes animating these provisions is undermined, not served, by allowing Respondents to use them as a shield to prevent discovery into unconstitutional practices. *See* Dkt. # 193 at 49-51, 58, 65. That is why the Ninth, Tenth, and Eleventh Circuits already have expressly held that Sections 1160(b)(6) and 1255a(c)(5) – the SAW and Legalization confidentiality provisions – do not permit the government to withhold relevant information in civil class action discovery. *Zambrano*, 972 F.2d at 1125-26; *In re Nelson*, 873 F.2d at 1397. *See also United States v. Hernandez*, 913 F.2d 1506, 1512 (10th Cir. 1990) (holding that Sections 1160(b)(6) and 1255a could not support suppression of relevant information in criminal proceeding).

In addition, it is well established that class counsel owes a duty of confidentiality and fiduciary duties to former clients. *See City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846 (2006) ("the duty to preserve client confidences . . . survives the termination of the attorney's representation"); ABA Model Rules of Professional Conduct: Rule 1.6 [Comment 18] and Rule 1.9(c)(2). Former class members, just like current ones, also are protected by the strict protective order entered in this case. *See* Dkt. # 188; *In re Nelson*, 873 F.2d at 1397 (ordering the disclosure of SAW applications where "[t]he district court's protective order restricting use of the information for purposes of discovery and trial preparation adequately ensures that disclosure will be limited to counsel and their assistants.").[1]

---

[1] As a practical matter, moreover, if class counsel had obtained past class members' confidential information while they were still members of the class, class counsel

*(Footnote continued)*

1     Accordingly, the SAW, TPS and "battered spouse" information of former class

2  members is not absolutely privileged from disclosure and, as already established in

3  connection with the prior motion to compel, just as relevant to demonstrate

4  Respondents' lack of adequate protections consistent with due process.  The Court

5  therefore should reverse the orders and compel Respondents to produce the relevant

6  information concerning current and former class members.

7  **III.   Obtaining Written Consent is Impracticable for the Vast Majority of
            Individuals**

8

9     Respondents cannot defend the order on the ground that class counsel remains

10  free to seek individual written consents.  There is no legal basis for requiring class

11  counsel to obtain written consent from their own clients, and it is not a practical

12  alternative.

13     Under the Order, Petitioner would need to seek written consent from three

14  groups of persons: (1) individuals who have been removed from the United States,

15  (2) released individuals who remain in the United States, and (3) detained individuals.

16  Respondent has no practical way to contact individuals in the first two categories.

17  Respondents do not maintain *any* contact information for individuals who are

18  removed from the country, and Petitioner is not aware of any other way to obtain it.

19  *See* Exh. 49 at ¶ 7.  Respondents can provide last known addresses for individuals

20  released within the United States, but freely admits those records are often inaccurate,

21  including because they quickly become stale.  *Id*. at ¶ 6.

22

23

24  could continue to maintain such information to conduct aggregate and other analysis
25  in support of Petitioners' claims. Given that past class members were clients of class
    counsel, class counsel could have sought—and in some cases, did seek—their
26  confidential information while they were members of the class.  If class counsel had
    obtained such information, class counsel could have maintained it in furtherance of
27  the interests of the class.  As such, there is no functional difference in disclosing past
28  member information now, after they are no longer members of class.

14

In this case, roughly 65% of the class members whose A files are at issue was no longer in custody as of April 18, 2011.  Dkt. # 200, Exhibit 50 at ¶ 6 (Declaration of Nina Siulc).  At least 23% of the class – and possibly more than 33% of the class – were removed from the country as of that date.  *Id.*  These numbers already account for a significant portion of relevant A files at issue and will only continue to grow.

Even for the individuals in the third category – current detainees – experience has shown that class members have difficulty responding to letters, making it necessary to invest enormous resources to contact class members in person.  Counsel for Petitioner previously conducted interview sessions with approximately 127 class members, and that process alone required roughly 350 hours over 14 days and involved over 15 attorneys, student interns, and volunteers.  *See* Dkt. # 200, Exhibit 51 at ¶¶ 3-7 ("Declaration of Jennifer Stark").  It is unlikely that counsel currently have the resources to dedicate to a similar endeavor.  *Id.*

**Conclusion**

The Court therefore should reverse the Order to the extent it purports to establish a new privilege against the disclosure of otherwise relevant information in civil discovery.

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated:  August 29, 2011

 s/ Michael Kaufman
MICHAEL KAUFMAN
Counsel for Petitioners

15