TONY WEST
Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20044-1701
Tel: 202-532-4135
theodore.atkinson@usdoj.gov

Attorneys for Respondents

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

ALEJANDRO RODRIGUEZ, *et al.*,

      Petitioners,

   vs.

TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director*; JANET NAPOLITANO, *in her capacity as Secretary of Homeland Security*; and ERIC H. HOLDER, JR., *in his capacity as Attorney General of the United States*,

      Respondents.

Case No. CV 07-3239-TJH (RNBx)

**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR REVIEW**

Hon. Terry J. Hatter

Discovery Cut-Off:  None
Pretrial Conference:  None
Trial Date:  None

# <u>TABLE OF CONTENTS</u>

1.   Judge Block did not err in concluding that the disclosure of extraordinarily sensitive asylum-related information is restricted from disclosure in this action. ...................................................................2

    a.   The disclosure of asylum-related information is broadly restricted, as courts have recognized. ........................................................3

    b.   Contrary to Petitioners' assertion -- rejected by Judge Block -- the asylum regulations explicitly bar disclosure in judicial proceedings, with two exceptions that do not apply here. ........................................6

    c.   Judge Block correctly rejected Petitioners' other arguments for the disclosure of asylum-related information. ...........................................8

2.   Judge Block correctly concluded that VAWA and "T" or "U" visa related information is restricted from disclosure to class counsel without express written consent of the alien. ..........................................................12

3.   Judge Block did not err in ordering the redaction of confidential SAW, legalization, TPS and batters spouse/child information from the A-Files of those aliens outside the class.  ……..............................................15

4.   Petitioners' claim of burden with respect to obtaining written consent does not justify overturning Judge Block's order. .........................................18

CERTIFICATE OF SERVICE

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

*Al-Amiri v. Holder,*
    412 Fed. Appx. 988 (9th Cir. 2011) ............................................................4

*Anim v. Mukasey,*
    535 F.3d 243 (4th Cir. 2008) ...................................................................6

*Averianova v. Mukasey,*
509 F.3d 890 (8th Cir. 2008) .......................................................................6

*Brennan v. Midwestern United Life Ins. Co.,*
    450 F.2d 999 (7th Cir. 1971) .................................................................10

*In re Williams,*
    40 F.3d 1245 ...................................................................................... 9

*Computer Econ., Inc. v. Gartner Grp., Inc.,*
    50 F.Supp.2d 980 (S.D.Cal.1999) .........................................................18

*Cox v. Management  Training Corp.,*
    No. 3-02-c 2003 WL 21730542 (N.D. Tex. 2003)......................................9

*Fischer v. Wolfinbarger,*
    55 F.R.D. 129 (W.D. Ky. 1971) ..............................................................9

*Hawke v. U.S. Dept. of Homeland Sec.,*
    No. 07-03456, 2008 WL 4460241 (N.D. Cal Sept. 29, 2008) .....................13

*Herriman v. Midwestern United Life Ins. Co.,*
    405 U.S. 921 (1972) ...........................................................................10

*INS v. Cardoza-Fonseca,*
    480 U.S. 421 (1987) .............................................................................3

*Irons v. F.B.I.,*
    811 F.3d 681 (1st Cir., 1987) ...............................................................10

*Judicial Watch, Inc. V. Reno,*
    2001 WL 1902811 at *8 (D.D.C. Mar. 30, 2001) ...................................... 2

*Lin v. U.S. Dept. of Justice*,
    459 F.3d 255 (2d Cir. 2006) ............................................................5

*McPhail v. First Command Fin. Planning, Inc.*,
    251 F.R.D. 514 (S.D. Cal. 2008) ....................................................9

*Metry v. United States*,
    No. 08-cv-00585 (C.D. Cal. 2008) ..................................................2

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .......................................................................9

*Phillips v. ICE*,
    385 F. Supp. 2d 296 (S.D.N.Y. 2005) ...........................................11

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) .....................17

*St. Regis Paper Co. v. United States*,
    368 U.S. 208 (1961) .......................................................................7

*Van Gemert v. Boeing Co.*,
    590 F.2d 433 (2d Cir. 1978) ...........................................................8

*Weeks v. Samsung Heavy Indus. Co., Ltd.*,
    126 F.3d 926 (7th Cir.1997) ..........................................................18

*Zambrano v. I.N.S.*,
    972 F.2d 1122 (9th Cir. 1992) .........................................................7

## **FEDERAL STATUTES**

8 U.S.C. § 1101(a)(15)(U) ......................................................................12

8 U.S.C. § 1101(a)(15)(T)(i)(I) ...............................................................12

8 U.S.C. § 1154(a)(1)(A)(iii) ...................................................................12

8 U.S.C. § 1154(a)(1)(B)(ii) ....................................................................12

8 U.S.C. §1160(b)(5) ......................................................................... 15, 16

8 U.S.C. § 1160(b)(6) ........................................................................ 15, 16

8 U.S.C. §§ 1160(b)(6)(B) .................................................................. 16

8 U.S.C. 1229b(b)(2) .......................................................................... 12

8 U.S.C. § 1255a(c)(4) ........................................................................ 15

8 U.S.C. § 1367 .................................................................................. 13

8 U.S.C. § 1367(a)(2) .......................................................................... 13

8 U.S.C. §1367(b) ............................................................................... 13

## FEDERAL REGULATIONS

8 C.F.R § 208.6 ....................................................................... 3, **passim**

8 C.F.R. § 208.6(a) ............................................................................. 7

8 C.F.R. § 208.6(c)(2) ..................................................................... 7, 8

8 CFR 210.2(e) .................................................................................. 16

8 C.F.R. § 244.16 ............................................................................... 17

8 C.F.R. 245a.2(t) .............................................................................. 16

8 C.F.R. 245a.3(n) ............................................................................. 16

8 C.F.R. 245a.21 ................................................................................ 16

## FEDERAL RULE OF REGULATION

Fed. R. Civ. P 23(a)(1) ...................................................................... 10

Fed. R. Civ. P 23(b)(2) ...................................................................... 11

Fed. R. Civ. P. 26(c), C ..................................................................... 17

1

Fed. R. Civ. P. 26(c), (B) ........................................................................ 17

Fed. R. Civ. P. 26(c),C ........................................................................ 17

1    This Court should deny Petitioners' motion for review.  Magistrate Judge Block

2 has twice correctly concluded that specific statutes and regulations restrict the

3 Government from disclosing in judicial proceedings like this one the kind of

4 information Petitioners seek in discovery.

5    There are extraordinarily strong statutory, regulatory, and public policy grounds

6 that support the entry of the protective order entered by Judge Block.  As courts,

7 international organizations, the American Civil Liberties Union, and even class

8 counsel in this action have publicly acknowledged, the information Petitioners seek –

9 asylum-related information; Violence Against Women Act (VAWA) and "T" and "U"

10 visa information provided by abused, exploited, and victimized aliens; and

11 information provided by battered spouses and children seeking hardship waivers – if

12 improvidently disclosed, could lead to harm to the alien applicant by a foreign

13 government seeking to exact retribution, by criminals seeking to interfere with law

14 enforcement investigations, or by a spouse seeking to impose suffering.

15    Judge Block correctly interpreted the law and concluded that the regulatory and

16 statutory provisions at issue bar the disclosure of such information in this action.  He

17 properly rejected the very arguments Petitioners make to this Court and entered a

18 protective order which shields against the disclosure of sensitive and restricted

19 information while also permitting the discovery of other information.  Petitioners'

20 arguments to this Court are without merit.  This Court should deny the motion for

21 review.[1]

22

23

24

25

26

27    [1] Since Judge Block denied Petitioners' motion for reconsideration and clarified his
July 25, 2011 order, Respondents have been reviewing and redacting the A-Files to be
28 produced in accordance with the discovery order.

**1.    Judge Block did not err in concluding that the disclosure of extraordinarily sensitive asylum-related information is restricted from disclosure in this action.**

In considering Petitioners' motion for review, it is important at the outset that this Court understand the extraordinarily sensitive nature of asylum-related information and the potentially harmful impact it could have if improvidently disclosed.  It has long been recognized that the disclosure of such information may have direct, possibly dangerous effects on the asylum seeker.  One plaintiff put it this way in a recent action in this district against the Department of Homeland Security for allegedly unlawfully disclosing information about the plaintiff's asylum application: "One of the purposes for making the disclosure of such information unlawful is the protection of asylum applicants from reprisals from the governments of countries from which they are seeking asylum."  *Metry v. United States*, No. 08-cv-00585 (C.D. Cal. 2008) (Dkt # 1 ¶ 20 in that action).  About that lawsuit – and about the paramount need for the Government to keep asylum information undisclosed – class counsel in this case, Ahilan Arulanantham, had this to say:  "There is a serious concern that the government does not take any steps, on a regular basis, to ensure that the confidential information that *could endanger the immigrant* is kept out of the file provided to the home country."  Egyptian Asylum Applicant Sues the U.S., *Daily Journal*, Feb. 4 2008 (attached to the parties Joint Stipulation, Dkt # 193, as Exhibit A thereto).

The central purpose of international refugee protection and the U.S. asylum system is to protect individuals from persecution based on political opinion and other specified grounds.  As the D.C. Circuit noted, "[a]n asylum application contains personal information about the applicant and his family, including his personal history and political views, the release of which not only threatens the individual's privacy, but may very well endanger his life and the safety of other family members." *Judicial Watch, Inc. v. Reno*, 2001 WL 1902811, at *8 (D.D.C. Mar. 30, 2001).  Indeed, some states view the very act of applying for asylum in another state as the expression of an

2

antigovernment political opinion – a political expression that can in turn lead to further persecution. *See, e.g.,* Virgil Wiebe, *et al.,* <u>Asking for a Note From Your Torturer: Corroboration and Authentication Requirements in Asylum, Withholding and Torture Convention Claims</u>, Immigr. Briefings, Oct. 2001, at 6, n. 24 (human rights organization in Chad was forced to close down and its members forced to flee the country after the name of a Chadian human rights activist who had applied for asylum in the United States was revealed). The critical importance of keeping asylum-related information confidential is a foundational underpinning of international agreements binding the United States.[2]

### a. The disclosure of asylum-related information is broadly restricted, as courts have recognized.

The United States has acknowledged its obligation to protect the confidentiality of asylum claims by restricting disclosure of asylum-related information. Specifically, 8 C.F.R. § 208.6 provides:

> Disclosure to third parties.
> (a)    Information contained in or pertaining to any asylum application shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General.
> (b)    The confidentiality of other records kept by the Service that indicate that a specific alien has applied for asylum shall also be protected from disclosure. The Service will coordinate with the Department of State to ensure that the confidentiality of these records

---

[2] In 1968, the United States acceded to the 1967 Protocol Relating to the Status of Refugees, Oct. 4, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267, and became bound by provisions of the Protocol and the 1951Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150, reprinted in 19U.S.T. 6223, at 6259. In 1980 the United States enacted the Refugee Act, which created the U.S. asylum adjudication system, in order to bring U.S. refugee law into conformance with the Protocol. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 435-36 (1987). The United Nations High Commission for Refugees has committed itself to a general policy of refusing to share any information relating to individual cases with the country of origin. *See* UNHCR, Letter Re: Requests for Documentation in Support of Refugee Claims (Oct. 19, 1998).

is maintained if they are transmitted to Department of State offices in other countries.

(c)    This section shall not apply to any disclosure to:

    (1)    Any United States Government official or contractor having a need to examine information in connection with:

        (i) The adjudication of asylum applications;

    (ii)    The defense of any legal action arising from the adjudication of or failure to adjudicate the asylum application;

    (iii)    The defense of any legal action of which the asylum application is a part; or

    (iv)    Any United States Government investigation concerning any criminal or civil matter; or

(2)    Any Federal, state, or local court in the United States considering any legal action:

    (i)    Arising from the adjudication of or failure to adjudicate the asylum application; or

    (ii)    Arising from the proceedings of which the asylum application is a part.

8 C.F.R § 208.6.  It is important to note the breadth of the limitation on disclosure of any "[i]information contained in or pertaining to any asylum application," which includes acknowledgement of the application's very existence.  *See Al-Amiri v. Holder*, 412 Fed. Appx. 988 (9th Cir. 2011) (disclosure that "reveals that [an alien] had applied for asylum in this country" violates the regulation).

The regulation expressly and unambiguously restricts identifying those circumstances in which a disclosure of asylum-related information has been made. Disclosures of asylum-related information may be made in two general circumstances: (1) where the asylum-seeker has provided "written consent" – not merely oral consent or consent conveyed by counsel for an asylum-seeker in the context of the attorney-

lient relationship, and (2) in the discretion of the Attorney General (now the Secretary of Homeland Security).[3]

In the absence of either written consent of the asylum-seeker or an exercise of discretion on the part of the Secretary of Homeland Security (which has not occurred in this case), no disclosure may be made in this case.  The enumerated exceptions in § 208.6(c) do not apply.  Section 208.6(c)(1) does not apply because Petitioners do not seek a disclosure to a "United States Government official" or a government "contractor," nor would any disclosure meet the asylum-adjudicatory, defense, or investigatory purposes of section 208.6(c)(1).  Section 208.6(c)(2) permits disclosure to a federal court, but only in a legal action "[a]rising from the adjudication of or failure to adjudicate the asylum application" or "[a]rising from the proceedings of which the asylum application is a part."  Neither applies here.  This is a class action challenging prolonged detention under four detention statutes.  It is not an action challenging the denial of an asylum application.  And only under the most attenuated reading could one accept an argument that the mere fact that some class members may have sought or are seeking asylum makes this class action suit arise from "proceedings" of which the asylum applications are a "part."  That language was intended to permit disclosure in cases where the asylum application was a meaningful part of earlier proceedings, and not any class action where an alien happened to have sought asylum at some point.

Several circuit courts have recognized that section 208.6 imposes broad restrictions on the disclosure of asylum-related information.  *See Lin v. U.S. Dept. of Justice*, 459 F.3d 255, 263 (2d Cir. 2006) (reviewing section 208.6 and interpreting memoranda, and concluding that compliance with section 208.6 was so important to the safety of the applicant that a violation of that section made the previously

---

[3] Given the extraordinarily sensitive nature of asylum-related information, the Second Circuit has acknowledged that DHS would exercise its discretion and release asylum information only in "presumably rare circumstances." *Lin v. U.S. Dept. of Justice*, 459 F.3d 255, 266-67 (2d Cir. 2006).

ineligible applicant eligible for asylum and/or withholding of removal); *Anim v. Mukasey*, 535 F.3d 243 (4th Cir. 2008) (stating that "the confidentiality regulations are of utmost importance in protecting asylum applicants" and holding that a violation of section 208.6 requires an asylum applicant to be given a new opportunity to apply for asylum); *Averianova v. Mukasey*, 509 F.3d 890 (8th Cir. 2008) (giving substantial deference to the Board of Immigration Appeals' interpretation of section 208.6 and discussing the Cooper Memo and USCIS Fact Sheet).

In *Lin*, the Second Circuit held that the regulation was "unambiguously absolute" in restricting disclosure of information "contained in" or "pertaining to" an asylum application.  *Lin*, 459 F.3d at 262.  In rejecting the argument that section 208.6 applies to "sensitive" information, the court cited to the Cooper Memo and the USCIS Fact Sheet as established interpretations of section 208.6, and explained that the Fact Sheet provided the Government's view of its own regulation:  "[C]onfidentiality [under 8 C.F.R. § 208.6] is breached when information contained in or pertaining to an asylum application is disclosed to a third party in violation of the regulations, and the unauthorized disclosure is of a nature that allows the third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum."  *Lin*, 459 F.3d at 262.

> **b.    Contrary to Petitioners' assertion -- rejected by Judge Block -- the asylum regulations explicitly bar disclosure in judicial proceedings, with two exceptions that do not apply here.**

Petitioners argue that section 208.6 permits disclosure by court order because that section lacks "express language prohibiting disclosure in judicial proceedings." Pet. Mot. for Review [Dkt # 202-1], at 8.  In their contentions, Petitioners focus exclusively on sub-section 208.6(a) to conclude that section 208.6 does not explicitly

6

bar disclosure of asylum-related information in civil proceedings.  Petitioners made the same argument to Judge Block, who properly rejected it.

By focusing exclusively on section 208.6(a), Petitioners simply ignore the rest of the regulation and mischaracterize the law on this point.  First, section 208.6(a) contains an absolute prohibition that asylum-related information "shall not be disclosed" except to Government Officials or contractors (of which Petitioners and their counsel are neither), or in the discretion of the Attorney General (now the Secretary of Homeland Security).  Second, subsection 208.6(c)(2) specifically addresses the limited circumstances in which asylum information may be disclosed in judicial proceedings.  That sub-section – read together with the general prohibition against disclosure of subsection 208.6(a) – provides as follows:

> (a) Information contained in or pertaining to any asylum application shall not be disclosed . . . except as permitted by this section . . .
> . . .
> (c) This section shall not apply to any disclosure to:
> . . .
> (2) Any Federal, state, or local court in the United States considering any legal action:
> (i) Arising from the adjudication of or failure to adjudicate the asylum application; or
> (ii) Arising from the proceedings of which the asylum application is a part.

8 C.F.R. §§ 208.6(a), (c)(2).  Read together, section 208.6 provides an express and unambiguous prohibition against disclosure except in the two narrow circumstances expressly identified in subsection 208.6(c)(2).   The regulation simply cannot logically be read any other way.  Thus, even if this Court were to reverse Judge Block and accept Petitioners' characterization of *St. Regis Paper Co. v. United States*, 368 U.S. 208 (1961), and Zambrano v. I.N.S., 972 F.2d 1122 (9th Cir. 1992), as Petitioners urge, *see* Dkt # 202-1 at 6, the regulation itself expressly bars the disclosure of asylum-information Petitioners seek through civil discovery in this action.

Judge Block was correct in concluding that section 208.6 restricts the disclosure of asylum-related information in this action, and in declining to reconsider that

position.  Significantly, Petitioners have never identified any exception or policy

ground in section 208.6, the Government's interpretations of its own regulation, or *Lin*

to conclude that they should be provided with the asylum information that is restricted

in "unambiguously absolute" terms.  Petitioners have never addressed the specific and

express prohibitions against the disclosure of asylum-related information in judicial

proceedings like this action, as set forth in section 208.6(c)(2).  And Petitioners'

demand for this information cuts against the very purpose of the regulation and the

strong public policy supporting it:  Petitioners have already admitted that they need

the asylum information *specifically so they can identify the asylees and aggregate*

*their data*.

### c.   Judge Block correctly rejected Petitioners' other arguments for the disclosure of asylum-related information.

As they did before Judge Block, petitioners make several arguments why the

Court should not be concerned about ordering the disclosure of asylum-related

information.  This Court should affirm Judge Block's decision to reject those

arguments.

First, Petitioners argue that because they serve as class counsel, they should be

entitled to the asylum-related information – Petitioners' implication being that as class

counsel they consent to the release of the information on behalf of their clients.  Judge

Block declined Petitioners' argument, and properly so.  As a starting point, Petitioners

do not represent the vast majority of the over 1,000 aliens whose files are at issue –

more than 800 of the A-file materials subject to disclosure are of individuals who are

not currently detained and thus not class members.  Certification under Rule 23(g)

"makes *the Class* the attorney's client for all practical purposes."  *Van Gemert v.*

*Boeing Co.*, 590 F.2d 433, 440 n. 15 (2d Cir. 1978) (finding attorney-client

relationship between class members and class counsel after certification and trial)

(emphasis added).  However, where an individual falls out of the class, that individual

is no longer a member of the class and therefore no longer represented by the class

8

counsel.  *Cf. In re Williams*, 40 F.3d 1245 (4th Cir. 1994) (unpublished) (prisoner who was member of a class action fell out of the class and was therefore no longer entitled to seek replacement of class counsel or class monitor); *Cox v. Management Training Corp.*, No. 3-02-cv-1134, 2003 WL 21730542 (N.D. Tex. 2003) (released prisoner in detention class action is "no longer a member of any class which may be entitled to injunctive relief"); *see* March 10, 2010 Class Certification Order (certifying class of non-citizens who "*are* or will be detained") (emphasis added).

Additionally, while Petitioners are correct that class counsel has a duty to preserve former class members' confidences, *see* Pet. Motion for Review at 7, that is not the same as entitlement by class counsel to confidential information about former class members, nor does that principle establish that the class counsel stands in the place of the former class member such that they may provide an intentional waiver on that alien's behalf.  The duty to preserve confidences does not perpetuate the representation.  Not surprisingly, then, Petitioners cite to no authority permitting them such information with respect to such individuals outside the class, either on the basis of current representation or otherwise.

The far limited number of class members are "absent class members" who may have no knowledge that they are represented given that the class was certified under Rule 23(b)(2) and no notice was provided.  Courts recognize a distinct difference between absent class members such as those at issue here, and named plaintiffs, because absent class members are generally not subject to discovery and are not considered to have the same relationship to counsel as do named plaintiffs.  *See McPhail v. First Command Fin. Planning, Inc.,* 251 F.R.D. 514, 517 (S.D. Cal. 2008) (*quoting Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810, (1985) ("[A]n absent class-action plaintiff is not required to do anything.") *and Fischer v. Wolfinbarger*, 55 F.R.D. 129, 132 (W.D. Ky. 1971) ("It is not intended that members of the class should be treated as if they were parties plaintiff, subject to the normal discovery procedures,

9

because if that were permitted, then the reason [behind Rule 23(a)(1) of the Federal Rules of Civil Procedure] would fail.").

Moreover, Petitioners' position fails to account for the fact that individuals with authority to waive confidentiality provisions such as those at issue here must do so intentionally, which is impossible in an action where they have no idea that they are even represented. *See, e.g., Irons v. F.B.I.,* 811 F.3d 681, 686 (1st Cir., 1987) (holding that "waiver" of confidentiality is defined based on "the purposeful relinquishment of an appreciated right"); *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999 (7th Cir. 1971), *cert. denied by Herriman v. Midwestern United Life Ins. Co.,* 405 U.S. 921 (1972) (allowing post-certification discovery from absent members in a limited circumstance "so long as adequate precautionary measures are taken to insure that the absent member is not misled or confused"). For example, the disclosure of asylum-related information is deemed so confidential that it may be made only with express written consent of the alien. 8 C.F.R. § 208.6.[4] Given these requirements for waiver, it is illogical, as Petitioners now ask, for the Government to deem the majority of class members whose A-files are at issue here to have expressly consented to disclosure of their confidential asylum claim and other information to counsel they do not know and have not had any role in selecting. Judge Block correctly declined to accept Petitioners' argument, and this Court should follow suit.

Second, Petitioners argue that the Court should permit the disclosure of asylum-related information because the confidentiality order entered in this case protects against any danger to asylum-seekers arising from disclosure. Judge Block was also correct to reject that argument. The regulations do not contain any exception where there is a confidentiality order – they contain a complete bar to disclosure except in certain circumstances not present in this action. By restricting disclosure to any third

---

[4] Petitioners could seek written consent from current class members, who counsel are aware of and are in detention and can be contacted directly.

party, the regulation is designed to prevent *any* reasonable possibility that information regarding an alien's claim of asylum will ultimately pose a risk to that alien.[5]

If this Court were to reverse Judge Block and order disclosure, it would include disclosure to class counsel, their staff, Petitioners' experts and *their* staff. The vast majority of the over 1,000 A-files at issue here are of individuals that are not class members and are not represented by class counsel. The class members who represent a far fewer number of A-files could also be completely unaware of this class action (and unaware that confidential information in their A-file could potentially be disclosed). Accordingly, disclosure to class counsel as proposed would not only be made without asylum applicants' consent, it would be done without their knowledge that this information was subject to disclosure at all.

Judge Block correctly denied Petitioners' arguments to the contrary. This Court should deny the motion for review.

---

[5] Petitioners ignore an important point Respondents made to Judge Block: Individuals are expressly told that their asylum information will remain confidential. The USCIS informational webpage for readers seeking information on filing a claim for asylum states: "The information you share with the Asylum Officer is protected by confidentiality provisions found in 8 CFR § 208.6. In general, information related to your asylum claim cannot not be shared with third parties without your written consent or specific authorization by the Secretary of Homeland Security. There are certain exceptions to this rule, however, which can be found in the confidentiality regulations cited above." *See* Dkt # 193, Exhibit E thereto. Courts have recognized that privacy interests are enhanced where an asylum-seeker has been informed that their request for asylum would be kept confidential. *See Phillips v. ICE*, 385 F. Supp. 2d 296, 305 (S.D.N.Y. 2005) ("the fact that a government agency has effectively promised confidentiality to persons supplying information to it creates justifiable expectation of privacy.")

**2.    Judge Block correctly concluded that VAWA and "T" or "U" visa related information is restricted from disclosure to class counsel without express written consent of the alien.**

Petitioners argue that information regarding victims of certain trafficking and sexual exploitation crimes provided when those individuals make a claim under the Violence Against Women Act ("VAWA") or seek an application for a "T" or "U" visa[6] is not subject to restrictions from disclosure to class counsel.  Petitioners are incorrect.

---

[6] VAWA allows individuals to petition for adjustment of status for themselves and exempts them from section 245(c) of the INA, 8 U.S.C. § 1255, which prohibits immigrants who have engaged in unauthorized employment, those who have failed to maintain valid immigration status and a number of others from applying for adjustment of status.  In addition, VAWA provides for special rule cancellation of removal and adjustment of status for battered spouses and children of lawful permanent residents or U.S. citizens under a more generous standard than that applied generally.  8 U.S.C. 1229b(b)(2).  Under VAWA, applicants are allowed to apply for permanent residence if they can demonstrate that they were the victims of domestic violence in the United States.  A VAWA claimant must demonstrate that "the marriage or the intent to marry []was entered into in good faith by the alien" and that "during the marriage or relationship intended by the alien to be legally a marriage, the alien or a child of the alien has been battered or has been the subject of extreme cruelty perpetrated by the alien's spouse or intended spouse." 8 U.S.C. §§ 1154(a)(1)(A)(iii) (United States citizen spouse); 1154(a)(1)(B)(ii) (lawful permanent resident spouse).

At the same time, Congress created two new categories of nonimmigrant visas, the "T" and "U" visas.  "T" visas are available to individuals who are victims of "a severe form of trafficking in persons."  8 U.S.C. § 1101(a)(15)(T)(i)(I).  Severe forms of trafficking include sex trafficking of persons under 18 years of age, or recruiting or obtaining persons for labor or services through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery. *Id.*  The other visa created by the act is the "U" visa, which is available to immigrants who are either victims of or who possess information concerning covered criminal activity.  8 U.S.C. § 1101(a)(15)(U).

The confidentiality and disclosure of VAWa or "T" or "U" visa application related information is governed by 8 U.S.C. § 1367, which provides for penalties for the disclosure of protected information.  That statute provides:

> Except as provided in subsection (b) of this section, *in no case* may the Attorney General, or any other official or employee of the Department of Justice, the Secretary of Homeland Security, the Secretary of State, or any other official or employee of the Department of Homeland Security or Department of State (including any bureau or agency of either of such Departments) --
>
> (2) permit use by or disclosure to anyone (other than a sworn officer or employee of the Department, or bureau or agency thereof, for legitimate Department, bureau, or agency purposes) *of any information which relates to an alien* who is the beneficiary of an application for relief under paragraph (15) (T), (15)(U), or (51) of section 101(a) of the Immigration and Nationality Act [8 U.S.C.A. § 1101(a) ] or section 240A(b)(2) of such Act [8 U.S.C.A. § 1229b(b)(2) ].

8 U.S.C. § 1367(a)(2) (emphasis added).   These restrictions end "when the application for relief is denied and all opportunities for the appeal of the denial have been exhausted."  *Id.*  Under section 1367, the disclosure of such information may "in no case" be disclosed by any Government official, except in certain enumerated circumstances – *e.g.*, for law enforcement investigatory purpose, for census reasons, for presentation to Congress – that do not apply here.  8 U.S.C. § 1367(b).

The U.S. District Court for the Northern District of California recently addressed the breadth of this restriction in *Hawke v. U.S. Dept. of Homeland Sec.*, No. 07-03456, 2008 WL 4460241, at *6 (N.D. Cal Sept. 29, 2008).  There the court denied a subpoena for the production of the entirety of an A-File which the petitioner sought to use in his defense in a criminal proceeding.  The district court noted that while information related to a VAWA claim that has been denied on the merits without opportunities for further appeal is not restricted from disclosure, *id.* at *7, the

13

restrictions on disclosure under section 1367 require the denial of any request for VAWA-related information that does not meet that exception:

> Congress' focus on the exhaustion of all opportunities for review underscores its intent to limit the expiration of confidentiality to petitions that have been denied on the merits. This focus on the merits also accords with the fact that the confidentiality never expires on granted petitions filed by the victims of abuse. To hold that a mooted petition is "denied" would defeat one of the primary purposes of the VAWA confidentiality provision, namely, to prohibit disclosure of confidential application materials to the accused batterer. See 151 Cong. Rec. E2605, E2607 (daily ed. Dec. 18, 2005) (statement of Rep. Conyers that VAWA confidentiality provisions "are designed to ensure that abusers and criminals cannot use the immigration system against their victims").

*Id.*

Petitioners argue that despite the restrictions set forth by Congress, they are entitled to the information as class counsel, and because the disclosure would not violate Congress's intent and purpose in securing such information.  However, Petitioners cite no authority that they are entitled to the protected information at issue because of their status as class counsel.  Moreover, they fail to acknowledge that class counsel does not represent the vast majority of the aliens whose A-Files are at issue, and who are no longer in the class.  For the same reasons that class counsel for Petitioners is not entitled to asylum-related information, they are not entitled to VAWA or "T" or "U" visa application related information, as Judge Block correctly acknowledged.  Petitioners have provided this Court with no precedential or other basis to find that Judge Block was incorrect.  Petitioners' motion for review should be denied.

**3.    Judge Block did not err in ordering the redaction of confidential SAW, legalization, TPS and batters spouse/child information from the A-Files of those aliens outside the class.**

Judge Block did not err in concluding that information related to Special Agricultural Worker ("SAW") applications, legalization applications, applications for Temporary Protected Status ("TPS"), and battered spouse/child information may be redacted from the production of A-File materials for those aliens who are no longer in the class.  Those types of information are each governed by specific regulatory restrictions as to disclosure that support Judge Block's conclusion.

Each of the types of information Judge Block ordered redacted from the A-file production of former class members is, as Petitioners must concede, confidential and subject to express restrictions on disclosure:

- 8 U.S.C. § 1255a(c)(4) and (5) govern the confidentiality and disclosure of legalization applications; 8 U.S.C. §1160(b)(5) and (6) govern the confidentiality and disclosure of SAW applications.  Those statutes contain similar provisions:

> (5) Limitation on access to information
> Files and records prepared for purposes of this section . . . are confidential and the Attorney General and the Service shall not have access to such files or records relating to an alien without the consent of the alien, except as allowed by a court order issued pursuant to paragraph (6) of this subsection.
> (6) Confidentiality of information
> (A) In general
>> Except as provided in this paragraph, neither the Attorney General, nor any other official or employee of the Department of Justice, or bureau or agency thereof, may -
>> (i)    use the information furnished by the applicant . . . for any purpose other than to make a determination on the application . . . ;
>> (ii)    make any publication whereby the information furnished by any particular individual can be identified; or
>> (iii)    permit anyone other than the sworn officers and employees of the Department or bureau or agency or,

> with respect to applications filed with a designated entity,
> that designated entity, to examine individual applications.

8 U.S.C. §§ 1160(b)(5), (6); *see* 1255a(c)(4), (c)(5).[7]  There are additional required disclosures for law enforcement and coroner examination purposes under both statutes.  8 U.S.C. §§ 1160(b)(6)(B), (C); 1255a(c)(5)(B), (C).  Criminal penalties for unauthorized disclosure are also provided for.  8 U.S.C. §§ 1160(b)(7); 1255a(c)(6).[8]

- 8 C.F.R. § 216.6 governs the confidentiality and disclosure of battered spouse/child information:

> [a]s directed by the statute, the information contained in the application and supporting documents *shall not be released* without a court order or the written consent of the applicant; or, in the case of a child, the written consent of the parent or legal guardian who filed the waiver application on the child's behalf.  Information may be released only to the applicant, his or her authorized representative, an officer of the Department of Justice, or any federal or State law enforcement agency.  Any information provided under this part may be used for the purposes of enforcement of the Act or in any criminal proceeding.

8 C.F.R. § 216.6.

---

[7] One difference between the statutes is that the legalization-related provisions do not contain the "except allowed by a court order" language of the SAW-related statute. *Compare* section 1160(b)(5) ("Files and records prepared for purposes of this section . . . are confidential and the Attorney General and the Service shall not have access to such files or records relating to an alien without the consent of the alien, *except as allowed by a court order issued pursuant to paragraph (6) of this subsection*") *with* section 1255a(c)(4) ("Files and records . . . relating to an alien's seeking assistance or information with respect to filing an application under this section are confidential and the Attorney General and the Service shall not have access to such files or records relating to an alien without the consent of the alien.").

[8] There are corresponding regulations that clarify the statutory provisions, but substantively the same as the statutory prohibitions.  *See* 8 CFR 245a.2(t), 245a.3(n), 245a.21 (regulations governing confidentiality and disclosure of legalization applications); 8 CFR 210.2(e) (governing confidentiality and disclosure of SAW applications).

16

- The regulations providing for the confidentiality of TPS application information is found at 8 C.F.R. § 244.16, which provides:

> The information contained in the application and supporting documents submitted by an alien shall not be released in any form whatsoever to a third party requester without a court order, or the written consent of the alien. For the purpose of this provision, a third party requester means any requester other than the alien, his or her authorized representative, an officer of the Department of Justice, or any federal or State law enforcement agency. Any information provided under this part may be used for purposes of enforcement of the Act or in any criminal proceeding.

*Id.*

These provisions have much in common. Each provides that the information at issue is confidential in nature. Each provides for restrictions on disclosure to third parties, or provides for the disclosure to the applicant or his authorized representative, in addition to Government officials. Each contains language requiring the express consent or the express written consent of the applicant alien.

Although each allows for the disclosure of the protected information by court order, Judge Block was correct in determining that such disclosure should nevertheless be subject to protection from unwarranted disclosure in light of the confidentiality of the information and the regulatory or statutory emphasis on applicant consent.

Certainly Judge Block has the authority to consider such factors when crafting a protective order. Upon a showing of "good cause ... to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[,]" a district court may issue an order "forbidding the disclosure or discovery"; "specifying terms, including time and place, for the disclosure or discovery"; "prescribing a discovery method other than the one selected by the party seeking discovery"; or granting other relief. Fed. R. Civ. P. 26(c)(A), (B), (C). The Supreme Court has interpreted Rule 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v.*

17

*Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).  This court should not unsettle Judge Block's decision to issue a protective order with respect to those outside the class – and who are not represented here – unless the Court "is left with the definite and firm conviction that a mistake has been made."  *Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F.Supp.2d 980, 983 (S.D.Cal.1999) (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir.1997)).

Judge Block's order allows the disclosure of SAW/TPS/legalization/battered spouse or child information to Petitioners from the files of current class members, but requires redaction of that information for those aliens outside the class whose files are at issue.  Judge Block's decision to require the redaction of such information from the A-File productions of those outside the class is grounded in the confidential nature of such information, and the fact that class counsel does not represent these individuals. Of course, if those individuals provide written consent to such disclosure, then the information must be produced in discovery.  But absent such consent, Petitioners are incorrect that there is a clear and unequivocal requirement that such information must be disclosed to them.  Judge Block's decision to permit redaction of such information is consistent with the purpose of the regulations and statutory provisions protecting such information.  Therefore, the Court should deny the motion for review.

**4.     Petitioners' claim of burden with respect to obtaining written consent does not justify overturning Judge Block's order.**

Finally, this Court should reject Petitioners' claim that they will be unduly burdened by having to obtain the written consent of those aliens they no longer represent before Petitioners may obtain confidential, redacted information, or to obtain the A-File of any alien with a VAWA claim or a "T" or "U" visa application. Petitioners cite the number of individuals outside the class, and the number of those removed, but Petitioners mislead the Court by suggesting that they would have to obtain consent from each of those individuals.  As counsel for Respondents have repeatedly stated to counsel for Petitioners, the number of aliens with VAWA or "T"

or "U" visa applications is small.  Moreover, Respondents have informed Petitioners that Respondents will provide a list of aliens who have a claim that is subject to redaction or withholding, so that class counsel has a defined list of individuals from whom to seek consent.  Additionally, Respondents have offered to assist in delivering requests for consent to those currently detained, and have provided the last known address of those previously detained.   Respondents have offered to take – or have taken – reasonable steps to assist Petitioners in obtaining consent.

Regardless, Petitioners offer absolutely no legal basis for their suggestion that the Court should order the production of restricted information simply because obtaining consent would be inconvenient for class counsel.  No such burden exception is contained in any of the statutes or regulations at issue, and Petitioners cite no authority that the burden of obtaining written consent overrides clear and unambiguous statutory or regulatory restrictions on disclosure.

Judge Block's conclusion that information must be disclosed where release is based on the written consent of the applicant or claimant benefits Petitioners, and this Court should reject Petitioners' attempt to cite that exception to the disclosure restrictions as a basis for upsetting Judge Block's order altogether.  The Court should deny the motion for review.

Dated:  September 2, 2011

Respectfully submitted,

TONY WEST
Assistant Attorney General
Civil Division

DAVID J. KLINE
Director, Office of Immigration
District Court Section

VICTOR M. LAWRENCE
Principal Assistant Director

*/s/ Theodore W. Atkinson*
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20044-1701
Tel: 202-532-4135
theodore.atkinson@usdoj.gov

Attorneys for Respondents

1

## <u>CERTIFICATE OF SERVICE</u>

2

3        I certify that on September 2, 2011, I served a copy of the foregoing through the Court's CM/ECF system on the following counsel of record:

4

5   Ahilan T. Arulanantham                Judy Rabinovitz
    ACLU Foundation of Southern           ACLU Immigrants' Rights Project
6   California                            125 Broad Street 18th Floor
    1616 Beverly Boulevard                New York, NY 10004
7   Los Angeles, CA 90026                 212-549-2618
    213-977-5211                          Fax: 212-549-2654
8   Fax: 213-977-5297                     Email: jrabinovitz@aclu.org
    Email: aarulanantham@aclu-sc.org
9                                         Cody Jacobs
    Jayashri Srikantiah                   Sidley Austin LLP
10  Stanford Law School                   555 West Fifth Street Suite 4000
    Immigrants' Rights Clinic,            Los Angeles, CA 90013-1010
11  Crown Quadrangle                      213-896-6000
    559 Nathan Abbott Way                 Fax: 213-896-6600
12  Stanford, CA 94305-8610               Email: cjacobs@sidley.com
    650-724-2442
13  Fax: 650-723-4426
    Email: jsrikantiah@law.stanford.edu

14  Sean Commons
    Sidley Austin
15  555 West Fifth Street Suite 4000
    Los Angeles, CA 90013-1010
16  213-816-6000
    Fax: 213-896-6600
17  Email: scommons@sidley.com

18

19

20                                        */s/  Theodore W. Atkinson*

21                                        Theodore W. Atkinson

                                          Senior Litigation Counsel
22                                        United States Department of Justice

23

24

25

26

27

28

21