# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*, | CV 07-3239 TJH (RNBx) |
| Petitioners, | |
| v. | |
| TIMOTHY S. ROBBINS, *et al.*, | Order |
| Respondents. | |

Pursuant to 28 U.S.C. § 636, the Court has reviewed Petitioners' motion for review of the Magistrate Judge's order, together with moving and opposing papers, and the records on file.

In the underlying class action, Petitioners challenge the constitutionality and legality of detaining immigrants in the Central District of California, pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a), for more than six months without a bond hearing. Petitioners seek a writ of habeas corpus and request injunctive and declaratory relief providing an individual bond hearing for each class member. On

April 5, 2010, the Court certified the class, pursuant to Fed. R. Civ. Proc. 23(b)(2), and divided it into four subclasses of detainees, corresponding to each of the four immigration statutes at issue.

Since class certification, Petitioners and Respondents have disputed the relevance and privileged nature of Petitioners' discovery requests. Petitioners seek production of specified information from the Department of Homeland Security's ["DHS"] Administrative Files ["A-Files"], for every individual who would have met the class definition, starting from April 21, 2010. This encompasses an estimated one thousand non-citizens. From the A-Files, Petitioners seek: 1. Documents exchanged between a class member and the federal courts, or the Department of Justice ["DOJ"], or the DHS (including Immigration and Customs Enforcement and Customs and Border Protection ["CBP"]), or the U.S. Citizenship and Immigration Services; 2. Post order custody review ["POCR"] worksheets concerning current and former class members; and 3. Transcripts of any statements given by a "detainee" to the DOJ or DHS officials, such as transcripts of removal hearings or CBP interviews.

With respect to the parties' relevance dispute, on July 29, 2011, the Court affirmed the Magistrate Judge's ruling that the requested information was relevant pursuant to Fed. R. Civ. Proc. 26(b). Now, the parties dispute whether six statutory confidentiality provisions preclude judicial discovery. The provisions govern the disclosure of immigrant applications for: Asylum, 8 C.F.R. § 208.6; Citizenship under the Violence Against Women Act ["VAWA"] and for "T" and "U" visas, 8 U.S.C. § 1367 ["VAWA, T & U"]; Battered spouse and children, 8 C.F.R. § 216.5(e)(3)(viii); Legalization, 8 U.S.C. § 1255a(c)(4)-(5); Special agricultural workers ["SAW"] 8 U.S.C. § 1160(b)(5)-(6); and Temporary protected status ["TPS"], 8 C.F.R. § 244.16.

Petitioners have moved to compel production of the requested information while Respondents moved for a protective order. On July 25, 2011, the Magistrate Judge granted and denied portions of each parties' motion. On August 15, 2011, on motion for reconsideration, the Magistrate Judge confirmed and clarified the July 25, 2011 ruling. On August 29, 2011, Petitioners timely moved the Court to review the Magistrate Judge's August 15, 2011 order, which encompasses the July 25, 2011 order.

Between the two orders at issue, the Magistrate Judge interpreted the asylum and VAWA, T & U provisions to mean the following: The asylum provision precludes judicial discovery of information regarding the asylum application and any credible fear determination, unless the applicant provides his or her written consent. The VAWA, T & U provision precludes judicial discovery into an immigrant's entire A-File if he or she applied for relief under the VAWA or for a "T" or "U" visa. However, Petitioners may obtain such A-Files if: The application was denied on the merits and the immigrant exhausted all opportunities for appeal of the denial; or The immigrant provided Petitioners with written consent. The Magistrate Judge based the rulings on the statutory language of the respective provisions.

The Magistrate Judge, also, interpreted the remaining four disputed confidentiality provisions to allow judicial discovery of applications for battered spouse and children, legalization, SAW, and TPS, for class members currently detained, but not for former class members. Disclosure of former class member information would require written consent. The Magistrate Judge did not state the reason for distinguishing between current and former class members.

District courts review a magistrate judge's discovery order to determine if it is "clearly erroneous or contrary to law." *United States v. Raddatz*, 447 U.S. 667, 673-76, 100 S. Ct. 2406, 2411, 65 L. Ed. 2d 424, 431 (1980).

The parties raise two issues with the Magistrate Judge's orders that concern the interpretation of the statutory confidentiality provisions: 1. Whether the asylum and VAWA, T & U provisions preclude court-ordered judicial discovery; and 2. Whether the battered spouse and children, SAW, legalization, and TPS provisions preclude court-ordered judicial discovery of former class member information.

The asylum and VAWA, T & U confidentiality provisions do not foreclose court ordered discovery. In general, Congress has used three forms of statutory confidentiality provisions: Those that expressly bar disclosure in legal proceedings; Those that expressly allow disclosure in legal proceedings; and Those that are silent in this regard. *Zambrano v. I.N.S.*, 972 F.2d 112, 1125 (1992), *overruled on other grounds in I.N.S. v. Zambrano*, 509 U.S. 918, 113 S. Ct. 3028, 125 L. Ed. 2d 717, 717-18 (1993). The asylum provision falls somewhere between the second and third category, while the VAWA, T & U provision falls into the third category.

Courts have a "duty to avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result." *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218, 82 S. Ct. 289, 295, 7 L. Ed. 2d 240, 248 (1961). Thus, statutory provisions, generally forbidding disclosure of information, do not bar judicial discovery absent an explicit prohibition against such disclosure. *St. Regis Paper Co.*, 368 U.S. at 218, 82 S. Ct. at 295, 7 L. Ed. 2d at 248. The asylum and VAWA, T & U provisions do not contain such an express limitation. *See* 8 C.F.R. § 208.6; 8 U.S.C. § 1367.

Although no appellate court has addressed whether the asylum and VAWA, T & U provisions prohibit a court from ordering discovery, the Ninth Circuit applied the rule established in *St. Regis Paper Co.*, 368 U.S. 208 to the statutory confidentiality provision governing an immigrant's application for legalization. *Zambrano*, 972 F.2d 112 (interpreting 8 U.S.C. § 1255a(c)(4)-(5)). The court held

that the provision did not prohibit judicial discovery because it lacked an explicit command so stating. *Zambrano*, 972 F.2d at 1125-26. The court further reasoned that disclosure facilitated, rather than frustrated, the statutory purpose to protect the interest of immigrants applying for legalization. *Zambrano*, 972 F.2d at 1124-25. Congress intended the confidentiality provision to encourage aliens to apply for legalization by assuaging their fears that the government would use their information to deport them. *Zambrano*, 972 F.2d at 1125. In *Zambrano*, disclosure to class counsel was intended to protect and benefit the same group of people. *Zambrano*, 972 F.2d at 1124.

In this case, disclosure furthers the purpose of the statutory provisions, while withholding the requested information undermines it. Just as in *Zambrano*, 972 F.2d 112, disclosure of class member information to class counsel, here, protects and benefits the same group of people that Congress intended to protect and benefit. As the Fourth Circuit noted, Congress designed the asylum provision to prevent foreign government authorities and non-state actors from retaliating against asylum applicants and their families. *Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008). The VAWA and "T" and "U" visas grant victims of domestic violence, certain serious crimes, and human trafficking, legal status to remain in the United States. 8 U.S.C. §§ 1101(a)(51), 1101(a)(15)(U), 1101(a)(15)(T). Congress intended the confidentiality provision to prevent disclosure of an applicant's information to the persons who victimized the applicant. *Hawke v. United States Dep't of Homeland Sec.*, 2008 WL 4460241, at *7 (N.D. Cal. 2008)(Whyte, J.); *see* 151 Cong. Rec. E2605, E2607 (daily ed. Dec. 18, 2005). Neither provision was intended to shield the government from inquiry into its mistreatment of applicant-immigrants. *See Anim*, 535 F.3d at 253; *Hawke*, 2008 WL 4460241, at *7. A special danger lurks behind allowing the government to define the scope of a privilege when it serves to

hide the government's misconduct.

Not only does the asylum provision fail to explicitly prohibit judicial discovery, such court ordered disclosure squarely fits within one of its express exceptions. 8 C.F.R. § 208.6(c)(2)(ii) specifically allows disclosure in: "any legal action … [a]rising from the proceedings of which the asylum application … is a part." The asylum application "is a part" of the detention proceedings that Petitioners challenge in this case. The application and its supporting documents reveal the strength of the applicant's claim against removal. The merits of an asylum claim, also, weigh on the question of whether the government should release the applicant from detention while awaiting the determination of their removal. That some applicants did not present evidence of the merits of their claim at a proceeding to argue their entitlement to release does not displace them from this exception. The asylum applications still constitute "a part" of the immigration proceedings that Petitioners challenge here.

Respondents point to no statutory language, legislative history, or case law to support its position that Congress intended to limit subsection (ii) to proceedings in which the confidential asylum information plays a "meaningful" role. In effect, Respondents wish to reduce subsection (ii) to nothing more than subsection (i). If the Court humored Respondents, then subsection (ii) would be completely superfluous of subsection (i), which permits disclosure in a legal action, "[a]rising from the adjudication of … the asylum application." 8 C.F.R. § 208.6(c)(2)(i). "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." *Spencer v. World Vision, Inc.*, 633 F.3d 723, 743 (9th Cir. 2011). Congress intended subsection (ii) to encompass any legal action arising from proceedings in which the asylum application merely constitutes some "part," regardless of how active or meaningful the role it played. 8 C.F.R.

§ 208.6(c)(2)(ii). Some one, or entity, need not actually litigate the merits of the application before a tribunal for it to be "part" of a "proceeding."

Nevertheless, the Court finds the information plays a significant role in these proceedings. Not only does the information go directly to the due process inquiry before the Court, the protected documents, more often than not, constitute the only available source of information about a substantial number of class members. Asylum applicants compose a majority of the 8 U.S.C. § 1225(a) sub-class and about twenty five percent of all class members. These applicants, generally, do not have any prior contact with immigration authorities and do not apply for other forms of relief.

Similar to the asylum and VAWA, T & U provisions, the battered spouse and children, SAW, legalization, and TPS statutory confidentiality provisions do not foreclose the Court from compelling Respondents to disclose confidential information about former class members to Petitioners. None of the confidentiality provisions at issue contain an express prohibition against court-ordered civil discovery. *See* 8 C.F.R. §§ 216.5(e)(3)(viii) (battered spouse and children), 244.16 (TPS); 8 U.S.C. §§ 1160(b)(5)-(6) (SAW), 1255a(c)(4)-(5) (legalization). Thus, the requested documents are not privileged so as to preclude class counsel from discovering them. *See St. Regis Paper Co.*, 368 U.S. at 218, 82 S. Ct. at 295, 7 L. Ed. 2d at 248; *Zambrano*, 972 F.2d at 1125-26.

Furthermore, the structure of the case makes it impracticable to distinguish between former and current class members at this stage in litigation. Inevitably, during the litigation, many, if not all, "current" class members will become "former" class members. By April 18, 2011, about one year prior to this date and one year after class certification, the government already released from custody sixty five percent of the class. At this stage in the litigation, the distinction between

current and former class members constitutes nothing more than a line drawn in the sand on a windy day. The parties will needlessly expend resources attempting to separate scattered grains of sand, blowing about from one side of the line to the other, at much too early a stage in the litigation process for it to entail anything more than an utter waste of time and money for all involved.

A contrary ruling would deprive Petitioners of meaningful discovery. Petitioners have almost no reasonable way of contacting former class members to obtain their written consent. The sought-after information remains relevant even after the government releases a detainee. *See* Fed. R. Civ. Proc. 26(b). Moreover, it would be inequitable for Respondents to retain the power to bury a file by simply releasing a detainee, changing his or her status from "current" to "former" class member.

In sum, the interpretation of the asylum and VAWA, T & U statutory confidentiality provisions, to preclude court ordered disclosure, constitutes clear error. It, also, constitutes clear error to distinguish between former and current class members, when it comes to Petitioners' entitlement to discovery into persons who have met the class definition after certification, given the lack of a statutory mandate against court-ordered judicial disclosure and the structure of this case. A protective order from the Court, along with class counsel's duty of confidentiality, to current and former class members, will suffice to protect the confidentiality of current and former class members' information. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009); *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846-47, 43 Cal. Rptr. 3d 771, 776 (2006).

. . . . .

. . . . .

. . . . .

Accordingly, it is Ordered that:

1. Petitioners' motion for review be, and hereby is, Granted.

2. Within thirty days of the date of this order, the parties shall submit a stipulation to the Magistrate Judge for the purpose of maintaining the confidentiality of the compelled information.

3. After the Magistrate Judge accepts the stipulation, or issues its own order, regarding confidentiality, Respondents shall produce the requested information to Petitioners in a manner consistent with this order.

Date: May 3, 2012

_____
Terry J. Hatter, Jr.
Senior United States District Judge