STUART F. DELERY
Acting Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 532-4135
e-mail: theodore.atkinson@usdoj.gov

Attorneys for Respondents

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

ALEJANDRO RODRIGUEZ, *et al.*,

        Petitioners,

    vs.

TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director, et al.*,

        Respondents.

Case No. CV 07-3239-TJH (RNBx)

**DISCOVERY MATTER**

**JOINT STIPULATION FOR ENTRY OF PROTECTIVE ORDER GOVERNING CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION;**

**PARTIES' CONTENTIONS REGARDING PROPOSED LANGUAGE**

Hon. Robert N. Block

Pursuant to Judge Hatter's May 3, 2012 order (ECF 210) granting Petitioner's motion for review, the parties have met and conferred at length, and submit this joint stipulation for the entry of a protective order governing certain protected information.

The parties are in agreement with regard to most provisions that should govern.  The remaining disputes between the parties are addressed in this joint stipulation.

## DISPUTED PROVISIONS

The parties seek to have this Court resolve the following disputes and enter an order that otherwise comports with the provisions on which they agree:

(1)    <u>One-Tiered or Two-Tiered Protective Order</u> –  Respondents request that the Court enter their proposed order, which provides for a two-tiered protective order, distinguishing protected information  between "Confidential Information" and "Highly Confidential Information."  Petitioners request that the Court enter their proposed order, which provides for a one-tiered protective order, and includes all of the protected information under the single definition of "Confidential Information."

Because the parties differ with respect to a one-tiered or two-tiered approach, and for ease of readability on the Court's part, the parties have agreed to submit separate proposed protective orders.  With respect to <u>undisputed</u> provisions,[1] the only differences between the proposed orders are references to "Confidential Information" (in Petitioners' proposal), and "Confidential Information" and "Highly Confidential Information" (in Respondents' proposal), and paragraph structures that reflect a one-tiered (in Petitioner's proposal) or two-tiered (in Respondents' proposal) approach.  For this reason, the parties agree that – except for provisions in dispute addressed in this joint stipulation which this

---

[1] Except for the specific paragraphs herein, no other paragraph in either proposed protective order is subject to dispute.

1

Court must resolve – if the Court adopts the two-tiered approach, it should adopt the Respondents' proposed order, and if it adopts the one-tiered approach, it should adopt the Petitioners' proposed order.

With respect to the three disputed provisions, the parties have both included the provisions in their respective proposed protective orders but, for ease of the Court's reference, bolded and bracketed the disputed provisions.

(2).    <u>Class Counsel Disclosure Language</u>

Paragraph IV(b)(2) of Respondents' proposed order:

> <u>Class Counsel</u> – Counsel for Petitioners **who have entered their appearance and whose appearance has not been terminated** and support staff or other employees of such counsel assisting in this action with an appropriate need to know. **Any such counsel or support staff or employee of such counsel to whom "Highly Confidential Information" is disclosed shall first be required to read the terms of this Order and sign a copy of the Acknowledgment of Protective Order form, attached hereto as Exhibit A**.

Paragraph IV(a)(2) of Petitioners' proposed order:

> <u>Class Counsel</u> – Counsel for Petitioners and support staff or other employees of such counsel assisting in this action with an appropriate need to know.

(3).    <u>Restrictions on Disclosure</u>

Paragraph VI(b) of Petitioners' proposed order:

> **The limitations and restrictions on the disclosure of "Confidential Information" under this Stipulated Protective Order shall not apply to "Confidential Information" (1) that the Court has ordered Respondents to produce, and (2) that comes from the requested A-File materials of an individual who presently is or will be a class member. This exception does not apply to post-order custody review worksheets that may be contained in an A-File.**
> Because the exceptions in paragraphs (a) **and (b)** permits a class member to disclose the "Confidential Information" without restriction or limitation, including through class

2

counsel with a class member's authorization or consent, the exceptions described in these paragraphs shall remain in effect only so long as counsel for Petitioners remain as counsel for the certified class in this action.

Paragraph VI(b) of Respondents' proposed order does not include the bolded language above, and instead provides as follows:

Because the exceptions in paragraph (a) permits a class member to disclose the "Confidential Information" without restriction or limitation, including through class counsel with a class member's authorization or consent, the exceptions described in these paragraphs shall remain in effect only so long as counsel for Petitioners remain as counsel for the certified class in this action.

(4)    Maintenance of Protected Information

Paragraph VII(d) of Respondents' proposed order:

Notwithstanding paragraph VIII, **and excepting discovery materials designated as containing "Highly Confidential Information,"** counsel of record may maintain a complete set of discovery for their records, provided that such counsel maintain the confidential nature of the discovery.

Paragraph VII(d) of Petitioners' proposed order:

Notwithstanding paragraph VIII, counsel of record may maintain a complete set of discovery for their records, provided that such counsel maintain the confidential nature of the discovery.

3

# **PARTIES' CONTENTIONS**

## One-Tiered or Two-Tiered Protective Order

(1)     Respondents' Contentions

_Respondents' Two-Tiered Approach is More Narrowly Tailored._

This Court should adopt Respondents' commonly-employed proposed two-tiered system to provide heightened protection for designated highly confidential information.  There is ample cause for the application of the heightened protective measures Respondents seek.

Primarily at issue[2] is the disclosure of asylum-related information that courts, international organizations, and class counsel for Petitioners have recognized as extraordinarily sensitive and potentially dangerous, if inadvertently disclosed. _See, e.g., Judicial Watch, Inc. v. Reno_, 2001 WL 1902811, at *8 (D.D.C. Mar. 30, 2001) ("[a]n asylum application contains personal information about the applicant and his family, including his personal history and political views, the release of which not only threatens the individual's privacy, but may very well endanger his life and the safety of other family members.").  Petitioners have not and cannot dispute the stark fact that the disclosure of information that allows the identification of an asylum-seeker, if improperly disclosed, could lead to harm or death of an alien or members of an asylum-seeker's family.  _Al-Amiri v. Holder_, 412 Fed. Appx. 988 (9th Cir. 2011) (discussing restricted nature of information that "reveals that [an alien] had applied for asylum in this country").[3]

---

[2] After applying redactions to more than 1,000 A-Files over a nearly six-month period in 2011, Respondents have determined that the vast majority of all information redacted pursuant to this Court's July 25, 2012 (ECF 195) and August 15, 2012 (ECF 201) orders is asylum-related information.

[3] Respondents have previously detailed the extraordinary importance of maintaining the confidentiality of asylum-related information in the parties' joint stipulation that resulted in this Court's entry of the July 25, 2011 protective order permitting Respondents to withhold such information, even for class members unless they provide written consent. _See_ ECF 195.  To limit the length of this

4

Given the extraordinarily sensitive nature of asylum-related information, the Second Circuit has acknowledged that the Department of Homeland Security ("DHS") would exercise its discretion and release asylum information only in "presumably rare circumstances."  *Lin v. U.S. Dept. of Justice*, 459 F.3d 255, 266-67 (2d Cir. 2006).

Moreover, even absent improper disclosure, the ordered disclosure in and of itself may mistakenly communicate to future asylum-seekers that the Government's promise that it will not disclose such information is hollow.  *See Phillips v. ICE*, 385 F. Supp. 2d 296, 305 (S.D.N.Y. 2005) ("the fact that a government agency has effectively promised confidentiality to persons supplying information to it creates justifiable expectation of privacy."); *see also* USCIS Webpage, Resp. Exh. E to Joint Stipulation (ECF 191) ("The information you share with the Asylum Officer is protected by confidentiality provisions found in 8 CFR § 208.6.  In general, information related to your asylum claim cannot not be shared with third parties without your written consent or specific authorization by the Secretary of Homeland Security.").  That asylum-related information is private, treated as confidential by law, and potentially life-threatening if improperly disclosed is beyond question.

For these reasons, Respondents appeal to this Court to enter their proposed protective order, which expressly recognizes – by adopting a two-tiered system of designated information – the need for distinct and heightened protection for highly confidential information.  As the Court is well aware, protective orders often employ a two-tiered protective order distinguishing between types of confidential information by providing more stringent safeguards with respect to highly

---

stipulation, Respondents will not recount that description here, but cite the Court to it to underscore the highly confidential nature of asylum-related and other information Respondents have been compelled to produce in this action.  *See* Joint Stipulation, ECF 191.

confidential information.  *See* Recurring Mistakes in Stipulated Protective Orders, Block, J., ¶ 3 (contemplating two-tiered protective orders); *see also Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, *1 (N.D. Ill. Jan. 31, 2005) (describing two-tiered protective orders as "relatively common.").

Respondents' proposed two-tiered order creates a heightened bar to disclosure with respect to certain limited, identifiable categories of certain highly confidential information.  Unlike Petitioners' proposal, it allows for accountability from and identification of individuals accessing highly confidential information by requiring counsel to enter an appearance on the record before receiving highly confidential information and by requiring counsel and staff to sign acknowledgments of the protective order (Respondents' proposed order ("Resp. Prop.") ¶ IV (b)(2)); it permits confidential and highly confidential treatment of information this Court has ordered produced from A-Files of current class members (Resp. Prop. ¶ VI(b); and it limits class counsel's ability to retain highly confidential information after this action has ended (Resp. Prop. ¶ VII(d)).

Petitioners have proposed a single designated category of "Confidential Information" to encompass both confidential and highly confidential information, and have agreed to apply most of the provisions found in the parties' orders to both types of information.  However, their proposal does not apply protections to highly confidential information where they matter most, in the provisions over which the parties have a dispute.  In those areas, where the treatment of highly confidential information deserves heightened protection – and where Respondents' order meets that need – Petitioners seek to apply no greater protection than that governing the disclosure of confidential information. Respondents would accept a one-tiered protective order that applies the protections they propose to all confidential and highly confidential information, but Respondents believe that heightened protection should be limited to those provisions deserving of that more stringent treatment.  For this reason,

Respondents' proposal is more narrowly tailored, and if the Court adopts the modest proposals Petitioners dispute, then the Court should adopt Respondents' two-tiered approach.

(2)    Petitioners' Contentions

## I.    The Court Should Reject Respondents' Proposal To Enter A Complex And Onerous New Protective Order

While the parties disagree concerning four discrete aspects of the protective order, a common theme underlies their disagreements: despite having lost its motion for review before the district court, the government continues to press its view that its so-called "highly confidential information" deserves some form of additional protection from disclosure, beyond "confidential information" that is already protected pursuant to rigorous terms to which the government previously consented.  In an effort at compromise, Petitioners accepted additional protections on "confidential information" beyond those previously agreed upon.  *See* Respondents' Protective Order Section III(b)(4) (requiring written authorization for release of protected information); IV(a)(2) (requiring production to class counsel in encrypted format); IV(a)(3) (requiring production of acknowledgment forms signed by class counsel's experts and experts' staff); IV(a)(3) (requiring "Authorized Others" to sign an acknowledgment form).  However, in keeping with the adage that no generous act goes unpunished, the government has continued to insist on further onerous protections.

The Court should reject any distinction between "confidential" and "highly confidential" information for purposes of this protective order because there is no legal basis for such a distinction, and because the distinction unnecessarily complicates an already long and complex protective order.

**A.    The Court Should Not Draw Any Distinction Between "Confidential"
and So-called "Highly Confidential" Information.**

The Court should reject the government's recycled attempt to draw a
distinction between two categories of confidential information, for three reasons.
First, the government's approach remains fundamentally at odds with the district
court's order, the reasoning of which undermines any legal basis for distinguishing
between the interest in confidentiality at issue here and that at issue with respect to
the information previously designated as confidential. *Compare* Dkt. 210 at 4
(stating that the asylum statute does not contain an explicit prohibition against
court-ordered disclosure) *with*, *e.g.*, 5 U.S.C. 552a(b) (generally barring disclosure
of federal agency records pertaining to any individual). Moreover, the
government already turned over information subject to statutory privacy
protection pursuant to the terms of the prior protective order, as required by
Magistrate Judge Block's July 25, 2011 and August 15, 2011 orders. *See* Dkt. 195
(ordering Respondents to produce, for current class members, information subject
to 8 U.S.C. §1186a(c)(4)(C) (battered spouse or child information), 8 U.S.C. §
1255a(c)(4)-(5) and 8 U.S.C. §1160(b)(5)-(6) (SAW and legalization information)
and 8 C.F.R. § 244.16 (TPS information)). The fact that the government already
agreed to provisions governing the release of information restricted from
disclosure by statute – including information that falls within several of the very
same confidentiality provisions to which the government now seeks to apply
heightened protections – fatally undermines its argument for more onerous
protections with respect to its "highly confidential information," because it
follows from the Court's May 3 order that the level of statutory protection that
Congress intended to provide to both sets of information is the same.

Second, the government's distinction finds no rationale in the purpose of
the provisions at issue. The purpose of the asylum confidentiality provisions is "to
prevent foreign government authorities and non-state actors from retaliating

8

against asylum applicants and their families." Dkt. 210 at 5. The other provisions at issue in the government's "highly confidential" category also seek to protect information from either foreign governments (as in TPS) or from agencies of federal or state government (as in legalization and SAW information). As the Court's May 3 Order suggests, class counsel and their staff seek to obtain this information to "protect and benefit" class members. Dkt. 210 at 5 ("Neither provision was intended to shield the government from inquiry into its mistreatment of applicant-immigrants."). Their ethical duties, including the duty of confidentiality, will protect equally against unwarranted disclosures of this information as it does of other categories of confidential information. *See id*. at 10 ("A protective order from the Court, along with class counsel's duty of confidentiality, to current and former class members, will suffice to protect the confidentiality of current and former class members' information.").

Finally, apart from that serious legal defect, the government's position is also quite impractical. As Sections III and IV of the government's proposed protective order amply illustrate, parties attempting to comply in good faith with the protective order will likely have difficulty even understanding, let alone implementing, the order's distinction between "confidential" and "highly confidential" information, particularly when many detainee files will likely have portions of both present in the same files, and in some cases even on the same pages. Thus, for example, under the government's proposal class counsel and their staff can view "confidential information" so long as they have a need to do so, but cannot view "highly confidential information" unless they read and sign an acknowledgement form. Similarly, counsel can keep a copy of "confidential information" for their files after this case concludes, but they would have to destroy or return all "highly confidential information" within ten days of the case's conclusion, without keeping even a single copy. Such distinctions are as impractical as they are legally indefensible.

## Class Counsel Disclosure Language

(1)    Respondents' Contentions

*The proposed requirements of class counsel and their staff provide accountability over the dissemination and handling of highly confidential information.*

The Court should exercise its broad discretion and adopt the proposed language offered by Respondents so that the universe of highly confidential information is identifiable and its handling is accountable.  Respondents urge the Court to adopt two measures in the protective order to help mitigate the possibility that highly confidential information will be inadvertently disclosed by Petitioners' numerous counsel or their staff (1) by limiting the disclosure of such information to counsel who have entered their appearance on the record, and (2) by requiring counsel and counsel's staff to sign a written acknowledgment to be bound by the Court's protective order (*see* Respondents' paragraph IV(b)(2)).  There are compelling reasons for these modest but effective provisions.

As the docket in this case reflects, Petitioners are currently represented by attorneys from at least three different offices of the American Civil Liberties Union – ACLU attorneys in Los Angeles, San Francisco, and New York – as well as attorneys at the Stanford University immigrants' rights clinic, and by counsel in at least two separate large law firms.  Individual petitioners have also had their cases consolidated into this action, and others may be consolidated in this action, making any individual counsel to such petitioners – at least in some respect – part of this case.  *See* ECF Nos. 206, 208, 211, 212, 216 (Notices of Related Cases). The legal personnel who work on this case for Petitioners are also transient. During the meet and confer process, Petitioners' counsel has indicated that the ACLU also employs, at various times, legal fellows who work for the ACLU on a

temporary basis, and who have worked on and can be expected to work on this case. Respondents do not know how many attorneys or support staff working on Petitioners' behalf ultimately may be exposed to highly confidential information, and there is no measure in Petitioners' proposed order to ensure that Petitioners' Los Angeles counsel know, either. Petitioners' counsel and their staff are literally spread out over the country. If Petitioners' ACLU counsel in Los Angeles send highly confidential information to ACLU counsel in New York or San Francisco – or to non-ACLU counsel at Stanford or to counsel at the law firms the ACLU partners with – what mechanism exists to track the dissemination of highly confidential information, or to identify who has handled it once it has left Los Angeles? Under Petitioners' proposal, the answer is none.

The highly confidential and potentially damaging nature of the information at issue requires accountability for its handling and maintenance once it is delivered out of Respondents' hands. Respondents' proposals provide some assurance that counsel and staff who handle highly confidential information are aware of the existence of the protective order and have acknowledged that they are bound by it. The proposed language provides for an identifiable universe of legal personnel who access information, just as the parties' stipulated language provides for an identifiable universe of an expert and expert's staff who access highly confidential information. A chain of custody, put into writing, is created.

At no time during the conference of counsel have Petitioners identified any discernible reason why these measures are uncommon, burdensome or prejudicial. They are not. First, courts commonly employ similar provisions in protective orders where highly sensitive or highly confidential information is at issue. In such cases, courts have limited the disclosure of such information to counsel of record who enter an appearance with the Court.[4] Second, courts frequently

---

[4] *See*, *e.g.*, *Inter*Act Systems Inc. v. Catalina Marketing Corp.*, No. 96cv274, 1999 WL 545533 (D. Conn. Mar. 29, 1999) (protective order permitting

include in protective orders a requirement that counsel or counsel's staff provide a written acknowledgment to be bound by the terms of a confidential protective order where particularly sensitive information is at issue.[5]

Nor are these measures onerous. Under Respondents' proposed language, counsel who need to access highly confidential information need only file a notice of appearance, and counsel or staff working for Petitioners who have a need to access the information must first read the protective order – which one hopes they would do in any event – and sign a one-page acknowledgment that they have done so and will be bound by it. Under the proposed language, Petitioners need not produce the signed acknowledgment forms to Respondents. These provisions place no meaningful burden on Petitioners.

---

disclosure of "highly confidential information" to "all counsel of record who have entered an appearance with the court); *Perry v. Schwarzenegger*, No. 09-cv-2292 (N.D. Cal. Jan. 7, 2010) (permitting disclosure of "highly confidential information" to "the Receiving Party's Outside Counsel of record in this action…" and their staff who sign an acknowledgment), *cited by and quoted in Perry v. Brown*, 667 F.3d 1078, 1082 n.3 (9th Cir. 2012).

[5] *See, e.g., In re Guantanamo Bay Detainee Litigation*, Misc. No. 08-0442, 2009 WL 50155 (D.D.C. Jan. 9, 2009) (requiring counsel to sign written acknowledgment to be bound by procedures of a protective order before accessing classified information); *In re Apple & AT&TM Antitrust Litigation*, No. C 07-05152, 2010 WL 1266684 (N.D. Cal. Apr. 1, 2010) (affirming magistrate judge's decision that interim lead counsel is required to sign a written agreement to be bound by the Court's confidentiality protective order before highly confidential business information may be disclosed to counsel); *In re US Airways Group, Inc.*, No. 02–83984, 2003 WL 25930960 (E.D. Va. Jan. 23, 2003) (protective order permitting disclosure of sensitive expert report to counsel, "[s]ubject to such counsel providing to each Party a written acknowledgment that such counsel is bound by, and agrees to comply with, this Order and the Protective Order."); *In re New Motor Vehicles Canadian Export Antitrust Litigation*, MDL No. 03-md-1532, 2009 WL 861485 (D. Me. Mar. 26, 2009) (requiring counsel and counsel's staff with access to highly confidential information to sign an acknowledgement to be bound).

Nor does the proposed language prejudice Petitioners.  Petitioners are not limited in the number of legal personnel that may, based on their need to know, access highly confidential information.  And there is no limitation on how highly confidential information may be used by counsel or staff to pursue this action once they have it.[6]  All that would be required of counsel and staff for Petitioners who need to access this information is, at most, the entry of appearance by counsel and the acknowledgement to be bound by this Court's order.  Respondents seek a documented chain of custody of highly confidential information.  Their order creates it.

(2)    Petitioners' Contentions

## I.    The Court Should Permit All Of Petitioners' Counsel To View "Highly Confidential Information"

Petitioners object to the government's insistence that only counsel who have first entered an appearance in this matter AND signed an "acknowledgment form" can view "highly confidential information," whereas all counsel working on the case can view "confidential information" without signing an "acknowledgement form."  *Compare* Respondents' Proposed Order Section IV(a)(1) *with* Section IV(b)(2).

There are at least three serious problems with these onerous and impractical requirements.  First, they impose significant burdens on class counsel, because they frequently employ junior attorneys working for a fixed period of time either as fellows or as volunteer attorneys, and therefore who do not enter their appearance in the case.   Additionally, class counsel may occasionally require non-

---

[6] Respondents' initial proposed language included provisions requiring Petitioners to identify to Respondents those legal personnel to whom highly confidential information has been disclosed, and how spreadsheets or databases manipulating such information must be kept.  During the meet and confer process, Respondents removed such proposals in an effort to reach a compromise, and Respondents do not resurrect those proposals now.

appearing attorneys to temporarily work on the case due to unexpected or exigent circumstances where it is impractical and unnecessary to file a notice of appearance. Such attorneys are of course bound by the attorney-client privilege, as well ethical duties to class members, including a duty of confidentiality. Given that the government has agreed to permit counsel's staff, experts, and experts' staff to view "highly confidential information," there is simply no rationale for denying non-appearing attorneys comparable access to "highly confidential information."

Second, although the government seeks to impose this rule for Petitioners' counsel, it has imposed no comparable rule on itself. *See* Respondents' Proposed Order Section IV(b)(1). On the contrary, all "Counsel for Respondents" may view "highly confidential information," even though there are potentially dozens of attorneys that are counsel for the Departments of Justice and Homeland Security that may have access to this information without being required to sign an acknowledgment form or enter an appearance, and even though this Court has made clear that Respondents' counsel have no greater interest or motivation in protecting class members' interests than do Petitioners' counsel. *See* Dkt. 210 at 5-6 ("A special danger lurks behind allowing the government to define the scope of a privilege when it serves to hide the government's misconduct."). There is simply no reason to assume that attorneys working for class counsel are so likely to disclose class members' asylum information to foreign governments (or, ironically, class members' legalization or SAW information to DHS), that they cannot be allowed to view "highly confidential information" even when subject to the rigorous terms of the protective order that Petitioners' counsel has proposed.

Third, for the reasons discussed above, there is no principled reason to have two sets of requirements for "confidential" and "highly confidential" information with respect to these access restrictions given the Court's holding that neither set of information is barred from disclosure to class counsel, and given the practical

reality that any attorney working on the case will have to access both sets of information.

Restrictions on Disclosure

(1)    Petitioners' Contentions

## I. The Court Should Not Impose New Rules Regulating Class Counsel's Relationship with Their Clients

Petitioners seek to maintain a provision, to which the government previously agreed in the parties' Stipulated Protective Order, regarding counsel's ethical obligations to obtain their clients' consent.  In the parties Stipulated Protective Order, which this Court later adopted, the parties agreed that Petitioners could disclose "confidential information" pertaining to any class member only upon obtaining that individuals' "affirmative[] consent[]," but that this limitation did not apply to current class members where the Court had ordered disclosure of the information.  *See* Dkt. 188 at 6.  As the parties previously agreed, such individuals are plainly clients of class counsel, and class counsel therefore have an ethical obligation to act in their best interests, including by maintaining confidential information and disclosing, if at all, only when it best serves the clients' interests.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("class counsel's fiduciary duty is to the class as a whole"); *Burnett v. Rowzee*, No. SACV07-641, 2007 WL 2767936, at *4 (C.D. Cal. Aug. 13, 2007) (recognizing ethical duty of confidentiality).  These duties apply to former class members as well.  *See City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846 (Cal. 2006) ("the duty to preserve client confidences . . . survives the termination of the attorney's representation"); ABA Model Rules of Professional Conduct: Rule 1.6 [Comment 18] and Rule 1.9(c)(2).

It is neither appropriate for the government to seek to regulate class counsel's relationship with their clients, nor wise.  *See* Dkt. 210 at 5-6 ("A special danger lurks behind allowing the government to define the scope of a privilege

15

when it serves to hide the government's misconduct."). Class counsel take very seriously their ethical obligations to their class members, including when and in what circumstances it may be in their interests to disclose their confidential information. While class counsel would generally seek to obtain a class members' affirmative consent prior to disclosure of confidential information, there may be circumstances where implicit consent is sufficient to authorize disclosure in a client's best interests, particularly given that class members are detained, without easy access to telephones, at detention centers that may be several hours away from class counsel's offices. Additionally, some class members may be represented by private immigration counsel whose authorization may suffice for class counsel's purposes. But such authorization would be insufficient under the government's proposed protective order, which requires that the class member himself affirmatively consent.

Moreover, the Model Rules of Professional Responsibility require "informed," rather than "affirmative," consent for the release of confidential information, and specifically contemplate that such "informed consent" does not require an "affirmative" response in all circumstances. *See* ABA Model Rules of Professional Conduct: Rule 1.6; Rule 1.0(e) [comment 7] (observing that "informed consent" will "usually" require an "affirmative response" but that consent "may be inferred, however, from the conduct of a client or other person who has reasonably adequate information about the matter"). There is no reason to assume that counsel will not abide by those rules.

The government agreed to this provision in the prior protective order to which the parties agreed, *see* Dkt. 188 at 6, but has now disavowed that position. There is no basis for such a reversal, given that the principle underlying the exception applies equally to "confidential" information and "highly confidential" information. For these reasons, the Court should reject the government's attempt

1   to regulate class counsel's relationship with their own clients and adopt

2   Petitioners' position on this issue, to which the government had previously agreed.

3   (2)     Respondents' Contentions

4           *Petitioners' Paragraph VI(b) renders large amounts of confidential and*

5   *highly confidential information wholly unprotected.*

6           Respondents strongly object to the inclusion of Petitioner's proposed

7   paragraph VI(b), because it exempts from any protection whatsoever confidential

8   and highly confidential information of current class members found in A-Files,

9   and thereby largely undermines the meaning of the protective order.

10          Paragraph VI(a) of either proposed order recognizes that class counsel may

11  disclose both confidential and highly confidential information about an individual

12  – whether the individual is in the class or has fallen out of the class – as long as

13  class counsel obtains consent from that individual to do so.  But this Court should

14  not countenance, and should not adopt, Petitioners' proposed paragraph VI(b),

15  which creates an exemption that allows disclosure of confidential and highly

16  confidential information of current class members without any restrictions.

17  During the course of the parties' conferences, Petitioners have suggested that

18  ethical rules requiring them to obtain consent from current class members before

19  disclosing confidential and highly confidential information offer sufficient

20  protection such that class member information need not be covered.  This

21  assertion is patently incorrect.

22          As a preliminary matter, those ethical obligations are accounted for in

23  Paragraph VI(a), such that if that is Petitioners' reason for including Paragraph

24  VI(b) it would appear to be entirely redundant.  Moreover, the experts and other

25  third parties to whom this information may be provided are not bound by the same

26  ethical obligations as counsel.  Accordingly, under Petitioners' proposal if

27  Respondents produce asylum-related information from A-Files about current class

28  members to class counsel class counsel could then send it to their expert (and

probably will), who can make it public – without restriction or limitation.  This is because under Petitioners' proposed exemption confidential or highly confidential information drawn from current class members' A-Files is not subject to any of the restrictions or limitations in the order, no matter to whom those restrictions or limitations would otherwise apply.

In other words, under Petitioners' proposal, once A-File information about a class member leaves Respondents' hands and is delivered to class counsel, it is wholly unprotected, no matter who that information is disseminated to by class counsel.  Class counsel may take every possible precaution to meet its ethical obligations before *they* make information public, but once they deliver it to anyone contemplated under the order, that information is unregulated and outside of their control.  In short, class counsel's ethical obligations offer no protection once the information leaves their hands.

Respondents do not believe, based on class counsel's representations during conference of counsel (both in crafting this order and in crafting the existing protective order), that this type of result is intended by either party.  But whether intended or not, this exemption in Petitioners' protective order eliminates the protections for confidential or highly confidential A-File information pertaining to any current class member.  Such an exemption is particularly unsettling insofar as it encompasses class members who have no idea they are parties to this litigation and are not aware that their confidential and highly confidential information will be produced by the Government under court order.

Respondents' protective order, which excludes this exemption, maintains the relevance of the protective order for class members' confidential and highly confidential information, while still providing Petitioners' counsel with the right to disseminate however they see fit any information about a client that the client authorizes them to make public.  Respondents appeal to this Court to reject Petitioners' proposed paragraph VI(b) and adopt Respondents' version instead.

<u>Maintenance of Protected Information</u>

(1)    <u>Respondents' Contentions</u>

<u>*Class counsel should not be permitted to keep highly confidential material*</u>
<u>*after this action has been concluded.*</u>

Respondents propose the inclusion of language prohibiting class counsel from keeping documents containing highly confidential information after this action is concluded.  Orders governing highly confidential information typically require the return or destruction of highly confidential information at the conclusion of a case,[7] for obvious reasons.  As time goes on, the possibility of inadvertent disclosure grows, particularly where the terms of a protective order have faded in counsel's mind over the passage of time.

In conference discussions, Petitioners have identified to Respondents' counsel one reason why they would need to hold onto highly confidential information: to protect themselves from an individual who later brings a lawsuit against them.  But as pro bono counsel for the detainees at issue, they are not going to be sued over a fee dispute.  And Petitioners have assured Respondents (and presumably will assure the court) that they will not disclose information about an individual without that individual's consent.  If class counsel obtains consent to disclose information, they may, at that time, also obtain consent to keep the information for their records.  Thus the chances of a lawsuit over improper disclosure are small, and certainly too small to justify keeping indefinitely highly confidential information of class members and former class members who may not know class counsel has the information in the first place.  Respondents'

---

[7] *See, e.g., In re New Motor Vehicles Canadian Export Antitrust Litigation*, 2009 WL 861485 at *18 (requiring return of confidential information at the end of the case, but permitting counsel to retain their attorney work product, attorney-client privilege information and all court-filed documents even though they contain confidential Information or highly confidential information).

proposal – which applies only to highly confidential information – should be adopted.

(2)    Petitioners' Contentions

**I.    Class Counsel Should Be Permitted to Keep a Copy of "Highly Confidential" Information for Its Records**

Petitioners object to the government's insistence that class counsel must destroy all copies of "highly confidential information," such that they cannot even maintain a copy of the information for their records, even though they can keep a copy of "confidential information" in their case files.  The most serious problem with the government's proposal is that the obligation to destroy the files arises "within ten days after the final disposition of this action, including any and all appeals."  *See* Respondents' Protective Order Paragraph VII(c).  However, if this case ends in some form of injunctive relief for Petitioners, it is very likely that Petitioners will have an interest in keeping records of all filings in the case even after final judgment.  For example, counsel for Petitioners was recently involved in another class action concerning the government's treatment of asylum seekers in which the government sought to dissolve an injunction that this Court entered nearly twenty years ago.  *See Orantes-Hernandez v. Holder*, 321 Fed.Appx. 625, 627 (9th Cir. 2009) (unpublished memorandum disposition) (describing procedural history of *Orantes* litigation).  Litigating the government's motion to dissolve the injunction required a review of various files from the past, yet such review would have been impossible, at least with respect to "highly confidential information," had a protective order similar to the one the government seeks here been in place.  And while the government may argue in response that no "final disposition" was in place in *Orantes* during the twenty years in which the injunction was in place, such a reading would render that phrase meaningless, at least in any scenario in which Petitioners prevail.

1        Of course, the government's position would be untenable even were

2    Petitioners not fortunate enough to obtain a permanent injunction in this case.  If

3    any class member sued for malpractice, or even for a violation of the very privacy

4    provisions at issue in this dispute, class counsel would be unable to defend

5    themselves because the relevant information will have been destroyed.  There is

6    no rationale for such a rule, given that class counsel owe a duty of confidentiality

7    to class members even after the attorney-client relationship is terminated.  *See City*

8    *and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846 (Cal.

9    2006) ("the duty to preserve client confidences . . . survives the termination of the

10   attorney's representation"); ABA Model Rules of Professional Conduct: Rule 1.6

11   [Comment 18] and Rule 1.9(c)(2).  Finally, there is certainly no rationale for

12   adopting it only with respect to "highly confidential information."

13   Dated:  June 8, 2012

14
     By: */s/ Ahilan Arulanantham*          STUART F. DELERY
15   AHILAN T. ARULANANTHAM            Acting Assistant Attorney General
     ACLU OF SOUTHERN CALIFORNIA       DAVID J. KLINE
16                                     Director,
     Attorneys for Petitioners             Office of Immigration Litigation
17                                     District Court Section
                                       VICTOR M. LAWRENCE
18                                     Principal Assistant Director

19                                     By:  */s/ Theodore W. Atkinson*
                                       THEODORE W. ATKINSON
20                                     Senior Litigation Counsel
                                       United States Department of Justice
21                                     Civil Division
                                       Office of Immigration Litigation
22                                     District Court Section
                                       P.O. Box 868, Ben Franklin Station
23                                     Washington, DC 20044
                                       Tel.: (202) 532-4135
24                                     e-mail: theodore.atkinson@usdoj.gov

25                                     Attorneys for Respondents

26

27

28

## **CERTIFICATE OF SERVICE**

I certify that on June 8, 2011, I served a copy of the foregoing through the Court's CM/ECF system on the following counsel of record:

Ahilan T. Arulanantham
ACLU Foundation of Southern
California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

William Tran
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: wtran@sidley.com

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Steven A. Ellis
Sidley Austin LLP
555 W 5th St, Ste 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: sellis@sidley.com

Brian Kelley Washington
Sidley Austin
555 West Fifth Street Suite 400
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: bwashi01@sidley.com

*/s/  Theodore W. Atkinson*
Theodore W. Atkinson
Senior Litigation Counsel
United States Department of Justice