1   STUART F. DELERY
    Acting Assistant Attorney General
2   Civil Division
    DAVID J. KLINE
3   Director, Office of Immigration Litigation
    District Court Section
4   THEODORE W. ATKINSON
    Senior Litigation Counsel
5   EREZ REUVENI
    Trial Attorney
6   United States Department of Justice
    Office of Immigration Litigation,
7   District Court Section

8        P.O. Box 868, Ben Franklin Station
         Washington, DC 20044
9        Telephone: (202) 307-4293
         Facsimile: (202) 616-8962
10       Email: erez.r.reuveni @usdoj.gov

11  Attorneys for Respondents

12              **UNITED STATES DISTRICT COURT**

13           **CENTRAL DISTRICT OF CALIFORNIA**

14                   **WESTERN DIVISION**

15

16  ALEJANDRO RODRIGUEZ, *et al.*,          No. cv 07-3239-TJH (RNBx)

17                                          **MEMORANDUM AND POINTS OF**
                   Petitioners,             **AUTHORITIES IN SUPPORT OF**
18                                          **RESPONDENTS'** *EX PARTE*
                                            **APPLICATION FOR EMERGENCY**
19      vs.                                 **STAY OF THE PRELIMINARY**
                                            **INJUNCTION PENDING APPEAL**
20
    TIMOTHY S. ROBBINS, *in his*            Hon. Terry J. Hatter, Jr.
21  *capacity as U.S. Immigration and*
    *Custom Enforcement, Los Angeles*
22  *District Field Office Director, et al.*,

23
                   Respondents.
24

25

26

27

28

# **TABLE OF CONTENTS**

MEMORANDUM AND POINTS OF AUTHORITIES ................................................2

INTRODUCTION ................................................................................................2

RELEVANT BACKGROUND ............................................................................3

LEGAL STANDARD ........................................................................................4

ARGUMENT ....................................................................................................6

I.    The Court's Order Raises Serious Legal Questions Regarding the Merits, is Certain to Cause Respondents and the Public Irreparable Harm, and the Balance of Hardships Tips Sharply in Respondents' Favor ......6

A.  The Court's Order Raises Serious Legal Questions ......6

B. The Court's Order Will Cause Respondents Irreparable Harm, Working a Great Hardship on the Effective Enforcement of Immigration Law in the Central District of California ........8

1.The injunction compels Respondents to contravene duly enacted Statutes without the opportunity for appellate review ........8

2.The injunction requires a precipitous change in policy that threatens the effective enforcement of immigration law and threatens important law enforcement prerogatives ......9

C.   The Public Interest Strongly Favors Respondents ......14

D.   The Balance of Hardships Tips in Respondents' Favor ......18

CONCLUSION ............................................................................................20

ii

# **TABLE OF AUTHORITIES**

## **CASES**

*Abdi v. Napolitano,*
  No. C10-1722RSL, 2011 WL 1584433 (W.D. Wash. Apr. 26, 2011) ............... 7

*Alli v. Decker,*
  644 F. Supp. 2d. 535 (M.D. Pa. 2010), *reversed and remanded on other*
  *grounds*, 650 F.3d 1007 (3d Cir. 2011) .......................................................... 17

*Alliance For The Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ........................................................................ 5

*Barrera-Echavarria v. Rison,*
  44 F.3d 1441 (9th................................................................................................ 16

*Bell v. Wolfish,*
  441 U.S. 520 (1979) ........................................................................................ 17

*Blackie's House of Beef, Inc. v. Castillo,*
  659 F.2d 1211 (D.C. Cir. 1981) ...................................................................... 16

*Bowen v. Kendrick,*
  483 U.S. 1304 (1987) ........................................................................................ 9

*Brown v. Gilmore,*
  533 U.S. 1301 (2001) ...................................................................................... 20

*Casas-Castrillon v. Dep't of Homeland Sec.,*
  535 F.3d 942 (9th Cir. 2008) ............................................................................ 7

*Century 21 Real Estate LLC v. All Prof'l,*
  No. 10-2751, 2011 U.S. Dist. LEXIS 118342 (E.D. Cal. Feb. 11, 2011) .......... 5

*Coalition for Econ. Equity v. Wilson,*
  122 F.3d 718 (9th Cir. 1997) ............................................................................ 9

*Demore v. Kim,*
  538 U.S. 510 (2003) ........................................................................................ 15

*Diop v. Ice/Homeland Security,*
  656 F.3d 221 (3d Cir. 2012) .............................................................................. 7

*Doe v. United States,*
  *SEC*, No. 11-80184, 2012 U.S. Dist. LEXIS 2850 (N.D. Cal. Jan 10, 2011) ... 14

*Edgar v.MITE Corp.,*
  457 U.S. 624 (1982) .................................................................................. 14, 19

*Federal Power Commission v. Transcontinental Gas Pipe Line Corp.,*
  423 U.S. 326 (1976) ........................................................................................ 17

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Fiallo v. Bell*,
   430 U.S. 787 (1977) ........................................................................... 6

*Flores-Powell v. Chadbourn*,
   677 F. Supp. 2d 455 (D. Mass. 2010) ........................................... 7, 17

*Golden Gate Restaurant Ass'n v. City and County of San Francisco*,
   512 F.3d 1112 (9th Cir. 2008) ............................................... 2, *passim*

*Gonzalez-Galindo v. Naploitano*,
   No. 10-cv-2010 WL 4977023 (S.D. Cal. Dec. 1, 2010) ..................... 7

*Gray v. Golden Gate Nat'l Rec. Area, No. C 08-00722*,
   2011 U.S. Dist. LEXIS 149232 (N.D. Cal. Dec. 29, 2011) ........... 6, 14

*Hague v. Wells Fargo Bank, N.A.*,
   No. 11-2366, 2011 U.S. Dist. LEXIS 68841 (N.D. Cal. June 27, 2011) ....... 5, 19

*Hampton v. Mow Sun Wong*,
   426 U.S. 88 (1976) ......................................................................... 15

*Hawkins v. INS*6
   No. C-90-1118, 1991 U.S. Dist. LEXIS 5602 (N.D. Cal. April 15, 1991) ......... 6

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ................................................................... 5, 19

*Hunt v. Check Recovery Systems, Inc.*,
   No. 05-4993, 2008 U.S. Dist. LEXIS 119717 (N.D. Cal. June 17, 2008). 6, 8, 14

*Jones v. Deutsche Bank AG*,
   No. C-04-5357 2007 U.S. Dist. LEXIS 39094 (N.D. Cal. May 17, 2007)......... 8

*Landon v. Plasencia*,
   459 U.S. 21 (1982) ...................................................................... 6, 16

*Ly v. Hansen*,
   351 F.3d 263 (6th Cir. 2003) ....................................................... 7, 17

*Marcus I. v. Dep't of Educ.*,
   No. 10-00381, 2012 U.S. Dist. LEXIS 120521 (D. Haw. Aug. 24, 2012) ....... 20

*NRDC v. Winter*,
   527 F. Supp. 2d 1216 (C.D. Cal. 2008) ......................................... 5

*Nadarajah v. Gonzales*,
   443 F.3d 1069 (9th Cir. 2006) ....................................................... 7

*Natural Resources Defense Council, Inc. v. Southwest Marine, Inc.*,
   242 F.3d 1163 (9th Cir. 2001) .................................................... 4, 20

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
   434 U.S. 1345 ................................................................................ 9

iv

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................ 2, 4, 14, 20

*Peck Ormsby Constr. Co. v. City of Rigby*,
    No. 10-545, 2012 U.S. Dist. LEXIS 36178 (D. Idaho, Mar. 15, 2012) ............... 6

*Pokorny v. Quixtar Inc.*,
    No. 07-00201, 2008 U.S. Dist. LEXIS 91951 (N.D. Cal. 2008 April 17,
    2008) ................................................................................... 7, 8

*Saldate v. Adams*,
    573 F. Supp. 2d 1303 (E.D. Cal. 2008) ................................................ 5

*Shaughnessy v. U.S. ex rel. Mezei*,
    345 U.S. 206 (1953) ................................................................... 16

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ........................................................ 16

*Tijani v. Willis*,
    430 F.3d 1241 (9th Cir. 2005) ......................................................... 7

*Turner Broadcasting System, Inc. v. FCC*,
    507 U.S. 1301 (1993) .................................................................. 20

*United States v. Comstock*,
    No. 08A863 (Apr. 3, 2009) ............................................................ 19

*United States v. Hernandez-Zuniga*,
    215 F.3d 483 (5th Cir. 2000) ......................................................... 16

*United States v. Technical Knockout Graphics*,
    833 F.2d 797 (9th Cir. 1987) ......................................................... 14

*Vegas Diamond Props., LLC v. La Jolla Bank, FSB, NO. 10cv120*,
    2011 U.S. Dist. LEXIS 8316 (S.D. Cal. Jan. 27, 2012) ................................. 5

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*,
    435 U.S. 519 (1978) .................................................................. 17

*Virginian Ry. Co. v. Sys. Fed'n No. 40*,
    300 U.S. 515 (1937) ................................................................... 9

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) .................................................................. 16

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2009) .................................................................... 14

**STATUTES**

8 U.S.C. § 1182(d)(5)(a) ................................................................ 15

v

8 U.S.C. § 1225(b) .................................................................. 3, 6, 15

8 U.S.C. § 1225(b)(2)(A) ................................................................ 15

8 U.S.C. § 1226(c) ........................................................... 3, 6, 12, 15

**Antiterrorism and Effective Death Penalty
Act of 1996 (AEDPA):**

Pub. L. No. 104-132, 110 Stat. 1214 ................................................ 15

**Federal Rules of Civil Procedure:**

Fed. R. Civ. P. 62(c) ...................................................................... 4

**House of Representatives Reports:**

H.R. Rep. No. 469, 104th Cong., 2d Sess., Pt. 1, at 123 (1996)............................ 15

**<u>REGULATIONS</u>**

8 C.F.R. § 1003.19(h)(2)(i)(B) ........................................................ 12

8 C.F.R. § 1003.19(h)(2)(i)(D) ........................................................ 13

vi

# INTRODUCTION

For the reasons set forth below, Respondents hereby apply *ex parte* for an order staying the injunction Order entered by the Court on September 13, 2012 pending appeal.[1]  Specifically, this application seeks a stay of that portion of the injunction requiring Respondents to "identify all members of the [8 U.S.C. §] 1225(b) and [8 U.S.C. §] 1226(c) Subclasses and provide each of them with a bond hearing" where the Government must demonstrate by "clear and convincing evidence that continued detention is justified" within 30 days and to "develop a system to timely identify all future Subclass members and ensure that they receive such bond hearings." *See* ECF #255 at 2.

As explained below, the Order would effectively require Respondents to schedule and adjudicate bond hearings for approximately 101 – but possibly more – detainees by October 13, 2012, a task that would encompass hundreds of hours and require Respondents to move resources from other pressing tasks vital to national security and the public welfare, and require rescheduling of immigration proceedings already scheduled, among other things.  *See* Declaration of Thomas Y.K. Fong (Ex. 1) at ¶¶ 1-12; Declaration of Eric Saldana (Ex. 2) at ¶¶ 1-5.  This result would irreparably harm Respondents and simultaneously severely compromise the public interest.  *See Golden Gate Restaurant Ass'n v. City and County of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008).

Moreover, the Order arises from an unprecedented legal ruling that raises "serious legal questions" that would benefit from the guidance of the Ninth Circuit. The ruling conflicts with every other court opinion addressing whether there is a blanket rule requiring that all aliens detained pursuant to section 1225(b) or section 1226(c) receive a bond hearing no matter their personal circumstances after six

---

[1] Respondents have recommended appeal of the Order under 28 U.S.C. § 1292(a)(1). Approval for the appeal must be authorized by the Office of the Solicitor General. Respondents' counsel are in the process of seeking authorization for appeal on an expedited basis.

months of detention, and therefore the serious legal questions raised in this appeal warrant a stay. *See id.* Accordingly, this Court should "suspend[] judicial alteration of the status quo" on the important issues at stake in this litigation by staying its judgment pending appeal. *Nken v. Holder*, 556 U.S. 418, 429 (2009).

Respondents therefore respectfully request the Court temporarily stay its injunction pending resolution of this motion or an emergency appeal. In the alternative, Respondents request that the Court grant an immediate stay of its injunction while the Court considers defendants' application for a stay pending appeal. At a minimum, if this Court declines to enter a stay pending appeal or further proceedings in this Court, Respondents request that the Court enter an immediate administrative stay to afford time for the filing of a request for a stay pending appeal in the Court of Appeals and an opportunity for that Court to consider that request in a meaningfully and orderly manner.

Given the seriousness of the issues, Respondents respectfully request the Court rule on this *ex parte* application no later than Wednesday, September 19, 2012; should the Court decline to do so, Respondents intend to seek a stay pending appeal from the U.S. Court of Appeals for the Ninth Circuit and will request an immediate administrative stay from that court to allow the orderly litigation of the stay request before that court.

### RELEVANT BACKGROUND

On June 25, 2012, Petitioners moved for a preliminary injunction on behalf of two subclasses: the "Section 1225(b)" subclass and the "Section 1226(c)" subclass, consisting of aliens who have been detained pursuant to 8 U.S.C. §§ 1225(b) or 1226(c) for more than six months without a bond hearing. Petitioners sought an order on behalf of all such class members requiring Respondents to, "[w]ithin thirty days of the date of this Order, . . . identify all members of the Section 1225(b) and Section 1226(c) Subclasses and provide each of them with a bond hearing before an Immigration Judge with power to grant their release, unless the government shows by

clear and convincing evidence that their detention is justified based on their danger to the community or risk of flight." ECF # 231-1, 232-3. Petitioners also sought an order that "[s]uch hearings shall be recorded, such that transcriptions will be available in the event of any appeal." *Id.* Finally, Petitioners sought an order requiring Respondents to, "within thirty days of the date of this Order, . . . develop a system to timely identify all future Subclass members and ensure that they receive such bond hearings." *Id.*

Respondents opposed this motion on July 18, 2012, and Petitioners replied on August 3, 2012. *See* ECF ## 250, 252. This Court held a hearing on the motion on September 10, 2012. *Id.* at # 250. On September 13, 2012, the Court issued a one-page order entering a preliminary injunction essentially tracking the Petitioners' proposed order. The Court found that "Petitioners have demonstrated a substantial likelihood of success on the merits, that they will suffer irreparable injury in the absence of a preliminary injunction, and that the balance of hardships tip sharply in their favor." ECF # 255 at 1. The Court then issued an order as follows:

> 1. Within thirty days of the date of this order, Respondents shall identify all members of the Section 1225(b) and Section 1226(c) Subclasses and provide each of them with a bond hearing before an Immigration Judge with power to grant their release. The Immigration Judge shall release each Subclass member on reasonable conditions of supervision, including electronic monitoring if necessary, unless the government shows by clear and convincing evidence that continued detention is justified based on his or her danger to the community or risk of flight.
>
> 2. The bond hearings shall be recorded, so that transcriptions will be available in the event of any appeal.
>
> 3. Within thirty days of the date of this Order, Respondents shall develop a system to timely identify all future Subclass members and ensure that they receive such bond hearings.

ECF # 255 at 2.

Respondents now respectfully move this Court to stay its Order pending appeal.

**LEGAL STANDARD**

A court retains discretion to stay an injunction it issues pursuant to its broad equitable powers. *See, e.g.*, *Nken*, 556 U.S. at 421. Alternatively, a court may stay an injunction pending appeal pursuant to Federal Rule of Civil Procedure 62(c). *See* Fed. R. Civ. P. 62(c); *Natural Resources Defense Council, Inc. v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).

District courts consider four factors in ruling on stay motions pending appeal or reconsideration of an injunction order: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Saldate v. Adams*, 573 F. Supp. 2d 1303, 1315 (E.D. Cal. 2008) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Each factor need not be given equal weight; rather, a flexible balancing approach should be used. *See Golden Gate Restaurant Ass'n v. City and County of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008). Indeed, under Ninth Circuit precedent, courts employ a "sliding scale," such that "a stronger showing of one element may offset a weaker showing of another." *See Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *accord Hague v. Wells Fargo Bank, N.A.*, No. 11-2366, 2011 U.S. Dist. LEXIS 68841, *4-5 (N.D. Cal. June 27, 2011) (explaining that the *Cottrell* sliding scale standard for preliminary injunctions applies also in the stay pending appeal context).

Accordingly, the party moving for a stay can show *either* a "(1) a strong likelihood of success on the merits and the possibility of irreparable injury; (2) or that serious legal questions regarding the merits and the balance of hardships tips sharply in the party's favor."[2] *Hague*, 2011 U.S. Dist. LEXIS 68841 at *4-5 (citing *Cottrell*,

---

[2] As to the merits alone, "consideration of this factor cannot be rigidly applied," as if it was, the "court would have to conclude that it was probably incorrect in its

*(Footnote continued)*

632 F.3d at 1131 and *Golden Gate*, 512 F.3d at 1116); *see NRDC v. Winter*, 527 F. Supp. 2d 1216, 1238 (C.D. Cal. 2008). These alternative tests "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id*. at *4-5; *accord Vegas Diamond Props., LLC v. La Jolla Bank, FSB*, NO. 10-cv-120, 2011 U.S. Dist. LEXIS 8316, *11-12 (S.D. Cal. Jan. 27, 2012) (same). "Finally, a court must 'consider where the public interest lies separately from and in addition to whether the applicant for stay will be irreparably injured absent a stay.'" *Id.* (quoting *Golden Gate*, 512 F.3d at 1115-16).

## ARGUMENT

**I.    The Court's Order Raises Serious Legal Questions Regarding the Merits, is Certain to Cause Respondents and the Public Irreparable Harm, and the Balance of Hardships Tips Sharply in Respondents' Favor**

### A.    The Court's Order Raises Serious Legal Questions

Whether the Constitution requires that all aliens detained pursuant to sections 1225(b) and 1226(c) are entitled to a bond hearing after six months of detention, regardless of the specific circumstances of their individual cases, is a serious legal question affecting the Executive's "sovereign prerogative" of controlling the nation's border and enforcing immigration law across the country. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *accord Fiallo v. Bell*, 430 U.S. 787, 792 (1977).

That the Court's Order raises serious legal questions speaks for itself – to date, this Court is the first and only court to have held that all aliens detained pursuant to 8 U.S.C. §§ 1225(b) and 1226(c), regardless of their specific circumstances, are entitled to a bond hearing at six months. That unprecedented ruling, a matter of first impression in this Circuit or anywhere else, is by definition a "serious legal question." *See, e.g.*, *Peck Ormsby Constr. Co. v. City of Rigby*, No. 10-545, 2012 U.S. Dist. LEXIS 36178, *10 (D. Idaho, Mar. 15, 2012) (observing that movant did not show

---

determination on the merits." *See Century 21 Real Estate LLC v. All Prof'l*, No. 10-2751, 2011 U.S. Dist. LEXIS 118342, * 2-3 (E.D. Cal. Feb. 11, 2011).

the injunction presented a "serious legal question or matter of first impression"); *Gray v. Golden Gate Nat'l Rec. Area*, No. C 08-00722 2011 U.S. Dist. LEXIS 149232, *5 (N.D. Cal. Dec. 29, 2011) (finding matter of "first impression" to be a "serious legal question"); *Hunt v. Check Recovery Systems, Inc.*, No. 05-4993, 2008 U.S. Dist. LEXIS 119717, *7  (N.D. Cal. June 17, 2008) (same); *Hawkins v. INS*, No. C-90-1118, 1991 U.S. Dist. LEXIS 5602, *11 (N.D. Cal. April 15, 1991) (staying deportation because case raised matter of first impression).

Even if that were not so, the fact that this Court's order conflicts with every other court opinion addressing whether there is a blanket constitutional rule requiring that all aliens detained pursuant to section 1225(b) or 1226(c) are entitled to a bond hearing, no matter their personal circumstances, after six months of detention, and the fact that it conflicts more generally with the case-by-case nature of due process challenges, also satisfies the "serious legal questions" prong.  *See, e.g.*, *Pokorny v. Quixtar Inc.*, No. 07-00201, 2008 U.S. Dist. LEXIS 91951, *5 (N.D. Cal. 2008 April 17, 2008) ("serious legal questions" satisfied where "Court's ruling" conflicts with "the rulings of a number of other state and federal courts").

Numerous other courts that have addressed mandatory detention during removal proceedings prior to a final order of removal – including both the Third and Sixth Circuits – have rejected the notion that the Constitution demands a blanket six-month rule like that sought by Petitioners and required by this Court's injunction.  *See, e.g.*, *Ly v. Hansen*, 351 F.3d 263, 271-73 (6th Cir. 2003) (rejecting a six-month rule in a pre-order detention challenge to section 1226(c); *Diop v. ICE/Homeland Security*, 656 F.3d 221, 234 (3d Cir. 2012) (same); *Flores-Powell v. Chadbourn*, 677 F. Supp. 2d 455 (D. Mass. 2010) (rejecting blanket rule); *Abdi v. Napolitano*, No. C10–1722RSL, 2011 WL 1584433, *3 (W.D. Wash. Apr. 26, 2011) (same, section 1225(b)); *Gonzalez-Galindo v. Napolitano*, No. 10-cv-1875, 2010 WL 4977023 at *3 (S.D. Cal. Dec. 1, 2010) (similar, 1226(c)).  Critically, the Ninth Circuit has never explicitly held that aliens subject to detention under sections 1225(b) or 1226(c) are entitled to bond

hearings after six months as a matter of due process in all cases.  *See Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) (holding only that detention under section 1226(c) for seven years is "prolonged" under any measure, but not establishing any bright-line rule); *Tijani v. Willis*, 430 F.3d 1241(9th Cir. 2005) (same, for three years); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006) (suggesting, in a case where the alien had been detained for  "almost five years," that section 1225(b) "cannot be read as authorizing indefinite detention," but not explicitly holding that *all* aliens subject to section 1225(b) are entitled to a bond hearing within six months in all cases).

The conflict between the broad agreement by all these courts that reject a blanket rule on the one-hand, and this Court's contrary opinion on the other is the quintessential "serious legal issue" warranting a stay pending appeal.  *See Pokorny*, 2008 U.S. Dist. LEXIS 91951 at *6 (court split on issue was serious legal issue); *Jones v. Deutsche Bank AG*, No. C-04-5357 JW, 2007 U.S. Dist. LEXIS 39094, at *6-7 (N.D. Cal. May 17, 2007) (unsettled law where "Ninth Circuit has not yet ruled on [the] issue" warrants stay).  Accordingly, because the Court's Order conflicts with numerous cases and articulates a novel legal rule as a matter of first impression, this factor tips strongly in Respondents' favor.[3]

**B.    The Court's Order Will Cause Respondents Irreparable Harm, Working a Great Hardship on the Effective Enforcement of Immigration Law in the Central District of California**

---

[3] Even under the alternative standard sometimes employed in the Ninth Circuit in the context of injunctions, Respondents have satisfied this prong.  Under that standard, "whether the stay applicant has made a strong showing that he is likely to succeed on the merits," *see Golden Gate*, 512 F.3d at 1115, that a case raises "serious legal questions" satisfies that standard.  *See, e.g.*, *Hunt.*, 2008 U.S. Dist. LEXIS 119717 at *7 ("each of the class action issues also presents a serious legal question" and "Defendant has therefore established a strong likelihood of success on the merits on each of these appeals"); *Pokorny*, 2008 U.S. Dist. LEXIS 91951 at *4-5 (finding "serious legal questions" to satisfy "strong showing" standard).

### 1.    The injunction compels Respondents to contravene duly enacted statutes without the opportunity for appellate review

Absent a stay pending appeal in order to address the serious legal questions this case raises, Respondents and the public interest will be irreparably harmed.  First, the immediate implementation of the Court's injunction would compel the Department of Homeland Security (DHS) to cease enforcing a duly enacted statute.  Given the presumptive constitutional validity of an act of Congress, the interim enjoining of implementation of that statute as written irreparably injures the Government and itself constitutes sufficient grounds to enter a stay.  *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a Court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people … is enjoined.").  Given the nature of that irreparable injury, it is the practice of the Supreme Court to stay injunctive relief pending appeal in cases in which a single district court has effectively declared an act of Congress unconstitutional.  *Bowen v. Kendrick*, 483 U.S. 1304, 1304, 108 (1987) (Rehnquist, J., in chambers) ("It has been the unvarying practice of this Court . . . [to] decide on the merits all cases in which a single district judge declares an Act of Congress unconstitutional.  In virtually all of these cases the Court has [accordingly] granted a stay if requested to do so by the Government.").   A stay of the injunction would allow the Government to carry out the statutory policy of Congress, which "is in itself a declaration of the public interest which should be persuasive."  *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937).

### 2.    The injunction requires a precipitous change in policy that threatens the effective enforcement of immigration law and threatens important law enforcement prerogatives

A stay is particularly appropriate here, where a precipitous change in policy and law enforcement practice could harm compelling national interests in immigration

enforcement, national security, law enforcement, and public safety generally. As explained by Assistant Chief Immigration Judge Thomas Y.K. Fong and Eric Saldana, Los Angeles Assistant Field Office Director for ICE in the accompanying declarations, requiring the Government to identify every single section 1225(b) and 1226(c) class-member who has been detained for more than six months and provide them with a bond hearing within 30 days of the courts' order would pose a significant burden, requiring security personnel and the immigration courts to devote their attention singularly to this task at the expense of their myriad other law enforcement duties and pending court proceedings. *See* Ex. 1; Ex. 2.

In particular, ICE will have to re-prioritize its enforcement efforts, currently focused on the apprehension, detention, and removal of aliens who pose a national security or public safety risk. Ex. 2 at ¶ 1. As of September 14, 2012, ICE has estimated that approximately 101 individuals are detained in ICE custody pursuant to sections 1225(b) or 1226(c) for more than six months. *Id.* ¶ 2. However, that number could be larger, as ICE's databases do not track individuals by the statutory authority for their detention. *Id.* In order to determine the exact number, ICE will have to review each alien's administrative file on a file-by-file basis. *Id.* This would require at least thirty minutes per file and in aggregate would divert substantial resources from ICE's other pressing enforcement efforts. *Id.*

ICE would also have to reassign its limited personnel for the purposes of transporting and securing at least 101 detainees. *Id.* ¶¶ 3-4. That is because the Los Angeles Field Office of ICE's Office of Enforcement and Removal Operations (ERO) also responsible for ensuring that detained aliens attend scheduled hearings in immigration court. *Id.* at ¶ 3. Doing so requires the management of detainees' movements between various detention facilities. *Id.* ERO's Los Angeles Field Office currently has only two officers and 34 contract staff assigned to these tasks. *Id.* The addition of at least 101 new bond hearings, in addition to those already scheduled within the next 30 days would significantly disrupt these operations. *Id.* Indeed,

given the limited staff, the required hearings would require diversion of other mission-critical staff to detention management, transport, and security operations, disrupting other important ICE functions like investigations, apprehensions, and removals. *Id.* at ¶ 4. In addition, given the limited personnel available to implement the Court's order, adding 101 bond hearings over the next 30 days could result in significant overtime costs to the agency. *Id.*

Finally, the burden of having to prepare for and adjudicate at least 101 bond hearings by October 13, 2012 notwithstanding other obligations and enforcement objectives is immense. For each bond hearing, ICE officers will need to conduct extensive background checks, and may need to locate witnesses, and secure current and supplemental documentary evidence. *Id.* ¶ 5. In practice, such preparations require individual file review and written recommendations by officers that take at least two hours per case. *Id.* But in certain circumstances cases will require additional supporting or legal documentation. *Id.* In those situations, significant delays of weeks or even longer can occur. *Id.* In effect, then, the Court's order requires ICE to litigate bond hearings without relevant evidence of flight risk or danger to the community. *Id.* Moreover, preparing for all 101 bond hearings within 30 days would require additional diversion of staff and resources, disrupting other mission-critical operations, including already planned law enforcement operations that would have to be postponed in order to comply with the Court's order. *Id.*

As for the immigration courts, the order essentially requires the courts to immediately halt their adjudication and hearing activities in detained cases and conduct bond hearings for each of the approximately 101 class-members in the two sub-classes. At this time, there are seven immigration judges in the Los Angeles Immigration Court – five of which conduct hearings by video and two of which conduct hearings in person – and three immigration judges in the Mira Loma Detention Facility at the Lancaster Immigration Court equipped to handle immigration hearings involving detainees. *See* Ex. 1 at ¶¶ 3-6. Each of the Los Angeles judges are

already scheduled to conduct approximately 27 bond hearings, 86 master calendar hearings, and 27 merits hearings between now and October 13.[4]  *Id.* at ¶ 3.  Similarly, each of the Mira Loma judges are already scheduled to conduct approximately 119 bond hearings, 130 master calendar hearings, and 22 merits hearings between now and October 13.  *Id.* at ¶ 6.  Even so, the bond hearing docket for the Los Angeles Immigration Court is currently set and completely full, depending on the individual dockets of each judge, until September 20, 2012 at the earliest and October 10, 2012 at the latest.  *Id.* at ¶¶ 3, 5.  The Mira Loma bond hearing docket is similarly currently set and completely full, depending on the individual dockets of each judge, until September 18, 2012 at the earliest and September 19, 2012 at the latest.  *Id.* at ¶¶ 6, 7.

Complying with the Order will have serious consequences on the Los Angeles and Lancaster courts, both detained and not detained.  At least 1,790 detained alien proceedings, including bond, master calendar, and merits hearings, will have to be rescheduled, which in turn will effect the two courts' dockets going forward, including delaying adjudications of all other detainees currently or yet to be scheduled.  *Id.* at ¶ 8.  Moreover, rescheduling cases requires re-serving notices of hearing to parties and their attorneys, with the possibility of conflicts with the availability of attorneys and witnesses, which will likely require additional rescheduling.  *Id.*  Indeed, by law, Respondents must provide aliens with a minimum of 72-hours advance notice before a bond hearing can be held.  *Id.*  Further, such rescheduling will require even more time, as detained aliens – class-members and non-class-members alike – are not centrally housed in a single location; instead, the detained aliens are housed in several different locations throughout the metropolitan Los Angeles area, including Lancaster, Adelanto and at least three Orange County facilities.  *Id.* at ¶ 4

---

[4] Depending on whether an alien is detained in Orange County, a a minimum of 72 hours advance notice to DHS is required in order to arrange for the transfer and transport logistics of a specific alien.  Ex. 1 at ¶ 5.

The Court's order imposes a requirement on immigration judges that they conduct bond hearings in cases where re-determining custody is outside the scope of the immigration courts' jurisdiction. *Id.* ¶ 10. In particular, immigration judges may not redetermine either an arriving alien's or a criminal alien's custody status. *Id.*; *see* 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody . . . with respect to the following classes of aliens…(B) Arriving aliens in removal proceedings …"); 8 C.F.R. § 1003.19(h)(2)(i)(D) ("[A]n immigration judge may not redetermine conditions of custody . . . with respect to the following classes of aliens…(D) Aliens in removal proceedings subject to section 236(c) [8 U.S.C. § 1226(c)] …"). The Court's order in effect then strikes down both of these regulations as unlawful by ordering immigration judges to undertake bond hearings in circumstances barred by statute and regulation.

Because the Court's Order sets forth requirements outside immigration judges' jurisdiction by requiring them to conduct bond hearings for arriving aliens detained under section 1225(b) and criminal aliens detained under section 1226(c), the Court's Order will require efforts by the Executive Office for Immigration Review (EOIR) to instruct or guide immigration judges to conduct bond hearings consistent with the Court's Order and regulations issued pursuant to duly enacted statutes. Ex. 1 at ¶ 12. That process will likely take some time, to ensure that immigration judges understand the requirements of the Court's Order. *Id.* The time to provide such instruction or guidance will shorten the time immigration courts have to complete the bond hearings as ordered. *Id.*

Finally, the immigration courts are facing an imminent disruption to their operations over the next month. *Id.* at ¶ 9. Specifically, on September 13, 2012, the DHS informed EOIR that it is terminating its contract with the Los Angeles Sheriff's Department for all immigration detainees currently detained at the Mira Loma Detention Facility with all immigration detainees to be removed from the facility on or before November 16, 2012. *Id.* Termination of the detention contract for the Mira

13

Loma Detention Facility directly impacts EOIR's Lancaster Immigration Court, which is co-located within the grounds of the detention facility. *Id.* At this time, the Lancaster Immigration Court conducts all detained hearings for immigration detainees housed at the Mira Loma Detention Facility. *Id.* If this immigration detention facility closes, the Lancaster Immigration Court will close. *Id.* The uncertainty as to whether the immigration court will be relocated or personnel working there reassigned further complicates compliance with the Court's order.[5] *Id.*

In short, the Order requires Respondents to expend significant time, money, resources, and personnel to implement a court-mandated law enforcement and immigration hearing mechanism that not only will impact other law enforcement and immigration hearing needs, but may very well be reversed on appeal. Courts routinely find such burdens to satisfy the irreparable harm prong of the stay analysis, and the Court should do so here. *See, e.g.*, *Gray*, 2011 U.S. Dist. LEXIS 149232 at *6-8 (finding irreparable harm where "substantial time and resources" are expended in response to an order but where that order may be reversed on appeal) *Pokorny*, 2008 U.S. Dist. LEXIS 91951 at *6 (finding risk that "Defendants could spend substantial time and resources" complying with an order "only to have the appellate court reverse the Order" to satisfy the irreparable harm prong); *Hunt*, 2008 U.S. Dist. LEXIS 119717 at *9 (finding "lost time and money" sufficient to satisfy standard, because movant need only show "irreparable harm," not "substantial irreparable harm"); *see also United States v. Technical Knockout Graphics*, 833 F.2d 797, 801 (9th Cir. 1987)

---

[5] The Order's brevity also creates confusion as to how bond hearings must be handled in the event an alien delays his bond hearing. For example, an alien may seek to secure an attorney or his attorney might require time to prepare for the bond hearing beyond the October 13, 2012 cutoff date. An alien may seek continuances for other reasons, beyond the control of Respondents. Indeed, it is quite possible that for some of the approximate 101 class-members, it will in fact be physically impossible to comply with the Court's order without also forcing aliens to have their bond hearings expedited, whether or not they have counsel or wish to proceed.

1  (stating that the court's "order may seriously affect the substantive rights of the

2  government and cause it irreparable harm"); *cf. Edgar v.MITE Corp.,* 457 U.S. 624,

3  630 (1982) ("reversal of the judgment [could] . . . expose MITE to . . . liability" for

4  acting in violation of state law pursuant to a preliminary injunction).

5  ### C.    The Public Interest Strongly Favors Respondents

6      The Government has weighty interests in ensuring the efficient execution of the

7  nation's immigration laws and the management of its immigration courts.  Because

8  the Government is a party to this case, its interest that must be presumed to be the

9  "public's interest" in this motion.  This is because "[t]he Government's interest is in

10  large part presumed to be the public's interest."  *Doe v. United States SEC*, No. 11-

11  80184, 2012 U.S. Dist. LEXIS 2850 *15 (N.D. Cal. Jan 10, 2011).  Thus, as the

12  Supreme Court has made clear, "harm to the opposing party" and "the public interest"

13  "merge when the Government is the opposing party," because harm to the government

14  is harm to the public interest.  *See Nken*, 556 U.S. at 420.  For that reason, the Court

15  "should pay particular regard for the public consequences" in considering whether to

16  stay its use of "the extraordinary remedy of injunction."  *Winter v. NRDC, Inc.*, 555

17  U.S. 7, 24 (2009).

18      Here there can be no dispute that the public's interest is substantial, above and

19  beyond any interest Petitioners have in the short-term.  The immediate result of the

20  court's injunction is to require the Government to expend its limited resources to the

21  singular task of identifying each class-member who is currently in custody and has

22  been in custody for more than six months and provide them immediate bond hearings

23  by October 13, 2012.  As noted, the resources and personnel required to achieve this

24  undertaking are substantial.  *See supra*; Ex. 1 at ¶¶ 1-12; Ex. 2 at ¶¶ 1-5.

25      In addition, the court's order essentially legislates in an area that is beyond the

26  scope of judicial inquiry.  "[O]ver no conceivable subject is the legislative power of

27  Congress more complete than it is over the admission of aliens."  *See Fiallo*, 430 U.S.

28  at 792 (citations omitted).  This is because "the power to expel or exclude aliens as a

1   fundamental sovereign attribute exercised by the Government's political departments

2   largely immune from judicial control." *Id.*; *see Hampton v. Mow Sun Wong*, 426 U.S.

3   88, 101 n. 21 (1976) ("the power over aliens is of a political character and therefore

4   subject only to narrow judicial review").  Therefore, it is Congress, not the courts, that

5   should articulate the appropriate regime governing pre-removal detention.  Congress

6   has done just that with 8 U.S.C. §§ 1225(b) and 1226(c) and the Supreme Court has

7   affirmed Congress' mandatory detention requirements both in the pre-removal

8   context, *see Demore v. Kim*, 538 U.S. 510, 533 (2003), and in the context of arriving

9   aliens.[6]  *See Landon*, 459 U.S. at 32; *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206,

10  212 (1953).  Enforcing Congress's intent in the area of immigration is of course in the

11  public interest.  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 327 (1982)

12  (observing that the "public interest" is "reflected in an Act of Congress"); *Golden*

13  *Gate*, 512 F.3d at 1127 ("The public interest may be declared in the form of a

14

15  [6] As articulated in greater detail in Respondents' opposition to the preliminary injunction motion, ECF #250, since the 1980s, Congress has on three occasions
16  amended the immigration laws to grant law enforcement *greater* powers to detain criminal aliens, culminating with Congress's adoption of section 1226(c), which
17  provided that that the Department of Homeland Security *must* take criminal aliens covered by section 1226(c) into custody.  *See ECF # 250 at 8-10; see also*
18  Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-
19  132, 110 Stat. 1214; H.R. Rep. No. 469, 104th Cong., 2d Sess., Pt. 1, at 123 (1996). Similarly, Congress has in recent years has made clear that law enforcement *must* take
20  all arriving aliens into custody if they are not clearly entitled to enter the United States.  *See ECF #250 at 23-24; 8 U.S.C. § 1225(b)(2)(A)*.  The sole exception is
21  provided by 8 U.S.C. § 1182(d)(5)(a) which grants DHS the discretion to parole an
22  arriving into the United States.   That fact "reinforces the conclusion that Congress intended that detention [of arriving aliens to] be the 'default' choice, and parole a
23  discretionary exception." *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1446 (9th
24  Cir. 1995) (en banc).  The history of both statutes – a consistent increase of law enforcement authority over criminal and arriving aliens, makes clear that the
25  enforcement of both Statutes as written are serious public interests.  *See Blackie's*
26  *House of Beef, Inc. v. Castillo,* 659 F.2d 1211, 1220-21 (D.C. Cir. 1981) (fact that
27  Congress passes laws increasing immigration enforcement powers "attests to the
28  seriousness of the public interest in enforcement of the immigration laws").

16

1    statute."); *cf. United States v. Hernandez-Zuniga*, 215 F.3d 483, 488 (5th Cir. 2000)

2    (observing that "helping law enforcement agencies enforce immigration laws" serves

3    the "public interest"). Indeed, as the Ninth Circuit has held, the fact that Congress has

4    already spoken on the issue in question means that this Court is constrained to find

5    that the legislation in question is anything but in the public interest. *See Golden Gate*,

6    512 F.3d at 1126-1127 ("[O]ur consideration of the public interest is constrained in

7    this case, for the responsible public officials in San Francisco have already considered

8    that interest. Their conclusion is manifested in the Ordinance that is the subject of this

9    appeal."); *accord Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009)

10   ("[T]he district court should give due weight to the serious consideration of the public

11   interest in this case that has already been undertaken by the responsible state officials

12   in Washington, who unanimously passed the rules that are the subject of this

13   appeal.").

14          Moreover, requiring the Government to deploy its resources in this rigid,

15   inflexible manner would effectively force the Government to ignore other pressing

16   needs and issues should they arise within the next 30 days. Government agencies,

17   particularly law enforcement agencies charged with safeguarding the borders and

18   enforcing the immigration laws must retain discretion to "fashion [their] own rules of

19   procedure and to pursue methods of inquiry capable of permitting [them] to discharge

20   [their] multitudinous duties." *Vermont Yankee Nuclear Power Corp. v. Natural*

21   *Resources Defense Council*, 435 U.S. 519, 543 (1978); *cf. Federal Power Commission*

22   *v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976) (reversing circuit

23   court's order requiring an investigation to be conducted within 30 days, on the

24   grounds that "[a]t least in the absence of substantial justification for doing otherwise,

25   a reviewing court may not . . . proceed by dictating to the agency the methods,

26   procedures, and time dimension of the needed inquiry").

27          This is particularly so where requiring the immediate expenditure of time and

28   resources to implement the court's order within 30 days may cause Government

resources to be pulled from other vital national security and law enforcement efforts. In those circumstances security and law enforcement personnel "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed" at any given moment. *See Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). "Such considerations are peculiarly within the province and professional expertise of [security] officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.*

Indeed, this is precisely the reason why other Courts have rejected a bright-line rule in the pre-removal period: "hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant." *Hansen*, 351 F.3d at 271; *accord Flores-Powell*, 677 F. Supp. 2d at 471 (same); *Alli v. Decker*, 644 F. Supp. 2d. 535, 542-43 (M.D. Pa. 2010), *reversed and remanded on other grounds*, 650 F.3d 1007 (3d Cir. 2011) ("the varying circumstances of individual removal proceedings make a bright-line rule inappropriate"). This reasoning is even more compelling in the immigration enforcement context where enforcement prerogatives can change on a moment's notice based on unpredictable circumstances.

Finally, the Court's Order rewards class-members at the expense of non-class-members, who have no less of an interest in adjudication of their removal proceedings or their bond hearings. Placing the class-members "first in line" may serve their personal interests, but it does nothing for the other aliens pushed farther back in line as a result of the Order. A temporary stay protects non-parties' interests in their already scheduled hearings and proceedings, which are just as important to the efficient administration of the immigration courts as the class-members' interests.

In short, requiring the Government to devote its law enforcement personnel in the Central District to review over 101 records in preparation to adjudicate at least 101

1    bond hearings within 30 days and to force the district's busy immigration courts to

2    jettison already scheduled hearings and proceedings as to facilitate those bond

3    hearings prior to October 13, 2012 – regardless of what other pressing scheduling

4    needs arise or what effect that order will have on the many other aliens who may be

5    awaiting an asylum or removal hearing and regardless of other aliens, including

6    criminal aliens, that must appear in court on an expedited schedule – impedes the

7    efficient and safe enforcement of this nation's immigration laws and therefore is

8    contrary to the public interest.  Given the public's weighty interest in the efficient and

9    safe enforcement of our immigration laws, this factor strongly favors Respondents.

10            **D.    The Balance of Hardships Tips in Respondents' Favor**

11            In light of the foregoing real world ramifications of the court's order, the

12   balance of hardships tips sharply in Respondents' favor.  This is not to say that

13   prolonged detention does not implicate the liberty interests of those so detained.  *See*

14   *Casas*, 535 F.3d at 950.  Those interests are important.  But where, as here, the

15   Court's order has demonstrable and real effects on the enforcement of the nation's

16   immigration laws and the operation of its immigration courts, and where all other

17   relevant factors, including the existence of a salient and unprecedented serious legal

18   issue, irreparable harm to the Government, and harm to the public, the balance of

19   interests tips in the Government's favor.  Indeed, enjoining the operation of a statute

20   as written by Congress before any appeal is concluded would create tremendous

21   uncertainty about the operation of immigration law and could potentially expose law

22   enforcement official to liability or sanctions that they might not otherwise be exposed

23   to.  *Cf. Edgar.*, 457 U.S. at 630 ("reversal of the judgment [could] . . . expose MITE to

24   . . . liability" for acting in violation of state law pursuant to a preliminary injunction).

25            Conversely, a short temporary stay permitting further briefing on this motion by

26   the parties or an emergency appeal for further clarity on an issue of such scope and

27   constitutional importance for both the Government and Petitioners is in the public

28   interest.  *See, e.g.*, *United States v. Comstock*, No. 08A863 (Apr. 3, 2009) (order of

Roberts, C.J.) ("The presumption of constitutionality which attaches to every Act of Congress is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of applicants in balancing hardships.").

Accordingly, the Court should enter a stay because the Government (1) has made a strong showing that he is likely to succeed on the merits; (2) will be irreparably injured absent a stay; (3) a stay will not substantially injure other parties; and (4) the public interest favors a stay. *See Hilton*, 481 U.S. at 776 . But even if that is not so, the Court should nevertheless enter a stay because the Government has satisfied the Ninth Circuit's sliding scale requirements as well. That is, Respondents have demonstrated *either* a "a strong likelihood of success on the merits and the possibility of irreparable injury" or" that serious legal questions regarding the merits and the balance of hardships tips sharply in the party's favor." *See Hague*, 2011 U.S. Dist. LEIS 68841 at *4-5. Therefore, the Court should enter a temporary stay pending resolution of this motion or an emergency appeal to the Ninth Circuit.

## II.    A Stay Is Required to Avoid an Alteration of the Status Quo

Even assuming none of the foregoing warrants issuing a temporary stay, the Court should nevertheless issue a temporary stay in order to maintain the "status quo" prior to issuance of the injunction pending appeal of that injunction.[7] *See Southwest Marine*, 242 F.3d at 1166. Such stays are appropriate in order to safeguard the "security of the rights of the adverse party," *id.*, particularly where the injunction alters that "status quo" in a way that "itself is causing one of the parties irreparable injury." *Golden Gate*, 512 F.3d at 1117 (citation omitted). In other words, a stay would "simply suspend[] judicial alteration of the status quo," while this case and the

---

[7] Courts in this Circuit analyze the propriety of a stay based on the four-factor test or the sliding scale outline above separately from the question of preserving the status quo. *See, e.g.*, *Marcus I. v. Dep't of Educ.*, No. 10-00381, 2012 U.S. Dist. LEXIS 120521, *9-11 (D. Haw. Aug. 24, 2012).

20

constitutionality of an Act of Congress is resolved,[8] *Nken*, 556 U.S. at 429, preventing irreparable harm to the public interest and the effective enforcement of duly enacted laws of Congress concerning immigration enforcement.

### CONCLUSION

For the foregoing reasons, the Court should enter a temporary stay enjoining implementation of its injunction. In the alternative, Respondents request that the Court grant an immediate stay of its injunction while the Court considers Respondents' application for a stay pending appeal.  At a minimum, if this Court declines to enter a stay pending appeal or further proceedings in this Court, Respondents request that the Court enter an immediate administrative stay to afford time for the filing of a request for a stay pending appeal in the Court of Appeals and an opportunity for that Court to consider that request in a meaningfully and orderly manner.  Given the seriousness of the issues, Respondents respectfully request the Court rule on this *ex parte* application no later than Wednesday, September 19, 2012; should the Court decline to do so, Respondents intend to seek a stay pending appeal from the Court of Appeals and will request an immediate administrative stay from that Court to allow the orderly litigation of the stay request before that Court.

//

//

//

//

---

[8] This is in contrast to the Court's injunction order, which altered the status quo.  *See, Nken*, 556 U.S. at 429 (quoting *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C. J., in chambers) ("[A]pplicants are seeking not merely a stay of a lower court judgment, but an injunction against the enforcement of a presumptively valid state statute"); *Turner Broadcasting System, Inc. v. FCC*, 507 U.S. 1301, 1302 (1993) (same) ("By seeking an injunction, applicants request that I issue an order altering the legal status quo")).

Dated: September 17, 2012

STUART F. DELERY
Acting Assistant Attorney General
Civil Division
DAVID J. KLINE
Director
Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
Office of Immigration Litigation
THEODORE W. ATKINSON
Senior Litigation Counsel


/s/ Erez Reuveni
EREZ REUVENI
Trial Attorney
United States Department of Justice
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-4293; '
Fax: (202) 616-8962
Email: erez.r.reuveni@usdoj.gov

*Attorneys for Respondents*