STUART F. DELERY
Principal Deputy Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
THEODORE W. ATKINSON
United States Department of Justice
Office of Immigration Litigation
    P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
    Phone: (202) 532-4135
    theodore.atkinson@usdoj.gov
SARAH S. WILSON
Trial Attorney

Attorneys for Respondents

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*,<br><br>    Petitioners,<br><br>vs.<br><br>TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director, et al.*,<br><br>    Respondents. | Case No. CV 07-3239-TJH (RNBx)<br><br>**RESPONDENTS' LOCAL RULE 56-1 STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Terry J. Hatter, Jr.<br><br>Hearing Date: May 6, 2013<br>Hearing Time: UNDER SUBMISSION |

Respondents submit the following statement of uncontroverted material facts and conclusions of law in accordance with Local Rule 56-1. Material facts and conclusions of law are presented together with respect to each major issue on which Respondents seek summary judgment.

1

**Issue No. 1:** The detention of arriving aliens without bond during the pendency of their removal proceedings is statutorily authorized and does not violate due process

| Material Fact | Support |
|---|---|
| During the relevant period of this action, some arriving aliens[1] are or have been detained within the Central District of California for a continuous period of more than six months pending removal proceedings under the detention authority of 8 U.S.C. § 1225(b). | Respondents' Notice of Non-Opposition to Petitioners' Motion for Class Certification at 2-3 [ECF No. 122] |
| A large number of the studied class members representing a selection of detainees between April 2010 and April 2011 – 86.9% – requested at least one continuance, and over half of them requested three or more continuances during their removal proceedings. If the analysis is limited just to the first six months of the studied aliens' detention, the data shows that 84.7% of aliens request a continuance during the first six months of their custody, and nearly two-thirds of those aliens – 66.2% – requested two or more continuances within the first six months of their custody. | Exhibits O to the Declaration of Theodore W. Atkinson (Chester I. Palmer Deposition Excerpts); Exhibit P to the Declaration of Theodore W. Atkinson (Palmer Expert Report at 2, 10-11); Declaration of Benjamin B. McDowell |
| An alien's request for multiple continuances has the effect of delaying proceedings significantly. In analyzing the length of delays caused by continuances in just the first six months of detention, Dr. Palmer determined that | Exhibits O to the Declaration of Theodore W. Atkinson (Chester I. Palmer Deposition Excerpts); Exhibit P to the Declaration of Theodore W. Atkinson (Palmer Expert Report at 2, 11-13); Declaration of Benjamin B. |

---

[1] An "arriving alien" is defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. §§ 1.2, 1001.1(q).

| | |
|---|---|
| for aliens requesting at least one continuance during the first 180 days of their detention, the total resulting delay varied between 6 days to 269 days. For the 84.7% of aliens who sought at least one continuance during their first 180 days of detention, the average delay attributable to those continuances accounted for over half of the 180 days. | McDowell |

**Conclusions of law:**

The detention of arriving aliens pending their removal proceedings is mandated by the unambiguous statutory language of 8 U.S.C. § 1225(b). The only exception to this detention is through the discretionary parole authority established by Congress in 8 U.S.C. § 1182(d)(5)(A).

The Supreme Court has consistently recognized that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well-established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders."

Courts have long recognized that Congress may direct the detention of such aliens commensurate with the power to exclude them from entry or admission. *Zadvydas*, 533 U.S. at 693 (an arriving alien "stands on a different footing: 'Whatever the procedure authorized by Congress is [regarding admission or exclusion], it is due

3

process as far as an alien denied entry is concerned.'") (quoting *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)); *see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . [H]owever, once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly.").

The unique constitutional position of arriving aliens permits their detention without a bond hearing pending their removal proceedings, even if such detention lasts beyond six months. *See, e.g., Zadvydas*, 533 U.S. at 693; *Ma*, 357 U.S. 185, 187-88 (1958) (alien "paroled" into the United States pending admissibility had not effected an "entry"); *see also Zadvydas*, 533 U.S. at 693 (discussing line of Supreme Court decisions recognizing the entry fiction doctrine, which considers an alien in the United States, but not granted admission to the United States, as having been "stopped at the border," and refusing to undermine *Mezei* with respect to the constitutionality of the detention of such aliens for lengthy periods); *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1445 (9th Cir. 1995) (en banc), *superseded by statute as stated in Wong v. INS*, 373 F.3d 952, 972 n. 26 (9th Cir. 2004).

Moreover, a large number of aliens seek continuances that significantly lengthen their removal proceedings, and thus their detention. Courts have consistently recognized that an inflexible one-size-fits-all rule that detention raises constitutional concerns at a predetermined temporal benchmark does not comport with due process, which "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1398 (9th Cir. 1987) (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979)) (same). *See also*, *Demore,* 538 U.S. at 530 n.14 ("Prior to the enactment of § 1226(c), when the vast majority of deportable criminal aliens were not detained during their deportation proceedings, many filed frivolous appeals in order to delay their deportation."); *Ly v. Hansen*, 351

1  F.3d 263, 271-73 (6th Cir. 2003) (rejecting a six-month rule, concluding that
2  "[a]bright-line time limitation . . . would not be appropriate for the pre-removal
3  period" because "an easily administrable bright-line rule cannot be based on time,
4  given the inevitable elasticity of the pre-removal period"); *Diop v. ICE/Homeland*
5  *Security*, 656 F.3d 221, 234 (3d Cir. 2012) (declining "to adopt such a one-size-fits-all
6  approach" because the constitutionality of detention under section 1226(c) "is a fact-
7  dependent inquiry requiring an assessment of all of the circumstances of any given
8  case."); *Alli v. Decker*, 644 F. Supp. 2d. 535, 542-43 (M.D. Pa. 2010), *reversed and*
9  *remanded on other grounds*, 650 F.3d 1007 (3d Cir. 2011); *see also Flores-Powell v.*
10 *Chadbourne*, 677 F. Supp. 2d 455 (D. Mass. 2010) (citing the Sixth Circuit's rejection
11 of a bright-line rule based solely on length of detention).  Thus, Petitioners' request
12 for an order that aliens detained under section 1225(b) receive a bond hearing after
13 180 days of detention, without regard to the individual facts and circumstances of their
14 cases, is not required by due process.

   Consistent with the constitutional principles described above, the detention of
16 arriving aliens for more than six months without a bond hearing before an
17 immigration judge, during the pendency of removal proceedings, comports with due
18 process and therefore does not raise constitutional concerns.

**Issue No. 2:** **The detention of serious criminal aliens without bond during the pendency of their removal proceedings is statutorily authorized and does not violate due process**

| Material Fact | Support |
|---|---|
| During the relevant period of this action, some certain criminal aliens are or have been detained within the Central District of California for a continuous period of more than six months pending removal proceedings under the detention authority of 8 U.S.C. § 1226(c). | Respondents' Notice of Non-Opposition to Petitioners' Motion for Class Certification at 2-3 [ECF No. 122] |
| A large number of the studied class members representing a selection of detainees between April 2010 and April 2011 – 86.9% – requested at least one continuance, and over half of them requested three or more continuances during their removal proceedings.  If the analysis is limited just to the first six months of the studied aliens' detention, the data shows that 84.7% of aliens request a continuance during the first six months of their custody, and nearly two-thirds of those aliens – 66.2% – requested two or more continuances within the first six months of their custody. | Exhibits O to the Declaration of Theodore W. Atkinson (Chester I. Palmer Deposition Excerpts); Exhibit P to the Declaration of Theodore W. Atkinson (Palmer Expert Report at 2, 10-11); Declaration of Benjamin B. McDowell |
| An alien's request for multiple continuances has the effect of delaying proceedings significantly.  In analyzing the length of delays caused by continuances in just the first six months of detention, Dr. Palmer determined that for aliens requesting at least one continuance during the first 180 days of their detention, the total resulting delay varied between 6 days to 269 days.  For the 84.7% of aliens who sought at least one continuance during their first 180 | Exhibits O to the Declaration of Theodore W. Atkinson (Chester I. Palmer Deposition Excerpts); Exhibit P to the Declaration of Theodore W. Atkinson (Palmer Expert Report at 2, 11-13); Declaration of Benjamin B. McDowell |

| days of detention, the average delay attributable to those continuances accounted for over half of the 180 days. | |

**Conclusions of law:**

8 U.S.C. § 1226(c) mandates the detention of certain serious criminal aliens during the pendency of their removal proceedings. The Supreme Court in *Demore v. Kim*, 538 U.S. 510 (2003), upheld the constitutionality of detention without bond for certain criminal aliens detained under 8 U.S.C. § 1226(c). In holding the detention of such aliens constitutional, the Supreme Court reasoned that such detention was constitutional and comported with due process because it lasted only during the pendency of removal proceedings, which have a definite termination point, and because such detention furthered the statutory purpose of addressing serious concerns on the part of Congress that such criminal aliens, in large numbers, failed to appear for removal proceedings when released on bond or, worse, committed additional crimes. *Demore*, 538 U.S. at 524-25, 527-28. For this reason, the Supreme Court concluded that such aliens could be detained during the pendency of their removal proceedings, on a class wide basis, and without individualized determinations of flight risk or danger. *Id.*

Moreover, a large number of aliens seek continuances that significantly lengthen their removal proceedings, and thus their detention. Courts have consistently recognized that an inflexible one-size-fits-all rule that detention raises constitutional concerns at a predetermined temporal benchmark does not comport with due process, which "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1398 (9th Cir. 1987) (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979)) (same). *See also*, *Demore,* 538 U.S. at 530 n.14 ("Prior to the enactment of § 1226(c), when the vast majority of deportable criminal aliens were not detained during their deportation proceedings, many filed frivolous appeals in order to delay their deportation."); *Ly v. Hansen*, 351

7

F.3d 263, 271-73 (6th Cir. 2003) (rejecting a six-month rule, concluding that "[a]bright-line time limitation . . . would not be appropriate for the pre-removal period" because "an easily administrable bright-line rule cannot be based on time, given the inevitable elasticity of the pre-removal period"); *Diop v. ICE/Homeland Security*, 656 F.3d 221, 234 (3d Cir. 2012) (declining "to adopt such a one-size-fits-all approach" because the constitutionality of detention under section 1226(c) "is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case."); *Alli v. Decker*, 644 F. Supp. 2d. 535, 542-43 (M.D. Pa. 2010), *reversed and remanded on other grounds*, 650 F.3d 1007 (3d Cir. 2011); *see also Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455 (D. Mass. 2010) (citing the Sixth Circuit's rejection of a bright-line rule based solely on length of detention). Thus, Petitioners' request for an order that aliens detained under section 1226(c) receive a bond hearing after 180 days of detention, without regard to the individual facts and circumstances of their cases, is not required by due process.

Accordingly, the detention of certain criminal aliens enumerated in section 1226(c)(1)(A) through (D) during the pendency of their removal proceedings, without a bond hearing before an immigration judge, is statutorily authorized and consistent with due process.

**Issue No. 3:** **Due process does not require the modifications to *Casas* hearings sought by Petitioners**

| Material Fact | Support |
|---|---|
| ISAP II is designed for aliens who are detained under section 1226(a), and who pose relatively low-level risks of flight or danger.  Unlike the types of serious offenses that place an alien within one of the section 1226(c) categories, ISAP II is used in cases where the types of offenses an alien has committed are, as Assistant Field Office Director Eric Saldana described them, "lower-range crimes," such as driving without a license, drunk in public, and other relatively non-serious offenses. | Exh. K to the Declaration of Theodore W. Atkinson (ISAP II Participant's Handbook); Exhibit B to the Declaration of Theodore W. Atkinson (Deposition of Eric G. Saldana), at 118:21-119:8 |
| ISAP II is not designed to work with aliens who have no place of residence or reliable identification, which is the reason most arriving aliens are denied parole. | Exh. K to the Declaration of Theodore W. Atkinson (ISAP II Participant's Handbook); Exhibit A to the Declaration of Theodore W. Atkinson (Deposition of Wesley J. Lee), at 36:25-37:11; 123:2-123:15; 134:24-136:17; Exhibit B to the Declaration of Theodore W. Atkinson (Deposition of Eric G. Saldana), at 107:8-107:18; 120-1-124:16 |
| Once ICE determines that an alien is subject to discretionary detention under section 1226(a), the alien receives a written Notice of Custody Determination indicating that the alien is entitled to seek a custody redetermination before an immigration judge.  This document provides straightforward notice, in plain language, that the alien is entitled to a bond hearing before an immigration judge ("You may request a review of this determination by an immigration judge"). | Exh. D to the Declaration of Theodore W. Atkinson (Notices of Custody Determination) |

9

| | |
|---|---|
| Once an alien becomes eligible for a *Casas* or *Diouf* hearing, and if ICE does not release the alien once the alien becomes eligible, ICE provides the detainee with a written notice that they are entitled to seek a bond hearing before an immigration judge.  This document provides straightforward notice, in plain language, that the alien is entitled to a bond hearing before an immigration judge  ("Pursuant to the above-named Ninth Circuit decisions, you may request a review of this determination from an immigration judge") | Exh. L to the Declaration of Theodore W. Atkinson (sample *Casas/Diouf* Letters provided by ICE). |

**Conclusions of law:**

Petitioners claim two categories of modifications must be made to *Casas* hearings to make them constitutionally adequate: (1) immigration judges must be required to consider the alien's ultimate removability, the length of an alien's past and future detention, and alternatives to detention; and (2) Respondents should be required to provide constitutionally adequate notice of hearings, or provide automatic immigration hearings, under a heightened standard, every six months.

First, Petitioners' claim that immigration judges must consider an alien's ultimate removability is an untimely amendment to the Complaint.  In any event, such a requirement is not compelled by due process.  Such a requirement would create a conflict in the standards of burden between *Casas* hearings and that established in *Zadvydas*.  Such a requirement would also pose enormous practical problems that cannot be overcome, because it would require judges to make determinations on ultimate removability that cannot be determined until an alien has been ordered removed and travel documents are sought.  It would also require immigration judges, at a relatively early stage of removal proceedings, to predetermine whether an alien is

10

ultimately removable, a determination that cannot be made until ICE has begun efforts to remove the alien after a final order is entered.

Second, if the length of past and future detention has any bearing, it only has a bearing on whether continued detention comports with due process, not flight risk and danger, which is the proper area of inquiry at an immigration bond hearing. 8 C.F.R. § 236.1(d)(1); *see Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006).

Third, due process does not require immigration judges to consider alternatives to detention at a bond hearing. The available alternative to detention, ISAP II, is not a practical alternative to detention for arriving aliens or serious criminal aliens because ISAP II was designed for low-risk offenders and for individuals with an established residence. Moreover, immigration judges have limited jurisdiction that precludes ordering an alternative to detention. An immigration judge's authority occurs after the initial custody determination by DHS. 8 C.F.R. § 1236.1(d)(1). While 8 C.F.R. § 1236.1(c)(8) provides that an officer authorized to issue a warrant of arrest may release an alien not subject to mandatory detention under section 1226(a)(2) and (3), 8 C.F.R. §1236.1(d) provides that an immigration judge may ameliorate the conditions of release set by DHS. Nowhere do the regulations governing custody determinations provide for the immigration judge to set initial conditions of release as opposed to reviewing or modifying conditions already set by DHS. "[T]he jurisdiction of the Board and the Immigration Judge is limited by statute and regulation to that which has been delegated by the Attorney General." *Matter of G-K-,* 26 I. & N. Dec. 88, 93 (BIA 2013) (citing cases).

Due process also does not compel a modified notice of the right to request hearings or automatic, periodic bond hearings every six months. First, the notice provided by ICE to aliens informing them of their right to seek a bond hearing before an immigration judge is constitutionally adequate because it informs aliens, in plain language, that they may request a bond hearing before an immigration judge. Second, Petitioners' claim for periodic bond hearings every six months constitutes an untimely

11

amendment to the Complaint. *See Apache Survival Coalition v. United States,* 21 F.3d 895, 910 (9th Cir. 1994). In any event, periodic hearings are not required by due process. If an alien is provided with the opportunity to seek a bond hearing, or has a bond hearing, then due process has been satisfied with respect to a determination of flight risk and danger. Nothing in due process requires Respondents to provide additional bond hearings after a bond hearing was available or provided, but bond was denied. *Prieto-Romero*, 534 F.3d 534 F.3d 1053, 1065-66 (9th Cir. 2008).

Date: March 15, 2013

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
*/s/ Theodore W. Atkinson*
THEODORE W. ATKINSON
United States Department of Justice
Office of Immigration Litigation,
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4135
theodore.atkinson@usdoj.gov
SARAH S. WILSON
Trial Attorney

Attorneys for Respondents

# CERTIFICATE OF SERVICE

I certify that on March 15, 2012, I served a copy of the foregoing through the Court's CM/ECF system on the following counsel of record:

Ahilan T. Arulanantham
ACLU Foundation of Southern California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

Sean Commons
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: scommons@sidley.com

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Cody Jacobs
Sidley Austin LLP
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: cjacobs@sidley.com

*/s/  Theodore W. Atkinson*
Theodore W. Atkinson
United States Department of Justice