**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*, | Case No. CV 07-3239-TJH (RNBx) |
| Petitioners, | **[PROPOSED] JUDGMENT FOR RESPONDENTS** |
| vs. | |
| TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director, et al.*, | Hon. Terry J. Hatter, Jr. |
| | Hearing Date: May 6, 2013 |
| | Hearing Time: UNDER SUBMISSION |
| Respondents. | |

Respondents' motion for summary judgment as to all claims came on regularly for consideration before the Court on May 6, 2013, under submission.

After considering the moving, opposition and reply briefs, the evidence submitted by the parties and the arguments presented by the parties' respective counsel, this Court makes the following findings:

**I.   Findings of Fact and Conclusions of Law**

This case fundamentally presents a question of statutory construction and constitutional interpretation, and the material facts at issue in this case are limited. There is no dispute between the parties that within the Central District of California, there are a number of aliens detained under one of four immigration detention statutes, specifically 8 U.S.C. § 1225(a), 1226(c), 1226(a), and 1231(a)(6), for more than six

months. This Court certified a class of aliens detained under each of those detention statutes and who have been detained for more than six months without a bond hearing before an immigration judge. [ECF No. 161]. This Court also certified four subclasses, one for each group of class members detained under each of the four challenged statutes. *Id.* Because each subclass is detained under different statutes, with different statutory entitlements and in different procedural postures in the removal process, this Court addresses the factual findings for each subclass in turn.

### 1. Arriving aliens under section 1225(b)

An "arriving alien" is defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. §§ 1.2, 1001.1(q). The statute governing the detention of arriving aliens is 8 U.S.C. § 1225(b).

Section 1225(b) mandates the detention of arriving aliens during the pendency of their removal proceedings. In general, an arriving alien is subject to expedited removal if a DHS immigration officer determines that the alien is inadmissible under section 1182(a)(6)(C) (fraud or misrepresentation) or section 1182(a)(7) (lack of proper documents for admission). 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. §§ 235.3(b), 1235.3(b). If the officer determines that the alien is subject to expedited removal, the officer may order the alien removed from the United States. 8 U.S.C. § 1225(b)(1)(A)(i). However, if an arriving alien subject to expedited removal expresses a fear of persecution or torture, or a desire to apply for asylum, and demonstrates a credible fear of persecution upon return, the alien is taken out of the expedited removal process and placed into regular removal proceedings before an immigration judge under 8 U.S.C. § 1229a. *See* 8 C.F.R. § 208.30(f).

Section 1225(b)(2)(A) provides for the mandatory detention of arriving aliens generally. 8 U.S.C. § 1225(b)(2)(A) ("…if the examining immigration officer

determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding…") (emphasis added). Similarly, section 1225(b)(1)(B)(ii) provides that an alien who is found to have a credible fear of persecution "*shall be detained* for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added). However, all arriving aliens can apply to DHS to be paroled into the United States and released from custody. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 212.5(b), 235.3(b)(2)(iii), 235.3(c). In particular, DHS public guidelines directly address parole determinations with regard to arriving aliens found to have a credible fear. Atkinson Decl. Exh. I (January 4, 2010 from the Department of Homeland Security to ICE entitled "Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture") ("2010 Parole Guidelines"). The 2010 Parole Guidelines provide that each arriving alien found to have a credible fear of persecution or torture will generally be eligible for possible parole if the alien can establish reasonable indicia of identification and supply a sponsor who will provide the alien with temporary residence during removal proceedings.

   Under longstanding regulations, "an immigration judge may not redetermine conditions of custody" for "arriving aliens in removal proceedings." 8 C.F.R. § 1003.19(h)(2)(i)(B). Thus, an arriving alien can only be released from detention if paroled by DHS or if the alien is granted relief from removal on the merits in the removal proceedings. In this respect, arriving aliens are analogous to "excludable" aliens before Congress amended the immigration laws in 1996. IIRIRA, 110 Stat. 3009–546 (1996); 8 U.S.C. § 1229a. The regulations historically did not provide immigration judges with the authority to hold custody hearings with respect to aliens who were stopped at a port of entry and placed in exclusion proceedings. Similarly, arriving aliens who are not subject to expedited removal due to being inadmissible for grounds other than 8 U.S.C. §§ 1182(a)(6)(C) and 1182(a)(7) are detained and placed in removal proceedings. 8 C.F.R. 235.6(a)(1). Likewise, DHS can decide to place aliens subject to expedited removal into traditional removal

proceedings. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520 (BIA 2011). In such cases, the alien is similarly situated to aliens who have been found to have a credible fear. DHS may parole from custody such individuals, but an immigration judge may not re-determine custody. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 212.5(b), 235.3(c); 1003.19(h)(2)(i)(B).

The unique constitutional position of arriving aliens permits their detention pending their removal proceedings, even if such detention lasts beyond six months. *See, e.g., Zadvydas*, 533 U.S. 678, 694 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)) (""[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'").

Following these longstanding principles, and consistent with Supreme Court decisions, the Ninth Circuit has recognized that Congress's wide latitude in detaining arriving aliens permits the prolonged detention of such aliens, given their unique constitutional position. *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1445 (9th Cir. 1995) (en banc), *superseded by statute as stated in Wong v. INS*, 373 F.3d 952, 972 n. 26 (9th Cir. 2004); *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097 (9th Cir. 2004). ( "Under controlling precedent, excludable aliens have no constitutional right to the same procedures afforded deportable aliens in the admission process," explaining that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission and those who are within the United States after an entry, irrespective of its legality.").

Petitioner's proposed six-month rule thus conflicts with the unambiguous language and Congressional intent expressed in section 1225(b), as well as the

decisions of the Supreme Court and this Court finding the premise of that statute constitutional. Indeed, other circuit courts have reached similar conclusions. *See, e.g., Ngo v. INS*, 192 F.3d 390, 395 (3d Cir. 1999) (prolonged detention of arriving aliens is constitutional, provided there is no risk of indefinite detention and appropriate parole procedures are followed). Moreover, arriving aliens may seek release from detention on conditions of parole, and the denial of parole is subject to limited judicial review only to determine whether such a denial was made for facially legitimate and bona fide reasons. *See, e.g., Fernandez-Roque v. Smith*, 734 F.2d 576, 582 (11th Cir. 1984); *Jean v. Nelson*, 727 F.2d 957, 966, 972 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006).

Because the Supreme Court and other courts, including the Ninth Circuit, have recognized that arriving aliens are not entitled to bond hearings, this Court concludes that the detention of arriving aliens for more than six months without a bond hearing is constitutional.

### 2. Criminal aliens detained under section 1226(c)

Removable criminal aliens have long posed a special congressional concern. Until the late 1980s, section 242 of the Immigration and Nationality Act authorized the Attorney General to release aliens – including criminal aliens – from custody during their deportation proceedings. That statute provided that "[p]ending a determination of deportability" in administrative proceedings, an alien "may, upon warrant of the Attorney General, be arrested and taken into custody." 8 U.S.C. § 1252(a) (1982). Thus, the Attorney General had discretion to keep the alien in custody, release the alien on bond, or release the alien on conditional parole. *Id.*

Congress limited that discretion by mandating the detention of aliens convicted of aggravated felonies and precluding their release as part of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, Tit. VII, § 7343(a), 102 Stat. 4470. In doing so, Congress took careful note of the fact that "[a]ll too often, [criminal] aliens – whether here legally or illegally – who are arrested for various felonious crimes, evade

deportation, dodge trials, and continue with their recidivist activities." 133 Cong. Rec. 28,840 (1987) (statement of Rep. Smith) (discussing H.R. 3529, 100th Cong., 1st Sess. (1987)). Additionally, a sponsor of the amendments noted that criminal aliens operated major narcotics syndicates throughout the United States and "have been connected with money laundering, racketeering, weapons sales, prostitution rings, and a host of other heinous crimes." *Id.* at 28,840 (statement of Sen. Chiles). "[O]ften," he observed, criminal aliens "are able to pay expensive bonds and disappear under a new identity" until arrested again "with a different name and a new offense." *Ibid*.

In 1990 and 1991, Congress amended the INA to expand the statutory definition of "aggravated felony," but restored the Attorney General's discretion to release certain criminal aliens who committed aggravated felonies under narrow conditions. Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978; Immigration Technical Corrections Act of 1991, Pub. L. No. 102-232.

However, by 1996, Congress determined that the 1990 and 1991 amendments – and particularly provisions allowing the release of criminal aliens in the Attorney General's discretion – undermined the Executive's ability to remove criminal aliens or prevent them from committing additional crimes during removal proceedings.[1] As the Supreme Court later noted, in enacting the provisions that would become section

---

[1] Congress concluded that the 1990 and 1991 amendments restoring the Attorney General's discretion to release some aliens on bond had "weakened substantially" the government's efforts to deport criminal aliens and to protect public safety. Criminal Aliens in the United States: Hearings Before the Permanent Subcomm. on Investigations of the Senate Comm. on Governmental Affairs ("1993 Senate Hearing"), 103d Cong., 1st Sess. 15, 26 (1993); *see* H.R. Rep. No. 22, 104th Cong., 1st Sess. 12 (1995). The Senate Governmental Affairs Committee found that as a result of the 1990 and 1991 amendments, and because of a shortage of space in immigration detention facilities, "many [criminal aliens] who should be detained [during deportation proceedings] are released on bond." H.R. Rep. No. 22, at 2. The House Judiciary Committee agreed that the failure to detain aliens during their deportation proceedings was "[a] chief reason why many deportable aliens are not removed from the United States." H.R. Rep. No. 469, 104th Cong., 2d Sess., Pt. 1, at 123 (1996).

1226(c), Congress "had before it evidence that one of the major causes of the [former Immigration and Naturalization Services'] failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings." *Demore v. Kim*, 538 U.S. 510 519 (2001). Moreover, "[o]ne 1986 study showed that, after criminal aliens were identified as deportable, 77% were arrested at least once more and 45% – nearly half – were arrested multiple times before their deportation proceedings even began." *Id.* at 518.

To address these concerns, Congress took several steps, the most significant of which was the adoption of section 303(b) of the Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996), now section 1226(c), which removed the authority of the Attorney General – now DHS[2] – to release certain criminal aliens on bond.

That Congress largely removed the authority of the Executive to release certain criminal aliens, except under narrow circumstances under section 1226(c)(2) not at issue in this case, is clear and unambiguous. The mandatory nature of such detention is not only apparent on the face of the statute, but is exemplified by the contrasting provisions in section 1226(a) that Congress enacted at the same time. Section 1226(a) specifies that the Secretary of Homeland Security "may" detain an alien arrested under the general immigration arrest provisions and "may release the alien" on bond or conditional parole. 8 U.S.C. § 1226(a). Section 1226(c), by contrast, includes no authority to release aliens on bond, and provides that DHS "shall take into custody" during the pendency of his or her removal proceedings any alien who is inadmissible or deportable due to commission of certain categories of offenses enumerated in the statute, 8 U.S.C. § 1226(c)(1), and "may release" such individuals "only" when necessary in specific instances where the alien has provided material assistance in a

---

[2] Congress transferred certain immigration functions from the Department of Justice to DHS in 2002, including the detention of aliens during proceedings and pending removal. Homeland Security Act, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

criminal matter. 8 U.S.C. § 1226(c)(2). The specific inclusion of a provision for the release of a narrow class of aliens subject to detention under section 1226(c)(2) makes clear that other aliens falling within the scope of section 1226(c) may not be released.[3] *See TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–617 (1980)) ("'Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.'").[4]

The constitutionality of mandatory detention under section 1226(c) was settled by the Supreme Court in *Demore*. In *Demore*, detainees argued that mandatory detention for criminal aliens was unconstitutional "because it results in prolonged detention of a wide array of lawful permanent residents who pose no danger or flight risk, who are raising bona fide challenges to removal, and who often prevail in those challenges." *See* Brief of Respondents in *Demore*, 2002 WL 31455525, * 11 (emphasis added); *see also Demore*, 538 U.S. at 523.

The Supreme Court disagreed, concluding that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." *Id.* at 512 (emphasis added). Congress's broad authority over immigration, combined with a definable and valid statutory purpose that addressed the specific problems of criminal aliens facing removal, makes the detention of criminal

---

[3] Section 1226(c)(2) provides in pertinent part that "[t]he Attorney General may release an alien described in paragraph (1) *only if* the Attorney General decides . . . that release of the alien from custody is necessary to provide" protection to witnesses or those assisting in investigations and their family and associates.

[4] Criminal aliens detained under section 1226(c) are not without available process, however, and may challenge whether they are properly included within the scope of section 1226(c) before DHS and in a subsequent hearing before an immigration judge, and then to the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. §§ 1003.19(a), (b), and (h)(2)(ii); 236.1(c)(10), (d)(1), and (d)(3).

aliens during the course of removal proceedings constitutional. *Demore*, 538 U.S. at 524-25.

In upholding mandatory detention under section 1226(c), the Supreme Court also specifically distinguished between the pre-final order detention under section 1226(c) and the post-order, but potentially indefinite, detention under section 1231(a)(6) considered in *Zadvydas*. As the Court explained, the aliens in *Zadvydas* were "ones for whom removal was 'no longer practically attainable,'" and thus "detention there did not serve its purported immigration purpose." *Demore*, 538 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690). Aliens detained under section 1226(c), by contrast, are detained pending their removal proceedings, and thus their detention "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 528. The Supreme Court further distinguished *Zadvydas* by explaining that while "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point," pre-final order detention under section 1226(c) has "a definite termination point." *Id*. at 529.

Additionally, neither the purpose nor effect of mandatory detention under section 1226(c) changes at six months. Petitioners' proposed six-month rule fails to address the problems that animated the *Demore* Court. To the contrary, that bright-line rule would mean that the problems Congress addressed in 1996 would increase as criminal aliens become eligible for release on bond, just as they were before IIRIRA was enacted. See *supra* at 13-14 (describing failure of discretionary detention to prevent criminal aliens from absconding or committing additional crimes).[5]

---

[5] One of the primary statutory purposes behind section 1226(c) – to address the problem of a high percentage of criminal aliens, having obtained release on bond, failing to attend removal proceedings – has not lessened with time. In an April 2006 report, DHS's Office of the Inspector General found that "historical trends indicate that 62 percent of the aliens released will eventually be issued final orders of removal .

*(Footnote continued)*

9

Because the termination of removal proceedings is definite, as opposed to potentially indefinite, and because it continues to serve the statute's purpose, detention under section 1226(c) beyond six months raises no greater constitutional concern than post-final order detention where removal is foreseeable.

\* \* \*

There is another reason counseling against adoption of Petitioners' proposed six month rule as it applies to arriving aliens detained under section 1225(b) and criminal aliens under section 1226(c). Evidence submitted by Respondents shows that aliens, in large numbers, request continuances that serve to lengthen their proceedings, and consequently, their detention. *See* Atkinson Decl. Exhs. O – R. A statistical expert, Dr. Chester I. Palmer, opined that a large number of the studied class members representing a selection of detainees between April 2010 and April 2011 – 86.9% – requested at least one continuance, and over half of them requested three or more continuances during their removal proceedings. *Id.* If the analysis is limited just to the first six months of the studied aliens' detention, the data shows that 84.7% of aliens request a continuance during the first six months of their custody, and nearly two-thirds of those aliens – 66.2% – requested two or more continuances within the first six months of their custody. *Id.* The effect of this is undisputed: An alien's request for multiple continuances has the effect of delaying proceedings significantly. In analyzing the length of delays caused by continuances in just the first six months of

---

. . and later fail to surrender for removal or abscond." Atkinson Decl. Exh. N (DHS OIG, Detention and Removal of Illegal Aliens, Report OIG-06-33, April 2006). More recently, in 2011 ICE arrested more than 40,000 fugitive aliens who failed to leave the United States when ordered removed or failed to report to ICE as required. Atkinson Decl. Exh. M (ICE Fact Sheet: ICE Fugitive Operations Program (Nov. 7, 2011)). However, nearly 480,000 fugitive alien cases remained pending at the end of fiscal year 2011. *Id.* Although these figures are not limited to criminal aliens, one can presume that criminal aliens, if released, pose an even greater flight risk. In short, these statistics show that a compelling problem Congress sought to address in 1996 – flight by criminal aliens – remains a problem that *Demore* recognized Congress had authority to address through mandatory detention.

detention, Dr. Palmer determined that for aliens requesting at least one continuance during the first 180 days of their detention, the total resulting delay varied between 6 days to 269 days. For the 84.7% of aliens who sought at least one continuance during their first 180 days of detention, the average delay attributable to those continuances accounted for over half of the 180 days.

This Court cannot agree with Petitioners that an inflexible six-month rule complies with due process in the face of significant and undisputed evidence that in a large number of individual cases the length of delay beyond six months is largely attributable to continuances sought by aliens in removal proceedings. Courts have consistently recognized that an inflexible one-size-fits-all rule that detention raises constitutional concerns at a predetermined temporal benchmark does not comport with due process, which "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1398 (9th Cir. 1987) (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979)) (same). *See also*, *Demore,* 538 U.S. at 530 n.14 ("Prior to the enactment of § 1226(c), when the vast majority of deportable criminal aliens were not detained during their deportation proceedings, many filed frivolous appeals in order to delay their deportation."); *Ly v. Hansen*, 351 F.3d 263, 271-73 (6th Cir. 2003) (rejecting a six-month rule, concluding that "[a]bright-line time limitation . . . would not be appropriate for the pre-removal period" because "an easily administrable bright-line rule cannot be based on time, given the inevitable elasticity of the pre-removal period"); *Diop v. ICE/Homeland Security*, 656 F.3d 221, 234 (3d Cir. 2012) (declining "to adopt such a one-size-fits-all approach" because the constitutionality of detention under section 1226(c) "is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case."); *Alli v. Decker*, 644 F. Supp. 2d. 535, 542-43 (M.D. Pa. 2010), *reversed and remanded on other grounds*, 650 F.3d 1007 (3d Cir. 2011); *see also Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455 (D. Mass. 2010) (citing the Sixth Circuit's rejection

of a bright-line rule based solely on length of detention). Thus, Petitioners' request for an order that aliens detained under section 1225(b) and section 1226(c) receive a bond hearing after 180 days of detention, without regard to the individual facts and circumstances of their cases, is not required by due process.

### 3. Aliens detained under section 1226(a) and 1231(a)(6) already have an opportunity to seek a bond hearing

Petitioners also seek bond hearings for aliens detained under section 1226(a) and section 1231(a)(6) under the heightened standard set forth in *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008), and established in *V. Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). This Court grants summary judgment to Respondents on this claim because such aliens are already entitled to a bond hearing under applicable statutory and regulatory provisions.

Aliens detained under the discretionary detention provisions of section 1226(a) are already entitled by statute and by regulation to bond hearings before immigration judges following an initial custody determination by ICE. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1 (providing for custody redetermination hearings before immigration judges). If an alien is detained by ICE at the initial custody determination stage, that alien is informed in writing that he may seek a bond hearing before an immigration judge. 8 C.F.R. § 236.1; *see also* RSOF ¶¶ 1-3 (describing initial custody process and identifying the Notice of Custody Determination the alien receives). At that hearing, the immigration judge may redetermine bond, if the alien can establish he is not a flight risk or danger. 8 C.F.R. § 236.1; 8 C.F.R. § 1003.19. The alien may then appeal that determination to the BIA. 8 C.F.R. § 236.1. And the alien may seek additional custody redeterminations before immigration judges under existing regulations. 8 C.F.R. § 236.1; 8 C.F.R. § 1003.19(e).

Due process does not entitle an alien detained under section 1226(a) to multiple bond hearings, let alone additional hearings under a heightened standard. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008) (alien who received a bond hearing before an immigration judge who considered the factors of flight risk and

danger under *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (2006), "has already received an individualized determination of the governmental interest in his continued detention by a neutral decisionmaker"). And such aliens may be granted subsequent bond hearings upon a showing that "circumstances have change materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). Aliens detained under section 1226(a) receive individualized determinations of flight risk and danger, which comport with due process.

Similarly, Petitioners also claim that the section 1231(a)(6) subclass – a class of aliens who come into existence only after a removal order becomes administratively final – are also entitled to bond hearings after six months detention under that statute. They are already entitled to such hearings under *Diouf* if they have a petition for review pending and stay of removal in place or, if no stay of removal is in place, they are subject to the *Zadvydas* standards and 8 C.F.R. 241.13 and not subject to this class action. 634 F.3d at 1084.

### 4. Additional Factors for Consideration by Immigration Judges at Bond Hearings

Petitioners claim modifications must be made to factors considered by immigration judges at *Casas* hearings to make them constitutionally adequate: immigration judges must be required to consider the alien's ultimate removability, the length of an alien's past and future detention, and alternatives to detention. Due process does not require these modifications, and this Court grants summary judgment to Respondents on these claims.

First, Petitioners' claim that immigration judges must consider an alien's ultimate removability is an untimely amendment to the Complaint. *See Apache Survival Coalition v. United States,* 21 F.3d 895, 910 (9th Cir. 1994). In any event, such a requirement is not compelled by due process. Such a requirement would create a conflict in the standards of burden between *Casas* hearings and that established in *Zadvydas*. Such a requirement would also pose enormous practical problems that cannot be overcome, because it would require judges to make determinations on

13

ultimate removability that cannot be determined until an alien has been ordered removed and travel documents are sought. It would also require immigration judges, at a relatively early stage of removal proceedings, to predetermine whether an alien is ultimately removable, a determination that cannot be made until ICE has begun efforts to remove the alien after a final order is entered.

Second, if the length of past and future detention has any bearing, it only has a bearing on whether continued detention comports with due process, not flight risk and danger, which is the proper area of inquiry at an immigration bond hearing. 8 C.F.R. § 236.1(d)(1); *see Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006).

Third, due process does not require immigration judges to consider alternatives to detention at a bond hearing. The available alternative to detention is the Intensive Supervision Appearance Program ("ISAP II"). ISAP II is designed for aliens who are detained under section 1226(a), and who pose relatively low-level risks of flight or danger. Unlike the types of serious offenses that place an alien within one of the section 1226(c) categories, ISAP II is used in cases where the types of offenses an alien has committed are, as Assistant Field Office Director Eric Saldana described them, "lower-range crimes," such as driving without a license, drunk in public, and other relatively non-serious offenses. Exh. K to the Declaration of Theodore W. Atkinson (ISAP II Participant's Handbook); Exhibit B to the Declaration of Theodore W. Atkinson (Deposition of Eric G. Saldana), at 118:21-119:8.

Moreover, immigration judges have limited jurisdiction that precludes ordering an alternative to detention. An immigration judge's authority occurs after the initial custody determination by DHS. 8 C.F.R. § 1236.1(d)(1). While 8 C.F.R. § 1236.1(c)(8) provides that an officer authorized to issue a warrant of arrest may release an alien not subject to mandatory detention under section 1226(a)(2) and (3), 8 C.F.R. §1236.1(d) provides that an immigration judge may ameliorate the conditions of release set by DHS. Nowhere do the regulations governing custody determinations provide for the immigration judge to set initial conditions of release as opposed to

reviewing or modifying conditions already set by DHS. "[T]he jurisdiction of the Board and the Immigration Judge is limited by statute and regulation to that which has been delegated by the Attorney General." *Matter of G-K-,* 26 I. & N. Dec. 88, 93 (BIA 2013) (citing cases).

### 5. Modifications to Notices Provided to Aliens Entitled to Bond Hearings or, Alternatively, Automatic Periodic Bond Hearings Every Six Months

Due process also does not compel a modified notice of the right to request hearings or automatic, periodic bond hearings every six months. First, the notice provided by ICE to aliens informing them of their right to seek a bond hearing before an immigration judge is constitutionally adequate because it informs aliens, in plain language, that they may request a bond hearing before an immigration judge. Second, Petitioners' claim for periodic bond hearings every six months constitutes an untimely amendment to the Complaint. *See Apache Survival Coalition v. United States,* 21 F.3d 895, 910 (9th Cir. 1994). In any event, periodic hearings are not required by due process. If an alien is provided with the opportunity to seek a bond hearing, or has a bond hearing, then due process has been satisfied with respect to a determination of flight risk and danger. Nothing in due process requires Respondents to provide additional bond hearings after a bond hearing was available or provided, but bond was denied. *Prieto-Romero*, 534 F.3d 534 F.3d 1053, 1065-66 (9th Cir. 2008).

Consistent with the constitutional principles described above, the detention of arriving aliens for more than six months without a bond hearing before an immigration judge, during the pendency of removal proceedings, comports with due process and therefore does not raise constitutional concerns.

1     For the foregoing reasons, and based on the findings of fact and conclusions of law herein, it is hereby ORDERED that Respondents' motion for summary judgment is granted, and Petitioners' Third Amended Complaint is dismissed with prejudice.

Entered: _____, 2013      _____
                                                          TERRY J. HATTER, JR.
                                                          United States District Judge

PRESENTED BY:

STUART F. DELERY
Acting Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
*/s/ Theodore W. Atkinson*
THEODORE W. ATKINSON
United States Department of Justice
Office of Immigration Litigation,
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4135
theodore.atkinson@usdoj.gov
SARAH S. WILSON
Trial Attorney

Attorneys for Respondents

# **CERTIFICATE OF SERVICE**

I certify that on March 15, 2012, I served a copy of the foregoing through the Court's CM/ECF system on the following counsel of record:

Ahilan T. Arulanantham
ACLU Foundation of Southern California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

Sean Commons
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: scommons@sidley.com

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Cody Jacobs
Sidley Austin LLP
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: cjacobs@sidley.com

*/s/ Theodore W. Atkinson*
Theodore W. Atkinson
United States Department of Justice