**AHILAN T. ARULANANTHAM (SBN 237841)**
aarulanantham@aclu-sc.org
**MICHAEL KAUFMAN (SBN 254575)**
mkaufman@aclu-sc.org
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
1313 West Eighth Street
Los Angeles, CA 90017
Telephone:   (213) 977-9500
Facsimile:   (213) 977-5297

*Attorneys for Petitioners*
**(Additional Counsel listed on following page)**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, ABDIRIZAK ADEN FARAH, YUSSUF ABDIKADIR, ABEL PEREZ RUELAS, JOSE FARIAS CORNEJO, ANGEL ARMANDO AYALA, for themselves and on behalf of a class of similarly-situated individuals,<br><br>Petitioners,<br><br>v.<br><br>ERIC HOLDER, United States Attorney General; JANET NAPOLITANO, Secretary, Homeland Security; THOMAS G. SNOW, Acting Director, Executive Office for Immigration Review; TIMOTHY ROBBINS, Field Office Director, Los Angeles District Immigration and Customs Enforcement; WESLEY LEE, Officer-in-Charge, Mira Loma Detention Center; et al.; RODNEY PENNER, Captain, Mira Loma Detention Center; SANDRA HUTCHENS, Sheriff of Orange County; OFFICER NGUYEN, Officer-in-Charge, Theo Lacy Facility; CAPTAIN DAVIS NIGHSWONGER, Commander, Theo Lacy Facility; CAPTAIN MIKE KREUGER, Operations Manager, James A. Musick Facility; ARTHUR EDWARDS, Officer-in-Charge, Santa Ana City Jail; RUSSELL DAVIS, Jail Administrator, Santa Ana City Jail,<br><br>Respondents. | Case No. 02:07-cv-3239-TJH (RNBx)<br><br>**PETITIONERS' OBJECTIONS TO EVIDENCE RELIED UPON BY RESPONDENTS' IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PETITIONERS' MOTION FOR SUMMARY JUDGMENT**<br><br>Honorable Terry J. Hatter<br><br>Date:   May 6, 2013<br>Time:   Under Submission |

JUDY RABINOVITZ
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:   (212) 549-2618
Facsimile:   (212) 549-2654

MICHAEL TAN (SBN 284869)
mtan@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm St.
San Francisco, CA  94111
Telephone:   (415) 343-0779
Facsimile:   (415) 395-0950

JAYASHRI SRIKANTIAH (SBN 189566)
jsrikantiah@law.stanford.edu
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA  94305-8610
Telephone:   (650) 724-2442
Facsimile:   (650) 723-4426

SEAN COMMONS (SBN 217603)
scommons@sidley.com
CODY JACOBS (SBN 272276)
cjacobs@sidley.com
JONATHAN FEINGOLD (SBN 286302)
jfeingold@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013-1010
Telephone:   (213) 896-6000
Facsimile:   (213) 896-6600

*Attorneys for Petitioners*

Petitioners respectfully submit the following objections to evidence filed in Support of Respondents' Motion for Summary Judgment and Opposition to Petitioners' Motion for Summary Judgment (Dkt. 299).

**Objectionable No. 1**

**Objectionable Assertion:**

"DHS's Office of Inspector General found that historical trends indicate that '62 percent of the aliens released will eventually be issued final orders of removal . . . and later fail to surrender for removal or abscond.'" Dkt. 299 at 23-24.

**Petitioners' Objections:**

Respondents cite the DHS Report to argue that "historical trends indicate that 62 percent of the aliens released will eventually be issued final orders of removal . . . and later fail to surrender for removal or abscond." Dkt. 299 at 23-24. This appears to be a quote from the Report's "Executive Summary," which in turn summarizes information contained on page 17 of the Report. Dkt. 307 Ex. N at 1, 17. The Court should exclude this statement – and thus the Report – because it is prohibited hearsay not within any exception. *See* Fed. R. Evid. 801, 802.

*First*, the statement Respondents quote from the 2006 Report does not describe a historical fact. Rather, it purports to predict future events. The public records hearsay exception in Fed. R. Evid. 803(8) does not extend to predictions about the future. *See United States v. Am. Tel. & Tel. Co.*, 498 F. Supp. 353, 360-61, 363 (D.D.C. 1980) (predictions of future behavior do not constitute "factual findings" as contemplated by Rule 803(8)).

*Second*, the Report fails to satisfy Fed. R. Evid. 803(8)'s high bar for trustworthiness because the underlying data lacks sufficient foundation. *See Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 22 (6th Cir. 1984) ("Rule 803(8)(C) also requires that the report not be subject to circumstances indicating a lack of trustworthiness."); *see also Barry v. Trustees*, 467 F. Supp. 2d 91, 102 (D.D.C. 2006)

1  (House Report was "insufficiently trustworthy for admission").  The Report does not
2  disclose the source of the data, other than to note that it was provided by the U.S.
3  Department of Justice.  Dkt. 307 Ex. N at 16.  In addition, the Report's preface admits
4  that it is based upon "interviews with employees and officials of relevant agencies and
5  institutions, direct observations, and a review of applicable documents."  *Id*. at
6  Preface.  "The unverified nature of the evidence relied on … is sufficient reason" to
7  treat the Report's prediction about the future as "not trustworthy enough to be
8  admissible."  *See Bright*, 756 F.2d at 22-23.  And all but "direct observations" create
9  double, and potentially triple hearsay concerns; none of which is admissible absent an
10 independent hearsay exception.  *See Barry*, 467 F. Supp. 2d at 102 (explaining that
11 even if a Senate report is not wholly inadmissible, out-of-court statements within the
12 report are admissible only if within a hearsay exception).

13    *Third*, the prediction in the Report was made in 2006 and was based on
14 nationwide data for the period of 2001 to 2004, whereas this case concerns (a) aliens
15 in the Central District (b) currently being detained for six months or longer (c) under
16 four specific statutes (d) and subject to current practices governing supervision of
17 aliens on release in this district.  Respondents have not offered any evidence – through
18 expert testimony or otherwise – that this stale evidence ever was, or could continue to
19 be, representative of Class members.  *See Allstates Air Cargo, Inc. v. United States*,
20 42 Fed. Cl. 118, 123 (1998) (excluding as inadmissible hearsay survey offered by
21 Government, which had not met its burden to establish that "sample population was
22 properly chosen and defined"); *Reinsdorf v. Skechers U.S.A.*, --- F.Supp.2d ----, 2013
23 WL 454828, at *9-10 (C.D. Cal. 2013) (excluding survey evidence at summary
24 judgment where there was "no indication that the survey population had any
25 relationship to the relevant population"); *Thurston v. Schwarzenegger*, No. 1:08–cv–
26 00342–AWI–GBC (PC),  2011 WL 703553, at *14 (E.D. Cal. Feb. 18, 2011)
27 (excluding statistical study of general prison population as inadmissible and irrelevant
28

1  to summary judgment motion due to defendant's failure to demonstrate how it could
2  support drawing conclusions about a subpopulation of prisoners).
3       Because Respondents do not cite any other portion of the Report in their brief,
4  the entire Report should be stricken.
5       \_\_\_\_\_ Sustained
6       \_\_\_\_\_ Overruled
7
8  **Objection No. 2:**
9       **Objectionable Assertion:**
10      "More recently, in 2011 ICE arrested more than 40,000 fugitive aliens who
11 failed to leave the United States when ordered removed or failed to report to ICE as
12 required. Exh. M (Report of ICE, "Fact Sheet: ICE Fugitive Operations Program,"
13 Nov. 7, 2011).  However, nearly 480,000 fugitive alien cases remained pending at the
14 end of fiscal year 2011. *Id.*  Although these figures are not limited to criminal aliens,
15 one can presume that criminal aliens released on bond pose an even greater flight risk
16 because, for example, they are less likely to be granted relief from removal."  Dkt. 299
17 at 24.
18      **Petitioners' Objection:**
19      *First,* Petitioners object to the third sentence because it is an unsupported and
20 inadmissible factual assumption, even assuming the first two sentences are admissible
21 (and, as explained below, they are not).
22      *Second*, the first two sentences come from a "Fact Sheet" (Dkt. 307 Ex. M),
23 which fails to satisfy Fed. R. Evid. 803(8)'s high bar for trustworthiness.  *See Bright*,
24 756 F.2d at 22 ("Rule 803(8)(C) also requires that the report not be subject to
25 circumstances indicating a lack of trustworthiness."); *see also Barry*, 467 F. Supp. 2d
26 at  102 (House Report was "insufficiently trustworthy for admission").  Aside from a
27 generic reference to "ICE's databases," the Fact Sheet does not disclose the basis for
28 the factual assertions.  Dkt. 307 Ex. M.  "The unverified nature of the evidence relied

on … is sufficient reason" to treat the Fact Sheet's assertions as "not trustworthy enough to be admissible." *See Bright*, 756 F.2d at 22-23.

*Third*, the Fact Sheet was based on nationwide data, whereas this case concerns (a) aliens in the Central District (b) currently being detained for six months or longer (c) under four specific statutes (d) and subject to current practices governing supervision of aliens on release in this district. Respondents have offered no evidence – through expert testimony or otherwise – that the information in the Fact Sheet is representative of Class members. *See Allstates Air Cargo, Inc.*, 42 Fed. Cl. at 123 (excluding as inadmissible hearsay survey offered by Government, which had not met its burden to establish that "sample population was properly chosen and defined"); *Reinsdorf*, 2013 WL 454828, at *9-10 (excluding survey evidence at summary judgment where there was "no indication that the survey population had any relationship to the relevant population"); *Thurston*, 2011 WL 703553, at *14 (excluding statistical study of general prison population as inadmissible and irrelevant to summary judgment motion due to defendant's failure to demonstrate how it could support drawing conclusions about a subpopulation of prisoners).

\_\_\_\_\_ Sustained

\_\_\_\_\_ Overruled

**Objection No. 3:**

**Objectionable Assertion:**

"[B]y 1996, Congress determined that provisions allowing the release of criminal aliens by immigration judges on bond seriously undermined the Executive's ability to remove criminal aliens or prevent them from committing additional crimes during removal proceedings . . . , Congress concluded that the 1990 and 1991 amendments restoring the Attorney General's discretion to release some aliens on bond had 'weakened substantially' the government's efforts to deport criminal aliens

and to protect public safety." Dkt. 299 at 7 & n.8 (citing "1993 Senate Hearing"), 103d Cong., 1st Sess. 15, 26 (1993)).

**Petitioners' Objections:**

The Court should exclude this assertion – and thus the hearing record in its entirety – because it is prohibited hearsay not within any exception (Fed. R. Evid. 801, 802), and Respondents do not cite any other portion of this hearing record in their brief.

*First*, the portions of the hearing record that Respondents rely upon for this assertion include (1) a Staff Statement prepared by a minority group within a Senate Subcomittee, and (2) a witness's oral testimony. *See* Dkt. 299 at 7 n.8 (citing 1993 Senate Hearing, 103d Cong., 1st Sess. 15, 26 (1993)). Neither is equivalent to factual findings by Congress, as required to be potentially admissible under the public records exception. *See* Fed. R. Evid. 803(8); *Bright,* 756 F.2d at 22 (excluding subcommittee report that was comprised predominately of comments, criticism, and argument); *Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810, 813 (D.D.C. 1987) (excluding subcommittee report that lacked any "attempt . . . to formulate or set forth separate factual findings"); *Anderson v. City of New York,* 657 F.Supp. 1571, 1577–79 (S.D.N.Y. 1987) (declaring a subcommittee report to be unreliable and hence inadmissible in part because committee engaged in grandstanding and heard testimony from interested parties, not objective experts) (citation omitted).

*Second,* even were the hearing record admissible, the cited portions could not come in because no independent hearsay exceptions apply. *See* Fed. R. Evid. 801, 802; *Barry*, 467 F. Supp. 2d at 102 (explaining that even if a Senate report is not wholly inadmissible, the presence of out-of-court statements within the report are inadmissible unless each part satisfies a hearsay exception).

\_\_\_\_\_ Sustained

\_\_\_\_\_ Overruled

**Objection No. 4:**

    **Objectionable Assertion:**

"The House Judiciary Committee agreed that the failure to detain aliens during their deportation proceedings was '[a] chief reason why many deportable aliens are not removed from the United States.'" Dkt. 299 at 7 n.8 (citing H.R. Rep. No. 469, 104th Cong., 2d Sess., Pt. 1, at 123 (1996)).

    **Petitioners' Objection:**

The Court should exclude this statement – and thus the House Report – because it is prohibited hearsay not within any exception (Fed. R. Evid. 801, 802), and Respondents do not cite any other portion of this Report in their brief. The Report is not admissible for the proffered purpose under the public records exception because it contains dissenting views. S*ee* H.R. Rep. 469, Dissenting Views ("Although, we support legislation which would more effectively prevent illegal immigration, we strongly oppose the bill's historically shortsighted and dramatic reductions . . ."); *Pearce v. E.F. Hutton Group, Inc.,* 653 F.Supp. 810, 813–15 (D.D.C. 1987) (excluding House committee report that was prepared as part of the committee's oversight responsibilities, from which the minority members dissented, and that failed "to isolate or distinguish any factual findings from its subjective criticisms and conclusions") (citation omitted).

**Objection No. 5:**

    **Objectionable Assertion:**

"Petitioners also strain to find constitutional deprivation in the sufficiency of the notices provided on the ground aliens are detained 'often without access' to attorneys or family – a fact that is undeniably and outrageously wrong ….", purportedly because visitation hours at "**[e]very detention facility**" "**comply with ICE's National Detention Standards** …." (emphasis added). Dkt. 299 at 52 & n.35 (citing http://www.ice.gov/detention-facilities/ ("ICE Website"); 2008 National

Detention Visitation Standards); *see also* Dkt. 299-3 at 20 (citing 2008 and 2011 National Detention Visitation Standards to dispute background fact number 35).

**Petitioners' Objections:**

Petitioners do not dispute that ICE detention facilities maintain websites listing visitation hours and that those published visiting hours may conform to published national visitation standards. Rather, Petitioners object to this assertion because a published policy is not competent evidence of actual practice, particularly where, as here, Petitioners have submitted direct evidence regarding actual practices in this jurisdiction. *See Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1304 (D. Kan. 2010) ("Defendant relies on its Employee Handbook and collective bargaining agreements, which state that employees are to be paid for all time worked and for overtime as required by state and federal law. However, the presence of a written policy is not evidence that the policy was enforced, and certainly does not negate the possibility of an unwritten policy or general practice to the contrary."). For example, contrary to the published policies, one detention center in the Central District has limited visits to "no more than half an hour, and only during certain designated periods on three designated days a week," while another facility prohibits direct contact with anyone but retained counsel; other visits are limited to phone conversations across a see-through barrier or "video chats." Dkt. 281-7 ¶¶ 8-9 (Inlender Decl.). In addition, the Department of Homeland Security's own audits have reported failures to comply with the Detention Standards, including at facilities in the Central District. *See* Kaufman Declaration of April 5, 2013, Exh. I (filed concurrently).

Because Respondents rely upon this evidence solely to prove actual practice, and the evidence is not competent for that purpose, it should be stricken.

_____ Sustained

_____ Overruled

**Objection No. 6**:

    **Objectionable Assertion:**

"In any event, detainees have access to law library materials at detention facilities, in accordance with Exh. V (2008 National Detention Standards, "Law Libraries and Legal Material)." Dkt. 299 at 52 n.36; *see also* Dkt. 299-3 at p. 20 (citing 2008 and 2011 Law Libraries and Legal Material Standards to dispute background fact number 34).

    **Petitioners' Objections:**

Petitioners do not dispute that Respondents have published national detention standards or that such standards "provide that each detainee shall be permitted to use the law library." Dkt. 299 at 52 n.36. Rather, Petitioners object to this assertion because a published policy is not competent evidence of actual practice, particularly where, as here, Petitioners have submitted direct evidence regarding actual practices in this jurisdiction. *See Shockey*, 730 F. Supp. 2d at 1304 ("Defendant relies on its Employee Handbook and collective bargaining agreements, which state that employees are to be paid for all time worked and for overtime as required by state and federal law. However, the presence of a written policy is not evidence that the policy was enforced, and certainly does not negate the possibility of an unwritten policy or general practice to the contrary."). For example, Class members detained in the Central District have reported limited access to law libraries (*e.g.*, a maximum of roughly 30 minutes per day at certain locations) and to legal resources (*e.g.*, because a detention facility failed to maintain Internet access and its LEXIS subscription). *See* Dkt. 281-1 ¶¶ 13-18 (Merida Decl.); *see also* Dkt. 281-7 ¶ 11 (Inlender Decl.). In addition, the Department of Homeland Security's own audits have reported failures to comply with the Detention Standards, including at facilities in the Central District. *See* Kaufman Declaration of April 5, 2013, Exh. I (filed concurrently).

Because Respondents rely upon this evidence solely to prove actual practice, and the evidence is not competent for that purpose, it should be stricken.

\_\_\_\_\_ Sustained

\_\_\_\_\_ Overruled

**Objection No. 7:**

**Objectionable Declaration & Reports:**

The declaration of Benjamin B. McDowell (Dkt. 299-1) should be excluded in its entirety, and the original and rebuttal reports of Dr. Chester Palmer (Dkt. 307 Exs. P, Q) should be excluded with respect to conclusions and opinions regarding delays associated with continuances.

**Petitioners' Objections:**

The third declaration submitted by Benjamin B. McDowell in this case contains two troubling revelations. *First*, Respondents have withheld information that Mr. McDowell makes clear one would need to determine the actual dates when hearings occurred and, thus, the length of continuances. Dkt. 299-1 at 7-8 ¶¶ 12-13 (disclosing, for the first time, an "UPDATE_DATE" value in the Schedule Table). Mr. McDowell admits that Respondents created a database for purposes of this litigation that incorporated the "Schedule Table" (Dkt. 299-1 at 2 ¶ 2), but Respondents withheld a pertinent field in the Schedule Table from Petitioners and Petitioners' expert. In fact, Respondents still have not disclosed this readily-available electronic data field, except for the seven records summarized in Mr. McDowell's declaration, which relate to *one* class member. Dkt. 299-1 ¶ 13.

*Second*, to make matters worse, Mr. McDowell originally swore that the "most appropriate way to calculate the length of delays" would be by using the "Schedule Table" alone – indeed, that it would "not be appropriate" to look at "data entry or data correction contained in the Actions Table" – and, further, that the "Actions Table is not set up in a way that allows the user to link particular entries in the Actions Table to particular changes in the Schedule Table …." Dkt. 299-1 Ex. B ¶¶ 6-7 (McDowell declaration dated Dec. 14, 2012). However, if Mr. McDowell's newly submitted

declaration is to be believed, the only reliable way to calculate delay due to a continuance would be to compare the Schedule Table to the Actions Table, because the Actions Table contains data entry and data correction information not available in the Schedule Table.  Dkt. 299-1 ¶¶ 12-13; s*ee* Declaration of Susan B. Long of April 5, 2013 ¶¶ 5-6 (filed concurrently) ("Long Decl.").  In short, Mr. McDowell has not only changed his testimony, but he has done so based on undisclosed information that should have been produced during discovery.

The Court should strike the declaration of Mr. McDowell in its entirety, and also strike the declaration of Dr. Chester Palmer with respect to the portions of his analysis that concern adjournments (because it relies on data from the Schedule Table and Actions Table) because of the manifest and significant prejudice caused to Petitioners by these revelations:

- Respondents have challenged the conclusions and analysis of Petitioners' expert as incomplete, but Petitioners' expert could not have considered data that, to this day, Respondents have withheld despite its purported relevance to determining when hearings occurred and, thus, the length of continuances.  *See* Long Decl. ¶¶ 10-11.
- Petitioners could not have known until now that Respondents were withholding this information because Mr. McDowell represented that one can determine "when a hearing was adjourned" by looking at a particular field ("ADJ_DATE"),[1] and that one should measure delay solely by looking at the Schedule Table, whereas he now asserts that one must compare a field in the Schedule Table that was never previously disclosed to information in the Actions Table to ascertain whether the "ADJ_DATE" truly is the date when a hearing was adjourned.

---

[1] Mr. McDowell repeats in his current declaration that the "Schedule Table identifies, for example, when a hearing was adjourned (ADJ_DATE)," despite later explaining why this statement is inaccurate and incomplete.

- This newly disclosed information reveals additional defects in the methodology employed by Respondents' expert, Dr. Palmer, that Petitioners did not have an opportunity to explore during Dr. Palmer's depositions or to address in Dr. Long's original or rebuttal expert reports, which Petitioners expended thousands of dollars to prepare. *See* Long Decl. ¶¶ 6, 8-10.

- In addition, Mr. McDowell's recent declaration raises a host of questions about the accuracy and reliability of the data provided by Respondents regarding continuances. *See* Long Decl. ¶ 12. Mr. McDowell's purported explanation about how to determine the actual date of a hearing by comparing the Schedule Table and Actions Table does not work even for the handful of records in his declaration, which relate to only one of the more than 1,000 class members in the data set analyzed by the parties' experts.

One of Respondents' principal arguments in their brief is that immigrants request continuances, and that such requests materially contribute to the length of detention. Dkt. 299 at 36-39. Respondents rely heavily upon their expert's work to support this argument. Petitioners have set forth why, as a legal matter, these arguments do not defeat the right of Class members to adequate bond hearings. But Petitioners were entitled to the underlying data, which they repeatedly requested in discovery, so that Petitioners and Dr. Long could independently assess and rebut Respondents' claims about continuances, including those made by Respondents' expert Dr. Palmer. Given the late stage of these proceedings, that the parties have completed fact and expert discovery, and that this information was readily available to Respondents in electronic databases before the close of fact and expert discovery, the only way to cure the prejudice caused by Respondents' conduct is to strike the declaration of Mr. McDowell and the portions of Dr. Palmer's reports relating to continuances. In the alternative, and at a minimum, Mr. McDowell's declaration

should be stricken because a witness cannot change sworn testimony in response to a motion for summary judgment. *Reinsdorf v. Skechers U.S.A.*, --- F.Supp.2d ----, 2013 WL 454828, at *6-7 (C.D. Cal. 2013) (striking evidence under "sham affidavit" rule in connection with summary judgment ruling); *Fredianelli v. Jenkins*, --- F.Supp.2d ----, 2013 WL 1087653, at *1-3 (N.D. Cal. 2013) (same).

\_\_\_\_\_ Sustained

\_\_\_\_\_ Overruled

**Objection No. 8:**

    **Objectionable Assertions:**

Benjamin B. McDowell (Dkt. 299-1) asserts that various "adjournments" reflected in electronic database records are "alien caused delays," in the course of purporting to summarize records relating to five aliens. Dkt. 299-1 ¶¶ 7-11.

    **Petitioners' Objections**:

To the extent Mr. McDowell's declaration is not stricken in its entirety due to inconsistencies, and because pertinent information now relied upon by Respondents was withheld, Petitioners object to repeated assertions in his declaration that the records for five aliens reflect "alien caused delays" on the grounds of lack of foundation. Fed. R. Evid. 602. As Petitioners have demonstrated, aliens may request or receive continuances at the direction and advisement of an immigration court, and Mr. McDowell does not claim otherwise. *See* Dkt. 281-4 ¶ 5 (Castillo Decl.). The records purportedly summarized by Mr. McDowell do not capture whether a continuance or adjournment occurred at the direction and advisement of an immigration court (Long Decl. ¶¶ 4-9 (filed concurrently)), and Mr. McDowell, as a non-lawyer information technology employee, has no personal knowledge of the proceedings in the underlying actions. In light of this, Petitioners object to Mr. McDowell's speculation that these continuances were "alien caused delays" and Respondents' arguments based on that speculation.

|   |   |
|---|---|
| 1 | \_\_\_\_\_ Sustained |
| 2 | \_\_\_\_\_ Overruled |

Respectfully submitted,

Dated:   April 5, 2013            SIDLEY AUSTIN LLP


/s/   Sean A. Commons
SEAN A. COMMONS
Counsel for Petitioners

LA1 2677296v.2