1  AHILAN T. ARULANANTHAM (SBN 237841)
   aarulanantham@aclu-sc.org
2  MICHAEL KAUFMAN (SBN 254575)
   mkaufman@aclu-sc.org
3  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West Eighth Street
4  Los Angeles, CA 90017
   Telephone:  (213) 977-9500
5  Facsimile:  (213) 977-5297

6  *Attorneys for Petitioners*
   (Additional Counsel listed on following page)
7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11 ALEJANDRO RODRIGUEZ,                ) Case No. 02:07-cv-3239-TJH
   ABDIRIZAK ADEN FARAH, YUSSUF        ) (RNBx)
12 ABDIKADIR, ABEL PEREZ RUELAS,       )
   JOSE FARIAS CORNEJO, ANGEL          )
13 ARMANDO AYALA, for themselves and   ) **PETITIONERS' OPPOSITION**
   on behalf of a class of similarly-situated ) **TO RESPONDENTS'**
14 individuals,                        ) **OBJECTIONS TO EVIDENCE**
                                       ) **FILED IN SUPPORT OF**
15           Petitioners,              ) **PETITIONERS' MOTION FOR**
                                       ) **SUMMARY JUDGMENT**
16           v.                        )
                                       )
17 ERIC HOLDER, United States Attorney ) Honorable Terry J. Hatter
   General; JANET NAPOLITANO,          )
18 Secretary, Homeland Security; THOMAS ) Date:  May 6, 2013
   G. SNOW, Acting Director, Executive ) Time:  Under Submission
19 Office for Immigration Review; TIMOTHY )
   ROBBINS, Field Office Director, Los )
20 Angeles District Immigration and Customs )
   Enforcement; WESLEY LEE, Officer-in- )
21 Charge, Mira Loma Detention Center; et al.; )
   RODNEY PENNER, Captain, Mira Loma  )
22 Detention Center; SANDRA HUTCHENS,  )
   Sheriff of Orange County; OFFICER   )
23 NGUYEN, Officer-in-Charge, Theo Lacy )
   Facility; CAPTAIN DAVIS             )
24 NIGHSWONGER, Commander, Theo Lacy   )
   Facility; CAPTAIN MIKE KREUGER,     )
25 Operations Manager, James A. Musick )
   Facility; ARTHUR EDWARDS, Officer-in- )
26 Charge, Santa Ana City Jail; RUSSELL )
   DAVIS, Jail Administrator, Santa Ana City )
27 Jail,                               )
                                       )
28           Respondents.              )

JUDY RABINOVITZ
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone:  (212) 549-2618
Facsimile:  (212) 549-2654

MICHAEL TAN (SBN 284869)
mtan@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm St.
San Francisco, CA 94111
Telephone:  (415) 343-0779
Facsimile:  (415) 395-0950

JAYASHRI SRIKANTIAH (SBN 189566)
jsrikantiah@law.stanford.edu
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone:  (650) 724-2442
Facsimile:  (650) 723-4426

SEAN COMMONS (SBN 217603)
scommons@sidley.com
CODY JACOBS (SBN 272276)
cjacobs@sidley.com
JONATHAN FEINGOLD (SBN 286302)
jfeingold@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

*Attorneys for Petitioners*

Petitioners respectfully submit this opposition to Respondents' Objections to Evidence filed in Support of Petitioners' Motion for Summary Judgment (Dkt. 303). For the Court's convenience, Petitioners have reproduced the text of Respondents' objections verbatim, and then set forth why the objections are not well taken and do not create disputed issues of material fact.

**OBJECTIONS TO DECLARATION OF BYRON MERIDA (ECF No. 281-1)**

**Objection No. 1:**

**Objectionable Testimony:**

The Merida declaration in its entirety.

**Respondents' Objection:**

Respondents object to the entirety of Merida's declaration on the basis that he was not properly disclosed as a fact witness during the more than five years this case remained pending prior to the close of discovery.  Declaration of Sarah Wilson ("Wilson Dec.") (Exhibit A, Petitioners' Supplemental Initial Disclosures). Petitioners also failed to include Merida in response to interrogatories seeking a list of all individual class members Petitioners intend to use as illustrative examples in support of its position that Respondents' practices and policies fail to properly assess flight risk or danger.  *See* Wilson Dec. (Exhibit C, Petitioners' Interrogatory Responses).

Merida's declaration is excludable on that basis.  *See Durand v. Stonehouse Court Associates, LLC*, 473 F. App'x 667, 669 (9th Cir. 2012) (not an abuse of discretion to strike declaration where witness was disclosed on final day of discovery and not included in interrogatory response).  Federal Rule of Civil Procedure 37(c)(1) provides, in relevant part:  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "Implicit in Rule

1   37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."

2   *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

3       Petitioners cannot demonstrate that the untimely disclosure is substantially

4   justified or harmless.  The disclosure was made after the close of discovery and

5   immediately prior to the dispositive motions deadlines.  This places Respondents in

6   the unfair position of having to defend a motion based on evidence Respondents have

7   not had the opportunity to test in a deposition.  *See Durand*, 473 F. App'x at 669.

8   Respondents' perceived need for this information is demonstrated by Respondents'

9   interrogatories, which requested identification of class members like Merida in April

10  of 2012.  Wilson Dec. (Exhibit B, Respondents' First Interrogatories).  Additionally,

11  the Ninth Circuit has recognized that disruption of the court's discovery plan and

12  scheduling order "is not harmless."  *Wong v. Regents of the University of California*,

13  410 F.3d 1052, 1062 (9th Cir. 2005).  *Id.* at 1062.

14       _____ Sustained

15       _____ Overruled

16  **Petitioners' Response:**

17       Respondents' objections to the entirety of the declaration of Mr. Byron Merida

18  should be overruled.

19       *First*, Ms. Merida was a class member, so Respondents knew he could be a

20  potential witness in this case before Petitioners' counsel were even aware of his

21  existence.  *Second*, Petitioners only learned that Mr. Merida had specific information

22  regarding lack of access to library materials and other difficulties faced by detainees

23  after fact discovery in this case closed on October 9, 2012.  He came to Petitioners'

24  attention because he was eligible for a hearing under the Court's preliminary

25  injunction order, and Petitioners' counsel met him at that time.  Declaration of

26  Michael Kaufman ¶ 10 (dated April 5, 2013) (filed concurrently).  *Third*, even if fact

27  discovery had not already closed, Respondents have not taken the deposition of a

28  single fact witness in this case.  There is no reason to believe that Respondents would

have deposed Mr. Merida regarding such matters as access to law libraries at detention facilities or the notice (if any) provided to detainees regarding *Casas* hearings – information about which Respondents always have had equal if not greater access than Petitioners.  *Fourth*, Respondents could have readily offered a declaration to rebut assertions in Mr. Merida's declaration given that they had five weeks to respond to Petitioners' Motion for Summary Judgment and the evidence filed in support of it. *Fifth*, class counsel have an obligation to seek out evidence to support the claims of the Class, including evidence that arises during the pendency of these proceedings. Gathering such evidence does not amount to disregard for the Court's scheduling orders.

Finally, Petitioners do not rely on the declaration of Mr. Merida to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication.  *See* Dkt. 282.  Petitioners have introduced it to provide additional background and context for why this lawsuit raises matters of great significance to immigrant detainees.  Thus, Respondents' objections do not provide a basis for denying the relief requested in Petitioners' motion.

**Objection No. 2:**

**Objectionable Testimony:**

Merida Declaration, Paragraph 12:  However, most of the detainees I met in Mira Loma understood very little about their cases and the immigration process. Many did not have attorneys, speak or read English, or understand the steps for applying for relief, bond or for appeals.

**Respondents' Objection:**

The declaration does not establish a proper foundation for Merida's lay opinion. *See* Fed. R. Evid. 701.  If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful

to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. *See id.* By all appearances, Merida's testimony is based on statements by Mira Loma detainees to Merida during conversations where Merida "informally assisted" the detainee on their immigration cases. Fed. R. Evid. 801, 802. Merida's testimony is excludable on that basis. *Stoebner Holdings, Inc. v. Automobili Lamborghini S.P.A.*, 2007 WL 4230824, *2 (D. Haw. 2007) (a lay witness offering opinion testimony may not rely on hearsay); *see also* Fed. R. Evid. 801, 802. To the extent that Merida's testimony is not exclusively based on hearsay, it is excludable in its present form because the declaration does not establish a basis for Merida to personally gauge the legal comprehension level of every detainee he met at Mira Loma. *See* Fed. R. Evid. 602. Merida's declaration does not establish a sufficient basis to conclude that he had ample opportunity to assess every "detainee [he] met at Mira Loma['s] understanding of "the immigration process" or "the steps for applying for relief, bond or for appeals" during these "informal" interactions with fellow detainees. Merida Decl. at 12. The declaration likewise fails to establish that Merida has sufficient skill to evaluate whether the detainees understands the immigration process. *See* Fed. R. Evid. 701(c). Finally, the "informal" sessions could not provide a non-hearsay foundation for Merida's lay opinion about whether Mira Loma detainees were represented by attorneys during their immigration proceedings. To be admissible, Merida's opinion on that subject would have to be based on his personal observation of immigration proceedings. *See* Fed. R. Evid. 701(a); 602. Merida's declaration makes no mention of his personal observation of the immigration proceedings of other detainees or of any other basis for Merida's opinions about representation of the Mira Loma detainees he met while detained there.

\_\_\_\_\_ Sustained

\_\_\_\_\_ Overruled

4

**Petitioners' Response:**

Respondents' objections to the third and fourth sentences in the twelfth paragraph of the declaration of Mr. Byron Merida should be overruled. Mr. Merida is not offering out-of-court statements by other detainees for the truth of the matters asserted. Rather, he is testifying based on personal interactions as to his belief and state of mind that most detainees lacked the resources and ability to navigate the immigration system, which in turn explains why he informally assisted other detainees. *See Orsini v. O/S SEABROOKE O.N.*, 247 F.3d 953, 960 n.4 (9th Cir. 2000) (holding declaration containing statements of other individuals admissible on summary judgment based on declarant's "personal recollection of the events" to prove state of mind and effects of statements on the declarant) (citing Wright & Miller, Federal Practice and Procedure). Further, Mr. Merida more than adequately lays the foundation for his testimony. As explained in detail in his declaration, Mr. Merida was detained in the Central District for over three years, during which he spent substantial time working in the law libraries and otherwise providing assistance to detainees on immigration law and procedure. This experience is more than sufficient to establish foundation for the statement. In any event, these sentences in Mr. Merida's declaration are not relied upon to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication. *See* Dkt. 282. Thus, Respondents' objections do not provide a basis for denying the relief requested in Petitioners' motion.


**Objection No. 3:**

**Objectionable Testimony:**

Merida Declaration, Paragraph 20: Many of the detainees did not realize that they could request a *Casas* hearing and ask to be released on bond. I would estimate that I spoke to dozens of people who did not know they could request a *Casas* hearing. Some reported not receiving any notice of a *Casas* custody determination from ICE.

Some others reported receiving a notice, but did not understand that they could request a *Casas* hearing in immigration court.

**Respondents' Objection:**

According to this paragraph, Merida's opinion that many of the detainees did not realize that they could request a *Casas* hearing is based exclusively on conversations with "dozens" of people who reported certain facts to him. Because Merida offers these "report[s]" by third parties as evidence that the third parties did, in fact, not realize they could request a hearing, the statements are hearsay not within any exception. *See* Fed. R. Evid. 801, 802. Additionally, the testimony is improper opinion testimony. *See* Fed. R. Evid. 701; *see also, Stoebner Holdings, Inc.*, 2007 WL 4230824 at *2 (a lay witness offering opinion testimony may not rely on hearsay). To the extent that this evidence is not offered for the truth of the third party statements, the relevance of the testimony is substantially outweighed by the prejudicial nature of the testimony and strong possibility of confusion of the purpose of the evidence. *See* Fed. R. Evid. 403.

_____ Sustained

_____ Overruled

**Petitioners' Response:**

Respondents' objections to the second through fifth sentences in the twentieth paragraph of the declaration of Mr. Byron Merida should be overruled. Mr. Merida is not offering out-of-court statements by other detainees for the truth of the matters asserted. Rather, he is testifying based on personal interactions as to his belief and state of mind that most detainees lacked the resources and ability to navigate the immigration system, which in turn explains why he informally assisted other detainees, including by advising them of the right to request a *Casas* hearing. *See Orsini v. O/S SEABROOKE O.N.*, 247 F.3d 953, 960 n.4 (9th Cir. 2000) (holding declaration containing statements of other individuals admissible on summary judgment based on declarant's "personal recollection of the events" to prove state of

mind and effects of statements on the declarant) (citing Wright & Miller, Federal Practice and Procedure).  Further, Mr. Merida more than adequately lays the foundation for his testimony.  As explained in detail in his declaration, Mr. Merida was detained in the Central District for over three years, during which he spent substantial time working in the law libraries and otherwise providing assistance to detainees on immigration law and procedure.  This experience is more than sufficient to establish foundation for the statement.  In any event, these sentences in Mr. Merida's declaration are not relied upon to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication.  *See* Dkt. 282.  Thus, Respondents' objections do not provide a basis for denying the relief requested in Petitioners' motion.

## Objection No. 4:

### Objectionable Testimony:

Merida Declaration Paragraph 21:  Of the people who did not realize they could request a *Casas* hearing, many already had been detained for a significant period of time after they filed their Ninth Circuit appeal.  Several had been detained for at least 3-4 months, and a couple had been detained for more than a year after they filed their petitions for review and stays of removal.

### Respondents' Objection:

According to paragraph 20, Merida's opinion that many of the detainees did not realize that they could request a *Casas* hearing is based exclusively on conversations with "dozens" of people who reported certain facts to him.  Because Merida offers these "report[s]" by third parties as evidence that the third parties did, in fact, not realize they could request a hearing, the statements are hearsay not within any exception.  *See* Fed. R. Evid. 801, 802.  Additionally, Merida's declaration does not establish the basis for Merida's personal knowledge of his assertions.  *Los Angeles Times Communications, LLC v. Department of Army*, 442 F. Supp. 2d 880, 886 (C.D.

1    Cal. 2006) (objection to declaration sustained where it was unclear from the

2    declaration the basis for personal knowledge).

3        _____ Sustained

4        _____ Overruled

5    **Petitioners' Response:**

6        Respondents' objections to the first and second sentences in the twenty-first

7    paragraph of the declaration of Mr. Byron Merida should be overruled.  Mr. Merida is

8    not offering out-of-court statements by other detainees for the truth of the matters

9    asserted.  Rather, he is testifying based on personal interactions as to his belief and

10   state of mind that most detainees lacked the resources and ability to navigate the

11   immigration system, which in turn explains why he informally assisted other

12   detainees, including by advising them of the right to request a *Casas* hearing.  *See*

13   *Orsini v. O/S SEABROOKE O.N.*, 247 F.3d 953, 960 n.4 (9th Cir. 2000) (holding

14   declaration containing statements of other individuals admissible on summary

15   judgment based on declarant's "personal recollection of the events" to prove state of

16   mind and effects of statements on the declarant) (citing Wright & Miller, Federal

17   Practice and Procedure).  Further, Mr. Merida more than adequately lays the

18   foundation for his testimony.  As explained in detail in his declaration, Mr. Merida

19   was detained in the Central District for over three years, during which he spent

20   substantial time working in the law libraries and otherwise providing assistance to

21   detainees on immigration law and procedure.  This experience is more than sufficient

22   to establish foundation for the statement.  In any event, these sentences in Mr.

23   Merida's declaration are not relied upon to establish any of the material facts for the

24   seven issues raised in Petitioners' motion for summary judgment or adjudication.  *See*

25   Dkt. 282.  Thus, Respondents' objections do not provide a basis for denying the relief

26   requested in Petitioners' motion.

27

28

**Objection No. 5:**

      **Objectionable Testimony:**

      Merida Declaration Paragraph 22:  Most of the other detainees I met struggled to understand and represent themselves in immigration court.

      **Respondents' Objection:**

      Merida could not have observed court proceedings of "most of the other detainees he met" (which, according to paragraph 12, includes more than 500 detainees in Mira Loma alone) and obtained the personal knowledge necessary to render this testimony admissible under Rules 602, 701.  *See* Fed. R. Evid. 602, 701.

      \_\_\_\_\_ Sustained

      \_\_\_\_\_ Overruled

      **Petitioners' Response:**

      Respondents' objections to the second sentence in the twenty-second paragraph of the declaration of Mr. Byron Merida should be overruled.  Mr. Merida is not offering out-of-court statements by other detainees for the truth of the matters asserted.  Rather, he is testifying based on personal interactions as to his belief and state of mind that most detainees lacked the resources and ability to navigate the immigration system, which in turn explains why he informally assisted other detainees, including by advising them of the right to request a *Casas* hearing.  *See Orsini v. O/S SEABROOKE O.N.*, 247 F.3d 953, 960 n.4 (9th Cir. 2000) (holding declaration containing statements of other individuals admissible on summary judgment based on declarant's "personal recollection of the events" to prove state of mind and effects of statements on the declarant) (citing Wright & Miller, Federal Practice and Procedure).  Further, Mr. Merida more than adequately lays the foundation for his testimony.  As explained in detail in his declaration, Mr. Merida was detained in the Central District for over three years, during which he spent substantial time working in the law libraries and otherwise providing assistance to detainees on immigration law and procedure.  This experience is more than sufficient

to establish foundation for the statement.  In any event, this sentence in Mr. Merida's declaration is not relied upon to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication.  *See* Dkt. 282. Thus, Respondents' objections do not provide a basis for denying the relief requested in Petitioners' motion.

**OBJECTIONS TO DECLARATION OF LUIS E. GONZALEZ (ECF No. 281-2)**

**Objection No. 6:**

**Objectionable Testimony:**

The Gonzalez declaration in its entirety.

**Respondents' Objection:**

Respondents object to the entirety of Gonzalez's declaration on the basis that he was not properly disclosed by Petitioners during the more than five years this case remained pending prior to the close of discovery.  Wilson Dec. (Exhibit A). Petitioners also failed to include Mr. Irraberren-Zegarra, the client about whom Gonzalez testifies, in response to interrogatories seeking a list of all individual class members Petitioners intend to use as illustrative examples in support of its position that Respondents' practices and policies fail to properly assess flight risk or danger. *See* Wilson Dec. (Exhibit B); *see* also Wilson Dec. (Exhibit C).

Gonzalez's declaration is excludable on that basis.  *See Durand v. Stonehouse Court Associates, LLC*, 473 F. App'x 667, 669 (9th Cir. 2012) (not an abuse of discretion to strike declaration where witness was disclosed on final day of discovery and not included in interrogatory response).  Federal Rule of Civil Procedure 37(c)(1) provides, in relevant part:  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."

1   *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

2          Petitioners cannot demonstrate that the untimely disclosure is substantially

3   justified or harmless.  The disclosure was made after the close of discovery and

4   immediately prior to the dispositive motions deadlines.  This places Respondents in

5   the unfair position of having to defend a motion based on evidence Respondents have

6   not had the opportunity to test in a deposition.  *See Durand*, 473 F. App'x at 669.

7   Respondents' perceived need for this information is demonstrated by Respondents'

8   interrogatories, which requested identification of class members like Irraberren-

9   Zegarra in May of 2012.  Additionally, the Ninth Circuit has recognized that

10  disruption of the court's discovery plan and scheduling order "is not harmless."  *Wong*

11  *v. Regents of the University of California*, 410 F.3d 1052, 1062 (9th Cir. 2005).  *Id.* at

12  1062.

13          \_\_\_\_\_ Sustained

14          \_\_\_\_\_ Overruled

15  **Petitioners' Response:**

16          Respondents' objections to the entirety of the declaration of Mr. Luis Gonzalez

17  should be overruled.

18          The declaration of Mr. Luis Gonzalez was offered to establish one fact – that

19  Respondents do not always provide at least seven days advance notice of bond

20  hearings.  Contrary to what Respondents assert, Petitioners have not and do not rely

21  on any facts relating to Mr. Irraberren-Zegarra (whom Mr. Gonzalez represented at a

22  bond hearing) as an "illustrative example[] in support of [Petitioners'] position that

23  Respondents' practices and policies fail to assess flight risk or danger."  The

24  illustrative examples are contained in the declaration of Ahilan Arulanantham and

25  were disclosed in advance of this motion promptly upon being identified within the

26  voluminous A files produced by Respondents.  Mr. Gonzalez's declaration does not

27  discuss any facts concerning Mr. Irraberren-Zegarra's circumstances that would be

28  necessary to fully evaluate flight risk or danger.

Furthermore, Respondents cannot claim prejudice for at least five reasons. *First*, Respondents always have had an equal – if not greater – ability to verify the accuracy of the date when notice of this bond hearing was mailed and the date when the hearing occurred by reviewing their own records.  *Second*, the events at issue in Mr. Gonzalez's declaration occurred in mid-December 2012, more than two months after fact discovery in this case closed on October 9, 2012.  They were precipitated by this Court's order granting Petitioners' Motion for Preliminary Injunction, pursuant to which Mr. Gonzalez received (late) notice of Mr. Irraberren-Zegarra's bond hearing. Therefore, these facts could not have been discovered prior to the close of fact discovery.  *Third*, even if fact discovery had not already closed, Respondents have not taken the deposition of a single fact witness in this case.  There is no reason to believe that Respondents would have deposed Mr. Gonzalez regarding the timing of one notice for one bond hearing even assuming Petitioners had been able to see into the future and disclose him earlier.  *Fourth*, Respondents have rebuffed repeated requests by Petitioners for information regarding bond hearings afforded to Class Members as a result of this Court's preliminary injunction order.  Respondents' refusal to cooperate in discovery has forced Petitioners to conduct informal discovery, including by speaking with immigration practitioners such as Mr. Gonzalez.  *Fifth*, irrespective of Respondents' discovery practices, Class counsel have an obligation to seek out evidence to support the claims of the Class, including evidence that arises during the pendency of these proceedings.  Gathering such evidence does not amount to disregard for the Court's scheduling orders.

Finally, the declaration of Mr. Gonzalez is not relied upon to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication.  *See* Dkt. 282.  Petitioners have introduced it to provide additional background and context for why this lawsuit raises matters of great significance to immigrant detainees.  Thus, Respondents' objections do not provide a basis for denying the relief requested in Petitioners' motion.

1

2 **Objection No. 7:**

3       **Objectionable Testimony:**

4       Gonzalez Declaration, Paragraph 6:  I believe that Mr. Irraberren-Zegarra likely

5 would have received a lower bond amount if I had more notice and time to prepare for

6 the hearing.

7       **Respondents' Objection:**

8       The declaration fails to establish any basis for Gonazalez's counterfactual

9 statement and is speculative.  *See* Fed. R. Evid. 602, 701(a).  The declaration lacks

10 any indication of his level of experience in representing detainees in *Rodriguez* bond

11 hearings or additional relevant information he believes he might have been able to

12 present had he been afforded an additional three days to prepare.  *See* ECF No. 281,

13 Petitioners' Memorandum, ("Pet. Mem.") at 42 at n.24 (arguing seven day notice is

14 constitutionally required).  Its relevance is also substantially outweighed by prejudice

15 and likelihood of confusion of the limited purpose of the evidence—that limited

16 purpose being the highly unremarkable proposition that one attorney, on one occasion,

17 believed that he could have benefited from three additional days of preparation time

18 before a court hearing.  *See* Fed. R. Evid. 403.  The likelihood of confusion is

19 demonstrated by Petitioners' attempt to use the evidence to prove Respondents engage

20 in a "practice of failing to give adequate notice prior to the bond hearing."  Pet. Mem.

21 at 42 n.24.  Finally, this portion of the declaration is excludable based on Petitioners'

22 failure to disclose Mr. Irraberren-Zegarra in response to Respondents' interrogatories.

23       _____ Sustained

24       _____ Overruled

25       **Petitioners' Response:**

26       Respondents' objections to the third sentence in paragraph six of Mr.

27 Gonzalez's declaration should be overruled.

28

*First*, the declaration of Mr. Gonzalez was offered to establish one fact – that Respondents do not always provide at least seven days advance notice of bond hearings.  Contrary to what Respondents assert, Petitioners have not and do not rely on any facts relating to Mr. Irraberren-Zegarra (whom Mr. Gonzalez represented at a bond hearing) as an "illustrative example[] in support of [Petitioners'] position that Respondents' practices and policies fail to assess flight risk or danger."  The illustrative examples are contained in the declaration of Ahilan Arulanantham and were disclosed in advance of this motion promptly upon being identified within the voluminous A files produced by Respondents only after multiple discovery motions.

*Second*, there is no basis for excluding this statement under Rule 403 because the declaration is being submitted to the Court, not a jury, eliminating any imagined risk of prejudice or confusion. *See, e.g.*, *United States v. Preston*, 706 F.3d 1106, 1117 (9th Cir. 2013) ("[I]t is to be presumed, absent a showing to the contrary, that the District Judge considered only material and competent evidence in arriving at his findings of guilt.").

*Third*, Mr. Gonzalez provides more than adequate foundation for the challenged statement, which is not "speculative" or "counterfactual."  Mr. Gonzalez is an immigration practitioner with two years' experience, and the statement is not being offered for the truth of the matter asserted – namely that Mr. Gonzalez would have secured a lower bond amount – but for the nonhearsay purpose of establishing his belief that additional time to prepare "likely" would have been beneficial.  An attorney surely is qualified to opine as to whether additional time to prepare would have assisted in his presentation of a matter to a tribunal.

*Fourth*, Mr. Gonzalez also states in the prior paragraph that his practice is to "try to gather witnesses, documents and other evidence to support a client's case for bond," and that he did not have adequate time to explore those options.  Dkt. 281-2 ¶ 5.  This statement rests on an adequate foundation given Mr. Gonzalez's experience as an immigration attorney, without regard to whether the declaration also contains

information about evidence he "might have been able to present had he been afforded an additional three days to prepare."

Finally, this sentence in Mr. Gonzalez's declaration is not relied upon to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication. *See* Dkt. 282. Thus, Respondents' objections do not provide a basis for denying the relief requested in Petitioners' motion.

## Objection No. 8:

**Objectionable Testimony:**

Gonzalez Declaration, Paragraph 6: Especially in light of the fact my client was not a danger to the public or a flight risk.

**Respondents' Objection:**

This is improper opinion testimony because the declaration fails to provide a factual basis for lay witness opinion on the subject. *See* Fed. R. Evid. 701(a). The opinion of a lay witness must be predicated on concrete facts within the witness' personal observation. *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006). The declaration contains no information about Gonzalez's personal knowledge of Mr. Irraberren-Zegarra or his prior opportunities to personally observe Mr. Irraberren-Zegarra in a setting where he could reliably assess whether Mr. Irraberren-Zegarra posed a danger to the community or a flight risk. *See id.* To the extent Gonzalez's opinion is based on information relayed to him by Mr. Irraberren-Zegarra himself or Mr. Irraberren-Zegarra's family or friends, his opinion is premised on hearsay not within any exception and cannot form the basis for a lay witness opinion. *United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007) ("If [the witness] relied upon or conveyed hearsay evidence when testifying as a lay witness or if [the witness] based his lay testimony on matters not within his personal knowledge, he exceeded the bounds of properly admissible testimony."). Additionally, the very limited probative value of the testimony is substantially outweighed by the risk of prejudice and

PETITIONERS' OPPOSITION TO RESPONDENTS' EVIDENTIARY OBJECTIONS

confusion of the purpose or value of the evidence.  *See* Fed. R. Evid. 403.  Finally, this portion of the declaration is excludable based on Petitioners' failure to disclose Mr. Irraberren-Zegarra in response to Respondents' interrogatories.  *See* Wilson Dec. (Exhibit B); *see also* Wilson Dec. (Exhibit C).

\_\_\_\_\_ Sustained

\_\_\_\_\_ Overruled

**Petitioners' Response:**

Respondents' objections to the last clause in paragraph six of Mr. Gonzalez's declaration should be overruled.

*First*, the declaration of Mr. Gonzalez was offered to establish one fact – that Respondents do not always provide at least seven days advance notice of bond hearings.  Contrary to what Respondents assert, Petitioners have not and do not rely on any facts relating to Mr. Irraberren-Zegarra (whom Mr. Gonzalez represented at a bond hearing) as an "illustrative example[] in support of [Petitioners'] position that Respondents' practices and policies fail to assess flight risk or danger."  The illustrative examples are contained in the declaration of Ahilan Arulanantham and were disclosed in advance of this motion promptly upon being identified within the voluminous A files produced by Respondents only after multiple discovery motions.

*Second*, the challenged statement merely refers to the fact that the Immigration Judge set bond in Mr. Irraberren-Zegarra's case, thus establishing that the judge did not believe him to be a danger or flight risk.  *See generally Prieto-Romero v. Clark*, 534 F.3d 1053, 1068 (9th Cir. 2008) (noting that "the IJ concluded that [petitioner] was not a flight risk or a danger to the community, and so merited release on bond [of $15,000].").

*Third*, there is no basis for excluding this statement under Rule 403 because the declaration is being submitted to the Court, not a jury, eliminating any imagined risk of prejudice or confusion.  *See, e.g.*, *United States v. Preston*, 706 F.3d 1106, 1117 (9th Cir. 2013) ("[I]t is to be presumed, absent a showing to the contrary, that the

LA1 2677296v.2

District Judge considered only material and competent evidence in arriving at his findings of guilt.").

*Fourth*, Mr. Gonzalez provides more than adequate foundation for the challenged statement.  Mr. Gonzalez is an immigration practitioner with two years' experience, counsel for Mr. Irraberren-Zegarra, and the statement is not being offered for the truth of the matter asserted – namely that Mr. Irraberren-Zegarra was not a public danger or flight right – but for the nonhearsay purpose of explaining why Mr. Gonzalez believes additional time to prepare for the bond hearing would have been beneficial.  An attorney surely is qualified to opine as to whether additional time to prepare would have assisted in his presentation of a matter to a tribunal.

Finally, this clause in Mr. Gonzalez's declaration is not relied upon to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication.  *See* Dkt. 282.  Thus, Respondents' objections do not provide a basis for denying the relief requested in Petitioners' motion.

## OBJECTIONS TO THE DECLARATION OF MICHAEL KAUFMAN
### (ECF No. 281-3)

**Objection No. 9:**

**Objectionable Testimony:**

Kaufman Declaration, Paragraph 27:  Based on my experience, I believe the bed space capacity for the Adelanto, Theo Lacy, Musick, and Santa Ana City Jail facilities is approximately 2,100 to 2,500.

**Respondents' Objection:**

The declaration fails to provide information supporting personal knowledge of facility bed space or define "my experience."  *See* Fed. R. Evid. 602.  To the extent it is based on information from third parties, it is hearsay not within any exception.  Fed. R. Evid. 801, 802.

_____ Sustained

1   _____ Overruled

2   **Petitioners' Response:**

3   Respondents' objection to paragraph 27 of the declaration of Michael Kaufman

4   should be overruled.

5   *First*, the purported objection ignores the preceding paragraph in Mr.

6   Kaufman's declaration, which lays the foundation for this statement, including, among

7   other things, that Mr. Kaufman has "spent extensive time visiting" each of the

8   detention centers in question. Dkt. 281-3 ¶ 26. He also has been on "tours" and had

9   other opportunities to personally observe "interior portions" of certain of these

10  facilities. Dkt. 281-3 ¶ 26. These suffice to establish foundation for the statement.

11  *Second*, the declaration contains a conservative estimate of bed space at 2,100

12  to 2,500 beds that is corroborated by two other facts: (1) Respondents produced lists

13  of Class Members detained in these facilities, including "snapshot" lists of

14  approximately 400 individuals detained during several days (Dkt. 292 ¶ 3

15  (Arulanantham Decl.)), and a separate list of approximately 1,026 persons who were

16  identified as Class Members detained during a one-year period (Dkt. 281-3 ¶ 2); and

17  (2) Respondents have estimated the bed capacity of the Los Angeles area at 2,900,

18  including in connection with the briefing of this motion (Dkt. 299-3 at 14 (citing Lee

19  Dep. 24:21-24:25)).

20  Finally, this sentence in Mr. Kaufman's declaration is not relied upon to

21  establish any of the material facts for the seven issues raised in Petitioners' motion for

22  summary judgment or adjudication. *See* Dkt. 282. Thus, Respondents' objection does

23  not provide a basis for denying the relief requested in Petitioners' motion.

24

25  **Objection No. 10:**

26  **Objectionable Testimony:**

27  Kaufman Declaration, Paragraph 28: ICE officials have informed me that,

28  following the closure of the Mira Loma facility and the subsequent transfer of many of

its detainees to Adelanto, the Adelanto facility is currently operating near or at its bed space capacity of approximately 1,200-1,300.

**Respondents' Objection:**

The paragraph includes hearsay statements by unnamed ICE officials. Petitioners, as the proponents of this evidence, bear the burden of demonstrating that Federal Rule of Evidence 801(d)(2) applies such that these statements are admissible. *See Durham v. County of Maui*, 804 F. Supp. 2d 1068, 1070 n.3 (D. Haw. 2011). The declaration does not contain sufficient detail for Petitioners to establish that Rule 801(d)(2) applies and therefore this statement is inadmissible hearsay not within any exception. *See* Fed. R. Evid. 801, 802.

\_\_\_\_\_ Sustained

\_\_\_\_\_ Overruled

**Petitioners' Response:**

Respondents' objection to the last sentence in paragraph 28 of the declaration of Michael Kaufman should be overruled. *First*, Mr. Kaufman already has established a foundation for testifying as to the bed capacity of the Adelanto facility based on the "extensive time" he has spent visiting this facility, including on "tours" and in connection with conducting presentations. Dkt. 281-3 ¶ 26. *Second*, even if Mr. Kaufman had relied entirely on out-of-court statements, which is not the case, Mr. Kaufman expressly identifies the out-of-court speakers as Respondents' agents, which would make the assertion independently admissible as a statement of a party opponent, particularly given that no one other than an ICE agent could have provided the capacity information to Mr. Kaufman while he was at the detention center. *See, e.g.*, *Harris v. Vector Mktg. Corp.*, 656 F. Supp. 2d 1128, 1133-34 (N.D. Cal. 2009) (holding that statements by unidentified agents of defendant were admissible under Rule 801(d)(2) as statements of party opponents because, even though declarant "has not identified who at [defendant's company] told her to do these things," "[i]t is highly unlikely that anyone but a Vector agent would have given her such

PETITIONERS' OPPOSITION TO RESPONDENTS' EVIDENTIARY OBJECTIONS

LA1 2677296v.2

1   instructions.").  In addition, Respondents do not need to know the names of the agents

2   in order to challenge or test an out-of-court statement about the number of beds at the

3   Adelanto facility because Respondents have ready and immediate access to

4   information about their own facilities.

5        Finally, this sentence in Mr. Kaufman's declaration is not relied upon to

6   establish any of the material facts for the seven issues raised in Petitioners' motion for

7   summary judgment or adjudication.  *See* Dkt. 282.  Thus, Respondents' objection does

8   not provide a basis for denying the relief requested in Petitioners' motion.

9

10       **OBJECTIONS TO THE DECLARATION OF MERCEDES VICTORIA**

11                      **CASTILLO (ECF No. 281-4)**

12  **Objection No. 11:**

13       **Objectionable Testimony:**

14       The Castillo declaration in its entirety.

15       **Respondents' Objection:**

16       As set forth in the motion to strike, Respondents object to the entirety of the

17  declaration on the basis that he was not properly disclosed by Petitioners during the

18  more than five years this case remained pending prior to the close of discovery.

19  Wilson Dec. (Exhibit A).  Castillo's declaration is excludable on that basis.  *See*

20  *Durand v. Stonehouse Court Associates, LLC*, 473 F. App'x 667, 669 (9th Cir. 2012)

21  (not an abuse of discretion to strike declaration where witness was disclosed on final

22  day of discovery and not included in interrogatory response).  Federal Rule of Civil

23  Procedure 37(c)(1) provides, in relevant part:  "If a party fails to provide information

24  or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

25  that information or witness to supply evidence on a motion, at a hearing, or at trial,

26  unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

27  "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove

28  harmlessness."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107

(9th Cir. 2001).

Petitioners cannot demonstrate that the untimely disclosure is substantially justified or harmless. The disclosure was made after the close of discovery and immediately prior to the dispositive motions deadlines. This places Respondents in the unfair position of having to defend a motion based on evidence Respondents have not had the opportunity to test in a deposition. *See Durand*, 473 F. App'x at 669. Additionally, the Ninth Circuit has recognized that disruption of the court's discovery plan and scheduling order "is not harmless." *Wong v. Regents of the University of California*, 410 F.3d 1052, 1062 (9th Cir. 2005). *Id.* at 1062.

\_\_\_\_\_ Sustained

\_\_\_\_\_ Overruled

**Petitioners' Response:**

Respondents' objection to the entirety of the declaration of Ms. Mercedes Victoria Castillo should be overruled.

*First*, Petitioners could not reasonably have been expected to identify and interview every attorney who had at one time represented class members in individual immigration proceedings to determine whether they were willing to share specific information particularly pertinent to this case. *Second*, Petitioners only learned that Ms. Castillo had specific information regarding the practices of immigration judges at Mira Loma with respect to continuances after the close of fact discovery. Declaration of Michael Kaufman ¶ 11 (dated April 5, 2013) (filed concurrently). *Third*, even if fact discovery had not already closed, Respondents have not taken the deposition of a single fact witness in this case. There is no reason to believe that Respondents would have deposed Ms. Castillo regarding the practices of immigration judges at Mira Loma because Respondents have direct access to the judges themselves. *Fourth*, Respondents could have readily offered a declaration to rebut assertions in Ms. Castillo's declaration, including from the Chief Immigration Judge for the Los Angeles Area of Responsibility, who Respondents already have designated as a person

1  most knowledgeable.  *Fifth*, class counsel have an obligation to seek out evidence to

2  support the claims of the Class, including evidence that arises during the pendency of

3  these proceedings.  Gathering such evidence does not amount to disregard for the

4  Court's scheduling orders.

5        Finally, the declaration of Ms. Castillo is not relied upon to establish any of the

6  material facts for the seven issues raised in Petitioners' motion for summary judgment

7  or adjudication.  *See* Dkt. 282.  Petitioners have introduced it to provide additional

8  background and context for why this lawsuit raises matters of great significance to

9  immigrant detainees.  Thus, Respondents' objections do not provide a basis for

10  denying the relief requested in Petitioners' motion.

11

12  **Objection No. 12:**

13        **Objectionable Testimony:**

14        Castillo Declaration, Paragraph 4:  On several occasions I was retained or asked

15  for pro-bono assistance after an IJ at Mira Loma has asked the detainee to find

16  someone to help them with their application.

17        **Respondents' Objection:**

18        This statement conveys inadmissible hearsay statements by Castillo's clients

19  recounting events that she did not personally observe.  *See* Fed. R. Evid. 801, 802,

20  602.  Petitioners rely on this testimony for the truth of the matter asserted, specifically

21  as proof that "immigration judges in the Central District routinely encourage *pro se*

22  detainees to take continuances to find an attorney where they appear eligible for

23  relief."  Pet. Mem. at 15.

24        _____ Sustained

25        _____ Overruled

26        **Petitioners' Response:**

27        Respondents' objection to paragraph four of the declaration of Ms. Mercedes

28  Victoria Castillo should be overruled.  *First*, the statement does not purport to recount

statements by Ms. Castillo's clients, but rather rulings by immigration judges, and Ms. Castillo surely is competent to testify as to the procedural history of matters in which she has been retained as counsel. *Second*, to the extent this statement is based solely on conversations with her clients, the statement nonetheless is admissible to prove the effect on the listener, Ms. Castillo, who took cases (sometimes pro bono) because she believed Immigration Judges had recommended retaining counsel. *See Orsini v. O/S SEABROOKE O.N.*, 247 F.3d 953, 960 n.4 (9th Cir. 2000) (holding declaration containing statements of other individuals admissible on summary judgment based on declarant's "personal recollection of the events" to prove state of mind and effects of statements on the declarant) (citing Wright & Miller, Federal Practice and Procedure).

Finally, this paragraph in Ms. Castillo's declaration is not relied upon to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication. *See* Dkt. 282. Thus, Respondents' objection does not provide a basis for denying the relief requested in Petitioners' motion.

**Objection No. 13:**

**Objectionable Testimony:**

Castillo Declaration, Paragraph 7: I have been retained by several detainees at Adelanto who were told by their respective IJ to find an attorney to assist with a claim or application for relief. A few detainees told me that Judge Ho or Sholomson told them that they would not proceed with their cases until they came back with an attorney.

**Respondents' Objection:**

This statement is inadmissible hearsay not within any exception. *See* Fed. R. Evid. 801, 802. Castillo conveys hearsay statements by her clients recounting events in immigration court and is offered to prove that those events occurred. *See* Fed. R. Evid. 801, 802; Pet. Mem. at 15 (characterizing Castillo's declaration as proof that "immigration judges in the Central District routinely encourage *pro se* detainees to

1  take continuances to find an attorney where they appear eligible for relief"). Castillo

2  also lacks personal knowledge of the events to which she testifies. Fed. R. Evid. 602.

3  _____ Sustained

4  _____ Overruled

5  **Petitioners' Response:**

6  Respondents' objection to paragraph seven of the declaration of Ms. Mercedes

7  Victoria Castillo should be overruled. *First*, the statements relate to rulings by

8  immigration judges, and Ms. Castillo is competent to testify as to the procedural

9  history of matters in which she has been retained as counsel. *Second*, to the extent this

10  statement is based solely on conversations with her clients, the statement nonetheless

11  is admissible to prove the effect on the listener, Ms. Castillo, who undertook

12  representation at least in part because she believed the detainee received direction

13  from an Immigration Judge. *See Orsini v. O/S SEABROOKE O.N.*, 247 F.3d 953, 960

14  n.4 (9th Cir. 2000) (holding declaration containing statements of other individuals

15  admissible on summary judgment based on declarant's "personal recollection of the

16  events" to prove state of mind and effects of statements on the declarant) (citing

17  Wright & Miller, Federal Practice and Procedure).

18  Finally, this paragraph in Ms. Castillo's declaration is not relied upon to

19  establish any of the material facts for the seven issues raised in Petitioners' motion for

20  summary judgment or adjudication. *See* Dkt. 282. Thus, Respondents' objection does

21  not provide a basis for denying the relief requested in Petitioners' motion.

22

23  **Objection No. 14:**

24  **Objectionable Testimony:**

25  Castillo Declaration, Paragraph 8: While waiting to be called on my cases for

26  other clients, I have witnessed IJs at the Los Angeles courthouse ask detainees a few

27  questions and given them a continuance to seek counsel. I have also witnessed Judge

28  Ho tell a respondent that she would not proceed with his case until he had obtained an

attorney.  **Based on the IJ's questions, I believe this was because the IJ concluded that the detainee was eligible for relief and needed the assistance of counsel to help prepare his application for relief.**

**Respondents' Objection:**

The bolded statement is an inadmissible lay witness opinion.  "[T]he interpretation of *clear* statements is not permissible, and is barred by the helpfulness requirement of both Fed. R. Evid. 701 and Fed. R. Evid. 702."  *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) (emphasis in original).  A lay opinion is not helpful or necessary to clear understanding of testimony, when the fact finder has been provided with all the information the witness possesses.  *United States v. Sheet*, 665 F.2d 983, 985 (9th Cir. 1982).  "If the [fact finder] can be put into a position of equal vantage with the witness for drawing the opinion, then the witness may not give an opinion."  *Id.*  Castillo specified that her opinion regarding the inner workings of Judge Ho's mind is based entirely on the questions that Judge Ho asked the detainee.  Therefore, while Castillo may recount the questions Judge Ho asked the detainee, she may not offer an opinion as to what the fact finder may derive from the questions.  *Id.*  Under Rule 701(b), that opinion unnecessarily intrudes on the province of the fact finder.  Additionally, the testimony is speculative as Castillo lacks personal knowledge of Judge Ho's views regarding the detainee's eligibility for relief.  Fed. R. Evid. 602.  Finally, the very limited probative value of the testimony is substantially outweighed by the risk of prejudice.  *See* Fed. R. Evid. 403.

_____ Sustained

_____ Overruled

**Petitioners' Response:**

Respondents' objection to the last sentence in paragraph eight of the declaration of Ms. Mercedes Victoria Castillo should be overruled.  *First*, the witness is merely stating her belief, not claiming that she actually knows what Immigration Judge Ho was thinking on any particular occasion.  *Second*, Ms. Castillo has adequately laid the

foundation for her statements. As explained in detail in her declaration, Ms. Castillo is an experienced immigration attorney who regularly represents detained immigrants and appears in immigration court on their behalf, including at least forty detainees who have been detained at a facility in the Los Angeles Area of Responsibility. This experience is more than sufficient to establish foundation for her statements. *Third*, there is no basis for excluding this statement under Rule 403 because the declaration is being submitted to the Court, not a jury, eliminating any imagined risk of prejudice or confusion. *See, e.g.*, *United States v. Preston*, 706 F.3d 1106, 1117 (9th Cir. 2013) ("[I]t is to be presumed, absent a showing to the contrary, that the District Judge considered only material and competent evidence in arriving at his findings of guilt.").

Finally, this paragraph in Ms. Castillo's declaration is not relied upon to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication. *See* Dkt. 282. Thus, Respondents' objection does not provide a basis for denying the relief requested in Petitioners' motion.

### OBJECTIONS TO THE DECLARATION OF STACEY TOLCHIN
### (ECF No. 281-5)

**Objection No. 15:**

**Objectionable Testimony:**

Tolchin Declaration, Paragraph 6: In my cases involving detained clients eligible for hearings under *Casas* or *Diouf II*, the Department of Homeland Security (DHS) did not provide written or verbal notice to the detainees that they were eligible for a *Casas* / *Diouf* hearing.

**Respondents' Objection:**

This statement conveys inadmissible hearsay statements by Tolchin's clients recounting events that she did not personally observe offered to prove that those events occurred as recounted by the client. *See* Fed. R. Evid. 801, 802, 602.

_____ Sustained

1    _____ Overruled

2    **Petitioners' Response:**

3    Respondents' objection to the first sentence in paragraph six of the declaration

4    of Ms. Stacey Tolchin should be overruled.  *First*, the statement is not hearsay

5    because it relates to the absence of an act.  *See* Fed. R. Evid. 803(7) & Cmts. to § (7).

6    *Second*, an attorney that is counsel of record surely is competent to testify as to

7    whether a client received formal notice of a right to a hearing, including because one

8    would expect any such notice to appear in the file which the attorney would have, and

9    because one would expect the Government to take the position during immigration

10   proceedings that notice had been provided, underscoring why Ms. Tolchin's assertion

11   about the absence of notice is admissible nonhearsay.  In any event, Ms. Tolchin's

12   declaration is not relied on to establish any of the material facts for six of the seven

13   issues raised in Petitioners' motion for summary judgment or adjudication, and, as to

14   the seventh issue, this particular sentence is not necessary to establish the one material

15   fact Petitioners have cited it for.  *See* Dkt. 282.  Thus, Respondents' objection does

16   not provide a basis for denying the relief requested in Petitioners' motion.

17

18   <u>**Objection No. 16**</u>:

19        **Objectionable Testimony:**

20        Tolchin Declaration, Paragraph 12:  My clients often tell me that they find the

21   shackles painful and humiliating.

22        **Respondents' Objection:**

23        This statement is inadmissible hearsay.  *See* Fed. R. Evid. 801, 802.  If offered

24   for a non-hearsay purpose, it should be excluded under Rule 403 because it lacks

25   probative value and is prejudicial.  Fed. R. Evid. 403.

26        _____ Sustained

27        _____ Overruled

28

LA1 2677296v.2

**Petitioners' Response:**

Respondents' objection to the last sentence in paragraph twelve of the declaration of Ms. Stacey Tolchin should be overruled.  The statements qualify as a present sense impression and statements of then-existing physical condition because, as this paragraph makes clear, Ms. Tolchin is talking about circumstances where immigrant detainee clients are brought to hearings handcuffed and shackled.  Fed. R. Evid. 803(1) & (3); *Territory of Guam v. Ignacio*, 10 F.3d 608, 614 (9th Cir. 1993) (admitting statement of victim's sister that the victim had suffered injury because "[s]ince the victim made the statements while she was experiencing the pain, they come within the present sense impression exception."); *United States v. Murillo*, 288 F.3d 1126, 1137 (9th Cir. 2002) (statements admissible as present sense impression so long as "[t]he declarant, but not the witness who overhears the declarant, must 'have personal knowledge of the events described.'"); *Wagner v. County of Maricopa*, 2013 U.S. App. LEXIS 3312, 8 (9th Cir. Feb. 13, 2013) (memorandum disposition) (testimony by witness concerning "the emotional impact" of mistreatment on victim and "how humiliated [the victim] felt" admissible under Rule 803(3)).

In any event, this sentence in Ms. Tolchin's declaration is not relied on to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication.  *See* Dkt. 282.  Thus, Respondents' objection does not provide a basis for denying the relief requested in Petitioners' motion.

**OBJECTIONS TO THE DECLARATION OF SUSAN LONG (ECF No. 281-6)**

Respondents do not object to any specific statements in Long's declaration or to statements in Dr.  Long's reports used by Petitioners in support of their motion, but reserve the right to object to portions of Long's reports if cited by Petitioners in future filings in this case.  *See U.S. ex rel. Poong Lim/Pert Joint Venture v. Dick Pacific/Ghemrn Joint Venture*, No. A03-290-CV, 2005 WL 3047864, *1 (D. Alaska Nov. 10, 2005) (premature to object to expert deposition testimony where not clear

LA1 2677296v.2

objectionable testimony will be used in support of motion); *Adobe Systems Inc. v. Wowza Media Systems, LLC*, No. C 11-2243 CW, 2013 WL 450626, *1 (N.D. Cal. Feb. 13, 2013) (premature to object to expert report before motion is filed using the report).

**Petitioners' Response:**

Because Respondents do not object to Ms. Long's declaration in any respect, no response is required. Petitioners, however, reserve their right to assert that any future objection to her declaration has been waived.

**OBJECTIONS TO THE DECLARATION OF TALIA INLENDER**
**(ECF No. 281-7)**

**Objection No. 17:**

**Objectionable Testimony:**

The Inlender declaration in its entirety.

**Respondents' Objection:**

Respondents object to the entirety of the declaration on the basis that Inlender was not properly disclosed by Petitioners during the more than five years this case remained pending prior to the close of discovery. Wilson Dec. (Exhibit A). Federal Rule of Civil Procedure 37(c)(1) provides, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). Petitioners cannot demonstrate that the untimely disclosure is substantially jusrified harmless. The disclosure was made after the close of discovery and immediately prior to the dispositive motions deadlines. This places Respondents in the unfair position of having to defend a motion based on evidence

PETITIONERS' OPPOSITION TO RESPONDENTS' EVIDENTIARY OBJECTIONS

LA1 2677296v.2

Respondents have not had the opportunity to test in a deposition. *See Durand v. Stonehouse Court Associates*, LLC, 473 F. App'x 667, 669 (9th Cir. 2012). Additionally, the Ninth Circuit has recognized that disruption of the court's discovery plan and scheduling order "is not harmless." *Wong v. Regents of the University of California*, 410 F.3d 1052, 1062 (9th Cir. 2005). *Id.* at 1062.

\_\_\_\_\_ Sustained

\_\_\_\_\_ Overruled

**Petitioners' Response:**

Respondents' objections to the entirety of the declaration of Ms. Talia Inlender should be overruled. *First*, Respondents objections rest on a false premise because Petitioners disclosed that Ms. Inlender had relevant information no later than August 2012, when they submitted a declaration by Ms. Inlender in connection with briefing on this Court's preliminary injunction order, nearly two months before the close of fact discovery. Dkt. 252-1 (Exh. 52). Respondents did not object to the disclosure of Ms. Inlender at that time, and thus cannot be heard to raise that objection seven months later. *Second*, Respondents have not taken the deposition of a single fact witness in this case, so it is disingenuous to assert that they have been unfairly deprived of an opportunity to depose a witness disclosed before the close of fact discovery.

Finally, the declaration of Ms. Inlender is not relied upon to establish any of the material facts for the seven issues raised in Petitioners' motion for summary judgment or adjudication. *See* Dkt. 282. Petitioners have introduced it to provide additional background and context for why this lawsuit raises matters of great significance to incarcerated immigrants. Thus, Respondents' objections do not provide a basis for denying the relief requested in Petitioners' motion.

1
2

## OBJECTIONS TO THE FIRST CORRECTED DECLARATION OF MICHAEL TAN (ECF No. 283)

3 **Objection No. 18:**

4 **Objectionable Testimony:**

5 All summary testimony contained in the Tan declaration, paragraphs 7-35.

6 **Respondents' Objection:**

7 The summary information in the Tan declaration is not admissible under

8 Federal Rule of Evidence 1006.  Respondents first learned of Tan's summaries after

9 Petitioners filed for summary judgment.  *See* ECF No. 283 (corrected declaration filed

10 on Feb. 11, 2013).  When Respondents realized that they were unable to verify

11 Petitioners' summary claims based on the information provided by Petitioners,

12 Respondents wrote to Petitioners' counsel on February 19, 2013.  Wilson Dec.

13 (Exhibit D, Feb. 19 Letter to Petitioners).  In the letter to counsel, Respondents

14 requested a complete list of the names and A numbers associated with calculations

15 contained in paragraphs 13 through 20 of the declaration.  *Id.* For example,

16 Respondents requested that Petitioners provide a list of names and A numbers of the

17 138 class members Tan claims in paragraph 17a "had a child or children who resided

18 in the United States."  *Id.* at 2.  Respondents also asked that Petitioners provide "any

19 written guidance supplied to the reviewers to guide their assessment of whether a file

20 'contained information indicating' that the alien had (1) 'a child or children who

21 resided in the United States,' (2) 'a child or children with U.S. Citizenship,' or (3) 'a

22 spouse who resided in the United States.'" *Id.* at 2 (quoting Tan Decl. at ¶¶ 17, 18,

23 20).  Respondents explained that under controlling case law, Respondents are entitled

24 to depose Tan to explore how the summaries were compiled, but expressed a

25 willingness to forgo the deposition request if Petitioners would provide the requested

26 information.  *Id.*  Due to the impending cross-motion deadline and Petitioners' belief

27 that the information supporting Tan's sworn statement would be readily available to

28

Petitioners, Respondents asked that Petitioners provide the information in an expeditious manner. *Id.* at 3.

On February 20, 2013, Petitioners' counsel responded to Respondents' letter by asserting that, although Respondents are not entitled to any of the requested information, Petitioners would provide the lists requested by Petitioners. Wilson Dec. (Exhibit E, Feb. 20 Letter from Petitioners). Petitioners objected to the request for information about file review process and indicated that Petitioners would not make Tan available for deposition because Petitioners' believed his testimony on the matter to be protected by the attorney work product privilege. *See id.* Shortly after receiving Petitioners' letter, Respondents asked Petitioners when the list would be available. Wilson Dec. (Exhibit F, at 1-2). Petitioners declined to provide a firm date, but indicated that Petitioners hoped to provide the list early the following week. *Id.* at 1. Respondents inquired about the status of the lists again on February 27, 2013. *Id.* at 1.

On March 1, Respondents received the lists. *Id.* at 1, 3. In the letter accompanying the lists, Petitioners explained that "[i]n the course of compiling this information, we discovered and corrected technical errors" and that the lists provided by Petitioners is based on "corrected calculations." Indeed, Petitioners' attached lists contained corrected calculations for each of the 19 calculations provided in these paragraphs. *Compare* Wilson Dec. (Exhibit F at 4-130) *with* (Exhibit D). The updated lists changes the universe of individuals for whom the summary data was provided by nearly 30 class members. *Compare id.* at Exhibit F at 16 (list of aliens provided in response to Request 1 includes 582 class members) *to* Wilson Dec. (Exhibit D, at 2 (request 1 seeking 610 class membered referred to in paragraphs 13 and 18)) *and* Tan Declaration at ¶¶ 13 and 18 (the summary below pertains to 610 aliens). It also changed all of the calculations based on this data in the challenged paragraphs, several by more than 10 class members. Compare *id.* at Exhibit F at 103 (list of aliens provided in response to Request 12 includes 477 aliens) *to* Wilson Declaration (Exhibit D, at 2 (request 12 seeking 498 class membered referred to in

PETITIONERS' OPPOSITION TO RESPONDENTS' EVIDENTIARY OBJECTIONS

LA1 2677296v.2

paragraph 18c)) *and* Tan Declaration at ¶ 18c ("498 A files contained information
indicating whether the class member had a child or children who reside in the United
States). Despite the clear inaccuracies in Tan's summary data, Respondents [SIC] did
not provide the requested instructional documents. *See* Wilson Dec. (Exhibit E).
Rather, Petitioners asserted that they intended to "promptly" submit a new declaration
with corrected calculations and new information "regarding class members' ages at
the time of their entry." *Id.* Petitioners did not provide a copy of the new calculations
related to class members' ages at that time. Petitioners have not filed a second
corrected Tan declaration.

Before a summary may be admitted as evidence, the proponent of the evidence
must lay a proper foundation as to the admissibility of the material that is summarized
and show that the summary is accurate. *United States v. Menendez*, No. CV 11-06313
MMM (JCGx), 2013 WL 828926 *3 (C.D. Cal. March 6, 2013). Petitioners'
subsequent retraction of *every* calculation in the declaration renders the summary
evidence – both the current version and any future corrected declaration –
inadmissible. *See United States v. Anekwu*, 695 F.3d 967, 981 (9th Cir. 2012)
(quoting *United States v. Johnson*, 594 F.2d 1253, 1257 (9th Cir. 1979)) (accuracy of
the summary data is a precondition for admissibility). Additionally, by failing to
provide Respondents with the requested instructional materials, or any information
about the types of documents on which the reviewers relied in calculating the family
ties data, Petitioners cannot meet their burden of demonstrating that the summaries in
paragraphs 17-20 are based on reliable and admissible information. *Id.* Because
Petitioners purport to use the summary information for a hearsay-purpose – to show,
for example, that "class members had children" – Petitioners must establish a hearsay
exception for each of the documents on which it relied for that information.[1] If the

---

[1] This hearsay issue is distinct from the hearsay objection covered by counsel's
stipulation dated February 9, 2012. *See* Sealed Declaration of Ahilan Arulanantham
(Exhibit 2). Although the parties stipulated around the first level of hearsay issues

instructions provided to the reviewers stated, for example, that in determining whether a class member has children who are United States citizens, *see* paragraph 17b, the reviewer may only count files containing a birth certificate for the child which names the class member as a parent, the calculation would rely on admissible information for an admissible purpose. *See* Fed. R. Evid. 803(9) (hearsay exception for records of vital statistics). If, however, the reviewers relied on documents not covered by any hearsay exception – photographs purporting to be of citizen children, unsworn letters mentioning children, police reports naming children as witnesses, self-serving or unverified statements by the class members or others – the summary evidence is inadmissible because the underlying evidence is inadmissible for the purpose for which it is used in the summary. C.A. Wright & V.J. Gold, 31 Fed. Practice and Procedure § 8043, at 527 (2000) ("Rule 1006 evidence may also be excluded where the source materials are inadmissible hearsay or even where just some parts of those materials are inadmissible hearsay."). Therefore, Petitioners have failed to carry their burden of establishing the admissibility of the summary evidence.

The proponent must also establish that the underlying materials upon which the summary is based were made available to the opposing party for inspection. *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. -2011). The availability requirement ensures that the opposing party has "an opportunity to verify the reliability and accuracy of the summary prior to trial." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261 (9th Cir. 1984). In addition to requiring that the underlying documents be provided to the opposing party, courts also require the propounding party to provide

---

posed by use of the administrative record, that stipulation does not waive Respondents' objection to uses of the documents that raise double hearsay issues. *See id*. So while Respondents stipulated that the administrative files are business records and not hearsay when used for the purpose of showing the contents of that file, Respondents did not stipulate that an unsworn letter from the file asserting, for example, that the class member is a skilled tradesman may be used for the purpose of showing that the class member is, in fact, a skilled tradesman.

LA1 2677296v.2

the *summaries* at a reasonable time prior to submitting them into evidence "because, without notice of the summaries' contents, adverse parties cannot know what to look for in the source material to determine if the summaries are accurate." *See United States v. Dukes*, 242 F. App'x 37, 50 (4th Cir. 2007) (quoting 31 C.A. Wright & V.J. Gold, *Federal Practice and Procedure* § 8045, at 549 (2000)).

The summary information in the declaration is also inadmissible based on Petitioners' failure to establish the reasonable availability of the underlying information as required by Rule 1006. Petitioners failed to make the evidence available in time for proper inspection by Respondents. *See id.* (documents not "available" prior to notice of what to look for in the records). Respondents had only 14 days, during which Respondents were busy preparing the cross-motion for summary judgment, to work with Petitioners' modified numbers. The fact that this is an insufficient amount of time is demonstrated by the 10 days Petitioners required to provide the requested lists of their data, even after they claimed to have already completed their analysis. Petitioners have yet to provide Respondents with corrected numbers for summary information related to paragraphs 28-35. Therefore, Respondents have had no opportunity to verify the accuracy of that data. Petitioners' refusal to allow Respondents an opportunity to depose Tan (or cross examine him at trial) exacerbates the prejudice to the Respondents in this regard because Respondents are unable to use cross-examination to test theories of inaccuracies.[2] *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 n. 9 (9th Cir. 1985) (summary not inadmissible under Rule 1006, even though "self-calculated" and "unverified," because inaccuracies could be brought out on cross-examination); *see also Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (summary judgment

---

[2] Contrary to Petitioners' assertion, the attorney work product privilege does not prevent such testimony. *See Montana Land and Mineral Owners Association, Inc. v. Devon Energy Corp.*, No. CV 05-30-H-DWM, 2006 WL 1876859, *3-5 (D. Mont. June 2, 2006) (use of summary evidence waives attorney-work product protection on topics related to preparation of the summaries).

declaration inadmissible where declarant could not testify to the contents at trial).

\_\_\_\_\_ Sustained

\_\_\_\_\_ Overruled

**Petitioners' Response:**

Respondents' objections to the entirety of the declaration of Mr. Michael Tan should be overruled.  As a threshold matter, Petitioners must address a fundamental error running throughout Respondents' objections to Mr. Tan's declaration, as well as their objections to Mr. Arulanantham's declaration.  Both of these declarations summarize *Respondents' own data*, which Respondents had access to long before they gave that data to Petitioners (in redacted form).  Therefore for each of these summaries, Respondents' complaints about the timeliness or completeness of Petitioners' submissions (whether of the declarations or the underlying evidence) are baseless.  Respondents have had ample time – far longer than Petitioners **--** to conduct whatever summaries or other analyses on these files they wish.  None of the declarations can be excluded on such bases.

With respect to the Tan declaration, there are five further defects with Respondents' argument for exclusion.

*First*, Respondents object that Petitioners did not make the corrected summaries in Mr. Tan's revised declaration available until fourteen days before Respondents filed their cross-motion.  The cases cited by Respondents make clear why this argument must fail.  "Rule 1006 requires only that the *documents underlying a* summary be made available for copying or examination at a reasonable time and place …." *See E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 553 (8th Cir. 1998) (emphasis added).  In this case, the *underlying materials* were available to Respondents either *before* Petitioners ever received them (in the case of the A files) or several months ago (in the case of the list of "in-period" class members, which their own expert initially created), which fully satisfies Rule 1006's "availability" requirement.  Moreover, with fourteen days, Respondents enjoyed considerably more time than the government has afforded

opposing counsel when introducing summaries in criminal cases.  *United States v. Duke*, 242 Fed. Appx. 37, 49 (4th Cir. 2007) (agreeing with government that Rule 1006 speaks only about "the summarized documents, and not the summaries themselves," and upholding disclosure of summaries five days before as well as *during* trial); *see also Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 30 (1st Cir. 2011) (rejecting argument that summary chart should have been produced during discovery).  In fact, the government has successfully introduced summaries on less than ten days notice even when the government withheld the voluminous records until that time.  *See United States v. Lewis*, 594 F.3d 1270, 1281-82 (10th Cir. 2010) (upholding admissibility of summary chart, even though prosecution did not make 16 boxes of underlying materials available until ten days before trial).

     *Second*, Respondents claim Petitioners failed to establish the admissibility of the A files summarized in Mr. Tan's declaration.  Respondents, however, have stipulated that the A files are authentic and satisfy the "business records exception" under Rules 803(6) and 803(8) of the Federal Rules of Evidence.  *See* Dkt. 281-3 ¶ 3; Dkt. 292 ¶¶ 12-13 & Ex. 2 (filed under seal).  The authorities cited by Respondents uphold the admissibility of summaries under Rule 1006 when the underlying documents are admissible as business records.  *See, e.g.*, *HBE Corp.*, 135 F.3d at 553 (upholding admissibility of summary because the underlying documents "were regularly kept records within the meaning of Rule 803(6) and therefore not themselves excludable as hearsay"); *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984) (stating there is "no problem" with offering summaries based on "business records" under Rule 803(6)); *see also United States v. Rizk*, 660 F.3d 1125, 1130-31 (9th Cir. 2011) (upholding summary prepared from "standard real estate records"); *compare with United States v. Johnson*, 594 F.2d 1253, 1254-57 (9th Cir. 1979) (summary inadmissible because government failed to establish that underlying documents met the business records exception under Rule 803(6)).  Respondents argue that Rules 803(6) and 803(8) merely allows one to "show[] the contents of that

file," not to offer the contents for the truth of the matters asserted therein, but that plainly is incorrect in light of decades of case law admitting summaries of business records as substantive evidence.

In addition, contrary to what Respondents suggest, the plain terms of the stipulation apply to all "A File Materials," rather than to "the admission of any particular piece of evidence" within the A Files.  Dkt. 292 ¶¶ 12-13 & Ex. 2 (filed under seal).  While the wording of the stipulation (which both sides entered into after extensive negotiation) is dispositive of Respondents' objection, examination of the implications of Respondents' argument also makes clear that their interpretation of the stipulation cannot be correct.  Under Respondents' interpretation, the stipulation is worthless, as it does not allow Petitioners to introduce documents such as letters, declarations, and relief applications unless Petitioners *separately* establish the applicability of the business records exception or another hearsay exception document-by-document for roughly 300,000 pages of A files.  Petitioners would not have traded their right to demand the production of other documents – a condition Respondents demanded during negotiations – for such a stipulation, particularly because documents from A files already are routinely admitted under the business records exception.[3]  Indeed, if that had been the intent of the parties, there would have been no need for the stipulation to reference Rule 803(6) at all, because the parties could have ensured their ability to merely "show[] the contents of" A files for

---

[3] *See United States v. Hernandez-Herrera*, 273 F.3d 1213, 1217-18 (9th Cir. 2001) (affirming admission of A-file under public records exception); *United States v. Contreras*, 63 F.3d 852, 857 (9th Cir. 1995) (holding, in context of A file documents, that "documents that fall under the public records exception 'are presumed trustworthy, placing 'the burden of establishing untrustworthiness on the opponent of the evidence'"); *United States v. Estrella-Yuan*, 437 Fed. Appx. 555, 556-57 (9th Cir. 2011) (memorandum) (holding warrant of deportation issued in immigration proceeding admissible under Rule 803(8)); *United States v. Loma-Torres*, 406 Fed.Appx. 223, 224 (9th Cir. 2010) (memorandum) (holding documents from "A-file" admissible under the public records exception to the rule against hearsay); *United States v. Diaz-Lopez*, 403 Fed. Appx. 199, 201-202 (9th Cir. 2010) (memorandum) (order of immigration judgment admissible under public record exception)..

PETITIONERS' OPPOSITION TO RESPONDENTS' EVIDENTIARY OBJECTIONS

nonhearsay purposes by stipulating to authenticity under Rule 901. Petitioners accepted the stipulation, and chose to forego pursuing further discovery, because it avoided the cost of having to pay an expert to submit a declaration summarizing the contents of A files in the manner that Mr. Tan and Mr. Arulanantham have done. Respondents thus are bound by the stipulation, and cannot now challenge the applicability of Rule 803(6) or 803(8) to specific documents. Of course, Respondents are not barred from contesting the reliability of particular documents produced in their files. But because the business records exception applies, Respondents bear the burden (both under the text of the stipulation and under case law) to demonstrate that a particular document lacks sufficient trustworthiness, which Respondents have utterly failed to do.

*Third*, contrary to what Respondents argue, Petitioners were not obligated to provide the instructional materials in order to make the summaries admissible. "The purpose of requiring the party offering a summary to make the underlying documents available to the opposing party is to enable the opposing party to check the accuracy of the summary. Access to the offering party's worksheets or database may make it easier for the opposing party to perform that check; but so long as the opposing party is given sufficient time to inspect the underlying documents, there is no reason to give the opposing party the benefit of the offering party's labor in preparing such worksheets or database." *See Lewis*, 594 F.3d at 1281-82. Here, Respondents had more than a year and a half to conduct their own summaries of the information in the files. Similarly, Respondents argue in a footnote that they are entitled to Petitioners' work product based on a 2006 unpublished district court decision out of Montana. *See Montana Land and Mineral Owners Ass'n, Inc. v. Devon Energy Corp.,* 2006 WL 1876859, at *3 (D. Mont. June 2, 2006). But the United States government itself successfully established the contrary before the Tenth Circuit, which concluded that reliance on summaries does not constitute a waiver of work product protection over materials used to generate the summaries. *Lewis*, 594 F.3d at 1281-82.

*Fourth*, Respondents nowhere cite in their objections the "controlling law" that purportedly conditioned admissibility of the declaration on immediately producing Mr. Tan for deposition.  The demand to depose Mr. Tan also served no apparent purpose at this stage of the proceedings – except perhaps to set up these objections. Respondents do not need a deposition to determine, for instance, whether an A file indicates that a class member has a U.S. spouse or, instead, contains no information whatsoever on the subject.  They can determine such objective facts for themselves simply by looking at the A files, to which they have had access for far longer than Petitioners.

*Fifth*, Respondents incorrectly assert that Mr. Tan's declaration must be excluded because the summaries were revised once Petitioners uncovered a programming error that initially generated incorrect figures.  The standard for admissibility is not perfection, and courts permit revised summaries despite "errors contained in [a] previous declaration."  *See Oculus Innovative Sciences, Inc. v. Prodinnv, S.A., DE C.V.*, No. C-08-04707 MMC, 2010 WL 4774659, at *3 (N.D. Cal. Nov. 16, 2010).  Respondents' purported concern about accuracy also rings hollow because, despite having two full weeks with information about each and every detainee reflected in the revised summary – a level of detail not required by Rule 1006 – Respondents cannot point to a *single* inaccuracy in the revised figures.

Finally, even without Mr. Tan's declaration, Petitioners have established that class members suffer a deprivation of liberty sufficient to justify the additional procedural protections they seek under federal statutory and constitutional law.  Thus, Respondents' objections to the summaries do not provide a basis for denying the relief requested in Petitioners' motion.

1

## OBJECTIONS TO THE DECLARATION OF AHILAN ARULANANTHAM

2

**Objection No. 19:**

3

**Objectionable Testimony:**

4

The Arulanantham declaration in its entirety.

5

**Respondents' Objection:**

6

Counsel's editorialized summary of select portions of approximately 35

7

administrative files culled from the 1026 files produced by Respondents is not

8

admissible as summary evidence under Federal Rule of Evidence 1006. *See* Fed. R.

9

Evid. 1006. Under this rule, courts have rejected narrative summary evidence

10

propounded by trial counsel that "restates and distills" exhibits to the declaration "into

11

a summary that demonstrates [counsel's] particular view of the evidence." *United*

12

*States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997); *Anderson v. Otis*

13

*Elevator Company*, Case No. 11-10200, 2012 WL 5493383 *5 (E.D. Mich. Nov. 13,

14

2012). "[S]uch a summary is a written argument," *Grajales-Montoya*, 117 F.3d at

15

361, and, in this case, a blatant end-run around the page limit stipulation governing the

16

motion and cross-motion for summary judgment in this case. *See* ECF No. 278. The

17

court should strike the declaration on that basis alone. *See* L.R. 83-7 (sanctions for

18

violations or local rules).

19

Rule 1006 summary evidence is limited to "concrete, mathematical, [and]

20

objective information." *United States v. Stone*, 852 F. Supp 820, 828 (E.D. Mich.

21

2012). The reason for this principle is that, when a summary is admitted pursuant to

22

Rule 1006, the summary becomes substantive evidence. *Id.* As a result, it is especially

23

important that the summary be "straightforward" and "accurate." *See E.E.O.C. v.*

24

*HBE Corp.*, 135 F.3d 543, 553 (8th Cir. 1998) (Rule 1006 permits "straightforward

25

and accurate" summaries and rejects "argumentative or conclusory" summaries). To

26

satisfy the accuracy requirement, the summary cannot be argumentative or

27

"embellished by or annotated with the conclusions of or inferences drawn by the

28

proponent of the summary evidence." *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998).

The Arulanantham declaration is not a "straightforward" summary of "objective" information. *See HBE Corp.*, 135 F.3d at 553; *Stone*, 852 F. Supp. 2d at 828. It is replete with characterizations and commentary that reflects the "inherent assumptions of the person who composed it." *Bray*, 139 F.3d at 1110. The declaration contains characterizations of the evidence. *See*, *e.g.*, Arulanantham Dec. ¶ 29 (woman who underwent knee and back surgery "was very sick" and class member who took her to appointments supported "her both economically and emotionally"). It also contains evidentiary extrapolations. *See*, *e.g.*, Arulanantham Dec. ¶ 36 ("[B]ased on tax and earnings statements in the file, he appears to have been the primary breadwinner for the household."). It presents facts in an argumentative manner. *See*, *e.g.*, Arulanantham Dec. ¶ 44 ("Thus, while [the class member] was specifically allowed to travel to and from work to provide for his family—including his wife and infant daughter, Leslie—during his criminal proceedings, he was prohibited from working during the entire pendency of his removal proceedings."). Ultimately, the declaration lacks the sterility required for admission under Rule 1006. *See Stone*, 852 F. Supp. 2d at 828; *Sims v. Lakeside School*, C06-1412RSM2008, WL 189674, *7 (W.D.Wash. Jan. 17, 2008) ("These statements are not the type of objective summary of the evidence which is contemplated by FRE 1006. Rather, the summary is argumentative in nature and should normally appear in the body of a brief.")

Additionally, the declaration is objectionable based on its selectivity in the evidence it purports to summarize. *See Anderson*, 2012 WL 54933 83 at *5. Arulanantham does not offer a complete summary of the files he discussed, but instead focuses on information from the files he deems relevant to Petitioners' view of the evidence. *See*, *e.g.*, Arulanantham Dec. ¶ 43 (asserting a particular class member was detained despite the fact that he "was eligible to re-adjust his status to lawful

PETITIONERS' OPPOSITION TO RESPONDENTS' EVIDENTIARY OBJECTIONS

permanent resident because of his marriage to his U.S. citizen wife," while omitting the fact that the class member married a citizen several months *after* he was taken into immigration custody); Arulanantham Dec. ¶ 53(omitting that the referenced "disciplinary infraction" was for possession of a homemade shank).  Even Arulanantham's decision regarding which files to summarize among the more than one thousand files is an editorial decision that is itself argumentative in nature and not tied to any objective analysis of the universe of administrative files.  *See Anderson*, 2012 WL 5493383 at *5.

The declaration is also inadmissible based on Petitioner's failure to meet the proponents' burden of establishing the requirements for admissibility set forth in Rule 1006.  A proponent of summary evidence must establish that the underlying materials upon which the summary is based are (1) voluminous, (2) admissible in evidence, and (3) were made available to the opposing party for inspection.  *Amarel v. Connell*, 102 F.3d 1494, 1516 (9th Cir. 1996).

First, Arulanantham fails to establish that the materials he purports to summarize are "voluminous" within the meaning of Rule 1006.  Rule 1006 permits the admission of summaries of voluminous records or documents where the summary "offers the only practical means of making their contents available to the judge and jury."  *See* Advisory Committee Notes to Rule 1006.  The more than one thousand pages of exhibits Petitioners' submitted in support of their motion demonstrate that the underlying materials could, practically, be included as exhibits, with Arulanantham's summary incorporated into the brief.  Further, even if the information presented by Arlanantham [SIC] as a whole is voluminous, that certainly cannot be said about many of individual summaries that purport to distill one or two documents into narrative form.  *See*, *e.g.,* Arulanantham Dec. ¶¶ 91-99 (summarizing individual parole determination worksheets).  Therefore, at the very least, the paragraphs summarizing individual documents should be stricken from the declaration.  *See Anderson*, 2012 WL 5493383 at *5 (Exhibit was "not just summarizing one piece of

PETITIONERS' OPPOSITION TO RESPONDENTS' EVIDENTIARY OBJECTIONS

LA1 2677296v.2

particularly voluminous evidence, but rather attempting to compile various pieces of evidence, some of which are not voluminous at all.").

Secondly, Petitioners fail to lay a proper foundation as to the admissibility of the material that is summarized and show that the summary is accurate. *United States v. Menendez*, 2013 WL 828926 at *3. Specifically, the summary evidence is admissible only for purposes for which the underlying evidence is admissible. C.A. Wright & V.J. Gold, 31 Fed. Practice and Procedure § 8043, at 527 (2000) ("Rule 1006 evidence may also be excluded where the source materials are inadmissible hearsay or even where just some parts of those materials are inadmissible hearsay."). The proponent bears the burden of establishing admissibility of the underlying evidence. Here, the summary relies on hearsay not within any exception. *See, e.g.,* Arulanantham Dec. ¶ 27, 29 (relying on unsworn letter to prove the assertions in the letter). Therefore, Petitioners have not established the underlying admissibility of the evidence relied upon in the summaries.[4]

Even more problematically, the declaration offers testimony contradicted by the exhibits Arulanantham purports to summarize. As just one example, in paragraphs 78 through 82, the declaration asserts that a class member was deprived of due process because he did not receive a periodic parole determination, despite having reliable sponsorship information. In reviewing the A-File materials provided, however, it is evident that while ICE concluded that there was credible evidence of identity, there was no sponsor willing to provide the alien with a place of temporary residence. Contrary to the declaration, the examining officer reached one potential sponsor identified by the alien by telephone, but that individual affirmatively declined to sponsor the alien. Arulanantham Dec. ¶ 82 (Exhibit 69). The worksheet also

---

[4] As discussed more fully in footnote 1, Petitioners' reliance on counsel's stipulation to administrative files as business records does not allow admission of evidence that constitutes double hearsay not within any exception. *See supra* note 1; Fed. R. Evid. 805.

indicates that the examining officer attempted to contact two other potential sponsors by telephone, again listing their telephone numbers, but states that neither potential sponsor could be reached at the numbers provided. *Id.* Arulanantham states that ICE did not act on an affidavit of sponsorship submitted by the alien's attorney two months later, but the declaration fails to note that the alien's attorney did not submit that information *to ICE*, but rather to the immigration court as part of the alien's asylum application. *See* Arulanantham ¶ 83 (Exhibit 70). The declaration fails to explain why this information was not submitted to ICE by the alien's representative, nor is there any indication that the alien or his attorney availed themselves of the opportunity to make a second parole determination request – which any alien may request, and which is often made where, as here, the alien has updated information to provide, such as an affidavit of sponsorship, *see* Lee Dep. 47:11-47:21 (Exhibit A to Atkinson Dec.).

Respondents further object that counsel's summaries are not admissible under Rules 401-403 due to their limited value and substantially prejudicial presentation. *See Palmer v. Marion County*, 327 F.3d 588, 596-97 (7th Cir. 2003) ("showing of isolated incidents does not create a genuine issue as to whether defendants have a general policy or a widespread practice of an unconstitutional nature"). As a sworn statement by counsel, the summaries are substantially prejudicial because the promote information best left for the brief as having evidentiary status. *See* Fed. R. Evid. 403.

Finally, Respondents object on the basis that the information contained in the declaration was not adequately disclosed in response to interrogatories seeking a list of illustrative cases upon which Petitioners plan to rely. Although Petitioners sent a letter to counsel disclosing *some* of the illustrative examples upon which it planned to rely, it failed to do so (1) in a sworn supplemental interrogatory response, and (2) prior to the close of discovery. *See* Wilson Dec. (Exhibit C). Accordingly, Petitioners should be prevented from using any information from any of the files not disclosed in response to Respondents' interrogatories.

**Petitioners' Response:**

Respondents' objections to the entirety of the declaration of Mr. Ahilan Arulanantham should be overruled.

Respondents object in a variety of ways on the grounds that the Arulanantham declaration is not "straightforward" and "objective" but instead "selective" and filled with "commentary." These objections, in all their forms, are meritless. *First*, the purpose of the Arulanantham declaration is not to summarize all 300,000 pages of the 1,026 A files, which would be impossible, but instead to summarize a select number of those to illustrate particular phenomena that occur when class members receive cursory custody reviews or no custody reviews at all, despite the fact that they ultimately win their cases or are found not removable. Given that Petitioners only seek the provision of adequate hearings *to determine whether* class members deserve release (rather than arguing for the release of all class members), Petitioners need not show that all class members have experienced these phenomena and hardships, but instead that the Respondents' current policies and practices create such harms, which Immigration Judges could correct if they had authority to hold adequate bond hearings. For this reason, the charge that the declaration should be excluded because it selects only about 200 files for review (and only about 30 for extensive, detailed review) is meritless.[5]

*Second*, the summaries themselves are not argument, and therefore do not contravene Rule 1006 or the briefing page limits. The summaries in the declaration advance no legal proposition; each merely describes facts set forth in A files, each of which is voluminous. Indeed, despite having had the Arulanantham declaration itself for over a month, having had a list of most of the files used as illustrative examples for

---

[5] It also is hypocritical, as Respondents rely on a declaration that purports to summarize records for only five persons, which amounts to less than 1% of even the more limited "in period" population of class members. *See* Dkt. 299-1 pp. 4-6 ¶¶ 7-11 (McDowell Decl.).

nearly two months, and the files themselves for far longer than Petitioners have had them, Respondents point to only one summary that they claim is inaccurate, and only five statements that they claim are somehow misleading, incomplete, or infected by improper characterization. As explained below, they are wrong as to each of these, but even if they were not, such error would hardly be a basis to exclude the approximately thirty detailed summaries and over 200 shorter ones.

There are no biases or inaccuracies in the examples they cite. Respondents claim the summary lacks objectivity because it states, for example, that a "woman who underwent knee and back surgery 'was very sick'" and that the class member who took her to appointments supported "her both economically and emotionally." The challenged language derives directly from a letter from this class member's mother, which states: "I am very sick and I do not work. My son is my support economically he works for me he pays rent food and bills…," and goes on to characterize him as "loving" and "very respectful." *See* Dkt. 292, Exh. (ICE-AFL-027250) (filed under seal). This portion of the summary thus cannot be described as inaccurate or biased.

Respondents also fault the summaries for being incomplete, Dkt. 303 at 23, but the examples they provide do not contain inaccuracies. They note that one individual who was eligible to adjust status based on his marriage got married after he was in proceedings. *See supra* (citing Dkt. 292 ¶ 43). But this purported omission does not undermine either the accuracy of the statement that the class member "was eligible to re-adjust his status" or the saliency of the example, given that the couple already had two children together (s*ee* Dkt. 292, Exh. 38 (ICE-AFL-187795) (filed under seal)), and that the marriage was found valid (which allowed this individual to successfully adjust status and win his case). Dkt. 292 ¶ 43. Respondents also fault the declaration for failing to add that one individual's disciplinary infraction – for which he was denied the right to attend his mother's funeral – was possession of a shank. *See* Dkt. 292 ¶ 53. Again, this fact has absolutely nothing to do with the *accuracy* of the

1  summary (or, for that matter, the propriety of allowing that individual to leave the

2  detention center for a few hours to attend his mother's funeral).

3      Respondents' other objections to the wording of the summaries are equally

4  meritless.  They criticize the statement that one class member "appears to have been

5  the primary breadwinner for the household," but this is hardly a controversial

6  statement given his status as an employed adult male in a home with three children.

7  They also object to the "argumentative" statement that a class member was released

8  on bond in his criminal case but then detained without a hearing in his immigration

9  case; but this statement is indisputably accurate (and likely true of many class

10  members).

11      Respondents assert that only one summary is factually inaccurate, but they are

12  completely wrong.  Respondents charge that "the declaration offers testimony

13  contradicted by the exhibits Arulanantham purports to summarize," Dkt. 303 at 24,

14  based on a single example arising out of the case of a Somali detainee.  Respondents

15  state that "Arulanantham states that ICE did not act on an affidavit of sponsorship

16  submitted by the alien's attorney…, but the declaration fails to note that the alien's

17  attorney did not submit that information to ICE, but rather to the immigration court as

18  part of the alien's asylum application. *See* Arulanantham ¶ 83 (Exhibit 70)."  *Id.*  In

19  fact, however, the attorney *did* submit it to ICE as part of an immigration court filing

20  (ICE-AFL-206347- ICE-AFL-206352) that was *personally delivered* to the Office of

21  the Chief Counsel.  Petitioners did not include the proof of service in the original

22  documents attached to the declaration, *see* Dkt. 292, Exh. 70 (ICE-AFL-200349)

23  (filed under seal), but have provided it now as an exhibit to the Declaration of Ahilan

24  T. Arulanantham of April 5, 2013 that will be filed under seal contemporaneously.  Of

25  course, Respondents may still fault the detainee for failing to file it with the right

26  person within ICE, but this too would prove Petitioners' point – that this Somalian

27  refugee's unnecessary detention would have been avoided if he had received the relief

28  Petitioners seek – an *automatic hearing* before an Immigration Judge with authority to

PETITIONERS' OPPOSITION TO RESPONDENTS' EVIDENTIARY OBJECTIONS

1  release him.  Dkt. 292 ¶¶ 29, 36, 44.

2  *Third*, Respondents' belief that it is improper to summarize A files is contrary

3  to the position taken by the Government in other cases, where it has successfully

4  introduced summaries of immigration documents under Rule 1006 where, as here, the

5  "testimony simply summarized and commented on the contents of the [immigration]

6  applications without opining on the truth or falsity of those accounts …." *See United*

7  *States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (holding Rule 1006 rendered

8  summary of immigration documents admissible).

9  *Fourth*, none of the cases Respondents cite would require exclusion of

10  summaries of A files.  For instance, Respondents cite a case where the Government

11  sought to prove "an essential element" of a criminal charge at a jury trial with

12  summaries of videos and books.  *United States v. Stone*, 852 F. Supp. 2d 820, 826-29

13  (E.D. Mich. 2012).  The district court reasoned that artistic "works simply are not

14  capable of objective summary" and that the Government's agent lacked "particular

15  literary expertise" (*id.* at 828-29).  However, published circuit authority permits such

16  summaries when they do not suffer from such unique defects.  *See United States v.*

17  *Morin*, 627 F.3d 985, 997-98 (5th Cir. 2010) (upholding admissibility of summary of

18  videotape evidence under Rule 1006).  Mr. Arulanantham's declaration summarized

19  objective facts to provide context, not to prove an essential element of Petitioners'

20  claims, and no question exists that lawyers and paralegals possess the expertise to

21  summarize immigration files.  *See Walker*, 191 F.3d at 336 (affirming admissibility of

22  summaries of immigration documents offered by Government that was prepared by a

23  non-attorney "research specialist").  Respondents also cite an unpublished out-of-

24  circuit decision where a district court exercised discretion to prevent a party from

25  offering a summary for a host of reasons, including because the party had assumed the

26  existence of information not in the records and the records were not voluminous.

27  *Anderson*, 2012 WL 5493383, at *3-8.  Here, in contrast, the materials are

28  voluminous, and the summary exclusively relates to information extracted from the A

PETITIONERS' OPPOSITION TO RESPONDENTS' EVIDENTIARY OBJECTIONS

files.  Contrary to what Respondents suggest, this unpublished decision does not stand for the proposition that a summary must account for every fact in the underlying materials.  Rather, it prohibits inventing information to fill gaps in records.

In short, none of Respondents' arguments about the nature of these particular summaries supports striking the declaration.  Respondents had the ability to supplement the summaries with information they considered pertinent.  The fact that they attacked the accuracy of only one of the summaries and chose to quibble with the descriptions in only five respects is telling, given that Mr. Arulanantham's declaration summarizes over 200 A files, including approximately 30 in depth.  Any disputes about whether to further supplement the summaries merely goes to the weight of the evidence, not its admissibility.

Respondents also raise a variety of other challenges to the admissibility of Mr. Arulanantham's declaration, all of which are meritless.

*First*, Respondents object that Mr. Arulanantham failed to establish that the A files are voluminous.  But Respondents produced over 300,000 pages of A files, and many individual A files are several hundred pages or more each, making it unreasonable and impractical to submit the materials to the Court for its independent consideration.  The A files summarized for the individuals discussed in Mr. Arulanantham's declaration total in excess of 18,000 pages, roughly nine times the total number of pages of exhibits already submitted by Petitioners in support of this Motion.  As a result, this case bears no resemblance to the one unpublished district court case Respondents cite, which considered "approximately 350 pages" of materials not voluminous.  *Anderson v. Otis Elevator Co.*, 2012 WL 5493383, at *4 (E.D. Mich. 2012).  It also is distinguishable from the two cases Respondents cite where the underlying materials already were in evidence, rendering the summaries unnecessary.  *See United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997) (holding admission of summary harmless); *Sims v. Lakeside School*, 2008 WL 189674, at *7 (W.D. Wash. Jan. 17, 2008) (excluding summary).

*Second*, contrary to what Respondents suggest, there is no authority for striking portions of the summary just because an individual fact referenced in the summary could be found within individual pages of a particular A file. Rule 1006 exists to simplify the presentation of admissible evidence – not merely for cases when it is impossible to present the underlying records – and that purpose would be defeated if Petitioners were required to file hundreds of additional exhibits for each and every one of the facts drawn upon in the summary. *See United States v. Rizk*, 660 F.3d 1125, 1130-31 (9th Cir. 2011) (rejecting argument that proponent must "introduce the underlying records," and upholding admission of summary); *United States v. Bray*, 139 F.3d 1104, 1109 (6th Cir. 1998) (Rule 1006 for convenience of trier of fact).

*Third*, Respondents again attempt to claim that summaries of A files improperly rely on hearsay. As set forth above, Respondents have stipulated that the A files satisfy the "business records exception" under Rules 803(6) and 803(8) of the Federal Rules of Evidence. *See* Dkt. 281-3 ¶ 3; Dkt. 292 ¶¶ 12-13 & Ex. 2 (filed under seal). Respondents' own authorities uphold the admissibility of summaries under Rule 1006 when the underlying documents are admissible as business records. *See, e.g.*, *HBE Corp.*, 135 F.3d at 553 (upholding admissibility of summary because the underlying documents "were regularly kept records within the meaning of Rule 803(6) and therefore not themselves excludable as hearsay"); *Paddack v. Dave Christensen*, *Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984) (stating there is "no problem" with offering summaries based on "business records" under Rule 803(6)); *see also Rizk*, 660 F.3d at 1130-31 (upholding summary prepared from "standard real estate records"); *compare with United States v. Johnson*, 594 F.2d 1253, 1254-57 (9th Cir. 1979) (summary inadmissible because government failed to establish that underlying documents met the business records exception under Rule 803(6)). Respondents argue that Rules 803(6) and 803(8) merely allows one to "show[] the contents of that file," not to offer the contents for the truth of the matters asserted therein, but that plainly is incorrect in

PETITIONERS' OPPOSITION TO RESPONDENTS' EVIDENTIARY OBJECTIONS

LA1 2677296v.2

light of decades of case law admitting summaries of business records as substantive evidence.

In addition, contrary to what Respondents suggest, the plain terms of the stipulation apply to all "A File Materials," rather than to "the admission of any particular piece of evidence" within the A Files. Dkt. 292 ¶¶ 12-13 & Ex. 2 (filed under seal). While the wording of the stipulation (which both sides entered into after extensive negotiation) is dispositive of Respondents' objection, examination of the implications of Respondents' argument also makes clear that their interpretation of the stipulation cannot be correct. Under Respondents' interpretation, the stipulation is worthless, as it does not allow Petitioners to introduce documents such as letters, declarations, and relief applications unless Petitioners *separately* establish the applicability of the business records exception or another hearsay exception document-by-document for roughly 300,000 pages of A files. Petitioners would not have traded their right to demand the production of other documents – a condition Respondents demanded during negotiations – for such a stipulation, particularly because documents from A files already are routinely admitted under the business records exception. *See supra* note 3. Indeed, if that had been the intent of the parties, there would have been no need for the stipulation to reference Rule 803(6) at all, because the parties could have ensured their ability to merely "show[] the contents of" A files for nonhearsay purposes by stipulating to authenticity under Rule 901. Petitioners accepted the stipulation, and chose to forego pursuing further discovery, because it avoided the cost of having to pay an expert to submit a declaration summarizing the contents of A files in the manner that Mr. Tan and Mr. Arulanantham have done. Respondents thus are bound by the stipulation, and cannot now challenge the applicability of Rule 803(6) or 803(8) to specific documents. Of course, Respondents are not barred from contesting the reliability of particular documents produced in their files. But because the business records exception applies, Respondents bear the burden (both under the text of the stipulation and under case

law) to demonstrate that a particular document lacks sufficient trustworthiness, which Respondents have utterly failed to do.

*Fourth*, Respondents object that Petitioners did not provide the complete list of A files that would be summarized in advance of filing the Motion.  They complain that, although Petitioners provided a list on January 25, 2013, nearly two months *before* Respondents' brief was due, a few of the individuals whose files were ultimately summarized in the declaration were not on the list.  But Petitioners had no obligation to provide this list at all to make the summaries admissible.  As noted above, Respondents had access to the A files long before Petitioners did, and they received the completed summaries over a month before their brief was due.  *See United States v. Lewis*, 594 F.3d 1270, 1281-82 (10th Cir. 2010) (upholding admissibility of summary chart, even though prosecution did not make 16 boxes of underlying materials available until ten days before trial); *United States v. Lewis*, 594 F.3d 1270, 1281-82 (10th Cir. 2010) (upholding admissibility of summary chart, even though prosecution did not make 16 boxes of underlying materials available until ten days before trial).

*Fifth*, Respondents' own cases make clear that Petitioners had no further obligation to provide advance notice as to how they would use Respondents' own records.  "Rule 1006 requires only that the documents underlying a summary be made available for copying or examination at a reasonable time and place," and disclosing originals even "three weeks before trial" is "ample time" to compare originals with a summary.  *HBE Corp.*, 135 F.3d at 553.  Indeed, in prior litigation, the Government has successfully argued that Rule 1006 does not require prior disclosure of summaries, and itself has disclosed summaries *during trial*, or only five days before trial, over the objection of defendants in criminal cases.  *United States v. Duke*, 242 Fed. Appx. 37, 49 (4th Cir. 2007) (agreeing with Government that Rule 1006 speaks only about "the summarized documents, and not the summaries themselves"); *see also Colon-*

*Fontanez v. Municipality of San Juan*, 660 F.3d 17, 30 (1st Cir. 2011) (rejecting argument that summary chart should have been produced during discovery).

*Sixth*, Respondents assert a blanket objection based on Rule 401-403.  The best evidence of the relevance of the summaries is the lengths to which Respondents go to object to them.  The summaries illustrate that many Class members receive little or no meaningful process in their custody reviews, suffer great hardship while detained, and then eventually win their cases.  The summaries allow the Court to decide the statutory and constitutional issues with an underlying factual context, rather than in a vacuum.  In addition, there is no basis for excluding this statement under Rule 403 because the declaration is being submitted to the Court, not a jury, eliminating any imagined risk of prejudice or confusion.  *See, e.g.*, *United States v. Preston*, 706 F.3d 1106, 1117 (9th Cir. 2013) ("[I]t is to be presumed, absent a showing to the contrary, that the District Judge considered only material and competent evidence in arriving at his findings of guilt.").

*Seventh*, though not stated in these objections, Respondents suggest in a footnote in their brief that this declaration should be excluded because Respondents mistakenly assume that a trial attorney can never serve as a fact witness.  Dkt. 299 at 38 n. 31 (citing *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997)).  A trial attorney can serve as a fact witness under California law, and California law controls here.  Cal. Rules of Prof'l Conduct, Rule 5-210(C); L.R. 83-3.1.2.  Regardless, at summary judgment, the Court can consider evidence so long as the underlying content would be admissible at trial; the form in which it is presented is immaterial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 1993); *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, No. SA CV 05-230 TJH (VBKx), 2010 WL 5313748, at *1 (C.D. Cal. Dec. 17, 2010) ("Plaintiffs' evidence . . . need not be presented in a form that would be admissible at trial.  Rather,

the contents of the evidence must be admissible.") (citing *Fraser*).  As demonstrated above, the underlying summary certainly is admissible.[6]

Finally, with one exception, Petitioners need not rely upon Mr. Arulanantham's declaration to establish that class members suffer a deprivation of liberty sufficient to justify the additional procedural protections they seek under federal statutory and constitutional law.  And as to that one exception, which Petitioners cite in support of two material facts relating to the claims of persons in the Section 1231(a) Subclass, Respondents have not disputed either of those material facts.  *See* Dkt. 282 (citing Dkt. 292 ¶¶ 157-58).  Thus, Respondents' objections to the summaries do not provide a basis for denying the relief requested in Petitioners' motion.

Respectfully submitted,

Dated:    April 5, 2013          SIDLEY AUSTIN LLP


/s/    Sean A. Commons
SEAN A. COMMONS
Counsel for Petitioners

---

[6] Should this case proceed to trial, for convenience, Petitioners intend to present these summaries through a paralegal or attorney not presenting at trial, rather than Mr. Arulanantham.