1
AHILAN T. ARULANANTHAM (SBN 237841)
aarulanantham@aclu-sc.org
2
MICHAEL KAUFMAN (SBN 254575)
mkaufman@aclu-sc.org
3
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
4
Los Angeles, CA 90017
Telephone:  (213) 977-9500
5
Facsimile:  (213) 977-5297

6
*Attorneys for Petitioners*
(Additional Counsel listed on following page)
7

8
UNITED STATES DISTRICT COURT

9
FOR THE CENTRAL DISTRICT OF CALIFORNIA

10
WESTERN DIVISION

11
ALEJANDRO RODRIGUEZ,
ABDIRIZAK ADEN FARAH, YUSSUF
12
ABDIKADIR, ABEL PEREZ RUELAS,
JOSE FARIAS CORNEJO, ANGEL
13
ARMANDO AYALA, for themselves and
on behalf of a class of similarly-situated
14
individuals,

15
                    Petitioners,

16
          v.

17
ERIC HOLDER, United States Attorney
General; JANET NAPOLITANO,
18
Secretary, Homeland Security; THOMAS
G. SNOW, Acting Director, Executive
19
Office for Immigration Review; TIMOTHY
ROBBINS, Field Office Director, Los
20
Angeles District Immigration and Customs
Enforcement; WESLEY LEE, Officer-in-
21
Charge, Mira Loma Detention Center; et al.;
RODNEY PENNER, Captain, Mira Loma
22
Detention Center; SANDRA HUTCHENS,
Sheriff of Orange County; OFFICER
23
NGUYEN, Officer-in-Charge, Theo Lacy
Facility; CAPTAIN DAVIS
24
NIGHSWONGER, Commander, Theo Lacy
Facility; CAPTAIN MIKE KREUGER,
25
Operations Manager, James A. Musick
Facility; ARTHUR EDWARDS, Officer-in-
26
Charge, Santa Ana City Jail; RUSSELL
DAVIS, Jail Administrator, Santa Ana City
27
Jail,

28
                    Respondents.

Case No. 02:07-cv-3239-TJH
(RNBx)

**PETITIONERS' OPPOSITION
TO RESPONDENTS'
STATEMENT OF
UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW**

Honorable Terry J. Hatter

Date:  May 6, 2013
Time:  Under Submission

JUDY RABINOVITZ
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:  (212) 549-2618
Facsimile:  (212) 549-2654

MICHAEL TAN (SBN 284869)
mtan@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm St.
San Francisco, CA  94111
Telephone:   (415) 343-0779
Facsimile:   (415) 395-0950

JAYASHRI SRIKANTIAH (SBN 189566)
jsrikantiah@law.stanford.edu
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA  94305-8610
Telephone:  (650) 724-2442
Facsimile:  (650) 723-4426

SEAN COMMONS (SBN 217603)
scommons@sidley.com
CODY JACOBS (SBN 272276)
cjacobs@sidley.com
JONATHAN FEINGOLD (SBN 286302)
jfeingold@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013-1010
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

*Attorneys for Petitioners*

Petitioners submit the following opposition to Respondents' statement of uncontroverted material facts and conclusions of law.

**Issue No. 1:**    **The detention of arriving aliens without bond during the pendency of their removal proceedings is statutorily authorized and does not violate due process**

| Disputed Fact | Petitioners' Position |
|---|---|
| During the relevant period of this action, some arriving aliens[1] are or have been detained within the Central District of California for a continuous period of more than six months pending removal proceedings under the detention authority of 8 U.S.C. § 1225(b).<br><br>Respondents' Notice of Non-Opposition to Petitioners' Motion for Class Certification at 2-3 [ECF No. 122] | Not disputed, except to the extent that Petitioners do not concede that Section 1225(b) actually authorizes the detention of such individuals without a bond hearing as sought in Petitioners' Motion for Summary Judgment. |
| A large number of the studied class members representing a selection of detainees between April 2010 and April 2011 – 86.9% – requested at least one continuance, and over half of them requested three or more continuances during their removal proceedings. If the analysis is limited just to the first six months of the studied aliens' detention, the data shows that 84.7% of aliens request a continuance during the first six months of their custody, and nearly two-thirds of those aliens – 66.2% – requested two or more continuances within the first six months of their custody. | Disputed.  The evidence on which Respondents rely is not sufficiently reliable to support this factual assertion, and it must be disregarded on this basis. *See* Dkt 281-6, Exh. B at 4-7; Declaration of Susan Long of April 5, 2013 ¶¶ 4-13.  Moreover, resolution of this disputed fact would not entitle Respondents to judgment (or justify denial of judgment for Petitioners) because the percentage of studied Class members who requested continuances is not "material" to Petitioners' statutory and constitutional claims to an adequate bond hearing.  *See* Reply Br. Section II.C (concurrently filed).  If an |

---

[1] An "arriving alien" is defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. §§ 1.2, 1001.1(q).

| | |
|---|---|
| Exhibits O to the Declaration of Theodore W. Atkinson (Chester I. Palmer Deposition Excerpts); Exhibit P to the Declaration of Theodore W. Atkinson (Palmer Expert Report at 2, 10-11); Declaration of Benjamin B. McDowell | immigration judge believes that a detainee is acting to unreasonably delay his or her proceedings through requests for continuances, the judge can address such concerns at the bond hearing. |
| An alien's request for multiple continuances has the effect of delaying proceedings significantly. In analyzing the length of delays caused by continuances in just the first six months of detention, Dr. Palmer determined that for aliens requesting at least one continuance during the first 180 days of their detention, the total resulting delay varied between 6 days to 269 days. For the 84.7% of aliens who sought at least one continuance during their first 180 days of detention, the average delay attributable to those continuances accounted for over half of the 180 days.<br><br>Exhibits O to the Declaration of Theodore W. Atkinson (Chester I. Palmer Deposition Excerpts); Exhibit P to the Declaration of Theodore W. Atkinson (Palmer Expert Report at 2, 11-13); Declaration of Benjamin B. McDowell | Disputed.  Dr. Palmer's report did not examine the potential causes for the length of individual continuances.  Dkt. 283 Exh. D at 72:24-75:24, 80:22-81:24.  As result, as Dr. Palmer conceded, his analysis does not establish that the length of any particular delay is the "result" of a class member's request.  *Id.*  In addition, Dr. Palmer testified that his review of the continuance data suggests that immigration judges' schedules are primarily responsible for the length of continuances.  Dkt. 283 Exh. D at 79:25-80:6.  The evidence on which Respondents rely also is not sufficiently reliable to support this factual assertion, and it must be disregarded on this basis. *See* Dkt 281-6, Exh. B at 4-7; Long Decl. ¶¶ 4-13.  Moreover, resolution of this disputed fact would not entitle Respondents to judgment (or justify denial of judgment to Plaintiffs) because the percentage of studied class members who requested continuances, and the length of any "delay" that "resulted" from such continuances, is not "material" to Petitioners' statutory and constitutional claims to a bond hearing. *See* Reply Br. Section II.C.  If an immigration judge believes that a detainee is acting to unreasonably delay his or her proceedings through requests for continuances, the judge can address such concerns at the bond hearing. |

PETITIONERS' OPPOSITION TO RESPONDENTS' STATEMENT
OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1

**Conclusions of law:**

2

The detention of arriving aliens pending their removal proceedings is mandated

3

by the unambiguous statutory language of 8 U.S.C. § 1225(b).  The only exception to

4

this detention is through the discretionary parole authority established by Congress in

5

8 U.S.C. § 1182(d)(5)(A).

6

The Supreme Court has consistently recognized that "our immigration laws

7

have long made a distinction between those aliens who have come to our shores

8

seeking admission . . . and those who are within the United States after an entry,

9

irrespective of its legality.  In the latter instance, the Court has recognized additional

10

rights and privileges not extended to those in the former category who are merely 'on

11

the threshold of initial entry.'" *Leng May Ma v. Barber*, 357 U.S. 185, 187

12

(1958) (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953));

13

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who

14

has effected an entry into the United States and one who has never entered runs

15

throughout immigration law.  It is well-established that certain constitutional

16

protections available to persons inside the United States are unavailable to aliens

17

outside of our geographic borders."

18

Courts have long recognized that Congress may direct the detention of such

19

aliens commensurate with the power to exclude them from entry or admission.

20

*Zadvydas*, 533 U.S. at 693 (an arriving alien "stands on a different footing:  'Whatever

21

the procedure authorized by Congress is [regarding admission or exclusion], it is due

22

process as far as an alien denied entry is concerned.'") (quoting *Knauff v.*

23

*Shaughnessy*, 338 U.S. 537, 544 (1950)); *see also Landon v. Plasencia*, 459 U.S. 21,

24

32 (1982) ("[A]n alien seeking initial admission to the United States requests a

25

privilege and has no constitutional rights regarding his application . . . [H]owever,

26

once an alien gains admission to our country and begins to develop the ties that go

27

with permanent residence, his constitutional status changes accordingly.").

28

PETITIONERS' OPPOSITION TO RESPONDENTS' STATEMENT
OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

The unique constitutional position of arriving aliens permits their detention without a bond hearing pending their removal proceedings, even if such detention lasts beyond six months. *See, e.g., Zadvydas*, 533 U.S. at 693; *Ma*, 357 U.S. 185, 187-88 (1958) (alien "paroled" into the United States pending admissibility had not effected an "entry"); *see also Zadvydas*, 533 U.S. at 693 (discussing line of Supreme Court decisions recognizing the entry fiction doctrine, which considers an alien in the United States, but not granted admission to the United States, as having been "stopped at the border," and refusing to undermine *Mezei* with respect to the constitutionality of the detention of such aliens for lengthy periods); *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1445 (9th Cir. 1995) (en banc), *superseded by statute as stated in Wong v. INS*, 373 F.3d 952, 972 n. 26 (9th Cir. 2004).

Moreover, a large number of aliens seek continuances that significantly lengthen their removal proceedings, and thus their detention. Courts have consistently recognized that an inflexible one-size-fits-all rule that detention raises constitutional concerns at a predetermined temporal benchmark does not comport with due process, which "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1398 (9th Cir. 1987) (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979)) (same). *See also*, *Demore*, 538 U.S. at 530 n.14 ("Prior to the enactment of § 1226(c), when the vast majority of deportable criminal aliens were not detained during their deportation proceedings, many filed frivolous appeals in order to delay their deportation."); *Ly v. Hansen*, 351 F.3d 263, 271-73 (6th Cir. 2003) (rejecting a six-month rule, concluding that "[a]bright-line time limitation . . . would not be appropriate for the pre-removal period" because "an easily administrable bright-line rule cannot be based on time, given the inevitable elasticity of the pre-removal period"); *Diop v. ICE/Homeland Security*, 656 F.3d 221, 234 (3d Cir. 2012) (declining "to adopt such a one-size-fits-all approach" because the constitutionality of detention under section 1226(c) "is a fact-

4

1   dependent inquiry requiring an assessment of all of the circumstances of any given

2   case."); *Alli v. Decker*, 644 F. Supp. 2d. 535, 542-43 (M.D. Pa. 2010), *reversed and*

3   *remanded on other grounds*, 650 F.3d 1007 (3d Cir. 2011); *see also Flores-Powell v.*

4   *Chadbourne*, 677 F. Supp. 2d 455 (D. Mass. 2010) (citing the Sixth Circuit's rejection

5   of a bright-line rule based solely on length of detention). Thus, Petitioners' request

6   for an order that aliens detained under section 1225(b) receive a bond hearing after

7   180 days of detention, without regard to the individual facts and circumstances of their

8   cases, is not required by due process.

9        Consistent with the constitutional principles described above, the detention of

10   arriving aliens for more than six months without a bond hearing before an

11   immigration judge, during the pendency of removal proceedings, comports with due

12   process and therefore does not raise constitutional concerns.

13

14   **Petitioners' Position:**

15        Respondents mis-state the law governing Section 1225(b) detention. Contrary

16   to Respondents' assertion, Section 1225(b) does not "mandate" detention pending

17   removal proceedings because, as Respondents readily admit, the Government itself

18   releases "arriving aliens" under the parole process. Further, the statute does not

19   preclude the relief Petitioners seek, as the statute is silent as to both the length of

20   detention authorized and the procedures that should govern detention decisions.

21   Indeed, the BIA has already interpreted Section 1225(b) to allow bond hearings for

22   noncitizens who were arrested and placed in removal proceedings after their entry,

23   even when their detention is not prolonged. *See Matter of X-K-*, 23 I&N Dec. 731,

24   731-32, 734-35 (BIA 2005). As such, Section 1225(b) can be construed to provide the

25   relief Petitioners seek, either by construing Section 1225(b) to authorize bond

26   hearings, or by construing Section 1225(b) not to apply to prolonged detention such

27   that detention authority "shifts" to Section 1226(a), under which class members are

28   indisputably eligible for bond hearings. *See Casas-Castrillon v. DHS*, 535 F.3d 942,

951 (9th Cir. 2008) (holding that Section 1226(c) detention "shifts" to Section 1226(a) after the grant of a stay of removal in connection with a petition for review, due to serious constitutional concerns raised by prolonged detention in the absence of a bond hearing).

Moreover, contrary to Respondents' assertion, class members detained under Section 1225(b) have constitutional rights with respect to their detention.  First, the Ninth Circuit has unambiguously held that Section 1225(b) applies to lawful permanent residents, and that Section 1225(b) must be construed with those individuals in mind—regardless of whether detention would raise constitutional problems with respect to "arriving aliens" who are first-time entrants.  *See Nadarajah v. Gonzalez*, 443 F.3d 1069 (9th Cir. 2006).  Second, even as applied to first-time entrants to the United States who are stopped at the border, the Due Process Clause does not permit their prolonged detention without meaningful process.  *See generally Kwai Fun Wong v. United States*, 373 F.3d 952, 974-75 (9th Cir. 2004) (holding that "excludable" aliens retain Fifth Amendment rights)).  Respondents cite cases establishing the limited rights of arriving noncitizens with respect to the procedures governing their admission to the United States, but Petitioners do not seek to alter the procedures for admission, but rather to vindicate Class members' fundamental rights with respect to their detention.  *See Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1098 (9th Cir. 2004) (acknowledging that "'the entry doctrine does not categorically exclude non-admitted aliens from all constitutional coverage, including coverage by equal protection guarantees,'" but rather "'appears determinative of the procedural rights of aliens with respect to their applications for admission.'") (quoting *Kwai Fun Wong*, 373 F.3d at 971-73).

Respondents' argument that due process does not permit bright-line rules in this context is obviously incorrect, as the Ninth Circuit in *Diouf II* adopted the six-month rule that Petitioners seek here with respect to certain class members detained under Section 1231(a).  *See Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011).  Further, in

6

*Zadvydas*, the Supreme Court adopted a similar six-month rule in a closely-related

context, expressly relying on a long line of Supreme Court cases establishing similar

time-based rules on constitutional grounds. *Zadvydas v. Davis*, 533 U.S. 678, 701

(2001) (collecting cases). Respondents' unsupported assertion that "a large number of

aliens seek continuances that significantly lengthen their removal proceedings" is

incorrect, insofar as many class members request continuances for legitimate reasons,

including to comply with Respondents' own procedures for applying for relief in

immigration court. In any event, individual factors that bear on fitness for release –

such as whether a detainee has taken unnecessary continuances – can appropriately be

considered by immigration judges at bond hearings, but do not defeat Petitioners'

basic claim that class members are entitled to bond hearings at which all the relevant

factors should be considered.

**Issue No. 2:**  **The detention of serious criminal aliens without bond during the pendency of their removal proceedings is statutorily authorized and does not violate due process**

| Disputed Fact | Petitioners' Position |
|---|---|
| During the relevant period of this action, some certain criminal aliens are or have been detained within the Central District of California for a continuous period of more than six months pending removal proceedings under the detention authority of 8 U.S.C. § 1226(c).<br><br>Respondents' Notice of Non-Opposition to Petitioners' Motion for Class Certification at 2-3 [ECF No. 122] | Not disputed, except to the extent that Petitioners do not concede that Section 1226(c) actually authorizes the detention of such individuals without a bond hearing as sought in Petitioners' Motion for Summary Judgment. |
| A large number of the studied class members representing a selection of detainees between April 2010 and April 2011 – 86.9% – requested at least one continuance, and over half of them requested three or more continuances | Disputed. The evidence on which Respondents rely is not sufficiently reliable to support this factual assertion, and it must be disregarded on this basis. *See* Dkt 281-6, Exh. B at 4-7; Long Decl. ¶¶ 4-13. Moreover, resolution of |

7

| | |
|---|---|
| during their removal proceedings. If the analysis is limited just to the first six months of the studied aliens' detention, the data shows that 84.7% of aliens request a continuance during the first six months of their custody, and nearly two-thirds of those aliens – 66.2% – requested two or more continuances within the first six months of their custody.<br><br>Exhibits O to the Declaration of Theodore W. Atkinson (Chester I. Palmer Deposition Excerpts); Exhibit P to the Declaration of Theodore W. Atkinson (Palmer Expert Report at 2, 10-11); Declaration of Benjamin B. McDowell | this disputed fact would not entitle Respondents to judgment (or justify denial of judgment to Petitioners) because the percentage of studied class members who requested continuances is not "material" to Petitioners' statutory and constitutional claims to a bond hearing. *See* Reply Br. Section II.C. If an immigration judge believes that a detainee is acting to unreasonably delay his or her proceedings through requests for continuances, the judge can address such concerns at the bond hearing. |
| An alien's request for multiple continuances has the effect of delaying proceedings significantly. In analyzing the length of delays caused by continuances in just the first six months of detention, Dr. Palmer determined that for aliens requesting at least one continuance during the first 180 days of their detention, the total resulting delay varied between 6 days to 269 days. For the 84.7% of aliens who sought at least one continuance during their first 180 days of detention, the average delay attributable to those continuances accounted for over half of the 180 days.<br><br>Exhibits O to the Declaration of Theodore W. Atkinson (Chester I. Palmer Deposition Excerpts); Exhibit P to the Declaration of Theodore W. Atkinson (Palmer Expert Report at 2, 11-13); Declaration of Benjamin B. McDowell | Disputed. Dr. Palmer's report did not examine the potential causes for the length of particular continuances. Dkt. 283 Exh. D at 72:24-75:24, 80:22-81:24. As result, as Dr. Palmer conceded, his analysis does not establish that the length of a continuance "results" from class members' requests. *Id.* In fact, Dr. Palmer testified that his review of the continuance data suggests that immigration judges' schedules are primarily responsible for the length of continuances. Dkt. 283 at 79:25-80:6. In addition, the evidence on which Respondents rely is not sufficiently reliable to support this factual assertion, and it must be disregarded on this basis. *See* Dkt 281-6, Exh. B at 4-7; Long Decl. ¶¶ 4-13.<br><br>Moreover, resolution of this disputed fact would not entitle Respondents to judgment because the percentage of studied class members who requested |

PETITIONERS' OPPOSITION TO RESPONDENTS' STATEMENT
OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| | continuances, and the length of "delay" that "resulted" from such continuances, is not "material" to Petitioners' statutory and constitutional claims to a bond hearing. *See* Reply Br. Section II.C. If an immigration judge believes that a detainee is acting to unreasonably delay his or her proceedings through requests for continuances, the judge can address such concerns at the bond hearing. |
|---|---|

**Conclusions of law:**

8 U.S.C. § 1226(c) mandates the detention of certain serious criminal aliens during the pendency of their removal proceedings. The Supreme Court in *Demore v. Kim*, 538 U.S. 510 (2003), upheld the constitutionality of detention without bond for certain criminal aliens detained under 8 U.S.C. § 1226(c). In holding the detention of such aliens constitutional, the Supreme Court reasoned that such detention was constitutional and comported with due process because it lasted only during the pendency of removal proceedings, which have a definite termination point, and because such detention furthered the statutory purpose of addressing serious concerns on the part of Congress that such criminal aliens, in large numbers, failed to appear for removal proceedings when released on bond or, worse, committed additional crimes. *Demore*, 538 U.S. at 524-25, 527-28. For this reason, the Supreme Court concluded that such aliens could be detained during the pendency of their removal proceedings, on a class wide basis, and without individualized determinations of flight risk or danger. *Id.*

Moreover, a large number of aliens seek continuances that significantly lengthen their removal proceedings, and thus their detention. Courts have consistently recognized that an inflexible one-size-fits-all rule that detention raises constitutional concerns at a predetermined temporal benchmark does not comport

PETITIONERS' OPPOSITION TO RESPONDENTS' STATEMENT
OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

with due process, which "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1398 (9th Cir. 1987) (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979)) (same). *See also*, *Demore*, 538 U.S. at 530 n.14 ("Prior to the enactment of § 1226(c), when the vast majority of deportable criminal aliens were not detained during their deportation proceedings, many filed frivolous appeals in order to delay their deportation."); *Ly v. Hansen*, 351 F.3d 263, 271-73 (6th Cir. 2003) (rejecting a six-month rule, concluding that "[a]bright-line time limitation . . . would not be appropriate for the pre-removal period" because "an easily administrable bright-line rule cannot be based on time, given the inevitable elasticity of the pre-removal period"); *Diop v. ICE/Homeland Security*, 656 F.3d 221, 234 (3d Cir. 2012) (declining "to adopt such a one-size-fits-all approach" because the constitutionality of detention under section 1226(c) "is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case."); *Alli v. Decker*, 644 F. Supp. 2d. 535, 542-43 (M.D. Pa. 2010), *reversed and remanded on other grounds*, 650 F.3d 1007 (3d Cir. 2011); *see also Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455 (D. Mass. 2010) (citing the Sixth Circuit's rejection of a bright-line rule based solely on length of detention).  Thus, Petitioners' request for an order that aliens detained under section 1226(c) receive a bond hearing after 180 days of detention, without regard to the individual facts and circumstances of their cases, is not required by due process.

Accordingly, the detention of certain criminal aliens enumerated in section 1226(c)(1)(A) through (D) during the pendency of their removal proceedings, without a bond hearing before an immigration judge, is statutorily authorized and consistent with due process.

**Petitioners' Position:**

Respondents ignore several binding Ninth Circuit cases regarding prolonged detention under Section 1226(c) and, in so doing, mis-state the law governing Section 1226(c) detention.  On three separate occasions in recent years, the Ninth Circuit has unambiguously held that Section 1226(c) must be construed in light of the serious constitutional concerns presented by prolonged detention in the absence of a constitutionally-adequate bond hearing.  *See Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) ("we interpret the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens"); *Casas-Castrillon v. DHS*, 535 F.3d 942, 951 (9th Cir. 2008) (holding that "prolonged detention [under Section 1226(c)] of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,'" and therefore construing detention statutes "as requiring the Attorney General to provide the alien with such a hearing"); *V. Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that Government must bear burden of proof by clear and convincing evidence at *Casas* hearing for individual formerly subject to Section 1226(c)).  In so holding, the Ninth Circuit has consistently rejected the Government's reading that *Demore* authorizes unlimited prolonged detention during removal proceedings.  *See, e.g.*, *Casas*, 535 F.3d at 949 ("References to the brevity of mandatory detention under § 1226(c) run throughout *Demore*."); *Tijani*, 430 F.3d at 1242 (distinguishing *Demore* for detainee whose proceedings were not "expeditious" and who contested deportability).  As such, as the Ninth Circuit and this Court have recognized, Section 1226(c) can – and must – be construed in a manner that affords class members access to a constitutionally-adequate bond hearing in light of their prolonged detentions.

Respondents' argument that due process does not permit bright-line rules in this context is obviously incorrect, as the Ninth Circuit in *Diouf II* adopted the precise six-month rule that Petitioners seek here with respect to certain class members detained under Section 1231(a).  *Diouf II*, 634 F.3d at 1091.  Further, in

PETITIONERS' OPPOSITION TO RESPONDENTS' STATEMENT
OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1    *Zadvydas*, Supreme Court adopted a similar six-month rule in a closely-related

2    context, expressly relying on a long line of Supreme Court cases establishing similar

3    time-based rules on constitutional grounds.  *Zadvydas*, 533 U.S. at 701 (collecting

4    cases).  Respondents' unsupported assertion that "a large number of aliens seek

5    continuances that significantly lengthen their removal proceedings" is incorrect,

6    insofar as many class members request continuances for legitimate reasons,

7    including to comply with Respondents' own procedures for applying for relief in

8    immigration court.  In any event, individual factors that bear on fitness for release –

9    such as whether a detainee has taken unnecessary continuances – are appropriately

10   addressed by immigration judges at bond hearings, but do not defeat Petitioners'

11   basic claim that class members are entitled to bond hearings at which all the relevant

12   factors should be considered.

13

14   **Issue No. 3:        Due process does not require the modifications to Casas**
                          **hearings sought by Petitioners**

15

| Disputed Fact | Petitioners' Position |
|---|---|
| ISAP II is designed for aliens who are detained under section 1226(a), and who pose relatively low-level risks of flight or danger.  Unlike the types of serious offenses that place an alien within one of the section 1226(c) categories, ISAP II is used in cases where the types of offenses an alien has committed are, as Assistant Field Office Director Eric Saldana described them, "lower-range crimes," such as driving without a license, drunk in public, and other relatively non-serious offenses.<br><br>Exh. K to the Declaration of Theodore W. Atkinson (ISAP II Participant's Handbook); Exhibit B to the Declaration of Theodore W. Atkinson (Deposition of | Disputed.  Respondents' cited evidence does not support the asserted fact.  Mr. Saldana testified that, among the types of crimes that are committed by people *who are released on ISAP II*, "it's more common for us to see lower-range crimes."  Dkt. 283 Exh. F at 118:21-119:8.  The testimony cited by Respondents does not in any way suggest that ISAP II is designed for noncitizens detained under Section 1226(a), or with any particular type of criminal history.  Likewise, the ISAP II Participant's Handbook does not anywhere suggest that the program is limited to people detained under Section 1226(a).  The Handbook provides an introduction to the ISAP II program for |

PETITIONERS' OPPOSITION TO RESPONDENTS' STATEMENT
OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| Eric G. Saldana), at 118:21-119:8 | participants, and does not discuss for whom the program was designed. |
|---|---|
| | Contrary to Respondents' position, immigration judges have ordered certain individuals who had been subject to detention under Section 1226(c) released on ISAP II, including class members who received bond hearings under this Court's preliminary injunction order. *See* Declaration of Michael Kaufman of April 5, 2015 Ex. C. In addition, individuals detained under Section 1226(c) during removal proceedings have been treated as detained under Section 1226(a) – and therefore eligible for release on ISAP – since the *Casas* decision in 2008. *Casas-Castrillon v. DHS*, 535 F.3d 942, 951 (9th Cir. 2008). |
| | Moreover, resolution of this disputed fact would not entitle Respondents to judgment because whether ISAP II was designed for people with certain criminal history levels is not "material" to Petitioners' statutory and constitutional claims to an adequate bond hearing where judges can *consider* whether to release class members on ISAP. First, many class members do not have criminal histories more serious than people detained under Section 1226(a) -- including but not limited to members of the Section 1226(a) Subclass -- and Respondents have provided no evidence that ISAP II is inappropriate for these individuals. Second, immigration judges can assess any concerns about an individual's fitness for release on ISAP II at a bond hearing. |

13

| | |
|---|---|
| ISAP II is not designed to work with aliens who have no place of residence or reliable identification, which is the reason most arriving aliens are denied parole.<br><br>Exh. K to the Declaration of Theodore W. Atkinson (ISAP II Participant's Handbook); Exhibit A to the Declaration of Theodore W. Atkinson (Deposition of Wesley J. Lee), at 36:25- 37:11; 123:2-123:15; 134:24-136:17; Exhibit B to the Declaration of Theodore W. Atkinson (Deposition of Eric G. Saldana), at 107:8-107:18; 120-1-124:16 | Disputed.  Respondents' cited evidence does not support that "the reason most arriving aliens are denied parole" is lack of residence or reliable identification. Mr. Lee's testimony concerns the current parole process and standards for release.  Mr. Saldana's testimony generally describes the ISAP II program.  Neither deponents' testimony discusses residence or identification requirements for the ISAP II program.<br><br>Moreover, resolution of this disputed fact would not entitle Respondents to judgment because whether certain "arriving aliens" are denied release based on lack of identification or residence is not "material" to Petitioners' statutory and constitutional claims to an adequate bond hearing. Immigration judges can assess any concerns about an individual's fitness for release on ISAP II at a bond hearing. |
| Once ICE determines that an alien is subject to discretionary detention under section 1226(a), the alien receives a written Notice of Custody Determination indicating that the alien is entitled to seek a custody redetermination before an immigration judge.  This document provides straightforward notice, in plain language, that the alien is entitled to a bond hearing before an immigration judge ("You may request a review of this determination by an immigration judge").<br><br>Exh. D to the Declaration of Theodore W. Atkinson (Notices of Custody Determination) | Disputed.  Respondents' cited evidence does not establish the asserted fact. Respondents have simply attached a notice of custody determination, which does not establish whether, when, or how consistently this notice is provided to detainees in the class.  Moreover, the text of the notice demonstrates that it is not straightforward and may be confusing for many class members.  The notice does not explain the term "review" or how to "request" such review by an individual judge, and nowhere uses the words "bond" or "bail."  Substantial numbers of class members do not read or understand English, and are unfamiliar with legal proceedings and immigration law.  Dkt. |

PETITIONERS' OPPOSITION TO RESPONDENTS' STATEMENT
OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| | |
|---|---|
| | 281-7 ¶¶ 10-14, 19; Dkt. 281-1 ¶12. For such individuals, the notice of custody determination does not provide sufficiently clear and straightforward notice of a detainee's right to request a bond hearing.<br><br>Moreover, resolution of this disputed fact would not entitle Respondents to judgment because the notice provided to Section 1226(a) Subclass members at the outset of their detention is not "material" to Petitioners' statutory and constitutional claims to an adequate bond hearing after six months of detention. |
| Once an alien becomes eligible for a *Casas* or *Diouf* hearing, and if ICE does not release the alien once the alien becomes eligible, ICE provides the detainee with a written notice that they are entitled to seek a bond hearing before an immigration judge. This document provides straightforward notice, in plain language, that the alien is entitled to a bond hearing before an immigration judge ("Pursuant to the above-named Ninth Circuit decisions, you may request a review of this determination from an immigration judge")<br><br>Exh. L to the Declaration of Theodore W. Atkinson (sample *Casas/Diouf* Letters provided by ICE). | Disputed. Respondents' cited evidence does not establish the asserted fact. Respondents have simply attached the text of the letters they send to individuals whose detention is governed by *Casas* or *Diouf II*. These letters in fact demonstrate that they are not straightforward and may be confusing for many class members. The notice does not explain the term "review" or how to "request" such review by an immigration judge. The letter does not use the word "bail" or "bond." Further, the letter provides a citation to the Immigration Court Manual, but the Manual itself is written in highly technical legalese and is only available in the detention center libraries, to which detainees have extremely limited access. Dkt. 281-1 ¶¶13-21. Substantial numbers of class members do not read or understand English, and are unfamiliar with legal proceedings and immigration law. Dkt. 281-7 ¶¶ 10-14, 19; Dkt. 281-1 ¶12. For such |

|  | individuals, the letter does not provide sufficiently clear and straightforward notice of a detainee's right to request a *Casas/Diouf* bond hearing. |
|---|---|

**Conclusions of law:**

Petitioners claim two categories of modifications must be made to *Casas* hearings to make them constitutionally adequate:  (1) immigration judges must be required to consider the alien's ultimate removability, the length of an alien's past and future detention, and alternatives to detention; and (2) Respondents should be required to provide constitutionally adequate notice of hearings, or provide automatic immigration hearings, under a heightened standard, every six months.

First, Petitioners' claim that immigration judges must consider an alien's ultimate removability is an untimely amendment to the Complaint.  In any event, such a requirement is not compelled by due process.  Such a requirement would create a conflict in the standards of burden between *Casas* hearings and that established in *Zadvydas*.  Such a requirement would also pose enormous practical problems that cannot be overcome, because it would require judges to make determinations on ultimate removability that cannot be determined until an alien has been ordered removed and travel documents are sought.  It would also require immigration judges, at a relatively early stage of removal proceedings, to predetermine whether an alien is ultimately removable, a determination that cannot be made until ICE has begun efforts to remove the alien after a final order is entered.

Second, if the length of past and future detention has any bearing, it only has a bearing on whether continued detention comports with due process, not flight risk and danger, which is the proper area of inquiry at an immigration bond hearing. 8 C.F.R. § 236.1(d)(1); *see Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006).

Third, due process does not require immigration judges to consider alternatives to detention at a bond hearing.  The available alternative to detention,

1   ISAP II, is not a practical alternative to detention for arriving aliens or serious

2   criminal aliens because ISAP II was designed for low-risk offenders and for

3   individuals with an established residence.  Moreover, immigration judges have

4   limited jurisdiction that precludes ordering an alternative to detention.  An

5   immigration judge's authority occurs after the initial custody determination by DHS.

6   8 C.F.R. § 1236.1(d)(1).  While 8 C.F.R. § 1236.1(c)(8) provides that an officer

7   authorized to issue a warrant of arrest may release an alien not subject to mandatory

8   detention under section 1226(a)(2) and (3), 8 C.F.R. §1236.1(d) provides that an

9   immigration judge may ameliorate the conditions of release set by DHS.  Nowhere

10  do the regulations governing custody determinations provide for the immigration

11  judge to set initial conditions of release as opposed to reviewing or modifying

12  conditions already set by DHS.  "[T]he jurisdiction of the Board and the

13  Immigration Judge is limited by statute and regulation to that which has been

14  delegated by the Attorney General." *Matter of G-K-*, 26 I. & N. Dec. 88, 93 (BIA

15  2013) (citing cases).

16      Due process also does not compel a modified notice of the right to request

17  hearings or automatic, periodic bond hearings every six months.  First, the notice

18  provided by ICE to aliens informing them of their right to seek a bond hearing

19  before an immigration judge is constitutionally adequate because it informs aliens, in

20  plain language, that they may request a bond hearing before an immigration judge.

21  Second, Petitioners' claim for periodic bond hearings every six months constitutes

22  an untimely amendment to the Complaint.  *See Apache Survival Coalition v. United*

23  *States*, 21 F.3d 895, 910 (9th Cir. 1994).  In any event, periodic hearings are not

24  required by due process.  If an alien is provided with the opportunity to seek a bond

25  hearing, or has a bond hearing, then due process has been satisfied with respect to a

26  determination of flight risk and danger.  Nothing in due process requires

27  Respondents to provide additional bond hearings after a bond hearing was available

28

PETITIONERS' OPPOSITION TO RESPONDENTS' STATEMENT
OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1   or provided, but bond was denied.  *Prieto-Romero*, 534 F.3d 534 F.3d 1053, 1065-66

2   (9th Cir. 2008).

3

4   **Petitioners' Position**

5           Respondents mis-state the law regarding the procedures that should govern at

6   prolonged detention bond hearings.  As an initial matter, Respondents erroneously

7   contend that certain of the relief Petitioners seek constitutes an untimely amendment

8   to the complaint.  The procedures sought are forms of equitable relief, not

9   freestanding claims, and the Ninth Circuit has repeatedly held that a party need only

10  plead claims, not every form of relief.  *See, e.g.*, *Fanucchi & Limi Farms v. United*

11  *Agri Prods.*, 414 F.3d 1075, 1082 (9th Cir. 2005).  But if these were new claims,

12  Petitioners would have more than satisfied the notice pleading standard because the

13  complaint makes plain that Petitioners seek to ensure "adequate process" for

14  immigrants subjected to prolonged detentions, and identifies as examples of injured

15  class members persons held despite the unlikelihood of removal due to a credible

16  asylum claim, or held for years after an initial bond hearing.  Dkt. 111 ¶¶ 1, 13, 17, 36,

17  42, 45-52, 73-75, 103, 116, 118, 125, 127.  Regardless, Respondents have not satisfied

18  their burden of demonstrating prejudice.  These issues raise questions of law; no

19  additional discovery is necessary.  *Farnan v. Capistrano Unified School Dist.*, 654

20  F.3d 975, 984-85 (9th Cir. 2011) (permitting amendment after scheduling order

21  deadline because issue was "a question of law" and could be decided "based on the

22  factual record already developed") (quoting district court decision with approval).

23          With respect to the consideration of removability, the Ninth Circuit has held

24  that the Government is required to release noncitizens *while their cases are pending*,

25  so long as their removal would not be significantly likely upon the conclusion of their

26  removal case.  *See Owino v. Napolitano*, 575 F.3d 952, 955 (9th Cir. 2009).

27  Respondents offer no rationale for preventing Immigration Judges from enforcing that

28

rule, who are equally – if not better – positioned than district courts sitting in habeas to address the purported "practical concerns" raised by Respondents.

With respect to consideration of the length of past and future detention, the Ninth Circuit has acknowledged that, as past or anticipated future detention length increases, so does the extent of the deprivation of a noncitizen's liberty. *See Diouf II*, 634 F.3d 1091 ("When the period of detention becomes prolonged, 'the private interest that will be affected by the official action' . . . is more substantial.") (quoting and citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). To avoid the due process problem that would otherwise be presented, the Government should be required to provide a more substantial justification for detention—a showing of greater flight risk or danger—as the length of past or anticipated future detention increases. Courts routinely apply this common-sense rule in other prolonged detention contexts. *See, e.g.*, *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989) ("In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, . . . but also additional factors such as the length of the detention that has in fact occurred or may occur in the future [and] . . . the non-speculative nature of future detention."); *United States v. Ailemen*, 165 F.R.D. 571, 589 (N.D. Cal. 1996) (collecting cases).

With respect to the consideration of alternatives to detention, due process requires an Immigration Judge to determine, in any adequate prolonged detention hearing, that no alternatives to detention would address the Government's justifications for detention. In analogous contexts, the Supreme Court and Ninth Circuit have recognized the importance of the consideration of alternatives to detention when it comes to prolonged civil detention. *See United States v. Salerno*, 481 U.S. 749, 750 (1987) (upholding the constitutionality of preventive detention, but only while recognizing the Bail Reform Act's requirement that a federal judge must first determine that no conditions of release will "reasonably assure the appearance of such person as required and the safety of any other person and the community")

1    (citing 18 U.S.C. § 3142(e)); *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)

2    (recognizing, in striking down measures to incarcerate civil detainees, due process

3    requires that the Government's objectives could not be "accomplished in . . .

4    alternative and less harsh methods") (citations and quotations omitted).  Respondents

5    argue that the regulations do not permit immigration judges to set "initial conditions"

6    of release, but Petitioners do not seek to divest ICE officers of authority to set "initial

7    conditions" – rather, they simply seek an order requiring immigration judges to use

8    their existing authority to "ameliorat[e]" the conditions set by ICE officers by ordering

9    release on alternatives to detention.  *See* 8 C.F.R. 236.1(d)(1) (permitting Immigration

10   Judges to "ameliorat[e]" conditions of release).

11        With respect to the need for automatic hearings, Respondents have provided no

12   authority or support for their bald assertion that "the notice provided by ICE . . . is

13   constitutionally adequate."  The Government's procedures ignore the Government's

14   independent obligation to ensure that detention is justified, whether or not a detainee

15   requests a hearing.  *See generally Doe v. Gallinot*, 657 F.2d 1017, 1023 (9th Cir.

16   1981).  Further, the notice provided falls far short of clarity, particularly for the

17   substantial number of detainees who lack counsel and do not speak English or are

18   illiterate.  *See Padilla-Agustin v. INS*, 21 F.3d 970, 976 (9th Cir. 1994) ("Particularly

19   when the alien is representing himself and has language difficulties, as is so often the

20   case . . . a high degree of clarity should be a part of the process accorded."), *overruled*

21   *on other grounds by Stone v. INS*, 514 U.S. 386 (1995).

22        With respect to the need for periodic bond hearings, Respondents have no

23   explanation for why individuals detained far beyond six months – in some cases for

24   years – should not be afforded regular hearings at six month intervals to determine

25   whether their detentions remain warranted.  Respondents cite *Prieto-Romero v. Clark*,

26   534 F.3d 1053, 1065-66 (9th Cir. 2008), but *Prieto* did not address whether that

27   petitioner was entitled to another bond hearing under appropriate standards, because it

28   found no prejudice.  *Id.*  Respondents conduct periodic reviews for detainees under the

20

1   Post-Order Custody Review Process and for detainees who have had a *Casas* hearing

2   but remain detained.  Respondents have provided no reason why they should not also

3   be required to conduct similar periodic reviews for class members who may face

4   months or years of detention after an initial bond hearing.

5                                              *        *        *

6           For the foregoing reasons, the grounds set forth in Petitioners' moving and

7   opposition papers, and in light of Petitioners' evidentiary objections, Respondents'

8   cross-motion for summary judgment should be denied.

9

10                                              Respectfully submitted,

11

12  Dated:     April 5, 2013                   SIDLEY AUSTIN LLP

13

14

15                                              /s/    Sean A. Commons

16                                              SEAN A. COMMONS

17                                              Counsel for Petitioners

18

19

20

21

22

23

24

25

26

27

28

PETITIONERS' OPPOSITION TO RESPONDENTS' STATEMENT
OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW