AHILAN T. ARULANANTHAM (SBN 237841)
aarulanantham@aclu-sc.org
MICHAEL KAUFMAN (SBN 254575)
mkaufman@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1616 Beverly Boulevard
Los Angeles, CA 90026
Telephone: (213) 977-5211
Facsimile: (213) 977-5297

*Attorneys for Petitioners*
(Additional Counsel listed on following page)

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, ABDIRIZAK ADEN FARAH, YUSSUF ABDIKADIR, ABEL PEREZ RUELAS, JOSE FARIAS CORNEJO, ANGEL ARMANDO AYALA, for themselves and on behalf of a class of similarly-situated individuals,<br><br>Petitioners,<br><br>v.<br><br>ERIC HOLDER, United States Attorney Genera; JANET NAPOLITANO, Secretary, Homeland Security; THOMAS G. SNOW, Acting Director, Executive Office for Immigration Review; TIMOTHY ROBBINS, Field Office Director, Los Angeles District Immigration and Customs Enforcement; WESLEY LEE, Officer-in-Charge, Mira Loma Detention Center; et al.; RODNEY PENNER, Captain, Mira Loma Detention Center; SANDRA HUTCHENS, Sheriff of Orange County; OFFICER NGUYEN, Officer-in-Charge, Theo Lacy Facility; CAPTAIN DAVIS NIGHSWONGER, Commander, Theo Lacy Facility; CAPTAIN MIKE KREUGER, Operations Manager, James A. Musick Facility; ARTHUR EDWARDS, Officer-in-Charge, Santa Ana City Jail; RUSSELL DAVIS, Jail Administrator, Santa Ana City Jail,<br><br>Respondents. | Case No. CV-07-3239-TJH (RNBx)<br><br>**DECLARATION OF SUSAN B. LONG OF APRIL 4TH, 2013**<br><br>Honorable Terry J. Hatter<br><br>Date: Under Submission<br>Time: Under Submission |

---

**DECLARATION OF SUSAN B. LONG**

JUDY RABINOVITZ
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

JAYASHRI SRIKANTIAH (SBN 189566)
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS (SBN 217603)
CODY JACOBS (SBN 272276)
JONATHAN FEINGOLD (SBN 286302)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Petitioners*

# DECLARATION OF SUSAN B. LONG OF APRIL 4TH, 2013

I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

1. My name is Susan B. Long. I am Associate Professor of Managerial Statistics at the Martin J. Whitman School of Management at Syracuse University. I have been retained by counsel for Petitioners as an expert in this matter.

2. In my capacity as an expert, I reviewed the expert report of Dr. Chester Palmer, submitted by the Respondents in this case. In the course of reviewing Dr. Palmer's analysis of continuance data, I discovered significant inconsistencies between the data relied on by Dr. Palmer for his analysis and the database information produced to the Petitioners in this matter. I summarized those inconsistencies in my Rebuttal Expert Report.

3. I have reviewed the Declaration of Benjamin McDowell, submitted in connection with the Respondents' Motion for Summary Judgment, which purports to explain the inconsistencies in Respondents' data. I have also reviewed Mr. McDowell's prior declarations submitted in this action and the transcript of his deposition taken on December 19, 2011, as well as information produced by Respondents in discovery regarding the Executive Office of Immigration Review ("EOIR") database from which the information for Dr. Palmer's analysis was drawn. In addition, through my work as the Co-Director of the Transactional Records Access Clearinghouse at Syracuse University, I have gained extensive experience and knowledge of the databases maintained by EOIR. A summary of my relevant experience is contained in the appendix to my Expert Report.

4. Mr. McDowell's declaration contains new information about the EOIR database and EOIR data entry practices that had not previously been disclosed by Mr. McDowell or the Respondents in this matter. Based on this new information, it is

clear that at least two of the assumptions underlying Dr. Palmer's analysis of the amount of time attributable to "alien-caused" delays are false.

     5.     First, Mr. McDowell's declaration clarifies that the field "ADJ_DATE" in the Schedule Table refers to the date on which a hearing is *scheduled*, not the date on which a hearing in fact takes place or the date on which the adjournment is requested and/or granted. This is apparent from an example provided in Mr. McDowell's declaration at paragraph 13. There he explains that to match the particular date shown in the Schedule Table with an adjournment shown in the Actions Table, you cannot rely on the ADJ_DATE recorded in the Schedule Table. Instead you need to use an entirely different date field ("UPDATE_DATE") from the Schedule Table – a date field Dr. Palmer did not use based on his own description of his analysis. Using this entirely different field, Mr. McDowell shows that the scheduled September 2, 2010 hearing date was actually adjourned on August 30, 2010 – three days prior to the date of the scheduled hearing as reflected in the Schedule Table. As the Action Table for this case shows, a motion for continuance was granted and the adjournment entered on the earlier of these two dates.[1] The entries corresponding to the scheduled September 2, 2010 hearing date from paragraph 13 of Mr. McDowell's declaration and from Exhibit 3 from the deposition of Dr. Palmer record the following sequence of events.

EOIR Schedule Table [from McDowell Declaration Para 13 showing new field]
(emphasis added)

| IDNCASE | ADJ_RSN | ADJ_DATE | **UPDATE_DATE** |
|---------|---------|----------|-----------------|
| 6566575 | 12 | 9/2/2010 | **9/1/2010** |

---

[1] A change in the adjournment information, but not the date of the adjournment, also was made the following day, September 1, when adjournment information was edited. McDowell uses this fact in matching up the UPDATE_DATE in the record from the Schedule Table to the corresponding set of entries in the Action Table.

2

**DECLARATION OF SUSAN B. LONG**

EOIR Actions Table [from Exhibit 3 of the November 27, 2012 deposition of Dr. Palmer]

| IDNCASE | IDNACTION | DATACTION | STRDESCRIPTION | STRREACTION |
|---|---|---|---|---|
| 6566575 | 34811435 | 30-Aug-10 | Motion for a Continuance | Filed |
| 6566575 | 34816223 | 30-Aug-10 | Motion for a Continuance Disposition Entered | GRANTED |
| 6566575 | 34816230 | 30-Aug-10 | Adjournment | Added |
| 6566575 | 34869451 | 01-Sep-10 | Adjournment | Edited |

Thus, by his own testimony, McDowell demonstrates that his prior statements indicating that "[t]he Schedule Table identifies... *when* a hearing was adjourned (ADJ_DATE)," are not correct. *See* Dkt. 299-1 ¶3 (emphasis added). *See also id.* at Exh. A ¶4; *id.* at Exh. B ¶ 4. In fact, according to his new declaration, the Schedule Table may identify when a hearing is originally scheduled, but that date may change based on information contained in the Update field.

      6.    Dr. Palmer's analysis is premised on an assumption that the "ADJ_DATE" field contains the date that an adjournment was requested and granted. Based on the new information provided in Mr. McDowell's declaration, however, it is clear this assumption is false. This affects Dr. Palmer's analysis because he bases his calculation of "delay due to an adjournment" on the number of days from the date shown in the "ADJ_DATE" field to the next scheduled hearing date. If the date contained in the ADJ_DATE field is not the date of the actual adjournment, then the calculated delay due to an adjournment will be incorrect.

      7.    Second, Mr. McDowell's declaration clarifies that hearing dates in immigration cases are not always scheduled chronologically. In the same example discussed above, the Schedule Table shows a hearing scheduled for August 26, 2010 and a second later hearing scheduled for September 2, 2010. Mr. McDowell states at paragraph 7 that "The hearing for September 2, 2010, was created on August 10,

2010." Thus while the September 2 hearing was scheduled to occur *after* the August 26 hearing, it was already scheduled *well before* the August 26 hearing was to occur.

8. Dr. Palmer's analysis is premised on an assumption that hearings are scheduled chronologically. That is, that the example we saw of a previously-scheduled hearing never occurs. Dr. Palmer assumes that *only* if a hearing is adjourned will any later hearing ever be scheduled.

9. This incorrect assumption results in two types of errors in Dr. Palmer's calculations. First, when hearings are not scheduled chronologically, it makes little logical sense to assume that the specific number of days between the two hearings are in fact a *delay*. In such instances, the events at the prior hearing could not have necessitated the scheduling of the subsequent one – as the subsequent one had already been scheduled. Second, Dr. Palmer classifies this period as *alien-caused* when the adjournment reason for the immediately prior hearing was at the alien's request. However, when hearings are not scheduled chronologically, the second hearing was not *caused* by that prior adjournment, and it is incorrect to use the reason for that adjournment to attribute the party responsible for the "delay."

10. While these incorrect assumptions determined how Dr. Palmer calculated alien-caused delays and therefore affected Dr. Palmer's results, I cannot estimate how substantial of an effect these incorrect assumptions had based on the limited information that the government has produced in this case. To measure the effect of Dr. Palmer's erroneous assumptions, I would as a starting point need to be able to accurately link the details contained in the Actions Table to the specific scheduled hearing to which they relate in the Schedule Table. This in turn requires the "UPDATE_DATE" values from the Schedule Table because, as Mr. McDowell now indicates in paragraph 13 of his declaration, the dates in this field are needed to "determin[e] which schedule record goes with each action record." However, I only have the contents of the UPDATE_DATE field for the single case shown in Mr.

4

**DECLARATION OF SUSAN B. LONG**

McDowell's latest declaration. The UPDATE_DATE field was not included in any of the ACCESS files released to the Petitioners' counsel or otherwise available to me (or, apparently, to Dr. Palmer). Thus, I do not have the EOIR data required to carry out the analysis needed to determine the magnitude of error introduced by Dr. Palmer's incorrect assumptions.

11. Mr. McDowell's declaration also purports to address the inconsistencies between the Schedule and Actions Table data that I documented in my Rebuttal Expert Report. In his declaration, Mr. McDowell includes a table with information from the Schedule and Actions tables for a single case. In that table, Mr. McDowell provided information from a field – "UPDATE_DATE" – regarding the date on which the Schedule Table was updated for the case in question. Information from this field had not previously been included in any of the ACCESS files released to the Petitioners' counsel or otherwise available to me. Mr. McDowell's relies on the UPDATE_DATE" field information to explain the inconsistencies in the Schedules and Action Tables with respect to this individual case, but because the government has not provided this field for any of the other cases I analyzed, there is no way for me to verify his explanation for the entire dataset.

12. Even though the government has not provided the information necessary to assess the validity of Mr. McDowell's claims, the limited information provided by Mr. McDowell raises additional questions regarding the reliability of data in the Schedule Table. For example, in the illustrative case discussed by Mr. McDowell, there is an entry with an "ADJ_DATE" for 3/1/2011 with an "UPDATE_DATE" of 3/28/2011. Based upon the information provided by Mr. McDowell, there is no way to determine whether a hearing or adjournment in fact occurred on 3/1. Reprinted below is the record from the Schedule Table from McDowell's declaration for this hearing.

| IDNCASE | ADJ_RSN | ADJ_DATE | UPDATE_DATE |
|---|---|---|---|
| 6566575 | 13 | 3/1/2011 | 3/28/2011 |

There are three entries on 3/28/2011 in the Actions Table for this case as shown below (from Exhibit 3 of the November 27, 2012 deposition of Dr. Palmer).

| IDNCASE | IDNACTION | DATACTION | STRDESCRIPTION | STRREACTION |
|---|---|---|---|---|
| 6566575 | 40536459 | 3/28/2011 | Adjournment | Added |
| 6566575 | 40536669 | 3/28/2011 | Individual Hearing | Scheduled |
| 6566575 | 40537568 | 3/28/2011 | Actions - Worksheet | Generated |

There is no entry in the Actions Table of any kind on 3/1. Indeed, the above three entries are the only entries in the Actions Table during the period following December 7, 2010 until April 19, 2011. Based on this information we cannot tell whether the hearing scheduled for 3/1 took place, and we also cannot be sure when the 3/1 scheduled hearing was adjourned. If we rely on Mr. McDowell's method for matching records from the Actions Table with the Schedule Table, that method indicates that the adjournment was officially recorded on 3/28. Does that mean that the adjournment occurred on 3/28, nearly four-weeks after the date of the scheduled hearing on 3/1? Or that the hearing on 3/1 was adjourned, but the data reflecting that adjournment was not entered for nearly four weeks after the scheduled hearing? Because Mr. McDowell has stated that the "UPDATE_DATE" field was not designed with the purpose of linking these two tables, see Dkt. 299-1 ¶5, there is no way to determine the relationship between the entries in Action and Schedule Tables based on the information provided. As such, we simply cannot tell for sure whether the hearing or adjournment in fact occurred on 3/1 based on the information that the government has provided.

13.  Mr. McDowell's declaration also purports to explain the inconsistencies between the Schedule Table and the Actions Table in three other individual cases.

However, Mr. McDowell did not provide information from the "UPDATE_DATE" for these three cases. As such, it is impossible for me to verify the accuracy of his assertions regarding the relationship of the Schedule and Actions tables in those cases. Respondents have not provided information from the "UPDATE_DATE" field in the Schedule Table, aside from the single case cited in Mr. McDowell's declaration.[2] Without the information recorded in the UPDATE_DATE field corresponding to each scheduled hearing, I have no way to verify if in fact this additional information would account for the large number of inconsistencies I found between the "ADJ_DATE" in the Schedule Table and the "Adjournment" date entered in the Actions Table. Only with this additional information can I determine whether this would allow me to (a) "match" each scheduled hearing in the Schedule Table with a specific adjournment in the Actions Table, and (b) verify that each adjournment in the Actions Table "matches" a specific scheduled hearing in the Schedule Table. Because of the significant inconsistencies I documented between the Action and Schedule tables, being able to carry out successful matching in this way is essential to determine whether Dr. Palmer relied on sufficiently reliable data.

14. I did not receive word that Respondents had disclosed updated database information for the studied class members until after I completed the analysis for my Expert Report in this action. I did analyze the updated data for the purposes of my Rebuttal Expert Report. The updated data did not materially affect any of the

---

[2] Indeed, the one example of apparent discrepancies which Mr. McDowell identifies as "really [] not discrepancies at all" *was not counted as a discrepancy in my analysis.* Mr. McDowell observes that the Actions Table had the same number of adjournments entries as the number of scheduled hearings in the Schedule Table, once the Actions Table data is limited to "Added" entries and the "Edited" entries are excluded. However, I already excluded all "Edited" adjournment records from my analysis. *See* Dkt. 281-6, Exh. B at 4 n.2. In addition, the difference between the 9/2/2010 date of the scheduled hearing and its 8/30/2010 adjournment also was not included in my count of records that did not match since any dates within plus/minus 3 days of one another, as these are, were treated as a "match." *See* Dkt. 281-6, Exh. B at 5.

statistics reported in my Expert Report – that is, result in *lower* values for detainee success or detention length. If anything, the reported statistics on detention time would have generally been somewhat higher with the updated data than those I reported in my original Expert Report.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief. Executed this 4th day of April, 2013 in Syracuse, New York.

*/s/ Susan B. Long*
Susan B. Long