1  STUART F. DELERY
   Acting Assistant Attorney General
2  Civil Division
   DAVID J. KLINE
3  Director, Office of Immigration Litigation
   District Court Section
4  THEODORE W. ATKINSON
   United States Department of Justice
5  Office of Immigration Litigation
        P.O. Box 868, Ben Franklin Station
6       Washington, DC 20044
        Phone: (202) 532-4135
7       theodore.atkinson@usdoj.gov
   SARAH S. WILSON
8  Trial Attorney

9  Attorneys for Respondents

10              UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
11                   WESTERN DIVISION

12  ALEJANDRO RODRIGUEZ, *et al.*,      ) Case No. CV 07-3239-TJH (RNBx)
                                        )
13              Petitioners,            ) **RESPONDENTS'**
                                        )
14       vs.                            )
                                        ) **(1) REPLY IN SUPPORT OF THEIR**
15  TIMOTHY S. ROBBINS, *in his*        ) **CROSS-MOTION AND MOTION FOR**
    *capacity as U.S. Immigration and*  ) **SUMMARY JUDGMENT AS TO ALL**
16  *Customs Enforcement, Los Angeles*  ) **CLAIMS;**
    *District Field Office Director, et al.*, )
17                                      )
18              Respondents.            ) **(2) SUPPORTING DECLARATION**
                                        ) **AND EXHIBITS**
19                                      )
                                        )
20                                      ) Hon. Terry J. Hatter, Jr.
                                        )
21                                      )
                                        ) Hearing Date:  May 6, 2013
22                                      ) Hearing Time:  UNDER SUBMISSION
                                        )
23  _____ )

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 3

I.   Even under the panel's decision, detention beyond six months does not
     raise constitutional concerns if the length of the alien's detention is
     attributable to the alien's own actions ..................................................... 3

     A.   The panel's decision on the appeal of the preliminary
          injunction ........................................................................................ 4

     B.   The panel's decision leaves critical issues regarding the
          appropriateness of a six-month rule in this case for  determination
          by this Court based on evidence not before the panel ................. 5

II.  Due process does not require multiple bond hearings for aliens who
     already may seek bond hearings under section 1226(a) or who are
     already entitled to a *Casas* hearing under section 1231(a)(6) ................ 8

     A.   Aliens detained under section 1226(a) may seek a bond hearing
          before an immigration judge, and nothing in Ninth Circuit
          precedent suggests that such aliens must be afforded an
          additional bond hearing at six months to comport with due
          process ............................................................................................ 9

     B.   Aliens detained for more than six months under section 1231 are
          already entitled to a bond hearing under *Diouf II*, unless they
          take steps to prevent their removal ............................................. 12

III. The Ninth Circuit has clarified the requirements for a constitutionally
     adequate bond hearing to challenge prolonged detention, and
     Petitioners' requested modifications to *Casas* hearings find no support
     in due process jurisprudence ................................................................. 17

     A.   Petitioners' new claims should be rejected as untimely
          amendments ................................................................................. 18

i

B.   Due process does not require an immigration judge to consider
ultimate removability as a factor at a bond hearing ................... 20

C.   How long an alien will be detained in the future is a speculative
factor, and is a question of due process, not flight risk and
danger  23

D.   Due process does not require immigration judges to consider
alternatives to detention at a bond hearing ................................ 25

E.   Due process does not require periodic *Casas* hearings and the
notices provided to aliens informing them of their right to a
*Casas* and other bond hearings is constitutionally
adequate ................................................................................. 27

CONCLUSION ...................................................... 29

ii

# TABLE OF AUTHORITIES

## CASES

*Addington v. Texas*,
   441 U.S. 418 (1979) ................................................................. 20

*Aguilar-Ramos v. Holder*,
   594 F.3d 701 (9th Cir. 2010)....................................................... 11

*Ahmed v. Holder*,
   569 F.3d 1009 (9th Cir. 2009)...................................................... 24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)............................. 18

*Casas-Castrillon v. DHS*,
   535 F.3d 942 (9th Cir. 2008).............................................. 1, passim

*Christopher v. Harbury*,
   536 U.S. 403 (2002) ................................................................ 18

*Conley v. Gibson*,
   355 U.S. 41 (1957).................................................................. 18

*Demore v. Kim*,
   538 U.S. 510 (2003) ........................................................ 4, 11, 24

*Diop v. ICE/Homeland Security*,
   656 F.3d 221 (3d Cir. 2011)......................................................... 4, 7, 9

*Diouf v. Napolitano*,
   634 F.3d 1081 (9th Cir. 2011)............................................... 1, passim

*Doe v. Gallinot*,
   657 F.2d 1017 (9th Cir. 1981)....................................................... 28

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ...................................................... 19

*Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*,
   442 U.S. 1 (1979) .................................................................... 7

*Karanja v. Valdez*,
   No. CV 12–3280 TJH (FMO), 2012 WL 6110632,
   (C.D. Cal. Oct. 31, 2012) ..................................................... 11, 29

*Khotesouvan v. Morones*,

iii

386 F.3d 1298 (9th Cir. 2004).................................................................. 16

*Lema v. INS,*
341 F.3d 853 (9th Cir. 2003) ................................................... 8, 17

*Ly v. Hansen,*
351 F.3d 263 (6th Cir. 2003).............................................. 4, 7, 9

*Martinez v. Gonzales,*
504 F. Supp. 2d 887 (C.D. Cal. 2007) ........................................ 7

*Mathews v. Diaz,*
426 U.S. 67 (1976) ........................................................................ 24

*Matter of Guerra,*
24 I. & N. Dec. 37 (BIA 2006) ..................................... 2, passim

*Morrissey v. Brewer,*
408 U.S. 471 (1972) ....................................................................... 7

*Nadarajah v. Gonzales,*
443 F.3d 1069 (9th Cir. 2006)................................................... 22

*Owino v. Napolitano,*
575 F.3d at 955 (9th Cir. 2009)................................................. 22

*Pedro v. Oregon Parole Bd.,*
825 F.2d 1396 (9th Cir. 1987)..................................................... 7

*Pelich v. INS,*
329 F.3d 1057 (9th Cir. 2003) ................................................ 8, 17

*Prieto-Romero v. Clark,*
534 F.3d 1053 (9th Cir. 2008)............................................ 9, passim

*Rodriguez v. Hayes,*
591 F.3d 1105 (9th Cir. 2010) ................................................ 8, 16

*Rodriguez v. Robbins,*
No. 12-56734, --- F.3d ---, 2013 WL 1607706 (9th Cir. Apr. 16, 2013)....1,
3

*Rosales v. Ice Field Office* Director,
No. C12–562–RSL–BAT, 2012 WL 3596366,
(W.D. Wash. Jul. 9, 2012) ................................................ 11, 29

*Tijani,*
430 F.3d at 1244.......................................................................... 12, 20

iv

*U.S. v. $11,500.00 in U.S. Currency,*
    --- F.3d ---, 2013 WL 1174382, *4 (9th Cir. 2013) ...................................... 19

*United States v. Ailemen,*
    165 F.R.D. 571 (N.D. Cal. 1996) ............................................................ 23, 24

*United States v. Hare,*
    873 F.2d 796 (5th Cir. 1989) .................................................................. 23, 24

*V. Singh v. Holder,*
    638 F.3d 1196 (9th Cir. 2011) .............................................................. 1, passim

Zadvydas v. Davis,
    533 U.S. 678 (2001) ............................................................................. 1, passim

*Zivkovic v. S. Cal. Edison Co.,*
    302 F.3d 1080 (9th Cir. 2002) .................................................................... 19

## **STATUTES**

8 U.S.C. § 1101(a)(47)(B)(ii) ......................................................................... 13

8 U.S.C. § 1225(b) ............................................................................... 1, passim

8 U.S.C. § 1226(a) ............................................................................... 1, passim

8 U.S.C. § 1226(a)(2) ................................................................................... 26

8 U.S.C. § 1226(a)(3) ................................................................................... 26

8 U.S.C. § 1226(c) ............................................................................... 1, passim

8 U.S.C. § 1231 ............................................................................... 8, 9, 12

8 U.S.C. § 1231(a)(1)(A) ............................................................................... 9

8 U.S.C. § 1231(a)(1)(B)(ii) .................................................................... 12, 13

8 U.S.C. § 1231(a)(1)(C) .......................................................................... 8, 17

8 U.S.C. § 1231(a)(2) ............................................................................... 15, 16

8 U.S.C. § 1231(a)(6) ............................................................................. 8, passim

## **REGULATIONS**

8 C.F.R. § 236.1 ........................................................................................... 9

8 C.F.R. § 236.1(b) ...................................................................................... 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8 C.F.R. § 236.1(c)(8) ............................................................. 26

8 C.F.R. § 236.1(d)(1) ............................................................. 26

8 C.F.R. § 241.4(f).................................................................. 10

8 C.F.R. § 287.5(e)(3) ............................................................. 26

8 C.F.R. § 1003.19(e) ........................................................ 10, 12

8 C.F.R. § 1003.29 .................................................................. 24

8 C.F.R. § 1103.19(d) .............................................................. 22

## **MISCELLANEOUS**

Fed. R. App. P. 40 .................................................................... 3

Federal Rule of Civil Procedure 8(a)(2)................................... 18

Sup. Ct. Rules 10, 11 ............................................................... 3

# __INTRODUCTION__

Although a panel of the Ninth Circuit recently concluded that Petitioners are likely to succeed on the merits of their claims with respect to bond hearings for section 1225(b) and 1226(c) detainees, *see Rodriguez v. Robbins*, No. 12-56734, --- F.3d ---, 2013 WL 1607706 (9th Cir. Apr. 16, 2013), that decision – of which Respondents may yet seek further review – does not decide this action, and it does not address several issues that must be resolved by this Court in the first instance.

Respondents readily acknowledge the panel's decision.  However, it is critical to note that the panel did not have before it evidence that large numbers of detainees seek multiple continuances that have the self-inflicting effect of prolonging detention, and in many cases have the effect of prolonging such detention beyond six months from the date of initial ICE custody.  That evidence is crucial because it bears on this Court's ultimate consideration of whether uniform relief is appropriate in this case.  However, even if this Court accepts the panel's adoption of a general six-month rule, that evidence bears directly on the core due process question of whether aliens should be provided with a bond hearing when detention reaches six months.  As courts have repeatedly recognized, any due process analysis must account for the fact that an alien's detention has become "prolonged" due to reasons attributable to the alien.  Thus, the panel's decision leaves room for this Court to conclude that a six-month rule does not apply where the alien has taken steps to prolong his or her own detention .

There are also several issues that the panel's decision leaves untouched.  Specifically:

- Petitioners argue that due process requires aliens detained under section 1226(a) to receive bond hearings at six months.  However, aliens who are not subject to mandatory detention and who are now entitled to bond hearings before immigration judges have the opportunity for individualized determinations of flight risk and danger, and Petitioners can point to no authority supporting their view that those aliens – already determined by an immigration judge to be a flight risk or danger – are required by due process to receive an additional

determination of flight risk and danger at a later time. Petitioners also cannot justify why due process requires an automatic hearing at six months when individuals are entitled to subsequent bond redermination hearings if their circumstances have changed materially since the prior bond determination.

- Petitioners argue that aliens detained under section 1231 are entitled to bond hearings at six months, which includes time spent in pre-order detention. Petitioners are incorrect because their argument is based on a misguided interpretation of *Diouf II*.  It also ignores the Supreme Court's conclusion in *Zadvydas* that *post-order* detention is presumptively constitutional for six months after the alien is ordered removed.

- Petitioners also seek to expand *Casas* hearing requirements by mandating that Respondents automatically schedule bond hearings for detainees every six months – deviating from the regulations which require aliens to take the modest step of requesting bond hearings with the immigration court – and through further provision of "plain language" notice of such automatic hearings. However, Petitioners cite no support for the extraordinary proposition that aliens already given a bond hearing before an immigration judge are required by due process to receive additional hearings on a periodic, automatic basis. Nor is there any merit to Petitioners' assertion underlying their claims that the notice provided to aliens entitled to *Casas* and other bond hearings does not use "plain language" to notify aliens of their right to request a bond hearing. Petitioners' evidence on this front is inadmissible either because it is untimely or because it is based on unreliable hearsay.

- Petitioners argue that *Casas* hearings are not constitutionally adequate unless an immigration judge also considers the detainee's ultimate removability, the length of past and future detention, and alternatives to detention.  But the Ninth Circuit has already clarified the requirements for constitutionally adequate *Casas* hearings under *V. Singh*, and Petitioners can point to no authority that the requirements for *Casas* hearings must be expanded for other categories of

2

detainees to meet constitutional muster.  Further, there is no authority for the proposition suggested by Petitioners that the *Matter of Guerra* factors immigration judges must consider relating to flight risk and danger are constitutionally insufficient.  Moreover, Petitioners wholly ignore the practical problems posed by having immigration judges consider such factors.

This Court should enter summary judgment in favor of Respondents accordingly.

## **ARGUMENT**

**I.    Even under the panel's decision, detention beyond six months does not raise constitutional concerns if the length of the alien's detention is attributable to the alien's own actions.**

### **A.    The panel's decision on the appeal of the preliminary injunction**

On April 16, 2013, a panel of the Ninth Circuit Court of Appeals issued a decision on Respondents' appeal of this Court's preliminary injunction order. *Rodriguez v. Robbins*, No. 12-56734, --- F.3d ----, 2013 WL 1607706 (9th Cir. Apr. 16, 2013).  In its decision, the panel concluded that Petitioners had shown that they are likely to succeed on the merits of their claim that aliens detained under sections 1225(b) and 1226(c) are entitled to a bond hearing after six months because such detention is "prolonged" at that point and raises constitutional concerns.  *Id.* at ** 6-8, 12.[1]

---

[1] By discussing the panel's decision, Respondents do not waive or abandon their arguments in seeking summary judgment that sections 1225(b) and 1226(c) may not be construed under the canon of constitutional avoidance as permitting bond hearings for aliens detained under those statutes for six months or longer, either under those statutes or by application of section 1226(a).  Nor do Respondents waive or abandon their arguments that a one-size-fits-all six-month rule is neither compelled by nor consistent with due process, which is flexible and dependent upon the relevant facts and circumstances.  Respondents contend that the panel's decision was wrongly decided on the merits, and have an opportunity to seek further review of that decision, either through a petition for rehearing en banc, *see* Fed. R. App. P. 40, or through a petition for a writ of certiorari to the Supreme Court.  Sup. Ct. Rules 10, 11.

*(Footnote continued)*

3

Of course, the panel's decision is not a final pronouncement on this case. As appellate review of a preliminary injunction, the panel's decision is limited to concluding that the district court did not err in determining that Petitioners showed, among other things, that they are likely to succeed on the merits. Likelihood of success is not certainty of success, and not only is there evidence that was not before the panel, but also the panel's opinion itself provides room for this Court to enter summary judgment for Respondents.

First, the panel's decision lends support to Respondents' view that the statutory language is clear. On this point the panel agreed that both statutes are mandatory in nature. --- F.3d ---, 2013 WL 1607706 at **6 (finding section 1226(c) to be mandatory), 12 (describing section 1225(b) as mandatory). However, the panel disagreed that they are mandatory for the entirety of removal proceedings. Instead, the panel adopted the view that both statutes are "implicitly time-limited." *Id.* at *12.

The panel reached the conclusion that the statutes are time-limited by citing to Justice Kennedy's concurrence in *Demore v. Kim*, 538 U.S. 510, 532 (2003), embracing the view that section 1226(c) is subject to a limitation based on whether the length of detention has become unreasonable:

> The [*Demore*] Court thus upheld mandatory detention under § 1226(c), though the concurring opinion of Justice Kennedy—whose vote created a majority— noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness *if the continued detention became unreasonable or unjustified*."

--- F.3d ---, 2013 WL 1607706 at *6 (citing *Demore*, 538 U.S. at 532 (Kennedy, J., concurring) (citing Zadvydas v. Davis, 533 U.S. 678, 684–86 (2001)). The panel went on to note that two other circuits – the Third Circuit in *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011), and the Sixth Circuit in *Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003) – had adopted a reasonableness limitation on section 1226(c)

---

However, the time for seeking further review will not expire prior to the completion of briefing on summary judgment.

4

with respect to length of detention.  --- F.3d ---, 2013 WL 1607706 at *6 (noting that *Diop* had construed section 1226(c) "in light of Justice Kennedy's concurrence" in *Demore*).

**B.    The panel's decision leaves critical issues regarding the appropriateness of a six-month rule in this case for determination by this Court based on evidence not before the panel.**

In moving for summary judgment, Respondents have argued that sections 1225(b) and 1226(c) are mandatory detention statutes that authorize the detention of arriving and criminal aliens during the pendency of their removal proceedings without offending due process.  ECF No. 299, Memorandum in Support of Respondents' Motion for Summary Judgment, at 15-25.  Respondents maintain that those statutes constitutionally require the detention of such aliens while removal proceedings are ongoing, and do not waive any arguments Respondents have made regarding the mandatory nature of those statutes, the constitutionality of such detention, and the unavailability of constitutional avoidance to construe sections 1225(b) and 1226(c) as either requiring bond hearings or becoming inapplicable after a certain pre-determined time period.

However, the panel did not have the opportunity to consider evidence that a large number of aliens in the class seek multiple continuances, and that most of those continuances result in removal proceedings being delayed beyond six months.  *See* Declaration of Theodore W. Atkinson, filed with Respondents' Motion for Summary Judgment, Exhibits O and P thereto (Expert Report of Dr. Chester Palmer ("Palmer Rep.")).  Dr. Palmer's analysis shows that of the studied aliens, 86.9% requested at least one continuance, and over half requested three or more continuances during their removal proceedings.  Palmer Rep. at 2, 10.[2]  If the analysis is limited just to the first

---

[2] Petitioners attempt to minimize the impact of the striking number of alien-requested continuance by characterizing certain delays as "legitimate," specifically citing continuances sought for illness or a pending applications.  *See* ECF No. 315 at 32 & n. 21.  However, these delays make up only a fraction – less than five percent – of the total number of alien caused delays examined by Dr. Palmer.  *See* Palmer Rep. at

*(Footnote continued)*

six months of the studied aliens' detention, the data shows that 84.7% of aliens request a continuance during the first six months of their custody, and nearly two-thirds of those aliens – 66.2% – requested two or more continuances within the first six months of their custody.  Palmer Rep. at 2, 11.[3]

This evidence shows that, in large numbers, aliens significantly contribute to the length of their detention beyond six months by seeking multiple continuances of their removal proceedings.[4]  Therefore, to the extent there is an implied limit to

---

9.  More than sixty percent of all alien caused delays are the result of continuance sought for representation or preparation.  *Id.*

[3] Petitioners argue that Dr. Palmer's statistical analysis is unreliable because the electronic data provided by the Executive Office for Immigration Review ("EOIR") is itself unreliable.  ECF No. 315, Petitioners' Opposition ("Pet. Oppo.") at 37.  This charge is without merit.  The "Schedule Data Table" on which Dr. Palmer relied is the best evidence of continuances sought by aliens, because immigration court personnel input data into that table showing (1) when a hearing has been "adjourned," or continued, and (2) the reasons for the adjournment, as represented by a code selected by court personnel.  ECF No. 299-1 (Declaration of Benjamin McDowell ("McDowell Decl.")) at Exh. B ¶ 6.  Petitioners' contention that the "Schedule Data Table" is unreliable is based on their assumption that the "Actions Data Table," which was also produced in discovery, must reflect every adjournment in the same manner as reflected in the "Schedule Data Table."  Pet. Oppo. at 37.  This is simply incorrect. *Id.* at ¶ 7.  As explained by Ben McDowell, the EOIR employee familiar with the EOIR database, the "Actions Data Table" is an auditing table that reflects when information is inputted into the database, but it is not necessarily a mirror reflection of the same information contained in the "Schedule Data Table."  *Id.*  Petitioners also argue that the declaration of Ben McDowell must be disregarded because it is new information not obtained in discovery.  Pet. Oppo. at 37.  This is also incorrect. McDowell was deposed at length by Petitioners in 2011, he submitted declarations discussing the database reliability in support of Respondents' preliminary injunction opposition, and he supplied a declaration after the deposition of Dr. Palmer to show that Petitioners are simply incorrect that the "Schedule Data Table" is incorrect.  *See* McDowell Decl. and Exhs A and B thereto.  Moreover, Respondents invited Petitioners to depose McDowell on that declaration.  Declaration of Sarah S. Wilson, filed contemporaneously with this brief, at ¶¶ 6-7.  Petitioners declined.  *Id.*

[4] Notably, Petitioners do not dispute Dr. Palmer's statistical calculations.  Instead they contend that such continuances may be necessary during the course of removal proceedings to seek counsel or to pursue claims for relief.  This argument is beside the

*(Footnote continued)*

6

1   detention based on when the duration of detention becomes unreasonable or
2   unjustified, *see* --- F.3d ---, 2013 WL 1607706, at *6 (citing Justice Kennedy's
3   concurrence in *Demore,* 538 U.S. 510, 532), it is appropriate to consider that delay in
4   proceedings attributable to the alien is a factor weighing against a determination that
5   continued detention without bond is unreasonable and raises constitutional concerns.
6   *Martinez v. Gonzales*, 504 F. Supp. 2d 887, 898 (C.D. Cal. 2007) (Hatter, J.) (stating
7   that "[a] court must 'be sensitive to the possibility' that a removable alien may engage
8   in 'dilatory tactics' in order to 'compel a determination' that his detention was
9   unreasonably long.") (quoting *Ly*, 351 F.3d at 272).

10      Moreover, concluding that an alien's contributions to the delay in removal
11  proceedings would also comport with the fundamental principle that "[d]ue process is
12  flexible and calls for such procedural protections as the particular situation demands."
13  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Pedro v. Oregon Parole Bd.*, 825
14  F.2d 1396, 1398 (9th Cir. 1987) (citing *Greenholtz v. Inmates of Nebraska Penal &*
15  *Correctional Complex*, 442 U.S. 1 (1979)) (same).[5]   Any constitutional concern over

16  _____

17  point.  In examining the issue of prolonged detention, the Third and Sixth Circuits
18  have not limited their inquiry on the reasonableness of continued detention by looking
    only to dilatory tactics.  Those courts also consider whether an alien has taken steps to
19  prolong removal proceedings through presumably justifiable continuance requests.
20  *See Diop*, 656 F.3d at 234;  *Ly*, 351 F.3d at 271.  Indeed, the Supreme Court in
    *Demore* noted the fact that the petitioner had sought a continuance that delayed his
21  proceedings, and thus, his detention, 538 U.S. at 530 n.15, without regard to whether
22  such a continuance was dilatory.  To the contrary, the Court rejected the argument that
    non-dilatory continuances should not be considered as attributing to the alien's length
23  of detention.  *See* 538 U.S. at 530 n.14 (rejecting alien's argument "that the length of
24  detention required to appeal may deter aliens from exercising their right to do so," and
    explaining that "the legal system ... is replete with situations requiring the making of
25  difficult judgments as to which course to follow, and, even in the criminal context,
26  there is no constitutional prohibition against requiring parties to make such choices.")
    (internal quotation marks and citations omitted).
27  [5]  Concluding that factors such as an alien's contributions to delays in removal
    proceedings weigh against the existence of constitutional concerns is not foreclosed
28  by the panel's reliance on *Diouf II* for the citation of a general six-month standard.

7

*(Footnote continued)*

prolonged detention must be confronted in an as-applied challenge, looking to the facts and circumstances of an individual case, rather than under an automatically-imposed bright-line rule that eschews such consideration.

Accordingly, this Court – based on evidence not before the panel on the preliminary injunction appeal – should recognize that the length of an alien's detention may be attributable to the alien and, in such circumstances, continued detention under sections 1225(b) and 1226(c) does not offend due process.

**II.    Due process does not require multiple bond hearings for aliens already entitled to bond hearings under section 1226(a) and section 1231(a)(6).**

The section 1226(a) and 1231 subclasses raise fundamentally different issues of statutory and constitutional interpretation than those raised by the sections 1225(b) and 1226(c) subclasses. Unlike mandatory detention under sections 1225(b) or

---

The Ninth Circuit's decision in *Diouf II* does not stand for the principle that in every case detention without a bond hearing becomes prolonged, and thus raises constitutional concerns, at 181 days. First, the Ninth Circuit stated that "*[a]s a general matter*, detention is prolonged when it has lasted six months…," 634 F.3d at 1092 n. 13 (emphasis added), leaving open the possibility that there may be circumstances in which the general rule is inapplicable. Second, *Diouf II* also recognized that there may be circumstances in which the removal period – and thus the detention clock – may be tolled when an alien has acted to prevent his or her removal. *Id.* at 1085 n.6 ("The removal period may be extended beyond 90 days if the alien fails to cooperate in his departure or removal from the United States.") (citing 8 U.S.C. § 1231(a)(1)(C)). This view comports with other court decisions – including in this case – in which an alien's continued post-order detention does not raise constitutional concerns when the alien acts to prevent removal. *Pelich v. INS*, 329 F.3d 1057, 1058–61 (9th Cir. 2003) ("[A]n alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him."); *Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003) ("We conclude that 8 U.S.C. § 1231(a)(1)(C) ... authorizes the INS's continued detention of a removable alien so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1116 (9th Cir. 2010) (citing *Pelich*, 329 F.3d at 1060–61; *Lema*, 341 F.3d at 857). Accordingly, nothing in the panel's decision leads inexorably to the conclusion that an irrebuttable six month bright-line standard is the absolute limit of detention under sections 1225(b) and 1226(c). Indeed, given the flexible nature of due process, an unbending six-month standard would be inconsistent with the aforementioned precedent.

1226(c), sections 1226(a) and 1231(a)(6) are discretionary detention statutes. Also unlike sections 1225(b) or 1226(c), by virtue of either statutory entitlement (in the case of section 1226(a)) or prior court decisions (in the case of section 1231(a)(6)), aliens detained for six months or longer under sections 1226(a) and 1231(a)(6) are entitled to a bond hearing before an immigration judge to challenge their detention. Aliens detained under sections 1226(a) and 1231(a)(6) are entitled to seek bond hearings before immigration judges, and thus those aliens are afforded individualized determinations of their flight risk and danger before a neutral arbiter. As the Ninth Circuit and other courts have recognized, these subclass members have received due process because they have "had an opportunity to contest the necessity of [their] detention before a neutral decisionmaker and an opportunity to appeal that determination to the BIA." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1065-66 (9th Cir. 2008).

Petitioners do not dispute two fundamental facts: (1) aliens detained under section 1226(a) are entitled to challenge ICE's initial custody determination by requesting a bond hearing before an immigration judge; and (2) aliens detained under section 1231(a)(6) who have a stay in place, are entitled to request a bond hearing before an immigration judge to challenge their continued detention under *Diouf II*. Nevertheless, Petitioners argue that these aliens are somehow deprived of due process if they are not afforded a *Casas* hearing (which the section 1231(a)(6) aliens are already entitled to) at six months of detention. Respondents will address Petitioners' arguments concerning each of the section 1226(a) and 1231 subclasses in turn.

> **A.    Aliens detained under section 1226(a) are entitled to a bond hearing before an immigration judge, and nothing in Ninth Circuit precedent suggests that such aliens must be afforded an additional bond hearing at six months to comport with due process.**

There is no dispute that aliens detained under section 1226(a) are entitled by statute and regulation to seek a bond hearing before an immigration judge to determine whether such aliens may be detained because they pose a flight risk or

9

danger.  8 U.S.C. § 1226(a); 8 C.F.R. § 236.1.  In fact, they are entitled to a subsequent bond redetermination *at any time*, "upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."  8 C.F.R. § 1003.19(e).  Petitioners argue that is not enough to satisfy due process.  They are incorrect.

Petitioners argue that "[i]t should be obvious" that aliens detained under section 1226(a) and whose removal proceedings have taken longer than six months "should be entitled to the same protections afforded to those class members initially detained pursuant to section 1226(c) whose proceedings have also extended beyond six months."  Pet. Oppo. at 19.  Petitioners' argument rests on a fundamental error, however.  Aliens detained under section 1226(c) *are not* entitled to seek a bond hearing from an immigration judge, but aliens detained under section 1226(a) *are* entitled by law to seek a bond hearing, and may do so from the outset of their detention.

Petitioners seek to distinguish *Prieto-Romero* by arguing that the Court did not decide the issue of whether the government must bear the burden of proof at an initial bond hearing because the alien could not show prejudice.  While that is true, it is irrelevant.  On the issue of whether the alien received due process by having a bond hearing in the first instance, the Ninth Circuit was clear:  Prieto–Romero had received a bond hearing before an immigration judge and "thus had an opportunity to contest the necessity of his detention before a neutral decisionmaker and an opportunity to appeal that determination to the BIA."  *Prieto-Romero*, 534 F.3d at 1066.  The Court was also careful to distinguish the situation posed in cases like *Tijani*, where the alien was *never* provided a bond hearing before an immigration judge:

> Prieto–Romero was actually being detained under § 1226(a), so the IJ should instead have looked to the factors set forth at *Matter of Guerra*, 24 I. & N. Dec. at 40.  However, because both 8 C.F.R. § 241.4(f) and *Matter of Guerra* direct attention to whether an alien will be a flight risk or a danger to the community, Prieto–Romero, unlike Tijani, *has already received an individualized determination of the governmental interest in his continued detention by a neutral decisionmaker*.

10

*Id.*(emphasis added); *see also id.* at 1068 ("He received a bond hearing that afforded him an individualized determination of the government's interest in his continued detention by a neutral decisionmaker.").  The section 1226(a) subclass members are in the same position as Prieto-Romero, and not in the position of section 1226(c) aliens like Tijani.  They are statutorily entitled to request a bond hearing before an immigration judge for a determination of their flight risk and danger.  Because the section 1226(a) class members have "had an opportunity to contest the necessity of [their] detention before a neutral decisionmaker and an opportunity to appeal that determination to the BIA," due process is satisfied.[6]

Petitioners cite two cases in rebuttal, but neither supports their view.  First, Petitioners cite *Aguilar-Ramos v. Holder*, 594 F.3d 701, 704 n.3 (9th Cir. 2010), a case in which an alien was detained for four years without evidence of *any* bond hearing, and note that because the alien was before the Ninth Circuit on a petition for review (and in that case, with a stay of removal), he was entitled to a bond hearing under *Casas-Castrillon*.  That case says nothing about the circumstances where an alien has had an opportunity to seek bond from the beginning of his detention, which is the case with the aliens in the 1226(a) subclass here.  Second, Petitioners cite *Casas-Castrillon* itself to argue that in that case the alien had received a bond hearing, but they ignore that the Ninth Circuit was unsure of the legal status of that bond hearing in light of the Supreme Court's decision in *Demore*.  535 F.3d 942 ("It is not clear what, if any, continued legal effect this bond hearing has, given that it was

---

[6] Other courts are in accord.  *See, e.g., Karanja v. Valdez*, No. CV 12–3280 TJH (FMO), 2012 WL 6110632, *4 (C.D. Cal. Oct. 31, 2012) (finding that because alien received a bond hearing before an immigration judge, "petitioner has received all the relief that he would be entitled to if the court were to rule in his favor on the merits of his claim, and the pending Petition is, therefore, moot.") (citing *Prieto-Romero*, 534 F.3d at 1065-66); *Rosales v. Ice Field Office* Director, No. C12–562–RSL–BAT, 2012 WL 3596366, *2 (W.D. Wash. Jul. 9, 2012) (Report and Recommendation) ("Because petitioner was afforded an individualized bond hearing before an IJ…, he has received all of the benefits of due process he is entitled, and his petition has become moot and should be dismissed.") (citing *Prieto-Romero*, 534 F.3d at 1065-66).

11

ordered pursuant to a now vacated constitutional ruling."). Thus, *Casas-Castrillon* does not stand for the proposition that an alien who has had an opportunity under section 1226(a) to seek a bond hearing from the outset of detention is entitled to an additional bond hearing opportunity at a later time. The existing procedures already allow for reconsideration by an immigration judge if there is a material change in circumstances. 8 C.F.R. § 1003.19(e).

As the Ninth Circuit has recognized, due process is satisfied when, as with the case with the 1226(a) subclass of aliens, detainees have an opportunity to challenge their continued detention before a neutral decisionmaker at an individualized hearing on their flight risk and danger. Every member of the section 1226(a) subclass has that opportunity. Therefore, due process is satisfied by those detainees' existing statutory and regulatory entitlement to a bond hearing and there is no basis to require an additional bond hearing at six months. The Court should grant judgment to Respondents on this claim.[7]

**B.    Certain aliens detained for more than six months under section 1231 are already entitled to a bond hearing under *Diouf II*, unless they take steps to prevent their removal.**

There is no dispute that aliens with a final order of removal, a pending petition for review of a matter collateral to that order of removal, and a stay of removal, and who are detained under section 1231 for more than 180 days from the start of the

---

[7] Petitioners also make several arguments that two other categories of aliens – (1) aliens whose final order had been reinstated, but who are in withholding-only proceedings, and (2) aliens admitted under the Visa Waiver Program – are within the class. Respondents have argued that these aliens fall outside the class because they either are not in removal proceedings (in the case of reinstatement aliens) or detained under a different statute than those challenged here (in the case of Visa Waiver Program aliens). However, Petitioners have informed Respondents that they intend to seek a motion to clarify the class certification order to address these arguments directly. *See* Supplemental Declaration of Theodore W. Atkinson, ¶ 4. Thus, this Court will have the opportunity to consider these arguments more fully in the context of Petitioners' motion for clarification, which Petitioners have indicated they will file no later than May 6, 2012. *Id.*

removal period are entitled to a *Casas* hearing under *Diouf II*, because those aliens will be considered to be detained under section 1231(a)(6).

To clarify confusion that appears to exist on the part of Petitioners, it is instructive to revisit when an alien's detention shifts from a pre-order detention regime to a post-order detention regime. In the Ninth Circuit, the statutory removal period begins when (1) an alien receives an administratively final order of removal or, (2) if the alien seeks a petition for review of an administratively final order of removal, and a stay is issued, when the Ninth Circuit issues a decision on the petition for review. *Casas-Castrillon v. DHS*, 535 F.3d 942, 950 (9th Cir. 2008). Thus, for example, if an immigration judge enters a final order of removal, and the alien does not appeal to the Board, then the alien is detained under section 1231, because that is when the order of removal becomes "administratively final." 8 U.S.C. §§ 1231(a)(1)(B)(ii); 1101(a)(47)(B)(ii). Similarly, if an immigration judge enters a final order of removal, and the alien appeals to the Board of Immigration Appeals, and the Board affirms the removal order, and the alien does *not* seek judicial review in the Ninth Circuit, then the alien's order of removal becomes administratively final when the Board affirms the final order, and the removal period begins upon the affirmance of the final order. *Id.*; *see also Diouf II*, 634 F.3d at 1085 ("The removal period begins on the latest of the date the order of removal becomes administratively final or, if the alien files a petition for review in the court of appeals and the court of appeals orders a stay of removal, the date of the court of appeals' final order upholding the order of removal."). If an alien later seeks to reopen the decision with the Board or with an immigration judge, neither the filing of a motion to reopen nor the grant of a discretionary stay by the immigration judge or the Board pending the motion to reopen changes the statutory view that the final order of removal is administratively final during the pendency of the motion to reopen. *Id.* Even if the alien files a petition for review of the denial of the motion to reopen and obtains a stay of removal, the removal order is administratively final and custody is governed by 8 U.S.C. § 1231(a)(6) and *Diouf II*.

In each of the circumstances described above, the alien's detention falls under section 1231, and after the expiration of the 90-day removal period, detention authority shifts to section 1231(a)(6).  8 U.S.C. § 1231(a)(6).; *Diouf II*, 634 F.3d at 1085 ("If the alien is not removed during the removal period, continued detention is authorized, in the discretion of the Attorney General, by § 1231(a)(6).").  As the Ninth Circuit held in *Diouf II*, aliens detained for six months or longer – which detention would necessarily fall under section 1231(a)(6), because such detention would fall outside the 90-day removal period – are entitled to a *Casas* hearing, unless the government can establish that removal is imminent.

Where there is disagreement between the parties concerns when the six-month clock begins to run.  Petitioners take the position that any detention under section 1231 that makes up any part of a six-month detention window entitles an alien to a bond hearing.  Thus, for example, if an alien were detained for five months under a pre-order detention statute, and did not have a bond hearing, and later was ordered removed, then Petitioners contend that the alien would be entitled under *Diouf II* to a bond hearing one month after the alien's detention shifted to section 1231.  Petitioner's argument completely misreads *Diouf II* and ignores the holding of *Diouf II and* the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  It also defies the post-order statutory commands recognized by both the Supreme Court and the Ninth Circuit in those cases.

Any reasonable reading of both *Zadvydas* and *Diouf II* reveals that the Supreme Court and the Ninth Circuit contemplated that the detention of aliens under section 1231 begins with the start of the removal period, irrespective of the length of detention that had occurred in a pre-final order (or pre-removal period) context.

In *Zadvydas*, the Supreme Court examined the post-order statutory scheme, and the government's statutory interest in a determined period in which to seek the alien's removal as ordered.  533 U.S. at 682 ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day

14

statutory 'removal period,' during which time the alien normally is held in custody.").
In considering the case before it, the *Zadvydas* Court framed the issue as "whether this
post-removal-period statute [section 1231(a)(6)] authorizes the Attorney General to
detain a removable alien indefinitely *beyond the removal period* or only for a period
reasonably necessary to secure the alien's removal." *Id.* at 682.

In the case of Zadvydas himself, he had been detained for several years before
he was ordered removed. *Id.* at 684-85. Similarly, the other alien in the *Zadvydas*
case was detained for several years prior to the entry of his final order of removal. *Id.*
at 685. Nevertheless, the Supreme Court, in establishing that the government may
detain aliens for a presumptively constitutional period of up to six months, tied that
six month period to the start of the removal period, not the start of an alien's initial
detention:

> While an argument can be made for confining any presumption to 90 days, we
> doubt that when Congress shortened the removal period to 90 days in 1996 it
> believed that all reasonably foreseeable removals could be accomplished in that
> time. . . . Consequently, for the sake of uniform administration in the federal
> courts, we recognize [a presumptively constitutional six-month] period. After
> this 6–month period, once the alien provides good reason to believe that there is
> no significant likelihood of removal in the reasonably foreseeable future, the
> Government must respond with evidence sufficient to rebut that showing.

*Id.* at 701. Thus, the six-month period of presumptively constitutional post-order
detention begins not with the first day of the alien's custody, but with the start of the
removal period.

*Diouf II* is in accord. The Ninth Circuit examined the statutory post-order
detention regime, recognizing, as *Zadvydas* did, that during the 90-day removal
period, detention is mandatory under section 1231(a)(2). *Diouf II*, 634 F.3d at 1089
("During the 90–day removal period, DHS is required to detain the alien. *See* 8
U.S.C. § 1231(a)(2). Upon conclusion of the 90–day removal period the statute
authorizes continued detention in the discretion of the Attorney General. *See*
*id.* § 1231(a)(6)."). The Ninth Circuit then examined the custody review regulations,
which require DHS to conduct a custody review at the 90-day mark after the start of

detention in the removal period, and at the 180-day mark.  634 F.3d at 1091.  In examining the adequacy of those regulations, the Ninth Circuit found no constitutional infirmity with the 90-day custody review regulations because "the 90–day review authorizes detention for only an additional 90 days, bringing the alien's period of detention (*including the removal period*) to 180 days.  Detention *during this period* certainly affects aliens' interests in freedom from confinement, … [b]ut given the relatively limited period of detention involved… the process afforded by the DHS regulations is adequate.") (emphasis added).

Petitioners advance the implausible argument, *see* Pet. Oppo. at 26, that the *Diouf II* Court contemplated that the period of pre-order detention would be included in the post-order six-month rule set out in *Diouf II* by citing language in the decision that, "[w]hen the 180-day [post-order custody review by ICE] takes place, the alien has been detained for approximately six months."  634 F.3d at 1091.  But the only fair understanding of that language is that when ICE conducts the 180-day review, the alien has been detained for approximately 180 days *from the beginning of the removal period*.  Petitioners' reliance on this language to support their view is perplexing and ultimately unpersuasive.

To read either *Diouf II* or *Zadvydas* as sanctioning Petitioners' view that the six month period discussed in those cases includes pre-order detention would seriously undermine the regular order of the post-order detention regimes examined in those decisions.  If Petitioners were correct, there could potentially be some section 1231 class members whose 181st day of detention fell within the 90-day removal period in which the detention of an alien ordered removed is mandatory.  For such aliens, the detention provisions of section 1231(a)(2) would be entirely negated, an absurd result contemplated by neither the Ninth Circuit nor the Supreme Court in any decision.  Indeed, such a result would run entirely counter to the Ninth Circuit's view – including in this case – that detention within the 90-day removal period is "relatively limited," meaning detention during that 90-day period *beginning from* the start of the removal period.  *See Rodriguez v. Hayes*, 591 F.3d 1105, 1116 (9th Cir. 2010) ("We

16

have additionally held that detention pursuant to Section 1231(a)(2) poses no due process issues, regardless of whether removal of the detained alien is foreseeable, because the statute authorizes detention for only the ninety-day removal period and therefore does not create any danger of unconstitutionally indefinite detention.") (citing *Khotesouvan v. Morones*, 386 F.3d 1298, 1299–1301 (9th Cir. 2004)). The result Petitioners seek would also conflict with the holding of *Zadvydas* discussed above that post-order detention under section 1231 for a period up to 180 days is presumptively constitutional. This Court should flatly reject Petitioners' efforts to circumvent the post-order detention regimes established by *Zadvydas* and *Diouf II*, and should accordingly reject Petitioners' arguments that the six-months period contemplated in those cases includes the period of pre-order detention.[8] This Court should enter summary judgment for Respondents on this claim.

---

[8] Petitioners also make the astonishing argument that aliens detained under section 1231 should be provided with a bond hearing even if the removal period has been tolled because the alien refuses to cooperate in his or her lawful removal. *See* Pet. Oppo. at 25 n.15. As noted above, section 1231(a)(1)(C) provides for a suspension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). This argument is inconsistent with *Diouf II*. *See* 634 F.3d 1085 n.6 ("The removal period may be extended beyond 90 days if the alien fails to cooperate in his departure or removal from the United States.") (citing section 1231(a)(1)(C)). It is also inconsistent with the Ninth Circuit's first decision in this case: "We have taken the same view [that detention poses no constitutional concerns] when an alien is detained pursuant to the related provision of 8 U.S.C. § 1231(a)(1)(C), which allows the removal period to be extended and detention to continue beyond ninety days if an alien conspires or acts to prevent his own removal." 591 F.3d at 1116 (citing *Pelich*, 329 F.3d at 1058–61; *Lema*, 341 F.3d at 857 ("We conclude that 8 U.S.C. § 1231(a)(1)(C) …authorizes the INS's continued detention of a removable alien so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents.").

1    **III.    The Ninth Circuit has clarified the requirements for a constitutionally**
2        **adequate bond hearing to challenge prolonged detention, and Petitioners'**
3        **requested modifications to *Casas* hearings find no support in due process**
        **jurisprudence.**
4
5        Petitioners claim two categories of modifications must be made to *Casas*
6    hearings to make them constitutionally adequate: (1) immigration judges must be
7    required to consider the alien's ultimate removability, the length of an alien's past and
8    future detention, and alternatives to detention; and (2) Respondents should be required
9    to provide [constitutionally adequate] notice of automatic immigration hearings, under
10   a heightened standard, every six months.  None of the enhancements Petitioners seek
11   to *Casas* hearings are required for due process.  This Court should grant judgment in
     favor of Respondents on each of Petitioners' claims.
12
        **A.    Petitioners' new claims should be rejected as untimely amendments.**
13
14       Petitioners assert two claims which are not contained in their Third Amended
15   Complaint ("TAC"), and which are untimely: (1) that immigration judges must
16   consider an alien's ultimate removability, and (2) that due process requires periodic
17   bond hearings every six months.  Petitioners have now admitted that two of their
18   claims were not raised until after the close of discovery in a meet and confer prior to
     seeking summary judgment. *See* Declaration of Michael Kaufman, ¶ 12.
19
20   Nevertheless, Petitioners argue that their claim that bond hearings are constitutionally
21   inadequate unless judges consider an alien's ultimate removability, and their
22   "periodicity" claim that bond hearings must be provided every six months, are not
23   "claims" at all, and that, in any event, they satisfy the notice pleading requirements.
     Petitioners are incorrect.
24
        Petitioners are incorrect that the TAC satisfies the notice pleading requirement.
25
26   Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the
27   claim showing that the pleader is entitled to relief." Specific facts are not necessary,
28   but the statement must "'give the defendant fair notice of what the ... claim is and the
     grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47
(1957)).  But notice pleading, while liberal in nature, does not allow a party to assert a
new ground or claim that certain governmental conduct is unconstitutional after
discovery has closed and without proper amendment to the pleadings.  *See, e.g.,*
*Christopher v. Harbury*, 536 U.S. 403, 419 n. 17 (2002) ("Whatever latitude is
allowed by federal notice pleading, no one says [plaintiff] should be allowed to
construe 'adequate legal redress' to mean causes of action that were not even
mentioned in her complaint.").  Federal procedure relies on notice pleading rather than
fact pleading, but at a minimum, as explained by the Advisory Committee on Civil
Rules in October, 1955, the pleader is required "to disclose adequate information as
the basis of his claim for relief." 2A J. Moore, Federal Practice ¶ 8.01(3) (2d ed.
1974); *see also Conley*, 355 U.S. at 47.  The ground sought to be added by a plaintiff
should be rejected if it seeks strategic advantage, is prejudicial to the opposing party,
expands the scope of the complaint, or materially affects court-imposed deadlines.
*See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *see also*
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("[T]he
consideration of prejudice to the opposing party . . . carries the greatest weight.");
*United States v. $11,500.00 in U.S. Currency*, --- F.3d ---, 2013 WL 1174382, *4 (9th
Cir. Mar. 20, 2013).

Here, Petitioners assert not only new specific additional forms of relief not
sought in the TAC – consideration of an additional factor by immigration judges at
bond hearings and a requirement that the government provide bond hearings every six
months – but also assert constitutional inadequacies not otherwise detailed in the
TAC.  Petitioners did not include these grounds among the specific bond hearing
inadequacies they list in the TAC, *see* ECF No. 111, ¶¶ 121-123, which are otherwise
detailed and specifically allege what "the government must at a minimum provide" for
"a hearing to be adequate…" ECF No. 111, ¶ 121.  Petitioners did not include these
constitutional claims in their Complaint, despite the fact that Petitioners have had
more than four years to amend their Complaint, which they have done three times.

19

This evidences a decision to assert these claims as a strategic advantage, but at the very least expands the scope of the TAC in significant ways, weighing against amendment.

Moreover, the newly asserted constitutional grounds prejudice Respondents. Although couched as "questions of law" by Petitioners, Respondents have been denied an opportunity to explore through discovery the basis for Petitioners' claim that additional bond hearings are required to properly weigh evidence of flight risk and danger of a detainee after a determination of flight risk and danger has already been determined by an immigration judge.  For example, Respondents have been denied an opportunity to determine if there is any evidence, among the studied class members or otherwise, supporting Petitioners' claim that there is any factual basis for concluding that circumstances have changed such that the bond hearing has become "stale" as to evidence submitted showing a flight risk or danger.  By that same token, Petitioners' assertion that the consideration of ultimate removability is purely "a question of law" is belied by the fact that Petitioners themselves cite factual information to support their claim, *see, e.g.,* ECF No. 281 at 16, pertaining to repatriation likelihood and studied class members.  Respondents did not have an opportunity to take discovery regarding these factual assertions or of the newly-asserted constitutional deficiencies alleged, and thus are prejudiced by Petitioners' late-made arguments regarding those deficiencies on summary judgment.  This Court should strike Petitioners' constitutional claims that due process requires judges to consider ultimate removability and that due process requires bond hearings every six months.

### B. Due process does not require an immigration judge to consider ultimate removability as a factor at a bond hearing

Petitioners' claim that immigration judges must consider an alien's ultimate removability is an untimely amendment to the Complaint.  In any event, such a requirement is not compelled by due process.

In *V. Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), the Ninth Circuit clarified the requirements for a constitutionally adequate *Casas* hearing.  In that decision, the

Court concluded that a bond hearing, with the burden of proof on the government under a clear and convincing evidentiary standard "provides the appropriate level of procedural protection," given the liberty interest and governmental interests once an alien has been detained for a prolonged period.  *Id.* at 1204 (citing *Addington v. Texas*, 441 U.S. 418, 427 (1979); *Tijani*, 430 F.3d at 1244 (Tashima, J., concurring)).

At the same time, the Court rejected the argument that the government must show "special dangerousness" because of the liberty interest at stake when an alien has been detained for a prolonged period.  *Id.* at 1206-08.  In its decision, the Court embraced as constitutionally adequate the factors set forth in *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), echoing its earlier embrace of the *Guerra* factors in *Prieto-Romero*.  *V. Singh*, 638 F.3d at 1206 ("In *Prieto–Romero* we explained that, to determine whether aliens like Singh who are detained under § 1226(a) present a 'flight risk or danger to the community,' immigration judges 'should look[ ] to the factors set forth at *Matter of Guerra*.'") (citing *Prieto-Romero*, 534 F.3d at 1065–66).

The Ninth Circuit declined to impose any additional or heightened factors on immigration judges at *Casas* hearings, despite the fact that the Court viewed the deprivation of liberty once detention reaches prolonged periods as significant.  *V. Singh*, 638 F.3d at 1207 ("The government argues that the *Guerra* standard is sufficient, and no heightened showing of dangerousness is required.  We are persuaded by the government's argument.").

Although *V. Singh* did not address the question of whether a *Casas* hearing is constitutionally adequate *only* if the immigration judge also considers ultimate removability, in *addition* to the *Guerra* factors, *V. Singh* strongly counsels against Petitioners' argument.  In *V. Singh*, the Court declined to consider the petitioners' argument that he had a meritorious defense to removal, and that the district court should have considered that in addressing his habeas claim for release from detention. *Id.* at 1210.  The Court rejected the argument on jurisdictional grounds, noting that it could not consider petitioner's attempts to circumvent the petition for review process

by using habeas to have the Ninth Circuit prematurely rule on the merits of his claims. *Id.* at 1210-11.  The Court explained that this would result in "an odd system wherein the district court would examine the arguments against removal that an alien expects to present [on a] petition for review, and potentially release him from detention based on a prediction about what this court is likely to conclude when it decides his pending petition for review."  *Id.* at 1212.

Petitioners complain that Respondents "have no answer" to their claim that immigration judges should be required to consider ultimate removability, but that is not true at all.  Respondents pointed out the very flaw that the Ninth Circuit touched on in *V. Singh*:  requiring judges to consider whether an alien is ultimately removable at a bond hearing would establish an "odd system" whereby immigration judges would have to predict whether an alien is likely to win his case, or whether ICE will be able to remove the alien if the alien is ordered removed.  Petitioners unsurprisingly say *nothing* about the speculative nature of weighing ultimate removability. Petitioners say *nothing* about the fact that aliens who may *seem* unremovable one day may be removed because travel documents may be obtained at a later time – a complicated arrangement that is diplomatic in nature and which cannot be ascertained months in advance.  They also say nothing about the fact that it would be unreasonable to require that ICE make attempts to facilitate an alien's removal – potentially including seeking a travel document, which may only be valid for a limited time – in advance of the entry of an order of removal.  And finally, Petitioners say *nothing* about the problems raised by making immigration judges speculate as to an individual alien's likelihood of success in the absence of evidence or testimony provided at a hearing to come later.  On the contrary, Petitioners essentially suggest that immigration judges should "pre-adjudicate" an individual alien's claim for relief at a bond hearing, notwithstanding the immigration court's legal obligation to separate bond proceedings from removal proceedings.  *See* 8. C.F.R. § 1103.19(d) ("Consideration by the Immigration Judge of an application request of a respondent

22

regarding custody or bond under this section shall be *separate and apart* from, and shall form no part of, any deportation or removal hearing or proceeding.") (emphasis added).

Finally, Petitioners make the wholly unpersuasive argument that both *Owino v. Napolitano*, 575 F.3d 952 (9th Cir. 2009), and *Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006), support their view that due process requires immigration judges to consider ultimate removability at the outset in a bond hearing. Petitioners mischaracterize those decisions, which involved aliens who had already been through the removal process and whose cases had been up on appeal at least once, after consideration by an immigration judge and the Board of Immigration Appeals. *Owino*, 575 F.3d at 955; *Nadarajah*, 443 F.3d at 1080. Neither case even suggests that ultimate removability must be considered by an immigration judge at a bond hearing. Nor do Petitioners attempt in their opposition to address the fact that the ultimate likelihood of removal is an issue for *district courts* considering the constitutionality of continued detention under the standard established in *Zadvydas*.[9] This Court should enter judgment for Respondents on this claim.

> **C.    Due Process does not require an immigration judge to consider how long an alien will be detained in the future as a factor at a bond hearing.**

Petitioners seek an order from this Court requiring immigration judges to go beyond considerations of flight risk and danger set forth in *Matter of Guerra¸* which the Ninth Circuit has repeatedly embraced as constitutionally adequate, *see V. Singh*, 638 F.3d at 1206 (citing *Prieto-Romero*, 534 F.3d at 1065–66), and require immigration judges to also consider the length of an alien's detention.

---

[9] Petitioners also ignore Respondents' common-sense concern that under *Zadvydas*, the burden of showing that the alien is not likely to be removed is on the alien, and in a *Casas* hearing, the burden is on the government. Petitioners say nothing about how or if that conflict could be resolved.

Petitioners notably ignore Respondents' argument that the consideration of length of detention is, at its core, a question of due process, and not flight risk and danger, which is the appropriate purview of an immigration judge. *See V. Singh*, 638 F.3d at 1203 ("[A]n alien is entitled to release on bond unless the 'government establishes that he is *a flight risk or will be a danger to the community*.'" (emphasis added) (quoting *Casas–Castrillon*, 535 F.3d at 951)).

Nor have Petitioners pointed to *any* authority outside the criminal context for the proposition that length of detention is a factor that must be considered for a bond hearing to be constitutionally adequate. Neither *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989), nor *United States v. Ailemen*, 165 F.R.D. 571, 589 (N.D. Cal. 1996), cited by Petitioners, supports their argument. Those cases involved U.S. citizens challenging the length of their pre-trial detention in a criminal context under the provisions of the Speedy Trial Act and the Bail Reform Act. The Supreme Court has long held that "[i]n exercise of its broad power over naturalization and immigration, Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. at 521 (citing *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)) (upholding mandatory detention without opportunity for bond hearing). Moreover, *Hare* noted that whether due process requires consideration of certain factors must be made on a case-by-case basis by a *district court* considering a due process challenge to criminal pre-trial detention. 873 F.2d at 801-802. Thus, not only are these cases inapposite because they arise in a criminal context in cases brought by U.S. citizens, but they undercut Petitioners' argument by indicating that the length of future detention is an appropriate factor for consideration by a federal district court on a case-by-case constitutional challenge. That is a materially different setting and situation than what Petitioners seek in this case: consideration of length of detention as part of an administrative bond hearing at which the flight risk and danger of a non-citizen is considered. The Ninth Circuit's decision in *V. Singh* speaks to these issues far more directly than *Hare* or *Ailemen*.

Finally, Petitioners say nothing about the obvious concern that requiring an immigration judge to estimate the possible future length of detention of an alien is, at best, a speculative effort.  Notably, aliens can prolong their removal proceedings and consequently their detention regardless of agency diligence – a fact noted in *Demore*.  538 U.S. at 530 n.14 ("Prior to the enactment of § 1226(c), when the vast majority of deportable criminal aliens were not detained during their deportation proceedings, many filed frivolous appeals in order to delay their deportation.").  Indeed, in this Circuit, immigration judges generally must grant a continuance at the alien's request for good cause.  *See Ahmed v. Holder*, 569 F.3d 1009, 1014-15 (9th Cir 2009); 8 C.F.R. § 1003.29.  The Court should enter judgment for Respondents on this claim.

### D. Due process does not require immigration judges to consider alternatives to detention at a bond hearing.

Due process does not require immigration judges to consider alternatives to detention at a bond hearing.  In their opposition, Petitioners offer no meaningful response to several of Respondents' arguments.

First, Petitioners largely ignore the practical concerns with requiring immigration judges to consider alternatives to detention. There is no dispute that in the Los Angeles area of operations, ISAP II is the only available program providing alternatives to detention.  That program is untested against serious criminal aliens and arriving aliens.  In his testimony, Assistant Field Office Director Eric G. Saldana testified that in his office's experience, the types of crimes committed by aliens placed on ISAP II were low-level crimes.  *See* Respondents' Reply in Support of Their Uncontroverted Statement of Facts, filed contemporaneously with this brief; Supplemental Declaration of Theodore W. Atkinson, Exhibit thereto.[10]   But

---

[10] Respondents inadvertently filed incorrect pages with the depositions of Wesley Lee, which was Exhibit A to the originally-filed Declaration of Theodore W. Atkinson. Respondents also inadvertently filed incorrect pages with the depositions of Eric Saldana, which was Exhibit B to the originally-filed Declaration of Theodore W.

25

*(Footnote continued)*

1    Petitioners overlook another, more basic fact: because ICE cannot place anyone

2    subject to mandatory detention under section 1226(c) into ISAP II or provide such

3    aliens with any conditions of release, ISAP II is inherently not intended to be used

4    with aliens who have committed serious criminal offenses.  Thus, to the extent

5    Petitioners assert ISAP II is entirely appropriate as an alternative to detention for such

6    aliens, that assertion is necessarily based on speculation.

7         Second, Petitioners assert, without authority, that immigration judges maintain

8    the jurisdictional authority to order alternatives to detention at an immigration bond

9    hearing.  Petitioners misconstrue the applicable regulations in making their argument.

10   Although immigration judges are delegated authority to review and "ameliorate"

11   conditions set by DHS, they are not delegated the authority to "impose" conditions in

12   the first instance, including alternatives to detention.  *Compare* 8 C.F.R. § 236.1(c)(8)

13   (officers who can issue warrants of arrest can impose conditions under section

14   1226(a)(2) and (3), see also 8 C.F.R. § 236.1(b), 287.5(e)(3)) *with* 8 C.F.R. §

15   236.1(d)(1) (immigration judges can detain, release, determine bond, and ameliorate

16   the conditions set initially by DHS if the request is made within 7 days).  Thus, there

17   is no evidence to support Petitioners' assertion that immigration judges have authority

18   (apart from the preliminary injunction in this action) to order detainees into ISAP II,

19   nor do they have any evidence to refute the fact that, apart from the few instances

20   under this Court's injunction, ISAP II is not used for serious criminal aliens or

21   arriving aliens.

22        Finally, Petitioners cite no authority for their argument that due process requires

23   an immigration judge to consider alternatives to detention, or that failure to do so

24   renders the immigration bond hearing constitutionally inadequate.  As discussed

25   above, the Ninth Circuit has repeatedly recognized *Matter of Guerra* as setting forth

26   ───────────────

27   Atkinson.  To correct these errors, Respondents contemporaneously file replacement,
     corrected copies of Exhibits A and B with the Supplemental Declaration of Theodore
28   W. Atkinson.

the factors immigration judges must consider at a bond hearing.  *V. Singh*, 638 F.3d at
1206 (citing *Prieto-Romero*, 534 F.3d at 1065–66).  To account for the deprivation of
liberty Petitioners cite as the basis for requiring immigration judges to consider
alternatives to detention, the Ninth Circuit has required the government to show flight
risk and danger under a clear and convincing evidentiary standard.  *V. Singh*, 638 F.3d
at 1206-12.  Given these adequate procedural safeguards recognized by the Ninth
Circuit in *Casas* hearings, there is no basis for this Court to conclude that *Casas*
hearings conducted under that standard are somehow rendered constitutionally
inadequate if an immigration judge does not consider alternatives to detention that an
immigration judge does not oversee and which the immigration judge lacks authority
to order at a bond hearing in the first instance.  The Court should grant judgment in
favor of Respondents on this claim.

> **E.    Due process does not require periodic *Casas* hearings and the
> notices provided to aliens informing them of their right to a *Casas*
> and other bond hearings is constitutionally adequate.**

Petitioners make related claims that the notices provided to aliens informing
them of their right to a bond hearing – if they are detained under section 1226(a), and
of their right to a *Casas* or *Diouf* hearing, if they are so entitled under those cases --
are constitutionally inadequate.  For this reason, Petitioners further claim that the only
constitutionally adequate remedy is for this Court to order automatically-scheduled
bond hearings, with notice of the hearing to the alien.  Finally, Petitioners claim that
hearings must be held not at six months, but at every six months.  Petitioners are
incorrect on all counts.

First, in their opposition, Petitioners concede that aliens do, in fact, receive the
notices identified in Respondents' motion for summary judgment.  (Although they
claim – without evidence – that these notices are not always provided or provided in a
timely fashion).  Petitioners also concede that the language identified by Respondents
appear in the notices themselves.  *See* Exh. L to the March 15, 2013 Declaration of
Theodore W. Atkinson (sample *Casas/Diouf* Letters provided by ICE ("Pursuant to

the above-named Ninth Circuit decisions, you may request a review of this determination from an immigration judge"); Exh. D to the March 15, 2013 Declaration of Theodore W. Atkinson (Notices of Custody Determination) ("You may request a review of this determination by an immigration judge").

Second, Petitioners offer no admissible evidence that such plain-language notices are constitutionally insufficient. They cite two declarations to show that "many" aliens are "not proficient in English" or are "illiterate," Petitioners' Memorandum in Support of Summary Judgment at 41, and allege that aliens cannot possibly comprehend the notices because they have "limited" access to law libraries, family, and counsel who may assist them, Pet. Oppo. at 47-48. These declarations are inadmissible as untimely,[11] but a careful reading of the declarations shows that they do not support Petitioners' contentions, even if admissible. For example, the declaration of Talia Inlender does *not* state that aliens are denied access to law libraries or legal assistance programs – which she admits are provided in ICE detention facilities, *see* ECF No. 281-7, ¶ 11 – but only that such libraries or programs are limited to some degree with respect to access. *Id.* at ¶¶ 11-14. Similarly, she does not assert that aliens have no contact with family or legal counsel, only that such access is limited to certain hours or by certain physical arrangements, such as physical separators. *Id.* at ¶¶ 8-9. Weaker still is the untimely declaration of Byron Merida, a detainee who purports to know what other detainees "understand" with respect to bond hearing procedures and the contents of notices. *See* Exh. 281-1, ¶¶ 12, 20-22. Merida's declaration confirms, however, that at his detention facility, aliens had access to a law library, although for restricted hours. *Id.* at ¶¶ 13-18.

Third, Petitioners assert that detainees cannot understand the notices because they are not proficient in English. The fact that aliens do not speak English as a first language or do not speak it proficiently is not evidence that aliens cannot understand

---

[11] Respondents have previously filed objections on these and other grounds to the admissibility of the declarations from Talia Inlender and Byron Merida.

the notices informing them of their entitlement to a bond hearing.  On this score,
Petitioners offer *no admissible* evidence that aliens cannot, as a matter of course,
understand the plain-language notices provided to them.  This assertion is wholly
unsupported by any evidence.

Even if the notices were not sufficiently plain enough to inform aliens of their
right to seek a bond hearing, Petitioners cite no authority that the only appropriate
remedy would be automatically-scheduled bond hearings.  Petitioners' citation of *Doe
v. Gallinot*, 657 F.2d 1017, 1023 (9th Cir. 1981), does not aid their argument, because
that case involved mentally incompetent individuals who could not understand the
complex federal habeas filing procedures.  There is no evidence whatsoever that aliens
cannot understand the notices provided.  Petitioners instead offer inadmissible
evidence from a detainee purporting to know what others "understand" regarding the
notices.  This is a wholly insufficient evidentiary basis for this Court to conclude that
the plain-language notices are constitutionally inadequate and that the *only* remedy is
automatic bond hearings.

Finally, there is no due process requirement that aliens provided with bond
hearings or *Casas/Diouf II* hearings must be provided with *Casas* hearings every six
months.  As discussed above, *see* Section II.A., the Ninth Circuit and other courts
have recognized that when an alien has "had an opportunity to contest the necessity of
[their] detention before a neutral decisionmaker and an opportunity to appeal that
determination to the BIA," due process is satisfied.  *See, e.g., Prieto-Romero*, 534
F.3d at 1065-66; *Karanja v. Valdez*, No. CV 12–3280 TJH (FMO), 2012 WL
6110632, *4 (C.D. Cal. Oct. 31, 2012); *Rosales v. Ice Field Office Director*, No. C12–
562–RSL–BAT, 2012 WL 3596366, *2 (W.D. Wash. Jul. 9, 2012).  Existing
procedures also already allow for reconsideration by an immigration judge any time
there is a material change in circumstances.  Due process simply does not require
automatic periodic bond hearings, and Petitioners can cite to no authority anywhere

1    for the proposition that it does.  Respondents are entitled to judgment as a matter of

2    law on this claim.

3                                  **<u>CONCLUSION</u>**

4            For the reasons set forth above, this Court should deny Petitioners' motion for

5    summary judgment and enter the accompanying proposed order granting Respondents

6    summary judgment on each claim set forth in the Third Amended Complaint.

7

8    Date:  April 26, 2013              STUART F. DELERY
                                        Acting Assistant Attorney General
9                                       Civil Division
                                        DAVID J. KLINE
10                                      Director, Office of Immigration Litigation
                                        District Court Section
11                                      */s/ Theodore W. Atkinson*
                                        THEODORE W. ATKINSON
12                                      United States Department of Justice
                                        Office of Immigration Litigation,
13                                      P.O. Box 868, Ben Franklin Station
                                        Washington, DC 20044
14                                      Phone: (202) 532-4135
                                        theodore.atkinson@usdoj.gov
15                                      SARAH S. WILSON
                                        Trial Attorney
16
                                        Attorneys for Respondents
17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on April 26, 2013, I served a copy of the foregoing through the Court's CM/ECF system on the following counsel of record:

Ahilan T. Arulanantham
ACLU Foundation of Southern
California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

Sean Commons
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: scommons@sidley.com

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Cody Jacobs
Sidley Austin LLP
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: cjacobs@sidley.com

/s/  Theodore W. Atkinson
Theodore W. Atkinson
Senior Litigation Counsel
United States Department of Justice

31