1  AHILAN T. ARULANANTHAM (SBN 237841)
   aarulanantham@aclu-sc.org
2  MICHAEL KAUFMAN (SBN 254575)
   mkaufman@aclu-sc.org
3  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West 8th Street
4  Los Angeles, CA  90017
   Telephone: (213) 977-5211
5  Facsimile: (213) 977-5297

6  *Attorneys for Petitioners*
   (Additional Counsel listed on following page)

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10 ALEJANDRO RODRIGUEZ,              )  Case No. CV-07-3239-TJH (RNBx)
   ABDIRIZAK ADEN FARAH,             )
11 YUSSUF ABDIKADIR, ABEL PEREZ      )  **MEMORANDUM OF POINTS AND**
   RUELAS, JOSE FARIAS CORNEJO,      )  **AUTHORITIES IN SUPPORT OF**
12 ANGEL ARMANDO AYALA, for          )  **PETITIONERS' MOTION FOR**
   themselves and on behalf of a class of )  **CLARIFICATION OF THE CLASS**
13 similarly-situated individuals,   )  **DEFINITION**
                                     )
14            Petitioners,           )  Honorable Terry J. Hatter
                                     )
15      v.                           )  DATE:  June 3, 2013
                                     )  TIME:   Under Submission
16 ERIC HOLDER, United States Attorney )  PLACE:  Courtroom 17
   General; JANET NAPOLITANO,        )
17 Secretary, Homeland Security;     )
   THOMAS G. SNOW, Acting Director,  )
18 Executive Office for Immigration  )
   Review; TIMOTHY ROBBINS, Field    )
19 Office Director, Los Angeles District )
   Immigration and Customs Enforcement; )
20 WESLEY LEE, Officer-in-Charge, Mira )
   Loma Detention Center; et al.;    )
21 RODNEY PENNER, Captain, Mira      )
   Loma Detention Center; SANDRA     )
22 HUTCHENS, Sheriff of Orange County; )
   OFFICER NGUYEN, Officer-in-       )
23 Charge, Theo Lacy Facility; CAPTAIN )
   DAVIS NIGHSWONGER, Commander,     )
24 Theo Lacy Facility; CAPTAIN MIKE  )
   KREUGER, Operations Manager, James )
25 A. Musick Facility; ARTHUR        )
   EDWARDS, Officer-in-Charge, Santa )
26 Ana City Jail; RUSSELL DAVIS, Jail )
   Administrator, Santa Ana City Jail, )
27                                    )
              Respondents.           )
28

JUDY RABINOVITZ
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY  10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

MICHAEL TAN (SBN 284869)
mtan@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone:  (415) 343-0779
Facsimile:  (415) 395-0950

JAYASHRI SRIKANTIAH (SBN 189566)
jsrikantiah@law.stanford.edu
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA  94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS (SBN 217603)
scommons@sidley.com
JONATHAN FEINGOLD (SBN 286302)
jfeingold@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Petitioners

# TABLE OF CONTENTS

BACKGROUND ........................................................................................ 3

    A.    The Parties and the Court Defined the Class As "All" Immigrants Subject to Prolonged Detention Under The General Immigration Detention Statutes Unless Specifically Exempted in the Class Definition. ...................................................................................... 3

    B.    Until Recently, The Government Did Not Dispute that the Class Consists of "All" Immigrants Subject to Prolonged Detention. ............. 6

ARGUMENT ........................................................................................... 8

I.    The Class Includes Individuals Detained for Reinstatement of Removal and Section 1228(b) Removal Proceedings ........................................... 8

    A.    The Plain Language and Context of the Class Definition Make Clear that "Removal Proceedings" Is Not Used as a Narrow Technical Term. ................................................................................ 9

    B.    Respondents' Definition of the Class Contradicts Their Prior Representations and Practice in This Case. ...................................... 12

    C.    No Valid Rationale Exists For Adopting Respondents' Proposed Limitation of the Class Definition. ................................................. 12

II.    The Class Includes Individuals Detained After Being Admitted Under the Visa Waiver Program. ................................................................ 14

CONCLUSION ...................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Clark v. Martinez*,
 543 U.S. 371 (2005)..........................................................................................15

*Diouf v. Napolitano*,
 634 F.3d 1081 (9th Cir. 2011).............................................................................9

*Lolong v. Gonzales*,
 484 F.3d 1173 (9th Cir. 2007).............................................................................9

*Matter of A-W-*,
 25 I&N Dec. 45 (BIA 2009) ..............................................................................15

*Nadarajah v. Gonzales*,
 443 F.3d 1069 (9th Cir. 2006)..............................................................................4

*Reno v. Flores*,
 507 U.S. 292 (1993)..............................................................................................4

*Robbins v. Rodriguez*,
 2013 U.S. App. LEXIS 7565 (9th Cir. Cal. Apr. 16, 2013) ..............................10

*Rodriguez v. Hayes*,
 591 F.3d 1105 (9th Cir. 2010).....................................................................4, 5, 14

*V. Singh v. Holder*,
 638 F.3d 1196 (9th Cir. Cal. 2011) ...................................................................15

**STATUTES**

U.S.C. § 1187(c)(2)(E)......................................................................................14, 15

8 8 U.S.C. §1225(b) ............................................................................................4, 11

8 U.S.C. § 1226a.........................................................................................................2

8 U.S.C. §1226(a) .....................................................................................4, 10, 14

8 U.S.C. §1226(c) ...........................................................................................4, 10

8 U.S.C. § 1228(b) ................................................................................1, 8, 11, 13

8 U.S.C. §1231(a) ........................................................................................ 4, 9

8 U.S.C. § 1231(a)(5) ....................................................................................... 10

8 U.S.C. §§ 1531-37 ........................................................................................... 2


**OTHER AUTHORITIES**

8 CFR § 208.16 .................................................................................................. 11

8 CFR § 208.30 .................................................................................................. 11

8 CFR § 208.31 ............................................................................................ 11, 13

8 CFR § 238.1 .............................................................................................. 11, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

Petitioners have been forced to file this Motion to prevent the Government from arbitrarily limiting the impact of this Court's preliminary injunction ruling and any future rulings in this case. Since the Court entered a preliminary injunction in favor of two of the four subclasses in this litigation, the Government has begun to exclude individuals from the class in violation of the plain language and manifest rationale of the class definition. From the time this Court certified the class, Petitioners have taken the consistent position that all individuals detained in the Central District whose detention exceeds six months are class members unless they fall into one of three narrow exceptions, none of which are at issue here. These exceptions are clearly set forth in the class definition that this Court incorporated in its order certifying the class (which it entered after Respondents' statement of non-opposition).

Nonetheless, Respondents have begun to assert additional, previously-undisclosed exceptions to the categorical definition of the class that this Court certified. On that basis, they have denied bond hearings to various individuals, even though there is no viable legal rationale for interpreting the class definition to exclude those individuals from the benefits of class membership. As of the present time, Petitioners have discovered three groups of detainees that Respondents contend are outside of the class definition: (1) those detained for proceedings initiated by reinstatement of a prior removal order; (2) those detained for proceedings initiated by an administrative removal order under 8 U.S.C. § 1228(b); and (3) those who entered through the Visa Waiver Program. Dkts. 299 at 10 n.9; 302.

The Government justifies its position that these disputed groups of individuals are not class members based on two theories. As to reinstatement and administrative removal order cases, Respondents contend that the reference to "removal proceedings" in the class definition is a technical term that applies only to certain "types" of proceedings used to remove people from the United States. As to Visa Waiver program cases, Respondents contend that these individuals are detained under

1

the authority of a previously-unidentified detention statute, even though the statute's plain language nowhere grants the Government any detention authority.  This Court should strongly reject the Government's positions for several reasons.

*First*, Respondents' positions are irreconcilable with the plain language of this Court's certification orders and the Ninth Circuit's decision on class certification, which define the certified class to include *all* people with pending immigration cases in the Central District subject to prolonged detention without an adequate bond hearing.  The only carve-outs from the class definition concern specific, narrow, and clearly defined categories, and Respondents have not (and cannot) claim that the individuals at issue here fit within any of those carve-outs. [1]

Despite the absence of any other carve-outs, the Government nonetheless takes the position that this Court (and, presumably Petitioners, given that this Court approved Petitioners' proposed class definition, *see* Dkt. 77) implicitly meant to include only persons subject to certain "types" of "removal proceedings," and thereby to exclude persons subject to other types of proceedings, even though all such proceedings seek to remove people from the United States.  Moreover, the Government's reading of the class definition cannot be reconciled with the fact that the class already expressly includes people not subject to "removal proceedings" as the Government narrowly understands that term.  Thus, the Court should reject the Government's unilateral amendment of the class definition.  *See infra* Section I.

*Second*, Respondents' positions are in direct conflict with their own prior practice in this case.  Most damning to the their new position is that they have repeatedly treated as class members individuals whom they now claim are not class members.  In fact, Respondents included such individuals in their discovery

---

[1] The carve-outs are for: (1) individual "detained pursuant to the one of the national security detention statutes at 8 U.S.C. 1226a and 8 U.S.C. 1531-37"; (2) individuals subject to "a final order of removal and no stay of that removal order, such that the government has legal authority to remove them"; and (3) "juveniles … held under the care of the Office of Refugee Resettlement."  Dkt. 111 at ¶¶105-08.

production of over 1,000 files for people *Respondents identified as class members*, and relied on evidence drawn from those cases in support of their argument that *the certified class* is not entitled to summary judgment.  That Respondents treated such individuals as class members for purposes of summary judgment is fatal to their attempts to now exclude them from the class.  *See infra* Sections I.A-B.

*Third*, Respondents have not disclosed a rationale for treating certain removal proceedings differently from the proceedings that indisputably fall within the class. *All* class members, including those in the now-disputed categories, are incarcerated for prolonged periods while their immigration cases are pending without an adequate opportunity to seek release on bond.  Artificial distinctions about the particular "types" of removal proceedings cannot mask the fundamental harm that all class members subject to prolonged detention experience.

Petitioners engaged the Government for months in an attempt to resolve these issues without resort to more motion practice, particularly given that the dispute bears on the pending cross motions for summary judgment.  Nonetheless, the Government has refused to reconsider its position.  For these reasons, Petitioners respectfully request that the Court clarify that the class definition means what it says and, thus, does not implicitly exclude the three groups of persons identified by Respondents, or other groups of persons not within the express carve-outs contained in the plain language of the class definition.

## **BACKGROUND**

A.    **The Parties and the Court Defined the Class As "All" Immigrants Subject to Prolonged Detention Under The General Immigration Detention Statutes Unless Specifically Exempted in the Class Definition.**

From the outset, Petitioners have sought to represent "all" persons in the Central District with pending immigration cases who have been subject to prolonged detention under any of the general immigration detention statutes, unless they fall into

3

three narrow exceptions.  *See* Dkt. 111 at ¶¶ 105-08 (Third Amended Complaint); *see also* Dkt. 85.  Petitioners proposed those three narrow carve-outs in light of unique legal issues associated with those detainees.  *See* Dkt. 111 at ¶¶ 105-08; *see also supra* note 1.[2]  Petitioners' express purpose for pursuing a broad class has been to bring an end to the Government's practice of imprisoning people without hearings "while they litigate their removal cases."  *See* Dkt. 101 at 1-2.  To eliminate any doubt about the breadth of the class, Petitioners specified that the class would encompass all of the "general detention" statutes under which immigrants may be detained during any type of removal proceedings, "including judicial review."  Dkt. 111 at 3-4 (Third Amended Complaint) (defining "general immigration detention statutes" as including 8 U.S.C. §1225(b); 8 U.S.C. §1226(a); 8 U.S.C. §1226(c); and 8 U.S.C. §1231(a)); Dkt. 101 (motion for class certification); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078-79 (9th Cir. 2006) (repeatedly referring to "general detention statutes" in contrast to the two national security statutes that explicitly contemplate prolonged detention).

During the first appeal in this case, the Ninth Circuit likewise recognized that Petitioners brought this lawsuit to protect "a class of aliens detained in the Central District of California for more than six months without a bond hearing while engaged in *immigration proceedings*."  *See Rodriguez v. Hayes*, 591 F.3d 1105, 1111 (9th Cir. 2010) (emphasis added).  Furthermore, the Ninth Circuit recognized that the "immigration detention statutes implicated by the proposed class govern detention of

---

[2] Individuals detained under the national security statutes present a special case not only because those statutes explicitly contemplate prolonged detention, but also because they provide their own specifically-defined review processes for prolonged detention cases.  Individuals subject to the second exception – for people whom the Government has authority to deport – deserve different treatment because their on-going detention is the product of repatriation problems rather than the pendency of their removal cases.  And individuals in the third exception – juveniles in the custody of the Office of Refugee Resettlement – are not held in adult detention centers, and are therefore subject to fundamentally different circumstances, both factually and legally. *See generally Reno v. Flores*, 507 U.S. 292 (1993).

aliens at different stages of the admission and removal process." *See Rodriguez v. Hayes*, 591 F.3d 1105, 1113 (9th Cir. 2010).  By approving certification, the Ninth Circuit endorsed Petitioners' central argument that it was time to bring an end to "piece-meal rulings in habeas actions on the necessity of bond hearings to justify prolonged detention in the immigration context and … address the issue on a class-wide basis across the various general immigration detention statutes." *Id.* at 116-17. The unanimous panel explained that:

> Answering comprehensively in a class setting the constitutional question that is at the center of the proposed class's claims will facilitate development of a uniform framework for analyzing detainee claims to a bond hearing. This would render management of these claims more efficient for the courts. It would also benefit many of the putative class members by obviating the severe practical concerns that would likely attend them were they forced to proceed alone.

*Id.* at 1123.

On remand from that first appeal, the Government acknowledged the breadth of the proposed class definition in a statement of non-opposition to Petitioners' motion for class certification.  It described the class as including any "individuals who were present in a [ICE] detention facility in the Central District . . . provided they had been detained by ICE for more than six months at that time and remain detained with a *pending case* …." Dkt. 122 at 2 (emphasis added).  In the orders certifying the class and subclasses, this Court adopted Petitioners' proposed class definition and held that "the Class shall consist of all non-citizens within the Central District of California who . . . are . . . detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review …." *See* Dkt. 77 (class certification order); Dkt. 161 (subclass certification).

**B.**     **Until Recently, The Government Did Not Dispute that the Class Consists of "All" Immigrants Subject to Prolonged Detention.**

Prior to this Court's preliminary injunction ruling, the definition described above produced no ambiguity with respect to the groups of individuals that the Government has now sought to exclude from the class.  During discovery, the Government identified 1,026 persons, whom it represented were class members detained between April 2011 and April 2012.  *See* Kaufman Decl. ¶ 2.  The Government confirmed on multiple occasions that all such individuals qualified as class members, including when the Government objected to Petitioners' requests for the production of A files for those class members.  In discovery motion practice arising from that objection, the parties *jointly* described this case as follows:

> This case concerns a class of non-citizens who allege that they (a) have been subjected to immigration detention in excess of six months by Immigration and Customs Enforcement ("ICE") while their removal proceedings remain pending and (b) have not been afforded a constitutionally adequate hearing before an immigration judge ("IJ") where the Government has had to justify continued detention.  ….  Petitioners claim that … any alien who was or will be detained for six months or longer in the Central District of California is entitled to a constitutionally-adequate individualized hearing before an immigration judge to justify their continued detention under any of four detention provisions under the INA, specifically 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a).

Dkt. 165 at § 1 ("Nature of the Case and Procedural Background"); *accord* Dkt. 193 at § 1 (describing this action in the same fashion).  Pursuant to the Magistrate's order, the Government subsequently produced approximately 1,026 A files for class members.  *See* Kaufman Decl. at ¶2.

In that production, the Government included the A files of individuals who it now claims are *not* class members.  Specifically, the A files include a number of people subject to detention pending completion of proceedings that were initiated through the reinstatement of a prior removal order as well as at least one individual detained after being admitted under the Visa Waiver program.  *Id.* at ¶¶ 6-8.

6

The Government may attribute the inclusion of these individuals to oversight or neglect, but the parties explored at length whether each of the 1,026 individuals whose files were produced in the discovery were class members.  Respondents' own expert, for example, excluded two of the 1,026 individuals originally identified as class members based on his own analysis.  *See id*. at ¶ 4; Dkt. 299, Exh. O at 6.  In addition, Petitioners' expert excluded approximately 83 individuals as not meeting the class definition, and Respondents examined her at length on the subject at her deposition.  *See* Kaufman Dec. at ¶ 3.  However, despite these past discussions and efforts to verify that each of the 1,026 individuals in the sample fall within the class definition, at no point did the Government suggest that additional categories of individuals should be excluded.  In fact, the Government's expert claimed to have analyzed the cases of individuals now in dispute, and the Government has relied on that analysis in its summary judgment briefing.

Nonetheless, after this Court granted relief to a large percentage of the class in its preliminary injunction ruling, Respondents changed course.  Petitioners first learned of this development shortly before November 1, 2012, when they determined that DHS attorneys and Immigration Judges were refusing to provide bond hearings to class members detained for proceedings arising from reinstated removal orders, notwithstanding this Court's preliminary injunction order.  *See* Kaufman Dec. at ¶ 9.

When Petitioners contacted Respondents about this problem, Respondents did not immediately state their position on the issue.  Instead, they requested more information.  Over the course of several weeks, Respondents continued to request information concerning these cases and discussed the practice with Petitioners, but did not explicitly take the position that these individuals fell outside of the class definition.  Respondents first took that position only on January 25, 2013 – over ten weeks after Petitioners first expressed concern that class members were not being afforded relief under this Court's preliminary injunction ruling.  *Id.* at ¶¶ 10-12.

As a result, the Government has now taken the position that people whom the Government had unambiguously treated as class members are no longer entitled to class membership, now that the preliminary injunction is in effect.

## ARGUMENT

Without seeking leave of Court, Respondents unilaterally have exempted at least three groups of people from the class definition and, thus, the protections afforded by this Court's preliminary injunction ruling and any future rulings in the case. These groups are: (1) people in removal proceedings initiated by the reinstatement of a removal order; (2) people in removal proceedings initiated by entry of an administrative removal order under Section 1228(b); and (3) people in removal proceedings who were admitted through the Visa Waiver Program. Because the arguments concerning the first two groups largely overlap, Petitioners discuss those groups together before discussing the third. For all three, the plain language of the class definition and the purpose animating this litigation makes clear why these individuals always were and should remain within the class.

## I.     The Class Includes Individuals Detained for Reinstatement of Removal and Section 1228(b) Removal Proceedings.

Respondents contend that people in removal proceedings following the reinstatement of a removal order or issuance of a Section 1228(b) administrative removal order fall outside the class because they are not in "removal proceedings." Under Respondents' newly-narrowed class definition, the class includes only individuals detained pursuant to proceedings initiated through issuance of a "notice to appear," even though these other removal proceedings are otherwise identical in all material respects. The Court should reject this purported ground for narrowing the class definition for three reasons. First, it is contrary to the plain language of the class definition. Second, it is inconsistent with Respondents' own past practice of treating these individuals as class members. Finally, it would defeat the central purpose for this class action, namely to protect "all" individuals detained for prolonged periods

under the general detention statutes without access to a bond hearing while their cases proceed through administrative and judicial review.

A. **The Plain Language and Context of the Class Definition Make Clear that "Removal Proceedings" Is Not Used as a Narrow Technical Term.**

The class definition does not use the term "removal proceedings" to refer only to particular proceedings initiated by a "notice to appear," but instead refers broadly to all proceedings whose purpose is to remove people from the United States. The Government's argument to the contrary is insupportable for several reasons.

*First*, the class definition indisputably includes at least two groups of people who are "not currently in removal proceedings initiated upon the filing of a Notice to Appear," and therefore outside the class definition as the government now interprets it. Dkt. 302 at 3-4. For example, the class is defined to include people detained pending "removal proceedings, *including judicial review.*" *See* Dkt. 77 (emphasis added). People detained pending judicial review are not "in removal proceedings initiated upon the filing of a Notice to Appear," even under Respondents' view, because reviews conducted by federal courts are separate and distinct from administrative removal proceedings, and occur only *after* administrative removal proceedings have come to a final conclusion. *See Lolong v. Gonzales*, 484 F.3d 1173, 1176 (9th Cir. 2007) (en banc) ("[O]ur jurisdiction is limited to review of final orders of removal."). In addition, the class expressly includes people detained under Section 1231(a), which authorizes the detention of people who have administratively final removal orders and remain detained pending litigation of their motions to reopen. *See generally Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (*Diouf II*) (concerning a detainee held pending review of a motion to reopen). Respondents have repeatedly acknowledged in this litigation – including in recent summary judgment briefing – that such individuals are part of the class to the extent they seek relief greater than that provided under existing law. *See* Dkt. 299 at 30 n.9. Yet such individuals are not "in

9

removal proceedings initiated upon the filing of a Notice to Appear." To the contrary, their removal proceedings already have concluded, and they are being detained because they seek to reopen them.

*Second*, at no point in this action have Petitioners, this Court, or the Ninth Circuit ever suggested that the term "removal proceedings" in the complaint and class certification order is limited to only one type of administrative removal proceeding – that is, removal proceedings "initiated upon the filing of a Notice to Appear." To the contrary, the class definition broadly applies to "all" non-citizens with pending immigration cases who are detained under the "general detention" statutes. Respondents have conceded that individuals with re-instated removal orders are detained under the "general detention" statutes. *See* Dkt. 302 at 2-3 (acknowledging that individual with reinstated removal order is detained under Section 1226(c)).[3] Nothing more is required for class membership.

*Third*, contrary to what Respondents may suggest, there is no question that persons subject to reinstatement and administrative removal cases are in "removal proceedings" as that phrase is commonly understood. When immigration officials apprehend an individual who was previously issued a final order of removal, they have the authority to "reinstate" that removal order and deport the person without any further proceedings before an Immigration Judge, pursuant to 8 U.S.C. § 1231(a)(5).

---

[3] The parties disagree as to which statute authorizes the detention of people with reinstated removal orders at the time they are placed in removal proceedings. *Compare* Dkt. 302 at 2-3 (arguing reinstatement case governed by Section 1226(c)) *with* Dkt. 315 at 22 (arguing reinstatement cases are governed by Section 1226(a) and citing *Ortiz-Alfaro v. Holder*, 694 F. 3d 955, 958 (9th Cir. 2012)). However, this disagreement is immaterial because the Ninth Circuit has now held that Sections 1225(b) and 1226(c) have an "implicit temporal limitation" of six months, after which the authority for detention shifts to Section 1226(a). *See Robbins v. Rodriguez*, 2013 U.S. App. LEXIS 7565, 27 (9th Cir. Cal. Apr. 16, 2013). As such, under the Ninth Circuit's order, all the class members at issue – who by definition have been detained more than six months – are detained under Section 1226(a), and this Court need not resolve the question of what detention authority governs detention prior to six months.

However, if the apprehended individual expresses a fear of persecution or torture in his home country and can show that that fear is "reasonable," the immigration laws require that the individual be afforded the opportunity to seek relief from removal in the form of withholding of removal or protection under the Convention Against Torture ("CAT") through a hearing before an Immigration Judge.[4]  *See* 8 CFR § 208.31; 8 CFR § 208.16 (describing process for reinstatement of removal and withholding-only proceedings).[5]  In short, the proceedings in reinstatement cases exist to determine whether such individuals should be removed from the United States.

Similarly, people issued administrative removal orders under 8 U.S.C. § 1228(b) are in "removal proceedings" for purposes of the class definition.  If immigration officials determine that an apprehended individual is present in the United States without permission and has been convicted of an "aggravated felony," they have the authority to issue an administrative removal order under Section 1228(b) without bringing the individual before an Immigration Judge.  However, as with reinstatement cases, if the individual expresses fear of persecution or torture and demonstrates a "reasonable fear" of return, he is referred to the immigration courts for adjudication of that claim.  *See* 8 CFR § 238.1 (describing process for issuance of an administrative removal order).  In other words, these proceedings also exist for the purpose of determining whether to "remove" someone from this country.

---

[4] These forms of relief are available to individuals who face persecution or torture in their home countries, respectively.  *See* 8 CFR § 208.16.

[5] In this respect, class members in withholding-only proceedings are functionally in the same position as asylum seekers stopped at a port of entry, who comprise the vast majority of the Section 1225(b) Subclass.  In such asylum cases, the noncitizen is referred to the immigration court for a hearing on his or her asylum claim, if he or she demonstrates a "credible fear" of persecution – a process very similar to the "reasonable fear" process employed in withholding-only cases.  *See* 8 CFR § 208.30.

**B.      Respondents' Definition of the Class Contradicts Their Prior Representations and Practice in This Case.**

Perhaps most damning to Respondents' efforts to unilaterally amend the class definition is the fact that Respondents and Respondents' experts previously treated such individuals as class members.  Among other things, Respondents represented to this Court and Petitioners that they produced the files of approximately 1,000 class members, and that they carefully identified class members and conducted reasonably diligent searches to produce the A files.  Respondents' expert, Dr. Palmer, subsequently excluded just two individuals because he determined they were not class members, and Respondents have relied extensively upon Dr. Palmer's analysis of the remaining class members to oppose Petitioners' motion for summary judgment, and to support their own cross-motion.

However, even a cursory review of the A files has confirmed that they include people with reinstated removal orders – i.e., whose removal proceedings did not commence with a "notice to appear" and who therefore are not in "removal proceedings" as the Government now defines that term.  *See* Kaufman Decl. ¶¶ 6-8.  After vouching for the thoroughness and accuracy of their efforts to identify class members, and then relying on data generated by analysis of their files, Respondents should not be heard to dismiss the inclusion of these people as a product of oversight.  That Respondents chose to treat these individuals as class members when it produced their files in discovery makes clear that the Government recognized them as class members until its recent post-hoc attempt to narrow the scope of the class definition.

**C.      No Valid Rationale Exists For Adopting Respondents' Proposed Limitation of the Class Definition.**

Were the plain language of the class definition and Respondents' past practice not sufficient, the Court still should conclude that the disputed individuals are class members.  There is no justification for distinguishing between the noncitizens whom

Respondents wish to exclude (individuals with reinstated or administrative removal orders), and other individuals indisputably considered part of the certified class.

Like other class members, these individuals have been subject to prolonged incarceration without access to a bond hearing while their cases proceed through administrative and judicial review.  Moreover, the proceedings in reinstatement and Section 1228(b) cases are identical in all meaningful respects to the proceedings for all other class members.  The immigration court hearings are conducted in the same courtrooms before the same immigration judges, follow the same procedures, and provide the same rights with respect to the class members' claims for immigration relief: the right to the assistance of counsel at no expense to the government; the right to a hearing before the immigration judge on their claims at which they can present evidence and examine witnesses; and the right to seek administrative and judicial review in the event of an unfavorable decision.  *See* 8 CFR § 208.31; 8 CFR § 238.1.

The harm these individuals suffer is well-illustrated by the case of Jose Galvan-Avila, a class member with a reinstated removal order who was forced to file a habeas petition *pro se* because of Respondents' unilateral decision to narrow the class certification order.  At the time he filed his habeas petition, Mr. Galvan-Avila had been detained for well over a year but had yet to receive a merits hearing on his claims for relief before the immigration court.  *See* Dkt. 296-1 at 3 (habeas petition) (first detained in January, 2012); Dkt. 302 at 2 (merits hearings scheduled for April 18, 2013).[6]  Many individuals in withholding-only proceedings, including Mr. Galvan-Avila, have resided in the United States for some period prior to their apprehension by immigration authorities, have family members in the United States, and have other strong community ties.  *See id.* at 4, 7 (petitioner has resided in United States since elementary school, has steady work history, his entire family are United States citizens or lawful permanent residents, and he is the "bread winner" for his wife and three

---

[6] Petitioners filed a notice of related case for Mr. Galvan-Avila's habeas case on March 8, 2013.  *See* Dkt. 296.

children).  Moreover, because individuals can be subject to reinstatement based on any prior removal order (even if they did not commit a criminal offense that resulted in their removal), many may have minor criminal histories or none at all.  Mr. Galvan-Avila and other individuals like him thus fall squarely within the class of people on whose behalf Petitioners brought this case.

To exclude individuals like Mr. Galvan-Avila from the class would not only run afoul of this Court's certification order, it would also contravene the Ninth Circuit's rationale for ordering certification in this case: to "facilitate development of a uniform framework for analyzing detainee claims to a bond hearing" that "would render management of these claims more efficient for the courts" and "also benefit many of the putative class members by obviating the severe practical concerns that would likely attend them were they forced to proceed alone."  *Rodriguez*, 591 F.3d at 1123. Respondents' purported exemptions invite precisely the harms the Ninth Circuit sought to avoid by forcing "exempt" individuals to proceed alone to obtain relief from unlawful detention, and burdening the courts with individual habeas cases.

## II. The Class Includes Individuals Detained After Being Admitted Under the Visa Waiver Program.

Respondents also purport to exclude from the class individuals who came to the United States under the Visa Waiver Program and have been detained for more than six months while they seek asylum.  Like other class members, such individuals are detained pending a determination of whether they may remain in the United States. As a result, their detention is governed by Section 1226(a), under which they qualify as class members.

Nonetheless, Respondents contend that such individuals should be deemed detained under a different statute – 8 U.S.C. § 1187(c)(2)(E).  *See* Dkt. 299 at 10 n.9. The first problem with this argument is that Section 1187(c)(2)(E) provides no detention authority.  The words "detention" or "custody" cannot be found in Section 1187(c)(2)(E).  The closest thing to detention authority in that statute is language in a

14

subparagraph that states that the provision creates no duty or right with respect to release.  *See* 8 U.S.C. §1187(c)(2)(E).  In an analogous context, the Supreme Court made clear that such references to other immigration detention authority cannot "affirmatively authorize[] detention, much less indefinite detention."  *Clark v. Martinez*, 543 U.S. 371, 385 (2005) (rejecting argument that Section 1182(d)(5)(A) authorizes detention).

Respondents have previously cited a BIA decision, *Matter of A-W-*, 25 I&N Dec. 45 (BIA 2009) as supporting their claim that persons who arrived under the Visa Waiver Program are detained under Section 1187(c)(2)(E).  *See* Dkt. 299 at 10 n.9.  But *A-W-* relies on separate regulatory provisions to hold that Immigration Judges lack authority to release such individuals on bond.  *Id.* at 47-48.  Whatever the merit of that claim as to individuals detained for short periods of time, neither the decision nor the regulations on which it relies speak explicitly to cases of prolonged detention.  *Cf. V. Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. Cal. 2011) (construing regulations not to apply to *Casas* hearings).

The second problem with Respondents' position is that they previously represented to Petitioners and this Court that people who entered through the Visa Waiver Program are class members.  As with individuals subject to reinstatement proceedings, Respondents produced in discovery the file of at least one individual who entered on the Visa Waiver Program, and they relied on the data of that individual in their analysis of the class for purposes of their summary judgment briefing.  *See* Kaufman Decl. ¶ 7.  As with reinstatement cases, Respondents' prior treatment of this group of individuals as class members is fatal to their post-hoc attempt to exclude them from the class.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court clarify its class certification orders and reject Respondents' attempt to introduce additional a-textual carve-outs from the class definition.  Given the likelihood that Respondents

will attempt to identify further individuals who do not qualify as class members, Petitioners also request that the Court require Respondents to provide notice to Petitioners and the Court when they determine that other individuals are not class members despite their having been detained for more than six months without a bond hearing under the general immigration detention statutes, and do not otherwise fall within one of the three expressly enumerated exceptions in the class definition.

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated:  May 6, 2013                            /s/ Michael Kaufman_____
                                               MICHAEL KAUFMAN
                                               Counsel for Petitioners