1   AHILAN T. ARULANANTHAM (SBN 237841)
    aarulanantham@aclu-sc.org
2   MICHAEL KAUFMAN (SBN 254575)
    mkaufman@aclu-sc.org
3   ACLU FOUNDATION OF SOUTHERN CALIFORNIA
    1313 West 8th Street
4   Los Angeles, CA  90017
    Telephone: (213) 977-5211
5   Facsimile: (213) 977-5297

6   *Attorneys for Petitioners*
    (Additional Counsel listed on following page)

7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10  ALEJANDRO RODRIGUEZ,              )   Case No. CV-07-3239-TJH (RNBx)
    ABDIRIZAK ADEN FARAH,             )
11  YUSSUF ABDIKADIR, ABEL PEREZ      )   **PETITIONERS' REPLY IN**
    RUELAS, JOSE FARIAS CORNEJO,      )   **SUPPORT OF MOTION FOR**
12  ANGEL ARMANDO AYALA, for          )   **CLARIFICATION OF THE CLASS**
    themselves and on behalf of a class of )   **DEFINITION**
13  similarly-situated individuals,   )
                                      )
14              Petitioners,          )   Honorable Terry J. Hatter
                                      )
15              v.                    )   DATE:  June 3, 2013
                                      )   TIME:   Under Submission
16  ERIC HOLDER, United States Attorney )   PLACE:  Courtroom 17
    General; JANET NAPOLITANO,        )
17  Secretary, Homeland Security;     )
    THOMAS G. SNOW, Acting Director,  )
18  Executive Office for Immigration  )
    Review; TIMOTHY ROBBINS, Field    )
19  Office Director, Los Angeles District )
    Immigration and Customs Enforcement; )
20  WESLEY LEE, Officer-in-Charge, Mira )
    Loma Detention Center; et al.;    )
21  RODNEY PENNER, Captain, Mira      )
    Loma Detention Center; SANDRA     )
22  HUTCHENS, Sheriff of Orange County; )
    OFFICER NGUYEN, Officer-in-       )
23  Charge, Theo Lacy Facility; CAPTAIN )
    DAVIS NIGHSWONGER, Commander,     )
24  Theo Lacy Facility; CAPTAIN MIKE  )
    KREUGER, Operations Manager, James )
25  A. Musick Facility; ARTHUR        )
    EDWARDS, Officer-in-Charge, Santa )
26  Ana City Jail; RUSSELL DAVIS, Jail )
    Administrator, Santa Ana City Jail, )
27                                    )
                Respondents.          )
28

JUDY RABINOVITZ
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY  10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

MICHAEL TAN (SBN 284869)
mtan@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone:  (415) 343-0779
Facsimile:  (415) 395-0950

JAYASHRI SRIKANTIAH (SBN 189566)
jsrikantiah@law.stanford.edu
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA  94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS (SBN 217603)
scommons@sidley.com
JONATHAN FEINGOLD (SBN 286302)
jfeingold@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Petitioners

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

I.    THE CLASS INCLUDES INDIVIDUALS DETAINED FOR
      REINSTATEMENT OF REMOVAL AND SECTION 1228(B)
      REMOVAL PROCEEDINGS. ....................................................2

      A.    The Immigration and Nationality Act's Use of "Removal
            Proceedings" Cannot Be  Reconciled with Respondents'
            Reading of the Class Definition.  .......................................2

      B.    The Plain Language of the Class Definition Requires that
            these Prolonged Detainees be Included in the Class. ........................6

      C.    Respondents' Past Practice and Statements in This Case
            Contradict Their New Interpretation of the Class Definition.  ...........9

      D.    Respondents' Proposed Reinterpretation of the Class
            Definition is Contrary to the Basic Purpose of This
            Litigation as Recognized by the Ninth Circuit. ...............................11

II.   THE CLASS INCLUDES INDIVIDUALS DETAINED AFTER
      BEING ADMITTED UNDER THE VISA WAIVER PROGRAM. ...........13

CONCLUSION ...................................................................................15

i

# TABLE OF AUTHORITIES

1

2

3

**CASES**

4

*Babbitt v. Sweet Home Chapter of Cmtys for a Great Oregon*,
  515 U.S. 687 (1995)............................................................................4

5

6

*Clark v. Martinez*,
  543 U.S. 371 (2005)..........................................................................13

7

8

*de Rincon v. DHS*,
  539 F.3d 1133 (9th Cir. 2008).............................................................9

9

10

*Diouf  v. Holder*,
  634 F.3d 1081 (9th Cir. 2011)...............................................8, 12, 13

11

12

*INS v. St. Cyr*,
  533 U.S. 289 (2001)............................................................................6

13

14

*Liu v. Waters*,
  55 F.3d 421 (9th Cir. 1995).................................................................9

15

16

*Ma v. Ashcroft*,
  257 F.3d 1095 (9th Cir. 2001)...........................................................13

17

*Matter of A-W-*,
  25 I&N Dec. 45 (BIA 2009) ..............................................................13

18

19

*Mackey v. Lanier Collection Agency & Serv., Inc.*,
  486 U.S. 825 (1988)............................................................................4

20

21

*Nadarajah v. Gonzales*,
  443 F.3d 1069 (9th Cir. 2006)....................................................12, 13

22

23

*Ortiz-Alfaro v. Holder*,
  694 F.3d 955 (9th Cir. 2012)...............................................................5

24

25

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010).............................................................9

26

*United States v. Garcia-Martinez*,
  228 F.3d 956 (9th Cir. 2000)...............................................................5

27

28

*V. Singh v. Holder*,
   638 F.3d 1196 (9th Cir. 2011)......................................................................14

**STATUTES**

8 U.S.C. § 1226(c) ...............................................................................12, 14

8 U.S.C. §§ 1531-37 ......................................................................................3,7

8 U.S.C. § 1101(a)(13)(c)(iv) ........................................................................4

8 U.S.C. § 1158(d)(5)(A)(iv) .........................................................................4

8 U.S.C. § 1182(d)(1) ................................................................................3, 4

8 U.S.C. § 1182(d)(3)(B)(i) ...........................................................................4

8 U.S.C. § 1187 .................................................................................13, 14

8 U.S.C. § 1225(b) ..........................................................................................12

8 U.S.C. § 1226a ...........................................................................................3

8 U.S.C. § 1226(a) .............................................................................12, 14

8 U.S.C. § 1226a(5) ........................................................................................4

8 U.S.C. § 1228(b) ...................................................................................5, 6, 15

8 U.S.C. § 1229(a)(1) ......................................................................................4

8 U.S.C. § 1229(a)(2) ......................................................................................4

8 U.S.C. § 1229a(a)(3) ...................................................................................5

8 U.S.C. § 1231(a) .......................................................................................7, 8, 12

8 U.S.C. § 1531(6) .....................................................................................2, 4, 6

8 U.S.C. § 1532 ............................................................................................2

8 U.S.C § 1229a..............................................................................*passim*

**REGULATIONS**

8 C.F.R. § 238.1 ......................................................................................................5

8 C.F.R. § 241.4 ......................................................................................................8

8 C.F.R. § 1208.16 ..................................................................................................8

8 C.F.R. § 1241.1 ....................................................................................................8

# INTRODUCTION

Respondents advance two related arguments in an attempt to exclude certain individuals from the benefits of class membership.  One concerns the definition of "removal proceedings," while the other turns on what detention statute governs for one group of prolonged detainees.  The Court should reject both arguments.

*First*, Respondents read "removal proceedings" in the class definition to refer only to "removal proceedings" *under 8 U.S.C. § 1229a*, relying on a non-binding practice manual and an unpublished BIA case.  Dkt. 340 at 2.  On this basis, they ask the Court to exclude from the class individuals who indisputably face "proceedings" whose only purpose is to "remove" them from the United States.

There are four fundamental flaws in that argument.  First, it is contrary to the use of "removal proceedings" throughout the Immigration and Naturalization Act.  *See infra* Section I.A.  Second, it cannot be reconciled with the inclusion of one of the four certified subclasses and, in other respects, renders the class definition incoherent.  *See infra* Section I.B.  Third, it disregards statements by the Ninth Circuit, this Court, and Respondents that broadly describe the class as including individuals in "immigration proceedings" and with "a pending case."  *See infra* Section I.C.  Finally, it would result in yet more habeas litigation by individuals detained *under the same statutes* at issue in this litigation – precisely what the Ninth Circuit sought to avoid by certifying this class action.  *See infra* Section I.D.

*Second*, Respondents attempt to exclude class members admitted under the Visa Waiver program, whom they claim are detained under a different immigration statute than the ones associated with the four subclasses.  *See infra* Section II.  But they rely only on a BIA decision that nowhere addresses prolonged detention, and which, if it had, would run afoul of Supreme Court and Ninth Circuit cases that this Court has properly relied upon to construe detention statutes when *prolonged* detention is at stake.  *See infra* Section II.

1

1

2

## I.    THE CLASS INCLUDES INDIVIDUALS DETAINED FOR REINSTATEMENT OF REMOVAL AND SECTION 1228(B) REMOVAL PROCEEDINGS.

3

4

### A.    The Immigration and Nationality Act's Use of "Removal Proceedings" Cannot Be Reconciled with Respondents' Reading of the Class Definition.

5        Respondents' argument that prolonged detainees with a reinstated removal

6   order or an administrative removal order do not fall in the class is based on a

7   misreading of the Immigration and National Act ("INA").  The premise of

8   Respondents' argument is that, as used in the INA, "'[r]emoval proceedings' is a

9   term of art that applies exclusively to proceedings conducted in accordance with 8

10  USC § 1229a."  Dkt. 340 at 2.  Respondents assert that the term "removal

11  proceedings" is "legally defined," and that "[u]nder the [INA], in order for an

12  immigration proceeding to qualify as a removal proceeding, it must be conducted

13  in accordance with section 1229a."  *Id.* at 2-3.  However, the INA contains no such

14  "definition" of "removal proceedings" and, in fact, Respondents' position cannot

15  be reconciled with the text of the INA for several reasons.

16        *First*, "removal proceedings" cannot exclusively refer to Section 1229a

17  because the INA applies the term "removal proceedings" to certain types of cases

18  that do *not* arise under Section 1229a.  In fact, "removal proceedings"

19  encompasses various proceedings whose purpose is to remove individuals from the

20  United States.  The clearest example comes from Section 1531 – the definitional

21  section of the portion of the INA establishing the Alien Terrorist Removal Court.

22  8 U.S.C. § 1531(6).  Section 1531 defines "removal proceedings" for purposes of

23  *an entire subchapter* of the INA as proceedings convened by the Alien Terrorist

24  Removal Court.  *Id.*  "[R]emoval proceedings" under Sections 1531-1537 are

25  distinct from Section 1229a proceedings because, among other differences, they

26  must be conducted by Article III judges.  8 U.S.C. § 1532.  As a result, there is no

27  question that the term "removal proceedings" in the INA cannot exclusively mean

28

2

a "specific type of administrative proceeding conducted by an immigration judge"
under Section 1229a.[1]

Similarly, provisions of the INA enacted as part of the USA PATRIOT Act
require the Attorney General to institute "removal proceedings" against anyone
certified as a national security threat.  8 U.S.C. § 1226a.  If Respondents'
interpretation of "removal proceedings" were correct, then the Government would
be *required* to bring detainees certified as national security threats before an
Immigration Judge, even if they would not otherwise be entitled to such
proceedings (such as, for example, if the person certified as a national security
threat had been previously removed, and therefore was otherwise eligible to face
reinstatement of removal under Section 1231(a)(5)).  Congress obviously did not
intend to afford *greater* procedural rights for people detained under the PATRIOT
Act as certified national security threats through use of the generic phrase
"removal proceedings."  *See also* 8 U.S.C. § 1182(d)(1) (requiring "removal
proceedings" for certain temporarily-admitted non-immigrants, without specifying
that they must be proceedings under Section 1229a).  For this reason as well, use of
"removal proceedings" in the class definition does not "unambiguously" refer
exclusively to Section 1229a.

It is thus clear that the INA uses the term "removal proceedings" to refer
more broadly than to proceedings under Section 1229a.  This is confirmed by the
fact that numerous provisions of the INA refer to "removal proceedings," but only
a subset specifically refer to "removal proceedings under Section 1229a."
*Compare*, *e.g.*, 8 U.S.C. § 1182(d)(3)(B)(i) (referring to "removal proceedings
under Section 1229a"), 8 U.S.C. §§ 1229(a)(1) & (a)(2) (same), *and* 8 U.S.C.

---

[1] Petitioners explicitly excluded individuals in removal proceedings under Sections
1531 - 1537 from the class definition.  As explained *infra* Section I.B., this
exception would have been unnecessary if the term "removal proceedings" already
limited the class definition to detainees in Section 1229a proceedings.

3

1   § 1158(d)(5)(A)(iv) ("removal proceedings before an immigration judge under

2   Section 1229a") *with* 8 U.S.C. § 1101(a)(13)(c)(iv) ("removal proceedings under

3   this chapter") *and* 8 U.S.C. § 1531(6) (explicitly defining "removal proceeding

4   under this subchapter" [a subchapter not containing 8 U.S.C. § 1229a]) *with* 8

5   U.S.C. § 1182(d)(1) (referring simply to "removal proceedings") *and* 8 U.S.C.

6   § 1226a(5) (same).  If Congress intended for every reference to "removal

7   proceedings" in the INA to necessarily mean "removal proceedings under Section

8   1229a", then Congress would not have had to specifically reference "removal

9   proceedings under Section 1229a" in certain instances and not others.

10  Respondents' argument improperly reads every use of "under Section 1229a" out

11  of the INA.  *See Babbitt v. Sweet Home Chapter of Cmtys for a Great Oregon*, 515

12  U.S. 687, 698 (1995) (disapproving interpretations that "treat statutory terms as

13  surplusage"); *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837

14  (1988) ("As our cases have noted in the past, we are hesitant to adopt an

15  interpretation of a congressional enactment which renders superfluous another

16  portion of that same law.").[2]

17       Yet more evidence against Respondents' interpretation comes from the text

18  of Section 1229a itself.  That provision expressly acknowledges that it is not the

19  exclusive type of removal proceedings under the INA, because its "exclusive

20

21  [2] The provisions that refer specifically to removal proceedings under Section 1229a

22  are 8 U.S.C. §§ 1182(d)(3)(B)(i), 1228(c)(4), 1229(a)(1) & (a)(2),
    1232(a)(5)(D)(i), 1158(d)(5)(A)(iv)), and 1774(a).  In contrast, the phrase

23  "removal proceedings" occurs in the following statutory provisions without any
    specific reference to Section 1229a.  *See* 8 U.S.C. §§ 1101(13)(c)(iv),

24  1182(a)(6)(B), 1182(d)(1), 1186a(c)(2)(B), 1186a(c)(3)(D), 1186a(d)(2)(C),

25  1186b(b)(2), 1186c(c)(2)(B), 1186c(c)(3)(D), 1186b(d)(2)(C), 1189(a)(8), 1201(i),
    1226(a)(3), 1226a(5), 1227(d)(2), 1228(a)(1), 1228(a)(3)(A), 1228(a)(4)(A)-(B),

26  1229b(b)(2)(A)(ii), 1232(c)(3)(B), 1252(a)(2)(B), 1254(a)(3)(B)-(C),

27  1254(b)(5)(B), 1356(h)(2)(A)(vi), 1361, 1362, 1429, 1503(a), 1531(6),

28  1612(a)(2)(M)(i)(III), 1775.

4

procedure" governs "*[u]nless otherwise specified in*" the INA.  8 U.S.C.
§ 1229a(a)(3).  It goes on to explicitly disclaim that it supplants "proceedings
conducted pursuant to Section 1228."  Congress would not have included these
limitations and disclaimers if, as Respondents argue, every reference to "removal
proceedings" in the INA referred only to proceedings conducted under Section
1229a.

   *Second*, to the extent there was any ambiguity in the INA, the Ninth Circuit
has interpreted Section 1231(a)(5) and Section 1228(b) – the two provisions
governing removal for the individuals the government wishes to exclude – to make
clear that proceedings under those sections are "removal proceedings."  This is
unmistakably clear as to Section 1228(b), because the Ninth Circuit has explained
that "[p]roceedings under Section 1228(b) are governed by regulations . . . .  Under
8 C.F.R. § 238.1, *removal proceedings* commence when an issuing Service officer
determines that sufficient evidence supports removal and serves the alien with a
Notice of Intent."  *See United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th
Cir. 2000) (emphasis added).  Similarly, the Ninth Circuit has held that individuals
with reinstated removal orders who are detained pending "removal proceedings"
under Section 1231(a)(5) do not have final removal orders for purposes of judicial
review until their withholding claims have been adjudicated.  *Ortiz-Alfaro v.
Holder*, 694 F.3d 955, 958 (9th Cir. 2012).  In other words, they do not obtain a
"removal order" from which they can seek review until after the conclusion of their
removal proceedings.  Yet, under Respondents' view, this Court must read the
class definition as excluding such individuals on the ground that they are not in
"removal proceedings."  Respondents' proposed interpretation of "removal
proceedings" thus is contrary to the Ninth Circuit's decisions in *Garcia-Martinez*
and *Ortiz-Alfaro*.

   *Third*, while Respondents defend their position based on the title of Section
1229a – "Removal proceedings," the title of a statute cannot alter its plain

5

meaning.  *INS v. St. Cyr*, 533 U.S. 289, 308-09 (2001).  At most, a statutory title can be used for interpretative purposes, but "only when it sheds light on some ambiguous word or phrase."  *Id.*  In this case, the title "Removal proceedings" in no way suggests that Congress intended to specifically exclude people detained for removal proceedings under Section 1228(b), Section 1231(a)(5), or people detained for "removal proceedings" as specifically defined in Section 1531(6), particularly given that, as noted above, Section 1229a(3) itself explicitly addresses the possibility of removal proceedings elsewhere in the Act, including under Section 1228.

Unable to point to any statutory support for equating "removal proceedings" with Section 1229a, Respondents explore the purported differences between "removal proceedings" and "limited proceedings," citing only their own practice manual and an unpublished BIA decision.  Dkt. at 2-3.  Neither source defines "removal proceedings" as necessarily and exclusively limited to proceedings under Section 1229a.  More importantly, neither source has precedential value with respect to this Court's construction of the INA, let alone the class definition that this Court certified, particularly in the face of repeated statements by the Ninth Circuit, this Court, and the Government describing the class in broader terms.  *See* Dkt. 336-1 at 4-6 (collecting statements by Ninth Circuit, this Court, and Respondents).

Consequently, the Court should reject Respondents' effort to rewrite the class definition based on a misreading of the INA.

**B.     The Plain Language of the Class Definition Requires that These Prolonged Detainees be Included in the Class.**

The Court also can reject Respondents' proposed interpretation of "removal proceedings" because, no matter how Congress has used "removal proceedings" in the INA, the relevant question here is how the term is used in the class definition. Respondents' interpretation does violence to the plain text employed by

Petitioners, approved by the Court, and consented to by Respondents.

Respondents' contention that the words "removal proceedings" in the class definition refer to "a specific type of administrative proceeding conducted by an immigration judge" initiated by a "notice to appear" under Sections 1229a cannot be reconciled with the plain text of the class definition, for two basic reasons. Dkt. 340 at 2.

*First*, Respondents do not – and cannot – explain why the class definition contains explicit exemptions for persons in certain types of removal proceedings (in particular, "removal proceedings" under the Alien Terrorist Removal Court as defined at 8 U.S.C. 1531-37), if, as they contend, the Court and the parties believed "removal proceedings" to "unambiguously" refer exclusively to proceedings under Section 1229a. The explicit exclusion of removal proceedings under the Alien Terrorist Removal Court would be entirely unnecessary if, as Respondents contend, the term "removal proceedings" was limited to Section 1229a proceedings. Tellingly, Respondents have no answer to these express exclusions, and their position should be rejected on this basis alone.

*Second*, Respondents' position cannot be reconciled with the explicit inclusion of two groups within the class definition: prolonged detainees seeking judicial review, and prolonged detainees detained under Section 1231(a). By its terms, the class definition encompasses people who are detained pending "removal proceedings, *including judicial review*," Dkt. 336-1 at 5 (emphasis added); Dkt. 340 at 1. Respondents attempt to explain the reference to "judicial review" as describing "aliens challenging their removability through the established judicial review process." Dkt. 340 at 4. But Respondents cannot explain how "removal proceedings" could "*include*" judicial review, if the term "removal proceedings" is limited to proceedings before immigration judges initiated by notices to appear. Judicial review is a federal court process conducted by Article III federal judges, not "a specific type of administrative proceeding conducted by an immigration

7

1    judge."

2          Similarly, Respondents' interpretation cannot be reconciled with the

3    existence of the Section 1231(a) Subclass.  That Subclass consists entirely of

4    individuals who are detained while litigating a motion to reopen a previously

5    closed removal case.  *See generally Diouf v. Holder*, 634 F.3d 1081, 1085 (9th

6    Cir. 2011) (describing statutory scheme, and explaining that Section 1231(a)(6)

7    authorizes detention for individuals who have already received an administratively

8    final order of removal and had the opportunity for one round of judicial review); 8

9    C.F.R. § 1241.1 (describing conditions under which a removal order becomes

10   final, all of which occur *after* a final decision by the Immigration Judge); 8 C.F.R.

11   § 241.4 ("An alien who has filed a motion to reopen immigration proceedings for

12   consideration of relief from removal, including withholding or deferral of removal

13   pursuant to 8 CFR 1208.16 or 1208.17, *shall remain subject to the provisions of*

14   *this section* [i.e., Section 241] unless the motion to reopen is granted.") (emphasis

15   added).  Thus, the members of the Section 1231(a) Subclass are not detained for "a

16   specific type of administrative proceeding conducted by an immigration judge," or

17   one initiated by a "notice to appear," Dkt. 340 at 2, yet they undoubtedly are class

18   members.

19         Respondents argue that people detained pending resolution of a motion to

20   reopen are included in their narrow definition of the class because they are

21   "seeking judicial review of a decision made in the alien's removal proceedings."

22   Dkt. 340 at 5.  That is not accurate.  Members of the Section 1231(a) subclass

23   challenging a final order of removal must first seek relief in the BIA, not before an

24   Article III judge, *see Liu v. Waters*, 55 F.3d 421, 424 (9th Cir. 1995) ("A petitioner

25   must make a motion for the BIA to reopen before we will hold that he has

26   exhausted his claims."), and Respondents have never disputed that such individuals

27   are class members if their detention has become prolonged.  But even as to persons

28   who subsequently seek judicial review of the BIA's denial of their motions to

1    reopen, Respondents do not explain how such individuals can be characterized as

2    being in "removal proceedings" given that they already have final removal orders

3    (which they seek to reopen) and, therefore, are not in "proceedings before an

4    Immigration Judge to determine their inadmissibility or deportability."  Dkt. 340 at

5    2.  Respondents' strained reading of the phrase "including judicial review" in the

6    class definition also poses another anomaly: why does the class include people

7    seeking judicial review from some removal proceedings, but not others?

8    Individuals in reinstatement of removal proceedings also have the right to "seek[]

9    judicial review of a decision made in the alien's removal proceedings," Dkt. 340 at

10   5, such as if they assert that their prior removal resulted from a gross miscarriage

11   of justice.  *See de Rincon v. DHS*, 539 F.3d 1133, 1138 (9th Cir. 2008).  Given that

12   the class indisputably includes individuals detained under Section 1231(a), who are

13   not in "removal proceedings" as Respondents define that term, Respondents cannot

14   selectively exclude other individuals who also do not meet their self-created

15   narrow definition of "removal proceedings."

16

17            **C.    Respondents' Past Practice and Statements in This Case
                      Contradict Their New Interpretation of the Class Definition.**

18            A third basis on which to reject Respondents' argument arises from the

19   history of the class definition adopted in this case, and this particular dispute's

20   history.  Dkt. 336-1 at 12.  Three years ago, prior to this Court's order certifying

21   the class, the Ninth Circuit characterized the class as including individuals

22   "engaged in immigration proceedings," *Rodriguez v. Hayes*, 591 F.3d 1105, 1111

23   (9th Cir. 2010).  Subsequent to that decision, Respondents themselves

24   characterized this case as involving "individuals . . . detained with a pending case."

25   Dkt. 122 at 2.  *See generally* Dkt. 336-1 at 4-6 (collecting statements from the

26

27

28

                                             9

1  Ninth Circuit, this Court, and Respondents).[3]  At no point prior to this Court's

2  entry of the preliminary injunction did Respondents ever suggest that the class was

3  limited in the manner they now propose.

4          Respondents attempt to explain away years of representations they have

5  made during the course of this litigation, as well as their conduct in discovery, with

6  one word: by claiming that all their prior conduct and all prior statements were the

7  product of "inadvertent" error.  Dkt. 340 at 5.  But their conduct cannot be

8  reconciled with that explanation.

9          *First*, Respondents contend that the meaning of "removal proceedings" is

10 "unambiguous," but it took them *ten weeks* to explain to Petitioners why they were

11 refusing to grant bond hearings to the people at issue in this motion.  Dkt. 336-1 at

12 7.  Respondents would not have needed more than two months to explain a

13 position they supposedly held from the moment this Court certified the class if the

14 class definition was unambiguously, as Respondents now contend.

15         *Second*, for this Court to accept "inadvertence" as an explanation,

16 Respondents would have to provide evidence that they never intended to produce

17 documents relating to the individuals at issue, and had not meant to describe the

18 class in a manner inconsistent with their current position in various correspondence

19 and briefs – evidence Respondents do not offer.  Dkt. 340 at 5.  A passing

20 reference to "inadvertence" cannot suffice when Respondents repeatedly treated

21 these individuals as class members.  Dkt. 336-1 at 4-6.  Respondents suggest that

22 the basis for their "inadvertence" was their inability to classify class members by

23 detention statute, *see* Dkt. 340 at 5, but this is a red herring; there is no dispute that

24 the individuals at issue here are all detained under one of the four detention statutes

25 covered by the class action.  Rather, the dispute is over whether the individuals

26
27
28

---

[3] The existence of these prior statements by the Ninth Circuit, this Court, and the government itself is also fatal to Respondents' claim that they had no notice of Petitioners' prior understanding of the class definition.  Dkt 340 at 4.

1    were not in "removal proceedings" because they had reinstated removal orders or

2    administrative removal orders, both of which require specialized documentation

3    that can be easily identified in class members' A files. *See* Dkt. 339, Ex. E

4    (attaching forms specific to class members with reinstated removal orders and

5    administrative removal orders). Respondents conducted a detailed, page-by-page

6    review of each A file for privilege, and there is no reason why that review could

7    not have identified individuals with reinstated removal orders and administrative

8    removal orders, if Respondents did not consider them part of the class at that time.[4]

9        The Court should not countenance Respondents' attempt to narrow the class

10   definition at this late date, after the Ninth Circuit, this Court, and Respondents

11   themselves have all relied upon a far broader definition.

12         **D.    Respondents' Proposed Reinterpretation of the Class Definition is Contrary to the Basic Purpose of This Litigation as Recognized**

13         **by the Ninth Circuit.**

14       Finally, Respondents' interpretation runs contrary to the basic purpose of

15   this class litigation. Dkt. 336-1 at 12-14. Individuals subject to prolonged

16   detention who have been arbitrarily excluded from the class will doubtless file

17   individual habeas actions – as people like Mr. Galvan Avila have done already –

18   leading to yet more inefficient individual litigation of issues virtually identical to

19   those at issue in this case. Respondents acknowledge that these detainees can

20   bring such actions, Dkt. 340 at 7 n.3, and they cannot explain why these detainees

21   would not prevail under the wealth of existing authority finding prolonged

22

23   ───────────

[4] Respondents also point to the fact that they erroneously included *other* non-class

24   members in discovery, Dkt. 340 at 5, but those individuals non-membership in the class would not have been clear from documents in their files – they were

25   explicitly excluded from the definition because they either (1) did not have a pending immigration case that prevented their removal or (2) had been detained for

26   less than 180 days, *see* Dkt. 281-3 at ¶¶ 22-25. The inclusion of those individuals

27   thus does not explain why Respondents produced information about groups of people they claim were not in "removal proceedings."

28

detention without bond hearings likely unconstitutional, even for people who have administratively final removal orders and whose only avenue to prevail requires success on an application for a limited form of relief. *See Diouf II*, 634 F.3d at 1092 ("We hold that an alien facing prolonged detention under Section 1231(a)(6) is entitled to a bond hearing").

Respondents argue that the issues in such cases would be different from those presented here because the individuals concerned are not lawful permanent residents, Dkt. 340 at 7, but, as this Court and the Ninth Circuit have *repeatedly* held, if the statutes under which they are detained also permit the detention of lawful permanent residents, then the Court must construe the statute to avoid the constitutional problems arising from the prolonged detention of lawful permanent residents. *See, e.g., Diouf II*, 634 F.3d at 1088-89; *Nadarajah*, 443 F.3d at 1077-78. Respondents never contend that the individuals at issue are detained under any statute other than the four that define the subclasses, all of which already have been construed to require bond hearings – Sections 1225(b), 1226(a), 1226(c), and 1231(a). And in other contexts, Respondents have admitted that one of these statutes must govern detention in the cases at issue here.[5]

*    *    *

The Court thus should reject Respondents' narrow interpretation of the phrase "removal proceedings" because it conflicts with the INA, the plain text of the class definition, past practices and statements by Respondents, this Court, and

---

[5] For at least some individuals subject to reinstatement proceedings, the government has already stated that they are detained under Section 1226(c), *see* Dkt. 302 at 2 ("while his immigration proceedings are ongoing, Galvan-Avila is subject to mandatory detention under 8 U.S.C. 1226(c)."). For individuals detained under Section 1228(b), one would expect the same given that they are, by definition, charged as aggravated felons. Whether or not that is correct, however, there can be no dispute that one of the four detention statutes unquestionably included in the class definition must govern all of these cases.

the Ninth Circuit, and the rationale for certifying this class action.

## II.   THE CLASS INCLUDES INDIVIDUALS DETAINED AFTER BEING ADMITTED UNDER THE VISA WAIVER PROGRAM.

Respondents' next attempt to exclude individuals from the class rests on the flawed assertion that people who entered under the Visa Waiver program are not detained under one of the general detention statutes.  Dkt. 340 at 5-6. Respondents contend that individuals admitted under the Visa Waiver program are detained under 8 U.S.C. § 1187, and appear to treat one BIA decision on that issue as dispositive of this Court's ability to oversee these class members' proceedings. *See* Dkt. 340 at 6 ("Petitioners do not contest the Board's authority to interpret the INA"), *citing Matter of A-W-*, 25 I&N Dec. 45 (BIA 2009).  But in doing so they ignore that the BIA's decision makes no mention of *prolonged* detention, and that, to the extent it could be read to authorize such detention, it would be irreconcilable with the Supreme Court's decision in *Clark v. Martinez*, 543 U.S. 371 (2005) and various other decisions requiring Congress to speak clearly when authorizing prolonged detention.  *See* Dkt. 336-1 at 15 (citing *Clark*); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1076-77 (9th Cir. 2006) (requiring clear statement before interpreting statute to authorize indefinite detention).  In any event, this Court, the Ninth Circuit, and the Supreme Court have rejected the BIA's constructions of detention statutes when they raise serious constitutional problems.  *See, e.g.*, *Diouf II*, 634 F.3d at 1090 ("We may not defer to DHS regulations interpreting § 1231(a)(6), however, if they raise grave constitutional doubts."); *Ma v. Ashcroft*, 257 F.3d 1095, 1105 n.15 (9th Cir. 2001) ("Chevron principles . . . are not applicable where a substantial constitutional question is raised by an agency's interpretation of a statute it is authorized to construe.").  And the Ninth Circuit has treated questions arising from prolonged detention as distinct from questions concerning detention authority generally, given the liberty interests at stake.  *See, e.g.*, *V. Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (requiring bond

1    hearings for prolonged detention cases to place burden of proof on government by
2    clear and convincing evidence, notwithstanding regulations, because no "statutory
3    or regulatory authority specifies the appropriate standard of proof at a *Casas* bond
4    hearing").  In light of this governing law, the BIA's decision does not provide
5    support for the view that Section 1187 clearly authorizes prolonged detention.  As
6    such, these individuals' detention is governed by one of the four general detention
7    statutes – Section 1226(a) or 1226(c), if their criminal history triggers application
8    of that provision.

9         Finally, in a footnote, Respondents claim that individuals who entered under
10    the Visa Waiver program are, by definition, never in "removal proceedings" but
11    instead in "limited proceedings," and that they should be denied the benefits of
12    class membership for that reason.  Dkt. 340 at 5 n.2.  But the provision they cite for
13    that assertion never uses either the term "removal proceedings" or "limited
14    proceedings."  Respondents' argument also is erroneous for the reasons set forth
15    above and in Petitioner's opening brief about the broad meaning of "removal
16    proceedings" in the class definition:  if proceedings exist for the purpose of
17    removing individuals from the United States, they are "removal proceedings" for
18    purposes of the class definition.

19         Finally, Petitioners note that Respondents' argument, which purports to
20    discover yet another justification for excluding people from the ambit of the class
21    definition despite the absence of any clear language supporting that position,
22    underscores the importance of Petitioners' request for relief.  Petitioners ask not
23    only that this Court rule that the three groups of individuals at issue here be
24    deemed class members, but also that the Court require Respondents to provide the
25    Court and class counsel prior notice before unilaterally excluding other prolonged
26    detainees from the benefits of class membership in the future.  *See* Dkt. 336-2
27    (proposed order requiring Respondents to notify Court and Petitioners' counsel
28    upon determination that certain individuals are not class members).  Such an order

is critical to ensure that all class members will have an opportunity to assert their entitlement to the basic protections guaranteed them by this Court's orders.

## CONCLUSION

Petitioners respectfully request that this Court to affirm that the three groups of individuals at issue here (prolonged detainees incarcerated for reinstatement of removal proceedings under Section 1231(a)(5), administrative removal proceedings under Section 1228(b), and individuals detained after entering under the Visa Waiver program) remain class members. Petitioners also respectfully request that the Court require Respondents to notify the Court and class counsel prior to unilaterally excluding other groups of presumptive class members (as defined in the proposed order) from the class. *See* Dkt. 336-2. Unfortunately, such an order is warranted to ensure that all class members will have an opportunity to assert their entitlement to the basic protections guaranteed them by this Court's orders, including its preliminary injunction ruling. Therefore, Petitioners respectfully request that the Court clarify the class definition and grant such other relief as set forth in Petitioners' proposed order.

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated: May 20, 2013            /s/ Ahilan Arulanantham
                              AHILAN ARULANANTHAM
                              Counsel for Petitioners