STUART F. DELERY
Acting Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
THEODORE W. ATKINSON
United States Department of Justice
Office of Immigration Litigation,
    P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
    Phone: (202) 532-4135
    theodore.atkinson@usdoj.gov
SARAH S. WILSON
Trial Attorney

Attorneys for Respondents

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*, <br><br> Petitioners, <br><br> vs. <br><br> TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director, et al.*, <br><br> Respondents. | Case No. CV 07-3239-TJH (RNBx) <br><br> **DECLARATION OF THEODORE W. ATKINSON** |

I, THEODORE W. ATKINSON, declare as follows:

1.    I am a trial attorney with the United States Department of Justice, Office of Immigration Litigation. I am lead counsel in this action. I make the following declaration in support of Respondents' contentions with respect to the Joint Stipulation contemporaneously filed by the parties concerning Petitioners' motion to compel and alternative motion to reopen discovery.

2. In conjunction with Petitioners' motions, the parties met and conferred by telephone on May 28, 2013. Sarah S. Wilson, another trial attorney on this action and I participated for Respondents. During that conference call, counsel for Petitioners stated that they intended to seek a motion to compel information to support their request for information substantiating my answer to a question posed by Judge Wardlaw at oral argument on Respondents' appeal of this Court's preliminary injunction. That oral argument occurred on March 4, 2013. During the conference of counsel, counsel for the Petitioners, Michael Kaufman, stated that Petitioners' motion would be based on their view that Respondents were required to produce information under the initial disclosure requirements of Rule 26(a)(1). I expressed deep skepticism regarding their theory, but asked if they would be willing to agree to our producing information in exchange for an agreement over their narrowed use. Counsel for Petitioners, in my estimation, appeared to balk at several of my suggestions. Nevertheless, I informed him that I may approach Respondents to determine if they were interested in producing the requested information under a narrowed agreement. Respondents ultimately decided not to try and reach an agreement with Petitioners.

3. At no time during the conference call among counsel did counsel for Petitioners raise or discuss the possibility of seeking a motion to reopen discovery. On May 31, I wrote the following brief e-mail message to Mr. Kaufman: "We will oppose your motion to compel, which you have informed us is predicated on the argument we are required to produce the information sought in your March letter to substantiate our response to Judge Wardlaw's question under Rule 26(a)(1)." Mr. Kaufman responded later that day by stating that they would send a stipulation on the following Tuesday, and later that day responded to my e-mail again by writing that he wished to "clarify that we will be seeking one additional category of information . . .: whether the detainee bonded out from detention, the date on which the bond was posted, and the date of the detainee's release. As we discussed on the call, we need this information to determine the number and percentage of people who have bonds set, but who are

1  unable to pay that bond amount and remain detained." At no time did Mr. Kaufman
2  indicate that Petitioners' motion was based on anything other than Rule 26(a)(1), nor
3  did Mr. Kaufman indicate that Petitioners would be seeking a motion to reopen.
4  4.     In the months after the preliminary injunction took effect, Petitioners have on a
5  handful of occasions contacted me to raise a concern about purported non-compliance
6  with the preliminary injunction. Of those complaints, Petitioners raised only one
7  complaint that a detainee clearly and indisputably entitled to a bond hearing under the
8  injunction had not received one. However, as I later informed Petitioners – and as Mr.
9  Kaufman concedes in his declaration – before I could contact my client to address the
10 error, the immigration court realized its error and scheduled a bond hearing, unaware
11 that Mr. Kaufman had contacted me. Thus, while Petitioners can cite only one
12 instance where there was an initial failure of compliance, the immigration court
13 realized its error on its own accord and scheduled a bond hearing under the injunction.
14 5.     Apart from this one instance, every other complaint raised by Petitioners has
15 been tangentially related, or entirely unrelated, to compliance with the injunction.
16 Specifically:
17     (1) Petitioners have argued that certain categories of aliens fell under the
18 injunction – aliens detained after a final order of removal had been reinstated, but who
19 were then placed in withholding only proceedings, and aliens whose admittance and
20 presence is generally governed by the Visa Waiver Program. Despite now
21 complaining that Respondents' position that such aliens fall outside the class,
22 Petitioners never sought a motion for enforcement or an order to show cause for
23 contempt, but instead filed a motion to clarify the class certification order with the
24 district court to resolve this dispute. That motion remains pending.
25     (2) As detailed in the attached letter as Exhibit A, Petitioners complained that
26 certain immigration attorneys were being denied requests to enter a limited
27 appearance on behalf of a detainee solely for the purpose of the bond hearing.
28 Limited appearance is disfavored in immigration courts, as indicated in the
   immigration court manual. I asked counsel for Petitioners to detail the instances when

3

attorneys were denied limited appearance. Counsel for Petitioners could identify exactly one such instance. When I investigated whether the immigration judge in that case had, in fact, denied a motion for limited appearance, I discovered that Petitioners' accusation was groundless, and informed them that no request for limited appearance had been denied, as they had suggested. Petitioners never directly disputed our response.

(3) As detailed in the attached letter as Exhibit A, Petitioners also complained that a particular immigration judge, Judge Munoz, was indiscriminately denying pro se litigants any bond. Although counsel for Petitioners for the ACLU, Ahilan Arulanantham, informed me that attorneys on their litigation team had heard such accusations from immigration counsel, and was not personally aware that Judge Munoz had denied bond for all pro se detainees, he requested that we investigate the matter and report back to him, preferably with documentary evidence to rebut their belief that Judge Munoz was not complying with the district court's injunction. I investigated the matter and was satisfied that Judge Munoz had, in fact, granted pro se litigants bond under the injunction, but declined to provide documentary evidence of that fact to counsel for Petitioners. Respondents never again visited the issue with counsel for Respondents.

(4) On the most recent occasion, counsel for Petitioners, Mr. Kaufman and Mr. Arulanantham, contacted me by telephone to request that I contact the immigration court to determine whether a particular motion to withdraw had been entered, or if an order had been entered in absentia against a detainee, because the detainee's counsel was out of town and had a scheduling conflict. When I informed counsel for Petitioners that I would not and could not contact the immigration court to intervene on behalf of an immigration attorney for one of their clients, and pointed out that he could just as easily contact the court, counsel for Petitioners accused me of misleading them, and threatened to take action in this Court or in immigration court on the basis that I had given Petitioners "assurances" that the immigration attorney's motion for limited appearance had been granted. I refuted their version, and identified my e-mail

4

in which I made no such assurance, as I had been accused. Counsel for Petitioners made no further accusations that I misled them, nor did they further accuse Respondents of violating the injunction.

I declare under penalty of perjury that the foregoing is true and correct.

Date: June 17, 2012        */s/ Theodore W. Atkinson*
                           THEODORE W. ATKINSON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A



**U.S. Department of Justice**

Civil Division
Office of Immigration Litigation
District Court Section

_____

*Box 868, Ben Franklin Station*
*Washington, DC 20044*
*Tel.:(202) 532-4700*

March 22, 2013

**BY E-MAIL**

Ahilan T. Arulanantham
Michael Kaufman
ACLU Foundation of Southern California
1616 Beverly Boulevard
Los Angeles, CA 90026

      RE:    *Rodriguez v. Robbins*, No. CV 07-3239-TJH (RNBx) (C.D. Cal.)

Ahilan and Michael,

We are in your receipt of your letter of March 12, 2013.  I write to respond to that letter.

You have asked us to provide you with detailed information regarding the outcomes of bond hearings held under the preliminary injunction entered in this case.  Specifically, you seek, for every *Rodriguez* bond hearing held, (1) each detainee's name and A number; (2) the date of the bond hearing for each detainee; (3) the name of the presiding immigration judge for each bond hearing; (4) the outcome of each bond hearing, specifically, the bond amount set (if any), and the identification of other release conditions; (5) information about the attorney (if any) representing each detainee at each hearing; and (6) contact information for each detainee.

You claim that this is a renewed request, based on correspondence from you on October 23, 2012, and on January 25 and February 19 of this year.  You made this request, according to your most recent letter, "because of concerns that we have that Respondents are not fully complying with the order."  You also seem to suggest that by answering a question at oral argument in our appeal we are somehow obligated to provide you with this information.

We decline your request for this information for several reasons.

First, your suggestion that we are somehow obligated to provide you with the detailed information you seek based on what transpired at oral argument is not well-grounded.  I was asked a direct question by Judge Wardlaw as to how many bond hearings had occurred, and how many aliens received bond.  As you well recognize, I was required to respond fully and accurately to Judge Wardlaw's question, to the best of my knowledge, as part of my ethical obligation of candor to the Court.  Respondents otherwise have not sought to make that information part of the briefing on appeal, the basis for any claim on appeal, or otherwise inject that information into the record.  Regardless, the representation made in response to Judge

Wardlaw's questions does not entitle you to detailed information regarding each bond hearing under the preliminary injunction. Your letter does not persuade us to the contrary.

Second, your stated concern that Respondents are "not fully complying with the order" is unaccompanied by any specifics, and merely cites to past correspondence. None of your previous correspondence raises serious concerns that Respondents are not complying with the injunction. With respect to the issues raised in the past correspondence, we do not think your incorporation of those discussions by reference satisfy your obligation to confer in good faith about those issues under Local Rule 37-1.

This is well-covered ground at this point. Your October 23, 2012, correspondence raised a concern that one immigration judge – Immigration Judge Sholomson – had denied one immigration attorney – Victor Nieblas – a request for a limited appearance in one case – the Posada Flores case. Of course, as we explained in response to that correspondence, whether an immigration judge may deny a request for limited appearance is a matter addressed in the immigration court procedures, and any disagreement with an immigration judge's ruling on such a request does not raise concerns about compliance with the injunction. You did not then and have not since explained how the denial of a request for a limited appearance violates the preliminary injunction in this action. In any event, as I informed you, your assertion that Judge Sholomson had denied the request for a limited appearance was incorrect: Judge Sholomson had *not* denied Mr. Nieblas's request for limited appearance. Moreover, your claim was undercut by the fact that Michael Kaufman wrote that Judge Sholomson had *granted* Mr. Kaufman limited appearance in a different case the day before. While we appreciate your efforts to go to bat for Mr. Nieblas by making an appeal to our office to look into the matter, your concern about his request for limited non-appearance did not amount to a serious claim of non-compliance.

You brought up the matter with Mr. Nieblas again on February 19, 2013. You e-mailed me, stating that there was an urgent matter because Mr. Nieblas, who was out of town, had a concern that his request for a limited appearance had not been granted, and Posada Flores had a hearing the next day that Mr. Nieblas would not be able to attend. You informed us that "Mr. Nieblas is currently out of town, and will not be able to appear at the hearing. Mr. Nieblas contacted us, understandably concerned that it appears that the court had not in fact accepted his limited appearance, and that he is now obligated to appear at tomorrow's hearing or risk that his former client could be ordered removed in abstentia [sic]."

In the ensuing correspondence, you incorrectly claimed that I had, back in October 2012, "assured" you Judge Sholomson had *granted* Mr. Nieblas's request for limited appearance. When I asked you to show me where I ever made such a representation, you responded by reluctantly admitting that while I had not said it had been *granted*, I represented that the request had not been *denied*, which, according to your logic, necessarily meant that if it had not been *denied*, it must have been *granted*. I made the obvious response that that there was, of course, a third option, one that happens all the time with courts at all levels: the judge had simply not acted on Mr. Nieblas's request. Indeed, this appears to have been a possibility contemplated by Mr. Nieblas, who filed a motion to withdraw *after* I informed you the request for limited appearance had not been denied. During our telephone call on February 19, you asked me if I would call you after the hearing in the Posada Flores case and let you know if an *in absentia*

order was entered against Posada Flores.  I told you I could not and would not get involved with day-to-day matters in a particular removal case, as this is not my proper role.  In any event, Mr. Nieblas was perfectly capable of following up on this routine matter himself.  The issues you raise have no nexus to Defendants' compliance with the preliminary injunction.

Additionally, there is the matter of your complaints, raised in your January 25, 2013 correspondence, about the way in which Judges Ho and Munoz have conducted *Rodriguez* bond hearings.  You voiced particular complaints about Judge Munoz, and leveled an accusation – one that you claim you heard from immigration attorneys who have cases before her – that Judge Munoz was not granting bond at *Rodriguez* bond hearings to *pro se* detainees.  You asked us to look into this matter and provide you with information about whether she has granted bond to *pro se* detainees in hearings held under the preliminary injunction.  While we declined to provide you with detailed information from EOIR's CASE database, our office did investigate your accusation with EOIR, and we later confirmed that Judge Munoz had granted bond to *pro se* detainees at *Rodriguez* hearings, and informed you that your claims about the behavior of immigration judges was, once again, incorrect.

This office has responded to every specific claim you have made regarding purported non-compliance with the preliminary injunction – no matter how doubtfully or clearly unrelated to the injunction your claims were.  Each of your claims has proven baseless.  Contrary to your repeated claims of non-compliance, both EOIR and DHS have gone beyond the requirements of the preliminary injunction by regularly providing you with notices of upcoming *Rodriguez* hearings.  And as we have repeatedly offered, if you provide us with *specific* instances of non-compliance, we will endeavor to address those.

We are not persuaded that my brief answers to Judge Wardlaw's questions entitle you to the detailed information you seek.  Nor are we moved to undertake the burden of compiling detailed bond related information in response to yet another round of vague accusations of non-compliance.

    Regards,

    */s/ Theodore Atkinson*

    Theodore W. Atkinson
    Office of Immigration Litigation

cc:  Sarah S. Wilson