1  AHILAN T. ARULANANTHAM (SBN 237841)
   aarulanantham@aclu-sc.org
2  MICHAEL KAUFMAN (SBN 254575)
   mkaufman@aclu-sc.org
3  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West 8th Street
4  Los Angeles, CA  90017
   Telephone: (213) 977-5211
5  Facsimile: (213) 977-5297

6  *Attorneys for Petitioners*
   (Additional Counsel listed on following page)

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10 ALEJANDRO RODRIGUEZ,           ) Case No. CV-07-3239-TJH (RNBx)
   ABDIRIZAK ADEN FARAH,          )
11 YUSSUF ABDIKADIR, ABEL PEREZ   ) **MEMORANDUM OF POINTS**
   RUELAS, JOSE FARIAS CORNEJO,   ) **AND AUTHORITIES IN**
12 ANGEL ARMANDO AYALA, for       ) **SUPPORT OF PETITIONERS'**
   themselves and on behalf of a class of ) **MOTION FOR COMPLIANCE**
13 similarly-situated individuals, )
                                  ) Honorable Terry J. Hatter
14        Petitioners,            )
                                  ) DATE:  November 11, 2013
15        v.                      ) TIME:   Under Submission
                                  ) PLACE:  Courtroom 17
16 ERIC HOLDER, United States Attorney )
   General; JANET NAPOLITANO,     )
17 Secretary, Homeland Security;  )
   THOMAS G. SNOW, Acting Director, )
18 Executive Office for Immigration )
   Review; TIMOTHY ROBBINS, Field )
19 Office Director, Los Angeles District )
   Immigration and Customs Enforcement; )
20 WESLEY LEE, Officer-in-Charge, Mira )
   Loma Detention Center; et al.; )
21 RODNEY PENNER, Captain, Mira   )
   Loma Detention Center; SANDRA  )
22 HUTCHENS, Sheriff of Orange County; )
   OFFICER NGUYEN, Officer-in-    )
23 Charge, Theo Lacy Facility; CAPTAIN )
   DAVIS NIGHSWONGER, Commander, )
24 Theo Lacy Facility; CAPTAIN MIKE )
   KREUGER, Operations Manager, James )
25 A. Musick Facility; ARTHUR     )
   EDWARDS, Officer-in-Charge, Santa )
26 Ana City Jail; RUSSELL DAVIS, Jail )
   Administrator, Santa Ana City Jail, )
27                                )
          Respondents.           )
28

1    JUDY RABINOVITZ
      JRabinovitz@aclu.org
2    AMERICAN CIVIL LIBERTIES FOUNDATION
      IMMIGRANTS' RIGHTS PROJECT
3    125 Broad Street, 18th Floor
      New York, NY  10004
4    Telephone: (212) 549-2618
      Facsimile: (212) 549-2654
5
      MICHAEL TAN (SBN 284869)
6    mtan@aclu.org
      AMERICAN CIVIL LIBERTIES FOUNDATION
7    IMMIGRANTS' RIGHTS PROJECT
      39 Drumm Street
8    San Francisco, CA 94111
      Telephone:  (415) 343-0779
9    Facsimile:  (415) 395-0950

10   JAYASHRI SRIKANTIAH (SBN 189566)
      jsrikantiah@law.stanford.edu
11   STANFORD LAW SCHOOL
      IMMIGRANTS' RIGHTS CLINIC
12   Crown Quadrangle
      559 Nathan Abbott Way
13   Stanford, CA  94305-8610
      Telephone: (650) 724-2442
14   Facsimile: (650) 723-4426

15   SEAN COMMONS (SBN 217603)
      scommons@sidley.com
16   SIDLEY AUSTIN LLP
      555 West Fifth Street, Suite 4000
17   Los Angeles, CA  90013-1010
      Telephone: (213) 896-6000
18   Facsimile: (213) 896-6600

19   Attorneys for Petitioners

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................1

ARGUMENT .........................................................2

    I.    Respondents Must Comply with this Court's Order Requiring Improved Notice. ................................................2

        A.    This Court Granted Petitioners' Request for Improved Notice for Bond Hearings. ......................2

        B.    Respondents Have Refused to Comply with this Court's Order Requiring Improved Notice Consistent with Due Process. ........................................5

    II.    Respondents Have Violated the Permanent Injunction by Unilaterally Narrowing the Class Definition Without Justification for the Fourth Time Without Notice to Petitioners or the Court. ........................................7

        A.    The Court Previously Rejected Respondents' Unilateral Exclusion of Three Groups of Class Members From the Class Definition. ....................7

        B.    Respondents Have Unilaterally Excluded a Fourth Group of Persons from the Class Without Advance Notice to Petitioners or the Court. .............9

    III.    This Court Should Order Respondents to Disclose Sufficient Information to Permit Petitioners to Monitor Respondents' Compliance with the Permanent Injunction. ..............14

        A.    Petitioners Have Attempted to Monitor Respondents' Compliance, but Cannot Do So With the Limited Information Disclosed by Respondents. ..............16

        B.    This Court Should Order the Disclosure of Sufficient Information to Monitor Respondents' Compliance. ........................................19

CONCLUSION ......................................................22

i

# TABLE OF AUTHORITIES

**CASES**

*Cottone v. Reno*,
   193 F.3d 550 (D.C. Cir. 1999) ...................................................................21

*Detroit Free Press v. Ashcroft*,
   303 F.3d 681 (6th Cir. 2002)...................................................................21

*Prieto-Romero v. Clark*,
   534 F.3d 1053 (9th Cir. 2008)........................................................11, 12, 13

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013)..............................................................*passim*

*V. Singh v. Holder*,
   638 F.3d 1196 (9th Cir. 2011)...............................................................3, 4, 20


**STATUTES**

8 U.S.C. § 1231(a)(1)...................................................................12

8 U.S.C. § 1231(a)(1)(B) ...................................................................12


**OTHER AUTHORITIES**

8 C.F.R. § 1240.9...................................................................21

Fed. R. Civ. P. 26...................................................................18

Oral Argument, *Rodriguez v. Robbins*, No. 12-56734,
   http://cdn.ca9.uscourts.gov/datastore/ media/2013/03/04/12-56734.wma.........18

# INTRODUCTION

Respondents have failed to comply with the Court's summary judgment order (the "Order"), *see* Dkt. 353, requiring Petitioners to now return to this Court to compel compliance in two significant respects.

*First*, Respondents have flatly refused to comply with the Order's requirement that Respondents provide a "plain language" notice to class members of bond hearings scheduled pursuant to the Court's Order. Despite the fact that the sufficiency of Respondents' existing notice procedures was disputed in the parties' cross-motions for summary judgment, and this Court specifically found that "Petitioners' request" for improved notices is consistent with Ninth Circuit case law and ordered that such "notice must be provided to detainees," *id.* at 4, Respondents have refused to revise their notices. Respondents' position is indefensible, and this Court should compel Respondents to provide a notice that satisfies due process.

*Second*, Respondents have again unilaterally excluded certain class members from the benefits of class membership – the fourth group of class members they have exempted from the class without leave of the Court since the Court's preliminary injunction ruling. This time Respondents seek to exclude individuals who have lost before the Board of Immigration Appeals ("BIA"), but who are still within the time available for seeking review to the Ninth Circuit. Respondents did not notify Petitioners of this latest carve-out, even though this Court's Order rejected Respondents' three prior carve-outs as improper and specifically requires Respondents to notify class counsel of any carve-outs in order to avoid delays in correcting such misconduct. Instead, Respondents acknowledged the existence of this fourth carve-out only after counsel for Petitioners learned of it through conversations with members of the private bar. Because this Court has already made clear that there are no implied exceptions to the class definition, the Court should order Respondents to provide hearings to these class members.

1       *Finally*, in light of Respondents' pattern of noncompliance, Petitioners

2   respectfully request that this Court require Respondents to disclose certain

3   electronic and court records relating to the bond hearings conducted pursuant to

4   this Court's orders.  The Order currently imposes limited reporting requirements

5   on Respondents, but Petitioners' experiences over the last few months have made

6   clear that Petitioners lack sufficient information to meaningfully monitor

7   Respondents' conduct to properly identify noncompliance.  Class counsel

8   discovered all four of the improper carve-outs from the class definition solely

9   through their personal efforts, not through the limited reporting by Respondents.

10  Because the additional information Petitioners seek is necessary to ensure that

11  Respondents have not committed, and do not commit, further violations of this

12  Court's orders, this Court should modify the reporting requirements to order the

13  production of this additional information.

14                            **ARGUMENT**

15  **I.**    **Respondents Must Comply with this Court's Order Requiring**

16         **Improved Notice.**

17      In its Order granting Petitioners' motion for summary judgment, this Court

18  specifically granted Petitioners' request for improved notice and ordered that

19  Respondents issue a "plain language" notice to advise class members of their bond

20  hearings.  Yet Respondents have taken the position that their existing notice

21  procedures meet this requirement.  That claim cannot be reconciled with the

22  parties' positions on summary judgment and the terms of the Order.

23         **A.**    **This Court Granted Petitioners' Request for Improved Notice for**

24              **Bond Hearings.**

25      In their summary judgment motion, Petitioners sought improvements to the

26  existing notice procedures for prolonged detention bond hearings, along with

27  various other changes.  *See* Dkt. 281 at 26 (seeking certain protections "*[i]n*

28  *addition* to the protections already required under the Ninth Circuit's decisions in

*Casas*, *Diouf II*, and *V. Singh*." (emphasis added)).  In this regard, Petitioners sought different relief than that provided by the preliminary injunction, which only required bond hearing procedures identical to those which apply in *Casas* and *Diouf* hearings.  *See* Dkt. 255 (order granting preliminary injunction); Petitioners-Appellees' Ans. Br. at 3 n.1, *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013), Dkt. 16 (explaining that Petitioners sought protections currently required by existing Ninth Circuit case law, but that "Petitioners will shortly move for summary judgment to seek complete relief on behalf of all class members, including greater procedural protections at bond hearings for those who already receive them").

In particular, Petitioners argued that Respondents should provide more robust notice more robust than that currently given for *Casas* hearings.  *See* Dkt. 281 at 40-45.  As Petitioners explained in their motion, Respondents' notice procedures for *Casas* "fall far short of clarity, particularly for the substantial number of detainees who lack counsel and do not speak English or are illiterate." *Id*. at 42; *see also id*. at 41-43 (citing evidence that substantial numbers of class members are not proficient in English or are illiterate, lack sufficient access to law libraries and legal materials, and go unrepresented).  In support of their claim for improved notice, Petitioners attached Respondents' existing notice for *Casas* hearings and explained that it "neither sufficiently advises detainees of how to request a hearing nor clearly tells them that they must prepare for it by submitting the necessary legal arguments and evidence."  *Id*. at 44; *see also id*. at 40 ("Respondents' notice neither adequately informs detainees how to request the hearing nor tells them what the hearing entails."); *id*. at 43-44 (arguing that the notice's citation to the Immigration Court Manual is of little help to detainees).  In sum, Petitioners argued that Respondents' failure to provide a "plain language" explanation of the bond hearing process and detainees' rights, including the right to present evidence, raises due process concerns because "[d]etailed documentary and

testimonial evidence 'can be critically important to establishing a client's fitness for release and to obtaining a reasonable bond amount.'" *Id.* at 44 (citation omitted).

In their cross-motion for summary judgment, Respondents specifically opposed Petitioners' request for a "plain language" notice. *See* Dkt. 299 at 40, 50-53 ("The Court should also reject Petitioners' request that the Court order Respondents to provide notice of eligibility for *Casas* hearings in 'plain language' . . . ."); Dkt. 330 (opposing Petitioners' request for the "provision of 'plain language' notice of such automatic hearings"). Respondents defended their existing notice procedures at length, disputing Petitioners' evidence that class members suffer from illiteracy, limited English proficiency, and restricted access to legal materials, and contesting Petitioners' argument that class members could not "understand the procedures for a bond hearing set in the Immigration Court Manual" because, Respondents argued, its "language is not 'highly technical.'" *Id.* at 66-67.

In its Order, this Court unambiguously granted Petitioners' request for improved notice. The Court began by observing that Petitioners had requested "four additional procedural safeguards" beyond "the procedural requirement for a *Casas* bond hearing," including that "the notice of the hearing be provided to each detainee in plain language, reasonably calculated to inform a person unfamiliar with the English and the United States legal system of the pendency of the hearing." Dkt. 353 at 3-4. The Court concluded that "Petitioners' request that . . . the notice to detainees of the bond hearings be provided in plain language [is] consistent with the due process concerns of *Casas*, *Singh*, and *Rodriguez II*," and "[a]ccordingly, comprehendible notice must be provided to detainees for that notice to pass constitutional review." *Id.* at 4. The Court then specifically ordered Respondents to "provide written notice, in plain language, to the detainee of his or her upcoming bond hearing." *Id.* at 5.

**B.    Respondents Have Refused to Comply with this Court's Order Requiring Improved Notice Consistent with Due Process.**

Despite this Court's clear orders, Respondents refuse to alter their existing notice procedures.  Respondents stand in willful defiance of this Court's Order.

Following the issuance of the Order, the parties agreed to negotiate a revised notice that complies with this Court's Order.  However, Respondents subsequently changed course and refused to negotiate, claiming that they were under to no obligation to change the notice procedures that this Court found deficient.[1] Respondents claim that the sufficiency of the current notice was not before this Court at summary judgment because Respondents currently use a different form of notice for *Rodriguez* hearings than for *Casas* hearings.  This argument is a non sequitur.  At summary judgment, *Casas* provided the legal framework for evaluating the prolonged detention of class members.  As a result, the parties

---

[1] Following the issuance of the Order, the parties met and conferred by phone on August 30, 2013.  Kaufman Decl. ¶ 11.  The parties agreed to negotiate a revised notice, although Respondents did not concede that the Court's Order required any such change.  The parties further agreed that counsel for Petitioners would prepare the initial draft, which the parties would then use as the basis for further negotiations.  *Id.* at ¶ 12.  On September 10, 2013, class counsel provided Respondents with a draft revised notice, and requested that Respondents provide their position by September 17 to ensure that, if necessary, the matter would be timely resolved by this Court.  *Id.* at ¶ 15.  On September 12, 2013, Respondents stated that they were reviewing the draft notice and insisted that Petitioners had to complete the negotiations before bringing the matter to the Court's attention.  *Id.* (claiming a motion would be "premature").

Shortly thereafter, Petitioners learned that Respondents never intended to comply with the notice requirements of the Order or negotiate the contents of a revised notice.  In a September 18, 2013 email, Respondents abruptly announced that they would not engage in negotiations over a revised notice, asserting that the existing notice was entirely sufficient.  Respondents provided no explanation for why they previously agreed to negotiate a draft revised notice and had threatened to oppose a motion concerning the notice as "premature" unless the parties completed negotiations.  *See* Kaufman Decl. at ¶¶ 16-17.

necessarily focused their briefing on the sufficiency of the *Casas* procedures, rather than the temporary procedures adopted by Respondents under the preliminary injunction (or any anticipated procedures adopted under the permanent injunction).  Petitioners had no way to predict the precise form of notice Respondents would adopt, which is why Petitioners asked this Court to set certain minimum requirements for any such notice.

Equally important, the notice currently provided for *Rodriguez* hearings is even *more* deficient than the *Casas* notice Petitioners challenged at summary judgment.  Similar to the *Casas* notice, the current *Rodriguez* notice is not written in "plain language," and does not explain "what the [bond] hearing entails" or that class members "must prepare for it by submitting the necessary legal arguments and evidence."  Dkt. 281 at 40-44.  *Compare* Kaufman Decl. Ex. J (*Rodriguez* notice) *with id*. Ex. I (*Casas* notice).  The *Casas* notice actually contains *more protections* than the *Rodriguez* notice because it includes a reference to the Immigration Court Manual chapter on bond hearings, which provides some – albeit limited – information on the hearing process and about detainees' rights.  It is also discloses ICE's purported basis for ordering detention, which can provide recipients with notice of at least some of the factors (including danger and flight risk) that will be considered in evaluating fitness for release.

By contrast, the *Rodriguez* notice omits even these minimal protections; it contains no meaningful information other than the timing and location of hearings.  *See* Kaufman Decl. Ex. J (current notice samples).  Respondents cannot explain how a notice that contains *fewer* protections than the *Casas* notice could possibly comply with this Court's Order requiring a notice with *more* protections than the *Casas* notice.

Consequently, Petitioners respectfully request that this Court direct

Respondents to implement the revised notice submitted by Petitioners for bond

hearings conducted under the Order. *See* Proposed Order.[2]

**II. Respondents Have Violated the Permanent Injunction by Unilaterally Narrowing the Class Definition Without Justification for the Fourth Time Without Notice to Petitioners or the Court.**

For the fourth time, Respondents have unilaterally narrowed the class

definition by denying bond hearings to a group of class members who have been

detained for more than six months.  Respondents have done so without providing

any advance notice to Petitioners, as required by the Court's Order.  The Court

should clarify, once again, that the class definition does not contain implied

exclusions, direct Respondents to identify any other undisclosed exclusions, and

remind Respondents of their obligation to notify class counsel *before*

implementing new exclusions.

**A.    The Court Previously Rejected Respondents' Unilateral Exclusion of Three Groups of Class Members From the Class Definition.**

To understand the egregiousness of Respondents' conduct, it is helpful to

revisit the history of the three prior unilateral exclusions Respondents implemented

without notifying Petitioners or this Court.  In all three of these prior instances, the

Court rejected Respondents' attempt to exclude individuals from the class, and it

should do the same with Respondents' fourth attempted exclusion.

This Court entered a preliminary injunction requiring that Respondents

provide bond hearings for two subclasses on September 13, 2012.  Dkt. 255.

Shortly after the start of bond hearings pursuant to the preliminary injunction,

---

[2] In a September 18, 2013 email, counsel for Respondents also claimed that Petitioners' revised notice contained "misstatements of law."  That same day, class counsel emailed counsel for Respondents and requested that Respondents identify the misstatements so that they could remove any erroneous language from the notice they intended to submit to this Court.  To date, Respondents have not responded to this request.  *See* Kaufman Decl. at ¶ 18.

7

Petitioners became aware that certain groups of class members were systematically being treated as ineligible for bond hearings despite the preliminary injunction. Class counsel contacted Respondents about these apparent violations in November 2012. Over the following weeks and months, class counsel provided Respondents with multiple examples of class members unlawfully denied bond hearings. Following numerous additional telephone conferences and email exchanges, on approximately January 23, 2013, Respondents finally informed Petitioners that Respondents had unilaterally reclassified three groups of individuals as falling outside the class definition approved by the Court. *See* Kaufman Decl. at ¶¶ 2-6.

On April 16, 2013, the Ninth Circuit affirmed this Court's preliminary injunction order in full. *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013). Not long thereafter, the parties completed briefing on cross-motions for summary judgment. In connection with summary judgment, Petitioners also filed a motion to address Respondents' ongoing refusal to treat the three groups of class members as within the class definition. *See* Dkt. 336. Petitioners styled it as a Motion for Clarification out of concern that Respondents would continue to take the position that they had the ability to redefine the scope of the class as they saw fit without notice to Petitioners or the Court. Given the apparent "likelihood that Respondents [would] attempt to identify further individuals who do not qualify as class members," Petitioners specifically "request[ed] that the Court require Respondents to provide notice to Petitioners and the Court when they determine that other individuals are not class members despite their having been detained for more than six months without a bond hearing under the general immigration detention statutes, and do not otherwise fall within one of the three expressly enumerated exceptions in the class definition." *Id*. at 15-16.

This Court issued its Order granting in part Petitioners' motion for summary judgment and granting the motion for clarification on August 6, 2013. Dkt. 353. The Court admonished Respondents for narrowing the class definition by inventing

three exceptions to the class definition, finding that "[t]he Court provided for no exceptions to the definitions of class membership, yet Respondents have unilaterally excluded certain detainees." *Id.* at 2. The Court ordered that there "are no exceptions, express or implied, to the class membership definitions" and held that the three categories of persons excluded by Respondents always had been class members. *Id.*

To prevent similar exclusions from occurring, the Court further ordered Respondents to notify Petitioners of any additional groups of detainees that Respondents believed fell outside of the class definition, rather than deciding in secret on their own to exclude such individuals. *See id.* at 5-6 ("If Respondents determine that an individual is not a class member even though that individual (a) is detained in Respondents' custody within the Central District, (b) has been detained by Respondents for six months or longer, (c) is not detained under 8 U.S.C. § 1226a or 8 U.S.C. § 1531-37, and (d) remains detained even though the government does not have present authority to deport that individual, Respondents shall notify class counsel of that individual's circumstances and the reason Respondents believe that individual is not a class member.").

### B. Respondents Have Unilaterally Excluded a Fourth Group of Persons from the Class Without Advance Notice to Petitioners or the Court.

Since issuance of the Order, Petitioners have discovered that Respondents have been denying bond hearings to a fourth group of individuals: persons who have had lost their immigration cases at the BIA, but who remain within the 30-day window for filing a petition for review with the Ninth Circuit. As a result, Respondents have detained such individuals for longer than six months without providing them with bond hearings.

At Petitioners' insistence, the parties met and conferred by phone on August 30, 2013 to discuss this and other issues. Despite the fact that this Court specifically ordered Respondents to notify Petitioners before implementing such

exclusions, Respondents only acknowledged the existence of this exclusion after Petitioners offered evidence of its existence.  On September 18, 2013, Respondents stated that the excluded class members did not fall within the class definition because of a supposed loophole that made them subject to immediate removal during the window between when the BIA affirms an order of removal and when a class member either files an appeal to the Ninth Circuit or waives that right. Petitioners never explained why they did not simply deport these individuals given their position that they have the legal authority to do so, and they have never explained why they implemented a fourth exclusion without notifying class counsel, as required by the Order.  *See* Kaufman Decl. at ¶¶ 10-11, 16.

This latest purported exclusion from the class definition is no more defensible than the three prior carve-outs rejected by the Court in the Order.  There are at least three fatal flaws with Respondents' latest attempt to create a loophole in the class definition.  *First*, this group of individuals is not explicitly exempted from the class definition.  *See* Dkt. 111 at ¶¶ 105-08 (Third Amended Complaint); *see also* Dkt. 85.[3]  The Court has made plain that "there are no exceptions, express or implied, to the class membership definitions" (Dkt. 353 at 2), yet Respondents persist in inventing exceptions without notice to Petitioners or the Court.

*Second*, Respondents' loophole is impractical and would create deeply problematic incentives in the administration of the removal system.  Respondents contend that they can deny bond hearings to individuals whose 180th day of detention arises during the narrow gap after the BIA's decision but before the 30-

---

[3] The carve-outs are for: (1) individual "detained pursuant to the one of the national security detention statutes at 8 U.S.C. 1226a and 8 U.S.C. 1531-37"; (2) individuals subject to "a final order of removal and no stay of that removal order, such that the government has legal authority to remove them"; and (3) "juveniles … held under the care of the Office of Refugee Resettlement."  Dkt. 111 at ¶¶105-08.

day appeal period has run.  In Respondents' view, such individuals temporarily cease being class members because they allegedly become subject to immediate deportation upon the issuance of the BIA's decision, *even if* the detainee intends to file an appeal and is taking steps to appeal – including by preparing the relevant documents or attempting to obtain legal representation for an appeal – and *even if* the detainee has not yet received notice of the BIA's decision.   But such a system would force individuals and their lawyers to race to the Ninth Circuit to preserve statutorily-protected appellate rights lest DHS attempt to deport them before they could file a notice of appeal.  And such a system would be patently unfair, as individuals often do not receive actual notice of BIA's decisions for several days.[4]

Moreover, Respondents' position would routinely result in several-day gaps in class membership.  While Respondents claim that a detainee loses class member status immediately upon issuance of a BIA denial, they concede that once detainees file petitions for review and request stays of removal from the Ninth Circuit, they automatically rejoin the class.  As a result, on Respondents' view, class members routinely lapse in and out of class membership as their cases progress from the BIA to Ninth Circuit.  There is no support for such gaps in the class definition, which would result in many class members not obtaining a bond hearing until they are approaching their seventh month in detention.

*Third*, and perhaps most important, Respondents' position cannot be squared with the applicable immigration statutes as interpreted by the Ninth Circuit, and in particular *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008).  Respondents contend that they have legal authority to deport class members immediately upon

---

[4] Again, if the government's position were correct, one would expect that it would actually deport individuals during this 30-day period, and therefore that one would not typically see such individuals in detention centers, at least if they are from countries such as Mexico, El Salvador, and others to which deportations occur frequently.

11

issuance of the BIA's decision because, they assert, the statutory "removal period" begins at that time.  Under the immigration laws, the government attains authority to deport individuals in custody only after the individual is ordered removed and enters the "removal period," a 90-day period of time during which the government is mandated to "remove" the detainee from the United States.  *See* 8 U.S.C. § 1231(a)(1).  The "removal period" is statutorily defined to begin upon the "latest" of three triggering events:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

In *Prieto-Romero*, the Ninth Circuit rejected the construction of the "removal period" that Respondents put forward here.  The Ninth Circuit explained that Congress could not have intended for the removal process to operate in fits and starts depending on whether and when individuals filed petitions for review or sought stays with the Ninth Circuit:

> The provision [defining the start of the "removal period"] is inartfully drafted, as one cannot say when the "latest" of the three events will occur until those events have either taken place or it is known that they can no longer ever take place.  Consequently, the time between an alien's filing of a petition for review and this court's issuance of a stay of removal falls within a lacuna in the statutory text.  We consider it unlikely that Congress would have intended that DHS's removal efforts begin as soon as an alien's removal order is administratively final, *see* § 1231(a)(1)(B)(i), terminate when this court stays removal, *see* § 1231(a)(1)(B)(ii), and begin anew if and when we finally deny the petition for review.  The more sensible reading of the statute is that if an alien files a timely petition for review and requests a stay, the removal period does not begin until the court of appeals (1) denies the motion for a stay or (2) grants the motion and finally denies the petition for review.

*Id.* at 1259 n.5.

While the petitioner in *Prieto-Romero* had already filed a petition for review and stay of removal, the Ninth Circuit's holding and reasoning apply with equal force here.  Like an individual awaiting a decision on a stay request, class members

1   who are within the 30-day period to file a petition for review fall within the

2   "lacuna" in the statutory definition of "removal period": "one cannot say when the

3   'latest' of the three events will occur until those events have either taken place or it

4   is known that they can no longer ever take place." *Id*. at 1259 n.5.  Until the 30-

5   day period for class members to seek review in the Ninth Circuit expires, their

6   removal orders are "*administratively* -- but not *judicially* -- final" because it is

7   impossible to determine whether they will appeal and obtain stays. *Id*. at 1060

8   (emphasis in original).  Respondents' reading of "removal period" would create

9   precisely the type of unworkable scheme the *Prieto-Romero* court concluded

10  Congress could not have intended.  If Respondents were correct, removal efforts

11  should "begin as soon as an alien's removal order is administratively final,"

12  "terminate" once class members requested stays, "and begin anew if and when" the

13  Ninth Circuit denied review. *Id*. at 1259 n.5.

14          Accordingly, for the reasons identified by the Ninth Circuit in *Prieto-*

15  *Romero*, detainees who are within the 30-day window for filing an appeal to the

16  Ninth Circuit should be considered class members (i.e., not within the "removal

17  period") until they waive their right to appeal, whether affirmatively or through

18  inaction within the 30 day period.  Treating these people as class members avoids

19  the illogical result that people can fall in and out of the class during a 30-day

20  window of time, and will prevent the government from detaining class members

21  for longer than six months without bond hearings – the basic principal at the heart

22  of this Court's Order.

23          Respondents may argue that such class members should not be entitled to

24  bond hearings because some may ultimately choose not to file a petition for review

25  or may not receive a stay from the Ninth Circuit.  But these are issues that an

26  immigration judge can take into account during a bond hearing – they are not

27  reasons to categorically deny class members bond hearings outright.  In many

28  cases, class members (through counsel or in *pro per*) will be able to explain the

grounds for a petition for review and stay, which the immigration judge can weigh when deciding whether to permit release on bond.  Immigration judges routinely consider such factors when making flight risk determinations.

Finally, even if Respondents could defend their 30-day loophole, Respondents violated their obligation to notify class counsel of the exclusion of this fourth group of persons from the class.  This Court specifically ordered Respondents to notify Petitioners of any such categorical exclusions, and provide an explanation for such exclusion, to ensure that any disputes could be timely resolved.  Rather than notify Petitioners of the exclusion, Respondents asked Petitioners to produce evidence of the exclusion before confirming its existence, let alone explaining their purported rationale.  These delay tactics resulted in the unnecessary violation of numerous class members' rights.  Consequently, the Court should direct Respondents to submit a declaration from a person most knowledgeable either: (1) confirming that no other exclusions exist beyond the four identified to date by class counsel; or (2) identifying (a) each and every purported exception that Respondents believe entitle them to detain class members for longer than six month without a bond hearing, (b) the basis for each and every such exclusion, and (c) the individuals impacted by each and every such exclusion since this Court's preliminary injunction or the Order, as applicable.

**III.   This Court Should Order Respondents to Disclose Sufficient Information to Permit Petitioners to Monitor Respondents' Compliance with the Permanent Injunction.**

Given Respondents' persistent compliance problems, Petitioners respectfully request that this Court grant Respondents greater access to information needed to more efficiently and effectively monitor Respondents' compliance with the Court's permanent injunction.  Specifically, Petitioners request access to (1) a limited set of electronic database information about class members; (2) electronically-stored audio recordings of bond hearings that occurred pursuant to the Order; and

14

(3) certain class members' immigration court files.[5]  Petitioners' informal investigatory techniques have uncovered repeated instances of non-compliance, but at great expense and effort, and with no reasonable assurance that other violations have not gone undetected.  Unless the Court orders Respondents to provide the requested information, Petitioners will not be able to adequately monitor compliance, and the rights of class members will continue to be in jeopardy.

The Order currently obligates Respondents to produce certain limited information about bond hearings.  First, Respondents must provide class counsel with copies of bond hearing notices at the same time they are provided to class members.  *See* Dkt. 353 at 5.  Second, Respondents must provide status reports to the Court and class counsel that contain the following information: "each class member's name and alien number, the date of any scheduled or completed bond hearing, whether the class member is or was represented, the Immigration Judge who conducted or will conduct the hearing, the bond amount set, if any, and whether any appeal has been taken."  *Id.* at 5.[6]

While this information is helpful to confirm that bond hearings are being scheduled, Petitioners currently lack any practical means of monitoring whether (1) Respondents treat class members as ineligible for bond based on undisclosed exceptions to the class definition (either by refusing to schedule them for bond hearings, or by finding them ineligible at the hearing); or (2) Respondents conduct bond hearings in a manner that complies with this Court's Order.

---

[5] As explained below, Petitioners do not request production of every single class member's court file, but instead the right to obtain those files where review of electronically-stored information suggests a potential compliance failure.
[6] The Court stayed the reporting requirement for the duration of the partial government shutdown.  *See* Dkt. 364.

## A. Petitioners Have Attempted to Monitor Respondents' Compliance, but Cannot Do So With the Limited Information Disclosed by Respondents.

Despite repeated attempts, Respondents have refused to disclose sufficient information that would enable Petitioners to monitor Respondents' compliance with this Court's orders.

In anticipation of the start of bond hearings under the preliminary injunction, on October 22, 2012, Petitioners first contacted Respondents to request certain database information about those hearings so that Petitioners could monitor Respondents' compliance.  Respondents refused to provide the requested information, instead offering to provide copies of bond hearing notices sent to class members.  Respondents began providing such notices on November 6, 2012, after an unknown number of bond hearings already had been conducted.  *See* Kaufman Decl. at ¶¶ 2-3.

Petitioners attempted to monitor compliance with the preliminary injunction, but this proved challenging for several reasons and, as a result, Petitioners were unable to confirm Respondents' unilateral exclusions of detainees from the class definition, *see* supra Section II, until long after the fact.  *First*, Respondents routinely produced bond hearing notices only a day or two before hearings – or in numerous cases, *after* hearings had already occurred – making it impossible for counsel for Petitioners to attend hearings in person.

*Second*, even when Respondents provided sufficient advanced notice of hearings, attending in person proved unworkable.  The court scheduling system, and the sheer volume of hearings conducted (approximately four hundred between November 2012 and March 2013), impedes class counsel's ability to effectively and efficiently monitor compliance with the Order.  The immigration courts schedule bond hearings on calendars that include, in an undifferentiated fashion, numerous other unrelated hearings.  A notice might set a bond hearing, for example, on a Thursday at 8:00 a.m., but the bond hearing might not occur until

after a lunch recess.  Attending a single bond hearing thus can require waiting through hours of unrelated matters.  This challenge is compounded by the fact that multiple bond hearing can occur on the same day before different immigration judges, requiring Petitioners to marshal multiple persons to monitor hearings.

*Third*, the notices only provided information about the persons whom Respondents had initially identified as class members and scheduled for bond hearings.  Petitioners therefore had no way to monitor whether Respondents had properly identified all eligible class members for bond hearings.  Additionally, because Respondents disclosed no information about appeals of bond determinations taken by detainees or the government, Petitioners had no readily accessible means of determining the outcome of many class members' bond hearings, including the BIA's determinations regarding class eligibility and construction of the class definition.  *See* Kaufman Decl. at ¶¶ 2-5.

In the face of these difficulties, Petitioners supplemented in-person monitoring of bond hearings with informal investigation, including interviews of immigration bar practitioners and interviews of class members, all in an effort to monitor Respondents' compliance.  Through these considerable efforts, Petitioners were able to determine that Respondents had unilaterally excluded certain categories of class members from the class definition, but only after several months of investigation and meet and confers with Respondents.  During this time, Petitioners renewed their request for information that would enable them to immediately identify such improper practices.  For example, on February 19, 2013, Petitioners wrote Respondents that "we cannot be satisfied by Respondents' assurances that they intend to comply with the order.  We have received such assurances before, and yet we continue to discover ongoing cases of noncompliance."  Petitioners thus asked for "information from EOIR's bond hearing table regarding class members' bond hearings."  Respondents again refused to provide this information.  *See* Kaufman Decl. at ¶¶ 6-7.

17

1    The lack of transparency regarding Respondents' purported compliance,

2  however, grew worse.  For instance, at the Ninth Circuit hearing on Respondents'

3  appeal of the preliminary injunction, counsel for Respondent represented that

4  "[t]here have been approximately 400 bond hearing under the PI, and I believe that

5  something close to two-thirds of those aliens have been released on bond" –

6  exactly the type information that Respondents had previously refused to disclose to

7  Petitioners.   *See* Oral Argument at 33:07, *Rodriguez v. Robbins*, 715 F.3d 1127

8  (No. 12-56734), *available at* http://cdn.ca9.uscourts.gov/datastore/

9  media/2013/03/04/12-56734.wma.[7]  In light of the representation to the Ninth

10  Circuit, Petitioners again renewed their request for information about Respondents'

11  purported compliance with the preliminary injunction.  But Respondents still

12  refused, claiming the information was irrelevant.  *See* Kaufman Decl. at ¶ 8.[8]

13

---

14  [7] The Ninth Circuit relied on these statistics in its opinion upholding this Court's
15  order.  *See Rodriguez v. Robbins*, 715 F.3d 1127, 1146 n.2 (9th Cir. 2013) ("At
16  oral argument, government counsel represented that, since bond hearings began in
   mid-November of 2012, about 400 hearings have been conducted under the district
17  court's order.  Government counsel stated that about two-thirds of those hearings
   resulted in the release of the alien on bond."); *id.* at 1146 (rejecting the
18  "government's arguments regarding the resources required to implement the
19  injunction" as "not compelling" because "[h]undreds of hearings have already
   occurred under the district court's order, belying any suggestion that the
20  preliminary injunction is prohibitively burdensome").

21  [8] On June 25, 2013, Petitioners filed a discovery motion to compel production of
22  the requested database information on two grounds: (1) that Respondents had an
   obligation under Federal Rule of Civil Procedure 26 to disclose the basis for the
23  information on which they relied at the Ninth Circuit hearing; and (2) that,
   regardless of whether Rule 26 required the disclosure, the Court should order
24  disclosure of the information to ensure that Petitioners can adequately monitor
25  compliance.  *See* Dkt. 345.  On June 28, 2013, Magistrate Judge Block denied the
   motion.  Dkt. 346.  Judge Block ruled that Rule 26 did not mandate disclosure, and
26  that "[t]o the extent that Petitioners believe the information sought is necessary to
27  insure respondents' compliance with the preliminary injunction order, they should
28  take that issue up with the District Judge."  *Id.*  In light of this ruling, Petitioners

(cont'd)

At summary judgment, Petitioners sought – and obtained – certain limited database information regarding the conduct of bond hearings.  The Court's Order required Respondents to furnish the Court and Petitioners' counsel with certain information periodically: a status report with basic information about bond hearings.  *See id.* at 5 (requiring the status report to include "each class member's name and alien number, the date of any scheduled or completed bond hearing, whether the class member is or was represented, the Immigration Judge who conducted or will conduct the hearing, the bond amount set, if any, and whether any appeal has been taken").  The reports are to be made quarterly until August 2015.  Respondents already have sought and received an extension of the deadline to provide the first status report in light of the partial shutdown of the federal government.  *See* Dkt. 364.

While this information will be helpful in tracking the scheduling and outcome of bond hearing, Petitioners still remain without any readily accessible means of monitoring the conduct of the bond hearings themselves.  For the reasons described *supra*, class counsel cannot personally attend immigration proceedings to ensure ongoing compliance.  Personal attendance is incredibly expensive, and class counsel was not able to identify the violations already brought to this Court's attention despite attending numerous hearings.  The status reports will disclose data regarding bond amounts set at bond hearings, but that reveals nothing about how immigration judges arrived at decisions, including the standard applied, the evidence considered, and any legal rulings regarding eligibility for a bond hearing.

## B.    This Court Should Order the Disclosure of Sufficient Information to Monitor Respondents' Compliance.

To facilitate the essential monitoring of Respondents' conduct of bond hearings under the Court's Order, Petitioners should be granted access to three

---

elected to confirm the extent of Respondents' noncompliance with the Order and present these issues by way of this Motion.

additional sets of information.

*First*, Respondents should produce in their status reports information from electronic databases that will provide a fuller account of bond hearings conducted pursuant to the preliminary and permanent injunctions,[9] including: whether a detainee was found eligible for a *Rodriguez* hearing; the outcome of any appeal of a bond decision; whether a class member actually bonded out from detention (including the date on which the bond was posted, the date of the class member's release, and contact information for the class member and/or his attorney if Respondents possess it).  As should be clear, information related to the outcome of bond hearings and any appeals (including whether a class member is able to post bond and be released) is critical to understanding whether bond hearings are conducted in compliance with this Court's orders.  Likewise, it is essential that class counsel have contact information for class members, in the event that information reveals that their rights may have been violated.  And because all of this information is maintained in the electronic databases Respondents already will use to prepare status reports, requiring Respondents to include this information will result in no material additional burden.

*Second*, Petitioners should be granted access to electronically-stored audio recordings of class members' bond hearings that occur pursuant to the Court's orders.  Respondents routinely record immigration court proceedings, and are required to record class members' bond hearings under this Court's orders and governing case law.  *See* v. *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).  The bond audio recordings are the best evidence of what actually happens at bond

---

[9] This monitoring information must be provided retrospectively, as well as prospectively, to enable Petitioners to determine whether additional class members' rights have been violated in the past.  To the extent that Petitioners uncover such additional violations, Respondents have an obligation to remedy the past violations for class members who remain detained in contravention of their rights.

1    hearings.  Short of sending observers, there is no other way for Petitioners to

2    determine whether Respondents are complying with the permanent injunction.

3    Without the audio recordings, for instance, Petitioners cannot determine if

4    immigration judges were denying bonds based on other carve-outs from the class

5    definition or refusing to apply the standard of proof specified by the Order.

6            Requiring Respondents to permit review of the audio recordings does not

7    impose a substantial burden.  The recordings are routinely maintained in

8    immigration cases.  8 C.F.R. § 1240.9.  Respondents produce the electronic records

9    in response to FOIA requests or requests to the immigration court.   *See* Kaufman

10   Decl. at ¶ 21.  During the meet and confer process, Respondents claimed that there

11   would be burden associated with reviewing the audio recordings for privileged or

12   confidential information, but these electronic recordings routinely are made

13   available to class members and their counsel who file individual requests with the

14   immigration court.  Moreover, recordings of bond hearings constitute "public

15   records" because the hearings are open to the public, which is why they are subject

16   to disclosure under FOIA.  *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 700

17   (6th Cir. 2002) ("there is a First Amendment right of access to deportation

18   proceedings"); *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (holding that

19   "[u]nder our public-domain doctrine, materials normally immunized from

20   disclosure under FOIA lose their protective cloak once disclosed and preserved in

21   a permanent public record."  "[T]apes played in open court and admitted into

22   evidence -- no less than the court reporter's transcript, the parties' briefs, and the

23   judge's orders and opinions -- remain a part of the public domain.").  Any

24   statements made or information disclosed in a court proceeding open to the public

25   "sheds" its privilege.  *See Cottone*, 193 F.3d at 554.  It makes no sense for

26   Respondents to assert confidentiality or privilege concerns about bond hearing

27   recordings when the hearings themselves are open to the public.  If for some reason

28   a bond hearing provided under the Court's permanent injunction were closed to the

1  public, Respondents could produce the recording subject to the robust protective

2  order that governs this case.

3       *Third*, Petitioners should be granted access to the immigration court files of

4  certain class members, which are also public records.  An immigration court file

5  contains all documents filed with the immigration court in a class members' case,

6  including documents filed by the class member and the government in connection

7  with bond hearings.  *See* Kaufman Decl. at ¶21.  In combination with audio

8  recordings of hearings, these records would provide Petitioners with vital context

9  to investigate suspected instances of noncompliance.  Respondents cannot

10 complain of burden regarding these documents, because immigration court files

11 consist of documents filed in open court and thus are in the public domain and

12 subject to FOIA requests.  Petitioners also are not asking that Respondents produce

13 all class member immigration files.  Instead, Petitioners ask only that the Court

14 authorize Petitioners to request copies of class members' immigration files in cases

15 where audio recordings reveal potential issues with noncompliance.

16                                **CONCLUSION**

17      For the foregoing reasons, Petitioners request that the Court grant this

18 motion, adopt its proposed draft notice for *Rodriguez* bond hearings, clarify that

19 the latest group of individuals that Respondents have sought to exclude from the

20 class are class members (and, again, that the class definition admits of no

21 exceptions beyond those explicitly stated), and grant Petitioners access to

22 additional information in order to more efficiently and effectively ensure

23 compliance with the Court's orders.

24                                Respectfully submitted,

25                                ACLU OF SOUTHERN CALIFORNIA

26 Dated:  October 11, 2013          /s/ Michael Kaufman
                                    MICHAEL KAUFMAN
27                                  Counsel for Petitioners

28

                                    22