1  AHILAN T. ARULANANTHAM (SBN 237841)
   aarulanantham@aclu-sc.org
2  MICHAEL KAUFMAN (SBN 254575)
   mkaufman@aclu-sc.org
3  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West 8th Street
4  Los Angeles, CA  90017
   Telephone: (213) 977-5211
5  Facsimile: (213) 977-5297

6  *Attorneys for Petitioners*
   (Additional Counsel listed on following page)

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ALEJANDRO RODRIGUEZ,                ) Case No. CV-07-3239-TJH (RNBx)
    ABDIRIZAK ADEN FARAH,               )
12  YUSSUF ABDIKADIR, ABEL PEREZ        ) **DECLARATION OF MICHAEL**
    RUELAS, JOSE FARIAS CORNEJO,        ) **KAUFMAN OF OCTOBER 11, 2013**
13  ANGEL ARMANDO AYALA, for            ) **IN SUPPORT OF PETITIONERS'**
    themselves and on behalf of a class of ) **MOTION FOR COMPLIANCE**
14  similarly-situated individuals,     )
                                        ) Honorable Terry J. Hatter
15               Petitioners,           )
                                        ) DATE:  November 11, 2013
16               v.                     ) TIME:   Under Submission
                                        ) PLACE:  Courtroom 17
17  ERIC HOLDER, United States Attorney )
    General; JANET NAPOLITANO,          )
18  Secretary, Homeland Security;       )
    THOMAS G. SNOW, Acting Director,    )
19  Executive Office for Immigration    )
    Review; TIMOTHY ROBBINS, Field      )
20  Office Director, Los Angeles District )
    Immigration and Customs Enforcement;)
21  WESLEY LEE, Officer-in-Charge, Mira )
    Loma Detention Center; et al.;      )
22  RODNEY PENNER, Captain, Mira        )
    Loma Detention Center; SANDRA       )
23  HUTCHENS, Sheriff of Orange County; )
    OFFICER NGUYEN, Officer-in-         )
24  Charge, Theo Lacy Facility; CAPTAIN )
    DAVIS NIGHSWONGER, Commander,       )
25  Theo Lacy Facility; CAPTAIN MIKE    )
    KREUGER, Operations Manager, James  )
26  A. Musick Facility; ARTHUR          )
    EDWARDS, Officer-in-Charge, Santa   )
27  Ana City Jail; RUSSELL DAVIS, Jail  )
    Administrator, Santa Ana City Jail, )
28                                      )
                 Respondents.           )

JUDY RABINOVITZ
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

MICHAEL TAN (SBN 284869)
mtan@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0779
Facsimile: (415) 395-0950

JAYASHRI SRIKANTIAH (SBN 189566)
jsrikantiah@law.stanford.edu
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS (SBN 217603)
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Petitioners*

# DECLARATION OF MICHAEL KAUFMAN OF OCTOBER 11, 2013

I, Michael Kaufman, hereby declare:

1.      I am a staff attorney at the American Civil Liberties Union of Southern California and counsel of record for Petitioners in the above-entitled certified class action ("Rodriguez").  I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

## Respondents' Refusal to Provide Information to Monitor Compliance with the Preliminary Injunction

2.      Following this Court's issuance of a preliminary injunction on September 13, 2012, class counsel sought certain information from Respondents to monitor compliance with the preliminary injunction.  On October 22, 2012, I wrote an email to counsel for Respondents, Theodore Atkinson, requesting "that Respondents provide us a list of the schedule for the Rodriguez bond hearings (the date of the hearing, IJ and location) and, if the hearings have been completed, the outcome of the bond hearing."  Attached hereto as Exhibit A is a true and correct copy of the October 22, 2012 email.  My co-counsel, Ahilan Arulanantham, followed up by email on October 25, 2012 "to state, again, our request for a list of the bond hearings scheduled for Rodriguez class members, which would include the detainee's name, A#, date of hearing, IJ and outcome (if the bond hearing has been completed)."  Attached hereto as Exhibit B is a true and correct copy of this email correspondence.

3.      During a telephonic meet and confer between the parties the week of September 16, 2012, Respondents refused to provide class counsel with the requested information, but agreed to provide copies of bond hearing notices.  Respondents began producing bond hearing notices on or about November 6, 2012.  By that point in time, Respondents already had conducted an unknown number of bond hearings pursuant to the preliminary injunction.

4.      Over the next few months, a team of attorneys and legal assistants that I supervised attempted to monitor compliance with the injunction.  I have previously described the extraordinary efforts that we have undertaken to monitor compliance with the injunction.  *See* Dkt 339.

5.      Despite spending hours on this task, we have been unable to monitor compliance in any comprehensive manner with the limited information provided by Respondents, for several reasons.  First, Respondents routinely produced the bond hearing notices only a day or two before the hearings – or in numerous cases, after hearings had already occurred – making it impossible for me or members of the team working with me to attend hearings.  Second, even where Respondents provided sufficient advanced notice of hearings, the nature of immigration court scheduling does not permit us, given our resources, to attend class member hearings.  The immigration courts schedule bond hearings on court calendars that include, in an undifferentiated fashion, numerous other unrelated hearings.  A bond notice setting a hearing on Thursday, September 25, 2013, at 8:00AM, in no way guarantees the bond hearing will occur at that time, because numerous other matters are also scheduled for that same time, in that same court.  In order to attend a single bond hearing scheduled at that time, one may have to wait for three to four hours while unrelated matters are adjudicated.  Moreover, the government routinely sets multiple bond hearings on the same day before different judges in different locations, increasing the impracticality of attempting to monitor each hearing in person.

6.      I, along with my co-counsel Mr. Arulanantham and legal assistants working with us, also attempted to monitor Respondents' compliance with the preliminary injunction by gathering information from informal resources, interviewing the immigration bar, interviewing detainees and, where possible, personally attending hearings.  Through these considerable efforts, we became aware that three groups of individuals who appeared to qualify for bond hearings under the preliminary injunction and governing case law nonetheless were being denied bond hearings.

7. Upon discovering that Respondents were unilaterally excluding groups of persons from the class, Petitioners renewed their requests for information that would enable Petitioners to more effectively detect such violations of the Court's preliminary injunction order. On February 19, 2013, I wrote an email to Mr. Atkinson in which I stated that "we cannot be satisfied by Respondents' assurances that they intend to comply with the [preliminary injunction] order. We have received such assurances before, and yet we continue to discover ongoing cases of noncompliance." Petitioners asked for "information from EOIR's bond hearing table regarding class members' bond hearings." Respondents denied the request. Attached hereto as Exhibit C is a true and correct copy of the February 19, 2013 email.

8. Though Respondents continued to refuse to disclose information to Petitioners about bond hearings, at the Ninth Circuit hearing on the appeal of this Court's preliminary injunction order, Mr. Atkinson stated to the presiding judges that "[t]here have been approximately 400 bond hearing under the PI, and I believe that something close to two-thirds of those aliens have been released on bond." *See* Oral Argument at 33:07, http://cdn.ca9.uscourts.gov/datastore/ media/2013/03/04/12-56734.wma. As a result, in a March 12, 2013 letter, counsel for Petitioners stated: "In light of the fact that Respondents have now made representations to the Ninth Circuit about the outcomes of the Rodriguez bond hearings, and given that the Ninth Circuit may rely on that representation in reaching a decision, we renew our request for that outcome information." Respondents again denied the request. Attached hereto as Exhibit D is a true and correct copy of the March 12, 2013 letter.

9. On June 25, 2013, Petitioners filed a discovery motion to compel production of the requested database information on two grounds: (1) that Respondents had an obligation under Rule 26 to disclose the basis for the information on which they relied at the Ninth Circuit hearing; and (2) that, regardless of whether Rule 26 required the disclosure, the Court should order disclosure of the information to ensure that Petitioners can adequately monitor compliance. *See* Dkt. 345. On June

28, 2013, Magistrate Judge Block denied the motion.  Dkt. 346.  Judge Block ruled that Rule 26 did not mandate disclosure, and that, "[t]o the extent that Petitioners believe the information sought is necessary to insure respondents' compliance with the preliminary injunction order, they should take that issue up with the District Judge." *Id.*

**Petitioners Discover that Respondents Have Unilaterally Excluded a
Fourth Category of Class Members from the Class**

10.     On August 6, 2013, this Court issued its Order granting in part Petitioners' motion for summary judgment and granting the motion for clarification. Dkt. 353.  In the months following the Order, class counsel have continued to monitor Respondents' compliance through informal means.   In the course of doing so, Petitioners discovered that Respondents have been denying bond hearings to an additional, undisclosed category of class members detained for 180 days or more: those who have had orders of removal affirmed by the BIA, but who remain within the 30-day period for filing a petition for review to the Ninth Circuit.  Counsel for Petitioners learned of this exclusion through interviews with private immigration attorneys whose clients had been denied bond hearings to which they were entitled. Respondents never notified Petitioners of this unilateral exclusion.

11.     On August 30, 2013, I met and conferred with Mr. Atkinson by phone pursuant to Rule 7-3 on several issues related to this Court's Order.  *First*, with respect to the class member exclusions, I notified Mr. Atkinson that Respondents were improperly withholding bond hearings without leave of the Court.  Mr. Atkinson stated that he would discuss the issue with his clients and requested evidence of an instance where an immigration judge refused to grant a bond hearing to such individuals.  I provided an example by email that day, on August 30, 2013.  Attached hereto as Exhibit E is a true and correct copy of the August 30, 2013 email.

12.     *Second*, we discussed the Order's requirement that Respondents develop a revised notice that satisfies the due process standards set forth in the Order.  The

4

1    parties agreed to negotiate over the language of a revised notice.  Respondents
2    suggested, and Petitioners agreed, that Petitioners would prepare the initial draft of the
3    revised notice, which would then serve as the basis for further negotiations.
4           13.   *Third*, Petitioners requested information that would enable Petitioners to
5    more efficiently and cost-effectively monitor Respondents' compliance: (1) additional
6    database information, including whether the detainee bonded out from detention; the
7    date on which a bond was posted; the date of a detainee's release; and contact
8    information for detainees and/or their attorneys; (2) copies of electronically-stored
9    audio recordings of bond hearings; and (3) class members' immigration court files.  I
10   explained that while the existing information disclosed by Respondents enabled
11   Petitioners to determine whether a hearing appeared to have been held, additional
12   information was necessary to ensure Petitioners could monitor whether the bond
13   hearings were being conducted in compliance with the terms of the Order and
14   governing case law, including whether immigration judges were setting bond
15   hearings, but then refusing to hold them based on undisclosed, purported exclusions
16   from the class definition.  Mr. Atkinson stated that Respondents would consider these
17   requests.
18          14.   On September 10, 2013, I sent an email to Mr. Atkinson in which I
19   requested that Respondents provide their positions with respect to the excluded class
20   members, and on Petitioners' request for additional monitoring information.  I
21   requested that Respondents provide their response by September 17, 2013.  Attached
22   hereto as Exhibit F is a true and correct copy of the September 10, 2013 email.
23          15.   In a separate email dated September 10, 2013, I sent Mr. Atkinson
24   proposed language for a notice to class members.  I requested that Respondents
25   provide their comments on the notice by September 17, 2013.  On September 12,
26   2013, Mr. Atkinson responded by email that Respondent disagreed that they were
27   required to revise the bond hearing notice, but that Respondents were "willing to
28   consider different language for the notices, and we appreciate your taking the time to

draft a rather lengthy notice as the basis for discussions."  Mr. Atkinson further advised that Respondents were reviewing the draft revised notice and that they would not be able to respond by September 17, the date that Petitioners had requested.  Mr. Atkinson stated that it would be "premature" to bring the issue to the Court and that if Petitioners sought relief from the Court before negotiations had concluded, Respondents would make clear to the Court "the good faith effort we have indicated to negotiate over language."   On September 13, 2013, I emailed Mr. Atkinson, stating that Petitioners would postpone bringing a motion regarding the notice to this Court's attention, regardless of whether Respondents acknowledged their *obligation* to revise the notice, so long as they were willing to negotiate a revision to the existing notice.  Attached hereto as Exhibit G is a true and correct copy of this email correspondence.

16.    On September 18, 2013, Mr. Atkinson emailed class counsel and stated that Respondents were taking the position that, once the BIA affirms an order of removal, people fall out of the class until they file a petition for review with the Ninth Circuit, such that Respondents could detain this group of individuals for longer than six months without a bond hearing.  Respondents provided no explanation for why they had failed to notify Petitioners of their decision purporting to exclude these persons from the class, as required by the Order.

17.    Mr. Atkinson further stated that Respondents would not engage in negotiations over the language of a revised notice because Respondents believed that they were under no obligation to alter the existing notice.  Mr. Atkinson also rejected Petitioners' draft notice as containing "misstatements of the law," but did not elaborate on what specifically Respondents contended was incorrect.  Moreover, Respondents did not explain why they previously had offered to negotiate a revised notice, and why they had requested Petitioners to delay bringing the notice issue to the Court, if Respondents believed the existing notice was sufficient and never intended to negotiate revised language.

18.    On September 19, 2013, I wrote an email to Mr. Atkinson in which I expressed Petitioners' disappointment that Respondents had changed course and would not negotiate the language of a revised notice.  I requested that Respondents identify any portions of the draft notice that they believed were incorrect.   As of the filing of this motion, Respondents have not identified any specific defects in the notice language proposed by Petitioners.  Attached hereto as Exhibit H is a true and correct copy of this email correspondence.

19.    Attached hereto as Exhibit I is a true and correct exemplar of a notice provided to detainees eligible for bond hearings under *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008).  This notice was provided to Petitioners in discovery in this action, and was previously attached as an exhibit to Petitioners' Motion for Summary Judgment.  *See* Dkt. 281-3 (filed under seal).

20.    Attached hereto as Exhibit J are true and correct exemplars of notices provided to detainees eligible for bond hearings under the preliminary injunction and permanent injunction in this matter.  These exemplars were produced by Respondents in this litigation.

### Audio Recordings and Court Files

21.    Based on my experience representing individuals in immigration court proceedings in the Central District and interviews with immigration attorneys who regularly practice in the Central District, it is common for individuals (either through counsel or *pro se*) to request access to their court files and electronically stored copies of audio recordings of immigration court proceedings, and the government provides access to these materials at no cost.  A court file contains all filings submitted by a noncitizen or government counsel in a matter.  Any person can file a Freedom of Information Act request to obtain a copy of the court file and a compact disc containing electronic recordings of court proceedings which, like bond hearings, are

1  open to the public.  Noncitizens also can request that the court file and audio

2  recordings be made available for review at the Los Angeles Immigration Court.

3       I declare under penalty of perjury of the laws of the State of California and the

4  United States that the foregoing is true and correct to the best of my knowledge and

5  belief.  Executed this 11th day of October, 2013, in Los Angeles, California.

6

7

8                                   s/ Michael Kaufman
                              MICHAEL KAUFMAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28