STUART F. DELERY
Principal Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
THEODORE W. ATKINSON
United States Department of Justice
Office of Immigration Litigation
    P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
    Phone: (202) 532-4135
    theodore.atkinson@usdoj.gov
SARAH S. WILSON
Trial Attorney

Attorneys for Respondents

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*, | Case No. CV 07-3239-TJH (RNBx) |
| Petitioners, | |
| vs. | **DECLARATION OF THEODORE W. ATKINSON IN SUPPORT OF RESPONDENTS' EX PARTE APPLICATION FOR EXTENSION** |
| TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director, et al.,* | |
| Respondents. | Hon. Terry J. Hatter, Jr. |

I, Theodore w. Atkinson, declare the following:

1. I am an attorney for the United States Department of Justice, Office of Immigration Litigation. I am lead counsel for Respondents in this action.

2. On August 6, 2013, this Court entered its Order, Final Judgment and Permanent Injunction ("Order") (ECF No. 353). Within a week of that Order, I held a conference call with agency counsel for Respondents to discuss the Order, including the requirement of a status report and a list, by individual class member, containing certain information about bond hearings required by the Order.

3. As a result of that call, U.S. Immigration and Customs Enforcement ("ICE") under the Department of Homeland Security and the Executive Office for Immigration Review ("EOIR") under the Department of Justice were tasked with preparing a spreadsheet containing the Court information. To better demonstrate Respondents' compliance with this Court's orders, Respondents agreed to include information related to bond hearings granted under the preliminary injunction, as well as information required about bond hearings conducted under this Court's permanent injunction.

4. During the period between August 6, 2013, and September 30, 2013, ICE and EOIR gathered and compiled information on more than 2,100 bond hearings held under the preliminary and permanent injunctions beginning on or about November 12, 2012.

5. In discussing the information gathered and compiled in the spreadsheet, I became aware that the information was obtained through electronic databases separately maintained by ICE and EOIR through their headquarters locations in Washington, D.C., and Arlington, Virginia, respectively. In addition, information contained in the spreadsheet was gathered apart from electronic databases by individual court personnel at the immigration courts located in downtown Los Angeles, at the Adelanto detention facility, and at the Orange County detention sites. That information was and is obtained from individual immigration judges and their staff. Designated court personnel were tasked with compiling and reviewing the information obtained from immigration judges and their staff. At the same time, ICE personnel in both Washington, D.C., and in the Los Angeles Office of Chief Counsel were tasked with reviewing information contained on the spreadsheet.

6. On or about September 29, 2013, in contemplation of a potential lapse in appropriations, Respondents were consulted about the status of efforts to compile spreadsheet information, and were asked to provide an estimate for the length of time needed to complete the spreadsheet. Before the government shutdown, and with no

expectation or estimate for how long the government shutdown would last, counsel for EOIR indicated that EOIR would require approximately ten days to complete its gathering and compiling of information for the spreadsheet. During the shutdown, EOIR personnel, among others, including undersigned counsel, were prohibited from working on work matters. As a result, work on the spreadsheet came to a temporary halt.

7. The government shutdown ended on October 16, 2013, near midnight. Although the government resumed operations the next morning, coordinating efforts to restart work on the spreadsheet was delayed by the absence of key governmental personnel on Thursday, October 17, 2013 and Friday, October 18, 2013. Work on the spreadsheet resumed in full on Monday, October 21, 2013, when personnel working on the spreadsheet returned to work.

8. During the week of October 21, 2013, in preparation of the final spreadsheet, several reviews were conducted. First, ICE compared the spreadsheet against lists of class members ICE had identified on a periodic basis and who were eligible for bond hearings under the preliminary and permanent injunctions against the spreadsheet to ensure that all identified class members were included. Second, the spreadsheet was checked against periodic compliance reports requested by undersigned counsel. These compliance reports were requested beginning in October 2012 in anticipation of bond hearings under this Court's preliminary injunction, and were provided weekly from November 2012 until approximately June 2013, at which point compliance reports were provided on a monthly basis. Third, spreadsheet information gathered from electronic database sources were spot-checked against information at the immigration court local level to ensure that the electronic database information was both complete and reliable.

9. As part of this third level of review, Respondents discovered that a number of data points gathered electronically were subject to some uncertainty because the query used to gather the information drew information from fields that were not necessarily

a certain match for the information to be reported. For example, although the EOIR electronic database contained the bond hearing dates for each alien, and those dates reliably could be identified as having been completed on a specific date, it was not certain whether the bond hearing date identified as a result of a query was the hearing date for a *Rodriguez* hearing, or for some other bond hearing. Although Respondents logically concluded that the most recent bond hearing date was the date of the *Rodriguez* hearing at which bond was decided, Respondents agreed that additional review should be conducted to check the accuracy of the electronic information.

9. In conducting this fourth level of review, for example, bond hearing dates reported in the electronic database that were logically surmised to be the date of a *Rodriguez* hearing were checked against compliance reports gathered close to the time of the *Rodriguez* hearings held under the preliminary and permanent injunctions. Respondents determined that checking the electronic database information regarding bond hearing dates, bond amounts, and hearing outcomes was most accurately checked by comparing them to reports based on information obtained directly from immigration judges and their staff.

10. This fourth level of review has taken a significant amount of time. Although Respondents estimated that the fourth level of review could be completed by October 28, 2013, immigration court personnel and EOIR counsel reached the conclusion that additional time was needed to ensure that the fourth level of review was conducted with respect to each bond hearing identified in the spreadsheet. ICE agreed that the spreadsheet should be checked for accuracy against information gathered and maintained at the local immigration court level.

11. On October 28, 2013, once undersigned counsel consulted with the Respondent agency components, and ascertained that additional time was needed, undersigned counsel asked when this fourth level of review could be completed. EOIR agreed that the review could be concluded within one week, if not sooner.

12. Accordingly, undersigned counsel contacted counsel for Petitioners on October 28, 2013, to seek a brief, one-week extension for filing the status report, spreadsheet, and response to Petitioners' motion for compliance. In seeking the requested extension, Respondents met and conferred with counsel for Petitioners and offered concessions in exchange for the extension. Based on an idea suggested by Petitioners, Respondents offered to file a bifurcated response to the motion. Specifically, Respondents offered to file a partial response to the motion for compliance by the morning of October 29, 2013 – addressing the issues of sufficiency of the notices and the clarification of the class with respect to a narrow group of aliens whom Respondents believe fall clearly outside the class definition – and file a supplemental opposition addressing Petitioners' request for additional compliance measures when it filed the status report and spreadsheet on November 4, 2013. Respondents also offered to forego any request for oral argument, provide Petitioners with additional time to file a reply, and measure the next 90-day reporting requirement from the October 28 deadline (rather than from the date of any extension), all in exchange for a one-week extension. Petitioners declined, offering instead a four-day extension of the status report to Friday, November 1, 2013, if Respondents would file a complete opposition to the motion by noon October 29, 2013. Because Respondents have informed counsel that they need a full week to complete work and review of the spreadsheet, and because Respondents believe that consideration of the status report will be important in deciding the motion for compliance, the parties could not reach agreement. Therefore, Petitioners have stated they will oppose this application.

I affirm under penalty of perjury that the foregoing is accurate and true based on my knowledge.

Dated: October 28, 2013         *s/ Theodore W. Atkinson*
                                Theodore W. Atkinson