STUART F. DELERY
Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
THEODORE W. ATKINSON
United States Department of Justice
Office of Immigration Litigation
SARAH S. WILSON
Trial Attorney
Georgia Bar No. 212212
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4700
sarah.s.wilson@usdoj.gov

Attorneys for Respondents

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*,<br><br>Petitioners,<br><br>vs.<br><br>TIMOTHY S. ROBBINS, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director, et al.*,<br><br>Respondents. | Case No. CV 07-3239-TJH (RNBx)<br><br>**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR COMPLIANCE**<br><br>Hon. Terry J. Hatter, Jr.<br><br>Hearing Date: November 25, 2013[1]<br>Hearing Time: Under Submission<br>Place: Courtroom 17 |

---

[1] As a result of this Court's order granting Respondents additional time to file this opposition, *see* ECF No. 375, the hearing date should be adjusted from November 18, 2013, to November 25, 2013.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

LEGAL STANDARD............................................................................................3

ARGUMENT ........................................................................................................3

  I.     Respondents are in full compliance with the Permanent Injunction Order. .......3

    A.  Respondents' plain language notice of automatically scheduled bond
hearings fully complies with the Permanent Injunction Order's written notice
requirement. ......................................................................................................4

    B.  Detainees with final orders of removal and no stay of removal are not
entitled to bond hearings under the Permanent Injunction Order...........................9

  II.  Petitioners are not entitled to a modified Permanent Injunction Order. ............13

    A.  Petitioners have not cited any authority to support modification of  the
permanent injunction based on the allegations contained in the  motion..............14

    B.  Production of the requested information would pose a substantial  burden to
Respondents. ..................................................................................................18

CONCLUSION.........................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Castrillion v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008)...........7

*Coleman v. Brown*, --- F.Supp. 2d ----, 2013 WL 3326872 (E.D. Cal. 2013)..............15

*Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) ................................7

*Dunsmore v. Paramo*, No. 13-CV-1193-GPC-PCL, 2013 WL 5523741 (S.D. Cal. Oct. 3, 2013)................................................................................3

*Harvest v. Castro*, 531 F.3d 737 (9th Cir. 2008)................................3

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011)....................................9

*Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008) .......................................11, 12

*United States v. Asarco*, 430 F.3d 972 (9th Cir. 2005) ...................................14

## Statutes

8 U.S.C. § 1231(a)(1)(B) ...............................................................11

## Rules

Fed. R. Civ. P. 60(b) .....................................................................3

## Regulations

8 C.F.R. § 1241.1(a) ...................................................................9

8 C.F.R. § 241.1 ..........................................................................9

## Other Authorities

Board of Immigration Appeals Practice Manual, Chapter 6: Stays and Expedite Requests, available at http://www.justice.gov/eoir/vll/qapracmanual/pracmanual/chap6.pdf .....................10

Immigration Court Practice Manual, Chapter 8.2: Automatic Stays, available at http://www.justice.gov/eoir/vll/OCIJPracManual/Practice_Manual_review.pdf.....10

National Immigration Project, "Seeking a Judicial Stay of Removal in the Court of Appeals: Standard, Implications of ICE's Return Policy and the OSG's

Misrepresentation to the Supreme Court and Sample Stay Motion" (May 2012), available at http://www.nationalimmigrationproject.org/.........................................10

# INTRODUCTION

After more than a year of providing bond hearings to aliens under this Court's preliminary and permanent injunction orders – a year in which Petitioners have not raised with this Court any allegation of non-compliance – Respondents find themselves accused of intentionally violating this Court's permanent injunction in two ways.  Both accusations are without merit, but, even if Petitioners' allegations were correct, the alleged violations fail to justify the incredibly burdensome documentary production Petitioners now seek as part of a modified permanent injunction order.

First, Petitioners accuse Respondents of intentionally violating this Court's Order that Respondents provide "written notice, in plain language, to the detainee of his or her upcoming bond hearing."  *See* ECF No. 353, Order, Judgment and Permanent Injunction ("Order"), at 5, ¶ 3.  According to Petitioners, the written notice Respondents provide is not sufficiently clear, and Petitioners instead propose a lengthy and cumbersome set of legal advisals to take the place of the notice.  This Court should reject Petitioners' argument and should not order the immigration court to provide lengthy legal advisals to detained aliens.  The notice issued by the immigration court does exactly what this Court ordered Respondents to do:  it advises detainees of the date, time, and location of their automatically-scheduled bond hearing in direct, brief, plain, comprehendible language.  That notice – which Petitioners contend has already been deemed insufficient by this Court even though it has *never been reviewed by this Court* – complies with the Order's requirement of a plain written notice of the scheduled hearing.  This Court cannot reasonably conclude that the text of the notice defies the Order, and it should decline to order amendment of the notice.

Second, Petitioners accuse Respondents of violating the Order by refusing to identify or provide bond hearings to aliens who fall within a narrow category:  those aliens whose appeals to the Board of Immigration Appeals have been rejected, but who reach six months' detention before they file a petition for review with the federal

court of appeals.  These aliens fall within a 30-day window during which such aliens are subject to an administratively final order of removal, and their removal is not the subject of judicial review or any judicial impediment to their removal.  Under Petitioners' own list of class member "carve-outs" found in the Third Amended Complaint, noted in their motion for compliance, and referenced in the Court's Permanent Injunction Order, these aliens fall *outside* of the class.  *See* Order at ¶ 6.

As demonstrated by Respondents' First Status Report, filed contemporaneously with this opposition, Respondents have fully complied with the government's obligations under the Court's permanent injunction Order and are acting in good faith to identify and provide information regarding all class members eligible for bond hearings under the Order, the outcomes of those hearings, and other information. Respondents have automatically-scheduled *Rodriguez* class members for bond hearings, and the written notice Petitioners challenge informs such detainees in a comprehensible, plain-language manner of the date, time, and location of their automatically-scheduled bond hearing.  Although Petitioners did not wait to receive Respondents first status report before declaring such reporting requirements insufficient, an examination of the status report reflects a conscientious effort by Respondents to provide information on *all* bond hearings provided under this Court's orders, and did not limit the reporting to the post-Order hearings held under the permanent injunction.  Respondents have gone above and beyond the reporting requirements to provide additional information on detainees provided with *Rodriguez* hearings.  Respondents' periodic 90-day compliance reports, coupled with the Order's other monitoring and disclosure requirements, are sufficient to allow Petitioners to track Respondents' compliance efforts.  Accordingly, Respondents respectfully request that the Court deny Petitioners' motion.

1

2                                    **LEGAL STANDARD**

3          Requests for modifications to final judgment orders are governed by Federal

4  Rule of Civil Procedure Rule 60(b).  Under Rule 60(b), a party may move to amend a

5  judgment on the following grounds:

6          (1) mistake, inadvertence, surprise, or excusable neglect;
           (2) newly discovered evidence that, with reasonable diligence, could not
7          have been discovered in time to move for a new trial under Rule 59(b);
           (3) fraud (whether previously called intrinsic or extrinsic),
8          misrepresentation, or misconduct by an opposing party;
           (4) the judgment is void;
9          (5) the judgment has been satisfied, released, or discharged; it is based on
10         an earlier judgment that has been reversed or vacated; or applying it
           prospectively is no longer equitable; or
11         (6) any other reason that justifies relief.

12

13 Fed. R. Civ. P. 60(b).  Because Petitioners did not identify which provision of

14 Rule 60(b) their motion is predicated, this Court may infer that they intend to

15 move under Rule 60(b)(6), for "any other reason that justifies relief."  *See*, *e.g.*,

16 *Dunsmore v. Paramo*, No. 13-CV-1193-GPC-PCL, 2013 WL 5523741, * 2

17 (S.D. Cal. Oct. 3, 2013) (because *pro se* party did not identify on which

18 provision of Rule 60(b) his motion was based, the Court inferred the motion

19 was founded on Rule 60(b)(6)).  The Ninth Circuit has cautioned that Rule

20 60(b)(6) "is to be used sparingly as an equitable remedy to prevent manifest

21 injustice and is to be utilized only where extraordinary circumstances " exist.

22 *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (internal quotations marks

23 and citation omitted).

24                                    **ARGUMENT**

25

26 **I.     Respondents are in full compliance with the Permanent Injunction Order.**

27         As Respondents' First Status Report explains, Respondents have created and

28 implemented an entirely new bond hearing regime to comply with the injunction.  The

                                          3

procedures allow Respondents to identify class members; to automatically schedule and hold bond hearings before immigration judges for those class members; and to provide clear and comprehensible written notice to the class members, their representative, and class counsel of the automatically scheduled bond hearings. *See* Respondents' First Status Report, ECF No. 377. In addition, Respondents have gone beyond this Court's Order that Respondents provide Petitioners and this Court with bond hearing and other information about "current and future class members" by including in the spreadsheet information for class members provided with a bond hearing under the permanent *and* preliminary injunctions. Thus, the report includes nearly a year's worth of *Rodriguez* hearing related information, rather than information on hearings held in the three months since this Court's Order.

Despite Respondents' efforts, Petitioners raise two unsubstantiated compliance issues. First, Petitioners allege that that Respondents have failed to comply with the injunction's written notice requirement by failing to provide a lengthy legal advisal in place of a plain language notice of the date, time, and location of the scheduled hearing. Second, Petitioners contend that aliens with final orders of removal and no stay of that order are entitled to bond hearings, despite their present removability and despite the fact that Petitioners themselves identified such aliens as subject to a class "carve out" in their Third Amended Complaint. Both of Petitioners' allegations are without merit and neither supports the proposed modifications to the Permanent Injunction Order.

> **A.    Respondents' plain language notice of automatically scheduled bond hearings fully complies with the Permanent Injunction Order's written notice requirement.**

Respondents' notification procedures are fully compliant with the Court's Order to "provide written notice, in plain language, to the detainee of his or her upcoming bond hearing." ECF No. 353 at 5, ¶ 3. Respondents provide written notice to all eligible class members – both directly and through class counsel – of the date, time, and location of the automatically scheduled bond hearings. Notices are served at least

seven days prior to the date of the hearing, and in many instances are delivered several weeks prior to the hearing.  *See* Respondents' First Status Report.

Petitioners apparently concede that the notice clearly conveys the time, date, and location of the scheduled hearing.  *See* Petitioners' Memorandum in Support, ECF 367-1, at 5-7.  Nevertheless, they argue that the Court's Order requiring Respondents to provide "written notice of the hearing" means that Respondents must issue a multi-page legal advisal in place of a plain language bond hearing notice.  It is impossible to read this Court's Order as establishing any such requirement.  The Order is clear and unambiguous:  this Court requires only that Respondents provide detainees with "written notice, in plain language, to the detainee *of his or her upcoming bond hearing*."  ECF No. 353 at 5, ¶ 3 (emphasis added).  The Order discusses the notice requirement exclusively as requiring notice "*of*" the hearing and does not contain any reference to a required legal advisal.  *See id*. at 3 ("Petitioners request that notice *of* the hearing be provided to each detainee in plain language, reasonably calculated to inform a person unfamiliar with English and the United States legal system *of the pendency of the hearing*."); *id*. at 4 (discussing request that "notice to detainees *of* the bond hearings be provided in plain language" and concluding "bond hearings should be provided automatically, and plain language notice, in writing, *of* the bond hearings should be provided to detainees prior to the hearing.") (emphasis added).

Respondents' notice satisfies this Court's Order.  The notice typically[2] provides:

> NOTICE OF CUSTODY REDETERMINATION HEARING IN IMMIGRATION PROCEEDINGS
>
> PLEASE TAKE NOTE THAT THE ABOVE CAPTIONED CASE HAS BEEN

---

[2] Wording of the notice varies very little between the various immigration judges.  For example, although some immigration judges use the notice language quoted below, others use the same format but state that the case has been scheduled for a "RODRIGUEZ CUSTODY REDETERMINATION."

SCHEDULED FOR A CUSTODY REDETERMINATION HEARING
BEFORE THE IMMIGRATION COURT ON Nov 25, 2013 AT 8:00 A.M. AT
THE FOLLOWING ADDRESS:

> 10400 RANCHO ROAD
> ADELANTO, CA 92301

YOU MAY BE REPRESENTED IN THIS PROCEEDING, AT NO EXPENSE
TO THE GOVERNMENT, BY AN ATTORNEY OR OTHER INDIVIDUAL
AUTHORIZED AND QUALIFIED TO REPRESENT PERSONS BEFORE
AN IMMIGRATION COURT. IF YOU WISH TO BE REPRESENTED,
YOUR ATTORNEY OR REPRESENTATIVE SHOULD APPEAR WITH
YOU AT THIS HEARING.

*See* Exhibit 3 to Declaration of Sarah Wilson ("Wilson Decl.").

Petitioners' argument that "notice of a hearing" requires Respondents to provide information other than the date, time, and location of the bond hearing is further contradicted by the Order's emphasis on providing notice in "plain" and "comprehendible," language "reasonably calculated to inform a person unfamiliar with English and the United States legal system of the pendency of the hearing." *Id*. at 3-5. Because class members are no longer required to request a bond hearing under the automatic scheduling system, the notice need not include "confusing and legalistic" instructions (as Petitioners described them) to ensure that the class member is able to obtain a review of his or her continued detention. By establishing a system in which bond hearings are automatically scheduled, Petitioners' complaint that the language used to advise aliens of their right to request a hearing was confusing has been rendered entirely moot.

Petitioners' notice argument is inconsistent with their position during summary judgment that the *Casas* and *Diouf* notices previously employed by Respondents fail to properly inform detainees of their right to a bond hearing and instruct detainees how to request a hearing. At that time, Petitioners argued that the *Casas* and *Diouf* systems were insufficiently clear to justify Respondents' failure to automatically

schedule periodic bond hearings.  Under the *Casas* and *Diouf* systems, class members were not automatically scheduled for hearings when they became eligible for a bond hearing pursuant to the Ninth Circuit's decisions in *Casas-Castrillion v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008) or *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011).  Instead, Respondents issued letters to eligible class members to notify them that they may request a bond hearing by filing the request with the appropriate immigration court.  Petitioners argued the letters failed to adequately inform class members about how to request a hearing and warn them that a failure to request a hearing would result in their continued detention.  *See* ECF No. 281 at 40-44.

In summary judgment briefing, Petitioners' asserted that it was Respondents' *combined* "failure to provide periodic hearings and sufficient notice create[d] a high risk of erroneous deprivation" because the *Casas* notices "fail[ed] to adequately inform detainees how to request the hearing."  *See* ECF No. 281 at Section III.B. Petitioners argued that the *Casas* system of requiring class members to request bond hearings should be replaced by a system of automatic scheduling.  Alternatively, Petitioners argued, "*even if* detainees should be required to bear [the burden of affirmatively requesting bond hearings], Respondents notice neither adequately informs detainees how to request the hearing nor tells them what the hearing entails." ECF No. 281 at 40-41; *id.* at 42 ("*Even if the Court holds that automatic hearings are not required*, the [*Casas* and *Diouf*] notice that ICE provides falls short . . . ." (emphasis added)).  Petitioners, however, did not clearly argue that due process requires improved legal advisals in the event that the Court orders automatically scheduled hearings.  Thus, it is perplexing that Petitioners now insist that the injunction requires a lengthy legal advisal given that automatic scheduling eliminates the need for such an advisal.

Notably, although Petitioners included copies of sample *Casas* and *Diouf* letters with their summary judgment papers, Petitioners did not include any sample

1    *Rodriguez* notices.  In the compliance motion, Petitioners acknowledge that they

2    failed to argue during summary judgment briefing that the *Rodriguez* notices were

3    insufficient, but claim it was because "Petitioners had no way to predict the precise

4    form of notice Respondents would adopt."  *See* ECF No. 367-1 at 6.  However, the

5    *Rodriguez* notices employed under the preliminary injunction contained the same

6    information as the current *Rodriguez* notices.  *See* Exhibit A, Declaration of Sarah

7    Wilson ("Wilson Decl.") at ¶ 2 and Exhibit 1.  Petitioners acknowledge that they

8    began receiving copies of the notices from Petitioners' counsel in early November

9    2012, more than six months before Petitioners submitted their motion for summary

10   judgment.  *See* ECF No. 367-3, Declaration of Michael Kaufman ("Kaufman Decl.")

11   at ¶ 3 (noting Respondents began providing copies of *Rodriguez* notices to Petitioners'

12   counsel on or about November 6, 2012).  Despite this, Petitioners' summary judgment

13   briefing did not argue that the *Rodriguez* notices were constitutionally insufficient or

14   otherwise offer a single criticism of substance of the notice.  As a result, the Court

15   never had the opportunity to determine whether the current notice provides a "plain

16   language" notice of the scheduled hearing and was limited to finding that the

17   "legalistic" and "confusing" *Casas* and *Diouf* systems fell short.  ECF No. 281 at 42.

18   Therefore, Petitioners' claim that the permanent injunction Order "unambiguously"

19   invalidated Respondents' current notice is wrong.  This Court has never considered

20   the sufficiency of the *Rodriguez* notices.  In doing so now, the Court should find

21   Respondents' plain language notice in compliance with the permanent injunction.[3]

22

23   _____

24   [3] Even if the Court is inclined to agree with Petitioners' reading of the notice
     requirement, there is no basis to find Respondents' reasonable reading of the Order

25   warrants additional compliance monitoring or stripping Respondents of the
     opportunity to draft a notice that complies with a clarified order.  If a revised notice is

26   required, the Court should allow Respondents to draft the notice so that the notice can
     be produced in a cost effective manner that takes into account the templates and

27   computer processing systems employed by the Executive Office of Immigration
     Review's ("EOIR") court staff.

28

**B.    Detainees with final orders of removal and no stay of removal are not entitled to bond hearings under the permanent injunction Order.**

Petitioners claim that Respondents are required to provide bond hearings to detainees with administratively final orders of removal who have not obtained a judicial stay of their removal order because they *may* request a stay of removal in the next thirty days in conjunction with the window for filing a petition for review with the Ninth Circuit.  Petitioners' position is contrary to a clearly enumerated exception to the class definition, Respondents' longstanding practice of removing detainees during this period, and would effectively grant detainees an automatic stay of removal where the law establishes no such stay.  Because the statute governing removal provides no such authority and no court has expressly limited Respondents removal authority in the way urged by Petitioners, it would be inappropriate for this Court to create such an exception for purposes of ruling on a class membership issue.

There can be no dispute that the class expressly excludes detainees "who have [1] a final order of removal and [2] no stay of that removal order, such that the government has legal authority to remove them."  ECF No. 111 at ¶ 107.  This is a "carve out" of the class membership identified by Petitioners in the Third Amended Complaint, acknowledged by Petitioners in their Compliance Motion, and emphasized by this Court in the Injunction Order.

A detainee whose appeal to the Board of Immigration Appeals has been dismissed and who has yet to request a stay of his or her removal order undoubtedly falls within the confines of this exception.  Removal orders become final and executable *immediately* upon dismissal of the alien's appeal by the Board.[4]  *See* 8

---

[4] Petitioners' arguments regarding the difference between "administrative" and "judicial" final order of removal are not relevant to understanding this exception.  Removability does not require an order to be judicially final, only administratively final.  Aliens with administrative orders pending judicial review are removable absent a stay of that removal order.  *See Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (noting Illegal Immigration Reform and Immigrant Responsibility Act of 1996

*(Footnote continued)*

1   C.F.R. §§ 1241.1(a), 241.1.  From that point onward, the government has legal

2   authority to remove the alien until the alien obtains a stay of that order.  There is no

3   automatic stay of removal during the 30-day period for filing a petition for review.

4   *See* Board of Immigration Appeals Practice Manual, Chapter 6: Stays and Expedite

5   Requests, at 93, *available at*

6   http://www.justice.gov/eoir/vll/qapracmanual/pracmanual/chap6.pdf; Immigration

7   Court Practice Manual, Chapter 8.2: Automatic Stays, at 123, *available at*

8   http://www.justice.gov/eoir/vll/OCIJPracManual/Practice_Manual_review.pdf.  Thus,

9   the only way for an alien to prevent his or her removal immediately following the

10  Board's dismissal of his or her appeal is to seek an immediate stay of the removal

11  order from a federal court.  *See* National Immigration Project, "Seeking a Judicial

12  Stay of Removal in the Court of Appeals: Standard, Implications of ICE's Return

13  Policy and the OSG's Misrepresentation to the Supreme Court and Sample Stay

14  Motion" (May 2012), *available at* http://www.nationalimmigrationproject.org/

15  legalresources/practice_advisories/pa_Seeking_a_Judicial_Stay_of_Removal_May20

16  12.pdf ("Once an order of removal becomes administratively final, the Department of

17  Homeland Security (DHS), acting through its component agency U.S. Immigration

18  and Customs Enforcement (ICE), immediately may remove the individual.

19  Significantly, there is no automatic stay of removal during the 30-day period for filing

20  a petition for review.").  Thus, a detainee with a dismissed Board appeal who has not

21  yet obtained a stay of removal is excepted from receiving a bond hearing unless or

22  until that detainee's removal order is stayed by a court of competent jurisdiction.

23          In accordance with the government's statutory removal authority, and contrary

24  to Petitioners' representation that the government does not remove individuals during

25  ――――――――――――

26  eliminated automatic stays pending completion of judicial review).  Thus, the
    operative date for purposes of the exception is the date that the order is

27  administratively final.  By regulation, that date is the date that the Board dismisses the
    alien's appeal of the removal order.  *See* 8 C.F.R. §§ 1241.1(a), 241.1.

28

the 30-day period, Respondents regularly remove detainees within thirty days of their removal order of becoming administratively final.  During discovery in this case, Respondents produced extensive documentation of this practice.  *See* Exhibit A, Declaration of Sarah Wilson ("Wilson Decl.") at ¶¶ 3-6 & Exhibit 2 to Wilson Decl. During discovery, Respondents agreed to produce database information for a sample of 1022 class members.  The final spreadsheet produced by U.S. Immigration and Customs Enforcement shows that, as of the close of discovery, nearly 20% of the sample class members were removed during the thirty-day window following dismissal of the detainee's appeal by the Board.  *See id*. at ¶ 5.  When looking only at the sample class members who had completed their administrative proceedings by the close of discovery, the percentage of those removed during this period rises to approximately 30%.  *Id*.

Despite the prevalence of the practice, Petitioners fail to cite any binding legal authority for their claim that Respondents are not permitted to remove a detainee until the time for filing a petition for review has expired.  Instead, Petitioners rely exclusively on a non-precedential footnote from the Ninth Circuit's decision in *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008).  Petitioners vastly overstate the significance of the cited dicta for several reasons.  First, the cited footnote does not address any issue related to Respondents' removal authority.  Nothing in *Prieto* prevents Respondents from removing individuals with final orders of removal and no stay of that removal order, and, therefore, it has no bearing on the meaning of the relevant exception to the class definition.  Second, the footnote is not a binding holding by the Court.  The issue presented to the *Prieto* court was which immigration detention statute governs *after* an alien with a final order of removal files a petition for review and obtains a stay of removal.  The court was not presented with the question of which detention statute governs *prior* to an alien with a final order of removal filing a petition for review and obtaining a stay of removal.  At best, the footnote may be read as the *Prieto* court speculating on (but not answering) a question of detention

1  authority –not removal authority – that the court was not presented on appeal.  Thus,

2  *Prieto* provides no support for Petitioners' reading of the class definition.[5]

3      Rather than rely on legal support, Petitioners complain that the exception is

4  "impractical" and harms detainees' "statutorily-protected appellate rights."  ECF No.

5  367-1 at 11.  Petitioners' argument makes two false assumptions.  It incorrectly

6  assumes that (1) aliens are prohibited from filing a petition for review from outside of

7  the United States, and (2) aliens have a right to remain in the United States during the

8  judicial review process.  Because there is no requirement that a detainee file a petition

9  for review from inside of the United States and detainees have no right – statutory or

10 otherwise – to remain in the United States during the appellate process, Petitioners

11 cannot be correct that removal impacts any appellate rights.  Additionally, Petitioners'

12 practicality concerns are misplaced as Respondents have seamlessly incorporated the

13 exception into the compliance process such that the detainees affected are

14 immediately scheduled for hearings after the detainee files a petition for review and a

15 stay motion with the Ninth Circuit.[6]  *See* Respondents' First Status Report.

16 _____

17 [5] In addition to misapplying the *Prieto* detention footnote to speculate on the

18 government's removal authority, Petitioners also miscite it to contradict the plain text

19 of 8 U.S.C. § 1231(a)(1)(B), which provides that "the removal period begins on the

20 latest of the following: (i) the date the order of removal becomes administratively

final; (ii) if the removal order is judicially reviewed *and if the court orders a stay of*

21 *the removal* of the alien, the date of the court's final order; (iii) if the alien is detained

or confined…, the date the alien is released from detention or confinement.").  The

22 *Prieto* footnote concludes that "if an alien files a timely petition for review and

requests a stay, the removal period does not begin until the court of appeals (1) denies

23 the motion for a stay or (2) grants the motion and finally denies the petition for

review."  *Id.* at 1259 n.5.  Nothing in that statement provides support for Petitioners'

24 disregard for the statutory language and expansion of the class to cover individuals

25 that have not filed a petition for review and have not requested a stay of removal.

26 [6] In the event that a detainee is provided with a hearing before the Board dismissed the

27 appeal, but the detainee does not attempt to post the bond until after the Board's

dismissal, Respondents notify the detainee that he or she may post the bond as soon as

28 the detainee files a petition for review and a request for a stay.  In the event that the

12

*(Footnote continued)*

Finally, Petitioners complain that Respondents' failure to notify Petitioners of this "loophole" constitutes a breach of the Court's Order to communicate decisions to deny hearings to otherwise eligible detainees.  Paragraph six of the permanent injunction Order, however, excludes removable individuals from the order's notification provision.   Paragraph six states,

> If Respondents determine that an individual is not a class member even though that individual (a) is detained in Respondents' custody within the Central District, (b) has been detained by Respondents for six months or longer, (c) is not detained under 8 U.S.C. § 1226a or 8 U.S.C. [§]§ 1531-37, and (d) *remains detained even though the government does not have present authority to deport that individual*, Respondents shall notify class counsel of that individual's circumstances and the reason Respondents believe that individual is not a class member.

*Id*. (emphasis added).  By paragraph six's express terms, Respondents are not required to notify Petitioners' counsel every time Respondents decline to provide a hearing to a removable detainee.  Thus, it was not a violation of the Court's Order to decline to do so here.  Even so, as soon as Petitioners' raised the issue, Respondents communicated the basis for its decision and worked with Petitioners to ensure that the detainees that filed a petition for review and received a stay of their removal order were immediately provided with *Rodriguez* bond hearings.   *See* ECF No. 367, Kaufman Decl. at Exhibit H.

## II.    Petitioners are not entitled to a modified Permanent Injunction Order.

Petitioners request that the injunction be modified to require Respondents to produce, in addition to information currently required by the Order: (1) all audio records of bond hearings conducted pursuant to the injunction orders; (2) the outcome of all class member bond appeals; (3) the date the class member posted bond; (4) the

---

detainee reaches 180 days of immigration detention at a time when the detainee is ineligible for a bond hearing, the detainee is scheduled for the hearing immediately after filing the petition for review and the stay motion.

date of the class member was released on bond; (5) contact information for released class members; (6) contact information for any legal representative of a class member; (7) the full immigration court file of any class member requested by Petitioners.[7] Respondents oppose any modification to the proposed order for two reasons.  First, Petitioners' motion fails to cite any relevant legal standard or authority to support their asserted entitlement to the proposed modified order.  Second, Respondents oppose the proposed modifications as unduly burdensome.

### A.  Petitioners have not cited any authority to support modification of the permanent injunction based on the allegations contained in the motion.

The legal basis for Petitioners' proposed modified permanent injunction Order is entirely unclear from Petitioners' compliance motion.  To the extent that Petitioners' rely on new information regarding Respondents' compliance efforts, Petitioners fall well short of showing their "proposed modification[s] [are] suitably tailored to resolve the problems created by the changed factual or legal conditions." *United States v. Asarco,* 430 F.3d 972, 979 (9th Cir. 2005).  Because the motion lacks any clear legal basis for the modification, at best, it should be read as a motion for clarification of the class definition and the injunction's notice requirements.  The Court should not adopt Petitioners' proposed modifications to the injunction.

In order to obtain a modification of a final judgment based on changed circumstances, the moving party "must satisfy the initial burden of showing a significant change either in factual conditions or in the law warranting modification of the decree." *Id*.  If there are sufficient changed circumstances to warrant modification, "[t]he district court must then determine whether the

---

[7] Petitioners also requested that Respondents provide information on detainees who were found ineligible for a bond hearing; however, Respondents are already providing this information in the compliance spreadsheets in the field "Hearing Result." Detainees determined to be ineligible for a bond hearing under the injunction are indicated with either "No Jurisdiction" designation in that field.

14

proposed modification is suitably tailored to resolve the problems created by the changed factual or legal conditions." *Id*. A review of the relevant case law in this circuit shows that courts limit modification of monitoring and reporting provisions to instances where there is evidence of intentional non-compliance or repeated instances of non-compliance. For example, in *Coleman v. Brown*, --- F.Supp. 2d ----, 2013 WL 3326872, * 19-20 (E.D. Cal. 2013), the district court explained at length how the State of California had repeatedly failed to comply with the court's Order to reduce the prison population to a certain percentage, had "responded to this Court's deference with defiance," *id.* at *19, and had generally failed to comply with the court's implementation and reporting requirements. *Id.* at *19-20. Petitioners have not shown a sufficient change in circumstance or demonstrated the type of repeated or willful non-compliance present in *Coleman* required to justify a modification of the Order.[8]

The monitoring and disclosure provisions in the permanent injunction are sufficient to allow Petitioners to track compliance. In accordance with the permanent injunction Order, Respondents are providing compliance information to Petitioners in three distinct forms all aimed at supplying Petitioners (and the Court) with sufficient information to understand and monitor Respondents' compliance efforts. First, Respondents provide class counsel with notice of all bond hearings scheduled as a result of the permanent injunction at least one week in advance of the hearing. The early notice system allows Petitioners' counsel to both verify that notices are being provided in accordance with the Order and to allow class counsel to attend hearings.

---

[8] Under either theory, it would be improper for this Court to consider the parties' past disagreement over the legal meaning of the term "removal proceedings" to support any modification to the Order. The issue was completely resolved by the Court's Order and, since its entry, Petitioners have not raised any issue related to Respondents' compliance on this issue. Accordingly, the old dispute does not present any basis for a modification of the Order.

Second, Respondents filed a detailed status report describing Respondents' system for identifying persons eligible for bond hearings under the permanent injunction. The status report includes information about how class members are identified, including a detailed description of the factors used for determining whether a detainee is eligible for a bond hearing under the injunction, and a detailed description of Respondents' implementation procedures. Included with the report is a spreadsheet that includes information about bond hearings conducted or scheduled under both the preliminary and permanent injunctions dating back to before November 2012. For each class member, Respondents provide (1) the name of the immigration judge, (2) the date of the hearing, (3) the result of the hearing (including information about whether the immigration judge found a lack of jurisdiction), (4) whether the detainee is represented by counsel, and (5) whether the bond determination was appealed. Respondents will file updated status reports with this information every ninety days through August 1, 2015.

Finally, Respondents are required to notify class counsel any time Respondents decline to provide a bond hearing to any individual (a) in Respondents' custody within the Central District of California, (b) detained for six months or longer, (c) not detained under any of the exempted national security statutes, and (d) who remains detained even though the government does not have present authority to deport that individual. Although Respondents have not identified any detainees pursuant to this disclosure requirement, Respondents will continue to comply with the Court's order to provide such information in the future.

Petitioners incorrectly assert that these robust monitoring and disclosure requirements are insufficient to determine whether "Respondents treat class members as ineligible for bond based on undisclosed exceptions to the class definition (either by refusing to schedule them for bond hearings, or by finding them ineligible at the hearing)." ECF No. 367-1 at 15. First, the spreadsheet attached to Respondents' status report provides detailed information regarding the outcomes of the bond

hearings.  The spreadsheet includes information about individuals who were scheduled for a bond hearing, but denied bond on the basis that the immigration judge found it lacked jurisdiction to conduct the bond hearing.  Additionally, the Court's requirement that Respondents disclose the identities of certain individuals not scheduled for bond hearings provides Petitioners with an additional means of discovering any "undisclosed exceptions to the class definition."  The information provided in compliance with these provisions provides Petitioners with a much less time consuming method of identifying potential compliance issues than individually reviewing thousands of recorded bond hearings.  *See* Exhibit B, Declaration of Jeff Rosenblum ("Rosenblum Decl."), at ¶ 6.

Despite the fact that Petitioners have not raised a single compliance issue regarding the way in which bond hearings are conducted, Petitioners also contend that a modified permanent injunction order is necessary to allow them to monitor whether "Respondents conduct bond hearings in a manner that complies with this Court's Order."  ECF No. 367-1.  Even assuming Petitioners were entitled to a modified order to correct a compliance issue that has never been alleged, a modified order for this purpose is unnecessary.  First, Respondents' compliance spreadsheet provides Petitioners with sufficient information regarding the outcome of the bond hearing to determine whether the hearing went forward as required by the injunction.  Further, Petitioners are provided with at least one week's notice of all scheduled bond hearings and have the opportunity to attend those hearings at their convenience.  In the event that Petitioners are unable to send a representative to attend a particular hearing, Petitioners may contact the detainee's legal representative, whose contact information is listed on the bond notices provided to class counsel, and discuss the hearing in detail.[9]  To that end, it is unclear why production of information as to whether a class

---

[9] Since the class member and/or attorney information is already included on the notices provided to Petitioners it is unnecessary to require Respondents to sift through information already provided to Petitioners in order to provide it in a different format.

member posted bond and the date of release if bond was posted is essential to ensure that a bond hearing complied with the Court's Order. This information has no effect on Petitioners' efforts to determine whether the alien was provided a *Rodriguez* bond hearing with the burden on the government under a clear and convincing standard.

Petitioners have failed to demonstrate that the instances of non-compliance alleged – the failure to provide a written notice that substantively complies with this Court's Order and the failure to provide hearings for a small number of aliens who Respondents maintain are outside the class definition – have any connection to the incredibly burdensome documentary production Petitioners now demand as part of a modified final order. Petitioners' claims regarding the sufficiency of the notices are in no way addressed by the requested modifications to the Order. Similarly, the parties' dispute over the correct legal interpretation of the scope of the relevant class exception is an issue of class clarification rather than one of intentional non-compliance. Indeed, when a similar dispute occurred earlier in this case on the question of whether certain aliens were in the class, Petitioners sought clarification of the class, not punitive compliance discovery. In that instance, the Court clarified the class as including those aliens, and Respondents have provided those aliens with bond hearings in compliance with the Order. The present issue is similarly one of class clarification, not non-compliance and has no connection to the sweeping relief Petitioners seek.

**B.** **Production of the requested information would pose a substantial burden to Respondents.**

Production of the requested information would be extraordinarily burdensome to Respondents. *See* Rosenblum Decl. at ¶¶ 6-9. Before turning over any audio recordings or paper records for class members, an EOIR employee would be required to listen to the complete recording or review the entire record in order to properly redact or label the file in accordance with both federal law and the protective order entered in this case. *Id.* at ¶ 3. The production of the audio recordings alone would

require thousands of employee hours. *Id.* at ¶¶ 3-6. Going forward, in order to comply with Petitioners' request for all audio recordings, it would require EOIR to designate employees available to devote up to 160 hours per week to the review and processing of the recordings. *Id.* at ¶ 6. Production of recordings will also require transcription fees and material costs. *Id.* at ¶ 4. Additionally, the processing of each requested immigration file will require a substantial number of employee hours, up to eight hours for each requested file. *Id.* at ¶ 8.

Respondents could not comply with an order to produce the requested information without substantially impairing EOIR's ability to comply with other legal obligations and fulfill its core mission. *Id.* at ¶ 10. Because EOIR is currently operating under a hiring freeze and a restrictive budget due to sequestration, EOIR is unable to hire new employees to assist in the review and processing of the requested information. *Id.* at ¶ 9. As a result, EOIR would have to rely on its current employees to review and process the requested information and, in doing so, require its employees to abandon their ordinary duties in order to cover the hours required for compliance. *Id.* This would be especially burdensome to the Los Angeles Immigration Court ("LAIC") staff, the court staff responsible for providing the requested information. *Id.* The LAIC currently has thirty-three vacancies, and is staffed at only 62% of authorized support personnel. *Id.* Additional production burdens risk impacting the LAIC's backlog of approximately 48,877 pending cases with hearings scheduled as far out as June 30, 2016. *Id.* Because production of the requested information poses a substantial burden to Respondents, Respondents ask that the Court deny the request to modify the injunction.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, this Court should deny Petitioners' motion for compliance.


Date: November 4, 2013         STUART F. DELERY
                                       Assistant Attorney General
                                       Civil Division
                                       DAVID J. KLINE
                                       Director, Office of Immigration Litigation
                                       District Court Section
                                       THEODORE W. ATKINSON
                                       United States Department of Justice
                                       Office of Immigration Litigation

                                     /s/ Sarah S. Wilson
                                     SARAH S. WILSON
                                     Trial Attorney
                                     District Court Section
                                     P.O. Box 868, Ben Franklin Station
                                     Washington, DC 20044
                                     Phone: (202) 532-4700
                                     sarah.s.wilson@usdoj.gov

                                     Attorneys for Respondents

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 4, 2013, I served a copy of the foregoing through the Court's CM/ECF system on the following counsel of record:

Ahilan T. Arulanantham
ACLU Foundation of Southern
California
1616 Beverly Boulevard
Los Angeles, CA 90026
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Judy Rabinovitz
ACLU Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Jayashri Srikantiah
Stanford Law School
Immigrants' Rights Clinic,
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
650-724-2442
Fax: 650-723-4426
Email: jsrikantiah@law.stanford.edu

Cody Jacobs
Sidley Austin LLP
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-896-6000
Fax: 213-896-6600
Email: cjacobs@sidley.com

Sean Commons
Sidley Austin
555 West Fifth Street Suite 4000
Los Angeles, CA 90013-1010
213-816-6000
Fax: 213-896-6600
Email: scommons@sidley.com

*/s/  Sarah S. Wilson*
Sarah S. Wilson
Trial Attorney
United States Department of Justice

21