# Exhibit B

Declaration of Jeff Rosenblum

*Rodriguez v. Robbins, et al.*, No. 07-cv-3239-TJH (C.D. Cal.)

1 │ STUART F. DELERY
  │ Assistant Attorney General
2 │ Civil Division
  │ DAVID J. KLINE
3 │ Director, Office of Immigration Litigation
  │ District Court Section
4 │ THEODORE W. ATKINSON
  │ United States Department of Justice
5 │ Office of Immigration Litigation
  │ SARAH S. WILSON
6 │ Trial Attorney
  │ Georgia Bar No. 212212
7 │ P.O. Box 868, Ben Franklin Station
  │ Washington, DC 20044
8 │ Phone: (202) 532-4700
  │ sarah.s.wilson@usdoj.gov
9 │
  │ Attorneys for Respondents
10│
  │           UNITED STATES DISTRICT COURT
11│           CENTRAL DISTRICT OF CALIFORNIA
  │                 WESTERN DIVISION
12│

13│ ALEJANDRO RODRIGUEZ, *et al.*,    )    Case No. CV 07-3239-TJH (RNBx)
                                       )
14│           Petitioners,             )    **DECLARATION OF JEFF**
                                       )    **ROSENBLUM IN SUPPORT OF**
15│    vs.                             )    **RESPONDENTS' OPPOSITION TO**
                                       )    **PETITIONERS' MOTION FOR**
16│ TIMOTHY S. ROBBINS, *in his*       )    **COMPLIANCE**
  │ *capacity as U.S. Immigration and* )
17│ *Customs Enforcement, Los Angeles* )
  │ *District Field Office Director, et al.,* )
18│                                    )
                                       )
19│           Respondents.             )
                                       )
20│                                    )
                                       )
21│ _____    )

22│

23│ I, Jeff Rosenblum, declare as follows:

24│        1.    I serve as the General Counsel of the Executive Office for Immigration

25│ Review (EOIR).  In this capacity, I provide legal counsel and litigation assistance on

26│ matters pertaining to the Immigration and Nationality Act and other laws and

27│ procedures as they relate to EOIR, among other duties.  I have served in this position

28│ since my appointment in 2012.

2.    I prepared this declaration to explain the costs and personnel resources involved in providing Petitioners with: (1) all electronically-stored audio recordings of bond hearings that have occurred pursuant to the Court's injunction orders; (2) additional status report information; and (3) the immigration files of "certain class members" to be requested by Petitioners at an unknown time in the future.

3.    Before turning over audio recordings for class members, an EOIR employee would likely be required to listen to the complete recording in order to properly redact or label the recordings in accordance with both federal law and the protective order entered in this case. Specifically, federal law prohibits federal agencies and employees from releasing information pertaining to an alien's request for asylum or withholding of removal. Federal law also prohibits the release of *any* information about aliens who have applied for a T-visa, U-visa, Temporary Protective Status, or protection under the Violence Against Women Act. Under the protective order in this case, Respondents are permitted to release some categories of this information, but it must be carefully reviewed, redacted, and labeled for confidentiality. Therefore, individualized review of the recordings by an EOIR employee is necessary prior to release.

4.    Where redactions are required by law or the protective order, EOIR would have to send the recording to an outside vendor for transcription at an estimated cost of $3.50/page of transcription. EOIR does not have the ability to apply redactions to the audio recordings without first having the audio recordings transcribed. The transcription costs alone would present a substantial, unanticipated cost to the agency.

5.    EOIR estimates that an individualized review and processing of the requested audio recordings and any necessary transcripts would normally require between one-half to four (and sometimes more) employee hours per hearing, depending on the individual case. As a result, an EOIR employee, removed from all other responsibilities, could review and process no more than 2 to 16 audio recordings per day.

2

6.      To date, EOIR has scheduled more than 1,200 bond hearings pursuant to the Court's injunction orders.  The number of bond hearings held in a given week may fluctuate a great deal.  While the court has held as few as 5 hearings in a given week, currently that number is closer to between 20-40 hearings per week.  Based on these estimates and the estimated amount of time required for reviewing and processing each recording, it would require a minimum of between 600 to 4,800 employee hours to review and process just the audio recordings for hearings that have already taken place.  Going forward, in order to comply with Petitioners' request for all audio recordings, it would require EOIR to designate employees available to devote up to 160 hours per week to the review and processing of the recordings.  This would pose a substantial burden on EOIR and would negatively impact EOIR's ability to complete other necessary court functions, as well as comply with other obligations.

7.      Petitioners' request that Respondents' status reports also contain appeal outcome, date of release, and detainee contact information also presents a burden to Respondents.  Requiring this additional information would prevent EOIR from independently generating the reports, and would require ICE input in order to produce any future report.

8.      The production of additional immigration files of "certain class members" would also be substantially burdensome to EOIR.  Any Record of Proceeding ("ROP") turned over pursuant to court order would require review and redaction by an EOIR employee as described in paragraph 3 of this declaration.  Although it is difficult to quantify the burden without knowing how many files Petitioners plan to request, I estimate that the review and processing of one complete file would require between 1 and 8 employee hours, depending on the particular case file.  For example, the review of 2,000 ROPs would take between 2,000 and 16,000 employee hours.  The review of 5 to 40 ROPs per week would require 40 to 320 employee hours per week.  This would be extremely burdensome to a small agency like EOIR.

9.    EOIR has been operating under a hiring freeze since 2011, and its budget has been further restricted by sequestration.  As a result, EOIR is unable to hire new employees to fill its numerous vacancies.  The Los Angeles Immigration Court ("LAIC") staff is responsible for providing the information necessary to comply with EOIR's reporting.  The LAIC currently has 33 vacancies, and is staffed at only 62% of authorized support personnel.  As of October 24, 2013, the LAIC has a backlog of approximately 48,877 pending cases, and is currently scheduling hearings as far out as June 30, 2016.

10.    Based on my experience and understanding of our available resources, EOIR could not comply with an order to produce the requested information without requiring employees to abandon their ordinary duties in order to cover the hours required for compliance.  This would substantially impair EOIR's ability to comply with other legal obligations and fulfill its core mission.

Dated: November 4, 2013

Jeff Rosenblum