1  AHILAN T. ARULANANTHAM (SBN 237841)
   aarulanantham@aclu-sc.org
2  MICHAEL KAUFMAN (SBN 254575)
   mkaufman@aclu-sc.org
3  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West 8th Street
4  Los Angeles, CA  90017
   Telephone: (213) 977-5211
5  Facsimile: (213) 977-5297

6  *Attorneys for Petitioners*
   (Additional Counsel listed on following page)

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10 ALEJANDRO RODRIGUEZ,            ) Case No. CV-07-3239-TJH (RNBx)
   ABDIRIZAK ADEN FARAH,           )
11 YUSSUF ABDIKADIR, ABEL PEREZ    ) **REPLY IN SUPPORT OF**
   RUELAS, JOSE FARIAS CORNEJO,    ) **PETITIONERS' MOTION FOR**
12 ANGEL ARMANDO AYALA, for        ) **COMPLIANCE**
   themselves and on behalf of a class of )
13 similarly-situated individuals,  ) Honorable Terry J. Hatter
                                    )
14            Petitioners,          )
                                    )
15            v.                    )
                                    )
16 ERIC HOLDER, United States Attorney )
   General; JANET NAPOLITANO,      )
17 Secretary, Homeland Security;   )
   THOMAS G. SNOW, Acting Director, )
18 Executive Office for Immigration )
   Review; TIMOTHY ROBBINS, Field  )
19 Office Director, Los Angeles District )
   Immigration and Customs Enforcement; )
20 WESLEY LEE, Officer-in-Charge, Mira )
   Loma Detention Center; et al.;  )
21 RODNEY PENNER, Captain, Mira    )
   Loma Detention Center; SANDRA   )
22 HUTCHENS, Sheriff of Orange County; )
   OFFICER NGUYEN, Officer-in-     )
23 Charge, Theo Lacy Facility; CAPTAIN )
   DAVIS NIGHSWONGER, Commander, )
24 Theo Lacy Facility; CAPTAIN MIKE )
   KREUGER, Operations Manager, James )
25 A. Musick Facility; ARTHUR      )
   EDWARDS, Officer-in-Charge, Santa )
26 Ana City Jail; RUSSELL DAVIS, Jail )
   Administrator, Santa Ana City Jail, )
27                                  )
             Respondents.          )
28

JUDY RABINOVITZ
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

MICHAEL TAN (SBN 284869)
mtan@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone:  (415) 343-0779
Facsimile:  (415) 395-0950

JAYASHRI SRIKANTIAH (SBN 189566)
jsrikantiah@law.stanford.edu
STANFORD LAW SCHOOL
IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS (SBN 217603)
scommons@sidley.com
WEN W. SHEN (SBN 288334)
wshen@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Petitioners

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT.......................................................................................................3

I.      There is No Basis for Respondents' Refusal to Comply with
        This Court's Order Requiring Improved Notice. ...........................................3

II.     Respondents Have Again Excluded Class Members Without
        Justification. ......................................................................................................5

III.    This Court Must Order Additional Monitoring Information to
        Ensure Compliance with the Permanent Injunction. ...................................10

        A.      The Information Sought is Essential to Monitor Compliance. ............10

        B.      The Information Sought Can Be Disclosed With Minimal Burden. ....12

        C.      This Court Has the Authority to Order Monitoring of Its Orders. .......14

CONCLUSION .................................................................................................16

i

# TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*,
   284 F.3d 1091 (9th Cir. 2002) ................................................................16

*Cottone v. Reno*,
   193 F.3d 550 (D.C. Cir. 1999) ...............................................................13

*Delay v. Gordon*,
   475 F.3d 1039 (9th Cir. 2007) ...............................................................15

*Hoptowit v. Ray*,
   682 F.2d 1237 (9th Cir. 1982) ...............................................................16

*Judulang v. Holder*,
   132 S. Ct. 476 (2011) ...............................................................................8

*Nat'l Organization For the Reform of Marijuana Laws (NORML) v. Mullen*,
   828 F.2d 536 (9th Cir. 1987) ..........................................................15, 16

*Prieto-Romero v. Clark*,
   534 F.3d 1053 (9th Cir. 2008) ........................................................*passim*

*Rufo v. Inmates of Suffolk County Jail*,
   502 U.S. 367 (1992) ...............................................................................15

*Small v. Avanti Health Sys.*,
   LLC, 661 F.3d 1180 (9th Cir. 2011) ......................................................16

*United States v. Asarco*,
   430 F.3d 972 (9th Cir. 2005) .................................................................15

*United States v. New York Tel. Co.*,
   434 U.S. 159 (1977) ...............................................................................15

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) .................................................................................6

**STATUTES**

8 U.S.C. § 1231(a)(1)(B) ................................................................................7

28 U.S.C. § 1651(a) .....................................................................................15

1

**OTHER AUTHORITIES**

2   Fed. R. Civ. P. 60...........................................................................................15

3   Fed. R. Civ. P. 60(b)......................................................................................15

4   Fed. R. Civ. P. 60(b)(5).................................................................................15

5   Fed. R. Civ. P. 60(b)(6)...........................................................................14, 15

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Throughout this litigation, Petitioners have had to seek the assistance of the Court to compel Respondents to comply with their obligations. Petitioners were forced to do so repeatedly during discovery (Dkt. 165, 202), after the Court issued its preliminary injunction (Dkt. 336), and now again in this Motion for Compliance. Respondents' Opposition ignores this history and, in doing so, shows uncharacteristic disregard for this Court's orders.

First, Respondents claim that this Court's summary judgment order (the "Order") requiring a "plain language notice, reasonably calculated to inform a person unfamiliar with English and the United States legal system of the pendency of the hearing" can be satisfied with a notice that provides notice "of" only the date, time and location of the hearing. This insupportable reading of this Court's Order ignores that the parties disputed the sufficiency of such a bare-bones notice at summary judgment, and that this Court ruled for Plaintiffs in that dispute. Respondents' position that they are under no obligation to issue a revised notice cannot be reconciled with the prior briefing and Order. Notably, Respondents identify no defect in Plaintiffs' proposed notice, except insofar as they suggest that it provides *too much* information.

Second, Respondents admit that they have unilaterally excluded a fourth group of individuals from class membership without leave of the Court, and without notice to Petitioners as this Court specifically ordered. In defending this latest exclusion, Respondents ask this Court to disregard as "dicta" or "speculat[ion]" the Ninth Circuit's decision in *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008) and to approve their practice of deporting class members before they can exercise statutory appellate rights. However, Respondents never explain why this Court should ignore both the language and the rationale of *Prieto-Romero*, under which these individuals plainly remain class members until after the 30-day period for an appeal lapses, unless they waive their right to an appeal

1

1    before that time.

2        Third, the Court should grant Petitioners' request for access to information

3    and supplemental periodic disclosures to more effectively monitor compliance.

4    Respondents' continued pattern of non-compliance demonstrates the need for this

5    additional information.  Respondents insist that the current disclosure requirements

6    suffice, but those disclosures would not have revealed any of the prior violations

7    Petitioners have brought to this Court's attention, and would leave Petitioners in

8    the dark as to whether Respondents conduct bond hearings in compliance with the

9    requirements established by this Court's orders.  Moreover, Respondents' burden

10   arguments are the exact same arguments this Court rejected a year and a half ago in

11   the discovery context. *See* Dkt. 210.  Because Respondents do not need to

12   manually listen to every audio recording and review every court file prior to

13   production, and do not claim producing them is otherwise burdensome, the Court

14   should order Respondents to provide Petitioners access to this critical information.

15       Finally, Petitioners wish to underscore that they do not make these requests

16   lightly.  Petitioners have undertaken extensive efforts to monitor Defendants'

17   compliance without the benefit of the discrete additional sources of information

18   that they seek here.  However, the information currently available to Petitioners is

19   not sufficient to adequately monitor compliance.  Unfortunately, this has meant

20   that class members have been denied their rights, sometimes for months, before

21   Petitioners discover an improper policy or practice, followed by further delays as

22   Petitioners meet and confer with Respondents and then seek relief from the Court.

23   Accordingly, this Court should order the additional monitoring information to

24   ensure that class members' rights are adequately protected.

25

26

27

28

2

# ARGUMENT

## I.    There is No Basis for Respondents' Refusal to Comply with This Court's Order Requiring Improved Notice.

Just as they did when making prior arguments to justify exclusions of three categories of persons from the Class, Respondents justify their refusal to issue compliant notices based on an implausibly narrow reading of this Court's Order.

Respondents claim that they are under no obligation to alter their notice procedures because this Court only required plain language notice to each detainee "of his or her upcoming hearing." Dkt. 378 at 5. Seizing on the word "of," Respondents argue that the Order requires nothing more than notification "of" the date, time, and location of a *Rodriguez* bond hearing. But given that the *Casas* notice procedures (the procedures at issue in summary judgment) provide such scheduling information, the Court's direction to provide a plain language notice "reasonably calculated to inform a person unfamiliar with English and the United States legal system of the pendency of the hearing" must contemplate more than basic scheduling information. Dkt. 353 at 3. Otherwise, this language in the Court's Order would be entirely superfluous.

Moreover, Respondents' reading of this Court's Order cannot be squared with the arguments advanced in the summary judgment briefing. The parties disputed at length whether Respondents' existing notice procedures adequately advised class members about the nature of the bond hearing process, and how to prepare for it. *Compare* Dkt. 281 at 2 (Petitioners' brief stating that "Respondents should be required to provide adequate notice of the hearings in plain language, sufficient to inform detainees about the hearings and to afford them an opportunity to prepare for them."); *id.* at 40, 44 (arguing existing notice insufficient because it does not explain "what the hearing entails" or "that they must prepare for it by submitting the necessary legal arguments and evidence"); *with* Dkt. 299 at 53 (Respondents' brief arguing that citation to Immigration Court Manual is sufficient for class members "to understand the procedures for a bond hearing"). Petitioners

3

argued that such advisals were necessary to protect class members' rights because many of them have limited English language proficiency, are illiterate, or have restricted access to legal materials.  *See* Dkt. 281 at 41-43.  This Court agreed with Petitioners, citing class members' limited English proficiency and familiarity with the United States legal system, and ordering Respondents to provide the improved notice that Petitioners sought.  Dkt. 353 at 3.

Respondents are on even shakier footing in suggesting that Petitioners only sought improved notice as an alternative to automatic hearings.  *See* Dkt. 378 at 6-7.  A review of Petitioners' briefing makes clear that they sought both automatic hearings and improved notice for such hearings.[1]  Respondents' brief confirms that they understood that Petitioners sought both forms of relief, as Respondents observed that Petitioners sought "provision of 'plain language' notice of such *automatic* hearings."  Dkt. 330 at 9 (emphasis added).  Therefore, contrary to what Respondents now claim, Petitioners clearly argued for improved notice "in the event that the Court orders automatically scheduled hearings," Dkt. 278 at 7, and the Court ordered *both* automatic hearings and improved notice.  *See* Dkt. 353 at 4 (holding "Petitioners' request that the bond hearings be provided automatically and that the notice to detainees of the bond hearings be provided in plain language are consistent with the due process concerns of *Casas*, *Singh*, and *Rodriguez II*.").

Respondents next argue that this Court's findings with respect to the sufficiency of the *Casas* notice procedures are *irrelevant* to the sufficiency of the current *Rodriguez* notices because the current notices were not before the Court on summary judgment.  *See* Dkt. 378 at 8 (arguing that this Court's ruling was

---

[1] *See* Dkt. 281 at 2 (arguing "prolonged detention bond hearings (a) should occur automatically. . . *and* (c) that Respondents should be required to provide adequate notice of the hearings in plain language . . .") (emphasis added); *id.* at 39 ("Due process also requires certain critical procedural protections beyond those provided in *Casas* hearings, namely: automatic hearings; adequate notice . . . ."); Dkt. 281-9 (Petitioners' proposed order) (requiring automatic hearings and improved notice).

4

"limited to finding that the 'legalistic' and 'confusing' *Casas* and *Diouf* systems fell short"). As Petitioners explained in their Motion, however, Petitioners necessarily addressed the *Casas* notice procedures at summary judgment because *Casas* provided the existing legal framework at the time. *See* Dkt. 367 at 5-6. Moreover, as Petitioners described in their moving papers, the *Rodriguez* notice is *more deficient* than the *Casas* notice. *Id.* at 6. Respondents cannot explain how a notice that has fewer procedural protections than a *Casas* notice could possibly comply with this Court's Order requiring a notice with more procedural protections than the *Casas* notice.

Finally, this Court should reject Respondents' request that they be permitted additional time to draft a revised notice to comply with this Court's Order. *See* Dkt. 378 at 8 n.3. Respondents have had several months to prepare an alternative notice: first, when this Court ordered it; second, when the parties agreed to negotiate a draft revised notice and Petitioners presented Respondents with a draft; and third, in opposition to this Motion. Respondents should not be allowed to delay implementing the Order further through their own intransigence. Accordingly, the Court should adopt Petitioners' notice, at least until such time as Respondents propose an alternative form of notice that complies with the terms of the Court's Order.

## II.    Respondents Have Again Excluded Class Members Without Justification.

Respondents admit that they have again denied bond hearings to persons who have been detained for more than six months and whose immigration cases remain pending. This time Respondents have excluded persons within the 30-day period for filing a petition for review to the Ninth Circuit. As with their prior attempts to exclude class members, Respondents seek to exclude these individuals by twisting the class definition and disregarding governing Ninth Circuit law. The Court should reject Respondents' latest unjustified narrowing of the class

5

1  definition, and reaffirm its prior direction to Respondents to seek leave before

2  unilaterally excluding persons from the protections afforded by this Court's orders.

3      Respondents claim that the disputed individuals fall within an exclusion to

4  the class definition for detainees "who have [1] a final order of removal and [2] no

5  stay of that removal order, such that the government has legal authority to remove

6  them." Dkt. 111 at ¶ 107. That exclusion is inapplicable for three reasons.

7      *First*, the exclusion – *drafted by Petitioners* – was intended to cover

8  individuals who "deserve different treatment because their on-going detention is

9  the product of repatriation problems rather than the pendency of their removal

10  cases." Dkt. 336 at 4 n.2. Such individuals are subject to a distinct detention

11  regime under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678

12  (2001), which applies to individuals who cannot be deported because their

13  countries refuse to take them back (or, relatedly, to persons who have no country to

14  which they can be repatriated). Respondents do not – and cannot – contend that

15  the individuals at issue are covered by *Zadvydas*; instead, these individuals are

16  being detained because of the "pendency of their removal case," as with every

17  other person in the class. Indeed, at no point prior to the current dispute has either

18  party or this Court *ever* suggested that this exception covers individuals detained

19  during the pendency of a removal case. As such, it is clear that Respondents have

20  again invented a new exception to the class definition, despite this Court's prior

21  admonishment that there "are no exceptions, express or implied, to the class

22  membership definitions." Dkt. 353 at 2.

23      *Second*, the Ninth Circuit has already addressed this issue, and rejected the

24  precise interpretation Respondents put forward here regarding the extent of the

25  government's removal authority. *See Prieto-Romero*, 534 F.3d at 1059 n.5

26  (rejecting the argument that the statute authorizes "that DHS's removal efforts

27  begin as soon as an alien's removal order is administratively final" and holding

28  "the removal period does not begin until the court of appeals (1) denies the motion

1  for a stay or (2) grants the motion and finally denies the petition for review").

2  Respondents do not argue that *Prieto-Romero*'s rationale does not apply here.

3  Instead, their primary response is to ask the Court to disregard the Ninth Circuit's

4  analysis as a "non-precedential footnote" that should be viewed as mere

5  "speculat[ion]." *See* Dkt. 378 at 11.  However, neither the Ninth Circuit's

6  language nor its analysis can be so easily brushed aside.  The *Prieto-Romero* court

7  considered the same statutory scheme at issue here and determined that the

8  relevant statutes must be read to authorize removal only *after* a detainee has an

9  opportunity to request a stay of removal *and* the Ninth Circuit rules on any such

10  request.  *Id.* at 1058-59.  Respondents also suggest that *Prieto-Romero* analyzed

11  only the government's detention authority, not its removal authority, *see* Dkt. 378

12  at 11, but the Ninth Circuit expressly construed the government's removal

13  authority under 8 U.S.C. § 1231(a)(1)(B).  *See id.* at 1059 n.5.

14       Ironically, Respondents claim that Petitioners have cited no "legal support"

15  for their position regarding removability, Dkt. 378 at 12, but then rely primarily on

16  practice manuals entitled to no persuasive weight or deference.  *See* Dkt. 378 at 10.

17  Respondents also cite *Leiva-Perez v. Holder* in a footnote to argue that

18  "[r]emovability does not require an order to be judicially final, only

19  administratively final."  640 F.3d 962, 964 (9th 2011) (per curiam); Dkt. 378 at 9

20  n.4.  *Leiva-Perez* sets forth the general rule that detainees are not entitled to

21  automatic stays and clarifies the applicable standard for granting discretionary

22  stays of removal.  *See id.* at 964-66.  It does not, as *Prieto-Romero* does, squarely

23  address the issue of when the "removal period" begins to run.  *See Prieto-Romero*,

24  534 F.3d at 1060.[2]  As a result, Respondents have no response to the Ninth

25  

26  [2] Respondents' argument is also besides the point, as Petitioners have never argued
   that the removal period only begins after a judicially final order of removal.

27  Rather, Petitioners argue that, under *Prieto-Romero*, the removal period can only

28  commence after the Ninth Circuit rules on any request for a stay.

1    Circuit's analysis and ruling in *Prieto-Romero*.

2        Respondents next cite to a "long-standing" practice of deporting such

3    individuals. *See* Dkt. 378 at 10-11.  Respondents cannot make a practice legal by

4    engaging in it repeatedly.  As the Supreme Court has cautioned, "[a]rbitrary

5    agency action becomes no less so by simple dint of repetition."  *Judulang v.*

6    *Holder*, 132 S. Ct. 476, 488 (2011).  To the extent Respondents have continued to

7    deport individuals who have not yet waived their right to file a petition for review

8    and stay request with the Ninth Circuit after *Prieto-Romero*, that conduct violates

9    the immigration statutes as interpreted by *Prieto-Romero*.[3]

10        *Third*, Respondents do not dispute the significant practical problems

11   engendered by their expansive view of the government's ability to remove

12   individuals during the 30-day window to appeal to the Ninth Circuit.  On

13   Respondents' view, class members routinely fall out of the class immediately upon

14   the BIA's decision and then rejoin the class several days later when they file a

15   petition for review.  This unnatural approach to class membership not only runs

16   afoul of the Ninth Circuit's holding in *Prieto-Romero* that Congress could not have

17   intended the removal period to operate in such fits and stops, *see* 534 F.3d at 1059

18   n.5, but it also results in class members being detained in excess of six months

19   without access to a bond hearing.

20

21   [3] Respondents suggest Petitioners should have discovered this practice sooner,
     citing to database reports produced in discovery.  Dkt. 378 at 11.  Petitioners had
22   no reason to suspect that Respondents would violate the immigration laws and this
     Court's orders by removing class members during the 30-day appeal period, let
23   alone ferret out information from the complex database reports produced by
     Respondents.  Even if Petitioners had managed to use the database reports to
24   discover that Respondents had deported individuals during the 30-day appeal
25   period, that information alone would not have demonstrated that Respondents
     violated this Court's Order.  As Petitioners have repeatedly acknowledged,
26   Respondents may lawfully remove an individual before the 30-day period has run,
27   if the individual waives his or her right to an appeal.

28

1      Moreover, Respondents' practice of deporting class members before they
2  can file a petition for review and a stay of removal – indeed, in some cases, *before*
3  *they even get notice of the BIA's decision* – jeopardizes class members' statutorily-
4  protected appellate rights.  Respondents claim that there is no harm to class
5  members because they may litigate their petition for review from abroad, *see* Dkt.
6  378 at 12, but Respondents cannot deny that the burden and challenges of pursuing
7  an appeal from abroad are far greater on individuals.  Respondents cannot seriously
8  assert, for example, that an asylum seeker or victim of sexual abuse applying for
9  relief due to past persecution or torture is at no risk of harm if removed before he
10 or she has an opportunity to seek a stay.  The ability to pursue appeals abroad is
11 cold comfort to class members who wish to remain in the United States with their
12 families while they litigate their appeals and could have obtained a stay of removal
13 but for Respondents' practice of using removals to prevent the full exercise of
14 statutorily-granted rights.

15     Finally, this Court should not excuse Respondents' failure to notify
16 Petitioners of this latest unilateral carve-out from the class.  *See* Dkt. 353 at 5-6.
17 Respondents argue that the notification provision does not apply because they
18 *believed* that the individuals in question were not class members.  *See* Dkt. 378 at
19 13.  Respondents' interpretation of the notification provision renders the duty to
20 notify a nullity.  This Court ordered notification precisely because Respondents
21 could always assert that they *believed* certain people were not class members.  The
22 notification provision allows Petitioners and the Court to examine the purported
23 basis for Respondents' exclusion before Respondents' deprive class members of
24 their hard-fought rights.

25     Because Respondents have again sought to re-define their obligations under
26 this Court's orders, and even now have not assured the Court that there are no
27 other exclusions, Petitioners request an order directing Respondents to submit a
28 declaration from a person most knowledgeable who can either: (1) confirm that no

1    other exclusions exist beyond the four identified to date by class counsel; or

2    (2) identify (a) each and every purported exception that Respondents believe entitle

3    them to detain class members for longer than six month without a bond hearing,

4    (b) the basis for each and every such exclusion, and (c) the individuals impacted by

5    each and every such exclusion since this Court's preliminary injunction or the

6    Order, as applicable.

7    **III.    This Court Must Order Additional Monitoring Information to Ensure Compliance with the Permanent Injunction.**

8

9        Petitioners have studied Respondents' first status report, and it confirms

10   what Petitioners explained to the Court in their moving papers:  the report provides

11   information only about persons to whom Respondents have decided to provide

12   bond hearings.  It reveals nothing about whether class members have been denied

13   bond hearings due to hyper-technical or imagined carve-outs from the class

14   definition.  And it reveals nothing about whether immigration judges have

15   followed this Court's directions regarding the appropriate standards of proof and

16   factors to consider at bond hearings.  If anything, the report raises fresh concerns.

17   Roughly 20% of persons initially identified as class members have been denied

18   bond hearings on purported grounds of "lack of jurisdiction" or unidentified

19   "other" reasons.  Petitioners thus request the Court direct Respondents to

20   supplement those disclosures and grant Petitioners access to immigration court

21   files.

22       As explained below, granting these requests will impose no burden on

23   Respondents, yet will supply Petitioners with vital tools to safeguard the rights of

24   class members.  In addition, despite Respondents' arguments to the contrary, the

25   Court would be well within its inherent authority and discretion to grant this relief.

26   **A.    The Information Sought is Essential to Monitor Compliance.**

27       Respondents oppose the request for additional disclosures as unnecessary.

28   The undisputed fact is that none of the information disclosed by Respondents to

date would have enabled Petitioners to identify even one of the compliance issues Petitioners have brought to this Court's attention.

First, Respondents cite the Order's notification provision as a "robust monitoring and disclosure requirement[]." *See* Dkt. 378 at 16. This ignores that Respondents already have *violated that very provision* by failing to disclose their latest exclusion. According to Respondents, they do not need to disclose carve-outs so long as they genuinely believe they are warranted, an interpretation that renders the provision entirely null – a fact confirmed by Respondents' acknowledgement that they "have not identified any detainees pursuant to this disclosure requirement." Dkt. 378 at 16. The reality is that the notification provision, in Respondents' hands, has proved to provide no protection at all.

Second, Respondents cite their disclosure of bond hearing notices to class counsel. *See* Dkt. 378 at 15. Petitioners already explained in their Motion the multiple reasons why the notices do not enable effective monitoring, and Respondents do not refute any of those points, so Petitioners will not repeat them here. *See* Dkt. 367 at 16-17.

Third, Respondents cite their recently-filed status report, but the limited data disclosed raises more questions about Respondents' compliance than it answers. The report documents that immigration judges have refused to give bond hearings to *nearly 20%* of individuals who Respondents initially identified as eligible class members, but do not identify why each individual was denied a bond hearing despite their apparent eligibility. *See* Dkt. 379 (spreadsheet documenting that of the individuals who have had hearings in immigration court, the outcome was "no jurisdiction" in 12.5% of cases and "other" in 6.6% of cases). The report also provides little information regarding the individuals that Respondents initially determined were not class members, and therefore do not reveal if Respondents have unilaterally determined that certain individuals do not qualify as members –

1    as they have done on at least four separate occasions thus far.[4]

2          The report also sheds little light on whether Respondents have conducted

3    bond hearings consistent with this Court's order.  The report includes information

4    about the size of bonds initially set by immigration judges, but because

5    Respondents refuse to disclose information about the outcome of appeals, this does

6    not even constitute the size of the bonds ultimately set in many individuals' cases.

7    Moreover, this information obviously cannot reveal whether immigration judges

8    are applying the appropriate standards set forth in the Court's Order, or otherwise

9    complying with this Court's Order regarding how to conduct bond hearings.

10          **B.    The Information Sought Can Be Disclosed With Minimal Burden.**

11          Respondents also object to the request for additional monitoring information

12   on grounds of burden.  Their objections do not withstand scrutiny.

13          First, Respondents have *no* burden argument or evidence that disclosing the

14   requested database information would impose unreasonably upon the time of

15   immigration officials.  That information is maintained in the same databases as

16   information currently compiled for the status reports, and can be readily produced

17   by adding a handful of columns to those reports.  Because this information is

18   critical to monitor compliance, *see* Dkt. 367 at 20, the Court should order its

19   production.

20          Second, Respondents claim that they would be required to invest "thousands

21   of hours" to listen to audio files and review immigration court files "in order to

22   properly redact or label the file in accordance with both federal law and the

23   protective order entered in this case."  *See* Dkt. 378 at 18-19.  Specifically,

---

24   [4] The scant information provided suggests that Respondents may have

25   implemented additional exclusions without notice to Petitioners or this Court.  For
     example, Respondents state that they deny bond hearings to "aliens who were

26   already granted bond but have not yet posted that bond with ERO."  Dkt. 377 at 7.
     Respondents do not provide any further information regarding this exclusion, its

27   legal basis or why they have not previously disclosed it to Petitioners or the Court.

28

1   Respondents rely upon a declaration stating that they "likely" would have to

2   conduct a review of these materials before producing them because "federal law

3   prohibits" production of "information pertaining to an alien's request for asylum or

4   withholding of removal" or "any information about aliens have applied for a T-

5   visa, U-visa, U-visa, Temporary Protective Status, or protection under the Violence

6   Against Women Act."  *See* Dkt. 378-2 at ¶ 3.

7        The Court already has rejected these *exact arguments*.  In opposition to a

8   motion to compel discovery, Respondents argued that they would need to redact

9   certain information from class members' A files that fell within these

10  confidentiality provisions.  The Court directly rejected Respondents' arguments

11  and held that federal law does not bar production of such information to class

12  counsel, eliminating any purported need to redact such information prior to

13  production.[5]  That ruling applies with equal force here, and completely undermines

14  Respondents' purported need to redact such "confidential" information from the

15  requested audio recordings and court files.

16       Furthermore, Respondents never explain how proceedings that are open to

17  the public and subject to FOIA requests could be confidential.  *See Cottone v.*

18  *Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999); Dkt. 367 at 21-22.  Regardless,

19  Petitioners have no objection should Respondents want to produce or make these

20  materials available under the terms of the protective order governing this litigation.

21  Dkt. 227 (protective order permitting the disclosure of "confidential" information

22

23

24  ─────────────────────

25  [5] *See* Dkt. 210 at 4 (ruling that "[t]he asylum and VAWA, T & U confidentiality
    provisions do not foreclose court ordered discovery"); *id*. at 7 ("Similar to the
26  asylum and VAWA, T & U provisions, the battered spouse and children, SAW,
    legalization, and TPS statutory confidentiality provisions do not foreclose the
27  Court from compelling Respondents to disclose confidential information about
    former class members to Petitioners.").
28

13

to class counsel).[6]  In short, Respondents have no right or authority to "redact" the documents at issue, and any confidentiality concerns can be amply addressed by the Court's protective order.

Once Respondents' confidentiality argument falls to the wayside, so do their claims of burden.  Petitioners simply seek access to audio files and court files in the same manner as other participants in the immigration court system. Respondents routinely process requests for audio recordings and court files, and make them available to noncitizens and their counsel.  Petitioners thus would not be placing a new or different burden on Respondents by securing the right to access audio and court files, but instead only obtain the right to access these files without the delays and expenses associated with FOIA requests.[7]  Ordering periodic disclosure of the monitoring information requested by Petitioners therefore will not burden the immigration court system.

### C.     This Court Has the Authority to Order Monitoring of Its Orders.

Respondents also suggest that the Court should deny the request for additional monitoring information as an improper modification of this Court's permanent injunction under Rule 60(b)(6).  *See* Dkt. 378 at 3.

As an initial matter, Rule 60(b)(6) does not provide the relevant framework for the Court's exercise of discretion.  Rule 60(b)(6) is a "catch-all" provision that

---

[6] Petitioners can always address the applicability of the protective order to particular audio records with Respondents under the terms of the protective order should the need arise in the future.

[7] Respondents' burden arguments with respect to the court files are particularly weak, insofar as Petitioners have not asked Respondents to physically produce these documents.  Rather, Petitioners simply seek access to certain files in the event that review of electronic records reveals a compliance concern, and have offered to assume the burden of copying or scanning any requested files.  With respect to the audio files, Respondents nowhere claim that identifying and copying electronically-stored recording of bond hearings would create any discernible burden on immigration court staff.  Nor could they, as they routinely produce such audio recordings to noncitizens and their counsel.

1    "applies only when reason for granting relief is not covered by any of the other

2    reasons set forth in Rule 60." *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir.

3    2007).  Even the authority Respondents rely upon, *United States v. Asarco*, 430

4    F.3d 972, 979 (9th Cir. 2005), confirms that Rule 60(b)(5), not Rule 60(b)(6)

5    would govern if Petitioners were seeking to modify the substantive terms of the

6    permanent injunction.

7           Petitioners, however, do not seek to change the substantive provisions of the

8    permanent injunction.  Rather, Petitioners seek a separate order requiring the

9    disclosure of information that will enable Petitioners to effectively monitor

10   whether those substantive provisions are carried into effect.  The standards

11   applicable to a Rule 60(b)(5) motion "seek[ing] modification of a term of a consent

12   decree that arguably relates to the vindication of a constitutional right" do not apply

13   to changes that "are unrelated to remedying the underlying constitutional

14   violation."  *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 n.7 (1992);

15   *see also Nat'l Organization For the Reform of Marijuana Laws (NORML) v.*

16   *Mullen*, 828 F.2d 536, 542-43 (9th Cir. 1987) (holding "a post-judgment order of

17   reference to a master to monitor compliance with a consent decree was not a

18   modification of an injunction and thus not appealable" because "it does not by

19   itself have injunctive effect").

20          This Court possesses inherent authority to order monitoring separate and

21   apart from Rule 60(b).  That inherent authority derives from the well-established

22   "inherent power of the court to enforce its orders," codified in the All Writs Act,

23   28 U.S.C. § 1651(a).  *See NORML*, 828 F.2d at 544; *United States v. New York Tel.*

24   *Co.*, 434 U.S. 159, 172 (1977) (observing that the Supreme Court "has repeatedly

25   recognized the power of federal court to issue such commands under the All Writs

26   Act as may be necessary or appropriate to effectuate and prevent the frustration of

27   orders it has previously issued in its exercise of jurisdiction otherwise obtained.").

28          Respondents insist that "courts limit modification of monitoring and

15

1   reporting provisions to instances where is evidence of intentional non-compliance

2   or repeated instances of non-compliance," Dkt. 378 at 15, but the Ninth Circuit has

3   flatly rejected the proposition that "a determination of intentional disregard of

4   court orders" is necessary to justify the imposition of monitoring conditions,

5   finding that the mere "prospect of noncompliance" is sufficient. *NORML*, 828

6   F.2d at 542-43; *Hoptowit v. Ray*, 682 F.2d 1237, 1263 (9th Cir. 1982) (same).

7   Indeed, courts commonly require periodic disclosures similar to Petitioners seek

8   here to ensure compliance with injunctions and other orders, without requiring any

9   showing of prior non-compliance. *See, e.g.*, *Small v. Avanti Health Sys.*, LLC, 661

10  F.3d 1180, 1198 (9th Cir. 2011) ("We also find no error in the district court's

11  request for a status report on compliance with the preliminary injunction."); *A&M*

12  *Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1096 (9th Cir. 2002) (court required

13  "periodic reports . . . held several compliance hearings" and "appointed a technical

14  advisor to assist in evaluating [defendant's] compliance").

15        In any event, Respondents' repeated noncompliance amply justifies the

16  limited disclosures Petitioners seek here.  Respondents have not only continued

17  unilaterally to exclude class members, *see* Dkt. 353 at 2, but they have skirted the

18  very notification provision that this Court implemented to ensure that such

19  violations would not continue.  Respondents suggest it would be "improper" for

20  this Court to even "consider" their prior noncompliance as grounds for ordering

21  additional monitoring because they purport to have not repeated those the

22  particular violations since this Court specifically instructed them to cease doing so.

23  Dkt. 378 at 19 n.8.  But three instances of noncompliance certainly are relevant

24  when evaluating a request for monitoring.  The Court thus would be acting well

25  within its authority by granting the relief requested by Petitioners.

## CONCLUSION

27        For the foregoing reasons, Petitioners request that the Court grant this

28  motion, adopt its proposed draft notice for *Rodriguez* bond hearings, clarify that

1  the latest group of individuals that Respondents have sought to exclude from the

2  class are class members (and, again, that the class definition admits of no

3  exceptions beyond those explicitly stated), and grant Petitioners access to

4  additional information in order to more efficiently and effectively ensure

5  compliance with the Court's orders.

6

7                                              Respectfully submitted,

8                                              ACLU OF SOUTHERN CALIFORNIA

9  Dated:  November 12, 2013            /s/ Michael Kaufman
                                        MICHAEL KAUFMAN
10                                      Counsel for Petitioners

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28