# Exhibit A

# Michael Kaufman

| | |
|---|---|
| **From:** | Michael Kaufman |
| **Sent:** | Wednesday, February 19, 2014 2:03 PM |
| **To:** | 'Atkinson, Theodore (CIV)'; Wilson, Sarah S. (CIV) |
| **Cc:** | Ahilan Arulanantham; Commons, Sean |
| **Subject:** | Rodriguez: missing spreadsheet information and bond hearing notices |
| **Attachments:** | First status report_no bond notice.xlsx; Second status report_no bond notice.xlsx; Class members_no spreadsheet data.xlsx |

Ted and Sarah,

Respondents' status report and supplemental spreadsheet strongly suggest that Respondents are not in compliance with their obligations under the permanent injunction in two critical respects.

First, it appears that class counsel has not been provided with copies of bond hearing notices for hundreds of class members, despite representations by Respondents to the Court at the last hearing that all such notices were being provided. Specifically, we have identified more than 690 instances when we did not receive a bond notice. I have attached spreadsheets that contain the names and A#s for these individuals (broken down by hearings listed in the first and second status reports). A handful of these instances perhaps could be explained by the fact that hearings occurred before Respondents began providing hearing notices to class counsel. That, however, would not explain 690 missing notices. If our reading of these reports is correct, then these omissions made it impossible for Petitioners to monitor compliance with the preliminary and permanent injunctions. If ongoing, such omissions also would violate the terms of the permanent injunction.

Second, the status reports appear to omit information about numerous class members. Specifically, we have copies of 66 bond hearing notices provided to class members under the preliminary injunction, but we cannot locate any information about these individuals in either of Respondents' status reports. We are alerting you to this issue now, even though we are in the process of comparing the bond notices provided under the permanent injunction to the status report to determine whether this discrepancy also is ongoing.

Because these matters bear directly on Petitioners' ability to monitor compliance with the permanent injunction, we request a meet and confer to understand whether the parties can resolve these issues informally or whether the parties will need assistance from the Court. Please let me know your availability for a conference call next week.

Regards, Michael

Michael Kaufman
Staff Attorney
ACLU of Southern California
1313 West 8th Street
Los Angeles, CA 90017
(o) (213) 977-5232 | (f) (213) 417-2232

website || facebook || twitter || blog

## The ACLU: Because Freedom Can't Protect Itself

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

# Exhibit B

# Michael Kaufman

**From:** Wilson, Sarah S. (CIV) [Sarah.S.Wilson@usdoj.gov]
**Sent:** Monday, February 24, 2014 2:46 PM
**To:** Michael Kaufman; Atkinson, Theodore (CIV)
**Cc:** Ahilan Arulanantham; Commons, Sean
**Subject:** RE: Rodriguez: missing spreadsheet information and bond hearing notices

Hi Michael,

I apologize for our delay. Ted has been out of the office and will not return until Wednesday. To give us time to work through things with the clients (who have also been out of the office), it would be helpful if we could defer talking about the compliance issues in your email until early next week. Regarding the briefing schedule, I believe we plan to request an additional 60 days, but I will work on getting that confirmed this week.

Thanks,
Sarah

---

**From:** Michael Kaufman [mailto:mkaufman@aclu-sc.org]
**Sent:** Monday, February 24, 2014 4:52 PM
**To:** Atkinson, Theodore (CIV); Wilson, Sarah S. (CIV)
**Cc:** Ahilan Arulanantham; Commons, Sean
**Subject:** FW: Rodriguez: missing spreadsheet information and bond hearing notices

Ted and Sarah,

I'm writing to follow up on two issues. First, I have not received a response to my email below. Please let me know when you are available for a conference call to discuss these compliance issues.

Second, on our last call, you indicated that Respondents intend to seek an extension for their Ninth Circuit opening brief, but had not yet determined whether to seek the extension for 30 days or some longer period. We would appreciate if you would notify us as soon as possible what length extension Respondents will seek, as several of us are planning to schedule matters around the briefing schedule.

Regards, Michael

---

**From:** Michael Kaufman
**Sent:** Wednesday, February 19, 2014 2:03 PM
**To:** 'Atkinson, Theodore (CIV)'; Wilson, Sarah S. (CIV)
**Cc:** Ahilan Arulanantham; Commons, Sean
**Subject:** Rodriguez: missing spreadsheet information and bond hearing notices

Ted and Sarah,

Respondents' status report and supplemental spreadsheet strongly suggest that Respondents are not in compliance with their obligations under the permanent injunction in two critical respects.

First, it appears that class counsel has not been provided with copies of bond hearing notices for hundreds of class members, despite representations by Respondents to the Court at the last hearing that all such notices were being provided. Specifically, we have identified more than 690 instances when we did not receive a bond notice. I have attached spreadsheets that contain the names and A#s for these individuals (broken down by hearings listed in the first and second status reports). A handful of these instances perhaps could be explained by the fact that hearings occurred before Respondents began providing hearing notices to class counsel. That, however, would not explain 690 missing notices. If our reading of these reports is correct, then these omissions made it impossible for Petitioners to monitor compliance with the preliminary and permanent injunctions. If ongoing, such omissions also would violate the terms of the permanent injunction.

1

Second, the status reports appear to omit information about numerous class members. Specifically, we have copies of 66 bond hearing notices provided to class members under the preliminary injunction, but we cannot locate any information about these individuals in either of Respondents' status reports. We are alerting you to this issue now, even though we are in the process of comparing the bond notices provided under the permanent injunction to the status report to determine whether this discrepancy also is ongoing.

Because these matters bear directly on Petitioners' ability to monitor compliance with the permanent injunction, we request a meet and confer to understand whether the parties can resolve these issues informally or whether the parties will need assistance from the Court. Please let me know your availability for a conference call next week.

Regards, Michael

Michael Kaufman
Staff Attorney
ACLU of Southern California
1313 West 8th Street
Los Angeles, CA 90017
(o) (213) 977-5232 | (f) (213) 417-2232

website || facebook || twitter || blog

**The ACLU: Because Freedom Can't Protect Itself**

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

# Michael Kaufman

| | |
|---|---|
| **From:** | Michael Kaufman |
| **Sent:** | Friday, February 28, 2014 2:54 PM |
| **To:** | 'Atkinson, Theodore (CIV)' |
| **Cc:** | Ahilan Arulanantham; Wilson, Sarah S. (CIV) |
| **Subject:** | RE: Rodriguez -- Extension Request |

Ted,

I am available now, although I expect/hope you have better things to do with your Friday evening. On Monday, I am available any time after 1230 PST/330 EST. We should plan to meet and confer both on the extension request, and the compliance issues I raised in my email last week.

Regards, Michael

> **From:** Atkinson, Theodore (CIV) [mailto:Theodore.Atkinson@usdoj.gov]
> **Sent:** Friday, February 28, 2014 1:05 PM
> **To:** Michael Kaufman
> **Cc:** Ahilan Arulanantham; Wilson, Sarah S. (CIV)
> **Subject:** Rodriguez -- Extension Request
>
> Michael,
>
> After consultations internally and with our clients, we are going to seek a 60-day extension of time to file the opening brief. We understand this may lead to your wanting additional time to file your brief, or other thoughts, but we should discuss it no later than Monday so we can get the request on file.
>
> Let me know if you are available today or Monday morning. We also need to schedule a time for the meet and confer you requested (Sarah e-mailed you earlier suggesting earlier next week, but we haven't heard back).
>
> Regards,
>
> Ted Atkinson
> United States Department of Justice
> Office of Immigration Litigation
> P.O. Box 868, Ben Franklin Station
> Washington, DC 20044
> Tel: 202-532-4135

1

# Exhibit C

# Michael Kaufman

| | |
|---|---|
| **From:** | Michael Kaufman |
| **Sent:** | Thursday, March 13, 2014 11:20 PM |
| **To:** | Atkinson, Theodore (CIV); Ahilan Arulanantham |
| **Cc:** | Wilson, Sarah S. (CIV) |
| **Subject:** | RE: Rodriguez -- Follow-up From Call |
| **Attachments:** | Rodriguez Hearings -- Week of 11-5-12 -- OCD.xlsx.xlsx |

Ted,

Thank you for your email. I have been traveling this week with limited access to email and will be out of the office tomorrow, but feel compelled to respond in the interim to certain statements and positions in your email.

First, the parties reached an oral agreement for Respondents to provide us bond hearings notices for hearings conducted under the preliminary injunction during a meet and confer in late October or early November 2012. I've attached the first spreadsheet with bond hearings that we received in an email from Sarah on November 6, 2013, which you were cc'd on. I do not know the exact date that the government first began conducting bond hearings but, at the Ninth Circuit hearing on the preliminary injunction, you represented that the hearings began in "mid-November of 2012." Thus while it is possible some of the bond hearings for which we did not receive a notice may have occurred prior to the date of our agreement, that explanation likely accounts for a very small number, if any, of the missing notices.

Second, with respect to the missing data entries, Respondents are inappropriately attempting to shift their responsibility to ensure their compliance with the Court's orders onto Petitioners. We provided the list of 60 missing entries to Respondents as proof that Respondents have violated the permanent injunction by failing to provide the data that the Court ordered. And we intend to compile a list of any additional missing class member data to determine the extent to which Respondents have failed to comply with the Court's order, and will send the list to Respondents to ensure that these violations are timely addressed. However, Respondents have an equal – indeed greater – ability than Petitioners to readily determine which data is missing. Moreover, given your repeated statements that Respondents are doing everything in their power to ensure their compliance with the Court's orders, we would hope that Respondents are already conducting their own independent analysis to determine the scope and nature of their violations, rather than waiting for Petitioners to provide that information to them.

Finally, we are disappointed that Respondents would take the position that these discoveries should not be brought to the district court's attention. As matters stand, Respondents have made inaccurate representations to the district court in connection with a matter currently under submission. Moreover, Respondents made those inaccurate representations in an effort to influence how the district court rules on a matter currently under submission. We would think Respondents would want to advise the district court promptly of the error, whether or not if it was inadvertent. In any event, we currently intend to alert the Court of this development in the near future. Among other things, Petitioners likely would have sought different and additional monitoring, and certainly would have made different arguments to the district court, if we had known that Respondents were failing to provide the hearing notices and data that the Court ordered.

Regards, Michael

---

From: Atkinson, Theodore (CIV) [Theodore.Atkinson@usdoj.gov]
Sent: Tuesday, March 11, 2014 10:43 AM
To: Michael Kaufman
Cc: Wilson, Sarah S. (CIV); Atkinson, Theodore (CIV)
Subject: Rodriguez -- Follow-up From Call

Michael,

I am writing to provide you with the information we discussed on the conference call last week.

You wrote to us with a concern that your office did not receive a large number of notices for bond hearings identified on the spreadsheets accompanying the status reports filed in November and January. We note at the outset that the aliens themselves received written notice in each case under the notice that we issued after the preliminary injunction was

1

issued (unless a hearing was held at the request of an alien at a hearing and with the consent of DHS counsel, in which case no written notice was issued). We also note at the outset that the cases you identified covered bond hearings held under the preliminary and permanent injunction. There was no court-ordered obligation to provide written notice until the Court entered the permanent injunction. However, we did agree at some point after the preliminary injunction was entered (and you agreed to forward the e-mail with that agreement so we could pinpoint the date) to send by e-mail copies of notices sent to aliens.

All told, you identified 690 cases in which your office did not receive notice. After eliminating duplicate entries on your identifying spreadsheets, the number of non-duplicate aliens is 530. Of those, EOIR has determined that approximately 330 hearings were held under the preliminary injunction, and approximately 200 were held under the permanent injunction. ("Approximately" is used here because some hearings were scheduled under the preliminary injunction, but may have occurred after the permanent injunction).

With respect to the 320 preliminary injunction hearings you identified as not receiving copies of the notice, we believe that there are reasonable explanations for your not having received a copy of written notices sent to aliens. First, a number of those hearings were held before we agreed to provide notice (and that number can be approximated once you identify the date of our agreement to provide copies of notices). Second, a number of those hearings were held after we agreed to provide notice, but before immigration court personnel received instructions or training on scanning and e-mailing notices to us. Third, some hearings were held without any notice, specifically where a bond hearing was held at a master calendar hearing with the consent of the alien and DHS counsel present in the courtroom, in which case no notice was generated. Fourth, a number of those hearings were held based on a motion for a hearing, rather than through automatic scheduling; in those cases we do not believe a copy of the notice was scanned or sent to us after the hearing was scheduled. In any event, we have determined that for the vast majority of the hearings held, your office received scanned copies of notices. While we were not required to provide such notice under court order, we did so in an effort to allow monitoring of the hearings held.

With respect to the approximately 200 post-permanent injunction hearings you identified as not receiving copies of the notice, there are a few observations to make. First, there is an inherent ramping-up time between when the injunction issued and when the formalized process for providing copies of the notice to class counsel could be put into place. It took several weeks after the August 6, 2013 injunction for the order to be disseminated to the immigration court through agency counsel, for the parties to decide whether to seek a stay of the order, for the immigration court to establish a system for providing copies of notice to counsel (a process that was court-ordered and more formalized than under our preliminary injunction agreement), and for the immigration court staff to implement the system and train legal assistants on the process for generating and mailing notices. This ramping up period was complicated by the government shutdown, which lasted from October 1, 2013 to October 16, 2013 – during which period neither EOIR staff in the General Counsel's Office nor OIL attorneys were permitted to work on any matters, including forwarding notices. During the ramping-up period, approximately 166 of the post-permanent injunction hearings of the 200 you identified were scheduled or held. In fact, many of these 166 hearings were scheduled even before the permanent injunction issued.

However, after that ramping-up period, the system for sending you copies of notices has been fully implemented and thus has become systemized, more routine, and more reliable.

What we have determined is that in the approximately eight weeks after the permanent injunction issued, the process of generating and sending copies of notices to class counsel is subject to far fewer instances of concern than during the preliminary injunction and ramping-up periods before then. Of the approximately 34 cases you identified occurring after this ramping-up period ended on or about October 23 (a date on which the formalized mailing system was fully implemented), 11 were attorney requests for hearings for which no copies were generated (that practice has since changed, and a copy of a written notice is sent if an alien makes a motion for a Rodriguez hearing before one can be automatically scheduled). 10 were held after oral requests for a hearing made by aliens in immigration court, and with the consent of DHS. 4 were data entry errors, meaning they were non-existent A numbers or A numbers of aliens who had a bond hearing, but not a Rodriguez bond hearing. 1 case was actually under the preliminary injunction and held in 2012; we erroneously identified the hearing as occurring in 2013 after the permanent injunction. 4 were "no action" cases, meaning that the aliens were removed or granted relief, and no notice of a hearing was mailed because no hearing was held. The remaining cases were cases in which the immigration court actually mailed the notices to your office. As was the case under the preliminary injunction, the vast majority of notices were sent to your office for compliance monitoring.

On a going forward basis, we believe that future reports will show that copies are regularly mailed now that a system has been put into place and formalized. Accordingly, we urged you to look to the April 2014 status report spreadsheet to determine compliance. That report will include those cases in which notices were sent after the current system was fully implemented, and thus will be a more reliable indicator of the efficacy of the current notice mailing system. In addition, after you raised your concerns, ACIJ Fong sent out a checklist to immigration court staff, which reiterated to supervisors

the need to train and supervise staff to send copies of notices to your office in each case. Our office understands that staff temporarily detailed to the immigration court will be trained, as well. Moreover, we understand that Supervisory Legal Assistants will maintain a hard copy of each notice sent.

Having met with immigration court staff to discuss the implementation of the permanent injunction, I can represent that the staff has every intention of complying with the order. They are serious about doing so, and have discussed with our office best practices for meeting their compliance obligations. Although the immigration court has sent your office copies of notices in the vast majority of cases -- in numbers far greater than you have indicated you intend to monitor by attending hearings -- they are committed to ensuring that your office receives a copy of each notice sent. We believe the April report will best show that the system in place is providing you copies of the notices to which you are entitled.

You also raised a concern that you have received notices for 60 Rodriguez hearings not reported on the spreadsheets. We understand that these are preliminary injunction hearings only. You told us you would let us know if you have the same concern regarding any notices received for hearings after the permanent injunction issued. We look forward to receiving that information.

We will look into the 60 cases you cited, and it is likely that the hearing notices could have been sent but then the hearing not held because the alien was released, removed or granted relief, or because the Court made a jurisdictional determination that the alien was not in the Rodriguez preliminary injunction class. We will look into this, but it will take time to go back and examine each file for the reason why each notice is not matched by a spreadsheet entry. We also agree to add to our next spreadsheet any cases where hearings were held and information is available out of these 60 cases, and to offer an explanation for any that are not reported.

We look forward to hearing from you with regard to the information you agreed to provide. We will also apprise you when we have determined the circumstances surrounding the 60 cases you identified where you received notice but no hearing was indicated on any spreadsheet.

In the meantime, please contact me if you have any questions or comments.

Regards,

Ted Atkinson
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: 202-532-4135

# Exhibit D

# Michael Kaufman

| | |
|---|---|
| **From:** | Michael Kaufman |
| **Sent:** | Friday, April 04, 2014 11:16 AM |
| **To:** | 'Atkinson, Theodore (CIV)'; Wilson, Sarah S. (CIV); 'Reuveni, Erez R. (CIV)' |
| **Cc:** | Ahilan Arulanantham |
| **Subject:** | Rodriguez: compliance issues |
| **Attachments:** | Rodriguez_missing database info.xlsx; Rodriguez_missing notices.xls |

Dear Ted, Sarah and Erez,

I write to follow up on several issues related to Respondents' failure to provide bond hearing notices and database information for class members, which Respondents addressed in part in their supplemental status report filed this morning. We intend to respond to the supplemental status report in due course.

First, as I've previously indicated, Petitioners have continued to investigate the scope of Respondents' failure to produce database information for all class members. We have completed that analysis, and determined that Respondents failed to produce database information for 101 class members. I have attached a spreadsheet with the A numbers for these class members. We are providing the list in hopes that it will aid Respondents' efforts to investigate and fix these violations of the permanent injunction.

Second, in prior correspondence, you stated that Respondents had adopted a new system for production of bond hearing notices to class counsel on October 23, 2013, and that Respondents believe the new system has brought them into compliance with the notice provisions of the permanent injunction. On our call and in correspondence, you indicated that Respondents had not provided bond hearing notices for approximately 34 individuals after the new system went into effect. However, we have determined that Respondents in fact have failed to produce approximately 69 notices since the new system went into effect, which works out to a rate of approximately one missing notice every day. I have attached a spreadsheet with the 69 class members. It is not clear how Respondents determined that only 34 notices were missing, given that we examined the same records as Respondents. However, our analysis suggests that Respondents are continuing to regularly violate the notice provisions of the permanent injunction, notwithstanding their new notice system.

Third, Petitioners recently discovered that Respondents failed to promptly provide a bond hearing to a class member after he had filed a petition for review and stay request. He ultimately obtained a bond hearing, but only after his attorney requested the hearing and only after he had been detained for more than nine months. His case contradicts Respondents' representation that class members' rights are not jeopardized by Respondents' practice of deporting class members in the 30-day appeal period because "Respondents have seamlessly" implemented a process "such that the detainees affected are immediately scheduled for hearings after the detainee files a petition for review and a stay motion with the Ninth Circuit." Dkt. 378 at 12. The class member is Gabriel Ramero Sopon Hernandez (A# 205716704). We intend to notify the Court of Mr. Sopon's case, but want to promptly provide his information to Respondents so that they can investigate his case and ensure that similar violations are not occurring.

Regards,

Michael

Michael Kaufman
Staff Attorney
ACLU of Southern California
1313 West 8th Street
Los Angeles, CA 90017
(o) (213) 977-5232 | (f) (213) 417-2232

website || facebook || twitter || blog

## The ACLU: Because Freedom Can't Protect Itself

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE

# Exhibit E

Case 2:07-cv-03239-TJH-KES   Document 413-2   Filed 04/09/14   Page 13 of 15   Page ID #:9078

```
1                  UNITED STATES DISTRICT COURT
2                 CENTRAL DISTRICT OF CALIFORNIA
3                         WESTERN DIVISION
4        THE HON. TERRY J. HATTER, JR., JUDGE PRESIDING
5
6    Alejandro Rodriguez,            )
                                     )
7                   Plaintiff,       )
                                     )
8         vs.                        ) No. CV 07-3239 TJH (RNBx)
                                     )
9    James Hayes, et al.,            )
                                     )
10                  Defendants.      )
                                     )
11   _____)
12
13            REPORTER'S TRANSCRIPT OF PROCEEDINGS
14                    Los Angeles, California
15            Monday, December 9, 2013; 10:52 A.M.
16              PETITIONER'S MOTION FOR COMPLIANCE
17
18
19                    Wil S. Wilcox, CSR 9178
                  Official U.S. District Court Reporter
20                 312 North Spring Street, # 432-A
                       Los Angeles, California 90012
21                         Phone: (213) 290-2849
22
23
24
25
```

1  hearing. This is a master calendar hearing, but in the last
2  15 minutes the judge holds a bond hearing.
3       So they have to listen to all of these things and
4  produce them. And that is why we submitted the declaration
5  of Mr. Rosenblum who is in the general counsel's office at
6  EOIR. This is something that they pound the table on with
7  me. This immigration court is already overstaffed. I'm
8  meeting with Judge Fong over at the immigration court this
9  afternoon.
10      THE COURT: Understood.
11      MR. ATKINSON: And he's going to tell me that if
12 they have to pull three or four people to listen to 14- or
13 1500 digital audio recordings to figure out which ones to
14 produce, that's going to tax their staff more.
15      Mr. Kaufman has repeatedly told me that it is too
16 difficult for them to go to hearings that we notify them of.
17 I don't have any response to that, Your Honor. There are
18 staff members who are sitting in this room who are from the
19 ACLU or from their associated nonprofit organizations. I
20 don't know if they need to hear every single bond hearing.
21 Perhaps they can go to a sampling of them.
22      But they know when they are and they know where
23 they are going to be held. But for us to have to produce
24 all of these audio recordings and these court documents, it
25 is going to be problematic.