JOSEPH HUNT
Assistant Attorney General
Civil Division
DAVID MCCONNELL
Director, Office of Immigration Litigation
Appellate Court Section
ERNESTO MOLINA
Deputy Director
SARAH WILSON
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation,
District Court Section
        P.O. Box 868, Ben Franklin Station
        Washington, DC 20044
        Phone: (202) 532-4700/(205) 244-2140
        sarah.s.wilson@usdoj.gov

Attorneys for Federal Respondents

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*,<br><br>Petitioners,<br><br>vs.<br><br>DAVID MARIN, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director, et al.*,<br><br>Respondents. | Case No. CV 07-3239-TJH<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO VACATE THE PRELIMINARY INJUNCTION AND DECERTIFY CLASS**<br><br>**The Honorable Terry Hatter, Jr.**<br><br>Hearing Date: February 17, 2019<br>Hearing Time: 10:00 am |

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND................................................................................2

STANDARD OF REVIEW ..............................................................................6

        A.    Motion to Vacate Standard ............................................6

        B.    Motion to Decertify Standard .......................................6

ARGUMENT ..................................................................................................7

  I.    *Jennings* eliminated the legal justification for the preliminary
      injunction and every court to address the issue post Jennings has
      rejected Petitioners' claim.............................................................7

  II.   Section 1252(f)(1) bars entry of an injunction on the constitutional
      claims. ..........................................................................................10

        A.    Section 1252(f)(1) bars classwide injunctive relief,
             regardless of whether removal proceedings have begun.............. 11

        B.    There is no exception to section 1252(f)(1) for habeas class
             actions. .........................................................................13

        C.    The preliminary injunction enjoins "operation" of sections
             1225(b)(1), (b)(2) and 1226(c). ......................................14

  III.  The class should be decertified. ...................................................16

        A.    Petitioners' constitutional claims cannot be commonly
             resolved based on six months of detention alone. .........................16

        B.    Changes to the section 1225(b) subclass require it to be
             decertified. ....................................................................22

        C.    Petitioners' constitutional claims should be adjudicated
             through individual habeas cases. ....................................22

CONCLUSION..............................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Abdi v. McAleenan*,
   --- F. Supp. 3d ---, 2019 WL 4621898 (W.D.N.Y. Sept. 24, 2019)..............1, passim

*Alli v. Decker*,
   650 F.3d 1007 (3d Cir. 2011) .........................................................................20

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) .........................................................................11

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) .........................................................................................6

*Barker v. Wingo*,
   407 U.S. 514 (1972) .......................................................................................18

*Boumediene v. Bush*,
   128 S. Ct. 2229 (2008) ...................................................................................13

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ................................................................................11, 16

*Cary v. Curtis*,
   44 U.S. 236 (1845) .........................................................................................12

*Casas-Castrillon v. DHS*,
   535 F.3d 942 (9th Cir. 2008) .........................................................................19

*Coello–Udiel v. Doll*,
   No. 17-cv-1414, 2018 WL 2198720 (M.D. Pa. May 14, 2018)................................8

*Davies v. Tritten*,
   No. 17-cv-3710, 2017 WL 4277145 (D. Minn. Sept. 25, 2017)................................8

*Demore v. Kim*,
   538 U.S. 510 (2003) ...................................................................................8, 18

*Diouf v. Napolitano*,
   634 F.3d 1081 (9th Cir. 2011)........................................................................18

*Fernandez v. Lowe*,
   No. 3:17-cv-2301, 2018 WL 3584697 (M.D. Pa. July 26, 2018) .........................8

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) .........................................................................................6

*Gonzales v. Arrow Fin. Servs. LLC*,
   489 F. Supp. 2d 1140[] .....................................................................................6

*Grimes v. Vitalink Commc'ns Corp.*,
   17 F.3d 1553 (3d Cir. 1994) ..........................................................................11

*Hamama v. Adducci*,
   912 F.3d 869 (6th Cir. 2018) ................................................................ 10, 11

*Harper v. Trans World Airlines, Inc.*,
   525 F.2d 409 (8th Cir. 1975) ..................................................................... 11

*INS v. St. Cyr*,
   533 U.S. 289 (2001) ..................................................................................... 13

*Jennings v. Rodriguez*,
   136 S. Ct. 2489 (2016) ................................................................................... 4

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) ....................................................................... 1, passim

*Landon v. Plasencia*,
   459 U.S. 21 (1982) ................................................................................. 17, 22

*Lauf v. E.G. Shinner & Co.*,
   303 U.S. 323 (1938) ..................................................................................... 12

*Lujan v. G&G Fire Sprinklers, Inc.*,
   532 U.S. 189 (2001) ..................................................................................... 17

*Ly v. Hansen*,
   351 F.3d 263 (6th Cir. 2003) ................................................................... 1, 2

*Manley v. Delmonte*,
   No. 17-cv-953, 2018 WL 2155890 (W.D.N.Y. May 10, 2018) .................. 8

*Marin*,
   909 F.3d .......................................................................................................... 5

*Marlo v. United Parcel Serv., Inc.*,
   251 F.R.D. 476 (C.D. Cal. 2008) ................................................................ 6

*Marquez-Almanzar v. Ashcroft*,
   No. 03 CIV. 1601 (GEL), 2003 WL 21283418 (S.D.N.Y. June 3, 2003) ............... 13

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ..................................................................................... 17

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   287 F.R.D. 590 (C.D. Cal. 2012) ................................................................ 6

*Nikolic v. Decker*,
   No. 19-CV-6047-LTS, 2019 WL 5887500 (S.D.N.Y. Nov. 12, 2019) ............... 8, 20

*Otis v. Green*,
   No. 18–742, 2018 WL 3302997 (D.N.J. July 5, 2018) .............................. 8

*Prieto-Romero v. Clark*,
   534 F.3d 1053 (9th Cir. 2011) .................................................................. 18

*Reid v. Donelan*,
   390 F. Supp. 3d 201 (D. Mass. 2019) ........................................... 1, passim

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ..................................................................... 10, 12

*Reno v. Flores*,
    507 U.S. 292 (1993) ............................................................................ 21

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .......................................................... 2, 12

*Rodriguez v. Hayes*,
    2012 WL 7653016 (C.D. Cal. Sept. 13, 2012) .................................... 3, 7

*Rodriguez v. Holder*,
    2013 WL 5229795 (C.D. Cal. August 6, 2013) ...................................... 3

*Rodriguez v. Marin*,
    887 F.3d 954 (9th Cir. 2018) ................................................................. 4

*Rodriguez v. Marin*,
    909 F.3d 252 (9th Cir. 2018) .................................................... 5, 12, 20

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ..................................................... 3, 9, 10

*Rodriguez v. Robbins*,
    804 F. 3d  (9th Cir. 2015) ................................................................. 3, 4

*Sajous v. Decker*,
    No. 18-CV 2447 (AJN), 2018 U.S. Dist. LEXIS 86921, 2018 WL 2357266
    (S.D.N.Y. May 23, 2018) ........................................................... 1, 8, 19

*Schall v. Martin*,
    467 U.S. 253 (1984) ............................................................................ 13

*Sharp v. Weston*,
    233 F.3d 1166 (9th Cir. 2000) ............................................................... 6

*Shaughnessy v. Mezei*,
    345 U.S. 206 (1953) .............................................................................. 8

*Sopo v. U.S. Attorney Gen.*,
    825 F.3d 1199 (11th Cir. 2016) ........................................................... 21

*Swain v. Pressley*,
    430 U.S. 372 (1977) ............................................................................ 13

*Taheny v. Wells Fargo Bank, N.A.*,
    No. CIV. S-10-2123 LKK/EFB, 2011 U.S. Dist. LEXIS 29757, 2011 WL 864678
    (E.D. Cal. Mar. 10, 2011) ...................................................................... 6

*United States v. Barrett*,
    178 F.3d 34 (1st Cir. 1999) ................................................................. 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................. 4, passim

iv

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................. 7

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ......................................................................... 3, 22

## <u>STATUTES</u>

**Immigration and Nationality Act of 1952: as amended,**

Section 217,
  8 U.S.C. § 1187 ................................................................................ 11

Section 231,
  8 U.S.C. § 1221 ...................................................................... 1, passim

Section 232,
  8 U.S.C. § 1222 .................................................................................. 1

Section 233,
  8 U.S.C. § 1223 .................................................................................. 1

Section 234,
  8 U.S.C. § 1224 .................................................................................. 1

Section 235,
  8 U.S.C. § 1225 ............................................................................... 1, 3

Section 235(b),
  8 U.S.C. § 1225(b) ................................................................... 1, passim

Section 235(b)(1)(B)(ii),
  8 U.S.C. § 1225(b)(1)(B)(ii) .................................................... 1, passim

Section 235(b)(2)(A),
  8 U.S.C. § 1225(b)(2)(A) ................................................................ 9, 14

Section 236,
  8 U.S.C. § 1226 .............................................................................. 1, 14

Section 236(a),
  8 U.S.C. § 1226(a) .................................................................. 1, passim

Section 236(c),
  8 U.S.C. § 1226(c) .................................................................. 1, passim

Section 237,
  8 U.S.C. § 1227 .................................................................................. 1

Section 238,
  8 U.S.C. § 1228 .................................................................................. 1

Section 239,
  8 U.S.C. § 1229 .................................................................................. 1

Section 240C,
    8 U.S.C. § 1230 ...................................................................................... 1

Section 241,
    8 U.S.C. § 1231 ............................................................................. 1, passim

Section 241(a),
    8 U.S.C. § 1231(a) .................................................................................. 3, 4

Section 242(f)(1),
    8 U.S.C. § 1252(f)(1) ................................................................... 1, passim

Section 243,
    8 U.S.C. § 1253 ...................................................................................... 11

Section 250,
    8 U.S.C. § 1260 ...................................................................................... 11

Section 261,
    8 U.S.C. § 1301 ...................................................................................... 11

Section 274D,
    8 U.S.C. § 1324d .................................................................................... 11

Section 315,
    8 U.S.C. § 1426 ...................................................................................... 11

Section 506,
    8 U.S.C. § 1536 ...................................................................................... 11

## **OTHER STATUTES:**

28 U.S.C. § 2241 ......................................................................................... 20

8 U.S.C. § 1232 ................................................................................. 1, 9, 15

8 U.S.C. § 1309 ......................................................................................... 11

8 U.S.C. § 1732 ......................................................................................... 11

The preliminary injunction must be vacated without further delay for the same reason this Court has already recognized the vacatur of the permanent injunction: the Supreme Court's decision in this case eliminates any statutory basis for enjoining the operation of 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) to require six-month bond hearings. *See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). All that remains are Petitioners' never-tested constitutional claims, but Petitioners have never even moved for a preliminary injunction on these claims—much less demonstrated that they are likely to succeed on the merits of claims that have been rejected by every court to consider them. *See, e.g., Abdi v. McAleenan*, --- F. Supp. 3d ---, 2019 WL 4621898 (W.D.N.Y. Sept. 24, 2019) (rejecting six-month rule for now-decertified class of asylum seekers detained under section 1225(b)(1)(B)(ii)); *Reid v. Donelan*, 390 F. Supp. 3d 201, 219 (D. Mass. 2019) (rejecting six-month rule for class of section 1226(c) detainees); *Sajous v. Decker,* No. 18-cv-2447, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018) (rejecting six-month rule in favor of an individualized due process analysis of section 1226(c) claims for bond hearing); *see also Ly v. Hansen,* 351 F.3d 263 (6th Cir. 2003). The injunction should be lifted prior to any further consideration of the merits.

Even if Petitioners could meet the standard for preliminary injunctive relief on the constitutional claims (contrary to the weight of authority on the issue), this Court would still lack jurisdiction to remedy the claim through an injunction. The preliminary injunction falls squarely within the Immigration and Nationality Act's bar on classwide injunctive relief in 8 U.S.C. § 1252(f)(1), which provides: "Regardless of the nature of the action or claim . . . no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-1232], other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated." The preliminary injunction was entered by this Court (not "the Supreme Court"); it "enjoin[s] or restrain[s]" the ordinary, congressionally-designed operation of both section 1225 and 1226; and it

does so on a classwide basis, not merely with respect to "an individual alien." *Id*. Accordingly, this Court lacks jurisdiction to enter it as a constitutional remedy, and it must be vacated.

Finally, merits and jurisdictional issues aside, the injunction still must be vacated (and the class decertified) because the constitutional question Petitioners ask cannot be answered in a manner that is common to the entire class or any subclass. In most cases, detention will remain justified for the duration of the removal proceedings, but in cases where the length of an alien's detention during removal proceedings arguably raises concerns, a court must look to the alien's individual circumstances and the reasons why those removal proceedings (and the incident detention) remain ongoing. Every court to consider the validity of a six-month rule has agreed that the relevant due process factors are so profoundly individualized that the right to a bond hearing cannot be resolved on a classwide basis. *See Abdi*, 2019 WL 4621898, at *9-11 (decertifying a more narrowly-defined class of detained pre-entry asylum seekers because "the Supreme Court has eliminated the legal basis to *categorically* impose a six-month bond hearing requirement in the case of *every* alien detained pursuant to § 1225(b)(1)(B)(ii)" (emphasis in original)); *see also Reid*, 390 F. Supp. 3d at 219 (rejecting six-month rule in favor of more flexible rule after one year of detention). Therefore, the preliminary injunction must be vacated and the class decertified.

## PROCEDURAL BACKGROUND

In 2007, Alejandro Rodriguez brought a habeas petition, on behalf of himself and others similarly situated in the Central District of California, challenging his prolonged immigration detention without a bond hearing as violating the Immigration and Nationality Act and the Due Process Clause. *Rodriguez v. Hayes,* 591 F.3d 1105, 1110 (9th Cir. 2010) ("*Rodriguez I*"). This Court initially denied class certification, but was reversed by the Ninth Circuit in *Rodriguez I*, 591 F.3d at 1111. On remand, this Court certified a primary class of aliens detained by the Department of Homeland

2

1   Security ("DHS") for six months or longer in the Central District of California and

2   four subclasses corresponding to the statutes under which the class members are

3   detained: 8 U.S.C. §§ 1225, 1226(a), 1226(c), and 1231(a). *Rodriguez v. Robbins*, 804

4   F. 3d 1066 (9th Cir. 2015) ("*Rodriguez III*").

5       On September 13, 2012, this Court granted preliminary injunctive relief to

6   aliens in the section 1225 and section 1226(c) subclasses. *See Rodriguez v. Hayes*,

7   2012 WL 7653016 (C.D. Cal. Sept. 13, 2012) ("Preliminary Injunction Order"). It

8   required the government to provide bond hearings to aliens detained for six months

9   under section 1225(b) and section 1226(c). *Id*. The Ninth Circuit affirmed the

10  injunction in *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ("*Rodriguez II*").

11  The *Rodriguez II* decision held that to avoid constitutional concerns, the statutes

12  "'must be construed to contain an implicit reasonable time limitation.'" *Rodriguez II*,

13  715 F.3d at 1138 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001)). "Therefore,

14  subclass members who have been detained . . . for six months are entitled to a bond

15  hearing because the applicable *statutory* law, not constitutional law, requires one." *Id*.

16  (emphasis in original).

17      On August 6, 2013, this Court granted summary judgment to the class and

18  entered a permanent injunction. *Rodriguez v. Holder*, 2013 WL 5229795, at *1-2

19  (C.D. Cal. Aug. 6, 2013) ("Order"). The permanent injunction enjoins the operation of

20  the four detention provisions, 8 U.S.C. §§ 1225(b), 1226(a), 1226(c) and 1231(a), to

21  require bond hearings for aliens detained under those provisions for six months. *Id*. at

22  *3-4. It further requires bond hearings to satisfy certain procedural requirements,

23  including that the government to bear the burden of proving that a detainee is a flight

24  risk or a danger to the community by clear and convincing evidence to justify the

25  denial of bond. *Id*. It also imposes a number of affirmative obligations on the

26  government, including requiring the automatic scheduling of bond hearings prior to

27  195 days of detention and ordering reporting and disclosure requirements. *Id*. This

28  Court based the decision on its own preliminary injunction order and the Ninth

Circuit's statutory decision in *Rodriguez II*, without any discussion of the class's constitutional claim. *Id*. at *2-4.

The Ninth Circuit affirmed in part and reversed in part the permanent injunction order in *Rodriguez III,* 804 F. 3d at 1090. In affirming, it relied on the canon of constitutional avoidance to extend the *Rodriguez II* holding to detention under section 1226(a). *Id*. at 1084-85. The Ninth Circuit reversed this Court and applied a number of additional procedural safeguards, including requiring periodic bond hearings every six months and requiring immigration judges to consider additional factors at bond hearings. *Id*. at 1087-189. It also reversed the permanent injunction as to the section 1231(a) subclass based on its conclusion that the subclass "does not exist" because aliens with a stay of removal are not detained under section 1231. *Id*. at 1087. Petitioners did not seek further review of the Ninth Circuit's decision regarding the validity of the section 1231 subclass.

The government successfully petitioned for review of the *Rodriguez III* decision to the Supreme Court. *Jennings v. Rodriguez*, 136 S. Ct. 2489 (2016). On February 27, 2018, the Supreme Court reversed the rulings in *Rodriguez II* and *Rodriguez III* that 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) require bond hearings after six months of immigration detention as a matter of statutory construction. *Jennings*, 138 S. Ct. 836. The Supreme Court declined to consider the class's constitutional challenges to the statutes "in the first instance" because the Ninth Circuit "had no occasion to consider [the] constitutional arguments on their merits." *Jennings*, 138 S. Ct. at 851. The Supreme Court directed "the Court of Appeals" on remand to "decide whether it continues to have jurisdiction despite 8 U.S.C. § 1252(f)(1)" and "reexamine whether respondents can continue litigating their claims as a class" in light of Federal Rule of Civil Procedure 23(b)(2), and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), prior to addressing the merits of the constitutional claims. *Id*. at 851-52.

4

On remand, the Ninth Circuit directed the parties to brief these issues alongside the merits of Petitioners' constitutional claims. *Rodriguez v. Marin*, 887 F.3d 954 (9th Cir. 2018). After briefing and argument, the Ninth Circuit declined to rule on these issues. *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("*Marin*"). Instead, the Ninth Circuit directed this Court to address the following (apparently nonexclusive) list of questions on remand:

> (1) whether the class certified by the district court should remain certified for consideration of the constitutional issue and available class remedies;
> (2) whether classwide injunctive relief is available under 8 U.S.C. § 1252(f)(1);
> (3) whether a Rule 23(b)(2) class action (a) remains the appropriate vehicle in light of *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), and (b) whether such a class action is appropriate for resolving Petitioners' due process claims;
> (4) whether composition of the previously identified subclasses should be reconsidered;
> (5) the minimum requirements of due process to be accorded to all that will ensure a meaningful time and manner of opportunity to be heard; and
> (6) a reassessment and reconsideration of both the clear and convincing evidence standard and the six-month bond hearing requirement.

*Id.* at 257 & n.2.

On further remand, this Court granted Petitioners leave to file their Fourth Amended Complaint (FAC), in which they added a new Petitioner, a claim under the Eighth Amendment, changed the subclass definitions, and asserted a statutory claim for the vacated 1231 subclass. ECF 515. Respondents moved to dismiss the FAC, and this Court granted that motion in part on November 7, 2019. ECF 527. In that order, the Court dismissed the new Plaintiff, confirmed the decertification of the section 1231 subclass, and recognized that the permanent injunction had been vacated, at least implicitly, by the Supreme Court, but noted that the preliminary injunction remains in place. *Id.* Petitioners have moved for reconsideration of the vacatur of the permanent injunction order, but have not moved to modify any of the new subclasses. ECF 528.

5

1
2
3
4

This motion addresses whether the preliminary injunction should be vacated, whether section 1252(f)(1) bars classwide injunctive relief on the constitutional claims, and whether the class should be decertified for consideration of the constitutional issues (remand questions 1-3, *Marin*, 909 F.3d at 257).

### STANDARD OF REVIEW

5

#### A. Motion to Vacate Standard

6

7
8
9
10
11

District courts have discretion to modify the terms of their injunctions. *See Taheny v. Wells Fargo Bank, N.A.*, No. CIV. S-10-2123 LKK/EFB, 2011 WL 864678, at *2 (E.D. Cal. Mar. 10, 2011). The moving party bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000).

12

#### B. Motion to Decertify Standard

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

"[C]ertifications are not frozen once made." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013). "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). "In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011). On a motion for decertification, the Petitioners continue to "bear[] the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 598 n.1 (C.D. Cal. 2012) ("To the extent that pre-*Marlo* cases conclude that a defendant bears the burden on a motion to decertify of demonstrating that 'the elements [of] Rule 23 have not been established,' *Gonzales v. Arrow Fin.*

28

*Servs. LLC*, 489 F. Supp. 2d 1140[, 1153] (S.D. Cal. 2007), these cases are no longer good law.").

## ARGUMENT

The preliminary injunction should be vacated and the class decertified. First, the preliminary injunction was exclusively premised on a likelihood of success on claims that the Supreme Court has now entirely rejected. Second, any injunction premised on a constitutional claim is barred by 8 U.S.C. § 1252(f)(1), which eliminates the Court's authority to enjoin the operation of the challenged immigration detention provisions on a classwide basis. Finally, even if the Court had jurisdiction to enter an injunction, the injunction still would need to be vacated and the class decertified as the class lacks sufficient commonality for the Court to resolve their constitutional claims on a classwide basis. .

## I.   *Jennings* eliminated the legal justification for the preliminary injunction and every court to address the issue post *Jennings* has rejected Petitioners' claim.

The Supreme Court eliminated the legal basis for the injunction and with it any grounds for maintaining the preliminary injunction.[1] The classes in this case were certified to address the statutory claims, s*ee* ECF 527 at 1, and the preliminary injunction was entered exclusively on those claims, Preliminary Injunction Order, 2012 WL 7653016 at 1-3. To date, no court has decided Petitioners' constitutional claims—much less determined that Petitioners are likely to succeed on the merits of those claims in a manner that will entitle them to the sweeping relief ordered by the preliminary injunction. Because the existing basis for the preliminary injunction has been eliminated, any continuation of the injunction would have to be supported by a

---

[1] Procedurally, the preliminary injunction merged into the permanent injunction upon entry of judgment in this case. *See, e.g., Smith v. Illinois Bell Telephone Co.,* 270 U.S. 587, 588-589 (1926); *SEC v. Mount Vernon Memorial Park,* 664 F.2d 1358, 1361-62 (9th Cir.), *cert. denied,* 456 U.S. 961 (1982). Therefore, the preliminary injunction cannot be separately reinstated as it was vacated with the permanent injunction.

1   new judicial determination that Petitioners have a likelihood of success on the merits

2   on the constitutional claims. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24

3   (2008). Preliminary injunctive relief even after such a determination is

4   "extraordinary" and should "never be awarded as of right," but relief *before* any such

5   determination has been made with respect to the injunctive factors is both

6   unprecedented and improper. *Id*.

7          Such extraordinary relief is unwarranted here. Petitioners have not moved for a

8   preliminary injunction on their constitutional claims and they certainly have not

9   satisfied *Winter*'s standard for preliminary relief. Nor can they. Every court to

10  examine the constitutional question since *Jennings* has rejected the argument that

11  there is a brightline constitutional entitlement to bond hearings after six months. *See,*

12  *e.g., Abdi*, 2019 WL 4621898 at *9-11; *Reid*, 390 F. Supp. 3d at 219[2]; *Sajous*, 2018

13  WL 2357266, at *10. In addition, district courts across the country have affirmed the

14  constitutionality of the challenged statutes well beyond the six-month mark. *See, e.g.,*

15  *Nikolic v. Decker*, No. 19-CV-6047, 2019 WL 5887500 (S.D.N.Y. Nov. 12, 2019)

16  (11.5-month detention under section 1226(c) constitutional); *Traore v. Decker*, No.

17  19-cv-4612, 2019 WL 3890227 (S.D.N.Y. Aug. 19, 2019) (20-month detention under

18  section 1225(b) constitutional); *Garcia v. Whitaker*, No. 18-cv-6836, 2019 WL

19  3802536 (W.D.N.Y. Aug. 13, 2019) (17-month detention under section 1226(c)

20  constitutional); *Fernandez v. Lowe*, No. 3:17-cv-2301, 2018 WL 3584697 (M.D. Pa.

21  July 26, 2018) (18-month detention under section 1226(c) constitutional); *Poonjani v.*

22  *Shanahan*, 319 F. Supp. 3d 644 (S.D.N.Y. 2018) (15-month detention under section

23  1225(b) constitutional); *Otis v. Green*, No. 18–742, 2018 WL 3302997 (D.N.J. July 5,

24  2018) (12-month detention under section 1225(b) constitutional); *Coello–Udiel v.*

25  *Doll*, No. 17-cv-1414, 2018 WL 2198720 (M.D. Pa. May 14, 2018) (14-month

26
27
28  [2] Although *Reid* purports to provide for a classwide remedy, it eschews resolving the
    threshold due process issue on a classwide basis and requires class-members to bring
    and win individualized habeas petitions as a prerequisite to obtaining a bond hearing
    and benefits of the injunction. *Reid*, 390 F. Supp. 3d 201, 219.

1   detention under section 1226(c) constitutional); *Manley v. Delmonte*, No. 17-cv-953,

2   2018 WL 2155890 (W.D.N.Y. May 10, 2018) (30-month detention under section

3   1226(c) constitutional); *Davies v. Tritten*, No. 17-cv-3710, 2017 WL 4277145 (D.

4   Minn. Sept. 25, 2017) (8-month detention under section 1226(c) constitutional). These

5   cases demonstrate that mandatory six-month bond hearings are not "the minimum

6   requirements of due process" for any of the subclasses, and therefore that Petitioners

7   are not likely to prevail on their constitutional claims. *Marin*, 909 F.3d at 257.

8        The injunction is also contrary to binding precedent. The Supreme Court has

9   already affirmed the constitutionality of immigration detention without a bond hearing

10  under both sections 1226(c) and 1225(b) for periods exceeding six months. *See*

11  *Demore v. Kim*, 538 U.S. 510 (2003) (upholding section 1226(c) as applied to alien

12  detained for longer than six months knowing that the administrative proceedings

13  remained ongoing); *Shaughnessy v. Mezei*, 345 U.S. 206, 209 (1953) (affirming the

14  constitutionality of detaining inadmissible, former lawful permanent resident for 20

15  months). The law of the case also forecloses granting classwide constitutional relief to

16  the section 1225(b) subclass, as the Ninth Circuit has already acknowledged that

17  section 1225(b) is "clearly" constitutional in "likely the vast majority" of

18  circumstances. *Rodriguez v. Robbins*, 715 F.3d 1127, 1140 (9th Cir. 2013) (*Rodriguez*

19  *II*).[3]

20       Contrary to Petitioners' claims, ECF 528-1 at 5, vacating the preliminary

21  injunction will not unfairly prejudice Petitioners. They retain the ability to move for a

22  preliminary injunction on their constitutional claims and may obtain relief if they can

---

23  [3] Petitioners have removed lawful permanent residents ("LPRs") from the new

24  proposed 1225(b) subclass in the Fourth Amended Complaint. Thus, while the

25  currently-certified 1225(b) subclass (in theory) includes lawful permanent residents

26  detained upon attempted reentry to the United States pursuant to section

27  1225(b)(2)(A) – because of either a lengthy absence from the United States or

28  criminal activity while abroad – the proposed 1225(b) subclass excludes LPRs and is
    exclusively comprised of individuals to whom section 1225(b) can "clearly" be
    constitutionally applied. *See Rodriguez II*, 715 F.3d at 1140; ECF 515 at 28 n.10.

9

satisfy *Winter*'s rigorous standard. But even if that straightforward remedy were somehow prejudicial, Petitioners are not entitled to months of placeholder relief before any court has ever determined that they there are likely to succeed on the merits of their constitutional claims. Therefore, the injunction should be vacated immediately.

## II.   Section 1252(f)(1) bars entry of an injunction on the constitutional claims.

The injunction further should be vacated because neither the Ninth Circuit nor this Court has jurisdiction to enter such an injunction on constitutional grounds. Section 1252(f)(1), entitled "Limit on injunctive relief," provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [Sections 1221-1232], other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

An injunction entered on constitutional grounds would fall squarely within section 1252(f)(1)'s jurisdictional bar. The injunction was entered by this Court (not "the Supreme Court"); it enjoins the operation of challenged statutes (by eliminating the termination point set by Congress in favor of a six-month expiration date); and it does so on a classwide basis, not merely with respect to "an individual alien." *Id*. Accordingly, this Court lacks jurisdiction to maintain the injunction as a remedy for Petitioners' constitutional claims.

To avoid the clear application of the bar, Petitioners have proposed a laundry list of illogical limitations to section 1252(f)(1). In briefing to the Ninth Circuit, Petitioners asserted that section 1252(f)(1)'s bar applies *only* where (1) an organizational plaintiff, (2) seeks an injunction that would prevent a statutory provision from being applied in its totality, (3) in a non-habeas action, (4) brought on behalf of individuals who are not currently in removal proceeding. Pets. Supp. Reply, 13-56755 (9th Cir.), Dkt. 213 at 2-5. These exceptions swallow the rule, and are not supported by either the text or legislative purpose behind the provision. *Hamama v.*

10

*Adducci*, 912 F.3d 869, 877 (6th Cir. 2018); *Vasquez Perez v. Decker*, No. 18-cv-10683, 2019 WL 4784950 at *4-9 (S.D.N.Y. Sept. 30, 2019).

A.    Section 1252(f)(1) bars classwide injunctive relief, regardless of whether removal proceedings have begun.

The Supreme Court has already determined that section 1252(f)(1) has a clear meaning and purpose based on "its plain terms, and even by its title." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999) ("*AADC*"). In that case, the Supreme Court was unequivocal, explaining that section 1252(f)(1) "*prohibit[s] . . . classwide injunctive relief*" while preserving the availability of relief for "an individual alien against whom proceedings . . . have been initiated." *Id.* Prior to remanding this case, the Supreme Court reaffirmed *AADC*'s interpretation of section 1252(f)(1) as 'prohibit[ing] federal courts from granting classwide injunctive relief against the operation of §§ 1221–123[2]." *Jennings*, 138 S. Ct. at 851 (quoting *AADC,* 525 U.S. at 481).

Nothing in *AADC* suggests that courts may use interpretative gymnastics to avoid section 1252(f)(1)'s clear prohibition on "*classwide* injunctive relief against the operation of §§ 1221-1231" or to expand its exception for "*individual cases*." 525 U.S. at 481-82 (emphasis added). Of course a "class of aliens" is not "an individual alien," so Petitioners instead equate "an individual alien" with "any alien" to support their construction. But "individual" must be interpreted to have meaning in the statute, and here the use of the phrase "an individual alien" reflects a deliberate choice by Congress. It is the only time that phrase appears in the Immigration and Nationality Act, whereas the phrase "any alien" appears more than fifty times, *see, e.g.*, 8 U.S.C. §§ 1187, 1253 1260, 1301, 1309, 1324d, 1426, 1536, 1732. Moreover, "an individual" is the classic means of distinguishing between class and non-class based litigation. *See, e.g.*, *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 417 (5th Cir. 1998) (discussing the differences between "an individual, not class-wide, remedy"); *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1567 (3d Cir. 1994) (discussing

11

"jurisdiction over individual, as opposed to class, defendant"); *Harper v. Trans World Airlines, Inc.*, 525 F.2d 409, 412 (8th Cir. 1975) ("[S]tatistics may not be a determinative factor in an individual, as opposed to a class action, discrimination case . . . ."). By ignoring Congress's carefully worded exception for actions brought by "an individual alien," Petitioners have fundamentally altered the common meaning of the statute and, if accepted, would create an exception that swallows the rule. *Hamama*, 912 F.3d at 877 (Petitioners' interpretation would do "violence to the text of the statute" by reading out the word "individual" before "alien"); *Vasquez Perez*, 2019 WL 4784950 at *4-9.

Petitioners have relied on *Califano v. Yamasaki*, 442 U.S. 682 (1979), but the statute at issue in *Califano* is distinguishable from section 1252(f)(1) in at least two critical respects. *First*, section 1252 is meaningfully different in structure. In *Califano*, the Supreme Court held a statute providing a cause of action to "any individual plaintiff" did not preclude a class of plaintiffs from invoking that cause of action. *Id*. at 700. The Court held that the statute was merely descriptive of a cause of action and did not demonstrate any "intent to depart" from the types of remedies and procedures that are typically available in a civil action, including class procedures. *Id*. Section 1252(f)(1), however, is an unambiguous bar on a kind of relief (injunctive relief), with an express exemption allowing injunctions only in cases brought by "an individual alien." Section 1252(f)(1) thus explicitly reflects a clear intention to depart from ordinary procedures to foreclose classwide injunctions. *Second*, unlike in *Califano*, Respondents do not contend that section 1252(f)(1) "foreclose[s] class actions," as the Ninth Circuit has already concluded that section 1252(f)(1) does not preclude class certification to pursue declaratory relief. *See Rodriguez I*, 591 F.3d at 1120; *Marin*, 909 F.3d at 256.   Thus, even if Petitioners were correct that *Califano* creates an interpretive canon, it is inapplicable here because Respondents' reading of section 1252(f)(1) does not effect a ban on class actions. As the Supreme Court has said,

12

section 1252(f)(1) "is nothing more or less than a limit on injunctive relief." *AADC*, 525 U.S. at 481-82.

To the extent Petitioners contend that section 1252(f)(1) applies only to organizational plaintiffs (but not to a class of aliens), they cannot offer any plausible interpretation of "an individual" that would include one but not the other. In both situations, the phrase "an individual alien" has the same meaning: a person who is pursuing relief for himself, rather than in a group. *See* Black's Law Dictionary 8th ed., "individual" at 789 ("Of or relating to a single person or thing, as opposed to a group."). Either way, a classwide injunction on constitutional grounds is jurisdictionally barred.

B.    There is no exception to section 1252(f)(1) for habeas class actions.

There is no requirement for a "clear statement" in order to recognize section 1252(f)(1)'s unambiguous limit on classwide injunctive relief. *Vasquez Perez*, 2019 WL 4784950 at *4-9 ("Section 1252(f)(1)'s elimination of lower courts' ability to issue habeas relief on a *classwide* basis does not implicate the clear statement rule. Rather, the clear statement rule requires 'a clear statement of congressional intent to *repeal* habeas jurisdiction.'" (emphasis in original)). Section 1252(f)(1) does not obstruct Petitioners' access to traditional individual habeas relief as each detainee can still bring their constitutional challenge via an individual habeas. The Supreme Court has never taken issue with congressional limitations on remedies where other remedies are available. *See, e.g., Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 330 (1938) (rejecting constitutional challenge to statutory restrictions on injunctive relief); *Cary v. Curtis,* 44 U.S. 236, 250 (1845) (upholding Congress's abolition of a cause of action in part because the claimant "was not without other modes of redress"); *cf. Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus"). Petitioners' effort to seek classwide relief falls outside the traditional use of habeas and therefore "the type

13

of relief Petitioners seek is not protected by the Suspension Clause."
*Hamama*, 912 F.3d at 875. The Supreme Court has questioned the availability of
classwide relief in habeas, making it evident that such relief was not a feature of the
writ at common law and that its absence, therefore, does not effect a suspension of the
writ as it existed in 1789—or even today. *See Schall v. Martin*, 467 U.S. 253, 260
n.10 (1984) ("[w]e have never decided" whether Rule 23 "is applicable to petitions for
habeas corpus relief"). Section 1252(f)(1) does not even arguably suspend the writ and
is therefore not subject to the clear statement rule.

The Supreme Court's decisions in *INS v. St. Cyr*, 533 U.S. 289 (2001), and
*Boumediene v. Bush*, 128 S. Ct. 2229 (2008), are not to the contrary. In particular,
because section 1252(f)(1) does not "invoke[] the outer limits of Congress' power," it
does not trigger potential application of the construction canons animating the
Supreme Court's decisions in *St. Cyr* and *Boumediene*. *See St. Cyr*, 533 U.S. at 299.
Courts regularly apply procedural limitations to habeas without invoking the clear
statement rule. *See, e.g.*, *Marquez-Almanzar v. Ashcroft*, No. 03 CIV. 1601 (GEL),
2003 WL 21283418, at *6 (S.D.N.Y. June 3, 2003) ("As no constitutional concerns
are raised by procedural rules like § 1252(b)(5), the clear statement rule does not
apply to them."); *see also United States v. Barrett,* 178 F.3d 34, 53 (1st Cir. 1999),
*cert. denied,* 528 U.S. 1176 (2000) ("[R]easonable limits on the use and application of
the habeas remedy do not work an unconstitutional suspension of the writ."). Thus
there was no need to amend 1252(f)(1) following *St. Cyr* as section (f)(1) already
specifically reserved judicial authority to grant individual habeas relief where
appropriate.

C. <u>The preliminary injunction enjoins the "operation" of sections
1225(b)(1), (b)(2) and 1226(c).</u>

14

The preliminary injunction undoubtedly enjoins the operation of sections 1225(b)(1)(B)(ii), 1225(b)(2)(A), and 1226(c).[4] An order enjoins the "operation" of the statute when it prevents "a doing or performing of a practical work or of something involving practical application of principles or processes" the statute requires. *Webster's Third New International Dictionary* 1581 (2002). Here, the preliminary injunction prevents practical applications of three statutory provisions: 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A), and 1226(c). The injunction replaces the provisions' unambiguous endpoints with a new six-month cap; it creates a new process for obtaining bond hearings; it adopts new standards and burdens to govern immigration bond determinations; and it identifies new categories of information that immigration judges must consider at bond hearings. *See Jennings*, 138 U.S. at 848 (holding the injunction's requirements are "clearly contrary" to the statutes). For example, whereas section 1226(c) unambiguously prohibits the release of a criminal alien on bond during removal proceedings, the injunction would mandate his release after six months if he does not receive a bond hearing automatically or the Government is unable to demonstrate, by clear and convincing evidence, he is a danger or flight risk.

In briefing to the Ninth Circuit, Petitioners argued that the order does not enjoin the operation of the detention provisions because the injunction does not "foreclose completely [their] application in any instance." Pets. Supp. Br., 13-56755 (9th Cir.), Dkt. 167 at 13. But an order that enjoins or restrains the operation of a statute in some circumstances (but not others) still "enjoins[s] or restrain[s] the operation" of that statute because the statute cannot operate as written in those circumstances because of the order. A class wide order requiring bond hearings at the six month mark as a constitutional matter would enjoin the operation of those statutes because Congress unambiguously specified the temporal scope of sections 1226 and 1225(b)— completion of removal proceedings. *Jennings*, 138 S. Ct. at 844. Indeed, any such

---

[4] The permanent injunction also enjoined the operation of section 1226(a).

order would be tantamount to holding those statutes unconstitutional (at least as applied to class members), which clearly would enjoin or restrain the operation of the statutes as Congress has written them.

Petitioners' effort to exclude all as-applied challenges from the ambit of the statute is also foreclosed by the fact that the statute already contains one exception: It provides that "No court . . . shall . . . enjoin . . . the operation of [sections 1221-1232] *other than* with respect . . . to an individual alien." 8 U.S.C. § 1252(f)(1). Petitioners would effectively read the statute to contain a duplicative exception for as-applied challenges. But "[t]hat express exception to detention implies that there are no *other* circumstances under which" the statute's bar does not apply. *Jennings*, 138 S. Ct. at 844. Moreover, Petitioners' standard for what constitutes a restraint on operation would read the express exception out of the statute, because any injunction that prevents application of the statutes "with respect to . . . an individual alien" would also be an as-applied challenge barring only some (but not all) applications of the relevant statutes. Section 1252(f)(1) thus requires that the injunction here be vacated.

## III.   The class should be decertified.

Section 1252(f)(1) aside, the injunction must be vacated—and the class decertified—because the constitutional questions Petitioners ask cannot be commonly analyzed as to the entire class or any subclass. The Due Process Clause does not impose a one-size-fits-all six-month cap under each of the challenged provisions and all of their applications. As a result, the ordinary efficiencies of a class action are inapplicable here and, in any event, are far outweighed by its procedural difficulty as compared to an individual habeas petition. The class and subclasses should be decertified.

A.   Petitioners' constitutional claims cannot be commonly resolved based on six months of detention alone.

Petitioners bear the "rigorous" burden of demonstrating, among other things, that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2),

1    (b)(2); *Wal-Mart*, 564 U.S. at 350-51. In determining whether a question of law is
2    common to the class, it is not enough simply to ask the same question. "What matters
3    to class certification . . . is not the raising of common 'questions'—even in droves—
4    but, rather the capacity of a classwide proceeding to generate common *answers* apt to
5    drive the resolution of the litigation." *Id.* at 351. To satisfy Rule 23(b)(2), Petitioners
6    must show that relief "is available to the class as a whole" and that the challenged
7    conduct is "such that it can be enjoined or declared unlawful only as to all of the class
8    members or as to none of them." *Id.* at 360.

9          Accordingly, Petitioners have the burden of demonstrating that the factual
10   differences in the class here are immaterial, and that the question presented can be
11   answered (and any violation remedied) the same way for every member of the class.
12   *See id.* at 350 (The common legal problem "must be of such a nature that it is capable
13   of classwide resolution—which means that determination of its truth or falsity will
14   resolve an issue that is central to the validity of each one of the claims *in one stroke*."
15   (emphasis added)); *cf. Califano*, 442 U.S. at 701. Petitioners "must affirmatively
16   demonstrate" "that there are *in fact* . . . common questions of law." *Wal-Mart*, 564
17   U.S. at 350. Similarly, the Court must "probe behind the pleadings before coming to
18   rest on the certification question," including a "rigorous analysis" that the
19   prerequisites of Rule 23(a) have been satisfied." *Id.* at 351. "Frequently that 'rigorous
20   analysis' will entail some overlap with the merits of the . . . underlying claim" because
21   "the class determination . . . involves considerations that are enmeshed in the factual
22   and legal issues comprising the . . . cause of action." *Id.*

23         Petitioners' due process claims do not satisfy these requirements. Petitioners'
24   due process claims turn on a highly-flexible and fact-intensive inquiry that *requires* an
25   individualized assessment of numerous factors, and cannot be conducted based on
26   length of detention alone. *See Abdi*, 2019 WL 4621898, at *9-11. Thus, the necessary
27   constitutional analysis demonstrates that certification is not appropriate here because

28

the subclasses contain individuals with differences that materially bear on the merits of their due process claims.

   1. *The law does not support a due process analysis that is blind to every relevant due process factor except time.*

A rigid six-month mandate is fundamentally inconsistent with the flexibility inherent in the Due Process Clause. The Supreme Court has "repeatedly stressed" that due process is a flexible concept that requires an individualized assessment of numerous factors including "interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982); *see Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

The Supreme Court's precedent on the Speedy Trial Clause illustrates that the Constitution cannot be read to superimpose a rigid six-month deadline on the flexible and multi-layered adjudicatory system here. In the criminal context, the Constitution expressly provides a right "to a speedy and public trial." U.S. Const. Amend. VI. In interpreting that guarantee, the Court has unanimously rejected a rule "that the government must be ready for trial within six months of the date of arrest, except in unusual circumstances." *Barker v. Wingo*, 407 U.S. 514, 523 (1972). "We cannot definitely say how long is too long," the Court stated, "in a system where justice is supposed to be swift but deliberate." *Id*. at 521; *see id*. at 538 (White, J., concurring) ("[C]ases will differ among themselves as to the allowable time between charge and trial.").

The Court in *Barker* found "no constitutional basis for holding" that the right "can be quantified into a specified number of days or months." *Id*. at 523. Adopting such a rule, the Court concluded, "would require this Court to engage in legislative or rulemaking activity," "rather than in the adjudicative process." *Id*. The "inflexible"

18

approach of a "fixed-time period," the Court reasoned, thus "goes further than the Constitution requires." *Id*. at 529. Instead, the Court held that "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Id*. at 522. That analysis applies *a fortiori* here, where (unlike in *Barker*) Petitioners' six-month rule would encompass individuals with varying individual characteristics involved in proceedings with multiple layers of appellate review available to the alien depending on his own litigation choices.

The individual characteristics of the members of the subclasses and the varied procedural protections available to them make it impossible for the Court to answer the due process question the same way for each of them. *See Lujan v. G&G Fire Sprinklers, Inc*., 532 U.S. 189, 196 (2001) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."). The subclasses include aliens with different characteristics that are relevant to the justifications for detention; aliens with varying criminal histories; aliens who claim a right to live inside the United States, and those who concede they lack such a right; aliens who seek discretionary and nondiscretionary relief; aliens who expeditiously pursued their claims and others who did not; aliens who have been ordered removed by an immigration judge or the Board of Immigration Appeals, and those who have not; lawful permanent residents and aliens who have no substantial contacts; and aliens who have been subject to different kinds of processes along the way. These factual differences prevent deciding or remedying the due process claims in a common manner.[5]

---

[5] In addition, although the government has taken the position that *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008), was overruled by *Jennings*, to the extent Petitioners take a contrary position, *Casas* precludes certification of the section 1226(a) class. *Casas* concluded that criminal aliens who were subject to mandatory detention under section 1226(c)during removal proceedings during which the government prevailed, are subject to section 1226(a) if they file a petition for review of the removal order and request a stay of removal. *Id*. The government's weighty interest in detaining dangerous criminals who have already been ordered removed

*(Footnote continued)*

19

The individual circumstances of the immigration proceedings also vary. Courts routinely analyze the reasonableness of the removal proceedings, as well as the government's conduct, in determining whether detention has become unconstitutional. *See, e.g., Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 276-80 (3d Cir. 2018) (finding length of detention alone not sufficient to justify new section 1226(a) bond hearings where no evidence of governmental delay); *Sajous* 2018 WL 2357266, at *10 (rejecting six month rule, but finding section 1226(c) unconstitutionally applied due to delay on FOIA request). Under *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2011), the relevant proceedings span three levels of review; thus all of the subclasses include individuals who have been ordered removed by an immigration judge, had their appeal dismissed by the Board of Immigration Appeals, and will become subject to imminent removal when (in the vast majority of instances) their motion for a stay of removal is denied. For all such aliens, the government's interest in continued detention is highest and accordingly the alien must demonstrate a weighty liberty interest in order to bring a successful due process challenge. But the six month rule necessarily prevents the proper consideration of those relevant factors—detention length as compared to the stage of the proceedings and litigant behavior—and instead treats the government's interest in detention of an alien on the precipice of removal the same as an alien who has faced unjustifiable delays.

Justice Kennedy's concurrence in *Demore* reflects a similar understanding. Justice Kennedy viewed the constitutionality of continuing detention without a bond hearing as depending on why detention is continuing: If there were an "unreasonable delay *by the [Immigration and Naturalization Service (INS)]* in pursuing and completing deportation proceedings," he explained, it "could become necessary" to

---

cannot be commonly adjudicated with the claims of individuals with no criminal history who have been eligible for bond throughout their proceedings.

ask whether "the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, *but to incarcerate for other reasons*." 538 U.S. at 532-533 (emphases added). Justice Kennedy could not draw such an inference, however, "from the circumstances of" *Demore* itself. *Id*. at 533. The clear implication is that the reasonable continuation of removal proceedings occasioned by an alien's choices—including seeking continuances, relief from removal, or appellate review—does not undermine the constitutionality of detention. So long as the added time is reasonably needed to adjudicate the case (not prolonged pointlessly or to punish), the ongoing detention continues to be constitutionally justified by the interests in "protect[ing] against risk of flight or dangerousness." *Id*. at 532-33; *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) ("Although this litigation strategy is perfectly permissible, we hold that [the alien] may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process."). A rigid six-month cap thus cannot be squared with the constitutional inquiry *Demore* requires.[6]

    2. *The weight of authority on this issue supports decertification of the subclasses.*

    No court has adopted a six-month constitutional brightline for any of the challenges statutes. In *Abdi*, the Western District of New York decertified a far more narrowly-defined class pre-entry asylum seekers detained pursuant to section 1225(b)(1)(B)(ii) for six months. 2019 WL 4621898 at *4-9. The court correctly reasoned that

        [t]he six month temporal rule endorsed by *Lora* and *Rodriguez* was the adhesive that held the subclass together. While it may be possible for Petitioners to demonstrate that some subclass members have been

---

[6] *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011), is not to the contrary. *Diouf*'s holding is limited to post-order detention, its six-month rule was imposed as statutory construction, and it was based on *Zadvydas*, which the Supreme Court has said does not apply to pre-order detention. *Jennings,* 138 S. Ct. at 848 (quoting *Demore*, 538 U.S. at 529). *Diouf* also stops short of applying an unbending six-month rule by allowing for exceptions where removal is imminent. 634 F.3d at 1092 n.13.

detained for a constitutionally infirm period, Petitioners have not
demonstrated that such is the case for *all* current *and* future subclass
members. Any such determination is no longer automatically triggered by
time in custody.

*Id*. at *4. Similarly, in *Reid* and *Sajous*, two courts that previously embraced the six-month rule as a matter of statutory construction have now rejected that rule as inappropriate for a due process claim. *Reid*, 390 F. Supp. 3d at 219; *Sajous* 2018 WL 2357266, at *10. Meanwhile, numerous courts have relied on non-time-based factors to uphold these statutes against challenges brought by the individuals detained for longer than six months. *See, e.g.*, *Borbot*, 906 F.3d at 276-80 (holding section 1226(a) not unconstitutional based on 18 months of detention alone); *Nikolic*, 2019 WL 5887500 (relying on reasonableness of administrative proceedings to find 11 months of section 1226(c) constitutional). And the Ninth Circuit in this case has acknowledged that class members enjoy varying degrees of due process. *Rodriguez II*, 715 F.3d at 1140 ("Some non-citizens therefore enjoy very limited protections under the United States constitution."). Altogether, the weight of the authority supports a flexible due process analysis that is inconsistent with certification of Petitioners' classes for the constitutional claims.

B. Changes to the section 1225(b) subclass require it to be decertified.

As an initial matter, the section 1225(b) subclass must be decertified based on the substantive alterations to the subclass in the FAC.[7] As presently certified, the section 1225(b) subclass is defined to include aliens who are seeking initial admission to the United States, who have "no constitutional rights regarding [their] application" for admission, *Plasencia*, 459 U.S. at 32, as well as aliens who are lawful permanent residents, who stand on very different constitutional footing, *e.g.*, *Zadvydas v. Davis*,

---

[7] Petitioners also modified the definitions of the section 1226(a) and section 1226(c) subclasses in the FAC such that they no longer match the certified subclasses. Petitioners have not moved for certification on these classes and therefore they are not operative.

22

533 U.S. 678, 693 (2001). In the Fourth Amended Complaint, Petitioners removed lawful permanent residents from the proposed 1225(b) subclass. ECF 515 at 28 n.10; *see supra* note 1. Because Petitioners have abandoned the certified section 1225(b) subclass, it should be decertified.

In addition, in the decade since the section 1225(b) subclass was certified on Petitioners' statutory claim, the scope of section 1225(b) has significantly changed. *See Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019) (holding asylum seekers intercepted after entry are subject to section 1225(b)(1)(B)(ii); Designating Aliens for Expedited Removal, 84 FR 35,409 (July 23, 2019) (expanding section 1225(b)(1)(B)(ii) to include individuals detained within two years of initial entry). Petitioners bear the burden of demonstrating that these changes do not undermine the commonality of the subclass's claims, and to show that its representatives—both of whom were detained prior to entry, ECF 515 at 15, 17—continue to adequately represent the interests of the entire class. *Marlo*, 639 F.3d at 947. The Ninth Circuit has suggested that these differences matter. *See Ibrahim v. DHS*, 669 F.3d 983, 997 (9th Cir. 2012) (conducting individual analysis of substantial connections to determine due process entitlement); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed *substantial connections* with this country."). Therefore, the section 1225(b) class should be decertified.

C. <u>Petitioners' constitutional claims should be adjudicated through individual habeas cases.</u>

In addition to being the only viable method to address each person's individual claim of unconstitutional detention, an individual habeas action is the appropriate forum for Petitioners' constitutional claims. First, in this context, the class action is a far less efficient means of answering "the straightforward constitutional question" presented here. *Marin*, 909 F.3d at 255. As the Ninth Circuit has held, the constitutional question here is limited to "the *minimum* requirements of due process"

1    for each subclass—a question that is far less relevant to each individual habeas

2    petitioner than the *total* process due to them personally. *Id*. at 255-56. Indeed the class

3    questions, along with a host of others questions, could be litigated much more quickly

4    in an individual habeas case. *See* 28 U.S.C. § 2241 (setting expedited habeas

5    procedures).  And an individual habeas petition offers a more robust remedy: whereas

6    an individual habeas petition can result in binding circuit precedent that shapes

7    procedures available throughout the jurisdiction, the remedy for the class claim here

8    is, at best, a declaratory order that could require further individual action to enforce.

9    *See* 8 U.S.C. § 1252(f)(1); *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011). Thus,

10   the individual habeas petition offers quicker, less procedurally complicated, and more

11   effective relief than a class claim on this issue.

12        Second, an individual challenge allows courts to examine all of the relevant

13   factors affecting the constitutionality of the individual's continued detention, and take

14   into account the reasons why that outlier case is an outlier in the first place. This

15   provides more flexibility to fashion remedies that more appropriately accord the

16   proper deference to the statute.  "[F]ederal courts have the institutional competence to

17   make fact-specific determinations," *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1217

18   (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018), as demonstrated by their

19   ability to apply case-specific standards under the Speedy Trial Clause and as-applied

20   challenges to prolonged pretrial detention. *Cf. Reno v. Flores*, 507 U.S. 292, 314

21   (1993) (observing that there was "no evidence . . . that habeas corpus [wa]s

22   insufficient to remedy particular abuses" in terms of detention for "undue periods.")

23        Third, a Rule 23(b)(2) class action on these claims is problematic for class

24   members who wish to pursue individual relief because class members cannot opt out

25   of the class. *See Wal-Mart*, 564 U.S. at ("The Rule provides no opportunity for (b)(1)

26   or (b)(2) class members to opt out, and does not even oblige the District Court to

27   afford them notice of the action."). Thus, they must await a final decision in the class

28   action and cannot bring these claims in their individual habeas cases.

Finally, section 1252(f)(1) provides clear evidence that Congress intended such claims to be handled on a case-by-case basis. As the sovereign, Congress has the authority to dictate the manner in which it is subject to suit, and its intent should be considered in deciding the propriety of permitting a case to proceed under Rule 23. Therefore the injunction should be vacated and the class decertified.

1

**CONCLUSION**

2          Respondents respectfully request that the preliminary injunction be vacated and

3   the class decertified.

4   Dated:  November 27, 2019              JOSEPH HUNT
                                           Assistant Attorney General
5                                          Civil Division
                                           DAVID MCCONNELL
6                                          Director, Office of Immigration Litigation
                                           Appellate Court Section
7                                          ERNESTO MOLINA
                                           Deputy Director
8
                                           */s/ Sarah Wilson*
9                                          SARAH WILSON
                                           Senior Litigation Counsel
10                                         United States Department of Justice
                                           Office of Immigration Litigation,
11                                         District Court Section
                                           P.O. Box 868, Ben Franklin Station
12                                         Washington, DC 20044
                                           Phone: (202) 532-4700/ (205) 244-2140
13                                         sarah.s.wilson@usdoj.gov

14                                         Attorneys for Respondents

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        26

1

2 **<u>CERTIFICATE OF SERVICE</u>**

3        I certify that on November 27, 2019, I served a copy of the foregoing by

4 CM/ECF which delivered a copy to all counsel of record, including:

5 Ahilan T. Arulanantham
Email: aarulanantham@aclu-sc.org

6

7 Michael Kaufman
Email: mkaufman@aclu-sc.org

8 Zoe McKinney
Email: ZMcKinney@aclusocal.org

9

10

11                                              */s/  Sarah Wilson*
Sarah Wilson

12                                              United States Department of Justice

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28