1  AHILAN T. ARULANANTHAM (SBN 237841)
   aarulanantham@aclusocal.org
2  MICHAEL KAUFMAN (SBN 254575)
   mkaufman@aclusocal.org
3  ZOE MCKINNEY (SBN 312877)
   zmckinney@aclusocal.org
4  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West 8th Street
5  Los Angeles, CA 90017
   Telephone: (213) 977-5211
6  Facsimile: (213) 977-5297

7  Attorneys for Petitioner
8  (Additional counsel listed on following page)

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11                   **WESTERN DIVISION**

12  ALEJANDRO RODRIGUEZ,                    )  Case No. CV 07-3239-TJH (RNBx)
    ABDIRIZAK ADEN FARAH, YUSSUF           )
13  ABDIKADIR, ABEL PEREZ RUELAS,          )  **PETITIONERS' OPPOSITION TO**
    JOSE FARIAS CORNEJO, ANGEL             )  **RESPONDENTS' MOTION TO**
14  ARMANDO AYALA, ALEX CACHO              )  **VACATE AND DECERTIFY THE**
    CASTILLO for themselves and on behalf  )  **CLASS**
15  of a class of similarly-situated individuals, )

16              Petitioners,                )  The Honorable Terry J. Hatter, Jr.
                                            )
17         v.                               )
                                            )
18  WILLIAM BARR, United States Attorney    )
    General; KEVIN MCALEENAN, Acting        )
19  Secretary, Homeland Security; JAMES     )
    MCHENRY, Director, Executive Office     )
20  for Immigration Review; DAVID MARIN,    )
    Field Office Director, Los Angeles      )
21  District, Immigration and Customs       )
    Enforcement; DON BARNES Sheriff of      )
22  Orange County; OFFICER NGUYEN,          )
    Officer-in-Charge, Theo Lacy Facility;  )
23  LUKE SOUTH, Commander, Theo Lacy        )
    Facility; LISA VON NORDHEIM,            )
24  Captain, James A. Musick Facility;      )
    TERRY NELSEN, Assistant Field Office    )
25  Director, Adelanto Detention Facility,  )
                                            )
26              Respondents.                )
    _____)

27

28

1 | Additional counsel:

2 | JUDY RABINOVITZ
3 | jrabinovitz@aclu.org
  | MICHAEL TAN (SBN 284869)
4 | mtan@aclu.org
  | AMERICAN CIVIL LIBERTIES FOUNDATION
  | IMMIGRANTS' RIGHTS PROJECT
5 | 125 Broad Street, 18th Floor
  | New York, NY 10004
6 | Telephone: (212) 549-2618
  | Facsimile: (212) 549-2654
7 |
  | JAYASHRI SRIKANTIAH (SBN 189566)
8 | jsrikantiah@law.staford.edu
  | STANFORD LAW SCHOOL
9 | IMMIGRANTS' RIGHTS CLINIC
  | Crown Quadrangle
10 | 559 Nathan Abbott Way
  | Stanford, CA 94305-8610
11 | Telephone: (650) 724-2442
  | Facsimile: (650) 723-4426
12 |
  | SEAN COMMONS (SBN 217603)
13 | scommons@sidley.com
  | SIDLEY AUSTIN LLP
14 | 555 West Fifth Street, Suite 4000
  | Los Angeles, California 90013-1010
15 | Telephone: (213) 896-6000
  | Facsimile: (213) 896-6600
16

1

# TABLE OF CONTENTS

2

3    INTRODUCTION ....................................................................................... 1

4    I.    THE INJUNCTION SHOULD REMAIN IN FORCE UNTIL
5          RESOLUTION OF THE CONSTITUTIONAL CLAIMS ........................... 3

6          A.    The Ninth Circuit Ordered This Court to Maintain the Injunction ....... 3

7
8          B.    Respondents Incorrectly Assert That Petitioners Never
                 Moved for an Injunction on Constitutional Grounds ........................... 4
9
10         C.    *Diouf II* and Other Ninth Circuit Precedent Make Clear
                 that the Constitution Requires the Injunction ...................................... 5
11
12   II.   THE NINTH CIRCUIT ORDERED CERTIFICATION ON
           THE CONSTITUTIONAL CLAIMS, AND SUBSEQUENT
13         APPEALS HAVE NOT ALTERED THAT RULING ................................... 8

14         A.    Respondents Provide No Basis to Revisit the Ninth
15               Circuit's Decision Ordering Certification of Plaintiffs'
                 Due Process Claims ............................................................................. 8
16
17         B.    The Class Continues to Have a Common Constitutional Claim ........ 10

18         C.    Small Alterations to One Subclass Do Not Justify Decertification .... 14
19
20         D.    Section 1252(f) Does Not Warrant Decertification or
                 Vacatur of the Injunction .................................................................. 16
21
22               1.    Respondents' Interpretation of Section 1252(f)
                       is Foreclosed by *Rodriguez V* ................................................. 16
23
24               2.    Even as a Matter of First Impression, Section 1252(f)(1)
                       Does Not Apply Because its Exception Clause Governs
25                     This Case ................................................................................. 17

26

27

28

i

III.  THIS COURT SHOULD NOT REQUIRE CLASS MEMBERS TO FILE INDIVIDUAL HABEAS PETITIONS, BUT IF IT DOES SO IT SHOULD REQUIRE A NOTIFICATION SYSTEM AND APPOINT COUNSEL FOR THE HUNDREDS OF RESULTING INDIVIDUAL CASES ........................................................ 20

    A.  Severe Practical Problems Would Arise if Class Members Had to File Individual Habeas Petitions to Vindicate Due Process Rights ...................................................................... 20

    B.  If Individuals Must Pursue Individual Habeas Litigation, the Court Should Appoint Counsel and Specify Governing Standards.......................................................... 23

CONCLUSION................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Abdi v. McAleenan,*
  --- F. Supp. 3d ---, 2019 WL 4621898 (W.D.N.Y. Sept. 24, 2019) .................... 7

*American Immigration Lawyers Ass'n v. Reno,*
  199 F.3d 1352 (D.C. Cir. 2000) ................................................. 16, 19

*Make the Road New York v. McAleenan,*
  --- F. Supp. 3d ---, 2019 WL 4738070 (D.D.C. Sept. 27, 2019) ....................... 15

*Arroyo v. U.S. Dep't of Homeland Sec.,*
  2019 WL 2912848 (C.D. Cal. June 20, 2019) ................................. 9, 17

*Barker v. Wingo,*
  407 U.S. 514 (1972) ................................................. 13, 14

*Carey v. Piphus,*
  435 U.S. 247 (1978) ................................................. 13

*Castano v. American Tobacco Co.,*
  84 F.3d 734 (5th Cir. 1996) ................................................. 22

*Chavez-Alvarez* v. *Warden York Cty. Prison,*
  783 F.3d 469 (3d Cir. 2015) ................................................. 22

*Cheff v. Schnackenberg,*
  384 U.S. 373 (1966) (plurality opinion) ................................. 6

*K.W. ex rel. D.W. v. Armstrong,*
  298 F.R.D. 479 (D. Idaho 2014), *aff'd sub nom* 789 F.3d 962 (9th
  Cir. 2015) ................................................. 9, 14

*Demore v. Kim,*
  538 U.S. 510 (2003), ................................................. 11

*Diop* v. *ICE/Homeland Sec.,*
  656 F.3d 221 (3d Cir. 2011) ................................................. 22

*Diouf v. Napolitano (Diouf II),*
  634 F.3d 1081 (9th Cir. 2011) ................................................. *passim*

iii

*Doe v. Gallinot*,
   657 F.2d 1017 (9th Cir. 1981) ....................................................................... 21

*Haitian Refugee Ctr., Inc. v. Nelson*,
   694 F. Supp. 864 (S.D. Fla. 1988), *aff'd*, 872 F.2d 1555 (11th Cir.
   1989), *aff'd sub nom. McNary v. Haitian Refugee Ctr., Inc*., 498
   U.S. 479 488 (1991) ...................................................................................... 13

*Hamama v. Adducci*,
   349 F. Supp. 3d 665 (E.D. Mich. 2018), *appeal docketed*, No. 19-
   1080 (6th Cir. Jan. 22, 2019) ..................................................................... 6, 7

*Hernandez v. Lynch*,
   2016 WL 7116611 (C.D. Cal. Nov. 10, 2016), *aff'd sub nom.*
   *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ................................... 9

*Horne v. Flores*,
   557 U.S. 433 (2009) ........................................................................................ 4

*In re Indefinite Detention Cases*,
   82 F. Supp. 2d 1098 (C.D. Cal. 2000)............................................... 12, 23, 25

*Jennings v. Rodriguez* (*Rodriguez IV*),
   138 S.Ct 830 (2018) ........................................................................... 5, 6, 8, 9

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. 519 (2013) ...................................................................................... 19

*Lopez v. Williams*,
   372 F. Supp. 1279 (S.D. Ohio 1973), *aff'd sub nom. Goss v. Lopez*,
   419 U.S. 565 (1975) ...................................................................................... 13

*Loving v. I.R.S.*,
   742 F.3d 1013 (D.C. Cir. 2014) ................................................................... 19

*Matter of M-S-*,
   27 I. & N. Dec. 509 (A.G. 2019) ................................................................. 15

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ............................................................................ 11, 12, 13

*McNeil v. Director, Patuxent Institution*,
   407 U.S. 245 (1972), 407 U.S. ....................................................................... 6

*Muniz v. Hoffman*,
    422 U.S. 454 (1975) ........................................................................ 6

*Padilla v. ICE*,
    387 F. Supp. 3d 1219 (W.D. Wash. 2019), *appeal filed*, *Padilla v. ICE*, No. 19-35565 (9th Cir. July 5, 2019) ........................................ 15

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ......................................................... 9

*Reid v. Donelan*,
    390 F. Supp. 3d 201 (D. Mass. 2019) ....................................... 7, 22

*Reno v. Catholic Soc. Servs., Inc.*,
    509 U.S. 43 (1993) ...................................................................... 17

*Rodriguez v. Hayes (Rodriguez I)*,
    591 F.3d 1105 (9th Cir. 2010) ............................................*passim*

*Rodriguez v. Robbins (Rodriguez II)*,
    715 F.3d 1127 (9th Cir. 2013) ..................................................... 11

*Rodriguez v. Marin (Rodriguez V)*,
    909 F.3d 252 (9th Cir. 2018) ............................................*passim*

*Rodriguez v. Nielsen*,
    2019 U.S. Dist. LEXIS 4228 (N.D. Cal. Jan. 7, 2019) .................. 6

*Saravia v. Sessions*,
    280 F. Supp. 3d 1168 (N.D. Cal. 2017) ......................................... 9

*Sopo v. U.S. Attorney General*,
    825 F.3d 1199 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018) ............................................................................................. 22

*Third, Califano v. Yamasaki*,
    442 U.S. 682 (1979) ..........................................................*passim*

*Torres v. U.S. Dep't of Homeland Sec.*,
    --- F. Supp. 3d. ---, 2019 WL 5883685 (C.D. Cal. Oct. 24, 2019) .................. 16

*Turner v. Rogers*,
    131 S. Ct. 2507 (2011) ................................................................. 23

v

*United States v. Orona,*
   923 F.3d 1197 (9th Cir. 2019)..........................................................................8

*United States v. Robertson,*
   875 F.3d 1281 (9th Cir. 2017), *vacated on other grounds,* 139 S.
   Ct. 1543 (2019).................................................................................................8, 9

*United States v. Wilson,*
   503 U.S. 329 (1992) ..........................................................................................18

*Valenzuela v. Ducey,*
   329 F. Supp. 3d 982 (D. Ariz. 2018), *appeal dismissed sub nom.*
   *Rivas Valenzuela v. Ducey,* 2019 WL 3384837 (9th Cir. Feb. 7,
   2019)....................................................................................................................9

*Vietnam Veterans of Am. v. C.I.A.,*
   288 F.R.D. 192 (N.D. Cal. 2012) .......................................................................9

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ......................................................................................9, 10

*Yates v. United States,*
   135 S. Ct. 1074 (2015) .....................................................................................19

*Yong v. INS,*
   208 F.3d 1116 (9th Cir. 2000)..........................................................................24

**Statutes**

8 U.S.C. 1252(f).....................................................................................................16

8 U.S.C. 1252(f)(1)................................................................................................18

**Other Authorities**

*Case of Three Spanish Sailors,* 96 Eng. Rep. 775 (C.P. 1779) ...............................18

Fed. R. Civ. P. 23....................................................................................................2

Fed. R. Civ. P. 23(a) .............................................................................................21

Fed. R. Civ. P. 23(b)(2) ...........................................................................9, 13, 20, 21

Fed. R. Civ. P. 23(b)(3) .........................................................................................21

# INTRODUCTION

Respondents ask this Court both to vacate the injunction and to decertify the Class, thereby dismantling critical constitutional protections the Court put in place more than seven years ago. The Court should reject that request because it ignores the instructions in the Ninth Circuit's latest remand order, the procedural history of this case, and a large body of governing Ninth Circuit precedent.

Respondents' motion to vacate suffers from three basic flaws. *First*, the Ninth Circuit's remand unequivocally ordered that the injunction should remain in place "pending the consideration of these vital constitutional issues." *Rodriguez v. Marin (Rodriguez V)*, 909 F.3d 252, 256 (9th Cir. 2018). *Rodriguez V*'s express instructions foreclose Respondents' primary argument. While Respondents may seek vacatur of the injunction *after* this Court receives full briefing and argument on the merits of the constitutional claims, they may not short-circuit the process the Ninth Circuit ordered. *Infra* Section I.A.

*Second*, even were this Court free to disregard *Rodriguez V*'s mandate, Respondents' motion fails because it misapprehends the relevant procedural history. They contend the Court must vacate the injunction because Petitioners never moved for it on constitutional grounds. The record proves otherwise. Petitioners sought preliminary relief on the constitutional claims in 2012, and a permanent injunction on those same claims in 2013. This Court ultimately granted relief on constitutional as well as statutory grounds. While the Ninth Circuit affirmed on statutory grounds that were ultimately reversed, Petitioners' constitutional claims continue to support the injunction. *Infra* Section I.B.

*Third*, if the Court preliminarily assesses the merits at this stage, they are controlled by *Diouf v. Napolitano (Diouf II)*, 634 F.3d 1081 (9th Cir. 2011), and other Ninth Circuit authority on which it relied. *Diouf II* read Section 1231(a)(6) to require bond hearings when confinement exceeds six months because "[w]hen detention crosses the six-month threshold and release or removal is not imminent,

1

the private interests at stake are profound … the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial. The burden imposed on the government by requiring hearings before an immigration judge … is therefore a reasonable one." *Id.* at 1091-92. In its summary judgment order, this Court made clear these precedents control, stating "the government is constitutionally obligated to provide those [*Rodriguez* bond] hearings." Dkt. 353 at 4. The constitutional reasoning in *Diouf II* and its predecessors remains undisturbed by the Supreme Court's decision, and they prohibit this Court from vacating the injunction. Respondents' citation to inapposite law from other circuits is therefore unavailing. *Infra* Section I.C.

Respondents' separate request for decertification also suffers from fundamental flaws. *First*, the Ninth Circuit held almost ten years ago that Petitioners' *constitutional claims* warrant certification under Rule 23. *Rodriguez v. Hayes (Rodriguez I)*, 591 F.3d 1105, 1120 (9th Cir. 2010). The Supreme Court never reversed that decision; indeed, certification was not at issue before the Supreme Court. *Rodriguez I* thus controls absent "clearly irreconcilable" intervening authority, which Respondents do not and cannot identify. *Second*, *Rodriguez I* is correct. Under *Diouf II*, all Class members have a common entitlement to a process where they can ask for release. *Third*, contrary to Respondents' claim, the Fourth Amended Complaint already made the changes needed to align the "Section 1225(b)" Subclass definition with legal developments that have arisen since the class was first certified. And if this Court believes further adjustments are warranted, it should modify the Subclass definitions, not decertify the Class. *Infra* Section II.A-C.

Respondents also recycle shopworn arguments to challenge this Court's authority to enter a classwide injunction under Section 1252(f)(1). They have lost that argument repeatedly since the Supreme Court's decision, and for good reason. The *Rodriguez V* remand order made clear that Section 1252(f)(1) does not

1    prohibit this Court from entering an injunction to protect people who are already in

2    removal proceedings. *Infra* Section II.D.

3        Respondents separately argue that Class members would more efficiently

4    vindicate their rights by pursuing *individual* habeas petitions. These arguments

5    ignore the severe practical problems associated with requiring a group of

6    imprisoned immigrants, many of whom are unrepresented, to file separate lawsuits

7    to vindicate basic constitutional protections. Indeed, *Rodriguez I* already found

8    class certification warranted in part because of the practical problems posed by

9    individual habeas litigation. Should the Court nonetheless be inclined to decertify

10   the Class, Petitioners recommend the Court adopt protective measures that could

11   mitigate, at least to some degree, the devastating harm that would result. *Infra*

12   Section III.

13       Petitioners respectfully request that the Court deny the motion in its entirety.

14   **I.    THE INJUNCTION SHOULD REMAIN IN FORCE UNTIL RESOLUTION OF THE CONSTITUTIONAL CLAIMS.**

15

16   **A.    The Ninth Circuit Ordered This Court to Maintain the Injunction.**

17       Respondents ask this Court to grant relief that the Ninth Circuit both rejected

18   and then expressly foreclosed—i.e., to vacate the injunction without considering

19   Petitioners' constitutional claims. "[L]ike the Supreme Court," the Ninth Circuit

20   held the injunction should remain in place "*pending* the consideration of these vital

21   constitutional issues," which it directed this Court to undertake in the first instance.

22   *Rodriguez V*, 909 F.3d at 256 (emphasis added). It explained why this Court should

23   reach the merits of the constitutional claims *before* setting aside the injunction:

24   "We have grave doubts that any statute that allows for arbitrary prolonged

25   detention without any process is constitutional or that those who founded our

26   democracy precisely to protect against the government's arbitrary deprivation of

27   liberty would have thought so." *Id.*

28       Respondents made the exact same arguments to the Ninth Circuit that they

1  are making now for vacatur, and the Ninth Circuit rejected them. *See, e.g.*,
2  Respondents' Supplemental Brief at 8, *Rodriguez v. Marin*, Nos. 13-56706, 13-
3  56755 (9th Cir. Jul. 13, 2018) ECF No. 174. For this reason alone, Respondents'
4  motion should be denied as improper, as it would violate the Ninth Circuit's
5  express mandate. *See Horne v. Flores*, 557 U.S. 433, 455 (2009) (district court's
6  failure to follow circuit court's instructions was abuse of discretion). Petitioners
7  stand ready to move forward with targeted discovery on the constitutional
8  questions and have worked with Respondents to complete it expeditiously. Once
9  that process concludes, the Court can decide the constitutional questions consistent
10  with the Ninth Circuit's mandate.

### B. Respondents Incorrectly Assert That Petitioners Never Moved for An Injunction on Constitutional Grounds.

11

12      The request to vacate fails for a separate and independent reason; it
13  incorrectly assumes that "Petitioners have not moved for a preliminary injunction
14  on their constitutional claims." Dkt. 533-1 at 8. This is plainly wrong. Petitioners'
15  preliminary injunction motion included this heading: **"Prolonged Detention**
16  **Without Rigorous Bond Hearings is Unconstitutional."** Dkt. 232 at 7. The
17  motion was replete with constitutional arguments. *See, e.g.*, *id.* at 8 ("the holdings
18  of *Tijani*, *Casas*, *V. Singh*, and *Diouf* rest on bedrock constitutional principles …
19  applicable to any detention scheme in which the government detains people for
20  lengthy periods); *id*. at 9 ("It follows from these cases that the Due Process Clause
21  requires the government to provide a rigorous in-person hearing to justify the
22  prolonged incarceration of people who may present no danger or flight risk.").
23  Nothing in this Court's preliminary injunction order suggests it rejected those
24  constitutional arguments. Dkt. 255.
25      Similarly, Petitioners' request for a permanent injunction in connection with
26  summary judgment included a heading that **"The General Immigration**
27  **Detention Statutes *and the Due Process Clause* Require the Protections of**
28

4

1    **Casas Hearings for all Class Members.**" Dkt. 281 at 21 (emphasis added). This

2    motion also was replete with constitutional arguments. *See, e.g.*, *id*. at 21

3    ("Petitioners are entitled to summary judgment on *both* their statutory and

4    constitutional claims") (emphasis added). The Court's permanent injunction order

5    nowhere rejected the constitutional arguments or otherwise limited itself to

6    statutory grounds. In fact, it recognized that "the government is constitutionally

7    obligated to provide those [*Rodriguez* bond] hearings." Dkt. 353 at 4.

8        The constitutional issue is back before this Court because, during the last

9    appeal, the Ninth Circuit elected to affirm only on statutory grounds, and the

10   Supreme Court likewise resolved only the statutory arguments. That is why the

11   Supreme Court remanded with instructions to address Petitioners' constitutional

12   claims, and the Ninth Circuit in turn remanded to this Court to undertake a

13   constitutional analysis. *See Jennings v. Rodriguez* (*Rodriguez IV*), 138 S.Ct 830,

14   851 (2018); *Rodriguez V*, 909 F.3d at 255.

15       Therefore, this Court should not dissolve the injunction based on

16   Respondents' mistaken narrative about the history of this case.

17       **C.    *Diouf II* and Other Ninth Circuit Precedent Make Clear that the
           Constitution Requires the Injunction.**

18

19       The Court need not prematurely consider the underlying merits of the

20   constitutional claims at this stage. But if the Court does so, it will find ample

21   support for maintaining the injunction on constitutional grounds. Respondents rely

22   on out-of-circuit cases, but Ninth Circuit caselaw establishes that due process

23   requires a bond hearing where incarceration exceeds six months. *Diouf II* held

24   "[w]hen detention crosses the six-month threshold and release or removal is not

25   imminent, the private interests at stake are profound. Furthermore, the risk of an

26   erroneous deprivation of liberty in the absence of a hearing before a neutral

27   decisionmaker is substantial. The burden imposed on the government by requiring

28   hearings before an immigration judge . . . is therefore a reasonable one." 634 F.3d

5

at 1091-92; *see also Rodriguez V*, 909 F.3d at 256 (reiterating "grave doubts" as to the constitutionality of a statute allowing for prolonged detention without process). While *Diouf II* ultimately construed a statute—Section 1231(a)(6)—to authorize bond hearings, its reasoning was unambiguously constitutional in nature.

Although Respondents never even cite *Diouf II*, they implicitly suggest that *Rodriguez IV* undermined *Diouf II* by claiming that no court has endorsed the six-month rule since the Supreme Court's decision. Dkt. 533-1 at 8, 21-22. In fact, a district court within the Ninth Circuit has explicitly followed the Circuit's precedent and *endorsed* the bright line six-month rule for bond hearings. *Rodriguez v. Nielsen*, No. 3:18-cv-4187-TSH, 2019 U.S. Dist. LEXIS 4228 (N.D. Cal. Jan. 7, 2019) ("In the absence of controlling authority, this Court concludes that the analytical framework set forth in *Tijani*, *Casas*, and *Diouf* supports Rodriguez's argument that detention becomes prolonged after six month and entitles him to a bond hearing."). At least one court outside this circuit also has endorsed a bright line six-month rule on constitutional grounds, for post-order detainees. *Hamama v. Adducci*, 349 F. Supp. 3d 665, 702 (E.D. Mich. 2018), *appeal docketed*, No. 19-1080 (6th Cir. Jan. 22, 2019) ("For . . . any Petitioner who has been incarcerated beyond six months, whatever may have once been considered reasonable under the law, has long since passed").

A long-standing body of Supreme Court precedent makes clear that due process requires heightened procedures after six months. "It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual[.]" *Muniz v. Hoffman*, 422 U.S. 454, 477 (1975). Our legal system has long recognized six months as a significant period of confinement beyond which additional process is required. For centuries, six months has marked the dividing line between petty and serious offenses. *See Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion) (holding six months is maximum criminal sentence absent jury trial). The Supreme Court has likewise recognized that six

months is a constitutionally significant time period in other civil detention contexts. *See McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 250-52 (1972), 407 U.S. at 250-52 ("six months" without a hearing "a useful benchmark" for outer limit in civil commitment).

A six-month hearing rule also finds support in *Zadvydas v. Davis*, which observed "Congress previously doubted the constitutionality of detention for more than six months," 533 U.S. 678, 701 (2001), and authorized the *release* of individuals detained beyond that period where there was no significant likelihood of removal in the reasonably foreseeable future, even though they had "been determined to be removable after a fair hearing under lawful and proper procedures." *Id.* at 718 (Kennedy, J., dissenting).

Out-of-circuit authority cannot displace binding Ninth Circuit law and the well-established authority on which it was based. Regardless, Respondents exaggerate the extent of disagreement over a six-month rule. Only three cases Respondents cite actually *reject* the bright line rule Petitioners advocate. *See* Dkt. 533-1 at 8-9 (citing *Abdi v. McAleenan*, --- F. Supp. 3d ---, 2019 WL 4621898, at *9-*11 (W.D.N.Y. Sept. 24, 2019); *Reid v. Donelan*, 390 F. Supp. 3d 201, 219 (D. Mass. 2019); *Sajous v. Decker*, No. 18-CV 2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018)). Respectfully, these cases are wrong, including because they treat the Supreme Court's *statutory* holding as undermining the *constitutional* basis for the six-month rule—a proposition the Ninth Circuit did not accept when remanding this case to this Court with instructions. *See Abdi*, 2019 WL 4621898, at *8-*9; *Reid*, 390 F. Supp. 3d at 216.

Thus, even if the Court were inclined to disregard *Rodriguez V*'s express instructions and reach the merits now, it should still maintain the injunction because Ninth Circuit precedent already requires bond hearings where confinement under the immigration laws exceeds six months.

7

## II.    THE NINTH CIRCUIT ORDERED CERTIFICATION ON THE CONSTITUTIONAL CLAIMS, AND SUBSEQUENT APPEALS HAVE NOT ALTERED THAT RULING.

### A.    Respondents Provide No Basis to Revisit the Ninth Circuit's Decision Ordering Certification of Plaintiffs' Due Process Claims.

Respondents ask this Court to decertify the class which the Ninth Circuit ordered in *Rodriguez I*, ignoring that it remains binding precedent. *Rodriguez I* found that *both* Plaintiffs' statutory *and* constitutional claims warranted certification. *Rodriguez I*, 591 F.3d at 1126 ("all class members seek the exact same relief as a matter of statutory or, in the alternative, *constitutional right*. Hence, we conclude that the proposed class meets the requirements of Rule 23(b)(2)") (emphasis added). *See also id.* at 1123 ("the *constitutional issue* at the heart of each class member's claim for relief is common") (emphasis added). *Rodriguez I* remains good law. Following *Rodriguez I*, Respondents waived any objection to the certification of the constitutional claims (Dkt. 122 at 4), and this Court found that the constitutional claims met the requirements for class certification under Rule 23. Dkt. 161 at 3. *Rodriguez I* and this Court's certification order therefore foreclose Respondents' decertification request.

Respondents nonetheless suggest this Court can disregard *Rodriguez I* due to the Supreme Court's decision in *Rodriguez IV*. But where the Supreme Court does not explicitly overrule a decision, it remains binding unless "clearly irreconcilable" with the Supreme Court's holding. *United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017), *vacated on other grounds*, 139 S. Ct. 1543 (2019). "The 'clearly irreconcilable' standard is a high one, and as long as [this Court] 'can apply prior circuit precedent without running afoul of the intervening authority[,] [it] must do so.'" *United States v. Orona*, 923 F.3d 1197, 1200 (9th Cir. 2019) (quoting *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018)). Mere "tension between the intervening higher authority and prior circuit precedent" does not suffice. *Robertson*, 875 F.3d at 1291 (internal quotation and citation omitted).

1    Respondents do not attempt to satisfy the "clearly irreconcilable" standard.

2  Instead, Respondents point to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338

3  (2011), which the Supreme Court directed the Ninth Circuit to consider. *Rodriguez*

4  *IV*, 138 S.Ct. at 851-52. Resp. Br. 17. But nothing in that decision undermines

5  *Rodriguez I*. If it had, Respondents would have moved to decertify eight years ago.

6  In any event, the two are certainly not "clearly irreconcilable." *Robertson*, 875

7  F.3d at 1291. On the contrary, *Wal-Mart* reaffirmed the validity of class actions in

8  civil rights contexts, stating that "'[c]ivil rights cases against parties charged with

9  unlawful, class-based discrimination are prime examples' of what (b)(2) is meant

10  to capture," *id.* at 361 (quoting *Amchem*, 521 U.S. at 614) (alterations in original).

11  The Ninth Circuit has endorsed this aspect of *Wal-Mart*, explaining that "the

12  primary role of [Rule 23(b)(2)] has always been the certification of civil rights

13  class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014).[1]

14    Numerous other post-*Wal-Mart* decisions uphold Rule 23(b)(2) due process

15  class actions. *E.g., Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal.

16  2017); *K.W. ex rel. D.W. v. Armstrong*, 298 F.R.D. 479, 486 (D. Idaho 2014), *aff'd*

17  *sub nom* 789 F.3d 962 (9th Cir. 2015); *Vietnam Veterans of Am. v. C.I.A.*, 288

18  F.R.D. 192, 209 (N.D. Cal. 2012). Indeed, several decisions rely on *both Rodriguez*

19  *I* and *Wal-Mart* to certify due process claims. *E.g., Valenzuela v. Ducey*, 329 F.

20  Supp. 3d 982, 990 (D. Ariz. 2018), *appeal dismissed sub nom. Rivas Valenzuela v.*

21  *Ducey*, 2019 WL 3384837 (9th Cir. Feb. 7, 2019); *Arroyo v. U.S. Dep't of*

22  *Homeland Sec.*, No. SACV 19-815 JGB (SHKx), 2019 WL 2912848, at *11 (C.D.

23  Cal. June 20, 2019); *Hernandez v. Lynch*, 2016 WL 7116611, at *13 (C.D. Cal.

24

25  [1] The Supreme Court apparently believed *Wal-Mart* could be relevant because
   some members of the Section 1225(b) Subclass could have a stronger argument for
26  bond hearings than others. *Rodriguez V*, 138 S.Ct. at 852. Petitioners have resolved
   that problem by excising all returning lawful permanent residents from that
27  Subclass, which is now termed the "Parole Subclass." *See* Dkt. 515 ¶ 120.a; 123
   n.10.
28

9

1   Nov. 10, 2016), *aff'd sub nom. Hernandez v. Sessions*, 872 F.3d 976 (9th Cir.

2   2017). These cases definitively establish that *Rodriguez I* is not "clearly

3   irreconcilable" with *Wal-Mart*.

4         Respondents repeat various other arguments disputing commonality that

5   *Rodriguez I* rejected. As they do here (Dkt. 533-1 at 23-25), Respondents argued

6   constitutional claims "should be heard in the context of an individual petition for

7   writ of habeas corpus." Respondent-Appellee's Answering Brief at 20, *Rodriguez*

8   *v. Hayes,* No. 08-56156, (9th Cir. Oct. 21, 2008) ECF 9 (hereinafter ECF 9); *id*. at

9   19 (arguing "habeas corpus relief is an individualized matter"). As they do here

10  (Dkt. 533-1 at 18-21), Respondents argued constitutional claims are not common

11  because the right to a bond hearing turns on "myriad" different factors, including

12  an individual's statute of detention, criminal history, and immigration status. ECF

13  9 at 29-32, 41. And as they do here (Dkt. 533-1 at 16-17), Respondents argued "the

14  existence of different facts and statutes in different cases, does not lend itself to a

15  systematic imposition" of a six-month rule. ECF 9 at 46. *Rodriguez I* rejected each

16  and all these arguments, holding "*the constitutional issue at the heart of each class*

17  *member's claim for relief is common*." *Rodriguez I*, 591 F.3d at 1122-23 (emphasis

18  added).

19        The class action device continues to remain available—and critical—to

20  effective resolution of Petitioners' common due process claims. For this and other

21  reasons, Respondents have failed to meet their heavy burden to establish that

22  *Rodriguez I* no longer controls. Because *Rodriguez I* remains binding, this Court

23  has no basis to revisit its prior ruling certifying the constitutional claims.

24        **B.    The Class Continues to Have a Common Constitutional Claim.**

25        Even if *Rodriguez I* were not controlling, the Class readily satisfies the

26  requirements for certification.

27        As described *supra*, in construing Section 1231(a)(6) to require bond

28  hearings after six months, *Diouf II* held "[w]hen detention crosses the six-month

                                        10

1    threshold" the balancing of interests requires bond hearings as a matter of due

2    process. 634 F.3d at 1091-92. While Respondents correctly observe *Diouf II*

3    imposed a six-month rule "as a matter of statutory construction." Dkt. 533-1 at 21

4    n.6, they ignore *Diouf II*'s *reasoning*, including its application of *Mathews v.*

5    *Eldridge* to construe the statute to require a bond hearing "[w]hen detention

6    crosses the six-month threshold." 634 F.3d at 1091. That it found such hearings

7    authorized by the statute—Section 1231(a)(6)—does not erase its constitutional

8    analysis.

9            Respondents next claim *Diouf II* is "limited to post-order detention," (Dkt.

10    533-1 at 21 n.6), but the caselaw on which it relied was not about post-order

11    detainees. *Diouf II*, 634 F.3d at 1085-87 (citing, *inter alia*, *Casas-Castrillon*,

12    *Tijani*, and *Demore*, all of which concerned pre-order detention). As the Ninth

13    Circuit subsequently held in the preliminary injunction appeal in this case, "*Diouf*

14    *II* strongly suggested that immigration detention becomes prolonged at the six-

15    month mark regardless of the authorizing statute." *Rodriguez v. Robbins*

16    *(Rodriguez II)*, 715 F.3d 1127, 1139 (9th Cir. 2013). Moreover, as Respondents

17    themselves argued in *Diouf II*, individuals like the pre-order detainees in this Class

18    likely have *stronger* claims to due process protections than people like Mr. Diouf,

19    because they do not have even one final determination that they are subject to

20    deportation. *Diouf II*, 634 F.3d at 1087 (observing the Government "may be correct

21    that it has a marginally greater interest in detaining § 1231(a)(6) detainees than §

22    1226(a) detainees"). Thus, *Diouf II* forecloses Respondents' decertification

23    request.[2]

24

25

26    _____

27    [2] Respondents cite Justice Kennedy's concurrence in *Demore v. Kim*, 538 U.S. 510 (2003), (Dkt. 533-1 at 20-21), but *Diouf II* repeatedly cites *Demore*. *See, e.g.*, *Diouf II*, 634 F.3d at 1091. The Ninth Circuit has "consistently held that *Demore*'s

28    holding is limited to detentions of brief duration." *Rodriguez II*, 715 F.3d at 1137.

1    Respondents also argue that individual differences in each Class member's

2    case preclude certification, but this conflates the right to a *bond hearing* with the

3    right to *release*. This case is not about a "six month cap" on detention (Dkt. 533-1

4    at 16), or about the "justifications for detention" at all (*id.* at 19), but rather

5    whether the Constitution requires *process*, in the form of a hearing, after six

6    months. Respondents' related argument that the Class includes individuals "with

7    different characteristics that are relevant to the justifications for detention" and that

8    "individual circumstances of the immigration proceedings also vary" fails for the

9    same reason. *Id.* at 18-19; *id.* at 19 n.5 (observing Class members eligible for bond

10   hearings under *Casas* may have criminal histories and/or a pending petition for

11   review); *id.* at 20 (observing Class members with a petition for review have lost on

12   some of their claims before the agency). These factors all go to whether *detention*

13   should continue, not whether a *hearing* should occur. An immigration judge can

14   consider the factors Respondents suggest at bond hearings to determine whether

15   "characteristics" and "circumstances" justify ongoing confinement.

16   Respondents' emphasis on individual differences is also foreclosed by *Diouf*

17   *II*. The Ninth Circuit did not find Mr. Diouf was entitled to a bond hearing based

18   on his individual circumstances. Rather, the Ninth Circuit applied the *Mathews*

19   analysis to the generality of cases under Section 1231(a)(6), and concluded that

20   due process requires a bond hearing for *any* person confined for more than six

21   months under the statute. 634 F.3d at 1091-92 (analyzing the deficiencies in

22   Respondents' post-order custody review process without regard to Mr. Diouf's

23   case). *Diouf II* therefore confirms that the due process right to a bond hearing does

24   *not* depend on Class member's individualized circumstances.[3]

25   _____

26   [3] Respondents observe that *Diouf II* recognizes two exceptions. *See* Dkt. 533-1 at
     21 n.6. (observing bond hearings should be conducted *prior* to six months where it
27   is clear that the noncitizen will be detained beyond six months, and need not be
     conducted *at all* where removal is "imminent") (citing *Diouf II*, 634 F.3d at 1092
28   (cont'd)

*Diouf II*'s analysis comports with many cases authorizing class actions for due process challenges raising legal questions of general application. "[P]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases . . . ." *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976). Many seminal due process cases, including cases asserting the right to a hearing, have been Rule 23(b)(2) actions. *See, e.g.*, *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (denial of procedural due process "does not depend on the merits of the claimant's substantive assertions," but instead on whether the government created a sufficient process); *Califano*, 442 U.S. at 702 (establishing right to hearing in cases involving recovery of excess benefits); *Haitian Refugee Ctr., Inc. v. Nelson*, 694 F. Supp. 864, 876-78 (S.D. Fla. 1988), *aff'd*, 872 F.2d 1555 (11th Cir. 1989), *aff'd sub nom. McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 488 (1991) (finding federal jurisdiction in class action challenging notice and related procedures in amnesty program); *Lopez v. Williams*, 372 F. Supp. 1279, 1292 (S.D. Ohio 1973), *aff'd sub nom. Goss v. Lopez*, 419 U.S. 565, 584 (1975) (right to hearing for school discipline). As these cases show, what process is due turns on the *procedures* at issue, not the *individuals* asserting claims.

Respondents also rely on speedy trial doctrine to argue there can be no uniform due process here. Dkt. 531-14 at 18-19 (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). But the analogy is fundamentally misguided. *First*, Petitioners raise due process claims, not speedy trial challenges. The difference matters. The Speedy Trial Clause requires *dismissal*, not bond hearings, where the Government

---

n.13). But these exceptions are simply practical accommodations for the scheduling of bond hearings. The Ninth Circuit recognized there is no reason to wait to hold a bond hearing when a person clearly will be detained beyond six months, and no reason to hold a bond hearing when they will be deported imminently. These limited exceptions reinforce that *Diouf II* otherwise announces a rule of general applicability that does not depend on an individual's immigration status, criminal history, or any "different characteristics" Respondents erroneously contend dictate a Class member's right to a bond hearing. Dkt. 533-1 at 19.

13

1   unreasonably delays. And the Clause applies regardless of whether a defendant

2   presents a danger or flight risk, and even if they are not detained (as in *Barker*

3   itself). *Second*, "the right to speedy trial is a more vague concept than other

4   procedural rights," which is why *Barker* could not "definitely say how long is too

5   long." *Id*. at 521. By contrast, Petitioners do not seek a bright line rule for "how

6   long" immigration cases, or even immigration detention, should last, but rather for

7   when a bond hearing should occur. There is nothing comparably vague about the

8   procedural right to a hearing on whether prolonged detention remains justified.[4]

9   ### C.    Small Alterations to One Subclass Do Not Justify Decertification.

10  Respondents argue that "significant[] change[s]" to the scope of Section

11  1225(b) in the last decade warrant decertification of the "Section 1225(b)

12  Subclass." Dkt. 533-1 at 22-23. This argument fails for several reasons.

13  *First*, courts have "broad discretion to alter or amend a class definition

14  considering subsequent developments in a case." *Ms. L. v. U.S. Immigration and*

15  *Customs* Enforcement, 330 F.R.D. 284, 292 (S.D. Cal. 2019) (citing *Armstrong v.*

16  Davis, 275 F.3d 849, 871 n.28 (9th Cir. 2001). As such, courts routinely make

17  alterations to the class definition, rather than decertify the class. *Armstrong*, 275

18  F.3d at 871 n.28 ("Where appropriate, the district court may redefine the class[.]").

19  *Second*, Respondents ignore that Petitioners already have amended the

20  contours of this and other Subclasses in response to intervening legal changes.

21  Although the main Class definition remains substantively unchanged, the Fourth

22  Amended Complaint redefines all of the Subclasses, including what used to be

23  labeled as the "Section 1225(b) Subclass." The new complaint defines the

24

25  _____

    [4] Even if *Diouf II* were wrong, and an individual's entitlement to a hearing
26  depended on application of case-specific factors, class certification still would be
    warranted. In that situation, every class member would still be entitled to a
27  determination by a neutral decisionmaker as to whether the case-specific factors
    warrant a bond hearing in their particular case. Thus, the class satisfies
28  commonality under both sides' merits positions.

14

1    Subclasses by reference to the process available to Subclass members, because that

2    is most relevant for constitutional purposes. *See* Dkt. 515 ¶ 120. Thus, what

3    Respondents call the "Section 1225(b) Subclass" is now the "Parole Subclass," as

4    Petitioners explained in their motion to amend, which this Court granted. Dkt. 509

5    at 2-3 (explaining amendment); Dkt. 514.

6        *Third*, Respondents point to two related legal developments under Section

7    1225(b), but neither warrant decertification. Dkt. 533-1 at 23 (citing *Matter of M-*

8    *S-*, 27 I. & N. Dec. 509 (A.G. 2019) (purporting to prohibit bond hearings for

9    people who entered without inspection, even after they pass the credible fear

10    interview) *and* 84 FR 35409-1, 35411 (July 23, 2019) (purporting to expand

11    expedited removal to longer-term residents in interior of the country, thereby

12    denying bond hearings to people who cannot prove they have lived here for more

13    than two years)). However, those changes have not altered the scope of this

14    Subclass, because both have been enjoined. *See Padilla v. ICE*, 387 F. Supp. 3d

15    1219, 1223-24 (W.D. Wash. 2019), *appeal filed*, *Padilla v. ICE*, No. 19-35565 (9th

16    Cir. July 5, 2019) (enjoining *Matter of M-S-*) *and Make the Road New York v.*

17    *McAleenan*, --- F. Supp. 3d ---, 2019 WL 4738070, at *49 (D.D.C. Sept. 27, 2019)

18    (enjoining attempted expansion of expedited removal). In any event, should either

19    injunction be lifted, this Court would retain discretion to alter the Subclass

20    definitions to accommodate the changing legal landscape. In particular, if

21    Respondents begin to deny bond hearings to individuals who allegedly entered

22    without inspection, even after they have passed the credible fear interview or have

23    lived here for extended periods of time, the Court could permit alteration of the

24    Subclasses, just as it did with the Fourth Amended Complaint. While such changes

25    could affect the litigation schedule, they plainly would not warrant decertification.

26        *Finally*, Respondents argue in passing, as they have repeatedly in the past,

27    that "individuals seeking initial admission . . . have no constitutional rights

28    regarding their application." Dkt. 533-1 at 22 (quotation and citation omitted). But

1    it does not follow that such individuals have no right to be free from prolonged

2    arbitrary imprisonment. *See Diouf II*, 634 F.3d at 1087 (holding that regardless of a

3    person's status, "the same important interest is at stake—freedom from prolonged

4    detention"); *Zadvydas*, 533 U.S. at 679 ("[T]he Due Process Clause applies to all

5    'persons' within the United States, including aliens, whether their presence here is

6    lawful, unlawful, temporary, or permanent"). In any event, their argument applies

7    equally to all members of the Parole Subclass, and therefore is not a basis for

8    decertification. This Court should not accept Respondents' radical assertion that

9    this Subclass has no right to liberty without merits briefing on that question.

### D.    Section 1252(f) Does Not Warrant Decertification or Vacatur of the Injunction.

12   Respondents make a separate argument against the classwide nature of the

13   injunction under 8 U.S.C. 1252(f), but again ignore the Ninth Circuit's remand

14   order. For that and other reasons, this objection to the injunction is also meritless.

### 1.    *Respondents' Interpretation of Section 1252(f) is Foreclosed by Rodriguez V.*

16   Section 1252(f) contains an exception clause permitting injunctive relief on

17   behalf of "an individual alien against whom [removal proceedings] have been

18   initiated." The Ninth Circuit already held that because "[a]ll of the individuals in

19   the putative class are 'individual[s] against whom [removal] proceedings ... have

20   been initiated,'" Section 1252(f) provision does not apply. *Rodriguez V*, 909 F.3d

21   at 256. *See also American Immigration Lawyers Ass'n*, 199 F.3d at 1359-60

22   ("Congress meant to allow litigation challenging the new system by, and only by,

23   aliens against whom the new procedures had been applied"). *Rodriguez V* also

24   held Section 1252(f) does not apply to habeas cases like this one, because it does

25   not explicitly reference the habeas statute. *Rodriguez V*, 909 F.3d at 256.

26   Strikingly, Respondents never mention *Rodriguez V*'s discussion of Section

27   1252(f). While *Rodriguez V* did leave this Court to decide whether Section

28   1252(f)(1) precludes classwide injunctive relief, *id.* at 256 n.1, Respondents

16

advance no argument in support of that conclusion that comports with *Rodriguez V*'s holdings. Indeed, multiple district court decisions have already followed *Rodriguez V* in rejecting Respondents' sweeping assertion. *Torres v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d. ---, 2019 WL 5883685 (C.D. Cal. Oct. 24, 2019); *Arroyo*, 2019 WL 2912848, at \*7 (C.D. Cal. June 20, 2019) (citing *American Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1359-60 (D.C. Cir. 2000).

Because the Ninth Circuit already determined that all class members fit within Section 1252(f)(1)'s exception, and because it determined that the statute does not apply to habeas petitions, Section 1252(f)(1) does not apply to this case.

### 2.   *Even as a Matter of First Impression, Section 1252(f)(1) Does Not Apply Because its Exception Clause Governs This Case.*

Regardless, Respondents' interpretation of Section 1252(f)(1) is wrong. "[T]raditional equitable powers can be curtailed only by an unmistakable legislative command." *Rodriguez I*, 591 F.3d at 1120. For five reasons, it is not a "necessary and inescapable inference" that Section 1252(f) bars this class from pursuing injunctive relief. *Id.* (internal quotation marks and citation omitted).

*First*, contrary to Respondents' claim, Petitioners' interpretation of the statute is entirely consistent with the Supreme Court's statements describing Section 1252(f)(1) as a prohibition on classwide injunctive relief, Dkt. 533-1 at 11. Petitioners agree that the statute bars some classwide injunctions. The question is whether this case fits into the exception clause that Congress enacted, and the Supreme Court has never interpreted the statute's exception clause.

Petitioners' reading comports with the statute's history. Congress adopted Section 1252(f)(1) after a period in which classes of individuals *not in removal proceedings* and organizations representing them repeatedly brought preemptive constitutional challenges. *E.g.*, *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43 (1993) (class action by immigrant rights' organizations and class of individuals, many of whom were not in removal proceedings); *McNary*, 498 U.S. at 487-88

17

1   (same, by refugee services organizations and class of individuals only some of

2   whom were in proceedings). *See Arroyo*, 2019 WL 2912848, at *7. In response,

3   Congress enacted Section 1252(f)(1) as a standing limitation: injunctive relief is

4   available only with respect to persons *already* targeted for removal. The

5   individuals at issue here satisfy that requirement because they have already

6   become the target of federal enforcement. Each of them is "an individual alien

7   against whom [removal] proceedings . . . have been initiated." 8 U.S.C.

8   1252(f)(1).

9       *Second*, while Respondents read "an individual alien" as barring all forms of

10  classwide injunctive relief, that reading leads to bizarre results. Under their view,

11  the phrase "an individual alien" limits injunctive relief to only one individual at a

12  time. But if that is so, it bars not only classwide injunctions, but also injunctive

13  relief for *any two individuals* suing together. Even members of a family confined

14  together could not file a joint habeas petition for injunctive relief. Each family

15  member would have to file their own case, even though the relief granted in each

16  case would be identical. Plaintiffs are unaware of any statute limiting federal court

17  authority in such a strange way. Congress could not have intended that absurd

18  result. *United States v. Wilson,* 503 U.S. 329, 334-35 (1992) (courts construe

19  statutes to avoid absurd results).[5]

20      *Third*, *Califano v. Yamasaki*, 442 U.S. 682 (1979), forecloses Respondents'

21  argument that the phrase "an individual alien" is intended to displace the

22  availability of class actions and other forms of joinder. It held that:

23      [t]he fact that the statute speaks in terms of an action brought by 'any
        individual' . . . does not indicate that the usual Rule providing for class
24      actions is not controlling . . . [A] wide variety of federal jurisdictional
        provisions speak in terms of individual plaintiffs, but class relief has never
25      been thought to be unavailable under them.

26  *Id*. at 700. Respondents point to differences between this case and *Califano*, Dkt.

27  ─────────────────

28  [5] It also violates the Suspension Clause, as common law permitted joint habeas
    petitions. *See, e.g.*, *Case of Three Spanish Sailors*, 96 Eng. Rep. 775 (C.P. 1779).

533-1 at 12, but none of them alter the rule of construction it established.

*Fourth*, Respondents assert Petitioners' reading fails to give "individual" distinct meaning, given Congress's use of that word here in contrast to its use of "an alien" elsewhere. Dkt. 533-1 at 11. But there is nothing unusual about Congress using different words to mean the same thing, even in the same statute. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 540 (2013) ("We are not aware, however, of any canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing."). In any event, any alleged redundancy does not warrant an interpretation that would lead to absurd results, particularly where the redundancy does not render any other provision of the statute superfluous. *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *id.* at 1087 (rejecting reading that led to "improbable" result); *Loving v. I.R.S.*, 742 F.3d 1013, 1019 (D.C. Cir. 2014) (reading statute to contain redundant words where needed to avoid interpretation that, *inter alia*, rendered other provisions meaningless). *Id.*[6]

*Finally*, when Congress wanted to prohibit classwide relief, it did so unequivocally. The *same* Congress in the *same* enactment explicitly prohibited courts from "certify[ing] a class under Rule 23" in certain expedited removal cases. *See Rodriguez I*, 591 F.3d at 1119 (construing Section 1252(f)(1) narrowly in light of Section 1252(e)(1)(B)'s breadth); *American Immigration Lawyers*

---

[6] Respondents also assert the phrase "an individual" is "the classic means of distinguishing between class and non-class based litigation," Dkt 533-1 at 11. *Califano* holds the opposite. And the cases Respondents cite show *Califano* is correct, because they *specify* they are using the word "individual" in contradistinction to class actions. That clarification is only necessary because the word "individual" is not always used in that manner.

(cont'd)

19

1    *Ass'n*, 199 F.3d at 1359 (similar).[7]

2         In sum, Section 1252(f)(1) does not apply, where each Class member is "an

3    individual alien against whom [removal] proceedings have been initiated."

4    Moreover, because Section 1252(f)(1) makes no mention of this Court's powers

5    under the general federal habeas statute, it has no affect on that venerable source

6    of authority.[8]

7    **III.   THIS COURT SHOULD NOT REQUIRE CLASS MEMBERS TO
8         FILE INDIVIDUAL HABEAS PETITIONS, BUT IF IT DOES SO IT
          SHOULD REQUIRE A NOTIFICATION SYSTEM AND APPOINT
          COUNSEL FOR THE HUNDREDS OF RESULTING INDIVIDUAL
9         CASES.**

10        **A.   Severe Practical Problems Would Arise if Class Members Had to
               File Individual Habeas Petitions to Vindicate Due Process Rights.**

11        Respondents argue that each Class Members' challenge to their unlawful

12   imprisonment "should be adjudicated" through individual habeas cases rather than

13   through this class litigation. Dkt. 533-1 at 23-24. On Respondents' view, the

14   factors relevant to release would apparently be considered twice: first, by a district

15   court in a habeas proceeding; and then again by an immigration judge, at a bond

16   hearing ordered by the district court. Respondents assert that dissecting a class

17   action into hundreds of individual actions and requiring each person to proceed

18   through two separate tracks of litigation would result in more efficient adjudication

19   of constitutional questions. This is obviously wrong. Their approach would waste

20   judicial resources and unnecessarily prolong already lengthy detentions.

21        *First*, even if Respondents were correct that individual habeas litigation

22

23   ----

24   [7]Respondents counter that Section 1252(f)(1) does not bar class actions, but only
     injunctive relief under them. Dkt. 533-1 at 10-11 (citing *Hamama v. Adducci*, 912
     F.3d 869, 878 (6th Cir. 2018)). But if it were a bar on classwide injunctive relief, it
25   would have referred to class actions. If it were a broader bar to relief for all forms
     of joined actions, it would have been written as an "inescapable" command, given
26   the absurdity of that prohibition. *See supra* Section II.D.2.

27   [8] Finally, even if the Court were to disregard *Rodriguez V* and the strong reasons
     supporting its reading of Section 1252(f)(1), it could still grant declaratory relief,
28   as Defendants concede. *See* Dkt. 533-1 at 12, 24.

1   would be more efficient, Rule 23(b)(2) contains no separate requirement that class

2   treatment be more efficient than other hypothetical alternatives. It requires only

3   that Respondents have acted on grounds generally applicable to the class such that

4   final injunctive or declaratory relief could be entered as to all of them. Fed. R. Civ.

5   P. 23(b)(2). As shown above, that is true as to Class members' common claim that

6   they are entitled to bond hearings after six months of imprisonment. *Supra* Section

7   II.B (citing, *inter alia*, *Diouf II*).[9] Because Petitioners meet the commonality and

8   other requirements of Rule 23(a) and Rule 23(b)(2), this Court should maintain

9   certification. Any alleged inefficiency provides no basis for decertification.

10      *Second*, the record already establishes that most Class members lack

11  sufficient legal knowledge to assert their rights in immigration court, let alone

12  through separate lawsuits in federal court. *See* Dkt. 281-1 (Declaration of Byron

13  Merida) at ¶¶ 12-18; Dkt. 281-7 (Declaration of Talia Inlender) at ¶¶ 10-14. Many

14  of them do not have immigration attorneys or funds to hire attorneys who practice

15  in federal court. For that reason, this Court already found that many Class members

16  would effectively be denied their rights if forced to affirmatively request bond

17  hearings, *see* Dkt. 353 at 4, which of course is far easier than filing a habeas

18  petition. *See, e.g.*, *Doe v. Gallinot*, 657 F.2d 1017, 1023 (9th Cir. 1981) (lack of

19  automatic hearings rendered process "illusory" because many detainees "cannot

20  realistically be expected to set the proceedings into motion in the first place").

21      Indeed, even before this Court's finding, *Rodriguez I* rejected Respondents'

22  preference for individual habeas litigation. It endorsed a "comprehensive" answer

23  to the constitutional claim through class litigation to "facilitate development of a

24  uniform framework for analyzing detainee claims to a bond hearing," and thereby

25

26  [9] That Congress specifically included a comparative efficiency requirement in Rule 23(b)(3) provides further proof that it did not intend to impose that requirement in Rule 23(b)(2) actions like this one. See Rule 23(b)(3) (requiring finding that "class action is superior to other available methods for fairly and efficiently adjudicating the controversy").

27

28

1    "render management of these claims more efficient for the courts" while

2    "obviating the severe practical concerns that would likely attend [class members]

3    were they forced to proceed alone." 591 F.3d at 1123.

4         Notably, even the circuits that rejected a bright-line approach prior to the

5    Supreme Court's decision recognized its practical benefits. The Third Circuit

6    rejected a six-month rule in favor of a case-by-case habeas approach in *Diop* v.

7    *ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011), but after four years of

8    subsequent litigation, it acknowledged the approach was unworkable and adopted

9    alternative time periods akin to a bright line rule. *Chavez-Alvarez* v. *Warden York*

10   *Cty. Prison*, 783 F.3d 469, 477 n.11 (3d Cir. 2015) (stating a bond hearing is

11   needed between six months and one year "for the sake of providing clear guidance

12   to the" agency and district courts). *See also Sopo v. U.S. Attorney General*, 825

13   F.3d 1199, 1217 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018) ("[t]he

14   need for a bond inquiry is likely to arise in the six-month to one-year window");

15   *Reid*, 819 F.3d at 497-98 ("plethora of problems" associated with case-by-case

16   approach, including "wildly inconsistent determinations" by district courts).

17   "[D]espite the best efforts of judges, courts have been unable to apply flexible

18   reasonableness standards in a manner that generates predictable, consistent, and

19   fair outcomes." *Sopo*, 825 F.3d at 1226 (Pryor, J., concurring in part and dissenting

20   in part). The experiences of federal appellate courts confronted with this problem

21   thus counsel strongly in favor of a bright-line rule.

22        *Third*, the inability to opt out of the class presents no difficulty for class

23   members who wish to pursue individual claims for relief. Dkt. 533-1 at 24. Such

24   individuals have long been permitted to join this litigation. *See, e.g.*, Dkt. 209

25   (consolidating habeas petition filed by class member). Indeed, Respondents have

26   facilitated this process for years by filing notices of related cases, without ever

27   before suggesting any concerns. *See, e.g.*, Dkt. 212 (Respondents' notice as to one

28   individual, filed in May 2012). And where they have claims that require separate

adjudication, certification as to the claims they share with other class members presents no impediment to their pursuing separate claims in their individual cases. *See Castano v. American Tobacco Co.*, 84 F.3d 734, 739 (5th Cir. 1996) (class certification appropriate where resolution of core issues "would significantly advance individual cases").

In short, forcing each Class member to file a habeas petition to vindicate their constitutional rights would both deny some Class members any access to the courts and be far less efficient.

**B.     If Individuals Must Pursue Individual Habeas Litigation, the Court Should Appoint Counsel and Specify Governing Standards.**

Should the Court be inclined to decertify the class notwithstanding *Rodriguez I*, *Diouf II*, and other binding precedent, it should issue a standing order similar to one it issued nearly twenty years ago. In response to the large number of habeas petitions filed by individuals subject to indefinite detention because they could not be repatriated, this Court issued *In re Indefinite Detention Cases*, 82 F.Supp.2d 1098 (C.D. Cal. 2000). That order appointed the Federal Public Defender's office to represent individuals incarcerated for lengthy periods under immigration laws. *Id*. at 1101 (citing *United States v. Budell*, 187 F.3d 1137, 1141 (9th Cir. 1999)). It also directed Magistrate Judges to order release unless the government showed by clear and convincing evidence that continued incarceration was warranted based on danger and flight risk. *Id*. at 1101.

Should the Court decertify the class, it should issue a similar order. Appointing the Federal Public Defender in all Class members' cases—likely about 1,000 cases over the course of a year, *see* Dkt. 281-3 at 1—would comport with federal courts' appointment practices in other immigration habeas cases, *see, e.g.*, *Zadvydas* (litigated by Federal Public Defender's office); *Casas-Castrillon* (same). It would also vindicate the general rule requiring appointed counsel in complex cases involving prolonged confinement where the government is represented. *See*

23

*Turner v. Rogers*, 131 S. Ct. 2507, 2519-20 (2011) (suggesting that counsel would be required in complex cases involving civil confinement, and also in cases where the government is represented).

Similarly, requiring the release of Class members absent a clear and convincing showing by the Government before the Magistrate Judge that the individual presents a danger or flight risk would comport with the standard announced for bond hearings involving prolonged incarceration, as the Ninth Circuit and this Court previously found. *V. Singh*, 638 F.3d at 1203-04 (requiring proof of danger or flight risk by clear and convincing evidence at prolonged detention hearing); Dkt. 353 at 3 (ordering same relief for all Class members).

Finally, for any such order to effectively protect Class members' liberty, it must ensure they have attorneys to file their habeas petitions, as they cannot do so on their own. Thus, the order should require Respondents to *notify* the Federal Public Defender's office and immigration detainees of their right to obtain Magistrate review of their prolonged confinement, and should do so *well before the six-month mark*. Absent these two additional protections, no order will accomplish what this Court's injunction currently does by ensuring that bond hearings occur promptly after 180 days, when the deprivation of Class members' liberty becomes "profound." Without those guarantees, many Class members will never file habeas petitions to obtain the relief Respondents promise, and even those that do will not receive hearings until well after 180 days. As *Rodriguez I* found, "many of the putative class members likely would not be able to adjudicate their claimed need of a bond hearing after six months of detention," absent class certification. 591 F.3d at 1123. They would languish without due process for many more months absent such protective measures.

Thus, if the Court intends to decertify the Class, it should order Respondents to provide such notifications no later than 150 days after imprisonment under the immigration laws begins, and direct Magistrate Judges to adjudicate cases as soon

after 180 days as possible, if not before. *Cf. Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) ("the writ is intended to be a 'swift and imperative remedy in all cases of illegal restraint or confinement'") (internal quotations omitted).

## CONCLUSION

The Court should deny Respondents' motion to vacate the injunction and decertify the Class. Alternatively, should it grant the motion, it should issue a standing order directing appointment of counsel and hearings conforming to due process requirements. *See generally In re Indefinite Detention Cases*.

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated: December 27, 2019     By: /s/ Ahilan T. Arulanantham
                                  AHILAN T. ARULANANTHAM
                                  Counsel for Petitioners