JOSEPH HUNT
Assistant Attorney General
Civil Division
DAVID MCCONNELL
Director, Office of Immigration Litigation
Appellate Court Section
ERNESTO MOLINA
Deputy Director
SARAH WILSON
Senior Litigation Counsel
United States Department of Justice
    P.O. Box 878, Ben Franklin Station
    Washington, DC 20044
    Phone: (202) 532-4700
    sarah.s.wilson@usdoj.gov

Attorneys for Federal Respondents

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ALEJANDRO RODRIGUEZ, *et al.*,<br><br>    Petitioners,<br><br>vs.<br><br>DAVID MARIN, *in his capacity as U.S. Immigration and Customs Enforcement, Los Angeles District Field Office Director, et al.*,<br><br>    Respondents. | Case No. CV 07-3239-TJH<br><br>**REPLY IN SUPPORT OF MOTION TO VACATE THE PRELIMINARY INJUNCTION AND DECERTIFY CLASS**<br><br>**The Honorable Terry Hatter, Jr.**<br><br>Hearing Date: March 16, 2020<br>Hearing Time: Under Submission |

## **TABLE OF CONTENTS**

I. *Jennings* eliminated the legal justification for the preliminary injunction and every court to address the issue post *Jennings* has rejected Petitioners' claim. ..................................................................... 1

    A. There is no procedural basis for continuing the injunction .............. 1

    B. *Jennings* eliminated the legal justification for the injunction .......... 3

II. Section 1252(f)(1) bars entry of an injunction on the constitutional claims. ........................................................................................................ 5

III. The class should be decertified as lacking a common question capable of a uniform answer. ................................................................... 7

    A. *Rodriguez I* does not control the decertification decision. .............. 7

    B. Petitioners' constitutional claims cannot be commonly resolved based on six months of detention alone. .......................... 8

    C. Petitioners' constitutional claims should be adjudicated through individual habeas cases. .................................................. 10

CONCLUSION ................................................................................................ 13

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

*Abdi v. McAleenan*,
  405 F. Supp. 3d 467 (W.D.N.Y. 2019) ................................................................. 3

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................. 8

*Casas v. DHS*,
  535 F.3d 942 (9th Cir. 2008) ............................................................................. 12

*Commercial Cleaning Servs., L.L.C. v. Colin Servo Sys., Inc.*,
  271 F.3d 374 (2d Cir. 2001) .............................................................................. 12

*Demore v. Kim*,
  538 U.S. 510 (2003) ..................................................................................... 4, 10

*Diouf v. Napolitano*,
  634 F.3d 1081 (9th Cir. 2011) ......................................................................... 4, 9

*Doherty v. Thornburgh*,
  943 F.2d 204 (2d Cir. 1991) .............................................................................. 10

*Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*,
  970 F.2d 273 (7th Cir. 1992) ............................................................................... 7

*Hamama v. Adducci*,
  349 F. Supp. 3d 665 (E.D. Mich. 2018) .............................................................. 4

*Hamama v. Adducci*,
  912 F.3d 869 (6th Cir. 2018) ............................................................................... 7

*Ibrahim v. DHS*,
  669 F.3d 983 (9th Cir. 2012) ............................................................................. 10

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ............................................................................. 1, *passim*

*Landon v. Plasencia*,
  459 U.S. 21 (1982) ............................................................................................... 8

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ............................................................................................. 8

*Padilla v. ICE*,
  387 F. Supp. 3d 1219 (W.D. Wash. 2019) ................................................... 10, 11

*Reid v. Donelan*,
  390 F. Supp. 3d 201 (D. Mass. 2019) .............................................................. 3, 9

*Reno v. American-Arab Anti-Discrimination Committee*,
  525 U.S. 471 (1999) ............................................................................................. 6

*Reno v. Flores*,
  507 U.S. 292 (1993) ........................................................................................... 12

*Rodriguez v. Hayes,*
  591 F.3d 1105 (9th Cir. 2010) ..................................................................... 1, 7

*Rodriguez v. Marin*,
  909 F.3d 252 (2018) ............................................................................ 2, *passim*

*Sajous v. Decker*,
  No. 18-cv-2447, 2018 WL 2357266 (S.D.N.Y. May 23, 2018) ............................ 3, 9

*Schwenk v. Hartford*,
  204 F.3d 1187 (9th Cir. 2000) .................................................................... 2, 3, 8

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*,
  309 F.3d 662 (9th Cir. 2002) ........................................................................... 2

*Shaughnessy v. Mezei*,
  345 U.S. 206 (1953) ........................................................................................ 3

*United States v. Morrison*,
  529 U.S. 598 (2000) ........................................................................................ 2

*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990) ...................................................................................... 10

*United States v. Zingsheim*,
  384 F.3d 867 (7th Cir. 2004) ........................................................................ 12

*Vasquez Perez v. Decker*,
  No. 18-cv-10683, 2019 WL 4784950 (S.D.N.Y. Sept. 30, 2019) ................... 6, 7

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................... 1, 8, 11

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................... 2, 3, 4

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ........................................................................................ 4

**ADMINISTRATIVE DECISION**

*Matter of M-S-,*
  27 I. & N. Dec. 509 (A.G. 2019) ................................................................... 10

**STATUTES**

**Immigration and Nationality Act of 1952, as amended:**

Section 235(b),
  8 U.S.C. § 1225(b) ........................................................................................ 10

Section 235(b)(1)(B)(ii),
  8 U.S.C. § 1225(b)(1)(B)(ii) .......................................................................... 10

Section 236(c),
　8 U.S.C. § 1226(c) ............................................................................................... 3

Section 241(a)(6),
　8 U.S.C. § 1231(a)(6) ................................................................................. 4, 5, 9

Section 242,
　8 U.S.C. § 1252 ................................................................................................... 7

Section 242(f)(1),
　8 U.S.C. § 1252(f)(1) ................................................................................ 1, *passim*

**Other Statute:**

28 U.S.C. § 2241 ..................................................................................................... 12

**RULES**

Federal Rule of Civil Procedure 23(b)(2) ............................................................ 7, 8

Petitioners rely on vacated injunctions, abrogated precedent, and an obsolete certification order to urge this Court not to address any of the Ninth Circuit's remanded questions regarding the legitimacy of classwide injunctive relief or the class itself. Petitioners' excuses notwithstanding, this Court cannot refuse to consider Respondents' procedural and substantive challenges to the legitimacy of preliminary injunctive relief—including the Ninth Circuit's specific questions regarding the effect of section 1252(f)(1) on its authority to enter an injunction here. Nor can this Court ignore the Ninth Circuit (and Supreme Court's) order to "reexamine" certification in light of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), in favor of following the same pre-*Walmart* decision the Court has ordered be reconsidered, *Rodriguez v. Hayes,* 591 F.3d 1105, 1110 (9th Cir. 2010) (*Rodriguez I*).

The preliminary injunction must be vacated for the same reason this Court has already recognized the vacatur of the permanent injunction: the Supreme Court's decision in this case eliminates any basis for maintaining the preliminary injunction. *See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Second, 8 U.S.C. § 1252(f)(1) eliminates the Court's authority to enjoin the operation of the challenged immigration detention provisions on a classwide basis. Finally, even if the Court had jurisdiction to enter an injunction, the injunction still would need to be vacated and the class decertified as the class lacks sufficient commonality for the Court to uniformly resolve their constitutional claims. The preliminary injunction should be vacated and the class decertified.

**I.	*Jennings* eliminated the legal justification for the preliminary injunction and every court to address the issue post *Jennings* has rejected Petitioners' claim.**

**A.	Procedurally, there is no basis for continuing the injunction.**

Petitioners do not directly dispute either of Respondents' procedural arguments in support of vacatur. The preliminary injunction was extinguished when it merged into the permanent injunction upon entry of judgment in this case, and was subsequently vacated (along with the permanent injunction) by the Supreme Court.

1

ECF 533-1 at 14 n.1. Therefore, as a procedural matter, it cannot be revived here. In addition, since the permanent injunction's vacatur, Petitioners have not moved for (much less obtained) preliminary injunctive relief on their constitutional claims, and therefore the class cannot be awarded such relief consistent with the rigorous standard imposed by *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Any continuation of the injunction would have to be supported by a new judicial determination that Petitioners have a likelihood of succeeding as a class on the merits on the constitutional claims.

In response, Petitioners contend that the Court's 2012 preliminary injunction order stands because it "nowhere rejected the constitutional arguments" offered by Petitioners in support of the injunction.[1] ECF 539 at 5. Of course, not expressly rejecting a legal theory is a far cry from finding a likelihood of success on that claim. *See Winter*, 555 U.S. at 24. But even if the injunction was in part based on constitutional considerations, that would not protect it from vacatur in light of *Jennings* rejecting the Ninth Circuit's interpretation of the statutes. It is well-established that any constitutional analysis must begin by interpreting the statute and applying the presumption that the statute is constitutional as drafted. *Schwenk v. Hartford*, 204 F.3d 1187, 1204 (9th Cir. 2000); *see United States v. Morrison*, 529 U.S. 598, 607 (2000); *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 669 (9th Cir. 2002). Because the *Jennings* decision had not been issued, this Court did not analyze the constitutionality of the statutes with the understanding that they prohibited bond hearings for the duration of the removal proceedings—much less presume that it would be constitutional to do so. *Schwenk*, 204 F.3d at 1204 (Acts of Congress "enjoy a strong presumption of constitutionality."). Nor did it apply the constitutional test the Ninth Circuit has directed control the constitutional analysis on remand: to determine

---

[1] It is not at all clear from the cited provisions, ECF 539 at 12-13, that Petitioners were making a stand-alone constitutional argument in their 2012 motion for a preliminary injunction rather than simply noting "constitutional considerations," as they characterized it in Ninth Circuit briefing. *Marin*, 13-56755, Dkt. 150 at 4 & n.2.

2

whether the injunction represents "the minimum requirements of due process" for any of the subclasses. *Marin*, 909 F.3d at 257. Anything short of that analysis, considered under the *Winter* standard, is insufficient to maintain the preliminary injunction. As a result, it is procedurally appropriate to vacate the injunction in light of *Jennings*.

**B.** ***Jennings* eliminated the legal justification for the injunction.**

i. Petitioners cannot satisfy *Winter*'s standard for preliminary relief on the constitutional claims. As Petitioners acknowledge, ECF 539 at 15, every court to examine the question since *Jennings* has rejected the argument that there is a classwide entitlement to a bond hearing after six months under any of the challenged statutes. *See, e.g., Abdi v. McAleenan*, 405 F. Supp. 3d 467, 479-483 (W.D.N.Y. 2019); *Reid v. Donelan*, 390 F. Supp. 3d 201, 219 (D. Mass. 2019); *Sajous v. Decker*, No. 18-cv-2447, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018). In addition, district courts across the country have consistently affirmed the constitutionality of the challenged statutes well beyond the six-month mark. ECF 533-1 at 15-16 (collecting cases). The weight of the authority decidedly supports vacatur of the injunction on the merits.

In response, Petitioners cite inapplicable case law discussing the due process rights of citizens, all of which predates *Jennings*.[2] *See* ECF 539 at 14-15. Petitioners do not, however, make any effort to align the holdings of those cases with the steady line of cases affirming the constitutionality of immigration detention in excess of six months. *See*, *e.g., Demore v. Kim*, 538 U.S. 510 (2003) (upholding section 1226(c) as applied to alien detained for longer than six months knowing that the administrative proceedings remained ongoing); *Shaughnessy v. Mezei*, 345 U.S. 206, 209 (1953) (affirming the constitutionality of detaining inadmissible, former lawful permanent

---

[2] Petitioners cite one post-*Jennings* decision suggesting, in dicta, a six-month limit to one of the three detention provisions at issue here, ECF 539 at 14, but that decision is based exclusively on pre-*Jennings* case law.

3

resident for 20 months). These cases confirm that the minimum standard of due process here does not require a bond hearing in all instances after six months.

Petitioners also cite cases interpreting a detention provision that is no longer at issue in this case, 8 U.S.C. § 1231(a)(6), including a decision that has since been reversed on appeal, *see* ECF 539 at 14 (citing *Hamama v. Adducci*, 349 F. Supp. 3d 665 (E.D. Mich. 2018)), overruled by *Hamama v. Adducci*, 946 F.3d 875 (6th Cir. 2020). Petitioners' reliance on the six-month limitation on section 1231(a)(6) imposed in *Zadvydas v. Davis*, 533 U.S. 678 (2001), is equally misplaced as the Supreme Court has already said it is inapplicable to pre-order detention. *Jennings*, 138 S. Ct. at 848 (quoting *Demore*, 538 U.S. at 529). The six-month limitation suggested in *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011), was similarly imposed as a matter of statutory construction. Regardless of whether it was abrogated by *Jennings*, the Ninth Circuit has never applied *Diouf*'s holding to pre-order detention (besides, of course, the Ninth Circuit's now-vacated decision in this case). Finally, *Diouf* notably stops short of applying an unbending six-month rule by allowing for exceptions where removal is imminent. 634 F.3d at 1092 n.13. Thus *Diouf* itself demonstrates that, even under section 1231, "the minimum requirements of due process" is not a bond hearing after six months. The cases cited by Petitioners are not sufficient to overcome the overwhelming weight of the authority on the issue and sustain Petitioners' burden under *Winter*.

ii. Petitioners also argue that the Ninth Circuit has already "ordered that the injunction remain in place 'pending a consideration on the merits.'" ECF 539 at 10. However, this motion is precisely that—the parties have agreed to brief the merits of the Ninth's circuit remand issues in two sets of briefing, with this one covering the viability of injunctive relief and the appropriateness of class certification on the constitutional claims. As a result, the merits of those questions are now fully briefed and under submission to the Court for adjudication.

It makes little sense to read the Ninth Circuit's remand order as *sua sponte* granting Petitioners preliminary injunctive relief. Rather, it is better read as granting Petitioners' the opportunity to themselves move for preliminary relief on these claims on remand. The Ninth Circuit correctly observed that the prior injunctions were not entered on the constitutional claim. *Rodriguez v. Marin*, 909 F.3d 252, 257 (2018). ("[T]he district court … 'had no occasion to consider petitioners' constitutional arguments on their merits.'"). Petitioners relied on that fact in opposition to Respondents' motion to vacate and requested that the injunction should not be vacated by the Ninth Circuit prior to giving Petitioners "a full and fair opportunity to defend an alternative basis for the injunction." *Marin*, 13-56755, Dkt. 150 at 1. The Court's remand order gave them that chance, but Petitioners have not moved for preliminary relief on an alternative basis. Therefore, the Court must decide the issue here.

**II.     Section 1252(f)(1) bars entry of an injunction on the constitutional claims.**

Section 1252(f)(1), eliminates this Court's jurisdiction to enjoin the operation of the challenged statutes as unconstitutional, with a narrow exception for injunction "with respect to the application of such provisions to an individual alien against whom proceedings … have been initiated." In opposition to the motion, Petitioners abandon the vast majority of the strained limitations to section 1252(f)(1) they advanced in briefing to the Ninth Circuit. *See Marin*, Dkt. 13-56755, Dkt. 165 at 13. Petitioners now exclusively argue that the injunction is within section 1252(f)(1)'s narrow exception for injunctions applying to "an individual alien against whom proceedings … have been initiated" because the class includes individual aliens in removal proceedings. But the class is not "an individual alien," and therefore section 1252(f)(1) bars injunctive relief.

Consistent with the theme of their opposition, Petitioners argue "the Ninth Circuit already determined that all class members fit within Section 1252(f)(1)'s exception." ECF 539 at 25. But the Ninth Circuit specifically ordered, in two separate places in the remand order, that this Court "determine … whether classwide injunctive

5

relief is available under 8 U.S.C. § 1252(f)(1)" and "decide in the first instance whether § 1252(f)(1) precludes classwide injunctive relief." *Marin*, 909 F.3d at 255, 256 n.1. Petitioners misread the Ninth Circuit's jurisdictional holding—that section 1252(f)(1) does not eliminate jurisdiction over the habeas case—as deciding whether that provision effects a bar on the relief ordered here. The Ninth Circuit's observation that the class is composed of aliens in removal proceedings, does not resolve the question of whether that is sufficient for the exception to apply. Rather, the question remains whether relief that would be appropriate for members of the class to pursue in their individual capacities is barred by section 1252(f)(1) when sought on a classwide basis. The answer is yes because the class is not "an individual alien."

The Supreme Court has already determined that section 1252(f)(1) "*prohibit[s] … classwide injunctive relief*" while preserving the availability of relief for "an individual alien against whom proceedings … have been initiated." *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 481 (1999) (AADC). In *Jennings*, the Court reaffirmed *AADC*'s interpretation of section 1252(f)(1) as 'prohibit[ing] federal courts from granting classwide injunctive relief against the operation of §§ 1221–123[2]." *Jennings*, 138 S. Ct. at 851. The Ninth Circuit's remand order acknowledges the likelihood that section 1252(f)(1)'s bar applies here, noting "even if *[AADC]* forecloses the argument that § 1252(f)(1) allows classwide injunctive relief, it does not affect classwide declaratory relief." *Marin*, 909 F.3d at 257. Of course, the Court's observation is not helpful here, as the preliminary order in this case is undeniably an injunction, and cannot be transformed into a declaration as there is no such thing as preliminary declaratory relief. *Vasquez Perez v. Decker*, No. 18-cv-10683, 2019 WL 4784950 at *10 (S.D.N.Y. Sept. 30, 2019); *see also Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 276 (7th Cir. 1992).

Petitioners change the statutory phrase "an individual alien" to "any alien" in order to interpret section 1252(f)(1)'s exception in a manner inconsistent with its

6

statutory history. As Petitioners acknowledge, section 1252(f)(1) was adopted in direct response to a series of class actions brought by individual aliens, most of whom were in removal proceedings. ECF 539 at 25-26. Petitioners' interpretation of section 1252(f)(1) would render it powerless against the very injunctions it was designed to prevent. Indeed, Petitioners' interpretation of section 1252's exception renders the bar meaningless as the only class outside of the exception would be a class of individuals with premature challenges to proceedings that have not been initiated against them. That interpretation does "violence to the text of the statute" and fundamentally alters its meaning. *Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018), *pet. for cert. filed* 19-294 (Aug. 30, 2019); *Vasquez Perez*, 2019 WL 4784950 at *4-9.

### III. The class should be decertified as lacking a common question capable of a uniform answer.

The due process claim cannot be adjudicated on a classwide basis because the necessary legal analysis requires the Court to consider facts and circumstances not shared by every class member. Petitioners nonetheless predictably advise the Court to disregard the Supreme Court's order to "reexamine" the Ninth Circuit's prior certification decision in *Rodriguez I,* 591 F.3d at 1110, and to ignore the uniform chorus of courts rejecting their due process analysis. The class should be decertified in favor of developing the law through the adjudication of individual habeas petitions.

### A. *Rodriguez I* does not control the decertification decision.

In an attempt to avoid their burden to establish the continued propriety of class certification, Petitioners argue *Rodriguez I,* 591 F.3d 1105, is law of the case on the certification question. This is inconsistent with both the Supreme Court and the Ninth Circuit explicit order that this Court "reexamine whether respondents can continue litigating their claims as a class" in light of Federal Rule of Civil Procedure 23(b)(2), and *Wal-Mart* prior to addressing the merits of the constitutional claims. *Jennings,* 138 S. Ct. at 851-52; *Marin*, 909 F.3d at 257 & n.2. This order is consistent with settled law that "certifications are not frozen once made," *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013).

*Rodriguez I* does not decide the questions posed by the remand order. *Rodriguez I* was decided prior to *Wal-Mart*, and therefore failed to consider the rigorous burden associated with certification of a class under Rule 23(b)(2). *Rodriguez I*'s commonality analysis was based on the premise that certification was appropriate so long as the Court could vaguely craft a common question. This is far from the "rigorous" burden imposed on Petitioners by *Wal-Mart* to show "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350-51. Equally important, *Rodriguez I* was decided prior to *Jennings*, which changed the nature of constitutional analysis by confirming the scope and meaning of the challenged statutes. As a result, the constitutional analysis must be conducted in a manner than presumes the constitutionality of the provision even after six months of detention. *Schwenk*, 204 F.3d at 1204.

### B. Petitioners' constitutional claims cannot be commonly resolved based on six months of detention alone.

i. As discussed, *supra* at 3, the decisive weight of authority demonstrates that the shared characteristic of detention time alone—especially at the six-month mark—is not sufficient to commonly resolve the constitutional claim. The Due Process Clause requires an individualized assessment of numerous factors, for example including "interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982); *see Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). Applying these tests, no court has adopted a six-month constitutional brightline for any of the challenged statutes on a classwide basis. *Reid*, 390 F. Supp. 3d at 219; *Sajous* 2018 WL 2357266, at *10. Moreover, post-*Jennings*, courts across the country have identified a host of factors relevant to an as-applied constitutional challenge that go far beyond time in custody. ECF 533-1 at 27.

8

Petitioners do not dispute that if any fact other than detention time in excess of six months is material to the due process claim, then the class must be decertified. Yet, Petitioners do not cite a single post-*Jennings* constitutional case in which a Court analyzed the due process claim based on time in custody alone. *See* ECF 539 at 18-22. Instead, Petitioners continue to hang their hat on *Diouf v. Napolitano*, 634 F.3d 1081, as their lone example of time-based bond rule. Decided today, *Diouf* could not as a matter of statutory interpretation, even under section 1231(a)(6), require a release mechanism (bond hearings) that is inconsistent with the release standards established by statute. *Jennings*, 138 S. Ct. at 848. And, although Petitioners brush off criticism that *Diouf* is a pre-*Jennings*, statutory construction decision interpreting a statute that is not at issue in this case, they fail to explain why those distinctions are not controlling here. Petitioners simply provide no basis for overstretching an inapplicable pre-*Jennings* decision rather than following the collective wisdom of courts across the country who have analyzed this legal question in this specific legal landscape.

The individual characteristics of the members of the subclasses and the varied procedural protections available to them make it impossible for the Court to answer the due process question without consideration of any of those differences. ECF 533-1 at 26-28. Petitioners' rule prevents consideration of numerous factors that other courts have found to be dispositive of challenges, including whether the individual has previously had a bond hearing, and detention length as compared to the stage of the proceedings. *Id*. It also fails to account for the detainee's litigation choices to take advantage of procedural protections (such as continuances) and appeals made available to him, which fails to account for the government's weighty interest in detention of an alien on the precipice of removal. *Demore*, 538 U.S. at 532-533 (Kennedy, J., concurring); *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991).

ii. In addition, changes to the section 1225(b) subclass necessitate decertification. In the decade since the section 1225(b) subclass was certified on Petitioners' statutory claim, the scope of section 1225(b) has significantly changed. At

9

the time the subclass was certified, section 1225(b)(1)(B)(ii) applied exclusively to asylum seekers who presented at a port-of-entry. Now, under the Attorney General's decision in *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019), section 1225(b)(1)(B)(ii) includes asylum seekers intercepted inside of the United States within the expedited removal zone. In addition, the Secretary has expanded expedited removal to its statutory maximum. *See* 84 FR 35,409 (July 23, 2019).

Petitioners argue that the changes have not altered the composition of the class because both have been enjoined. But *Matter of M-S-* has not been enjoined on a statutory basis. *Padilla v. ICE*, 387 F. Supp. 3d 1219 (W.D. Wash. 2019). As a result, any individual who is denied bond at a *Padilla* bond hearing, continues to be detained under section 1225(b)(1)(B)(ii) and eligible for release only through parole. *Id*. Thus, section 1225(b)(1)(B)(ii) presently includes individuals who illegally entered the United States, as well as individuals who were detained prior to entry. It also includes individuals who have been afforded a bond hearing, and others who have never been eligible for a bond hearing at all. These differences alter the legal analysis such that constitutional claims raised by these two groups cannot be simultaneously analyzed. *See, e.g., Ibrahim v. DHS*, 669 F.3d 983, 997 (9th Cir. 2012); ECF 533-1 at 26-29.

Finally, the Court must decertify the 1225(b) subclass because Petitioners have abandoned their original subclass definitions. Petitioners have now conceded that the subclass is overly broad in that it included returning lawful permanent residents as well as individuals with no prior connection to the United States. Petitioners assert that this is not a basis for decertification, but they have not moved to modify it or otherwise briefed the Rule 23 requirements for the modified subclasses. It is not procedurally proper for the Court to simply order certification of a class based on the allegations in a complaint without holding Petitioners to their burden as to all of the Rule 23 requirements. Thus, the Court has the obligation to decertify the original classes and may, on an appropriate motion by Petitioners, consider a modified class.

**C. Petitioners' constitutional claims should be adjudicated through individual habeas cases.**

i. Individual habeas petitions are the only viable means to address Petitioners' constitutional claims. Individual petitions are necessary to adjudicate the dispositive question of the overall process due to an individual. In addition, because class members cannot opt out of the certified class under Rule 23(b)(2), a class action on these claims prevents individual class members from pursuing their claims in an individual habeas petition. *See Wal-Mart*, 564 U.S. at 362. An individual habeas action therefore offers a speedier and less procedurally problematic means of providing more tailored consideration and relief than this decades-old class action.

Petitioners incorrectly contend that the individual habeas process requires that factors relevant to release be considered twice. ECF 539 at 28. The factors relevant to Petitioners' due process challenge are distinct from the factors relevant to the bond hearing itself, which considers only individual flight risk and dangerousness. And the application of the relevant factors in a due process analysis varies among individual aliens. Plus, this two-step process is inherent to their claim. As Petitioners have repeatedly stated, their claim is not seeking release, only the opportunity for a bond hearing. Thus, there necessarily must first be a determination whether the due process clause requires a bond hearing before there can be a determination of flight risk and dangerousness at that bond hearing.

Petitioners finally contend that classmembers are unable to file habeas claims, but fail to cite any evidence on this point. Federal courts are available to resolve individual claims of illegal detention and such claims are filed regularly. Petitioners cite two affidavits that offer secondhand conjecture that some detainees were not aware of the availability of bond hearings under *Casas v. DHS*, 535 F.3d 942 (9th Cir. 2008). ECF 539 at 29. Even if some unidentified aliens were confused by the now-abrogated *Casas* regime, that is not evidence of a classwide inability to seek widely-recognized relief in federal court. In any event, individuals do not need to file a petition to receive the benefit of circuit precedent developed through individual petitions.

11

ii. The Court should reject Petitioners' alternative proposal that, should this Court grant the motion for decertification, it nonetheless enter an order requiring the government to provide a third party with class member information on an ongoing basis, prospectively appoint counsel in all prolonged detention cases, and afford them bond hearings in accordance with the injunction's burden and standard in federal court. ECF 539 at 31-32. *First*, Petitioners' proposed order is effectively a classwide injunction, and therefore barred by 8 U.S.C. § 1252(f)(1). *Second*, the proposed order would violate the Judicial Conference's guidelines on the use of general orders. *See* Report and Recommended Guidelines Standing Orders in District and Bankruptcy Courts, 2009, available at https://www.uscourts.gov/sites/default/files/standing_orders_dec_2009_0.pdf (J. Conf. Rep.). The Court lacks the authority to enter a standing order that sets substantive legal standards that are contrary to *Jennings*. *See Commerc'l Clean'g Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001); *United States v. Zingsheim*, 384 F.3d 867, 871 (7th Cir. 2004). The proposed order is not administrative in nature, temporary, or designed to address any emergency situation, and therefore is wholly inappropriate for a standing order. J. Conf. Rep. at 2-6. *Finally*, the Court lacks jurisdiction to order such extraordinary relief that is not sought in the complaint and premised on claims that Petitioners have not asserted, much less prevailed upon. For the last decade, Petitioners' asserted entitlement to administrative bond hearings—not a challenge to the sufficiency of 28 U.S.C. § 2241's habeas procedures. It would be extraordinary to find that section 2241, the core habeas statute that derives from the Judiciary Act of 1789, is unconstitutional—especially where the record is devoid of any evidence about the sufficiency of section 2241 for individual prolonged detention challenges. *Cf. Reno v. Flores*, 507 U.S. 292, 314 (1993) (finding "no evidence" that habeas corpus is insufficient for such claims). Petitioners cannot pivot to a new claim and form of relief simply because they were unable to sustain certification. Nor can Petitioners short-circuit a merits determination on a new constitutional claim and obtain substantive relief through a standing order.

# CONCLUSION

Respondents respectfully request that the preliminary injunction be vacated and the class decertified.

Dated: March 2, 2020

JOSEPH HUNT
Assistant Attorney General
Civil Division
DAVID MCCONNELL
Director, Office of Immigration Litigation
Appellate Court Section
ERNESTO MOLINA
Deputy Director

*/s/ Sarah Wilson*
SARAH WILSON
Senior Litigation Counsel
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4700
sarah.s.wilson@usdoj.gov

Attorneys for Respondents

# CERTIFICATE OF SERVICE

I certify that on March 2, 2020, I served a copy of the foregoing by CM/ECF which delivered a copy to all counsel of record, including:

Ahilan T. Arulanantham
Email: aarulanantham@aclu-sc.org

Michael Kaufman
Email: mkaufman@aclu-sc.org

Zoe McKinney
Email: ZMcKinney@aclusocal.org

*/s/ Sarah Wilson*
Sarah Wilson
United States Department of Justice